Joseph R. Saveri (State Bar No. 130064)
Andrew M. Purdy (State Bar No. 261912)
James G. Dallal (State Bar No. 277826)
Ryan J. McEwan (State Bar No. 285595)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:    jsaveri@saverilawfirm.com
          apurdy@saverilawfirm.com
          jdallal@saverilawfirm.com
          rmcewan@saverilawfirm.com

[Additional Counsel Listed on Signature Page]

*Attorneys for Individual and Representative Plaintiffs*
*Chip-Tech, Ltd., Dependable Component Supply Corp.,*
*eIQ Energy, Inc., and Schuten Electronics, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 3:14-cv-03264-JD |
| THIS DOCUMENT RELATES TO ALL DIRECT PURCHASER CLASS ACTIONS | **DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO MOTION FOR APPOINTMENT OF PEARSON, SIMON & WARSHAW, LLP AND LOCKRIDGE GRINDAL NAUEN P.L.L.P. AS INTERIM CO-LEAD CLASS COUNSEL** |
| | Date: October 29, 2014<br>Time: 9:30 a.m.<br>Courtroom: 11, 19th Floor |

Master File No. 3:14-cv-03264-JD

Direct Purchaser Plaintiffs' Opposition to Motion for Appointment of Pearson, Simon & Warshaw, LLP and Lockridge Grindal Nauen P.L.L.P. as Interim Co-Lead Class Counsel

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ..................................................................................................................1

II.  PROCEDURAL BACKGROUND.................................................................................... 2

    A.  Initial Proceedings.................................................................................................. 2

    B.  Direct Purchaser Plaintiffs Reach Consensus. ......................................................3

    C.  Direct Purchaser Plaintiffs Organized and Advanced the Litigation. .................. 4

    D.  Home Tech Filed Late and Immediately Moved to Supplant the Majority
        Leadership Group Entirely. .................................................................................... 6

III.  ARGUMENT ................................................................................................................... 6

    A.  Majority Counsel Have Wide Ranging Support.....................................................7

    B.  Majority Counsel Thoroughly Investigated Their Claims and Promptly Initiated
        These Actions. ........................................................................................................ 9

    C.  Majority Counsel Have Demonstrated Their Strong Leadership Qualities. ..................... 11

    D.  Majority Counsel's Proposal Will Best Serve the Interests of the Direct
        Purchaser Plaintiffs and the Class. ...................................................................... 11

    E.  Home Tech's Motion and Its Counsel Have Sidetracked the Litigation and
        Disrupted the Efforts of Majority Counsel to Advance the Litigation............................. 13

    F.  Home Tech's Questionable Standing and Class Definition Weigh Against
        Appointing Its Counsel to Represent the Class.....................................................14

IV.  CONCLUSION ...............................................................................................................15

Master File No. 3:14-cv-03264-JD

i

Direct Purchaser Plaintiffs' Opposition to Motion for Appointment of Pearson, Simon & Warshaw, LLP and Lockridge Grindal
Nauen P.L.L.P. as Interim Co-Lead Class Counsel

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*In re Air Cargo Antitrust Litig.*, 240 F.R.D. 56 (E.D.N.Y. 2006) .................................................. 13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 4:02-md-01486-PJH
    (N.D. Cal. Sept. 20, 2005) ........................................................................................................ 12

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007) ..................................... 12

*In re Lidoderm Antitrust Actions*, No. 3:14-md-02521-WHO (N.D. Cal. May 23, 2014) .......................... 13

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420-YGR (N.D. Cal. May 17, 2013
    and July 10, 2013) ..................................................................................................................... 12

*In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-02472-S-PAS (D.R.I. Feb. 14, 2014) .............................. 12

*In re Methionine Antitrust Litig.*, No. 3:00-md-01311-CRB (N.D. Cal.) ..................................... 12

*In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-02409-WGY (D. Mass. 2013) .......................... 12

### Other Authorities

MANUAL FOR COMPLEX LITIGATION 4th ed. (2006) § 10.22 at 24 ............................................... 7

MANUAL FOR COMPLEX LITIGATION 4th ed. (2006) § 21.27 at 279 ............................................. 7

### Rules

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................................................ 7

Fed. R. Civ. P. 23(g)(1)(B) ........................................................................................................ 7

Master File No. 3:14-cv-03264-JD                     ii

Direct Purchaser Plaintiffs' Opposition to Motion for Appointment of Pearson, Simon & Warshaw, LLP and Lockridge Grindal
Nauen P.L.L.P. as Interim Co-Lead Class Counsel

## I.  INTRODUCTION

Plaintiffs Chip-Tech, Ltd. ("Chip-Tech"), Dependable Component Supply Corp. ("Dependable"), Schuten Electronics, Inc. ("Schuten"), and eIQ Energy, Inc. ("eIQ Energy") (together, "Direct Purchaser Plaintiffs") submit this opposition to Plaintiff In Home Tech Solutions, Inc.'s ("Home Tech") motion to appoint its counsel (Pearson, Simon & Warshaw, LLP ("PSW") and Lockridge Grindal Nauen P.L.L.P. ("LGN")) as Interim Co-Lead Class Counsel for the proposed direct purchaser class (Dkt. 193) (the "Home Tech Motion").

