Solomon B. Cera (State Bar No. 99467)
C. Andrew Dirksen (State Bar No. 197378)
Louis A. Kessler (State Bar No. 243703)
GOLD BENNETT CERA & SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone:(415) 777-2230
Facsimile: (415) 777-5189
Email: scera@gbcslaw.com
Email: cdirksen@gbcslaw.com
Email: lak@gbcslaw.com

*Attorneys for Individual and Representative Plaintiffs
Chip-Tech, Ltd. and Dependable Component Supply Corp.
On Behalf of Themselves and All Others Similarly Situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Case No. 3:14-cv-03264-JD |
| | **DECLARATION OF SOLOMON B. CERA** |
| THIS DOCUMENT RELATES TO ALL DIRECT PURCHASER CLASS ACTIONS | |

I, Solomon B. Cera, declare as follows:

1. I am the managing partner of Gold Bennett Cera & Sidener LLP ("GBCS"). I am one of the counsel for plaintiffs Chip-Tech, Ltd. and Dependable Component Supply Corp. in this litigation. I have been practicing law with my firm and its predecessors for more than thirty-one (31) years. GBCS has a nationwide practice in representing plaintiffs in antitrust and securities litigation. I submit this declaration in opposition to the motion of Pearson, Simon & Warshaw, LLP and Lockridge Grindal Nauen P.L.L.P. to be appointed as Interim Co-Lead Class Counsel in this litigation. The matters stated herein are true of my own personal knowledge and if called to testify thereto I could and would do so.

2. This litigation was initiated by plaintiff Chip-Tech, Ltd. ("Chip-Tech"), which was the first plaintiff to file a complaint in this proceeding. Chip-Tech, a client of my firm from a previous

matter, retained my firm to bring federal antitrust claims against defendants allegedly responsible for forming and carrying-out a conspiracy to fix, stabilize, or maintain prices for capacitors sold in the United States. Chip-Tech, located in Farmingdale, New York, is a distributor of a multitude of electronic products, including various types of capacitors, which it purchased in significant quantities directly from several of the named defendants in this litigation.

3. My firm participated extensively in the investigation and preparation of Chip-Tech's complaint, and decided to work closely in doing so with the Joseph Saveri Law Firm, which I learned had itself conducted an investigation of the market for capacitors prior to the filing of Chip-Tech's complaint. We agreed to work with Mr. Saveri's law firm given his firm's work in investigating this case, as well as our longstanding professional relationship and mutual respect, and in recognition of the fact that this would be a complex litigation that would require a team of skilled antitrust litigators on behalf of plaintiffs. As an example of my firm's past effective working relationship with the Joseph Saveri Law Firm, a few weeks ago, my firm caused to be distributed to class members the proceeds of the settlement in the *Titanium Dioxide Antitrust Litigation*, No. 10-cv-318 RDB (D. Md.), which settled on the last business day before trial was to commence in late 2013. The settlement was for $163.5 million. The *Titanium Dioxide* litigation was initiated by my firm, and GBCS was appointed as co-lead counsel in it along with Mr. Saveri's firm and Lieff Cabraser Heimann & Bernstein LLP. My working relationship with Mr. Saveri is and has always been excellent, dating back to the time in the late 1980s and early 1990s when Mr. Saveri was an associate at McCutchen, Doyle, Brown & Enersen, and was on the other side of a complex securities litigation my firm was prosecuting on behalf of a class of plaintiffs. Mr. Saveri and my firm have always worked together effectively and collegially on the matters we have jointly litigated.

4. Working in cooperation with the other members of the proposed Executive Committee of direct purchaser plaintiffs' counsel (sometimes referred to herein, together with other supporting direct purchaser plaintiffs' counsel, as "Majority Plaintiffs' Counsel"), my firm has participated intensively in this matter over the past several months. We have worked on the following tasks, among others: (i) consulting with our client about the industry, and investigating and preparing the first-filed complaint; (ii) preparing and negotiating the Case Management Conference Statement; (iii) researching an

appropriate ESI protocol for use in this case; (iv) identifying an appropriate ESI vendor; (v) preparing an appropriate protective order; (vi) obtaining information in support of the Rule 26 initial disclosures on behalf of plaintiffs; (vii) addressing ADR requirements; (viii) arranging for the translation of the *Chip-Tech* complaint into Japanese, and service of the complaint in Japan on the Japanese defendants; (ix) addressing related case matters; (x) working on resolution of the MDL proceeding, (xi) preparing and serving a demand on the ACPERA applicant, which has led to a proffer, providing valuable information that will be used in a forthcoming consolidated complaint, as well as attending a resulting proffer; (xii) working on preparation of a to-be-filed consolidated complaint; and (xiii) negotiating the private ordering agreement among the members of the Executive Committee with the support of all Majority Plaintiffs' Counsel.

