Eric L. Cramer
Ruthanne Gordon
Michael Dell'Angelo
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone:    (215) 875-3000
Facsimile:    (215) 875-4604
ecramer@bm.net
rgordon@bm.net
mdellangelo@bm.net

*Attorneys for Individual and Representative Plaintiffs Chip-Tech, Ltd. and Dependable Component Supply Corp.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 3:14-cv-03264-JD<br><br>**DECLARATION OF ERIC L. CRAMER, ESQ. IN SUPPORT OF MAJORITY CLASS COUNSEL** |

I, Eric L. Cramer, declare:

1. I am a managing shareholder of the law firm Berger & Montague, P.C.

2. My firm is counsel for plaintiffs Chip-Tech, Ltd. and Dependable Component Supply Corp. in this matter.

3. In this declaration, I will discuss my firm's credentials, *see* ¶¶ 5-8, and my own credentials. *See* ¶¶ 9-12. I will then explain the reasons why my firm supports the leadership group that includes: Joseph R. Saveri of the Joseph Saveri Law Firm, Inc.; Solomon B. Cera of Gold Bennett Cera & Sidener LLP; Howard J. Sedran of Levin Fishbein Sedran & Berman; and Kit A. Pierson of Cohen Milstein Sellers & Toll PLLC ("Majority Class Counsel" or "Majority Counsel"). *See* ¶¶ 13-18.

4. In summary, and by way of introduction, I and my firm support the Majority Class Counsel group to be interim Class Counsel under Fed. R. Civ. P. 23(g) in this case because, among other things, this group (a) is comprised of some of the top antitrust law firms and lawyers in the country, many of whom I have worked with personally in my twenty year career in this field, (b) collectively and separately (before combining into one consensus group) investigated and filed the first set of cases in this Court over three months ago and in the District of New Jersey, (c) is already the "privately ordered" result of negotiations over several weeks between the various firms and counsel representing significant clients with cases on file in this Court and in the District of New Jersey, and reflects the compromise positions of multiple highly qualified firms, including my own, each of which was on file well before Mr. Simon and Mr. Bruckner belatedly filed their tag-along complaint on behalf of a single client, and (d) has shown itself capable of working together efficiently and effectively in the past three months, having completed a great deal of preliminary work in this matter, including extensive investigations of the underlying claims.

## Berger & Montague, P.C.'s Credentials

5. Described by *Chambers & Partners* as a "[b]outique firm with deep expertise in complex antitrust litigation," Berger & Montague pioneered the antitrust class action and has been engaged in the practice of complex and class action litigation for 44 years. *See* Ex. A. The firm was founded by the late David Berger, who is widely considered to be one of the founding fathers of class actions. Berger started the firm along with the late Herbert Newberg, author of the seminal "NEWBERG ON CLASS ACTIONS," and H. Laddie Montague, Jr., who has been referred to as a "dean of the Bar" by *Chambers & Partners*. Since its founding, Berger & Montague has won verdicts and settlements recovering over $30 billion for clients and class

members. Courts across the country have appointed Berger & Montague as lead or co-lead class counsel in hundreds of class actions—many in the antitrust field—and have recognized both the qualifications of Berger & Montague in appointing the firm as lead counsel and the quality of the work performed by the firm in that capacity. *See* Ex. B.

6. The U.S. edition of *The Legal 500*, a guide to worldwide legal services providers, has recommended Berger & Montague as a "Top Tier Firm" for representing plaintiffs in antitrust class action litigation and describes the firm as "excellent," "easy to deal with," and "noted for the depth of its team." *See* Ex. C. Berger & Montague has also appeared on *The National Law Journal*'s "Hot List" of the Top Plaintiffs' Law Firms in the United States in ten of the last twelve years. *See* Ex. D. *Chambers & Partners* has similarly recognized Berger & Montague as a leading antitrust law firm for eight consecutive years. The firm was also recently selected for inclusion on *The National Law Journal* and Law.com's inaugural list of "Elite Trial Lawyers," recognizing law firms that "have done exemplary and cutting-edge work on behalf of their clients and are established leaders in the area of plaintiff law." *See* Ex. E.

