Joseph W. Cotchett (36324)
Steven N. Williams (175489)
Elizabeth Tran (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
etran@cpmlegal.com

*Interim Lead Counsel for the Putative Indirect Purchaser Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CAPACITORS ANTITRUST LITIGATION** | **Master File No. 14-cv-03264-JD** |
| | **INDIRECT PURCHASER PLAINTIFFS' FIRST CONSOLIDATED COMPLAINT** |
| **THIS DOCUMENT RELATES TO:** | |
| **ALL INDIRECT PURCHASER ACTIONS** | **JURY DEMAND** |

\*\*\*REDACTED – PUBLIC VERSION\*\*\*

# TABLE OF CONTENTS

Page

I. NATURE OF ACTION ................................................................................ 1

II. GOVERNMENT INVESTIGATIONS ........................................................ 5

III. JURISDICTION AND VENUE ................................................................... 8

IV. PARTIES ..................................................................................................... 10

    A. Plaintiffs ............................................................................................. 10

        1. First-Level Indirect Purchaser Plaintiffs ............................... 10

        2. Consumer Indirect Purchaser Plaintiffs ................................ 12

    B. Defendants .......................................................................................... 17

        1. Defendants Involved in Both Electrolytic and Film Capacitor
            Conspiracies ............................................................................ 17

            a. Hitachi Defendants ..................................................... 17

            b. Nippon Chemi-Con Defendants .................................. 18

            c. Rubycon Defendants ................................................... 18

            d. Panasonic Defendants .................................................. 19

        2. Defendants Involved in Electrolytic Capacitor Conspiracy ........ 20

            a. Elna Defendants .......................................................... 20

            b. Defendant Matsuo Electric Co., Ltd. .......................... 21

            c. NEC TOKIN Defendants ............................................ 21

            d. Nichicon Defendants ................................................... 22

        3. Defendants Involved in Film Capacitor Conspiracy ................ 23

            a. Defendant Nissei Electric Co., Ltd. ............................. 23

            b. Defendant Nitsuko Electronics Corp. .......................... 23

            c. Defendant Okaya Electric Industries Co., Ltd. ........... 23

            d. Shinyei Defendants ..................................................... 23

            e. Defendant Soshin Electric Co., Ltd. ........................... 24

            f. Defendant Taitsu Corp. ................................................ 24

            g. Defendant Toshin Kogyo Co., Ltd. ............................. 25

V. AGENTS AND CO-CONSPIRATORS ....................................................... 25

VI. INTRODUCTION TO CAPACITORS ....................................................... 25

    A. Background on Capacitors ................................................................. 25

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

| | | | |
|---|---|---|---|
| | B. | Capacitor Structure | 28 |
| | C. | Capacitor Technologies | 30 |
| | D. | Aluminum Electrolytic Capacitors | 32 |
| | E. | Tantalum Electrolytic Capacitors | 33 |
| | F. | Film Capacitors | 36 |
| | G. | Capacitors Are Traceable Through the Chain of Distribution | 37 |
| VII. | | FACTUAL ALLEGATIONS | 38 |
| | A. | Defendants Conspired to Unlawfully Fix and Artificially Raise the Prices of Electrolytic and Film Capacitors | 38 |
| | | 1. ███████████████ | 39 |
| | |    a. ██████████████ | 39 |
| | |       i. █████████ | 39 |
| | |       ii. ███████ | 40 |
| | |       iii. ███████████ | 41 |
| | |    b. █████████████ | 42 |
| | |    c. ██████████ | 44 |
| | |    d. █████████████ | 45 |
| | |       i. ████████ | 45 |
| | |       ii. ██████████ | 46 |
| | |    e. ██████████████ | 46 |
| | B. | Capacitor Industry Trends | 47 |
| | | 1. Aluminum Electrolytic Capacitors | 48 |
| | | 2. Tantalum Electrolytic Capacitors | 49 |
| | | 3. Film Capacitors | 49 |
| | C. | The Characteristics of the Electrolytic and Film Capacitor Market Render Collusion More Plausible | 50 |
| | | 1. The Electrolytic and Film Capacitor Industry Has High Barriers to Entry. | 50 |
| | | 2. The Demand for Electrolytic and Film Capacitors Is Inelastic | 53 |

| | | |
|---|---|---|
| | 3. | The Electrolytic and Film Capacitor Industry Is Highly Concentrated. ...................................................... 54 |
| | 4. | Electrolytic and Film Capacitors Are Homogenous and Commoditized Products. ........................................ 56 |
| | 5. | Defendants Had Ample Opportunities to Conspire. ................. 58 |
| | 6. | Indirect Purchasers of Capacitors Lacked Buying Power. .......... 62 |
| | 7. | Falling Demand for Capacitors Over Time. ............................ 64 |
| | | a. Demand for Capacitors in the Americas ...................... 65 |
| | | b. Demand for Capacitors Over Time .......................... 66 |
| D. | | Capacitor Manufacturers Had Relationships in Other Price-Fixed Markets. ......... 67 |

