George A. Nicoud III (State Bar No. 160111)
Eli Lazarus (State Bar No. 284082)
GIBSON, DUNN & CRUTCHER, LLP
555 Mission Street
San Francisco, California 94105-0921
Telephone: (415) 393-8200
Facsimile: (415) 393-8220
Email:     tnicoud@gibsondunn.com
           elazarus@gibsondunn.com

*Attorneys for Defendants NEC TOKIN Corporation
and NEC TOKIN America, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION, | MASTER FILE NO. 3:14-cv-03264-JD |
| THIS DOCUMENT RELATES TO: | **CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED COMPLAINT** |
| ALL INDIRECT PURCHASER ACTIONS | **ORAL ARGUMENT REQUESTED** |
| | **Hearing:** |
| | Date:     March 4, 2015 |
| | Time:     9:30 am |
| | Place:    Courtroom 11 |
| | Judge:    Honorable James Donato |

PLEASE TAKE NOTICE that on Wednesday, March 4, 2015 at 9:30 a.m., or as soon thereafter as these motions may be heard, in Courtroom 11, 19th Floor, 450 Golden Gate Avenue, before the Honorable James Donato, consistent with the Court's order, filed October 30, 2014 (Doc. 309), the undersigned Defendants, in addition to the Joint Motion filed this date, will and herby do move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing the Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint against each of the moving Defendants for failure to state a claim upon which relief can be granted. These Motions are based on this Notice of Motions and Motions, the accompanying consolidated Memoranda of Points and Authorities, the pleadings on file, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing on the Motions.

Gibson, Dunn &
Crutcher LLP

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED
COMPLAINT – CASE NO. 3:14-CV-03264-JD

1

## STATEMENT OF ISSUE PRESENTED

2         Whether the Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint fails to state

3   a claim upon which relief can be granted.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED
COMPLAINT – CASE NO. 3:14-CV-03264-JD

**TABLE OF CONTENTS**

Page

I.    The Indirect Purchaser Plaintiffs Have Failed to Plausibly Allege Any Involvement of Certain U.S. Subsidiaries. ................................................................................................ 1

II.   Nichicon Corporation ............................................................................................................ 6

      A.    IPPs Fail to Allege Facts Sufficient to Support a Claim of Conspiracy Against Nichicon Corporation ............................................................................................ 6

      B.    The Complaint Fails to Allege Facts Sufficient to Hold Nichicon Japan Responsible for the Pre-Acquisition Conduct of Fujitsu Media Devices (Suzhou), Ltd. ..................................................................................................... 7

III.  Shinyei Technology Co., Ltd. and Shinyei Capacitor Co., Ltd. ............................................ 10

IV.   Soshin Japan ........................................................................................................................ 13

V.    United Chemi-Con, Inc. ....................................................................................................... 16

      A.    The IPPs' Complaint Improperly Conflates UCC with Its Parent ............................. 16

      B.    The IPPs' Complaint Fails to Allege UCC's Membership and Role in the Alleged Conspiracy .............................................................................................. 16

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED COMPLAINT – CASE NO. 3:14-CV-03264-JD

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................. 2, 16

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ........................... 13

*In re Baby Food Antitrust Litig.*, 166 F.3d 112 (3d Cir. 1999) ........................ 11

*In re Lithium Ion Batteries Antitrust Litig. ("Batteries"),*
  Case No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 7516 (N.D. Cal. Jan. 21, 2014) . 1, 2, 16, 17

*In re Lithium Ion Batteries Antitrust Litig.,* 2014 U.S. Dist. LEXIS 141358 (N.D. Cal. Oct. 2,
  2014) ............................................................................................................ 8

*In re Milk Products Antitrust Litig.*, 84 F.Supp. 2d 1016 (D.C. Minn. 1997) ................... 8

*In re Plavix Indirect Purchaser Antitrust Litig.*, No. 1:06-cv-226, 2011 WL 335034 (S.D.
  Ohio Jan. 31, 2011) ................................................................................... 11

*Kendall v. Visa U.S.A. Inc.,* 518 F3d 1042 (9th Cir. 2008) ............................... 13

*No Cost Conference, Inc. v. Windstream Comm., Inc.*, 940 F. Supp. 2d 1285 (S.D. Cal. 2013) .......... 8

*Pajarillo v. Bank of America*, 2010 U.S. Dist. LEXIS 115227 (S.D. Cal. Oct. 28, 2010) ................. 8

## Rules

Federal Rules of Civil Procedure 12(b)(6) ................................................................ 1

Federal Rules of Civil Procedure 8(a) ..................................................................... 16

Federal Rules of Civil Procedure 9(b) ..................................................................... 16

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED
COMPLAINT – CASE NO. 3:14-CV-03264-JD

