**[Counsel for Moving Defendants Listed on Signature Pages]**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CAPACITORS ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>**ALL DIRECT PURCHASER ACTIONS** | **CASE NO. 14-cv-03264-JD**<br><br>**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CERTAIN DEFENDANTS' JOINT MOTION TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:  March 4, 2015<br>Time: 9:30 a.m.<br>Judge: Hon. James Donato<br>Location: Courtroom 11 |

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Wilmer Cutler Pickering Hale and Dorr LLP<br>950 Page Mill Road<br>Palo Alto, CA 94304

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ...................................................1

RELIEF REQUESTED ................................................................................................1

STATEMENT OF ISSUES PRESENTED.....................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................2

SUMMARY OF ALLEGATIONS ................................................................................3

LEGAL STANDARD....................................................................................................4

ARGUMENT ................................................................................................................5

I.    THE COMPLAINT FAILS TO ALLEGE FACTS PLAUSIBLY SUGGESTING THE EXISTENCE OF A SINGLE OVERARCHING CONSPIRACY ................................................................................................6

    A.    Because DPPs Fail To Allege A Single Overarching Conspiracy, They Fail To Allege That A Cartel Involving Film Capacitors Began in 2003. ..............................................................................10

    B.    DPPs' Conclusory Allegations of Price-Fixing And Conspiracy Do Not Satisfy the Requirements for Pleading A Single Overarching Conspiracy Under Twombly.................................................11

    C.    The DPPs Lack Standing To Sue These Specific Defendants...................12

    D.    The DPPs Cannot Satisfy Their Twombly Obligation By Referring To The Existence of Pending Investigations And Unrelated Plea Agreements. ........................................................................................12

    E.    The DPPs' Industry Allegations Fail To State A Claim of A Single Overarching Conspiracy. ..............................................................14

II.    THE DPPs FAIL TO SUFFICIENTLY ALLEGE EACH DEFENDANT'S MEMBERSHIP AND ROLE IN THE ALLEGED CONSPIRACY...................16

    A.    The DPPs Ignore Corporate Separateness And Fail To Sufficiently Allege the Involvement of the U.S. Subsidiaries.....................................17

    B.    The DPPs Fail To Identify Each Defendant's Alleged Wrongful Conduct..................................................................................................19

III.    THE STATUTE OF LIMITATIONS BARS THE DPPs' CLAIMS BECAUSE THEY FAIL TO PLEAD FACTS SHOWING FRAUDULENT CONCEALMENT ............................................................................................20

CONCLUSION..............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*389 Orange St. Partners v. Arnold,*
    179 F.3d 656 (9th Cir. 1999) ..................................................................................21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...............................................................................................5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................................... passim

*Brantley v. NBC Universal, Inc.,*
    675 F.3d 1192 (9th Cir. 2012) ...........................................................................5, 12

*Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.,*
    611 F.3d 495 (9th Cir. 2010) ..................................................................................5

*Coppinger-Martin v. Solis,*
    627 F.3d 745 (9th Cir. 2010) ...........................................................................21, 22

*Davidson v. Worldwide Asset Purchasing, LLC,*
    914 F. Supp. 2d 918 (N.D. Ill. 2012) ..................................................................9, 20

*de Chavez v. United Mortg. Servs.,*
    No. 09-285-AC, 2009 U.S. Dist. LEXIS 112593 (D. Or. Nov. 2, 2009)..............................19

*Guerrero v. Gates,*
    442 F.3d 697 (9th Cir. 2006) ..................................................................................21

*Hexcel Corp. v. Ineos Polymers, Inc.,*
    681 F.3d 1055 (9th Cir. 2012) ...........................................................................21, 22

*In re Apple iPhone Antitrust Litig.,*
    No. 11-cv-06714-YGR, 2013 U.S. Dist. LEXIS 116245 (N.D. Cal. Aug. 15, 2013) ............12

*In re Baby Food Antitrust Litig.,*
    166 F.3d 112 (3d Cir. 1999)....................................................................................11

*In re Elevator Antitrust Litig.,*
    502 F.3d 47 (2d Cir. 2007)......................................................................................19

*In re Gilead Scis. Sec. Litig.,*
    536 F.3d 1049 (9th Cir. 2008) ..................................................................................5

*In re Graphics Processing Units Antitrust Litig. ("GPU"),*
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ..............................................................12, 13, 16

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
   647 F. Supp. 2d 1250 (W.D. Wash. 2009)............................................................16

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
   768 F. Supp. 2d 961 (N.D. Iowa 2011)...............................................................6

*In re Lithium Ion Batteries Antitrust Litig.*
   (*"Batteries"*), Case No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 7516 (N.D. Cal.
   Jan. 21, 2014)...................................................................................... passim

*In re Optical Disk Drive Antitrust Litig.*,
   No. 3:10-md-2143 RS, 2011 U.S. Dist. LEXIS 101763 (N.D. Cal. Aug. 3, 2011)....................
   ........................................................................................7, 14, 15

*In re Pa. Title Ins. Antitrust Litig.*,
   648 F. Supp. 2d 663 (E.D. Pa. 2009) .................................................................19

*In re Refrigerant Compressors Antitrust Litig.*,
   No. 2:09-md-02042, 2012 U.S. Dist. LEXIS 80269 (E.D. Mich. June 11, 2012)..................13

*In re Static Random Access Memory Antitrust Litig.*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) ...............................................................12

*In re Tableware Antitrust Litig.*,
   363 F. Supp. 2d 1203 (N.D. Cal. 2005) ..............................................................13

*In re Travel Agent Comm'n Antitrust Litig.*,
   583 F.3d 896 (6th Cir. 2009) .........................................................................19

*Kendall v. Visa U.S.A.*,
   518 F.3d 1042 (9th Cir. 2008) .....................................................................5, 11

*Kotteakos v. United States*,
   328 U.S. 750 (1946)..................................................................................6

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
   940 F.2d 397 (9th Cir. 1991) ........................................................................21

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)................................................................................12

*RSM Prod. Co. v. Petroleos De Venezuela Societa Anonima (PDVSA)*,
   338 F. Supp. 2d 1208 (D. Colo. 2004)...........................................................16, 18

*Suckow Borax Mines Consol., Inc. v. Borax Consol. Ltd.*,
   185 F.2d 196 (9th Cir. 1950) ........................................................................21

*Superior Offshore Int'l, Inc. v. Bristow Grp.*,
   738 F. Supp. 2d 505 (D. Del. 2010)...................................................11, 13, 15, 16

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,*
    552 F.3d 430 (6th Cir. 2008) ........................................................................... passim

*United States v. Bestfoods,*
    524 U.S. 51 (1998) ......................................................................................16

*United States v. Sargent Elec. Co.,*
    785 F.2d 1123 (3d Cir. 1986) ......................................................................7, 20

**STATUTES**

15 U.S.C. § 1 ....................................................................................................4

15 U.S.C. § 6a ..................................................................................................3

15 U.S.C. § 15b ................................................................................................20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ............................................................................................17

Fed. R. Civ. P. 9(b) ...................................................................................2, 3, 21

Fed. R. Civ. P. 12(b)(6) ...................................................................................1

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA  94304

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Wednesday, March 4, 2015, at 9:30 a.m., or as soon thereafter as this motion may be heard, in Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable James Donato, the undersigned Defendants[1] will and hereby do move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing the Direct Purchaser Plaintiffs' ("DPPs'") Consolidated Class Action Complaint ("Complaint" or "Compl.") for:  (1) failure to state a claim that satisfies the pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); and (2) failure to allege with particularity specific facts that would toll the applicable statute of limitations for fraudulent concealment.  This motion is based on this Notice of Motion and Motion, the accompanying Memoranda of Points and Authorities, the pleadings on file, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing on the motion.

## RELIEF REQUESTED

Defendants request that the Court dismiss the DPPs' Complaint for:  (1) failure to state a claim that satisfies the pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); and (2) failure to allege with particularity specific facts that would toll the applicable statute of limitations for fraudulent concealment.

---

[1] Joining in this motion are: AVX Corporation, ELNA Co. Ltd., ELNA America, Inc., EPCOS AG, EPCOS, Inc., TDK-EPC Corporation, TDK U.S.A. Corporation, Fujitsu Components America, Inc., Hitachi Chemical Co., Ltd., Hitachi Chemical Company America, Ltd., Hitachi AIC Incorporated, Holy Stone Enterprise Co., Ltd., Holy Stone International, KEMET Corporation, KEMET Electronics Corporation, Matsuo Electric Co., Ltd., NEC TOKIN Corporation, NEC TOKIN America, Inc., Nichicon Corporation, Nichicon (America) Corporation, Nippon Chemi-Con Corporation, United Chemi-Con Corporation, Okaya Electric Industries Co., Ltd., Okaya Electric America, Inc., Rubycon America Inc., Panasonic Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd., SANYO North America Corporation, Soshin Electric Co., Ltd., Soshin Electronics of America, Inc., ROHM Co., Ltd., ROHM Semiconductor U.S.A., LLC, Shinyei Kaisha, Shinyei Capacitor Co., Ltd., Shinyei Corporation of America, Inc., Taitsu Corporation, and Taitsu America, Inc., and Vishay Intertechnology, Inc. (collectively, "Defendants").

