1    **[COUNSEL LISTED ON SIGNATURE PAGES]**

2

3

4

5

6

7

8

9                          UNITED STATES DISTRICT COURT

10                        NORTHERN DISTRICT OF CALIFORNIA

11                             SAN FRANCISCO DIVISION

12   **IN RE: CAPACITORS ANTITRUST**           Master File No. 14-cv-03264-JD
     **LITIGATION**
13

14   **THIS DOCUMENT RELATES TO:**             **CONSOLIDATED MOTIONS TO**
     **ALL DIRECT PURCHASER ACTIONS**          **DISMISS THE DIRECT**
15                                             **PURCHASER PLAINTIFFS'**
                                               **CONSOLIDATED CLASS ACTION**
16                                             **COMPLAINT ON BEHALF OF**
                                               **CERTAIN INDIVIDUAL**
17                                             **DEFENDANTS**

18
                                               **ORAL ARGUMENT REQUESTED**
19
                                               Date:  March 4, 2015
20                                             Time: 9:30 a.m.
                                               Judge: Hon. James Donato
21                                             Location: Courtroom 11

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

STATEMENT OF ISSUE PRESENTED ............................................................................... 1

CONSOLIDATED MEMORANDA OF POINTS AND AUTHORITIES ..................................... 1

I. AVX CORPORATION ....................................................................................................... 2

II. EPCOS AG, EPCOS INC., TDK-EPC CORPORATION AND TDK U.S.A.
     CORPORATION ............................................................................................................ 5

    A.     Introduction ............................................................................................................ 5
    B.     Background ............................................................................................................ 5
    C.     Argument ............................................................................................................... 7

III. FUJITSU COMPONENTS AMERICA, INC. ................................................................ 10

    A.     The Complaint Fails to Plead Any Facts Demonstrating Fujitsu Components
          America, Inc.'s Involvement in Any Alleged Conspiracy ..................................... 10

IV. HOLY STONE DEFENDANTS ..................................................................................... 13

    A.     DPPS' Complaint Fails to Allege Facts Plausibly Suggesting that Holy
          Stone Joined and Participated in the Alleged Global Conspiracy. ...................... 13

V. KEMET CORPORATION AND KEMET ELECTRONICS CORPORATION .................. 16

    A.     The allegations against KEMET fail to meet the *Twombly* standard .................... 17
    B.     The DPPs have not alleged KEC participated in any conspiracy. ...................... 19

VI. NICHICON CORPORATION AND NICHICON (AMERICA) CORPORATION ............. 21

    A.     The Complaint Contains No Allegations Against Nichicon America .................... 21
    B.     Plaintiffs Fail to Allege Facts Sufficient to Support a Claim of Conspiracy
          Against Nichicon Japan ...................................................................................... 21

VII. OKAYA ELECTRIC INDUSTRIES CO., LTD AND OKAYA ELECTRIC
      AMERICA INC. ........................................................................................................... 25

    A.     Okaya America Should be Dismissed from the Case as the Complaint
          Contains No Factual Allegations that it Participated In Any Alleged
          Conspiracy ........................................................................................................... 25
    B.     The Complaint Implausibly Alleges that Okaya, which Manufactures Only
          Film Capacitors, Colluded with Defendants who Manufacture Aluminum or
          Tantalum Capacitors when the Complaint Admits that the Products are not
          Substitutable. ........................................................................................................ 26

VIII. ROHM CO., LTD. AND ROHM SEMICONDUCTOR U.S.A., LLC ............................ 28

IX. SHINYEI KAISHA, SHINYEI CAPACITOR CO., LTD., AND SHINYEI
     CORPORATION OF AMERICA, INC. ........................................................................ 33

X. SOSHIN ELECTRIC CO., LTD. AND SOSHIN ELECTRONICS OF AMERICA, INC. ..... 36

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-i-

ARGUMENT ...................................................................................................37

XI. UNITED CHEMI-CON, INC. ...................................................................40

    A.     The DPPs Fail to Allege a Cause of Action Against United Chemi-Con, Inc. .......40

XII. VISHAY INTERTECHNOLOGY, INC. .................................................42

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf
Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-ii-

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**F**EDERAL **C**ASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................4, 40

*Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp.,*
    849 F. Supp. 702 (N.D. Cal. 1994) ......................................................................19

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................... passim

*Big Bear Lodging Ass'n v. Snow Summit, Inc.,*
    182 F.3d 1096 (9th Cir. 1999) ...............................................................................14

*Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan,*
    203 F.3d 1028 (8th Cir. 2000) (en banc) ...............................................................14

*Dura Pharmaceuticals, Inc. v. Broudo,*
    544 U.S. 336 (2005)...............................................................................................37

*Hanson v. Shell Oil Co.,*
    541 F.2d 1352 (9th Cir. 1976) ..............................................................................14

*Hazel Green Ranch, LLC v. U.S. Dep't of Interior,*
    No. 107CV00414OWWSMS, 2010 WL 1342914 (E.D. Cal. Apr. 5, 2010), *aff'd,* 490
    F. App'x 880 (9th Cir. 2012) ................................................................................19

*In re Baby Food Antitrust Litig.,*
    166 F.3d 112 (3d Cir. 1999).....................................................................13, 14, 30

*In re Cal. Title Ins. Antitrust Litig.,*
    No. C 08-01341 JSW, 2009 U.S. Dist. LEXIS 43323 (N.D. Cal. May 21, 2009) ..................44

*In re Citric Acid Litig.,*
    191 F.3d 1090 (9th Cir. 1999) .........................................................................13, 30

*In re High-Tech Employee Antitrust Litig.,*
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) ..................................................................3

*In re Lithium Ion Batteries Antitrust Litig. ("Batteries I"),*
    Case No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 7516 (N.D. Cal. Jan. 21, 2014).............
    ........................................................................................................... passim

*In re Lithium Ion Batteries Antitrust Litig. ("Batteries II"),*
    Case No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 141358 (N.D. Cal. Oct. 2,
    2014) ......................................................................................................4

C**ONSOLIDATED** M**OTIONS TO** D**ISMISS THE** D**IRECT** P**URCHASER** P**LAINTIFFS'** C**ONSOLIDATED** C**LASS** A**CTION** C**OMPLAINT** O**N** B**EHALF**
O**F** C**ERTAIN** I**NDIVIDUAL** D**EFENDANTS**
C**ASE** N**O.** 14-CV-03264-JD

-iii-

*In re Pennsylvania Title Ins. Antitrust Litig.*,
  648 F. Supp. 2d 663 (E.D. Pa. 2009) ..................................................................19

*In re Pool Products Distribution Market Antitrust Litig.*,
  988 F.Supp.2d 696 (E.D. La. 2013) ....................................................................8

*In re Se. Milk Litigation*,
  555 F. Supp. 2d 934 .............................................................................................3

*In re Travel Agent Comm'n Antitrust Litig.*,
  No. 1:03 CV 30000, 2007 WL 3171675 (N.D. Ohio Oct. 29, 2007), *aff'd* 583 F.3d
  896 (6th Cir. 2009)..............................................................................................14

*In re Urethane Antitrust Litig.*,
  663 F. Supp. 2d. 1067 (D. Kan. 2009) ...............................................................34

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ..............................................................13, 28, 37

*Krehl v. Baskin-Robbins Ice Cream Co.*,
  664 F.2d 1348 (9th Cir. 1982) ...........................................................................14

*McCray v. Fid. Nat. Title Ins. Co.*,
  636 F. Supp. 2d 322 (D. Del. 2009), *aff'd*, 682 F.3d 229 (3d Cir. 2012) .........19, 43

*Mitchael v. Intracorp, Inc.*,
  179 F.3d 847 (10th Cir. 1999) ...........................................................................14

*Moses v. Innoprise Software*,
  2014 U.S. Dist. LEXIS 22407 (N.D. Cal. Feb. 21, 2014) ..................................24

*Newcal Indus., Inc. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008) ...........................................................................14

*Sunnyside Dev. Co. v. Opsys Ltd.*,
  No. C 05 0553 MHP, 2007 WL 2462142 (N.D. Cal. Aug. 29, 2007) ...................20

*U.S. v. U.S. Gypsum Co.*,
  438 U.S. 422 (1978)......................................................................................13, 14

*United States v. Bestfoods*,
  524 U.S. 51 (1998)...............................................................................20, 38, 44

*Workman v. State Farm Mut. Auto. Ins. Co.*,
  520 F. Supp. 610 (N.D. Cal. 1981) ....................................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)...........................................................................................1

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-cv-03264-JD

-iv-

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Wednesday, March 4, 2015 at 9:30 a.m., or as soon thereafter as this motion may be heard, in Courtroom 11, 19th Floor, 450 Golden Gate Avenue, before the Honorable James Donato, consistent with the Court's order, filed October 30, 2014 (Dkt. 309), the undersigned Defendants, in addition to the Joint Motion filed this date, each will and hereby do move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing the Direct Purchaser Plaintiffs' ("DPPs") Consolidated Class Action Complaint (Dkt. 401) ("Complaint" or "Compl.") against each of the moving Defendants for failure to state a claim that satisfies the pleading standards of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). This motion is brought in addition to the Defendants' Joint Motion to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint, which is being filed on the same date. This Motion is based on this Notice of Motion and Motion, the accompanying consolidated Memoranda of Points and Authorities, the pleadings on file, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing on the Motion.

## STATEMENT OF ISSUE PRESENTED

Whether the Complaint fails to state a claim against the specified defendants that satisfies the pleading standards of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).

## CONSOLIDATED MEMORANDA OF POINTS AND AUTHORITIES

In its Civil Minutes after the October 29 status conference (Dkt. 309), the Court directed that the defendants could file both a joint motion to dismiss addressing all common issues and a consolidated motion collecting all arguments that are being made separately for one or more defendants only, limited to five pages of argument per defendant. The Court further directed that the supplemental motions not repeat the arguments or background contained in the first motion. On behalf of the individual defendants making separate arguments, those arguments are presented in this Consolidated Memorandum alphabetically by defendant.

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-cv-03264-JD

-1-

# I.    AVX CORPORATION

The Complaint alleges that AVX Corporation ("AVX") is a Delaware corporation with its principal place of business located in Fountain Inn, South Carolina and that AVX "manufactured, sold, and distributed tantalum and/or Film Capacitors either directly or through its business units, subsidiaries, agents or affiliates to United States purchasers." (Compl. ¶ 63.) With respect to AVX, the Complaint's allegations simply fail to meet the standards of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).

Conspicuous by its absence in the direct purchasers' Complaint is any express allegation that AVX Corporation ("AVX") ever joined any conspiracy. (AVX's arguments are directed against the Direct Purchaser Plaintiffs' Complaint as it is not even named as a defendant in the Indirect Purchaser Plaintiffs' Complaint.) In paragraphs 182-191 of the Complaint, plaintiffs allege the existence of "Defendants' Cartel." Notably, however, AVX is not referenced in this section. While not itself sufficient under the law, plaintiffs at least allege – at least for some defendants – that they joined the alleged cartel. There are no such allegations pertaining to AVX.

Nor does a canvass of the balance of the Complaint tell any different story. The complaint subsequently contains a section entitled "The Cartel's Regular Meetings (Compl. ¶ 194-207.) This section contains allegations that include participants in the alleged cartel meetings (or defendants who allegedly were informed of the meetings) by name – AVX is not named. Similarly, the following section (Compl. ¶ 208-210) is entitled "Specific Cartel Meetings" and includes allegations regarding specific defendants' participation in such meetings. Here again, AVX is never mentioned.

