Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

IN RE CAPACITORS ANTITRUST          )
LITIGATION                          )
                                    )
                                    )
                                    )          NO. C-14-3264
                                    )
                                    )
                                    )
                                    )
_____)

SAN FRANCISCO, CALIFORNIA
WEDNESDAY, JANUARY 14, 2015

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
RECORDING (FTR TIME: 1:33 P.M.-1:54 P.M.)**

**APPEARANCES:**

For Plaintiff:          Berger & Montague, P.C.
                        1622 Locust Street
                        Philadelphia, PA 19103
                   BY:  **ERIC CRAMER, ATTORNEY AT LAW**

For Plaintiff:          Pearson Simon & Warshaw, LLP
                        44 Montgomery Street, Suite 2450
                        San Francisco, CA 94104
                   BY:  **BRUCE SIMON, ATTORNEY AT LAW**

For Plaintiff:          Gold Bennett Cera & Sidener LLP
                        595 Market Street, Suite 2300
                        San Francisco, CA 94105-2835
                   BY:  **SOLOMON CERA, ATTORNEY AT LAW**

For Plaintiff:          Joseph Saveri Law Firm, Inc.
                        505 Montgomery Street, Suite 625
                        San Francisco, CA 94111
                   BY:  **JOSEPH SAVERI, ATTORNEY AT LAW**

**APPEARANCES:**

| | | |
|---|---|---|
| For Plaintiff: | | Lieff Cabraser Heimann & Bernstein LLP |
| | | 275 Battery Street, 29th Floor |
| | | San Francisco, CA 94111-3339 |
| | BY: | **ERIC FASTIFF, ATTORNEY AT LAW** |

For Plaintiff:            Lieff Cabraser Heimann & Bernstein LLP
                          275 Battery Street, 29th Floor
                          San Francisco, CA 94111-3339
                  BY:     **STEVEN WILLIAMS, ATTORNEY AT LAW**

For Defendant:            Winston & Strawn LLP
                          101 California Street
                          San Francisco, CA 94111
                  BY:     **IAN PAPENDICK, ATTORNEY AT LAW**

For Defendant:            Winston & Strawn LLP
                          200 Park Avenue
                          New York, NY 10166
                  BY:     **MOLLY DONOVAN, ATTORNEY AT LAW**

For Defendant:            Gibson, Dunn & Crutcher LLP
                          555 Mission Street, Suite 3000
                          San Francisco, CA 94105-2933
                  BY:     **GEORGE NICOUD, ATTORNEY AT LAW**

For Defendant:            Pillsbury Winthrop Shaw Pittman LLP
                          Post Office Box 2824
                          San Francisco, CA 94126
                  BY:     **JACOB SORENSON, ATTORNEY AT LAW**
                          **ROXANE POLIDORA, ATTORNEY AT LAW**

For Defendant:            K&L Gates LLP
                          70 West Madison Street, Suite 3100
                          Chicago, IL 60602
                  BY:     **MICHAEL MARTINEZ, ATTORNEY AT LAW**

For Defendant:            Mintz Levin
                          44 Montgomery, 36th Floor
                          San Francisco, CA 94104
                  BY:     **EVAN NADEL, ATTORNEY AT LAW**

For Defendant:            McKenna Long and Aldridge LLP
                          1900 K Street, NW
                          Washington, DC 20006
                  BY:     **STEPHEN CHIPPENDALE, ATTORNEY AT LAW**

