# EXHIBIT B



WINSTON
& STRAWN
LLP
North America  Europe  Asia

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

JEFFREY L. KESSLER
Partner
212-294-4698

March 31, 2015

<u>**VIA EMAIL AND FEDEX**</u>

Steven N. Williams
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road Suite 200
Burlingame, CA 94010

Joseph R. Saveri
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, CA 94111

*IN RE CAPACITORS ANTITRUST LITIGATION*, Case No. 3:14-cv-03264-JD

Dear Counsel:

As a follow-up to our telephonic meet and confer on March 24, 2015, and as you requested, please indicate on which of the following categories of commerce, if any, plaintiffs intend to base any claims in this case and which they plan to contend are not excluded from the case by the FTAIA. If you contend that any of the following categories is excluded by the FTAIA, but is otherwise allowed under any state's law you are asserting, please indicate that as well. We would like to discuss these subjects with you at our next meet and confer on April 6.

A. Each of the following categories of commerce involves a capacitor that was manufactured by a Defendant[1] outside the United States:

1. Defendant sale of a capacitor for which the price is paid and negotiated by any third-party entity located outside the United States (including foreign affiliates of U.S. companies), is delivered outside the United States to that entity and never enters the United States as part of a larger product or otherwise. Does your answer change if the price was negotiated, but not paid, by an entity in the United States?

2. Defendant sale of a capacitor for which the price is paid and negotiated by any third-party entity located outside the United States (including foreign affiliates of U.S. companies), is delivered outside the United States, and is later imported by a non-Defendant (non-conspirator) to the United States as a standalone component. Does

---

[1] For purposes of this letter only, "Defendant" means a party found to be a member of the alleged conspiracy at the time of the sale at issue.

Steven N. Williams
Joseph R. Saveri
March 31, 2015

    your answer change if the price was negotiated, but not paid, by an entity in the United States?

3. Defendant sale of a capacitor for which the price is paid and negotiated by any third-party entity located outside the United States (including foreign affiliates of U.S. companies), is delivered outside the United States, and is later imported by a non-Defendant (non-conspirator) to the United States as part of a larger product. Does your answer change if the price was negotiated, but not paid, by an entity in the United States?

4. Defendant sale of a capacitor for which the price is paid by any third-party entity located in the United States, but is delivered to a location outside the United States and never enters the United States as part of a larger product or otherwise.

5. Defendant sale of capacitor for which the price is paid by any third-party entity located in the United States, is delivered to a location outside the United States, and is later imported by a non-Defendant (non-conspirator) to the United States as a standalone component.

6. Defendant sale of capacitor for which the price is paid by any third-party entity located in the United States, is delivered to a location outside the United States, and is later imported by a non-Defendant (non-conspirator) to the United States as part of a larger product.

7. Defendant sale of a capacitor to an affiliate of a Defendant located outside of the United States, which then incorporates the capacitor into a larger product and imports the larger product into the United States for resale to an entity in the United States. Does your answer change if the affiliate is "owned and controlled" by a Defendant?

8. Defendant sale of a capacitor to an affiliate of a Defendant located outside of the United States, which then sells the capacitor to a third party outside the United States, which then sells and delivers the capacitor as a standalone component into the United States. Does your answer change if the affiliate is "owned and controlled" by a Defendant?

9. Defendant sale of a capacitor to an affiliate of a Defendant located outside of the United States, which then sells the capacitor to a third party outside the United States, which then sells and delivers the capacitor as part of a larger product into the United States. Does your answer change if the affiliate is "owned and controlled" by a Defendant?

10. Defendant sale of a capacitor to any third-party located outside the United States, which in turn sells to a distributor, which in turn sells the capacitor as a standalone component to a purchaser in the United States.

Steven N. Williams
Joseph R. Saveri
March 31, 2015

    11. Foreign Defendant sale of a capacitor to an owned and controlled affiliate in the United States, which in turn sells and delivers the capacitor to a third-party outside of the United States, which then sells the capacitor as a standalone component to a purchaser in the United States.

    12. Foreign Defendant sale of a capacitor to an owned and controlled affiliate in the United States, which in turn sells and delivers the capacitor to a third-party outside of the United States, which then incorporates the capacitor into a larger product that is sold in the United States.

    13. Foreign Defendant sale of a capacitor to an owned and controlled affiliate in the United States, which in turn sells and delivers the capacitor to a third-party outside of the United States, which then sells the capacitor to a purchaser outside the United States, which then incorporates the capacitor into a larger product that is sold in the United States.

B. Each of the following categories of commerce involves a capacitor that was manufactured by a Defendant within the United States:

    1. Defendant sale of a capacitor for which the price is paid and negotiated by any third-party entity located outside the United States (including foreign affiliates of U.S. companies), is delivered outside the United States and never re-enters the United States as part of a larger product or otherwise.

