UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION. | Master File No. 14-cv-03264-JD <br><br> **ORDER DENYING DEFENDANT NIPPON CHEMI-CON'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** <br><br> Re: Dkt. No. 478 |

As detailed in a prior order, Dkt. No. 710, these consolidated antitrust class actions allege price-fixing conspiracies in the capacitor industry. Nippon Chemi-Con Corporation ("NCC"), a Japanese corporation that manufactures capacitors, is named as a defendant by the direct purchasers and the indirect purchasers in their separate consolidated complaints. Dkt. No. 400 ¶ 71; Dkt. No. 401 ¶ 44. NCC joined the global motions to dismiss that the Court largely denied. *See* Dkt. No. 474 at xii n.1; Dkt. No. 479 at 1 n.1. NCC also filed this separate motion seeking dismissal for lack of personal jurisdiction. Dkt. No. 478. The motion is denied.

## BACKGROUND

The direct purchaser plaintiffs ("DPPs") and indirect purchaser plaintiffs ("IPPs") named NCC as a defendant in their complaints. Dkt. No. 400 ¶ 71; Dkt. No. 401 ¶ 44. Both complaints also named as a defendant NCC's U.S. subsidiary, United Chemi-Con Corporation ("UCC"), which is an Illinois corporation. Dkt. No. 400 ¶ 72; Dkt. No. 401 ¶ 45. UCC does not contest personal jurisdiction; only NCC moves to dismiss.

## DISCUSSION

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the party asserting personal jurisdiction has the burden of proving its existence. *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir.

2004). Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In determining whether such a showing has been made, the court takes as true uncontroverted allegations in the complaint and resolves factual conflicts in the parties' affidavits in favor of the party asserting jurisdiction. *Action Embroidery*, 368 F.3d at 1177.

For a court to exercise personal jurisdiction over a defendant, there must be an applicable rule or statute that confers jurisdiction over it. *Id*. And for a court to exercise personal jurisdiction over a nonresident defendant like NCC, the defendant must have at least "minimum contacts" with the relevant forum so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 801 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The parties agree that the statute conferring jurisdiction over NCC is the Clayton Act, 15 U.S.C. § 22, and that the "relevant forum" with which NCC must have minimum contacts is the United States as a whole. Dkt. No. 635-4 at 6; Dkt. No. 684; *see also Action Embroidery*, 368 F.3d at 1177, 1180 (in Section 1 antitrust case, Clayton Act § 12 is statutory jurisdictional basis and United States is relevant forum). The parties also agree that the only question before the Court is whether it can properly exercise specific jurisdiction over NCC. Plaintiffs do not argue that NCC's contacts with the United States allow the Court to exercise general jurisdiction over it.

The dispute between the parties is whether the test for specific jurisdiction is satisfied for NCC. In our Circuit, courts apply a three-part test to determine whether specific jurisdiction comports with due process: (1) the non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or resident therein; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Schwarzenegger*, 374 F.3d at 802. Plaintiff bears the burden of satisfying the first two prongs, and if the plaintiff

succeeds, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

Purposeful availment and purposeful direction in the first part of the test are distinct concepts. *Schwarzenegger*, 374 F.3d at 802. In an apparent effort to hedge its bet, NCC mentions both without commitment. But our Circuit has indicated that the right analysis in this case is purposeful direction. The Circuit has determined that "purposeful availment analysis is most often used in suits sounding in contract," *id.*, which does not fit this price-fixing conspiracy case. And it recently applied the purposeful direction analysis in *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 743 (9th Cir. 2013), an antitrust case. *See also Fleury v. Cartier Int'l.*, No. C-05-4525 EMC, 2006 WL 2934089, at *2 (N.D. Cal. Oct. 13, 2006) (applying purposeful direction test to antitrust claims). The Court applies that analysis here.

A showing that a defendant purposefully directed his conduct toward a forum state usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, "such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803. Our Circuit evaluates purposeful direction under the three-part "effects" test traceable to *Calder v. Jones*, 465 U.S. 783 (1984): the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803.

## I. PURPOSEFUL DIRECTION

The only real issue in dispute is whether NCC has expressly aimed its conduct toward the United States. Plaintiffs' evidence, which the Court finds to be sufficient, falls into two categories.

