1  Bruce D. Sokler (*admitted pro hac vice*)
   bdsokler@mintz.com
2  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   701 Pennsylvania Avenue NW
3  Suite 900
   Washington, DC 20004
4  Telephone: (202) 434-7300
   Facsimile: (202) 434-7400
5
6  Evan S. Nadel (SBN 213230)
   enadel@mintz.com
7  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   44 Montgomery Street, 36th Floor
8  San Francisco, California 94104
   Telephone: 415-432-6000
9  Facsimile: 415-432-6001

10 Attorney for Defendant
   AVX CORPORATION
11

12

13            UNITED STATES DISTRICT COURT

14          NORTHERN DISTRICT OF CALIFORNIA

15             SAN FRANCISCO DIVISION

16

17 | IN RE CAPACITORS ANTITRUST | Case No. 3:14-cv-03264-JD |
   | LITIGATION | |
18

19 | This Document Relates to: | **DEFENDANT AVX CORPORATION'S** |
   | | **NOTICE OF MOTION AND MOTION TO** |
20 | ALL DIRECT PURCHASER ACTIONS | **DISMISS AND MEMORANDUM OF** |
   | | **POINTS AND AUTHORITIES IN** |
21 | | **SUPPORT OF MOTION TO DISMISS  THE** |
   | | **DIRECT PURCHASER PLAINTIFFS'** |
22 | | **AMENDED CONSOLIDATED CLASS** |
   | | **ACTION COMPLAINT** |
23

24 | | Date:  September 30, 2015 |
   | | Time: 9:30 a.m. |
25 | | Judge: Hon. James Donato |
   | | Location: Courtroom 11 |
26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Bell Atlantic Corp. v. Twombly,*
5
    550 U.S. 544 (2007 ..................................................................................................1

6

*Fields v. Legacy Health Sys.,*
    413 F.3d 943 (9th Cir. 2005) ....................................................................................5
7

8

*In re Baby Food Antitrust Litig.,*
    166 F. 3d 112 (3d Cir. 1999)....................................................................................4

9

*In re Citric Acid Litigation,*
10
    191 F.3d 1090 (9th Cir. 1999) .................................................................................4

11

*In re Coordinated Petroleum Prods. Antitrust Litig.,*
    906 F.2d 432 (9th Cir. 1990) ...................................................................................4
12

13

*In re Graphics Processing Units Antitrust Litig.,*
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ..................................................................5

14

*In re Late Fee and Over-Limit Fee Litigation,*
15
    528 F. Supp. 2d 953 (N.D. Cal. 2007), *aff'd by,* 741 F.3d 1022 (9th Cir. 2013)......................5

16

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ..............................................................3, 4
17

18

*No Cost Conf., Inc. v. Windstream Comm'ns., Inc.*
    940 F. Supp. 2d 1285 (S.D. Cal. 2013)...................................................................5

19

*Ray v. Alad Corp.,*
20
    19 Cal. 3d 22 (1977) ...............................................................................................5

21

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ...................................................................................5
22

23

*United States v. U.S. Gypsum,*
    438 U.S. 422 (1978) ................................................................................................4

24

25

26

27

28

AVX'S MOTION TO DISMISS COMPLAINT
Case No. 3:14-CV-03264-JD

1

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on Wednesday, September 30, 2015, at 9:30 a.m., or as soon thereafter as this motion may be heard, in Courtroom 11, 19th Floor, 450 Golden Gate Avenue, before the Honorable James Donato, consistent with the Court's order on stipulation, filed July 14, 2015 (Dkt. No. 778), Defendant AVX Corporation ("AVX") will and hereby does move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing the Direct Purchaser Plaintiffs' ("DPPs") Amended Consolidated Class Action Complaint (Dkt. No. 742) ("FAC") against AVX for failure to state a claim that satisfies the pleading standards of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).

This Motion is based on this Notice of Motion and Motion, the accompanying consolidated Memoranda of Points and Authorities, the pleadings on file, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES
## STATEMENT OF ISSUE TO BE DECIDED

Whether the amended DPP complaint fails to state a claim against AVX that satisfies the pleading standards of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).

