REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**Joseph Saveri Law Firm, Inc.**  **Cotchett, Pitre & McCarthy, LLP**
505 Montgomery Street, Suite 625   840 Malcolm Road
San Francisco, CA 94111   Burlingame, California 94010
(415) 500-6800   (650) 697-6000

August 7, 2015

**Via ECF**
Hon. James Donato
United States District Court for the Northern District of California
Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *In re Capacitors Antitrust Litigation*, No. 14-cv-3264-JD

Dear Judge Donato:

  Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs ("Plaintiffs") request that the Court order Defendants Shinyei Kaisha, Shinyei Technology Co. Ltd., and Shinyei Capacitor Co., Ltd. (collectively, "Shinyei")—or, alternatively, all defendants—to run search terms against their ESI that indicate locations where Shinyei met with its co-conspirators. Plaintiffs discovered these terms during their review of Japanese-language documents produced by Shinyei to the U.S. Department of Justice. Plaintiffs have met and conferred with both Shinyei and Defendants' Joint Defense Group ("JDG"), both of whom refuse to run these specific terms. The parties are at an impasse.

  Shinyei asserts that this issue is not ripe, though its own letter acknowledges the numerous meet and confers the parties held over several weeks. Shinyei contends the issue is "global"—*i.e.*, common to all defendants—while the JDG contradictorily claims it is both a defendant-specific issue[1] and a matter with global implications. The JDG seeks to delay this matter by proposing a new protocol that burdens Plaintiffs, while leaving the Shinyei dispute unresolved.

  Shinyei refuses to run these terms without claiming any burden, lack of relevance, or other grounds. The issue before the Court is Shinyei's refusal to run the terms, but the dispute could be obviated if the JDG would include the terms on the General Search Term List.[2]

  *Background.* Plaintiffs and Shinyei have tentatively agreed on Shinyei's document custodians and have exchanged proposed Shinyei-search terms.[3] Plaintiffs proffered highly relevant conspiratorial meeting locations as search terms—a list of which Plaintiffs will provide the Court at its request—that include the following:

- **Hotels:** *see, e.g.,* ███████████████████

---

[1] The Global Search Term negotiations are almost complete. JDG contends that meeting locations were not contemplated by Defendants in those negotiations, but nonetheless asserts, "re[garding] meeting locations and golf clubs, if particular defendants don't mind running them, *that's* between [Plaintiffs] *and them*, just like any other aspect of meet and confer" and, "I don't see Defendant-specific terms as necessarily expanding or narrowing the global terms - they might do both, or one or the other." F. Woo email to Plaintiffs, July 28, 2015 (emphasis added).

[2] The specific terms at issue here, however, are not exclusive of all cartel meeting locations. Plaintiffs are still reviewing—and translating from Japanese—the other Defendants' DOJ productions, and have not yet received custodial document productions, so many meeting locations are unknown to Plaintiffs at this time.

[3] Shinyei's claim that it agreed to over 125 Shinyei-specific search terms neglects that most are terms Shinyei proposed itself and many of them are merely pre-fixes for the product codes of Shinyei's capacitors (i.e., "APF" or "DTP") that will likely be run as mutually exclusive terms (e.g., "APF" OR "DTP") rather than as individual search terms.

Hon. James Donato, August 7, 2015
Page 2

▮ Accordingly, Plaintiffs proposed the search string ▮

- **Meeting venues:** *see, e.g.*, ▮ From this document, plaintiffs proposed the searches ▮
- **Golf courses and country clubs:** *see, e.g.*, ▮ From this document, Plaintiffs proposed the search string ▮
- **Cafes and social gathering places**: *see, e.g.*, ▮ From this document, Plaintiffs proposed search terms, including ▮

Plaintiffs have asked Shinyei to engage in a process undertaken by other Defendants in which the parties run search terms and, depending on hit counts, either produce documents, remove search terms or negotiate limiters. Shinyei refuses.[5]

*Argument*. Evidence of competitor meetings and communications is paramount in proving an antitrust case.[6] Indeed, proof of an anticompetitive agreement typically "involv[es] actual, verbalized communication" between competitors.[7] The meeting location search terms are narrowly tailored to locate evidence of Shinyei's meetings with competitors. As the document citations above demonstrate, this is no fishing expedition. Effective search terms cannot be identified in an information vacuum. A party's "human knowledge" should be utilized to craft keyword searches that are responsive to the "inherent malleability and ambiguity of spoken and written [language]."[8]

The JDG's recent proposed protocol introduces a vague standard of what is "unique" that is left to the discretion of each Defendant. *See* Shinyei Letter. It also invades Plaintiffs' work product by requiring Plaintiffs to identify Defendants' own documents. Further, it would extend search term negotiations indefinitely as Defendants consider and debate the "uniqueness" of terms.

Plaintiffs request that the Court order Shinyei to run the meeting location terms against its ESI. Alternatively, Plaintiffs request that the Court direct all Defendants to run these terms as part of the Global Search Terms List.

Respectfully submitted,

---

[4] Plaintiffs have certified translations of each of the documents referenced above and are prepared to submit them for *in camera* review should the Court direct them to do so.

[5] Shinyei's unsupported and new contention in its letter that the terms are overbroad or lack correct syntax is a red-herring. Shinyei has repeatedly refused on a conceptual level to run known "meeting location" terms. Because Shinyei has stood on that objection, meet and confers have not progressed to discussion of any individual terms.

[6] *See, e.g., Todd v. Exxon Corp.*, 275 F.3d 191,198 (2d Cir. 2001) ("Information exchange [among defendants] is an example of a facilitating practice that can help support an inference of a price-fixing agreement.").

[7] *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 654 (7th Cir. 2002); *see also Apex Oil Co. v. DiMauro*, 822 F.2d 246, 253 (2d Cir. 1987) ("[W]e carefully examine the conduct and communications of the defendants in order to determine whether it evidences an agreement.").

[8] *See The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery*, 8 SEDONA CONF. J. 189, 201, 209 (Fall 2007).

Hon. James Donato, August 7, 2015
Page 2

| JOSEPH SAVERI LAW FIRM, INC. | COTCHETT, PITRE & MCCARTHY, LLP |
|---|---|
| */s/ Joseph R. Saveri* | */s/ Steven N. Williams* |
| Joseph R. Saveri | Steven N. Williams |

*Interim Lead Class Counsel for Direct Purchaser Plaintiffs*  *Interim Lead Class Counsel for Indirect Purchaser Plaintiffs*