**DENTONS**

Claire M. Maddox

claire.maddox@dentons.com
D  202.496.7308

Dentons US LLP
111 Washington Avenue • 7th Floor
Albany, NY 12210
United States

T  518.935.2400
F  518.462.4875

Salans FMC SNR Denton
McKenna Long
dentons.com

August 7, 2015

The Honorable James Donato
United States District Court for the Northern District of California
Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:      *In Re: Capacitors Antitrust Litigation*, Master File No. 14-CV-03264-JD (N.D. Cal.)—
         Letter Brief Regarding Defendant-Specific Search Terms

Dear Judge Donato:

Pursuant to the Stipulation and Order Re: Discovery of Electronically Stored Information (Dkt. 782), we respectfully submit this letter on behalf of Defendants Shinyei Kaisha, Shinyei Technology Co., Ltd., Shinyei Capacitor Co., Ltd., and Shinyei Corporation of America, Inc. ("Shinyei") concerning "defendant-specific" search terms.  Shinyei does not believe that there is any dispute that is ripe for the Court.  As Plaintiffs have insisted on involving the Court, however, Shinyei addresses the matter below.

In their letter, Plaintiffs continue to miscomprehend Shinyei's position and the nature of the issue. The crux of the issue is the meaning of "defendant-specific" search terms, which remains a subject of on-going meet and confers at the global level.  On July 24, 2015—just two weeks ago—Plaintiffs provided Shinyei with a proposed list of "Shinyei search terms."[1]  A meet and confer that same day, as well as subsequent communications on a global level, highlighted a fundamental difference of opinion between Plaintiffs and Defendants over what constitutes a "defendant-specific" search term that the parties anticipated would be run in addition to the already extensive list of global search terms.

As Shinyei expressed in calls on July 24, July 28, and July 31, Defendants' understanding was that "defendant-specific" terms would address the use of corporate jargon and distinctions, unique to a specific Defendant, in the application of the global terms.  Yet many of Plaintiffs' proposed "Shinyei-specific" terms are well beyond that scope.  For example, the list includes the Japanese-language term for "coffee shop," as well as the English term "PGA w/20 (golf or club)."  When Shinyei raised this point, Plaintiffs asserted that because the terms came from Shinyei's documents, they are automatically "defendant-specific," and promised to make Shinyei a "test case" for the Court on the issue.  Despite Shinyei's request, Plaintiffs would not identify the specific documents from which the terms purportedly came.

---

[1] This list was facially deficient, lacking basic syntax for some terms and confusing "descriptions" of Japanese-language terms with English terms.  Plaintiffs acknowledged these issues and provided a new list on July 27, 2015, which also included syntax errors that Plaintiffs again acknowledged.  Shinyei has thus allowed multiple revisions of the proposed "Shinyei-specific" list (now no fewer than four pages long), and has already agreed to over 125 (i.e., over 70%) of the terms.  Those terms are to be run against agreed-upon custodial sources (Dkt. 782), not more broadly against "Shinyei ESI," as Plaintiffs assert.



The Honorable James Donato
August 7, 2015
Page 2

Salans FMC SNR Denton
McKenna Long
dentons.com

While the meet and confer discussions appeared to revolve around "meeting locations," Plaintiffs' approach to what constitutes a "defendant-specific" term has plain implications for other Defendants and topics, and therefore Defendants assert that the issue should be globally addressed with Plaintiffs.  Thus, Shinyei repeatedly requested that as a threshold matter, the parties resolve this point globally.  Plaintiffs initially resisted, but then engaged Defendants on the point.

During global-level discussions, Defendants reiterated their belief that neither side anticipated that any words that may appear in Defendants' own document productions would automatically fall within the scope of "defendant-specific" search terms to be negotiated separately from the global terms. Nevertheless, Defendants endeavored to accommodate Plaintiffs and expressed a willingness to consider a broader scope for "defendant-unique" search terms, so long as a reasonable protocol is put in place. On August 4, 2015, Defendants proposed that Plaintiffs' requests for "defendant-specific" search terms identify by Bates number the corresponding relevant document from Defendants' collection prompting the request, which would provide Defendants the information and context to assess and then accept, modify, or reject the requests appropriately.  But Plaintiffs' response did not address this proposal, and asserted that "unless the terms proposed to Shinyei are made a part of the Global Search Term list, then [they] have a dispute with Shinyei over the appropriateness of using the terms"—a position that wholly (and perhaps even intentionally) ignored the core dispute.  Defendants, then, reiterated their proposal and advised that they did not believe Plaintiffs had a basis to bring this issue to the Court in an effort to create a precedential ruling when Defendants have proposed a reasonable method of resolving such issues.  On August 6, 2015, Plaintiffs rejected Defendants' proposal.  (Shinyei is prepared to submit email correspondence reflecting these discussions, should the Court wish to see them.)

It is premature for Plaintiffs to insist on bringing this issue to the Court, when the central point of "defendant-specific" terms is still being discussed and may even be resolved globally.  If the Court decides otherwise, Shinyei respectfully requests that the Court adopt Defendants' proposal and require that Plaintiffs identify the corresponding Bates-numbered page(s) from which each of their "Shinyei-specific" terms was drawn, so that Shinyei can assess the proposed terms.  Indeed, Plaintiffs' draft letter to the Court exchanged with Shinyei did exactly that to justify their terms—yet that was the *very first time* Plaintiffs provided such information.[2]  Having acknowledged the utility of such information in assessing their terms, Plaintiffs have no basis for contesting that Defendants' proposed protocol is reasonable. Regardless of any protocol, the parties still need to address the scope of the facially overbroad terms.[3]

Respectfully submitted,

*/s/ Claire M. Maddox*

---

[2] Plaintiffs' prior refusal to provide such information only underscores why Defendants' proposal is reasonable and warranted.  Although by email Plaintiffs claimed to have "provided [Shinyei] with **specific** bates numbered documents showing the relevance of the search terms," they were unable to offer evidence they had actually done so (as none exists).  Instead, they baldly asserted that "everyone knows what document we are talking about here."  But that is precisely the issue—Shinyei does *not* know what document(s) Plaintiffs are relying upon in proposing such broad search terms, and absent a protocol is left only to speculate.

[3] Plaintiffs' alternative request to add Shinyei terms to the global list again miscomprehends the issue.  That "solution" does not address Plaintiffs' disagreement with Shinyei or the larger issue of Plaintiffs now demanding searches well beyond the global terms and the contemplated scope of "defendant-specific" terms.  Plaintiffs effectively request that every "defendant-specific" term they propose be run by every other Defendant—a wholly untenable proposition.