1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH W. COTCHETT (36324)
STEVEN N. WILLIAMS (175489)
ADAM J. ZAPALA (245748)
ELIZABETH TRAN (280502)
JOYCE CHANG (300780)
**COTCHETT PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
etran@cpmlegal.com
jchang@cpmlegal.com

*Interim Lead Class Counsel for the*
*Putative Indirect Purchaser Class*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CAPACITORS ANTITRUST LITIGATION** | **Case No. 3:14-cv-03264-JD** <br> **Honorable James Donato** |
| **THIS DOCUMENT RELATES TO:** <br><br> **ALL INDIRECT PURCHASER ACTIONS** | **INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS THE SECOND CONSOLIDATED COMPLAINT** <br><br> **Date:    September 30, 2015** <br> **Time:    10:00 a.m.** <br> **Judge:   Hon. James Donato** <br> **Location:  Courtroom 11, 19th Floor** |

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**

# TABLE OF CONTENTS

Page

I.     STATEMENT OF FACTS ................................................................1

II.    ARGUMENT .................................................................................1

    A.     Each Named Plaintiff Has Article III Standing and This Court Has Subject Matter Jurisdiction Over the Claims Asserted .......................................1

    B.     Defendants' Construction of Standing is "Unduly Narrow" ..................3

    C.     Class Certification is "Logically Antecedent" to Issues of Standing Under State Law ...........................................................................6

    D.     The Complaint Adequately States Claims under the Various State Laws ............8

        1.     Under *Shady Grove*, IPPs Have Properly Stated Class Action Claims Under Illinois and South Carolina Law ......................................8

        2.     IPPs Have Properly Asserted Claims Under Massachusetts' Consumer Protection Law ......................................................8

        3.     Plaintiffs' Claims Are Not Too Remote Under Nebraska and Iowa Law ..........................................................................9

        4.     IPPs Have Properly Alleged Claims Under North Carolina's Unfair and Deceptive Trade Practices Act ..........................................10

        5.     IPPs Have Properly Stated Claims Under Minnesota Law ....................10

        6.     IPPs Have Properly Alleged Claims Under Maine's Antitrust Statute .....10

        7.     IPPs Have Properly Asserted Claims Under the Consumer Protection Laws of New York, New Mexico and Arkansas ...................................11

        8.     IPPs Have Properly Stated Claims Under Oregon Law ..........................12

        9.     New Hampshire's Antitrust Statute Should be Applied Retroactively .....13

        10.    IPPs Have Properly Alleged Claims under Montana Law ......................13

        11.    IPPs Have Properly Plead Claims Under Rhode Island Law .................13

        12.    IPPs Have Properly Pled Claims Under Utah Law ................................14

        13.    IPPs Have Properly Alleged Claims under the District of Columbia's Laws ..........................................................................14

        14.    Michigan Permits Indirect Purchaser Suits for Price-Fixing ..................15

        15.    IPPs Have Properly Alleged Claims under Missouri Law ......................15

        16.    IPPs Have Complied with Hawaii's Notification Requirements .............15

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**                                                                            i

III.    CONCLUSION..........................................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**                                                  **ii**

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Ames v. Oceanside Welding & Towing Co., Inc.,*
   767 A.2d 677 (R.I. 2001)............................................................................................................14

5

*Associated General Contractors of California v. Cal. State Council of Carpenters,*
   459 U.S. 519 (1983)................................................................................................................2, 9

6

7

*AT&T Mobility LLC v. AU Optronics Corp.,*
   707 F.3d 1106 (9th Cir. 2013) ............................................................................................3, 4, 6

8

*Baptist Health v. Murphy,*
   365 Ark. 115 (2006).................................................................................................................12

9

10

*Bond v. United States,*
   131 S. Ct. 2355 (2011)...............................................................................................................1

11

*Ciardi v. F. Hoffmann-La Roche, Ltd.,*
   436 Mass. 53 (2002) .............................................................................................................8, 9

12

13

*Clancy v. The Bromley Tea Company,*
   2013 U.S. Dist. LEXIS 112722 (N.D. Cal. Aug. 9, 2013) ........................................................7

14

*Cox v. Microsoft Corp.,*
   8 A.D.3d 39 (N.Y. App. Div. 2004) .......................................................................................11

15

16

*District Cablevision Ltd. Partnership v. Bassin,*
   828 A.2d 714 (D.C. 2003) .......................................................................................................14

17

*Donahue v. Apple, Inc.,*
   871 F.Supp.2d 913 (N.D. Cal. 2012) ........................................................................................7

18

19

*Easter v. Am. W. Fin.,*
   381 F.3d 948 (9th Cir. 2004) .....................................................................................................6

20

*Eldridge v. Eldridge,*
   620 A.2d 1031 (N.H. 1993) .....................................................................................................13

21

22

*Fallick v. Nationwide Insurance Mutual Co.,*
   162 F.3d 410 (6th Cir. 1998) .....................................................................................................8

23

*FTC v. Sperry & Hutchinson Co.,*
   405 U.S. 233 (1972).................................................................................................................14

24

25

*Goebel v. Salt Lake City S. R. Co.,*
   104 P.3d 1185 (Utah 2004) ......................................................................................................14

26

*Hovering v. Transnation Title Ins. Co.,*
   545 F.Supp.2d 662 (E.D. Mich. 2008) ......................................................................................7

27

*In re Actimmune Marketing Litigation,*
   614 F.Supp.2d 1037 (N.D. Cal. 2009) ......................................................................................7

28

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**                                                                iii

*In re Aftermarket Filters Antitrust Litig.,*
2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ...................................................................7, 11

*In re Auto Parts Antitrust Litigation (Wire Harness),*
2013 U.S. Dist. LEXIS 80338 (E.D. Mich. 2013) ............................................................passim

*In re Bayer Corp. Comb. Aspirin Prods. Mktg. & Sales Practices Litig.,*
701 F. Supp. 2d 356 (E.D.N.Y. 2010) .........................................................................7

*In re Buspirone Patent Litig.,*
185 F. Supp. 2d 363 (S.D.N.Y. 2002) ..........................................................................8

*In re Cathode Ray Tube (CRT) Antitrust Litigation,*
2013 U.S. Dist. LEXIS 119598 (N.D. Cal. August 21, 2013)........................................4, 5, 6

*In re Chocolate Confectionary Antitrust Litig.,*
602 F. Supp. 2d 538 (M.D. Pa. 2009) .................................................................7, 11, 14

*In re DDAVP Indirect Purchaser Antitrust Litig.,*
2012 WL 4932158 (S.D.N.Y. Oct. 17, 2012) ...............................................................11

*In re Digital Music Antitrust Litig.,*
812 F. Supp. 2d 390 (S.D.N.Y. 2011) .......................................................................9, 11

*In re Ditropan XL Antitrust Litig.,*
529 F.Supp.2d 1098 (N.D. Cal. 2007) ..........................................................................3

*In re Flash Memory Antitrust Litig.,*
643 F.Supp.2d 1133 (N.D. Cal. 2009) ......................................................................3, 12

