Charles E. Tompkins (admitted pro hac vice)
Jordan D. Shea (admitted pro hac vice)
**Williams Montgomery & John Ltd.**
233 S. Wacker Drive, Suite 6100
Chicago, IL 60606
Telephone: (312) 443-3200
Facsimile: (312) 630-8500
CET@willmont.com
JDS@ willmont.com

Lesley E. Weaver (State Bar Number 191305)
lweaver@blockesq.com
BLOCK & LEVITON LLP
520 3rd Street, Suite 180
Oakland, CA  94607
Telephone: (415) 968-8992
Facsimile: (617) 507-6020

Attorney for Plaintiff
(Additional counsel listed on signature page)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Capacitors Antitrust Litigation* | Case No. 3:14-CV-03264-JD |
| This document relates to:<br>**DIRECT PURCHASER CLASS ACTION AND FLEXTRONICS INTERNATIONAL USA, INC.'S INDIVIDUAL ACTION** | **NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF INDIVIDUAL (NON CLASS) PLAINTIFF FLEXTRONICS INTERNATIONAL USA, INC.'S MOTION FOR ORDER (1) COMPELLING INTERIM LEAD COUNSEL FOR THE DIRECT PURCHASER PLAINTIFFS TO PROVIDE ACCESS TO THE DISCOVERY RECORD AND (2) MODIFYING THE ORDER APPOINTING INTERIM LEAD COUNSEL FOR THE DIRECT PURCHASERS, DOCKET 319**<br><br>Date:         October 7, 2015<br>Time:        10:00 a.m.<br>Courtroom:  11, 19th Floor |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ iii

I. STATEMENT OF THE ISSUED PRESENTED ................................................................................ 1

II. INTRODUCTION AND SUMMARY OF ARGUMENT .................................................................. 1

III. STATEMENT OF FACTS ................................................................................................................. 4

    A. Individual Plaintiff Flextronics ................................................................................................ 4

    B. Procedural History Relevant to Flextronics's Individual Action. ............................................ 4

    C. Differences Between Flextronics's Individual Action and the DPP Class Action .................. 5

    D. Flextronics's Efforts to Obtain Access to the Record from DPP Counsel .............................. 7

    E. Flextronics's Efforts to Participate In Discovery .................................................................... 8

IV. ARGUMENT ..................................................................................................................................... 10

    A. The Court Did Not Merge the DPP Class Action With Flextronics's Individual Action. ........................................................................................................................................... 10

    B. DPP Counsel Cannot Adequately Represent Flextronics Given Differences Between Flextronics's Individual Action and the DPP Class Action. ................................ 10

    C. This Court Should Modify Its Order Appointing Direct Purchaser To Permit Flextronics to Protect Its Individual Interest. ........................................................................... 12

        1. Flextronics's Individual Interests Warrant Implementing Procedures to Protect Its Interests Beyond Merely the Opt Out Provisions of Fed. R. Civ. 23(b)(3). ......................................................................................................................... 12

        2. The Court's Instructions at the Status Conference Are Insufficient to Protect Flextronics's Interest. .................................................................................... 13

        3. This Court Should Amend The Order Appointing Lead Counsel to Require DPP Class Counsel to Provide Flextronics Access to the Record and to Coordinate Discovery With Flextronics. ............................................................ 13

V. CONCLUSION .................................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Accord Weeks v. Bareco Oil Co.*,
   125 F.2d 84 (7th Cir. 1941) ...................................................................................................12

*Comcast v. Behrend*,
   No. 11-864, 133 S. Ct. 1426 (2013)........................................................................................2

*Gelboim v. Bank of America Corp.*,
   135 S. Ct. 897 (Jan. 21, 2015) ...............................................................................................10

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   171 F.R.D. 213 (N.D. Ill. 1997) ............................................................................................12

*In re Capacitors Antitrust Litig.*,
   Master File No. 14-cv-03264-JD, 2015 WL 3398199 (N.D. Ca. May 26, 2015)..................4

*In re Graphic Processing Units Antitrust Litig.*,
   253 F.R.D. 494 (N.D. Cal. 2008) ..........................................................................................11

*In re Korean Air Lines Co., Ltd.*,
   642 F.3d 685 (9th Cir. 2011) .................................................................................................10

*In re Optical Disk Drive Antitrust Litig.*,
   303 F.R.D. 311 (N.D. Cal. 2014) ..........................................................................................11

*In re Refrigerant Compressors Antitrust Litig.*,
   731 F.3d 586 (6th Cir. 2013) .................................................................................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   37 F. Supp. 3d 1102 (N.D. Cal. 2014) ..................................................................................12

*Johnson v. Manhattan Railway*,
   289 U.S. 479 (1933) ..............................................................................................................10

*Matthews v. Eldridge*,
   424 U.S. 319 (1976) ..............................................................................................................12

*McCubbrey v. Boise Cascade Home & Land Corp.*,
   71 F.R.D. 62 (N.D. Cal. 1976) ..............................................................................................12

*Phillips Petroleum v. Shutts*,
   472 U.S. 797 (1985) ..............................................................................................................12

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ..............................................................................................................10

