Joseph R. Saveri (State Bar No. 130064)
Andrew M. Purdy (State Bar No. 261912)
Matthew S. Weiler (State Bar No. 236052)
James G. Dallal (State Bar No. 277826)
Ryan J. McEwan (State Bar No. 285595)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:    jsaveri@saverilawfirm.com
          apurdy@saverilawfirm.com
          mweiler@saverilawfirm.com
          jdallal@saverilawfirm.com
          rmcewan@saverilawfirm.com

*Interim Lead Class Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL DIRECT PURCHASER CLASS ACTIONS; FLEXTRONICS INTERNATIONAL USA, INC.'S ACTION | Master File No. 3:14-cv-03264-JD<br><br>**DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO PLAINTIFF FLEXTRONICS INTERNATIONAL USA, INC.'S MOTION TO COMPEL ACCESS TO PLAINTIFFS' DISCOVERY RECORD AND TO MODIFY THE COURT'S OCTOBER 31, 2014 ORDER APPOINTING INTERIM CLASS COUNSEL**<br><br>Date:       October 7, 2015<br>Time:       10:00 a.m.<br>Courtroom:  11, 19th Floor |

TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

    A. DPPs Significantly Advanced Plaintiffs' Prosecution of This Action and Substantially Developed the Discovery Record Prior to Flextronics Filing Its Related—And Now Consolidated—Action. ........................................................ 4

    B. Flextronics' Initial Complaint Duplicates DPPs' Consolidated Complaint ........ 4

    C. The Court Consolidated Flextronics's Separate Action With the DPPs' Operative Complaint, But Allowed for Flextronics to Address Its Purportedly "Unique and Individualized Issues" Only "When Appropriate." ........................ 5

    D. Flextronics's Purportedly "Unique" Claims Are Duplicative and Subsumed By Direct Purchaser Class Claims. .................................................................... 6

    E. Flextronics Jumped the Gun In Bringing This Dispute Before the Court. ......... 7

III. ARGUMENT ................................................................................................................... 8

    A. Flextronics's Motion Fails to Meet the Standard for Reconsideration. .............. 8

    B. The Court's Prior Orders Are Appropriate Exercise of the Authority To Manage and Supervise This Class Action Litigation. ..................................................... 8

    C. Flextronics's Claims Should Be Stayed Pending the Class Action's Certification. ............. 9

    D. If Flextronics's Claims Are Not Stayed, the Parties Should Submit Proposals on a Common Benefit Order. ..................................................................................... 12

    E. Flextronics's Request For the Court's Modification of its October 31 Order Is Unwarranted, Unnecessary, And Would Improperly Bestow a Benefit On Flextronics At the Expense of Its Fellow Absent Direct Purchaser Class Members. ............................................................................................................. 14

IV. CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*American Pipe & Construction v. Utah,*
    414 U.S. 538 (1974) ............................................................................................................. 9

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ............................................................................................................12

*Cal. River Watch v. Fluor Corp.,*
    2015 U.S. Dist. LEXIS 117231 (N.D. Cal. Sept. 1, 2015) .................................................. 8

*CMAX, Inc. v. Hall,*
    300 F.2d 265 (9th Cir. 1962) ............................................................................................... 9

*Demint v. NationsBank Corp.,*
    208 F.R.D. 639 (M.D. Fla. 2002) .......................................................................................10

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ............................................................................................................10

*In re Air Crash Disaster at Florida Everglades,*
    549 F.2d 1006 (5th Cir. 1977) ............................................................................................13

*In re Cathode Ray Tube Antitrust Litig.,*
    2014 U.S. Dist. LEXIS 117792 (N.D. Cal. Aug. 20, 2014) ...............................................10

*In re Diet Drugs,*
    553 F. Supp.2d 442 (E.D. Pa. 2008) ..................................................................................13

*In re Linerboard Antitrust Litig.,*
    292 F. Supp. 2d 644 (E.D. Pa. 2003) .................................................................................12

*In re McKesson HBOC, Inc. Secs. Litig.,*
    126 F. Supp. 2d 1239 (N.D. Cal. 2000) .............................................................................10

*In re Oil Spill by the Oil Rig "Deepwater Horizon,"*
    MDL No. 2179 (Federal Judicial Center 1994) ................................................................13

*Landis v. North American Co.,*
    299 U.S. 248 (1936).............................................................................................................. 9

*Phillips Petroleum Co. v. Shutt,*
    472 U.S. 797 (1985 ) ...........................................................................................................10

*School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.,*
    5 F.3d 1255 (9th Cir. 1993) ................................................................................................. 8

*Smiley v. Sincoff,*
    958 F.2d 498 (2d Cir. 1992) ...............................................................................................13

## TABLE OF AUTHORITIES (cont.)

*Sprague v. Ticonic Nat'l Bank*,
   307 U.S. 161 (1939) .................................................................................................... 12

*Trustees v. Greenough*,
   105 U.S. 527 (1881) ............................................................................................... 12, 13

**Other Authorities**

Manual for Complex Litigation (Fourth) § 10.224 (2004) ........................................................ 8

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

## I. INTRODUCTION

Flextronics International USA, Inc.'s ("Flextronics") Motion to Compel or Modify (Dkt. 869, the "Motion") seeks to upset the Court's previous case management orders, and derail the orderly process of this litigation.

