Joseph R. Saveri (State Bar No. 130064)
Andrew M. Purdy (State Bar No. 261912)
Matthew S. Weiler (State Bar No. 236052)
James G. Dallal (State Bar No. 277826)
Ryan J. McEwan (State Bar No. 285595)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:   jsaveri@saverilawfirm.com
         apurdy@saverilawfirm.com
         mweiler@saverilawfirm.com
         jdallal@saverilawfirm.com
         rmcewan@saverilawfirm.com

*Interim Lead Class Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL DIRECT PURCHASER CLASS ACTIONS; FLEXTRONICS INTERNATIONAL USA, INC.'S ACTION | Master File No. 3:14-cv-03264-JD<br><br>**DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO PLAINTIFF FLEXTRONICS INTERNATIONAL USA, INC.'S MOTION TO COMPEL ACCESS TO PLAINTIFFS' DISCOVERY RECORD AND TO MODIFY THE COURT'S OCTOBER 31, 2014 ORDER APPOINTING INTERIM CLASS COUNSEL**<br><br>Date:       October 7, 2015<br>Time:      10:00 a.m.<br>Courtroom: 11, 19th Floor |

I, Joseph R. Saveri, declare:

1. I am an attorney licensed in the State of California and admitted to practice in the Northern District of California. I am the founder of the Joseph Saveri Law Firm, Inc. ("JSLF"). I serve as Interim Lead Class Counsel for the Direct Purchaser Plaintiffs ("DPPs") in this action. I have

personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

2. This declaration is made in support of DPPs' Opposition to Plaintiff Flextronics International USA, Inc.'s Motion to Compel Access to Plaintiffs' Discovery Record and to Modify the Court's October 31, 2014 Order Appointing Interim Class Counsel ("Motion").

3. In July 2014, my firm filed the first two Direct Purchaser complaints alleging violations of Section 1 of the Sherman Act resulting from a conspiracy to fix prices among the leading global manufacturers of aluminum and tantalum electrolytic capacitors and film capacitors (together, "Capacitors"). All the Capacitors Direct Purchaser complaints have since been consolidated with the Court in the instant action. In August and September 2014, I worked with all of the firms who had filed Capacitors Direct Purchaser Class claims to that point and began negotiating a leadership structure for the DPPs.

4. In August 2014, I contacted Panasonic Corporation/SANYO Co., Ltd. ("Panasonic"), the ACPERA leniency applicant, to request cooperation. In October 2014, Panasonic shared some information concerning cartel activity among Capacitors manufacturers, and produced a set of documents it said it had previously produced to the Department of Justice.

5. I became aware that Flextronics was a Capacitors purchaser and a potential class member, and as early as October 2014 I began receiving calls and emails from Charles Tompkins, counsel for Flextronics. At that time Flextronics had not filed a lawsuit, and involving counsel for an absent class member in consultation of strategy and case management prior to certification of any class did not strike me as productive, beneficial, or appropriate. In that same period, I observed Mr. Tompkins in this Court's courtroom during hearings and conferences. It would take another eight months, during which DPPs did a tremendous amount of work on pleadings, discovery and case management, before Flextronics finally filed a case and formally appeared.

6. Following the Court's appointment of JSLF as interim lead class counsel for DPPs, counsel for DPPs used many of the documents Panasonic had produced to supplement DPPs' allegations in their Consolidated Complaint.

7. DPPs also meanwhile drafted their first set of requests for production of documents and first set of interrogatories and propounded them on Defendants, with the understanding that they would respond upon lifting of the stay.

8. Immediately following the lifting of the stay on April 7, 2015, DPPs propounded their second and third sets of requests for production of documents.

9. To date, DPPs working collaboratively with Indirect Purchaser Plaintiffs have propounded on Defendants three sets of requests for production of documents seeking 77 specific types of documents and transactional data. DPPs have also propounded 33 interrogatories and four requests for admission. DPPs have also propounded additional requests for production and interrogatories on individual Defendants pertaining to individualized issues. These requests cover a wide range of topics. Certain of them specifically instruct Defendants to provide materials establishing or connected with not just cartel meetings or the overarching conspiracy, but also those establishing or connected with bilateral or trilateral meetings, meetings among a subset of conspirators, bilateral or trilateral agreements or understandings, or agreements or understandings among a subset of conspirators.

