1   [Counsel for Moving Defendants Listed on Signature Pages]

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11   | IN RE CAPACITORS ANTITRUST LITIGATION | Case No.  3:14-cv-03264-JD |
     |---|---|
     | ALL INDIRECT PURCHASER ACTIONS | **DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES OR, IN THE ALTERNATIVE, TO SIMPLIFY THE ISSUES UNDER FED. R. CIV. P. 16** |
     | | Date:    December 9, 2015 |
     | | Time:    10:00 a.m. |
     | | Judge:   Hon. James Donato |
     | | Courtroom 11, 19th Floor |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

To all parties and their attorneys of record:

PLEASE TAKE NOTICE that on December 9, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11 of the above-referenced Court, located at 450 Golden Gate Avenue, San Francisco, California, undersigned Defendants[1] will and hereby do move pursuant to Federal Rule of Civil Procedure 56 for entry of partial summary judgment dismissing with prejudice Plaintiffs' state law claims to the extent they involve capacitors that were first sold to a third-party distributor outside the United States, because such claims are barred by the Foreign Trade Antitrust Improvements Act, 15 U.S.C. §6a ("FTAIA").   In the alternative, this motion seeks an order simplifying the issues under Rule 16 of the Federal Rules of Civil Procedure, determining that the commerce at issue in this case is limited to those relating to capacitors that Defendants or their alleged co-conspirators imported directly into the United States or otherwise sold directly in U.S. commerce.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Declaration of Molly M. Donovan, the declarations that are on file as exhibits to the concurrently-filed Defendants' Joint Motion for Partial Summary Judgment Dismissing Direct Purchaser Plaintiffs' Sherman Act Claims for Foreign Transactions or, in the Alternative, To Simply The Issues Under Fed. R. Civ. P. 16 (the "DPP Mot."),[2] the concurrently-

---

[1] Joining in this motion are:  ELNA Co. Ltd., ELNA America, Inc., Hitachi Chemical Co., Ltd., Hitachi Chemical Company America, Ltd., Hitachi AIC Incorporated, Matsuo Electric Co., Ltd., NEC TOKIN Corporation, NEC TOKIN America, Inc., Nichicon Corporation, Nichicon (America) Corporation, Okaya Electric Industries Co., Ltd., Panasonic Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd., SANYO North America Corp. [incorrectly named in the Complaint as SANYO Electronic Device (U.S.A.) Corp.], Rubycon Corporation, Rubycon America Inc., Shinyei Technology Co., Ltd., Shinyei Capacitor Co., Ltd., Soshin Electric Co., Ltd., Taitsu Corporation, United Chemi-Con, Inc., and Nippon Chemi-Con Corporation (collectively, "Defendants").

[2] The declarations supporting this motion are as follows:  Declaration of Akiyoshi Miki ("Panasonic Decl."), Declaration of Toshiyuki Takata ("Sanyo Decl."), Declaration of Hiroshi Fujisaku ("Hitachi Decl."), Declaration of Yasunori Ando ("NEC Tokin Decl."), Declaration of Yukio Komatsu ("Rubycon Decl."), Declaration of Takashi Kamioka ("Soshin Decl."), Declaration of Kenichiro Murata ("ELNA Decl."), Declaration of Tsutomu Homma ("Okaya Decl."), Declaration of Yoshiaki Danno ("Shinyei Decl."), Declaration of Ken Kobayashi ("Taitsu Decl."), Declaration of Toshiya Yamamoto ("Nichicon Decl."), Declaration of Hiroyuki Koga ("Matsuo Decl."), Declaration of

1   filed Proposed Order, the pleadings and records on file in this action, and upon any additional

2   evidence and argument that may be presented before or at the hearing of this motion.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Takashi Nakamura ("Nippon Chemi-Con Decl."), and Declaration of Larry Magoncia ("United Chemi-Con Decl.").

# TABLE OF CONTENTS

**PAGE**

I.  STATEMENT OF THE ISSUE .............................................................................................1

II.  INTRODUCTION ...........................................................................................................1

III.  STATEMENT OF UNDISPUTED FACTS...........................................................................2

IV.  STANDARD OF REVIEW ................................................................................................3

V.  ARGUMENT..................................................................................................................4

    A.  State Law Claims Are Governed By The Extraterritorial Limitations
        Imposed By The FTAIA.............................................................................................5

        1.  The Supremacy Clause Prevents Plaintiffs' State Law Claims From Extending
            Farther Than The FTAIA Allows.....................................................................5

        2.  The Commerce Clause Also Precludes The Ability Of State Antitrust Laws To
            Regulate Foreign Commerce. ..........................................................................8

        3.  Principles of International Comity Also Bar State Law Claims From Reaching
            Foreign Commerce Beyond The Restrictions Of The FTAIA. .........................9

        4.  The Relevant States' Competition Laws Are Also Required to Be Harmonized
            With Federal Antitrust Law, Which Provides an Additional Ground For
            Holding Such Laws Inapplicable to Overseas Capacitor Sales to Third-Party
            Distributors. ..................................................................................................10

    B.  Plaintiffs Cannot Establish That Their Foreign Commerce Claims Satisfy
        Either The Import Commerce Exclusion Or The Domestic Effect Exception
        To The FTAIA...........................................................................................................11

        1.  The FTAIA's Import Commerce Exclusion Does Not Apply Because The
            Alleged Conspirators Did Not Import The Capacitors Underlying Plaintiffs'
            Foreign Commerce Claims. ............................................................................12

        2.  The Domestic Effects Test Of The FTAIA Does Not Apply To Plaintiffs'
            Foreign Commerce Claims. ............................................................................13

    C.  In The Alternative, Plaintiffs' Claims Should Be Simplified To Exclude All
        Foreign Commerce Claims Under Fed. R. Civ. P. 16. ...............................................16

VI.  CONCLUSION .............................................................................................................17

# TABLE OF AUTHORITIES

CASES                                                                                           PAGE(S)

*Aguayo v. U.S. Bank*,
    653 F.3d 912 (9th Cir. 2011) ....................................................................................6

*Amarel v. Connell*,
    202 Cal. App. 3d 137 (Cal. Ct. App. 1988)..........................................................11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................................3

*Bowman v. Chicago & N.W. Ry. Co.*,
    125 U.S. 465 (1888) ...................................................................................................8

*Buttfield v. Stanahan*,
    192 U.S. 470 (1904) ...................................................................................................8

*Chae v. SLM Corp.*,
    593 F.3d 936 (9th Cir. 2010) ....................................................................................6

*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000) ...................................................................................................9

*CSR Ltd. v. Cigna Corp.*,
    405 F. Supp. 2d 526 (D.N.J. 2005).........................................................................11

*Empagran S.A. v. F. Hoffmann-LaRoche  Ltd.*,
    417 F.3d 1267 (D.C. Cir. 2005)..................................................................6,8,12, 16

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
    542 U.S. 155 (2004) .......................................................................................6, 8, 9, 13

*Flood v. Kuhn*,
    407 U.S. 258 (1972) ...................................................................................................7

*Gerling Global Reinsurance Corp. v. Quackenbush*,
    No. Civ. S-00-0506WBSJFM, 2000 WL 777978 (E.D. Cal. June 9, 2000), *aff'd on other*
    *grounds sub. nom. American Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003)................................9

*Global Reins. Corp. – U.S. Branch v. Equitas Ltd.*,
    969 N.E.2d 187 (N.Y. 2012) ...............................................................................7, 11

*Goldman v. Loubella Extendables*,
    283 N.W.2d 695 (Mich. Ct. App. 1979).................................................................10

*Hines v. Davidowitz*,
    312 U.S. 52 (1941) .....................................................................................................5

*Hoilien v. OneWest Bank*,
    No. CV. 11-00357 DAE-RLP, 2012 WL 1379318 (D. Haw. Apr. 20, 2012) ...............................10

