1  Darrell Prescott (admitted *pro hac vice*)
     darrell.prescott@bakermckenzie.com
2  Douglas M. Tween (admitted *pro hac vice*)
     douglas.tween@bakermckenzie.com
3  Catherine Koh Stillman (CA State Bar No. 252440)
     catherine.stillman@bakermckenzie.com
4  **BAKER & McKENZIE LLP**
   452 Fifth Avenue
5  New York, NY 10018
   Telephone: 1 212 626 4355
6  Facsimile:  1 212 310 1655

7  Colin H. Murray (CA State Bar No. 159142)
     colin.murray@bakermckenzie.com
8  **BAKER & McKENZIE LLP**
   Two Embarcadero Center, 11th Floor
9  San Francisco, CA  94111-3802
   Telephone: 1 415 576 3022
10 Facsimile:  1 415 576 3099

11 Attorneys for Defendants
   OKAYA ELECTRIC INDUSTRIES CO., LTD. and
12 OKAYA ELECTRIC AMERICA, INC.

13 [Additional Counsel Listed on Signature Page]

14              **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
15               **SAN FRANCISCO DIVISION**

16 IN RE CAPACITORS ANTITRUST          | Case No.  3:14-cv-03264-JD
17 LITIGATION
                                       | **DEFENDANTS' NOTICE OF MOTION**
18                                     | **AND JOINT MOTION FOR PARTIAL**
                                       | **SUMMARY JUDGMENT DISMISSING**
19                                     | **PLAINTIFFS' SHERMAN ACT CLAIMS**
                                       | **FOR FOREIGN TRANSACTIONS OR,**
20                                     | **IN THE ALTERNATIVE, TO SIMPLIFY**
                                       | **THE ISSUES UNDER FED. R. CIV. P. 16**
21
                                       | **[Fed. Civ. P. 16, 56; L.R. 7-2, 7-4]**
22
                                       | Prior Related Court Order:
23                                     | Amended Scheduling Order, June 8, 2015
                                       | [Docket No. 735]
24
                                       | **Date:         December 9, 2015**
25                                     | **Time:          10:00 a.m.**
                                       | **Courtroom:  11, 19th Floor**
26                                     | **Before:        The Hon. James Donato**

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

                                        Case No. 3:14-cv-03264-JD
              DEFS' JT MOTION FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

# <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

NOTICE OF MOTION AND MOTION ...................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 2

I.    STATEMENT OF ISSUES TO BE DECIDED ............................................................. 2

II.   INTRODUCTION ............................................................................................................ 3

III.  STATEMENT OF FACTS .............................................................................................. 4

    A.    The Parties ............................................................................................................ 4

    B.    The Foreign Purchases of Capacitors .................................................................. 5

    C.    Plaintiffs' Complaint ........................................................................................... 6

IV.   ARGUMENT .................................................................................................................... 8

    A.    This Motion Presents No Genuine Issue of Fact ................................................. 8

    B.    Plaintiffs' Claims Do Not Meet the Statutory Requirements of the FTAIA ............ 11

        1.    Controlling Precedent Interpreting the Statutory Intent of the FTAIA
             Requires Dismissal of Plaintiffs' Claims ................................................ 11

        2.    Plaintiffs' Claims Do Not Meet the Specific Statutory Requirements of
             the FTAIA ................................................................................................. 14

            a.    The Import Commerce Exclusion Does Not Apply .......................... 15

            b.    Plaintiffs Cannot Satisfy the "Gives Rise To" Requirement
               With Respect To Capacitors Purchased in Foreign Markets
               Because There Is No Proximate Causal Nexus Between the
               Alleged Effect on U.S. Commerce and the Foreign Injury ............... 17

            c.    Defendants' Alleged Conduct Directed At Foreign Commerce
               Did Not Have a Direct Effect on Domestic Commerce ..................... 23

        3.    Export Sales Are Barred by the FTAIA ................................................... 24

    C.    The Alleged DPPs and Flextronics USA are Indirect Purchasers and Cannot
        Assert Sherman Act Claims of Injury under *Illinois Brick* ................................ 24

    D.    Flextronics USA's California State Law Claims Must Be Dismissed ..................... 26

    E.    In the Alternative, Pursuant to Fed. R. Civ. P. 16, the Court Should Simplify
        the Issues by Excluding All Sherman Act Claims for Foreign Transactions ............ 27

V.    CONCLUSION ............................................................................................................... 28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................................9

*Cedars-Sinai Medical Ctr. v. Mass. Mut. Life Ins. Co.*,
94-cv-55065, 1995 U.S. App. LEXIS 27693 (9th Cir. Sept. 21, 1995)........................10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................................................................................................8

*Dedication & Everlasting Love to Animals v. Humane Soc'y*,
50 F.3d 710 (9th Cir. 1995) .......................................................................................21

*Den Norske Stats Oljesleskap As v. HeereMac v.o.f.*,
241 F.3d 420 (5th Cir. 2001) ...............................................................................18, 20

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
546 F.3d 981 (9th Cir. 2008) ............................................................................. *passim*

*Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*,
417 F.3d 1267 (D.C. Cir. 2005) ...............................................................18, 19, 20, 21

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
542 U.S. 155 (2004)........................................................................................... *passim*

*Fed. Deposit Ins. Corp. v. Glickman*,
450 F.2d 416 (9th Cir. 1971) .....................................................................................27

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977)........................................................................................... *passim*

*Lotes Co., Ltd. v. Hon Hai Precision Inds. Co., Ltd.*,
753 F.3d 395 (2d Cir. 2014)...................................................................17, 18, 20

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).....................................................................................................9

*Minn-Chem, Inc. v. Agrium Inc.*,
683 F.3d 845 (7th Cir. 2012) ...............................................................17, 19, 20, 24

*In re Monosodium Glutamate Antitrust Litig. ("MSG")*,
477 F.3d 535 (8th Cir. 2007) ...............................................................17, 20, 21

*Motorola Mobility, Inc. v. AU Optronics Corp.*,
No. 09-cv-6610, 2014 U.S. Dist. LEXIS 8492 (N.D. Ill. Jan. 23, 2014)...........3, 21, 22

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Motorola Mobility LLC v. AU Optronics Corp.*,
  775 F.3d 816 (7th Cir. 2015) ................................................................ *passim*

*Portsmouth Square, Inc. v. S'holders Protective Comm.*,
  770 F.2d 866 (9th Cir. 1985) ................................................................27

*Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*,
  608 F. Supp. 2d 1166 (N.D. Cal 2009) ..........................................4, 18, 20, 26

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  785 F. Supp. 2d 835 (N.D. Cal. 2011) ......................................................3, 21

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 07-cv-1827, 2010 U.S. Dist. LEXIS 65037 (N.D. Cal. June 28, 2010) ...............3, 16, 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 07-cv-1827, 2012 U.S. Dist. LEXIS 112499 (N.D. Cal. Aug. 9, 2012) ..............3, 21

*Turicentro, S.A. v. American Airlines*,
  303 F.3d 293 (3d Cir. 2002) ................................................................13, 21

*U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*,
  576 F.3d 1040 (9th Cir. 2009) .............................................................9

*United States v. Hui Hsiung*,
  778 F.3d 738 (9th Cir. 2015), *cert. denied*, 135 S. Ct. 2837 (June 15, 2015) .............. *passim*

*United States v. LSL Biotechnologies*,
  379 F.3d 672 (9th Cir. 2003) ................................................................23

*United States v. NEC Tokin Corp.*,
  15-cr-00426 (N.D. Cal. Sept. 2, 2015) ......................................................22

*USS-POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council*,
  31 F.3d 800 (9th Cir. 1994) ................................................................8

**STATUTES AND RULES**

15 U.S.C. § 6a ................................................................................ *passim*

28 U.S.C. § 1407 ...............................................................................3

Cal. Bus. & Prof. Code § 16720, *et seq* ......................................................26

Cal. Bus. & Prof. Code § 17200, *et seq* ......................................................26

Clayton Act, Section 4 ........................................................................3, 16

Fed. R. Civ. P. 16 ............................................................................1, 4, 26, 27

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Fed. R. Civ. P. 56 ................................................................................................................4, 8

**OTHER AUTHORITIES**

Black's Law Dictionary (9th ed. 2009) ...............................................................................21

H.R. Rep. No. 97-686, *as reprinted in* 1982 U.S.C.C.A.N. .........................................11, 16

Philip E. Areeda & Herbert Hovenkamp, Antitrust Law (4th ed. 2013) ............................11

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:14-cv-03264-JD
DEFS' JT MOTION FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 9, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11 of the above-referenced Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California, the undersigned Defendants will and hereby move pursuant to Rule 56 of the Federal Rules of Civil Procedure for entry of partial summary judgment dismissing the First and Second Claims for Relief in the Second Amended Consolidated Class Action Complaint and Complaint of Flextronics International USA, Inc. [Docket No. 799-4] (the "Complaint") to the extent they seek to recover for Defendants' sales of capacitors made directly to foreign purchasers. In the alternative, Defendants seek an order simplifying the issues under Rule 16 of the Federal Rules of Civil Procedure determining that the commerce at issue in the Complaint is limited to Defendants' sales of capacitors directly paid for by purchasers located in the geographic territory of the United States.

This motion seeks an Order dismissing the claims of the Direct Purchaser Plaintiffs ("DPPs") and Flextronics International USA, Inc. ("Flextronics USA," and together, "Plaintiffs") to the extent they include claims for direct purchases of Capacitors that were paid for by customers outside of the United States in foreign (foreign-to-foreign) commerce and of Capacitors in U.S. export (U.S.-to-foreign) commerce, because such claims are barred by the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a ("FTAIA").

DPPs have acknowledged that they are limiting their claims based on foreign purchases of capacitors to those made by foreign subsidiaries and affiliates of United States companies who subsequently import the capacitors to the United States either as standalone products or as components of finished products. Defs.' Letter Br. to Ct. [Docket No. 692], at 3 and Ex. 3. But even those claims must be dismissed because the putative DPP class is limited to "persons in the United States that purchased Capacitors . . . directly from any of the Defendants . . . ." (Compl. ¶ 107) (emphasis added). Plaintiffs and Flextronics USA may not assert under the Sherman Act indirect purchaser claims arising from a U.S. company's purchase from a foreign subsidiary or affiliate. *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ("*Illinois Brick*"). To the extent that Flextronics USA is also attempting to assert in its Second Claim for Relief indirect purchaser claims under

1

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:14-cv-03264-JD
DEFS' JT MOTION FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

California law for purchases made by a Flextronics entity from a foreign direct purchaser, that claim is barred by the FTAIA.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed declarations of each Defendant[1] joining this motion and attachments thereto, the concurrently filed Proposed Order, the pleadings and records on file in this action, and any additional evidence and argument that may be presented before or at the hearing of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF ISSUES TO BE DECIDED

A. Whether the FTAIA bars Plaintiffs' Sherman Act and California state law claims for

(i) purchases of Capacitors that were manufactured outside the United States, and paid for by customers located outside the United States, and

(ii) purchases of Capacitors that were manufactured in the United States and exported to purchasers located outside the United States.

