**Via ECF and Hand Delivery**                                               October 20, 2015
Hon. Judge James Donato
United States District Court
450 Golden Gate Avenue
Courtroom 11, 19th Floor
San Francisco, California  94102

       Re:    *In re Capacitors Antitrust Litigation*, No. 14-cv-3264-JD

Dear Judge Donato:

      We write to ask the Court to resolve a discovery dispute that has arisen in connection with Plaintiffs' requests for production of documents propounded on Defendants Nippon Chemi-Con Corporation ("NCC"). The requisite transparency and cooperation that is expected in civil discovery has not occurred here as it relates to NCC's ESI production. The parties have met and conferred multiple times as required by the Court's Standing Order and are now at impasse.

**NCC and Plaintiffs "Agree" to Nine Custodians But Later Learn that the Majority of the Custodians Have No Preserved ESI; NCC Refuses to Agree to Substitute Custodians**

      NCC did not participate in discovery—underway with other Defendants—until the Court denied its jurisdiction motion on June 11, 2015. On May 18, Plaintiffs proposed document custodians and supplemented that list on June 29. On that day, the parties then met and conferred, at which time NCC noted that it had not completed its investigation regarding ESI. The parties deferred further discussions until NCC had done so. On July 7, NCC proposed document custodians, including the five proposed by Plaintiffs, for which NCC had preserved no ESI.[1] NCC did not notify Plaintiffs of this fact at that time. Plaintiffs had no knowledge of such facts and justifiably proceeded on the assumption—apparently mistaken—that NCC had maintained ESI for all the custodians under discussion. On July 10, NCC noted that it had destroyed some email for custodians but it had not yet determined which ones. In particular, NCC did not disclose whether it had maintained or destroyed email for any specific custodians under discussion, including those proposed by either Plaintiffs or NCC. Plaintiffs requested that NCC confirm these facts as soon as possible. By July 17, Plaintiffs and NCC agreed that NCC would produce ESI from the custodial email for each of the nine custodians NCC and Plaintiffs had mutually agreed upon. At the time, NCC still had not notified Plaintiffs that any of the agreed-upon nine custodians were former employees whose email NCC destroyed following their departure.

      On August 3, Plaintiffs and NCC met and conferred again. NCC again mentioned that there were some custodians for which it had destroyed ESI but NCC did not confirm the identities of the custodians.

      On August 21, over a month after NCC and Plaintiffs had agreed to nine custodians, and nearly two months after NCC first stated it was investigating whether it had destroyed email for any custodians, NCC disclosed that it had no e-mails or other ESI for five of the agreed-upon custodians. NCC's lack of transparency and delay on this point caused Plaintiffs to select *five* custodians for whom it turned out NCC had no ESI. On Monday, August 24, Plaintiffs asked for addi-

---

[1] Plaintiffs initially chose Yoshimori Hiraoka, Takuro Isawa, Yasutoshi Ohno, Tsuneo Ohta, and Shinchi Shimazaki because other information indicated they attended cartel meetings.

tional information regarding the former-employee custodians (including when they left the company), and stated that Plaintiffs wanted to continue the custodian discussion, including potentially identifying substitute custodians. Rather than guess, or pursue a game of "Battleship"—the exact process that had already led to the parties agreeing to five custodians for whom NCC had no ESI—Plaintiffs asked NCC to identify the custodians for which NCC did maintain ESI.

On September 15, NCC informed Plaintiffs it would not provide a list of employees for whom it maintained ESI and, further, refused to agree to substitute custodians. On September 18, Plaintiffs identified seven substitute NCC custodians. On September 29, NCC confirmed that four of Plaintiffs' substitute custodians (Kakizaki, Konparu, Sato, and Sasaki) were current employees for whom NCC had maintained ESI.

Plaintiffs and NCC conducted further meet and confers on October 9 and on October 16. In response to NCC's concern that searching additional custodians would be burdensome, Plaintiffs on October 9 reduced their requests to three additional custodians (Kakizaki, Konparu, Sato). NCC rejected this proposal and offered the counter-proposal that (1) it would produce documents from these three custodians from a production NCC had made to Japanese authorities, and (2) would run searches for these three witnesses' names from the non-responsive documents it had collected from other agreed-upon NCC custodians.[2] Plaintiffs declined this counter-proposal.

