CADWALADER

October 29, 2015

**VIA ECF**

Hon. Judge James Donato
United States District Court
450 Golden Gate Avenue
Courtroom 11, 19th Floor
San Francisco, California 94102

Re: In re Capacitors Antitrust Litigation, No. 3:14-cv-3264-JD
United States District Court, Northern District of California

Dear Judge Donato:

    Although not the subject of earlier orders by the Court, reference is made herein to the following docket entries: Plaintiffs' letter filed with this Court on October 20, 2015 (Dkt. 932), the Court's order to NCC to respond to that letter (Dkt. 935), the Case Management Statement filed on September 23, 2015 (Dkt. 891), and Plaintiffs' Opposition to NCC's Motion to Dismiss (Dkt. 635-3). NCC strongly disagrees with Plaintiffs' characterization of the parties' negotiations over custodians and the purported basis for Plaintiffs' request – made at the end of document discovery – to reopen custodial negotiations and require the costly review of documents from entirely new custodians. Conveniently omitted from Plaintiffs' letter is the fact that they sought searches of dozens of custodians of NCC and its U.S. subsidiary (UCC) with search terms that in many cases resulted in hit rates that would return over 90% of all documents in a custodian's files. Nonetheless, the parties negotiated throughout early summer (as indicated in Plaintiffs' letter) to identify a set of custodians to search their documents, review those documents (in Japanese, English and several other languages) with the help of search terms and produce any responsive documents that were found. This required hiring dozens of attorneys who worked throughout the summer. While NCC and UCC were busy accomplishing the massive task in front of them by the October 15 deadline, Plaintiffs said nothing of the four new custodians.[1] As confirmed by Plaintiffs' letter, that demand came in late September, by which time the companies had already begun disassembling the teams of reviewing attorneys.

    Notwithstanding Plaintiffs' last-minute, burdensome demand, NCC attempted to find a compromise position that would not require rehiring (or hiring and training anew) teams of lawyers to conduct a new review of the newly-requested custodians.[2] After Plaintiffs rejected that effort, NCC attempted again to resolve the dispute by agreeing to the alternative Plaintiffs set forth in the Case Management Statement in advance of the Case Management Conference held on September 30. In that Statement, Plaintiffs proposed "[a]s an alternative" to adding the four new

---

[1] As discussed below, it is important in this regard to note that Plaintiffs had detailed organizational charts to identify custodians *and* had jurisdictional discovery of NCC. *See infra* note 5.

[2] NCC and UCC agreed to search the names of the four custodians over the collected ESI. Any resulting hits on documents not produced would be provided to Plaintiffs.

custodians, NCC and UCC could "run the [five] former employees'... names as search terms against its other collected ESI in an attempt to capture emails that may reside in other custodians' ESI." (Dkt. 891 at 27). We understand that Plaintiffs have offered that technique to other defendants as a way of capturing ESI from former employees. NCC has agreed to this compromise, but Plaintiffs are now rejecting it.

Finally, Plaintiffs' claim that the Court's schedule will be "minimally impacted" by their late request is wrong. Plaintiffs decided not to file their letter until after the deadline for substantial compliance of document production and months after the parties engaged in earnest on the issue of custodians.[3]

NCC respectfully requests that the Court **DENY** Plaintiffs' request to begin anew custodial discovery at this late date. In the event the Court is inclined to permit any of this additional discovery, NCC requests the Court order the "alternative" that the Plaintiffs previously outlined for the Court on September 23 that is quoted above and that Plaintiffs have offered to other defendants.

**Plaintiffs Had Ample Opportunity to Request the Four Custodians Prior to September**

In order to appreciate how the parties arrived at the present dispute, it is worth recounting just a few of the numerous factual omissions from Plaintiffs' letter. First, Plaintiffs fail to note that they requested dozens of custodians at the outset of discovery – even before the Court lifted the stay of discovery on NCC. As just one example, on May 18, Plaintiffs identified nine custodians for UCC alone. In addition to these nine custodians, Plaintiffs requested all of the predecessors and successors to the positions held by two of these custodians, bringing the total custodian count for UCC to over 18 custodians (even before any negotiations over NCC custodians, which began in earnest in June and July). Also, Plaintiffs paid no mind whatsoever to the search terms they demanded NCC and UCC apply to the custodial files. As one example, Plaintiffs requested "Chemi-Con" as search a term. This term is found in the Internet and email domain names of both NCC and UCC and would have returned vast numbers of irrelevant documents that would need to be reviewed.

Plaintiffs' letter describes the back-and-forth in June and July that the parties had regarding custodians. NCC and UCC do not agree with the characterization of those meetings, but the parties appear to agree that the review would proceed for the list of individuals identified on July 17. At the time, Plaintiffs insisted upon former employees even though they had been informed on several occasions that those employees were unlikely to have documents due to the retention policies of NCC and UCC.[4] Similarly, the letter memorializing the agreement on custodians

---

[3] On January 14, Plaintiffs' counsel acknowledged hearing the Court "loud and clear" there would not be an extension of the discovery dates. Jan. 14th Status Conf. Tr. at 15.

[4] Any suggestion by Plaintiffs that the companies "destroyed" emails is plainly a mischaracterization. NCC and UCC have ordinary course of business document retention policies of not retaining emails for departing

clearly identifies former employees. Plaintiffs also had detailed organizational charts of NCC since July 7, as well as the benefit of jurisdictional discovery of NCC (which they did not have for any of the other defendants in negotiating custodians). Indeed, at least two of the newly-proposed custodians were known to Plaintiffs as early as March, when NCC produced its jurisdictional discovery to Plaintiffs.[5]

Notwithstanding the foregoing, on September 18, Plaintiffs identified the four new custodians at issue in their letter and demanded NCC start a search of these individuals anew.[6] After NCC and UCC had already reviewed a voluminous collection of documents, Plaintiffs would have NCC restart the process of rehiring attorneys and implementing the related framework necessary to conduct a substantial document review. Plaintiffs cannot now turn a blind eye to the massive search effort they have already imposed upon NCC and UCC and merely label that work as "no 'undue cost.'" Plaintiffs have had "ample opportunity" to pursue discovery and have long been on notice of the four custodians they named for the first time on September 18. *See In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*, MDL 2121, 2011 U.S. Dist. Lexis 145804, at *22-23 (S.D. Cal. Dec. 19, 2011) ("court must limit the scope of discovery if a requesting party has had 'ample opportunity to obtain the information by discovery in the action'").

For the foregoing reasons, NCC respectfully requests that the Court DENY Plaintiffs' request for the four new custodians identified in their letter-brief. In the alternative, NCC requests the Court order the "alternative" that the Plaintiffs previously outlined for the Court on September 23.

Sincerely,

Joseph J. Bial
Cadwalader, Wickersham & Taft
700 Sixth Street NW
Washington, D.C. 20001

cc: All Counsel

---

employees. There are litigation holds in place for materials existing at the time of the filing of these lawsuits.

[5] Not only did NCC's jurisdictional discovery contain documents referencing two of these custodians, but Plaintiffs also included documents identifying these newly-requested custodians in their own opposition briefing, including referencing the custodians by name several times (Dkt. 635-3).

[6] Plaintiffs later offered a revised proposal to search three, rather than four, custodians. This does not materially alter the cost NCC will incur in reviewing new custodians, as reviewing attorneys would need to be rehired or hired anew. Two of these three custodians were known to Plaintiffs in March when they received jurisdictional discovery.