**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  Darrell Prescott (admitted *pro hac vice*)
    darrell.prescott@bakermckenzie.com
2  Catherine Koh Stillman (CA State Bar No. 252440)
    catherine.stillman@bakermckenzie.com
3  **BAKER & McKENZIE LLP**
   452 Fifth Avenue
4  New York, NY 10018
   Telephone: 1 212 626 4476
5  Facsimile: 1 212 310 1637

6  Colin H. Murray (CA State Bar No. 159142)
    colin.murray@bakermckenzie.com
7  **BAKER & McKENZIE LLP**
   Two Embarcadero Center, 11th Floor
8  San Francisco, CA 94111-3802
   Telephone: 1 415 576 3022
9  Facsimile: 1 415 576 3099

10

11 Attorneys for Defendants
   OKAYA ELECTRIC INDUSTRIES CO., LTD. and
   OKAYA ELECTRIC AMERICA, INC.

12
   [Additional Counsel Listed on Signature Page]
13

14              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
15                 **SAN FRANCISCO DIVISION**

16 IN RE CAPACITORS ANTITRUST          Case No. 3:14-cv-03264-JD
   LITIGATION
17                                      **DEFENDANTS' REPLY TO**
                                        **PLAINTIFFS' OPPOSITION TO**
18                                      **DEFENDANTS' MOTION FOR**
                                        **PARTIAL SUMMARY JUDGMENT**
19                                      **DISMISSING PLAINTIFFS' SHERMAN**
                                        **ACT CLAIMS FOR FOREIGN**
20                                      **TRANSACTIONS OR, IN THE**
                                        **ALTERNATIVE, TO SIMPLIFY THE**
21                                      **ISSUES UNDER FED. R. CIV. P. 16**

22                                      **[Fed. R. Civ. P. 16, 56; L.R. 7-2, 7-4]**

23                                      Prior Related Court Order:
                                        Stipulation and Order Regarding FTAIA
24                                      Briefing Schedule and Hearing Date,
                                        October 21, 2015 [Docket No. 934]
25

26                                      **Date:        January 13, 2016**
                                        **Time:        10:00 a.m.**
27                                      **Courtroom:   11, 19th Floor**
                                        **Before:      The Hon. James Donato**

28

Baker & McKenzie LLP    1320590-v14\NYCDMS
Two Embarcadero Center
     11th Floor
San Francisco, CA 94111                                              Case No. 3:14-cv-03264-JD
 +1 415 576 3000       DEFS' REPLY TO PLS' OPP TO DEFS' JT MOT FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................ 1

II.   CAPACITOR SALES TO FOREIGN PURCHASERS CANNOT SATISFY THE
      "GIVES RISE TO" PRONG OF THE FTAIA ...................................................... 4

      A.   DPPs Rely on the Wrong Standard of Law ................................................ 4

      B.   The Evidence DPPs Cite Fails to Establish a Genuine and Material Issue of Fact ..... 9

III.   ANY DPP AND FLEXTRONICS USA CLAIMS BASED ON THE FOREIGN
       SALE OF CAPACITORS INCORPORATED INTO FINISHED PRODUCTS
       IMPORTED INTO THE UNITED STATES ALSO DO NOT SATISFY THE
       "DIRECT EFFECTS" PRONG OF THE FTAIA ................................................ 12

IV.   TO THE EXTENT DPPS SEEK TO RECOVER FOR PURCHASES MADE BY
      FOREIGN SUBSIDIARIES AND TRANSFERRED TO U.S. AFFILIATES, SUCH
      PURCHASES ARE ALSO BARRED BY *ILLINOIS BRICK* ............................ 12

V.   DEFENDANTS' MOTION IS TIMELY AND PURSUANT TO THE COURT-
     ORDERED SCHEDULE ................................................................................... 13

VI.   CONCLUSION ............................................................................................... 15

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aniel v. GMAC Mortg., LLC,*
  Case No: C 12-04201, 2012 U.S. Dist. LEXIS 138555 (N.D. Cal. Sept. 26, 2012)......................11

*Banga v. First USA, NA,*
  29 F. Supp. 3d 1270 .................................................................................................................11

*Best Buy Co., Inc. v. HannStar Display Corp.,*
  Nos. 13-17408, 13-17618 (9th Cir.)...........................................................................................7

*Del. Valley Surgical Supply Inc. v. Johnson & Johnson,*
  523 F.3d 1116 (9th Cir. 2008) ..................................................................................................13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
  546 F.3d 981 (9th Cir. 2008) ............................................................................................ *passim*

*Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.,*
  417 F.3d 1267 (D.C. Cir. 2005).................................................................................4, 5, 6, 14

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.,*
  542 U.S. 155 (2004)........................................................................................................1, 5, 14

*Glen Holly Entm't, Inc. v. Tektronix Inc.,*
  352 F.3d 367 (9th Cir. 2003) .....................................................................................................8

*Illinois Brick Co. v. Illinois,*
  431 U.S. 720 (1977)..................................................................................................................13

*In re Lithium Ion Batteries Antitrust Litig.,*
  Case No.: 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 141358 (N.D. Cal. Oct. 2,
  2014) ........................................................................................................................................14

*Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., Ltd.,*
  753 F.3d 395 (2d. Cir. 2014)......................................................................................................5

*Motorola Mobility LLC v. AU Optronics Corp.,*
  775 F.3d 816 (7th Cir. 2014) ........................................................................................... *passim*

*Sandoval v. Ali,*
  34 F. Supp. 3d 1031, 1043-44 (N.D. Cal. 2014)......................................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  Case No. C 09-5609 SI, 2012 U.S. Dist. LEXIS 123784 (N.D. Cal. Aug. 29,
  2012) .......................................................................................................................................5, 7

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

*United States v. Hui Hsiung*,
    778 F.3d 738 (9th Cir. 2015), *cert. denied*, 135 S. Ct. 2837 (June 15, 2015)...................6, 7, 9, 12

*United States v. LSL Biotechnologies*,
    379 F.3d 672 (9th Cir. 2004) .....................................................................................................12

*USS-POSCO Indus. v. Conra Costa County Bldg. & Constr. Trades Council*,
    31 F.3d 800 (9th Cir. 1994) ..........................................................................................................9

*Veliz v. Cintas Corp.*,
    No. C 03-1180 RS, 2009 U.S. Dist. LEXIS 39061 (N.D. Cal. April 23, 2009) ...........................11

*In re Vitamin C Antitrust Litig.*,
    904 F. Supp. 2d 310 (E.D.N.Y. 2012) ...........................................................................................5

*Wright v. Schock*,
    742 F.2d 541 (9th Cir. 1984) .......................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 16 ..............................................................................................................14, 15

Fed. R. Civ. P. 23(d)(1)(D) .................................................................................................14

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I.    INTRODUCTION

Direct Purchaser Plaintiffs ("DPPs") and Flextronics International, USA ("Flextronics USA") admit that the FTAIA "exempts from U.S. antitrust law foreign conduct that has no meaningful relationship to U.S. commerce.  Purely foreign commerce is subject to purely foreign regulation." DPPs' and Flextronics' USA's' Opp'n to Defs.' Mot. ("DPP Br."), Dkt. No. 967-5, at 1; *see also* DPP Br. at 24.  This is precisely the type of conduct that Defendants seek to exclude from this case. As the Ninth Circuit has stated:

> U.S. antitrust laws concern the protection of <u>American</u> consumers and
> <u>American</u> exporters, not foreign consumers or producers . . . .

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 986 (9th Cir. 2008) ("*DRAM*") (emphasis in original).

