1    **[Counsel for Moving Defendants Listed on Signature Pages]**

2

3

4

5

6

7

8

9

10

11                        **UNITED STATES DISTRICT COURT**
                       **NORTHERN DISTRICT OF CALIFORNIA**
12                        **SAN FRANCISCO DIVISION**

13   **IN RE CAPACITORS ANTITRUST**          Case No.  3:14-cv-03264-JD
     **LITIGATION**
14                                           **DEFENDANTS' REPLY MEMORANDUM**
                                             **IN SUPPORT OF DEFENDANTS' JOINT**
     ALL INDIRECT PURCHASER ACTIONS          **MOTION FOR PARTIAL SUMMARY**
15                                           **JUDGMENT DISMISSING PLAINTIFFS'**
                                             **INDIRECT PURCHASER CLAIMS BASED**
16                                           **ON FOREIGN SALES OR, IN THE**
                                             **ALTERNATIVE, TO SIMPLIFY THE**
17                                           **ISSUES UNDER FED. R. CIV. P. 16**

18
                                             Date:      January 13, 2016
19                                           Time:      10:00 a.m.
                                             Judge:     Hon. James Donato
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................................1

II.     ARGUMENT ......................................................................................................................3

   A.   The FTAIA Applies to IPPs' State Law Claims......................................................3

      1.   The Supremacy and Commerce Clauses, as well as Principles of
International Comity, Prevent State Law Claims From Extending Beyond
the FTAIA .....................................................................................................4

      2.   The Harmonization Requirements of State Antitrust Laws with Federal
Law Also Require that FTAIA Limits Apply to State Laws..........................7

   B.   The FTAIA Bars IPPs' Claims Based on Foreign Commerce ...............................9

      1.   IPPs' Claims Based on Capacitors That Were Sold by Defendants to
Unrelated Third Parties Overseas Cannot Satisfy the "Gives Rise To"
Test of the FTAIA .........................................................................................9

      2.   Capacitors Imported by Third-Parties That Are Not Defendants or Alleged
Co-Conspirators Are Not Subject To The Import Commerce Exclusion of
the FTAIA....................................................................................................12

III.    CONCLUSION ................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*'In' Porters, S.A. v. Hanes Printables, Inc.*,
663 F. Supp. 494 (M.D.N.C. 1987) .......................................................................3

*Aguayo v. U.S. Bank*,
653 F.3d 912 (9th Cir. 2011) ................................................................................5

*Amarel v. Connell*,
202 Cal. App. 3d 137 (Cal. Ct. App. 1988)....................................................3, 8, 9

*Aryeh v. Canon Bus. Solutions, Inc.*,
55 Cal. 4th 1185 (2013)........................................................................................9

*Barclays Bank PLC v. Franchise Tax Board of Cal.*,
512 U.S. 298 (1994) .........................................................................................6, 7

*Best Buy Co., Inc. v. HannStar Display Corp.*,
Nos. 13-17408, 13-17618 (9th Cir.) ................................................................6, 13

*California v. ARC Am. Corp.*,
490 U.S. 93 (1989) .......................................................................................2, 3, 4

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ........................................................................................5, 10

*CSR Ltd. v. Cigna Corp.*,
405 F. Supp. 2d 526 (D.N.J. 2005)........................................................................4

*Empagran S.A. v. F. Hoffmann-LaRoche Ltd.*,
417 F.3d 1267 (D.C. Cir. 2005).............................................................................7

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
542 U.S. 155 (2004) .....................................................................................3, 9, 11

*Global Reins. Corp. - U.S. Branch v. Equitas Ltd.*,
969 N.E.2d 187 (N.Y. 2012) .................................................................................4

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) ...........................................................................................10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
546 F.3d 981 (9th Cir. 2008) ...............................................................7, 9, 11, 12

*In re Intel Corp. Microprocessor Antitrust Litig.*,
476 F. Supp. 2d 452 (D. Del. 2007) ...................................................................3, 5

*In re Monosodium Glutamate Antitrust Litig.*,
   477 F.3d 535 (8th Cir. 2007) ..........................................................................7, 9, 11

*In re Optical Disk Drive Antitrust Litig.*,
   No. 10-md-2143 RS, 2014 WL 3378336 (N.D. Cal. July 10, 2014)........................................3

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   No. 07-md-01819 CW, 2010 WL 5477313 (N.D. Cal. Dec. 31, 2010) .....................3, 4, 5, 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   Case No. 10-cv-3205 SI, 2014 WL 4652126 (N.D. Cal. Sept. 18, 2014) ........................13, 14

*In re Vehicle Carrier Servs. Antitrust Litig.*,
   No. 13-3306 ES, 2015 WL 5095134 (D.N.J. Aug. 28, 2015) ..............................................4, 6

*Japan Line, Ltd. v. Cnty. of L.A.*,
   441 U.S. 434 (1979) ..............................................................................................................5

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
   232 F.3d 979 (9th Cir. 2000) ..............................................................................................2, 6

*Lotes Co., Ltd. v. Hon Hai Precision Industry Co.*,
   753 F.3d 395 (2nd Cir. 2014) ..............................................................................................9, 11

*Minn-Chem, Inc. v. Agrium Inc.*,
   683 F.3d 845 (7th Cir. 2012) ..............................................................................................12

*Motorola Mobility LLC v. AU Optronics Corp.*,
   775 F.3d 816 (7th Cir. 2015) ..............................................................................................passim

*Mujica v. AirScan Inc.*,
   771 F.3d 580 (9th Cir. 2014) ..............................................................................................7

*OBB Personenverkehr AG v. Sachs*,
   136 S. Ct. 390 (2015)..........................................................................................7, 11, 12

*Proview Technology Inc., et al. v. AU Optronics Corp., et al.*,
   No. 12-cv-3802-SI, 2014 WL 2916933 (N.D. Cal. Sept. 19, 2014)........................................14

*Rambus Inc. v. Micron Tech*,
   2009 Cal. Super. LEXIS 362 (Cal. Super. Ct. May 29, 2009) ................................................8

*Samsung Elecs. Co. v. Panasonic Corp.*,
   747 F.3d 1199 (9th Cir. 2014) ..............................................................................................9

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
   No. 12-cv-2582 CW, 2013 WL 368365 (N.D. Cal. Jan. 29, 2013)......................................3, 8

*United States v. Hsiung*,
   758 F.3d 1074 (9th Cir. 2014) ("*Hsiung I*")..............................................................13, 14

*United States v. Hui Hsiung*,
    778 F.3d 738 (9th Cir. 2015) ("*Hsiung II*")......................................................................passim

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ............................................................................................................4, 5

**STATUTES**

Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a.................................................passim

Export Trading Company Act of 1982 ...........................................................................................5

Iowa Code § 553.2......................................................................................................................7, 8

**RULES**

Fed. R. Civ. P. 16.....................................................................................................................1, 14

**OTHER AUTHORITIES**

H.R. Rep. No. 97-637 (1982) ........................................................................................................5

H.R. Rep. No. 97-686 (1982) ........................................................................................3, 4, 5, 14

IB Philip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 272i, at 304 (4th ed. 2013) ...........11

1

## I.   INTRODUCTION

2      The Indirect Purchaser Plaintiffs' ("IPPs") opposition raises no genuine dispute of material

3  fact.  Indeed, IPPs admit that Defendants' motion raises "purely legal issues" as to whether claims

4  based on Defendants' sales of capacitors to non-conspirator customers abroad that are subsequently

5  sold to purchasers in the United States are excluded from this case by the FTAIA.  Opp'n[1] at 13.