Direct Purchaser Plaintiffs previously submitted their Unopposed Motion to Appoint Interim Class Counsel (Dkt. 102) (the "Unopposed Motion")[1] on September 16, 2014, which, at that time, had the support of all plaintiffs who directly purchased capacitors from the Defendants in these actions. The Unopposed Motion seeks appointment of Interim Class Counsel comprising: Joseph R. Saveri of Joseph Saveri Law Firm, Inc. ("JSLF"); Solomon B. Cera of Gold Bennett Cera & Sidener LLP; ("GBCS"); Howard J. Sedran of Levin Fishbein Sedran & Berman ("LFSB"); and Kit A. Pierson of Cohen Milstein Sellers & Toll PLLC ("CMST") (together, "Majority Counsel"). The Unopposed Motion has the continued support of all direct purchaser plaintiffs other than Home Tech, which did not file its complaint until October 8, 2014 (Case No. 3:14-cv-05414-JD), nearly three months after the first direct purchaser plaintiff (Chip-Tech) filed its complaint in this Court on July 18, 2014.[2]

Home Tech's eleventh hour attempt to upset this privately ordered leadership structure should be rejected as it seeks to supplant the consensus of Plaintiffs' counsel for no legitimate reason. Majority Counsel thoroughly investigated their claims beginning six months ago in April, promptly filed suit to protect the interests of their clients and the proposed class, and have worked cooperatively to advance this complex litigation for the past three months. This consensus has the support of four Plaintiffs and ten law firms that—after engaging in extensive discussions and negotiations—agreed to work together,

---

[1]  Direct Purchaser Plaintiffs incorporate by reference their Motion and the Memorandum of Points and Authorities (and accompanying declarations) submitted in support. (Dkt. 102).

[2]  The Unopposed Motion is also supported by counsel for Quathimatine Holdings, Inc. ("Quathimatine"), a direct purchaser plaintiff that recently filed its complaint on October 22, 2014 (Case No. 4:14-cv-04704-KAW). (*See* Declaration of Joseph R. Saveri ¶¶ 3-4) ("Saveri Decl."). Quathimatine's Motion to Relate (Dkt. 248) is currently pending.

pool their resources, and consolidate the actions for the benefit of the class.[3] Their efforts to advance this litigation since July demonstrate the collaborative and cooperative approach necessary to efficiently lead these actions.

Home Tech's proposal, in contrast, has the support of one plaintiff alone. Immediately after filing the *Home Tech* complaint and without attempting to cooperate with Majority Counsel, PSW and LGN moved the Court to appoint them as the sole leaders of this case, despite being absent from all prior proceedings and despite representing only one client that may not be a direct purchaser of capacitors. Their assertion of having an "inclusive" management style is contradicted by their actions here. And, significantly, they admit that Majority Counsel ***are qualified*** to lead these actions.

What these late arrivals are saying, in effect, is that they should be appointed exclusively to run the litigation, even though they filed late and have done the least to advance these actions. This is both unfair and bad policy, as it discourages private ordering, incentivizes late-filers, and imposes an unnecessary burden on courts to resolve wasteful leadership battles. It is especially unwarranted here as Majority Counsel are highly qualified and have substantial resources to litigate this matter, have been proceeding collegially and effectively for months, and have made substantial progress during the course of extensive case management negotiations with the Defendants and the United States Department of Justice ("DOJ") to move this litigation forward. The merit of the Unopposed Motion is demonstrated by the leadership and diligence of Majority Counsel who have already significantly advanced the litigation in the best interests of the class.

Accordingly, Direct Purchaser Plaintiffs respectfully request that this Court grant their Unopposed Motion and deny Home Tech's Motion.

## II.        PROCEDURAL BACKGROUND

### A.        Initial Proceedings.

On July 18, 2014 and July 22, 2014, respectively, Plaintiffs Chip-Tech and Dependable filed the first two actions[4] in the United States against the leading global manufacturers of capacitors. In their

---

[3] As noted *supra*, Majority Counsel are also supported by counsel for a fifth direct purchaser plaintiff, Quathimatine.

[4] Case Nos. 3:14-cv-03264-JD (the "*Chip-Tech* Action") and 3:14-cv-03300-JD (the "*Dependable* Action").

complaints, Chip-Tech and Dependable alleged that Defendants entered a conspiracy to fix, raise and stabilize the price for aluminum and tantalum electrolytic capacitors at supracompetitive levels. Both actions were filed in the United States District Court for the Northern District of California.

On August 1, 2014, eIQ Energy, after conducting its own investigation and analysis, filed its direct purchaser complaint in the District of New Jersey. (Case No. 2:14-cv-04826-ES-MAH [the "*eIQ Energy* Action]) (Declaration of Howard J. Sedran ¶¶ 5-6) ("Sedran Decl.").

On August 14, 2014, after conducting its own investigation and analysis, Schuten filed its complaint in the Northern District of California (Case No. 3:14-cv-03698-JD [the "*Schuten* Action"].) (Declaration of Kit A. Pierson ¶¶ 5-6) ("Pierson Decl.").

The *eIQ Energy* and *Schuten* Actions made similar allegations and sought similar relief, except that the *eIQ Energy* Action also alleged that the cartel extended to film capacitors and proposed a shorter class period. (Sedran Decl. ¶ 23).

Plaintiffs Chip-Tech and Dependable initiated proceedings (M.D.L. No. 2574) before the Judicial Panel on Multidistrict Litigation ("JPML") on August 7, 2014, by filing a Motion to Transfer all capacitor price-fixing cartel cases to the Northern District of California. (Saveri Decl. ¶ 29).

**B.    Direct Purchaser Plaintiffs Reach Consensus.**

Prior to resolution by the JPML, the four Direct Purchaser Plaintiffs entered into lengthy and challenging negotiations to organize the litigation in the best interests of the class. The course of these negotiations forecloses PSW and LGN's assertion that Majority Counsel come from "essentially the same group." (Home Tech Motion at 1, 6). Counsel in each of the cases stated that each intended to seek appointment as Interim Class Counsel independently, and each were highly qualified and able to perform that role. (Saveri Decl. ¶ 46; Pierson Decl. ¶ 10-14; Sedran Decl. ¶ 24). Achieving a resolution therefore required real compromises. (Saveri Decl. ¶ 48; Sedran Decl. ¶ 24). Nonetheless, they each well understood the value of private ordering and set about negotiating a leadership structure. (Saveri Decl. ¶ 47; Pierson ¶¶ 8-9; Sedran ¶¶ 11-16). These negotiations resulted in an agreement among all Direct Purchaser Plaintiffs to centralize all cases in the Northern District of California before this Court. (Saveri Decl. ¶¶ 48-49; Sedran Decl. ¶ 17). On September 11, 2014, Plaintiff eIQ Energy dismissed its action in the District of New Jersey without prejudice and refiled in the Northern District of California

(Case No. 5:14-cv-04123-JD). (Saveri Decl. ¶ 49; Sedran Decl. ¶ 17). On September 16, 2014, the JPML deemed the Motion to Transfer moot and vacated the hearing. (M.D.L. 2574, Dkt. No. 102).