5. My firm has worked closely, cooperatively, and effectively with each of the other proposed firms that comprise Majority Plaintiffs' Counsel. GBCS has worked cooperatively and successfully with Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein") in antitrust and securities cases for more than 30 years. We are currently working cooperatively with Cohen Milstein on numerous other pending antitrust and securities cases. I have worked personally with Kit A. Pierson, John Dominguez, and Brent W. Johnson of Cohen Milstein in many cases and have an excellent working relationship with them.

6. Similarly, my firm has worked collaboratively and successfully with Howard Sedran of Levin Fishbein Sedran & Berman in several cases, including in *In Re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, MDL 1542 (D.Conn.), where our firms served in a group of four (4) co-lead counsel, and recovered $99 million on behalf of the class in that case based on alleged violations of the Sherman Act. Prior to the filing of the *eIQ Energy, Inc.* complaint, my firm did not have any contact with the Levin Fishbein firm regarding the capacitors matter.

7. Approval of appointment of the proposed Executive Committee is also supported by Eric Cramer of Berger & Montague, P.C. Mr. Cramer was on the Executive Committee in the *Titanium Dioxide* litigation, and my firm worked collaboratively with Mr. Cramer on behalf of the class in that case. Mr. Cramer performed very significant work in that case at a very high level, and myself and my

firm had an excellent and productive working relationship with him and other members of his firm.  We have worked with Berger & Montague on many other matters over the years.

8. The proposal of Majority Plaintiffs' Counsel for appointment of the proposed Executive Committee is further supported by Vincent Esades of Heins Mills & Olson. My firm has worked cooperatively and successfully for years with Mr. Esades and his firm, particularly in *In Re Polyester Staple Antitrust Litigation,* MDL 1516 (W.D.N.C.), which settled shortly before trial for $63.5 million.

9. Over the more than 50 year history of my firm, we have worked on a number of matters with Steven J. Greenfogel of Lite DePalma Greenberg, LLC, and also the Fine Kaplan & Black firm. Most recently, we have worked and continue to work with Fine Kaplan & Black in *In Re Urethanes Antitrust Litigation (Polyether Polyols)*, MDL  1616 (D.Kan.). In each instance, the working relationship was positive and productive, and continues to be to this day.

10. For several reasons, I believe that the structure proposed for representation of the class by Majority Plaintiffs' Counsel is appropriate and warranted in this large and complex litigation.  First, as noted, the firms in Majority Plaintiffs' Counsel's proposed leadership structure have a long history of successful cooperation and collaboration in antitrust litigation which has benefited the clients and classes they have jointly represented.  Second, this is likely to be an extremely complex litigation both factually and legally, requiring the significant resources which Majority Plaintiffs' Counsel are able to bring to the table.  There are a very large number of defendants represented by some of the largest and ablest law firms in the world.  Many of the defendants are also located in foreign countries, and there is likely to be a great deal of international proceedings.  Given the circumstances of this case, I believe that the structure proposed by Majority Plaintiffs' Counsel, including an Executive Committee of four firms with Mr. Saveri as the chairman, is appropriate and will result in the effective prosecution of the claims in this case on behalf of the class.  Majority Plaintiffs' Counsel collectively have the knowledge, experience, ability, and resources to efficiently and successfully represent the class in this litigation.

11. The competing motion for leadership by the Pearson Simon and Lockridge Grindal firms should be denied because it has been filed very belatedly and would be contrary to the goal of private ordering, which is favored by the courts.  Soon after this litigation was commenced by my client, a large number of firms came together and agreed upon a leadership structure that will serve well the interests of

the class, as described above. These prompt and successful efforts by counsel to organize themselves in a complex case such as this are precisely what is favored by courts and commentators. Granting the motion of the Pearson Simon and Lockridge Grindal firms would undermine the salutary purpose of private ordering by permitting late filers to undercut such good faith efforts, thereby discouraging the very policy favored by the courts. Moreover, if Majority Plaintiffs' Counsel's proposal is adopted by the Court, there will undoubtedly be significant work to be assigned to the Pearson Simon and Lockridge Grindal firms in the course of this large and complex litigation.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 24, 2014.

_____
Solomon B. Cera