7. Over the past 44 years, Berger & Montague has served as lead or co-lead counsel in myriad antitrust cases representing plaintiff classes alleging price fixing, vertical trade restraints, monopolization and other anticompetitive conduct in diverse markets. *See* Ex. F. Berger & Montague is currently serving in a leadership role in the following antitrust cases:

   a. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-md-5075 (E.D.N.Y.);
   b. *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litigation*, No. 14-md-2548 (S.D.N.Y.);
   c. *In re Niaspan Antitrust Litigation*, No. 13-md-2460 (E.D. Pa.);
   d. *In re Loestrin 24 Fe Antitrust Litigation*, No. 13-md-2472 (D.R.I.);
   e. *In re Domestic Drywall Antitrust Litigation*, 13-md-2437 (E.D. Pa.);

f.  *In re Nexium Antitrust Litigation*, No. 12-md-2409 (D. Mass.);

g.  *In re Lipitor Antitrust Litigation*, No. 12-cv-2389 (D.N.J.);

h.  *Castro, et al. v. Sanofi Pasteur Inc.*, No. 11-cv-7178 (D.N.J.);

i.  *In re Effexor XR Antirust Litigation*, No. 11-cv-5479 (D.N.J.);

j.  *In re Androgel Antitrust Litigation (II)*, No. 09-md-2084 (N.D. Ga.);

k.  *In re Chocolate Confectionary Antitrust Litigation*, No. 08-md-1935 (M.D. Pa.);

l.  *In re Wellbutrin XL Antitrust Litigation*, No. 08-cv-2431 (E.D. Pa.);

m.  *In re K-Dur Antitrust Litigation*, No. 01-cv-1652 (D.N.J.); and

n.  *In re Currency Conversion Fee Antitrust Litigation*, MDL No. 1409 (S.D.N.Y.).

8.   In just the past two years, the firm has continued to obtain precedent setting victories for its clients, including the largest-ever monetary settlement of a private antitrust class action: $7.25 billion in cash in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation* (nearly $5.7 billion after reduction for opt outs).  As further described below, earlier this year, the firm, led by the undersigned, achieved yet another ground-breaking settlement in the payment network arena, with a $130 million settlement relating to the over-the-road fleet payment card market in *Marchbanks Truck Service Inc., et al. v. Comdata Network, Inc., et al.*, No. 07-1078 (E.D. Pa) ("*Comdata*").  Berger & Montague has also, over the past decade, been in the vanguard of challenging pay-for-delay and other means by which pharmaceutical companies have sought to delay generic competition.  The victory of the firm, which has well over $1 billion in settlements in these pharmaceutical cases, in *In re K-Dur Antitrust Litigation*, 686 F.3d 197 (3d Cir. 2012), helped set the stage for the Supreme Court's decision in *Federal Trade Commission v. Actavis*, --- U.S. ---, 133 S. Ct. 2223 (June 17, 2013). These recent successes build upon the firm's storied history of serving as lead, co-lead or co-trial counsel on many of the most significant civil antitrust cases over the last 40 years, including *In re: Currency Conversion Fee Antitrust Litigation* (recovery of $336 million), *In re Corrugated*

*Container Antitrust Litigation* (recovery in excess of $366 million), the *Infant Formula* case (recovery of $125 million), the *Brand Name Prescription Drug* price fixing case (recovery of more than $700 million), the *Graphite Electrodes Antitrust Litigation* (recovery of more than $134 million), and the *High-Fructose Corn Syrup Antitrust Litigation* (recovery of $531 million).

## My Credentials

9. I have a national practice in the field of complex litigation, primarily in the area of antitrust class actions, and have repeatedly been selected by *Chambers & Partners* as one of Pennsylvania's top tier antitrust lawyers; highlighted annually since 2011 by *The Legal 500* as one of the country's top lawyers in the field of complex antitrust litigation; repeatedly been deemed one of the "Best Lawyers in America;" and been designated a "Super Lawyer" by *Philadelphia Magazine* for many years in a row.  In 2014, I was selected by *Philadelphia Magazine* as one of the top 100 lawyers in Philadelphia and, also in 2014, received an "Honorable Mention" for Outstanding Antitrust Litigation Achievement in Private Law from the American Antitrust Institute for my work in the *Comdata* matter (discussed above and further below).  *Chambers & Partners* has observed that I am "really a tremendous advocate in the courtroom, with a very good mind and presence."