**VIII.** DEFENDANTS COLLUDED TO KEEP THE PRICE OF ELECTROLYTIC AND FILM CAPACITORS ELEVATED DURING THE CLASS PERIOD. ...................................... 67

| A. | | Defendants Had a Motive to Conspire. ..................................................... 68 |
| B. | | The Price Movements of Electrolytic and Film Capacitors During the Respective Class Periods Are Consistent with Collusion, Not Competition. ........................... 71 |
| | 1. | Pricing Behavior Was Inconsistent with Cost. ............................. 72 |
| | 2. | Pricing Behavior Was Inconsistent with Demand. ....................... 73 |
| C. | | Defendants Conspired to Constrain Supply. ................................................. 75 |
| D. | | Guilty Pleas in Related Markets ........................................................... 75 |
| | 1. | Hitachi 75 |
| | 2. | Panasonic/SANYO ................................................................. 75 |
| | 3. | NEC TOKIN .......................................................................... 76 |

**IX.** ANTITRUST INJURY ........................................................................ 76

**X.** THE STATUTE OF LIMITATIONS DO NOT BAR PLAINTIFFS' CLAIMS .............. 77

| A. | | The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover Their Claims ........................................................ 77 |
| B. | | Fraudulent Concealment Tolled the Statute of Limitations .................................. 79 |
| | 1. | False Representations Regarding Raw Material Shortages ................ 80 |
| | 2. | False Representations Regarding Production Delays .................... 81 |

**XI.** AFFECTED TRADE AND COMMERCE ................................................. 83

| A. | | Defendants' Conduct Involved Import Trade or Import Commerce ...................... 84 |

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

| | B. | Defendants' Conduct Had a Direct, Substantial, and Reasonably Foreseeable Effect on U.S. Domestic and Import Trade or Commerce That Gave Rise to Plaintiffs' Antitrust Claims ................................................. 85 |

| | C. | The Capacitor Cartel Targeted the United States. .................................................. 88 |

XII.  CLASS ACTION ALLEGATIONS ................................................. 91

XIII.  VIOLATIONS ALLEGED .............................................................. 97

**FIRST CLAIM FOR RELIEF**
(Violations of Sherman Act, 15 U.S.C. § 1)
(On Behalf of All Plaintiffs Against All Defendants) ................................................. 97

**SECOND CLAIM FOR RELIEF**
(Violations of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.*)
(On Behalf of All Plaintiffs Against All Defendants) ................................................. 98

**THIRD CLAIM FOR RELIEF**
(Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*)
(On Behalf of All Plaintiffs Against All Defendants) ................................................. 100

**FOURTH CLAIM FOR RELIEF**
(Violation of State Antitrust and Restraint of Trade Laws)
(On Behalf of All Plaintiffs Against All Defendants) ................................................. 102

**FIFTH CLAIM FOR RELIEF**
(Violation of State Consumer Protection and Unfair Competition Laws)
(On Behalf of All Plaintiffs Against All Defendants) ................................................. 116

XIV.  REQUEST FOR RELIEF ................................................................ 126

JURY DEMAND ............................................................................... 133

**INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED COMPLAINT; JURY DEMAND
[REDACTED – PUBLIC VERSION]**

Indirect Purchaser Plaintiffs, on behalf of themselves and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to them and upon information and belief as to all other matters, and based on the investigation of counsel, bring this class action for damages, injunctive relief and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, and consumer protection laws. Plaintiffs demand a trial by jury, and allege as follows:

## I.    NATURE OF ACTION

1.    This lawsuit is brought against defendants[1], the leading manufacturers of capacitors sold in the United States, for engaging in two massive and separate conspiracies to unlawfully inflate, fix, raise, maintain or artificially stabilize the prices of electrolytic and film capacitors, respectively.[2] Defendants' conspiracies successfully targeted various industries in the United States, raising prices for purchasers of electrolytic and film capacitors and consumers alike.

2.    Indirect Purchaser Plaintiffs seek to represent all persons and entities in the United States who purchased (a) one or more electrolytic capacitor(s) from a capacitor distributor and/or (b) an electronic product not for resale which included one or more electrolytic capacitor(s) as component parts, which a defendant, its current or former subsidiary, or any of its co-conspirators

---

[1] Elna Co., Ltd., Elna America Inc., Hitachi Chemical Co., Ltd., Hitachi Chemical Co. America, Hitachi AIC Inc., Ltd., Ltd., Matsuo Electric Co., Ltd., NEC Tokin Corp., Nichicon Corp., Nippon Chemi-Con Corp., United Chemi-Con, Inc., Matsuo Electric Co., Ltd., NEC TOKIN Corp., NEC TOKIN America Inc., Nichicon Corp., Nichicon America Corp., Nissei Electric Co., Ltd., Nitsuko Electronics Corp., Okaya Electric Industries Co., Ltd., Panasonic Corp., Panasonic Corp. of North America, Rubycon Corp., Rubycon America Inc., SANYO Electric Co., Ltd., SANYO Electronic Device (U.S.A.) Corp., Shinyei Technology Co., Ltd., Soshin Electric Co., Ltd., Taitsu Corp., and Toshin Kogyo Co., Ltd. (collectively, "defendants").