1

**CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES**

2        In its Civil Minutes after the October 29 status conference (Doc. 309), the Court directed that

3   the defendants could file both a joint motion to dismiss addressing all common issues and a

4   consolidated motion collecting all arguments that are being made separately for one or more

5   defendants only, limited to 5 pages of argument per defendant.  The Court further directed that the

6   second motion not repeat the arguments or background contained in the joint motion.[1]  On behalf of

7   defendants making separate arguments, those arguments are presented in this consolidated

8   Memorandum as follows:

9   **I.    The Indirect Purchaser Plaintiffs Have Failed to Plausibly Allege Any Involvement of
          Certain U.S. Subsidiaries.**

10

11        Indirect Purchaser Plaintiffs' ("IPPs") claims against ELNA America Inc., Hitachi Chemical

12   Co. America, Ltd., NEC TOKIN America Inc., Nichicon (America) Corp., and Rubycon America

13   Inc. ("the U.S. subsidiaries") should be dismissed because IPPs fail to make any non-conclusory

14   factual allegations whatsoever about the involvement of any of them in either of the two conspiracies

15   described in the Consolidated Class Action Complaint ("Complaint" or "Compl.").  To state claims

16   against defendants for involvement in a collusive conspiracy, IPPs must "allege that each individual

17   defendant joined the conspiracy and played some role in it because, at the heart of an antitrust

18   conspiracy is an agreement and a conscious decision by each defendant to join it." *In re Lithium Ion*

19   *Batteries Antitrust Litig. ("Batteries")*, Case No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 7516,

20   79 (N.D. Cal. Jan. 21, 2014) (internal quotation marks omitted).

21        There is not a single factual allegation in the Complaint that any particular U.S. subsidiary

22   engaged in any collusive conduct.  Though IPPs have apparently received substantial cooperation

23   from the amnesty applicant, their Complaint makes only the vague assertion that "Defendants' U.S.

24   subsidiaries . . . engaged in some bilateral discussions that included exchanges of sensitive

25   _____

26   [1]   The Court further expressed the view that the second motion would not contain citations to legal
         authorities.  Mindful of the Court's direction, the defendants making separate arguments have
27       limited their citations to legal authorities.  Because the matters addressed in the separate motions
         are not addressed in the joint motion, however, defendants have included citations to legal
28       authorities that support their separate arguments.

Gibson, Dunn &
Crutcher LLP

1
CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED
COMPLAINT – CASE NO. 3:14-CV-03264-JD

1   information."  Compl. ¶ 187.  This is the model of a conclusory allegation, and its "conclusory nature

2   . . . disentitles [it] to the presumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

3          Meanwhile, IPPs concede that "[g]enerally, in both electrolytic and film capacitor

4   conspiracies, defendants' Japanese parent companies attended the conspiratorial meetings."  Compl.

5   ¶ 187.  No reasonable inference can be drawn that any U.S. subsidiary ever participated in any of the

6   alleged meetings.  The Complaint has no factual allegations of collusive meetings occurring in the

7   United States.  Instead, it alleges that "Electrolytic Capacitor (ECC) meetings" were held in Tokyo,

8   that "KCC/Hananoki meetings" were held in the Kansai and Nagoya regions of Japan, that

9   "Aluminum Tantalum Capacitor (ATC) meetings" were held in Tokyo, and that "other group

10  meetings in Japan" were held to exchange information about "the Japan market."  Compl. ¶¶ 155-

11  159.  It is not plausible that subsidiaries based in the U.S. would travel across the Pacific Ocean to

12  participate in activities in Japan, particularly where the subsidiary is alleged to have a parent

13  company in Japan.

14         Absent unusual factual circumstances, the plausible inference is that the Japanese parents, not

15  the U.S. subsidiaries, participated in the activities in Japan.  The Complaint contains no allegations of

16  unusual factual circumstances; all it has is the conclusory allegation that:

17         Defendants engaged in conduct both inside and outside the United States that caused
       direct, substantial, and reasonably foreseeable and intended anticompetitive effects
18     upon interstate commerce within the United States. . . .  Defendants, directly and
       through their agents, engaged in a conspiracy to fix or inflate prices of electrolytic and
19     film that restrained trade unreasonably and affected adversely the market for
       capacitors. Defendants affected commerce, including import commerce, substantially
20     throughout the United States, proximately causing injury to Plaintiffs and members of
       the Classes.
21

22  Compl. ¶¶ 335-36.  As the *Batteries* Court held, such "boilerplate assertions of an agency relationship

23  with the parties whose participation in the conspiracy is more directly alleged" are insufficient.

24  *Batteries*, at 79.