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATEMENT OF ISSUES PRESENTED**

1.      Whether the Complaint fails to state a claim because the DPPs' factual allegations do not plausibly suggest the existence of a single overarching conspiracy to fix prices of nearly all types of electrolytic and film capacitors supplied by all 47 defendant entities.

2.      Whether the Complaint fails to sufficiently allege each Defendant's membership and role in the alleged conspiracy.

3.      Whether the DPPs have alleged sufficient facts to satisfy the pleading requirements of Fed. R. Civ. P. 9(b) for fraudulent concealment to toll the statute of limitations, which bars claims accruing before July 18, 2010.

**MEMORANDUM OF POINTS AND AUTHORITIES**

The DPPs' Complaint must be dismissed because it fails to allege facts that plausibly suggest the existence of a single overarching conspiracy regarding both electrolytic and film capacitors.  The infirmities of the DPPs' Complaint come to light most readily when the DPPs' Complaint is compared with the Indirect Purchaser Plaintiffs' ("IPPs'") Consolidated Class Action Complaint ("IPP Compl.").   The IPPs' Complaint does *not* allege the existence of a single overarching conspiracy; instead, it alleges two *separate* conspiracies, involving different companies, and occurring over two *different* spans of time.  One conspiracy involving electrolytic capacitors allegedly began in 2003; the other conspiracy involving film capacitors allegedly began in 2007.  IPP Compl. ¶¶ 10, 152.  Although, as explained in the motions to dismiss in the IPP case, the IPPs' allegations are insufficient as to some defendants, the defendants as a general matter do not challenge the sufficiency of the IPP Complaint's allegations of two separate conspiracies, as opposed to the insufficiently alleged overarching single conspiracy in the DPP Complaint.

In contrast to the IPP Complaint, the DPPs' Complaint eschews factual allegations in favor of boilerplate and conclusory assertions, all of which are insufficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  The allegations in both complaints are strikingly different despite the fact that both the DPPs and IPPs had the benefit of a six-hour session with Defendant Panasonic Corp. ("Panasonic")—the alleged amnesty applicant under the Antitrust

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

Criminal Penalty Enhancement and Reform Act ("ACPERA") that the DPPs broadly claim admitted "to price fixing in the Capacitors industry[.]" Compl. ¶¶ 277-79.  There are clear incentives for the DPPs to pursue this course.  By alleging a single conspiracy instead of two separate ones, they add, without any support, four years to the alleged duration of the film capacitor conspiracy.  They also significantly ratchet up the *in terrorem* value of their case by subjecting makers of film capacitors to potential liability for sales of tantalum and aluminum capacitors that they never made, and subjecting makers of aluminum and tantalum capacitors to potential liability for sales of film capacitors they never made.  These allegations cannot plausibly suggest the existence of a single overarching conspiracy.[2]

DPPs' Complaint also fails to sufficiently state a claim against certain U.S. subsidiaries of Japanese companies named in the Complaint and fails to satisfy the pleading requirement of Fed. R. Civ. P. 9(b) that the DPPs plead with specificity facts sufficient to establish fraudulent concealment that would toll the statute of limitations.

## SUMMARY OF ALLEGATIONS

***The Products.***  The DPPs allege that Defendants engaged in a single overarching conspiracy with respect to electrolytic capacitors (including conventional aluminum, polymer aluminum, conventional tantalum, and polymer tantalum capacitors), and film capacitors (including polyester, metallized, polypropylene, polytetrafluoroethylene, and polystyrene film capacitors).  Compl. ¶¶ 1, 139-40, 146, 154.

***The Parties.***  The DPPs are four alleged direct purchasers of capacitors from Defendants. *Id*. ¶¶ 25-28.  With respect to the purchases made by each DPP, the Complaint alleges only that the DPPs "purchased Capacitors from one or more Defendants during the Class Period." *Id*.  The DPPs do not identify which aluminum, tantalum, or film capacitors they each allegedly purchased, or which Defendant(s) allegedly sold such products.  The DPPs currently identify 47

---

[2] Plaintiffs must further allege facts that the alleged conduct had the requisite effect on U.S. commerce, as required by the Foreign Trade Antitrust Improvements Act (FTAIA). 15 U.S.C. § 6a.  As per the Court's order (Dkt. No. 342 at 2) (Nov. 13, 2014), Defendants will address this issue separately in their subsequent briefing.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA  94304

corporate entities as Defendants (they originally named 29).  *Id.* ¶¶ 29-106.[3]  Despite the

significant differences and breadth of the products at issue in the Complaint, the DPPs do not

identify with any specificity the capacitors that each Defendant allegedly manufactured,

marketed, or sold.  *Id.*

  **The Alleged Conduct.**  The DPPs contend that Defendants formed an overarching

conspiracy regarding electrolytic and film capacitors dating from "no later than January 1, 2003

to present" (the "Class Period"), to "concertedly fix, raise, maintain and/or stabilize the prices for

aluminum, tantalum and film capacitors."  *Id.* ¶¶ 1, 183.

  **The Government Investigations.**  In addition, the DPPs note that the United States

Department of Justice ("DOJ") has opened an investigation into the capacitor industry and

intervened in this case.  *Id.* ¶ 275.  The DPPs generally allege "investigations into the capacitors

industry" by the People's Republic of China's National Development and Reform Commission,

the Japanese Fair Trade Commission, the South Korean Fair Trade Commission, the Taiwanese

Fair Trade Commission, and the European Commission involving certain Defendants.  *Id.* ¶¶

276, 282-83.

  The DPPs also tangentially refer to plea agreements entered into by alleged corporate

affiliates of certain Defendants in unrelated cases.  *Id* ¶¶ 288-93.  They make no allegation that

these cases bear any connection to the matters before this Court.  Yet, based on this and the other

allegations in the Complaint, the DPPs allege a violation of Section 1 of the Sherman Act, 15

U.S.C. § 1.  *Id.* ¶ 20.

## LEGAL STANDARD

  Under Section 1 of the Sherman Act, 15 U.S.C. § 1, a plaintiff must allege not just

ultimate facts but evidentiary facts that, if true, will prove:  (1) the existence of a conspiracy, (2)

the intention on the part of the co-conspirators to restrain competition, (3) actual injury to

---

[3] Despite filing their Consolidated Complaint on November 14, 2014 and adding 18 new
Defendants, the DPPs failed, in some cases, to serve the newly-named Defendants within the
statutory 21-day period, depriving such Defendants of their due process rights.  Despite this
failure of service, several of the newly-named Defendants also join in this joint motion to
dismiss.  Notably, three of the newly-named Defendants, Nissei Electric Co., Ltd., Nitsuko
Electronics Corp., and Toshin Kogyo Co., Ltd., have not.

competition, and (4) proximate harm suffered by the plaintiff as a result of the conspiracy. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012); *Kendall v. Visa U.S.A.*, 518 F.3d 1042, 1047 (9th Cir. 2008); *see also Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501-02 (9th Cir. 2010).  To survive a motion to dismiss a complaint alleging such a claim, the Supreme Court has ruled that the complaint must do more than provide "labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]"  *Twombly*, 550 U.S. at 555; *see also Kendall*, 518 F.3d at 1046 (same).  Rather, the factual allegations set forth in a Section 1 complaint must be sufficient "to raise a right to relief above the speculative level[,]" "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement," and "to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 555-56 & 570; *see also Kendall*, 518 F.3d at 1047.

A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully[,]" and allegations that are "merely consistent with a defendant's liability" do not rise to a plausible level.  *Id.* (internal quotation marks omitted).  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *Twombly*, 550 U.S. at 555.

For purposes of a motion to dismiss, the Court must take as true all of the factual allegations in the complaint but is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (explaining that the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." (internal citation omitted)).

## ARGUMENT

The DPP Complaint overreaches in at least five fundamental ways.  First, the DPPs fail to plausibly allege the existence of a single overarching conspiracy to fix the prices of both electrolytic and film capacitors.  Second, the DPPs fail to allege sufficient facts to plead that they

have standing to sue for all of the conduct alleged in the DPP Complaint.  Third, the DPPs overreach by pleading that "families" of Defendants (or "Defendants" generally) participated in the alleged conduct, and therefore inadequately attempt to tie the U.S. Subsidiaries to such conduct.  Fourth, the DPPs fail to allege sufficient facts to plausibly suggest that each Defendant joined and played a role in the alleged conspiracy.  Fifth, at least some of the DPPs' claims are time-barred.

## I.   THE COMPLAINT FAILS TO ALLEGE FACTS PLAUSIBLY SUGGESTING THE EXISTENCE OF A SINGLE OVERARCHING CONSPIRACY

The DPPs allege that 47 different Defendants met at different times, in different groups, at different locations, and discussed different products.  These allegations notwithstanding, they claim that "Defendants agreed to operate as a cartel to suppress price competition among them for their respective competing aluminum, tantalum and film capacitors."  Compl. ¶ 180.  This central allegation of a single overarching conspiracy involving both electrolytic and film capacitors is implausible on its face.  For this reason alone, the DPP Complaint should be dismissed.  *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 979 (N.D. Iowa 2011) (finding failure to state an antitrust claim where plaintiffs "have expressly relied on an 'overarching' conspiracy . . . that simply is not supported by any factual allegations" in the complaint).