Instead, plaintiffs' attempt to shoehorn AVX into its narrative in an entirely different section, entitled "Informal Meetings Among Defendants" (Compl. ¶ 211-18), in which the Complaint alleges that sometime "[d]uring the class period" AVX executives met with Sanyo and NEC Tokin for information exchanges and where thereafter "AVX worked to coordinate pricing strategy." No time period, no identification of the individuals involved, no allegations as to how AVX allegedly worked to coordinate pricing strategy – and most significantly, no allegation that AVX joined the alleged conspiracy or made a conscious decision to join it. These

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-2-

allegations are insufficient as a matter of law as outlined in the joint brief. Antitrust "[p]laintiffs must allege something more than parallel conduct and a conclusory allegation of agreement at some unidentified point." *In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1118 (N.D. Cal. 2012). *See In re Se. Milk Litigation,* 555 F. Supp. 2d 934. 942 (E.D. Tenn. 2008) ("To allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." (*quoting Twombly,* 550 U.S. at 565 n.10)).

The direct plaintiffs' only other attempt to make room for AVX is buried in its allegations describing the defendants. The Complaint alleges that "[i]n or about February 2013, AVX acquired [defendant] Nichicon's tantalum capacity production facilities in Japan and China, thereby expanding AVX's global tantalum capacitor manufacturing operations." (Compl. ¶ 64.) The Complaint further alleges that "the business unit acquired by AVX from Nichicon is a mere continuation of the unit as it was organized and operated during the period it was a business unit of Nichicon" (Compl. ¶ 65) so that "AVX has assumed liability for the cartel activity that originated in this business united during the Class Period while it was part of Nichicon" (Compl. ¶ 65) and "has effectively purchased a participant in the unlawful cartel alleged herein and has thereby joined and participated in Defendants' conspiracy…" (Compl. ¶ 66.)

This attempt to bootstrap the purchase of a minor business of another defendant into becoming a participant in an alleged cartel is unavailing. Price-fixing is not a status offense. A defendant needs to have made a conscious decision to join a known agreement and to have taken affirmative steps toward that goal, *In re Lithium Ion Batteries Antitrust Litig. ("Batteries I"),* Case No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 7516, at *79 (N.D. Cal. 2014), allegations that are absent here. Indeed, even plaintiffs do not seem to give any credit to their own theory; the only AVX entity named in the Complaint is AVX itself and not the third-tier purchased business. Nor can plaintiffs defend this as a mere pleading artifact – in both the consolidated complaint and its predecessor complaints both parents and subsidiaries are named willy-nilly; plaintiffs clearly understand how to name a subsidiary when it is convenient for their purposes.

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-3-

As one recent decision from this district explained: "For instance, an allegation that individual members of a corporate group 'joined the alleged conspiracies through their corporate affiliation' alone would be 'precisely the sort of "legal conclusion couched as a factual allegation" that *Twombly* and *Iqbal* deemed insufficient to state a claim.'" *In re Lithium Ion Batteries Antitrust Litig. ("Batteries II"),* Case No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 141358, at *155-156 (N.D. Cal. Oct. 2, 2014).

In sum, far from establishing that AVX "joined the conspiracy and played some role in it" by making a "conscious decision" "to join it," the Complaint is facially inadequate with respect to AVX. In addition to the reasons stated in the general motion on behalf of all defendants, AVX's entitlement to dismissal here cannot be avoided.

Dated:    December 19, 2014

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

By:_____*/s/ Bruce D. Sokler*_____
     Bruce D. Sokler


Bruce D. Sokler (admitted *pro hac vice*)
701 Pennsylvania Avenue NW
Suite 900
Washington, DC 20004
Telephone:   (202) 434-7300
Facsimile:    (202) 434-7400
bdsokler@mintz.com

Evan S. Nadel
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone"   (415) 432-6000
Facsimile:     (415) 432-6001
enadel@mintz.com

*Attorneys for Defendant AVX Corporation*

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-4-

II. **EPCOS AG, EPCOS INC., TDK-EPC CORPORATION AND TDK U.S.A. CORPORATION**

A. **Introduction**

The DPP Complaint fails to state a claim against EPCOS AG, EPCOS Inc., TDK-EPC Corporation ("TDK-EPC") or TDK U.S.A. Corporation ("TUC") (collectively, "TDK-EPCOS Defendants"). None of these Defendants is alleged to have participated in any of the "Regular Cartel Meetings" or "Specific Cartel Meetings" that DPPs identify in the Complaint. None is alleged to have reached any agreements with any other Defendant about the pricing, sale, or production of electrolytic, tantalum, or film capacitors. And none is alleged to have charged a price or taken any action to further agreements DPPs allege that other Defendants reached.

Other than introductory paragraphs identifying each of the TDK-EPCOS Defendants, there are only two allegations concerning any of those Defendants in the Complaint. DPPs allege that EPCOS AG (but not any of the other TDK-EPCOS Defendants) had two purported "meetings" with Sanyo outside the context of the alleged "cartel meetings." But there are no allegations that (a) EPCOS AG reached any agreements with Sanyo at either of those meetings concerning prices, sales or output of capacitors; (b) agreed to participate in the broad, decade long, conspiracy that DPPs allege; or (c) was even aware of such a "conspiracy." There is no plausible factual basis in the Complaint to infer that EPCOS AG or any of the other TDK-EPCOS Defendants made a "conscious commitment to the common scheme" DPPs allege. The TDK-EPCOS Defendants should be dismissed.

B. **Background**

Twelve class action complaints were filed in the summer and fall of 2014 against various manufacturers of capacitors alleging conspiracies to violate US antitrust laws. EPCOS AG and EPCOS Inc. were not named defendants in any of those complaints. TDK-EPC and TUC were named defendants in only one, the complaint filed by eIQ Corporation.

The complaints were coordinated before this Court, and the Court ordered two Consolidated Amended Complaints to be filed, one by the DPPs and one by Indirect Purchaser Plaintiffs ("IPPs"). Bolstered by information from the antitrust leniency applicant, both Plaintiff

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-5-

groups filed Consolidated Amended Complaints on November 14, 2014. The IPP Complaint does not name any of the TDK-EPCOS entities as Defendants. They are, however, named as Defendants in the DPP Complaint.

The DPP Complaint (like the IPP Complaint) alleges that different subsets of defendants participated in "regular cartel meetings" to fix, raise, maintain or stabilize prices of either aluminum and tantalum electrolytic capacitors or film capacitors. *See, e.g.,* DPP Compl. ¶ 13; IPP Compl. ¶ 11. DPPs allege that the "regular cartel meetings" took place from 2003 to 2008, were attended by numerous defendants, with some types of meetings held monthly and others biannually. Compl., ¶¶ 201-202. In addition to the "regular cartel meetings," DPPs also allege a series of "specific cartel meetings" between 2007 to 2010, involving different subsets of Defendants, where "collusive activity and actions in support of the cartel" is alleged to have occurred. DPP Compl., ¶ 208. DPPs allege that the Department of Justice ("DOJ") is investigating this conduct, and that certain defendants have admitted to being the subject of the DOJ's investigation. DPP Compl., ¶¶ 274, 278, 279, 285, 286. The DPP Complaint contains fifty numbered paragraphs detailing purported "cartel" meetings, spanning over ten pages of the Complaint.

None of TDK-EPCOS Defendants is alleged to have participated in even a single one of the "Regular Cartel Meetings" or the "Specific Cartel Meetings." Nor are any of the TDK-EPCOS Defendants alleged to have been the subject of the DOJ investigation. In fact, the only allegations concerning three of the TDK-EPCOS Defendants—TDK-EPC, TUC and EPCOS Inc.—are introductory paragraphs identifying those entities as Defendants, providing some background information on each and alleging that each "manufactured, sold and distributed aluminum and/or tantalum and/or film capacitors"(DPP Compl., ¶¶ 87-90).

Aside from a similar introductory paragraph concerning EPCOS AG's business and the types of products that it sold, there are only two paragraphs of the Complaint that address EPCOS AG:

> During the Class Period[,] SANYO and EPCOS met at a trade
> show to discuss their tantalum capacitors, conducted an exchange
> of competitively sensitive information, agreed to make such

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf
Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-6-

> exchanges in the future so that they could cooperate on future pricing.
>
> During the Class Period, SANYO employees that regularly participated in cartel meetings and communications met with senior executives from EPCOS and they conducted an information exchange regarding confidential pricing and production information regarding their own companies, as well as a discussion of similar information regarding AVX's Capacitor operations and business strategy.

DPP Compl. ¶¶ 213-214.

C.   **Argument**

1.   **There Are No Substantive Allegations Concerning TDK-EPC, TUC or EPCOS Inc.**

TDK-EPC is literally mentioned just once in the DPP Complaint.  In an introductory paragraph identifying TDK-EPC as a Defendant, DPPs allege that TDK-EPC "manufactured, sold and distributed aluminum and/or film capacitors" (DPP Compl., ¶¶ 89).  Putting aside whether those allegations are true (they are not in some respects), they are plainly insufficient to establish a basis for liability against TDK-EPC.  It is, of course, not illegal to manufacture or sell aluminum and/or film capacitors.

The allegations concerning EPCOS Inc. and TUC are effectively no different.  Like TDK-EPC, there are paragraphs identifying EPCOS Inc. and TUC as defendants and alleging that they "manufactured, sold and distributed aluminum and/or tantalum and/or film capacitors." (DPP Compl. ¶ 88, 90).  The only other place EPCOS Inc. and TUC appear in the Complaint is in a boilerplate paragraph alleging generally that all of the US defendants in the case acted as "agents" of their Japanese parents. (*Id.* at ¶ 123 ). That, too, however, provides an insufficient basis for a claim.  *In re Lithium Ion Batteries*, No. 13-MD-2420 YGR, 2014 U.S. Dist LEXIS 7516, at *78-80 (N.D. Cal. Jan. 21, 2014) (finding that "generic, conclusory [allegations] that defendant subsidiaries participated in the conspiracy by acting as agent for their defendant Korean or Japanese parent company" were insufficient).

Plaintiffs must allege facts establishing that each defendant "joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *Id*. (quotation omitted).  They clearly have not

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-7-

done so as to TDK-EPC, TUC or EPCOS Inc., requiring dismissal of those defendants.

### 2. DPPs Fail to Allege Facts Establishing EPCOS AG's Knowledge of or Participation in the Conspiracy They Allege.

In addition to a similar introductory paragraph, there are two other paragraphs in the Complaint concerning EPCOS AG. *See* DPP Compl. ¶¶ 213-214. These paragraphs allege that EPCOS AG had two meetings with one other defendant, Sanyo. *Id.* Despite alleging that EPCOS AG "exchanged competitively sensitive information" with Sanyo at those two meetings, there is no allegation that EPCOS AG and Sanyo actually agreed to fix or maintain prices, decrease output or otherwise conspire to violate the antitrust laws. *Id.* Nor are there any allegations that EPCOS AG agreed to or did take any actions following these two isolated alleged meetings that would violate the law. "Absent agreement, there is no Section 1 claim, because an anticompetitive agreement is the *sine qua non* of a Section 1 violation." *In re Pool Products Distribution Market Antitrust Litig.*, 988 F.Supp.2d 696, 708 (E.D. La. 2013); *see also Lithium Ion*, 2014 U.S. LEXIS 7516, at *79 (allegations concerning agreement necessary to state a claim under Section 1 of the Sherman Act).