**APPEARANCES:**

```
For Defendant:          Hunton and Williams LLP
                        2200 Pennsylvania Avenue, NW
                        Washington, DC 20037
                BY:     DJORDJE PETKOSKI, ATTORNEY AT LAW


For Defendant:          Wilmer Cutler Pickering Hale and Dorr
                        950 Page Mill Road
                        Palo Alto, CA 94304
                BY:     HEATHER TEWKSBURY, ATTORNEY AT LAW


For Defendant:          Dentons US LLP
                        525 Market Steet, 26th Floor
                        San Francisco, CA 94105-2708
                BY:     BONNIE LAU, ATTORNEY AT LAW


For Defendant:          Pepper Hamilton
                        3000 Two Logan Square
                        18th and Arch Streets
                        Philadelphia, Pa 19103
                BY:     FRANK GRIFFIN, ATTORNEY AT LAW


For Defendant:          O'Melveny & Myers
                        Two Embarcadero Center, 28th Floor
                        San Francisco, CA 94111-3823
                BY:     CHRISTINA BROWN, ATTORNEY AT LAW


For Defendant:          Cadwalader Wickersham and Taft LLP
                        700 6th St, NW
                        Washington, DC 20001
                BY:     CHARLES RULE, ATTORNEY AT LAW
                        JOSEPH BIEAL, ATTORNEY AT LAW


For Defendant:          Morgan, Lewis Bockius LLP
                        1111 Pennsylvania Avenue, N.W.
                        Washington, DC 20004
                BY:     SCOTT STEMPEL, ATTORNEY AT LAW


For Defendant:          Hughes Hubbard & Reed LLP
                        One Battery Park Plaza
                        New York, NY 10004
                BY:     ETHAN LITWIN, ATTORNEY AT LAW
                        MORGAN FEDER, ATTORNEY AT LAW


For Defendant:          McKenna Long and Aldridge LLP
                        1900 K Street, NW
                        Washington, DC 20006
                BY:     GASPARE BONO, ATTORNEY AT LAW
                        ANDREW AZARMI, ATTORNEY AT LAW
```

**APPEARANCES:**

For Defendant:          Baker and McKenzie LLP
                        452 Fifth Avenue
                        New York, NY 10018
                   BY:  **DARRELL PRESCOTT, ATTORNEY AT LAW**

For Defendant:          Jones Day
                        555 West Fifth Street, Suite 4600
                        Los Angeles, CA 90013
                   BY:  **ERIC ENSON, ATTORNEY AT LAW**

For Defendant:          Morrison and Foerster LLP
                        2000 Pennsylvania Ave.NW, Suite 6000
                        Washington, DC 20006
                   BY:  **JEFFREY JAECKEL, ATTORNEY AT LAW**

For Defendant:          United States Department of Justice
                        Antitrust Division
                        450 Golden Gate Avenue
                        Room 10-0101, Box 36046
                        San Francisco, CA 94102
                   BY:  **JACKILIN LEM, ATTORNEY AT LAW**

Transcribed:            Carrie E. McKee-Parks
                        Transcriber 510-637-9897
                        McKee-Parks65@att.net

```
 1    Wednesday, January 14, 2015                        1:33 p.m.

 2                        P R O C E E D I N G S

 3                             ---oOo---

 4           THE CLERK:  Calling civil 143264; In Re Capacitors

 5    Antitrust Litigation.

 6       Counsel, please come forward and state your appearances for

 7    the record.

 8           MR. WILLIAMS:  Good afternoon, your Honor.  My name

 9    is Steve Williams for the Indirect Plaintiffs.

10           THE COURT:  Mr. Williams.

11           MR. SAVERI:  Good afternoon, your Honor.  Joseph

12    Saveri on behalf of the Direct Plaintiffs.

13           THE COURT:  Mr. Saveri.

14           MR. NICOUD:  Good afternoon, your Honor.  George

15    Nicoud on behalf of NEC Tokin and NEC Tokin America.

16       And on -- at least on a number of issues today, I've been

17    asked by some other defendants to speak on their behalf as

18    well.

19           THE COURT:  Okay.

20           MS. POLIDORA:  Good afternoon, your Honor.  Roxane

21    Polidora of the Pillsbury Firm on behalf of the KEMET

22    defendants.

23           THE CLERK:  You're not being picked up at all.  Move

24    the microphone closer to you.

25           MS. POLIDORA:  How's that?  Roxane Polidora of the
```

1    Pillsbury Firm on behalf of the KEMET defendants.  And I will

2    also be speaking today on behalf of five other defendants.