    2. Defendant sale of a capacitor for which the price is paid and negotiated by any third-party entity located outside the United States (including foreign affiliates of U.S. companies), is delivered outside the United States, and is later imported by a non-Defendant (non-conspirator) to the United States as a standalone component.

    3. Defendant sale of a capacitor for which the price is paid and negotiated by any third-party entity located outside the United States (including foreign affiliates of U.S. companies), is delivered outside the United States, and is later imported by a non-Defendant (non-conspirator) to the United States as part of a larger product.

    4. Defendant sale of capacitor for which the price is paid and negotiated by any third-party entity located in the United States, is delivered to a location outside the United States, and is later imported by a non-Defendant (non-conspirator) to the United States as a standalone component.

    5. Defendant sale of capacitor for which the price is paid and negotiated by any third-party entity located in the United States, is delivered to a location outside the United States, and is later imported by a non-Defendant (non-conspirator) to the United States as part of a larger product.

Steven N. Williams<br>
Joseph R. Saveri<br>
March 31, 2015

6. Defendant sale of a capacitor to an affiliate of a Defendant located outside of the United States, which then incorporates the capacitor into a larger product and imports the larger product into the United States.

7. Defendant sale of a capacitor to any third-party located outside the United States, which in turn sells to a distributor, which in turn sells to a purchaser in the United States as a standalone component.

C. For Defendants' part, we presently do not intend to argue that the following categories of commerce are excluded by the FTAIA:

1. Regardless of the place of manufacture, Defendant sale of a capacitor for which the price is paid by a third-party entity located in the United States, and which a Defendant delivers to a third-party entity located in United States.

2. The importation by a Defendant to the United States of Defendant's capacitor or a capacitor purchased from a co-conspirator that is then resold in the United States to a customer located in the United States.

As agreed, the above categories are not necessarily exhaustive and we expressly reserve all rights, including the right to raise additional categories of commerce as part of our ongoing discussions.

In addition, as we also discussed, we request that plaintiffs propose a schedule for the disclosure and deposition of expert witnesses that may be used in support of or in opposition to the FTAIA summary judgment motions that may be filed in accordance with the schedule set by the Court. This schedule should provide for disclosures sufficiently in advance of the filing dates for summary judgment motions so that there will be no need to seek an extension of that motion schedule. If plaintiffs want to propose a disclosure schedule regarding any percipient witnesses that may be used to file declarations in connection with the FTAIA summary judgment motions, Defendants are also willing to consider such a proposal.

Sincerely,

*Jeffrey Kessler/MCK*

Jeffrey L. Kessler

| | |
|---|---|
| **JOSEPH SAVERI LAW FIRM, INC.** | **COTCHETT, PITRE & MCCARTHY, LLP** |
| 505 MONTGOMERY STREET, SUITE 625 | 840 MALCOLM ROAD |
| SAN FRANCISCO, CA 94111 | BURLINGAME, CALIFORNIA 94010 |
| (415) 500-6800 | (650) 697-6000 |

April 21, 2015

**Via E-Mail and U.S. Mail**

Jeffrey L. Kessler
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193

Re:   *In re Capacitors Antitrust Litigation*, No. 14-cv-3264-JD

Dear Mr. Kessler:

Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (together, "Plaintiffs" or "we") write in response to Jeffrey Kessler's letter dated March 31, 2015 re FTAIA issues.

Plaintiffs are happy to proceed with an informal dialogue. We agree that the parties have a mutual interest in coming up with an efficient and fair process for complying with the Court's FTAIA schedule. We are eager to advance one.

Nonetheless, such a dialogue is no substitute for the Federal Rules of Civil Procedure and the procedures set forth in them, including Rules 26, 30, 33, 34 and 56. Along those lines, we have propounded formal discovery. Having had a chance to review Defendants' responses, they are in large part evasive and insufficient. We will proceed to meet and confer on our discovery requests to obtain the information to which we are entitled. We request that you identify a person or persons authorized to speak for the defendants as a group with whom we can promptly meet and confer.

DPPs have directed you to the class definition in their Complaint, which by narrowly defining the entities on whose behalf the DPPs are seeking to litigate, necessarily limits the scope of the claims implicated by the FTAIA that the DPPs intend to pursue. *See* Consolidated Amended Complaint ¶ 111. As you know, the DPPs are seeking to represent a class narrowly defined as follows:

> All persons in the United States that purchased Capacitors (including through controlled subsidiaries, agents, affiliates or joint-ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates or joint ventures from January, 1, 2003 through the present (the "Class Period").