The first relates to sales of NCC's capacitors in the United States. Plaintiffs presented evidence in the form of shipping records showing that NCC in Japan sent electrolytic capacitors directly to company customers in the United States during the alleged class period. *See* Dkt. No. 637-2 (FedEx labels showing shipments of "aluminum electrolytic capacitors," from NCC to eIQ Energy in San Jose, California); Dkt. No. 698-3 (invoice & packing list describing goods as aluminum electrolytic capacitors and listing NCC as "shipper" and a recipient company in

1  California as the "deliver to"). It is true that NCC's U.S. subsidiary, UCC, is shown as the
2  "accountee" in both cases, and defendant submitted a declaration stating that "to the extent UCC
3  resells NCC capacitors in the United States, UCC takes title to those capacitors in Japan." Dkt.
4  No. 478-1 ¶ 21. The Court agrees with NCC that jurisdiction over it cannot be traced through
5  UCC under an agency or alter ego theory, and the Court declines plaintiffs' arguments to the
6  contrary. But NCC's effort to deflect the impact of the shipping records by focusing on the
7  "accountee" line misses the mark as well.

8      The fact that UCC is the "accountee" and takes title to these capacitors in Japan might
9  make a difference for tax and accounting purposes, but not for this jurisdictional analysis. The
10 documents showing that NCC physically shipped electrolytic capacitors directly to customers in
11 the United States (regardless of the manner in which legal title to those capacitors may have
12 passed) establish that NCC is, directly or indirectly, serving the United States as a market for its
13 products. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-87 (1980) ("The
14 forum State does not exceed its powers under the Due Process Clause if it asserts personal
15 jurisdiction over a corporation that delivers its products into the stream of commerce with the
16 expectation that they will be purchased by consumers in the forum State."); *see also In re Cathode*
17 *Ray Tube (CRT) Antitrust Litigation*, 27 F. Supp. 3d 1002, 1013 (N.D. Cal. 2014) ("Defendant
18 does not have to direct Panasonic's activity in order for this to count as purposeful direction: it is
19 enough for Defendant to have known that Panasonic was going to sell these goods in the United
20 States, which evidence shows Defendant indeed knew").[1]

21     Plaintiffs' position is enhanced by the second category of evidence, which shows that NCC
22 aimed its alleged cartel behavior at the United States. Plaintiffs' exhibit on this point, Dkt.
23 No. 636-1, consists of meeting minutes from August 29, 2003. NCC is listed as a participant and

---

[1] Plaintiffs' evidence includes documents that show NCC as the "shipper" and a United States company as the "consignee," although these additional documents do not explicitly list the United States company as the "ship to" recipient. *See, e.g.*, Dkt. Nos. 698-2, 698-5, 698-6. Plaintiffs also point to the declaration submitted by NCC in which its "Department Manager of Administration Headquarters" admits two possible direct sales by NCC into the United States "totaling under $150 made between April and October 2003." Dkt. No. 478-1 ¶ 7. This evidence provides additional support for plaintiffs' prima facie showing.

the minutes expressly state that the "purpose of the meeting is to exchange information by market and by capacitor category so that each company will be able to enjoy profits and that healthy market prices will be maintained." The minutes note that "[i]n the U.S., GM is enjoying brisk sales (Business circumstances vary among Big 3)," and additionally discuss prices for cases, presumably of capacitors, using United States currency (cents). While this document standing alone would not have added much to the jurisdictional analysis, the Court finds that in combination with the U.S.-directed sales documents discussed above, plaintiffs have met their burden of establishing purposeful direction. *See CRT*, 27 F. Supp. 3d at 1012 (finding purposeful direction where, among other things, plaintiffs provided evidence that "co-conspirators coordinated pricing decisions in relation to United States market conditions, and discussed CRT prices in U.S. dollars").

NCC has repeatedly invoked *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014), as mandating dismissal. At the hearing, however, in response to questions by the Court, NCC reversed course and agreed that *Daimler* is a case about general jurisdiction only, and is not on point for the specific jurisdiction question presented here. *Cf. CRT*, 27 F. Supp. 3d at 1014 (finding that comity concerns raised in *Daimler* are lessened where "only specific jurisdiction is at issue").