AVX'S MOTION TO DISMISS COMPLAINT

Case No. 3:14-CV-03264-JD

1

## INTRODUCTION

2      It is easy to allege that an antitrust defendant joined a price fixing conspiracy.  As this

3  Court has noted,[1] a sentence like "X joined the conspiracy" is enough.  When a plaintiff goes out

4  of the way to avoid such formulation – as the DPPs did in the first, dismissed complaint against

5  AVX – it is not because this or equivalent wording eludes them, but because they are evidently

6  constrained by the requirements of Federal Rule of Civil Procedure ("FRCP") 11.  Now, even

7  after access to the Panasonic/Sanyo materials and discovery received to date, the DPPs *still*

8  decline to use the necessary formulation.[2]  Instead they shovel in chaff, hoping the Court will not

9  require allegations regarding AVX ***actually*** volitionally joining any alleged conspiracy.  Even

10 given a second chance and a roadmap to a valid complaint, DPPs' continuing failure to state a

11 conspiracy claim against AVX must result in dismissal.[3]

12

## ARGUMENT

13     1.      In its Order on Motions to Dismiss (Dkt. No. 710), the Court granted AVX's

14 motion with leave to amend, writing in principal part:

15          AVX Corporation is not alleged to have participated in or even been
           informed of the 'cartels regular meetings,' Dkt. No. 401 ¶ 198, nor is it
16          alleged to have participated in any cartel 'subgroups' or in any specific
           cartel meetings.  The only substantive allegation against AVX is that it
17          'worked to coordinate pricing strategy' with other defendants, *id.* ¶¶ 215-

18

19

20 [1] Order on Motions to Dismiss, Dkt. No. 710, at 12 (The Court agrees with the general principle
   that, while detailed "'defendant by defendant' allegations" are not necessary, an antitrust
21 complaint "must allege that each individual defendant joined the conspiracy and played some
   role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision
   by each defendant to join it.") (citations omitted).

22

23 [2] As was the case in their initial complaint, the indirect plaintiffs ("IPPs") have not named AVX
   as a defendant in their complaint.  *See* Indirect Purchasers Plaintiffs' Second Consolidated Class
   Action Complaint, Dkt. No. 741.

24

25 [3] Under the Court's minute order (Dkt. No. 774), DPPs can amend their complaint further by
   July 17, 2015 to solely add allegations unique to Flextronics Corporation whose separate
26 complaint is to be folded into the FAC.  Under that order, parties such as AVX can supplement
   the instant motion by July 24, 2015, which AVX will do, if necessary.

27

28

1    16, but these allegations fall short of alleging 'an agreement and a
     conscious decision' by AVX to join it.

2

3    Order at 13, *citing In re TFT-LCD (Flat Panel) Antitrust Litigation,* 586 F. Supp. 2d

4    1109, 1117 (N.D. Cal. 2008).

5         2.      Evidently drawing upon materials obtained either through the cooperation of the

6    ACPERA applicant or through discovery to date, the DPPs lard the FAC with significant detail

7    about the alleged cartel, regular meetings of the alleged cartel and examples of alleged specific

8    cartel meetings.  FAC ¶¶ 175-210.  The allegations contain assertions as to who attended these

9    meetings and allegedly reached agreements as part of the alleged cartel.  In short, the DPPs are

10   not shy – when they have facts to support them – about identifying specific defendants within the

11   conspiracy.  However,

12        • notably—**still**—the DPPs never allege that AVX participated in any of these

13            meetings, was a member of any of the cartel's groups, and AVX is never listed as

14            an attendee of any cartel meeting;

15        • notably—**still**—the DPPs, even with the information they have had access to, but

16            limited to the facts they have and their obligations under FRCP 11, never allege

17            that AVX ever entered into any agreement or made a conscious decision to join

18            the alleged conspiracy, or any other conspiracy for that matter.

19        These omissions speak volumes. If the DPPs could have included AVX, they would have.

20   They did not.

21        Instead, the FAC attempts to include AVX in some strange penumbral status in a

22   subsection entitled "AVX's Meetings and Communications with Other Defendants" (FAC ¶

23   212), shoehorned into a part called "Other Meetings and Conspiratorial Communications Among

24   Defendants."   Using what are apparently Sanyo documents, DPPs make allegations regarding

25   two meetings between Sanyo and U.K.-based AVX representatives.  The allegations suggest that

26   there was a discussion about market conditions and the entities business activities, including raw

27   material information and pricing – ***none of which is illegal***.  However, there is no allegation that

28

1    there was any discussion of the alleged cartel, no allegation of any agreement between AVX and

2    SANYO (or anyone else) and, critically, no allegation that AVX made the required conscious

3    decision to join the conspiracy.

4            Adding extraneous detail does not help the DPPs state a claim against AVX.  A

5    discussion between competitors, standing alone, is insufficient to make an antitrust conspiracy

6    claim.  Even an information exchange, standing alone, does not state a sufficient claim.  *See, e.g,*

7    *United States v. U.S. Gypsum,* 438 U.S. 422 (1978); *In re Coordinated Petroleum Prods.*

8    *Antitrust Litig.,* 906 F.2d 432 (9th Cir. 1990). There must be some basic allegation that AVX

9    was, in fact, a member of the conspiracy, not just that it talked to entities that were.