*In re Flonase Antitrust Litig.,*
692 F. Supp. 2d 524 (E.D. Pa. 2010) ............................................................................9

*In re Grand Theft Auto Video Game Consumer Litig.,*
U.S. Dist. LEXIS 78064 (S.D.N.Y. Oct. 25, 2006) ........................................................7

*In re Graphics Processing Units Antitrust Litig. ("GPU II"),*
540 F.Supp.2d 1085 (N.D. Cal. 2007) .......................................................................10

*In re Graphics Processing Units Antitrust Litig.,*
527 F.Supp.2d 1011 (N.D. Cal. 2007) .......................................................................3, 12

*In re Hydroxycut Marketing and Sales Practices Litigation,*
299 F.R.D. 648 (S.D. Cal. 2014) ................................................................................8

*In re Hydroxycut Mktg. & Sales Practices Litig. ("Hydroxycut I"),*
801 F. Supp. 2d 993 (S.D. Cal. 2011)........................................................................6, 7

*In re Hypodermic Prods. Antitrust Litig.,*
2007 WL 1959225 (D.N.J. Jun. 29, 2007).....................................................................7

*In re Linerboard Antitrust Litig.,*
305 F.3d 145 (3d Cir. 2002) .....................................................................................10

*In re Lithium Ion Batteries Antitrust Litig.,*
2014 U.S. Dist. LEXIS 141358 (N.D. Cal. Oct. 2, 2014)..................................................8

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the**
**Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**                                    **iv**

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
235 F.R.D. 127 (D. Me. 2006) ....................................................................................10

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
350 F. Supp. 2d 160 (D. Me. 2004) .............................................................................10

*In re Optical Disk Drive Antitrust Litig.*.
2012 U.S. Dist. LEXIS 55300 (N.D. Cal. Apr. 19, 2012) ...........................................8

*In Re Packaged Ice Antitrust Litig.*,
779 F. Supp. 2d 642 (E.D. Mich. 2011)......................................................................13

*In re Polyurethane Foam Antitrust Litig.*,
799 F.Supp.2d 777 (N.D. Oh. 2011)..............................................................................7

*In re Processed Egg Products Antitrust Litigation*,
851 F.Supp.2d 867 (E.D. Penn. 2012) ..................................................................passim

*In re Relafen Antitrust Litig.*,
221 F.R.D. 260 (D.Mass. 2004) .....................................................................................7

*In re Silk*,
937 A.2d 900 (N.H. 2007) ...........................................................................................13

*In re Sugar Indus. Antitrust Litig.*,
579 F.2d 13 (3d Cir. 1978) ..........................................................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. C 12-1827 SI, (N.D. Cal. August 29, 2011) ...........................................................6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
599 F.Supp.2d 1179 (N.D. Cal. 2009)...............................................................10, 11, 14

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
2013 U.S. Dist. LEXIS 173319 (N.D. Cal. Dec. 3, 2013)..............................................4

*In re Warfarin Sodium Antitrust Litig.*,
214 F.3d 395 (3d Cir. 2000) ..........................................................................................9

*Independence City v. Pfizer Inc.*,
534 F.Supp.2d 882 (E.D. Ark 2008).............................................................................12

*Jepson v. Ticor Title Ins. Co.*.
2007 U.S. Dist. LEXIS 53480 (W.D. Wash. May 1, 2007).............................................7

*Kanne v. Visa, U.S.A. Inc.*,
272 Neb. 489 (2006) .......................................................................................................9

*Kingsberry v. Chicago Title Insurance Co.*,
586 F.Supp.2d 1248 (W.D. Wash. 2008)........................................................................7

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
232 F.3d 979 (9th Cir. 2000) ........................................................................................10

*Los Gatos Mercantile v. E.I. Dupont De Nemours and Company*,
2015 U.S. Dist. LEXIS 106292 (N.D. Cal. August 11, 2015).........................................8

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**                                                                 v

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)......................................................................................................2

*Ogden v. Bumble Bee Foods, LLC,*
  292 F.R.D. 620 (N.D. Cal. 2013).................................................................................7

*Osbourne v. Capital City Mortg. Corp.,*
  727 A.2d 322 (D.C. 1999) ..........................................................................................14

*Payton v. Cnty. of Kane,*
  308 F.3d 673 (7th Cir. 2002) ........................................................................................7

*Pecover v. Elec. Arts Inc.,*
  633 F.Supp.2d 976 (N.D. Cal. 2009) ............................................................................6

*Ramirez v. STi Prepaid LLC,*
  644 F. Supp. 2d 496 (D.N.J. 2009) ...............................................................................7

*Senne v. Kansas City Royals Baseball Corp.,*
  2015 U.S. Dist. LEXIS 91147 (N.D. Cal. July 13, 2015).............................................6

*Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.,*
  130 S. Ct. 1431 (2010)...........................................................................................8, 13

*Southard v. Visa U.S.A. Inc.,*
  734 N.W.2d 192 (Iowa 2007) .......................................................................................9

*Steel Company v. Citizens for a Better Environment,*
  523 U.S. 83 (1998)........................................................................................................2

*Sun Dun, Inc. v. Coca-Cola Co.,*
  770 F.Supp. 285 (D. Md. 1991) ..................................................................................15

*Trazo v. Nestle USA, Inc.,*
  2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013) ...........................................7

*UFCW Local 1776 & Participating Employers Health and Welfare Fund et al. v. Teikoku*
  *Pharma USA, Inc. et al.,*
  74 F.Supp.3d 1052 (N.D. Cal. 2014).......................................................................3, 5

*Vernon v. Qwest Communications Int'l, Inc.,*
  643 F.Supp.2d 1256 (W.D. Wash. 2009).......................................................................7

**Statutes**

Ark. Stat. Ann. § 4-88-107(a)(10)......................................................................................12

D.C.Code § 28-3901(b)(1) ..................................................................................................15

ME. Rev. Stat. tit. 10, § 1104(1)..........................................................................................10

Mont. Code §§ 30-14-103 *et seq.*.......................................................................................13

N.Y. G.B.L. § 349 ................................................................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Rules**

Federal Rules of Civil Procedure

Rule 12(b)(6)................................................................................12

Rule 56................................................................................12

Rule 56(a) ................................................................................12

Rule 56(b) ................................................................................12

Rule 56(d)(1)................................................................................12

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the
Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**                                    **vii**

## I.   STATEMENT OF FACTS

This litigation stems from allegations of a multi-year conspiracy to fix the prices of electrolytic and film capacitors. Second Consolidated Complaint ¶ 1 ("SCC").[1]  The SCC alleges that Defendants manufacture, market and sell electrolytic and film capacitors "throughout and into the United States." ¶ 11.  It includes five named Plaintiffs, four of which are residents of California.  The fifth, Alfred H. Siegel, is the trustee of the Circuit City Liquidating Trust ("CCLT").  While operating, Circuit City did business throughout the United States. ¶ 34.  It was one of the largest electronics retailers in the country with over 500 retail locations. It purchased capacitors from national service parts vendors that purchased them from Defendants. The price-fixed capacitors were shipped to Circuit City's service centers. *Id.*  Plaintiffs have brought antitrust and/or consumer protection claims in 32 states, including in California.