*Tulsa Prof'l Collection Servs. v. Pope*,
   485 U.S. 478 (1988) ..............................................................................................................12

*Wal-Mart Stores, Inc. v. Dukes, et al.*,
   131 S. Ct. 2541 (2011) ............................................................................................................7

**Statutes**

Foreign Trade Antitrust Improvements Act,
    15 U.S.C.§ 6(a) ("FTAIA") ................................................................................................... passim

28 U.S.C. § 1407................................................................................................................................10

28 U.S.C. § 734.................................................................................................................................10

**Other Authorities**

Bob Marshall & Leslie Marks, *The Economics of Collusion,*
    111-113 (MIT Press 2012)..............................................................................................................6

**Rules**

Adv. Comm. Notes, Fed R. Civ. P. 23, 28 U.S.C.App., 698 (1966) ......................................................4, 12

Fed. R. Civ. P. 30(b)(6).................................................................................................................3, 9

Fed. R. Civ. P. 23(b)(3)................................................................................................................2, 12

Fed. R. Civ. P. 42..............................................................................................................................10

Model Rule of Professional Conduct 1.7(a) ........................................................................................11

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on October 7, 2015, at 10:00 a.m. or as soon thereafter as this matter may be heard, before the Honorable James Donato, San Francisco Courthouse, Courtroom 11 – 19th Floor 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Flextronics International USA, Inc. ("Flextronics") will and hereby does move this Court for an order (1) Compelling Interim Lead Counsel for the Direct Purchaser Plaintiffs to Provide Access to the Discovery Record and (2) Modifying the Order Appointing Interim Lead Counsel for the Direct Purchasers, Docket 319.

In support of this Motion, Flextronics relies upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Charles E. Tompkins sworn to on September 2, 2015, and such other materials and information that the Court may properly consider at or before the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     STATEMENT OF THE ISSUED PRESENTED**

Individual Plaintiff Flextronics International, USA, Inc. ("Flextronics") requests an Order compelling Interim Lead Counsel for the Direct Purchaser Plaintiffs ("DPP Counsel") to provide Flextronics access to the discovery record. Flextronics also requests that this Court's Order Appointing Interim Lead Counsel, Dkt. 319, be amended to codify this Court's prior instruction that DPP Counsel and Flextronics are to "work together" with regard to discovery and other matters. A Proposed Order is attached as Exhibit B to this memorandum.

Defendants and Interim Lead Counsel for the Indirect Purchasers take no position with regard to the relief requested herein. Efforts to confer with DPP Counsel regarding the relief requested are set forth herein.

**II.    INTRODUCTION AND SUMMARY OF ARGUMENT**

The individual action filed by Flextronics alleges specific conspiratorial agreements among varying sub-groups of the Defendants that targeted the prices paid by specific large purchasers

(hereinafter, the "sub-group agreements").[1] The sub-group agreements targeting Flextronics or its customers allegedly damaged Flextronics over and above any damages inflicted by the market-wide conspiracy alleged by the DPP Class. *See* Complaint, Ex. 1, at ¶415; *infra* at Section III.C. Proving the sub-group conspiracies is thus one of Flextronics's key goals in this litigation. DPP Counsel cannot adequately represent Flextronics in its effort to prove its individual allegations because evidence tending to support the existence and effect of the sub-group agreements may also tend to support defense arguments to the effect that variations in antitrust impact or damages among members of the class render class certification improvident.[2]

Similarly, evidence demonstrating that varying sub-group agreements significantly affected the prices paid by certain individual class members also may support defense arguments that any class-wide expert impact or damages analysis is inadmissible because it does not "fit" with the evidence of the sub-group conspiracies. *See Comcast v. Behrend*, No. 11-864, 133 S. Ct. 1426, 1432-1433 (2013). Evidence of the sub-group conspiracies may also suggest variations among putative class members regarding the application of the Foreign Trade Antitrust Improvements Act, 15 U.S.C.§ 6(a) ("FTAIA"). Prices set by certain sub-group conspiracies that directly and foreseeably inflate prices paid by Microsoft, Apple or Flextronics may be actionable under the Sherman Act, while sub-group conspiracies that foreseeably impact only foreign markets may not be. *See* Complaint, at ¶¶417,424.

Recognizing Flextronics's interest in proving its individual allegations, this Court ruled that Flextronics could actively participate in this litigation to develop and prove its individual allegations in coordination with DPP Counsel. *See* Declaration of Charles E. Tompkins ("Tompkins dec."), attached as Ex A, ¶ 5; Transcript, Ex. 2, at 12:5-7 (Flextronics and DPP Counsel should "work together on discovery and other matters" and Flextronics can "carve out its own thing"). This was a sensible approach: effective coordination of litigation efforts preserves the resources of the Court and litigants and

---

[1] *See* Declaration of Charles E. Tompkins ("Tompkins dec."), attached as Ex A, at ¶1. Second Amended Consolidated Class Action Complaint of the DPP Class and Individual Complaint of Flextronics (the "Complaint"), attached to Tompkins dec. at Ex 1, at ¶¶415-428. Transcript of July 8, 2015 Status Conference ("Transcript"), attached to Tompkins dec. at Ex. 2, at pp. 11-14 (discussing Flextronics's individual allegations). For ease of reference, all numbered exhibits refer to material attached to the Tompkins declaration. Exhibits identified by letter are attached to this Memorandum.