Flextronics has suffered no prejudice warranting the relief it seeks. It offers a false choice between creating a new separate track in this litigation—its own—on the one hand and, on the other, demanding that it receive the benefit of the entirety of the Direct Purchaser Plaintiffs' ("DPPs") work developing the discovery record without providing DPPs any consideration in return. Flextronics asserts that either way, it should be afforded equal standing with the class plaintiffs on discovery and case management issues. It makes these arguments with full knowledge that the Court has not granted it the authority and role it now demands in this litigation.

Flextronics is chafing from the Court's limitation of its role in this litigation by its July 9, 2015 Order (Dkt. 774, the "July 9 Order") and its frustration that the Court's October 31, 2014 Order Appointing Interim Lead Counsel (Dkt. 319, the "October 31 Order") gives Interim Lead Counsel all case management, discovery and litigation responsibilities for the Direct Purchaser Class. While Flextronics dresses its arguments up in the language of Due Process and Rule 23, it provides no basis to overturn or modify the Court's October 31 and July 9 Orders. Aside from its counsel's impatience at the pace of the parties' negotiations, Flextronics gives the Court no reason to change or otherwise revisit its October 31 and July 9 Orders, much less to disrupt the orderly progress of this litigation to advance its own aims.

The Court should stay Flextronics's claims until it rules on the Direct Purchaser class certification motion. Flextronics would suffer no injury or prejudice if the Court were to do so. It is a member of the Direct Purchaser Class, and its claims in the now-operative Second Amended Complaint (Dkt. 499-4 (redacted), "SAC") neither warrant special treatment—they are virtually duplicative and entirely derivative of DPPs' claims—nor justify any entitlements beyond what the Court granted it in the July 9 Order. Because Interim Lead Counsel is duly prosecuting all absent Direct Purchaser Class members' claims, Flextronics's claims should be stayed until it opts out of any certified class in this matter.

If Flextronics's claims are not stayed, Flextronics's request for access to the discovery record DPPs have developed in this case should be addressed only if the Court's gives equal consideration—pursuant to well-established principles of equity and fundamental fairness—to a proposal for compensating DPPs for the common benefit their work has provided since the litigation's inception and will continue to provide. Flextronics, as well as any other late-comer plaintiffs or opt-outs, should not be allowed to take the benefit of DPPs' significant work and contingent litigation risk without providing commensurate consideration in exchange. To order DPPs to provide Flextronics the fruits of their contingent labor without recompense would run contrary to case management principles followed by many federal courts tasked with overseeing complex litigation like this case and long-standing principles of equity underlying contingent attorney fee jurisprudence.

Similarly, Flextronics's request to modify the Court's October 31 Order to provide itself a role and a voice in discovery and case management is another attempt by the company to obtain the discovery record without providing DPPs equal consideration for the benefit. Given its absent class member status and its failure to demonstrate any need to add complexity and inefficiency to the Plaintiffs' leadership structure and the prosecution of this case, Flextronics simply provides no good reason why DPPs' Interim Lead Counsel should cede any of its authority or share its work product with an admittedly antagonistic party that would only serve to frustrate the current efficient management of this litigation and the prosecution of class plaintiffs' claims.

## II.  BACKGROUND

Complex antitrust class actions require careful case management. They also require the expenditure of significant amounts of attorney time and litigation costs. Cases of this type place a premium on case management and efficiency. Because the Court has been intimately involved in the litigation since the outset, there is no need here to recount the significant day-to-day progress of the litigation. The Court's docket in this matter demonstrates the substantial activity to date.

DPPs have devoted their efforts to the myriad of tasks at hand. These tasks have included the law and motion matters, but have largely focused on discovery issues, particularly document discovery. DPPs, along with the Indirect Purchaser Plaintiffs ("IPPs") have met and conferred with counsel for all Defendants. DPPs and IPPs have received, reviewed and analyzed hundreds of thousands of pages of

documents and have spent significant time and money obtaining and analyzing Defendants' transactional sales data to create a database of relevant Direct Purchaser sales data. DPPs have done all of the foregoing in compliance with the Court's direction and consistent with the Court's October 31 Order, as well as its other orders setting litigation and case management schedules.[1]

With respect to Flextronics, the Court has specifically ruled that it would not authorize a separate Flextronics-specific "track" and that the company should work cooperatively with DPPs. *See* Tr. at 12: 5-7, 10-20; Dkt. 774 at 2.[2] DPPs have concentrated on meeting the Court's Orders and not Flextronics's demands or its efforts to create a dispute and force unnecessary law and motion practice. Despite Flextronics's characterizations and attempts to create a record of mistreatment, the fact is that DPPs have cooperated with Flextronics beyond what is required in the Court's Orders. *See* Declaration of Joseph R. Saveri ("Saveri Decl.") ¶¶ 21, 29-32. Flextronics deemed DPPs' cooperation insufficient and complained. Despite this distraction and disturbance, DPPs have nonetheless provided Flextronics with access to the discovery taken, collaboratively sought to include Flextronics in the litigation, and otherwise cooperated. *See id.*

Moreover, DPPs did not reject Flextronics's requests for its work product. Instead, DPPs opened a dialog with Flextronics to specifically identify the ways in which DPPs were prepared to cooperate and offering to provide virtually all of its work product to Flextronics so as to avoid any unnecessary duplication of work. *See* Saveri Decl. ¶¶ 23-30. Flextronics did not agree with DPPs' position and, while the parties' negotiations were ongoing, Flextronics hastily filed its Motion. Flextronics efforts to flout the Court's October 31 and July 9 Orders aside, DPPs believe that further negotiations may prove fruitful.