10. With the one exception of their third set of interrogatories, DPPs propounded all the discovery outlined in the previous paragraph prior to Flextronics's June 5, 2015 filing of its initial complaint.

11. DPPs working in concert with IPPs have also pursued discovery of Defendants' electronically-stored information ("ESI") by conducting extensive negotiations over the identification of key document custodians and setting a comprehensive list of search terms and phrases in both English and Japanese for application to all Defendants' ESI. This process too was well underway by the time Flextronics filed its complaint.

12. DPPs and IPPs initiated negotiations over custodians and search term lists following the lifting of the discovery stay and in the run-up to the Quarterly Status Conference held on April 30, 2015.

13. The parties concluded negotiations over the English-language global search term list by mid-June 2015 and reported that they had reached agreement in a letter to the Court on June 19, 2015..

14. The parties reached agreement on most custodian negotiations in that same timeframe, and DPPs submitted their dispute over the single exception in a Discovery Letter Brief also on June 19,

2015. The Court granted DPPs' request that Defendant KEMET run the search terms on the custodial documents of the one custodian in dispute in an Order on July 7, 2015.

15.     Negotiating the Japanese search term list, a particularly important task given that many Defendants conduct their business and conducted much of their cartel participation in Japanese, posed some additional challenges. The parties nonetheless reached agreement on appropriate translation or equivalent phrasing for the search terms on August 12, 2015.

16.     At my direction JSLF attorneys and other counsel for DPPs have worked with counsel for IPPs and negotiated English and Japanese search terms.

17.     Rolling production by Defendants of documents from their centralized locations and search term hits from their custodial documents has resulted in production of 367,543 documents to date. This figure does not account for several recent Defendant productions Plaintiffs' database vendor is presently loading into the system, and the volume of documents is increasing daily. DPPs in cooperation with IPPs have recruited a dedicated team of Japanese-fluent reviewers to analyze of this massive volume of information, and my staff is in regular contact with the review team to direct the review and answer questions that arise. The review is a major undertaking and entails a production of significant high-value work product that becomes part of the database as the reviewers make their way through the documents, flag issues, and record their observations. Flextronics had no role in this effort.

18.     DPPs filed their First Amended Complaint ("FAC") filed on June 16, 2015. DPPs included these same factual allegations in preparing the now-operative Second Amended Complaint ("SAC") filed on July 22, 2015. The amendments were based on DPPs' continuing investigation, including review of discovery to date.

19.     Counsel for DPPs and IPPs have agreed to share the cost of hosting the Plaintiffs' document production database and are doing so at their own expense. Flextronics has no role in this effort.

20.     Flextronics filed its action on June 5, 2015. Of 270 paragraphs in Flextronics's complaint, at least 198 of them were identical or nearly identical to allegations in the CC interim lead counsel for DPPs had filed seven months earlier, in November 2014. Most of non-identical allegations consisted of one of DPPs' allegations cast in general term to protect the entire direct purchaser class

reformulated to apply specifically to Flextronics—and therefore altered the claims not at all, but rather re-pleaded conduct already well within the scope of the CC. Flextronics also did not add any Defendants not already sued in the CC and did not identify the Defendants DPPs added in the FAC.