*'In' Porters, S.A. v. Hanes Printables, Inc.*,
    663 F. Supp. 494 (M.D.N.C. 1987) ...................................................................................5, 11

*In re Cardizem CD Antitrust Litig.*,
    105 F. Supp. 2d 682 (E.D. Mich. 2000) ...................................................................................10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    546 F.3d 981 (9th Cir. 2008) ...................................................................................passim

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    476 F. Supp. 2d 452 (D. Del. 2007) ...................................................................................passim

*In re Monosodium Glutamate Antitrust Litig.*,
    477 F.3d 535 (8th Cir. 2007) ...................................................................................9, 13, 14

*In re Optical Disk Drive Antitrust Litig.*,
    No. 3:10-MD-2143 RS, 2014 WL 3378336 (N.D. Cal. July 10, 2014) ......................................10

*In re S. Dakota Microsoft Antitrust Litig.*,
    707 N.W.2d 85 (S.D. 2005)...................................................................................10

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. 07-md-01819 CW, 2010 WL 5477313 (N.D. Cal. Dec. 31, 2010) ...............................passim

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    Nos. M 07-1827 SI, 2010 WL 2610641 (N.D. Cal. June 28, 2010)......................................12, 13

*In re Vehicle Carrier Servs. Antitrust Litig.*,
    No. 13-3306 ES, 2015 WL 5095134 (D.N.J. Aug. 28, 2015) ...................................................7, 8

*Int'l Paper Co. v. Ouellette*,
    479 U.S. 481 (1987) ...................................................................................7

*Jacobson v. Cohen*,
    151 F.R.D. 526 (S.D.N.Y. 1993)...................................................................................4

*Japan Line, Ltd. v. Cnty. of L.A.*,
    441 U.S. 434 (1979) ...................................................................................8

*Kinetic Sys., Inc. v. Fed. Fin. Bank*,
    65 F. Supp. 3d 731, 736 (N.D. Cal. 2014)...................................................................................3

*Lockheed Martin Corp. v. Boeing Co.*,
    390 F. Supp. 2d 1073 (M.D. Fla. 2005)...................................................................................10

*Lotes Co. Ltd. v. Hon Hai Precision Indus. Co.*,
    753 F.3d 395 (2d Cir. 2014) ...................................................................................13, 14

*Major League Baseball v. Crist*,
    331 F.3d 1177 (11th Cir. 2003) ................................................................................................. 7

*Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .................................................................................................................. 4

*Minn-Chem, Inc. v. Agrium Inc.*,
    683 F.3d 845 (7th Cir. 2012) ............................................................................................ 12, 13

*Motorola Mobility LLC v. AU Optronics Corp.*,
    775 F.3d 816 (7th Cir. 2015) ............................................................................................passim

*Nat'l Foreign Trade Council v. Natsios*,
    181 F.3d 38 (1st Cir. 1999), *aff'd on other grounds sub nom. Crosby v. Nat'l Foreign
    Trade Council*, 530 U.S. 363 (2000) ....................................................................................... 9

*Pac. Nw. Venison Prods. v. Smitch*,
    20 F.3d 1008 (9th Cir. 1994) .................................................................................................... 8

*Portsmouth Square, Inc. v. S'holders Protective Comm.*,
    770 F.2d 866 (9th Cir. 1985) .............................................................................................. 4, 16

*Princeton Ins. Agency, Inc. v. Erie Ins. Co.*,
    690 S.E.2d 587 (W. Va. 2009) ............................................................................................... 10

*Romero v. Philip Morris Inc.*,
    148 N.M. 713 (N.M. 2010) ..................................................................................................... 10

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
    No. C 12-2582 CW, 2013 WL 368365 (N.D. Cal. Jan. 29, 2013) ............................................ 10

*United States v. Hui Hsiung*,
    778 F.3d 738 (9th Cir. 2014) ............................................................................................ 12, 16

*United States v. Locke*,
    529 U.S. 89 (2000) .................................................................................................................... 8

*United States v. LSL Biotechnologies*,
    379 F.3d 672 (9th Cir. 2004) ........................................................................................ 6, 15, 16

**U.S. CONSTITUTION**

U.S. Const. Art. I, § 8, cl. 3 ............................................................................................... 1, 4, 7

U.S. Const. Art. VI, cl. 2 ................................................................................................. 1, 4, 5, 6

**STATUTES**

Foreign Trade Antitrust Improvements Act, 15 USCC §§ 1, 6a ...............................................passim

Fla. Stat. § 501.204 ........................................................................................................10

**RULES**

FED. R. CIV. P. 16(c)(2)(A) ..........................................................................................3, 16

FED. R. CIV. P. 56(a) ........................................................................................................3

**OTHER AUTHORITIES**

H.R. Rep. No. 97-686 ........................................................................................................6

Wright & Miller, 6A Fed. Prac. & Proc. Civ., § 1525 n.3 (3d ed.) ......................................4

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.      STATEMENT OF THE ISSUE

3       Whether the Foreign Trade Antitrust Improvements Act ("FTAIA") bars the Indirect

4  Purchaser Plaintiffs' ("Plaintiffs") state law claims that involve standalone capacitors first sold

5  outside the United States to a third-party distributor that is not an alleged conspirator.

6

## II.     INTRODUCTION

7       This motion is directed solely at Plaintiffs' indirect purchaser claims based on purchases of

8  standalone capacitors first sold outside the United States to distributors that are not Defendants or

9  alleged co-conspirators (the "Foreign Commerce Claims").  These claims are barred by the FTAIA

10  or equivalent principles applicable to state antitrust and consumer protection laws covering the

11  same conduct, even if those distributors resold the capacitors to customers located in the United

12  States, because:  (i) these capacitors are not "import commerce"; and (ii) the pricing of these resold

13  capacitors in the United States is not the result of any "direct, substantial, and reasonably

14  foreseeable effect" on domestic commerce that "gives rise to" Plaintiffs' claims.  15 U.S.C. § 6a.

15  These foreign distributors' purchases outside the United States occurred, by definition, entirely in

16  foreign commerce, making these purchases the kind of "commerce with foreign nations" that the

17  FTAIA specifically precludes.

18       First, Plaintiffs' claims are indisputably based on undefined quantities of standalone

19  capacitors first sold by Defendants to distributors located outside the United States, which those

20  distributors then resold in the United States.  *See* Defs.' May 13, 2015 Ltr. to the Court, ECF No.

21  692 at 1-2; Defs.' May 8, 2015 Ltr. to IPPs' Interim Lead Counsel, ECF No. 692-4.  None of these

22  indirect purchases of standalone capacitors are subject to U.S. antitrust laws because the FTAIA

23  excludes claims based on foreign transactions where the anticompetitive effects occur overseas and

24  the affected products are subsequently imported into the United States by non-conspirators.

25       Second, as confirmed by an unbroken line of cases, the FTAIA limits the reach of state

26  antitrust laws to the same extent it limits federal antitrust law.  The reasons for this are manifold:

27  *To begin with*, the Supremacy Clause of the United States Constitution forbids the application of

28  state law in a manner inconsistent with federal law such as the FTAIA.  *Further*, the Commerce

1    Clause of the Constitution precludes the states from applying their laws in a way that undermines

2    and intrudes upon the federal government's exclusive role in regulating foreign commerce.  *Also*,

3    the principle of prescriptive comity requires that the states not interfere with the sovereignty of

4    foreign nations and compels that state antitrust laws be construed consistently with that purpose.

5    *Finally*, the state laws on which Plaintiffs base their claims were modeled upon federal antitrust law

6    or the Federal Trade Commission Act ("FTC Act"), to which the FTAIA clearly applies.

7        This Court has recognized that resolution of issues related to the FTAIA before class

8    certification proceedings may significantly streamline this litigation and avoid certification of a

9    class that includes members with no valid claims.  Oct. 29, 2014 Hrg. Tr., ECF No. 343 at 17.