---

[1] The declarations supporting this motion are filed herewith and are as follows: Declaration of Willing King on behalf of AVX Corporation ("AVX Decl."); Declaration of Kenichiro Murata on behalf of ELNA Co., Ltd. and ELNA America, Inc. ("ELNA Decl."); Declaration of Hiroshi Fujisaku on behalf of Hitachi Chemical Co., Ltd. and Hitachi AIC Inc. ("Hitachi Decl."); Declaration of Hironori Masuda on behalf of Hitachi Chemical Co. America, Ltd. ("Hitachi US Decl."); Declaration of Contrina Chang on behalf of Holy Stone Taiwan, Milestone Global Technology, Inc. d/b/a HolyStone International, and Vishay Polytech Co., Ltd. f/k/a Holy Stone Polytech Co., Ltd. ("Holy Stone Decl."); Declaration of Susan B. Barkal on behalf of KEMET Electronics Corporation ("KEMET Decl."); Declaration of Hiroyuki Koga on behalf of Matsuo Electric Co., Ltd. ("Matsuo Decl.") and Exhibits A and B attached therewith; Declaration of Yasunori Ando on behalf of NEC TOKIN Corporation ("NEC TOKIN Decl."); Declaration of Toshiya Yamamoto on behalf of Nichicon Corporation and Nichicon (America) Corporation ("Nichicon Decl.") and Exhibits A through E attached therewith; Declaration of Takashi Nakamura on behalf of Nippon Chemi-Con Corporation ("NCC Decl."); Declaration of Larry Magoncia on behalf of United Chemi-Con, Inc. ("UCC Decl."); Declaration of Tsutomu Homma on behalf of Okaya Electric Industries, Co., Ltd. and Okaya Electric America, Inc. ("Okaya Decl.") (Japanese original and certified English translation filed therewith); Declaration of Akiyoshi Miki on behalf of Panasonic Corporation ("Panasonic Decl."); Declaration of Mitsumi Mikami on behalf of ROHM Co., Ltd. and ROHM Semiconductor U.S.A., LLC ("ROHM Decl."); Declaration of Yukio Komatsu on behalf of Rubycon Corporation ("Rubycon Decl.") and Exhibits 1 through 6 attached therewith; Declaration of Toshiyuki Takata on behalf of SANYO Electric Co., Ltd. ("SANYO Decl."); Declaration of Yoshiaki Danno on behalf of Shinyei Technology Co., Ltd., Shinyei Technology Co., Ltd., Shinyei Capacitor Co., Ltd., and Shinyei Corporation of America, Inc. ("Shinyei Decl."); Declaration of Takashi Kamioka on behalf of Soshin Electric Co. Ltd. and Soshin Electronics of America, Inc. ("Soshin Decl."); and Declaration of Ken Kobayashi on behalf of Taitsu Corporation and Taitsu America Corporation ("Taitsu Decl.") and Exhibits 1 and 2 attached therewith. Unless otherwise noted, reference to "Defendants" herein refers to the Defendants joining this motion.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

B.  Whether a United States purchaser can recover under Section 1 of the Sherman Act,

Section 4 of the Clayton Act and *Illinois Brick* for purchases paid for by separate non-

United States entities affiliated with such United States purchaser.

## II.    INTRODUCTION

As this Court recognized at the first status conference, early resolution of issues related to the

Foreign Trade Antitrust Improvements Act ("FTAIA"), 15 U.S.C. § 6a, may significantly streamline

this litigation.  *See* Oct. 29, 2014 Hr'g Tr. 17:2-16.  Defendants bring this motion to accomplish

exactly that.  For most Defendants, which are predominantly Japanese companies, over 95% of the

direct sales of capacitors are to foreign purchasers.  *See, e.g.,* Hitachi Decl. ¶ 7 (over 95% capacitor

sales to non-U.S. locations); Holy Stone Decl. ¶ 13 (over 97% capacitor sales to non-U.S. locations);

NEC TOKIN Decl. ¶ 11 (approx. 98% capacitor sales to non-U.S. locations); NCC Decl. ¶ 10 (over

90% capacitor sales to non-U.S. locations); Okaya Decl. ¶ 7 (approx. 97% capacitor sales to non-

U.S. locations); ROHM Decl. ¶ 6 (over 98% capacitor sales to non-U.S. locations); Shinyei Decl.

¶ 22 (approx. 95% capacitors sales to non-U.S. locations); Soshin Decl. ¶ 9 (all capacitor sales to

non-U.S. locations); *see also* Matsuo Decl. ¶ 11; Nichicon Decl. ¶ 9 and Ex. A; Panasonic Decl. ¶ 8;

Rubycon Decl. ¶ 14 and Exs. 1 and 2; SANYO Decl. ¶ 9.  Even for several of the Defendants based

in the United States, over 70% of their sales are foreign purchasers.  *See* AVX Decl. ¶ 6 (approx.

75% sales to non-U.S. locations); KEMET Decl. ¶ 6 (approx. 72% sales to non-U.S. locations).

As a matter of law, the FTAIA forbids claims based on foreign purchases asserted by DPPs

and Flextronics. *See, e.g., F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 166 (2004)

("*Empagran*");  *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816 (7th Cir. 2015)

("*Motorola V*");[2] *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981 (9th

---

[2] *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816 (7th Cir. 2015), is referred to as *Motorola V* because it is preceded by three decisions in the Northern District of California adjudicated in coordinated pre-trial proceedings pursuant to the Multidistrict Litigation statute, 28 U.S.C. § 1407, and several decisions in the Northern District of Illinois and the Seventh Circuit after the action was remanded to its original forum.  Those decisions are *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-cv-1827, 2010 U.S. Dist. LEXIS 65037 (N.D. Cal. June 28, 2010) ("*Motorola I*"), *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 785 F. Supp. 2d 835 (N.D. Cal. 2011) ("*Motorola II*"), *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-cv-1827, 2012 U.S. Dist. LEXIS 112499 (N.D. Cal. Aug. 9, 2012) ("*Motorola III*"), and *Motorola Mobility, Inc. v. AU Optronics Corp.*, No. 09-cv-6610, 2014 U.S. Dist. LEXIS 8492 (N.D. Ill. Jan. 23, 2014) ("*Motorola IV*").  As further discussed below, *Motorola V*, cited with approval by the Ninth Circuit in *United*

3

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:14-cv-03264-JD
DEFS' JT MOTION FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

Cir. 2008) ("*DRAM*"). And *Illinois Brick* bars DPPs' efforts to recover based on the indirect purchases from overseas affiliates or others.

Defendants therefore seek summary judgment under Rule 56(a) that Plaintiffs may not recover: (1) for purchases of Capacitors other than Capacitors sold to U.S.-located customers, invoiced directly to such customers at addresses located in the geographic territory of the United States;[3] and (2) for purchases made by foreign entities, whether or not controlled by U.S. entities. In the alternative, to "formulat[e] and simplify[] the issues" as provided under Rule 16(c)(2)(A), Defendants move for an order limiting the sales at issue in the instant action to sales invoiced directly to U.S.-located customers as reflected in Defendants' transaction data.

## III. STATEMENT OF FACTS

### A. The Parties

DPPs allege they are direct purchasers of aluminum, tantalum, and film capacitors ("Capacitors") in the United States. They allege that defendant manufacturers in Japan, Taiwan, and the United States conspired from 2002 to 2014 to raise prices and suppress price competition for Capacitors.[4] However, DPPs purport to bring this action on behalf of an alleged class defined as "[a]ll persons in the United States that purchased Capacitors (including through controlled subsidiaries, agents, affiliates or joint-ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates or joint ventures from January 1, 2002 through the present." Compl. ¶ 107 (emphasis added). Although this class definition ostensibly limits the direct purchaser class to persons "in the United States," DPPs then attempt to subsume into the alleged direct purchaser class indirect purchases made by persons or entities outside the United States by inserting the parenthetical "(including through controlled subsidiaries, agents, affiliates, or joint ventures)" in their purported direct purchaser class definition.

Flextronics USA alleges that it is a manufacturer of electronic products based in California

---

*States v. Hui Hsiung*, 778 F.3d 738, 751-753 (9th Cir. 2015), *cert. denied*, 135 S. Ct. 2837 (June 15, 2015), effectively overruled *Motorola III* insofar as pertinent to the issues here.
[3] Claims based on foreign injury are severable from claims based on domestic injury. *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166, 1184 (N.D. Cal 2009).
[4] DPPs are no longer seeking to recover for purchases of capacitors that were incorporated into finished goods. *See* Defs.' Letter Br. to Ct. [Docket No. 692], at 3 and Ex. 3.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

and purports to be a direct purchaser of Capacitors bringing an individual, non-class action in the same Complaint as DPPs, but as against a smaller set of Defendants.[5] Flextronics seeks to recover for purchases not only made by it, but also made by approximately 100 "Destination Facilities", many of which are located outside the United States. *See* Individual (Non-Class) Plaintiff Flextronics's Suppl. Prelim. Objs. and Resps. to Defs.' First Set of Interrogs. (1) & (2) ("Flextronics USA's Suppl. First Interrog. Resp."), at 3-4 and Ex. 1, attached to the Declaration of Catherine Koh Stillman ("Stillman Decl.") as Ex. 4.

Defendants are primarily foreign[6] manufacturers of Capacitors, together with certain of their U.S. subsidiaries and affiliates. *See* Compl. ¶¶ 32-100.

## B. The Foreign Purchases of Capacitors

Capacitors are functional components used in electrical circuits that serve as reservoirs of electrical charge that stabilize voltage and power flow. Compl. ¶¶ 2-3. They are used in a variety of

---

[5] The defendants named by the DPPs are Panasonic Corporation; Panasonic Corporation of North America; SANYO Electric Co., Ltd.; SANYO North America Corporation; NEC TOKIN Corporation; NEC TOKIN America, Inc.; KEMET Corporation; KEMET Electronics Corporation; Nippon Chemi-Con Corporation; United Chemi-Con, Inc.; Hitachi Chemical Co., Ltd.; Hitachi AIC Inc.; Hitachi Chemical Co. America, Ltd.; Nichicon Corporation; Nichicon (America) Corporation; AVX Corporation; Rubycon Corporation; Rubycon America Inc.; ELNA Co., Ltd.; ELNA America Inc.; Matsuo Electric Co., Ltd.; TOSHIN KOGYO Co., Ltd.; Holy Stone Enterprise Co., Ltd.; Milestone Global Technology, Inc. (D/B/A HolyStone International); Vishay Polytech Co., Ltd.; ROHM Co., Ltd.; ROHM Semiconductor U.S.A., LLC; Okaya Electric Industries Co., Ltd.; Okaya Electric America Inc.; Taitsu Corporation; Taitsu America, Inc.; Shinyei Kaisha; Shinyei Technology Co., Ltd.; Shinyei Capacitor Co., Ltd.; Shinyei Corporation of America, Inc.; Nitsuko Electronics Corporation; Nissei Electric Co., Ltd.; Soshin Electric Co., Ltd.; Soshin Electronics of America, Inc.; Shizuki Electric Co., Ltd.; and American Shizuki Corporation
The defendants named by Flextronics USA are KEMET Corporation; KEMET Electronics Corporation; Nippon Chemi-Con Corporation; United Chemi-Con, Inc.; Hitachi Chemical Co., Ltd.; Hitachi AIC Inc.; Hitachi Chemical Co. America, Ltd.; Nichicon Corporation; Nichicon (America) Corporation; AVX Corporation; Rubycon Corporation; Rubycon America Inc.; ELNA Co., Ltd.; ELNA America Inc.; Matsuo Electric Co., Ltd.; TOSHIN KOGYO Co., Ltd.; Holy Stone Enterprise Co., Ltd.; Milestone Global Technology, Inc. (D/B/A HolyStone International); ROHM Co., Ltd.; ROHM Semiconductor U.S.A., LLC; Okaya Electric Industries Co., Ltd.; Okaya Electric America Inc.; Taitsu Corporation; Taitsu America, Inc.; Shinyei Kaisha; Shinyei Technology Co., Ltd.; Shinyei Capacitor Co., Ltd.; Shinyei Corporation of America, Inc.; Nitsuko Electronics Corporation; Nissei Electric Co., Ltd.; Soshin Electric Co., Ltd.; Soshin Electronics of America, Inc.; Shizuki Electric Co., Ltd.; and American Shizuki Corporation.
[6] Four Defendants, AVX , KEMET, American Shizuki Corporation, and United Chemi-Con, Inc., have manufacturing operations in the United States and sell capacitors to customers both outside and inside the United States. Thus, while references herein to the foreign manufacture of capacitors followed by foreign-to-foreign sales do not include such domestic manufacturing operations, all legal arguments nevertheless apply to foreign sales made by these U.S. entities because the FTAIA excludes not only foreign-to-foreign purchases, but also US-to-foreign purchases, *i.e.*, exports, as further explained below.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