**NCC Should Produce ESI from the Four Substitute Custodians Because the Law Requires Transparency and Production of Responsive ESI.**

The cornerstone of ESI discovery is transparency and cooperation. *In re: Porsche Cars North America Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, MDL No. 2233, 2012 U.S. Dist. Lexis 136954, *22 (S.D. Ohio Sept. 25, 2012) ("[t]ransparency in the discovery process is necessary to ensure that all relevant information is made available to the litigants"). These principles have been adopted by this Court. *See* Northern District Guidelines ¶ 1.02. It is inconsistent with these principles for the responding party to conduct a one-sided, closeted ESI search. *See Charvat v. Valente*, 82 F. Supp. 3d 713, 723, 2015 U.S. Dist. LEXIS 25694, *20 (N.D. Ill. 2015) ("the Court is troubled by the unilateral selection of custodians by Carnival without Plaintiff's input"). It is similarly antithetical to the required transparency for NCC to agree to Plaintiffs' proposal for custodians, and then subsequently disclose there are no responsive emails because the responsive emails were destroyed, thereby defeating the notion that the person is an appropriate custodian in the first place.

**There Is No Dispute the Substitute Custodians Are Likely to Have Responsive Documents.**

- <u>Noriaki Kakizaki</u>. Kakizaki is a director and senior manager at NCC, and is responsible for NCC efforts to sell capacitors. As shown in documents presented to the Court, Kakazaki frequently traveled to the United States to meet with purchasers of capacitors (Dkt. 635-4 at 13),

---

[2] As to the first part of NCC's proposal, Plaintiffs have separately requested all documents NCC has produced to foreign law enforcement authorities which the parties have agreed to defer, pending objections by the foreign regulators. The second part of NCC's proposal is illusory, because the emails of other agreed-upon custodians had already been searched using the search terms and presumably already produced if responsive.

and is likely to have responsive documents. Plaintiffs believe that NCC personnel who were at meetings (including the custodians Plaintiffs requested) were managed by Kakizaki and Sato (see below).
- <u>Toru Konparu</u>. Konparu is a director and senior manager to whom the leaders of NCC's factories report. Production managers contributed to pricing decisions and therefore Konparu is likely to have responsive information.
- <u>Tatsuyuki Sasaki.</u> Sasaki is the head of NCC's audit department. Sasaki is likely to have relevant information because corporate funds were used to pay for participation in and travel to dozens of cartel meetings, and such documents in the possession of NCC's internal audit department are likely relevant.
- <u>Nanji Sato</u>: Sato is in charge of NCC's Automotive Electronics Strategy Department. As shown in documents presented to the Court, the American automobile manufacturers were targets of NCC's price-fixing activities (see Dkt. 568-3 at 2-3), and thus Sato is likely to have responsive documents concerning pricing for these purchasers of capacitors.

**NCC Has Shown No "Undue Cost"**

Under Federal Rule 26(b)(2)(B), ESI should be produced unless it is shown that production would be an "undue cost," and there is no "good cause" for production. *Bagley v. Yale Univ.*, 307 F.R.D. 59, 66 (D. Conn. 2015) (A cost is not "undue" unless it is "excessive or unwarranted").

The costs of review and production raised by NCC are not "undue" because NCC originally agreed to review and produce ESI from *nine* custodians (*one less* than the total sought here); it only turned out later that a majority of those custodians did not actually have ESI data. NCC is seeking to obtain a windfall it did not bargain for if it only has to search and produce email for *four* custodians.

Even assuming that NCC were incurring costs beyond that to which it had previously agreed, those costs are warranted in this case due to the scope of Plaintiffs' allegations (alleging a conspiracy lasting over ten years), and the fact that NCC was a cartel ring leader that led and attended dozens of cartel meetings. SAC ¶ 212. Even with the four substitute custodians, eight total custodians for NCC is still a modest total for an antitrust action. *See Kleen Prods. LLC v. Packaging Corp. of Am.*, 2012 U.S. Dist. LEXIS 139632, *48 (N.D. Ill. Sept. 28, 2012) (requiring additional custodians for defendants that had already agreed to 75 and 28 custodians). Indeed, Plaintiffs have reached similar agreements on total custodians with *every single other* Defendant in this case, including with Defendants who, like NCC, did not have custodial ESI for custodians identified by Plaintiffs because that ESI had been destroyed but agreed to substitute custodians.

Finally, the Court's schedule will be minimally impacted by this request. The Court set an October 15 deadline for "substantial compliance," and Plaintiffs anticipate other Defendants will make additional productions. Later production for NCC is appropriate given it did not engage in merits discovery until the middle of June, after its jurisdictional motion was denied.

Respectfully Submitted,

| | |
|---|---|
| **Joseph Saveri Law Firm, Inc.**<br>555 Montgomery Street, Suite 1210<br>San Francisco, CA 94111<br>(415) 500-6800 | **Cotchett, Pitre & McCarthy, LLP**<br>840 Malcolm Road<br>Burlingame, California 94010<br>(650) 697-6000 |
| /s/ Joseph R. Saveri | /s/ Steven N. Williams |
| *Interim Lead Class Counsel for Direct Purchaser Plaintiffs* | *Interim Lead Class Counsel for Indirect Purchaser Plaintiffs* |

cc: All Counsel