The Court determined over a year ago that FTAIA issues would be briefed and decided prior to class certification to prevent the parties from having to litigate over a class that would contain numerous class members who have no actionable claim because of the FTAIA.  Oct. 29, 2014 Hr'g Tr. 17:2:16.  The IPPs agree (*see* IPP Opp'n at 13) that FTAIA issues are pure issues of law that are appropriate for resolution at this stage of the case, and the DPPs have not provided any reason for the Court to reconsider its decision.  The Supreme Court and Ninth Circuit have ruled on FTAIA issues either on the pleadings or without extensive discovery.  *See, e.g.*, *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 159-60, 175 (2004) ("*Empagran I*") (vacating a decision from the D.C. Circuit that denied defendants' motion to dismiss the amended class action complaint as to foreign purchasers for failure to comply with the FTAIA pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)); *DRAM*, 546 F.3d at 985, n.3 (affirming the district court's decision to grant defendants' motion to dismiss under Rule 12(b)(1) for failing to meet the requirements of the FTAIA, and noting that the result would be the same if defendants sought to dismiss based on Rule 12(b)(6)).

What is before the Court is a legal determination.  Defendants have asked the Court to dismiss DPPs' and Flextronic USA's claims to the extent they are based on either (i) exports from the United States or (ii) foreign-to-foreign transactions, *i.e.*, sales which are sold by foreign sellers and billed to foreign purchasers, and to limit the commerce at issue in this case to Defendants' sales

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

of capacitors directly to purchasers located in the United States (*i.e.,* sales billed to U.S. addresses). There are no genuine issues of material fact in dispute that are necessary to resolve this pure legal issue.

There are three categories of capacitor sales:  (1) The Defendants' sales of capacitors invoiced to a United States purchaser at a U.S. address.  Such sales represent approximately 10% of the Defendants' sales; (2)  Defendants' sales of capacitors invoiced to a foreign purchaser but shipped to a location in the United States.  Such sales represent a small percentage of the Defendants' sales; and (3) Defendants' sales of capacitors invoiced and shipped to a foreign purchaser by a foreign seller.  Such sales represent the lion's share, approximately 90% of Defendants sales of capacitors.[1]  Plaintiffs do not contest the exclusion of export sales from this case.

Defendants request that the Court grant its Motion[2] with respect to the second and third categories and to export sales because these sales are to foreign purchasers and are excluded by the FTAIA.  Particularly with respect to the third category, sales of capacitors that are invoiced and shipped to a foreign buyer from a foreign seller, which account for approximately 90% of Defendants sales, such transactions have no connection to the United States and are precisely the types of sales that the FTAIA was intended to exclude from the reach of the Sherman Act.

With respect to categories (2) and (3), the two categories of sales at issue on Defendants' Motion, the relevant facts are undisputed.  It is undisputed that the sales in these two categories were invoiced to a foreign entity.  For the small amount of sales in category (2), it is undisputed that the invoiced purchaser was a foreign entity, but the capacitors were shipped to a United States entity. For category (3), it is undisputed that the capacitors in issue were invoiced and shipped to a foreign entity; no portion of the transaction touched the United States.  While DPPs have tried to manufacture wholly irrelevant factual controversies, they do not dispute the above facts.  Nor do

---

[1] Though it is not disputed, Defendants' Motion is not asking the Court to determine the percentage of sales in each category.  This information is provided to give the Court a sense of the magnitude of sales in each category.  Defendants seek only a ruling on which of the categories are beyond the reach of the Sherman Act under the FTAIA.

[2] Defs.' Mot. for Partial Summ. J. Dismissing Plfs.' Sherman Act Claims for Foreign Transactions or, in the Alternative, to Simplify the Issues Under Fed. R. Civ. P. 16 (hereinafter "Motion") (Dkt. No. 915).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1    they dispute that they are seeking to assert claims based on these foreign transactions.  There are no

2    other facts apart from these undisputed facts required to decide this Motion.

3           The purported "fact issues" that DPPs and Flextronics USA raise are either not genuine (for

4    example, that a witness must have personal knowledge of millions of transactions rather than rely on

5    company business records), or are not relevant and material to the legal issues raised in this Motion

6    (for example, evidence relating to claimed targeting or "global pricing").[3]  Defendants submitted

7    declarations solely to establish where their factories and sales operations are, and that the vast

8    majority of their sales were sold and shipped to foreign purchasers.  The DPPs and Flextronics USA

9    do not dispute this.  Because such transactions cannot, as a matter of law, satisfy the "gives rise to"

10   requirement of the FTAIA,  summary judgment should be granted to remove these transactions from

11   the case.  The same is true of certain Defendants' exports of capacitors from the United States,

12   which the DPPs do not even try to argue can satisfy FTAIA requirements.  *See* Mot. 24.

13          The extremes to which DPPs are trying to take this case can be found in footnote 36 on page

14   22 of their brief.  DPPs set forth various articulations of foreign sales they assert support claims

15   under the U.S. antitrust laws, including:  claims "on behalf of 'foreign subsidiaries and foreign

16   affiliates of United States companies that purchased capacitors directly from a Defendant,' without

17   limiting the claims to capacitors that are later imported"; "foreign sales by multinational companies

18   who purchase abroad and in the U.S."; and "[c]ertain capacitors imported into the U.S. by

19   Defendants was [sic] sold to such purchasers outside the United States."  DPP Br. 22, n.36.  None of

20   these claims can meet the requirements of the FTAIA.[4]  In fact, including these sales would virtually

21

22   [3] Flextronics USA makes the illogical and unsupported argument that contracts which provide for
     U.S. governing law make all foreign purchases under those contracts subject to the Sherman Act.
23   DPP Br. at 25.  Not only is there no case law support for this argument, it makes no sense.
     Application of U.S. law would also cause the FTAIA to apply to such contracts.  For example, a
24   number of the contracts Flextronics USA submits with its brief are with a Flextronics entity located
     in Bermuda, not the United States.  Therefore, the purchaser under these contracts is foreign.  *See*
25   Exhibits D and E to the Trutna Declaration.

26   [4] The DPPs and Flextronics USA are purposefully vague in their brief regarding which transactions
     they believe come within the reach of the Sherman Act.  However, their amended interrogatory
27   responses, served the same day as their brief, clarify the extreme nature of their positions.  The DPPs
     assert that included within their claims are sales by the U.S. subsidiaries of the Defendants to
28   purchasers located outside the United States (*i.e.*, they seek recovery on export sales) and all sales of

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:14-cv-03264-JD
DEFS' REPLY TO PLS' OPP TO DEFS' JT MOT FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

render the FTAIA a nullity.  Accordingly, this Court should issue an order dismissing DPPs' and Flextronics USA's claims with respect to the second and third categories of sales (sales invoiced to a foreign purchaser but shipped to the United States and sales invoiced and shipped to a foreign purchaser).

## II.   CAPACITOR SALES TO FOREIGN PURCHASERS CANNOT SATISFY THE "GIVES RISE TO" PRONG OF THE FTAIA

### A.   DPPs Rely on the Wrong Standard of Law

Under the " gives rise to" requirement of the FTAIA, a plaintiff asserting a U.S. antitrust claim based on a foreign transaction must demonstrate that the U.S. effect of an alleged price fixing conspiracy is the proximate cause of the asserted foreign injury in the foreign transaction.  *DRAM*, 546 F.3d at 988; *see also Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.,* 417 F.3d 1267, 1271 (D.C. Cir. 2005) *("Empagran II")* ("The statutory language—'gives rise to'—indicates a direct causal relationship, that is, proximate causation, and is not satisfied by [a] mere but-for 'nexus' . . .").  As *DRAM* explains, when an alleged conspiracy fixes prices both in the United States and abroad, the inflated prices in the United States may contribute to an ability to maintain higher prices abroad, but this is not proximate causation sufficient to give rise to a claim based on the Defendants' foreign sales:

> The defendants' conspiracy may have fixed prices in the United States and abroad, and maintaining higher U.S. prices might have been necessary to sustain the higher prices globally, but [plaintiff] has not shown that the higher U.S. prices proximately caused its foreign injury of having to pay higher prices abroad.