6  IPPs also admit that foreign customers that purchased the capacitors at issue in this motion could

7  not bring their own antitrust action because the "foreign distributor's harm was suffered in foreign,

8  not domestic, commerce," and such foreign anticompetitive injury is not actionable under the U.S.

9  antitrust laws.  Opp'n at 16-17.

10      These admissions are fatal.  If the foreign harm suffered by foreign customers is not

11  actionable, then the indirect purchasers' claims—based upon an alleged pass through of all or part

12  of such "foreign injury"—are similarly not actionable.  Such claims are merely derivative of the

13  alleged anticompetitive harm suffered in foreign commerce, and not based on any domestic

14  anticompetitive effect that "gives rise to" the claims, as required by the domestic effects provisions

15  of the FTAIA.  *See* 15 U.S.C. § 6a.[2]

16      IPPs cannot avoid this legal conclusion by arguing that their claims ought to survive as

17  "import" trade *because it is undisputed that Defendants had nothing to do with importing to the*

18  *United States this category of products sold to foreign customers*.  In *United States v. Hui Hsiung*,

19  778 F.3d 738 (9th Cir. 2015) ("*Hsiung II*"), the Ninth Circuit has made it clear that such foreign

20  sales are not import commerce as a matter of law.  778 F.3d at 755 (import commerce exclusion

21  _____

22  [1] *See* Plaintiffs' Opp'n to Defs' Joint Mot. for Partial Summary Judgment Dismissing Plaintiffs'
   Indirect Purchaser Claims Based on Foreign Sales or, in the Alternative, to Simplify the Issues

23  Under Fed. R. Civ. P. 16 ("Opp'n"), ECF No. 965.

24  [2] Because the domestic effects test of the FTAIA cannot be satisfied without satisfying the "gives
   rise to" requirement (see discussion at pp. 9-12, *infra*), it is not necessary for the Court to determine

25  on this motion whether the foreign commerce at issue also could not satisfy the "directness"
   requirement of the domestic effects test.  *See* Defs' Joint Mot. for Partial Summary Judgment

26  Dismissing Plaintiffs' Indirect Purchaser Claims Based on Foreign Sales or, in the Alternative, to
   Simplify the Issues Under Fed. R. Civ. P. 16 ("Mot."), ECF No. 911, at 15-16.  For this reason,

27  Defendants have determined not to press IPPs' failure to satisfy the "direct" test on this motion, but
   instead reserve that argument, if necessary, for a later point in the proceedings.

28

DEFS' REPLY MEMORANDUM I/S/O DEFS'                              Case No.  3:14-cv-03264-JD
JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INDIRECT FOREIGN SALES
                                    -1-

1   was satisfied only as to "transactions that are directly between the [U.S.] plaintiff purchasers and

2   the defendant cartel members").  The fact that Defendants imported some other capacitors into the

3   United States is entirely irrelevant to this argument because IPPs' Foreign Commerce Claims are

4   based on capacitors that Defendants sold in foreign commerce to third parties that were then

5   imported into the United States by someone other than a Defendant.  The capacitors were not

6   imported by Defendants or their alleged co-conspirators.  Conduct by unrelated third parties does

7   not qualify under the "import" exclusion from the FTAIA.  *See, e.g.*, *Hsiung II*, 778 F.3d at 754

8   ("wholly foreign transactions" are not import commerce); *Motorola Mobility LLC v. AU Optronics*

9   *Corp.*, 775 F.3d 816, 817-18 (7th Cir. 2015) ("*Motorola Mobility*").

10          Unable to meet the "gives rise to" requirement or invoke the "import" exclusion, IPPs'

11   Foreign Commerce Claims must be dismissed as a matter of law.  Specifically, this Court should

12   grant summary judgment against IPPs' Foreign Commerce Claims, and exclude from any putative

13   class all injuries that IPPs claim to have suffered as the result of a pass through in the United States

14   of an overcharge on a foreign sale of a capacitor to an unrelated third party that was subsequently

15   imported into the United States by a non-Defendant.  Such a ruling now would substantially narrow

16   the commerce at issue in this huge litigation and avoid the need for the parties to spend significant

17   resources litigating over an improper and overbroad class that contains numerous putative class

18   members that do not have actionable claims.

19          In opposition, IPPs argue that the principles of the FTAIA do not apply to their claims under

20   state laws.   This is not correct.   Every court to rule on this issue has concluded that FTAIA

21   principles *do* apply to state antitrust laws under either or both of the Supremacy Clause and

22   Commerce Clause, as well as principles of international comity.  *See* Mot. at 11 (collecting cases).

23          IPPs cite a number of cases for the inapposite proposition that federal law does not preempt

24   state indirect purchaser statutes altogether.  *See, e.g.*, *California v. ARC Am. Corp.*, 490 U.S. 93

25   (1989) ("*ARC America*"); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 993 (9th Cir.

26   2000).  But Defendants are not arguing that IPPs cannot bring claims under various state laws based

27   on Defendants' sales that are not excluded by the FTAIA (*i.e.*, Defendants' imports or domestic

28   sales in the United States that total over $5 billion during the alleged class period according to the

1   Direct Purchaser Plaintiffs),[3] just that IPPs may not assert such claims when they are based on sales

2   that occurred entirely in foreign commerce.  Those foreign commerce claims are the subject of this

3   motion and should be excluded from this case.