**C.    Direct Purchaser Plaintiffs Organized and Advanced the Litigation.**

Direct Purchaser Plaintiffs promptly consulted with each other, cooperated closely, and began dividing responsibilities to organize and advance the litigation efficiently. The Direct Purchaser Plaintiffs filed their Unopposed Motion on September 16, 2014, which was unopposed because it was the product of substantial negotiation and ultimately a consensus of all Direct Purchaser Plaintiffs.[5] The Unopposed Motion was set for hearing on October 29, 2014, pursuant to the Local Rules and the Court's Standing Order. As there was no opposition, Direct Purchaser Plaintiffs did not file a reply.

This Court has found the *Chip-Tech*, *Dependable*, *Schuten*, and *eIQ Energy* Actions to be related (Dkt. 31, 82, 121, 133) and, on October 2, 2014, ordered consolidation for pretrial purposes (Dkt. 133) (the "Consolidation and Case Management Order"). In its Consolidation and Case Management Order, the Court set the Initial Case Management Conference ("Initial CMC") for October 29, 2014, and noted that the Unopposed Motion was set for hearing on the same date.

Majority Counsel have performed substantial work to advance the litigation and prepare for the Initial CMC, including the following:

- Served all Defendants located in the United States (Saveri Decl. ¶ 53; Sedran Decl. ¶ 8);

- Initiated service on all Defendants located outside the United States (Saveri Decl. ¶ 53; Declaration of Solomon B. Cera ¶ 4 ("Cera Decl."); Sedran Decl. ¶ 8);

- Translated the complaint into Japanese for service on Japanese Defendants (Cera Decl. ¶ 4; Sedran Decl. ¶ 9);

---

[5] The Unopposed Motion has the support of eleven law firms. In addition to Majority Counsel, those supporting the Unopposed Motion include a number of firms with nationwide reputations and a long track record of successfully trying and resolving antitrust and other complex litigation matters. (*See* Declaration of Eric L. Cramer, Esq. in Support of Majority Class Counsel; Declaration of Vincent J. Esades in Support of Majority Class Counsel; Declaration of Steven J. Greenfogel in Support of Direct Purchaser Plaintiffs' Opposition to Motion for Appointment of Pearson, Simon & Warshaw, LLP and Lockridge Grindal Nauen P.L.L.P. as Interim Co-Lead Class Counsel; Declaration of Roberta D. Liebenberg in Support of Majority Counsel).

- Negotiated stipulations with all served Defendants regarding service of process and a schedule for responsive pleadings (Saveri Decl. ¶ 54; Sedran Decl. ¶ 8);

- Significantly advanced the draft of a consolidated complaint, which, in contrast to Home Tech's counsel, Majority Counsel will be prepared to file shortly after issues of leadership are resolved (Saveri Decl. ¶¶ 93, 102; Cera Decl. ¶ 4; Pierson Decl. ¶ 24);

- Wrote to the amnesty applicant requesting prompt compliance with the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") (Saveri Decl. ¶¶ 55-62, Exs. L-O; Cera Decl. ¶ 4; Pierson Decl. ¶ 24; Sedran Decl. ¶ 22), and arranged and initiated discussions with the amnesty applicant (Saveri Decl. ¶¶ 97-102; Cera Decl. ¶ 4; Pierson Decl. ¶ 24; Sedran Decl. ¶ 22);

- Over considerable resistance spanning several weeks in September and early October, organized and scheduled a conference of all counsel to conduct the initial Rule 26(f) conference, which occurred on October 9, 2014 (Saveri Decl. ¶¶ 72-81, Exs. U-Y);

- At the Rule 26(f) conference, met and conferred with all parties regarding a proposed litigation schedule, prepared by Majority Counsel (Saveri Decl. ¶¶ 85-86, Ex. AA); discussed all issues relating to the initial CMC (Saveri Decl. ¶ 79), the proposed Protective Order drafted by Majority Counsel, and a proposed Stipulation regarding expert discovery (Saveri Decl. ¶¶ 79-80, Ex. Y; Sedran Decl. ¶ 21);

- Initiated Rule 26 discussions regarding the preservation, maintenance and production of ESI, pursuant to the Northern District Guidelines (Saveri Decl. ¶¶ 82-83, Ex. Z; Cera Decl. ¶ 4; Sedran Decl. ¶ 21);

- Coordinated with counsel for the Indirect Purchaser Plaintiffs (Saveri Decl. ¶ 96; Pierson ¶ 24);

- Made their initial disclosures pursuant to Rule 26 (Saveri Decl. ¶ 95; Cera Decl. ¶ 4; Pierson Decl. ¶ 24);

- Continued to investigate and research Plaintiffs' Sherman Act claim (Saveri Decl. ¶ 9);

- Prepared the joint CMC Statement, synthesizing the views of dozens of law firms (Saveri Decl. ¶¶ 128-144, Exs. JJ-PP; Sedran Decl. ¶ 19-20);

- Drafted interrogatories and document requests (Saveri Decl. ¶ 94);and

- Started the process of selecting ESI vendors (Cera Decl. ¶ 4).