10. I have prosecuted multiple complex antitrust matters and am responsible for winning numerous significant settlements for my clients and class members totaling well over $2 billion.  I am currently lead counsel in several antitrust and other litigation matters in a variety of industries and numerous courts across the country.  Recently, following seven years of litigation, my team and I achieved a ground-breaking settlement in an antitrust case relating to the over-the-road fleet payment card market in *Comdata*.  The *Comdata* settlement, which received final approval in July 2014, provides for $130 million plus valuable prospective relief that rolled back

much of the conduct plaintiffs had challenged as anticompetitive for a class including thousands of truck stops and retail fueling facilities across the country.  I was also co-lead counsel and on the trial team of the *Meijer v. Abbott Labs.*, No. 07-5985 (N.D. Cal.), which settled in 2011 for $52 million after four days of a jury trial.

11. I am also a frequent speaker at antitrust and litigation related conferences.  For example, I was the only plaintiffs' lawyer selected to serve on the American Bar Association's Antitrust Section Transition Report Task Force delivered to the incoming Obama Administration in 2012.  I also serve as a Senior Fellow and member of the Board of Directors of the American Antitrust Institute; was a past President of COSAL (Committee to Support the Antitrust Laws), a leading industry group; am a member of the Advisory Board of the Institute of Consumer Antitrust Studies of the Loyola University Chicago School of Law; and serve as a member of the Board of Directors and Executive Committee of Public Justice, a leading trial lawyer organization and public interest law firm.

12. In addition, I have written widely in the fields of class certification and antitrust law.  Among other writings, I co-authored *Antitrust, Class Certification, and the Politics of Procedure*, 17 GEO. MASON L. REV. 4 (2010) (http://ssrn.com/abstract=1578459), which the Third Circuit cited in *Behrend v. Comcast Corp.*, 655 F.3d 182, 200, n.10 (3d Cir. 2011), *rev'd*, 133 S. Ct. 1426 (2013).  I have also co–written a number of other pieces, including: *Of Vulnerable Monopolists?: Questionable Innovation in the Standard for Class Certification in Antitrust Cases*, 41 RUTGERS L.J. 355 (2009-2010) (http://ssrn.com/abstract=1542143); *A Questionable New Standard for Class Certification in Antitrust Cases*, published in the ABA's Antitrust Magazine, Vol. 26, No. 1 (Fall 2011); a Chapter of American Antitrust Institute's Private International Enforcement Handbook (2010), entitled "*Who May Pursue a Private*

*Claim?*"; and, a chapter of the American Bar Association's Pharmaceutical Industry Handbook (July 2009), entitled "*Assessing Market Power in the Prescription Pharmaceutical Industry*." Most recently, I have been tasked with updating a chapter in the ABA's widely read and cited book, Proving Antitrust Damages.

### Berger & Montague, P.C. Supports Majority Class Counsel

13. During the course of discussions amongst Plaintiffs' Class Counsel about the organization and management of the prosecution of the *Capacitors* litigation, my firm ultimately decided not to seek a lead counsel position, but instead to support the appointment of a privately ordered group consisting of Joseph R. Saveri of the Joseph Saveri Law Firm, Inc.; Solomon B. Cera of Gold Bennett Cera & Sidener LLP; Howard J. Sedran of Levin Fishbein Sedran & Berman; and Kit A. Pierson of Cohen Milstein Sellers & Toll PLLC.  The manner in which, over the course of three months, this group of firms successfully negotiated a proposed leadership structure in the interests of the class we all seek to represent is, in my understanding, precisely the sort of private ordering that is generally favored by the federal courts.  *See Third Circuit Task Force Report on Selection of Class Counsel*, 74 TEMP. L. REV. 689, 740 (2001) ("class recovery generally can be maximized more effectively by using . . . private orderings where that is possible").