[2] As Plaintiffs are in the early stages of discovery concerning the nature and scope of the electrolytic and film capacitor conspiracies, and as the Court granted the United States Department of Justice's motion to intervene and stayed discovery until April 15, 2015 per its October 30, 2014 Civil Minutes (ECF No. 309), Plaintiffs still have substantial discovery to conduct regarding defendants' meetings, discussions, and agreements. Plaintiffs must be able to significantly advance the inquiry into and analysis of defendants' conspiratorial conduct before we can firmly reach conclusions regarding the nature, scope, and effects of the conspiracies. As such, while the Complaint currently alleges separate meetings and discussions regarding electrolytic and film capacitors, further discovery may reveal that there was one overarching conspiracy due to the overlapping defendants and customers or more than two conspiracies.

LAW OFFICES
Cotchett, Pitre
& McCarthy, LLP

sold from January 1, 2003 through such time as the anticompetitive effects of defendants' conduct ceased ("Electrolytic Class Period").

3.     Indirect Purchaser Plaintiffs also seek to represent all persons and entities in the United States who purchased (a) one or more film capacitor(s) from a capacitor distributor and/or (b) an electronic product not for resale which included one or more film capacitor(s) as component parts, which a defendant, its current or former subsidiary of, or any of its co-conspirators sold from January 1, 2007 through such time as the anticompetitive effects of defendants' conduct ceased ("Film Class Period").

4.     Indirect Purchaser Plaintiffs purchased electrolytic and film capacitors as a stand-alone product or as a component part of an electronic product. When purchased as a stand-alone product, electrolytic and film capacitors are directly traceable to the specific manufacturer. When purchased as part of an electronic product, electrolytic and film capacitors are discrete and identifiable component parts that pass through the chain of distribution in substantially the same form from defendants to consumers. A capacitor is traceable to an entity owned and/or controlled by a defendant because it bears the defendant's markings (*e.g.*, name, logo, series).

5.     Capacitors are one of the most common electronic components in the world today. They store electric charge between one or more pairs of conductors separated by an insulator. Almost all electronic products—from cellphones to personal computers to home appliances—contain them, often hundreds of them. The three basic types of capacitors are ceramic, electrolytic, and film, the latter two of which are the subject of Indirect Purchaser Plaintiffs' Consolidated Complaint ("Complaint"). Electrolytic and film capacitors are widely used in a range of industries, such as information and telecommunications, audiovisual, and electronic games.

6.     An "electrolytic capacitor" uses an electrolyte (an ionic conducting liquid) as one of its plates to achieve a relatively larger capacitance per unit volume. As used in this Complaint, electrolytic capacitors include the following: circular polymer aluminum electrolytic capacitors, rectangular polymer aluminum capacitors, rectangular polymer tantalum capacitors, non-polymer aluminum electrolytic capacitors, and non-polymer electrolytic double-layer capacitors ("ELDC").

Manufacturers of polymer electrolytic capacitors compete on shape (*i.e.*, rectangular capacitor manufacturers compete with each other). Electrolytic capacitors can vary significantly by voltage and capacitance.

7. Applications of circular polymer aluminum electrolytic capacitors include personal computers (PCs), digital audiovisuals (AV), games, and industrial appliances. Applications of rectangular polymer aluminum electrolytic capacitors include notebook PCs, tablets, digital AVs, amusement, servers, and communications. Applications of rectangular polymer tantalum capacitors include notebook PCs, games, cellular phones, smart phones, and digital still cameras. Applications of non-polymer aluminum electrolytic capacitors include digital AV, information and communications, various power supply circuits, and inverter circuits. ELDC are best suited for the power backup needs of high reliability systems.

**Figure 1: The SANYO defendants manufacture electrolytic capacitors, including circular aluminum polymer capacitors (brand name: OS-CON) and rectangular tantalum polymer capacitors (brand name: POS-CAP).**



8. A "film capacitor" uses insulating plastic film and one of two conductive materials, propylene or polyester. As used in this Complaint, film capacitors include the following four generations: (1) film and aluminum foil capacitors, (2) film and other metal capacitors, (3) layered capacitors, and (4) surface-mount capacitors (*i.e.*, capacitors without leaves). Each generation contains different types of general purpose capacitors and specific purpose capacitors.

9. Applications of film capacitors include appliances, lighting, power supply, digital AV, communications, games, direct current (DC) link for inverters, snubber for inverters, in battery filters, and in electric compressors.

**Figure 2: The Panasonic defendants manufacture film capacitors.**





10.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

11. Defendants manufacture, market, and sell electrolytic and film capacitors throughout and into the United States. Defendants and other co-conspirators (as yet unknown) agreed, combined, and conspired to inflate, fix, raise, maintain or artificially stabilize prices of electrolytic and film capacitors. The combination and conspiracy engaged in by defendants and other co-conspirators was in violation of the Sherman Act (15 U.S.C. § 1) and various state antitrust, consumer protection, and unfair competition laws.

12. As a direct result of the anticompetitive and unlawful conduct alleged herein, Plaintiffs and the Classes paid artificially inflated prices for electrolytic and film capacitors during the respective Class Periods and have thereby suffered antitrust injury to their business or property.