25         IPPs' claims against the U.S. subsidiaries should therefore be dismissed.

26

27

28

Gibson, Dunn &
Crutcher LLP

2

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED
COMPLAINT – CASE NO. 3:14-CV-03264-JD

1

DATED:  December 19, 2014                GIBSON, DUNN & CRUTCHER LLP

2
                                         By:____/s/ George A. Nicoud III_____
3                                              George A. Nicoud III

4                                        George A. Nicoud III
                                         Eli M. Lazarus
5                                        555 Mission Street
                                         San Francisco, CA 94105-0921
6                                        415-393-8308
                                         Fax: 415-374-8473
7                                        Email: tnicoud@gibsondunn.com

8                                        *Attorneys for Defendant NEC TOKIN America, Inc.*

9
DATED:  December 19, 2014                WILSON SONSINI GOODRICH & ROSATI
10
                                         By:____/s/ Jonathan M. Jacobson_____
11                                             Jonathan M. Jacobson

12                                       Jonathan M. Jacobson
                                         Chul Pak (admitted *pro hac vice*)
13                                       Jeffrey C. Bank (admitted *pro hac vice*)
                                         1301 Avenue of the Americas, 40th Floor
14                                       New York, New York 10019
                                         Telephone:  (212) 497-7758
15                                       Facsimile:  (212) 999-5899
                                         jjacobson@wsgr.com
16                                       cpak@wsgr.com
                                         jbank@wsgr.com
17
                                         Jeff VanHooreweghe (admitted *pro hac vice*)
18                                       1700 K Street, N.W., Fifth Floor
                                         Washington, DC 20006
19                                       Telephone:  (202) 973-8825
                                         Facsimile:  (202) 973-8899
20                                       jvanhooreweghe@wsgr.com

21                                       *Attorneys for Defendant Hitachi Chemical Company
                                         America, Ltd.*
22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED
COMPLAINT – CASE NO. 3:14-CV-03264-JD

1    DATED:  December 19, 2014              HUNTON AND WILLIAMS LLP

2                                          By:     /s/ Djordje Petkoski
                                                     Djordje Petkoski
3

4                                          Djordje Petkoski (admitted *pro hac vice*)
                                           2200 Pennsylvania Avenue, NW
5                                          Washington, DC 20037
                                           202-955-1500
6                                          Email: dpetkoski@hunton.com

7                                          *Attorneys for Defendant Rubycon America Inc.*

8    DATED:  December 19, 2014              WILMER CUTLER PICKERING HALE AND DORR
                                           LLP
9

10                                         By:     /s/ Heather S. Tewksbury
                                                     Heather S. Tewksbury
11

12                                         Heather S. Tewksbury
                                           950 Page Mill Road
13                                         Palo Alto, CA 94304
                                           (650) 858-6134
14                                         Fax: (650) 858-6100
                                           Email: heather.tewksbury@wilmerhale.com
15

16                                         Thomas Mueller (admitted *pro hac vice*)
                                           1875 Pennsylvania Avenue, NW
17                                         Washington, DC 20006
                                           (202) 663-6766
18                                         Fax: (202) 663-6363
                                           Email: thomas.mueller@wilmerhale.com
19                                         *Attorneys for Defendant ELNA America, Inc.*

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED
COMPLAINT – CASE NO. 3:14-CV-03264-JD

DATED:  December 19, 2014

K&L GATES LLP

By:_____*/s/ Michael E. Martinez*_____
       Michael E. Martinez

Scott M. Mendel (admitted *pro hac vice*)
Steven M. Kowal (admitted *pro hac vice*)
Michael E. Martinez  (admitted *pro hac vice*)
Lauren N. Norris (admitted *pro hac vice*)
Lauren B. Salins (admitted *pro hac vice*)
70 West Madison Street, Suite 3100
Chicago, IL 60602
312-372-1121
Email: michael.martinez@klgates.com

*Attorneys for Defendant Nichicon (America) Corporation*

Gibson, Dunn &
Crutcher LLP

1  II.  **Nichicon Corporation**

2      A.  **IPPs Fail to Allege Facts Sufficient to Support a Claim of Conspiracy Against Nichicon Corporation[2]**

3

4      Paragraphs 153 through 178 allege that electrolytic capacitor cartel members in Japan

5  engaged in group and bilateral meetings involving electrolytic capacitors.  Of those paragraphs,

6  Nichicon Corporation (hereinafter "Nichicon Japan") is alleged to have participated in only five types

7  of meetings: ECC meetings; KCC/Hananoki meetings; "other" meetings "similar to industry

8  gatherings or trade association meetings;" ATC meetings; and Shimotsuki Kai meetings.[3]  Compl.