The Supreme Court established years ago that allegations of a single conspiracy are legally insufficient when the facts suggest two or more smaller conspiracies.  *Kotteakos v. United States*, 328 U.S. 750, 772-73 (1946).  That is the case here.  As the Complaint alleges, aluminum, tantalum, and film capacitors differ from one another.  Aluminum and tantalum capacitors are both electrolytic capacitors, Compl. ¶ 137, while film capacitors are a type of electrostatic capacitor.  *Id.*  The different types of capacitors have unique attributes (*e.g.*, the amount of charge the capacitor can hold at a given voltage, volumetric efficiency, resistance to leaking charge, or equivalent series resistance) that make them more or less suitable for various applications.  *Id.* ¶¶ 132, 136, 141-43, 148-49, 155.  Most significant here, "[a]luminum capacitors . . . are not mutually interchangeable with tantalum capacitors or with film capacitors,

nor are film capacitors and tantalum capacitors mutually interchangeable with each other." *Id.* ¶ 174. Thus, these different capacitors, or at least electrolytic and film capacitors, do not compete with one another, which is consistent with the DPPs' allegation that "Defendants collectively controlled the respective ***markets*** for the sale of aluminum, tantalum and film capacitors . . . ." *Id.* ¶ 124 (emphasis added); *see also United States v. Sargent Elec. Co.*, 785 F.2d 1123, 1127 (3d Cir. 1986) ("An agreement among persons who are not actual or potential competitors in a relevant market is for Sherman Act purposes *brutum fulmen.*"). DPPs' allegations of non-interchangeability and choice of the plural "markets" rather than the singular "market" leads to the inference that multiple conspiracies might be plausible, but a single overarching conspiracy is not. *See In re Optical Disk Drive Antitrust Litig. ("ODD")*, No. 3:10-md-2143 RS, 2011 U.S. Dist. LEXIS 101763, at *30, *35 (N.D. Cal. Aug. 3, 2011) ("It is one thing to say that a small number of entities have conspired to fix the prices of particular products they directly sell; it is quite another to suggest that those entities have somehow agreed with unnamed parties to fix the prices of products each sells."); *cf. Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008) ("Within the insurance industry there are a multitude of different policy types (for example, life insurance, health insurance, and group policies), and each is part of its own individual market.").

Further cutting against the plausibility of a single overarching conspiracy are DPPs' allegations that different Defendants made or sold different types of capacitors. Many of the Defendants are only alleged to have sold film capacitors during the Class Period.[4] Others are only alleged to have sold electrolytic capacitors.[5] And at times the Complaint just punts, such as when it alleges that a Defendant manufactured, sold, and distributed one type of capacitor

---

[4] *See* Compl. ¶¶ 92-93 (Okaya Electric Industries Co., Ltd. and Okaya Electric America Inc.); ¶¶ 95-96 (Taitsu Corp. and Taitsu America, Inc.); ¶¶ 98-100 (Shinyei Kaisha, Shinyei Capacitor Co. Ltd., and Shinyei Corporation of America, Inc.); ¶ 102 (Nitsuko Electronics Corporation); ¶103 (Nissei Electric Co., Ltd.); ¶¶ 104-05 (Soshin Electric Co., Ltd. and Soshin Electronics of America Inc.).

[5] *See id.* at ¶ 34 (alleging that NEC TOKIN manufactured, sold, and distributed aluminum and/or tantalum capacitors); ¶¶ 75-78 (alleging Holy Stone Enterprise Co., Ltd., Holy Stone International, Holy Stone Polytech sold tantalum capacitors).

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA  94304

"and/or" another type of capacitor.[6]  Given that electrolytic capacitors and film capacitors are alleged not to be interchangeable, it does not make sense that a Defendant making only electrolytic capacitors would conspire with a Defendant making only film capacitors, and the Complaint alleges no facts suggesting that this happened.  *See Total Benefits*, 552 F.3d at 436-37 (finding a complaint deficient under *Twombly* where it failed to allege why defendants joined the conspiracy).

Still further undercutting the plausibility of a single overarching conspiracy is that allegations in the DPPs' Complaint directly contradict the existence of a single, overarching conspiracy.  For example, the DPPs allege that the allegedly conspiratorial meetings were separately held by the electrolytic and film capacitor groups.  *See* Compl. ¶ 196 ("The cartel's meetings . . . were generally organized by the types of Capacitors to be discussed . . . ATC and MK meetings were usually held among the Defendant manufacturers of aluminum and tantalum capacitors, and the JFC meetings were usually held among the Defendant manufacturers of film capacitors."); *see also id*. ¶ 203 ("For specific Defendant groups such as the film capacitor manufacturers, meetings were held less frequently . . . and in them the Defendant attendees addressed more targeted issues").  The DPPs allege different defendants, different meetings, different time periods, and different products.  And yet, they also allege the same implausible overarching conspiracy.  They attempt to do so by resorting in certain sections of the Complaint to generic allegations of what 47 different "Defendants" supposedly did, with respect to the alleged cartel, *see, e.g., id*. ¶¶ 182-97, even making general allegations against "Defendants" where they obviously mean a subgroup thereof, *compare id*. ¶¶ 201-02 (allegations regarding

---

[6] *See* Compl. ¶¶ 29- 32, 34-35, 37-38, 44-45, 47-48, 52, 54-55, 57-58, 63, 67-68, 70-71, 73-74, 79, 84-85, 87-90 (allegations with respect to Panasonic Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd., SANYO North America Corporation, NEC TOKIN Corporation, NEC TOKIN America, Inc., KEMET Corporation, KEMET Electronics Corporation, Nippon Chemi-Con Corporation, United Chemi-Con Corporation, Hitachi Chemical Co., Ltd., Hitachi AIC Inc., Fujitsu Ltd., Fujitsu Components America, Inc., Fujitsu Semiconductor America, Inc., Nichicon Corporation, Nichicon America Corporation, AVX Corporation, Rubycon Corporation, Rubycon America Inc., ELNA Co. Ltd., ELNA America Inc., Matsuo Electric Co., Ltd., TOSHIN KOGYO Co., Ltd., Vishay Intertechnology, Inc., ROHM Co., Ltd., ROHM Semiconductor U.S.A., LLC, EPCOS AG, EPCOS Inc., TDK-EPC Corporation, TDK U.S.A. Corporation).

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

meetings attended by "Defendants") *with id.* ¶ 203 (allegations regarding meetings attended by "Defendant groups such as the film capacitor manufacturers"), or generically referring to Defendants' awareness of "the cartel's regular meetings" in an attempt to plead those Defendants into the alleged conspiracy, *id.* ¶ 198.  *See Total Benefits*, 552 F.3d at 436 ("Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*"); *cf. Davidson v. Worldwide Asset Purchasing, LLC*, 914 F. Supp. 2d 918, 924 (N.D. Ill. 2012) ("[M]ere knowledge of the fraudulent or illegal actions of another is . . . not enough to show a conspiracy.") (internal quotation marks omitted).

Indeed, DPPs assert an implausible link between the electrolytic capacitor manufacturers and the film capacitor manufacturers by alleging:

> Nippon Chemi-Con, Rubycon, Hitachi AIC, and Panasonic/SANYO each played a key role in organizing the cartel's regular meetings and coordinating the operation of the cartel during the Class Period, because each of these Defendant companies manufactured both electrolytic capacitors (*i.e.*, aluminum and/or tantalum) and film capacitors and are dominant manufacturers of these capacitors.  This overlap of membership between the electrolytic and film capacitors group allowed the Defendants involved in the cartel to integrate and coordinate their collusive efforts.

> [T]here was substantial overlap between and among Defendants who participated in discussions, communications and agreements concerning electrolytic . . . capacitors, on the one hand, and film capacitors, on the other.

Compl. ¶¶ 199, 181.  Despite these assertions, DPPs fail to show that these "organizers" facilitated one overarching conspiracy in film and electrolytic capacitor sales.  The fact that some defendants made both electrolytic and film capacitors and may have participated in both an electrolytic capacitor conspiracy and a film capacitor conspiracy does not lead to an inference that they somehow combined two conspiracies into one when the products are alleged not to be interchangeable with one another.  Moreover, the DPPs try to combine Panasonic and Sanyo into one entity to suggest that this combined entity was involved in both film and electrolytic capacitor meetings when, as confirmed by the DPPs' own assertion, Panasonic and Sanyo were completely separate companies until December 2009, for most of the alleged conspiracy period. *See id.* ¶ 31 ("Prior to its acquisition by Panasonic in December 2009, SANYO had no corporate

affiliation with Panasonic or its business units, subsidiaries, agents or affiliates."); *id.* ¶ 199.  The DPPs must allege specific facts plausibly supporting such an improbable overarching conspiracy involving different products and different competitors, but the Complaint as it stands is bereft of such allegations, and the IPP Complaint suggests this is because a single conspiracy cannot be plausibly pled.

### A.   Because DPPs Fail To Allege A Single Overarching Conspiracy, They Fail To Allege That A Cartel Involving Film Capacitors Began in 2003.