Just as significantly, there are no allegations that EPCOS AG was even aware of, much less participated in, the broad decade-long conspiracy that DPPs allege. The two alleged meetings with Sanyo are not alleged to have been in connection with or part of the dozens of "cartel meetings" DPPs allege. Neither EPCOS AG nor any of the other TDK-EPCOS Defendants is alleged to have known about or participated any of the "regular cartel" meetings other defendants allegedly attended, which included specific "meeting rosters" identifying the companies that purportedly were represented at the meetings. *See* DPP Compl., ¶¶ 198-207. The same is true of the so-called "specific cartel meetings." *Id.*, ¶¶ 208-209. While identifying at least ten alleged specific cartel meetings, including the approximate date and attendees at those meetings, there are simply no allegations that state any of the TDK-Defendants attended even a single meeting.

There are no allegations that EPCOS AG or any TDK-Defendant ever entered into any agreements regarding "cartel pricing" or "to price Capacitors collusively, stand united against

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-8-

1   price reduction demands, and set production and delivery dates to collusively control supply in

2   the aluminum and tantalum capacitors markets," which Plaintiffs allege occurred at the alleged

3   "regular cartel meetings." DPP Compl., ¶¶ 202-204. In the absence of any allegation that

4   EPCOS AG "consciously agreed to participate in, or could be charged with knowledge of, an

5   alleged price-fixing conspiracy," the Complaint must be dismissed as to EPCOS AG, like the

6   other TDK-EPCOS Defendants. *Lithium Ion*, 2014 U.S. LEXIS 7516, at *79-80.

7   Dated:  December 19, 2014                    MORGAN, LEWIS & BOCKIUS LLP

8                                                By:___*/s/ J. Clayton Everett, Jr.*_____

9                                                      J. Clayton Everett, Jr.

10                                               MICHELLE PARK CHIU, Bar No. 248421
                                                 One Market, Spear Street Tower
11                                               San Francisco, CA  94105-1126
                                                 Telephone:     +1.415.442.1000
12                                               Facsimile:     +1.415.442.1001
                                                 E-mail:  mchiu@morganlewis.com
13

14                                               SCOTT A. STEMPEL (pro hac vice)
                                                 J. CLAYTON EVERETT, JR. (pro hac vice)
15                                               1111 Pennsylvania Ave., NW
                                                 Washington, DC 20004
16                                               Telephone:  +1.202.739.3000
                                                 Fax:       +1. 202.739.3001
17                                               Email: sstempel@morganlewis.com
                                                        jeverett@morganlewis.com
18

19                                               *Attorneys for Defendants*
                                                 *EPCOS AG, EPCOS, Inc., TDK-EPC Corporation,*
20                                               *and TDK U.S.A. Corporation*

21

22

23

24

25

26

27

28

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-cv-03264-JD

-9-

### III. FUJITSU COMPONENTS AMERICA, INC.

#### A. The Complaint Fails to Plead Any Facts Demonstrating Fujitsu Components America, Inc.'s Involvement in Any Alleged Conspiracy.

Plaintiffs' nominal, conclusory allegations regarding Fujitsu Components America, Inc. ("FCA") do not come close to satisfying the obligation to "allege that each individual defendant joined the conspiracy and played some role in it." (Joint Mot. to Dismiss at 17-18.)

The complaint fails even to attempt to meet plaintiffs' burden of alleging the critical elements of a valid claim against FCA:

- There is no allegation that FCA joined any alleged agreement or conspiracy regarding capacitors, or that any FCA employee purported to join any such alleged conspiracy on behalf of FCA;

- There is no allegation that any employee of FCA attended any alleged formal or informal cartel meeting, or that any other person attended such meetings on behalf of FCA;

- There is no allegation that any employee of FCA engaged in any information exchange relating to capacitors, or that any other person exchanged such information on behalf of FCA;

- There is no allegation that FCA, or any employee of FCA, had any knowledge or awareness of the alleged conspiracy; and

- There is no allegation that FCA, or any employee of FCA, was informed by any corporate affiliate of the alleged conspiracy or any acts relating to the alleged conspiracy.

In fact, there are only two allegations in the *entire* complaint about FCA—neither of which have any bearing on its participation in the alleged conspiracy. (Compl. ¶¶ 54, 123.) First, the complaint alleges that FCA is a wholly-owned subsidiary of Fujitsu Limited. (Compl. ¶ 54.) Even if this allegation were accurate (which it is not), it provides no basis to include FCA in this case.[1] (Joint Mot. to Dismiss at 17-18.)

---

[1] Although the complaint's allegations are accepted as true for the purposes of this motion, FCA is not a wholly owned subsidiary of Fujitsu Limited.

1    Second, the complaint alleges that FCA "sold and distributed to United States purchasers

2    aluminum and/or tantalum and/or film capacitors" manufactured by unspecified business units,

3    subsidiaries, agents, or affiliates of Fujitsu Limited.  (Compl. ¶¶ 54, 123.)  Again, even if this

4    allegation were accurate (which it is not), it does not state a claim against FCA because it does

5    not establish that FCA joined, participated, or even knew about the alleged conspiracy.  Merely

6    selling or distributing products is insufficient to establish antitrust liability.  (Joint Mot. to

7    Dismiss at 17-18.)

8        Because plaintiffs cannot in good faith allege that FCA was involved in, or aware of, any

9    of the alleged misconduct at issue in this case, there is literally *nothing* in the complaint that

10   establishes a potential claim against FCA.  While the complaint makes three vague allegations

11   that *an unrelated and separate entity*, Fujitsu Media Devices, Ltd. ("FMD"), participated in or

12   was informed of meetings with competitors, (Compl. ¶¶ 198, 206, 208), FMD is *not* named as a

13   defendant in this case.  And, as plaintiffs acknowledge, FMD no longer exists.  (*See* Compl.

14   ¶ 53.)  In any event, the allegations about FMD are inadequate to state plausible antitrust claims

15   as to FCA.

16       The claims against FCA should be dismissed.

17   Dated:  December 19, 2014            MORRISON & FOERSTER LLP

18                                       By: */s/ Paul T. Friedman*

19                                           Paul T. Friedman

20                                       Paul T. Friedman
                                         Michael P. Kniffen
21                                       425 Market Street
                                         San Francisco, California  94105-2482
22                                       Telephone: 415.268.7000
                                         Facsimile: 415.268.7522
23                                       Email: PFriedman@mofo.com
                                         Email: MKniffen@mofo.com
24

25                                       Jeffrey A. Jaeckel
                                         2000 Pennsylvania Avenue, NW Suite 6000
26                                       Washington, District of Columbia 20006-1888
                                         Telephone: 202.887.1500
27                                       Facsimile: 202.887.0763
                                         Email: JJaeckel@mofo.com
28

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf
Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-11-

*Attorneys for Defendant*
*Fujitsu Components America, Inc.*

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-12-

## IV.     HOLY STONE DEFENDANTS

### A.     DPPS' Complaint Fails to Allege Facts Plausibly Suggesting that Holy Stone Joined and Participated in the Alleged Global Conspiracy.

Although DPPs' Complaint is long, it is incredibly short on allegations regarding Defendants Holy Stone Enterprise Co., Ltd. and HolyStone International (collectively, "Holy Stone").  In fact, DPPs' 74-page Complaint offers only a single, conclusory allegation regarding Holy Stone:  That Holy Stone allegedly attended "meetings in the 2nd quarter of 2010" in which the attendees "discussed" several issues, including sales, pricing, demand and capacity information.  (Complaint at ¶ 208(j).)  This sole allegations is not sufficient to plausibly suggest that Holy Stone joined and participated in a global conspiracy with over twenty corporate families to fix prices on all types of capacitors sold since 2003, for at least two reasons.

First, allegations of competitors "discussing" competitive information do not plausibly suggest a conspiracy because such discussions – even if they actually occurred – are consistent with lawful conduct.  *Twombly*, 550 U.S. at 554 (conduct that is "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy" does not state an antitrust claim); *Kendall*, 518 F.3d at 1049 ("Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws.").  As the Supreme Court has found, "[t]he exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive."  *U.S. v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.16 (1978).  For this reason, courts repeatedly have ruled that mere allegations of information exchanges among competitors do not support an inference of conspiracy.  *In re Citric Acid Litig.*, 191 F.3d 1090, 1103-04 (9th Cir. 1999) (evidence of information exchanges among rivals alone does not support an inference of an unlawful agreement); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) ("communications between competitors do not permit an inference of an agreement to fix prices

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-13-

unless 'those communications rise to the level of an agreement, tacit or otherwise.'").[2]

Second, Even if DPPs' Complaint cobbled together some facts plausibly suggesting that Holy Stone agreed with other capacitor manufacturers to exchange competitive information, the Complaint would still fail because DPPs have not properly alleged the requisite elements of such a claim. Alleged agreements to exchange information are not *per se* violations of the antitrust laws, but are instead reviewed under the more-analytical "rule of reason." *U.S. Gypsum Co.*, 438 U.S. at 443 n.16 ("exchanges of information do not constitute a per se violation of the Sherman Act."); *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1037 (8th Cir. 2000) (en banc) (same); *In re Baby Food Antitrust Litig.*, 166 F.3d at 118 ("exchanges of information are evaluated under a rule of reason analysis."). To state a rule of reason claim, DPPs must not only allege facts plausibly suggesting an agreement to exchange information, but they must also allege facts supporting relevant product and geographic markets, market power and anticompetitive effects within the relevant markets. *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044-45 (9th Cir. 2008); *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104-05 (9th Cir. 1999). DPPs, however, have not even attempted to allege facts supporting these elements.

As to Holy Stone, DPP's claims should be dismissed for a failure to offer facts plausibly suggesting that Holy Stone joined and participated in the alleged "global" conspiracy.

---

[2] *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999) ("Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the information exchange."); *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1357 (9th Cir. 1982) (evidence of information exchanges among competitors was insufficient evidence of a price-fixing agreement); *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1359 (9th Cir. 1976) (evidence of meetings between competitors is not sufficient to permit a jury to infer an illegal agreement); *In re Travel Agent Comm'n Antitrust Litig.*, No. 1:03 CV 30000, 2007 WL 3171675, at *11 (N.D. Ohio Oct. 29, 2007) (evidence of information exchange among competitors alone does not support an inference of an anticompetitive agreement), *aff'd* 583 F.3d 896 (6th Cir. 2009); *Workman v. State Farm Mut. Auto. Ins. Co.*, 520 F. Supp. 610, 620 (N.D. Cal. 1981) (plaintiffs' evidence of communications between defendants was not sufficient to raise triable issue of fact regarding existence of price fixing conspiracy).

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-14-

Dated: December 19, 2014

JONES DAY

By: */s/ Eric P. Enson*

Jeffrey A. LeVee (State Bar No. 125863)
jlevee@JonesDay.com
Eric P. Enson (State Bar No. 204447)
epenson@JonesDay.com
Rachel H. Zernik (State Bar No. 281222)
rzernik@jonesday.com
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071.2300
Telephone:     +1.213.489.3939
Facsimile:     +1.213.243.2539

*Counsel for Defendants Holy Stone Enterprise Co.,*
*Ltd. and Holy Stone International*

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf
Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-15-

# V.    KEMET CORPORATION AND KEMET ELECTRONICS CORPORATION

The DPPs appear to have added KEMET Corporation ("KEMET") and KEMET Electronics Corporation ("KEC," and together with KEMET, "the KEMET Defendants") to the Complaint because KEMET is perceived to have significant market share in some of the relevant products. *See* Compl. ¶¶ 229, 231. The IPPs, who had access to the same supposedly inculpatory information as the DPPs through Panasonic's ACPERA cooperation, *see id.* ¶ 8, did not name either KEMET Defendant in their complaint. The IPPs apparently recognized that allegations of a conspiracy involving the KEMET Defendants are not plausible. The IPPs are correct.