3                 THE COURT:  All right.

4                 MR. RULE:  Good afternoon, your Honor.  Richard Rule,

5    Cadwalader, Wickersham, and Taft, on behalf of United Chemi-con

6    and Nippon Chemi-con.

7                 MR. AZARMI:  Good afternoon, your Honor.  Andrew

8    Azarmi of McKenna Long appearing on behalf of the Shinyei

9    defendants; that's Shinyei Technology Company, Shinyei

10   Capacitor Company, Shinyei she Kaisha, and Shinyei Corporation

11   of America.

12       And also with me today is Steve Chippendale and Gaspare

13   Bono, who applied for pro hac applications.  Orders are

14   pending.  Thank you.

15                THE COURT:  That it?  Okay.

16       Let me start with who's here for Nippon Chemi-con and TDK?

17   Okay.  Mr. Saveri, is this your issue?  All right.  Okay.

18                MR. SAVERI:  (Inaudible.)

19                THE COURT:  The 12(b)(2) issue?

20                MR. SAVERI:  Yeah.

21                THE COURT:  Yeah.  All right.  This is fine with me.

22   So I'll order that schedule that you all have agreed to.  I am

23   going to allow discovery.  That's perfectly appropriate at this

24   stage.  It's limited to 12(b)(2) issues; okay?

25       I'm going to trust you to keep it focused, Mr. Saveri; and

```
1    if it's not, I'm sure I will hear about the defendants.

2         So this will all be in the minute order, but let me give

3    you the dates.  You ought to serve that discovery by the 16th;

4    1-16-15.  You've already served it, didn't you?  It's already

5    been served?  Didn't you serve something on 12(b)(2) for these

6    defendants?

7              MR. WILLIAMS:  Your Honor, Steve Williams.  We're

8    part of this for Nippon Chemi-con.  We sent it to them not as

9    service because we first wanted to ensure that we had --

10             THE COURT:  Okay.

11             MR. WILLIAMS:  -- permissions.

12             THE COURT:  All right.  They have full sets for both

13   Directs and Indirects?

14             MR. WILLIAMS:  As to Nippon Chemi-con.

15             THE COURT:  Okay.  That will be deemed served today

16   then.

17        So your response ought to be 30 days from today; finish

18   your discovery by 3-17-15.  Let's see.  Plaintiffs, you ought

19   to file your oppositions by 4-16-15.  Replies will be 5-1-15

20   and I'll hear this on 5-20-15.

21        Now, as we go through the rest of the afternoon, which

22   won't be that much longer, I'm going the order other discovery.

23   These defendants are only for 12(b)(2) discovery; okay?

24   They'll be exempt from the other discovery until I have

25   processed that motion; all right?
```

```
1                    UNIDENTIFIED SPEAKER:  Yes.

2                    THE COURT:  Anything else on that?

3                        (Whereupon the speaker was inaudible.)

4                    THE COURT:  Good.  All right.  Thank you.

5           All right, who's from DOJ?  Is there any DOJ person here?

6      Yes, come up.

7                    MS. LEM:  Jacki Lem for the United States.  Good

8      afternoon, your Honor.

9                    THE COURT:  How are you?

10                   MS. LEM:  Good.  Thank you.  And you?

11                   THE COURT:  All right.  So you're going to tell me in

12     a couple weeks we're all set to go in discovery?

13                   MS. LEM:  Yes, your Honor.  The status of that is I

14     think our position is still that we are requesting the stay

15     that is currently in place until April 15th.

16                   THE COURT:  April 15th?

17                   MS. LEM:  Yes.  April 15th.  To the extent that there

18     are any changes in our position between now and then, we will

19     let your Honor know.  But as of now, there are no changes in

20     our request for that continued stay.

21                   THE COURT:  Okay.

22                   MS. LEM:  We have discussed with the plaintiffs --

23                   THE COURT:  So what happens on the 15th?  You're

24     going to tell me -- okay.

25                   MS. LEM:  Excuse me?
```

```
 1              THE COURT:  What happens on the 15th of April?

 2              MS. LEM::  I think we will update the Court in an

 3    under-seal filing on the status of our investigation.

 4              THE COURT:  All right.

 5              MS. LEM:  And we will either request an extension of

 6    that stay or maybe perhaps a different kind of stay or we might

 7    not request anything at all.  But it remains to be seen what

 8    exactly we will --

 9              THE COURT:  All right.

10              MS. LEM:  -- ask for depending on how our

11    investigation proceeds.

12              THE COURT:  So the plaintiffs tell me that you all

13    have agreed that if it's approved, that less than eight --

14              MS. LEM:  That's correct, your Honor.

15              THE COURT:  -- areas of discovery; is that right?

16              MS. LEM:  That's correct, your Honor.

17              THE COURT:  Okay.  So that would be discovery RFP's

18    (phonetic) and interrogatories on the topics of organizational

19    structure; identification of products; pricing; sales

20    transactional data; FTAIA issues; personal jurisdiction; and

21    discovery from third parties; right?  Okay.  And Government is

22    okay with that?

23              MS. LEM:  Yes, we have discussed that.

24              THE COURT:  All right.  We're going to make it

25    happen; okay?  So you all get that going.
```