Of course, discovery is far from complete. This definition implicitly describes the scope of our claims at this juncture. The DPPs think this is straightforward. By way of further clarification, the DPPs intend to seek relief on behalf of those that purchased in the U.S., in "import" commerce, in "export" commerce, and for the purchases that resulted from conduct that had a "direct, substantial, and reasonably foreseeable effect..." on the relevant commerce. *See* 15 U.S.C § 6(a).

Jeffrey L. Kessler
April 21, 2015
Page | 2

The DPPs recognize that your letter of March 31 sets out a variety of hypothetical "categories of commerce" that could potentially be implicated by the FTAIA. It is unclear, however, which of those twenty-two categories you believe the DPPs are explicitly or implicitly invoking through their Complaint and Class Definition. The DPPs, therefore, ask Defendants to let the DPPs know which of those categories they believe the DPPs are seeking to invoke and, for each, whether you contend that it would give rise to a dispute under the FTAIA.

We are confused by the 22 categories you identify and other matters you raise in your letter of March 31, 2015,. Generally, we suggest that you avail yourself of the Federal Rules of Civil Procedure to obtain the information you seek. Specifically, we are curious about whether you intend to move for summary judgment should you come to understand that any of the Plaintiffs are seeking to go forward on any of these categories of commerce. Moreover, as discussed in more detail below, given that your clients are in possession of the information necessary to understand which of these categories of commerce are implicated by the distribution channels in the industry in question, we ask that you immediately clarify (a) whether there is Capacitor commerce that falls into these categories, by category, and (b) approximately how much commerce falls into each category in units and dollars. Among other things, this information will shed light on the extent to which such transactions have "direct, substantial, and reasonably foreseeable effect."

Further, and more specifically, Plaintiffs would like you to define the potential categories of FTAIA commerce with more particularity. For example, if you are concerned about "import trade or import commerce,"[1] we would like to determine what, in Defendants' view, such commerce includes and how it is defined. Is it determined based on location of delivery, location of the company that has legal title, location of the company that paid for the goods at issue, or in some other way? We can't tell if the 22 categories in your letter are intended to shed light on these issues.

One of the chief problems with your letter is that the information we believe is required to address these issues remains largely in the hands of Defendants. In particular, we have asked Defendants to provide records of Defendants' commerce through their sales records ("transactional data") and to provide other relevant information. Defendants have largely objected to, and otherwise resisted, this discovery. At this point, there is a significant information disparity and asymmetry between Defendants and Plaintiffs regarding the nature and extent of the commerce at issue in this case. We note that virtually all of the information necessary to answer your 22 questions would be included within the scope of complete responses to our discovery requests. Without such information, Plaintiffs do not agree to limit the scope of the relief or the amount of damages they seek. Plaintiffs first would like a clear definition and understanding of the scope of commerce to which any proposed limitations would apply. For example, Defendants should reasonably know:

- The worldwide volume of capacitor commerce;
- Sales channels of capacitor commerce;

---

[1] 15 U.S.C. § 6(a) (1988)

Jeffrey L. Kessler
April 21, 2015
Page | 3

- The nature of sales channel commerce (e.g., location of purchaser, location of delivery, transfer of title, risk of loss); and
- Capacitors (by type, customer, transaction) that directly and foreseeably reach the United States.

Plaintiffs received Defendants' responses to the FTAIA discovery on March 30. Not a single Defendant substantively responded in full to this discovery. Responses included outright refusals to respond based on objections; statements that responses will be given at "the appropriate time" or "upon a reasonable search" without identifying when that would be; disclaimers of any knowledge at all; and reference to transactional data relied upon in these responses as a substitute for meaningful discovery responses (even though transactional data have not yet been produced). By way of example, we have received numerous variations of the following formulaic response to the Request for Admission: some capacitors are sold directly into the United States, but the Defendant doesn't know what transactions conducted outside the United States may have a direct, substantial and reasonably foreseeable effect on United States commerce. This is evasive and incomplete and deprives the Plaintiffs of the information to which they are entitled, and which would be useful in answering the questions you raise.

Plaintiffs are amenable to continue working with Defendants informally to determine what portion of Defendants' overall capacitor-related commerce should be at issue in this action and ultimately subject to the relief sought in light of the FTAIA. We would ask that Defendants provide complete and candid amended responses to Plaintiffs' February 25 FTAIA discovery by April 28, 2015. This should provide the predicate for future discussions.

With regard to the designation of expert witnesses for the upcoming FTAIA briefing, Plaintiffs have insufficient information available to take that step at this time given the paucity of information in Defendants' responses to Plaintiffs' FTAIA discovery. Indeed, almost no transactional data have been produced. We would be open to revisiting the issue once Defendants amend their discovery responses and once the parties' informal talks resume.

Very truly yours,

*Interim Lead Class Counsel for Direct Purchaser Plaintiffs*

*Interim Lead Class Counsel for Indirect Purchaser Plaintiffs*

cc: All Counsel