*Walden v. Fiore*, 134 S.Ct. 1115 (2014), another case relied on by NCC, also does not help it. That case differs from this one in significant ways. In *Walden*, petitioner "never traveled to, conducted activities within, contacted anyone in, *or sent anything or anyone to* Nevada," the relevant forum. 134 S.Ct. at 1124 (emphasis added). That contrasts sharply to the facts here, where NCC physically shipped electrolytic capacitors to the United States. In fact, *Walden* expressly holds that such "physical entry into the State -- either by the defendant in person or though an agent, goods, mail, or some other means -- is certainly a relevant contact" in finding minimum contacts for specific jurisdiction. *Id*. at 1122. And the Court has found an adequate showing that NCC aimed its alleged cartel behavior at the United States. *Cf. In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d at 744 (alleged facts, taken as true, establish that defendants' "price manipulation was 'expressly aimed' at Wisconsin, because the AEP Defendants knew and intended that the consequences of their price manipulation would be felt in

5

Wisconsin."). Consequently, "when viewed through the proper lens -- whether *defendant's* actions connect him to the *forum*," *Walden*, 134 S.Ct. at 1124 (emphasis in original), the answer here is the opposite of what it was in *Walden*: yes, NCC has made jurisdictionally meaningful contacts with the relevant forum, the United States.

## II. CLAIM ARISING OUT OF OR RELATING TO DEFENDANT'S FORUM-RELATED ACTIVITIES

Plaintiffs have also satisfied the second prong -- their claims arise out of or relate to defendant's forum-related activities. Plaintiffs need only make a prima facie showing that NCC's U.S.-directed actions were a "but-for" cause of their claims. *CRT*, 27 F. Supp. 3d at 1013 (citing *Bancroft & Masters, Inc. v. Augusta Nat'l., Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000)). This test requires "some nexus between the cause of action and the defendant's activities in the forum." *Id*. (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 387 (9th Cir. 1988), *overruled on other grounds*, 499 U.S. 585 (1991)). Without a doubt, plaintiffs' claims in these antitrust actions arise out of and are related to the sale of NCC's capacitors in the United States and NCC's alleged participation in the alleged capacitor price-fixing conspiracies.

## III. REASONABLENESS OF EXERCISING JURISDICTION

The Court also needs to consider whether the exercise of specific jurisdiction over NCC is reasonable. For this part of the test, the burden is on the defendant to present a "compelling case" that the exercise of jurisdiction is not reasonable. *Schwarzenegger*, 374 F.3d at 802. For jurisdiction to be reasonable, it must comport with fair play and substantial justice. *Bancroft & Masters, Inc.*, 223 F.3d at 1088. "The reasonableness determination requires the consideration of several specific factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum." *Id*.

These factors do not require extended discussion because NCC made only the slightest nod towards them in its briefs. *See* Dkt. No. 684 at 8-9. NCC's argument is perfunctory and falls far short of meeting its burden of presenting a "compelling case" of unreasonableness. The scant discussion it does offer largely tracks the unpersuasive points made in the *CRT* case, with much less breadth and depth, and the Court rejects them for the same reasons detailed in that decision. 27 F. Supp. 3d at 1013-15.

Even affording NCC the benefit of the doubt and considering some of the seven factors, its arguments fail. On purposeful interjection, for example, the Court finds that there is more here than in most cases. In addition to the facts that show purposeful direction, NCC admits that it was registered and licensed to do business in the United States, and had a research and development office in San Jose, California, during the time period at issue in this litigation. Dkt. No. 478-1 ¶ 11. Moreover, as was the case in *CRT*, plaintiffs are "United States citizens who allege that they were harmed by defendant, which directed its activities toward the United States. That gives United States federal courts an interest in hearing this case." 27 F. Supp. 3d at 1014. In addition, the record on the alternative forum factor is too undeveloped to weigh in favor of either party, and the burden on NCC to defend against a case abroad, while not light, is mitigated by the advances in modern technology and counter-balanced by the United States federal courts' interest in hearing this case.

## CONCLUSION

The Court finds sufficient facts to warrant specific jurisdiction over NCC and that it is not unfair or unreasonable to subject NCC to the jurisdiction of this Court. Consequently, Nippon Chemi-Con Corporation's motion to dismiss for lack of personal jurisdiction is denied.

**IT IS SO ORDERED.**

Dated: June 11, 2015

_____
JAMES DONATO
United States District Judge