10           Whatever the DPPs' motivations are to rope AVX in as a defendant and to capture its

11   sales as cognizable under their damage theory, their allegations continue to fall short.  Whether

12   any alleged conspiracy actually existed and actually damaged plaintiffs is not at issue in this

13   Motion.  Even if true, the DPPs must allege that **AVX** consciously joined the conspiracy, which

14   they have not done and apparently cannot do.  *See, e.g., In re Citric Acid Litigation*, 191 F.3d

15   1090 (9th Cir. 1999) (Cargill not part of acknowledged conspiracy); *In re Baby Food Antitrust*

16   *Litig.,* 166 F. 3d 112, 126 (3d Cir. 1999) (communications between competitors are not price

17   fixing agreement unless those communication rise to the level of an agreement); *TFT-LCD*, 586

18   F. Supp. 2d at 1116.

19           3.       In their original complaint (Dkt. No. 401 ¶¶ 64-65), the DPPs attempted to utilize

20   AVX's February 2013 acquisition of defendant Nichicon's tantalum capacitor production facility

21   and AVX's alleged "mere continuation" of the unit as it was organized and operated by Nichicon

22   as a sufficient basis to name AVX as defendant under a "successor in interest" theory.  The Court

23   correctly rejected that argument in its Order.  Dkt. No. 710 at 13-14.

24           The DPPs appear to have backed off this argument in its FAC.  FAC ¶ 58.  They no

25   longer make the "mere continuation" allegations.  Instead, they state the hypothetical situation

26   that "[t]o the extent that AVX assumed, in whole or in part, the assets and liabilities of

27   Nichicon's former tantalum capacitors division, Plaintiffs also intend to hold AVX liable for any

28

1    violations for any violations of Sherman Act § 1 by Nichicon's former tantalum capacitors

2    division that occurred during the Class Period."[4] *Id.*

3         First, this is not actually a cognizable allegation. It essentially asserts that "if AVX is

4    liable for something, then it will be liable for something." That is a tautology, not an allegation.

5    Even under the relatively liberal pleading standards of the Federal Rules, a plaintiff cannot file a

6    complaint that says "we don't have any basis to make a claim against this defendant, but if they

7    turn out to have done something, we want damages." In any event, to the extent the DPPs are

8    still claiming this ground as justification to name AVX as a defendant, the attempt still fails

9    under the Court's previous reasoning. *See also No Cost Conf., Inc. v. Windstream Comm'ns.,*

10   *Inc.* 940 F. Supp. 2d 1285, 1299 (S.D. Cal. 2013); *In re Graphics Processing Units Antitrust*

11   *Litig.,* 527 F. Supp. 2d 1011, 1031 (N.D. Cal. 2007); *Ray v. Alad Corp.,* 19 Cal. 3d 22, 28

12   (1977).

13        4.    Conclusory allegations of law, unwarranted deductions of fact, or unreasonable

14   inferences are insufficient to defeat a motion to dismiss. *See, e.g., Fields v. Legacy Health*

15   *Sys.,*413 F.3d 943, 950 n.5 (9th Cir. 2005); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988

16   (9th Cir. 2001); *In re Late Fee and Over-Limit Fee Litigation,* 528 F. Supp. 2d 953 (N.D. Cal.

17   2007), *aff'd by,* 741 F.3d 1022 (9th Cir. 2013). The plaintiffs in these cases have had two

18   opportunities, thousands of pages of materials, and the cooperation of the ACPERA applicant to

19   piece together their claims. The IPPs have found no basis to name AVX at all—the DPPs' two

20   attempts have both been insufficient.

21        Accordingly, the DPP complaint should be dismissed against AVX.

22

23

24

25

_____

26   [4]   The DPPs have received through discovery from AVX the Nichicon/AVX transaction
     documents. The absence of any concrete successor in interest allegations in the FAC, like
27   Sherlock Holmes' dog that did not bark in the night, is quite telling.

28

Dated:  July 16, 2015

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.

By: /s/ Evan S. Nadel___
Evan S. Nadel
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone: (415) 432-6000
Facsimile: (415) 432-6001
enadel@mintz.com

Bruce D. Sokler *(admitted pro hac vice)*
701 Pennsylvania Avenue NW
Suite 900
Washington, DC 20004
Telephone: (202) 434-7300
Facsimile: (202) 434-7400
bdsokler@mintz.com

*Attorneys for Defendant AVX Corporation*

AVX'S MOTION TO DISMISS COMPLAINT

Case No. 3:14-CV-03264-JD