## II.   ARGUMENT

### A.   Each Named Plaintiff Has Article III Standing and This Court Has Subject Matter Jurisdiction Over the Claims Asserted

Plaintiffs' allegations of injury-in-fact satisfy Article III standing.  Defendants erroneously contend that Plaintiffs lack Article III standing to pursue claims under the laws of thirty-one states, asserting that Article III standing may only be conferred when a Plaintiff is a resident in an indirect purchaser state or purchased the product there.  *See* Def. Mot. at 1-5. Defendants are mistaken: Article III standing is not so circumscribed.  Defendants have conflated Article III standing with "statutory standing."  *See Bond v. United States*, 131 S. Ct. 2355 (2011) ("the question whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of a dispute . . . .").  "An Article III standing inquiry simply does not require considering the elements of a state claim as 'jurisdictional prerequisites.'"  *In re Processed Egg Products Antitrust Litigation*, 851 F.Supp.2d 867, 886-87 (E.D. Penn. 2012) ("*Eggs*") (rejecting the contention that non-residents lacked Article III standing to pursue indirect purchaser claims in other states); *In re Auto Parts Antitrust Litigation (Wire Harness)*, Case Nos. 2:12-cv-00102, 2:12-cv-00103, 2013 U.S. Dist. LEXIS 80338, *42-47 (E.D. Mich. 2013) (*"Wire Harness"*)

---

[1] All "¶ __" references are to Indirect Purchaser Plaintiffs' SCC (ECF No. 741).

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**                                                    **1**

1    (finding allegations of economic injury sufficient to confer Article III standing regardless of

2    whether they satisfied specific state statutory requirements).  As the Supreme Court has held, the

3    "Article III requirement of a remediable injury in fact . . . (except with regard to entirely frivolous

4    claims) has nothing to do with the text of the statute relied upon."  *Steel Company v. Citizens for*

5    *a Better Environment*, 523 U.S. 83, 97 n. 2 (1998).  Article III standing exists when a plaintiff

6    suffered an injury that is concrete and particularized and actual or imminent, rather than

7    conjectural or hypothetical.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The

8    alleged injury must be fairly traceable to the defendant's conduct. *Id.*

9         Here, IPPs have sufficiently alleged Article III, injury-in-fact, standing.  The SCC alleges

10   that each named Plaintiff paid artificially inflated prices for capacitors as a result of Defendants'

11   price-fixing conspiracy.  Plaintiffs have, therefore, suffered monetary harm, which is the classic

12   form of injury for purposes of the constitutional requirement.  Moreover, Plaintiffs' injuries were

13   caused by Defendants' conspiratorial conduct, which are alleged to have violated the various

14   states' antitrust and consumer protection laws.  *See Eggs*, 851 F.Supp.2d at 887 (finding the same

15   allegations sufficient for Article III standing); *see also Associated General Contractors of*

16   *California v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n. 31 (1983) ("[h]arm to the

17   antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact .

18   . . .").  Finally, each named Plaintiff has brought a claim for injunctive relief under Section 1 of

19   the Sherman Act, which has gone unchallenged by the Defendants. ¶¶ 376-386. As a result, there

20   is simply no question that this Court has subject matter jurisdiction over the case.

21        What Defendants have mislabeled as Article III standing is actually a challenge to

22   whether out-of-state plaintiffs may ultimately recover under a particular state's statutory scheme.

23   Such an analysis does not depend upon a superficial inquiry into Article III constitutional

24   standing like the one Defendants present in their motion and which is easily satisfied here, but

25   rather a detailed inquiry into each indirect purchaser state's statutory standing requirements to

26   determine whether it strictly requires residency.  In *Eggs*, the district court elaborated on the

27   mistake that Defendants make in this case.  851 F.Supp.2d at 881-888.  There, defendants claimed

28   that plaintiffs lacked Article III standing to bring indirect purchaser claims in states where no

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the
Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**                                    **2**

named plaintiff resided.  The district court cautioned parties not to conflate Article III standing with statutory standing.  Statutory standing, unlike Article III standing, "ask[s] whether Plaintiffs have a right to maintain a private enforcement action under the states' statutes . . . ." *Id.* at 885l. The *Eggs* court held that plaintiffs' allegations that they paid supracompetitive prices for processed eggs was sufficient for Article III standing, regardless of whether the substantive state statutes arguably banned out of state purchasers from recovering.  *Id.*

The cases cited by Defendants in support of their arguments do not expressly address the issue.  *In re Ditropan XL Antitrust Litig.*, 529 F.Supp.2d 1098, 1107 (N.D. Cal. 2007) ("*Ditropan*"), did not expressly deal with a challenge to the Article III standing of the named plaintiffs but rather with the argument that class certification is "logically antecedent" to statutory standing. The *In re Flash Memory Antitrust Litig.*, 643 F.Supp.2d 1133, 1163-64 (N.D. Cal. 2009) ("*Flash*") and *In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011, 1026-27 (N.D. Cal. 2007) ("*GPU*") decisions are both silent on whether those courts conducted an Article III or statutory standing analysis.  As the court held in *Eggs*, in the "absence of definitive legal authority as to whether *vel non* an extraterritorial injury that might be traced to an antitrust violation is cognizable" under the state statutes, motions to dismiss based on Article III standing should be rejected. *Eggs*, 851 F.Supp.2d at 891.  This Court should do the same.

**B.     Defendants' Construction of Standing is "Unduly Narrow"**

Defendants' contention that Plaintiffs lack standing to bring indirect purchaser claims in any state where they are not a resident or did not purchase the price-fixed product is "unduly narrow."  *UFCW Local 1776 & Participating Employers Health and Welfare Fund et al. v. Teikoku Pharma USA, Inc. et al.*, 74 F.Supp.3d 1052 (N.D. Cal. 2014) (*"Lidoderm"*).  Their argument that named Plaintiff CCLT's invocation of several states' indirect purchaser and consumer protection laws violates due process fares no better. Business entities conducting operations around the country regularly sue, and can be sued, in a variety of states. Indeed, in *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013) ("*AT&T*"), the Ninth Circuit considered and rejected the same argument that Defendants make in this case.  There, plaintiff-AT&T, like Circuit City in this case, conducted business in many parts of the world,

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**                                    **3**

including in several different states.  It brought price-fixing claims under California law, and Defendants moved to dismiss, arguing that the complaint lacked allegations that plaintiff purchased the products in California.  The Ninth Circuit noted that the due process clause imposes only "modest restrictions" on the invocation of a state's law and sets "a highly permissive standard."  *Id.* at 1111.  The "place-of-purchase rule" advocated by Defendants in this case and rejected by the Ninth Circuit in *AT&T* is a "return to the wooden and now largely abandoned" doctrinal framework.  *Id.* at 1112.  Because plaintiff-AT&T included allegations that part of the price-fixing conduct occurred in California, it could pursue claims under states' laws where it neither resided nor purchased the price-fixed products.