[2] Flextronics takes no position regarding the merits of these potential defense arguments or the propriety of certifying any putative class pursuant to Fed. R. Civ. P. 23(b)(3).

2

minimizes the likelihood of duplicative discovery.  Since the Court ruled, Flextronics has sought access to the discovery record to participate in discovery.  *See* Section III.D, *infra*.   DPP Counsel, however, has refused to permit Flextronics access to the discovery record or to coordinate discovery efforts.

Indeed, despite nearly two months of prodding, and two written promises to do so, DPP Counsel has not even proposed terms under which, in DPP Counsel's view, Flextronics could have access to the record.   *See* Section III.D, *infra*.   DPP Counsel also has excluded Flextronics from discovery conferences with Defendants; failed to include Flextronics in drafting interrogatories that Defendants predictably now contend should count against Flextronics for purposes of discovery limits; and failed to consult Flextronics (even regarding scheduling) before issuing a notice of deposition pursuant to Fed. R. Civ. 30(b)(6).

DPP Counsel's approach prevents Flextronics from proving its individual allegations, creates satellite disputes that waste the resources of the litigants and the Court, and imperils the Court's schedule.  Flextronics cannot access the record through other means.  Defendants have informed Flextronics that they will not re-produce material previously produced to DPP Counsel.  Defendants also have taken the position that Flextronics may participate in discovery only through DPP Counsel.  *See* Section III.E, *infra*.  Flextronics thus has no mechanism to prepare its case in support of Flextronics's individual allegations absent Court relief.

Nor can Flextronics fully respond to Defendants' discovery on the schedule set by the Court. Defendants served Flextronics with contention interrogatories purporting to address Flextronics's individual allegations.  *See* Defendants' Second Set of Interrogatories to Flextronics, Ex. 5.   Flextronics objects to the interrogatories, but has agreed to respond using the limited material to which Flextronics has access pending resolution of this Motion.  Tompkins dec. ¶ 9.  Flextronics's responses, however, will require supplementation because Flextronics does not have access to the vast majority of the discovery record.   Further delay will put Flextronics in the position of seeking extensions that would have been unnecessary had DPP Counsel timely negotiated in good faith regarding access to the record and coordinated discovery efforts with Flextronics.  Flextronics therefore respectfully requests that the Court: (1) compel the DPP Class to produce the discovery material produced to the DPP Class by Defendants thus far; and (2) modify the Order Appointing Interim Lead Counsel for the Direct Purchaser Class, Dkt.

3

319, to require DPP Counsel to coordinate their litigation efforts with Flextronics. *See* Proposed Order, Ex. B.

### III. STATEMENT OF FACTS

#### A. Individual Plaintiff Flextronics

Flextronics is a global manufacturer of electronics and other goods for corporate customers around the world, including many of the largest electronics companies in the United States. *See* Consolidated Complaint ¶ 32. Flextronics purchased at least hundreds of millions of electrolytic and film capacitors during the alleged conspiracy period. *Id.* ¶ 419. Flextronics's financial interest in this litigation thus dwarfs any other plaintiff's. The case management structure should reflect Flextronics's interest in individual litigation. *See* Adv. Comm. Notes, Fed R. Civ. P. 23, 28 U.S.C.App., at 698 (1966) (courts overseeing class actions should "consider the interests of individual members of the class in controlling their own litigations and carrying them on as they see fit.").

#### B. Procedural History Relevant to Flextronics's Individual Action.

Flextronics made several efforts to coordinate its litigation efforts before and after filing its Complaint. On May 26, 2015, this Court resolved motions to dismiss markedly different complaints filed by the Indirect Purchaser Plaintiff ("IPP") Class and the DPP class. *See* Memorandum Opinion and Order, *In re Capacitors Antitrust Litig.*, Master File No. 14-cv-03264-JD, 2015 WL 3398199, at *1, 2 (N.D. Ca. May 26, 2015). The following Friday Flextronics filed an individual complaint. *See* Complaint, *Flextronics International USA, Inc. v. NEC Tokin*, et al., 5:15-cv-02517, Dkt.1. On June 3, 2015, Flextronics counsel asked DPP Counsel to include Flextronics in discussions regarding document custodians and search terms. *See* Tompkins dec. ¶¶10-11, Ex. 6. On June 17, 2015, Flextronics, having agreed to the protective order, sought access to an un-redacted version of the DPP and IPP Complaints. *See* Tompkins dec. ¶12, Ex. 7. Although both communications specifically requested a response, *see id.* ¶¶11, 13, none was received.

Flextronics's action was related to the class action on June 22, 2015. *See* Order, *In re Capacitors Antitrust Litig.*, No. 3:14-cv-3264-JD, at Dkt. 751. Defendants and Flextronics set a Rule 26 conference for July 13, 2015. *See* Transcript at 10:20-21. Flextronics again sought to abide by the Court's schedule and coordinate with the DPP Class. *See* Plaintiff Flextronics's Initial Status Conference Statement, No.