---

[1] The Court has repeatedly admonished counsel that the Court intends to hold parties to the schedules it has set. DPPs take that admonishment seriously.

[2] The July 8, 2015 case management conference transcript is attached as Exhibit 2 to the Declaration of Charles E. Tompkins (Dkt. 869-1, "Tompkins Decl."), and is cited herein as "Tr. at ___."

**A.  DPPs Significantly Advanced Plaintiffs' Prosecution of This Action and Substantially Developed the Discovery Record Prior to Flextronics Filing Its Related— And Now Consolidated— Action.**

Since its appointment as DPPs' Interim Lead Counsel on October 31, 2015, the Joseph Saveri Law Firm, Inc. ("JSLF") has advanced the litigation and reached many milestones based on its investigation and discovery to date, and has set the metes and bounds of this litigation through its pleadings. *See* Saveri Decl. ¶¶ 3, 6, 22. Additionally, much discovery work has been accomplished, resulting in the creation of large electronic databases containing the ESI and sales transaction data produced to date by Defendants, along with the work product of DPPs' Interim Lead Counsel and its co-counsel. *See id.* at ¶¶ 7-19. To date, DPPs' discovery efforts have already led to the production of over 350,000 documents, with that amount certain to increase. *See id.* at ¶ 17. Practically all of this case development and discovery work was performed prior to Flextronics's June 5, 2015 filing of its initial Complaint. *See id.* at ¶¶ 7-19, 20. And, indeed, Flextronics has played no role in prosecuting the case to date. *See id.* at ¶¶ 7-23. Flextronics has not participated in any discovery meet and confers with Defendants, negotiations regarding search terms, efforts to organize Defendants' productions, or the review, analysis and translation of any of the produced documents. *See id.*

**B.  Flextronics' Initial Complaint Duplicates DPPs' Consolidated Complaint.**

While the litigation progressed, Flextronics lurked in the wings, biding its time for an advantageous point at which to enter the litigation. Starting in October 2014, Flextronics's counsel attended a number of the Court's case management conferences and observed the proceedings without making a formal appearance. *See* Saveri Decl. ¶ 5. During this period, counsel for Flextronics contacted DPPs' counsel and demanded access to the discovery record, despite the fact that a protective order has been entered in this case. *See id.* DPPs' counsel ignored these requests because Flextronics was an absent class member and its counsel had not appeared.

Only once the litigation was significantly advanced did Flextronics appear. Within two weeks of the Court issuing its Order on Defendants' several motions to dismiss (Dkt. 710), Flextronics filed a complaint alleging a price fixing conspiracy among certain Defendant capacitors manufacturers. *See* Case No. 5:150-cv-02517-HRL, Dkt. 1 (filed June 5, 2015). Flextronics's initial complaint largely copied the Consolidated Complaint's allegations that survived motion to dismiss. *See* Saveri Decl. ¶ 20.

Indeed, out of the 270 paragraphs in Flextronics's initial complaint, almost 200 of them were identical or nearly identical to DPPs' allegations in the Consolidated Complaint. *See id.*

### C. The Court Consolidated Flextronics's Separate Action With the DPPs' Operative Complaint, But Allowed for Flextronics to Address Its Purportedly "Unique and Individualized Issues" Only "When Appropriate."

At the July 8, 2015 case status conference, Flextronics's counsel initially resisted the Court's instruction that its claims would be "absorbed into the DPP complaint" by arguing that Flextronics would "want to take a distinct position from class counsel on certain issues." Tr. at 11:2-14. The Court expressed that it was "extremely reluctant" to "purge [Flextronics's claims] out" of their consolidation with the DPPs' claims, and it indicated that Flextronics could address its separate positions when necessary by filing a separate brief. *See* Tr. at 11:2-3, 13-14, 22-23.

The Court then directed Flextronics to work with DPPs "on discovery and everything else" after consolidation:

> THE COURT: No. Here's what's happening. Your complaint will be nonexistent as of today. You're going to be part of the team with DPP. Your lead counsel is Mr. Saveri. You will work with him. To the extent you have different briefing issues, you can bring a motion. That's fine. But I'm not having a separate complaint. I don't want any more separate status conferences. We're not going to have a dual track thing here; okay?
>
> \* \* \* \*
>
> THE COURT: It's not going to be DPP and Flextronics. It's one—one ship, one ship sailing forward.

*See* Tr. at 12: 5-7, 10-20. Flextronics's counsel agreed and confirmed that the company would work with DPPs to "blend in" its purportedly "unique" allegations to the then-operative FAC in further amendment. *See* Tr. at 13:4-8, 14:13-14.