21. Following the July 8, 2015 Status Conference and the Court's July 9, 2015 Order, DPPs sought to comply with the Court's July 9 Order to file a SAC in conjunction with Flextronics. Flextronics and DPPs discussed amending the operative complaint in the days preceding by the Court-ordered filing deadline of July 17, 2015. Flextronics's counsel was insistent that many of DPPs' allegations—the vast majority of which survived Defendants' motions to dismiss—be amended to include Flextronics-specific allegations or references. DPPs expressed that there was no need for amended in this way not only because the Court's order directed any amendment to be more limited, but also because these DPPs' allegations were at issue. On the evening of July 17, 2015, Flextronics provided a proposed version of the SAC with Flextronics-specific amendments fond throughout the draft, but it also sought to incorporate by reference the entirety of its initial complaint. Flextronics requested that its initial complaint be attached as an exhibit to the SAC. DPPs refused to file this draft because doing so was inconsistent with the Court's instructions. The parties' first filing deadline then passed. DPPs and Flextronics stipulated to an extension of the filing deadline by three days. The Court thereafter entered the stipulation as an Order. In the days before the parties' stipulated filing deadline, Flextronics rejected several of DPPs' proposed compromise drafts, and responded by proposing several other drafts of the SAC that still contained revisions to DPPs' well-pleaded allegations. Flextronics urged that DPPs accept these revisions before the next deadline was to pass. DPPs would not agree to filing a SAC that did not comply with the Court's July 9 Order and which altered DPPs' allegations. Accordingly, the second deadline passed without a filing as well.

22. DPPs nonetheless persevered in their attempts to accommodate Flextronics's requests, and DPPs and Flextronics finally reached an agreement on an SAC and filed it on July 23, 2015. The SAC differs very little from DPPs' allegations as stated in their previously filed First Amended Complaint. Of the SAC's 469 paragraphs, only 62 contain allegations specific to Flextronics. Further, out of those 62 paragraphs, only two of them contain allegations that could be considered materially

different to DPPs' allegations. These allegations, however, only provide additional detail regarding matters and allegations encompassed by certain of DPPs' broader claims.

23. DPPs have continued to confer with counsel for Flextronics regarding arrangements for working together in the weeks following the filing of the SAC.

24. At my direction, on August 12 and 13, 2015, attorneys at JSLF provided Flextronics with copies of the discovery propounded by DPPs on Defendants to date, along with copies of Defendants' objections and responses to that discovery. At no time since DPPs provided the discovery and discovery responses to Flextronics, has counsel for Flextronics sought to discuss the responses with DPPs.

25. Flextronics's counsel has repeatedly demanded from DPPs immediate access to the full discovery record in the case, including access to Plaintiffs' ESI production and transactional data database. Flextronics's counsel pursued DPPs to provide him these materials even before Flextronics filed its complaint. Flextronics's has offered nothing more concrete than the possibility of paying some ongoing "reasonable costs" associated with document and data hosting. Flextronics's counsel has never proposed or offered to provide DPPs with due consideration for access to the discovery record and DPPs' other work.

26. DPPs are willingness to provide, on reasonable terms, access to the discovery databases that contain ESI, transactional data, and other related common benefit work and work product such as document review coding and translations.

27. DPPs have not rejected Flextronics's requests to discuss discovery and this litigation. Although other case responsibilities and summer travel have in recent weeks made scheduling difficult. At no point have DPPs believed that the parties' negotiations regarding how to best work together had reached impasse. Rather, the parties were still communicating about following up on these discussions as of on or about August 24, 2015.

28. A true and correct copy of Judge Lungstrum's recent "Order Establishing Protocols For Common Benefit Work and Expenses and Establishing the Common Benefit Fee and Expense Funds" in *In Re: Syngenta AG MIR162 Corn Litigation* (D. Kan. Case No. 2:14-md-2591-JWL-JPO, Dkt. No. 936, filed Jul. 27, 2015) ("*Syngenta* Order") is attached hereto as **Exhibit A**.

29. On August 18, 2015, I reached out to Flextronics's counsel by email by sending him a copy of the *Syngenta* Order.

30. On September 3, 2015, I reiterated my suggestion of a *Syngenta*-based arrangement and sent DPPs' common benefit proposal for this case to counsel for Flextronics via email.

31. On September 6, 2015, I spoke with Flextronics's counsel regarding the common benefit proposal I sent him by email three days earlier. Flextronics's counsel rejected the proposal.

\*   \*   \*   \*

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and to the best of my knowledge and that this declaration was executed in San Francisco, California on September 16, 2015.

By:     /s/ *Joseph R. Saveri*
             Joseph R. Saveri