10    Accordingly, and for the reasons stated above, this Court should grant Defendants' partial summary

11    judgment and dismiss Plaintiffs' state law claims based on overseas sales of capacitors or limit

12    Plaintiffs' claims to those relating to capacitors that Defendants or their alleged co-conspirators

13    imported directly into the United States or otherwise sold directly in U.S. commerce.

14    **III.     STATEMENT OF UNDISPUTED FACTS**

15        Plaintiffs are indirect purchasers of standalone electrolytic and film capacitors

16    ("Capacitors") in the United States.  *See* Indirect Purchaser Pls.' Second Consolidated Compl.

17    ("Compl.") ¶¶ 2-3.  They allege that they purchased Capacitors from distributors that purchased

18    Capacitors directly from the alleged conspirator manufacturers and resold them to customers in the

19    United States.  *Id*.  Plaintiffs seek damages for those indirect purchases of Capacitors under the laws

20    of Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas,

21    Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada,

22    New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island,

23    South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.  *See id.*

24    ¶¶ 388, 421.  Plaintiffs also seek injunctive relief under federal law.  *Id.* ¶ 386.

25        Defendants include foreign manufacturers of Capacitors that sell standalone Capacitors to

26    third-party distributors outside the United States, who then resell the Capacitors they buy to other

27    purchasers further down the distribution chain.  Compl. ¶¶ 2-3, 273-274; Panasonic Decl. ¶¶ 16-18;

28    Sanyo Decl. ¶¶ 17-19; Hitachi Decl. ¶ 7; NEC Tokin Decl. ¶¶ 11-12; Rubycon Decl. ¶¶ 11-12;

Soshin Decl. ¶¶ 11-14; Nichicon Decl. ¶¶ 15-16; Matsuo Decl. ¶¶ 8, 11-13; *see also* ELNA Decl. ¶¶ 7-8; Okaya Decl. ¶¶ 7, 13; Shinyei Decl. ¶¶ 19, 22-23; Taitsu Decl. ¶ 5; Nippon Chemi-Con Decl. ¶ 10; United Chemi-Con Decl. ¶¶ 7-8.   Plaintiffs have acknowledged that the only transactions outside the United States that Plaintiffs seek to include in their claims are sales of Capacitors by Defendants to non-party distributors outside the United States, who then resell the Capacitors as standalone products to purchasers located in the United States.  *See* ECF No. 692 at 1-2; ECF No. 692-4.

There is no genuine issue of material fact that Defendants sold standalone Capacitors to distributors outside the United States.  *See* Panasonic Decl. ¶¶ 16-18; Sanyo Decl. ¶¶ 17-19; Hitachi Decl. ¶ 7; NEC Tokin Decl. ¶¶ 11-12; Rubycon Decl. ¶¶ 11-12; Soshin Decl. ¶¶ 11-14; Nichicon Decl. ¶¶ 15-16; Matsuo Decl. ¶¶ 8, 11-13; *see also* ELNA Decl. ¶¶ 7-8; Okaya Decl. ¶¶ 7, 13; Shinyei Decl. ¶¶ 19, 22-23; Taitsu Decl. ¶ 5; Nippon Chemi-Con Decl. ¶ 10; United Chemi-Con Decl. ¶¶ 7-8.  This motion is directed solely at Plaintiffs' indirect purchaser claims that involve these upstream foreign-to-foreign sales, in which non-conspiring distributors purchased Capacitors that they later resold to purchasers in the United States.

## IV.    STANDARD OF REVIEW

Courts have wide discretion to simplify, eliminate or grant summary judgment on any claim or issue that can be determined as a matter of law.  Fed. R. Civ. P. 56(a); Fed. R. Civ. P. 16(c)(2)(A) (stating that a court may consider "formulating and simplifying the issues, and eliminating frivolous claims" at a pre-trial conference).

A court "shall" grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment should be granted if the evidence would require a directed verdict for the moving party."  *Kinetic Sys., Inc. v. Fed. Fin. Bank*, 65 F. Supp. 3d 731, 736 (N.D. Cal. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

Alternatively, a court may narrow an issue or eliminate a frivolous claim if the party that has the burden of proof cannot come forward and establish that a genuine issue of material fact exists with respect to its claim. *See Portsmouth Square, Inc. v. S'holders Protective Comm.*, 770 F.2d 866, 869-70 (9th Cir. 1985) (explaining that Fed. R. Civ. P. 16 provides a district court judge wide discretion to narrow claims); Wright & Miller, 6A Fed. Prac. & Proc. Civ., § 1525 n.3 (3d ed.) (explaining that Fed. R. Civ. P. 16 pre-trial conferences are particularly useful in complex and large litigations); *Jacobson v. Cohen*, 151 F.R.D. 526, 528 (S.D.N.Y. 1993) ("Pursuant to Fed. R. Civ. P. 16, it is appropriate to ask each party carrying the burden of proof with respect to a claim . . . [to] establish[] a genuine issue of material fact as to [that] claim . . . .  Once such submissions have been made, the opposing party must submit enough information to show that its position remains viable under [*Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)] in light of what the adversary has placed before the court.").

## V.    ARGUMENT

The facts on which this motion is based cannot be genuinely disputed:  (i) Defendants sold standalone Capacitors to distributors outside the United States; and (ii) a portion of Plaintiffs' indirect purchaser claims are based on those purely foreign sales.  Because Defendants did not sell those Capacitors directly into the United States, and the pricing of the resold Capacitors in the United States was not the result of any "direct, substantial, and reasonably foreseeable effect" on domestic commerce that "gives rise to" Plaintiffs' claims, 15 U.S.C. § 6a, the Court should grant this motion for summary judgment and dismiss Plaintiffs' Foreign Commerce Claims as barred by the FTAIA.

Alternatively, Plaintiffs' claims should be simplified to exclude any claims based on those foreign sales.  This exclusion will substantially advance the litigation by making it clear that any proposed class to be certified must exclude any customers who only purchased Capacitors that were first sold overseas to a third-party non-conspirator distributor.

**A.**      **State Law Claims Are Governed By The Extraterritorial Limitations Imposed By The FTAIA.**

To allow claims under state antitrust or consumer protection laws to circumvent the restrictions of the FTAIA would undermine Congress's purpose in enacting the FTAIA, violate the Supremacy and Commerce Clauses of the U.S. Constitution, and offend principles of comity. Courts addressing this issue have thus applied the FTAIA to limit claims under state antitrust laws and similar state consumer protection laws. *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5477313, at *4 (N.D. Cal. Dec. 31, 2010) ("*SRAM*") (finding that indirect purchasers of computer memory were barred from recovering for foreign market transactions under state laws unless plaintiffs could prove facts bringing their claims within the FTAIA's domestic effect exception); *In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457 (D. Del. 2007) (finding that plaintiffs' state antitrust and consumer protection claims are limited "by the reach of their applicable federal counterparts" and dismissing claims based on products that were first sold to third parties overseas); *see also 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 n.8 (M.D.N.C. 1987) (noting "the anomaly that would be created if [North Carolina's Unfair Trade Practices Act] were construed to have a greater extraterritorial reach than the Sherman Act"). Furthermore, many of the state laws on which Plaintiffs base their claims are modeled in lockstep with federal antitrust law and are thus subject to the same limitations applicable to the federal antitrust laws, including the FTAIA. *See, e.g.*, *In re Intel*, 476 F. Supp. 2d at 457 (applying the FTAIA to plaintiffs' California law claims because "Congress' intent would be subverted if state antitrust laws were interpreted to reach conduct which the federal law could not" and the FTC Act, which "numerous states turn to . . . for guidance in applying their consumer protection laws, . . . applies a standard substantially similar to that applied under the FTAIA").

**1.**      **The Supremacy Clause Prevents Plaintiffs' State Law Claims From Extending Farther Than The FTAIA Allows.**

The Supremacy Clause instructs that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

1   U.S. Const. Art. VI, cl. 2.  That Clause prohibits the application of state laws that "stand[] as an

2   obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

3   *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000); *see also Hines v. Davidowitz*,

4   312 U.S. 52, 66-67 (1941) (state laws cannot interfere with federal laws "which concern the

5   exterior relation of this whole nation with other nations and governments").