electronic devices, such as consumer audio and video devices, televisions, video game consoles, desktop and laptop computers, automotive electronics, and power inverters. Compl. ¶ 140. A Capacitor comprises a miniscule fraction of the cost of a finished product. Compl. ¶¶ 5-6.

Defendants manufactured Capacitors at their foreign manufacturing plants that were sold to original equipment manufacturers ("OEMs") who incorporate Capacitors into their finished products, and electronic component distributors ("Distributors") who buy Capacitors directly from manufacturers and resell them. Compl. ¶ 160.

The chain of distribution for foreign purchases from Defendants begins with purchase orders issued by foreign customers to the Defendant manufacturers' sales operations in numerous countries spanning Europe, Asia, South America, and North America. *See* AVX Decl. ¶¶ 4-6; ELNA Decl. ¶¶ 6-7; Hitachi Decl. ¶¶ 3-8, 10; Hitachi U.S. Decl. ¶¶ 5-7; Holy Stone Decl. ¶¶ 9-10; KEMET Decl. ¶¶ 5, 9; Matsuo Decl. ¶¶ 7-8; NEC TOKIN Decl. ¶¶ 8-10; Nichicon Decl. ¶¶ 5-9, 11-13, 15-16; NCC Decl. ¶ 4-8, 13; Okaya Decl. ¶ 5-6, 11; Panasonic Decl. ¶ 4-6, 10-12; ROHM Decl. ¶¶ 3-5; Rubycon Decl. ¶¶ 3-5, 7, 9, 11, 14; SANYO Decl. ¶¶ 4-5, 7, 9, 13; Shinyei Decl. ¶¶ 6-10, 13-17; Soshin Decl. ¶¶ 8-9, 11; Taitsu Decl. ¶ 5. Defendants do not systematically track the downstream path after the first sale of Capacitors to direct purchasers, except those Capacitors that they sell to their own subsidiaries. *See* Hitachi Decl. ¶ 7; Hitachi U.S. Decl. ¶ 9; Holy Stone Decl. ¶ 15; KEMET Decl. ¶ 8; Matsuo Decl. ¶ 12; NEC TOKIN Decl. ¶ 12; Nichicon Decl. ¶ 15; NCC Decl. ¶ 14; Okaya Decl. ¶ 13; Panasonic Decl. ¶ 13, 15, 18; ROHM Decl. ¶ 8; Rubycon Decl. ¶ 12; SANYO Decl. ¶ 14, 16, 19; Shinyei Decl. ¶ 19; Soshin Decl. ¶ 13; UCC Decl. ¶ 11.

The vast majority of Defendants' sales to manufacturers or distributors are sales of Capacitors that are manufactured, sold, and delivered outside the United States. *See, e.g.,* Hitachi Decl. ¶ 7; Holy Stone Decl. ¶ 13; Matsuo Decl. ¶ 11; NEC TOKIN Decl. ¶ 11; Nichicon Decl. ¶¶ 5-6, 9 and Ex. A; NCC Decl. ¶ 10; Okaya Decl. ¶ 7; Panasonic Decl. ¶ 8; Rubycon Decl. ¶ 14 and Exs. 1 and 2; ROHM Decl. ¶ 6; SANYO Decl. ¶ 9; Shinyei Decl. ¶ 22; Soshin Decl. ¶ 9. It is these foreign-to-foreign sales, as well as export sales, that Defendants ask the Court to exclude from this case.

## C. Plaintiffs' Complaint

The Complaint at Paragraph 107 defines the proposed DPP class as "[a]ll persons <u>in the</u>

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

United States that purchased Capacitors . . . <u>directly</u> from any of the Defendants, their subsidiaries, agents, affiliates or joint-ventures from January 1, 2002 through the present (the 'Class Period')." (emphasis added)  However, DPPs then attempt to usher in through the side door unquantified foreign purchases made abroad allegedly "through controlled subsidiaries, agents, affiliates or joint-ventures . . . ."  Complaint ¶ 107.

When read with other paragraphs of the Complaint, it becomes apparent that the reference in the purported class definition to "subsidiaries, agents, affiliates or joint-ventures" of U.S. purchasers includes foreign purchases by separate foreign legal entities.  DPPs assert that "there are thousands of Direct Purchaser Class members geographically dispersed throughout the United States and elsewhere . . . ."  Compl. ¶ 110. (emphasis added)  Further signaling that their alleged class impermissibly includes overseas entities making purchases in foreign commerce, DPPs in Paragraph 124 of their Complaint allege:

> Defendants also sold Capacitors **overseas** directly to members of the Direct Purchaser Class (including through the Class members' controlled subsidiaries, agents or affiliates), some of which were incorporated into products manufactured overseas that were imported into the United States.  These sales by Defendants involved import commerce and had a substantial, direct and reasonably foreseeable effect on United States import commerce that gives rise to the claims asserted herein.

Compl. ¶ 124 (emphasis added).[7]

As these quoted passages demonstrate, while DPPs assert that their alleged class consists of direct purchasers located in the United States, they also seek to recover for undefined quantities of capacitors sold to and purchased by separate entities outside the United States.

Flextronics USA similarly uses definitional language in an effort to recover for foreign

---

[7] Read together, Paragraphs 123 and 124 make clear that DPPs seek to recover for purchases made in both U.S. commerce and foreign commerce, despite a class definition purporting to sue on behalf of persons "in the United States."  Paragraph 123 alleges:

> To the extent any Capacitors have been or [sic] purchased by Direct Purchaser Class members and these purchases do not constitute domestic or import commerce, the Defendants' unlawful activities with respect thereto, as more fully alleged herein, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce that gives rise to the claims asserted herein.

Compl. ¶ 123 (emphasis added).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

purchases by foreign entities.  It defines "Flextronics" in the Complaint to include not only itself, but also other entities:  "Plaintiff Flextronics International USA, Inc. ("**Flextronics**"), on behalf of itself, its subsidiaries, parents, and affiliated entities, (**collectively, "Flextronics"**) brings an individual (non-class) action for damages . . . ."  Compl. preamble (emphasis added).  Notwithstanding the inherent confusion of defining "Flextronics" to mean both the U.S.-based named Plaintiff in this case as well as its foreign subsidiaries and foreign affiliates, Flextronics USA parrots the language of the FTAIA in seeking to recover for direct purchases made by "Flextronics," ambiguously defined to include claims for foreign purchases:  "Defendants' sales of Capacitors to Flextronics for the manufacture of products that were intended for sale to United States customers or end-users involved import commerce that gives rise to a claim by Flextronics under United States law." Compl. ¶ 425. Flextronics USA also explicitly seeks to recover damages, both for itself and for its foreign affiliated entities, under federal and California state law, based on both direct and **indirect** claims.  *See* Compl. ¶¶ 22, 429 (". . . Flextronics has been injured . . . in that it paid artificially inflated prices for the electrolytic and film Capacitors it purchased directly and **indirectly** from Defendants.") (emphasis added).

## IV.   ARGUMENT

### A.    This Motion Presents No Genuine Issue of Fact

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.  It is Plaintiffs' burden to prove each element of the FTAIA.  *Hsiung*, 778 F.3d at 753 ("The FTAIA does not limit the power of the federal courts; rather, it provides substantive elements under the Sherman Act in cases involving nonimport trade with foreign nations."); *USS-POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council*, 31 F.3d 800, 805 (9th Cir. 1994)

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

("[T]he statutory exemption is . . . an element of any claim that unions violated the antitrust laws. Plaintiff bears the burden of proof."). To carry this burden, Plaintiffs must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In support of this motion, Defendants submit declarations based on transaction data made and maintained in the regular course of business and produced by Defendants. The only facts upon which Plaintiffs can conceivably rely are straightforward sales and shipment records maintained and relied on in the regular course of Defendants' businesses. Business records of this sort do not raise credibility issues. *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043-44 (9th Cir. 2009). The foreign nature of the conspiracies alleged is set forth in the Complaint itself, and on these allegations and the undisputable facts set forth in the transaction data, the claims based on the overseas transactions should be dismissed.

Here, there can be no <u>genuine</u> dispute about the facts material to this motion: (1) the foreign locations of Defendants' factories and foreign sales organizations; (2) the foreign bill-to addresses as recorded in the regular course of business in Defendants' transaction data; and (3) the foreign nature of the conspiratorial conduct alleged in the Complaint. No other facts are material to this motion. DPPs are unable to identify any "foreign subsidiary or affiliate of a United States company that purchased capacitors directly from a Defendant" that they consider to be a member of their alleged class. DPPs' Objs. and Resps. to Defs.' Second Set of Interrogs. ("DPPs' Second Interrog. Resp."), at 4, Stillman Decl. Ex. 1. In fact, none of the named DPPs had any such foreign subsidiaries or affiliates. *Id.* Defendants' Interrogatories 9, 10, 11, and 12 directed to DPPs asked DPPs to support their FTAIA claims, tracking each element of the FTAIA statute. Plaintiffs responded, not with facts, but exclusively with legal arguments, which are addressed below. *Id.* at 6-15.

Flextronics USA's responses to Defendants' FTAIA contention interrogatories similarly provide no legal or factual basis for its FTAIA-related claims. Despite making clear in the Complaint that it seeks to recover on behalf of itself and its U.S. and foreign subsidiaries, parents,

9

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:14-cv-03264-JD
DEFS' JT MOTION FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

and affiliated entities, for both direct and even *indirect*[8] purchases, Flextronics USA first balked at

providing even the most basic information about the foreign purchases for which it is claiming.