*DRAM*, 546 F.3d at 988. Under this standard, foreign sales of capacitors that are billed to customers overseas cannot satisfy the "gives rise to" test because the anticompetitive effect occurs as a result of the alleged foreign price fixing, not as a proximate result of any alleged anticompetitive effect in the United States.  *See* Mot. at 17-23.

---

capacitors to foreign purchasers who happen to have a U.S. affiliate that also purchased a capacitor. DPPs' Am. Objs. and Resps. to Defs.' Second Set of Interrogs., Hausler Decl. Ex. 20, at 8-10. Flextronics USA goes even farther, asserting that ███████████████████████████████████ ██████████████████████████████████████████████████ meets the domestic effects exception to the FTAIA.  Individual (Non-Class) Pls. Flextronics's First Suppl. Prelim. Objs. and Resps. to Defs.' Second Set of Interrogs. Numbered 9 Through 22, Hausler Decl. Ex. 21, at 9.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1    Contrary to *DRAM*, *Empragran II* and *Motorola Mobility LLC v. AU Optronics Corp.*, 775

2    F.3d 816 (7th Cir. 2014) ("*Motorola V*"), DPPs argue only a "but for" causation standard to assert

3    their claims based on foreign transactions.[5]   Specifically, DPPs assert that "if the domestic effects of

4    the anticompetitive conduct 'help to bring about [the] foreign injury,' *id.*, the domestic effects give

5    rise to the foreign injury."[6]  DPP Br. 11 (citing *Empragran I*, 542 U.S. at 175).  This is directly

6    contrary to *DRAM*.  Moreover, *Empragran I* does not, as DPPs wrongly contend, stand for this

7    proposition.  *Empragran I* declined to address whether a plaintiff may seek relief under the FTAIA

8    where the anticompetitive conduct's domestic effects "were linked" to the alleged foreign harm.  542

9    U.S. at 175.  *Empragran II*, however, did address the argument advanced by DPPs here—and rejected

10   it.  *See Empragran II*, 417 F.3d at 1271 ("The statutory language—'gives rise to'—indicates a direct

11   causal relationship, that is, proximate causation, and is not satisfied by the mere but-for 'nexus' the

12   appellants advanced in their brief").

13   In *Empragran II*, the D.C. Circuit considered whether global conspiracy and arbitrage

14   allegations, as DPPs proffer here, could satisfy the "gives rise to" prong of the "domestic effects"

15

16   [5] The cases Plaintiffs cite in support of the argument that goods shipped to the United States escape
     the FTAIA's requirements are inapposite.  *In re Vitamin C Antitrust Litig.*, 904 F. Supp. 2d 310
     (E.D.N.Y. 2012), involved bulk shipments of product paid for abroad but direct shipped to the U.S.
17   In the present case, Plaintiffs present no evidence that that occurred.  Moreover, *Vitamin C* is
     inconsistent with *DRAM*, 546 F.3d at 989, the governing law in this Circuit which held that foreign
18   purchases are not actionable in this Court even in the face of global conspiracy allegations, as no
     evidence was presented in DRAM or in the present case that the alleged injury outside the U.S. was
19   proximately caused by a U.S. effect.  Here Plaintiffs present nothing to meet their burden on the
     proximate cause and gives rise to elements.  Similarly, *In re TFT-LCD (Flat Panel) Antitrust Litig.*,
20   No. M 07-1827 SI; MDL No. 1827; Case No. C 09-5609 SI, 2012 U.S. Dist. LEXIS 123784, at *31
     (N.D. Cal. Aug. 29, 2012), did not involve goods that were only shipped to the U.S. but purchased
21   abroad by foreign entities.  Rather, a number of the goods were invoiced directly to Nokia's U.S.
22   subsidiary, Nokia, Inc.

23   [6] DPPs cite *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., Ltd.*, 753 F.3d 395 (2d. Cir. 2014), in
     support of a lax interpretation of the casual connection required to satisfy the FTAIA's "gives rise
24   to" prong.  DPP Br. 12.  Contrary to DPPs inference, *Lotes* was a decision from the Second Circuit,
     not the Ninth Circuit.  Regardless, the decision in *Lotes* actually supports Defendants' argument that
25   where the domestic effect of a foreign manufacturer's conduct is not the proximate cause of the
     plaintiff's alleged injuries, the plaintiff's case must be dismissed.  In *Lotes*, the Second Circuit held
26   that the higher prices paid in the United States by consumers of electronic devices that incorporated
27   the defendants' USB connectors—allegedly sold to foreign electronic device manufacturers at a
     supracompetitive price— were not the proximate cause of the plaintiff's injury from foreign sales
28   and failed to meet the FTAIA's "gives rise to" requirement.  *Id.* at 414.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

exception and concluded that they could not.  *Empagran II*, 417 F.3d at 1271.  In *Empagran II*, the plaintiffs argued that because the defendants' conspiracy resulted in artificially inflated prices in the United States, defendants were able to maintain higher prices abroad.  Absent higher U.S. prices, the plaintiffs in *Empagran II* asserted that overseas purchasers would have been able to purchase bulk vitamins at lower prices either directly from U.S. sellers or from arbitrageurs selling vitamins imported from the United States.  *Empagran II*, 417 F.3d at 1270.  This is the same arbitrage and global conspiracy theory that the DPPs assert here, arguing that "had Defendants not raised prices in the U.S. but raised them only abroad, their secret illegal conduct could have been revealed."  DPP Br. 15.[7]  The D.C. Circuit characterized this scenario as at best a "but for" cause of plaintiffs' foreign injuries.  The court rejected this "but for" standard, concluding that to do so would incorrectly construe the FTAIA and risk interference with other nations' prerogative to determine how to regulate anticompetitive conduct in foreign markets.  *Id.* at 1270-71.[8]

DPPs here state the "gives rise to" standard backward.  They claim that sales to foreign entities, whether shipped to the United States or shipped to a foreign purchaser, satisfy the "gives rise to" prong of the FTAIA because the "domestic effects of these sales—goods arriving in the U.S.—proximately caused the legal injury—paying inflated prices for capacitors shipped to the U.S." or the "foreign harm was in the 'scope of the risk.'"  DPP Br. 12-15.[9]  What DPPs must

---

[7] DPPs offer Appendix D, containing materials that speak to several Defendants' attempts to prevent arbitrage opportunities for entities located in different countries that were members of the same corporate group. *See, e.g.,* DPP App. D-1.  This type of evidence was rejected in *DRAM*, 546 F.3d at 988, and *Empagran II*, 417 F.3d at 1270-71, and has no relevance to the "gives rise to" requirement.

[8] Foreign purchasers are not without a remedy for any alleged foreign price fixing.  Their injuries must be addressed under their own laws.  *See DRAM*, 546 F.3d at 989 ("[Defendant] is a foreign consumer that made its purchases entirely outside of the United States.  It has recourse under its own country's antitrust laws."); *see also Motorola V*, 775 F.3d at 821 ("If Motorola's foreign subsidiaries have been injured by violations of the antitrust laws of the countries in which they are domiciled, they have remedies; if the remedies are inadequate, or if the countries don't have or don't enforce antitrust laws, these are consequences that Motorola committed to accept by deciding to create subsidiaries that would be governed by the laws of those countries.").