4   **II. ARGUMENT**

5       **A.      The FTAIA Applies to IPPs' State Law Claims**

6           IPPs are wrong that the FTAIA does not apply to their state law indirect purchaser claims.

7   Neither Congress, nor the Supreme Court in *ARC America* and it progeny, indicated that indirect

8   purchasers should be able to bring state law antitrust or similar unfair competition claims based on

9   sales where the anticompetitive effects occurred entirely in foreign commerce.  To the contrary,

10  Congress enacted the FTAIA to establish a *uniform* limit on the extent to which antitrust laws in the

11  United States may be applied to claims based on foreign commerce.  *See* Mot. at 6; *F. Hoffmann-La*

12  *Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 158 (2004); *see also* H.R. Rep. No. 97-686, at 2-3

13  (1982).  Under the Supremacy Clause and Commerce Clause of the Constitution, as well as

14  principles of international comity, this means that the FTAIA precludes antitrust and similar unfair

15  competition claims based on foreign anticompetitive effects regardless of whether a plaintiff brings

16  such claims under federal or state antitrust law.

17          Every court to consider the issue has held that the FTAIA applies to state law antitrust

18  claims.  *See* Mot. at 5-11; *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-

19  01819 CW, 2010 WL 5477313, at *4 (N.D. Cal. Dec. 31, 2010); *In re Optical Disk Drive Antitrust*

20  *Litig.*, No. 10-md-2143 RS, 2014 WL 3378336, at *3 n.2 (N.D. Cal. July 10, 2014); *In re Intel*

21  *Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457 (D. Del. 2007); *Ubiquiti Networks,*

22  *Inc. v. Kozumi USA Corp.*, No. 12-cv-2582 CW, 2013 WL 368365, at *9 (N.D. Cal. Jan. 29, 2013);

23  *'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 n.8 (M.D.N.C. 1987); *Amarel v.*

24  _____

25  [3] *See* Direct Purchaser Plaintiffs' and Flextronics' Opposition to Defendants' Motion for Partial
    Summary Judgment Dismissing Plaintiffs' Sherman Act Claims for Foreign Transactions, ECF No.
26  967-4, at 1.  Defendants do not concede that Direct Purchaser Plaintiffs' calculation of these
    categories of commerce are accurate, and the exact calculation is not necessary for resolution of this
27  motion, which seeks only a legal determination of the categories of commerce (not the amounts) at
    issue in this case.

28

1   *Connell*, 202 Cal. App. 3d 137, 149 (Cal. Ct. App. 1988); *CSR Ltd. v. Cigna Corp.*, 405 F. Supp. 2d

2   526, 552 (D.N.J. 2005); *Global Reins. Corp. - U.S. Branch v. Equitas Ltd.*, 969 N.E.2d 187, 195-96

3   (N.Y. 2012).  IPPs are unable to identify any decision by any federal or state court adopting their

4   view that state antitrust laws can apply beyond the foreign commerce limits of federal law.  Indeed,

5   IPPs simply ignore the clear and persuasive reasoning on this point in cases like *SRAM*, in which

6   this Court rejected the very same arguments against applying the FTAIA to state law claims that

7   IPPs make here.  *See* 2010 WL 5477313, at *4.

8
9
          **1.     The Supremacy and Commerce Clauses, as well as Principles of International Comity, Prevent State Law Claims From Extending Beyond the FTAIA**

10      IPPs cite *ARC America* in support of the general proposition that the Supremacy Clause does

11   not prevent states from fashioning their own antitrust laws.  Opp'n at 5-6.  Defendants do not

12   disagree with that proposition.  But the Supreme Court made clear in *ARC America* that states are

13   *not* permitted to fashion antitrust laws contrary to congressional purpose.  *See* 490 U.S. at 100.

14   Indeed, in *ARC America*, the Court noted that the state antitrust laws at issue were not preempted

15   because they did not pose an obstacle to the congressional purposes and policies identified in

16   *Illinois Brick* or *Hanover Shoe* (*ARC America*, 490 U.S. at 103), indicating that if state laws *did*

17   conflict with congressional purposes and policies, preemption would be proper.

18      Here, the FTAIA's purpose of setting a "clear benchmark" as to the geographical scope of

19   American antitrust laws (H.R. Rep. No. 97-686, at 2-3) would be fatally undermined by permitting

20   state laws to be applied to foreign commerce that is otherwise excluded from the reach of federal

21   law by the FTAIA.  *Cf. ARC America*, 490 U.S. at 102-04.  Applying these principles, both state

22   and federal courts have held that the FTAIA limits the application of state antitrust and unfair

23   competition laws under the Supremacy Clause.  *See* Mot. at 5-9.

24      IPPs' citation to *Wyeth v. Levine*, 555 U.S. 555, 574-75 (2009) is not on point.  Opp'n at 5-

25   6.  That case can be cited for the general principle that silence on the issue of preemption, coupled

26   with evidence of Congressional awareness of conflicting state law causes of action in a particular

27   area of legislation, may show that Congress did not intend to preempt conflicting state law.  *Wyeth*,

28   555 U.S. at 575; *see also In re Vehicle Carrier Servs. Antitrust Litig.*, No. 13-3306 ES, 2015 WL

5095134, at *14 (D.N.J. Aug. 28, 2015) (distinguishing *Wyeth* on this basis).  Here, however, there is nothing in the legislative record of the FTAIA to suggest that Congress was aware of the operation of possibly conflicting state antitrust laws in the field of foreign commerce.  To the contrary, as IPPs point out, the legislative history of the FTAIA says nothing about state antitrust laws.  Opp'n at 5-6.  This makes sense because there is no evidence that, prior to the FTAIA, any state antitrust law was thought to apply to claims where the anticompetitive effects occurred in foreign commerce.  In such circumstances, the "failure to provide for preemption expressly may reflect nothing more than the settled character of the implied preemption doctrine that courts will dependably apply."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 387-88 (2000).

There is also no merit to IPPs' argument that the FTAIA should not preempt conflicting state antitrust law simply because Congress referred to state antitrust laws in two different laws that happened to be passed on the same day as the FTAIA—the Export Trading Company Act of 1982 and a title concerning "Export Trade Certificates of Review."  Opp'n at 6.  The "Export Trade Certificates of Review" was developed in conjunction with the Export Trading Company Act of 1982, and were part of the same legislative track, separate from the FTAIA.  There is nothing in these statutes to indicate that Congress had any intent to permit state antitrust laws to apply to foreign commerce.  To the contrary, the purpose of these laws, like that of the FTAIA, is to make it clear that certain areas of foreign commerce (in that case, export cartels) are excluded from antitrust laws in the United States.  *See* H.R. Rep. No. 97-637, at 7-8 (1982).