**D. Home Tech Filed Late and Immediately Moved to Supplant the Majority Leadership Group Entirely.**

On October 8, 2014, nearly three months after certain of the Majority Counsel filed the first capacitors antitrust action and one day after briefing closed on the Unopposed Motion, Plaintiff Home Tech filed its complaint in the Northern District of California (Case No. 3:14-cv-05414-EDL).[6] Shortly thereafter, Majority Counsel spoke on the telephone with counsel for Home Tech. (Saveri Decl. ¶¶ 124-126). During that telephone call, Majority Counsel described the substantial progress of the litigation, the negotiations that had produced the consensus reflected in the Unopposed Motion, and the substantial collaborative work done to advance the case, and invited PSW and LGN to join Plaintiffs' counsel and work together as a team. (Saveri Decl. ¶ 124). PSW and LGN rejected that invitation outright. (Saveri Decl. ¶ 125). When asked the basis for Home Tech's Motion and the rationale for supplanting the consensus reflected in the Unopposed Motion, PSW and LGN stated that the reason was their "investigation" and "resume." (Saveri Decl. ¶ 126). PSW and LGN provided no other basis. (Saveri Decl. ¶ 126). Instead, PSW and LGN asked that Majority Counsel agree to a briefing schedule on shortened time. (Saveri Decl. ¶ 121). Majority Counsel agreed. (Dkt. 194). On October 15, 2014, Plaintiff Home Tech moved this Court to appoint its counsel as Interim Co-Lead Class Counsel. (Dkt. 193).[7] On October 17, 2014, the Court entered the stipulation and order shortening time to hear Home Tech's Motion, subject to certain briefing limitations. (Dkt. 218).

## III. ARGUMENT

Majority Counsel should be appointed Interim Class Counsel under the criteria of Rule 23: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the

---

[6] Notably, the *Home Tech* Complaint also came more than four weeks after the resolution of the JPML proceedings, and one week after the Court issued its Consolidation and Case Management Order.

[7] To the extent Home Tech avoided the briefing schedule on the Unopposed Motion by filing its complaint and own leadership motion after briefing had closed, Home Tech's motion is untimely.

action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Majority Counsel have already explained their qualifications and experience in detail and will not recite them again here. (*See* Unopposed Motion at 6-14; *see also* Declaration of Joseph R. Saveri in Support of Unopposed Motion of Direct Purchaser Plaintiffs to Appoint Interim Class Counsel and exhibits attached thereto (Dkt. 102-1-5)). Indeed, PSW and LGN "do not question the experience of [Majority Counsel];" nor do they claim to be better qualified to lead this litigation. (Home Tech Motion at 5).

Thus, Home Tech provides no basis for supplanting Majority Counsel at this juncture.

## A.  Majority Counsel Have Wide Ranging Support.

Majority Counsel are supported by all of the plaintiffs and law firms that initiated this litigation (as well as the most recent direct purchaser plaintiff to file, Quathimatine). (Saveri Decl. ¶ 4; *see generally,* Saveri Decl.; Cera Decl.; Cramer Decl.; Esades Decl.; Greenfogel Decl.; Liebenberg Decl.; Pierson Decl.; Sedran Decl. ). This weighs in favor of Majority Counsel's proposal. In cases such as this, the most common and desirable means of selecting class counsel is "private ordering." MANUAL FOR COMPLEX LITIGATION 4th ed. (2006) (the "Manual") § 21.27 at 279. That is, "[t]he lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests." *Id*. Efforts of plaintiffs' counsel to coordinate their activities among themselves are to be encouraged. Manual § 10.22 at 24. Majority Counsel respectfully submit that their resolute and successful efforts to reach consensus should be recognized.

On or around September 8, 2014, following extensive negotiations, counsel for all Direct Purchaser Plaintiffs unanimously agreed on a leadership structure. On September 16, 2014, more than three weeks before Home Tech appeared, counsel for all Direct Purchaser Plaintiffs filed their Unopposed Motion consistent with that agreement. The result is a proposal that has the support of all direct purchasers who had filed a complaint at the time, including four plaintiffs who have filed four

separate complaints and other highly respected law firms with demonstrable experience and a track record of success in antitrust litigation. (*See generally,* Saveri Decl.; Cera Decl.; Cramer Decl.; Esades Decl.; Greenfogel Decl.; Liebenberg Decl.; Pierson Decl.; Sedran Decl.).

Home Tech is the only Plaintiff seeking to upset the consensus. In making this bold request, it boasts having the support of all the law firms on its own complaint. This is singularly unimpressive. PSW and LGN share representation of a single client, and any claim of private ordering by counsel on the same complaint is weak at best.

PSW and LGN repeatedly contend that Majority Counsel all "come from essentially the same group." (Home Tech Motion at 1, 2, 6). This is incorrect. (Saveri Decl. 46; Sedran Decl. ¶ 24). As the various complaints and JPML briefing establish on their face, Majority Counsel comprise several law firms that brought a number of lawsuits, on behalf of their own, separate clients, and they did not have a pre-existing agreement regarding a leadership structure. (Saveri Decl. ¶ 46; Pearson Decl. ¶ 10; Sedran Decl. ¶¶ 5-7, 24). Indeed, in the absence of an agreement, each of the proposed Interim Class Counsel firms intended to seek appointment separately. (Saveri Decl. ¶ 46; Pierson Decl. ¶ 10; Sedran Decl. ¶ 24). Thus, they only constitute a "group" in the sense that they did what the Manual for Complex Litigation recommends: they privately ordered by reaching a consensus and then filed an unopposed motion consistent with that consensus. In contrast, the ***only*** firms that support PSW and LGN are the firms included on the *Home Tech* Complaint, filed nearly three months after this litigation commenced.

Appointing PSW and LGN to lead these actions would be bad policy as it would (1) penalize firms for privately ordering in an efficient and timely manner; (2) discourage tag-along plaintiffs from participating and collaborating with those who have already filed lawsuits; (3) incentivize firms to avoid compromising until the very last second out of fear that a late filer could upset the compromise and supplant the consensus group; and (4) upend the progress made by counsel who diligently advanced the litigation. PSW and LGN have provided no sound basis for displacing the firms proposed for leadership by Majority Counsel. Nor, for that matter, is there any basis for rewarding their late filing by giving PSW and LGN a superior position to the other highly qualified firms that filed much earlier and, rather than seeking leadership themselves, agreed to support Majority Counsel because they regarded this as the best structure to lead this litigation effectively. Home Tech's motion should therefore be rejected.