14. My firm and I decided to support the Majority Class Counsel based also on personal experiences we have had working with each of the highly qualified and experienced firms that form this group.  Each of these firms has decades of experience in managing the successful prosecution of major antitrust class actions.  I have worked with each of the firms that form the Majority Class Counsel group on numerous major antitrust class actions.  During those cases, I and members of my firm witnessed firsthand their ability to fulfill all responsibilities

demanded of co-lead counsel in these cases, including organizing the efforts of multiple firms and lawyers, delegating responsibilities, making strategic decisions, appearing at hearings at trial, and working with defense counsel when necessary and appropriate.  To take just a few examples:

- I was on the executive committee in *In re Titanium Dioxide Antitrust Litigation*, No. 1:10-cv-00318-RDB (D. Md.), in which Joseph Saveri of the Joseph Saveri Law Firm, Inc. and Sol Cera of Gold Bennett Cera & Sidener LLP served as two of three court appointed co-lead counsel.  Led by Mr. Saveri and Mr. Cera, we succeeded in securing $163.5 million in settlements for a class of thousands of direct purchasers against an alleged cartel in the titanium dioxide industry in 2013.  I was impressed with the leadership of Mr. Saveri and Mr. Cera as well as their ability to work efficiently with the many firms in the case to achieve a great outcome for the class.  I have also worked closely with Mr. Saveri in, among other cases, *In re High-Tech Employee Antitrust Litigation*, No. 11-cv-2509 (N.D. Cal.), in which he currently serves as co-lead.  His work in that matter has been exemplary in all respects.

- I have many times observed firsthand the quality of work and leadership exemplified by Kit Pierson and his team at Cohen Milstein Sellers & Toll PLLC.  For example, my firm and I currently serve as one of three co-lead counsel in *In re Domestic Drywall Antitrust Litigation*, 13-md-2437 (E.D. Pa.), along with Mr. Pierson.  Mr. Pierson is a skilled lawyer with excellent judgment and temperament.   Beyond that, my firm and Cohen Milstein have a long history of working together in antitrust class actions, including in cases where Cohen Milstein was co-lead, such as *In re Plasma-Derivative Protein Therapies Antitrust Litigation*, No. 1:09-cv-07666 (N.D. Ill.) (three firm co-lead structure with $128 million in settlements) and *The Shane Group, Inc., et al. v. Blue Cross Blue Shield of Michigan*, No. 2:10-cv-14360 (E.D. Mich.) (four firm co-lead structure with $30 million settlement pending).  Cohen Milstein is a top-notch firm with a great reputation.

- Levin Fishbein Sedran & Berman and my firm also have a long and successful history of working together on cases resulting in excellent outcomes for the clients and classes we jointly represented.  Most recently, in *In re CertainTeed Fiber Cement Siding Litigation*, MDL No. 2270 (E.D. Pa.), our firms worked closely together and obtained a settlement valued at $103.9 million for the class.  Members of my firm have worked closely with Howard Sedran over the last several decades and have great respect his work.  For example, in *In re Graphite Electrodes Antitrust Litigation*, MDL No. 1244 (E.D. Pa.), members of my firm and Mr. Sedran served together as co-leads in a four firm co-lead structure and obtained very favorable settlements totaling $133.5 million (approximately 100% of single damages).

15.     Further, Majority Class Counsel has worked as a cooperative group on this

litigation nearly from its inception. In the more than three months since this case was on file, by working together, these firms have significantly advanced the litigation at an early stage by: (a) organizing plaintiffs' counsel, mooting the need for the Judicial Panel on Multidistrict Litigation to resolve the centralization motion; (b) proposing and negotiating a joint litigation schedule with defense counsel; (c) drafting and negotiating a protective order regarding expert discovery with defense counsel; (d) conducting Rule 26(f) conferences with defense counsel; (e) preparing a 26(f) report; (f) drafting and negotiating an ESI protocol with defense counsel; (g) otherwise engaging with defense counsel in a vigorous prosecution of this case; and (h) coordinating on continuing to investigate the factual underpinnings of the claims in the case. I am confident that the Majority Class Counsel group will continue to prosecute this civil action effectively and efficiently should this Court appoint it to lead this case.