## II.    GOVERNMENT INVESTIGATIONS

13. Competition authorities in the United States, Asia, and Europe have been coordinating their investigations into the electrolytic and film capacitor cartels since March 2014 or earlier. The coordinated investigation between the United States Department of Justice ("DOJ") and the China National Development and Reform Commission ("China NDRC") *could be a first for both agencies*.

14.     Several competition authorities in Asia have already conducted dawn raids on capacitor manufacturers.  The China NDRC raided NEC TOKIN and non-defendant Taiyo Yuden[3] in March 2014.  The South Korea Fair Trade Commission raided a Panasonic sales office in South Korea in early May 2014.  And the Japan Fair Trade Commission ("JFTC") raided nine companies suspected of forming *a cartel extending overseas from Japan*.  These companies were Elna Co., Ltd., Hitachi Chemical Co., Ltd., Matsuo Electric Co., Ltd., NEC TOKIN Corp., Nichicon Corp., Nippon Chemi-Con Corp., Panasonic Corp., Rubycon Corp., and SANYO Electric Co., Ltd. on June 24, 2014.  These companies collectively control either a large share of the Japanese market for electrolytic capacitors or the Japanese market for film capacitors.  The JFTC alleges that these companies formed cartels in Japan, China, and United States, and their sales executives and other officials coordinated the amount and timing of price increases in the last several years.  The JFTC stated that the conspiracies intensified after the 2008 economic crisis and again after the 2011 Great East Japan Earthquake when defendants aggressively controlled supply and coordinated price hikes to ensure supra-competitive prices for their products.

15.     The DOJ investigation is originating out of its San Francisco office, which has been investigating cartels in the computer parts industry for the past decade, resulting in hundreds of millions of dollars in criminal fines against manufacturers of memory, liquid crystal displays, optical disc drives, and lithium-ion batteries.  A capacitor manufacturer had approached the DOJ and China NDRC with news of anticompetitive conduct in the worldwide capacitor industry, launching what the DOJ's Antitrust Division acknowledged as its *latest international cartel investigation*.  The capacitor manufacturer also applied to the DOJ's Corporate Leniency Program pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA"), which limits the civil liability of a leniency applicant to the actual damages attributable to the entity's conduct rather than the usual joint and several and trebled damages faced by antitrust defendants.

---

[3] Taiyo Yuden manufactures ceramic capacitors only. Plaintiffs have not named it as a defendant in this Complaint but reserve the right to do so upon further investigation.

16.     The DOJ investigation into the capacitor industry stemmed from a "leniency plus" situation in the DOJ investigation into the automotive parts industry.  A leniency plus situation arises when a company unable to obtain leniency for one conspiracy can be given a lighter sentence by reporting its involvement in a separate, as yet undiscovered conspiracy.  Plaintiffs believe that the leniency applicant is Panasonic Corp, which is a named defendant in three parts cases in *In re Automotive Parts Antitrust Litigation*, MDL No. 2311 (E.D. Mich.), including *In re Switches* (Case No. 2:13-cv-01300), *In re Steering Angle Sensors* (Case No. 2:13-cv-01600), and *In re High Intensity Discharge Ballasts* (Case No. 2:13-cv-01700).   Plaintiffs believe Panasonic Corp. approached the DOJ and China NDRC about the electrolytic and film capacitor conspiracies after the DOJ charged and penalized it for participating in the switches, steering angle sensors, and high intensity discharge ballasts conspiracies.

17.     Notably, the defendants' anticompetitive behavior is the subject of a DOJ criminal grand jury investigation.  According to the Antitrust Division's Manual, last revised in 2009, to institute a grand jury investigation, "staff should prepare a memorandum on behalf of the section or field office chief to the Director of Criminal Enforcement detailing the information forming the basis of the request."   Following a review of that memorandum, the request for a grand jury investigation must be approved by the Assistant Attorney General for the Antitrust Division based on the standard that a criminal violation may have occurred.  Furthermore, the fact that the DOJ investigation is criminal, as opposed to civil, is significant.   The Manual's "Standards for Determining Whether to Proceed by Civil or Criminal Investigation" provides, "In general, current Division policy is to proceed by criminal investigation and prosecution in cases involving horizontal, *per se* unlawful agreements such as price fixing, bid rigging and horizontal customer and territorial allocations."   The existence of a criminal investigation into the electrolytic and film capacitor markets therefore support the existence of the conspiracies alleged in this Complaint.

18.     "***This has the hallmarks of a major international cartel investigation***," said Philip Giordano, counsel at Kaye Scholer LLP and a 15-year veteran of the DOJ's Antitrust Division (emphasis added).   "The DOJ and its foreign counterparts are conducting ***parallel investigations***.

Many of the manufacturers under investigation are ***international conglomerates*** that sell into ***global markets***" (emphasis added).

## III.    JURISDICTION AND VENUE

19.    Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against defendants for violating the Sherman Act (15 U.S.C. § 1).  Plaintiffs also assert claims for actual and exemplary damages and injunctive relief pursuant to state antitrust, unfair competition, and consumer protection laws, and seek to obtain restitution, recover damages, and secure other relief against defendants for violation of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state laws.