9  ¶¶ 155, 157-59, 166-67.  These paragraphs fall short of sufficiently alleging that Nichicon Japan

10  entered into an agreement with any other defendant.[4]

11      Paragraph 155 alleges that the "ECC meetings consisted of monthly meetings in Tokyo

12  attended by mid-level managers to exchange information (though not related to prices or profits) and

13  semi-annual meetings attended by high-level employees to share production data.  Members

14  anonymously submitted their data, which a third-party then collected and aggregated."  Compl. ¶ 155.

15  An exchange of aggregated non-price information is not unlawful and does not evidence a price

16  fixing conspiracy.

17      Similarly, the paragraphs related to the KCC/Hananoki, "other" and ATC meetings do not

18  allege any conduct by Nichicon Japan from which it can be inferred that it entered an agreement

19  regarding the price of capacitors for sale in or into the United States.  Compl. ¶¶ 157-59.  The

20  KCC/Hananoki and "other" meetings allegedly involved only the sale of capacitors in Japan and

21  there is no assertion of an agreement with respect to price, even as to Japanese sales. Compl. ¶¶ 157-

22  _____

23  [2]  For the reasons set forth in the preceding section, the claims against Nichicon (America) Corporation should be dismissed.

24

25  [3]  Plaintiffs allege that the ECC and KCC/Hananoki meetings occurred between 1999 and 2003, and that the "other" meetings began in the 1980s and continued through 2003.  Compl. ¶¶ 154, 158.

26  This suggests that the majority of these meetings occurred prior to the electrolytic capacitor conspiracy period, which Plaintiffs allege began on January 1, 2003.  Compl. ¶ 2.

27  [4]  Nichicon Japan incorporates by reference the legal standards for judging the sufficiency of a complaint set forth in the Legal Standards section of the Joint Motion to Dismiss the DPP

28  Complaint.

Gibson, Dunn & Crutcher LLP

6

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED COMPLAINT – CASE NO. 3:14-CV-03264-JD

58.  The allegations as to the ATC meetings assert only that "sensitive information" was exchanged. Compl. ¶ 159.  There is no allegation of agreement, let alone an agreement relating to the prices of capacitors for sale in or into the U.S.

Finally, while the Complaint alleges that the attendees of the "Shimotsuki Kai" meetings met "to exchange, to discuss, and agree upon prices," Plaintiffs fail to allege facts that support these conclusory allegations as they relate to Nichicon Japan.  Compl. ¶ 166.  In fact, the only specific conduct alleged is that at the "Shimotsuki Kai" meetings "[h]igh-level employees also discussed electrolytic capacitor demand using detailed statistical reports by third-parties on the demand for electronic products (e.g., computers, cellphones, AV products)" and that "[e]lectrolytic capacitor cartel members eventually hired Fuji Chimera Research Institute, Inc. to create similar reports for use at Shimotsuki Kai meetings."  Compl. ¶ 166.  Allegations that Nichicon Japan was involved in discussing industry demand based on third party statistical reports do not support an inference that it participated in a conspiracy to fix prices, let alone prices in the United States.

Only seven other of the 411 paragraphs specifically reference Nichicon Japan.  Four of the allegations relate only to the involvement of Nichicon Japan in trade associations.  Compl. ¶¶ 233, 234, 238, 240.  Such involvement does not raise an inference of conspiracy.  See Section I.E of Defendants' Joint Motion to Dismiss the DPP Complaint.  The final three paragraphs relate to unilateral public statements by Nichicon Japan regarding changes in demand, problems with supply of raw material and production delays resulting from the horrific 2011 earthquake and tsunami that hit Japan.  Compl. ¶¶ 255, 296, 301.  These allegations relate to the IPPs' assertion of fraudulent concealment and in no way support a plausible inference that Nichicon Japan participated in a conspiracy.

**B.     The Complaint Fails to Allege Facts Sufficient to Hold Nichicon Japan Responsible for the Pre-Acquisition Conduct of Fujitsu Media Devices (Suzhou), Ltd.**

Plaintiffs allege that on October 30, 2008, Nichicon Japan acquired the conductive polymer aluminum solid electrolytic capacitor business of Fujitsu Media Devices (Suzhou) Ltd. ("FMD") and seek to hold Nichicon Japan responsible for FMD's pre-acquisition conduct.  Compl. ¶¶ 94, 96.  Indeed, all of the alleged conduct of FMD occurred prior to the October 2008 acquisition by Nichicon

Gibson, Dunn & Crutcher LLP

7

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED COMPLAINT – CASE NO. 3:14-CV-03264-JD

Japan.  Compl. ¶¶ 174-75, 177-78.  However, Plaintiffs fail to properly plead the elements of successor liability.  A purchaser does not assume the seller's liabilities unless: (1) the purchasing corporation expressly or impliedly agreed to assume such liabilities; (2) the transaction amounts to a 'de-facto' consolidation or merger; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the purpose of the transaction was to fraudulently escape liability.  *No Cost Conference, Inc. v. Windstream Comm., Inc*., 940 F. Supp. 2d 1285, 1299-1300 (S.D. Cal. 2013).[5]