As a by-product of combining the two alleged cartels into one, DPPs contend that the single film and electrolytic conspiracy began in 2003 but fail to allege facts supporting this assertion as to the film capacitors.  By DPPs' own admission, the electrolytic and film capacitor manufacturers held separate meetings; and, yet, DPPs do not allege that there was even one conspiratorial meeting regarding film capacitors until 2007.  *Id.* ¶¶ 196, 208(a); *see also id.* ¶ 203.[7]  The DPPs' Complaint refers to meeting rosters from 2003 to 2008 but is bereft of any indication as to which capacitors were discussed at those meetings.  *Id.* ¶ 198.  Courts in similar matters have found the pleading in "conclusory fashion" of allegedly conspiratorial meetings during specific periods of time to be inadequate in pleading that a conspiracy operated then.  *See, e.g., In re Lithium Ion Batteries Antitrust Litig.* (*"Batteries"*), Case No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 7516, at *75-76 (N.D. Cal. Jan. 21, 2014) (citation omitted) (finding a complaint making no mention of any specific meetings in either 2000 or 2001, and alleging only that meetings occurred in those years, did not adequately plead a conspiracy in 2000 or 2001).  This deficiency in the DPP Complaint is made more apparent by the IPP Complaint, which contends that the alleged film capacitor conspiracy did not begin until 2007.  *See* IPP Complaint ¶¶ 10, 152.

---

[7] The only meetings in 2003 the DPPs even generally refer to in the Complaint concern an alleged "Overseas Trade Sectional Meeting" of the "ATC Group" formed "among certain Defendants" on or before August 2003 in which "sales of aluminum and tantalum capacitors" were discussed.  Compl. ¶ 206.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA  94304

**B.** **DPPs' Conclusory Allegations of Price-Fixing And Conspiracy Do Not Satisfy the Requirements for Pleading A Single Overarching Conspiracy Under _Twombly_.**

The rest of the DPPs' factual contentions regarding alleged agreements among Defendants to fix prices consist of conclusory assertions and formulaic recitations of the elements of a cause of action that do not support a single overarching conspiracy.  Throughout the Complaint, DPPs assert that Defendants:  (1) "agreed to stabilize prices and resist customer efforts to request price reductions[,]" Compl. ¶ 208(b); and (2) discussed "customer requests for price reductions and agreed among themselves to resist price decreases and stabilize their film capacitor prices[,]" _id._ ¶ 208(e).  These bare-bone allegations of "agreement" among the 47 Defendants that in many cases do not sell competing products do not satisfy the DPPs' obligations under _Twombly_, because they constitute nothing more than legal conclusions masquerading as facts.  _See Twombly_, 550 U.S. at 564 ("Although in form a few stray statements speak directly of agreement, on fair reading these are merely legal conclusions resting on the prior allegations.") (footnote omitted); _see also Kendall_, 518 F.3d at 1047 (A "court is not required to accept such terms" as "conspiracy" or "agreement" as a "sufficient basis for a complaint") (quoting _Twombly_).  "Although in numerous paragraphs of its pleading, Plaintiff avers that Defendants 'agreed' or 'conspired' to inflate their prices, such conclusory allegations are not entitled to a presumption of truth on a motion to dismiss."  _Superior Offshore Int'l, Inc. v. Bristow Grp._, 738 F. Supp. 2d 505, 512 (D. Del. 2010).

Here, the DPPs fail to allege a single request for quotation that was ever allocated, or a single specific price that was ever agreed upon or adjusted regarding any product—let alone a price that was agreed upon by all Defendants— as a result of the alleged overarching conspiracy, despite having met with the ACPERA applicant for nearly six hours, _see, e.g._, Compl. ¶¶ 201-04, 208; _compare with_ IPP Compl. ¶ 183.  General industry allegations regarding average prices do not remedy this omission, _see, e.g.,_ Compl. ¶¶ 219-23.  _Cf. In re Baby Food Antitrust Litig._, 166 F.3d 112, 129 (3d Cir. 1999) (stating disbelief that "trend lines of _average prices_ are a reliable indicator of transactional prices") (emphasis in original).  Instead, the general industry allegations in the DPP Complaint make implausible a single overarching conspiracy, as they

show that the film, aluminum, and tantalum capacitors were part of distinct markets.  *See* Compl. ¶¶ 220-22.

### C.     The DPPs Lack Standing To Sue These Specific Defendants.

Another fundamental flaw in the DPPs' Complaint is that they fail to allege that they have standing to pursue their claims.  To invoke the power of a federal court under Article III of the Constitution, the DPPs "must allege some threatened or actual injury resulting from the putatively illegal action."  *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974).  Fatally absent among the more than 300 paragraphs that constitute the DPPs' pleadings here is a single fact showing that any alleged price-fixing "agreement" had anything to do with the capacitors purchased by these specific DPPs – the Complaint does not identify any specific product that any DPP actually bought (or from whom) at any price, much less one impacted by the alleged conspiracy.  *See* Compl. ¶¶ 25-28.  Absent such threshold allegations, the DPPs' claims cannot survive a motion to dismiss.  *See Brantley*, 675 F.3d at 1197; *see also Batteries*, 2014 WL 309192, at *57-58 n.8 (Plaintiffs "need to allege specific facts which, aided by reasonable inferences, allow the Court to draw a plausible conclusion that these named DPPs have suffered an antitrust injury traceable to these Defendants.").  The Complaint thus does not establish fact of injury to these plaintiffs and lacks fair notice to Defendants of the grounds upon which DPPs' claims rest, *see Twombly*, 550 U.S. at 555, despite presumably having received information from Panasonic about which specific types of capacitors were the subject of the alleged conspiracy.  *See In re Apple iPhone Antitrust Litig.*, No. 11-cv-06714-YGR, 2013 U.S. Dist. LEXIS 116245, at *21 (N.D. Cal. Aug. 15, 2013) (dismissing complaint that failed to allege facts to satisfy the "require[ment] that Plaintiffs at least purchased" the products affected by the alleged conspiracy).

### D.     The DPPs Cannot Satisfy Their *Twombly* Obligation By Referring To The Existence of Pending Investigations And Unrelated Plea Agreements.

The DPPs refer to the existence of government investigations and unrelated plea agreements entered into by corporate affiliates of certain defendants in their Complaint.  *See* Compl. ¶¶ 274-93.  The law is unequivocal, however, that such investigations carry "no weight in pleading an antitrust conspiracy claim."  *In re Graphics Processing Units Antitrust Litig.*

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

*("GPU")*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (internal quotation marks omitted) ("The grand jury investigation is a non-factor."); *see also In re Static Random Access Memory Antitrust Litig.*, 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008) (agreeing that the existence of a grand jury investigation does not support plaintiffs' antitrust conspiracy claims).  Because of the grand jury's secrecy requirement, the scope of an investigation is "pure speculation."  *GPU*, 527 F. Supp. 2d at 1024.  Consequently, the DPPs must "undertake [their] own reasonable inquiry and frame [their] complaint with allegations of [their] own design[,]" because "simply saying me too," after a governmental investigation, does not state a claim.  *In re Tableware Antitrust Litig.*, 363 F. Supp. 2d 1203, 1205 (N.D. Cal. 2005) (internal quotation marks omitted).  Indeed, "proof of the mere occurrence of the DOJ's investigation is equally consistent with Defendants' innocence." *Bristow Grp.*, 738 F. Supp. 2d at 517.

Further, reports that one Defendant—Panasonic—has approached US and Chinese authorities to self-report, *see* Compl. ¶¶ 277, 280, do not make it any more plausible that the other 46 defendants named in the Complaint were in fact involved in any conspiracy, let alone a combined one involving electrolytic and film capacitors, nor can Panasonic's alleged self-reporting be used to infer their involvement.[8]  *See In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2012 U.S. Dist. LEXIS 80269, at *28-33 (E.D. Mich. June 11, 2012) (finding complaint failed to state a claim against all of the defendants except for the two that were alleged to have entered criminal guilty pleas, and that had withdrawn their *Twombly* challenge).  The fact alone that Panasonic may have self-reported gives no insight into what it

_____

[8] The DPPs assert in one instance that "Defendant Panasonic Corporation, on behalf of itself and its wholly owned subsidiaries . . . has admitted to the United States Department of Justice ("DOJ") that Defendants engaged in price fixing beginning no later than, January 1, 2003, and Defendants' cartel activities were undertaken for the purpose of artificially maintaining and inflating prices of aluminum, tantalum and film capacitors sold to United States purchasers and purchasers worldwide."  Compl. ¶ 8.  In the next breath, the DPPs assert that "[c]artel members did not know the identities of all the cartel's participants or even the identities of all of its participants."  Compl. ¶ 181.  Such a generic reference to "Defendants," when discussing Panasonic's "admission," particularly in the face of a contention by the DPPs that Panasonic presumably did not know the identities of all the cartel's participants, does not serve to state a plausible claim of conspiracy against all of the named Defendants.  *See Total Benefits*, 552 F.3d at 436.

reported.  Furthermore, cooperating with authorities, which the Complaint alleges NEC Tokin is doing with the Japan authority, is not an admission of guilt or of involvement in the alleged conspiracy.  *See* Compl. ¶ 285.  Moreover, there is no indication in the Complaint that these other authorities are investigating anything beyond purely domestic matters.