The DPPs do not allege that either KEMET Defendant has been the subject of a government investigation regarding capacitors. *See id.* ¶¶ 274-293. Unlike the majority of the named defendant corporate families that consist of a parent company in Japan and a subsidiary in the United States, KEMET and KEC are both American companies headquartered in South Carolina. *Id.* ¶¶ 37-38. The DPPs do not allege how or why the KEMET Defendants would participate in a conspiracy allegedly centered in Japan.

The DPP allegations that mention the KEMET Defendants at all are limited to a handful of broad and unsubstantiated assertions that do not provide the who, what, when, where, and why that *Twombly* requires. Here is every reference to the KEMET Defendants in the DPP Complaint:

- ¶¶ 34, 37-43 (describing the relevant KEMET entities and KEC's purchase of stock in NEC Tokin in the background section on the parties);
- ¶ 198 (alleging that a number of defendants, including KEMET, "participated in or were informed of the cartel's regular meetings" at some unspecified time over a five-year period from 2003 and 2008);
- ¶ 208(c) (alleging that unidentified representatives of KEMET participated in a meeting or meetings in the third quarter of 2008);
- ¶¶ 215-16 (alleging that, at some unspecified time during the Class Period, AVX coordinated the exchange of certain information between itself, Sanyo, NEC Tokin, and KEMET without specifying when, how, or what was supposedly disclosed);
- ¶ 217 (alleging cartel members obtained and discussed KEMET information);
- ¶¶ 229 and 231 (alleging that KEMET and others are among the six largest manufacturers of tantalum capacitors and the five largest manufacturers of film capacitors);
- ¶ 242 (mentioning KEC's 2012 investment in NEC Tokin in a discussion of barriers to entry in the industry);
- ¶ 269 (noting KEMET's participation in certain trade associations, without anything more);

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-16-

- ¶ 271 (asserting in conclusory terms that KEMET and other defendants joined the conspiracy by acquiring operations from or co-venturing with Japanese companies);
- ¶ 286 (describing KEMET's public statements in its annual report vis-à-vis its investment in NEC Tokin and NEC Tokin's receipt of inquiries from various government authorities).

That's it.

The DPPs thus rely on conclusory, broad-sweeping allegations about the KEMET Defendants that are devoid of any factual specificity regarding the alleged agreements.

## A. The allegations against KEMET fail to meet the *Twombly* standard.

### 1. The DPPs' allegations regarding KEMET's so-called joinder in the conspiracy are insufficient.

The DPPs claim that KEMET "joined the conspiracy at least by 2008 and perhaps by 2005, if not earlier." Compl. ¶ 217. In support of this claim, the DPPs allege that "officers, managers and/or employees" of twenty listed companies, including KEMET, "participated in *or were informed of* the cartel's regular meetings" from 2003 to 2008. *Id.* ¶ 198 (emphasis added). Merely being informed of a meeting is not participating in a conspiracy.[3] The *only meetings of any kind*—formal or informal—that the DPPs actually identify KEMET as attending are alleged "cartel meetings" in the third quarter of 2008. *Id.* ¶ 208(c). Regarding these alleged meetings, the DPPs do not identify any specific meeting, where these alleged meetings took place, how many meetings allegedly took place, who from KEMET attended the meetings, and what took place at any particular meeting. The DPPs do not differentiate between what was discussed in the different meetings, and they do not say whether KEMET attended all, some or one of these meetings. They also do not provide any specific facts about what the parties agreed to. If there were several meetings discussing different topics during the third quarter of 2008 and DPPs only allege that KEMET attended one in which sales data was discussed, that would be plainly insufficient to infer KEMET's participation in any alleged conspiracy.

Not only are the relevant facts lacking, the conclusions drawn from these facts are

---

[3] The DPPs also allege that KEMET was involved in certain industry organization meetings that gave KEMET the "opportunities" to conspire, but they do not allege that KEMET acted on those "opportunities." *Id.* ¶ 269; *see also id.* ¶ 266.

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-17-

implausible.  KEMET is an American company headquartered in South Carolina.  *Id.* ¶ 37.  *All* thirteen other defendants that are alleged to have participated in these meetings are companies headquartered in Japan.  *See id.* ¶¶ 29-107.  It does not make sense that KEMET, an American company, was invited to attend or attended, for just one quarter, any such meetings – particularly when one would have to assume, based on the other allegations in the Complaint, that such meetings were conducted in Japanese.[4]  *Twombly* requires more than the Complaint's vague allegations and implausible conclusions about KEMET.

### 2. The DPPs' allegations regarding AVX's information exchanges are insufficient.

The DPPs also allege that "AVX worked to coordinate current and future pricing strategy" between NEC TOKIN, KEMET, SANYO and itself during the alleged class period.  Compl. ¶¶ 215, 216.  But the DPPs do not allege how any such price coordination was supposedly accomplished, which individuals were involved, what types of capacitors were discussed, or when any of this supposedly took place, other than "[d]uring the Class Period."  *Id.*  And while the DPPs allege that the other companies attended meetings with AVX to try to achieve this objective, they *do not* allege that KEMET attended any such meetings.  *Id.*  Once again, the DPPs fail to provide specific facts regarding the what, when, where, how and by whom any agreement with KEMET was reached.  These conclusory allegations fall far short of plausibly alleging that KEMET participated in the alleged conspiracy.

### 3. The investment in NEC Tokin is not grounds to hold KEMET liable.

Finally, the DPPs allege in paragraph 42 that KEMET controlled NEC TOKIN from March 2012 to the present.  The DPPs allege that, during that time, KEMET allegedly discovered NEC TOKIN's involvement in the conspiracy and then "acquiesce[ed] in NEC TOKIN's continued cartel activity, as well as fail[ed] to disclose or otherwise conceal[ed] NEC TOKIN's cartel activity, fail[ed] to cause NEC TOKIN to terminate its cartel activity and fail[ed] to cause

---

[4] It is significant that the IPPs did not name in their complaint any of the three American headquartered companies that the DPPs chose to name in their complaint: the KEMET entities, the Vishay entities and AVX Corporation.

NEC TOKIN to withdraw from the cartel." Compl. ¶ 42. But as the DPPs allege elsewhere, *see id.* ¶¶ 34, 39-41, it was KEC and not KEMET that acquired NEC TOKIN stock, voting interests, and the right to appoint certain directors. Thus, the allegations in paragraph 42 that KEMET controlled NEC TOKIN should be disregarded because they expressly contradict the allegations in paragraphs 34 and 39-41 that it was KEC that controlled NEC TOKIN.[5]

But even assuming for purposes of this motion that KEMET did control NEC TOKIN, the DPPs' allegations should be disregarded because the companies cannot conspire with each other as a matter of law.[6] In the event the DPPs claim that this was a typo and they meant to allege that KEC, not KEMET, controlled NEC TOKIN, the same analysis would apply. The DPPs must allege that KEMET independently joined the conspiracy, not merely that it acquiesced in another company's conduct.[7]

## B. The DPPs have not alleged KEC participated in any conspiracy.

KEC is an American company headquartered in South Carolina. Compl. ¶ 38. The DPPs do not allege that KEC participated in any conspiracy meetings or communications, shared competitive information with its competitors, or even was a member of one of the industry trade associations.

The DPPs allege only that KEC: (i) "entered into a Stock Purchase Agreement" and an "Option Agreement" with NEC TOKIN; (ii) acquired a "34% economic interest" and "51%

---

[5] *See Hazel Green Ranch, LLC v. U.S. Dep't of Interior*, No. 107CV00414OWWSMS, 2010 WL 1342914, at *8 (E.D. Cal. Apr. 5, 2010), *aff'd*, 490 F. App'x 880 (9th Cir. 2012) (granting motion to dismiss because allegations within the complaint were "internally inconsistent").

[6] *Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp.*, 849 F. Supp. 702, 706 (N.D. Cal. 1994) (holding corporation could not conspire with a company in which it held majority ownership).

[7] *See McCray v. Fid. Nat. Title Ins. Co.*, 636 F. Supp. 2d 322, 334-35 (D. Del. 2009), *aff'd*, 682 F.3d 229 (3d Cir. 2012) ("[w]ithout some averment that the corporate parent defendants directly entered into agreements" or pleading of an alter ego theory, plaintiffs failed to state a Sherman Act conspiracy claim); *In re Pennsylvania Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688-89 (E.D. Pa. 2009) (allegations that company controlled subsidiary and acquiesced in the subsidiary's conspiratorial conduct insufficient to allege company's participation in the conspiracy).

voting interest" in NEC TOKIN; and (iii) obtained "the right to appoint four of the seven members on NEC TOKIN's board of directors" and "sell NEC TOKIN's aluminum and/or tantalum capacitors." *Id*. ¶¶ 34, 39-41. The DPPs' allegations against KEC relate solely to KEC's purchase of NEC TOKIN stock in 2012.[8] KEC is not liable for NEC TOKIN's alleged actions because stock purchasers do not assume the liabilities of the company whose stock is acquired.[9] The DPPs fail to allege that KEC consciously participated in a conspiracy.

Dated: December 19, 2014

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Roxane A. Polidora*
Roxane A. Polidora

Roxane A. Polidora (CA Bar No. 135972)
Jacob R. Sorensen (CA Bar No. 209134)
Lindsay A. Lutz (CA Bar No. 254442)
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 983-1000
Email: roxane.polidora@pillsburylaw.com
jake.sorensen@pillsburylaw.com
lindsay.lutz@pillsburylaw.com

*Attorneys for Defendants*
*KEMET Corporation and*
*KEMET Electronics Corporation*

---

[8] While DPPs allege that the stock was acquired in March 2012, public filings reveal that the stock purchase did not close until February 2013, towards the end of the alleged conspiracy period. *See* KEMET Corp., Quarterly Report (Form 10-Q), at 12 (Aug. 2, 2013), *available at* http://b2i.api.edgar-online.com/EFX_dll/EdgarPro.dll?FetchFilingHTML1?SessionID=1dmj6IA6VrMBo-9&ID=9430038.

[9] *See Sunnyside Dev. Co. v. Opsys Ltd.*, No. C 05 0553 MHP, 2007 WL 2462142, at *6 (N.D. Cal. Aug. 29, 2007) (holding successor liability "requires the purchase of *assets*, not merely the purchase of stock"); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." (citations omitted)).

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-20-

1    **VI.    NICHICON CORPORATION AND NICHICON (AMERICA) CORPORATION**

2    The DPP's name three Nichicon entities as defendants: the Japanese parent corporation,

3    Nichicon Corporation, its American subsidiary, Nichicon (America) Corporation ("Nichicon

4    America"), and another subsidiary, FPCAP Electronics (Suzhou) Co., Ltd. ("FPCAP"), which

5    was formed after October 2008 to hold the business acquired from Fujitsu Media Devices

6    (Suzhou), Ltd.[10]  Compl. ¶¶ 57-59.  The three Nichicon defendants are separate legal entities.