1        Also, I want everyone to start working out the initial

2    disclosure and the ESI issues.  I don't want any delays on

3    that; all right?

4             UNIDENTIFIED SPEAKER:  (Inaudible.)

5             THE COURT:  You have a proposed order or are you

6    going to use my -- our Court's mono-order?  You need to come up

7    so we can --

8             MR. SAVERI:  Oh.  So --

9             THE COURT:  When somebody mandamus' me, they need to

10   be able to hear you.

11            MR. SAVERI:  So --

12            THE COURT:  Are we going to --

13            THE CLERK:  State your name.

14            MR. SAVERI:  Joseph Saveri.

15     The Petkoski initial disclosures, we actually -- for the

16   direct purchaser plans, we actually did our initial disclosures

17   before.  It was early in the case.

18           THE COURT:  All right.

19           MR. SAVERI:  That's easy.

20           THE COURT:  Have you gotten them from defendants?

21           MR. SAVERI:  No.

22           THE COURT:  All right.  What about ESI?  Are you

23   going to use the Court's mono-order or are you going to do

24   something else?

25           MR. SAVERI:  We're strong proponents of that.  We

1     advocated that in our run up to the initial CMC.  We'd like to

2     really get into that process and continue it.

3            THE COURT:  All right.

4            MR. SAVERI:  We've asked and we'd like to engage in

5     that and get it going as -- and complete it as soon as

6     possible, your Honor.

7            THE COURT:  All right.  And you all want to use the

8     same; right?  I want -- on the plaintiff's side, I want

9     identical ESI; everything else that we do.

10           MR. WILLIAMS:  Steve Williams.  Yes, that's correct.

11           THE COURT:  Okay.  Great.  Okay.  Let's get that

12     underway.

13        Now, FTAIA scheduling.  I am going to keep that separate so

14     we will skip to my original guideline of having those addressed

15     in the third quarter of this year.  I will set these dates --

16     all these things are doing to be in the minute order so you

17     don't have to worry about writing them down so just so you

18     know.

19        Summary judgment motions on FTAIA elements or defenses will

20     be filed -- are due July 8th, 2015; 7-8-2015.  Oppositions will

21     be due 8-5-15.  Replies due 8-12-15.  And I will hear those

22     issues on 8-26-15 at 10:00 a.m.

23        Yeah.  Okay.  All right.  Anything else I can help you

24     with?