Similarly, in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Case No. 10-05625, 2013 U.S. Dist. LEXIS 173319 (N.D. Cal. Dec. 3, 2013) the district court considered whether **_Circuit City_** could invoke the antitrust laws of California, despite not purchasing the products there and that it resided in Virginia.  In deciding that Circuit City could pursue such claims, it noted that Circuit City "maintained regional distribution centers throughout the country, including in California and Illinois . . . . and received [LCD products] at its regional distribution centers." *Id.* at *161.   The district court ultimately held that Circuit City could pursue claims under California's antitrust laws notwithstanding the fact that "all of Circuit City's purchase orders and invoices originated from its Virginia headquarters . . . ." *Id.* at 165.

And contrary to Defendants' argument, *AT&T* and its progeny have not been limited solely to cases where there are allegations of price-fixing conduct occurring within a particular state's borders.  *See* Def. Mot. at 12.  In *In re Cathode Ray Tube (CRT) Antitrust Litigation*, Case No. C-07-5944-SC, 2013 U.S. Dist. LEXIS 119598 (N.D. Cal. August 21, 2013) (*"CRT"*), Judge Conti found that several Direct Action Plaintiffs ("DAPs"), including **Circuit City's Liquidating Trust** and Costco, could pursue price-fixing claims under state laws where they neither purchased the products nor resided.  The district court held that defendants' "direction of price-fixed goods into certain states renders Defendants subject to those states' antitrust and consumer protection laws." *Id.* *87-88.  Of significant importance on this motion, in *CRT*, Costco's complaint included causes of action under California, Washington, Arizona, Florida,

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**          **4**

and Illinois antitrust and consumer protection laws.  *See*, Case No. 3:11-cv-06397-SC, ECF No. 1, at pgs. 44-48. (Costco Complaint).  Yet, Costco only resided in Washington and, arguably, California. *Id.* at 4-5. Costco's complaint included no allegation that it purchased price-fixed CRTs in Arizona, Florida or Illinois.  *Id.* ¶ 13. Costco merely alleged that it "received CRT Products at distribution centers located in states including California, Washington, Illinois, Arizona, Utah, Texas, New Jersey, Georgia, and Florida." *Id.* ¶ 14.   These allegations were sufficient to permit Costco to invoke the state laws of Illinois, Arizona and Florida. Similarly, in *CRT*, Judge Conti also upheld CCLT's claims under Illinois law.  *CRT*, 2013 U.S. Dist. LEXIS 119598, *n.2, 87-88.  Yet CCLT's complaint merely alleged that it "received shipments of and took title to CRT Products at a . . . distribution center in Marion, Illinois."  *See* Case No. 3:11-cv-05502-SC, ECF No. 1, ¶ 264 (CCLT Complaint).

Finally, in *Lidoderm* end-payor plaintiffs ("EPPs") alleged that they paid supracompetitive prices for drugs due to a so-called reverse payment scheme.  Defendants moved to dismiss state law claims where none of the EPPs resided or had only "attenuated connections." 74 F.Supp.3d 1052. The court found defendants' construction of standing "unduly narrow."  It instead held that the EPPs—largely made up of employee benefit plans—could pursue state law claims where they sent reimbursements to their members who purchased the drugs at supracompetitive prices and who themselves resided in those states.[2]

All of the foregoing cases demonstrate that standing and the invocation of states' antitrust and consumer protection laws are not circumscribed merely to residency or the place-of-purchase.  As in *CRT*, here the SCC alleges that Circuit City "was one of the largest consumer electronics retailers in the United States with over 500 retail locations nationwide. [It] purchased electrolytic and film capacitors as stand-alone products from one or more national service parts vendors that purchased such capacitors as stand-alone products from one or more Defendants..." ¶ 34.  The capacitors were then shipped to Circuit City's service centers. *Id*.  The SCC further

---

[2] For example, to the extent that an employee benefit plan—residing in Virginia—sent a reimbursement to one of its employees in Colorado for a purchase of supracompetitive Lidoderm, the plan could pursue Colorado claims.  It is difficult to understand how this could be construed as a "Colorado purchase" by the plan, given that the plan paid for the reimbursement out of its Virginia office and merely sent the reimbursement to its member in Colorado.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD                                                      5**

alleges that Defendants sold electrolytic and/or film capacitors throughout the United States. SCC ¶ 11.  Such allegations were deemed sufficient in *CRT* based on Judge Conti's application of the Ninth Circuit's holding in *AT&T*, and they should be sustained in this case.

Defendants' cited authorities in support of its arguments are unavailing.  *See* Def. Mot. at 6-7.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 12-1827 SI, (N.D. Cal. August 29, 2011) (*"LCD"*), predates the Ninth Circuit's decision in *AT&T* and Judge Conti's decision in *CRT*.  The district court's strict reliance on the "place-of-purchase" proxy in *LCD* was criticized in *AT&T* as "wooden" and was ultimately reversed by the Ninth Circuit.  And *Pecover v. Elec. Arts Inc.*, 633 F.Supp.2d 976, 984-85 (N.D. Cal. 2009) did not address the question of whether deliveries in indirect purchaser states provides a sufficient nexus for invocation of those state laws.  The claims in that case were dismissed because the "plaintiffs effectively conceded, by failing to address the issue in their opposition memorandum."  *Id.*

## C.  Class Certification is "Logically Antecedent" to Issues of Standing Under State Law

Even if this Court were inclined to find that IPPs lack standing to bring claims in states where they neither reside nor purchased a capacitor, it should delay resolution of this issue until class certification.  At class certification, this Court may find that the named Plaintiffs can adequately represent the interests of out of state class members under Rule 23's criteria.  *See Eggs*, 851 F.Supp.2d at 882; *see also In re Hydroxycut Mktg. & Sales Practices Litig.* (*"Hydroxycut I"*), 801 F. Supp. 2d 993, 1005 (S.D. Cal. 2011).[3]  This Court has the discretion to delay standing until class certification.  *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004).

Admittedly, there are divergent views on this issue amongst the district courts within the Ninth Circuit, with no controlling circuit court authority.  IPPs respectfully suggest that the more reasoned course of action is to follow Chief Magistrate Judge Spero's very recent decision in *Senne v. Kansas City Royals Baseball Corp.*, Case No. 14-cv-00608-JCS 2015 U.S. Dist. LEXIS 91147 (N.D. Cal. July 13, 2015) (*"Senne"*).  In *Senne*, professional baseball players brought wage

---

[3] In *Hydroxycut I*, the court correctly reasoned that the: "[A]rgument appears to conflate the issue of whether the named Plaintiffs have standing to bring their individual claims with the secondary issue of whether they can meet the requirements to certify a class under Rule 23…. The issue Defendants raise is one of predominance – whether "questions of law or fact common to class members predominate over any questions affecting only individual members."  *Id.* at 1004-05

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the
Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**                                    **6**

and hour claims against a number of baseball teams and defendants argued that the class must have a representative from each baseball team named as a defendant.  In rejecting that approach, the court found that class certification was "logically antecedent" to standing issues.