4

3:14–cv-3264, Dkt. 757, at 2-3 (July 7, 2015). The Court held a Status Conference on July 8, 2015 (the "Conference"). DPP Counsel and Defendants both have relied on the Court's comments at the Conference to argue that Flextronics is not entitled to participate in discovery except as permitted by DPP Counsel. *See* Tompkins dec., Ex A, ¶¶, 14, 24, 39, 43.

Although Flextronics's action alleges the same market-wide conspiracy as the DPP Class action, Flextronics's individual action also addresses "individual issues" that animated Flextronics's interest in individual litigation – the reasons Flextronics "filed our own complaint." *Id.* at 11:4-7. As discussed in Section III.C, *infra*, and explained at the Conference, Flextronics's individual concerns largely arise from Flextronics's allegations that "some elements of the conspiracy were targeted specifically at Flextronics and its customers." *Id.* at 11:9-15.[3] The Court thus ordered Flextronics and the DPP Class to file a consolidated complaint including Flextronics's individual allegations and to "work together on discovery and everything else," and for Flextronics to "carve out your own thing." *Id.* at 11: 5-7; 13:1-15.

The Court subsequently issued a Minute Order addressing only the consolidated complaint:

> For the newly-filed, related action of *Flextronics v. NEC TOKIN*, Case No. 3:15-cv-02517, the Court consolidates that case into *In re Capacitors Antitrust Litigation*, Case No. 3:14-cv-3264, and will close the *Flextronics* case for administrative purposes. Counsel for Flextronics represented that it has unique issue not shared with other DPP plaintiffs. Flextronics may raise those issues when appropriate in separate briefs, but only for specific issues on which Flextronics has a unique and individualized position.
>
> Flextronics counsel and the interim lead class counsel for direct purchaser plaintiffs are to meet and confer so that the DPPs' complaint can be amended to include Flextronics' allegations. The new allegations relating to Flextronics should be easy to find, and the amendment should not add any other new allegations. The amended complaint should be filed by July 17, 2015.

*See* Minute Order, Dkt. 774, at 2. The Minute Order did not provide any instructions regarding discovery modifying the Court's initial admonition that DPP Counsel and Flextronics should "work together on discovery and everything else" and Flextronics should "carve out [its] own thing." *Id.* at 11: 5-7.

**C. Differences Between Flextronics's Individual Action and the DPP Class Action**

Flextronics's specific allegations involve the pricing effect of specific alleged conspiratorial agreements among some but not all Defendants that targeted Flextronics and its customers (previously

---

[3] Flextronics has other individual interests worthy of protection. These include an interest in its choice of defendants and an interest in litigating in a manner consistent with Flextronics's business interests.

defined as the "sub-group agreements"). Flextronics (but not the DPP Class) alleges that:

> certain Defendants adjusted the price and market availability of their products based on specific agreements among some but not all other Defendants to fix, raise, maintain, and/or stabilize prices of Capacitors sold to or for specific purchasers of Capacitors, including Flextronics.

Complaint at ¶415. The sub-group agreements specifically targeted Flextronics and its customers, including Flextronics's customers in the United States. *See id.* at ¶418(c) – (e). The precise membership of each sub-group varied depending on which Defendants supplied the particular conspiracy target in question. *Id.* Specific sub-group agreements targeted Flextronics customers Apple; Digi-Key; Benchmark Electronics; Rockwell Automation; Intel; Dell; HP; and Microsoft, among others. *See id.* at ¶¶418(c)(d), 424. Flextronics and its targeted customers were therefore the victim of *both* the overall conspiracy alleged by DPP Counsel *and* additional sub-group agreements that caused damage *over and above* the damage inflicted by the overall conspiracy. *Id.* at ¶424.

The sub-group agreements are of particular concern to Flextronics. Flextronics typically is the direct purchaser of capacitors used in the manufacture of electronics for its customers. *Id.* at ¶422. Flextronics's purchase price is strongly associated with the price Flextronics's customers would pay for those same capacitors were the customer itself buying the capacitors directly. *See id.* at ¶¶427-29 (specific agreements targeting Flextronics's customers directly caused Flextronics to pay inflated prices for capacitors purchased in order to manufacture goods for those customers). The relationship between Flextronics's price and the customer's price is especially strong in the case of large customers such as the entities targeted by the sub-group conspiracies. *See id.*

Defendants likely invested greater resources into monitoring and policing the sub-group agreements than any market-wide agreements. *See* Marshall & Marx, *The Economics of Collusion*, at pp. 111-123. The additional investment would be justified by the added 'bang for the buck' achieved by targeting large purchasers and the increased likelihood that cartel participants can accurately detect cheating on agreements among fewer conspirators than targeting purchasers that typically rely upon relatively transparent mechanisms, like competitive bidding, to reach price agreements. *Id.* The sub-group agreements potentially inflicted damages on Flextronics *over and above* any damages caused by the overall conspiracy alleged by the DPP Class. *See* Complaint, at ¶¶427-29.