The Court's subsequent July 9 Order memorialized its oral orders at the July 8 case status conference:

> For the [*Flextronics* action], the Court consolidates that case into [this consolidated action] and will close the *Flextronics* case for administrative purposes. Counsel for Flextronics represented that it has unique issue [*sic*] not shared with other DPP plaintiffs. Flextronics may raise those issues when appropriate in separate briefs, but only for specific issues on which Flextronics has a unique and individualized position.
>
> Flextronics counsel and the interim lead class counsel for direct purchaser plaintiffs are to meet and confer so that the DPPs' complaint can be amended to include Flextronics' allegations. The new allegations relating

to Flextronics should be easy to find, and the amendment should not add any other new allegations. The amended complaint should be filed by July 17, 2015.

Dkt. 774 at 2.

The Court was clear. Flextronics was not to pursue a "Flextronics" litigation track. It was to operate within the leadership structure established by the Court's October 31 Order. Further, Flextronics was not to disrupt the litigation. DPPs have followed the July 9 Order. Flextronics has not and apparently will not do the same without further guidance from the Court.

### D. Flextronics's Purportedly "Unique" Claims Are Duplicative and Subsumed By Direct Purchaser Class Claims.

Following the Court's instructions, DPPs' counsel worked hard to incorporate Flextronics's purportedly unique allegations, despite the company's repeated objections. Flextronics's counsel demanded wholesale revisions to the FAC's allegations, including to all allegations that already survived Defendants' motions to dismiss. See Saveri Decl. ¶ 21. DPPs did not accede to Flextronics's demands because doing so would violate the Court's July 9 Order. See id. In addition, because the gravamen of Flextronics's claims are the same as DPPs'—i.e., a global conspiracy to fix Capacitors prices by the leading Capacitors manufacturers from 2002 through the present—there had already been extensive law and motion practice on DPPs' pleadings. See id. Flextronics's attempted rewrite of the complaint was especially unwarranted because it threatened to impede the Court's order for DPPs and Flextronics to file an amended complaint and frustrate DPPs' prosecution of the litigation. See id. at ¶¶ 21-22.

Flextronics's refusal to follow the Court's instructions in the July 9 Order regarding the amendment of DPPs' operative complaint caused the parties to miss two court-ordered deadlines by which they were to file the SAC. See Saveri Decl. ¶ 21. Indeed, on the eve of the first deadline being missed, Flextronics's counsel insisted—in contravention of the Court's July 9 Order—that its entire initial complaint be attached in its entirety as an exhibit to a SAC that incorporated Flextronics-specific allegations throughout. See id. DPPs had no choice but to refuse. See id.

On July 23, 2015, Flextronics and the DPPs ultimately agreed to file the SAC (Dkt. 799-4 (redacted)), which is now the operative complaint. Flextronics purported unique claims are limited in number. Out of the SAC's 469 paragraphs, only 62 paragraphs contain allegations making reference to

Flextronics. *See* Saveri Decl. ¶ 22. However, of those 62 paragraphs, only two of them contain allegations that could be considered different than DPPs' allegations. *See id.* These allegations, however, simply provide additional detail to the allegations already at issue in the DPPs' claims. *See id.*

### E. Flextronics Jumped the Gun In Bringing This Dispute Before the Court.

In the weeks following the SAC's filing, DPPs' Interim Lead Counsel and Flextronics's counsel discussed how the parties could work together given the Court's instruction for them to do so in its July 9 Order, including participation in the litigation. *See* Saveri Decl. ¶ 23. Following up on the parties' ongoing discussions, on August 12-13, 2015, DPPs provided Flextronics with copies of the discovery propounded by DPPs on Defendants to date, along with copies of the Defendants' objections and responses to the discovery. *See id.* at ¶ 24. At no time since Flextronics's receipt of these discovery responses has its counsel sought to discuss with DPPs any issues related to this discovery. *See id.*

Repeating the demands it made even before filing its initial complaint, Flextronics demanded DPPs make available to it all of the materials accumulated and reviewed in the discovery record database. *See* Saveri Decl. ¶ 25. DPPs offered to make available all of its work product, or some part of it, at the discretion of Flextronics. *See id.* at ¶ 26. The sticking point in these discussions, however, appeared to be Flextronics's willingness to provide DPPs with consideration for the creation and transfer of that benefit. *See id.* DPPs offered to make a proposal. *See id.* at ¶ 25.