6       The Supremacy Clause thus preempts all state laws inconsistent with the goals of

7   Congress.  *Crosby*, 530 U.S. at 372-73, 388 ("A fundamental principle of the Constitution is that

8   Congress has the power to preempt state law.").  That principle applies even where Congress has

9   not contemplated that federal and state law may conflict.  *Id.* at 387-88 (the "failure to provide for

10  preemption expressly may reflect nothing more than the settled character of implied preemption

11  doctrine that courts will dependably apply").  Under the doctrine of implied preemption, state law

12  must yield where it "stands as an obstacle to the accomplishment and execution of the full

13  purposes and objectives of Congress."  *Aguayo v. U.S. Bank*, 653 F.3d 912, 918 (9th Cir. 2011).

14  Congress' intent is dispositive in preemption cases and is determined by reviewing a statute as a

15  whole to identify its purposes and intended effects.  *Id.*; *Chae v. SLM Corp.*, 593 F.3d 936, 943

16  (9th Cir. 2010).

17      Congress passed the FTAIA to create a "single, objective test" that would serve as a "clear

18  benchmark" as to the geographical scope of American antitrust laws, H.R. Rep. No. 97-686, and

19  would "more clearly establish when antitrust liability attaches to international business activities."

20  *United States v. LSL Biotechnologies*, 379 F.3d 672, 679 (9th Cir. 2004) (quoting H.R. Rep. No.

21  97-686, *reprinted in* 1982 U.S.C.C.A.N. 2487, 2492); *Empagran S.A. v. F. Hoffmann-LaRoche,*

22  *Ltd.*, 417 F.3d 1267, 1271 (D.C. Cir. 2005) ("*Empagran II*").  These purposes require the FTAIA

23  to be interpreted as precluding American courts from entertaining antitrust claims based on

24  foreign injury "*across the board*," *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155,

25  168-69 (2004) ("*Empagran*"), regardless of whether a plaintiff elects to bring such claims under

26  federal or state antitrust laws.  *See, e.g.*, *SRAM*, 2010 WL 5477313, at *4; *In re Intel*, 476 F.

27  Supp. 2d at 457 ("Congress' intent [in enacting the FTAIA] would be subverted if state antitrust

28  laws were interpreted to reach conduct which the federal law could not.").

Applying the preemption principles established by the Supremacy Clause, courts have limited the reach of state law to the reach of federal antitrust law where Congress has excluded the challenged conduct from liability.  *See, e.g.*, *In re Vehicle Carrier Servs. Antitrust Litig.*, No. 13-3306 ES, 2015 WL 5095134, at *11 (D.N.J. Aug. 28, 2015) (holding that the Shipping Act, which bars certain claims under federal antitrust law, also preempts conflicting state antitrust and consumer protection laws "because they stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"); *Major League Baseball v. Crist*, 331 F.3d 1177, 1186 (11th Cir. 2003) (invalidating civil investigative demands issued under the Florida Antitrust Act by the Florida Attorney General because "federal law established a universal exemption [from the antitrust laws for the business of baseball] in the name of uniformity").  In particular, courts have held that the FTAIA, which Congress intended to limit the scope of United States antitrust laws as to overseas anticompetitive actions, also limits the scope of state antitrust and similar consumer protection laws covering the same conduct.  *See, e.g.*, *In re Intel*, 476 F. Supp. 2d at 457; *Global Reins. Corp. – U.S. Branch v. Equitas Ltd.*, 969 N.E.2d 187, 195 (N.Y. 2012) (finding that New York's Donnelly Act "cannot reach foreign conduct deliberately placed by Congress beyond the Sherman Act's jurisdiction," and noting that "if states remained free to authorize 'little Sherman Act' claims that went beyond it" the federal power to regulate foreign commerce would be undone); *SRAM*, 2010 WL 5477313, at *4.

To permit state law claims—whether brought under state antitrust laws or state unfair competition laws—to evade the FTAIA's limits would frustrate the goals of the FTAIA and the method for achieving them by replacing Congress' "single, objective test" with 50 voices.  As the Supreme Court has held, "state law . . . is pre-empted if it interferes with the methods by which the federal statute was designed to reach" its goals.  *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987); *see also Flood v. Kuhn*, 407 U.S. 258, 284 (1972) (dismissing state antitrust claims because "state antitrust regulation would conflict with federal policy").

1

**2.       The Commerce Clause Also Precludes The Ability Of State Antitrust Laws To Regulate Foreign Commerce.**

2

3          The Commerce Clause gives Congress the sole and exclusive power "[t]o regulate

4   Commerce with foreign Nations . . . ."  U.S. Const. Art. I, § 8, cl. 3.  Foreign commerce is "'pre-

5   eminently a matter of national concern' on which the federal government has historically

6   spoke[n] with 'one voice.'"  *SRAM*, 2010 WL 5477313, at *4 (quoting *Japan Line, Ltd. v. Cnty.*

7   *of L.A.*, 441 U.S. 434, 448 (1979)).   State laws "prevent[ing] the Federal Government from

8   speaking with one voice" in such matters are unconstitutional because they are "inconsistent with

9   Congress'[s] power to 'regulate Commerce with foreign Nations.'"  *Japan Line*, 441 U.S. at 453-

10  54; *see also Buttfield v. Stanahan*, 192 U.S. 470, 492-93 (1904) (recognizing the "exclusive and

11  absolute" power of Congress over foreign commerce); *Bowman v. Chicago & N.W. Ry. Co.*, 125

12  U.S. 465, 482 (1888) ("The organization of our state and federal system of government is such

13  that people of the several states can have no relations with foreign powers in respect to

14  commerce, or any other subject, except through the government of the United States, and its laws

15  and treaties.").   Thus, "when state regulations affect foreign commerce, additional scrutiny is

16  necessary to determine whether the regulations 'may impair uniformity in an area where federal

17  uniformity is essential.'"  *Pac. Nw. Venison Prods. v. Smitch*, 20 F.3d 1008, 1014 (9th Cir. 1994)

18  (quoting *Japan Line*, 441 U.S. at 448); *United States v. Locke*, 529 U.S. 89, 108 (2000) (where

19  foreign commerce is involved there is no "artificial presumption" against preemption).

20         Congress enacted the FTAIA to establish a uniform limit on the extent to which antitrust

21  laws are applied to claims based on foreign commerce.  *Empagran*, 542 U.S. at 158.  Congress's

22  deliberate legislation concerning foreign commerce cannot be contravened by state law.  Thus, in

23  *SRAM*, Judge Wilken rejected indirect purchasers' argument that the FTAIA was inapplicable to

24  state law claims, observing that "the United States Constitution vests Congress with the express

25  power to 'regulate Commerce with foreign Nations.'"  *SRAM*, 2010 WL 5477313, at *4; *see also*

26  *In re Intel*, 476 F. Supp. 2d at 457 (applying the FTAIA to plaintiffs' California law claims

27  because "Congress' intent would be subverted if state antitrust laws were interpreted to reach

28  conduct which the federal law could not"); *In re Vehicle Carrier*, 2015 WL 5095134, at *16

1  ("Permitting private actions under a patchwork of state laws for the same exact conduct that is

2  exempt from federal antitrust law . . . directly undermines the 'certainty and predictability'

3  Congress sought to achieve in passing the Shipping Act . . . .  The state laws at issue cannot

4  consistently stand together with the statutory scheme and Congress's stated purposes . . . and are

5  therefore preempted.") (internal citations omitted); *Nat'l Foreign Trade Council v. Natsios*, 181

6  F.3d 38, 68-69 (1st Cir. 1999) (Massachusetts "anti-Burma" law violated, *inter alia*, Commerce

7  Clause, by interfering with the ability of the U.S. to speak with one voice with respect to foreign

8  commerce with Myanmar), *aff'd on other grounds sub nom. Crosby v. Nat'l Foreign Trade*

9  *Council*, 530 U.S. 363 (2000); *Gerling Global Reinsurance Corp. v. Quackenbush*, No. Civ. S-

10  00-0506WBSJFM, 2000 WL 777978, at *12 (E.D. Cal. June 9, 2000) (state law requiring

11  disclosure of insurance claims sold to Europeans prior to World War II interfered with the ability

12  of the U.S. to speak with one foreign affairs voice in compensating Holocaust victims), *aff'd on*

13  *other grounds sub. nom. American Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003).