When asked to identify the foreign "subsidiaries, parents, and affiliate entities" that directly

purchased Capacitors from Defendants and on whose behalf Flextronics USA purported to bring this

action, Flextronics USA objected to this interrogatory on the ground, *inter alia*, that it had not been

provided a copy of documents produced by the DPPs and Defendants.  Flextronics Inter'l USA,

Inc.'s Initial and Prelim. Objs. and Resps. to Defs.' First Set of Interrogs. Numbered (1) & (2), dated

Sept. 3, 2015 ("Flextronics USA's First Interrog. Resp."), at 4-5, Stillman Decl. Ex. 2.  Three days

before this motion's due date, Flextronics supplemented its response, conceding that it seeks to

recover not only for purchases made by it, but also for purchases made by approximately 100

"Destination Facilities", many of which are located outside of the United States.  *See* Flextronics

USA's Suppl. First Interrog. Resp. at 3-4 and Ex. 1, Stillman Decl. Ex. 4.  Flextronics USA objected

to Defendants' interrogatory requesting Flextronics USA to identify the sales underlying its own

claims -- sales data Flextronics is best positioned to access in its own records.  *See* Flextronics

USA's Second Interrog. Resp. at 9, Stillman Decl. Ex. 3.  In contrast, in the absence of clear answers

from Flextronics USA, Defendants have identified those foreign entities with names containing the

word "Flextronics" as part of their discovery responses.  Further, Flextronics USA provided no

substantive response to Defendants' Interrogatories 9, 10, 11, 12, 13, and 14, which asked

Flextronics USA to support its FTAIA claims  by addressing each prong of the FTAIA statute.

Flextronics USA's Second Interrog. Resp. at 4-11, Stillman Decl. Ex. 3.  Flextronics USA's evasive

responses should not be permitted to prejudice Defendants with respect to this motion, and thus

Defendants request that the Court preclude Flextronics USA from seeking recovery for claims based

on purchases made in foreign commerce.[9]

---

[8] *See* Flextronics Intern'l USA, Inc.'s Initial and Prelim. Objs. and Resps. to Defs.' Second Set of Interrogs. Numbered 9 through 22, dated Sept. 3, 2015 ("Flextronics USA's Second Interrog. Resp."), at 16 ("Flextronics is entitled to recover for purchases to the extent such purchases are determined to be indirect."), Stillman Decl. Ex. 3.

[9] *See* May 27, 2015 Hr'g Tr. 6:5-23.  To the extent that Flextronics USA's subsidiary, parent, and affiliated entities have assigned to Flextronics USA their legal claims (Flextronics First Interrog. Resp., at 5), Flextronics USA, as assignee, simply stands in the shoes of the assignors; it has no stronger argument than they would have.  *Cedars-Sinai Medical Ctr. v. Mass. Mut. Life Ins. Co.*, 94-cv-55065, 1995 U.S. App. LEXIS 27693, at *7, 9 (9th Cir. Sept. 21, 1995).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

### B. Plaintiffs' Claims Do Not Meet the Statutory Requirements of the FTAIA

#### 1. Controlling Precedent Interpreting the Statutory Intent of the FTAIA Requires Dismissal of Plaintiffs' Claims

Congress enacted the FTAIA as an amendment to the Sherman Act out of concern that the broad jurisdictional language in the Sherman Act had created a legal regime "excessively hospitable" to extraterritorial application of U.S. antitrust law. 18 Philip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 272i, at 300 (4th ed. 2013). "Congress sought to release domestic (and foreign) anticompetitive conduct from Sherman Act constraints when that conduct causes foreign harm." *Empagran*, 542 U.S. at 166.

The Supreme Court in *Empagran* observed that the FTAIA was enacted to reduce "the serious risk of interference with a foreign nation's ability independently to regulate its own commercial affairs." *Id.* at 165 ("Why is it reasonable to apply [U.S. antitrust law] to foreign conduct insofar as that conduct causes independent foreign harm and that foreign harm alone gives rise to the plaintiff's claim?"). As such, the FTAIA was intended to provide a "single, objective test" and "clear benchmark" that will enable "businessmen . . . as well as our trading partners" to determine whether U.S. law applies to their business dealings. H.R. Rep. No. 97-686, at 2-3, *as reprinted in* 1982 U.S.C.C.A.N. at 2487-88.

The FTAIA provides, in relevant part, that:

> [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless--
>
> (1) such conduct has a direct, substantial, and reasonably foreseeable effect --
>
>     (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
>
>     (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
>
> (2) such effect gives rise to a claim under the provisions of [the Sherman Act].

15 U.S.C. § 6a.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

The FTAIA amends the Sherman Act by establishing a general rule "placing all (nonimport) activity involving foreign commerce outside the Sherman Act's reach." *Empagran*, 542 U.S. at 162. The FTAIA then "brings back such conduct back within the Sherman Act's reach" only if it meets *both* parts of the "domestic injury" exception to the general rule. *Id.* Under the domestic injury exception, courts may apply the Sherman Act to cases involving foreign conduct if (1) the foreign conduct has a "direct, substantial, and reasonably foreseeable effect" on American domestic commerce, *and* (2) this effect on U.S. commerce "gives rise to" a Sherman Act claim. *Id.* (citing 15 U.S.C. § 6a(1)-(2)). "The first requirement, if proved, establishes that there is an antitrust violation; the second determines who may bring a suit based on it." *Motorola V*, 775 F.3d at 818.

Plaintiffs seek to apply the Sherman Act to claims that are based on alleged foreign injury, *i.e.*, based on the payment of allegedly supracompetitive prices by separate foreign affiliates, foreign subsidiaries, or foreign contract manufacturers located abroad for Capacitors sold to them in foreign countries by foreign Defendants. While this motion will parse the FTAIA statutory elements that Plaintiffs' claims fail to meet, it may more simply be noted at the outset that three key decisions, *Empagran*, *DRAM*, and *Motorola V,* prohibit Plaintiffs' claims based on these foreign transactions.

In *Empagran,* the Supreme Court addressed foreign-to-foreign antitrust claims similar to those asserted by Plaintiffs and held that such claims are beyond the reach of U.S. antitrust law. *Empagran* involved a vitamins cartel centered in Asia that sold vitamins worldwide. The plaintiffs were "foreign purchasers, . . . five foreign distributors located in Ukraine, Australia, Ecuador, and Panama, each of which bought vitamins . . . for delivery outside the United States." *Empagran*, 542 U.S. at 159-60. Even though the vitamins at issue in that case were sold exclusively in foreign commerce, these foreign purchaser plaintiffs sought recovery under the Sherman Act on the theory that the vitamins conspiracy *also* affected U.S. purchasers and U.S. commerce. *Id.*

The Court held that the FTAIA excludes from the Sherman Act's reach "anticompetitive price-fixing activity that is in significant part foreign, that causes ***some*** domestic antitrust injury, and that independently causes separate foreign injury." *Id.* at 158 (emphasis added). In explaining its reasoning, the Court focused on international comity concerns and Congressional intent. The Court observed that "the higher foreign prices of which the foreign plaintiffs here complain are not the

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

consequence of any domestic anticompetitive conduct *that Congress sought to forbid*, for Congress did not seek to forbid any such conduct . . . insofar as it is intertwined with foreign conduct that causes independent foreign harm." *Id*. at 166 (emphasis in original). Rather, "Congress sought to *release* domestic (and foreign) anticompetitive conduct from Sherman Act constraints when that conduct causes foreign harm." *Id*. (emphasis in original). In other words, that "some" anticompetitive conduct took place in the U.S. does not trigger application of the Sherman Act to that conduct if the end result is "foreign harm," *i.e.*, "higher foreign prices." *Id*. at 165-66.

Following *Empagran*, the Ninth Circuit in *DRAM* agreed that the FTAIA makes clear that U.S. antitrust laws concern the protection of "***American*** consumers and ***American*** exporters, not foreign consumers or producers" and, applying the FTAIA, affirmed dismissal of overseas claims. *DRAM*, 546 F.3d at 986 (citing Philip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 272i, p. 287 (3d ed. 2006)) (emphasis added). Defendants in that case were foreign and domestic manufacturers of dynamic random access memory ("DRAM") who sold DRAM around the world. *Id*. at 984. The plaintiff, Centerprise, was a British computer manufacturer that purchased the DRAM outside of the U.S. from foreign defendants. In its antitrust class action, Centerprise sought injunctive relief and damages, based in part on Section 1 of the Sherman Act, for those purchases from foreign defendants. *Id*.

The Ninth Circuit held that plaintiffs' claims based, as in *Empagran*, on "anti-competitive price-fixing activity that is in significant part foreign, that causes some domestic antitrust injury, and that ***independently*** causes separate foreign injury" were barred by the FTAIA. *Id*. at 986 (citing *Empagran*, 542 U.S. at 158) (emphasis added). "Congress would not have intended that the FTAIA's exception to bring ***independently*** caused foreign injury within the Sherman Act's reach." *Id*. (quoting *Empagran*, 542 U.S. at 158) (emphasis added). It would amount to nothing short of "an act of legal imperialism, through legislative fiat," to permit foreign purchasers to recover damages from foreign sellers where "foreign anticompetitive conduct plays a significant role and where foreign injury is independent of domestic effects." *Empagran*, 542 U.S. at 158.

Consistent with *Empagran* and Ninth Circuit precedent, the Seventh Circuit recently dismissed, in *Motorola V*, claims strikingly similar in nature to the claims that Plaintiffs assert here.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

In that case, Motorola brought an antitrust damage action suit against foreign TFT-LCD manufacturers on behalf of itself and its foreign subsidiaries. The case, initially consolidated for pretrial purposes in the Northern District of California, had returned to the Northern District of Illinois. At issue on appeal from a decision by the Illinois district court were the TFT-LCD panels that "were bought and paid for by, and delivered to, foreign subsidiaries (mainly Chinese and Singaporean) of [the plaintiff] Motorola." *Motorola V*, 775 F.3d at 817. After those panels "were bought by the subsidiaries and incorporated by them into cellphones" abroad, the cellphones were "sold and shipped to Motorola for resale in the United States." *Id.*

In line with *Empagran* and *DRAM*, the Seventh Circuit cited comity concerns in affirming partial summary judgment for defendants. As Motorola's foreign subsidiaries were injured in foreign commerce, "to give Motorola rights to take the place of its foreign companies and sue on their behalf under U.S. antitrust law would be an unjustified interference with the right of foreign nations to regulate their own economies." *Id.* at 824-25. Equally important, the Seventh Circuit affirmed the dismissal of Motorola's claims based upon Motorola's purchases of panels from its foreign subsidiaries because such indirect purchases were barred by *Illinois Brick*. *Id.* at 821-823 ("Motorola can't just ignore its corporate structure whenever it's in its best interest to do so. . . . Having chosen to conduct its LCD purchases through legally distinct entities organized under foreign law, it cannot now impute to itself the harm suffered by them."). *Motorola V* is particularly fatal to the claims of Flextronics USA. Its claims are largely based on purchases of Capacitors made by its foreign affiliates. *See, e.g.,* Flextronics USA's Suppl. First Interrog. Resp., at 3-4 and Ex. 1, Stillman Decl. Ex. 4.

## 2. Plaintiffs' Claims Do Not Meet the Specific Statutory Requirements of the FTAIA

The three cases discussed above control and require dismissal of Plaintiffs' claims in respect of foreign purchases. We now turn to the statutory language of the FTAIA and how these controlling decisions have interpreted each prong of the FTAIA.