[9] DPPs' Appendix E—which purports to compile evidence showing that Defendants "targeted U.S. commerce as part of their price-fixing scheme"—is legally irrelevant to this Motion.  This "target" theory of Sherman Act coverage has been squarely rejected.  *See Motorola V*, 775 F.3d at 822-23; *United States v. Hui Hsiung*, 778 F.3d 738, 756 (9th Cir. 2015) ("[t]argeting is not a legal element for import trade under the Sherman Act…"), *cert. denied*, 135 S. Ct. 2837 (June 15, 2015).  The

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1   demonstrate is the opposite:  that a direct effect of the alleged conspiracy, higher prices in the U.S.,

2   "gave rise to", *i.e.,* proximately caused, the foreign injury resulting from the foreign sales made by

3   Defendants.  The "gives rise to" standard has both temporal and causal elements when applied to

4   Defendants' foreign sales of capacitors.  First, DPPs must demonstrate that anticompetitive effects

5   occurred in the U.S. as a result of Defendants' alleged antitrust violations.  Second, they must show

6   that thereafter, the U.S. anticompetitive effects proximately caused a supra-competitive price to be

7   paid by a foreign purchaser.  *See, e.g., DRAM*, 546 F.3d at 988-89.

8   Here, however, DPPs are alleging a foreign price-fixing conspiracy which directly caused

9   supra-competitive prices in foreign capacitor transactions—in which any effect in the United States

10  from the subsequent importation of these capacitors would be the result of  the foreign

11  anticompetitive effect, not vice versa.  Similarly, for capacitors invoiced and shipped to a foreign

12  purchaser, any inflated price paid by the purchaser was caused by the foreign effects of the

13  conspiracy.  The alleged causation thus runs the wrong way and cannot satisfy the FTAIA's "gives

14  rise to" requirement as a matter of law.  Simply put, DPPs and Flextronics USA have not shown, or

15  even alleged, any mechanism by which the alleged conspiracy to fix prices in the U.S. caused a

16  supra-competitive price to be paid by a foreign direct purchaser in the foreign commerce sales they

17  seek to include in their claims.[10]  Indeed, applying the Sherman Act to capacitor transactions

18  invoiced and shipped to a foreign purchaser, as the DPPs and Flextronics USA request, would

19

20  evidence in Appendix E shows, at most, irrelevant "but for" causation.  *See* DPP App. E-17 – E-19
    (citing testimony showing that certain Defendants' U.S. subsidiaries' determination of pricing is
21  influenced by the price at which the subsidiary purchases the product from the foreign parent).
    Moreover, at most, this shows causation going in the wrong direction—from abroad to the U.S. It
22  does not show that a U.S. effect proximately caused the allegedly higher price that foreign
    purchasers paid.
23

24  [10] DPPs and Flextronics USA provide no citations from this Circuit that hold that the "gives rise to"
    prong of the FTAIA's domestic-effects test is satisfied by foreign purchases of the type for which
25  Defendants seek summary judgment.  *Hsiung*, on which DPPs rely heavily (DPP Br. 9–12), is a case
    involving the "import" exception and the "direct effects" test, not a "gives rise to" case.  The Court
26  had no occasion to evaluate the "gives rise to" prong because it was a Department of Justice criminal
    prosecution, not a private plaintiff seeking damages from specific transactions.  Issues relating to
27  private damages claims under the FTAIA are currently before the Ninth Circuit in another appeal
    from *TFT-LCD*, but no decision has been rendered.  *See Best Buy Co., Inc. v. HannStar Display*
28  *Corp.*, Nos. 13-17408, 13-17618 (9th Cir.) (oral argument heard on December 11, 2015).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

7

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  completely vitiate the FTAIA.  Flextronics USA concedes that it has over 100 facilities in 30

2  countries across four continents and that it is these facilities that purchase capacitors.  Trutna Dec.

3  ¶¶ 4, 14.  If the FTAIA means anything, it must mean that the purchases across this vast array of

4  foreign countries are not within the Sherman Act.  Even the IPPs concede that it is an "unremarkable

5  proposition that a foreign purchaser cannot invoke U.S. antitrust laws merely because there was

6  some domestic effect to another entity" because the foreign purchaser's harm was suffered in

7  foreign, not domestic commerce.  IPP Br. 16-17.[11]

8       DPPs' argument that purchases invoiced to foreign entities but shipped to U.S. locations

9  satisfy the FTAIA also falls short.  The anticompetitive effect, if any, of a purchase made at a supra-

10  competitive price is felt at the location where that price is paid.  The antitrust laws are designed to

11  address the payment of overcharges, not the receipt of goods someone else has paid for.  Courts have

12  established limitations to ensure that the benefit of the federal  antitrust laws is limited to persons

13  that have experienced direct economic injury.  *See, e.g., Glen Holly Entm't, Inc. v. Tektronix Inc.*,

14  352 F.3d 367, 376 (9th Cir. 2003) (antitrust injury occurs when a plaintiff is "directly and

15  economically hurt" by the alleged violation).

16

17  ─────────────────

18  [11] Flextronics USA tries to avoid this result by arguing that many of its purchases of capacitors are
   for incorporation into products for U.S. based customers ██████████  DPP Br. at 24-26.  Even if

19  this were relevant to the FTAIA analysis, which it is not, Flextronics own data and the public filings
   of these U.S. based companies belie Flextronics USA's argument. ██████████████████

20  ████████████████████████████████████████████████████████████████

21  ████████████████████████████████  FL_000000001-3.  (These documents contain
   Flextronics purchase data for 2001 through 2013 and are too voluminous to append to this brief.

22  Defendants will provide a disk with this data if the Court wishes.) ████████████  securities filings
   show that a majority of their sales are in foreign countries. █

23  ████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  Flextronics's Form 10-K for 2015 shows that 89% of its sales were outside the United States.
   Flextronics International Ltd., Annual Report (Form 10-K), 39 (May 21, 2015),

26  http://d1lge852tjjqow.cloudfront.net/CIK-0000866374/c3739cd4-2e53-42df-808d-
   5eafc9f3a544.pdf?noexit=true.  It matters not at all for purposes of this Motion that some of

27  Flextronics's purchases of capacitors are for incorporation into products for "US-based" companies.
   That tells us nothing about where the capacitor purchases were made or even where the finished

28  products containing capacitors were sold.  *See Motorola V*, 775 F.3d at 818-19.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

1  Where the purchased goods were shipped is irrelevant to determining where the

2  anticompetitive effects are experienced, and whether the "gives rise to" test has been satisfied.  This

3  Court considered a similar issue when considering Defendants' Motion to Dismiss the IPPs' state

4  law claims, observing that the effects of the alleged conspiracy occurred at the place of purchase, not

5  delivery.[12]  There is simply no basis for the DPPs and Flextronics USA to argue that where foreign

6  purchasers pay supra-competitive prices overseas as a result of the alleged conspiracy, those foreign

7  effects are proximately caused by U.S. anticompetitive effects that "give rise to" the foreign

8  purchaser impact.[13]

9  **B.    The Evidence DPPs Cite Fails to Establish a Genuine and Material Issue of Fact**

10  None of the evidentiary  materials DPPs or Flextronics USA attach in support of their brief,

11  even if true, could establish a genuine issue of material fact as to the "gives rise to" standard.[14]  It is

12  Plaintiffs' burden to prove each element of the FTAIA.  *See Hsiung*, 778 F.3d at 753; *USS-POSCO*

13  *Indus. v. Contra Costa County Bldg. & Constr. Trades Council*, 31 F.3d 800, 805, n.3 (9th Cir.