Further, under the doctrine of implied preemption, state law *must* yield where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Aguayo v. U.S. Bank*, 653 F.3d 912, 918 (9th Cir. 2011) (internal quotation marks omitted).  There can be no credible dispute that Congress passed the FTAIA to create a "single, objective test" (H.R. Rep. No. 97-686, at 2-3), and that permitting state laws to extend beyond such a test would violate Congress's purpose and invade the province of the federal government to regulate foreign commerce under the Commerce Clause.  *See, e.g.*, *SRAM*, 2010 WL 5477313, at *4; *In re Intel*, 476 F. Supp. 2d at 457 ("Congress' intent [in enacting the FTAIA] would be subverted if state antitrust laws were interpreted to reach conduct which the federal law could not."); *Japan Line, Ltd. v. Cnty.*

1   *of L.A.*, 441 U.S. 434, 453- 54 (1979) ("prevent[ing] the Federal Government from speaking with

2   one voice" on foreign commerce is "inconsistent with Congress's [s] power to 'regulate Commerce

3   with foreign Nations.'") (internal quotation marks omitted).

4        IPPs' argument that the lack of any reference to state law in the FTAIA is dispositive has

5   been found in an analogous context involving the Shipping Act to be "borderline absurd and is

6   clearly at odds with Congress's intent." *See In re Vehicle Carrier Servs.*, 2015 WL 5095134, at *13

7   ("The Court agrees with Defendants that the Shipping Act's silence on the availability of private

8   remedies under state law does not necessitate a finding of no preemption.").

9        IPPs do not identify any case or other authority supporting their argument that state antitrust

10  laws are unaffected by the FTAIA.  Conversely, Defendants have cited multiple decisions holding

11  that the FTAIA applies to state law claims by virtue of the Supremacy Clause or Commerce Clause

12  and are unaware of a single court that has held otherwise.  Mot. at 5-9.[4]

13       Instead of addressing the cases cited by Defendants, IPPs rely on inapposite cases that stand

14  only for the proposition that Congress did not intend to preempt state antitrust laws from applying

15  to domestic commerce within those states (a proposition which is not at issue in this motion).

16  Opp'n at 7-8 (citing *Knevelbaard*, 232 F.3d at 993; *Barclays Bank PLC v. Franchise Tax Board of*

17  *Cal.*, 512 U.S. 298, 327 (1994)).  There is nothing in these cases that even mentions the issue of

18  applying state antitrust laws to foreign commerce or the application of the FTAIA to state law

19  claims.  *See Knevelbaard*, 232 F.3d at 993-94 (holding only that the Commerce Clause did not

20  prevent the application of the Cartwright Act to prevent price-fixing by buyers of California milk,

21  where the conduct complained of took place in *Wisconsin and California*).

22       IPPs' citation to *Barclays Bank*, is similarly unhelpful.  Opp'n at 7-8.  The Supreme Court in

23  *Barclays Bank* held that Congress "implicitly has permitted the States" to use different tax reporting

24  methods than those required by the federal government for foreign tax reporters.  512 U.S. at 325-

25  _____

26  [4] This issue may soon be addressed by the Ninth Circuit, which recently heard oral argument as to
whether the FTAIA applies to exclude claims under Minnesota antitrust law.  *See Best Buy Co., Inc.*

27  *v. HannStar Display Corp.*, Nos. 13-17408, 13-17618 (9th Cir.) (oral argument heard on December
11, 2015).

28

27.  That holding was based on Congress's repeated consideration and rejection of bills to prevent California's mandatory reporting requirements from applying to foreign entities, clearly indicating the intent of Congress not to preempt these state law measures.  *Id.*  IPPs fail to cite any evidence here that Congress decided not to preempt the application of state antitrust laws that would undermine and conflict with the limitations of the FTAIA.

Finally, principles of international comity, which expressly underlie the FTAIA, also preclude state antitrust and unfair competition laws from applying to foreign commerce.  *See Empagran S.A. v. F. Hoffmann-LaRoche Ltd.*, 417 F.3d 1267, 1271 (D.C. Cir. 2005) ("*Empagran II*"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 987 (9th Cir. 2008) ("*DRAM*"); *In re Monosodium Glutamate Antitrust Litig.*, 477 F.3d 535, 538 (8th Cir. 2007); *cf. Mujica v. AirScan Inc.*, 771 F.3d 580, 615 (9th Cir. 2014) (doctrine of international comity warranted the dismissal of state law tort claims premised on foreign conduct that lay beyond the extraterritorial reach of the Alien Tort Statute).  The conduct of foreign relations is a uniquely federal function, and it would intrude on that exclusive province to permit individual state antitrust laws—in violation of international comity—to apply to foreign commerce that Congress has determined to leave to the regulation of foreign sovereigns.  *Empagran II*, 417 F.3d at 1271; *see also Mujica*, 771 F.3d at 604 ("[T]here is always a risk that our foreign relations could be impaired by the application of state laws, which do not necessarily reflect national interests.  Out of regard for that risk, we should be careful not to give undue weight to states' prerogatives.") (citation and internal quotation marks omitted).  Indeed, just this term, the Supreme Court reaffirmed its concern for international comity in refusing to apply state law to a claim arising outside the United States.  *See OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396-97 (2015).

### 2.  The Harmonization Requirements of State Antitrust Laws with Federal Law Also Require that FTAIA Limits Apply to State Laws

It is undisputed that a number of the state laws at issue include explicit harmonization provisions that direct courts to look to federal antitrust law to ascertain what constitutes a substantive state antitrust violation.  *See, e.g.*, Iowa Code § 553.2 (stating that Iowa and federal antitrust laws should be harmonized in order "to achieve uniform application of the state and federal

1    laws prohibiting restraints of economic activity and monopolistic practices").[5]  Such laws provide

2    an alternative ground for applying the FTAIA to state antitrust law claims.  *See* Mot. at 10-11.

3          IPPs argue against this proposition by citing one state court decision:  *Rambus Inc. v.*

4    *Micron Tech*, 2009 Cal. Super. LEXIS 362 (Cal. Super. Ct. May 29, 2009).  *See* Opp'n at 10.  But

5    the *Rambus* case merely rejected the argument that the FTAIA is jurisdictional and thus deprived

6    California state courts of subject matter jurisdiction.  2009 Cal. Super. LEXIS 362 (denying motion

7    to dismiss plaintiff's claims based on foreign commerce for lack of *subject matter jurisdiction*).  As

8    IPPs themselves point out on page 4 of their opposition, the Ninth Circuit has since rejected the

9    notion that the FTAIA is a jurisdictional statue and has instead ruled that the FTAIA is part of the

10   substantive elements of an antitrust claim.  *Hsiung II*, 778 F.3d at 751.

11         It is precisely such substantive federal elements that are required to be harmonized by these

12   state antitrust laws, either by statute or court decision.  For example, both state and federal courts in

13   California have held that the FTAIA does, in fact, apply to the Cartwright Act.  *Ubiquiti Networks*,

14   2013 WL 368365, at *9 ("Here, Defendants' Cartwright Act counterclaims suffer from the same

15   shortcomings as their Sherman Act counterclaims.  Specifically, Defendants' failure to explain how

16   Plaintiff's conduct undermined competition in domestic markets means that they have similarly

17   failed to explain how Plaintiff's conduct undermined competition in a California market."); *Amarel*,

18   202 Cal. App. 3d at 149 (the FTAIA "establish[es] an 'effects' test for application of the *state's*

19   antitrust and unfair competition laws") (emphasis added);[6] *see* Mot. at 10-11.