**B.     Majority Counsel Thoroughly Investigated Their Claims and Promptly Initiated These Actions.**

PSW's and LGN's demand to be the leaders of this case is particularly unpersuasive given the extensive work done to date by Majority Counsel to investigate and identify the claims and to move this litigation forward. Majority Counsel devoted significant time, resources, and energy to investigate their claims and ultimately file the first four actions alleging a capacitors price-fixing conspiracy. (Saveri Decl. ¶ 5-11, 22; Cera Decl. ¶ 3; Pierson Decl. ¶¶ 5-6; Sedran Decl. ¶¶ 5-6).

In early April 2014, Majority Counsel each began independently investigating potential antitrust violations in the capacitors market. (Saveri Decl. ¶ 5; Cedra Decl. ¶ 3, Sedran ¶ 5). Specifically, JSLF investigated the industry and Defendants' allegedly conspiratorial conduct for over three months before Chip-Tech filed the first capacitors antitrust action. (*See* Saveri Decl. ¶¶ 5-12). These efforts involved, among other things, interviewing individuals with specialized knowledge of the capacitor industry such as economists, electrical engineers, business owners, industry analysts, and members of the press familiar with the investigation. (Saveri Decl. ¶¶ 5-12). To bolster their factual and legal investigation and research, JSLF also retained experienced economic consultants who performed detailed economic analyses of the capacitors market. (Saveri Decl. ¶¶ 5-12). JSLF was also assisted by GBCS and its independent investigative efforts before the initial *Chip-Tech* Complaint was filed. (Saveri Decl. ¶¶ 15, 18; Cera Decl. ¶ 3).

The 47-page *Chip-Tech* Complaint reflects the scope of that investigation. (Dkt. 1). This complaint details the nature and scope of the capacitors cartel and the price-fixing activity. It identifies the products which are the subject of the conspiracy, the relevant class period ( January 1, 2005 to the present), the 28 participants involved in the capacitors price-fixing conspiracy, the economic characteristics of the market, and the factors that make the market susceptible to cartelization. It seeks relief in the form of overcharge damages measured as the difference between the supracompetitive prices charged and the lower prices that would have been charged but for the conspiracy, as well as injunctive relief. It also accurately identifies the amnesty applicant under ACPERA.

As discussed above (*see supra*, Section II.A), eIQ Energy conducted its own investigation. (Sedran Decl. ¶ 5). eIQ Energy consulted with industry experts and hired an experienced economic

consultant to provide assistance to counsel. (Sedran Decl. ¶ 5). eIQ Energy alleged a conspiracy similar in many respects to the *Chip-Tech* Complaint. (Case No. 5:14-cv-04123-JD, Dkt. 1). However, eIQ Energy also alleged that Defendants' collusive action extended to film capacitors. (Sedran Decl. ¶ 23). Based upon information provided by the ACPERA applicant, eIQ Energy's allegations concerning film capacitors were correct. (*See* Sedran Decl. ¶ 23; Saveri Decl. ¶ 100). This is but just one example of Majority Counsel's independent analysis producing important results.

Schuten's counsel also conducted an independent investigation of the industry and the conduct at issue, culminating in the filing of its complaint in August 2014. (*See* Pierson Decl. ¶¶ 5-6).

Home Tech has borrowed liberally from the several complaints that preceded theirs. Among other things, Home Tech alleges the same cartel involving electrolytic capacitors. (Case No. 3:14-cv-05414-EDL, Dkt. 1 at ¶ 1) ("*Home Tech* Complaint"). Home Tech does not identify a single additional Defendant not previously named in the preceding complaints. It alleges claims against 26 of the 28 Defendants named in the *Chip-Tech* and *Dependable* Actions. (*Compare Chip-Tech* Complaint at ¶¶ 22-62 with *Home Tech* Complaint at ¶¶ 18-54). Home Tech repeats the same class period allegations. (*Compare Chip-Tech* Complaint at ¶ 67 with *Home Tech* Complaint at ¶¶ 160). It also repeats the allegation regarding the identity of the ACPERA applicant. (*Compare Chip-Tech* Complaint at ¶ 178 with *Home Tech* Complaint at ¶¶ 153-154).[8]

While Majority Counsel do not dispute that PSW and LGN conducted some sort of investigation, it is unclear what, if any, useful information they uncovered that was not already contained in the previously filed complaints and reported in the press. (Saveri Decl., Exs. A-E, H, HH). Thus, the record shows that Majority Counsel performed accurate and thorough investigations and did them first, providing the blueprint for all subsequently filed complaints (both direct and indirect). Home Tech's analysis was derivative, duplicative, and incorrect. This provides no basis to supplant Majority Counsel.

---

[8] Significantly, what Home Tech did not borrow, it appears to have gotten wrong. For example, Home Tech alleges that the cartel involved supercapacitors. Based upon information provided by the ACPERA applicant, the claim that Defendants' conspiracy extended to supercapacitors appears to be incorrect at this time. (Saveri Decl. ¶ 100).

**C.     Majority Counsel Have Demonstrated Their Strong Leadership Qualities.**

This is not the ordinary case where leadership issues are to be determined at the outset, before substantial work has already been performed. As detailed above (*see supra*, Section II.C.), Majority Counsel have organized and for some time advanced this litigation—completing numerous tasks and preparing for the Initial CMC. (*See supra*, Section II.C) In doing so, Majority Counsel have demonstrated the leadership qualities expected of qualified class counsel in complex litigation, ensuring all Plaintiffs' counsel—including counsel for the Indirect Purchaser Plaintiffs—work closely to organize the case and move it forward. These efforts required significant discussion and collaboration among and between counsel for Direct Purchaser Plaintiffs as well as discussions and negotiations with counsel for the Defendants. (*See* Saveri Decl. ¶¶ 52-114, Exs. M-GG; Pierson ¶ 24; Sedran Decl. ¶ 20-22).[9] Establishing these relationships is an important part of effective leadership in complex matters. Appointing Majority Counsel to leadership roles will ensure that these actions continue to move in the right direction and in the best interests of the class. Resetting the management structure at this time would upend the progress made.