16. Majority Class Counsel did not start as a single group—as has been implied by the filers of the tag along action—but instead grew organically out of private negotiations, over many weeks, by firms who filed several cases in this Court and one in the District of New Jersey. In order to avoid the delays sometimes associated with the JPML process, these firms successfully negotiated a consensus resolution under which several firms agreed to compromise for the sake of the proposed class and our clients. The firms that filed the case in New Jersey agreed to withdraw that case and refile in this Court pursuant to the agreed consensus structure. As discussed further below, if this Court were to allow the tag-along filing by a single client months after earlier cases had been filed, and several weeks after the consensus structure was negotiated, it would effectively penalize firms for privately ordering in an efficient and timely manner. Indeed, it would instead incentivize firms to avoid compromising until the very last second, if at all, for fear that any such compromise would put the later filed tag-along action in

the position to supplant a consensus group supported by the vast majority of cases and clients on file.

17. In my experience, four firm co-lead counsel structures, if properly managed and in the right cases, can be efficient, cost effective, produce excellent results. When the firms involved prove to be efficient and adept (as the four firms at issue have already proven to be), having multiple firms as co-lead can provide many benefits in complex antitrust litigation, such as pooling financial and personnel resources, delegating tasks when plaintiffs are fighting battles on multiple fronts, and providing a broad depth of experience from which to draw in making strategic decisions. These factors are especially important in a case such as this, involving a global price fixing conspiracy with multiple defendants. My firm currently successfully serves as co-lead counsel in a variety of cases where three or more firms serve as co-lead: *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-md-5075 (E.D.N.Y.) (3 firm co-lead); *In re Loestrin 24 Antitrust Litig.*, No. 13-md-2474 (D.R.I.) (4 firm co-lead); *In re Niaspan Antitrust Litig.*, No. 13-md-2460, (E.D. Pa.) (3 firm co-lead); *In re Nexium Antitrust Litig.*, No. 12-md-2409 (D. Mass.) (3 firm co-lead); *In re Domestic Drywall Antitrust Litig.*, 13-md-2437 (E.D. Pa.) (3 firm co-lead); *In re Effexor XR Antitrust Litig.*, No. 11-cv-5479 (D.N.J.) (6 firm executive committee); *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409 (S.D.N.Y.) (4 firm co-lead).

18. Selecting the firms from the tag-along action as co-leads, or even naming such other late-filing firms to plaintiffs' leadership structure at this stage would undermine the private ordering that occurred in this case and would prejudice those firms, such as mine, that made compromises in the interests of moving the case forward without a leadership dispute. *See Third Circuit Task Force Report on Selection of Class Counsel*, 74 TEMP. L. REV. at 771 (noting that

only where "private ordering is not successful [] or [] the court has substantial questions about whether an agreement reached among counsel will result in effective and efficient representation of the class" should the court turn to judicial selection). Given the qualifications of the firms that comprise Majority Class Counsel and their collective work in avoiding internal disputes among all counsel to date, upsetting the previously unopposed leadership motion would be unnecessarily disruptive and counter to the goals of encouraging early resolution of leadership disputes.

19. Majority Class Counsel have devoted substantial resources to investigating this action, filed first, negotiated an effective co-lead counsel arrangement, and effectively prosecuted this action for several months. They did this work collaboratively and efficiently, demonstrating their ability to jointly lead the case. The firms in the tag-along case, by contrast, filed late and seek not to join in support of the privately ordered consensus group of the vast majority of cases on file that spearheaded this case for months, but instead to control the case by themselves. It is my opinion that these factors strongly favor the appointment of Majority Class Counsel as co-lead counsel in this case and I therefore support their application.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in Philadelphia, Pennsylvania on October 23, 2014.

By: _____
Eric L. Cramer
11
Declaration of Eric L. Cramer in Support of Majority Class Counsel
Case Number 3:13-CV-03264-JD