20.    This Court has subject matter jurisdiction pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and 28 U.S.C. §§ 1331 and 1137. This Court also has subject matter jurisdiction of the state state law claims pursuant 28 U.S.C. § 1332(d) and 1367, in that: (i) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from some defendants; and (ii) Plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

21.    Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391(b)-(d) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

22.    This Court has *in personam* jurisdiction over each of the defendants because each defendant, either directly or through the ownership and/or control of its United States subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or

indirectly sold or marketed substantial quantities of electrolytic and/or film capacitors throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; or (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants also conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

23. In fact, the DOJ's investigation into the capacitor industry is originating out of its San Francisco office, which has been investigating cartels in the computer parts industry for the past decade, leading to hundreds of millions of dollars in fines against manufacturers of memory, liquid crystal displays, optical disc drives, and lithium-ion batteries. Although a former DOJ prosecutor stated that the DOJ is in the early stages of its investigation and there is some time before plea deals or indictments, the DOJ has empaneled a criminal grand injury in the Northern District of California to investigate anticompetitive conduct by capacitor manufacturers. The grand jury issued subpoenas to several capacitor manufacturers earlier this year. The DOJ has requested a stay of discovery in this action to protect its investigation.

24. Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

25. The activities of defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce in the United States. Defendants' products are sold in the flow of interstate commerce.

26. Electrolytic and film capacitors manufactured abroad by defendants and sold as stand-alone products, or as component parts of electronic products, that were either manufactured in the United States or manufactured abroad and sold in the United States, are goods brought into the United States for sale and therefore constitute import commerce. To the extent any electrolytic or

film capacitors are purchased in the United States, and such capacitors do not constitute import commerce, defendants' unlawful conduct with respect thereto, as more fully alleged herein during the respective Class Periods, had and continues to have a direct, substantial, and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, caused antitrust injury to Plaintiffs and members of the Classes in the United States.

27. By reason of the unlawful activities hereinafter alleged, defendants substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices, and allocate market shares for electrolytic and film capacitors, which conspiracies unreasonably restrained trade and adversely affected the market for such capacitors.

28. Defendants' conspiracy and wrongdoing described herein adversely affected individuals and entities in the United States, including Plaintiffs and members of the Classes, who indirectly purchased electrolytic and/or film capacitors as stand-alone products or as component parts of electronic products.

IV. **PARTIES**

A. **Plaintiffs**

1. **First-Level Indirect Purchaser Plaintiffs**

29. Plaintiff **Michael Brooks** is a California resident who purchased electrolytic and/or film capacitors as stand-alone products from one or more distributors that purchased such capacitors as stand-alone products from one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

30. Plaintiff **CAE Sound** is a California company with its principal place of business in California. Plaintiff purchased electrolytic and film capacitors as stand-alone products from one or more distributors that purchased such capacitors as stand-alone products from one or more

defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

31. Plaintiff **Steve Wong** is a California resident who purchased electrolytic and/or film capacitors as stand-alone products from one or more distributors that purchased such capacitors as stand-alone products from one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

32. Plaintiff **Toy-Knowlogy Inc.** is a California company with its principal place of business in California. Plaintiff purchased electrolytic and film capacitors as stand-alone products from one or more distributors that purchased such capacitors as stand-alone products from one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

33. Plaintiff **Alfred H. Siegel** is the Liquidating Trustee of the Circuit City Stores, Inc. Liquidating Trust (the "Trust"). The Trust was established on or around November 1, 2010 in connection with the bankruptcy proceedings of Circuit City Stores, Inc. and its affiliates in the United States Bankruptcy Court, Eastern District of Virginia (Case No. 08-35653). Pursuant to the Second Amended Joint Plan of Liquidation of Circuit City Stores, Inc. and Its Affiliated Debtors and Debtors in Possession and Its Official Committee of Creditors Holding General Unsecured Claims (Dkt. No. 8252), and the Circuit City Stores, Inc. Liquidating Trust Agreement (Dkt. No. 8864), the Liquidating Trustee has the authority to pursue claims on behalf of the Trust for the benefit of the Trust's beneficiaries.

34. At all times relevant herein, Circuit City Stores, Inc. was incorporated in Virginia and had its principal place of business in Richmond, Virginia. Prior to the initiation of Chapter 11 bankruptcy proceedings on November 10, 2008, Circuit City was one of the largest consumer electronics retailers in the United States with over 500 retail locations nationwide. During the relevant Class Period, Circuit City indirectly purchased capacitors as stand-alone products and as

components of products containing electrolytic and/or film capacitors from one or more of the Defendants. Plaintiff has been injured as a result of the violations alleged in this Complaint.