Plaintiffs fail to allege any facts that support a reasonable inference that any of these four conditions apply to Nichicon Japan's acquisition of FMD.   Plaintiffs simply allege that "[o]n October 30, 2008, Nichicon Corp. [Japan] acquired Fujitsu Media Devices (Suzhou), Ltd.'s conductive polymer aluminum solid electrolytic capacitor business."  Compl. ¶ 94.  This single allegation is insufficient to state a plausible claim of successor liability against Nichicon Japan.  *In re Milk Products Antitrust Litig.*, 84 F.Supp. 2d 1016, 1025 (D.C. Minn. 1997) (plaintiff's single allegation that purchaser acquired seller is insufficient to establish successor liability); *No Cost Conference, Inc*., 940 F.Supp. 2d at 1299-1300 (plaintiff's allegation that "as a result of the merger, [purchaser] assumed all rights and responsibilities…as the successor in interest" is a conclusory allegation and insufficient to establish successor liability); *Pajarillo v. Bank of America*, 2010 U.S. Dist. LEXIS 115227, *7 (S.D. Cal. Oct. 28, 2010) (plaintiffs' allegation that the defendant "is sued as successor-in-interest to [seller]" was insufficient to impose liability on defendant under the successor liability theory).  Therefore, the Complaint is insufficient to hold Nichicon Japan responsible for FMD's pre-acquisition conduct.

---

[5] *See also, In re Lithium Ion Batteries Antitrust Litig.,* 2014 U.S. Dist. LEXIS 141358, 172-76 (N.D. Cal. Oct. 2, 2014) (applying the substantive corporate law of California to determine whether a Japanese corporation could be held liable for the acts of its alleged Japanese predecessor-in-interest).

Gibson, Dunn & Crutcher LLP

8

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED COMPLAINT – CASE NO. 3:14-CV-03264-JD

DATED:  December 19, 2014

K&L GATES LLP

By:      /s/ Michael E. Martinez
            Michael E. Martinez

Scott M. Mendel (admitted *pro hac vice*)
Steven M. Kowal (admitted *pro hac vice*)
Michael E. Martinez  (admitted *pro hac vice*)
Lauren N. Norris (admitted *pro hac vice*)
Lauren B. Salins (admitted *pro hac vice*)
70 West Madison Street, Suite 3100
Chicago, IL 60602
312-372-1121
Email: michael.martinez@klgates.com

*Attorneys for Defendants Nichicon Corporation and Nichicon (America) Corporation*

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED COMPLAINT – CASE NO. 3:14-CV-03264-JD

III.     **Shinyei Technology Co., Ltd. and Shinyei Capacitor Co., Ltd.**

In addition to the grounds set forth in the Joint Motion, the Complaint fails to state a cognizable claim against Defendants Shinyei Technology Co., Ltd. ("STC") and Shinyei Capacitor Co., Ltd. ("SCC") (collectively, "Shinyei") for the following five reasons:

1.     Most obviously, the Complaint references Shinyei in only ten of its 412 paragraphs. In sum and substance:

- Paragraph 1 lumps Shinyei with a large group of parties and then references these "defendants" throughout the allegations.  Such undifferentiated pleading fails to give adequate notice to Shinyei and cannot survive Rule 12(b)(6).

- Paragraphs 10 and 152 make the identical bald assertion that "[t]he Nissei, Nitsuko, Okaya, Shinyei, Soshin, Taitsu, and Toshin Kogyo defendant families participated in the aforementioned film capacitor cartel."  This bare assertion of the existence of an unlawful agreement is a legal conclusion that fails settled pleading standards.

- Paragraphs 103-06 identify Shinyei as a manufacturer of film capacitors.  These paragraphs are devoid of any alleged wrongdoing.

- Paragraph 181 alleges that "[f]rom 2007 through 2009" illegal meetings were attended by "[t]he Hitachi, NCC, Nissei, Nitsuko, Okaya, Panasonic, Rubycon, Shinyei, Soshin, Taitsu, and Toshin Kogyo defendants."  This broad allegation lacks sufficient factual matter to state a claim against Shinyei.

- Paragraphs 182-83 provide conclusory summaries of meetings that Shinyei and others are alleged to have attended in the "Fall 2008" and "Winter 2008."  Again, Plaintiffs provide insufficient facts as to support the claimed conspiracy.

Thus, Shinyei is completely absent from long stretches of Plaintiffs' conspiracy theorizing.  The 137 pages boil down to two meetings in late 2008.