The DPPs also allege that "some defendants—especially Panasonic/SANYO . . . have a documented history of cartel behavior[.]"  Compl. ¶ 288.[9]  The complaint refers only to investigations and guilty pleas involving certain corporate entities of Panasonic and SANYO and regarding products in markets unrelated to the capacitor industry (lithium ion battery cells, CRTs for televisions and monitors, and TFT-LCD flat panel displays), *see id.* ¶¶ 288-93, which does not make the existence of a cartel among the other 43 defendants any more plausible.  Moreover, the DPPs have done nothing to show the commonality between those circumstances in which Panasonic and SANYO are alleged to have been investigated and pleaded guilty and this case. *ODD*, 2011 U.S. Dist. LEXIS 101763, at *37 ("Descriptions of *other* instances in which some of the[] defendants were found to have engaged in price-fixing" are not "probative" if "plaintiffs have not shown enough commonalities between those circumstances and the present case") (emphasis in original).

### E.   The DPPs' Industry Allegations Fail To State A Claim of A Single Overarching Conspiracy.

The DPPs also devote dozens of paragraphs in their Complaint to allegations regarding the capacitor industry, which they contend "facilitated Defendants' conspiracy."  Compl. ¶ 224. The DPPs assert that the aluminum, tantalum, and film capacitor industries have exhibited (1) "market concentration among a limited number of participants; (2) "high barriers to entry"; (3) "mutual interchangeability of Defendants' products"; (4) "inelasticity of demand"; (5) "product commoditization"; (6) "weak demand in a mature market"; (7) "excess manufacturing capabilities and capacity"; (8) "a large number of purchasers with limited purchasing power;" and (9) "ease of information sharing among Defendants."  Compl. ¶ 224.  All of these allegations

---

[9] "Panasonic/SANYO" are defined in the Complaint as including Panasonic Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd., and SANYO North America Corporation.  Compl. ¶¶ 29-33.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA  94304

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

1   assume that electrolytic and film capacitors comprise one industry, which contradict DPPs' other

2   allegations showing that they do not.  As discussed above, aluminum, tantalum, and film

3   capacitors are distinct products with unique functionalities and purposes.  *See infra* at pp. 6-7.

4   Moreover, the DPPs allege different price developments for the various capacitors, highlighting

5   the fact that these products inhabit separate markets.  The DPPs allege that the prices of tantalum

6   capacitors have increased from 2005 to the present, *id.* ¶ 220, that the prices of aluminum

7   capacitors have declined and generally stabilized from 2003 until 2013, *id.* ¶ 221, and that the

8   prices of film capacitors increased from 2005 until the beginning of 2009, and then began to

9   decline, *id.* ¶ 222.

10        Furthermore, the case law is clear that market allegations like those pleaded by the DPPs,

11   *see* Compl. ¶¶ 165-69, 225-73, are insufficient to state a conspiracy claim.  Indeed, allegations

12   that an industry is "highly concentrated[,]" that market concentration has been "increasing as the

13   result of certain acquisitions and joint ventures," that there are "high barriers to entry into the

14   market[,]" that the products are "highly standardized, permitting consumers to view them as

15   interchangeable," among many other allegations, have been found insufficient to plausibly allege

16   a conspiracy claim.  *ODD,* 2011 U.S. Dist. LEXIS 101763, at *21-22.  Moreover, weak demand,

17   like the other referenced market conditions, does not support an inference of an agreement to fix

18   prices.  *Bristow Grp.*, 738 F. Supp. 2d at 514 ("Even assuming that there was a downturn in

19   demand and Defendants increased their prices in a parallel fashion, these allegations do not

20   support an inference of an agreement to fix prices.").  While industry allegations "may very well

21   be necessary predicates to showing that defendants had the *power* to fix prices, [] they do not

22   show that defendants in fact did so."  *ODD,* 2011 U.S. Dist. LEXIS 101763, at *37.

23        The DPPs also make much of what they call the "ease of information sharing among

24   Defendants."  Compl. ¶ 266 ("Because of [Defendants'] common membership in trade

25   associations and interrelated business relationships between certain executives, officers, and

26   employees of the Defendants, there were many opportunities both before and during the Class

27   Period for Defendants to collude[.]"); *see also id.* ¶¶ 267-73.  But, allegations of participation in

28   industry trade associations and attendance at trade shows have been found to "represent

particularly weak support for the existence of any conspiracy." *ODD*, 2011 U.S. Dist. LEXIS 101763, at *36-37; *see also GPU*, 527 F. Supp. 2d at 1023 (membership in a trade association is "presumed legitimate").

Not only is alleging a mere "opportunity" to conspire insufficient, but the DPPs do not even attempt to compare the timing of the trade association meetings with any electrolytic or film capacitor price increases. *See In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d 1250, 1257 (W.D. Wash. 2009) ("[P]laintiffs make no attempt to compare the timing of trade association meetings and fuel surcharge increases. Thus, the complaint contains even less factual matter than what was deemed inadequate in *In re GPU*").

In addition, the DPPs' assertions regarding the Defendants' "numerous informal links" is equally unavailing, because it again indicates nothing more than an "opportunity" to conspire. *See* Compl. ¶¶ 270-71.  Alleging that a particular "market gave Defendants a motive to conspire, afforded them ample opportunities to conspire under cover of legitimate business and professional pursuits, and allowed them to consciously share information with their co-competitors, all of which allegedly resulted in Defendants . . .  inflating prices during a downturn in demand[,]" does not allow an inference of a conspiracy.  *Bristow Grp.*, 738 F. Supp. 2d at 513-14.  Accordingly, DPPs' allegations are insufficient to sustain the alleged overarching conspiracy claim as a matter of law.

## II.    THE DPPs FAIL TO SUFFICIENTLY ALLEGE EACH DEFENDANT'S MEMBERSHIP AND ROLE IN THE ALLEGED CONSPIRACY.

To be found liable for a Sherman Act violation, each Defendant must have consciously participated in the alleged conspiracy.  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (finding that a parent-subsidiary relationship does not in and of itself make one liable for the torts of the other); *RSM Prod. Co. v. Petroleos De Venezuela Societa Anonima (PDVSA)*, 338 F. Supp. 2d 1208, 1216 (D. Colo. 2004) (dismissing Sherman Act claims against subsidiary corporation in absence of specific allegations that the subsidiary itself had violated the Sherman Act).  The DPPs are, therefore, "required to allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

1   agreement and a conscious decision by each defendant to join it." *Batteries*, 2014 U.S. Dist.

2   LEXIS 7516, at *79 (internal quotation marks omitted).  Here, the DPP Complaint lumps

3   together the 47 named Defendants into a variety of groups and subgroups, and then directs its

4   allegations generally against the lumped-together Defendants without attempting to distinguish

5   the alleged conduct or the participation of each individual Defendant.  This indiscriminate

6   approach to pleading fails to satisfy the requirements of Fed. R. Civ. P. 8 because it does not

7   adequately allege each Defendant's participation in the alleged conspiracy and does not give

8   adequate notice to each Defendant of the conspiratorial conduct in which it is alleged to have

9   engaged.  *See id.*

10       A.    **The DPPs Ignore Corporate Separateness And Fail To Sufficiently Allege the Involvement of the U.S. Subsidiaries.**

12       The DPPs combine distinct corporate entities into a generic corporate family, and then

13   broadly allege that this generic corporate family participated in the conspiratorial conduct.[10]  Not

14   only does the Complaint fail to plausibly allege a single overarching electrolytic and film

15   conspiracy, it also inadequately pleads a conspiracy involving the majority of Defendants that are

16   U.S. subsidiaries ("Defendant U.S. Subsidiaries").[11]  The DPPs' Complaint here does not contain

17   a single, solitary allegation linking the majority of the Defendant U.S. Subsidiaries to the alleged

18   conspiracy.  Indeed, there is not a single specific allegation that a representative or employee of

19   one of the aforementioned subsidiaries attended a cartel meeting or was ever a member of one of

---

[10] For example, the term "Panasonic/SANYO" is defined to include four related, but entirely separate corporate entities.  *See* Compl. ¶¶ 29-33. The DPP Complaint then makes general allegations about "Panasonic/SANYO" as if it were a single defendant with no attempt to attribute particular conduct to a particular Panasonic or SANYO entity.  The DPPs similarly attempt to lump the other Defendants together into at least 17 corporate families.  *See id.* ¶¶ 36, 43, 46, 51, 56, 62, 69, 72, 78, 83, 86, 91, 94, 97, 101, 106.