7    The DPPs fail to state a claim as to any of the Nichicon defendants.

8    **A.    The Complaint Contains No Allegations Against Nichicon America**

9    The Complaint is clear that when it references "Nichicon" it is referring only to the

10   Japanese parent company, Nichicon Corporation (hereinafter "Nichicon Japan").  Compl. ¶ 57.

11   The Complaint is equally clear that "Nichicon America" refers only to the American subsidiary.

12   Compl. ¶ 58  The Complaint explains that when it wishes to refer to these entities collectively, it

13   will use the term "Nichicon Defendants."  Compl. ¶ 62.  Taking the DPPs at their word, as we

14   must, there are no allegations linking Nichicon America to the alleged conspiracy.

15   The only allegation in the Complaint that mentions either Nichicon America or the

16   collective "Nichicon Defendants" is the conclusory assertion in Paragraph 123 that Nichicon

17   America assisted its corporate parent with the sale and/or delivery of capacitors to United States

18   purchasers.  Compl. ¶ 123.  This single, non-factual allegation is insufficient to state a conspiracy

19   claim against Nichicon America.  See Section II.A. of the Joint Motion to Dismiss the DPP

20   Complaint.

21   **B.    Plaintiffs Fail to Allege Facts Sufficient to Support a Claim of Conspiracy
          Against Nichicon Japan**

22

23   The DPPs attempt to assert a claim against Nichicon Japan based upon its own conduct

24   and the conduct of Fujitsu Media Devices (Suzhou) Ltd ("FMD Suzhou") prior to Nichicon

25

26   _____

     [10] FPCAP was first named as a defendant or referenced in any of the complaints in the DPP's
27   Consolidated Class Action Complaint filed on November 14, 2014.  The Complaint contains no
     allegations that refer to FPCAP.  FPCAP has not been served with process.  In the event that
28   FPCAP is ever served, it reserves all rights and bases for dismissal of the Complaint,
     jurisdictional or otherwise.

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-21-

Japan's acquisition of the business of FMD Suzhou. The Complaint is insufficient on both scores.

### 1. **The Complaint Fails to Allege that Nichicon Japan Participated in the Conspiracy**

The Complaint is devoid of any factual allegations that Nichicon Japan entered into any agreements with the other Defendants regarding the sale of capacitors. In fact, the Complaint's only paragraph that alleges specific facts as to Nichicon Japan and whether it participated in an agreement alleges that Nichicon Japan *did not agree* with the other Defendants. Compl. ¶ 187. Paragraph 187 alleges that Nichicon Japan was excluded from alleged "cartel" discussions and also "subject to harsh criticism" and "reprimanded" by alleged cartel members "for pursuing their individual interests over those of the cartel by cheating on the cartel's agreements or for failing to keep their sale operations act in line with the cartel's price-fixing aims." *Id.*

Paragraphs 208(f)-(i) merely allege that Nichicon Japan attended meetings with other Defendants in 2009 and early 2010, years after the alleged conspiracy was formed. At these meetings, Nichicon Japan and other Defendants allegedly "discussed" current sales data, current pricing information, industry and customer demands, raw material pricing, future production intentions, sales trends, the impact of decreasing prices, avoiding price competition, excess capacity, and, on one occasion, "cartel members' punishment for and criticism of another cartel member for making sales that undercut the cartel's collusive pricing." Compl. ¶¶ 208(f)-(i). None of these paragraphs allege that Nichicon Japan entered into an agreement with other Defendants regarding the prices Nichicon Japan will charge for its capacitors, let alone any agreement relating to prices for capacitors sold in or into the United States. Although Paragraph 209 alleges the conclusion that "the discussions, exchange of information, and agreements reached at each of these meetings constituted overt acts in furtherance of Defendants' conspiracy," this is precisely the formulaic recitation of the elements of a claim that the Supreme Court has held insufficient. Compl. ¶ 209.

Paragraph 206 includes another general allegation that Nichicon Japan participated in meetings of the "Overseas Trade Sectional Meeting" of the "ATC Group" and that the "sales of

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf
Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-22-

aluminum and tantalum capacitors in non-Japanese markets… were discussed and prices were mutually agreed upon among the participants." Compl. ¶ 206. However, this paragraph fails to allege any specific meetings or occurrences where these alleged agreements were entered into, and similarly fails to allege what, specifically, the parties allegedly agreed to. As with Paragraphs 208(f)-(i), there is no allegation that these meetings had anything to do with the United States. The specific allegations of Nichicon Japan's non-participation in the alleged conspiracy contained in Paragraph 187 trumps Plaintiffs' general allegations regarding Nichicon Japan in Paragraphs 206, 208 and 209.

Of the Complaint's six remaining paragraphs that make any mention of Nichicon Japan, two relate to Nichicon Japan's mere participation in trade association meetings that, at most, only provide an opportunity to conspire. Compl. ¶¶ 268-69. Such allegations are insufficient to support a conspiracy claim against Nichicon Japan. See Section I.E. of the Joint Motion to Dismiss the DPP Complaint. Paragraph 198 alleges only that Nichicon Japan participated in or was informed of one or more meetings from 2003 to 2008. Compl. ¶ 198. This paragraph contains no allegation that Nichicon Japan entered into an agreement with other Defendants regarding the price of capacitors sold in or into the U.S. See Section II.B. of the Joint Motion to Dismiss the DPP Complaint. Similarly, the allegation that Nichicon Japan was the subject of an investigation by the Japanese Fair Trade Commission does not state a claim. Compl. ¶ 282. See Section I.D. of the Joint Motion to Dismiss the DPP Complaint. The final two allegations about Nichicon Japan relate solely to the DPP's assertion of fraudulent concealment, claiming that Nichicon Japan made certain unilateral statements regarding its production and supply, including disruptions due to the horrific 2011 earthquake and tsunami that hit Japan. Compl., ¶¶ 305, 310. Certainly, these allegations do not support a claim that Nichicon Japan participated in the alleged conspiracy.

2. **The Complaint Fails to Allege Facts Sufficient to Hold Nichicon Japan Responsible for the Pre-Acquisition Acts of Fujitsu Media Devices (Suzhou) Ltd.**

Plaintiffs allege that Nichicon Japan acquired the business of FMD Suzhou after October 2008 and seeks to hold Nichicon Japan responsible for the pre-acquisition conduct of FMD

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-23-

Suzhou as its successor in interest. Compl. ¶¶ 59-60. However, Plaintiffs have failed to allege sufficient facts to state a claim of successor liability against Nichicon Japan.

Plaintiffs assert that FPCAP, the entity formed by Nichicon Japan to conduct the business acquired from FMD Suzhou, is a "mere continuation" of FMD Suzhou. Compl. ¶ 60. The DPPs allege that "[t]he change of FMD Suzhou's ownership did not impact the continuity of its management, personnel, physical locations, business, assets, and general business operations." Compl. ¶ 60. However, "[s]uccessor liability based on 'mere continuation' requires one or both of: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of the unsecured creditors; and (2) one or more persons were officers, directors, or stockholders of both corporations." *Moses v. Innoprise Software*, 2014 U.S. Dist. LEXIS 22407, *10 (N.D. Cal. Feb. 21, 2014) (finding that plaintiff's allegation that a specific employee became an employee and officer of the successor company was insufficient to state a claim for successor liability). Here, Plaintiffs fail to allege sufficient facts that would support a claim of successor liability under the "mere continuation" exception. Therefore, Plaintiffs' attempt to hold Nichicon Japan responsible for the pre-acquisition conduct of FMD Suzhou must fail.

Dated: December 19, 2014      K&L GATES LLP

By: _/s/ Michael E. Martinez_
          Michael E. Martinez

Scott M. Mendel (admitted *pro hac vice*)
Steven M. Kowal (admitted *pro hac vice*)
Michael E. Martinez  (admitted *pro hac vice*)
Lauren N. Norris (admitted *pro hac vice*)
Lauren B. Salins (admitted *pro hac vice*)
70 West Madison Street, Suite 3100
Chicago, IL 60602
312-372-1121
Email: michael.martinez@klgates.com

*Attorneys for Defendants Nichicon Corporation and Nichicon (America) Corporation*

## VII. OKAYA ELECTRIC INDUSTRIES CO., LTD AND OKAYA ELECTRIC AMERICA INC.

### A. Okaya America Should be Dismissed from the Case as the Complaint Contains No Factual Allegations that it Participated In Any Alleged Conspiracy

In addition to suing Okaya Electric Industries Co., Ltd. ("Okaya"), the DPPs name as a defendant Okaya's wholly owned U.S. subsidiary, Okaya Electric America Inc. ("Okaya America"). *See* DPP Compl. ¶¶ 93-94. But the Complaint contains no factual allegations that Okaya America joined or participated in any conspiracy among capacitors manufacturers in any way. It simply lumps the two entities together by the device of a definition, defining them as the "Okaya Defendants." *See* DPP Compl. ¶ 94. There is not a single allegation that a representative or employee of Okaya America attended any meeting among the alleged cartel members or was ever a member of one of the named industry trade associations. *See* DPP Compl. ¶¶ 192-218 (describing meetings among alleged cartel members). Nor is Okaya America mentioned in the sections of the Complaint that describe information sharing among defendants, *see* DPP Compl. ¶¶ 266-273, and the U.S. and international antitrust investigations, *id*. ¶¶ 274-293.

The only reference to Okaya America in the Complaint (apart from in the definitional section, *see id*. ¶¶ 93-94) is in paragraph 123, in which the DPPs assert that Okaya America "assisted its respective corporate parent Defendant[] with the sale and/or delivery to United States purchasers of the parents' respective aluminum, tantalum and film capacitors to United States purchasers." *Id*. ¶ 123. Contradicting this assertion, the Complaint at ¶ 92 alleges that Okaya only makes film capacitors, not aluminum or tantalum capacitors. But alleging that Okaya America sold and delivered products manufactured by its foreign parent to U.S. purchasers, without more, fails plausibly to state a claim that Okaya America participated in the alleged conspiracy.

To the extent the DPPs seek to rely on an agency theory to connect Okaya America to the alleged conspiracy, the only such allegation made does not even mention Okaya America. *See* DPP Compl. ¶ 110.

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-25-

### B. The Complaint Implausibly Alleges that Okaya, which Manufactures Only Film Capacitors, Colluded with Defendants who Manufacture Aluminum or Tantalum Capacitors when the Complaint Admits that the Products are not Substitutable

As applied to Okaya, the conspiracy as alleged in the Complaint is implausible on its face. On the one hand, the Complaint alleges an overarching conspiracy among manufacturers and sellers of electrolytic (aluminum and tantalum) and film capacitors. *See, e.g.,* DPP Compl. ¶ 1. On the other hand, the Complaint alleges that electrolytic capacitors and film capacitors are not mutually interchangeable products, *see* DPP Compl. ¶ 174 ("Aluminum capacitors, however, are not mutually interchangeable with tantalum capacitors or with film capacitors, nor are film capacitors and tantalum capacitors mutually interchangeable with each other.") and ¶ 155 ("[film capacitors'] larger size in comparison to aluminum, tantalum and ceramic capacitors with similar performance characteristics limit the ability of original equipment manufacturers ("OEMs"), contract electronic manufacturing service providers ("CMs") and other product manufacturers from using film capacitors in surface-mount technology"), and specifically distinguishes between alleged meetings of the film capacitor group and those of the electrolytic manufacturers group, *see* DPP Compl. ¶¶ 196, 203.

Okaya manufactures only film capacitors. *See* DPP Compl. ¶ 92 ("During the class period, Okaya manufactured, sold and distributed film capacitors . . . to United States purchasers."). Okaya would thus have no reason to conspire with defendants whose products do not compete with Okaya's. The Complaint as to Okaya is therefore implausible and must be dismissed.