25           UNIDENTIFIED SPEAKER:  (Inaudible.)

1          UNIDENTIFIED SPEAKER:  (Inaudible.)

2          MS. POLIDORA:  Your Honor, Roxane Polidora on behalf

3     of KEMET.

4        In the CMC statement, KEMET and five other defendants took

5     the position that the stay should remain in place as to this

6     group of defendants because these defendants are only named in

7     the Direct case.  They're not named in the Indirect case.  And

8     we believe that we have strong *Twombly* motions.

9          THE COURT:  Everybody believes they have strong

10    *Twombly* motions.  I mean, is there anybody out here who does

11    not believe they have a strong *Twombly* motion?  Raise your

12    hand.  No, no, no.  You don't have a *Twombly* motion.  You have

13    the *Twombly* opposition.

14         MS. POLIDORA:  Right.  They stated they would a file

15    a *Twombly* motion.

16         THE COURT:  I'm not going to do that.  You're all on

17    the same bus.  Okay.  Everyone is going to move.  It's a tour

18    bus; you're all on the bus; you're all going to move at the

19    same time so I'm not carving out those defendants.

20         MS. POLIDORA:  Okay.

21         MR. SAVERI:  (Inaudible.)

22         THE COURT:  You got to come up, Mr. Saveri.  Stand by

23    the mic.

24         MR. SAVERI:  Uh, here's the question.  We are -- we

25    have our opposition motions due at the end of the week to the

1    12(b)(2).

2              THE COURT:  Uh-huh.

3              MR. SAVERI:  The defendants have filed separate

4    briefs --

5              THE COURT:  Yes.

6              MR. SAVERI:  -- and we're preparing.

7              THE COURT:  You're talking about the supplemental

8    ones?

9              MR. SAVERI:  Yeah.  So there's kind of two pieces.

10   There's a joint brief and then there's a kind of compendium of

11   individual defendant briefs.

12        We would like to present our opposition in a way that is

13   most easy for you.  Our current thinking is to file a -- on

14   behalf of the Direct persons or plaintiffs a single brief that

15   addresses both the joint arguments as well as the individual

16   ones.

17        We think that's a better way to do it because it will

18   eliminate a lot of the duplication and the overlap between the

19   separate briefs.

20        In order to do that, we think we can probably do it --

21             THE COURT:  Well, let me just interrupt.  But the

22   separate -- I gave people, you know, a little extra five page

23   if they had unique issues related to the pleadings.

24        So how do you -- how are you going to do that in a combined

25   format?  I thought each -- if they did it the right way and I

1    don't know if they did; but if they did it the right way, each

2    person should have raised -- each defendant should have raised

3    a sui generis issue that you can't sort of lump together.

4            MR. SAVERI:  And you -- I think you'll see when you

5    see the papers that with respect to the -- the sui generis part

6    of this, there's a -- there's a fair amount of overlap and

7    repetition amongst the people who say this is my own particular

8    issue.

9            THE COURT:  Uh-huh.

10           MR. SAVERI:  And so if we -- if we have an argument

11   that -- that essentially says, you know, we -- we prevail on

12   these sui generis arguments for the same basic reason.

13           THE COURT:  That's fine.

14           MR. SAVERI:  And so --

15           THE COURT:  Yes.

16           MR. SAVERI:  -- I'd like to say it once to you, your

17   Honor.

18           THE COURT:  Yes.

19           MR. SAVERI:  And do -- to me, that makes sense, but I

20   didn't want to presume that.

21           THE COURT:  That's okay.  That's -- let's do it that

22   way.