Several other district court decisions within the Ninth Circuit support such a holding.  *See e.g., Donahue v. Apple, Inc.,* 871 F.Supp.2d 913, 922 (N.D. Cal. 2012); *Ogden v. Bumble Bee Foods, LLC,* 292 F.R.D. 620, 623-624 (N.D. Cal. 2013); *Trazo v. Nestle USA, Inc.,* Case No. C-12-2272 PSG, 2013 U.S. Dist. LEXIS 113534, 2013 WL 4083218, at *4 (N.D. Cal. Aug. 9, 2013); *Clancy v. The Bromley Tea Company,* Case N. C-12-3003 JST, 2013 U.S. Dist. LEXIS 112722, 2013 WL 4081632, at *5 (N.D. Cal. Aug. 9, 2013); *Jepson v. Ticor Title Ins. Co.,* 2007 U.S. Dist. LEXIS 53480 (W.D. Wash. May 1, 2007); *Vernon v. Qwest Communications Int'l, Inc.,* 643 F.Supp.2d 1256 (W.D. Wash. 2009); *In re Actimmune Marketing Litigation,* 614 F.Supp.2d 1037 (N.D. Cal. 2009); *Kingsberry v. Chicago Title Insurance Co.,* 586 F.Supp.2d 1248 (W.D. Wash. 2008); *Hydroxycut I,* 801 F.Supp.2d at 1005. And, several persuasive decisions from district courts in other circuits also support this approach.  In the auto parts antitrust litigation, Judge Battani has consistently found that class certification is logically antecedent to standing, thereby permitting indirect purchaser plaintiffs to pursue claims in states where they neither reside nor have purchased the product.  *See, e.g., Wire Harness,* 2013 U.S. Dist. LEXIS 80338; *see also, In re Polyurethane Foam Antitrust Litig.,* 799 F.Supp.2d 777, 805-806 (N.D. Oh. 2011) *Hovering v. Transnation Title Ins. Co.,* 545 F.Supp.2d 662, 667 (E.D. Mich. 2008); *Payton v. Cnty. of Kane,* 308 F.3d 673, 680 (7th Cir. 2002); *In re Chocolate Confectionary Antitrust Litig.,* 602 F. Supp. 2d 538, 579-80 (M.D. Pa. 2009); *In re Aftermarket Filters Antitrust Litig.,* No. 08 Civ. 4883, 2009 WL 3754041, at *5 (N.D. Ill. Nov. 5, 2009); *In re Hypodermic Prods. Antitrust Litig.,* MDL No. 1730, 2007 WL 1959225, at *15 (D.N.J. Jun. 29, 2007); *In re Relafen Antitrust Litig.,* 221 F.R.D. 260, 267-70 (D.Mass. 2004); *In re Bayer Corp. Comb. Aspirin Prods. Mktg. & Sales Practices Litig.,* 701 F. Supp. 2d 356 (E.D.N.Y. 2010); *Ramirez v. STi Prepaid LLC,* 644 F. Supp. 2d 496, 505 (D.N.J. 2009); *In re Grand Theft Auto Video Game Consumer Litig.,* U.S. Dist. LEXIS 78064, at *6-8 (S.D.N.Y. Oct. 25, 2006); *In re Buspirone*

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the
Second Consolidated Complaint; Case No. 3-14-cv-03264-JD                                                    7**

*Patent Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002); *Fallick v. Nationwide Insurance Mutual Co.*, 162 F.3d 410 (6th Cir. 1998).

**D.     The Complaint Adequately States Claims under the Various State Laws**

 **1.     Under *Shady Grove*, IPPs Have Properly Stated Class Action Claims Under Illinois and South Carolina Law**

 Illinois' and South Carolina's class action bars are procedural and therefore inapplicable in federal courts. *See Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.,* 130 S. Ct. 1431, 1436 (2010) ("*Shady Grove*"). District Courts within the Ninth Circuit have held that both the Illinois and South Carolina class action bars are procedural, not substantive. *See In re Lithium Ion Batteries Antitrust Litig.*, 2014 U.S. Dist. LEXIS 141358, *115-120 (N.D. Cal. Oct. 2, 2014) ("*Batteries*") (Illinois' and South Carolina's "antitrust laws merely forbid procedural aggregation of individual claims; they do not change how a court decides whether such claims prevail or, importantly, the nature of any one individual's right to relief."); *see also  In re Optical Disk Drive Antitrust Litig.*, 3:10-MD-2143 RS, 2012 U.S. Dist. LEXIS 55300 (N.D. Cal. Apr. 19, 2012) (upholding plaintiffs' right to bring class action claims under South Carolina law); *Los Gatos Mercantile v. E.I. Dupont De Nemours and Company*, 2015 U.S. Dist. LEXIS 106292 (N.D. Cal. August 11, 2015) (same); *In re Hydroxycut Marketing and Sales Practices Litigation*, 299 F.R.D. 648, 653-654 (S.D. Cal. 2014) (same).

 **2.     IPPs Have Properly Asserted Claims Under Massachusetts' Consumer Protection Law**

 Defendants appear to argue that CCLT (and any other named Plaintiff, for that matter) cannot state a claim under Section 11 of the Massachusetts Consumer and Business Protection Act, M.G.L. c. 93a because it purportedly does not permit private indirect purchaser claims by non-consumers.  Yet The Supreme Judicial Court of Massachusetts has concluded that Section 9 of the consumer protection law unquestionably extends to indirect purchasers. *See Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 66-67 (2002). Section 11 should, therefore, be construed to permit claims by indirect purchasers. Sections 9 and 11 are part of the same consumer protection law, and "[s]tatutes addressing the same subject matter clearly are to be

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD** **8**

construed harmoniously so as to . . . give rise to a consistent body of law." *Ciardi*, 436 Mass. at 62. This Court should join other courts holding that "Massachusetts does not bar indirect purchaser standing under its consumer protection act." *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 545 (E.D. Pa. 2010) (permitting non consumer to pursue claims); *see also, In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 413 n.12 (S.D.N.Y. 2011). In any event, Plaintiffs Michael Brooks and Steven Wong are unquestionably "consumers" within the meaning of Section 9 of the Massachusetts consumer protection statute, *see* ¶¶ 29, 31.

### 3. Plaintiffs' Claims Are Not Too Remote Under Nebraska and Iowa Law

Defendants argue that the Nebraska and Iowa claims must be dismissed because they are allegedly too remote based on CCLT's allegations that it received deliveries of price-fixed products in the state. Def. Mot. at 8. Defendants rely on an entirely inapposite line of Visa cases to support their argument. *Id.*; *see also Kanne v. Visa, U.S.A. Inc.*, 272 Neb. 489 (2006); *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192 (Iowa 2007). Neither case included allegations, as here, of a price-fixing conspiracy, which is a per se violation of the antitrust laws. *See In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 400 (3d Cir. 2000) ("it is difficult to imagine a more formidable demonstration of antitrust injury."). Rather, both *Visa* cases dealt with tying arrangements. The harm alleged in this case is far more direct and non-speculative than those asserted in the *Visa* cases. Additionally, in the *Visa* cases plaintiffs "did not purchase, directly or indirectly, the product that is the subject of anticompetitive activity by Visa and MasterCard." *Southard*, 734 N.W.2d at 196-99 (*Visa* plaintiffs are "not in the chain of distribution"); *Kanne*, 723 N.W.2d at 298-99 (same). The Plaintiffs in this case are classic indirect purchasers.