Flextronics has an obvious incentive to prove its sub-group agreement allegations and to

incorporate the pricing effects of the sub-group agreements into Flextronics's damages analysis. DPP Counsel's interest in proving the existence and effect of the sub-group agreements, in contrast, conflicts with DPP Counsel's interest obtaining class certification. Evidence of the sub-group conspiracies may tend to support the contention that the impact of the conspiracy on any individual class member varies depending on which (if any) sub-group agreements targeted that particular class member.[4] It defies common experience to think that DPP Counsel will focus on proving the existence or effect of the sub-group agreements to the same extent as Flextronics given DPP Counsel's very significant interest in obtaining certification of the putative direct purchaser class.[5]

Flextronics's sub-group allegations also are relevant to the question whether certain overcharges are within the ambit of the Sherman Act or excluded by operation of the FTAIA. Sub-group agreements targeting United States entities by name plainly had a direct and foreseeable impact on U.S. commerce. *See* 15 U.S.C § 6(a).[6] In contrast, certain sub-groups agreements targeting only foreign commerce may be outside the ambit of the Sherman Act. *Id.* The sub-group agreements thus potentially could serve as the basis for a defense argument that individual FTAIA defenses preclude class certification. *See Wal-Mart Stores, Inc. v. Dukes*, *et al.*, 131 S. Ct. 2541, 2560-2561 (2011).

**D. Flextronics's Efforts to Obtain Access to the Record from DPP Counsel**

Flextronics first requested that DPP provide Flextronics access to or copy of the discovery record on July 9, 2015. *See* Tompkins dec. ¶15, Ex. 8. Flextronics asked again on July 15th, 17th, and 23rd. *Id.* ¶¶17-19, Exs. 10, 11, 12. The July 23rd request included an unsolicited offer to pay reasonable costs associated with Flextronics's access to the database. *Id.* at ¶19, Ex. 12. Flextronics never received a substantive proposal regarding any aspect of the issue. *See id.* at ¶20. DPP Counsel would not even state whether in their view Flextronics was entitled to the record. *Id.* Only after Flextronics indicated that it

---

[4] It is, of course, impossible to reach a firm conclusion on this point because Flextronics has been unable to review the discovery produced by Defendants.

[5] The proper way to estimate the pricing effects of the sub-group agreements in any expert damages analysis is a particular area of concern. Flextronics informed DPP Counsel on August 11th that Flextronics intended to create an individual damages estimate and needed immediate access to the data produced by Defendant. *See* August 11 Letter from Tompkins to Saveri, Ex. 16, n.1. Flextronics received no response.

[6] Sub-group conspiracies targeting United States entities for which Flextronics directly purchased capacitors give rise to a claim by Flextronics. *See* Complaint ¶424.

7

would seek Court relief did DPP Counsel confer regarding access to the record.  S*ee id.* at ¶¶22-24.

That conference took place on August 10, 2015.  *See id.* at ¶24.  DPP Counsel and Flextronics agreed that the Court's comments at the Conference suggested that the Court (unsurprisingly) did not intend for Flextronics to pursue independent discovery duplicative of the DPP Class, and assumed Flextronics would coordinate with the DPP Class to obtain the discovery record.  *Id.*, ¶24, Ex. 16 (August 11, 2015 letter from Tompkins to Saveri).   Flextronics and DPP Counsel agreed they would exchange written "bullet point lists" governing discovery coordination and confer further on August 14th.  *Id.* ¶25.  Flextronics sent its bullet point letter on August 11th.  *Id*. at ¶26.   DPP Counsel never sent anything.  *Id.* ¶27.

On August 14, 2015, DPP Counsel indicated again that their primary concern was that Flextronics pay for access to a unified document database.  *Id.* at ¶28.  Flextronics had already agreed to reimburse DPP Counsel for a reasonable share of document and data hosting costs and the like, and thus repeated the request for a concrete proposal.  *Id.* DPP Counsel again promised to send a proposal.  *Id.*  The parties scheduled a further conference for August 18, 2015, to review and discuss the forthcoming proposal.  *Id.* ¶ 29.  Shortly before the call, DPP Counsel asked to postpone the call one day.  *Id.* DPP Counsel later sent an electronic copy of a case DPP Counsel thought relevant to the cost discussion.  *Id.* ¶ 30.  Flextronics responded with questions regarding application of the case to this action and a request to reschedule the cancelled call.  *Id.*   DPP Counsel did not respond.  *Id.*

On August 21, 2015, Flextronics again requested that DPP Counsel reschedule the cancelled call. *Id.* ¶31.  Flextronics received no response.  *Id.*  Accordingly, on August 24, 2015, Flextronics indicated by letter to DPP Counsel that Flextronics would seek relief from the Court absent agreement on access to the discovery record.  *Id.* ¶32, Ex. 20.  DPP Counsel on August 24, 2015, explained the delay by saying he had been "attending to other matters" and would "get [Flextronics] something today." *Id.* ¶ 33.   That was the last Flextronics has heard from DPP Counsel on this topic.  *Id.* ¶¶ 33-35