Between the parties' conversations on or about August 14, 2015 and the Motion's filing, DPPs' Interim Lead Counsel had been researching, discussing and outlining a framework for the parties' cooperation in this case modeled on Judge Lungstrum's recent "Order Establishing Protocols For Common Benefit Work and Expenses and Establishing the Common Benefit Fee and Expense Funds" in *In Re: Syngenta AG MIR162 Corn Litigation* (D. Kan. Case No. 2:14-md-2591-JWL-JPO, Dkt. No. 936, filed Jul. 27, 2015). *See* Saveri Decl. ¶ 28 and Ex. A. DPPs' Interim Lead Counsel first reached out to Flextronics's counsel about the *Syngenta* common benefit order by emailing a copy of the order on August 18, 2015. *See id.* at ¶ 29. On September 3, 2015, DPPs' Interim Lead Counsel sent Flextronics's counsel a draft common benefit proposal for this case and suggested that the parties discuss the proposal. *See id.* at ¶ 30. On September 6, 2015, counsel for Flextronics and DPPs spoke regarding the common benefit proposal. *See id.* at ¶ 31. Flextronics rejected the proposal. *See id.*

III. ARGUMENT

### A. Flextronics's Motion Fails to Meet the Standard for Reconsideration.

By its Motion, Flextronics clearly seeks reconsideration of the Court's October 31 Order appointing JSLF DPPs' Interim Lead Class Counsel, and the July 9 Order consolidating its complaint and "closing" it "for administrative purposes." *See* Dkts. 319, 774. Flextronics has not bothered to comply with the Court's Local Rules concerning reconsideration motions, which require leave of court. *See Cal. River Watch v. Fluor Corp.*, 2015 U.S. Dist. LEXIS 117231, *4 (N.D. Cal. Sept. 1, 2015) (denying "disguised" motion for reconsideration). In any event, Flextronics has manifestly failed to demonstrate that reconsideration of these orders is warranted here. *See School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.")

### B. The Court's Prior Orders Are Appropriate Exercise of the Authority To Manage and Supervise This Class Action Litigation.

Courts have the authority and the duty to manage complex multiparty litigation through a variety of instrumentalities. Perhaps the most basic of these methods of case management is the appointment of counsel to lead and manage litigation on behalf of parties in complex litigation. *See* Fed. R. Civ. P. 23(g)(1)(A); Manual for Complex Litigation (Fourth) § 10.224 (2004). Appointment of lead counsel ensures the efficiencies that flow from charging a single firm or firms with the duties and responsibilities of directing and managing the prosecution of the litigation. *See id.* at § 10.22.

The Court's October 31 Order appointed JSLF as Interim Lead Counsel for the Direct Purchaser Class and set forth Interim Lead Counsel's duties and obligation. *See* Dkt. 319 at 1. By the Court's Order, DPPs' Interim Lead Counsel has

> complete authority to conduct all pretrial and trial work, including settlement discussions, for their putative classes, and to bind all counsel and parties in their respective putative class. For the sake of illustration (and not limitation), lead counsel have the final word on and responsibility for all common discovery issues, service of pleadings and filings, stipulations, briefs and arguments, court hearings and appearances, communications with opposing counsel and the Court, expert retention and reports, trial and appeals arising in the course of litigation before this Court (*e.g.*, class certification decisions), as well as work assignments within their class groups, billing records and fee issues, and overall case strategy, scheduling and management for their putative class.

*See id.* at 3.

The October 31 Order is wholly consistent with those routinely issued in cases like this one. They are a necessary starting point in managing class action cases. Since Interim Lead Counsel's appointment, DPPs' prosecution of the class' claims has proceeded expeditiously with minimal duplication of effort. Consequently, much work has been accomplished in a short period of time, and the litigation is proceeding at a quicker pace than many other similar cases. Flextronics's interference will almost assuredly set the litigation back.

### C. Flextronics's Claims Should Be Stayed Pending the Class Action's Certification.

To promote the orderly progress of this litigation, a limited stay of Flextronics's claims is warranted at this juncture not only pursuant to Rule 23, but also established principles of case management. "[T]he power to stay proceedings is incidental to the power in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). A court must "exercise its judgment" and "weigh competing interests" before ordering an action to be stayed—*i.e.*, possible damage from a stay; hardship or inequity that may be suffered because of a stay; and any simplying or complicating of issues, proof and questions of law resulting from a stay. *Id. See also CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

Flextronics does not—and cannot—deny it is a member of the proposed Direct Purchaser Class. Its counsel admitted this at the July 8 case status conference. *See* Tr. at 13:4-8, 14:13-14. Accordingly, Flextronics's claims and its right to pursue its claims are not prejudiced in any way during the pendency of the class action, and the statute of limitations as to its claims is tolled until the Court either denies class certification or it chooses to opt out. *See American Pipe & Construction v. Utah,* 414 U.S. 538, 554 (1974) ("the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a call action"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 n.13 (1974).

Flextronics argues that it has a "due process right to be heard 'at a meaningful time in a meaningful manner'." Mot. at 12. This is true, but Rule 23 addresses the issue. It protects the rights of

absent class members through the right to exclude themselves from the class.[3] Rule 23 provides that, following class certification, notice of the class action and the rights of class members must be given. *See* Fed. R. Civ. P. 23(c)(2). Only then do class members have the right to exclude themselves. *See Phillips Petroleum Co. v. Shutt,* 472 U.S. 797, 881 n.3 (1985) ("[I]n a class action "wholly or predominantly for money judgments[,]" a court must afford class members notice and an opportunity to opt out."). Rule 23 provides no mechanism for absent class members to opt out before a class is certified, and filing an individual claim is not tantamount to opting out. Indeed, "filing an individual case prior to the opt-out period and continuing to litigate that case through the opt-out period is insufficient" to opt-out of a class action, and opt-outs typically litigate their claims after class certification. *See In re Cathode Ray Tube Antitrust Litig.*, 2014 U.S. Dist. LEXIS 117792, *99-100 (N.D. Cal. Aug. 20, 2014); *see also Demint v. NationsBank Corp.*, 208 F.R.D. 639, 641 (M.D. Fla. 2002) ("mere pendency and continued prosecution of a separate suit, which the litigant instituted before commencement of the 'opt-out' period in a related class action, neither registers nor preserves a litigant's 'opt out' of the related class action."). Similarly, Flextronics has no Due Process right to preemptively "opt out" and pursue its own claims. Its Motion offers no authorities to bolster such a strategy. This fact may explain why the Court closed Flextronics's individual actions and consolidated its claims with those of DPPs. For the Court to permit otherwise would unduly frustrate case management here and run contrary to the case management practices of a great many other courts in similar cases.