14        To allow each state to independently regulate and determine the application of their

15  antitrust laws to foreign commerce is inconsistent with the federal government's exclusive power

16  to regulate foreign commerce.

17            **3.**     **Principles of International Comity Also Bar State Law Claims From**

18                    **Reaching Foreign Commerce Beyond The Restrictions Of The FTAIA.**

19        The Supreme Court has also explained that applying U.S. antitrust law to sales in foreign

20  markets may interfere with foreign enforcement efforts in those markets and may jeopardize

21  international cooperation in U.S. cartel enforcement.  *See Empagran*, 542 U.S. at 164-65, 167-68.

22  Regulating foreign transactions because they may harm U.S. consumers through derivative, pass-

23  on effects is precisely the sort of interference with other nations' economies and competition

24  enforcement efforts long recognized as counterproductive to U.S. interests.  *Empagran II*, 417

25  F.3d at 1271; *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 987

26  (9th Cir. 2008) ("*DRAM*"); *In re Monosodium Glutamate Antitrust Litig.*, 477 F.3d 535, 538 (8th

27  Cir. 2007).

28

1    It would make no sense for Congress to limit the reach of federal antitrust law claims to

2  foreign anticompetitive actions and effects as a matter of international comity without also

3  limiting the reach of the laws of individual states.  By adhering to principles of international

4  comity, such conflict can be avoided.  *See Empagran*, 542 U.S. at 164-65.

5  **4.    The Relevant States' Competition Laws Are Also Required to Be
         Harmonized With Federal Antitrust Law, Which Provides an Additional
6         Ground For Holding Such Laws Inapplicable to Overseas Capacitor
         Sales to Third-Party Distributors.**

7

8    Finally, many of the states at issue have recognized the need for a uniform approach

9  between federal and state antitrust laws.  Some have explicitly enacted statutes to harmonize those

10  state laws.  For example, Florida has harmonized its Deceptive and Unfair Trade Practices Act

11  ("FDUTPA") with the FTC Act and federal courts' interpretation of the FTC Act.  *See* Fla. Stat. §

12  501.204 (stating that the courts, when construing the FDUTPA, shall grant "due consideration and

13  great weight . . . to the interpretations of the Federal Trade Commission and the federal courts

14  related to . . . the Federal Trade Commission Act").  Courts in many other states have found that

15  their state antitrust laws should be construed in harmony with federal law.[3]

16    In consideration of the foregoing principles, in the thirty-three years the FTAIA has existed,

17  ─────────────────────
[3] *See, e.g.*, *Romero v. Philip Morris Inc.*, 148 N.M. 713, 724 (N.M. 2010) ("the [New Mexico]
18  Antitrust Act *shall* be construed in harmony with judicial interpretations of the federal antitrust laws
. . . to achieve uniform application of the state and federal laws"); *In re S. Dakota Microsoft*
19  *Antitrust Litig.*, 707 N.W.2d 85, 99 (S.D. 2005) ("because of the similarity of language between
federal and state antitrust statutes and because of the legislative suggestion for interpretation found
20  in SDCL 37-1-22, great weight should be given to the federal cases interpreting the federal
statute"); *Goldman v. Loubella Extendables*, 283 N.W.2d 695, 699 (Mich. Ct. App. 1979) ("The
21  Michigan antitrust act is patterned after the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., and
Federal court interpretations of the Sherman Act are persuasive authority as to the meaning of the
Michigan act."); *Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 690 S.E.2d 587, 593 (W. Va. 2009)
22  ("The courts of this state are directed by the legislature in *W.Va.Code*, 47–18–16 [1978] to apply
the federal decisional law interpreting the Sherman Act, 15 U.S.C. § 1, to our own parallel antitrust
23  statute, *W.Va.Code* § 47–18–3(a) [1978]."); *see also In re Cardizem CD Antitrust Litig.*, 105 F.
Supp. 2d 682, 692 (E.D. Mich. 2000) ("It is not disputed that the state antitrust statutes at issue here
24  either follow federal Sherman Act precedent or find federal case law persuasive."); *Lockheed*
*Martin Corp. v. Boeing Co.*, 390 F. Supp. 2d 1073, 1077 (M.D. Fla. 2005) ("Federal and Florida
25  antitrust laws are analyzed under the same rules and case law.  Thus, discussion as to the merits of
[plaintiff's] claims under the Sherman Act applies with equal force to [plaintiff's] corresponding
26  claims under the Florida Antitrust Act.") (internal citations and quotations omitted); *Hoilien v.*
*OneWest Bank*, FSB, No. CV. 11-00357 DAE-RLP, 2012 WL 1379318, at *13 (D. Haw. Apr. 20,
27  2012) (the "[l]egislative history of Hawaii's antitrust law clearly indicates that the state laws are to
be interpreted and construed in harmony with analogous federal antitrust laws").

28

─────────────────────

it appears that every court to decide the issue—both at the federal and state level—has held that the FTAIA applies to state law claims.  *See, e.g.*, *SRAM*, 2010 WL 5477313, at *4 (rejecting the argument that "the FTAIA does not apply to . . . state law claims" as "unpersuasive"); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2014 WL 3378336, at *3 n.2 (N.D. Cal. July 10, 2014) ("Plaintiffs' further argument that their state law claims would survive even if the FTAIA bars any part of their federal claims is not compelling."); *In re Intel*, 476 F. Supp. 2d at 457; *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2013 WL 368365, at *9 (N.D. Cal. Jan. 29, 2013) ("Here, Defendants' Cartwright Act counterclaims suffer from the same shortcomings as their Sherman Act counterclaims.  Specifically, Defendants' failure to explain how Plaintiff's conduct undermined competition in domestic markets means that they have similarly failed to explain how Plaintiff's conduct undermined competition in a California market."); *'In' Porters, S.A.*, 663 F. Supp. at 502 n.8 (noting "the anamoly [sic] that would be created if [North Carolina's Unfair Trade Practices Act] were construed to have a greater extraterritorial reach than the Sherman Act"); *Amarel v. Connell*, 202 Cal. App. 3d 137, 149 (Cal. Ct. App. 1988) (the FTAIA "establish[es] an 'effects' test for application of the *state's* antitrust and unfair competition laws") (emphasis added); *CSR Ltd. v. Cigna Corp.*, 405 F. Supp. 2d 526, 552 (D.N.J. 2005) (applying the FTAIA to New Jersey state antitrust claims); *Global Reins. Corp.*, 969 N.E.2d at 195-96 (limitations imposed by the FTAIA "would be undone if states remained free to authorize 'little Sherman Act' claims that went beyond it").  Like every court before it, this Court should hold that the FTAIA limits the extraterritorial reach of state law.

For all of these reasons, Plaintiffs may not pursue state law recoveries for their Foreign Commerce Claims unless they can establish that the FTAIA does not bar those claims.  As shown next, Plaintiffs have not met this burden.

### B.   Plaintiffs Cannot Establish That Their Foreign Commerce Claims Satisfy Either The Import Commerce Exclusion Or The Domestic Effect Exception To The FTAIA.