To pursue their foreign-to-foreign claims, Plaintiffs must prove that their purchases made abroad from foreign Defendants involve "import" commerce. Alternatively, if, as is the case here,

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

such foreign-to-foreign transactions do not involve "import" commerce, Plaintiffs must satisfy both requirements of the "domestic injury exception" to the FTAIA: (a) that Defendants' conduct had a "direct, substantial, and reasonably foreseeable effect" on U.S. domestic commerce or import commerce, and (b) that this domestic effect on U.S. domestic commerce "gave rise" to Plaintiffs' foreign antitrust claims. Failure to demonstrate either prong of the domestic injury exception bars Plaintiffs' recovery for their foreign purchases.

### a. The Import Commerce Exclusion Does Not Apply

Plaintiffs cannot show that the foreign transactions at issue are "import commerce" that merit exclusion from the FTAIA. The Supreme Court in *Empagran* concluded that overseas sales to foreign purchasers are "foreign commerce," not import commerce. Specifically, transactions "that were *neither import nor export, i.e.*, *transactions within, between, or among other nations*" were "foreign transactions" that "should, for the purposes of this legislation, be treated in the same manner as export transactions -- that is, there should be no American antitrust jurisdiction" absent satisfaction of the direct effects test. *Empagran*, 542 U.S. at 163 (citing H.R. 5235, 97th Cong., 1st Sess., § 1 (1981), at 9-10) (emphasis added).

The significance that the Supreme Court placed on this revelation cannot be overstated. Regarding this House Report excerpt, Justice Breyer noted, "For those who find legislative history useful, the House Report's account should end the matter. Others, by considering carefully the amendment itself and the lack of any other plausible purpose, may reach the same conclusion, namely, that the *FTAIA's general rule applies where the anticompetitive conduct at issue is foreign*." *Empagran*, 542 U.S. at 163 (referring to the FTAIA's "general rule placing all (nonimport) activity *involving foreign commerce* outside the Sherman Act's reach") (emphasis added).[10] Thus, the Supreme Court in *Empagran* held that transactions between a foreign seller and foreign purchaser that take place abroad are "*wholly foreign*" transactions that do not fall within the definition of "imports." *Id.* at 163 (citing H.R. 5235, 97th Cong., 1st Sess. § 1 (1981)) (emphasis

---

[10] To reinforce this point, the Court stated that it "ordinarily construes ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations," and cautioned courts "to assume that legislators take account of the legitimate sovereign interests of other nations when they write American laws," *Empagran*, 542 U.S. at 164.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

15

Case No. 3:14-cv-03264-JD
DEFS' JT MOTION FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

added).

Importantly, the Supreme Court in *Empagran* did not inquire into any subsequent sale or resale of the vitamins (for example, assembly, packaging, or processing after the first sale between the foreign seller and foreign purchaser) in concluding that such sales were "wholly foreign" and were "neither import nor export." It is only the first sale, *i.e.*, the direct purchase,[11] that is relevant for the purposes of determining whether a transaction involves import commerce. *See also Motorola V*, 775 F.3d 816, 824-25 (finding no import commerce where the first sale, *i.e.*, the direct purchase, was between Motorola's foreign subsidiary and a foreign defendant).

Similarly, the Ninth Circuit in *DRAM* expressly stated that foreign purchases from foreign defendants of DRAM abroad did not involve import commerce, and fell within the FTAIA's general rule. The Ninth Circuit stated "it is undisputed that the alleged price-fixing conduct falls within the FTAIA's general rule because the price-fixing activity constitutes *'conduct involving trade or commerce . . . with foreign nations.'*" *DRAM*, 546 F.3d at 986 n.6. (emphasis added). *See also Motorola I*, 2010 U.S. Dist. LEXIS 65037, at *18-19 ("The dispositive inquiry is whether the conduct of the defendants, not plaintiffs, involves 'import trade or commerce.'") (internal citation omitted).

Most recently in *Hsiung*, the Ninth Circuit expressly rejected the proposition that a transaction between a foreign seller and foreign buyer could be considered "import" commerce:

> A transaction between two foreign firms, even if American-owned, should not, merely by virtue of the American ownership, come within the reach of our antitrust laws. *Such foreign transactions* should, for the purposes of this legislation, be treated in the same manner as export transactions -- that is, there should be no American antitrust jurisdiction absent a direct, substantial and reasonably foreseeable effect on domestic commerce or a domestic competitor. . . . It is thus clear that *wholly foreign transactions* as well as export transactions are covered by the Amendment, but that import transactions are not.

*Hsiung*, 778 F.3d at 754 (citing H.R. Rep. 97-686, at 9-10) (emphasis added).

The *Hsiung* Court further stated that "[a]lthough our circuit has not defined 'import trade' for purposes of the FTAIA, not much imagination is required to say that this phrase means precisely

---

[11] As Plaintiffs claim to be direct purchasers, and because under *Illinois Brick* only direct purchasers can sue for damages under the Sherman Act and Clayton Act section 4, only the first purchases can be pertinent here.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

what it says." *Id.* at 754-55. "[T]ransactions that are directly between the [U.S.] plaintiff purchasers and the defendant cartel members *are* the import commerce of the United States." *Id.* (citing *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845, 855 (7th Cir. 2012)) (emphasis in original). So too are "goods manufactured abroad and sold *in the United States*," and "transactions between foreign defendant producers of TFT-LCDs and *purchasers located in the United States*." *Id.* at 755 (internal citations omitted) (emphasis added).

The DPPs' claims based upon purchases of Capacitors by foreign subsidiaries or affiliates of U.S. companies are wholly foreign transactions and do not involve import commerce. Similarly, the purchases of capacitors by the foreign affiliates of Flextronics USA do not involve import commerce. It also follows that sales made by the Defendants' U.S. entities to foreign purchasers are not import commerce; they are export commerce.

> **b.** **Plaintiffs Cannot Satisfy the "Gives Rise To" Requirement With Respect To Capacitors Purchased in Foreign Markets Because There Is No Proximate Causal Nexus Between the Alleged Effect on U.S. Commerce and the Foreign Injury**

Plaintiffs cannot satisfy the domestic effects exception so as to sweep their foreign-to-foreign claims, or claims based on exports, back within the reach of the Sherman Act, because Plaintiffs cannot satisfy the "gives rise to" prong of the FTAIA's domestic effects exception with respect to sales of capacitors between foreign defendants and foreign purchasers transacted abroad. On this basis *alone* Plaintiffs' claims based on such sales must fail.

The FTAIA's "gives rise to" prong requires a plaintiff to show that the *effect* on U.S. commerce of defendants' alleged price-fixing conduct (*i.e.*, supracompetitive prices in the U.S.) proximately caused the plaintiffs' alleged *foreign injuries* from its foreign purchases (*i.e.*, payment of supracompetitive prices abroad).

According to *Empagran*, *DRAM*, all sister circuits adjudicating this issue, and other decisions in the Northern District of California, the "effect" of Defendants' conduct on U.S. commerce means supracompetitive prices in the U.S., and the claim that is "give[n] rise to" means the payment of supracompetitive prices abroad. *Motorola V*, 775 F.3d at 819; *Lotes Co., Ltd. v. Hon Hai Precision Inds. Co., Ltd.,* 753 F.3d 395, 414 (2d Cir. 2014); *DRAM*, 546 F.3d at 988; *In re Monosodium*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Glutamate Antitrust Litig.* (*"MSG"*), 477 F.3d 535, 539-40 (8th Cir. 2007); *Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267, 1271 (D.C. Cir. 2005) ("*Empagran II*"); *Den Norske Stats Oljesleskap As v. HeereMac v.o.f.*, 241 F.3d 420, 427 (5th Cir. 2001); *Motorola I*, 2010 U.S. Dist. LEXIS 65037, at *24 (citing *In re Hydrogen Peroxide Antitrust Litig.*, 702 F. Supp. 2d 548 (E.D. Pa. Mar. 31, 2010)) (The "gives rise to" prong imposes" a two-step dance, first with one foot (the domestic effects) and then with the other (the foreign antitrust injury)."); *Sun Microsystems,* 608 F. Supp. 2d at 1183 (stating the issue as "whether plaintiff can demonstrate proximate causation between the recognized domestic effect of defendants' conduct (i.e., the setting of higher prices for DRAM in the United States) and plaintiff's foreign injury (i.e., the payment of higher DRAM prices abroad.").

Here, there is simply no causal nexus, as the effect, if any, on U.S. commerce of defendants' conduct and the plaintiffs' alleged injuries from foreign purchases by their foreign affiliates occurred simultaneously and independently of each other. *Lotes,* 753 F.3d at 414 (affirming dismissal under FTAIA on failure to prove that effect on U.S. commerce "gave rise to" plaintiffs' foreign injuries). When asked to provide any evidence supporting the domestic effect exception to FTAIA, DPPs and Flextronics had none. *See* DPPs' Second Interrog. Resp. at 10-15, Stillman Decl. Ex. 1; Flextronics USA's Second Interrog. Resp. at 10-11, Stillman Decl. Ex. 3.

The leading authorities on the meaning of the FTAIA's "gives rise to" requirement, *Empagran, Empagran II, DRAM,* and *Motorola V*, express unambiguously that in price-fixing class actions where foreign purchasers seek damages arising from direct purchases of a product sold outside the United States by foreign defendants, those purchasers' alleged injuries were caused ***independently*** from any effect on U.S. commerce and thus such claims are barred by the FTAIA.

In *Empagran*, the Supreme Court concluded that only the customers who had purchased vitamin products in the United States were permitted to invoke the Sherman Act, reasoning that "Congress would not have intended the FTAIA's exception to bring ***independently caused foreign injury*** within the Sherman Act's reach." *See Empagran*, 542 U.S. at 159, 165-166, 173 (emphasis added). Those who had purchased vitamins in foreign countries had no Sherman Act claim because their claims arose from foreign harm, not from any effect on U.S. commerce. *Id*. at 173; *see also*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Minn-Chem*, 683 F.3d at 858 ("U.S. antitrust laws reach foreign conduct that harms U.S. *commerce*") (emphasis added); *DRAM,* 546 F.3d at 986.

On remand, the District of Columbia Circuit held that the "gives rise to" language of the domestic injury exception of the FTAIA requires a proximate causal relationship between the effect on U.S. commerce and the foreign injury, not merely a "but for" relationship. *See Empagran II*, 417 F.3d at 1271. Further, this proximate causal relationship must flow such that *domestic* effects of the defendants' conduct -- *i.e*., increased prices in the United States -- proximately caused the foreign purchasers' injuries. *Id.* at 1271. Thus the *Empagran II* court affirmed dismissal of the foreign purchaser claims after finding that it was the *foreign*, not domestic, effects of price-fixing that directly caused, or "gave rise to," the foreign purchasers' losses when they purchased vitamins abroad at supracompetitive prices. *Id*.

Following *Empagran II*, the Ninth Circuit in *DRAM* affirmed dismissal of the foreign purchaser plaintiff's class action on the ground that, for the purposes of the domestic injury exception to the FTAIA, the plaintiff had not demonstrated that the effect on U.S. domestic commerce gave rise to its foreign injury.