14  1994).  But the evidence the DPPs and Flextronics USA cite has nothing to do with establishing that

15  an anticompetitive effect in the United States proximately caused supra-competitive prices in the

16  foreign transactions which DPPs and Flextronics USA seek to include.

17  DPPs' and Flextronics USA's brief focuses on two categories of foreign commerce sales:  (1)

18  purchases made by a foreign corporate family member when sales were also made to a U.S.

19  corporate family member pursuant to a global pricing policy (DPP Br. 14, 28); and (2) purchases

20

21  ──────────────────

22  [12] Sept. 30, 2015 Hr'g Tr. 15:17-21 ("THE COURT: If it's just a delivery, I mean, why is there an

23  injury occurred in Georgia? If the goods were purchased in Virginia and then shipped to Georgia, and there's no pricing transaction in Georgia, there's no purchase transaction in Georgia, why is there an injury in Georgia?").

24  [13] That Flextronics USA received assignments from its foreign affiliates that purchased capacitors

25  does not improve Flextronics USA's position.  DPP Br. 29, n.49.  The assignments simply allow Flextronics USA to stand in the shoes of these foreign purchasers, which cannot bring claims under

26  the Sherman Act for the reasons stated above.

27  [14] Defendants dispute many of Plaintiffs' characterizations of the evidence. However, none of these disputes relate to material issues of fact on this Motion so there is no need for the Court to resolve

28  any of them at this time.  Solely for purposes of correcting the record, Defendants have summarized their corrections of Plaintiffs' factual mischaracterizations in Defendants' Appendix C.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  made by foreign entities that are subsequently shipped to the United States (DPP Br. 12, 28).[15]  The

2  first category of foreign sales has been squarely rejected under the "gives rise to" requirement of the

3  FTAIA by *Motorola V.  See* 775 F.3d at 822 ("Having chosen to conduct its LCD purchases through

4  legally distinct entities organized under foreign law, [Motorola] cannot now impute to itself the harm

5  suffered by them").  Motorola made the same "global pricing" argument asserted here by the DPPs

6  and Flextronics USA, but the Seventh Circuit dismissed it as irrelevant.  *Id.*[16]  The second category

7  of foreign sales also cannot satisfy the "gives rise to" requirement because the anticompetitive

8  impact—the alleged payment of supra-competitive prices for capacitors abroad—occurs directly

9  when the price is paid abroad, not when the goods are subsequently shipped to the United States, and

10  DPPs and Flextronics USA cannot show any proximate causal relationship in which the payment of

11  a supra-competitive price abroad is caused by the payment of a supra-competitive price in the U.S.[17]

12  To the contrary, any alleged causation flows in the opposite direction.

13          Nor can DPPs stave off summary judgment against their claims based on foreign transactions

14  by filing Appendices taking issue with the details of Defendants' transactional data,[18] or by asserting

15

16  [15] DPPs' Appendix D references evidence that certain foreign entities engaged in transactions
    pursuant to global contracts with Defendants that authorized foreign subsidiaries and affiliates to
17  make purchases under the terms of global agreement. *See, e.g.,* DPP App. D-10, D-13.  DPPs,
    however, offer no evidence to rebut the fact that the purchases that are the subject of Defendants'
18  Motion were made abroad by foreign subsidiaries, affiliates, or joint ventures whose overseas prices
    were directly affected by the alleged conspiracy, not by any anticompetitive effect that first occurred
19  in the United States.  This is exactly the type of foreign sale impact that was rejected under the
    "gives rise to" test in *Motorola V.*  775 F.3d at 822.

20  [16] In making its global pricing argument, Flextronics USA seriously misstates the facts contained in
21  its own declaration.  *Compare* DPP Br. 26-27 *with* Trutna Declaration, ¶¶ 10-14.  However, the key
    facts are the admissions by Mr. Trutna, the President of Flextronics USA, that Flextronics has "over
22  100 facilities in approximately 30 countries across four continents" and it is these "Flextronics[]
    manufacturing facilities [that] purchased capacitors."  Trutna Dec. [Dkt. No. 966-18], at ¶¶ 4, 14.
23  For Flextronics USA and its foreign affiliates ("Flextronics") ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
24  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
    FL_000000001-3.
25  [17] DPPs assert that Defendants concede that when "U.S. entities pay inflated prices for products, the
26  effect on the U.S. market—inflated prices—gives rise to plaintiffs' claims based on payment of
    overcharges." DPP Br. 12.  Defendants make no such concession as the alleged payment of
27  overcharges in the United States could not "give rise to" Plaintiffs' claims based on the payment of
    alleged overcharges by foreign purchasers.

28  [18] DPPs' Appendix A merely addresses the transactional sales data produced by Defendants and does

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1   unfounded objections to the declarations Defendants filed as support for this Motion.[19]  None of

2   these Appendices can change the undisputed facts that DPPs and Flextronics USA are basing the

3   vast majority (approximately 90%) of their claims on foreign transactions invoiced to foreign

4   purchasers and that any anticompetitive price paid in such transactions could not have been

5   proximately caused by any anticompetitive effects in the United States.  The same is true for the

6   many exhibits DPPs append but do not—and could not—cite in their brief for any proposition at

7   all.[20]  Try as they might, DPPs and Flextronics USA fail to establish any genuine issue of material

8   fact with respect to the issues sought to be resolved by this Motion.

9   _____

10   not raise a genuine issue of material fact relevant to Defendants' Motion, which seeks a legal
determination of the categories (not the amount) of commerce at issue in this case.  Defs. Br. 2-3, 28.
Despite Defendants having patiently and cooperatively answered hundreds of questions about their

11   data, DPPs offer no evidence that the foreign purchases at issue were not the result of transactions

12   that were invoiced and paid for abroad.

13   [19] DPPs' Appendices B & C concern DPPs' objections, primarily based on the declarants' use of
summaries of business records and alleged lack of personal knowledge, to the declarations submitted
in support of Defendants' Motion.  No individual could realistically possess direct personal

14   knowledge of millions of transactions.  Defendants' declarants relied on company business records

15   (*see* Defs.' App. B), and have summarized them, as they are entitled to do.  *See Veliz v. Cintas
Corp.*, No. C 03-1180 RS, 2009 U.S. Dist. LEXIS 39061, at *4-5, 7 (N.D. Cal. April 23, 2009)

16   (rejecting objections to declarations as the affiants could summarize voluminous materials that were
attached to their declarations*); Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1274 n.2 (N.D. Cal.

17   2014) (even though an affiant did not explicitly state that the facts set forth in her declaration were

18   based upon personal knowledge, she reviewed and summarized the contents of defendant's business
records which was sufficient to constitute personal knowledge ); *Aniel v. GMAC Mortg., LLC*, Case

19   No: C 12-04201 SBA, 2012 U.S. Dist. LEXIS 138555, at *18 (N.D. Cal. Sept. 26, 2012) ("Personal

20   knowledge can come from the review of the contents of business records, and an affiant may testify
to acts that she did not personally observe but which have been described in business records.")

21   (citations omitted).