---

20   [5] In addition to Iowa, the following state antitrust laws also contain harmonization provisions:
21   Arizona (Ariz. Rev. Stat. Ann. § 44-1412); District of Columbia (D.C. Code § 28-4515); Hawaii
     (Haw. Rev. Stat. § 480-3); Illinois (740 ILCS 10/11); Kansas (Kansas Stat. Ann. § 50-163);
22   Michigan (Mich. Comp. Laws § 445.784); Nebraska (Neb. Rev. Stat. § 59-829); Nevada (Nev. Rev.
     Stat. § 598A.050); New Hampshire (NH Rev Stat § 356:14 (2014)); New Mexico (N.M. Stat. Ann.
     §§ 57-1-15, 57-12-4); South Dakota (S.D. Codified Laws § 37-1-22); Utah (Utah Code Ann. §76-
23   10-3118); Vermont (Vt. Stat. Ann. tit. 9, § 2453(b)); West Virginia (W. Va. Code § 47-18-16); *see
     also* M.G.L. c. 93A, §2(b) (requiring harmonization with the FTC); Mont. Code, §30-14-104
24   (same); N.H. Rev. Stat. Ann. §358-a:13 (same); R.I. Gen. Laws § 6-13.1-3 (same); S.C. Code Ann.
     § 39-5-20 (same).

25
26   [6] The California Court of Appeal found that Congress enacted the FTAIA "to establish a uniform
     standard, in the face of conflicting judicial interpretations, of the domestic effects necessary to
27   trigger the jurisdiction of American antitrust laws."  *Amarel*, 202 Cal. App. 3d at 149.  Applying
     preemption principles, the court found that in order for California law to "coexist . . . in harmony"
28   with federal antitrust law, the FTAIA must apply to determine the reach of California antitrust and

1

**B.**   **The FTAIA Bars IPPs' Claims Based on Foreign Commerce**

2

      **1.**   **IPPs' Claims Based on Capacitors That Were Sold by Defendants to Unrelated Third Parties Overseas Cannot Satisfy the "Gives Rise To" Test of the FTAIA**

3

4

IPPs concede that foreign customers that purchased capacitors from Defendants abroad

5

could not bring their own antitrust claims in the United States because "the foreign distributor's

6

harm was suffered in foreign, not domestic, commerce." Opp'n at 17. Because IPPs' claims of

7

"pass through" injury from such foreign sales are merely derivative of the alleged foreign injury,

8

IPPs cannot satisfy the FTAIA requirement that domestic anticompetitive effects of Defendants'

9

capacitors sales "give[] rise to" their claims, even though these capacitors were eventually sold to

10

IPPs in the United States. 15 U.S.C. § 6a. In the words of the statute, the antitrust laws of the

11

United States only apply to foreign commerce, under the direct domestic effect exception, when

12

Defendants' conduct has a "direct, substantial, and reasonably foreseeable effect" on domestic

13

commerce that "gives rise to" IPPs' claims. *Id.*

14

IPPs do not dispute that the FTAIA's domestic effects test is *not* satisfied when a claim fails

15

the "gives rise to" test, even when the other elements of the domestic effects test (*i.e.*, "direct,

16

substantial, and reasonably foreseeable") are met. Opp'n at 17-18 (acknowledging that the foreign

17

purchasers in *Lotes Co., Ltd. v. Hon Hai Precision Industry Co.*, 753 F.3d 395 (2nd Cir. 2014),

18

*Empagran*, *DRAM*, and *Monosodium Glutamate* did not meet the "gives rise to" requirement "and

19

thus . . . could not satisfy the FTAIA's domestic effects exception").

20

Therefore, even if the Court were to assume that Defendants' foreign commerce sales had

21

direct, substantial, and reasonably foreseeable effects on United States domestic commerce, as in

22

*Motorola Mobility*, IPPs' claims based on products that were first sold overseas by Defendants to

23

unrelated parties are still barred by the FTAIA because there is no *domestic* anticompetitive effect

24

 

unfair competition laws. *Id.* at 150. More recent authority observing that California law is not always coextensive with the Sherman Act on the ground that "the Cartwright Act was modeled not on federal antitrust statutes but instead on statutes enacted by California's sister states around the turn of the 20th century" does not overturn the California Court of Appeal's determination of the impact that Congress's later enactment of the FTAIA had on California law. *See Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1205 n.4 (9th Cir. 2014) (quoting *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1195 (2013)).

25

26

27

28

1    that "gives rise to" IPPs' alleged injury.  *Motorola Mobility*, 775 F.3d at 819 ("What trips up

2    Motorola's suit is the statutory requirement that the effect of the anticompetitive conduct on

3    domestic U.S. commerce give rise to an antitrust cause of action."); Mot. at 15.  Summary judgment

4    is required for the same reason here with respect to IPPs' claims based on capacitors that are first

5    sold to unrelated parties in foreign markets.  *See* Mot. at 15.  In such circumstances, the claim that a

6    foreign purchaser "passes on" the *foreign* anticompetitive effect to customers in the United States

7    simply does not satisfy the FTAIA requirement that an anticompetitive effect in *domestic* commerce

8    "give rise to" the antitrust cause of action.  To the contrary, it is the allegedly passed on "foreign"

9    anticompetitive effect that is the conceded source of the claimed violation.

10       IPPs are incorrect to suggest that "*Motorola* merely involved the straightforward application

11   of the Supreme Court's *Illinois Brick* doctrine . . . ."  Opp'n at 13.  The determination that "[t]he

12   conduct that increased the cost to Motorola"—the first purchaser in the U.S.—did not give rise to an

13   antitrust claim pursuant to the FTAIA because it "occurred entirely in foreign commerce" was an

14   independent ground for summary judgment, separate from the court's analysis under *Illinois Brick*.

15   *Motorola Mobility*, 775 F.3d at 818-824.  Nor are IPPs correct that "the Ninth Circuit . . . held in

16   *Hsiung II*" that the *Motorola Mobility* decision is limited to its *Illinois Brick* analysis.  Opp'n at 13.

17   To the contrary, the Ninth Circuit simply did not discuss this aspect of the Motorola ruling in

18   *Hsiung II*, without criticizing it in any way.  778 F.3d at 760.