**D.     Majority Counsel's Proposal Will Best Serve the Interests of the Direct Purchaser Plaintiffs and the Class.**

The Unopposed Motion should be granted because it will best serve the interests of the class. This is a complex and large litigation. Direct Purchaser Plaintiffs have sued 33 Defendants, many of which are foreign corporations and include some of the largest global commercial enterprises. They are represented by some of the best defense firms in the country. The alleged conspiracy spanned nearly a decade in an industry that, in the last fiscal year, generated nearly $20 billion in global sales. Prosecution of such litigation on behalf of the class not only requires collaboration by experienced antitrust lawyers, but also substantial time, resources, and energy. These actions have already required the separate and substantial contributions of JSLF, GBCS, LFSB, and CMST working together to advance the litigation to date. It has required—and will require—significant financial resources. An agreement to share these

---

[9] Quathimatine's recent support of Majority Counsel further demonstrates their inclusive approach to leadership and willingness to cooperate with tag-along plaintiffs.

Master File No. 3:14-cv-03264-JD                                11

Direct Purchaser Plaintiffs' Opposition to Motion for Appointment of Pearson, Simon & Warshaw, LLP and Lockridge Grindal Nauen P.L.L.P. as Interim Co-Lead Class Counsel

commitments by four lead firms, supported by six others, ensures that Plaintiffs' counsel and the class they represent will have the resources and experience to prosecute the litigation effectively.

Indeed, the proposed structure is commonplace in complex antitrust class actions, particularly one of this scope. *See, e.g., In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420-YGR (N.D. Cal. May 17, 2013 and July 10, 2013) Dkt. 194, 229 (appointing three firms as interim co-leads, one firm as liaison, and a seven-firm steering committee) (Saveri Decl., Exs. QQ, RR); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 4:02-md-01486-PJH (N.D. Cal. Sept. 20, 2005), Dkt. 572 at 7 (appointing four firms as co-lead counsel for indirect purchasers) (Saveri Decl., Ex. SS); *In re Methionine Antitrust Litig.*, No. 3:00-md-01311-CRB (N.D. Cal.) (four firms appointed as co-lead class counsel); *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-02409-WGY (D. Mass. 2013), Dkt. 85 at 5-6 (appointing four firms as interim co-lead counsel and six firms to an executive committee) (Saveri Decl., Ex. TT); *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-02472-S-PAS (D.R.I. Feb. 14, 2014), Dkt. 85 at 2-5 (appointing four firms as interim co-lead) (Saveri Decl., Ex. UU); *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 408 (S.D. Ohio 2007); *In re Air Cargo Antitrust Litig.*, 240 F.R.D. 56, 58-59 (E.D.N.Y. 2006). The efficacy of this approach is demonstrated by the progress made by Majority Counsel before and after Home Tech filed its complaint, including Majority Counsel's collegial and effective communications and discussions with counsel for the many Defendants, the ACPERA applicant, and the DOJ.

PSW's and LGN's claim that they offer a "more streamlined" structure is simply not true. *See* Home Tech Motion at 6. First, they concede a case of this magnitude will require the assistance of several firms and the devotion of substantial resources. *See* Home Tech Motion at 14. Second, while they claim that a two-firm structure is "more streamlined" (*see* Home Tech Motion at 6), they have included seven firms on one complaint and have failed to explain how these firms will make contributions. Third, to the extent there are concerns regarding efficiency, the Court may require Plaintiffs' counsel—as is commonly done and expected here—to adopt procedures for regular time and cost reporting. *See e.g., In re Lidoderm Antitrust Actions*, No. 3:14-md-02521-WHO (N.D. Cal. May 23, 2014) Dkt. 63 (ordering plaintiffs' counsel in antitrust class action to follow certain time reporting

Master File No. 3:14-cv-03264-JD

12

Direct Purchaser Plaintiffs' Opposition to Motion for Appointment of Pearson, Simon & Warshaw, LLP and Lockridge Grindal Nauen P.L.L.P. as Interim Co-Lead Class Counsel

procedures to avoid unnecessary duplication and to promote efficiency) (Saveri Decl., Ex. VV).[10]

Finally, PSW's and LGN's assertion that they will use "an inclusive management style" in seeking

others' participation is contradicted by their conduct in this litigation. *See* Home Tech Motion at 14.

Since filing the *Home Tech* Complaint, PSW's and LGN's only material efforts in this litigation have

been to threaten to disrupt the case management schedule in order to secure a stipulation on the briefing

of their motion, to frustrate the filing of the joint CMC statement, and to exclude and refuse to

cooperate with the firms that initiated and advanced the litigation. (Saveri Decl. ¶¶ 122, 124-128, 136-

137, 139, 141; Dkt. 193). This is not "inclusive" managerial behavior.

### E. Home Tech's Motion and Its Counsel Have Sidetracked the Litigation and Disrupted the Efforts of Majority Counsel to Advance the Litigation.

Home Tech and its counsel filed late and chose not to cooperate with the existing consensus.

Worse still, since filing suit, they have delayed the orderly progression of the litigation, including the

preparation for the Initial CMC. In the Consolidation and Case Management Order, the Court directed

the parties to complete many tasks in advance of the hearing. (Dkt. 133 at 3). The Court emphasized

that "Counsel should confer and seek consensus to the fullest extent possible" and that the Court

expects "parties on the same side of the 'v.' – [to] consolidate all filings and submissions as much as

possible[.]" (Dkt. 133 at 3). That process was well underway and near completion until Home Tech's

counsel inserted themselves into the proceedings.

PSW's and LGN's first order of business was to inform Majority Counsel that they would move

the Court to appoint them as the sole leaders of these actions. (Saveri Decl. ¶ 119, Ex. II). In addition,

they have sought to impede Majority Counsel's attempts to proceed with substantive legal tasks pending

resolution of the leadership motion. This all could have easily been avoided—and the litigation

advanced—had Home Tech entered the litigation seeking to cooperate and collaborate. The latest

example is the preparation of the joint CMC Statement. Majority Counsel began work on a draft of the

joint CMC Statement in early October, in preparation for the Initial CMC. (Saveri Decl. ¶ 129).