### 2. Consumer Indirect Purchaser Plaintiffs

35. Plaintiff **David Keller** is an Arizona resident who purchased laptops, a television, a tablet, and a cell phone containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

36. Plaintiff **Computing Solutions d/b/a Wired! By Computing Solutions d/b/a Wired! Technology Partners** ("Wired") is an Arkansas company with it principal place of business located in Arkansas. Plaintiff purchased multiple electronic products including computers, laptops, printers, motherboards, servers, video cameras, routers, projectors, monitors, and switches, all containing electronic products containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

37. Plaintiff **Everett Ellis** is an Arkansas resident who purchased computers, televisions, a printer, and other devices and appliances containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

38. Plaintiff **BHRAC, LLC d/b/a Beverly Hills Rent-A-Car** is a Nevada company with its principal place of business in California. Plaintiff purchased multiple computers, printers, a television, and a laptop containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

39. Plaintiff **Thomas D. Armenti** is a California resident who purchased televisions containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

40.     Plaintiff **David A. Bennett** is a California resident who purchased a television containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

41.     Plaintiff **Beanstalk Computing** is a California company with its principal place of business in California. Plaintiff purchased computers and monitors containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

42.     Plaintiff **Andrew Nassery** is a California resident who purchased computers, a game console, and television containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

43.     Plaintiff **Benjamin Petiprin** is a California resident who purchased televisions and a computer containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

44.     Plaintiff **Garth Russell, M.D.** is a Florida resident who purchased multiple computers, laptops, cell phones, and televisions containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

45.     Plaintiff **Robert F. Chejlava** is an Illinois resident who purchased a laptop, television, and a projector containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

46.     Plaintiff **Todd Stowater** is an Iowa resident who purchased MP3 players, a game console, a tablet, a cell phone, and a power tool containing electrolytic and/or film capacitors

LAW OFFICES
Cotchett, Pitre
& McCarthy, LLP

manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

47.     Plaintiff **Jamie Thaemert** is a Kansas resident who purchased a computer, laptops, tablets, and a television containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

48.     Plaintiff **Marie Parker** is a Maine resident who purchased a cell phone containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

49.     Plaintiff **Michael R. Fisher** is a Minnesota resident who purchased televisions and a laptop containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

50.     Plaintiff **John E. McDowell** is a Mississippi resident who purchased a television, mixing console, and a tablet containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

51.     Plaintiff **Scott Huffman** is a Missouri resident who purchased computers, cell phones, and televisions containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

52.     Plaintiff **Midwest Audio Corp.** is a Missouri company with its principal place of business in Missouri. Plaintiff purchased computers, cell phones, and televisions containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

53. Plaintiff **Charles Rusher** is a Missouri resident who purchased televisions, cell phones, speakers, a MP3 player, laptop, receiver, projector, and blu-ray player containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

54. Plaintiff **Troy Gibson** is a Nebraska resident who purchased a laptop, television, cell phone, and blu-ray player containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

55. Plaintiff **Marta Michaud** is a New York resident who purchased computers, televisions, tablets, a digital camera, and a printer containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

56. Plaintiff **David Standridge** is a New Mexico resident who purchased computers, cell phones, and televisions containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

57. Plaintiff **Thomas Scot Dunlap** is a North Carolina resident who purchased various electronic products, including mixers, power amps, and a BMW auto part containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

58. Plaintiff **Jane G. Schmit** is a North Dakota resident who purchased computers containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

59. Plaintiff **Sean G. Tarjoto** is an Oregon resident who purchased monitors, a camera, a video camera, a router, a keyboard, a wireless display kit, and a mouse containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

60. Plaintiff **Craig E. Swarthout** is a South Dakota resident who purchased a dishwasher, freezer, and induction burner containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

61. Plaintiff **Cetacea Sound, Inc.** is a Tennessee company with its principal place of business in Tennessee. Plaintiff purchased laptops and a computer containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

62. Plaintiff **MidSouth Investors** is a Tennessee corporation with its principal place of business in South Carolina. Plaintiff purchased a computer, cell phone, and printer containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

63. Plaintiff **Johnny Walker** is a Tennessee resident who purchased gaming consoles and a television containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

64. Plaintiff **Frederick P. Hege, Jr.** is a Vermont resident who purchased computers, printers, digital cameras, and a television containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

65.     Plaintiff **Michael W. Davis** is a West Virginia resident who purchased computers, televisions, printers, and laptops containing electrolytic and/or film capacitors manufactured by one or more defendants during the respective Class Periods. Plaintiff has been injured and is threatened with further injury as a result of the violations alleged in this Complaint.

### B.     Defendants

66.     This section identifies each of the defendants and describes the relationship of ownership or control between each defendant conspirator and its divisions, subsidiaries, or affiliates that sold capacitors to Plaintiffs and members of the Class.   The relationships between the conspirators and sellers are characterized by the ability to exercise restraint or direction; to dominate, regulate, or command; and/or to have the power or authority to guide or manage.

#### 1.     Defendants Involved in Both Electrolytic and Film Capacitor Conspiracies

##### a.     Hitachi Defendants

67.     Defendant Hitachi Chemical Co., Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan.   Hitachi Chemical Co. is one of the world's leading manufacturers of capacitors.   Hitachi Chemical Co., Ltd.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold electrolytic capacitors and film capacitors that were purchased throughout the United States, including in this District, during the respective Class Periods.   The JFTC raided Hitachi Chemical Co., Ltd. in June 2014 in connection with its investigation of the capacitor industry.

68.     Defendant Hitachi AIC Inc. is a Japanese corporation with its principal place of business in Tochigi, Japan.   It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Hitachi Chemical Co., Ltd.   Hitachi AIC Inc. manufactured, marketed, and/or sold electrolytic capacitors and film capacitors that were purchased throughout the United States, including in this District, during the respective Class Periods.