2.     Clearly, SCC does not belong in this case.  As summarized above, the factual allegations specific to Shinyei do not postdate its attendance at an alleged meeting in "Winter 2008." IPP-FCC ¶ 182 (emphasis added).  But SCC did not even exist at that time.  The Complaint admits

1   that SCC was "established" in "February 3, <u>2011</u>" and "began to manufacture, market, and/or sell

2   film capacitors in April <u>2011</u>."  *Id.* ¶ 275 (emphasis added).

3        3.      Similarly, given the dearth of post-2009 allegations, Plaintiffs have not alleged and

4   could not conceivably prove future harm by Shinyei.  Accordingly, the Court should dismiss Count I.

5   *See, e.g., In re Plavix Indirect Purchaser Antitrust Litig.*, No. 1:06-cv-226, 2011 WL 335034, at *4

6   (S.D. Ohio Jan. 31, 2011) (denying injunctive relief where the plaintiffs "provide[d] no factual basis

7   for their claims that there is any kind of threatened violation on the part of Defendants" and "merely

8   speculate[d] that Defendants' previous behavior and their status as the 'world's leading'

9   pharmaceutical or generic drug makers leads to the assumption that Defendants will engage in future

10  collusive agreements").

11       4.      Plaintiffs' generalized presentation of economic data does not move the needle in their

12  favor.  In particular, the use of "global pricing trends" fails in two regards.  IPP-FCC ¶¶ 275.  First,

13  most glaringly, Figure 21 lacks trend lines for any film capacitors, let alone ones sold by Shinyei.

14  Second, in any event, the probity of average pricing is minimal.  *See, e.g., In re Baby Food Antitrust*

15  *Litig.*, 166 F.3d 112, 122 (3d Cir. 1999) ("We do not believe that trend lines of average prices are a

16  reliable indicator of transactional prices.").

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Gibson, Dunn &
Crutcher LLP

1    5.    Finally, the Complaint's various allegations about "guilty pleas in related markets" by

2  other companies do not suggest that Shinyei entered into an agreement to fix prices. IPP-FCC ¶¶ 277-

3  84.  Of course, the inference to be drawn, if any, is that Shinyei is not complicit.

4

5    DATED:  December 19, 2014                McKENNA LONG & ALDRIDGE LLP

6                                            By:  _____/s/ Andrew S. Azarmi_____
                                                           Andrew S. Azarmi
7
                                             Andrew S. Azarmi
8                                            Spear Tower, One Market Plaza, 24th Floor
                                             San Francisco, CA 94150
9                                            415-267-4000
                                             Fax: 415-267-4198
10                                           Email: aazarmi@mckennalong.com

11
                                             Gaspare J. Bono (*pro hac vice* to be filed)
12                                           Stephen M. Chippendale (*pro hac vice* to be filed)
                                             1900 K Street, NW
13                                           Washington, DC 20006
                                             202-496-7500
14                                           Fax: 202-496-7756
                                             Email: gbono@mckennalong.com
15                                           Email: schippendale@mckennalong.com

16                                           *Attorneys for Defendants Shinyei Technology Co.,*
                                             *Ltd. and Shinyei Capacitor Co., Ltd.*
17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED
COMPLAINT – CASE NO. 3:14-CV-03264-JD

## IV.  Soshin Japan

In addition to the arguments set forth in Defendants' joint memoranda of law, there are at least two reasons why the IPPs' claims should be dismissed as against Defendant Soshin Electric Co., Ltd. ("Soshin Japan").  *First*, the Complaint does not give fair notice of the claims made against Soshin Japan, because it does not allege what it did, to whom, where and when.  The Complaint makes almost exclusively collective allegations against "Defendants" without alleging facts as to which wrongful acts Soshin Japan is responsible for.

*Second*, the Complaint fails to adequately allege that Soshin Japan entered into the alleged conspiracy.  While the IPPs generally claim that Soshin Japan attended a single trade association meeting, IPPs do not adequately plead "what" Soshin Japan discussed or agreed to there.  At most, the Complaint alleges that Soshin Japan may have had an *opportunity* to enter into an improper agreement, which on its own does not permit the inference that an *actual* improper agreement was reached.  Indeed, the IPPs' deficient allegations leave open the possibility that Soshin Japan's alleged conduct was entirely permissible.

To state a claim for relief, the IPPs' allegations must give "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005); *see also Kendall v. Visa U.S.A. Inc.,* 518 F3d 1042, 1048 (9th Cir. 2008) (dismissing antitrust claims for failing to answer basic questions such as "who, did what, to whom (or with whom), where, and when").  The Complaint here comes nowhere close to meeting this standard.  Rather, it contains dozens of paragraphs asserting vague, generalized allegations about unspecified "Defendants," meetings, and agreements, which do not provide the particularized, factually-supported allegations necessary to state an antitrust claim against Soshin Japan individually, and does not give adequate notice of the conspiratorial conduct in which it is alleged to have engaged.