[11] These Defendant U.S. Subsidiaries are Panasonic Corporation of North America, SANYO North America Corporation, NEC TOKIN America, Inc., United Chemi-Con Corporation, Hitachi Chemical Company America, Ltd., Fujitsu Components America, Inc., Fujitsu Semiconductor America, Inc., Nichicon (America) Corporation, Rubycon America Inc., ELNA America Inc., Holy Stone International, ROHM Semiconductor U.S.A., LLC, EPCOS, Inc., TDK U.S.A. Corporation, Okaya Electric America, Inc., Taitsu America, Inc., Shinyei Corporation of America, Inc., and Soshin Electronics of America, Inc.  *See* Compl. ¶ 123.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

the named industry trade associations or ever even knew about the alleged meetings, let alone entered into an illegal agreement to restrain trade.[12]

DPPs rely on the parent-subsidiary relationship to suggest that simply by virtue of their corporate status, the Defendant Subsidiaries participated in the conspiracy. *See*, *e.g.*, *PDVSA*, 338 F. Supp. 2d at 1216. In an effort to remedy this fatal defect in their claims, DPPs allege that each Defendant Subsidiary was its parent's agent:

> [T]he following Defendants each assisted its respective corporate parent Defendants with the sale and/or delivery to United States purchasers of the parents' respective aluminum, tantalum and film capacitors to United States purchasers: PCNA; SANYO NA; NEC TOKIN America; UCC; Hitachi Chemical America; Fujitsu Components America; Fujitsu Semicon America; Nichicon America; Rubycon America; ELNA America; HolyStone International; ROHM Semicon USA; EPCOS Inc.; TDK USA; Okaya America; Taitsu America; Shinyei America; and Soshin America.

Compl. ¶ 123. Alleging nothing more than that these Defendant U.S. Subsidiaries sold and delivered products manufactured by their parent corporations to U.S. purchasers, *see, e.g.*, *id.* ¶ 122, does not form the basis of a plausible conspiracy claim. According to *Batteries*:

> [B]oilerplate assertions of an agency relationship with the parties whose participation in the conspiracy is more directly alleged . . . does not suffice to demonstrate that the American subsidiaries *themselves* made a conscious decision to conspire with their Korean or Japanese parents. Lacking plausible allegations of such a decision, the defendant subsidiaries are not properly part of the case.

2014 U.S. Dist. LEXIS 7516, at *80-81 (emphasis in original). The plaintiffs in *Batteries* alleged in "generic, conclusory terms that defendant subsidiaries participated in the conspiracy by acting as agent for their defendant Korean or Japanese parent company." *Id.* at 78. Here, the DPPs make the same type of boilerplate assertion deemed inadequate in *Batteries* and contend that:

> Each Defendant acted as the principal, agent or joint venturer of, or for other Defendants with respect to the acts, violations, and common course of conduct alleged herein. In particular, each Defendant headquartered outside the United States relied on their agents in the United States (wholly owned or otherwise) to implement, enforce and conceal the cartel through their global sales and marketing systems. In so doing, Defendants' agents acted within the scope of their agency relationship with their own principals in the United States and abroad.

---

[12] None of the Defendant U.S. Subsidiaries are listed on the alleged conspiratorial meeting rosters, nor are they even alleged to have been aware of the meetings. *See* Compl. ¶ 198. DPPs generally allege that there were informal meetings among Defendants, and place AVX but no other Defendant U.S. Subsidiaries at any of the meetings. *See id.* ¶¶ 215-16.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

Compl. ¶ 110; *cf. de Chavez v. United Mortg. Servs.*, No. 09-285-AC, 2009 U.S. Dist. LEXIS 112593, at \*11-12 (D. Or. Nov. 2, 2009) (dismissing complaint alleging an agency theory, because it failed to include any specific assertions regarding defendant's participation in the alleged fraud).  Relying solely on this agency theory, the DPPs, as a matter of law, do not plausibly allege a Section 1 violation of the Sherman Act against the majority of the Defendant U.S. Subsidiaries.[13]

### B.    The DPPs Fail To Identify Each Defendant's Alleged Wrongful Conduct.

Equally fatal to the DPPs' Complaint is its failure to identify the role each Defendant played in the alleged conspiracy.  The DPPs' entire Complaint is replete with generic allegations of what 47 different "Defendants" supposedly did, with respect to the alleged cartel.  *See, e.g.,* Compl. ¶¶ 182-97.  These conclusory allegations are insufficient to give each Defendant fair notice of the claims made against them.  *See Total Benefits*, 552 F.3d at 436 ("Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*"); *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905-06 (6th Cir. 2009) (defendants were properly dismissed where the complaint contained no factual allegations to support their involvement in the alleged conspiracy); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007) (a complaint that pleads in "entirely general terms without any specification of any particular activities by any particular defendant . . . is nothing more than a list of theoretical possibilities . . .") (internal citations omitted); *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688 (E.D. Pa. 2009) (under *Twombly*, plaintiffs must allege "sufficiently independent participation in the conspiracy" on the part of each defendant);  *Batteries*, 2014 U.S. Dist. LEXIS 7516, at \*79 (plaintiffs must allege that "each individual defendant joined the conspiracy and played some role in it").

Moreover, the DPPs do not and cannot allege that all of the Defendants manufactured, sold, and/or distributed all three types of capacitors (aluminum, tantalum, and film) during the

---

[13] The IPPs similarly do not allege facts indicating that Defendant U.S. Subsidiaries were consciously involved in the alleged conspiracies.  *See* Addendum to Motion to Dismiss IPP Compl. at 1-3.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA  94304

specified Class Period.  As noted above, a significant number of the Defendants are only alleged to have sold film capacitors during the Class Period.[14]  Conversely, several of the other Defendants are only alleged to have sold electrolytic capacitors.[15]  Accordingly, many of the Defendants are not even actual competitors.  *See Sargent Elec. Co.*, 785 F.2d at 1127.  In addition, in many instances, the Complaint is unclear as to which products the Defendants manufacture and sell.  *See supra* n. 6.

Furthermore, with respect to the alleged conspiratorial meeting rosters, the DPPs baldly assert that they show certain Defendants "participated in *or were informed* of the cartel's regular meetings[.]"  Compl. ¶ 198 (emphasis added).  By definition, awareness of meetings is not the same as participation in those meetings or the ensuing alleged conspiracy.  *Cf. Davidson*, 914 F. Supp. 2d at 924 ("[M]ere knowledge of the fraudulent or illegal actions of another is . . . not enough to show a conspiracy.") (internal quotation marks omitted).  The DPPs have failed, as required, to allege "that each individual defendant joined the conspiracy and played some role in it[.]"  *Batteries*, 2014 U.S. Dist. LEXIS 7516, at *79 (internal quotation marks omitted).

### III.    THE STATUTE OF LIMITATIONS BARS THE DPPs' CLAIMS BECAUSE THEY FAIL TO PLEAD FACTS SHOWING FRAUDULENT CONCEALMENT

The Clayton Act imposes a four-year statute of limitations on a federal antitrust claim and bars the DPPs' claim to the extent it accrued before July 18, 2010.[16]  15 U.S.C. § 15b.  Indeed, the last overt act alleged by DPPs is an alleged meeting between some Defendants in the "2nd Quarter of 2010."  Compl. ¶ 208.  The DPPs allege that they are entitled to recover damages beyond the applicable limitations period because it was tolled under the equitable doctrine of

---

[14] *See* Compl. ¶¶92-93 (Okaya Electric Industries Co., Ltd. and Okaya Electric America Inc.); ¶¶ 95-96 (Taitsu Corp. and Taitsu America, Inc.); ¶¶98-100 (Shinyei Kaisha, Shinyei Capacitor Co. Ltd., and Shinyei Corporation of America, Inc.); ¶102 (Nitsuko Electronics Corp.); ¶103 (Nissei Electric Co., Ltd.); ¶¶104-05 (Soshin Electric Co., Ltd. and Soshin Electronics of America, Inc.).

[15] *See id.* at ¶ 34 (alleging that NEC Tokin manufactured, sold, and distributed aluminum and/or tantalum capacitors); ¶¶75-78 (alleging Holy Stone Enterprise Co., Ltd., Holy Stone International, Holy Stone Polytech sold tantalum capacitors).

[16] For each of the newly-served Defendants, the DPPs' claim would be barred to the extent that it accrued before November 14, 2010.

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

fraudulent concealment.  *Id.* ¶¶ 294-313; ¶ 1 (defining the "Class Period" as "January 1, 2003 to the present").  "[The plaintiff] carries the burden of pleading and proving fraudulent concealment; it must plead facts showing that [the defendant] affirmatively misled it, and that [the plaintiff] had *neither actual nor constructive knowledge* of the facts giving rise to its claim despite its diligence in trying to uncover those facts."  *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (citation omitted).  Allegations of fraudulent concealment are subject to the particularity requirements of Rule 9(b).  *Suckow Borax Mines Consol., Inc. v. Borax Consol. Ltd.*, 185 F.2d 196, 209 (9th Cir. 1950); *see also 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999).  To meet the heightened standard of Fed. R. Civ. P. 9(b), a plaintiff must "detail with particularity the time, place and manner of each act of fraud, plus the role of each defendant in each scheme."  *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).  The DPPs fail to meet these pleading standards.

The DPPs' allegation that this was a "self-concealing conspiracy" (Compl. ¶ 295; *see also* ¶¶ 16, 296-301) is plainly inadequate.  As the Ninth Circuit has repeatedly held, "the plaintiff must point to some fraudulent concealment, some active conduct by the defendant '*above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'"  *Coppinger-Martin v. Solis*, 627 F.3d 745, 751 (9th Cir. 2010) (emphasis in original; internal quotation and citation omitted); *see also Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (same).