Dated: December 19, 2014

BAKER & MCKENZIE LLP

By: */s/ Douglas Tween*
     Douglas Tween

Douglas Tween (*pro hac vice* pending)
Darrell Prescott (*pro hac vice* pending)
Michael Atkins (*pro hac vice* pending)
452 Fifth Avenue
New York, NY 10018
(212) 626-4355
Fax: (212) 310-1655

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-26-

Email: Douglas.Tween@bakermckenzie.com
Email: Darrell.Prescott@bakermckenzie.com
Email: Michael.Atkins@bakermckenzie.com

Colin H. Murray (SBN 159142)
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111
(415) 591-3244
Fax: (415) 576-3099
Email: Colin.Murray@bakermckenzie.com

*Attorneys for Defendants*
*Okaya Electric Industries Co., Ltd. and*
*Okaya Electric America, Inc.*

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-27-

## VIII.   ROHM CO., LTD. AND ROHM SEMICONDUCTOR U.S.A., LLC

Plaintiffs have failed to allege sufficient "evidentiary facts" to support their claim that ROHM Co., Ltd. ("ROHM") joined the single, sprawling overarching conspiracy alleged in the Complaint. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008). Aside from noting that ROHM manufactures some of the products alleged to be the focus of the conspiracy, the following represent the entirety of the allegations against ROHM:

- ROHM was "informed of" meetings of other defendants between 2003 and 2008, but apparently attended none (Compl. ¶ 198);

- ROHM attended a single meeting with other defendants in 2010, at which no agreements were reached (*id.* ¶ 208(j));

- ROHM is a member of trade associations (*id.* ¶¶ 268, 269); and

- In 2011, ROHM attributed production delays to flooding in Thailand (*id.* ¶ 311).

These allegations do not come close to supporting a conspiracy claim against ROHM. They fail to answer the "basic questions: who, did what, to whom (or with whom), where, and when." *Kendall*, 518 F.3d at 1048; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007). Faced with these skimpy facts, the Indirect Purchaser Plaintiffs properly dropped ROHM from their consolidated complaint. The Direct Purchaser Plaintiffs should have done the same, but insisted on keeping ROHM in this case as part of their kitchen-sink approach to pleading. The Court should grant ROHM's motion to dismiss.

*Tantalum Capacitor Sales:*   The fact that ROHM makes and sells tantalum capacitors says nothing about whether it participated in a conspiracy. In fact, these background facts demonstrate the opposite. Plaintiffs claim an overarching conspiracy covering not just tantalum capacitors, but also aluminum and film capacitors. (Compl. ¶¶ 1, 12.) ROHM has never sold aluminum or film capacitors, as the Complaint tacitly acknowledges. (*See id.* ¶ 84 (alleging that ROHM sold "tantalum *and/or* film" capacitors (emphasis added)), ¶¶ 227, 229, 231 (alleging only that ROHM had tantalum capacitor sales).) Plaintiffs have articulated no theory under which it would have made sense for ROHM to participate in a conspiracy to fix prices for products it has never sold, particularly where the products are "not mutually interchangeable."

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-28-

(*Id.* ¶ 174.)

The allegation that ROHM and other defendants collectively accounted for about 91% of global tantalum capacitor sales likewise proves nothing. Plaintiffs have sued 47 defendants, including most of the tantalum capacitor manufacturers, so it is not surprising that their market shares collectively are significant. Moreover, Plaintiffs conspicuously omit any mention of ROHM's individual global market share, which many earlier complaints estimated at only 4%. (*See, e.g.*, *eIQ Energy Inc. v. AVX Corp.*, 14-cv-04123-JD, Dkt. 1, ¶ 77.) Finally Plaintiffs say nothing at all about ROHM's share of the tantalum capacitor market in the United States, presumably because it is negligible. Being a market participant is never a sufficient basis to make out an antitrust claim, and the minimal market allegations relating to ROHM cut against any such claim.

***Alleged Meetings:*** The allegations regarding meetings among defendants also fail to tie ROHM to any conspiracy. Plaintiffs allege that a group of nine defendants attended meetings called "Overseas Trade Sectional Meeting[s]" beginning in August 2003, in which they discussed and agreed on prices of "aluminum and tantalum capacitors in non-Japanese markets (*i.e.*, the United States, Chinese and Taiwanese markets)." (Compl. ¶ 206.) ROHM is not alleged to have attended any of those meetings.

Plaintiffs also generally allege that for the period from 2003 to 2008, twenty defendants "participated in or were informed of" meetings. (*Id.* ¶ 198 (emphasis added)). Plaintiffs' only effort to separate those defendants that attended meetings from those who were only "informed of" them during this six-year period is found in Paragraphs 208(a) through (d), where Plaintiffs describe specific meetings that allegedly took place and list the attendees. ROHM is not alleged to have attended any of those meetings. Being informed of a meeting (even crediting the allegations in the Complaint) is not the same as attending the meeting, and is a far cry from joining a conspiracy.

Plaintiffs allege that other meetings took place in 2009 and 2010. ROHM is only alleged to have participated in the last of such meetings, in the second quarter of 2010. (*Id.* ¶ 208(j).) But there is no allegation that the participants agreed to fix prices or entered into a conspiracy.

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-29-

Instead, they allege only that attendees shared market information, such as current sales data and pricing, industry and customer demands and trends, capacity, future production intentions, and raw materials costs. (*Id*. ¶ 208(j).) Such allegations describe an information exchange, but no agreement. In contrast, Plaintiffs specifically allege that in many other meetings—meetings that ROHM did not attend— defendants did reach agreements regarding pricing and capacity. (*See, e.g.*, *id*. ¶ 208(b) (alleging certain attendees "agreed to stabilize prices" at 2nd quarter 2008 meetings), ¶ 208(c) (alleging attendees "reached agreements about increasing pricing" at 3rd quarter 2008 meetings), ¶ 208(e) (alleging attendees "agreed among themselves to resist price decreases" at 1st quarter 2009 meetings); *see also* ¶ 208(d) (alleging attendees discussed "ending price competition" at 4th quarter 2008 meeting), ¶ 208(g) (alleging attendees discussed "decreasing production of tantalum capacitors" and "avoiding price competition").) Whether or not such allegations sufficiently state a conspiracy, Plaintiffs make no such allegations regarding any meeting that ROHM is alleged to have attended. Simply labeling these meetings as "cartel" meetings is not enough. *Twombly*, 550 at 555 (courts are "not bound to accept as true a legal conclusion couched as a factual allegation").

The conduct in which ROHM is alleged to have participated in the second quarter of 2010 does not violate the antitrust laws. The exchange of market information, in the absence of an agreement, does not violate the Sherman Act. *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 125-26 (3d Cir. 1999). It is implausible to suggest that ROHM entered into a conspiracy that allegedly began in 2003 when the only meeting it attended was the very last one in 2010 at which no agreements are alleged to have been reached or even discussed.

Finally, Plaintiffs allege that during and after the group meetings of defendants, defendants held "ad hoc bilateral or multilateral meetings." (Compl. ¶ 211.) ROHM is not alleged to have participated in any of those meetings. (*Id*. ¶¶ 212-218.)

***Trade Associations:*** ROHM's participation in industry trade associations is a legitimate, pro-competitive activity and does not support Plaintiffs' conspiracy claim. *See, e.g.*, *In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999) (trade associations serve "legitimate functions"). Plaintiffs assert that ROHM's membership in two particular trade organizations, the Japan

Electronics and Information Technology Industries Association (JEITA) and the Electronic Components Industry Association (ECIA), provided an opportunity to collude. (Compl. ¶¶ 268, 269.) Plaintiffs neglect to mention that these trade associations are comprised of literally hundreds of companies. The suggestion that ROHM had an opportunity to conspire with other defendants because it belonged to these large organizations is little different from suggesting that they had an opportunity to conspire because they had telephones.

*Thailand Floods:* Finally, Plaintiffs allege that in 2011, ROHM attributed production delays to flooding in Thailand. (Compl. ¶ 311.) Plaintiffs claim that this was a "misleading excuse" intended to conceal the alleged conspiracy. (*Id*. ¶ 309.) The Court should disregard this rank speculation. Plaintiffs do not dispute that Thailand was hit by severe floods in 2011 that caused widespread damage and had a devastating effect on many companies' production facilities. Plaintiffs offer no facts to suggest that ROHM overstated the floods' effect, let alone that ROHM did so as an excuse to conceal any conspiracy. That ROHM suffered production delays from a major natural disaster is hardly sufficient to connect ROHM to the price-fixing conspiracy alleged in the Complaint.

Whether taken individually or as a whole, the allegations fall far short of what is required to tie ROHM to any conspiracy. Plaintiffs' inability to allege that ROHM became party to a price-fixing agreement—even with the full cooperation of one of its alleged participants (*see* Compl. ¶¶ 8, 277-79; Joint Case Management Statement, Dkt. 246 at 5, 7-8)—fails *Twombly*'s standard for stating an antitrust claim. The Complaint should be dismissed with prejudice as to ROHM Co., Ltd.

*ROHM Semiconductor U.S.A., LLC:* In addition, the Complaint should be dismissed as to ROHM Semiconductor U.S.A., LLC because the Complaint makes no allegations at all that it participated in any activity alleged to be conspiratorial. The Complaint defines the Japanese parent corporation to be "ROHM" and the U.S. subsidiary to be "ROHM Semicon USA," and defines them collectively to be "ROHM Defendants." (Compl. ¶¶ 84-86.) The only allegations specific to ROHM Semicon USA are that it sold "tantalum and/or film capacitors" (*id*. ¶ 85), and that it "assisted" its parent corporation "with the sale and/or delivery to United States purchasers

of the parents' respective aluminum, tantalum and film capacitors to United States purchasers."
(*Id.* ¶ 123.) These allegations are plainly insufficient to allege a conspiracy against ROHM
Semicon USA. All other allegations in the Complaint are specifically alleged only against
ROHM, not against ROHM Semicon USA or ROHM Defendants. The Complaint should be
dismissed with prejudice as to ROHM Semiconductor U.S.A., LLC.

Dated: December 19, 2014

O'MELVENY & MYERS LLP

By: */s/ Michael F. Tubach*
     Michael F. Tubach

Michael F. Tubach (SBN 145955)
Christina J. Brown (SBN 242130)
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701
Email: mtubach@omm.com
Email: cjbrown@omm.com

Kenneth R. O'Rourke (SBN120144 )
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: korourke@omm.com

*Attorneys for Defendants*
*ROHM Co., Ltd. and*
*ROHM Semiconductor U.S.A., LLC*

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf
Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-32-

## IX. SHINYEI KAISHA, SHINYEI CAPACITOR CO., LTD., AND SHINYEI CORPORATION OF AMERICA, INC.

In addition to the grounds set forth in the Joint Motion, the Complaint fails to state a cognizable claim against Defendants Shinyei Kaisha ("SK"), Shinyei Capacitor Co., Ltd. ("SCC"), and Shinyei Corporation of America, Inc. ("SCA") (collectively, "Shinyei") for the following five reasons:

1. The central failing of the Complaint is its lack of facts showing that any Shinyei entity joined a conspiracy to fix the prices on three distinct types of capacitors—two of which Shinyei does not make—or that any Shinyei employee ever reached an agreement with a competitor on prices. Indeed, the Complaint adds Shinyei to its laundry list of defendants and then only mentions it by name in eight paragraphs:

- Paragraphs 98-101 identify Shinyei as being involved in the sale of film capacitors but do not allege illegal conduct;

- Similarly, Paragraph 123 alleges that SCA assisted SK with the "sale and/or deliver to United States purchasers" but it too is silent as to any alleged misconduct;

- Paragraph 198 makes a conclusory allegation about Shinyei attending purported "cartel" meetings "from 2003 to 2008";

- Paragraph 208 provides conclusory descriptions of four meetings allegedly attended by Shinyei between the "2nd Quarter of 2008" and the "1st Quarter of 2009"; and

- Paragraph 231 acknowledges that Shinyei is <u>not</u> one of "the five largest manufacturers of film capacitors."