23           MR. SAVERI:  And so would that --

24           THE COURT:  And then if you have separate things, I

25   would like it to be separate though; okay?

```
1        So if you have something that covers -- this is for the
2    IPP's, too.  If you have something that covers -- because they
3    didn't -- they didn't follow the guidelines as close as they
4    should have and they raised generic issues, you can address it
5    generically; meaning, across the board, but make -- if there's
6    something unique; if some defendants said, you know, I've never
7    done anything and here's whatever I need to do to say that, you
8    should address that as just that -- as a side thing; because
9    when I go through it, I just want to have them side by side.
10            MR. SAVERI:  Oh --
11            THE COURT:  Okay.
12            MR. SAVERI:  And we'll try to do that.
13        But what that probably means is the kind of joint and
14    overlapping brief will be something on the order of 40 or 50
15    pages because -- just to get the coverage.
16            THE COURT:  How much did I give the defendants?
17            MR. SAVERI:  I think 23.  You put it altogether.
18    It's something, like, 75 or 80 pages.  Their briefs turned out
19    to be -- if you count them all.
20            THE COURT:  No, not as group.  But how much --
21            UNIDENTIFIED SPEAKER:  (Inaudible.) -- joint brief --
22    our case 35.
23            THE COURT:  35.  Okay.
24            UNIDENTIFIED SPEAKER:  (Inaudible.) -- one
25    consolidated brief with two or three page sections per
```

```
 1        defendant because only for us -- inaudible -- is longer for us.

 2                THE COURT:  Right.

 3                UNIDENTIFIED SPEAKER:  About 25 pages.

 4                THE COURT:  So what do you want, Mr. Saveri.  You

 5        want 40 total?

 6                MR. SAVERI:  I want 50 total.  Put it altogether and

 7        to me, it -- looking at it --

 8                THE COURT:  50 for everything?

 9                MR. SAVERI:  Yes.

10                THE COURT:  Okay.  I'm going to encourage you to come

11        in below that.  Up to 50 in an emergency; okay?

12                MR. SAVERI:  I hear you, your Honor.

13                THE COURT:  All right.

14                MR. SAVERI:  Set goal.

15                THE COURT:  That's for everything.  No side briefs;

16        nothing.  That's it.  One -- okay.

17                MR. SAVERI:  All in.

18                THE COURT:  All in.  Yeah.  Mr. Litwin (phonetic),

19        you're good?

20                UNIDENTIFIED SPEAKER:  Good.  Thank you.

21                THE COURT:  You're good.  All right.  Good.  Okay.

22           All right.  Anything else?

23                MR. NICOUD:  Your Honor, George Nicoud for the NEC

24        Tokin defendants and I was going to be speaking for a group of

25        defendants that were willing to get going on discovery, which
```

1    you've already addressed.

2        I just want to ensure that to the extent any defendant has

3    a particular issue with burden because of the way their client

4    has organized or anything like that, we still have the

5    opportunity to object and --

6            THE COURT:  Of course.

7               (Inaudible due to simultaneous colloquy.)

8            MR. NICOUD:  -- and plaintiffs -- we disagree.

9            THE COURT:  I'm not -- I just want to get it going.

10   I'm not overruling preemptively objections.  No, you have the

11   full panoply of Rule 26 to revel in; okay?  You can do whatever

12   you want.

13       But you will see me if there's a dispute so keep that in

14   mind.  I keep all my own discovery.

15           MR. NICOUD:  We understand, your Honor.

16           THE COURT:  Okay.

17           MR. NICOUD:  Thank you.

18           THE COURT:  And you need to follow that -- sounds

19   like you're in anticipating objections.  You need to follow my

20   discovery standing order on how to raise those if you are

21   unable to work it out; okay?

22           MR, NICOUD:  Understood.

23           THE COURT:  All right.  Yeah?

24           MS. POLIDORA:  -- Polidora again, your Honor.

25           THE COURT:  Yes?

1          MS. POLIDORA:  I just wanted to raise to your

2     attention that before the hearing, I did discuss with

3     plaintiffs' counsel this prospect of the defendants that are

4     only in the Direct case; many of them are American companies

5     with no connections to Japan; that's something In Re Capacitors

6     (phonetic).