Defendants' reliance on these cases, moreover, confuses issues of statutory standing with the remoteness inquiry under *Associated General Contractors v. Carpenters*, 459 U.S. 519 (1983) and its progeny. Here, the standing question is whether out of state Plaintiffs may pursue claims under foreign states' antitrust or consumer protection claims. To the extent that is resolved in favor of Plaintiffs, "remoteness" under *AGC* is not an issue. The remoteness inquiry deals with the complexity of a given distribution chain; but here, the distribution chain is simple: IPPs are persons or businesses that purchased price-fixed, standalone capacitors from

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**      **9**

distributors.  Their injury is neither remote nor speculative because a distributor, acting as a middleman, merely marks up the price-fixed capacitor.  Numerous courts have refused to find "remoteness" or "speculativeness" at the pleading stage in cases involving distribution chains that were much more complex. *See e.g., In re Sugar Indus. Antitrust Litig.,* 579 F.2d 13, 18 (3d Cir. 1978); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 159 (3d Cir. 2002); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F.Supp.2d 1179, 1124 (N.D. Cal. 2009).

### 4.   IPPs Have Properly Alleged Claims Under North Carolina's Unfair and Deceptive Trade Practices Act

Plaintiffs specifically allege a number of substantial effects on intrastate commerce in North Carolina.  ¶¶ 351, 411, 441.  These and similar allegations have been held as sufficient to trigger the protection of state antitrust laws. *See Flat Panel*, 599 F.Supp.2d at 1188-89; *In re Graphics Processing Units Antitrust Litig. ("GPU II")*, 540 F.Supp.2d 1085, 1099 (N.D. Cal. 2007); *In re New Motor Vehicles Canadian Export Antitrust Litig.,* 350 F. Supp. 2d 160, 170-75 (D. Me. 2004); *see also Wire Harness*, 2013 U.S. Dist. LEXIS 80338, *75-81.

### 5.   IPPs Have Properly Stated Claims Under Minnesota Law

As previously addressed, although there is no resident of Minnesota, class certification issues are logically antecedent to standing.  *See, supra*.

### 6.   IPPs Have Properly Alleged Claims Under Maine's Antitrust Statute

As is evident from the express language of the statute, Maine permits indirect purchaser suits.  ME. Rev. Stat. tit. 10, § 1104(1).  Defendants cite a single authority from outside of the Ninth Circuit in support of their contention that Plaintiffs' antitrust claim fails because they must purportedly allege the detailed mechanics of pass-through at the pleadings stage.  *See* Def. Mot. at 10; *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 235 F.R.D. 127, 134 (D. Me. 2006).  First, there could hardly be a more straightforward pass-through case than this one, where standalone capacitors were purchased from middlemen-distributors.  Second, no authorities support the proposition that indirect purchasers in a price-fixing scheme must allege pass-through in an elaborate fashion.  *See Wire Harness*, 2013 U.S. Dist. LEXIS 80338, *45.

Law Offices
Cotchett, Pitre &
McCarthy, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD**                                      **10**

### 7.   IPPs Have Properly Asserted Claims Under the Consumer Protection Laws of New York, New Mexico and Arkansas

Defendants argue that Plaintiffs' New York consumer protection claim fails because the deceptive conduct must have been directed at a consumer and not a business.  *See* Def. Mot. at 10. But, it is sufficient under N.Y. G.B.L. § 349 if "the complaint alleges a price-fixing scheme that resulted in New York consumers paying inflated prices for [the products], and that defendants took efforts to conceal their agreements from the New York plaintiffs and the indirect class." *TFT–LCD*, 586 F. Supp. 2d at 1128; *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 40 (N.Y. App. Div. 2004).   This is precisely what Plaintiffs have alleged.  ¶¶ 440.  Additionally, one of the alleged co-conspirators—Hitachi Chemical Co. America, Ltd.—is as New York Corporation. ¶ 38.   Finally, to the extent that Defendants argue the New York claims fail for lack of a "consumer", the argument ignores the existence of named Plaintiffs Michael Brooks and Steven Wong, who are unquestionably consumers within the meaning of the statute.

Defendants also argue that IPPs' New Mexico consumer protection claims fails because it purportedly did not allege an "unfair or deceptive trade practice" or an "unconscionable trade practice" in violation of the law.  Def. Mot. at 10.  Defendants acknowledge that IPPs alleged the elements of a New Mexico consumer protection claim, but argue that the pleading is overly formulaic.  *See* ¶¶ 439.  This argument has been consistently rejected. *Wire Harness*, 2013 U.S. Dist. LEXIS 80338, *91-92 (IPPs "satisfied their pleading obligation" by alleging "that the conspiracy resulted in significant artificial increases in the price of [the product], leading to a 'gross disparity' between the value received by the New Mexico plaintiff and class and the prices paid…"); *TFT-LCD I*, 586 F. Supp. 2d at 1127; *In re Aftermarket Filters Antitrust Litig.*, No. 08 Civ. 4883, 2009 WL 3754041, at *9 (N.D. Ill. Nov. 5, 2009); *Eggs*, 851 F. Supp. 2d at 906-07; *Digital Music*, 812 F. Supp. 2d 390 at 409-10; *Chocolate I*, 602 F. Supp. 2d at 586; *NMV*, 350 F.Supp.2d at 196; *In re DDAVP Indirect Purchaser Antitrust Litig.*, 05-CV-2237 CS, 2012 WL 4932158 (S.D.N.Y. Oct. 17, 2012).   In addition to price disparity, IPPs allege Defendants' unconscionable conduct, such as Defendants' price-fixing and attempts to conceal their conduct by lying about the true reasons for price increases.  *See, e.g.,* ¶¶ 289, 321-341.

Defendants are similarly mistaken as to Arkansas' Deceptive Trade Practices Act

Law Offices
Cotchett, Pitre &
McCarthy, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD                                    11**

("ADTPA"). That Act prohibits "[e]ngaging in any other unconscionable, false, *or* deceptive act or practice in business, commerce, or trade." Ark. Stat. Ann. § 4-88-107(a)(10) (emphasis added). Defendants claim only "unconscionable" acts are actionable, but as other courts have held, "the statute does not limit itself to unconscionable acts – false or deceptive acts are all that is needed under the statute…." *Wire Harness*, 2013 U.S. Dist. LEXIS 80338*, *89. The Arkansas Supreme Court defined an unconscionable act as one that 'affronts the sense of justice, decency, or reasonableness, including acts that violate public policy or a statute.'" *Id.*, *88 (citing, *Independence City v. Pfizer Inc.,* 534 F.Supp.2d 882, 886 (E.D. Ark 2008); *Baptist Health v. Murphy,* 365 Ark. 115, 128, 226 S.W.3d 800 (2006)). Plaintiffs have again stated a claim here, having alleged Defendants engaged in a deceptive conspiracy, a violation of Sherman Act, §1, to artificially inflate the prices of capacitors. The argument that failure to plead "grossly unequal bargaining power" bars ADTPA claims has been rejected by other courts. *See Flash*, 643 F. Supp. 2d at 1156-57 (rejecting *GPU*, 527 F.Supp.2d at 1029–1030).