**E.  Flextronics's Efforts to Participate In Discovery**

In an effort to maintain the schedule despite DPP Counsel's conduct, on August 13, 2015, Flextronics requested that all Defendants produce a copy of the documents and data produced to the DPP Class and the IPP Class.  Tompkins dec. ¶ 36.   Only Defendants Panasonic and Nitsuko agreed.  *Id.*

8

1  All other Defendants interpret the Court's comments at the Conference to mean that Flextronics may access the record and serve discovery only through DPP Counsel. *See* Tompkins dec. ¶¶ 39, 43; Ex. 23, August 24, 2015, Letter From Mendel to Tompkins; Ex. 26, August 31, 2015 email from Defendants to Tompkins. Defendants also take the position that discovery issued by DPP Counsel should be counted against Flextronics for purposes of calculating compliance with discovery limits. *Id.* ¶41.

Defendants issued two sets of interrogatories to Flextronics pursuant to Defendants' interpretation of a discovery stipulation entered into by DPP Counsel before Flextronics filed its action. *See* Tompkins dec., ¶¶8, 41; Ex. 5, Second Set of Ints.; Ex. 23, August 24 Mendel Letter to Tompkins. Flextronics disagrees with Defendants' interpretation of the discovery stipulation. *See* Tompkins dec. ¶9. Nevertheless, Flextronics has agreed to answer the interrogatories based on the limited material available to Flextronics during the pendency of this motion. *Id.* Answers to the contention interrogatories, however, will necessarily be incomplete because Flextronics will need to supplement its initial answers after obtaining and reviewing the record.

DPP Class Counsel issued both interrogatories and a deposition notice pursuant to Fed. R. Civ. P. 30(b)(6) to Defendants without consulting Flextronics or affording Flextronics any input into the discovery sent. *See* Tompkins dec., ¶7; Ex 3 (Direct Purchaser Plaintiffs' Third Set of Interrogatories); Ex. 4 (Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) to Defendant KEMET Corp.). Defendants' position that discovery by Flextronics is limited by prior agreements regarding discovery now leaves only two interrogatories remaining for Flextronics. *See* Ex. 24, Stipulation and Order, Dkt. 725, ¶ A.1. Several of the interrogatories DPP Counsel sent apparently target class certification or FTAIA arguments largely irrelevant to Flextronics. *See, e.g.*, Tompkins dec. ¶7, Ex. 3 (DPP Class Third Set of Interrogatories to Defendants), Int. Nos. 21, 22.

DPP Counsel also served a Notice of Deposition Pursuant to Fed R. 30(b)(6) on KEMET without seeking input from Flextronics as to the substance of the topics or the proposed date of the deposition. *See* Tompkins dec. ¶ 7, Ex. 4 (Notice of Deposition Pursuant to Rule 30(b)(6) to Kemet ("Kemet 30(b)(6) Notice")). Some topics touch on Flextronics's individual concerns.[7] For example, Topic 3

---

[7] Flextronics would have counseled against including certain topics as written KEMET 30(b)(6) notice. *See* fn 3, *supra.*

9

seeks information regarding cartels "between or among" various alleged conspirators. *Id.* Topic 3. Flextronics, however, cannot effectively participate in the deposition because Flextronics does not have access to the documentary record necessary for effective participation. Defendants will almost certainly oppose a separate deposition by Flextronics, meaning DPP Counsel's refusal to coordinate discovery will likely create needless dispute.

## IV. ARGUMENT

### A. The Court Did Not Merge the DPP Class Action With Flextronics's Individual Action.

Defendants have suggested that the Court's comments at the Conference indicate that the Court's Order requiring DPP Counsel and Flextronics to file a consolidated complaint "merged" Flextronics's action with the DPP Class action such that DPP Class counsel are now "lead counsel" with responsibility for Flextronics's case. *See* Ex. 23, August 24, 2015, Letter from Mendel to Tompkins, at 2. Such an approach, however, would put the Court's approach at odds with controlling authority. Independently filed actions in a multidistrict litigation "ordinarily retain their separate identities." *Gelboim v. Bank of America Corp.,* 135 S. Ct. 897, 904 (Jan. 21, 2015).[8] "Consolidation is a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Railway*, 289 U.S. 479, 496-97 (1933).[9] The Minute Order "alter[ed] only how" Flextronics's and the DPP Class claims "are processed*," Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*., 559 U.S. 393, 408 (2010), for the convenience for the parties and judicial administration. *See Gelboim*, 135 S. Ct. at 905.

### B. DPP Counsel Cannot Adequately Represent Flextronics Given Differences Between Flextronics's Individual Action and the DPP Class Action.

DPP Counsel cannot adequately represent Flextronics in this action because it is reasonable to anticipate that Defendants will attempt to use evidence supporting Flextronics's individual allegations to

---

[8] *Gelboim* involved an action transferred pursuant 28 U.S.C. § 1407, but "the principle that individual cases remain separate actions despite being coordinated or consolidated for pretrial purposes do not dissipate because a particular case was filed in the MDL's home district." *In re Korean Air Lines Co., Ltd*., 642 F.3d 685, 700 n.13 (9th Cir. 2011).