The lynchpin of Flextronics's Motion is its assertion that its claims are distinct from the Direct Purchaser Class. *See* Mot. at 1-2, 5-7. The record provides no support for this. Flextronics's entire argument on this point relies on only seven paragraphs of its claims in the 469-paragraph SAC. *See* Mot. at 6-7 (citing SAC ¶¶ 415, 418, 422, 424, 427-429). These allegations are merely examples of the illegal activity encompassed by DPPs' allegations. *See* Saveri Decl. ¶ 22. Indeed, even before Flextronics's claims were folded in to DPP's claims, Flextronics's counsel agreed with the Court that DPPs'

---

[3] Flextronics's opposition to class certification appears to be driven by strategic motives alone. It will suffer no prejudice if a class is certified. It has the right to out. *See In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1239, 1246 (N.D. Cal. 2000) (attempts to effect opt out prior to certification are disfavored).

allegations were broad enough to permit discovery regarding any specific instances involving Flextronics. *See* Tr. at 13:4-8. DPPs have, in fact, propounded interrogatories and requests for production targeting not only broad, market-wide agreements and meetings, but also discrete and ad hoc bilateral or trilateral collusive understandings among Defendants. *See* Saveri Decl. at ¶ 9. Further, DPPs have already provided Flextronics with Defendants' discovery responses to date, and Flextronics has not voiced any objections or concerns regarding the scope or content of the discovery DPPs have pursued. *See id.* at ¶ 24. These concessions belie Flextronics's claim of need for immediate access to the discovery record to pursue such claims.

      Recognizing the weakness of its argument, Flextronics then attacks the Direct Purchaser Class action itself and threatens to oppose or otherwise frustrate certification. *See* Mot. at 6-7. Flextronics appears to do so in order to bolster its claims that it has individualized claims or its interests are at odds with those of the individual and representative plaintiffs, as well as its other fellow members of the proposed Direct Purchaser Class. Rather than setting its claims apart, Flextronics has signaled to the Court its intent to disrupt the class plaintiffs' efficient management of this litigation in pursuit of its own agenda. This disruption will be made all the worse if Flextronics is permitted access to the discovery record and other benefits derived from the work and efforts of class plaintiffs, or is granted a greater role in Plaintiffs' discovery and case management oversight. Indeed, Flextronics makes clear that it would use the class plaintiffs' work and work product at cross-purposes to the interests of the Direct Purchaser Class in this litigation. *See* Mot. at 2, 6-7.

      Flextronics's admitted antagonism gives further reason for the Court to use its plenary powers under Rule 23(d) to issue a stay order as to Flextronics's claims. *See* Fed. R. Civ. P. 23(d)(1)(A)-(E). A stay would allow the class action to proceed unabated and address the motion for class certification in due course as Rule 23 provides. If the class is certified, Flextronics will then have the opportunity to opt out and prosecute its own claim. If certification is denied, Flextronics could still pursue its own claims at a later date. Because its claims are in no way prejudiced, Flextronics's attempt to undercut DPPs' class certification prospects is unnecessary and does nothing to further its purported individual claims.

### D. If Flextronics's Claims Are Not Stayed, the Parties Should Submit Proposals on a Common Benefit Order.

If the Court was not to issue a limited stay of Flextronics's claims, the Court should then address the issues associated with the common benefit conferred on Flextronics and other future opt-outs by DPPs work in this case.[4] Flextronics's demands that DPPs must violate the Court's October 31 and July 9 Orders to provide it immediate access to the discovery record. *See* Mot. at 13-14. "A necessary corollary to court appointment of lead and liaison counsel and appropriate management committees is the power to assure that these attorneys receive reasonable compensation for their work." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653-654 (E.D. Pa. 2003).

If Flextronics or any other opt-outs are to benefit in this consolidated action from Plaintiffs' substantial work investigating the claims, pleading the claims, developing the discovery record, and prosecuting the claims to date, it is fundamentally fair and equitable that DPPs—on behalf of all absent Direct Purchaser Class members—should, either at the conclusion of this action or before such benefit is obtained, receive in return a benefit of equal value. If the Court is inclined to address Flextronics's request for relief, DPPs request that the Court direct all plaintiffs to submit their proposals regarding a common benefit arrangement.