The Court should enter summary judgment in favor of Defendants on Plaintiffs' Foreign Commerce Claims because the FTAIA prohibits Plaintiffs from recovering under state law for activity involving foreign commerce outside the reach of the Sherman Act.  Satisfying the FTAIA is

part of the Plaintiffs' burden to establish the required elements of its antitrust claims. *See* DPP Mot. at Part IV.B.1 (citing *Empagran*, 542 U.S. 155; *DRAM*, 546 F.3d 981; *Motorola Mobility LLC v. AU Optronics Corp*., 775 F.3d 816 (7th Cir. 2015) ("*Motorola Mobility*")). But Plaintiffs cannot meet their burden of proving either that the foreign transactions on which they seek recovery amount to "import" commerce excluded from the restrictions of the FTAIA, or that Defendants' conduct had "a direct, substantial, and reasonably foreseeable effect" on U.S. domestic commerce that "gives rise to" their claims. 15 U.S.C. § 6a; *see* DPP Mot. at Part IV.B.

> **1.    The FTAIA's Import Commerce Exclusion Does Not Apply Because The Alleged Conspirators Did Not Import The Capacitors Underlying Plaintiffs' Foreign Commerce Claims.**

"'[I]mport trade' for purposes of the FTAIA . . . means precisely what it says." *United States v. Hui Hsiung*, 778 F.3d 738, 754-55 (9th Cir. 2014). "'[T]ransactions that are directly between the [U.S.] plaintiff purchasers and the defendant cartel members *are* the import commerce of the United States . . . ." *Id.* at 755 (quoting *Minn-Chem*, 683 F.3d at 855). In contrast, the import commerce exclusion does not apply when a third party other than a defendant imported the product to the United States. *See Motorola Mobility*, 775 F.3d at 818 (holding that the import commerce exclusion only applied to the 1% of products that the defendants themselves sold and delivered into the United States); *Hui Hsiung*, 778 F.3d at 754 ("wholly foreign transactions" are not import commerce); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827 SI, 2010 WL 2610641, at *4-6 (N.D. Cal. June 28, 2010) (the FTAIA's import commerce exclusion applies only where the defendant itself imported the price-fixed goods into the United States); *see also* DPP Mot. at Part IV.B.2.a.

None of Plaintiffs' Foreign Commerce Claims are based on Capacitors sold by Defendants to purchasers in the United States. Rather, the claims are based on foreign sales to foreign third-party distributors, which then resold the Capacitors to Plaintiffs in the United States. There is no genuine issue of material fact that Defendants sold standalone Capacitors to distributors outside the United States. *See supra* Section III. Because Defendants did not import such Capacitors to the United States, Plaintiffs' claims based on subsequent sales by foreign third parties to Plaintiffs in the United States do not meet the import commerce exclusion of the FTAIA as a matter of law. *See*

1    *Motorola Mobility*, 775 F.3d at 818; *Minn-Chem*, 683 F.3d at 855 (the import exclusion applies

2    only to "pure import commerce," *i.e.*, "trade involving only foreign sellers and domestic buyers");

3    *In re TFT-LCD*, 2010 WL 2610641, at *4-6; *see also DRAM*, 546 F.3d at 986 n.6.

        **2.      The Domestic Effects Test Of The FTAIA Does Not Apply To Plaintiffs'**
4                **Foreign Commerce Claims.**

5

6            Because the import commerce exclusion does not apply to Plaintiffs' Foreign Commerce

7    Claims, Plaintiffs must prove that Defendants' conduct with respect to the Foreign Commerce

8    Claims had a "direct, substantial, and reasonably foreseeable effect" on domestic commerce that

9    "gives rise to" Plaintiffs' claims.  *See Empagran*, 542 U.S. at 161, 173-74 (holding that domestic

10   effects must give rise to "the plaintiff's claim" or "the claim at issue").   The "gives rise to"

11   language of Section 6a of the FTAIA requires Plaintiffs to come forward with evidence of a direct,

12   substantial and reasonably foreseeable domestic effect that proximately caused the harm giving rise

13   to Plaintiffs' Foreign Commerce Claims.  It is not enough that foreign harm suffered by foreign

14   purchasers (*i.e.*, the foreign distributors) may eventually have caused domestic effects to purchasers

15   in the United States.  *See, e.g.*, *DRAM*, 546 F.3d at 987-88 (citing *Empagran II*, 417 F.3d at 1271);

16   *Motorola Mobility*, 775 F.3d at 819; *see also Lotes Co. Ltd. v. Hon Hai Precision Indus. Co.*, 753

17   F.3d 395, 414 (2d Cir. 2014) (holding that if foreign antitrust injury in turn causes U.S. effects the

18   domestic effect exception of the FTAIA does not apply because "the direction of causation runs the

19   wrong way").   In other words, the "gives rise to" language of the domestic effect exception of the

20   FTAIA requires that Defendants' conduct have direct domestic effects that cause the harm that

21   gives rise to Plaintiffs' claims—not that the foreign harm allegedly suffered by the initial distributor

22   purchasers of Capacitors abroad subsequently cause domestic effects through a pass-on theory.  *See*

23   *In re Monosodium Glutamate*, 477 F.3d at 539-40 ("The domestic effects of the price fixing scheme

24   (increased U.S. prices) were not the direct cause of the appellants' injuries.   Rather, it was the

25   foreign effects of the price fixing scheme (increased prices abroad)."); *Lotes*, 753 F.3d at 414

26   (noting that where foreign antitrust injury later results in domestic effects, such effects do not give

27   rise to a claim).

28

With respect to the Foreign Commerce Claims, the direct effect, if any, of Defendants' alleged conduct would be the foreign injury suffered by foreign distributors that purchased Capacitors abroad at allegedly increased prices.  Plaintiffs claim that foreign distributors passed on the allegedly increased prices they paid when they resold those Capacitors in the United States.  Donovan Decl.[4] Ex. 1, IPPs' Resps. & Objs. to Defs.' Second Set of Interrogatories, dated July 13, 2015, at 13 ("The price-fixed capacitors were sold from the foreign distributor to a customer based in the United States with the artificially inflated pricing, an inflated price that was paid by customers based in the United States.").  The harm in the United States, if any, was therefore caused by a follow-on or secondary effect from a foreign injury, and not by any direct effect in the United States.  Plaintiffs therefore cannot satisfy the elements of the FTAIA.  *See, e.g.*, *DRAM*, 546 F.3d at 988-89 (affirming dismissal of Sherman Act claims arising from foreign purchases); *Motorola Mobility*, 775 F.3d at 819.

In short, with the overseas transactions to third parties involved, no domestic effects of the alleged conspiracy "proximately caused" actionable injury to the foreign purchasers.  *See DRAM*, 546 F.3d at 988.  Indeed, Plaintiffs concede that their Foreign Commerce Claims "arise[] from the fact that [the foreign distributors] paid inflated prices for capacitors" outside the United States, *i.e.*, from a foreign effect of the alleged conspiracy.  Donovan Decl. Ex. 1, IPPs' Resps. & Objs. to Defs.' Second Set of Interrogatories, at 13, 16.  This foreign effect is the alleged cause of Plaintiffs' injuries, and is thus not actionable under the FTAIA.  *See, e.g.*, *In re Monosodium Glutamate*, 477 F.3d at 539; *DRAM*, 546 F.3d at 988 (dismissing claims because plaintiff cannot establish a "direct causal link between the anticompetitive practice and plaintiff's damages"); *Motorola Mobility*, 775 F.3d at 819 ("What trips up Motorola's suit is the statutory requirement that the effect of the anticompetitive conduct on domestic U.S. commerce give rise to an antitrust cause of action."); *Lotes*, 753 F.3d at 414 (affirming dismissal of plaintiff's antitrust claims on the ground that there was no domestic effect that "gave rise to" plaintiff's foreign injury); *Minn-Chem*, 683 F.3d at 854 (holding that the "gives rise to" requirement bars claims of "foreign purchasers of allegedly price-

---

[4] *See* the concurrently-filed Declaration of Molly M. Donovan.