The ruling in *DRAM* is directly on point. The Court acknowledged that even if the alleged conspiracy raised prices of DRAM in both the United States and abroad as a result of a global procurement strategy, Centerprise had failed to show the appropriate causal nexus, *i.e*., it had failed to show that the effect in the U.S. (higher prices in the U.S.) "gave rise to" the foreign purchasers' injury (higher prices abroad).

> [C]enterprise has not shown that higher U.S. prices proximately caused its foreign injury of having to pay higher prices abroad. Other actors or forces may have affected the foreign prices. In particular, ***that the conspiracy had effects in the United States and abroad does not show that the effect in the United States, rather than the overall price-fixing conspiracy itself, proximately caused the effect abroad.***

*DRAM*, 546 F.3d at 988 (emphasis added).

Finally, in *Motorola V,* the crux of the Court's decision to affirm the grant of defendants' motion for partial summary judgment is that Motorola failed to satisfy the "gives rise to" prong of the domestic injury exception of the FTAIA. *See Motorola V*, 775 F.3d at 819 ("What trips up

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Motorola's suit is the statutory requirement that the effect of the anticompetitive conduct on domestic U.S. commerce give rise to an antitrust cause of action."). Because the only direct purchases at issue in that case were purchases made by Motorola's subsidiaries, who purchased TFT-LCDs in foreign commerce, Motorola, as indirect purchaser, could not show that defendants' anticompetitive conduct had any effect on domestic U.S. commerce that gave rise to an antitrust cause of action. *Id.* at 819. "The conduct increased the cost to Motorola of the cellphones that it bought from its foreign subsidiaries, but the cartel-engendered price increase in the components and in the price of cellphones that incorporated them occurred entirely in ***foreign commerce***." *Id.* (emphasis added).

This district and other circuit courts have taken a similar approach as *Empagran*, *Empagran II*, *DRAM,* and *Motorola V*. *See Lotes,* 753 F.3d at 414 (affirming dismissal of plaintiff's antitrust claims on the ground that there was no domestic effect that "gave rise to" plaintiff's foreign injury); *Minn-Chem,* 683 F.3d at 854 (holding that the "gives rise to" requirement bars claims of "foreign purchasers of allegedly price-fixed products that were sold in foreign markets."); *MSG*, 477 F.3d at 539-40 ("The domestic effects of the price fixing scheme (increased U.S. prices) were not the direct cause of the appellants' injuries. Rather, it was the ***foreign*** effects of the price fixing scheme (increased prices abroad).") (emphasis added); *Sun Microsystems,* 608 F. Supp. 2d at 1185 ("As noted time and time again by this court, the FTAIA requires that plaintiff demonstrate that the higher U.S. DRAM prices caused by defendants' conduct proximately caused *plaintiff* to pay higher DRAM prices abroad."); *see also Den Norske*, 241 F.3d at 427.

The decision in *Motorola III* requires nothing to the contrary. In *Motorola III,* at a time when the court was supervising preliminary proceedings under an MDL referral, the Northern District of California (Illston, J.) denied a motion for summary judgment, reasoning that Motorola had sufficiently demonstrated that the effect on U.S. domestic commerce "gave rise to" Motorola's foreign injury because the "domestic effect" giving rise to foreign injury was not limited to the payment of allegedly supracompetitive U.S. prices, but could instead be the "final decisions regarding pricing of LCD panels," which evidence in the record suggested occurred in the US.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Motorola III*, 2012 U.S. Dist. LEXIS 112499, at *3.[12]

This novel interpretation is not only inconsistent with *Empagran* and *DRAM*, but also was subsequently superseded and overruled after the case was remanded to its original forum. On remand, the Northern District of Illinois court <u>granted</u> defendants' motion to reconsider the MDL court's decision, and held as a matter of law that "under a straightforward reading of *Empagran II* and *DRAM*, none of [the facts offered by Motorola] establish that a domestic effect gave rise to Motorola's Sherman Act claim" because the effect was the *payment* of allegedly supracompetitive prices overseas, not the decision about what prices to charge:

> [D]omestic approval cannot fairly be said to give rise to Motorola's Sherman Act claim. ***For Sherman Act purposes, the injury arose when Motorola's foreign affiliates purchased LCD panels at inflated prices***, <u>***not when Motorola decided at what price those purchases would be made***</u>. *See DRAM*, 546 F.3d at 988 (stating that the foreign injury is "having to pay higher prices abroad"); *In re Monosodium Glutamate*, 477 F.3d at 539 n.3 (stating that the injury is the "higher prices paid"). Motorola's domestic approval was not the direct cause of Motorola's foreign affiliates' claim; rather that claim resulted from the overall price-fixing conspiracy itself. *See DRAM*, 546 F.3d at 988.

*Motorola IV*, 2014 U.S. Dist. LEXIS 8492, at *33 (emphasis added).[13] The *Motorola IV* Court went on to note that the approval of prices in the United States did not affect "the undisputed facts showing that the transactions were overwhelmingly foreign in nature," as the LCD panels at issue in that case were manufactured abroad, billed-to and paid for in foreign commerce, and shipped to

---

[12] The *Motorola III* Court described this logic in an earlier decision, seeing a "concrete link between defendants' price-setting conduct (the collusion between the defendants to establish an artificially high price for LCD Panels), its supposed 'domestic effect' (the negotiations between Motorola and defendants that resulted in the setting of a global, anticompetitive price for all LCD Panels sold to Motorola) and foreign injury suffered by Motorola and its foreign affiliates (payment of higher prices abroad)." *Motorola II*, 785 F. Supp. 2d at 843-44.

[13] This focus on the actual charging of the price as the relevant effect accords with the plain language of the FTAIA, which requires not just *any* "domestic effect" to give rise to a Sherman Act claim, but an effect on U.S. *commerce*. 15 U.S.C. § 6a. The reasoning in *Empagran*, *DRAM*, and sister circuits is predicated on the plain meaning of "commerce," *i.e.*, the exchange of goods and services. *See Dedication & Everlasting Love to Animals v. Humane Soc'y*, 50 F.3d 710, 712 (9th Cir. 1995) ("Interpreting the Sherman Act, the Supreme Court has spoken of 'commerce' in terms of 'the purchase, sale and exchange of commodities.'"); Black's Law Dictionary 304 (9th ed. 2009) (defining "commerce" as "'[T]he exchange of goods and services, esp. on a large scale involving transportation between cities, states, and nations."). Unlike the payment of supracompetitive prices in the U.S., making "final decisions regarding pricing" and negotiations regarding pricing are not in themselves an effect on U.S. "commerce" and thus are insufficient to satisfy the "give rise to" prong of the domestic injury exception. *See Turicentro, S.A. v. Am. Airlines*, 303 F.3d 293, 305 (3d Cir. 2002) ("That certain activities might have taken place in the United States is irrelevant if the economic consequences are not felt in the United States economy.").

21

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:14-cv-03264-JD
DEFS' JT MOTION FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

foreign addresses. *Id.* at *33 n.4. The reasoning of *Motorola IV* is particularly applicable to Flextronics USA's attempt to assert claims on behalf of purchases by its foreign affiliates. It appears that Flextronics USA will attempt to justify such claims based on the asserted involvement of Flextronics USA employees in the negotiations with Defendants and the purchasing process. Flextronics USA's First Interrog. Resp. at 5-6, Stillman Decl. Ex. 2; Flextronics USA's Suppl. First Interrog. Resp. at 3-4, Stillman Decl. Ex. 4. That alleged involvement does not alter the fact that the purchasers were foreign and the injury from those purchases did not arise from any domestic effect of the Defendants' conduct. Flextronics USA's Suppl. First Interrog. Resp. at 3-4 and Ex. 1 (conceding that Flextronics' Complaint seeks to recover for purchases made by its approximately 100 "Destination Facilities," many of which are located outside the U.S.), Stillman Decl. Ex. 4. *See also*, *e.g.*, Hitachi Decl. ¶ 11; Hitachi U.S. Decl. ¶ 8; KEMET Decl. ¶ 7; Matsuo Decl. ¶ 17 and Ex. B; Nichicon Decl. ¶ 12 and Ex. D; Okaya Decl. ¶ 10; Rubycon Decl. ¶ 17 and Ex. 5; Taitsu Decl. ¶8.

The Seventh Circuit affirmed *Motorola IV*, adding that not only was the "gives rise to" requirement not met, but also that Motorola's claims based on purchases by its foreign subsidiaries and affiliates were barred by the *Illinois Brick* doctrine.[14] The *Motorola III* decision had not even considered *Illinois Brick*. It also bears noting that the Ninth Circuit, in *Hsiung*, the related criminal case dealing with the same alleged conspiracy, cited and carefully discussed the Seventh Circuit's *Motorola V* opinion, explaining that while different considerations apply in a criminal proceeding, the indirect purchaser doctrine as applied by the Seventh Circuit is a distinguishing factor applicable to, and limiting civil claims. *Hsiung*, 778 F.3d at 760.[15]

Because Plaintiffs cannot demonstrate that any effect on U.S. commerce in the form of increased prices of Capacitors in the U.S. proximately caused the foreign purchasers' injuries in the form of payment of supracompetitive prices abroad, Plaintiffs cannot satisfy the "give rise to" prong as applied to either foreign-to-foreign sales or export sales. Failure to demonstrate "import commerce" and the "gives rise to" prong of the domestic effect exception bars Plaintiffs' foreign-to-

---

[14] This is further discussed *infra* in Section IV.C.

[15] Similarly, Defendant NEC TOKIN Corp.'s decision to plead guilty for conspiring to fix prices for electrolytic capacitors sold to U.S. purchasers and to pay a criminal fine of $13.8 million to the U.S. Department of Justice does not impact the analysis here. *See United States v. NEC TOKIN Corp.*, 15-cr-00426 (N.D. Cal. Sept. 2, 2015).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:14-cv-03264-JD
DEFS' JT MOTION FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

foreign claims and claims based on export sales under the FTAIA.

        **c.**      **Defendants' Alleged Conduct Directed At Foreign Commerce Did Not Have a Direct Effect on Domestic Commerce**

Although the failure to satisfy the "gives rise to" requirement is fatal to Plaintiffs' claims, Plaintiffs also cannot meet the "direct effect" requirement of the domestic injury exception, as there are no facts to support that any effect on U.S. commerce followed as an "immediate consequence" of defendant manufacturers' foreign sales to foreign purchasers. The Ninth Circuit's definition of "direct effect" is a demanding one: "Conduct has a 'direct' effect for the purposes of the domestic effects exception to the FTAIA 'if it follows as an immediate consequence of the defendant[s'] activity.'" *Hsiung*, 778 F.3d at 758. "An effect cannot be 'direct' where it depends on such uncertain intervening developments." *United States v. LSL Biotechnologies*, 379 F.3d 672, 680-81 (9th Cir. 2003). Here, Plaintiffs cannot show that their claims based upon foreign purchases arise from a "direct" effect on U.S. commerce, because any effect on U.S. commerce from a foreign purchase would not follow as an "immediate consequence" of the alleged overseas price-fixing conduct.