22   [20] DPP Exhibits PX1, PX3-PX4, PX6-PX7, PX9-PX12, and PX14 are not cited in DPPs' Brief or any
of DPPs' Appendices.  These exhibits consist of methodology summaries voluntarily provided by

23   Defendants at DPPs' request to facilitate the depositions of their FTAIA deponents.  DPPs also do
not cite in their Opposition or Appendices Exhibits PX24 through PX41.  These 18 exhibits consist

24   of Defendants' responses to DPPs' Second Set of Interrogatories.  DPPs have cited these materials
only in paragraphs 9 and 22 of their Rule 56(d) Application to argue that Defendants have failed to

25   provide satisfactory responses to certain interrogatories that DPPs claim are necessary to identify the
commerce at issue.  Defendants, however, produced their transactional data months ago and have

26   voluntarily answered hundreds of questions about it. Defs. App. A.  Most importantly, none of these
manufactured disputes have anything to do with any relevant issue on this Motion – which seeks

27   only to exclude certain categories of foreign  commerce, leaving the identification of the specific
transactions to be excluded to a future stipulation or proceedings, once the Court delineates the

28   categories that must be excluded.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:14-cv-03264-JD
DEFS' REPLY TO PLS' OPP TO DEFS' JT MOT FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

III.   **ANY DPP AND FLEXTRONICS USA CLAIMS BASED ON THE FOREIGN SALE OF CAPACITORS INCORPORATED INTO FINISHED PRODUCTS IMPORTED INTO THE UNITED STATES ALSO DO NOT SATISFY THE "DIRECT EFFECTS" PRONG OF THE FTAIA**

If and to the extent that DPPs and Flextronics USA are seeking recovery for the foreign sale of capacitors that were incorporated into finished goods imported into the U.S. (*see* DPP Br. at 24-25), such claims fail for yet an additional reason: they cannot satisfy the "direct" effect requirement of the FTAIA.  DPPs and Flextronics USA concede that a capacitor is only a small part of a foreign manufacturer's cost of goods.  Compl. [Dkt. No. 799-4], ¶¶ 5, 6.  As a result, any harm to competition in the United States does not follow "as an immediate consequence" of the incorporation of these capacitors into finished goods, as required by the FTAIA.  *See, e.g., United States v. LSL Biotechnologies*, 379 F.3d 672, 680 (9th Cir. 2004).

DPPs seek to find comfort in the "direct effects" discussion by the Ninth Circuit's decision in *Hsiung*.  But that decision is of no help to DPPs on the "direct" effect requirement.  To the contrary, in finding that there were some foreign sales that satisfied the "direct" effect requirement in *Hsiung*, the Court specifically noted that the allegedly price fixed TFT-LCDs were a substantial cost component of the finished products that were then imported into the United States, 70% to 80% in the case of monitors and 30% to 40% for notebook computers.  *Hsiung*, 778 F.3d at 759.  Here, the undisputed facts are directly to the contrary: capacitors, which often cost a penny or less (Compl. ¶ 6), were a very small portion of the overall cost of finished electronic products so that any effects in the United States from importing such finished products could not be "direct."  This provides a second, independent reason for ruling that DPPs and Flextronics USA have not met their burden to satisfy the FTAIA with respect to capacitors sold overseas and then incorporated into finished electronic products before being imported into the United States.

IV.   **TO THE EXTENT DPPS SEEK TO RECOVER FOR PURCHASES MADE BY FOREIGN SUBSIDIARIES AND TRANSFERRED TO U.S. AFFILIATES, SUCH PURCHASES ARE ALSO BARRED BY *ILLINOIS BRICK***

According to their proffered class definition, DPPs also seek to recover damages for indirect purchases, *i.e.*, their purchases of capacitors or finished goods containing capacitors from their

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

foreign affiliates who purchased the capacitors directly from Defendants.  DPPs' class definition includes "[a]ll persons in the United States that purchased Capacitors (including through controlled subsidiaries, agents, affiliates, or joint ventures) directly from any of the Defendants . . . ."  Compl. ¶ 107.  Where DPPs' controlled foreign affiliates made purhases from Defendants, the only way they could be transferred to "a person in the United States" is via a sale.

   To the extent that DPPs seek recovery for these transactions, they are precluded not only by their failure to satisfy the FTAIA's "gives rise to" requirement, but also by the *Illinois Brick* doctrine.  *Illinois Brick* establishes "a bright line rule" that only the first direct purchaser of an allegedly price-fixed product may bring suit for federal antitrust damages.  *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 735 (1977); *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-22 (9th Cir. 2008).  DPPs argue that *Illinois Brick* issues should not be decided on this Motion.  However, because of the close relationship between the failure to satisfy either the FTAIA or the *Illinois Brick* doctrine with respect to purchases from Defendants by foreign affiliates of the DPPs, it is proper for the Court to consider both legal barriers to recovery at this time.  The Seventh Circuit's decision in *Motorola V* is directly on point concluding that foreign affiliate purchases of this type are precluded under both the FTAIA and *Illinois Brick*.  775 F.3d at 823-25.

## V.   DEFENDANTS' MOTION IS TIMELY AND PURSUANT TO THE COURT-ORDERED SCHEDULE

   Finally, there is no merit to the DPP's and Flextronics USA's arguments that this Motion is premature.  This timing objection is particularly out of place given the Court's determination—at the very first status conference in this case—that FTAIA issues should be decided prior to class certification.  *See* Oct. 29, 2014 Hr'g Tr. 17:2:16; Oct. 29, 2014 Minute Order, Dkt. No. 309.  The schedule for early determination of the FTAIA issues set by the Court is designed to narrow the scope of the case to actionable claims, allowing for the most efficient preparation for, and evaluation of, class certification motions.  Nothing has changed that would warrant revisiting the Court's decision about how to best manage this case to spare the parties and the Court from wasting enormous resources litigating putative classes of purchasers that are not limited to those with claims consistent with FTAIA requirements.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1    Indeed, the FTAIA issues presented on this Motion are ripe for adjudication as Defendants

2    seek a ruling of law based on undisputed facts and established legal principles which exclude from

3    the U.S. antitrust laws claims based on foreign transactions that are invoiced and paid by foreign

4    customers outside the United States.  For this reason, both the Supreme Court and the Ninth Circuit

5    have ruled on FTAIA issues on the pleadings or without extensive discovery.  *See, e.g., Empagran I,*

6    542 U.S. at 159-60, 175; *DRAM,* 546 F.3d at 985, n.3.

7    The Ninth Circuit has also recognized that "[n]either Fed. R. Civ. P. 23 nor due process

8    requires that the district court rule on class certification before granting or denying a motion for

9    summary judgment."[21]  *Wright v. Schock*, 742 F.2d 541, 545 (9th Cir. 1984).  DPPs' suggestion that

10   ruling on summary judgment, or managing the case under Rule 16, is impermissible because absent

11   class members will not be bound is not correct.  *See* DPP Br. 20, 23.  The court may circumscribe

12   DPP's overbroad class claims either through partial summary judgment or under Fed. R. Civ. P. 16

13   and 23(d)(1)(D), both of which afford courts the power to narrow the claims that plaintiff may

14   litigate.  Indeed, Rule 23(d) explicitly extends that power to allegations concerning absent class

15   members.  Fed. R. Civ. P. 23(d)(1)(D) ("[A] court may issue orders that . . . require that the

16   pleadings be amended to eliminate allegations about representation of absent persons and that the

17   action proceed accordingly.").  Other courts in this district have relied on Rule 23(d) to limit—prior

18   to a ruling on class certification motions—class allegations that are inconsistent with governing law.

19   *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1043-44 (N.D. Cal. 2014) (striking claims with respect to

20   proposed class members that were inconsistent with the plaintiff's theory of recovery and claims for

21   damages unsupported by California Unfair Competition Law); *In re Lithium Ion Batteries Antitrust*

22   *Litig.*, Case No.: 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 141358, at *110 (N.D. Cal. Oct. 2,

23   2014) (prior to class certification, Rule 23(d) provides a basis for dismissing plaintiffs' proposed

24   sub-classes).