19       Nor can IPPs avoid the "give rise to" requirement by arguing that the test somehow only

20   applies in the situation where foreign plaintiffs are attempting to bring claims under U.S. antitrust

21   laws, as opposed to domestic purchasers who paid allegedly inflated prices in domestic commerce

22   as a result of a pass through of prices fixed on an overseas sale.  Opp'n at 17-18.  The statutory

23   requirement that a domestic anticompetitive effect "give rise to" the antitrust claim does not

24   distinguish between foreign and domestic purchasers.  It applies to both, and IPPs point to no

25   language in the FTAIA that would support such a distinction.  Further, the purposes of the FTAIA

26   would not be served by such a distinction, as it makes no sense to argue, as IPPs have here, that a

27   foreign purchaser of the allegedly price fixed capacitor would have no claim under U.S. antitrust

28   laws because the violation and anticompetitive effect are foreign, but that somehow an indirect

1    purchaser of a capacitor in the United States claiming "pass through" of such a foreign effect is able

2    to state a U.S. claim.  Both types of claims—those of indirect domestic or foreign purchasers—are

3    excluded because the injury arises from an anticompetitive effect in foreign commerce.  *See* IB

4    Philip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 272i, at 304 (4th ed. 2013) (the FTAIA

5    focuses on "transactions, not on the identity or nationality of the parties").

6              Where IPPs are claiming injury from a capacitor that is first sold to an unrelated party

7    overseas, IPPs' alleged "pass through" injury clearly arises from the foreign injury that took place

8    when the foreign customers purchased the capacitors abroad—*i.e.*, the claims arise from a foreign

9    anticompetitive effect, not a domestic one.  *See OBB*, 136 S. Ct. 390.  Thus, as in *Lotes*, *Empagran*,

10   *DRAM*, and *Monosodium Glutamate*, the injury that gives rise to IPPs' claims "*precedes* any

11   domestic effect in the causal chain," and the "direction of causation runs the wrong way."  *Lotes*,

12   753 F.3d at 414.  The claimed injury arose out of a price increase that occurred entirely in foreign

13   commerce—the fact that it was allegedly passed through in a later domestic sale is simply not an

14   injury arising out of any anticompetitive conduct or effect relating to domestic commerce.  *See*

15   *Motorola Mobility*, 775 F.3d at 818-19.

16             Although the Supreme Court's recent decision in *OBB* did not involve an antitrust claim or

17   the FTAIA, it is instructive by analogy.  There, the court explained that regardless of whether an

18   action involves a mix of domestic and foreign conduct, "an action is '*based upon*' the 'particular

19   conduct' that constitutes the 'gravamen' of the suit."  *OBB*, 136 S. Ct. at 396-97 (emphasis added).

20   Citing Justice Holmes, the Court found that the "'essentials' of a personal injury narrative will be

21   found at the 'point of contact' – 'the place where the boy got his fingers pinched.'"  *Id.* at 397.  That

22   principle applies equally well in interpreting the "gives rise to" requirement of the FTAIA.  With

23   respect to IPPs' claims based on capacitors first sold by Defendants to unrelated parties in foreign

24   commerce, the "'particular conduct' that constitutes the 'gravamen'" of their suit, or the location of

25   the allegedly unlawful conduct giving rise to IPPs' injury—the "pinching" per Holmes's analysis—

26   occurred in foreign commerce and took place where the initial foreign sales were made and paid

27   for.  *Cf. OBB*, 136 S. Ct. at 396-97 (noting that action was "based upon" foreign conduct,

28   notwithstanding the fact that plaintiff made the underlying purchase in the United States).  Here,

1    there was simply no antitrust violation, or tort, committed by Defendants in domestic commerce

2    with respect to their overseas sales that could "give rise to" IPPs' claims from the alleged pass

3    through of that foreign injury in a United States sale.  *See, e.g.*, *DRAM*, 546 F.3d at 988-89

4    (affirming dismissal of Sherman Act claims arising from foreign purchases); *Motorola Mobility*,

5    775 F.3d at 819.

6          Finally, there is no merit to IPPs' argument that *Motorola Mobility* is distinguishable

7    because the purchases in foreign commerce were by the plaintiff's "separate corporate foreign-

8    subsidiaries, which then resold the products to Motorola itself."  Opp'n at 13.  Indeed, the Seventh

9    Circuit's decision was based on the fact that Motorola's foreign subsidiaries were distinct legal

10   entities—and here there is no dispute that the foreign purchasers of the capacitors at issue in this

11   motion were distinct entities, unaffiliated with either Defendants or the U.S. indirect purchaser

12   plaintiffs.  *See Motorola Mobility*, 775 F.3d at 822.  The dispositive point is that there is no

13   domestic anticompetitive effect to "give rise to" the violation.[7]

14                    **2.    Capacitors Imported by Third-Parties That Are Not Defendants or
                            Alleged Co-Conspirators Are Not Subject To The Import Commerce**

15                          **Exclusion of the FTAIA**

16         Once it is determined that IPPs' claims based on passed-through injury from foreign

17   capacitor sales fail the "gives rise to" test of the FTAIA, they cannot be resurrected under the

18   "import" exclusion.  The reason is that it is undisputed that none of these sales were imported by

19   Defendants into the United States.  In an apparent effort to confuse this issue, IPPs argue that the

20   import exclusion should apply because Defendants admittedly had *other* sales that were imported

21   into the United States.  Opp'n at 22.  But these "other" sales involving direct imports are not at

22   issue in this motion.

23   _____

24   [7] IPPs also attempt to distinguish *Motorola Mobility* "on the ground that the damage theory that is
     most applicable to this case was waived by Motorola in the district court."  Opp'n at 15.  However,

25   the Seventh Circuit clearly held that the FTAIA barred Motorola's claims "[w]hether or not
     Motorola was harmed indirectly . . . ."  *Motorola Mobility*, 775 F.3d at 820. That same analysis bars

26   IPPs' claims based on overseas sales here.  Nor is IPPs' reliance upon the Seventh Circuit's earlier
     decision in *Minn-Chem* helpful to their position, as that case clearly involved price fixed products

27   purchased in the United States "directly from members of the alleged cartel." *Minn-Chem, Inc. v.
     Agrium Inc.*, 683 F.3d 845, 855 (7th Cir. 2012).

28

1   This motion seeks summary judgment against only the portion of IPPs' claims that is based

2   on capacitors *not* imported by any Defendant or alleged co-conspirator into the United States.