Majority Counsel scheduled a meeting of all counsel at this time. (Saveri Decl. ¶ 63). The prescribed

---

[10] Indeed, Majority Counsel's proposed order (Dkt. 102-6) would require them to avoid "unnecessary duplication and unproductive efforts."

Master File No. 3:14-cv-03264-JD

13

Direct Purchaser Plaintiffs' Opposition to Motion for Appointment of Pearson, Simon & Warshaw, LLP and Lockridge Grindal Nauen P.L.L.P. as Interim Co-Lead Class Counsel

subjects were discussed at the meeting. (Saveri Decl. ¶ 81). Majority Counsel circulated drafts of the statement, including to PSW and LGN. (Saveri Decl. ¶¶ 128-129). It was a herculean effort to incorporate the views of all counsel in that project. (Saveri Decl. ¶¶ 129, 143; Sedran Decl. ¶ 19). Late on the day of filing, PSW and LGN issued an ultimatum demanding changes to the joint CMC Statement to eliminate references to the substantial progress of the litigation under the direction of Majority Counsel, and more generally, to inaccurately describe work done by others as the work of PSW and LGN. (Saveri Decl. ¶¶ 136-137). When Majority Counsel refused to include misleading and inaccurate statements to the Court, Home Tech withdrew from the process and filed its own statement. (Saveri Decl. ¶¶ 139-142, 144). Majority Counsel nonetheless included, in the final joint CMC Statement, Home Tech's positions that it had submitted earlier. (Saveri Decl. ¶ 139).

**F.      Home Tech's Questionable Standing and Class Definition Weigh Against Appointing Its Counsel to Represent the Class.**

Home Tech is a television repair service company[11] that asserts claims on behalf of a proposed class that includes purchasers of circuit boards containing capacitors. (*Home Tech* Complaint at ¶¶ 1, 160). This class definition is markedly different from that of the Direct Purchaser Plaintiffs, who seek to represent direct purchasers of electrolytic and film capacitors—not purchasers of finished products containing capacitors. It is unclear whether Home Tech directly purchased free-standing capacitors from a Defendant, given its proposed class definition and the nature of its business, namely, television repairs—which typically involve replacing circuit boards and not the purchase and installation of free-standing capacitors.

In contrast, Direct Purchaser Plaintiffs, individually and collectively, regularly bought substantial amounts of capacitors directly from Defendants during the class period and, therefore, bring claims only on behalf of direct purchasers of capacitors. (Saveri Decl. ¶¶ 11, 17, 47). Because they made significant

---

[11] Home Tech's website states that it "is a factory authorized TV servicer for most major TV manufacturers." (*See* http://www.inhometechsolutions.net/?page_id=90) (webpage last viewed October 24, 2014).

direct purchases of the capacitors at the center of the conspiracy,[12] Majority Counsel's clients have strong economic interests in this litigation and will represent the interests of the proposed class of direct purchasers of capacitors effectively. (Saveri Decl. ¶¶ 11, 17, 47).

In addition, Direct Purchaser Plaintiffs see no benefit and no economic basis for including circuit board purchasers in this litigation. Even Home Tech fails to provide support for that approach. Home Tech's complaint does not allege that the conspiracy covered circuit boards. The disconnect between its proposed class definition and its factual allegations is highlighted by the fact that capacitors are used in "data processing equipment, personal computers, communication systems, cellular phones, consumer electronics, automotive systems, defense and aerospace systems, power management systems, and other electronic devices," and "are found in virtually any product that uses electricity from a battery or an electrical outlet." (*Home Tech* Complaint at ¶ 2). Thus, its complaint raises the question: why expand the class to cover circuit board purchasers, but not purchasers of all the other capacitor applications? The *Home Tech* Complaint does not even begin to answer that question.

These concerns further support Majority Counsel's proposed leadership structure.

## IV.   CONCLUSION

Majority Counsel are highly qualified and committed to the efficient and expeditious prosecution of these actions. Majority Counsel investigated Defendants' allegedly unlawful conduct thoroughly, promptly initiated proceedings to protect the rights of their clients and the class, and have worked effectively with each other and with counsel for Indirect Purchaser Plaintiffs and Defendants. Their proposed leadership structure represents the consensus view and is opposed by only one plaintiff that filed much later. For these and other reasons set forth above, Majority Counsel respectfully request that the Court grant their Unopposed Motion, deny Home Tech's Motion, and allow the parties to return to the orderly advancement of this litigation without delay.

---

[12] As noted above, Home Tech also alleged a cartel involving supercapacitors (*Home Tech* Complaint at ¶ 1), which, upon information provided by the ACPERA applicant, appears to be incorrect. (Saveri Decl. ¶ 100).

Dated: October 24, 2014

Respectfully submitted,

JOSEPH SAVERI LAW FIRM, INC.

By:      */s/ Joseph R. Saveri*
            Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Andrew M. Purdy (State Bar No. 261912)
James G. Dallal (State Bar No. 277826)
Ryan J. McEwan (State Bar No. 285595)
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
apurdy@saverilawfirm.com
jdallal@saverilawfirm.com
rmcewan@saverilawfirm.com

*Attorneys for Individual and Representative Plaintiffs*
*Chip-Tech, Ltd., Dependable Component Supply*
*Corp. and eIQ Energy Inc.*

Dated: October 24, 2014

GOLD BENNETT CERA & SIDENER LLP

By:      */s/ Solomon B. Cera*
            Solomon B. Cera

Solomon B. Cera (State Bar No. 99467)
C. Andrew Dirksen (State Bar No. 197378)
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
scera@gbcslaw.com
cdirksen@gbcslaw.com

*Attorneys for Individual and Representative Plaintiffs*
*Chip-Tech, Ltd., Dependable Component Supply*
*Corp.*