69.     Defendant Hitachi Chemical Co. America, Ltd. is a New York corporation with its principal place of business in Cupertino, California.   It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Hitachi Chemical Co., Ltd.   Hitachi Chemical Co. America, Ltd.

manufactured, marketed, and/or sold electrolytic and film capacitors that were purchased throughout the United States, including in this District, during the respective Class Periods.

70.     Defendants Hitachi Chemical Co., Ltd., Hitachi AIC Inc., and Hitachi Chemical Co. America, Ltd.  are herein referred to as "Hitachi."

**b.     Nippon Chemi-Con Defendants**

71.     Defendant Nippon Chemi-Con Corp. is a Japanese corporation with its principal place of business in Tokyo, Japan.  Nippon Chemi-Con Corp. is one of the world's leading manufacturers of capacitors.  Nippon Chemi-Con Corp.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold electrolytic and film capacitors that were purchased throughout the United States, including in this District, during the respective Class Periods.  The JFTC raided Nippon Chemi-Con Corp. in June 2014 in connection with its investigation of the capacitor industry.

72.     Defendant United Chemi-Con, Inc. is an Illinois corporation with its principal place of business in Rosemont, Illinois.  It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Nippon Chemi-Con Corp.  United Chemi-Con, Inc. manufactured, marketed, and/or sold electrolytic and film capacitors that were purchased throughout the United States, including in this District, during the respective Class Periods.

73.     Defendants Nippon Chemi-Con Corp. and United Chemi-Con, Inc. are herein collectively referred to as "Nippon Chemi-Con."

**c.     Rubycon Defendants**

74.     Defendant Rubycon Corp. is a Japanese corporation with its principal place of business in Nagano, Japan.  Rubycon Corp. is one of the world's leading manufacturers of capacitors.  Rubycon Corp.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold electrolytic and film capacitors that were purchased throughout the United States, including in this District, during the respective Class Periods.  The JFTC raided Rubycon Corp. in June 2014 in connection with its investigation of the capacitor industry.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

75.     Defendant Rubycon America Inc. is an Illinois corporation with its principal place of business in Gurnee, Illinois.  It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Rubycon Corp.  Rubycon America Inc. manufactured, marketed, and/or sold electrolytic and film capacitors that were purchased throughout the United States, including in this District, during the respective Class Periods.

76.     Defendants Rubycon Corp. and Rubycon America Inc. are herein collectively referred to as "Rubycon."

### d.     Panasonic Defendants

77.     Defendant Panasonic Corp. is a Japanese corporation with its principal place of business in Osaka, Japan.  Panasonic Corp. is one of the world's leading manufacturers of capacitors.  Panasonic Corp.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold electrolytic and film capacitors that were purchased throughout the United States, including in this District, during the Film Class Period. The JFTC raided Panasonic Corp. in June 2014 in connection with its investigation of the capacitor industry.  The DOJ, China NDRC, Korea FTC, and EC are also investigating Panasonic Corp. Panasonic Corp. has applied for the DOJ's and China NDRC's leniency programs, meaning it will likely receive amnesty from criminal prosecution in return for full cooperation with government antitrust authorities.

78.     Defendant Panasonic Corp. of North America is a Delaware corporation with its principal place of business in Newark, New Jersey.  It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Panasonic Corp.  Panasonic Corp. of North America manufactured, marketed, and/or sold electrolytic and film capacitors that were purchased throughout the United States, including in this District, during the Film Class Period.

79.     Defendant SANYO Electric Co., Ltd. is a Japanese corporation with its principal place of business in Osaka, Japan.  SANYO Electric Co., Ltd.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

electrolytic capacitors that were purchased throughout the United States, including in this District, during the Electrolytic Class Period.

80.     Defendant SANYO Electronic Device (U.S.A.) Corp. is a Delaware corporation with its principal place of business in San Diego, California. It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, SANYO Electric Co., Ltd. SANYO Electronic Device (U.S.A.) Corp. manufactured, marketed, and/or sold electrolytic capacitors that were purchased throughout the United States, including in this District, during the Electrolytic Class Period.

81.     Panasonic Corp. acquired a majority of shares of SANYO Electric Co., Ltd. on December 10, 2009 and the remaining shares of SANYO Electric Co., Ltd. on April 1, 2011.

82.     Defendants SANYO Electric Co., Ltd. and SANYO Electronic Device (U.S.A.) Corp. are herein collectively referred to as "SANYO" for allegations pertaining to them before December 10, 2009.

83.     Defendants Panasonic Corp., Panasonic Corp. of North America, SANYO Electric Co., Ltd., and SANYO Electronic Device (U.S.A.) Corp. are herein collectively referred to as "Panasonic" for allegations pertaining to them after December 10, 2009.

### 2.     Defendants Involved in Electrolytic Capacitor Conspiracy

#### a.     Elna Defendants

84.     Defendant Elna Co., Ltd. is a Japanese corporation with its principal place of business in Yokohama, Japan. Elna Co., Ltd.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold electrolytic capacitors that were purchased throughout the United States, including in this District, during the Electrolytic Class Period. The JFTC raided Toshin Kogyo Co., Ltd. in June 2014 in connection with its investigation of the capacitor industry. The DOJ and China NDRC are also investigating Elna Co., Ltd.