The IPPs' bare-bones allegations against Soshin Japan contain no facts plausibly suggesting that it entered into even *one* unlawful agreement to restrain trade, much less that it joined the "massive" conspiracy spanning many years that the IPPs allege in their pleadings.  At most, the Complaint alleges that in Winter 2008, Soshin Japan "attended a JFC meeting" where "defendants" allegedly "discussed increasing prices," "shared sales data and forecasts," and "agreed to partial price

Gibson, Dunn & Crutcher LLP

13

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED COMPLAINT – CASE NO. 3:14-CV-03264-JD

increases." Compl. ¶¶ 181-182.  These allegations are pure boilerplate, and suggest only that Soshin Japan participated in a lawful trade association meeting, not that it joined a conspiracy.  IPPs cite no facts describing, for example, the scope of the agreement, when the increases would become effective, the products to which it would apply or what prices the participants would charge.  Nor do they affirmatively allege that every Defendant listed in paragraph 181, including Soshin Japan, participated in the alleged agreement.  IPPs provide no examples of any capacitor purchased by any IPP that was affected by this alleged agreement, or even an example of a price that any purchaser paid.  *Id.* ¶ 182.  Rather, the IPPs baldly allege that their purchases were affected by alleged illegal agreements, without alleging any facts leading the reader to accept that conclusion as plausible.  Tellingly, in the very next paragraph, IPPs allege a separate JFC meeting in Fall 2008, documented by a chart supposedly created by Panasonic that allegedly includes pricing information for specific listed competitors (not Soshin Japan), and states that "each defendant" (presumably, those detailed in the chart) "discussed negotiating for price increases." *Id.* ¶ 183.  Combined with the vague and generalized allegations in the preceding paragraph, it is not plausible to infer that Soshin Japan was among that group of "defendants" who allegedly entered into an impermissible agreement to restrain trade.  Nowhere else in their pleadings do the IPPs allege that Soshin Japan participated any other meeting with competitors, or that it took part in any anticompetitive agreement.

In the absence of specific facts about a single unlawful agreement in which Soshin Japan took part, IPPs' allegations do not plausibly suggest that it committed any wrongdoing at all, much less that it joined IPPs' alleged conspiracy to inflate, fix, raise, maintain or artificially stabilize the prices of film capacitors.

///

///

///

///

///

///

///

Gibson, Dunn &
Crutcher LLP

14
CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED
COMPLAINT – CASE NO. 3:14-CV-03264-JD

DATED:  December 19, 2014

HUGHES HUBBARD & REED LLP

By: _____ /s/ David H. Stern _____
                        David H. Stern

David H. Stern (CA Bar No. 196408)
Carolin Sahimi (CA Bar No. 260312)
Hughes Hubbard & Reed LLP
350 South Grand Avenue
Los Angeles, CA 90071-3442
Tel: (213) 613-2800
Fax: (213) 613-2950
David.Stern@hugheshubbard.com
Carolin.Sahimi@hugheshubbard.com

Ethan E. Litwin (*pro hac vice* to be filed)
Morgan J. Feder (*pro hac vice* to be filed)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel: (212) 837-6000
Fax: (212) 422-4726
Ethan.Litwin@hugheshubbard.com
Morgan.Feder@hugheshubbard.com

*Counsels for Defendant Soshin Electric Co., Ltd.*

Gibson, Dunn &
Crutcher LLP

1

## V.    United Chemi-Con, Inc.

2      The IPP complaint's claims against United Chemi-Con, Inc. ("UCC") should be dismissed,

3  because the complaint improperly conflates UCC with its parent and fails to otherwise allege that

4  UCC joined the conspiracy and played some role in it.

5      ### A.    The IPPs' Complaint Improperly Conflates UCC with Its Parent

6      Plaintiffs fail to differentiate between UCC and Nippon Chemi-Con Corp. ("NCC").

7  Because the complaint refers to the two entities together as merely "Nippon Chemi-Con" or "NCC,"

8  it is impossible to determine whether allegations refer only to NCC or to both UCC and NCC.  See

9  Compl. ¶¶ 73, 152.  UCC thus cannot know whether plaintiffs claim that UCC attended various

10 meetings, is a member of certain associations, or made certain statements.  See Compl. ¶¶ 155-159,

11 162, 167, 178, 230, 232-34, 237-38, 291, 296, 301.  Nor can UCC know whether it is included in

12 Plaintiffs' allegation that "Defendants' U.S. subsidiaries . . . engaged in some bilateral discussions."

13 Compl. ¶ 187.  As described above, absent unusual circumstances, the plausible inference is that the

14 Japanese parent, and not the U.S. subsidiary, participated in the alleged activities in Japan.

15 Accordingly, plaintiffs' boilerplate allegations equating UCC to NCC are insufficient under Fed. R.

16 Civ. P. 8(a) and Fed. R. Civ. P. 9(b).

17     ### B.    The IPPs' Complaint Fails to Allege UCC's Membership and Role in the Alleged
18         Conspiracy

19     The few allegations that do reference UCC itself fail to allege that UCC "joined the

20 conspiracy and played some role in it."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Batteries*,

21 2014 U.S. Dist. LEXIS 7516 at 79.  In order to survive this motion to dismiss, plaintiffs must allege

22 that UCC itself made a conscious decision to conspire with the other defendants.  *Batteries*, 2014

23 U.S. Dist. LEXIS 7516 at 79.

24     Plaintiffs allege that UCC is a subsidiary of NCC, and that "[e]ach defendant acted as the

25 principal of or agent for the other defendant[s] with respect to the acts, violation, and common course

26 of conduct alleged herein."  Compl. ¶¶ 72, 113.  Such allegations do not indicate a conscious

27 commitment to a common scheme on the part of UCC:  "[B]oilerplate assertions of an agency

28 relationship with the parties whose participation in the conspiracy is more directly alleged . . . do[]

Gibson, Dunn &
Crutcher LLP

16

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED
COMPLAINT – CASE NO. 3:14-CV-03264-JD

not suffice to demonstrate" such a conscious decision. *Batteries*, 2014 U.S. Dist. LEXIS 7516 at 79-80.

Plaintiffs' only other allegation of conduct on the part of UCC is that UCC and several other defendants were involved in "bilateral meetings and discussions . . . from 2002 to 2013 regarding film capacitors sold to Dell Inc." Compl. ¶ 186.[6] This allegation about meetings beginning in 2002 is not an allegation that UCC engaged in the alleged film capacitor cartel, which allegedly began in 2007. Plaintiffs fail to allege what information was exchanged through these particular meetings or discussions, any agreements that were arrived at, what actions were taken as a result, or any other connection to the alleged conspiracy.

For these reasons, the claims against UCC should be dismissed.

DATED:  December 19, 2014

CADWALADER, WICKERSHAM AND TAFT LLP

By:    */s/ Charles F. Rule*
            Charles F. Rule

Charles F. Rule (admitted *pro hac vice*)
Joseph J. Bial (admitted *pro hac vice*)
Daniel J. Howley (admitted *pro hac vice*)
700 6th St, NW
Washington, DC 20001
202-862-2200
Fax: 202-862-2400
Email: rick.rule@cwt.com
Email: joseph.bial@cwt.com
Email: daniel.howley@cwt.com

*Attorneys for Defendant United Chemi-Con, Inc.*

---

[6]  Plaintiffs make no allegation that UCC engaged in *any* conduct relating to electrolytic capacitors, except for the manufacturing, marketing, and/or sale of electrolytic capacitors. *See* Compl. ¶ 72.

Gibson, Dunn &
Crutcher LLP

1        I attest that concurrence in the filing of this document has been obtained from each of the

2   other signatories above.

3   DATED:  December 19, 2014         By:     */s/ George A. Nicoud III*

4                                         George A. Nicoud III

Gibson, Dunn & Crutcher LLP

18

CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED COMPLAINT – CASE NO. 3:14-CV-03264-JD

# PROOF OF SERVICE

I, Ling Chiou, declare as follows:

I am employed in the County of San Francisco, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 555 Mission Street, Suite 3000, San Francisco, California 94105, in said County and State.  On the date indicated below, I served the following document(s):

**CONSOLIDATED MOTIONS ON BEHALF OF INDIVIDUAL DEFENDANTS TO DISMISS THE CONSOLIDATED COMPLAINT**

on the parties stated below, by the following means of service:

Benjamin J. Eichel
Pepper Hamilton, LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103

**Attorneys for Defendant Vishay Intertechnology, Inc.**

Steven A. Reiss
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

David R. Singh
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134

**Attorneys for Defendant Taiyo Yuden (USA) Inc.**

☑   **BY MAIL:**  I placed a true copy in a sealed envelope addressed as indicated above, on the date shown below. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service with postage prepaid on that same day in the ordinary course of business.

☑   I am employed in the office of George A. Nicoud III, a member of the Bar of this Court, and that the foregoing document(s) was(were) printed on recycled paper.

☑   **(FEDERAL)**     I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 19, 2014, at San Francisco, California.

   /s/ *Ling Chiou*
Ling Chiou

Gibson, Dunn & Crutcher LLP