The DPPs also allege that Defendants "had secret discussions," instructed each other to keep their communications secret and "us[ed] coded language," Compl. ¶¶ 295-301.  However, they allege no specific facts that would satisfy Rule 9(b) to support their conclusory allegations, such as the dates, times, or locations of any such meetings; or when, how, where, and why any "coded language" was used.  The DPPs' failure to allege specific facts showing fraudulent concealment under Rule 9(b) is especially telling as the DPPs have already had the benefit of reviewing documents and information from the ACPERA applicant.  Compl. ¶¶ 278-80, 284.  Nor does the alleged wrongful conduct in any way show that "the defendant [took] active steps to prevent the plaintiff from suing in time."  *Coppinger-Martin*, 627 F.3d at 751.  Rather, the

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

fraudulent concealment allegations are inadequate as a matter of law because the DPPs' "alleged basis for equitable estoppel is the same as [their] cause of action" under the Sherman Act. *See id.* (internal citation omitted) (plaintiff's claims were time barred where her equitable estoppel allegations merged the substantive wrong with the tolling doctrine and did not show misconduct separate from her underlying claim).

The DPPs' allegations that Defendants gave pretextual justifications and made misleading statements regarding pricing and output changes to conceal the conspiracy, Compl. ¶¶ 302-13, are likewise insufficient to establish fraudulent concealment, because the DPPs thereafter allege that Defendants' "explanations are belied by industry and other media reports . . ." Compl. ¶ 308. Industry and other media reports are, by definition, publicly available documents that would have put the DPPs on inquiry notice and constructive notice of their claims. *Hexcel Corp.*, 681 F.3d at 1061 (plaintiff's claims barred by statute of limitations where plaintiff "had constructive, if not actual notice, of its claims"). In short, neither requirement to allege fraudulent concealment has been satisfied by the DPPs here. *Id.* at 1060 ("[a] fraudulent concealment defense requires a showing **both** that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, **and** also that the plaintiff was, in fact, ignorant of the existence of his cause of action") (emphases added; citation omitted). The four-year statute of limitations therefore bars the DPPs' Sherman Act claim to the extent it accrued prior to July 18, 2010.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint in its entirety.

Dated:  December 19, 2014          Respectfully submitted,


                                    WILMER CUTLER PICKERING HALE AND DORR
                                    LLP

                                    By:_____/s/ Heather S. Tewksbury_____
                                          Heather S. Tewksbury

                                    Heather S. Tewksbury (SBN 222202)
                                    950 Page Mill Road
                                    Palo Alto, CA 94304
                                    (650) 858-6134
                                    Fax: (650) 858-6100
                                    Email: heather.tewksbury@wilmerhale.com

                                    Thomas Mueller (admitted *pro hac vice*)
                                    1875 Pennsylvania Avenue, NW
                                    Washington, DC 20006
                                    (202) 663-6766
                                    Fax: (202) 663-6363
                                    Email: thomas.mueller@wilmerhale.com

                                    *Attorneys for Defendants ELNA Co. Ltd. and ELNA
                                    America, Inc.*

Dated:      December 19, 2014      MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
                                    AND POPEO, P.C.

                                    By:_____/s/ Bruce D. Sokler_____
                                          Bruce D. Sokler

                                    Bruce D. Sokler (admitted *pro hac vice*)
                                    701 Pennsylvania Avenue NW
                                    Suite 900
                                    Washington, DC 20004
                                    Telephone:   (202) 434-7300
                                    Facsimile:     (202) 434-7400
                                    bdsokler@mintz.com

                                    Evan S. Nadel
                                    44 Montgomery Street, 36th Floor
                                    San Francisco, CA 94104
                                    Telephone"  (415) 432-6000
                                    Facsimile:     (415) 432-6001
                                    enadel@mintz.com

                                    *Attorneys for Defendant AVX Corporation*

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

Dated:  December 19, 2014                MORGAN, LEWIS & BOCKIUS LLP

                                         By:_____/s/ J. Clayton Everett, Jr._____
                                             J. Clayton Everett, Jr.

                                         Michelle Park Chiu, Bar No. 248421
                                         One Market, Spear Street Tower
                                         San Francisco, CA  94105-1126
                                         Telephone:        +1.415.442.1000
                                         Facsimile:        +1.415.442.1001
                                         E-mail:        mchiu@morganlewis.com

                                         Scott A. Stempel  (admitted *pro hac vice*)
                                         J. Clayton Everett, Jr. (admitted *pro hac vice*)
                                         1111 Pennsylvania Ave., NW
                                         Washington, DC 20004
                                         Telephone:  +1.202.739.3000
                                          Fax:        +1. 202.739.3001
                                          Email: sstempel@morganlewis.com
                                                     jeverett@morganlewis.com

                                         *Attorneys for Defendants*
                                         *EPCOS AG, EPCOS, Inc., TDK-EPC Corporation,*
                                         *and TDK U.S.A. Corporation*

Dated:  December 19, 2014                MORRISON & FOERSTER LLP

                                         By:_____/s/ Paul T. Friedman_____
                                                 Paul T. Friedman

                                         Paul T. Friedman
                                         Michael P. Kniffen
                                         425 Market Street
                                         San Francisco, California  94105-2482
                                         Telephone: 415.268.7000
                                         Facsimile: 415.268.7522
                                         Email: PFriedman@mofo.com
                                         Email: MKniffen@mofo.com

                                         Jeffrey A. Jaeckel
                                         2000 Pennsylvania Avenue, NW Suite 6000
                                         Washington, District of Columbia 20006-1888
                                         Telephone: 202.887.1500
                                         Facsimile: 202.887.0763
                                         Email: JJaeckel@mofo.com

                                         *Attorneys for Defendant*
                                         *Fujitsu Components America, Inc.*

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA  94304

Dated:   December 19, 2014

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By      /s/ Jonathan M. Jacobson
         Jonathan M. Jacobson

Jonathan M. Jacobson
Chul Pak (admitted *pro hac vice*)
Jeffrey C. Bank (admitted *pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:  (212) 497-7758
Facsimile:  (212) 999-5899
jjacobson@wsgr.com
cpak@wsgr.com
jbank@wsgr.com

Jeff VanHooreweghe (admitted *pro hac vice*)
1700 K Street, N.W., Fifth Floor
Washington, DC 20006
Telephone:  (202) 973-8825
Facsimile:  (202) 973-8899
jvanhooreweghe@wsgr.com

*Attorneys for Defendants Hitachi Chemical Co., Ltd.,*
*Hitachi Chemical Company America, Ltd., and*
*Hitachi AIC Incorporated*

Dated:   December 19, 2014

JONES DAY

By:     /s/ Eric P. Enson

Jeffrey A. LeVee (State Bar No. 125863)
jlevee@JonesDay.com
Eric P. Enson (State Bar No. 204447)
epenson@JonesDay.com
Rachel H. Zernik (State Bar No. 281222)
rzernik@jonesday.com
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071.2300
Telephone:        +1.213.489.3939
Facsimile:         +1.213.243.2539

*Counsel for Defendants Holy Stone Enterprise Co.,*
*Ltd. and Holy Stone International*

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA  94304

Dated: December 19, 2014                    PILLSBURY WINTHROP SHAW PITTMAN
                                            LLP

                                            By:        */s/ Roxane A. Polidora*
                                                       Roxane A. Polidora

                                            Roxane A. Polidora (CA Bar No. 135972)
                                            Jacob R. Sorensen (CA Bar No. 209134)
                                            Lindsay A. Lutz (CA Bar No. 254442)
                                            Four Embarcadero Center, 22nd Floor
                                            San Francisco, CA 94111
                                            Telephone: (415) 983-1000
                                            Email:  roxane.polidora@pillsburylaw.com
                                            jake.sorensen@pillsburylaw.com
                                            lindsay.lutz@pillsburylaw.com

                                            *Attorneys for Defendants*
                                            *KEMET Corporation and*
                                            *KEMET Electronics Corporation*

Dated:    December 19, 2014                 DENTONS US LLP

                                            By:   */s/ Bonnie Lau*
                                                   BONNIE LAU

                                            525 Market Street, 26th Floor
                                            San Francisco, CA  94105
                                            Tel:  (415) 882-5000
                                            Fax:  (415) 882-0300
                                            Email:  bonnie.lau@dentons.com

                                            *Attorneys for Defendant*
                                            *Matsuo Electric Co., Ltd.*

Dated:    December 19, 2014                 GIBSON, DUNN & CRUTCHER LLP

                                            By:   */s/ George A. Nicoud III*
                                                   George A. Nicoud III

                                            George A. Nicoud III
                                            Eli M. Lazarus
                                            555 Mission Street
                                            San Francisco, CA 94105-0921
                                            415-393-8308
                                            Fax: 415-374-8473
                                            Email: tnicoud@gibsondunn.com

                                            *Attorneys for Defendants NEC TOKIN*
                                            *Corporation and NEC TOKIN America, Inc.*

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

Dated:   December 19, 2014                     K&L GATES LLP

                                               By:   */s/ Michael E. Martinez*_____
                                                     Michael E. Martinez
                                               Scott M. Mendel (admitted *pro hac vice*)
                                               Steven M. Kowal (admitted *pro hac vice*)
                                               Michael E. Martinez  (admitted *pro hac vice*)
                                               Lauren N. Norris (admitted *pro hac vice*)
                                               Lauren B. Salins (admitted *pro hac vice*)
                                               70 West Madison Street, Suite 3100
                                               Chicago, IL 60602
                                               312-372-1121
                                               Email: michael.martinez@klgates.com

                                               *Attorneys for Defendants Nichicon Corporation and
                                               Nichicon (America) Corporation*


Dated:   December 19, 2014                     BAKER & MCKENZIE LLP

                                               By:   ____*/s/ Douglas Tween*_____
                                                     Douglas Tween

                                               Douglas Tween (*pro hac vice* pending)
                                               Darrell Prescott (*pro hac vice* pending)
                                               Michael Atkins (*pro hac vice* pending)
                                               452 Fifth Avenue
                                               New York, NY 10018
                                               (212) 626-4355
                                               Fax: (212) 310-1655
                                               Email: Douglas.Tween@bakermckenzie.com
                                               Email: Darrell.Prescott@bakermckenzie.com
                                               Email: Michael.Atkins@bakermckenzie.com

                                               Colin H. Murray (SBN 159142)
                                               Two Embarcadero Center, 11th Floor
                                               San Francisco, CA 94111
                                               (415) 591-3244
                                               Fax: (415) 576-3099
                                               Email: Colin.Murray@bakermckenzie.com

                                               *Attorneys for Defendants
                                               Okaya Electric Industries Co., Ltd. and
                                               Okaya Electric America, Inc.*

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

NOTICE AND MPA ISO DEFENDANTS' JOINT MTD THE DIRECT PURCHASER PLAINTIFFS' COMPLAINT
CASE NO. 14-CV-03264-JD

Dated:    December 19, 2014          WINSTON & STRAWN LLP

By:   ___/s/ Jeffrey L. Kessler_____
           Jeffrey L. Kessler

Jeffrey L. Kessler (admitted *pro hac vice*)
A. Paul Victor (admitted *pro hac vice*)
David L. Greenspan (admitted *pro hac vice*)
Molly M. Donovan (admitted *pro hac vice*)
Mollie C. Richardson (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
pvictor@winston.com
dgreenspan@winston.com
mmdonovan@winston.com
mrichardson@winston.com

Ian L. Papendick (SBN 275648)
101 California Street
San Francisco, CA 94111
Tel: (415) 591-6905
Fax: (415) 591-1400
ipapendick@winston.com

*Counsel for Defendants*
*Panasonic Corporation*
*Panasonic Corporation of North America*
*SANYO Electric Co., Ltd.*
*SANYO North America Corporation*

Dated:    December 19, 2014          O'MELVENY & MYERS LLP

By:   ___/s/ Michael F. Tubach_____
           Michael F. Tubach

Michael F. Tubach (SBN 145955)
Christina J. Brown (SBN 242130)
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701
Email:  mtubach@omm.com
Email:  cjbrown@omm.com

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

Kenneth R. O'Rourke (SBN120144 )
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407
Email:  korourke@omm.com

*Attorneys for Defendants*
*ROHM Co., Ltd. and*
*ROHM Semiconductor U.S.A., LLC*

Dated:    December 19, 2014          HUNTON AND WILLIAMS LLP

By:____*/s/ Djordje Petkoski*_____
          Djordje Petkoski

Djordje Petkoski (admitted *pro hac vice*)
2200 Pennsylvania Avenue, NW
Washington, DC 20037
202-955-1500
Email: dpetkoski@hunton.com

*Attorneys for Defendant Rubycon Corporation and*
*Rubycon America Inc.*

Dated:    December 19, 2014          McKENNA LONG & ALDRIDGE LLP

By:____*/s/ Andrew S. Azarmi*_____
          Andrew S. Azarmi

Andrew S. Azarmi
Spear Tower, One Market Plaza, 24th Floor
San Francisco, CA 94150
415-267-4000
Fax: 415-267-4198
Email: aazarmi@mckennalong.com

Gaspare J. Bono (*pro hac vice* to be filed)
Stephen M. Chippendale (*pro hac vice* to be filed)
1900 K Street, NW
Washington, DC 20006
202-496-7500
Fax: 202-496-7756
Email: gbono@mckennalong.com
Email: schippendale@mckennalong.com

*Attorneys for Defendants Shinyei Kaisha, Shinyei*
*Capacitor Co., Ltd., and Shinyei Corporation of*
*America, Inc.*

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

Dated:    December 19, 2014                  HUGHES HUBBARD & REED LLP

                                             By:    /s/ David H. Stern
                                                     David H. Stern

                                             David H. Stern (CA Bar No. 196408)
                                             Carolin Sahimi (CA Bar No. 260312)
                                             350 South Grand Avenue
                                             Los Angeles, CA 90071-3442
                                             Tel: (213) 613-2800
                                             Fax: (213) 613-2950
                                             David.Stern@hugheshubbard.com
                                             Carolin.Sahimi@hugheshubbard.com

                                             Ethan E. Litwin (*pro hac vice* to be filed)
                                             Morgan J. Feder (*pro hac vice* to be filed)
                                             Hughes Hubbard & Reed LLP
                                             One Battery Park Plaza
                                             New York, NY 10004-1482
                                             Tel: (212) 837-6000
                                             Fax: (212) 422-4726
                                             Ethan.Litwin@hugheshubbard.com
                                             Morgan.Feder@hugheshubbard.com

                                             *Counsel for Defendants Soshin Electric Co., Ltd.
                                             and Soshin Electronics of America, Inc.*

Dated:    December 19, 2014                  By:    /s/ Mark S. Popofsky
                                                     Mark S. Popofsky

                                             Mark S. Popofsky
                                             ROPES & GRAY LLP
                                             One Metro Center
                                             700 12th Street NW, Suite 900
                                             Washington, DC 20005-3948
                                             Telephone: (202) 508-4624
                                             Facsimile: (202) 508-4650
                                             mark.popofsky@ropesgray.com

                                             Jane E. Willis (admission *pro hac vice* pending)
                                             ROPES & GRAY LLP
                                             800 Boylston Street
                                             Boston, MA 02199-3600
                                             Telephone:  (617) 951-7603
                                             Facsimile: (617) 235-0435
                                             jane.willis@ropesgray.com

                                             *Attorneys for Taitsu Corporation and Taitsu
                                             America, Inc.*

*Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304*

Dated:   December 19, 2014             CADWALADER WICKERSHAM AND TAFT LLP

                                        By:  _/s/ Joseph J. Bial_____
                                                 Joseph J. Bial

                                        Charles F. Rule (admitted *pro hac vice*)
                                        Joseph J. Bial (admitted *pro hac vice*)
                                        Daniel J. Howley (admitted *pro hac vice*)
                                        700 Sixth Street, Northwest
                                        Washington, DC 20001
                                        Telephone: (202) 862-2200
                                        Facsimile:  (202) 862-2400
                                        rick.rule@cwt.com
                                        joseph.bial@cwt.com
                                        daniel.howley@cwt.com

                                        KAUFHOLD GASKIN LLP

                                        By:  _/s/ Steven Kaufhold_____
                                                 Steven Kaufhold

                                        Steven Kaufhold (SBN 157195)
                                        Ruth Hawley (SBN 253112)
                                        388 Market Street
                                        San Francisco, CA 94111
                                        Telephone:  (415) 445-4621
                                        Facsimile:  (415) 874-1071
                                        skaufhold@kaufholdgaskin.com
                                        rhawley@kaufholdgaskin.com

                                        *Counsel for Defendants United Chemi-Con, Inc.*
                                        *and Nippon Chemi-Con Corporation*

Dated:   December 19, 2014             PEPPER HAMILTON LLP

                                        By:  _/s/ Barbara T. Sicalides_____
                                                 Barbara T. Sicalides

                                        Thomas F. Fitzpatrick
                                        333 Twin Dolphin Drive
                                        Suite 400
                                        Redwood City, California 94065
                                        Telephone:  650.802.3600
                                        Fax:  650.802.3650
                                        fitzpatrickt@pepperlaw.com

                                        Barbara T. Sicalides (admitted *pro hac vice*)
                                        Frank H. Griffin, IV (admitted *pro hac vice*)
                                        Benjamin J. Eichel (admitted *pro hac vice*)

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304

Andrew J. Pinkston (admitted *pro hac vice*)
3000 Two Logan Square
18th and Arch Streets
Pennsylvania, PA 19103
Telephone:  215.981.4000
Fax:  215.981.4750
Email:  sicalidb@pepperlaw.com
Email:  griffinf@pepperlaw.com
Email:  eichelb@pepperlaw.com
Email:  pinkstoa@pepperlaw.com

*Attorneys for Defendant*
*Vishay Intertechnology Inc.*

**Wilmer Cutler Pickering Hale and Dorr LLP**
**950 Page Mill Road**
**Palo Alto, CA  94304**

Pursuant to Civil Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:    December 19, 2014                   By:    */s/ Heather S. Tewksbury*
                                                      Heather S. Tewksbury