2. Thus, read in toto, the case against Shinyei amounts to four meetings allegedly held in late 2008 and early 2009. And even these allegations are strikingly thin. For instance, the allegations for the first purported meeting fail the who/what/where/when test of pleading by alleging without particularity that "<u>certain</u> of the Defendant attendees agreed to stabilize prices and resist customer efforts to request price reductions." DPP-FCC ¶ 208b (emphasis added).

3. The Court should take notice of the allegations in the IPPs' Complaint that SCC was "established" on February 3, 2011 and "began to manufacture, market, and/or sell film capacitors in April 2011." IPP-FCC ¶ 105. Those 2011 dates are fatal to the claims here. The

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-33-

DPPs' Complaint has no factual allegations about Shinyei more recent than its attendance at a meeting allegedly held during the "1st Quarter of 2009."  DPP-FCC ¶ 208.

4.     The beginning of Shinyei's involvement in the purported conspiracy—in the year 2003—is completely arbitrary.  Plaintiffs do not allege any facts regarding any meetings or communications by Shinyei in 2003.  *See, e.g., In re Urethane Antitrust Litig.*, 663 F. Supp. 2d. 1067, 1077 (D. Kan. 2009) ("Plaintiffs have alleged generally that such meetings and communications began in 1994; without any supporting factual allegations, however, such a general allegation is no better than a conclusory allegation that defendants conspired beginning in 1994").

5.     Finally, if taken as true, the allegations may plausibly suggest that four meetings occurred within the span of few months starting in late 2008.  But they do not demonstrate participation by Shinyei in an extended and economically implausible conspiracy to fix the prices for products that it neither makes nor sells.  The Court should cut through the generic and irrelevant allegations cluttering the Complaint and consider what is missing:  allegations of specific sales by Shinyei to direct purchasers and other factual matter necessary to state a facially plausible claim for relief.

DATED: December 19, 2014         McKENNA LONG & ALDRIDGE LLP

                                 By:    /s/ Andrew S. Azarmi

                                 Andrew S. Azarmi
                                 Spear Tower, One Market Plaza, 24th Floor
                                 San Francisco, CA 94150
                                 415-267-4000
                                 Fax: 415-267-4198
                                 Email: aazarmi@mckennalong.com

                                 Gaspare J. Bono (*pro hac vice* to be filed)
                                 Stephen M. Chippendale (*pro hac vice* to be filed)
                                 1900 K Street, NW
                                 Washington, DC 20006
                                 202-496-7500
                                 Fax: 202-496-7756
                                 Email: gbono@mckennalong.com
                                 Email: schippendale@mckennalong.com

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-34-

*Attorneys for Defendants Shinyei Kaisha, Shinyei
Capacitor Co., Ltd., and Shinyei Corporation of
America, Inc.*

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-35-

# X.   SOSHIN ELECTRIC CO., LTD. AND SOSHIN ELECTRONICS OF AMERICA, INC.

In addition to the arguments set forth in Defendants' joint memoranda of law, there are at least three reasons why the Direct Purchaser Plaintiffs' ("DP Plaintiffs") claim should be dismissed as against Defendants Soshin Electric Co., Ltd. ("Soshin Japan") and Soshin Electronics of America, Inc. ("Soshin America"). *First*, the DPP Complaint does not give fair notice of the claims made against either Soshin Defendant, because it does not allege which of them did what, to whom, where and when. The DPP Complaint makes almost exclusively collective allegations against "Soshin" [11] or "Defendants," without facts as to which Defendant was responsible for which wrongful acts.

*Second*, the DPP Complaint fails to adequately allege that either Soshin entity entered into the alleged conspiracy. While DP Plaintiffs generally claim that "Soshin" attended a single trade association meeting, DP Plaintiffs do not adequately plead *what* "Soshin" discussed or agreed to there. At most, the DPP Complaint alleges that "Soshin" may have had an *opportunity* to enter into an improper agreement, which on its own does not permit the inference that an *actual* improper agreement was reached. Indeed, DP Plaintiff's deficient allegations leave open the possibility that Soshin Japan's and Soshin America's alleged conduct was entirely permissible.

*Third*, the Complaint alleges that "Soshin" participated in a conspiracy to fix the prices of a wide range of capacitors that neither Soshin entity manufactures or sells (DPP Compl. at ¶¶ 104-105), pursuant to meetings that neither Defendant is alleged to have attended (DPP Compl. at ¶ 208 ). Without facts in support, the conclusion that Soshin Japan and Soshin America were parties to an overarching conspiracy to fix the prices of all types of capacitors, including

---

[11].Although the DP Plaintiffs expressly acknowledge that Soshin Japan and Soshin America are distinct entities, incorporated and headquartered in different countries, the DPP Complaint refers almost universally simply to "Soshin," failing to identify which allegations pertain to which entity. Further confusing matters, the term "Soshin" is defined in paragraph 104 to refer to Soshin Japan individually, and in paragraph 106 to refer to Soshin Japan and Soshin America collectively. DPP Compl. ¶¶ 104, 106.

electrolytic capacitors, is not entitled to the presumption of truth and should be dismissed.

**ARGUMENT**

To state a claim for relief, the DP Plaintiffs' allegations must give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005); *see also Kendall v. Visa U.S.A. Inc.,* 518 F.3d 1042, 1048 (9th Cir. 2008) (dismissing antitrust claims for failing to answer basic questions such as "who, did what, to whom (or with whom), where, and when").The DPP Complaint comes nowhere close to meeting this standard. Rather, it contains dozens of paragraphs asserting vague, generalized allegations about unspecified "Defendants," meetings, and agreements, which do not provide the particularized, factually-supported allegations necessary to state an antitrust claim against either Soshin Defendant individually.

The DP Plaintiffs' bare-bones allegations against "Soshin" contain no facts plausibly suggesting that either Soshin entity entered into any unlawful agreement to restrain trade, much less that either Soshin entity joined the sort of broad overarching conspiracy that the DP Plaintiffs allege in their pleadings. At most, the DPP Complaint alleges that unidentified "representatives" from "Soshin" (entity unspecified) attended a single trade association meeting in 2008, where "the Defendant attendees discussed, among other things, customer pricing, including implementing price hikes and non-Japan market conditions." (DPP Compl. ¶ 208(b).) The DP Plaintiffs' generic and allegation that "Defendants", including "Soshin", "were informed of the cartel's regular meetings" does not suggest that either Soshin Japan or Soshin America knew about the substance of these alleged meetings, let alone joined any illegal conspiracy that was formed at them. (DPP Compl. ¶ 198.) Absent such allegations, the DP Plaintiffs' antitrust claims against Soshin Japan and Soshin America cannot stand.

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-37-

Nor does the mere existence of a corporate relationship between Soshin America[12] and its foreign parent, Soshin Japan, make either responsible for the alleged torts of the other, or support the existence of a claim against the other. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (finding that a parent-subsidiary relationship does not, by itself, make one liable for the torts of the other). Factually-supported allegations must be made against each entity individually in order to state a claim against it.

The pleading flaws here are fatal to DP Plaintiffs' claims. Although the DP Plaintiffs allege that "*certain of* the Defendant attendees agreed to stabilize prices and resist customer efforts to request price reductions," the DPP Complaint does not allege that either Soshin Japan or Soshin America was among this subset of agreeing Defendants. DPP Compl. ¶ 208(b) (emphasis added). The identity of these "certain" Defendants who are allegedly party to this illegal agreement is left to conjecture and speculation.[13] Nor does the DPP Complaint provide facts describing the scope of the alleged agreement, the products to which it would apply, or when it would become effective. The DPP Complaint fails to identify a single, specific capacitor purchased by any DP Plaintiff, the date of its purchase or even the price. Rather, the DP Plaintiffs baldly allege that their purchases were affected by alleged illegal agreements, without alleging any facts leading the reader to accept that conclusion as plausible.

Finally, the DP Plaintiffs allege that "Soshin" was party to an "overarching" agreement to fix prices on electrolytic and film capacitors. Beyond the boilerplate allegations that permeate their pleadings, the DP Plaintiffs make no allegation that either Soshin entity had any commercial involvement with electrolytic capacitors, let alone participated in a conspiracy to fix the prices of those products. Indeed, the DP Plaintiffs fail to assert *a single fact* linking either Soshin Japan or Soshin America to the electrolytic capacitor industry. The DP Plaintiffs allege

---

[12]The only allegation against Soshin America appears at Paragraph 123, asserting that Soshin America assisted its corporate parent with the sale and/or delivery of film capacitors in the United States. This sole, conclusory allegation is plainly insufficient to state a claim against Soshin America.

[13]Indeed, the DP Plaintiffs do not even allege "what" these "certain" Defendants agreed to. The DP Plaintiffs do not allege, for example, that these "certain" Defendants agreed to a particular price, a minimum price, or even a methodology for setting the price of film capacitors.

no logical reason why Soshin Japan or Soshin America would care about pricing of a product neither entity makes or sells. The DP Plaintiffs' conclusory allegations to the contrary are simply implausible.

In the absence of specific facts about a single unlawful agreement in which either Soshin entity took part, DP Plaintiffs' allegations do not plausibly suggest that either entity committed any wrongdoing at all, much less that they joined the DP Plaintiffs' alleged "overarching" scheme to "fix, raise, maintain, and/or stabilize prices" of electrolytic and film capacitors.

Dated: December 19, 2014

HUGHES HUBBARD & REED LLP

By: ___/s/ David H. Stern_____
          David H. Stern

David H. Stern (CA Bar No. 196408)
Carolin Sahimi (CA Bar No. 260312)
350 South Grand Avenue
Los Angeles, CA 90071-3442
Tel: (213) 613-2800
Fax: (213) 613-2950
David.Stern@hugheshubbard.com
Carolin.Sahimi@hugheshubbard.com

Ethan E. Litwin (*pro hac vice* to be filed)
Morgan J. Feder (*pro hac vice* to be filed)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel: (212) 837-6000
Fax: (212) 422-4726
Ethan.Litwin@hugheshubbard.com
Morgan.Feder@hugheshubbard.com

*Counsel for Defendants Soshin Electric Co., Ltd.*
*and Soshin Electronics of America, Inc.*

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-39-

## XI.   UNITED CHEMI-CON, INC.

### A.   The DPPs Fail to Allege a Cause of Action Against United Chemi-Con, Inc.

The DPP complaint's claims against United Chemi-Con, Inc. ("UCC") should be dismissed, as the complaint fails to allege that UCC "joined the conspiracy and played some role in it." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Batteries I*, 2014 U.S. Dist. LEXIS 7516, at *79 (dismissing claims because "[n]othing in either complaint suggests that the defendant subsidiaries consciously agreed to participate in, or could be charged with knowledge of, [the] alleged conspiracy").  The complaint fails to allege that UCC participated in any of the alleged conspiracy meetings or that UCC communicated with other defendants regarding the alleged conspiracy.  The complaint does not even allege UCC fixed any prices, reached any agreement with other defendants, or was even UCC aware of the alleged conspiracy.  The *only* allegations made as to UCC are that UCC transacts with United States purchasers and "assisted" its corporate parent, Nippon Chemi-Con, with the "sale and/or delivery" of products to United States purchasers.[14]  Compl. ¶¶ 45, 123.  These statements fail to survive scrutiny under *Twombly.  See, e.g., Batteries I*, 2014 U.S. Dist. LEXIS 7516 at *78-79 (finding insufficient "generic, conclusory [allegations] that defendant subsidiaries participated in the conspiracy by acting as agent for their defendant Korean or Japanese parent company").  The complaint makes no other reference to UCC: not in the section describing "Defendants' Cartel;" not in its section entitled "The Cartel's Regular Meetings;" not in the section purporting to identify "Specific Cartel Meetings;" and not in the allegations the complaint describes as relating to "Informal Meetings Among Defendants."  Compl. ¶¶ 182-91, 194-207, 208-10; 211-18.

Moreover, under *Brantley*, plaintiffs must allege, *inter alia*, intention on the part of co-conspirators to restrain trade in order to state a claim under Section 1 of the Sherman Act.  *See* Joint Brief at 4.  The plaintiffs' allegations that UCC transacted with United States purchasers

---

[14]The complaint refers to "United Chemi-Con Corporation" as "UCC," and its parent, Nippon Chemi-Con Corporation as "Nippon Chemi-Con."  Compl. ¶¶ 44-45.  Together, the complaint refers to the two entities as the "Nippon Chemi-Con Defendants."  Compl. ¶ 46.  However, the complaint alleges no conduct on the part of the "Nippon Chemi-Con Defendants."

and assisted in the sale or distribution of its parent's products to United States purchasers do not

meet this standard, as they allege nothing with respect to UCC's intent. *See* Compl. ¶¶ 45, 123.

For these reasons, the Complaint should be dismissed as to UCC.

Dated: December 19, 2014

CADWALADER WICKERSHAM AND TAFT
LLP

By: *    /s/ Joseph J. Bial            *
         Joseph J. Bial

Charles F. Rule (admitted *pro hac vice*)
Joseph J. Bial (admitted *pro hac vice*)
Daniel J. Howley (admitted *pro hac vice*)
700 Sixth Street, Northwest
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400
rick.rule@cwt.com
joseph.bial@cwt.com
daniel.howley@cwt.com

Dated: December 19, 2014

KAUFHOLD GASKIN LLP

By: *    /s/ Steven Kaufhold          *
         Steven Kaufhold

Steven Kaufhold (SBN 157195)
Ruth Hawley (SBN 253112)
388 Market Street
San Francisco, CA 94111
Telephone: (415) 445-4621
Facsimile: (415) 874-1071
skaufhold@kaufholdgaskin.com
rhawley@kaufholdgaskin.com

*Counsel for Defendant United Chemi-Con, Inc.*

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf
Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-41-

## XII. VISHAY INTERTECHNOLOGY, INC.

Unlike other defendants, the complaint alleges neither that Vishay Intertechnology, Inc. ("Vishay") independently joined the alleged conspiracy nor that it took any independent action in furtherance of the alleged conspiracy. Moreover, the Complaint does not, because it cannot, allege that Vishay has been subpoenaed by the Antitrust Division.[15] Instead, Plaintiffs attempt to lump Vishay into the alleged conspiracy based solely on its acquisition of Holy Stone Polytech Co., Ltd. ("Holy Stone Polytech") n/k/a Defendant Vishay Polytech Co., Ltd. ("Vishay Polytech").[16] However, the mere acquisition of an alleged conspiracy participant by a Vishay subsidiary (not even Vishay itself) does not transform the parent corporation of the acquiring entity into a conspiracy member.

Moreover, even this attenuated and insufficient allegation regarding Vishay's recent acquisition makes utterly no sense. Indeed, Plaintiffs' own statements undermine their theory against Vishay. Plaintiffs admit that (1) as of April 2014, "the Antitrust Division of the United States Department of Justice ("DOJ") confirmed to industry sources that the government has opened an investigation into price fixing in the capacitors industry"[17] and (2) Vishay's subsidiary did not acquire Holy Stone Polytech until June 2014. No rational actor would simply acquire a

---

[15] Vishay was also not named as a defendant in the indirect purchasers' complaint.

[16] Holy Stone Enterprise Co. Ltd. (Holystone Polytech's former ultimate corporate parent), HolyStone International and Vishay Polytech are all defendants to this lawsuit.

[17] Complaint at ¶ 80; Id. at ¶ 275; Dependable Component Supply Corp. v. Panasonic Corp., No. 14-cv-03300 (N.D. Cal. July 22, 2014) (Complaint at 174); Chip-Tech, Ltd. v. Panasonic Corp., No. 14-cv-03264 (N.D. Cal. July 18, 2014) (Complaint at ¶ 174); Schuten Electronics, Inc. v. AVX Corp., No. 14-cv-03968 (N.D. Cal. Aug. 14, 2014) (Complaint at ¶ 113); Ellis v. Panasonic Corp., No. 14-cv-03815 (N.D. Cal. Aug. 21, 2014) (Complaint at ¶ 190); Bennett v. Panasonic Corp., No. 14-cv-04403 (N.D. Cal. Sept. 30, 2014) (Complaint at ¶ 173); In Home Tech Solutions, Inc. v. Panasonic Corp., No. 14-cv-04514 (N.D. Cal. Oct. 8, 2014) (Complaint at ¶ 148); Toy-Knowlogy, Inc. v. Elna Co., Ltd., No. 14-cv-04567 (N.D. Cal. Oct. 17, 2014) (Complaint at ¶ 244); Cae Sound v. Elna Co., Ltd., No. 14-cv-04677 (N.D. Cal. Oct. 20, 2014) (Complaint at ¶ 244); Quathimatine Holdings, Inc. v. Elna Co., Ltd., No. 14-cv-04704 (N.D. Cal. Oct. 22, 2014) (Complaint at ¶ 113); Brooks v. Panasonic Corp., No. 14-cv-04742 (N.D. Cal. Oct. 24, 2014) (Complaint at ¶ 155); Wong v. Kemet Corp., No. 14-cv-04782 (N.D. Cal. Oct. 27, 2014) (Complaint at ¶ 77).

Consolidated Motions to Dismiss the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint On Behalf
Of Certain Individual Defendants
Case No. 14-cv-03264-JD

-42-

new company and join a cartel that had already become public knowledge. Without more, the claims against Vishay must be dismissed.

Plaintiffs' only allegations regarding Vishay are the following:

- In June 2014, Vishay acquired a Japanese corporation named Holy Stone Polytech which is now named Vishay Polytech and is a wholly owned subsidiary of Vishay.[18] Complaint at ¶ 80.

- Vishay Polytech -- not Vishay -- is the successor in interest to Holy Stone Polytech's assets, "as well as the liabilities arising from Holystone Polytech's violations of Sherman Act § 1 that occurred during the class period." Complaint at ¶ 81.

- *"By acquiring Holy Stone Polytech, Vishay has effectively purchased a participant in the unlawful cartel alleged herein and has thereby joined and participated in Defendants' conspiracy. through Vishay Polytech's acts taken in furtherance of the conspiracy."* Complaint at ¶ 82 (emphasis added).

The complaint alleges solely that Vishay "joined" the conspiracy by purchasing a different defendant, even though that defendant always remained a distinct foreign corporation (first as Holystone Polytech and now as Vishay Polytech). This allegation is separate and distinct from the complaint's assertion that Vishay Polytech, is the successor in interest to all of Holy Stone Polytech's assets and liabilities. Complaint at ¶ 81. Plaintiffs' theory of Vishay's liability, however, ignores corporate formalities, sets an impermissibly low standard for the necessary level of participation in a price fixing conspiracy, and simply makes no sense.

First, the complaint does not include a single averment that Vishay participated in any alleged conspiratorial meetings, fixed any prices, or even actually communicated or conspired with any other defendant. Vishay's acquisition of Holystone Polytech neither makes Vishay a participant in the alleged conspiracy nor constitutes an act taken in furtherance of the alleged conspiracy. See Complaint at ¶ 82. *See McCray v. Fid. Nat. Title Ins. Co.*, 636 F. Supp. 2d 322, 334-35 (D. Del. 2009) aff'd, 682 F.3d 229 (3d Cir. 2012) ("[w]ithout some averment that the corporate parent defendants directly entered into agreements" or pleading of an alter ego theory,

---

[18] Plaintiffs averment here is, moreover, factually incorrect. It was a Vishay subsidiary, not Vishay that acquired Holy Stone Polytech.

plaintiffs failed to state a Sherman Act conspiracy claim).  The instant complaint alleges not even a single act by Vishay that in any way supported or furthered the purported conspiracy.

Second, the only averment regarding Vishay – conspirator as a result of acquisition of another defendant – makes no sense whatsoever.  According to plaintiffs, before Vishay acquired Holy Stone Polytech the industry already knew about the Antitrust Division's investigation into a putative capacitor cartel.  Despite this fact, plaintiffs expect this Court to accept the notion that a publicly held company, which is not a conspirator, is not under investigation and has not received a grand jury subpoena, would acquire another defendant and jump right into the alleged conspiracy and into the line of fire of the Antitrust Division.  Plaintiffs' theory as to Vishay does not hold water.

Third, Vishay cannot be liable for the alleged actions of its indirect subsidiary. [19]  To state a claim against Vishay, Plaintiffs must either set forth facts establishing direct participation in the conspiracy or set forth allegations showing that it is vicariously liable for the actions of its subsidiary corporations.  *In re Cal. Title Ins. Antitrust Litig.*, No. C 08-01341 JSW, 2009 U.S. Dist. LEXIS 43323, at *26-27 (N.D. Cal. May 21, 2009).  The complaint alleges neither.

Dated:  December 19, 2014          PEPPER HAMILTON LLP


                                   By: */s/ Barbara T. Sicalides*
                                       Barbara T. Sicalides

                                   Barbara T. Sicalides (admitted *pro hac vice*)
                                   Frank H. Griffin, IV (admitted *pro hac vice*)
                                   Benjamin J. Eichel (admitted *pro hac vice*)
                                   Andrew J. Pinkston (admitted *pro hac vice*)
                                   3000 Two Logan Square
                                   18th and Arch Streets
                                   Pennsylvania, PA 19103
                                   Telephone:  215.981.4000
                                   Fax:  215.981.4750
                                   Email: sicalidb@pepperlaw.com

---

[19] "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."  *In re Cal. Title Ins. Antitrust Litig.*, No. C 08-01341 JSW, 2009 U.S. Dist. LEXIS 43323, at *26 (N.D. Cal. May 21, 2009) quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

Email:  griffinf@pepperlaw.com
Email:  eichelb@pepperlaw.com
Email:  pinkstoa@pepperlaw.com

*Attorneys for Defendant*
*Vishay Intertechnology Inc.*

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-CV-03264-JD

-45-

Pursuant to Civil Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:     December 19, 2014          By:   _/s/ Heather S. Tewksbury_
                                              Heather S. Tewksbury

CONSOLIDATED MOTIONS TO DISMISS THE DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT ON BEHALF
OF CERTAIN INDIVIDUAL DEFENDANTS
CASE NO. 14-cv-03264-JD

-46-