7          And plaintiff's counsel seem to be willing if -- as the

8     Court has ordered today, the discovery begin that they can

9     phase these five defendants -- or six defendants who are not in

10    the Indirect case because they're going to have a lot to do

11    with the defendants that are in both cases.

12         So given that the plaintiffs seems to be willing to proceed

13    with this approach, I'd request that our clients not be forced

14    to incur the expense and costs associated with these discovery

15    activities when we believe we're going to be out of the case in

16    two months.

17              MR. SAVERI:  Your Honor?

18              THE CLERK:  Your name?

19              MR. SAVERI:  Joseph Saveri.  When -- it's important

20    for us to get this train moving.  And the proposal was made to

21    have discovery begin with some subset of the defendants

22    generally.  We have no content to that.  We have no firm

23    agreement.

24         I indicated that I'm willing to entertain that and

25    Ms. Polidora describes that conversation.

1      Frankly, as we said in our original papers, we want this

2  whole thing to get going and we want to -- we want to start it

3  once.

4      As an accommodation, if there was one group that was

5  willing to actually do something quickly so we can get started,

6  I was amenable to that.

7      Frankly, our preference has been all the way along to get

8  everybody going at once because we think that's the most

9  efficient way to move the schedule.

10      Having said that, I'm always willing to try to accommodate

11  the defendants.

12          THE COURT:  Well, you all work it out; okay?  You can

13  do whatever you want.  I'm not extending any dates.  And don't

14  come -- you can't come back here and say oh, he gave somebody a

15  break and now I'm three months behind on discovery.  That's not

16  going to happen.  It's all on you.

17      So if you feel the plaintiffs can work it out and the

18  defendants can work it out; that's fine.  You can privately

19  order whatever you want as long as it does not affect the

20  deadlines.

21          MR. SAVERI:  Okay.

22          THE COURT:  I'm not going to hear in a year, you

23  know, we gave somebody extra time and now we're behind.  That's

24  going to be your problem, not mine.

25          MR. SAVERI:  I hear you loud and clear, your Honor.

1          THE COURT:  All right.

2          MS. POLIDORA:  Thank you, your Honor.

3          THE COURT:  Okay.  Yes?

4          MR. MARTINEZ:  Yes.  Michael Martinez, counsel for

5     Nichicon Corporation and Nichicon America Corporation.

6       I just wanted to make sure that you understood, your Honor,

7     that there's one defendant -- or at least one -- that is in a

8     unique circumstances of the defendants we discussed today; and

9     is, FPCAP Electronic Suzhou a company based in the People's --

10         THE COURT:  Who?

11         MR. MARTINEZ:  FPCAP Electronics Shouvou,

12    S-h-o-u-v-o-u, (phonetic).

13         THE COURT:  All right.

14         MR. MARTINEZ:  It's based on the People's Republic of

15    China.  It was named as a defendant solely by the Direct

16    Purchaser Plaintiffs in their consolidated complaint, but it

17    has not yet been served.

18      And so I raise the issue just to preserve and to clarify

19    that we will have the opportunity to file motions to contest

20    personal jurisdiction and under Rule 12(b)(2); and, if it is

21    indeed ever served.

22         THE COURT:  What's the service problem?  Who -- is it

23    Mr. Saveri?

24         MR. SAVERI:  Yes, your Honor.  There are certain

25    defendants that we've identified in the case management

1    conference statement who are -- who are standing --

2         THE COURT:  That's a -- that's footnote two; right?

3    The five defendants?

4         MR. SAVERI:  And those defendants are apparently

5    standing under their rights under the Hague Convention to

6    service pursuant to the Hague.

7         THE COURT:  Can't I order service and counsel under

8    4(g)?

9         MR. SAVERI:  You can, your Honor.  We -- we've asked

10   the counsel for of those defendants to waive service.

11        THE COURT:  I'm not bound by the Hague -- I can order

12   service under 49g).  So don't make this a problem.  You're

13   going to get served so --

14        MR. SAVERI:  I'm sorry, your Honor?

15        THE COURT:  You're going to get served so let's not

16   get hung up on this; all right?

17        MR. SAVERI:  Just to clarify; we have never received

18   a request to waive service and we would have communicated with

19   the plaintiffs if that was indeed the case.  We have not.

20        THE COURT:  All right.  You two work it out, but you

21   let me know.  I guess, Mr. Saveri, because it's your

22   obligation; you let me know and I will see what I need to do

23   after that.  I'm not going to get hung up on service issues;

24   okay?

25        MR. SAVERI:  Understood, your Honor.  We just want to

1        make clear we had not been served; and thus, had not had an

2        opportunity to file motions --

3                THE COURT:  I get it.

4                MR. SAVERI:  -- to contest --

5                THE COURT:  But once that happens, I'll -- you know,

6        you're going to get slotted in so just count on that; okay?

7        But I don't want -- I don't want to play around with service

8        issues because if I have to -- Rule 4(g) has been amply

9        established in this District and this Circuit as allowing me to

10       compel service through counsel.

11               MR. SAVERI:  Well, we affirmatively raise it today so

12       we could get this clarity, your Honor.

13               THE COURT:  Okay.  Why don't you keep -- on the way

14       out, why don't you just work it out; okay?

15               MR. SAVERI:  Yes.

16               THE COURT:  How about the other -- how about the

17       other four?  What's going on with those?

18               UNIDENTIFIED SPEAKER:  Your Honor, well -- we -- we

19       are proceeding with Hague service; again, with respect to those

20       other defendants.  We -- I don't -- I believe we specifically

21       asked everybody.  And when we didn't get an affirmative answer,

22       we went -- we initiated the Hague process.  And so that's under

23       way.  It takes a little time.  They're essentially going to get

24       served and that will be accomplished.

25               THE COURT:  Do they have counsel that you know of?

1          UNIDENTIFIED SPEAKER:  I believe so.  The only one

2     that I don't believe has America counsel is, I believe, Taiyo

3     Yuden, which was the entity that filed the motion to dismiss,

4     which the Court struck because it wasn't represented by

5     counsel.

6          THE COURT:  Okay.  All right.  Just -- I would try to

7     get this resolved in the next week.  I don't want -- I can't

8     piecemeal the motion schedule so let's -- put a lethargy

9     (phonetic) on it; okay?

10         UNIDENTIFIED SPEAKER:  Okay.

11         THE COURT:  Good.

12         UNIDENTIFIED SPEAKER:  Okay.  One last thing, your

13    Honor, just to clarify.  We will obviously will work with

14    Mr. Saveri to work on the waiver of service; but to make sure

15    my understanding is correct, the FPCAP will not be subject to

16    any discovery requirements until it's served in --

17         THE COURT:  Not in the case.  We can't do anything

18    right now --

19         UNIDENTIFIED SPEAKER:  Correct.

20         THE COURT:  -- until you're served.

21         UNIDENTIFIED SPEAKER:  Thank you.

22         THE COURT:  However, once you get served, you're not

23    going to get, you know, extension after extension.  You can --

24    we're going to have to get you in quickly because I want to

25    keep this as a unified group.

1          UNIDENTIFIED SPEAKER:  We understand.

2          THE COURT:  Okay.  Good.  All right.

3          UNIDENTIFIED SPEAKER:  Thank you, your Honor

4    (Inaudible.)

5          THE COURT:  I'm not going to say anything else this

6    time.  I'm going to wait until somebody starts up.  Is there

7    anything else?  Is that it?

8          MR. SAVERI:  Not for us.

9          THE COURT:  Okay.  Great.  Thanks for coming in.

10          (Proceedings concluded at 11:54 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **CERTIFICATE OF REPORTER**

     I certify that the foregoing is a true and correct transcript, to the best of my ability, of the pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

     I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____DATE 1-29-15

        Carrie McKee-Parks         Date
       McKee-Parks65@att.net
         510-637-9897