### 8.   IPPs Have Properly Stated Claims Under Oregon Law

Defendants assert that Plaintiffs cannot state a claim for violations of Oregon law for conduct that allegedly occurred before January 1, 2010, when its *Illinois Brick* repealer amendment became effective. There are a number of problems with this argument. First, it is procedurally flawed. Federal Rule of Civil Procedure 12(b)(6) does not provide for dismissal of portions of claims.  Only Federal Rule of Civil Procedure 56 contemplates such partial adjudications. *See* Fed. R. Civ. Proc. 56(a) and (b); Fed. R. Civ. Proc. 56(d)(1).  Second, the SCC alleges that the class period continued until such a time the anticompetitive conduct ceased. ¶ 2, 3. The conduct at issue in the electrolytic conspiracy continued until at least 2011 and evidence "strongly suggests" conduct occurred beyond that date.  ¶ 122. Bilateral discussions between coconspirators are alleged to have occurred as late as 2013. ¶ 137.  Third, even assuming *arguendo* that conduct prior to 2010 is barred by the Oregon statute, to the extent there were lingering effects from the conspiracy that occurred post-2010, conduct prior to 2010 is relevant. The full extent of any lingering effects of a conspiracy will only be known after full discovery and expert analysis.  Piecemeal dismissal of a claim at this juncture is ill-advised.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD              12**

9.      **New Hampshire's Antitrust Statute Should be Applied Retroactively**

Defendants fail to acknowledge that the *Silk* court stated that "[w]hen a statute is remedial . . . in nature, it may be applied to pending cases retroactively." *In re Silk*, 937 A.2d 900, 904 (N.H. 2007). In order to determine whether a statute is retrospective or prospective, a court should examine whether the new law "takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Eldridge v. Eldridge*, 620 A.2d 1031, 1033 (N.H. 1993). Here, the repealer statute did not create a new duty or liability for past conduct. The Defendants' conduct is and always has been illegal under New Hampshire law. Rather, the statute merely created a remedy in favor of indirect purchasers and is thus remedial. As in *Eldridge*, the change creates a procedure for enforcing already existing state antitrust laws, and Defendants' obligation to comply with those laws has not changed. *See* 620 A.2d at 1033.

10.     **IPPs Have Properly Alleged Claims under Montana Law**

Defendants argue that Montana's consumer protection statute, Mont. Code §§ 30-14-103 *et seq.*, requires dismissal because a separate provision of that Act prohibits bringing claims on a class action basis. Def. Mot. at 12. Defendants fail to cite, however, one federal court case (or state court case) subsequent to *Shady Grove*, 130 S. Ct. 1431. As the court held in *Wire Harness*, Montana consumer protection claims can proceed as a class action because Rule 23 is a procedural rule that is fully applicable in federal courts. *Wire Harness*, 2013 U.S. Dist. LEXIS 80338, *106.

Defendants also argue that Plaintiffs have failed to allege that any of the unlawful conduct affected trade or commerce in Montana. But the SCC does in fact allege that the conspiracy had an effect on Montana commerce. *See* ¶¶ 436. As the court held in *Packaged Ice*, "'intrastate effects' is met at the pleading stage by allegations, as here, claiming that the conduct caused supra-competitive price effects nationwide." *In Re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 664 (E.D. Mich. 2011).

11.     **IPPs Have Properly Plead Claims Under Rhode Island Law**

Defendants argue that IPPs may not pursue claims under Rhode Island's consumer

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD                                    13**

protection law because they have not alleged that the purchase was "primarily for personal, family, or household purposes." Def. Mot. at 13.  Yet, as discussed elsewhere, named Plaintiffs Michael Brooks and Steven Wong are clearly "consumers" within the definition of the consumer protection statute.  *See* ¶¶ 29, 31. Defendants' further argument that price-fixing claims are not cognizable under the UTPCPA is mistaken.  Practices that offend public policy are unlawful under the statute.  *See Ames v. Oceanside Welding & Towing Co., Inc.,* 767 A.2d 677, 681 (R.I. 2001) (citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45 n. 5, 92 S. Ct. 898, 31 L. Ed. 2d 170(1972)).  Several courts have determined that price-fixing injuries fall within the scope of the statute and have allowed consumers alleging a price-fixing claim to proceed under Rhode Island law.  *Wire Harness*, 2013 U.S. Dist. LEXIS 80338, *96-97; *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 586 (M.D. Pa. 2009).

### 12.    IPPs Have Properly Pled Claims Under Utah Law

First, for the same reasons as stated in IPPs' response to Defendants' arguments pertaining to the Oregon claim, this Court should reject Defendants arguments.  Second, the Utah repealer statute is procedural, not substantive and therefore, retroactive. *Goebel v. Salt Lake City S. R. Co.,* 104 P.3d 1185, 1197 (Utah 2004). Price-fixing has long been outlawed by the UAA and civil remedies have been available to direct purchasers since its passage in 1979. The amendment did not create "new legal consequences" for the already unlawful conduct complained of by IPPs, rather it altered the procedure for its enforcement.

### 13.    IPPs Have Properly Alleged Claims under the District of Columbia's Laws

A violation of the District of Columbia's Consumer Protection Practices Act (CPPA) does not require unconscionable conduct. "While the CPPA enumerates a number of specific unlawful trade practices… the enumeration is not exclusive." *District Cablevision Ltd. Partnership v. Bassin,* 828 A.2d 714, 723 (D.C. 2003); *see also Osbourne v. Capital City Mortg. Corp.,* 727 A.2d 322, 325–26 (D.C. 1999). Accordingly, "plaintiffs may maintain a claim for defendant's alleged price-fixing under the statute," without additional unconscionability allegations. *TFT-LCD*, 586 F. Supp. 2d at 1126; *see also Wire Harness*, 2013 U.S. Dist. LEXIS

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the
Second Consolidated Complaint; Case No. 3-14-cv-03264-JD                                    14**

80338, *89; *In re Flat Panel*, 586 F. Supp. 2d at 1126. "A main purpose of the [Act] is to 'assure that a just mechanism exists to remedy all improper trade practices.'" *Id*. (citing D.C.Code § 28-3901(b)(1)).   Defendants' next argument was rejected by the very case they cite, *Sun Dun, Inc. v. Coca-Cola Co.*, 770 F.Supp. 285 (D. Md. 1991) (allowing discovery on interstate link even though none of the defendants, nor the plaintiff were residents or citizens of the District of Columbia); *Wire Harness*, 2013 U.S. Dist. LEXIS 80338, *78-79.

### 14.    Michigan Permits Indirect Purchaser Suits for Price-Fixing

Fixating on an apparent drafting error in the SCC, Defendants assert that the Michigan claim should be dismissed because IPPs cited the monopolization statute rather than the price-fixing statute.  As is abundantly clear from the SCC, IPPs are asserting price-fixing claims against Defendants and the notice pleading requirements in federal court have been more than satisfied. Plaintiffs have stated a Michigan price-fixing claim.

### 15.    IPPs Have Properly Alleged Claims under Missouri Law

Defendants claim that Plaintiffs have not alleged that they purchased capacitors for their own personal, family or household use.  Def. Mot. 15. As stated in previous sections, named Plaintiffs Michael Brooks and Steve Wong confer representative standing for Missouri claims.

### 16.    IPPs Have Complied with Hawaii's Notification Requirements

Contrary to Defendants' conclusory statement, IPPs have provided notice to Hawaii's attorney general, in compliance with the state's statute.  The attorney general's office has declined to prosecute the matter, providing IPPs with the necessary standing to pursue the claims. At the Court's request, Plaintiffs can provide the correspondence evidencing the attorney general's declination to proceed with the case.

## III.   CONCLUSION

For the foregoing reasons, this Court should reject Defendants' arguments and sustain the IPPs' claims as stated in the Second Consolidated Complaint.[4]

---

[4] To the extent this Court finds merit to any of Defendants arguments and dismisses claims, IPPs respectfully request leave to amend to address the claims or substitute in additional Class Representatives.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the Second Consolidated Complaint; Case No. 3-14-cv-03264-JD                                                    15**

Dated:  August 17, 2015                    By:   /s/ Steven N. Williams

 Joseph W. Cotchett
Steven N. Williams
Adam J. Zapala
Elizabeth Tran
Joyce Chang
**COTCHETT PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: 650-697-6000
Fax: 650-697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
etran@cpmlegal.com
jchang@cpmlegal.com

*Interim Lead Counsel for the Indirect Purchaser
Plaintiffs*

Philip Duncan
William Robert Pointer, II
Richard Quintus
Justin Zachary
**DUNCAN FIRM**
900 S. Shackleford Road, Suite 725
Little Rock, AR 72211
Tel: 501-228-7600
Fax: 501-228-0415
rob@duncanfirm.com
phillip@duncanfirm.com
justin@duncanfirm.com
richard@duncanfirm.com

 Daniel R. Shulman
**GRAY PLANT MOOTY**
 500 IDS Center
 80 South 8th Street
 Minneapolis, MN 55402
 Tel: 612-632-3000
 Fax: 612-632-4444
daniel.shulman@gpmlaw.com

 Dan Gustafson
 Dan Hedlund
 Catherine K. Smith
 Sara J. Payne
**GUSTAFSON GLUEK PLLC**
 Canadian Pacific Plaza
 120 South 6th Street, Suite 2600
 Minneapolis, MN 55402
 Tel: 612-333-8844
 Fax: 612-339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the
Second Consolidated Complaint; Case No. 3-14-cv-03264-JD                                          16**

1

csmith@gustafsongluek.com
spayne@gustafsongluek.com

2

William W. Heaton
Robert L. Moore

3

**HEATON & MOORE, P.C.**
44 North Second Street, Suite 1200

4

Memphis, Tennessee 38103
Tel: 901-526-5975 ext. 554

5

Fax: 901-527-3633
wheaton@heatonandmoore.com

6

7

Kent W. Emison
**LANGDON & EMISON**

8

1828 Swift, Suite 303
N Kansas City, MO 64116

9

Tel: 800-397-4910
Fax: 660-259-4571

10

kent@lelaw.com

11

Alexander M. Schack
Natasha A, Naraghi

12

**LAW OFFICES OF ALEXANDER M. SCHACK**
16870 West Bernardo Drive, Suite 400

13

San Diego, CA 92127
Tel: 858-485-6535

14

Fax: 858-485-0608
alexschack@amslawoffice.com

15

natashanaraghi@amslawoffice.com

16

Eric B. Fastiff
Brendan P. Glackin
Dean M. Harvey

17

Lin Y. Chan
Katherine C. Lubin

18

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

19

275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

20

Tel: 415-956-1000
Fax: 415-956-1008

21

efastiff@lchb.com
bglackin@lchb.com

22

dharvey@lchb.com
lchan@lchb.com

23

klubin@lchb.com

24

Krishna B. Narine
Joel C. Meredith

25

**MEREDITH & NARINE**

26

100 S. Broad St.
Suite 905

27

Philadelphia, PA 19110
Tel: 215-564-5182

28

Fax: 267-687-1628

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the
Second Consolidated Complaint; Case No. 3-14-cv-03264-JD                                    17**

knarine@m-npartners.com
jmeredith@m-npartners.com

Jack W. Lee
Derek Howard
Aron Liang
**MINAMI TAMAKI LLP**
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel: 415-788-9000
Fax: 415-398-3887
jlee@minanitamaki.com
dhoward@minamitamaki.com
aliang@minamitamaki.com

Mark P. Robinson, Jr.,
Daniel S. Robinson,
**ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
Tel: 888-701-1288
Fax: 949-720-1292
mrobinson@rcrsd.com
drobinson@rcrsd.com

Donald H. Slavik
**ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.**
2834 Blackhawk Court
Steamboat Springs, CO 80487
Tel: 949-720-1288
Fax: 949-720-1292
dslavik@rcrsd.com

Hollis Salzman
Kelli Lerner
**ROBINS, KAPLAN, MILLER & CIRESI**
601 Lexington Avenue
Suite 3400
New York, NY 10022-4611
Tel: 212-980-7400
Fax: 212-339-4181
hsalzman@rkmc.com
klerner@rkmc.com

Guido Saveri
R. Alexander Saveri
Geoffrey Rushing
Travis Manfredi
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Tel: 415-217-6810
guido@saveri.com
rick@saveri.com

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the
Second Consolidated Complaint; Case No. 3-14-cv-03264-JD                                    18**

geoff@saveri.com
travis@saveri.com

Anne Elizabeth Smith
**SHAFFER LOMBARDO SHURIN**
911 Main Street, Suite 2000
Kansas City, MO 64105
Tel: 816-931-0500
asmith@sls-law.com

Geoffrey J. Spreter
**SPRETER LEGAL SERVICES, APC**
601 3rd Street
Coronado, CA 92118
Tel: 619-865-7986
spreterlegalservices@gmail.com

Steven G. Sklaver
Marc Seltzer
**SUSMAN GODFREY, LLP**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: 310-789-3100
Fax: 310-789-3150
ssklaver@susmangodfrey.com
mseltzer@SusmanGodfrey.com

*Additional Counsel for the Indirect Purchaser
Plaintiffs*

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**Indirect Purchaser Plaintiffs' Opposition to Certain Defendants' Joint Motion to Dismiss the
Second Consolidated Complaint; Case No. 3-14-cv-03264-JD                                    19**