[9] *Johnson* pre-dates the Federal Rules and thus interprets 28 U.S.C. § 734. However, the original advisory notes to Rule 42 continues the substance of 28 U.S.C. § 734, except with regard to certain express differences inapplicable here.

oppose class certification. *See* Section III.C, *supra*. Flextronics's allegation that the sub-group conspiracies caused damages specific to each sub-group conspiracy could uncover or highlight evidence of variation among class members that defendants in prior cases have used to argue against class certification. *See In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 318 (N.D. Cal. 2014) ("*ODD*"); *In re Graphic Processing Units Antitrust Litig.*, 253 F.R.D. , 494 (N.D. Cal. 2008) ("*GPU*"). In *GPU*, with which this Court is familiar, the court denied class certification partly because class plaintiffs' expert analysis "masked important variations between products and purchasers." *GPU*, 253 F.R.D. at 494. Likewise, in *ODD*, the court denied class certification of a class of direct purchasers of optical disk drives because the expert analysis proffered in support of class certification did not account for potential variations in impact and damages created by bid-rigging agreements that targeted specific large purchasers. *ODD*, 303 F.R.D. at 311-12, 321.

Flextronics's alleged sub-group agreements are similar to the big rigging agreements alleged in *ODD*.[10] *Compare ODD*, 303 F.R.D. at 320-21 (describing bid-rigging conspiracies targeting certain large purchasers) *with* Consolidated Complaint at ¶¶415-428 (alleging sub-group agreements targeting Flextronics and other large purchasers). Evidence proving these sub-groups agreements may uncover evidence of "important variations" in damages among purchasers. *See GPU*, 253 F.R.D. at 494. Proof relating to the sub-group conspiracy allegations also may support arguments that individual FTAIA defenses preclude class certification. *See* Transcript, Ex. 2, at 12:2-4. DPP Counsel's interest in class certification thus is a material limitation rendering DPP Counsel inadequate to represent Flextronics with regard to its individual allegations. *See* Model Prof. Rule 1.7(a)(2) (prohibiting representation where conflicting duties may materially limit the ability to pursue a client's interests).[11] It would be unreasonable to require Flextronics to rely on DPP Counsel to develop evidence that it is reasonably likely Defendants would attempt to use to defeat class certification, especially given the contingent fee structure of class action litigation.

---

[10] Flextronics does not intend to equate *ODD* and this case in all respects. There is very substantial evidence in this case to support allegations of the market-wide conspiracy alleged by both DPP Counsel and Flextronics. The court's discussion of the evidence in ODD suggests that the evidence of a market-wide conspiracy was weaker. *See ODD*, 303 F.R.D. at 308-12.

[11] Although Rule 17(a)(1) in does not apply to absent class members, there is no such limitation on Rule 1.7(a)(2). *See* Model Rule 1.7(a), General Principles, at ¶25.

**C. This Court Should Modify Its Order Appointing Direct Purchaser To Permit Flextronics to Protect Its Individual Interest.**

**1. Flextronics's Individual Interests Warrant Implementing Procedures to Protect Its Interests Beyond Merely the Opt Out Provisions of Fed. R. Civ. 23(b)(3).**

Flextronics's decision to file individual litigation amply demonstrates its substantial interest in pursuing its individual claim in this litigation. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 171 F.R.D. 213, 214 (N.D. Ill. 1997) ("The clearest evidence of a desire to pursue its own litigation [and not participate in the class litigation] … is the filing of its case…[.]").[12] Flextronics's interest in individual litigation is a "chose in action [that] is a constitutionally recognized property interest." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 811-812 (1985). *See also Tulsa Prof'l Collection Servs. v. Pope*, 485 U.S. 478, 485 (1988) ("Little doubt remains that [a cause of action] is property protected by the Fourteenth Amendment."). Flextronics thus has a due process right to be heard "at a meaningful time in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).

This Court therefore should implement case management procedures that "consider the interests of individual members of the class in controlling their own litigations and carrying them on as they see fit." *See* Adv. Comm. Notes, 28 U.S.C.App., at p. 698.[13] *Accord Weeks v. Bareco Oil Co.,* 125 F.2d 84, 88-90, 93-94 (7th Cir. 1941). As the original Advisory Committee that promulgated Fed. R. Civ. P. 23 noted, where individual entities possess a strong interest in the subject matter of the litigation, adequate protection often will require procedures *beyond* merely the notice and opt-out provisions of Fed. R. Civ. P. 23(b)(3). *See* Adv. Comm. Notes, at 698. Indeed, the Advisory Committee noted that in some circumstances "The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action." *Id.* The Advisory Committee's acknowledgement that an individual interest in litigation may in some cases be sufficiently strong to warrant denial of class certification implicitly recognizes that there are many situations in which protecting an individual interest in litigation justify procedural protections more robust than the opt-out provisions of Fed. R. Civ. 23(b)(3). Flextronics's

---

[12] *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 37 F. Supp. 3d 1102, 1106 (N.D. Cal. 2014) (individual complaint provided 'reasonable notice' of interest in individual litigation), *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 68-69 (N.D. Cal. 1976) (individual complaint "constituted an effective expression" of plaintiff's intention to be excluded from the class).

individual action, which requires developing proof that class counsel cannot be expected to adequately develop, presents just such a case.

### 2. The Court's Instructions at the Status Conference Are Insufficient to Protect Flextronics's Interest.

The Court's effort to manage the litigation and protect Flextronics's interest by instructing the parties to "work together on discovery and everything else, and [Flextronics] can carve out your own thing" has proven insufficient to protect Flextronics's interest in proving its individual claim. *See* Transcript, Ex. 2, at 11:5-7. DPP Counsel has ignored the instruction to "work together" on discovery and has not cooperated with Flextronics or timely negotiated regarding such cooperation. *See supra* at III.D. Defendants have construed certain remarks the Court made at the Conference to indicate that Flextronics may pursue discovery through DPP Counsel. *See supra* at III.E.[14] As a result, Flextronics has no procedural mechanism to protect its individual interests. The situation would be unfair in any circumstance, but is especially prejudicial in this case because DPP Counsel faces serious conflicts of interest that limit their ability to represent Flextronics with regard to its individual allegations.

### 3. This Court Should Amend The Order Appointing Lead Counsel to Require DPP Class Counsel to Provide Flextronics Access to the Record and to Coordinate Discovery With Flextronics.

Courts in this district and across the country tasked with overseeing multidistrict antitrust proceedings involving both class actions and individual actions routinely enter case management orders creating a structure for coordinated litigation. *See, e.g.,* Ex. 27, *In Re Rubber Chemicals Antitrust Litig.*, 04-MD-1648, Dkt. 49 (N.D. Cal. Apr. 4, 2005), (recognizing counsel for different classes of plaintiffs and defendants, including non-class plaintiffs); Ex. 28, Special Master's Order Regarding Individual Action Plaintiffs and Case Management, *In re TFT_LCD (Flat Panel) Antitrust Litigation*, Case No. 07-MD-1827 SI, Dkt. 1595 (N.D. Cal. Mar. 12, 2010) (designating counsel for individual action plaintiffs while maintaining previously assigned role of Class Plaintiffs' counsel); Ex. 29, Pretrial Order 5, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,* 05-MD-1720, Dkt. 279

---

[14] The Minute Order Consolidating the DPP Class and Flextronics's individual complaint also has been cited to argue that Flextronics may not pursue its individual allegations. *See supra* at III.E. Orders consolidating complaints often create significant dispute in multi-district litigation. *See In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 590-92 (6th Cir. 2013).

13

(E.D.N.Y. Feb. 24, 2006) (appointing counsel for class and non-class plaintiffs and recognizing right of other counsel on matters in which there is a divergence of opinion): Ex. 30, Amended Case Management Order, *In re Polyurethane Foam Antitrust Litigation,* 10-md-02196, Dkt. 139 (E.D. Ohio May 12, 2011) ("Direct Action (Non-Class) Plaintiffs may actively participate in discovery and other proceedings"); Ex. 31, *In re Chocolate Antitrust Litig.*, 08-MD-1935, Dkt. 387 (M.D. Pa. July 14, 2008) (counsel for DPP, IPP and Individual Plaintiffs assigned responsibility for functions on behalf of their respective groups); Ex. 32, Case Management Order 15, *In re Packaged Eggs Antitrust Litig.*, 02-MD-2002, Dkt. 462, at 3 (E.D. Pa. Jan. 24, 2011) ("Direct Action Plaintiffs may participate in any discovery").

This Court should adopt the same approach by adding the language in the attached proposed Order to the Order Appointing Lead Counsel. The proposed changes require DPP Counsel and Flextronics's counsel to coordinate discovery efforts going forward and require DPP Counsel to provide Flextronics immediate access to the common document database shared by the DPP and IPP Class or make other arrangements to provide Flextronics immediate access to the discovery record.

**V.     CONCLUSION**

For the reasons set forth herein, Flextronics asks that the Court modify Dkt. 319 as requested herein. A proposed order is attached.

| | |
|---|---|
| Dated: September 2, 2015 | FLEXTRONICS INTERNATIONAL USA, INC. |
| | |
| | BY: /S/ LESLEY E. WEAVER |
| | LESLEY E. WEAVER |
| | BLOCK & LEVITON LLP |
| | (STATE BAR NO. 191305) |
| | 520 3RD STREET, SUITE 180 |
| | OAKLAND, CA 94607 |
| | TELEPHONE: (415) 968-8999 |
| | FACSIMILE: (617) 507-6020 |
| | LWEAVER@BLOCKESQ.COM |
| | |
| | CHARLES E. TOMPKINS (ADMITTED PRO HAC VICE) |
| | WILLIAMS MONTGOMERY & JOHN LTD. |
| | 233 S. WACKER DRIVE, SUITE 6100 |
| | CHICAGO, IL 60606 |
| | TELEPHONE: (312) 443-3200 |
| | FACSIMILE: (312) 630-8500 |
| | CET@WILLMONT.COM |
| | JDS@ WILLMONT.COM |
| | |
| | *LEAD COUNSEL* |