The Court's equitable authority to compensate those who provide a benefit to others is a principle that long predates Rule 23. *See Trustees v. Greenough*, 105 U.S. 527, 533 (1881). The common benefit doctrine recognizes the "original authority" of federal courts "to do equity in a particular situation." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166 (1939), and prevents unjust enrichment by assessing attorneys' fees against a fund, "thus spreading fees proportionately among those benefited by the suit." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Court's authority to establish a fund and to order contributions also derives from its equitable authority and its inherent managerial power over litigation.[5]

---

[4] Even if Flextronics's claims are stayed, consideration of common benefit issues is still necessary because Flextronics and perhaps other opt-outs, eventually will seek access to DPPs' work if they chose to prosecute their own claims.

[5] *See, e.g., In re Diet Drugs*, 582 F.3d 524, 546-47 (3rd Cir. 2009); *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1008 (5th Cir. 1977); Manual for Complex Litigation, § 20.312 ("MDL judges generally issue orders directing the defendants who settle MDL-related cases contribute a fixed percentage of the settlement to a general fund to pay national counsel."); *see also* Manual for Complex

A common benefit arrangement does not implicate attorney-client relationships or choice of counsel. See *In re Linerboard Antitrust Litig.*, 292 F. Supp. at 663 ("The advantages of [common benefit arrangements] should not be denied litigants because of misapplied notions concerning interference with a party's right to his own counsel.") (*citing MacAlister v. Guterma*, 263 F.2d 65, 69 (2nd Cir. 1958). Any fund from which common benefit fees and costs are to be paid must be "subject to the control of the court," *Trustees*, 105 U.S. at 536, and this is satisfied "by jurisdiction over a party that controls the fund, usually the defendant." *In re Oil Spill by the Oil Rig "Deepwater Horizon,"* MDL No. 2179, PSC Status Report And Memorandum In Support Of Motion To Establish Account And Reserve For Litigation Expenses (Dkt. #4507-1) at 27 (discussing various ways in which a court may exercise control of the fund)(citations omitted). Where a party having access to the common benefit work also is a party before the Court in a given MDL, that party too is subject to the Court's authority. Ordinarily this takes the form of a holdback from any moneys paid to the plaintiffs, but it is also proper that the party having access to the common benefit work pay an up-front assessment to absorb that cost as it is a beneficiary not only in regard to the recovery it produces but in respect to the work that party has been spared. *See, e.g., In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1008 (5th Cir. 1977) (beneficiaries of leadership counsels' work include "the attorneys whose time was not so consumed in [performing the work leadership undertook]"). Courts often order that the assessment be absorbed by a parties' attorney. *Id.* at 1016 (district court has power to require that court-appointed counsel be compensated and "requiring the payment come from other attorneys was permissible"); *Smiley v. Sincoff*, 958 F.2d 498, 501-502 (2d Cir. 1992) (lawyer representing individual plaintiffs required to pay fee to court-appointed committee); *In re Diet Drugs*, 553 F. Supp.2d 442, 457 (E.D. Pa. 2008) (assessment "taken from the fee of each plaintiff's individual attorney if the plaintiff is represented").

---

Litigation, § 14.215 (4th ed. 2004) (noting that "Lead and liaison counsel may have been appointed by the court to perform functions necessary for the management of the case but not appropriately charged to their clients" and encouraging an order early in the litigation that "establish[es] the arrangements for their compensation, including setting up a fund to which designated parties should contribute in specified proportions."). Flextronics's Motion invites consideration of such an arrangement here.

The DPPs have already provided Flextronics substantial benefit in this case, and Flextronics wants more. If Flextronics's claims are not stayed and it is granted access to the discovery databases in this case, this benefit promises to be even greater in the future. There is no doubt that DPPs will devote substantial energy to the development of the discovery record, depositions, further briefing, expert testimony and, ultimately, trial and any appeals. In this context, a common benefit structure and protocol would serve to ensure that DPPs are fairly and equitably compensated by Flextronics or other late-comer plaintiffs that receive the benefit of their work.[6]

### E. Flextronics's Request For the Court's Modification of its October 31 Order Is Unwarranted, Unnecessary, And Would Improperly Bestow a Benefit On Flextronics At the Expense of Its Fellow Absent Direct Purchaser Class Members.

Flextronics's sole basis for asking the Court to modify its October 31 Order appointing DPPs' Interim Lead Counsel and outlining Lead Counsel's authorities and responsibilities is to ask the Court to include language that would give it equal footing with class counsel as to discovery matters and access to the discovery record. Mot. at 14. The Court should reject this request for at least three reasons.

*First,* as explained above, the Federal Rules of Civil Procedure provide no mechanism for an absent class member to participate in a litigation without first opting out or pursuing its own action should class certification be denied. *Second,* putting aside the impossibility of such a process, Flextronics's request modification of the October 31 Order would directly contradict the Court's July 9 Order, which limited Flextronics's participation to only submitting separate briefing on its "unique and individualized" issues and did not otherwise order or contemplate Flextronics taking an active or co-equal role in the class plaintiffs' discovery efforts. *See* Dkt. 774 at 2. The Court's instruction for Flextronics to cooperate with DPPs on discovery in no way indicated that such cooperation required Interim Lead Counsel to cede to Flextronics any part of its authority over discovery granted in the Court's October 31 Order. *Third,* the case law Flextronics cites for its position is inapposite. Flextronics

---

[6] Should the Court decline to address or consider DPPs' common benefit proposal, DPPs intend to seek recovery from Flextronics or any other opt-outs at the conclusion of the class action for any benefits they received from DPPs' work in in the litigation to advance the case and develop the discovery record. To do otherwise and acquiesce to the free dissemination of its work product would incentivize free-riding for late-comer plaintiffs in complex antitrust actions like this one and, relatedly, would disincentivize individual and representative plaintiffs like Chip-Tech, Dependable, Walker and eIQ Energy here from bearing the risk and expense required to take the lead in prosecuting such claims.

relies on six random case management in which independent plaintiffs were permitted to participate in discovery alongside class plaintiffs. Mot. at 14. Flextronics ignores the common characteristics that ultimately defeat its position. Specifically, the individual or non-class plaintiffs referenced in each order are not individual plaintiffs as is the case here, but instead are groups of similarly situated plaintiffs whose collective rights or obligations are addressed in the orders to some degree.[7] In each case, plaintiffs agreed that the individual plaintiffs could participate in all phases of the case. Further, pursuant to the case management principles described above, it is not remarkable that the Court appointed certain counsel to serve in a coordinating liaison role. If there were several plaintiffs here in addition to Flextronics pursuing individual claims in the litigation at this time, the orders Flextronics cites might be more relevant. Here, however, Flextronics stands alone. Though Flextronics asserts the case management structure here should be realigned to reflect that "its financial interest in this case dwarfs that of any other plaintiff's" (Mot. at 4), it fails to make the same boast with regard to the financial interest of the entire Direct Purchaser or Indirect Purchaser Classes, both of whom together control discovery and case management in this consolidated action. Indeed, it is fair to assume that the class plaintiffs' collective financial interest outweighs—dwarfs—that of Flextronics in the litigation.

## IV.   CONCLUSION

In consideration of the reasons set forth above, DPPs respectfully request that the Court deny Flextronics's Motion and enter a stay of Flextronics' action. However, should the Court not stay the

---

[7] The authorities cited by Flextronics largely show only that in some cases access was voluntarily given to non-class plaintiffs. *See, e.g.*, Tompkins Decl. (Dkt. 869-1)Ex. 27, *In Re Rubber Chemicals Antitrust Litig.*,Case No. 04-MD-1648, Dkt. 49 (N.D. Cal. Apr. 4, 2005), (appointing liaison counsel for "Non-Class Plaintiffs"and not concerning a sole individual plaintiff); Ex. 28, Special Master's Order Regarding Individual Action Plaintiffs and Case Management, *In re TFT LCD (Flat Panel) Antitrust Litigation*, Case No. 07-MD-1827 SI, Dkt. 1595 (N.D. Cal. Mar. 12, 2010) (ordering "Individual Action Plaintiffs" to select a liaison counsel); Ex. 29, Pretrial Order 5, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,* Case No. 05-MD-1720, Dkt. 279 (E.D.N.Y. Feb. 24, 2006) (ordering selection of a liaison for non-class plaintiffs that shall "be responsible for coordinating and organizing the non-class plaintiffs in the conduct of the litigation"): Ex. 30, Amended Case Management Order, *In re Polyurethane Foam Antitrust Litigation,* Case No. 10-md-02196, Dkt. 139 (E.D. Ohio May 12, 2011) (addressing the plural "Direct Action (Non-Class) Plaintiffs"); Ex. 31, *In re Chocolate Antitrust Litig.*, Case No. 08-MD-1935, Dkt. 387 (M.D. Pa. July 14, 2008) (appointment of liaison counsel for "Individual Plaintiffs"); Ex. 32, Case Management Order 15, *In re Packaged Eggs Antitrust Litig.*, Case No. 02-MD-2002, Dkt. 462, at 3 (E.D. Pa. Jan. 24, 2011) (identifying six "Direct Action Plaintiff" actions and appointing liaison counsel for the them).

Flextronics's action and should it be inclined to consider Flextronics's request for relief, DPPs request that the Court direct the parties to submit proposals regarding the entry of a common benefit order.

Dated: September 16, 2015                    JOSEPH SAVERI LAW FIRM, INC.

                                             By:     /s/ *Joseph R. Saveri*
                                                       Joseph R. Saveri

                                             Joseph R. Saveri (State Bar No. 130064)
                                             Andrew M. Purdy (State Bar No. 261912)
                                             Matthew S. Weiler (State Bar No. 236052)
                                             James G. Dallal (State Bar No. 277826)
                                             Ryan J. McEwan (State Bar No. 285595)
                                             JOSEPH SAVERI LAW FIRM, INC.
                                             555 Montgomery Street, Suite 1210
                                             San Francisco, California 94111
                                             Telephone:  (415) 500-6800
                                             Facsimile:   (415) 395-9940
                                             Email:    jsaveri@saverilawfirm.com
                                                       apurdy@saverilawfim.com
                                                       mweiler@saverilawfirm.com
                                                       jdallal@saverilawfirm.com
                                                       rmcewan@saverilawfirm.com

                                             *Interim Lead Class Counsel for Direct Purchaser Plaintiffs*