1   fixed products that were sold in foreign markets"); *see also* Donovan Decl. Ex. 1, IPPs' Resps. &

2   Objs. to Defs.' Second Set of Interrogatories, at 16 (admitting that indirect purchasers in the United

3   States "ultimately . . . paid artificially inflated prices," but not until *after* the foreign purchasers had

4   been harmed); *see also* DPP Mot. at Part IV.B.2.b.

5          The Seventh Circuit's recent decision in *Motorola Mobility* powerfully confirms this

6   conclusion.  Like the putative IPP class members here, Motorola was an indirect purchaser in the

7   United States that purchased allegedly price-fixed products from third-party entities overseas, and it

8   was those foreign third parties that originally purchased the products from the defendants.  775 F.3d

9   at 818-19.  In analyzing the domestic effect exception, the court "assume[d] that the requirement of

10  a direct, substantial, and reasonably foreseeable effect on domestic commerce *has been satisfied*"—

11  and it *still* affirmed summary judgment against the plaintiff because Motorola did not satisfy the

12  "statutory requirement that the effect of anticompetitive conduct on domestic U.S. commerce *give*

13  *rise to* an antitrust cause of action."  *Id.* at 819 (emphasis added).  Even though "[t]he conduct

14  increased the cost to Motorola," the domestic effect exception was not met because "the cartel-

15  engendered price increase . . . occurred entirely in foreign commerce."  *Id.*  Summary judgment is

16  warranted for the same reason here.  Plaintiffs' Foreign Commerce Claims based on purchases of

17  allegedly price-fixed Capacitors do not, as a matter of law, give rise to an antitrust cause of action,

18  because Defendants indisputably sold the Capacitors to third-party distributors abroad, and

19  therefore any alleged conduct that "increased the cost to [Plaintiffs] . . . occurred entirely in foreign

20  commerce."  *Id.*

21         Regardless, Plaintiffs cannot meet their burden to come forward with a genuine issue of

22  material fact for *each* of the elements of the domestic effect exception to the FTAIA.  *See LSL*

23  *Biotechnologies*, 379 F.3d at 679 (each of the "three modifiers ('direct,' 'substantial,' and

24  'reasonably foreseeable')" must be met "as the standard for the required effect of the challenged

25  conduct").  In particular, Plaintiffs cannot meet the "direct" effect requirement, because the

26  undisputed facts establish that any effect on U.S. commerce from a foreign Capacitor sale to

27  unrelated distributors would *not* follow as an "immediate consequence" of the alleged overseas

28  price-fixing conduct.  The Ninth Circuit has held that an effect is "direct" only if it "follows as an

1    immediate consequence of the defendant[s'] activity." *Hui Hsiung*, 778 F.3d at 758.  The effect

2    must proceed "from one point to another in time or space without deviation or interruption," and

3    cannot "depend[] on . . . uncertain intervening developments."  *LSL Biotechnologies*, 379 F.3d at

4    680-81.  All of the Foreign Commerce Claims fail this requirement because they are based on

5    *indirect*—not "direct"—effects of the alleged cartel.  *See* Donovan Decl. Ex. 1, IPPs' Resps. &

6    Objs. to Defs.' Second Set of Interrogatories, at 18 (claims involve sale in "foreign commerce . . .

7    from Defendants to . . . a foreign distributor and *ultimately* to a customer in the United States")

8    (emphasis added).

9            The Foreign Commerce Claims are based on the undisputed fact that Defendants sold

10   Capacitors to third-party distributors abroad.  Plaintiffs' argument that there were no "intervening

11   factors" between Defendants' initial sale of Capacitors to foreign distributors and the final sale to a

12   customer in the United States, *id.* at 13, makes no sense.  Plaintiffs cannot dispute that the upstream

13   third-party distributors—which were located abroad and stood between Defendants and Plaintiffs in

14   the distribution chain—necessarily had discretion to make intervening decisions regarding pricing,

15   as well as where and when to sell the Capacitors, based on *the distributors' views* of market

16   conditions, overhead costs, shipping costs, tariffs, anti-dumping duties and other trade barriers or

17   incentives.  This is the very definition of an indirect effect.  Because Plaintiffs cannot prove a direct

18   effect on U.S. commerce with respect to the Foreign Commerce Claims, they also fail to prove that

19   the domestic effect exception to the FTAIA applies to those claims.  *See Motorola Mobility*, 775

20   F.3d at 818-20 (exception not met because "the immediate victims of the price fixing" were the

21   foreign purchasers); *LSL Biotechnologies*, 379 F.3d at 681; *Empagran II*, 417 F.3d at 1271 (FTAIA

22   satisfied only when an effect on domestic commerce precedes and proximately causes a foreign

23   injury, not the reverse); *DRAM*, 546 F.3d at 987-89 (same).

24           **C.     In The Alternative, Plaintiffs' Claims Should Be Simplified To Exclude All
                      Foreign Commerce Claims Under Fed. R. Civ. P. 16.**
25

26           In the alternative, Defendants move under Rule 16(c)(2)(A) to "formulat[e] and simplify[]

27   the issues" to limit Plaintiffs' claims to those relating to Capacitors that Defendants or their alleged

28

---

DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT                    Case No.  3:14-cv-03264-JD
RE: INDIRECT FOREIGN SALES

1    co-conspirators imported directly into the United States or otherwise sold directly in U.S.

2    commerce.

3        The Ninth Circuit takes a broad approach to Rule 16, allowing a district court judge wide

4    discretion to narrow claims, issue orders, and when necessary at the final pre-trial conference, to

5    grant summary judgment on any or all claims *sua sponte*. *See Portsmouth Square*, 770 F.2d at 869.

6    Here, Defendants seek to simplify Plaintiffs' claims before class certification proceedings to avoid

7    certification of a class covering class members who have no valid claims.

8    **VI.    CONCLUSION**

9        For all of the foregoing reasons, Defendants' motion for partial summary judgment should

10   be granted and the Court should dismiss Plaintiffs' state law claims to the extent they are directed at

11   Foreign Commerce Claims stemming from the sale of Capacitors first sold to a non-conspirator

12   distributor outside the United States.

13

14   DATED:  October 1, 2015                    Respectfully submitted,

15                                              WINSTON & STRAWN LLP

16                                              By: */s/ Jeffrey L. Kessler*
                                                Jeffrey L. Kessler (*pro hac vice*)
17                                              A. Paul Victor (*pro hac vice*)
                                                Molly M. Donovan (*pro hac vice*)
18                                              Mollie C. Richardson (*pro hac vice*)
                                                200 Park Avenue
19                                              New York, New York 10166
                                                Telephone: (212) 294-4698
20                                              Facsimile: (212) 294-4700
                                                jkessler@winston.com
21                                              pvictor@winston.com
                                                mmdonovan@winston.com
22                                              mrichardson@winston.com

23                                              Ian L. Papendick (SBN 275648)
                                                101 California Street
24                                              San Francisco, CA 94111
                                                Tel: (415) 591-6905
25                                              Fax: (415) 591-1400
                                                ipapendick@winston.com
26
                                                *Counsel for Defendants*
27                                              *Panasonic Corporation*
                                                *Panasonic Corporation of North America*
28                                              *SANYO Electric Co., Ltd.*

---

DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT          Case No.  3:14-cv-03264-JD
RE: INDIRECT FOREIGN SALES

*SANYO North America Corporation*

WILMER CUTLER PICKERING HALE AND DORR LLP

*/s/ Heather S. Tewksbury*
Heather S. Tewksbury
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6134
Fax: (650) 858-6100
heather.tewksbury@wilmerhale.com

Thomas Mueller *(pro hac vice)*
Stacy Frazier (*pro hac vice*)
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000
Fax:  (202) 663-6363
thomas.mueller@wilmerhale.com
stacy.frazier@wilmerhale.com

*Attorneys for Defendants Elna Co., Ltd. and Elna America, Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Jonathan M. Jacobson*
Jonathan M. Jacobson
Chul Pak (*admitted pro hac vice*)
Jeffrey C. Bank (*admitted pro hac vice*)
Justin Cohen (*admitted pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:  (212) 497-7758
Facsimile:  (212) 999-5899
jjacobson@wsgr.com
cpak@wsgr.com
jbank@wsgr.com
jcohen@wsgr.com

Jeff VanHooreweghe (*admitted pro hac vice*)
1700 K Street, N.W., Fifth Floor
Washington, DC 20006
Telephone:  (202) 973-8825
Facsimile:  (202) 973-8899
jvanhooreweghe@wsgr.com

*Attorneys for Defendants Hitachi Chemical Co., Ltd., Hitachi Chemical Company America, Ltd., and Hitachi AIC Incorporated*

1    DENTONS US LLP

2    */s/ Bonnie Lau_____*
     Bonnie Lau
3    525 Market Street, 26th Floor
     San Francisco, CA 94105
4    415-882-5000
     Fax: 415-882-0300
5    Email: bonnie.lau@dentons.com

6    Felix T. Woo
     601 S. Figueroa Street, Suite 2500
7    Los Angeles, California  90017
     213-623-9300
8    Fax: 213-623-9924
     Email: felix.woo@dentons.com

9
     *Attorneys for Defendant Matsuo Electric Co., Ltd.*
10
     GIBSON, DUNN & CRUTCHER LLP
11
     */s/ George A. Nicoud III_____*
12   GEORGE A. NICOUD III, SBN 106111

13   AUSTIN V. SCHWING, SBN 211696
     ELI M. LAZARUS, SBN 284082
14   tnicoud@gibsondunn.com
     aschwing@gibsondunn.com
15   elazarus@gibsondunn.com
     GIBSON, DUNN & CRUTCHER LLP
16   555 Mission Street
     San Francisco, CA 94105-0921
17   Telephone:     415.393.8200
     Facsimile:     415.393.8306
18
     MATTHEW PARROTT, SBN 302731
19   mparrott@gibsondunn.com
     GIBSON, DUNN & CRUTCHER LLP
20   3161 Michelson Drive
     Irvine, CA  92612-4412
21   Telephone:     949.451.3800
     Facsimile:     949.451.4220
22
     *Attorneys for Defendants NEC TOKIN Corporation*
23   *and NEC TOKIN America, Inc.*

24
     K&L GATES LLP
25
     */s/ Michael E. Martinez_____*
26   Scott M. Mendel (*pro hac vice*)
     Steven M. Kowal (*pro hac vice*)
27   Michael E. Martinez (*pro hac vice*)
     Lauren N. Norris (*pro hac vice*)
28

1
                   Lauren B. Salins *(pro hac vice)*
                   K&L GATES LLP

2
                   70 West Madison Street, Suite 3100
                   Chicago, IL  60602

3
                   Telephone: (312) 372-1121
                   Facsimile: (312) 827-8000

4

5
                   *Counsel for Defendants*
                   *Nichicon Corporation*

6
                   *Nichicon (America) Corporation*

7
                   HUNTON AND WILLIAMS LLP

8
                   */s/ Djordje Petkoski*

9
                   Djordje Petkoski (admitted *pro hac vice*)
                   2200 Pennsylvania Ave., NW

10
                   Washington, DC 20037
                   Telephone: 202-955-1500

11
                   Fax: 202-778-2201
                   Email: dpetkoski@hunton.com

12
                   M. Brett Burns

13
                   575 Market Street, Suite 3700
                   San Francisco, CA 94105

14
                   Telephone: 415-975-3700
                   Email: mbrettburns@hunton.com

15
                   *Attorneys for Defendants Rubycon Corporation  and*

16
                   *Rubycon America Inc.*

17
                   CADWALADER, WICKERSHAM & TAFT LLP

18
                   */s/ Charles F. Rule*

19
                   Charles F. Rule (admitted *pro hac vice*)
                   Joseph J. Bial (admitted *pro hac vice*)

20
                   Daniel J. Howley (admitted *pro hac vice*)
                   700 6th St, NW

21
                   Washington, DC 20001
                   Telephone:  (202) 862-2200

22
                   Facsimile:  (202) 862-2400
                   rick.rule@cwt.com

23
                   joseph.bial@cwt.com
                   daniel.howley@cwt.com

24
                   *Attorneys for Defendants United Chemi-Con, Inc. and*

25
                   *Nippon Chemi-Con Corporation*

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BONA LAW PC

*/s/ Jarod M. Bona*_____
Jarod M. Bona
Aaron R. Gott (Admitted *Pro Hac Vice*)
BONA LAW PC
4275 Executive Square, #200
La Jolla, CA 92037
Telephone: (858) 964-4589
Facsimile: (858) 964-2301
Email: jarod.bona@bonalawpc.com
Email: aaron.gott@bonalawpc.com

*Attorneys for Taitsu Corporation and Taitsu America, Inc.*

BAKER & MCKENZIE LLP

*/s/ Darrell Prescott*_____
Douglas Tween (admitted *pro hac vice*)
Darrell Prescott (admitted *pro hac vice*)
Catherine Y. (Koh) Stillman (admitted *pro hac vice*)
452 Fifth Avenue
New York, NY 10018
(212) 626-4355
Fax: (212) 310-1655
Email: Douglas.Tween@bakermckenzie.com
Email: Darrell.Prescott@bakermckenzie.com
Email: Catherine.Stillman@bakermckenzie.com

Meghan E. Hausler (*admitted pro hac vice*)
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75206
Telephone: (214) 965-7219
Facsimile: (214) 965-5937
Email:  Meghan.Hausler@bakermckenzie.com

Colin H. Murray (SBN 159142)
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111
(415) 591-3244
Fax: (415) 576-3099
Email: Colin.Murray@bakermckenzie.com

*Attorneys for Defendants Okaya Electric Industries Co., Ltd.*

---

DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INDIRECT FOREIGN SALES

Case No.  3:14-cv-03264-JD

HUGHES HUBBARD & REED LLP

/s/ Ethan E. Litwin_____
Ethan E. Litwin (*admitted pro hac vice*)
Sigrid U. Jernudd (admitted *pro hac vice*)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel: (212) 837-6000
Fax: (212) 422-4726
Email: Ethan.Litwin@hugheshubbard.com
Email: Sigrid.Jernudd@hugheshubbard.com

David H. Stern (CA Bar No. 196408)
Carolin Sahimi (CA Bar No. 260312)
Hughes Hubbard & Reed LLP
350 South Grand Avenue
Los Angeles, CA 90071-3442
Tel: (213) 613-2800
Fax: (213) 613-2950
Email: David.Stern@hugheshubbard.com
Email: Carolin.Sahimi@hugheshubbard.com

*Attorneys for Defendants Soshin Electric Co., Ltd. and
Soshin Electronics of America, Inc.*


DENTONS US LLP

/s/ Gaspare J. Bono_____
Gaspare J. Bono (admitted *pro hac vice*)
Stephen M. Chippendale (admitted pro *hac vice*)
Claire M. Maddox (admitted *pro hac vice*)
Eric Y. Wu (admitted *pro hac vice*)
Dentons US LLP
1900 K St., NW
Washington, DC 20006
Tele.: (202) 496-7500
Fax:  (202) 496-7756
gap.bono@dentons.com
steve.chippendale@dentons.com
claire.maddox@dentons.com
eric.wu@dentons.com

Andrew S. Azarmi (SBN 241407)
Dentons US LLP
Spear Tower, One Market Plaza, 24th Fl.
San Francisco, CA 94105
Tele.: (415) 267-4000
Fax:  (415) 356-3873
andrew.azarmi@dentons.com

1

2

3

4

*Attorneys for Defendants*
*Shinyei Kaisha,*
*Shinyei Technology Co., Ltd.,*
*Shinyei Capacitor Co., Ltd., and*
*Shinyei Corporation of America, Inc.*

5

6

7

*Pursuant to N.D. Cal. L.R. 5-1(i)(3), the filer attests that concurrence*
*in filing of this document has been obtained from the above signatories.*

.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28