Plaintiffs' foreign claims are based on foreign purchases of Capacitors by foreign subsidiaries and affiliates of United States companies who subsequently import the Capacitors to the United States either as standalone products or as components of finished products. None of these third-party foreign purchasers are Plaintiffs or members of the purported class. And Plaintiffs cannot dispute that the upstream third-party foreign purchasers would necessarily make intervening decisions, including whether to import specific capacitors into the United States, and, if so, whether to import the capacitors as standalone products or as components of finished products, along with other decisions during the manufacturing process, before selling the capacitor or finished product to their United States affiliates. The effect on domestic commerce, if any, is thus indirect. Moreover, to the extent Plaintiffs are basing their claims on purchases of finished products, the effect would be indirect for the additional reason that Capacitors comprise such a miniscule cost component of any finished product that price movements of Capacitors have no demonstrable bearing on the price of any finished product in which they are incorporated. Compl. ¶¶ 5-6.

Thus, because Plaintiffs cannot show that a direct effect on U.S. commerce with respect to

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

foreign purchases, they fail to satisfy the domestic injury exception to the FTAIA.[16]

### 3. Export Sales Are Barred by the FTAIA

To the extent Plaintiffs assert claims based on sales made by Defendants who sell from U.S. entities to foreign purchasers, such sales are exports and barred by the FTAIA for the same reasons set forth above in Parts IV.B.1 and 2.

### C. The Alleged DPPs and Flextronics USA are Indirect Purchasers and Cannot Assert Sherman Act Claims of Injury under *Illinois Brick*

As recognized by the Ninth Circuit, *Illinois Brick* establishes "a bright line rule" that only the first direct purchaser of an allegedly price-fixed product may bring suit for federal antitrust damages. *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-21, 1122 (9th Cir. 2008); *Illinois Brick*, 431 U.S. at 730. To the extent Plaintiffs seek to recover for indirect purchases, *i.e.*, their purchases of Capacitors or finished goods containing Capacitors from their foreign affiliates who purchased the Capacitors directly from Defendants, those claims are barred by *Illinois*

---

[16] Plaintiffs are not without recourse for foreign purchases by their subsidiaries, affiliates, agents and joint venturers. They and their foreign affiliates and subsidiaries are free to seek recovery for their foreign injuries in the jurisdictions where those injuries, if any, occurred. The *Motorola* court reasoned that Motorola's subsidiaries, having submitted to foreign law, "must seek relief for restraints of trade under the law either of the countries in which they are incorporated or do business or the countries in which their victimizers are incorporated or do business" as their parent company "has no right to seek relief on their behalf in the United States." *Motorola V*, 775 F.3d at 829.

> Motorola can't just ignore its corporate structure whenever it's in its interests to do so. It can't pick and choose from the benefits and burdens of United States corporate citizenship. It isn't claiming that its foreign subsidiaries owe taxes to the United States instead of to the foreign countries in which they are incorporated, countries that may have lower tax rates, or be less efficient at tax collection. It isn't claiming that its foreign subsidiaries are bound by the workplace safety or labor laws of the United States. Having chosen to conduct its LCD purchases through legally distinct entities organized under foreign law, it cannot now impute to itself the harm suffered by them.

*Id*. at 822. Likewise, Plaintiffs here cannot be permitted to recover in the United States for injuries allegedly suffered by foreign subsidiaries and affiliates in foreign commerce. Such recovery efforts must be made in the countries where those injuries occurred. *See also Minn-Chem*, 683 F.3d at 854, 860 (As to "foreign purchasers of allegedly price-fixed products that were sold in foreign markets," the foreign country "whose consumers were hurt would [be] the better enforcer.").

24

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*Brick*.

The Seventh Circuit's *Motorola V* decision powerfully confirms this result. *See Motorola V*, 775 F.3d at 821 ("The indirect-purchaser doctrine of *Illinois Brick* . . . forbids a customer of the purchaser who paid a cartel price to sue the cartelist, even if his seller -- the direct purchaser of the cartelist -- passed on to him some or even all of the cartel's elevated price."). In *Motorola V*, Motorola attempted to assert Sherman Act claims on behalf of its foreign subsidiaries for foreign-to-foreign transactions. The Court rejected Motorola's argument that it was intimately involved in negotiating the prices its subsidiaries paid and ruled that Motorola's subsidiaries were the direct purchasers of the price-fixed LCD panels while Motorola and its customers were indirect purchasers. *Id*. at 820-21. As such, "[b]ecause it is difficult to assess the impact of a price increase at one level of distribution on prices and profits at a subsequent level, and thus to apportion damages between direct and indirect (i.e., subsequent) purchasers (here, between Motorola's subsidiaries, Motorola the parent, and Motorola's cellphone customers), the indirect-purchaser doctrine cuts off analysis at the first level." *Id. See also Hsiung*, 778 F.3d at 760 (referring to the private antitrust claim in *Motorola V* as one that "failed because of the indirect-purchaser doctrine of *Illinois Brick* . . . .").

Further, the *Motorola V* Court rejected Motorola's argument that it was the "target" of the price fixers -- that the defendants "integrated themselves into the design of Motorola's U.S. products, and intentionally manipulated Motorola's price negotiations by illegally exchanging Motorola-specific information." *Motorola V*, 775 F.3d at 822 (internal quotations omitted). The "inflated rhetoric" of this "target" theory of antitrust liability would "nullify the doctrine of *Illinois Brick*." *Id*. Specifically, even if the direct purchasers pass on cost increases to their buyers in order to capture some or all of the resale profits, "the buyers are hurt, but as long as *Illinois Brick* is the law, their hurt doesn't give rise to an antitrust cause of action." *Id*. at 823. Thus even where alleged cartel members "knowingly" cause injury to indirect purchasers, those purchasers are barred from suit by *Illinois Brick* and the doctrine of antitrust standing that the rule of that case instantiates. *Id*.

Finally, the Ninth Circuit and this Court have rejected the proposition that a plaintiff can assert claims on behalf of its direct purchaser foreign subsidiaries based on a "single enterprise" theory, *i.e.*, that a plaintiff can stand in the shoes of its wholly owned foreign subsidiaries because it

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

and they "operated as a single enterprise with a unified purpose" in the production and sale of a product. *See Sun Microsystems,* 608 F. Supp. 2d at 1185 (granting the defendants' motion to dismiss claims premised on foreign DRAM purchases, in part because it rejected plaintiff's asserted "single enterprise theory" that was based on a global procurement strategy shared by plaintiff and foreign subsidiaries); *DRAM*, 546 F.3d at 989-90 (rejecting the plaintiff's attempt to argue "a direct correlation between the U.S. price and the prices abroad" and fact "that the [d]efendants' activities resulted in the U.S. prices directly setting the worldwide price," and noting prior rejections of "single global price" theories of proximate causation). To the extent Plaintiffs have suffered any injury as a result of their subsidiaries' purchases of Capacitors, "those injuries are derivative of those suffered by the foreign subsidiaries." *Sun Microsystems*, 608 F. Supp.2d at 1190.

### D. Flextronics USA's California State Law Claims Must Be Dismissed

In the Complaint's Second Claim for Relief, Flextronics USA alone additionally seeks to recover damages for foreign purchases made by its non-U.S. subsidiaries and affiliates under California's Cartwright Act (Cal. Bus. & Prof. Code § 16720, *et seq.*). and California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*). Compl. ¶¶ 444-69. The Court should summarily dismiss this claim to the extent it encompasses foreign-to-foreign or export purchases made by Flextronics USA's foreign subsidiaries and affiliates. To permit Flextronics USA to use state law to circumvent the restrictions of the FTAIA would not only subvert the Congressional intent behind the FTAIA, as described above, but it would also violate the Supremacy and Commerce Clauses of the U.S. Constitution. Defendants incorporate by reference Part V.A.1 and 2 of Defendants' Joint Motion for Partial Summary Judgment Dismissing Plaintiffs' Indirect Purchaser Claims Based on Foreign Sales Or, In The Alternative, To Simplify The Issues Under Fed. R. Civ. P. 16 ("IPP Mot.") filed this same date, which provides the legal basis for application of the FTAIA to state law claims.

Flextronics USA cannot assert claims under California law based upon purchases of Capacitors by foreign Flextronics entities for the same reasons that its claims under the Sherman Act for such purchases are barred. The purchases of Capacitors by foreign Flextronics entities do not involve import commerce. Nor do such foreign purchases give rise to a claim under California law

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

because the alleged injury arises from the foreign effects of any alleged conspiracy, not any domestic effect.

It appears that Flextronics USA may also be asserting claims as an indirect purchaser of capacitors under California law. *See* Compl. ¶¶ 423, 429 (Flextronics USA alleges that it paid "artificially inflated" prices for capacitors "Defendants sold directly and indirectly to Flextronics" and that it was injured as a result of the "Capacitors it purchased directly and indirectly"). Through an interrogatory Defendants requested Flextronics USA to identify the indirect purchases for which it is making claims, but Flextronics USA responded only that it "is entitled to recover for purchases to the extent such purchases are determined to be indirect." Flextronics USA's Second Interrog. Resp. at 16, Stillman Decl. Ex. 3. To the extent Flextronics USA is seeking recovery as the purchaser of Capacitors or finished products containing a Capacitor from one of its foreign affiliates who purchased Capacitors directly from a Defendant, that claim is barred by the FTAIA because the indirect purchases do not involve import commerce (*see* Part IV.B.2.a, *supra*), and any injury suffered by Flextronics USA arises from the foreign effects of the alleged conspiracy, not any domestic effect (*see* Part IV.B.2.b, *supra*; IPP Mot. at Part V.B). Similarly, if Flextronics USA is asserting an indirect purchaser claim based upon purchases of capacitors or finished products containing capacitors it made from an unaffiliated foreign entity who purchased capacitors directly from a Defendant, its claim is barred by the FTAIA for the same reasons.

Under either scenario, the indirect purchases by Flextronics USA from foreign entities who purchased capacitors directly from a Defendant raise directly the very comity issues that underlie the limitations imposed by the FTAIA. Flextronics USA's recourse for such purchases is under the foreign jurisdictions' antitrust laws, not the laws of the United States or California.

E.    **In the Alternative, Pursuant to Fed. R. Civ. P. 16, the Court Should Simplify the Issues by Excluding All Sherman Act Claims for Foreign Transactions**

The purpose of Rule 16 is to "simplify the issues, amend the pleadings where necessary, and to avoid unnecessary proof of facts at the trial." *Fed. Deposit Ins. Corp. v. Glickman*, 450 F.2d 416, 419 (9th Cir. 1971) (citing *McDonald v. Bowles*, 152 F.2d 741, 742-43 (9th Cir. 1945); *see also Portsmouth Square, Inc. v. S'holders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985). District Courts have wide discretion to narrow claims and simplify the issues. *See Portsmouth Square, Inc.*,

27

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:14-cv-03264-JD
DEFS' JT MOTION FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

770 F.2d at 869.  Here, limiting the sales at issue to those sold to U.S.-located customers and barring recovery for indirect purchases would greatly simplify the issues, expedite further proceedings, and greatly aid in the just, speedy, and more efficient determination of this action.

## V.     CONCLUSION

For the foregoing reasons, Defendants request that the Court grant their motion for partial summary judgment dismissing the DPPs' and Flextronics USA's claims to the extent they are based on foreign-to-foreign transactions occurring in foreign markets and exports from the United States, and limiting the commerce at issue in this case to the Defendants' sales of capacitors directly to purchasers located in the United States.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Dated:   October 1, 2015                     BAKER & McKENZIE LLP

                                             By:   _/s/ Darrell Prescott_____
                                                   Darrell Prescott

                                             Douglas M. Tween (admitted *pro hac vice*)
                                             Darrell Prescott (admitted *pro hac vice*)
                                             Catherine Koh Stillman (SBN 252440)
                                             **BAKER & McKENZIE LLP**
                                             452 Fifth Avenue
                                             New York, NY 10018
                                             Telephone: 1 212 626 4100
                                             Facsimile: 1 212 310 1600
                                             Email: Douglas.Tween@bakermckenzie.com
                                                    Darrell.Prescott@bakermckenzie.com
                                                    Catherine.Stillman@bakermckenzie.com

                                             Colin H. Murray (SBN 159142)
                                             **BAKER & McKENZIE LLP**
                                             Two Embarcadero Center, 11th Floor
                                             San Francisco, CA 94111-3802
                                             Telephone: 1 415 576 3022
                                             Facsimile: 1 415 576 3099
                                             Email: Colin.Murray@bakermckenzie.com

                                             Meghan E. Hausler (admitted *pro hac vice*)
                                             **BAKER & McKENZIE LLP**
                                             2300 Trammell Crow Center
                                             2001 Ross Avenue
                                             Dallas, TX 75201
                                             Telephone: 1 214 965 7219
                                             Facsimile: 1 214 978 3099
                                             Email: Meghan.Hausler@bakermckenzie.com

                                             *Attorneys for Defendants*
                                             *Okaya Electric Industries Co., Ltd.*
                                             *and Okaya Electric America Inc.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

MINTZ LEVIN COHN FERRIS GLOVSKY AND
POPEO PC

By: /s/ Bruce D. Sokler
 Bruce D. Sokler

Bruce D. Sokler (*admitted pro hac vice*)
701 Pennsylvania Avenue NW Suite 900
Washington, DC 20004
202-434-7303
Fax: 202-434-7400
Email: bdsokler@mintz.com

*Attorneys for Defendant AVX Corporation*

WILMER CUTLER PICKERING HALE AND DORR LLP

By: /s/ Heather S. Tewksbury
 Heather S. Tewksbury

Heather S. Tewksbury (SBN 222202)
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6134
Facsimile: (650) 858-6100
heather.tewksbury@wilmerhale.com

Thomas Mueller (admitted *pro hac vice*)
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6766
Facsimile: (202) 663-6363
thomas.mueller@wilmerhale.com

*Attorneys for Defendants ELNA Co. Ltd. and ELNA America, Inc.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

30

Case No. 3:14-cv-03264-JD
DEFS' JT MOTION FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

WILSON SONSINI GOODRICH & ROSATI PC

By    */s/ Jonathan M. Jacobson*
       Jonathan M. Jacobson

Jonathan M. Jacobson
Chul Pak (admitted *pro hac vice*)
Jeffrey C. Bank (admitted *pro hac vice*)
Justin A. Cohen (admitted *pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 497-7758
Facsimile: (212) 999-5899
jjacobson@wsgr.com
cpak@wsgr.com
jbank@wsgr.com
jcohen@wsgr.com

Jeff VanHooreweghe (admitted *pro hac vice*)
1700 K Street, N.W., Fifth Floor
Washington, DC 20006
Telephone: (202) 973-8825
Facsimile: (202) 973-8899
jvanhooreweghe@wsgr.com

*Attorneys for Defendants Hitachi Chemical Co., Ltd., Hitachi Chemical Company America, Ltd.,
and Hitachi AIC Incorporated*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

1

2  JONES DAY

3  By:    /s/ Eric P. Enson
4         Eric P. Enson

5  Jeffrey A. LeVee (SBN 125863)
   Eric P. Enson (SBN 204447)
6  Rachel H. Zernik (SBN 281222)
7  555 South Flower Street, Fiftieth Floor
   Los Angeles, CA 90071.2300
8  Telephone: (213) 489-3939
   Facsimile: (213) 243-2539
9  jlevee@JonesDay.com
   epenson@JonesDay.com
10 rzernik@jonesday.com

11
   *Counsel for Defendants Holy Stone Enterprise Co., Ltd., Milestone Global Technology, Inc, and*
12 *Vishay Polytech Co., Ltd.*

13 PILLSBURY WINTHROP SHAW PITTMAN LLP

14 By:    /s/ Jacob R. Sorensen
15        Jacob R. Sorensen

16 Roxane A. Polidora (CA Bar No. 135972)
   Jacob R. Sorensen (CA Bar No. 209134)
17 Four Embarcadero Center, 22nd Floor
   San Francisco, CA 94111
18 Telephone: (415) 983-1000
19 roxane.polidora@pillsburylaw.com
   jake.sorensen@pillsburylaw.com
20
21 *Attorneys for Defendants KEMET Corporation and KEMET Electronics Corporation*

22

23

24

25

26

27

28

DENTONS US LLP

By: _/s/ Bonnie Lau_____
        Bonnie Lau

Bonnie Lau (SBN 246188)
525 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 882-5000
Facsimile: (415) 882-0300
bonnie.lau@dentons.com

Felix T. Woo (SBN 208107)
601 S. Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:   (213) 623-9924
felix.woo@dentons.com

*Attorneys for Defendant Matsuo Electric Co., Ltd.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

GIBSON, DUNN & CRUTCHER LLP

By:   */s/ George A. Nicoud III*
            George A. Nicoud III

George A. Nicoud III (SBN 160111)
Austin V. Schwing (SBN 211696)
Eli M. Lazarus (SBN 284082)

555 Mission Street
San Francisco, CA 94105-0921
Telephone:  415-393-8308
Facsimile: 415-374-8473
tnicoud@gibsondunn.com
aschwing@gibsondunn.com
elazarus@gibsondunn.com

Matthew Parrott (SBN 302731)
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:  (949) 451-3800
Facsimile:  (949) 451-4220
mparrott@gibsondunn.com

*Attorneys for Defendants NEC TOKIN Corporation and NEC TOKIN America, Inc.*


K&L GATES LLP

By:   */s/ Michael E. Martinez*
            Michael E. Martinez

Scott M. Mendel (admitted *pro hac vice*)
Steven M. Kowal (admitted *pro hac vice*)
Michael E. Martinez (admitted *pro hac vice*)
Lauren N. Norris (admitted *pro hac vice*)
Lauren B. Salins (admitted *pro hac vice*)
70 West Madison Street, Suite 3100
Chicago, IL 60602
Telephone:  (312) 372-1121
michael.martinez@klgates.com

*Attorneys for Defendant Nichicon Corporation and Nichicon (America) Corporation*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

CADWALADER, WICKERSHAM & TAFT LLP

By:    /s/ Charles F. Rule
        Charles F. Rule

Charles F. Rule (admittedpro hac vice)
Joseph J. Bial (admittedpro hac vice)
Daniel J. Howley (admitted pro hac vice)
700 6th St, NW
Washington, DC 20001
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400
rick.rule@cwt.com
joseph.bial@cwt.com
daniel.howley@cwt.com

*Attorneys for Defendants Nippon Chemi-Con Corporation and United Chemi-Con, Inc.*

WINSTON & STRAWN LLP

By:    /s/ Jeffrey L. Kessler
        Jeffrey L. Kessler

Jeffrey L. Kessler (admitted *pro hac vice*)
A. Paul Victor (admitted *pro hac vice*)
Molly M. Donovan (admitted *pro hac vice*)
Mollie C. Richardson (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
pvictor@winston.com
mmdonovan@winston.com
mrichardson@winston.com

Ian L. Papendick (SBN 275648)
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-6905
Facsimile: (415) 591-1400
ipapendick@winston.com

*Counsel for Defendants Panasonic Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd., SANYO North America Corporation*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

O'MELVENY & MYERS LLP

By: _/s/ Michael F. Tubach_
       Michael F. Tubach

Michael F. Tubach (SBN 145955)
Christina J. Brown (SBN 242130)
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701
mtubach@omm.com
cjbrown@omm.com

Kenneth R. O'Rourke (SBN 120144 )
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
korourke@omm.com

*Attorneys for Defendants ROHM Co., Ltd. and ROHM Semiconductor U.S.A., LLC*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

HUNTON AND WILLIAMS LLP

By: ___/s/ Djordje Petkoski___
      Djordje Petkoski

Djordje Petkoski (admitted *pro hac vice*)
David A. Higbee (admitted *pro hac vice*)
Wendell L. Taylor (admitted *pro hac vice*)
Leslie W. Kostyshak (admitted *pro hac vice*)
2200 Pennsylvania Avenue, N.W.
Washington, D.C.  20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
dpetkoski@hunton.com
dhigbee@hunton.com
wtaylor@hunton.com
lkostyshak@hunton.com

M. Brett Burns (SBN 256965)
575 Market Street, Suite 3700
San Francisco, California 94105
Telephone: (415) 975-3700
Facsimile: (415) 975-3701
mbrettburns@hunton.com

*Attorneys for Defendants Rubycon Corporation and Rubycon America Inc.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

McKENNA LONG & ALDRIDGE LLP

By:    /s/ Andrew S. Azarmi
          Andrew S. Azarmi

Andrew S. Azarmi (SBN 241407)
Spear Tower, One Market Plaza, 24th Floor
San Francisco, CA 94150
Telephone:  (415) 267-4000
Facsimile: (415) 267-4198
aazarmi@mckennalong.com

Gaspare J. Bono (admitted *pro hac vice*)
Stephen M. Chippendale (admitted *pro hac vice*)
Claire M. Maddox (admitted *pro hac vice*)
1900 K Street, NW
Washington, DC 20006
Telephone:  (202) 496-7500
Facsimile: (202) 496-7756
gbono@mckennalong.com
schippendale@mckennalong.com
cmaddox@mckennalong.com

*Attorneys for Defendants Shinyei Kaisha, Shinyei Technology Co., Ltd., Shinyei Capacitor Co., Ltd., and Shinyei Corporation of America, Inc.*


HUGHES HUBBARD & REED LLP

By:    /s/ Ethan E. Litwin
          Ethan E. Litwin

Ethan E. Litwin (admitted *pro hac vice*)
Sigrid Jernudd (admitted *pro hac vice*)
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Ethan.Litwin@hugheshubbard.com
Sigrid.Jernudd@hugheshubbard.com

*Attorneys for Defendants Soshin Electric Co., Ltd. and Soshin Electronics of America Inc.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

BONA LAW PC

*/s/ Jarod M. Bona*
Jarod M. Bona (SBN 234327)
Aaron R. Gott (admitted *pro hac vice*)
BONA LAW PC
4275 Executive Square, #200
La Jolla, CA 92037
Telephone: (858) 964-4589
Facsimile: (858) 964-2301
Email: jarod.bona@bonalawpc.com
Email: aaron.gott@bonalawpc.com

*Attorneys for Taitsu Corporation and Taitsu America, Inc.*

Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the above signatories.

Dated:    October 1, 2015                    BAKER & McKENZIE LLP

                                             By:    */s/ Darrell Prescott*
                                                    Darrell Prescott

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000