25   Nor can the DPPs or Flextronics USA credibly claim that they need any more discovery

26   before these FTAIA issues are decided.  There are no factual issues relevant to this Motion that

27

28   [21] It is significant that *DRAM* , *Empagran I*, and *Empagran II* were all decided prior to rulings on
     class certification.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:14-cv-03264-JD
DEFS' REPLY TO PLS' OPP TO DEFS' JT MOT FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

require discovery, as the issues presented are pure issues of law.  Further, DPPs and Flextronics USA have had ample opportunity to conduct any discovery they claim was required for this Motion. DPPs have been on notice since October 2014 (Dkt. No. 309) that FTAIA issues would be decided on this Motion prior to considering class certification.  The dates for the FTAIA motions and responses have been extended twice (Dkt. Nos. 514, 735, 934).  Meanwhile, limited discovery has been ongoing in this matter since October 2014 (Dkt. 309) and full discovery since April 2015 (Dkt. 632).  Before this Motion was brought, DPPs answered contention interrogatories in which they said they had no evidence to support their FTAIA theories, and asserted only legal arguments.  *See* DPPs' Second Interrog. Resp., Stillman Decl. Ex. 1 [Dkt. No. 916-7] (dated July 13, 2015).[22]  Their position is the same now, despite receiving over 30 million Bates-numbered pages from Defendants in discovery, including Defendants' transaction data (Defs. App. A), and taking 18 depositions.

No matter how hard DPPs and Flextronics USA try to create the appearance of factual issues, this Motion turns on a pure question of law: whether claims based on the alleged charging of supra-competitive prices in foreign sales to foreign customers can satisfy the "gives rise to" requirement of the FTAIA.  The answer to that question is that such sales cannot satisfy the FTAIA's requirements as a matter of law.

## VI.    CONCLUSION

For all of the foregoing reasons, Defendants request that the Court grant their Motion for partial summary judgment, or under Rule 16, dismissing the DPPs' and Flextronics USA's claims to the extent they are based on (1) transactions billed from a foreign entity to a foreign entity, but shipped to a U.S. entity, (2) transactions billed and shipped from a foreign entity to a foreign entity, and (3) export sales from the United States.

---

[22] These interrogatory responses were also attached by DPPs in support of their opposition.  *See* DPP Ex. PX23.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Dated:   December __, 2015

BAKER & McKENZIE LLP

By:      */s/ Darrell Prescott*
              Darrell Prescott

Darrell Prescott (admitted *pro hac vice*)
Catherine Koh Stillman (SBN 252440)
**BAKER & McKENZIE LLP**
452 Fifth Avenue
New York, NY 10018
Telephone: 1 212 626 4476
Facsimile: 1 212 310 1637
Email: Darrell.Prescott@bakermckenzie.com
              Catherine.Stillman@bakermckenzie.com

Colin H. Murray (SBN 159142)
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111-3802
Telephone: 1 415 576 3022
Facsimile: 1 415 576 3099
Email: Colin.Murray@bakermckenzie.com

Meghan E. Hausler (admitted *pro hac vice*)
**BAKER & McKENZIE LLP**
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Telephone: 1 214 965 7219
Facsimile: 1 214 978 3099
Email: Meghan.Hausler@bakermckenzie.com

*Attorneys for Defendants*
*Okaya Electric Industries Co., Ltd.*
*and Okaya Electric America Inc.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

MINTZ LEVIN COHN FERRIS GLOVSKY AND
POPEO PC

By: _/s/ Bruce D. Sokler_
        Bruce D. Sokler

Bruce D. Sokler (*admitted pro hac vice*)
701 Pennsylvania Avenue NW Suite 900
Washington, DC 20004
Telephone: 202-434-7303
Facsimile: 202-434-7400
Email:  bdsokler@mintz.com

*Attorneys for Defendant AVX Corporation*

WILMER CUTLER PICKERING HALE AND DORR LLP

By: _/s/ Heather S. Tewksbury_
        Heather S. Tewksbury

Heather S. Tewksbury (SBN 222202)
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6134
Facsimile: (650) 858-6100
heather.tewksbury@wilmerhale.com

Thomas Mueller (admitted *pro hac vice*)
Stacy Frazier (admitted *pro hac vice*)
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6766
Facsimile: (202) 663-6363
thomas.mueller@wilmerhale.com
stacy.frazier@wilmerhale.com

*Attorneys for Defendants ELNA Co. Ltd. and ELNA America, Inc.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

17

Case No. 3:14-cv-03264-JD
DEFS' REPLY TO PLS' OPP TO DEFS' JT MOT FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1   WILSON SONSINI GOODRICH & ROSATI PC

2   By ____/s/ Jonathan M. Jacobson____

3           Jonathan M. Jacobson

4   Jonathan M. Jacobson
    Chul Pak (admitted *pro hac vice*)
5   Jeffrey C. Bank (admitted *pro hac vice*)
    Justin A. Cohen (admitted *pro hac vice*)
6   1301 Avenue of the Americas, 40th Floor
    New York, New York 10019
7   Telephone: (212) 497-7758
    Facsimile: (212) 999-5899
8   jjacobson@wsgr.com
    cpak@wsgr.com
9   jbank@wsgr.com
    jcohen@wsgr.com
10

11

12  Jeff VanHooreweghe (admitted *pro hac vice*)
    1700 K Street, N.W., Fifth Floor
13  Washington, DC 20006
    Telephone: (202) 973-8825
14  Facsimile: (202) 973-8899
    jvanhooreweghe@wsgr.com
15
    *Attorneys for Defendants Hitachi Chemical Co., Ltd., Hitachi Chemical Company America, Ltd.,*
16  *and Hitachi AIC Incorporated*

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

18

Case No. 3:14-cv-03264-JD
DEFS' REPLY TO PLS' OPP TO DEFS' JT MOT FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

1

2

JONES DAY

3

By: ___/s/ Eric P. Enson_____

4
         Eric P. Enson

5
Jeffrey A. LeVee (SBN 125863)

6
Eric P. Enson (SBN 204447)
Rachel H. Zernik (SBN 281222)

7
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071.2300

8
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

9
jlevee@jonesday.com

10
epenson@jonesday.com
rzernik@jonesday.com

11

12
*Counsel for Defendants Holy Stone Enterprise Co., Ltd., Milestone Global Technology, Inc. and Vishay Polytech Co., Ltd.*

13
PILLSBURY WINTHROP SHAW PITTMAN LLP

14
By: ___/s/ Jacob R. Sorensen_____

15
         Jacob R. Sorensen

16
Roxane A. Polidora (CA Bar No. 135972)

17
Jacob R. Sorensen (CA Bar No. 209134)
Four Embarcadero Center, 22nd Floor

18
San Francisco, CA 94111
Telephone: (415) 983-1000

19
roxane.polidora@pillsburylaw.com
jake.sorensen@pillsburylaw.com

20

21
*Attorneys for Defendants KEMET Corporation and KEMET Electronics Corporation*

22

23

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

19

Case No. 3:14-cv-03264-JD
DEFS' REPLY TO PLS' OPP TO DEFS' JT MOT FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

1

2     DENTONS US LLP

3     By:   /s/ Bonnie Lau
4             Bonnie Lau

5     Bonnie Lau (SBN 246188)
6     525 Market Street, 26th Floor
      San Francisco, CA 94105
7     Telephone: (415) 882-5000
      Facsimile: (415) 882-0300
8     bonnie.lau@dentons.com

9     Felix T. Woo (SBN 208107)
10    601 S. Figueroa Street, Suite 2500
      Los Angeles, CA 90017
11    Telephone: (213) 623-9300
      Facsimile: (213) 623-9924
12    felix.woo@dentons.com

13    *Attorneys for Defendant Matsuo Electric Co., Ltd.*

14    GIBSON, DUNN & CRUTCHER LLP

15    By:   /s/ George A. Nicoud III
16            George A. Nicoud III

17    George A. Nicoud III (SBN 160111)
18    Austin V. Schwing (SBN 211696)
      Eli M. Lazarus (SBN 284082)
19    555 Mission Street
      San Francisco, CA 94105-0921
20    Telephone: 415-393-8308
      Facsimile: 415-374-8473
21    tnicoud@gibsondunn.com
22    aschwing@gibsondunn.com
      elazarus@gibsondunn.com
23
      Matthew Parrott (SBN 302731)
24    3161 Michelson Drive
      Irvine, CA  92612-4412
25    Telephone: (949) 451-3800
      Facsimile: (949) 451-4220
26    mparrott@gibsondunn.com

27
      *Attorneys for Defendants NEC TOKIN Corporation and NEC TOKIN America, Inc.*
28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

20

Case No. 3:14-cv-03264-JD
DEFS' REPLY TO PLS' OPP TO DEFS' JT MOT FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

2      K&L GATES LLP

3
       By:    */s/ Michael E. Martinez*
4              Michael E. Martinez

5      Scott M. Mendel (admitted *pro hac vice*)
       Steven M. Kowal (admitted *pro hac vice*)
6      Michael E. Martinez (admitted *pro hac vice*)
       Lauren N. Norris (admitted *pro hac vice*)
7      Lauren B. Salins (admitted *pro hac vice*)
       70 West Madison Street, Suite 3100
8      Chicago, IL 60602
       Telephone: (312) 372-1121
9      michael.martinez@klgates.com
10
11     *Attorneys for Defendants Nichicon Corporation and Nichicon (America) Corporation*

12

13     CADWALADER, WICKERSHAM & TAFT LLP

14
       By:    */s/ Charles F. Rule*
15             Charles F. Rule

16     Charles F. Rule (admitted pro hac vice)
17     Joseph J. Bial (admitted pro hac vice)
       Daniel J. Howley (admitted pro hac vice)
18     700 6th St, NW
       Washington, DC 20001
19     Telephone: (202) 862-2200
       Facsimile: (202) 862-2400
20     rick.rule@cwt.com
       joseph.bial@cwt.com
21     daniel.howley@cwt.com
22
23     *Attorneys for Defendants Nippon Chemi-Con Corporation and United Chemi-Con, Inc.*

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

21

Case No. 3:14-cv-03264-JD
DEFS' REPLY TO PLS' OPP TO DEFS' JT MOT FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

WINSTON & STRAWN LLP

By: ___*/s/ Jeffrey L. Kessler*___
     Jeffrey L. Kessler

Jeffrey L. Kessler (admitted *pro hac vice*)
A. Paul Victor (admitted *pro hac vice*)
Molly M. Donovan (admitted *pro hac vice*)
Mollie C. Richardson (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
pvictor@winston.com
mmdonovan@winston.com
mrichardson@winston.com

Ian L. Papendick (SBN 275648)
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-6905
Facsimile: (415) 591-1400
ipapendick@winston.com

*Counsel for Defendants Panasonic Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd., SANYO North America Corporation*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:14-cv-03264-JD
DEFS' REPLY TO PLS' OPP TO DEFS' JT MOT FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

O'MELVENY & MYERS LLP

2

By: ___*/s/ Michael F. Tubach*___

3

      Michael F. Tubach

4

Michael F. Tubach (SBN 145955)

Two Embarcadero Center, 28th Floor

5

San Francisco, CA 94111

Telephone: (415) 984-8700

6

Facsimile: (415) 984-8701

7

mtubach@omm.com

8

Kenneth R. O'Rourke (SBN 120144 )

400 South Hope Street, 18th Floor

9

Los Angeles, CA 90071

Telephone: (213) 430-6000

10

Facsimile: (213) 430-6407

11

korourke@omm.com

12

*Attorneys for Defendants ROHM Co., Ltd. and ROHM Semiconductor U.S.A., LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

23

Case No. 3:14-cv-03264-JD
DEFS' REPLY TO PLS' OPP TO DEFS' JT MOT FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

HUNTON AND WILLIAMS LLP

By:    /s/ Djordje Petkoski
         Djordje Petkoski

Djordje Petkoski (admitted *pro hac vice*)
David A. Higbee (admitted *pro hac vice*)
Wendell L. Taylor (admitted *pro hac vice*)
Leslie W. Kostyshak (admitted *pro hac vice*)
Robert A. Caplen (admitted *pro hac vice*)
2200 Pennsylvania Avenue, N.W.
Washington, D.C.  20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
dpetkoski@hunton.com
dhigbee@hunton.com
wtaylor@hunton.com
lkostyshak@hunton.com
rcaplen@hunton.com

M. Brett Burns (SBN 256965)
575 Market Street, Suite 3700
San Francisco, California 94105
Telephone: (415) 975-3700
Facsimile: (415) 975-3701
mbrettburns@hunton.com

*Attorneys for Defendants Rubycon Corporation and Rubycon America Inc.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

24

Case No. 3:14-cv-03264-JD
DEFS' REPLY TO PLS' OPP TO DEFS' JT MOT FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

DENTONS US LLP

By:   */s/ Andrew S. Azarmi*
        Andrew S. Azarmi

Andrew S. Azarmi (SBN 241407)
Spear Tower, One Market Plaza, 24th Floor
San Francisco, CA 94150
Telephone:  (415) 267-4000
Facsimile: (415) 267-4198
andrew.azarmi@dentons.com

Gaspare J. Bono (admitted *pro hac vice*)
Stephen M. Chippendale (admitted *pro hac vice*)
Claire M. Maddox (admitted *pro hac vice*)
1900 K Street, NW
Washington, DC 20006
Telephone:  (202) 496-7500
Facsimile: (202) 496-7756
gap.bono@ dentons.com
steve.chippendale@ dentons.com
claire.maddox@ dentons.com

*Attorneys for Defendants Shinyei Kaisha, Shinyei Technology Co., Ltd., Shinyei Capacitor Co., Ltd., and Shinyei Corporation of America, Inc.*

HUGHES HUBBARD & REED LLP

By:   */s/ Ethan E. Litwin*
        Ethan E. Litwin

Ethan E. Litwin (admitted *pro hac vice*)
Sigrid Jernudd (admitted *pro hac vice*)
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Ethan.Litwin@hugheshubbard.com
Sigrid.Jernudd@hugheshubbard.com

*Attorneys for Defendants Soshin Electric Co., Ltd. and Soshin Electronics of America Inc.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:14-cv-03264-JD
DEFS' REPLY TO PLS' OPP TO DEFS' JT MOT FOR PARTIAL SJ OR IN THE ALTERNATIVE TO SIMPLIFY ISSUES UNDER FRCP 16

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

BONA LAW PC

By: */s/ Jarod M. Bona*
        Jarod M. Bona

Jarod M. Bona (SBN 234327)
Aaron R. Gott (admitted *pro hac vice*)
BONA LAW PC
4275 Executive Square, #200
La Jolla, CA 92037
Telephone: (858) 964-4589
Facsimile: (858) 964-2301
Email: jarod.bona@bonalawpc.com
Email: aaron.gott@bonalawpc.com

*Attorneys for Taitsu Corporation and Taitsu America, Inc.*


Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the above signatories.

Dated:   October 1, 2015                    BAKER & McKENZIE LLP

                                         By:      */s/ Darrell Prescott*
                                                  Darrell Prescott

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000