3   There is simply no legal basis for IPPs' claim that just because Defendants have other sales of

4   capacitors that satisfy the import exclusion, that the exclusion then somehow also applies to the

5   overseas sales of capacitors by Defendants, which they never imported themselves into the United

6   States.

7   Although IPPs cite *Hsiung II* as purported support for their argument that imports by a

8   Defendant also transform all foreign sales by the Defendant into "import commerce" (Opp'n at 22),

9   that case says no such thing.  The amended decision does not modify the Ninth's Circuit's original

10  holding that the import commerce exclusion "means precisely what it says" and applies only to

11  "transactions between the foreign defendant producers . . . and purchasers located in the United

12  States." *Hsiung II*, 778 F.3d at 755, n.8 (noting that it "need not determine the outer bounds of

13  import trade" because the conspirators directly imported price-fixed goods); *see United States v.*

14  *Hsiung*, 758 F.3d 1074, 1090 (9th Cir. 2014) ("*Hsiung I*").  Because *Hsiung II* was a criminal case,

15  and did not involve claims by private plaintiffs for damages, there was no need for the Ninth Circuit

16  to parse through which sales would satisfy the import exclusion and which would not; and it

17  certainly did not give any indication that the import exclusion would apply in a case where an

18  unrelated third party was the importer.[8]

19  As explained above, unlike in *Hsiung II*, the Foreign Commerce Claims at issue in this

20  motion do not involve *any* direct imports by Defendants or any alleged conspirators.  To the

21  contrary, this motion is directed *solely* at IPPs' indirect purchaser claims based on purchases of

22  standalone capacitors first sold outside the United States to customers, such as distributors, that are

23  not Defendants or alleged co-conspirators.  On these undisputed facts, the import exception simply

24

25

---

[8] The Ninth Circuit has, however, heard oral argument recently in another appeal from the *TFT-LCD* case that raises issues of the scope of the FTAIA in the private damages context.  *See Best Buy Co., Inc. v. HannStar Display Corp.*, Nos. 13-17408, 13-17618 (9th Cir.) (oral argument heard on December 11, 2015).

1   cannot apply.  *See, e.g.*, *Hsiung II*, 778 F.3d at 754 ("wholly foreign transactions" are not import

2   commerce (citing H.R. Rep. 97-686, at 9-10)); *Motorola Mobility*, 775 F.3d at 817-18.[9]

### III.   CONCLUSION

4         For all of the foregoing reasons, Defendants' motion for partial summary judgment should

5   be granted and the Court should dismiss IPPs' Foreign Commerce Claims from this case.

6   Alternatively, the Court should enter an order, pursuant to Rule 16, narrowing the issues for class

7   certification by limiting IPPs' claims to those involving capacitors sold or imported by Defendants

8   or their alleged conspirators directly into the United States.  See Mot. at 16-17.

10  DATED:  December 18, 2015                                Respectfully submitted,

11                                                          WINSTON & STRAWN LLP

12                                                          By:   ___/s/ Jeffrey L. Kessler_____
                                                            Jeffrey L. Kessler (*pro hac vice*)
13                                                          A. Paul Victor (*pro hac vice*)
                                                            Molly M. Donovan (*pro hac vice*)
14                                                          Mollie C. Richardson (*pro hac vice*)
                                                            200 Park Avenue
15                                                          New York, New York 10166
                                                            Telephone: (212) 294-4698
16                                                          Facsimile: (212) 294-4700
                                                            jkessler@winston.com
17                                                          pvictor@winston.com
                                                            mmdonovan@winston.com

18  _____

19  [9] Although Judge Illston interpreted *Hsiung I* as applying the import commerce exclusion where
    defendants "targeted" U.S. companies, even though the "defendants never actually manufactured
20  products for importation," that interpretation was contrary to the Ninth Circuit's opinion.  *See In re
    TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. 10-cv-3205 SI, 2014 WL 4652126, at *2 (N.D.
21  Cal. Sept. 18, 2014).  First, the Ninth Circuit held that "[t]argeting is not a legal element for import
    trade under the Sherman Act."  *Hsiung I*, 758 F.3d at 1091.  Second, it found that the exclusion
22  applied only because the conspirators directly imported price-fixed panels.  *Id.*, at 1091, 1094 ("The
    evidence . . . demonstrated that the defendants sold hundreds of millions of dollars of price-fixed
23  panels directly into the United States."); *see also Hsiung II*, 778 F.3d at 754-55, n.8 (noting that
    where "at least a portion of the transactions . . . involve[d] the heartland situation of the direct
24  important of foreign goods into the United States" the defendants' conduct is properly considered
    import trade).  Moreover, Judge Illston did not distinguish between government suits and private
25  damages suits, which require proof that all claimed damages satisfy the FTAIA.  *See Motorola
    Mobility*, 775 F.3d at 818 ("Motorola's suit, insofar as it relates to the 99 percent of panels
26  purchased by the foreign subsidiaries, is barred by" the FTAIA); *id* at 826 (indicating that the
    burden for a government suit is lower than for a private damages suits).  The IPPs' reliance on
27  *Proview Technology Inc., et al. v. AU Optronics Corp., et al.*, No. 12-cv-3802-SI, 2014 WL
    2916933 (N.D. Cal. Sept. 19, 2014) is misplaced for the same reasons.

28

mrichardson@winston.com

Ian L. Papendick (SBN 275648)
101 California Street
San Francisco, CA 94111
Tel: (415) 591-6905
Fax: (415) 591-1400
ipapendick@winston.com

*Counsel for Defendants*
*Panasonic Corporation*
*Panasonic Corporation of North America*
*SANYO Electric Co., Ltd.*
*SANYO North America Corporation*

WILMER CUTLER PICKERING HALE AND DORR LLP

*/s/ Heather S. Tewksbury*
Heather S. Tewksbury
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6134
Fax: (650) 858-6100
heather.tewksbury@wilmerhale.com

Thomas Mueller *(pro hac vice)*
Stacy Frazier *(pro hac vice)*
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000
Fax:  (202) 663-6363
thomas.mueller@wilmerhale.com
stacy.frazier@wilmerhale.com

*Attorneys for Defendants Elna Co., Ltd. and*
*Elna America, Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Jonathan M. Jacobson*
Jonathan M. Jacobson
Chul Pak (*admitted pro hac vice*)
Jeffrey C. Bank (*admitted pro hac vice*)
Justin Cohen (*admitted pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:  (212) 497-7758
Facsimile:  (212) 999-5899
jjacobson@wsgr.com
cpak@wsgr.com

DEFS' REPLY MEMORANDUM I/S/O DEFS.'
JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: INDIRECT FOREIGN SALES                                      Case No.  3:14-cv-03264-JD

-15-

jbank@wsgr.com
jcohen@wsgr.com

Jeff VanHooreweghe (*admitted pro hac vice*)
1700 K Street, N.W., Fifth Floor
Washington, DC 20006
Telephone:  (202) 973-8825
Facsimile:  (202) 973-8899
jvanhooreweghe@wsgr.com

*Attorneys for Defendants Hitachi Chemical Co., Ltd.,
Hitachi Chemical Company America, Ltd., and
Hitachi AIC Incorporated*

DENTONS US LLP

/s/ Bonnie Lau_____
Bonnie Lau
525 Market Street, 26th Floor
San Francisco, CA 94105
415-882-5000
Fax: 415-882-0300
Email: bonnie.lau@dentons.com

Felix T. Woo
601 S. Figueroa Street, Suite 2500
Los Angeles, California  90017
213-623-9300
Fax: 213-623-9924
Email: felix.woo@dentons.com

*Attorneys for Defendant Matsuo Electric Co., Ltd.*

GIBSON, DUNN & CRUTCHER LLP

/s/ George A. Nicoud III_____
GEORGE A. NICOUD III, SBN 106111

AUSTIN V. SCHWING, SBN 211696
ELI M. LAZARUS, SBN 284082
tnicoud@gibsondunn.com
aschwing@gibsondunn.com
elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Telephone:     415.393.8200
Facsimile:      415.393.8306

MATTHEW PARROTT, SBN 302731
mparrott@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive

Irvine, CA  92612-4412
Telephone:      949.451.3800
Facsimile:      949.451.4220

*Attorneys for Defendants NEC TOKIN Corporation
and NEC TOKIN America, Inc.*

K&L GATES LLP

*/s/ Michael E. Martinez_____*
Scott M. Mendel (*pro hac vice*)
Steven M. Kowal (*pro hac vice*)
Michael E. Martinez (*pro hac vice*)
Lauren N. Norris *(pro hac vice)*
Lauren B. Salins *(pro hac vice)*
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, IL  60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8000

*Counsel for Defendants
Nichicon Corporation
Nichicon (America) Corporation*

HUNTON AND WILLIAMS LLP

*/s/ Djordje Petkoski_____*
Djordje Petkoski (admitted pro hac vice)
David A. Higbee (admitted pro hac vice)
Wendell L. Taylor (admitted pro hac vice)
Leslie W. Kostyshak (admitted pro hac vice)
Robert A. Caplen (admitted pro hac vice)
2200 Pennsylvania Avenue, N.W.
Washington, D.C.  20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
dpetkoski@hunton.com
dhigbee@hunton.com
wtaylor@hunton.com
lkostyshak@hunton.com
rcaplen@hunton.com

M. Brett Burns (SBN 256965)
575 Market Street, Suite 3700
San Francisco, California 94105
Telephone: (415) 975-3700
Facsimile: (415) 975-3701
mbrettburns@hunton.com

*Attorneys for Defendants Rubycon Corporation  and*

1      *Rubycon America Inc.*

2

3      CADWALADER, WICKERSHAM & TAFT LLP

4      */s/ Charles F. Rule*_____
       Charles F. Rule (admitted *pro hac vice*)

5      Joseph J. Bial (admitted *pro hac vice*)
       Daniel J. Howley (admitted *pro hac vice*)

6      700 6th St, NW
       Washington, DC 20001

7      Telephone:  (202) 862-2200
       Facsimile:  (202) 862-2400

8      rick.rule@cwt.com
       joseph.bial@cwt.com

9      daniel.howley@cwt.com

10     *Attorneys for Defendants United Chemi-Con, Inc. and
       Nippon Chemi-Con Corporation*

11

12     BONA LAW PC

13     */s/ Jarod M. Bona*_____
       Jarod M. Bona

14     Aaron R. Gott (Admitted *Pro Hac Vice*)
       BONA LAW PC

15     4275 Executive Square, #200
       La Jolla, CA 92037

16     Telephone: (858) 964-4589

17     Facsimile: (858) 964-2301
       Email: jarod.bona@bonalawpc.com

18     Email: aaron.gott@bonalawpc.com

19     *Attorneys for Taitsu Corporation and Taitsu America,
       Inc.*

20

21

22     BAKER & MCKENZIE LLP

23     */s/ Darrell Prescott*_____
       Darrell Prescott (admitted *pro hac vice*)

24     Catherine Y. (Koh) Stillman (admitted *pro hac vice*)
       452 Fifth Avenue
       New York, NY 10018

25     (212) 626-4476
       Fax: (212) 310-1637

26     Email: Darrell.Prescott@bakermckenzie.com
       Email: Catherine.Stillman@bakermckenzie.com

27
       Meghan E. Hausler (*admitted pro hac vice*)

28     2300 Trammell Crow Center

2001 Ross Avenue
Dallas, TX 75206
Telephone: (214) 965-7219
Facsimile: (214) 965-5937
Email:  Meghan.Hausler@bakermckenzie.com

Colin H. Murray (SBN 159142)
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111
(415) 591-3244
Fax: (415) 576-3099
Email: Colin.Murray@bakermckenzie.com

*Attorneys for Defendants Okaya Electric Industries
Co., Ltd.*


HUGHES HUBBARD & REED LLP

*/s/ Ethan E. Litwin*
Ethan E. Litwin (*admitted pro hac vice*)
Sigrid U. Jernudd (admitted *pro hac vice*)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel: (212) 837-6000
Fax: (212) 422-4726
Email: Ethan.Litwin@hugheshubbard.com
Email: Sigrid.Jernudd@hugheshubbard.com

David H. Stern (CA Bar No. 196408)
Carolin Sahimi (CA Bar No. 260312)
Hughes Hubbard & Reed LLP
350 South Grand Avenue
Los Angeles, CA 90071-3442
Tel: (213) 613-2800
Fax: (213) 613-2950
Email: David.Stern@hugheshubbard.com
Email: Carolin.Sahimi@hugheshubbard.com

*Attorneys for Defendants Soshin Electric Co., Ltd. and
Soshin Electronics of America, Inc.*


DENTONS US LLP

*/s/ Gaspare J. Bono*
Gaspare J. Bono (admitted *pro hac vice*)
Stephen M. Chippendale (admitted pro *hac vice*)
Claire M. Maddox (admitted *pro hac vice*)
Eric Y. Wu (admitted *pro hac vice*)
Dentons US LLP
1900 K St., NW

Washington, DC 20006
Tele.: (202) 496-7500
Fax:  (202) 496-7756
gap.bono@dentons.com
steve.chippendale@dentons.com
claire.maddox@dentons.com
eric.wu@dentons.com

Andrew S. Azarmi (SBN 241407)
Dentons US LLP
Spear Tower, One Market Plaza, 24th Fl.
San Francisco, CA 94105
Tele.: (415) 267-4000
Fax:  (415) 356-3873
andrew.azarmi@dentons.com

*Attorneys for Defendants*
*Shinyei Kaisha,*
*Shinyei Technology Co., Ltd.,*
*Shinyei Capacitor Co., Ltd., and*
*Shinyei Corporation of America, Inc.*

Pursuant to Local Rule 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.