Master File No. 3:14-cv-03264-JD

16

Direct Purchaser Plaintiffs' Opposition to Motion for Appointment of Pearson, Simon & Warshaw, LLP and Lockridge Grindal
Nauen P.L.L.P. as Interim Co-Lead Class Counsel

Dated: October 24, 2014                     LEVIN, FISHBEIN, SEDRAN & BERMAN

                                            By:      */s/ Howard J. Sedran*
                                                        Howard J. Sedran

                                            Howard J. Sedran, *pro hac vice*
                                            Austin B. Cohen, *pro hac vice*
                                            Keith J. Verrier, *pro hac vice*
                                            510 Walnut Street, Suite 500
                                            Philadelphia, PA 19106
                                            Telephone:  (215) 592-1500
                                            Facsimile:  (215) 592-4663
                                            Email:       hsedran@lfsblaw.com
                                                         acohen@lfsblaw.com
                                                         kverrier@lfsblaw.com

                                            *Attorneys for Individual and Representative Plaintiff
                                            eIQ Energy, Inc.*

Dated: October 24, 2014                     COHEN MILSTEIN SELLERS & TOLL, PLLC

                                            By:      */s/ Kit A. Pierson*
                                                        Kit A. Pierson

                                            Kit A. Pierson, *pro hac vice*
                                            Brent W. Johnson, *pro hac vice*
                                            Laura Alexander, *pro hac vice*
                                            1100 New York Ave., N.W. Suite 500, East Tower
                                            Washington, DC 20005
                                            Telephone: (202) 408-4600
                                            Email:       kpierson@cohenmilstein.com
                                                         bjohnson@cohenmilstein.com
                                                         lalexander@cohenmilstein.com

                                            *Attorneys for Individual and Representative Plaintiff
                                            Schuten Electronics, Inc.*

Dated: October 24, 2014                     BERGER & MONTAGUE, P.C.

                                            By:      */s/ Eric L. Cramer*
                                                        Eric L. Cramer

                                            Eric L. Cramer, *pro hac vice*
                                            Ruthanne Gordon, *pro hac vice*
                                            1622 Locust Street
                                            Philadelphia, PA 19103
                                            Telephone:  (215) 875-3000
                                            Facsimile:  (215) 875-4604
                                            Email:       ecramer@bm.net
                                                         rgordon@bm.net

Direct Purchaser Plaintiffs' Opposition to Motion for Appointment of Pearson, Simon & Warshaw, LLP and Lockridge Grindal
Nauen P.L.L.P. as Interim Co-Lead Class Counsel

Dated: October 24, 2014                    HEINS MILLS & OLSON, P.L.C.

                                           By:        /s/ Vincent J. Esades
                                                      Vincent J. Esades

                                           Vincent J. Esades *pro hac vice*
                                           310 Clifton Avenue
                                           Minneapolis, MN 55403
                                           Telephone:  (612) 338-4605
                                           Facsimile:  (612) 338-4692
                                           Email:      vesades@heinsmills.com

Dated: October 24, 2014                    LITE DEPALMA GREENBERG, LLC

                                           By:        /s/ Steven J. Greenfogel
                                                      Steven J. Greenfogel

                                           Steven J. Greenfogel *pro hac vice forthcoming*
                                           1521 Locust Street, 7th Floor
                                           Philadelphia, PA 19102
                                           Telephone:  (267) 519-8306
                                           Facsimile:  (215) 569-0958
                                           Email:      sgreenfogel@litedepalma.com

                                           Joseph J. DePalma *pro hac vice forthcoming*
                                           Two Gateway Center, 12th Floor
                                           Newark, NJ 07102
                                           Telephone:  (973) 623-3000
                                           Facsimile:  (973) 623-0211
                                           Email:      jdepalma@litedepalma.com

                                           *Attorneys for Individual and Representative Plaintiffs*
                                           *Chip-Tech, Ltd., Dependable Component Supply*
                                           *Corp.*

Dated: October 24, 2014                    FINE, KAPLAN AND BLACK, R.P.C.

                                           By:        /s/ Roberta D. Liebenberg
                                                      Roberta D. Liebenberg

                                           Roberta D. Liebenberg, *pro hac vice*
                                           Ria Momblanco, *pro hac vice*
                                           One South Broad Street, 23rd Floor
                                           Philadelphia, PA 19107
                                           Telephone:  (215) 567-6565
                                           Email:       rliebenberg@finekaplan.com
                                                        dperelman@finekaplan.com
                                                        gdever@finekaplan.com
                                                        pcosta@finekaplan.com
                                                        rmomblanco@finekaplan.com

Dated: October 24, 2014

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.

By:  _____/s/ W. Daniel "Dee" Miles, III_____
     W. Daniel "Dee" Miles, III

W. Daniel "Dee" Miles, III, *pro hac vice forthcoming*
218 Commerce Street
Post Office Box 4160 (36103)
Montgomery, AL 36104
 Telephone:  (334) 269-2343
Facsimile:   (334) 954-7555
Email:        dee.miles@beasleyallen.com

Dated: October 24, 2014

LUM, DRASCO & POSITAN, LLC

By:  _____/s/ Dennis J. Drasco_____
     Dennis J. Drasco

Dennis J. Drasco *pro hac vice forthcoming*
Arthur M. Owens *pro hac vice forthcoming*
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone:  (973) 403-9000
Facsimile:   (973) 403-9021
Email:        DDrasco@lumlaw.com
              AOwens@lumlaw.com

*Attorneys for Individual and Representative Plaintiff eIQ Energy Inc.*

Pursuant to Civil Local Rule 5-1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: October 24, 2014

_____/s/ Joseph R. Saveri_____
     Joseph R. Saveri

Master File No. 3:14-cv-03264-JD

19

Direct Purchaser Plaintiffs' Opposition to Motion for Appointment of Pearson, Simon & Warshaw, LLP and Lockridge Grindal Nauen P.L.L.P. as Interim Co-Lead Class Counsel