85.     Defendant Elna America Inc. is a California corporation with its principal place of business in Gardena, California. It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Elna Co., Ltd. Elna America Inc. manufactured, marketed, and/or sold electrolytic

capacitors that were purchased throughout the United States, including in this District, during the Electrolytic Class Period.

86.     Defendants Elna Co., Ltd. and Elna America Inc. are herein collectively referred to as "Elna."

**b.      Defendant Matsuo Electric Co., Ltd.**

87.     Defendant Matsuo Electric Co., Ltd. is a Japanese corporation with its principal place of business in Osaka, Japan.  Matsuo Electric Co., Ltd.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold electrolytic capacitors that were purchased throughout the United States, including in this District, during the Electrolytic Class Period.

88.     Defendant Matsuo Electric Co., Ltd. is herein referred to as "Matsuo."

**c.      NEC TOKIN Defendants**

89.     Defendant NEC TOKIN Corp. is a Japanese corporation with its principal place of business in Miyagi, Japan.  NEC TOKIN Corp.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold electrolytic capacitors that were purchased throughout the United States, including in this District, during the Electrolytic Class Period.  The China NDRC raided NEC TOKIN Corp. in March 2014 in connection with its investigation of the capacitor industry.  The DOJ, Korea FTC, and EC are also investigating NEC TOKIN Corp..

90.     Defendant NEC TOKIN America Inc. is a California corporation with its principal place of business in San Jose, California.  It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, NEC TOKIN Corp.  NEC TOKIN America Inc. manufactured, marketed, and/or sold electrolytic capacitors that were purchased throughout the United States, including in this District, during the Electrolytic Class Period.

91.     Defendants NEC TOKIN Corp. and NEC TOKIN America Inc. are herein collectively referred to as "NEC TOKIN."

92.     Defendant Nichicon Corp. is a Japanese corporation with its principal place of business in Kyoto, Japan.  Nichicon Corp.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold electrolytic capacitors that were purchased throughout the United States, including in this District, during the Electrolytic Class Period.  The JFTC raided Nichicon Corp. in June 2014 in connection with its investigation of the capacitor industry.  The DOJ is also investigating Nichicon Corp.

93.     Defendant Nichicon America Corp. is an Illinois corporation with its principal place of business in Schaumburg, Illinois.  It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Nichicon Corp.  Nichicon America Corp. manufactured, marketed, and/or sold electrolytic capacitors that were purchased throughout the United States, including in this District, during the Electrolytic Class Period.

94.     Fujitsu Media Devices, Ltd. was a Japanese corporation with its principal place of business in Yokohama, Japan.  Fujitsu Media Devices, Ltd.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold electrolytic capacitors that were purchased throughout the United States, including in this District, during the Electrolytic Class Period.  On October 30, 2008, Nichicon Corp. acquired Fujitsu Media Devices (Suzhou), Ltd.'s conductive polymer aluminum solid electrolytic capacitor business.

95.     On February 6, 2013, Nichicon Corp. sold its solid tantalum electrolytic capacitors business to AVX Corp.[4]  Nichicon Corp. continued to manufacture, market, and/or sell other electrolytic capacitors (*e.g.*, polymer aluminum electrolytic capacitors) after the sale.

96.     Defendants Nichicon Corp., Nichicon America Corp., and Fujitsu Media Devices, Ltd. are herein collectively referred to as "Nichicon."

---

[4] Plaintiffs have not named AVX Corp. as a defendant in this Complaint but reserve the right to do so upon further investigation.

### 3. <u>Defendants Involved in Film Capacitor Conspiracy</u>

#### a. **Defendant Nissei Electric Co., Ltd.**

97. Defendant Nissei Electric Co., Ltd. is a Japanese corporation with its principal place of business in Shizuoka, Japan. Nissei Electric Co., Ltd.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold film capacitors that were purchased throughout the United States, including in this District, during the Film Class Period.

98. Defendant Nissei Electric Co., Ltd. is herein referred to as "Nissei."

#### b. **Defendant Nitsuko Electronics Corp.**

99. Defendant Nitsuko Electronics Corp. is a Japanese corporation with its principal place of business in Nagano, Japan. Nitsuko Electronics Corp.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold film capacitors that were purchased throughout the United States, including in this District, during the Film Class Period.

100. Defendant Nitsuko Electronics Corp. is herein referred to as "Nitsuko."

#### c. **Defendant Okaya Electric Industries Co., Ltd.**

101. Defendant Okaya Electric Industries Co., Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan. Okaya Electric Industries Co., Ltd.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold film capacitors that were purchased throughout the United States, including in this District, during the Film Class Period.

102. Defendant Okaya Electric Industries Co., Ltd. is herein referred to as "Okaya."

#### d. **Shinyei Defendants**

103. Defendant Shinyei Technology Co., Ltd. is a Japanese corporation with its principal place of business in Kobe, Japan. Shinyei Technology Co., Ltd.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold film