Charles E. Tompkins (admitted *pro hac vice*)
Paul J. Ripp (admitted *pro hac vice*)
Eric R. Lifvendahl (admitted *pro hac vice*)
Anthony J. O'Neill (admitted *pro hac vice*)
**WILLIAMS MONTGOMERY & JOHN LTD.**
233 S. Wacker Drive, Suite 6100
Chicago, IL 60606
Telephone: (312) 443-3200
Facsimile: (312) 630-8500
Email: cet@willmont.com
       pjr@willmont.com
       erl@willmont.com
       ajo@willmont.com

Lesley E. Weaver (State Bar Number 191305)
**BLOCK & LEVITON LLP**
520 Third Street, Suite 108
Oakland, CA 94607
Telephone: (415) 968-8999
Facsimile: (617) 507-6020
Email: lweaver@blockesq.com

*Attorneys for Plaintiff Flextronics International USA, Inc.*

[*Additional Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No.: 3:14-cv-03264-JD |
| | **AMENDED JOINT STATEMENT REGARDING RESPONSES TO THE COURT'S FTAIA QUESTIONS (DKT NO. 1013)** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Prior Related Filing: Dkt. No. 1098 Prior Related Orders: Dkt. Nos. 1013, 1066 |

Pursuant to the Court's February 12, 2016 docket entry Order [Dkt. 1066], the undersigned Defendants, Direct Purchaser Plaintiffs ("DPPs"), Indirect Purchaser Plaintiffs ("IPPs"), and Flextronics International USA, Inc. ("Flextronics" and, together with DPPs and IPPs, the "Plaintiffs"), hereby submit this Joint Statement Regarding Responses to the Court's FTAIA Questions as set forth in the Court's January 12, 2016 Order [Dkt. 1013].

Defendants previously submitted to the Court their preliminary responses to Questions Nos. 1(a), 1(b), 1(c), 1(d), 2, 3, and 7 at the January 13, 2016 hearing. Where applicable, those responses are incorporated and updated below.

The parties have attempted to agree to the answers below. Any disputes are identified and briefly described below in separate statements. The parties are available at the Court's convenience to offer any additional explanation for these responses the Court may require.

This Amended Joint Statement Regarding Responses to the Court's FTAIA Questions (Dkt. No. 1013) includes modified statements provided by Flextronics in response to Questions 1d (Footnote 1), 5a, and 5b as indicated with yellow highlighting. Flextronics proposed modifications were prepared on March 2, 2016. Flextronics had intended for these statements to be included in the originally submitted joint statement. Flextronics has confirmed that DPPs, IPPs, and Defendants do not object to the filing of this amended joint statement. Except as indicated by yellow highlighting, this joint statement replicates the parties' submissions in the original filing.

**1. Which defendants import capacitors into the United States?**
   **1.a. Which defendants invoice customers located in the U.S.?**

| | Defendant | Yes/No/Disputed | Comment |
|---|---|---|---|
| 1 | AVX Corp. | Yes | |
| 2 | ELNA Co. Ltd. | Yes | |
| 3 | ELNA America Inc. | Yes | |
| 4 | Hitachi Chemical Co. | Yes | |
| 5 | Hitachi AIC Inc. | Yes | |
| 6 | Hitachi Chemical Co. America Ltd. | Yes | |
| 7 | Holy Stone Enterprise Co. Ltd. | Yes | |
| 8 | Vishay Polytech Co., Ltd. | Yes | |
| 9 | Milestone Global Technology, Inc. | Disputed | DPPs/Flex: Milestone says it does not invoice customers, but DPPs have not yet been able to verify Milestone's role in Holy Stone's U.S. sales but will work with Holy Stone through data questsions and discovery to do so,<br><br>Milestone: As Milestone has previously informed DPPs and discovery has established, Milestone is a wholly-owned subsidiary of Holy Stone Enterprise Co., Ltd., a Taiwanese corporation (Holy Stone Taiwan") and serves as a sales agent for Holy Stone Taiwan. in the United States, but Milestone makes no sales, and does not invoice customers, in the United States or elsewhere. |
| 10 | KEMET Corp. | No | |
| 11 | KEMET Electronics Corp. | Yes | |
| 12 | Matsuo Electric Co., Ltd. | Yes | |
| 13 | NEC TOKIN Corp. | Yes | |
| 14 | NEC TOKIN America Inc. | Yes | |
| 15 | Nichicon Corp. | Yes | Defs: No sales to third party customers in the U.S. Only internally transfers capacitors to Defendant U.S. subsidiary. |
| 16 | Nichicon (America) Corp. | Yes | |
| 17 | Nippon Chemi- | Yes | |

| | | | |
|---|---|---|---|
| | | | Con Corp. |
| 18 | United Chemi-Con, Inc. | Yes | |
| 19 | Okaya Electric Industries Co. Ltd. | Yes | Defs: No sales to third party customers in the U.S. Only internally transfers capacitors to Defendant U.S. subsidiary. |
| 20 | Okaya Electric America Inc. | Yes | |
| 21 | Panasonic Corp. | Yes | |
| 22 | Panasonic Corp. North America | Yes | |
| 23 | SANYO Electric Co. | Yes | |
| 24 | SANYO North America Corp. | Yes | |
| 25 | ROHM Co., Ltd. | Yes | Defs: No sales to third party customers in the U.S. Only customer in U.S. is Defendant U.S. subsidiary, ROHM Semiconductor U.S.A., LLC. |
| 26 | ROHM Semiconductor U.S.A. LLC | Yes | |
| 27 | Rubycon Corp. | Yes | |
| 28 | Rubycon America Inc. | Yes | |
| 29 | Shinyei Kaisha | Disputed | Defs: Shinyei Kaisha does not bill or ship capacitors to customers in the U.S. The Shinyei Defendants have produced data from Shinyei Kaisha Electronics (M) Sdn.Bhd ("SEM"), a wholly owned subsidiary. That entity, however, is not a named defendant in this litigation.<br><br>DPPs: The capacitor sales identified by Shinyei Kaisha above are directed from the corporate parent and are sold into the United States, and therefore are at issue in this action. |
| 30 | Shinyei Technology Co., Ltd. | Yes | Defs: STC internally transferred capacitors to SCA only (as reflected in hard copy data previously produced). STC made no sales to and did not invoice any non-Shinyei entities in the U.S.<br><br>DPPs: Sales to a U.S. subsidiary, agent or affiliate are U.S. sales. |
| 31 | Shinyei Capacitor Co. Ltd. | No | Defs:<br>As Shinyei Defendants advised DPPs as far back as September 14, 2015, the transactional data produced shows the "bill-to" location for each transaction. The SCC data shows that SCC has not billed to customers located in the U.S. Shinyei Defendants' response for SCC is therefore |

| | | | |
|---|---|---|---|
| | | | "No."<br><br>DPPs: Sales to a U.S. subsidiary, agent or affiliate are U.S. sales. |
| 32 | Shinyei Corp. of America | Yes | |
| 33 | Soshin Electric Co. Ltd. | Disputed | DPPs/Flex: DPPs: Data produced to Plaintiffs does not tie sales to specific customer locations, *i.e.*, bill-to or ship-to addresses. The parties dispute whether Soshin's sales in the U.S. pertain to capacitors or capacitor products.<br><br>Defs.: Soshin's counsel has represented to Plaintiffs that the only method by which to confirm the answers to the Court's questions would be to manually review hard copy invoices. The Soshin Defendants have submitted four Declarations stating that they did not ship to or invoice any customers located in the United States for sales of standalone film capacitors. |
| 34 | Soshin Electronics of America Inc. | Disputed | DPPs/Flex: DPPs: Data produced to Plaintiffs does not tie sales to specific customer locations, *i.e.*, bill-to or ship-to addresses. The parties dispute whether Soshin's sales in the U.S. pertain to capacitors or capacitor products.<br><br>Defs.: Soshin's counsel has represented to Plaintiffs that the only method by which to confirm the answers to the Court's questions would be to manually review hard copy invoices. The Soshin Defendants have submitted four Declarations stating that they did not ship to or invoice any customers located in the United States for sales of standalone film capacitors. |
| 35 | Taitsu Corp. | Disputed | Defs: No sales to any customers in the U.S. Only internally transfers capacitors to Defendant U.S. subsidiary.<br><br>DPPs; Sales to a U.S. subsidiary, agent or affiliate are U.S. sales. |
| 36 | Taitsu America Inc. | Yes | |

***Joint Statement of Indirect Purchaser Plaintiffs and Defendants***: With respect to Defendants' summary judgment motion regarding IPPs ("IPP Motion"), Defendants have not sought summary judgment on the ground of "ship to" versus "bill to" addresses. There is only one category of commerce at issue in Defendants' Joint Motion for Partial Summary Judgment ("Defendants' Motion") regarding IPPs' claims: Defendants' sales of capacitors outside the United States to foreign distributors, who in turn sell those capacitors to purchasers in the United States. See Def. Mot. at 1,

Dkt. 911. Defendants do not contest that such transactions exist for purposes of the pending motion. Id. Instead, Defendants argue that such claims are barred as a matter of law because the FTAIA bars all indirect purchaser claims based on alleged foreign price-fixing conduct where there is an initial foreign-to-foreign sale, even if the product was subsequently sold in United States' commerce to indirect purchasers. None of the Court's questions appear to be directed to, nor material to, the resolution of the IPP motion. To the extent that the Court finds information in this question relevant to the IPPs' motion, IPPs agree with DPPs' statement of the facts.

**1.b. Which defendants directly ship capacitors into the U.S. (regardless of the location of the customer who was invoiced for them)?**

| | Defendant | Yes/No/Disputed | Comment |
|---|---|---|---|
| 1 | AVX Corp. | Yes | |
| 2 | ELNA Co. Ltd. | Yes | |
| 3 | ELNA America | Yes | |
| 4 | Hitachi Chemical Co. | Yes | |
| 5 | Hitachi AIC Inc. | Yes | |
| 6 | Hitachi Chemical Co. America Ltd. | Yes | |
| 7 | Holy Stone Enterprise Co. Ltd. | Yes | |
| 8 | Vishay Polytech Co., Ltd. | Yes | |
| 9 | Milestone Global Technology, Inc. | Disputed | DPPs/Flex: Milestone says it does not invoice customers, but DPPs have not yet been able to verify Milestone's role in Holy Stone's U.S. sales but will work with Holy Stone through data questsions and discovery to do so,<br><br>Milestone: As Milestone has previously informed DPPs and discovery has established, Milestone is a wholly-owned subsidiary of Holy Stone Enterprise Co., Ltd., a Taiwanese corporation (Holy Stone Taiwan") and serves as a sales agent for Holy Stone Taiwan. in the United States, but Milestone makes no sales, and does not invoice customers, in the United States or elsewhere. |
| 10 | KEMET Corp. | No | |
| 11 | KEMET Electronics Corp. | Yes | |
| 12 | Matsuo Electric Co., Ltd. | Yes | |
| 13 | NEC TOKIN Corp. | Yes | |

| | | | |
|---|---|---|---|
| 14 | NEC TOKIN America Inc. | Yes | |
| 15 | Nichicon Corp. | Yes | Defs: No sales to third party customers in the U.S. Only ships capacitors into the U.S. on rare occasions due to urgent customer delivery deadline or lack of inventory at Defendant U.S. subsidiary; all such sales accounted for as Defendant U.S. subsidiary sale.<br><br>DPPs: DPPs; Sales to a U.S. subsidiary, agent or affiliate are U.S. sales. |
| 16 | Nichicon (America) Corp. | Yes | |
| 17 | Nippon Chemi-Con Corp. | Yes | |
| 18 | United Chemi-Con , Inc. | Yes | |
| 19 | Okaya Electric Industries Co. Ltd. | Yes | Defs: No sales to third party customers in the U.S. Only ships capacitors into the U.S. on rare occasions due to urgent customer delivery deadline or lack of inventory at Defendant U.S. subsidiary; all such sales accounted for as Defendant U.S. subsidiary sale.<br><br>DPPs: DPPs; Sales to a U.S. subsidiary, agent or affiliate are U.S. sales. |
| 20 | Okaya Electric America Inc. | Yes | |
| 21 | Panasonic Corp. | Yes | |
| 22 | Panasonic Corp. North America | Yes | |
| 23 | SANYO Electric Co. | Yes | |
| 24 | SANYO North America Corp. | Yes | |
| 25 | ROHM Co., Ltd. | Yes | Defs: No sales to third party customers in the U.S. Only shipments into the U.S. are to the Defendant U.S. subsidiary.<br><br>DPPs; Sales to a U.S. subsidiary, agent or affiliate count as U.S. sales. |
| 26 | ROHM Semiconductor U.S.A. LLC | Yes | |
| 27 | Rubycon Corp. | Yes | |
| 28 | Rubycon America Inc. | Yes | |
| 29 | Shinyei Kaisha | Disputed | DPPs/Flex: On February 26, 2016, Shinyei first provided some information regarding ship-to locations for three Shinyei entities to DPPs. Production of this information is |

| | | | underway but not yet complete, as is DPPs' review of the information produced to date. |
|---|---|---|---|
| | | | Defs: See note concerning SEM in Row 29 under response to I(a). Shinyei Defendants advised DPPs regarding "ship-to" information as far back as September 14, 2015. The information produced by Shinyei Defendants referenced by DPPs above is consistent with the information previously provided. |
| 30 | Shinyei Technology Co., Ltd. | Disputed | DPPs/Flex: On February 26, 2016, Shinyei first provided some information regarding ship-to locations for three Shinyei entities to DPPs. Production of this information is underway but not yet complete, as is DPPs' review of the information produced to date. |
| | | | Defs: See comment above regarding "ship-to" information. STC internally transferred capacitors to SCA only (as reflected in hard copy data previously produced). STC made no sales to and did not invoice any non-Shinyei entities in the U.S. |
| 31 | Shinyei Capacitor Co. Ltd. | Disputed | DPPs/Flex: On February 26, 2016, Shinyei first provided some information regarding ship-to locations for three Shinyei entities to DPPs. Production of this information is underway but not yet complete, as is DPPs' review of the information produced to date. |
| | | | Defs: See comment above regarding "ship-to" information. Shinyei Defendants' response for SCC is "No." |
| 32 | Shinyei Corp. of America | Yes | |
| 33 | Soshin Electric Co. Ltd. | Disputed | DPPs/Flex: DPPs: Data produced to Plaintiffs does not tie sales to specific customer locations, i.e., bill-to or ship-to addresses. The parties dispute whether Soshin's sales in the U.S. pertain to capacitors or capacitor products. |
| | | | Defs.: Soshin's counsel has represented to Plaintiffs that the only method by which to confirm the answers to the Court's questions would be to manually review hard copy invoices. The Soshin Defendants have submitted four Declarations stating that they did not ship to or invoice any customers located in the United States for sales of standalone film |

| | | | capacitors. |
|---|---|---|---|
| 34 | Soshin Electronics of America Inc. | Disputed | DPPs/Flex: DPPs: Data produced to Plaintiffs does not tie sales to specific customer locations, *i.e.*, bill-to or ship-to addresses. The parties dispute whether Soshin's sales in the U.S. pertain to capacitors or capacitor products.<br><br>Defs.: Soshin's counsel has represented to Plaintiffs that the only method by which to confirm the answers to the Court's questions would be to manually review hard copy invoices. The Soshin Defendants have submitted four Declarations stating that they did not ship to or invoice any customers located in the United States for sales of standalone film capacitors. |
| 35 | Taitsu Corp. | Disputed | DPPs/Flex: Data produced for Taitsu Corp.'s sales outside Japan does not contain ship-to information.<br><br>Defs: DPPs first claimed that ship-to data was missing for "a great number of transactions" and now claim that it is missing for all transactions. DPPs have not pointed to a single such transaction and refused to meet and confer with Taitsu to resolve any such dispute. All transactional data has been produced. |
| 36 | Taitsu America Inc. | Yes | |

***Joint Statement of Indirect Purchaser Plaintiffs and Defendants***: With respect to Defendants' IPP Motion, Defendants have not sought summary judgment on the ground of "ship to" versus "bill to" addresses. *See* Parties' Answer, *supra* at 1(a).

**1.c. What percentage of capacitors were bought by and delivered to a plaintiff in the U.S.?**

***Statement of Direct Purchaser Plaintiffs and Flextronics:*** As noted in the table below, certain Defendants have not provided sufficient data for DPPs to calculate the percentage of capacitors that were were bought by and delivered to a plaintiff in the U.S. Even for the Defendants who have provided "bill to" and "ship to" data that appear relatively complete, DPPs are unable to provide—or stipulate to—the exact percentages of capacitors bought by and delivered to a U.S. plaintiff. Before DPPs are able to do that, they must first identify among the thousands of different product codes which of Defendants' products were subject to Defendants' price-fixing conspiracy and those that were not. DPPs have dedicated thousands of hours toward this task but it is not yet complete. Defendants' respective transactional data productions contain not just information on their sales of price-fixed capacitors (including thousands of product codes), but also information regarding products other than capacitors and types of capacitors that may not be part of the Defendants' price-fixing conspiracy. Certain of these products may ultimately be excluded from any percentage calculations. Identifying Defendants' price-fixed products and excluding others is a laborious, time consuming project that is still under way. DPPs and their experts have already expended thousands of

hours toward that effort. Making those determinations is a necessary step before DPPs can stipulate to an answer.

DPPs and Flextronics therefore answer the Court's question by evaluating whether each Defendant's transactional data presently available would allow them to make a reliable calculation—once the price-fixed capacitors have been identified—as to the percentage of each Defendant's capacitors bought by and delivered to a plaintiff in the United States.

The percentages for certain Defendants reported below are their estimates of their bill-to and/or ship-to sales to U.S. customers. These Defendants have not disclosed to DPPs or Flextronics the specific model or product identifiers of the capacitors they have counted and considered for purposes of making their respective percentage calculations, nor have they provided DPPs with the formulas for their calculations. Accordingly, neither DPPs nor Flextronics can confirm the accuracy of Defendants' representations below to the Court.

|   | Defendant | DPP's Appraisal of Data Completeness |
|---|---|---|
| 1 | AVX Corp. | Data appears relatively complete. |
| 2 | ELNA Co. Ltd. | Data appears relatively complete. |
| 3 | ELNA America Inc. | Data appears relatively complete. |
| 4 | Hitachi Chemical Co. Ltd. | Data appears relatively complete. |
| 5 | Hitachi AIC Inc. | Data appears relatively complete. |
| 6 | Hitachi Chemical Co. America Ltd. | Data appears relatively complete. |
| 7 | Holy Stone Enterprise Co. Ltd. | Data appears relatively complete. |
| 8 | Vishay Polytech Co., Ltd. | Data appears relatively complete. |
| 9 | Milestone Global Technology, Inc. | Insufficient to estimate percentage. Milestone says it does not invoice customers, but DPPs have not yet been able to verify Milestone's role in Holy Stone's U.S. sales but will work with Holy Stone through data questsions and discovery to do so, |
| 10 | KEMET Corp. | Data appears relatively complete. All sales conducted by subsidiary KEC Corp. |
| 11 | KEMET Electronics Corp. | Data appears relatively complete. All sales conducted by subsidiary KEC Corp. |
| 12 | Matsuo Electric Co., Ltd. | Insufficient to estimate percentage for full period. Recently-produced Matsuo Electric America data consists of sales summaries, not transactional data, but may provide basis for estimating percentage for a limited period. |
| 13 | NEC TOKIN Corp. | Data appears relatively complete. |

| 14 | NEC TOKIN America Inc. | Data appears relatively complete. |
|---|---|---|
| 15 | Nichicon Corp. | Data appears relatively complete. |
| 16 | Nichicon (America) Corp. | Data appears relatively complete. |
| 17 | Nippon Chemi-Con Corp. | Data appears relatively complete. |
| 18 | United Chemi-Con, Inc. | Data appears relatively complete. |
| 19 | Okaya Electric Industries Co. Ltd. | Data appears relatively complete. |
| 20 | Okaya Electric America Inc. | Data appears relatively complete. |
| 21 | Panasonic Corp. | Data appears relatively complete. |
| 22 | Panasonic Corp. North America | Data appears relatively complete. |
| 23 | SANYO Electric Co. | Data appears relatively complete. |
| 24 | SANYO North America Corp. | Data appears relatively complete. SANYO North America's latest productions have prompted further data questions for clarification. |
| 25 | ROHM Co., Ltd. | Data appears relatively complete. |
| 26 | ROHM Semiconductor U.S.A., LLC | Data appears relatively complete. |
| 27 | Rubycon Corp. | Data appears relatively complete. |
| 28 | Rubycon America Inc. | Data appears relatively complete. |
| 29 | Shinyei Kaisha | Insufficient to estimate percentage. On February 26, 2016, Shinyei first produced some information regarding ship-to locations for three Shinyei entities to DPPs. Production of this information is underway but not yet complete, as is DPPs' review of the information produced to date. |
| 30 | Shinyei Technology Co., Ltd. | Insufficient to estimate percentage. On February 26, 2016, Shinyei first produced some information regarding ship-to locations for three Shinyei entities to DPPs. Production of this information is underway but not yet complete, as is DPPs' review of the information produced to date. |
| 31 | Shinyei Capacitor Co. Ltd. | Insufficient to estimate percentage. On February 26, 2016, Shinyei first produced some information regarding ship-to locations for three Shinyei entities to DPPs. Production of this information is underway but not yet complete, as is DPPs' review of the information produced to date. |
| 32 | Shinyei Corp. of America | Insufficient to estimate percentage. On February 26, 2016, Shinyei first produced some information regarding ship-to locations for three Shinyei entities to DPPs. Production of this information is underway but not yet complete, as is DPPs' review of the information produced to date. |

| | | |
|---|---|---|
| 33 | Soshin Electric Co. Ltd. | Insufficient to estimate percentage. Data produced to Plaintiffs does not tie sales to specific customer locations, *i.e.*, bill-to or ship-to addresses. The parties dispute whether Soshin's sales in the U.S. pertain to capacitors or capacitor products. |
| 34 | Soshin Electronics of America Inc. | Insufficient to estimate percentage. Data produced to Plaintiffs does not tie sales to specific customer locations, *i.e.*, bill-to or ship-to addresses. The parties dispute whether Soshin's sales in the U.S. pertain to capacitors or capacitor products. |
| 35 | Taitsu Corp. | Insufficient to estimate percentage. Data produced for Taitsu Corp.'s sales outside Japan does not contain ship-to information. |
| 36 | Taitsu America Inc. | Insufficient to estimate percentage. Data produced for Taitsu Corp.'s sales outside Japan does not contain ship-to information. |

**_Statement of Indirect Purchaser Plaintiffs:_** With respect to the IPP motion, Defendants have not sought summary judgment on the ground that they shipped a small percentage of capacitors to the United States. The parties agree that there is only one category of commerce at issue in Defendants' Joint Motion for Partial Summary Judgment ("Defendants' Motion") regarding IPPs' claims: Defendants' sales of capacitors outside the United States to foreign distributors, who in turn sell those capacitors to purchasers in the United States. See Def. Mot. at 1, Dkt. 911. Defendants do not contest that such transactions exist for purposes of the pending motion. Id. Instead, Defendants argue that such claims are barred as a matter of law because the FTAIA bars all indirect purchaser claims based on alleged foreign price-fixing conduct where there is an initial foreign-to-foreign sale, even if the product was subsequently sold in United States' commerce to indirect purchasers. None of the Court's questions appear to be directed to, nor material to, the resolution of the IPP motion. To the extent that the Court finds information in this question relevant to the IPPs' motion, IPPs agree with DPPs' statement of the facts.

**_Statement of Defendants_:** The great majority of Defendants have produced all available electronic transactional data. Many of these productions were made more than six months ago and include all, and only, electrolytic capacitors and/or film capacitor sales. Defendants have each also answered numerous informal interrogatory questions from Plaintiffs regarding their sales data. *See* Exh. A. to Defs. Reply Br. Dkt. No. 985-2. Therefore, for many of the Defendants referenced above, DPPs and Flextronics have the ability to provide calculations in response to the Court's Question or provide their estimates based on certain assumptions. Defendants' sales calculations and methodologies were initially provided to Plaintiffs in October-December 2015 and again most recently in their January 13, 2016 submission in response to the Court's FTAIA Questions.

Defendants respond to the Court's question regarding the percentage of capacitors bought by and delivered to a putative plaintiff in the U.S. as follows:

| | **Defendant** | **% of Capacitors Bought by and Delivered to a Putative Class Plaintiff** |
|---|---|---|
| 1 | AVX Corp. | Approximately 25 to 30 percent of AVX's sales of tantalum, film, and tantalum polymer capacitors were to U.S. customers. None of the named DPP plaintiffs purchased capacitors directly from AVX during the relevant time period, other than de minimis sales to a |

| | | |
|---|---|---|
| | | Chip-Tech subsidiary in 2001-2006. Flextronics paid AVX approximately 10 million dollars for capacitors during the relevant time period. |
| 2 | ELNA Defendants | Based on preliminary estimates of data from 2002 to mid-2015, less than 9% of ELNA Co., Ltd.'s capacitors were delivered to the United States. ELNA America, Inc. delivered approximately 96% of its capacitors to the United States. Approximately 0.05% of ELNA America, Inc.'s capacitors were delivered to a named plaintiff in the United States, with 0.02% being delivered to a Flextronics affiliate in the United States. Based on a review of the transactional data, ELNA Co., Ltd. does not believe it made any direct sales to a named plaintiff other than foreign Flextronics affiliates. |
| 3 | Hitachi Defendants | During the relevant time period, Hitachi Chemical Co, Ltd. and Hitachi AIC annually invoiced and delivered less than 5% of the capacitors it sold to customers in the U.S. (not including sales to other Hitachi Chemical entities). Hitachi Chemical Co. America, Ltd. annually invoiced and delivered approximately 89% of its capacitors sold to customers in the U.S. Based on a review of transactional data, it does not appear that Hitachi Chemical Co., Ltd. or Hitachi AIC Inc. made any sales to the named plaintiffs in the U.S., but Solectron USA, Inc. (an entity purportedly related to Flextronics during portions of the relevant time period) purchased capacitors from Hitachi Chemical Co. America, Ltd. during the alleged relevant time period for a very minimal amount ($2,000.00). |
| 4 | Holy Stone | Based on a review of the relevant transactional data and Holy Stone's current knowledge, it does not appear that Holy Stone made any sales to the named plaintiffs in the U.S., during the relevant time period. Approximately 97% of Holy Stone's sales during the relevant time period were made to customers outside the U.S. There is no Milestone sales data to assess because Milestone makes no sales, and does not invoice customers, in the United States or elsewhere, as Milestone has previously informed DPPs and discovery has established. |
| 5 | KEMET Defendants | Approximately twenty-seven percent of sales by KEMET Electronics Corporation and its subsidiaries were billed to and shipped to customers in the U.S. from 2002 through 2014. |
| 6 | Matsuo Electric Co., Ltd. | On average, during fiscal years 2001 to 2014, Matsuo sold and delivered approximately 2.9% of its capacitors to customers in the U.S. Matsuo made zero sales to Flextronics entities in the U.S. during the relevant time period. Based on a review of Matsuo's transactional data and Matsuo's current knowledge, it does not appear that Matsuo made any sales to the named plaintiffs in the U.S. during the relevant time period. |
| 7 | NEC TOKIN Defendants | On average, during calendar years 2007 to 2014 (the period for which data is available), approximately 2 percent of NEC TOKIN's sales of capacitors were made to customers in the U.S. |
| 8 | Nichicon Defendants | Nichicon Corp. sold and delivered 0% of its capacitors to a plaintiff in the US. On average during calendar years 2003-2014, 75.8% of Nichicon (America) Corp.'s sales were invoiced to U.S. domestic customers. 4.5% of these sales were shipped to customers outside of the United States. 72.4% of Nichicon (America) Corp.'s sales of capacitors were invoiced and delivered to customers in the United States. 8% of Nichicon's worldwide |

| | | sales of capacitors were to customers in the United States. This data is based on Nichicon Corp.'s and Nichicon (America)'s sales of all electrolytic and film capacitors. Nichicon provided the Plaintiffs with the formulas for computing this data prior to Mr. Yamamoto's deposition. |
|---|---|---|
| 9 | Nippon Chemi-Con Corp. | NCC sold and delivered 0% of its capacitors to a plaintiff in the United States. From 2002 to 2014, approximately 6% of NCC's total sales were made to UCC. |
| 10 | United Chemi-Con, Inc. | 42.3% of UCC's sales for the time period 2002 to 2014 were imported capacitors billed to and shipped to U.S. customers. Additionally, 28.5% of UCC's sales for the time period 2002 to 2014 were domestic capacitors billed to and shipped to U.S. customers. |
| 11 | Okaya defendants | Okaya Electric Industries Co., Ltd. sold and delivered 0% of its capacitors to a plaintiff in the US. From 2002-2014, approximately 73% of Okaya Electric America, Inc.'s capacitor sales were invoiced to customers located within the US. Approximately 4.5% of Okaya Electric America, Inc.'s capacitor sales from 2002-2014 were invoiced to customers in the US but shipped to customers outside of the US. Thus, approximately 69% of Okaya Electric America, Inc.'s capacitor sales were both invoiced to and shipped to customers in the US. |
| 12 | Panasonic Corp. | The destination information contained in the worldwide capacitor sales data that Panasonic Corp. keeps in the ordinary course of business is ship-to data. Based on that data, on an annual basis during the 2002-2014 time period, Panasonic Corp. shipped less than 7.4% of the capacitors it sold into the U.SAs DPPs informed the Court in their Feb. 17, 2016 letter brief (ECF No. 1077), the Panasonic and SANYO Defendants have agreed to further investigate whether other affiliated entities keep data that show sales of capacitors into the U.S. that may not be reflected in the data kept by Panasonic Corp. Additionally, the foregoing percentage calculation includes some capacitors that were shipped to Panasonic Corp. of North America, but that were later sold as export sales, which Defendants contend are excluded from the case by the FTAIA, and DPPs contend are import sales that are not excluded from the case, as discussed *infra* in response to Question 7. |
| 13 | SANYO Electric Co., Ltd. | The destination information contained in the worldwide capacitor sales data of SANYO Electric Co., Ltd. that is kept in the ordinary course of business is ship-to data. Based on that data, on an annual basis during the 2002-2014 time period, SANYO Electric Co. Ltd. shipped less than 3.5% of the capacitors it sold into the U.S. As DPPs informed the Court in their Feb. 17, 2016 letter brief (ECF No. 1077), the Panasonic and SANYO Defendants have agreed to further investigate whether other affiliated entities keep data that show sales of capacitors into the U.S. that may not be reflected in the data kept by SANYO Electric Co., Ltd. Additionally, the foregoing percentage calculation includes some capacitors that were shipped to SANYO North America Corp., but that were later sold as export sales, which Defendants contend are excluded from the case by the FTAIA, and DPPs contend are import sales that are not excluded from the case, as discussed *infra* in response to Question 7. |
| 14 | ROHM Defendants | Between 2004-2015, 1.195% of ROHM's overall sales were delivered to US customers. Approximately 79% of ROHM |

| | | Semiconductor U.S.A., LLC's sales were to US customers. 0% of ROHM Co., Ltd.'s sales were to US customers (apart from ROHM Semiconductor U.S.A., LLC). (The 1.195% represents ROHM US sales as a percentage of ROHM's sales overall.). |
|---|---|---|
| 15 | Rubycon Defendants | From 2003 to 2013, 4.67% of Rubycon's aluminum electrolytic capacitors and 4.70% of all Rubycon capacitors were billed to American customers . From 2003 to 2013, approximately 3.49% of Rubycon's aluminum electrolytic capacitors and less than 5% of all Rubycon capacitors were shipped to American customers, based on shipped to data produced to plaintiffs on February 2, 2016. |
| 16 | Shinyei Defendants | Between 2005-2014, approximately 5-9% of Shinyei's overall sales were billed and shipped to customers in the US, depending on whether and to what extent internal transactions are considered. |
| 17 | Soshin Defendants | As stated in their supporting Declarations, during the 2002-2014 time period, neither of the Soshin Defendants sold or delivered *any* standalone film capacitors in or into the United States at all, and therefore deny that they sold any standalone film capacitors to any plaintiff in the U.S. |
| 18 | Taitsu Defendants | Neither of the Taitsu Defendants sold or delivered any standalone capacitors to a plaintiff in the United States. With the exception of two sales in 2012 for a total of $3500, Taitsu Corporation has not sold or delivered any standalone capacitors in the United States. Taitsu America sold and delivered standalone capacitors in the United States. In all, during the relevant time period, less than .01% of Taitsu capacitors were bought by and delivered to customers in the United States, none of which were a named plaintiff. Those sales were made by Taitsu America (except as noted above). |

**1.d. Did the defendants engage in import commerce because the conspiracy's intent was to fix prices for U.S. customers and actions in furtherance of that intent were taken by defendants' employees located within the U.S.?**

**_Statement of Direct Purchaser Plaintiffs_:** Further discovery is necessary to determine the extent to which the conspiracy's intent was to fix prices for U.S. customers. Although DPPs believe Defendants engaged in import commerce based on sales shipped to or billed to the U.S., DPPs are not pursuing or relying on the argument that Defendants engaged in import commerce based on the Defendants' intent to fix prices for U.S. customers and actions in furtherance of that intent.

**_Statement of Flextronics_:** Yes. Although discovery is ongoing, there already is more than sufficient evidence in the record to permit a reasonable jury to find that Defendants intended to fix prices for U.S. customers. Indeed, on July 29, 2003, certain Defendants identified the United States server market as the "next target" of the conspiracy. Conspiratorial discussions often were broken down "by market and by capacitor category," and the United States market was a frequent topic of discussion. United States companies, including Flextronics, also were discussed and targeted by the conspiracy.

There also is sufficient evidence for a reasonable jury to find that acts in furtherance of the intent to fix prices for U.S. customers were undertaken by Defendants' employees in the U.S. For example, records reflect that certain Defendants' employees traveled to the United States in an effort to better understand the U.S. market and thus more effectively implement the alleged conspiracy. Certain Defendants' employees also traveled to the United States to negotiate price increases with

Flextronics and other U.S. entities. Other Defendants relied on U.S.-based employees to negotiate prices and implement other aspects of the conspiracy in the U.S.

While Flextronics does not oppose using "ship to" and "bill to" information as a convenient mechanism for identifying entities that definitely have claims within the purview of the Sherman Act for class litigation purposes, liability under the Sherman Act does not turn exclusively on whether capacitors were "shipped to" or "billed to" a U.S. entity. As set forth in Flextronics's Opposition to Defendants' Motion for Summary Judgment, and as the Court's question acknowledges, the import exclusion applies where: (1) Defendants' conduct is "directed at a U.S. import market" and "at least a portion of the transactions . . .involve the heartland situation of the direct importation of foreign goods into the U.S." *U.S. v. Hui Hsiung*, 778 F.3d 738, 755-57, 755 n.8 (9th Cir. 2015).

**_Indirect Purchaser Plaintiffs' Statement_**: IPPs respectfully believe that the answer to this question can only be provided at the close of fact discovery, when all documents have been reviewed, all discovery answered and all fact depositions taken. At that time, the Plaintiffs will be in a position to understand the entire scope of the conspiracy, all capacitor products involved and each Defendants' involvement in the conspiracy.

Case law does support the concept, however, that the FTAIA's import exclusion is broad enough to encompass commerce that was not physically shipped into the United States by Defendants themselves. For example, in *Animal Science Products v. China Minmetals Corp.*, 654 F.3d 462, 470 (3d. Cir. 2011), the Third Circuit rejected the district court's narrow interpretation of the FTAIA's import commerce exclusion and held that a defendant does not have to "function as the physical importers of goods. Functioning as a physical importer may satisfy the import trade or commerce exception, but it is not a necessary prerequisite. Rather, the relevant inquiry is whether the defendants' alleged anticompetitive behavior was directed at an import market. Or, to phrase it slightly differently, the import trade or commerce exception requires that the defendants' conduct target import goods or services." *Id.* (internal citations omitted). Additionally, the FTAIA "makes clear that not only import commerce, but conduct *involving* import commerce, is never removed from the reach of the Sherman Act." *In re Air Cargo Shipping Serv. Antitrust Litig.*, 2008 U.S. Dist. LEXIS 107882, 2008 WL 5958061; *accord In re Vitamin C Antitrust Litig.*, 904 F.Supp.2d 310, 317 (E.D.N.Y. 2012). In *United States v. Hui Hsiung*, 778 F.3d 738, the Ninth Circuit did not reach the "outer bounds of import trade" and left open the question of whether such conduct could qualify the commerce as import trade altogether excluded from the FTAIA. *See* n. 3; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. 10-cv-3205 SI, 2014 U.S. Dist. LEXIS 13228 (N.D. Cal., Sept. 18, 2014) ("*TracFone*") (finding that Defendants' importation of some price-fixed products satisfied the import exception even for products based on an initial foreign to foreign sale); *Proview Technology Inc., et al. v. AU Optronics Corp., et al.*, Case No. 12-cv-3802-SI, 2014 WL 2916933 (N.D. Cal., Sept. 19, 2014) ("*Proview*"), ECF No. 76 (same).

**_Statement of Defendants_**: Defendants' position is that, as a matter of law, whether a transaction involves import commerce does not depend upon the intent of the seller. Rather, a transaction involves import commerce if the product in issue is sold by a foreign defendant to a domestic third party purchaser. *See, e.g.*, *Motorola IV*, No. 9-cv-6610, 2014 U.S. Dist. LEXIS 8492 at *37-38 (N.D. Ill., Jan. 23, 2014) (declining to reconsider decision rejecting argument that defendants'

---

[1]  For purposes of the FTAIA's import commerce exclusion analysis, Flextronics's purchases of capacitors shipped to Mexico for incorporation into goods shipped to the United States pursuant to Mexico's Maquiladora program satisfy the import commerce exclusion. The Maquiladora program purchases are referenced in Plaintiffs' response to Item 30 of Appendix C [Dkt. No. 1076-1] and in DPP's Opposition Brief [967-5] at 28 and n.46.

"intent" factored into whether products were "imports"); *see also* FOREIGN TRADE ANTITRUST IMPROVEMENTS ACT OF 1982, H.R. REP. NO. 97-686, at 5 (1982) ("Since Judge Learned Hand's opinion in *United States v. Aluminum Co. of America*, 148 F.2d 416, 443-44 (2d Cir. 1945), it has been relatively clear that it is the **situs of the effects as opposed to the conduct**, that determines whether United States antitrust law applies.") (emphasis added).

The Okaya, Shinyei, Soshin and Taitsu Defendants deny the entirety of Flextronics' statement.

**2. Which defendants sell exclusively outside the U.S.? Does any defendant contend it never invoiced or shipped capacitors to any customer in the U.S.?**

| | Defendant | Yes/No/Disputed | Comment |
|---|---|---|---|
| 1 | AVX Corp. | No | |
| 2 | ELNA Co. Ltd. | No | |
| 3 | ELNA America Inc. | No | |
| 4 | Hitachi Chemical Co. | No | |
| 5 | Hitachi AIC Inc. | No | |
| 6 | Hitachi Chemical Co. America Ltd. | No | |
| 7 | Holy Stone Enterprise Co. Ltd. | No | |
| 8 | Vishay Polytech Co., Ltd. | No | |
| 9 | Milestone Global Technology, Inc. | No | |
| 10 | KEMET Corp. | No | |
| 11 | KEMET Electronics Corp. | No | |
| 12 | Matsuo Electric Co., Ltd. | No | |
| 13 | NEC TOKIN Corp. | No | |
| 14 | NEC TOKIN America Inc. | No | |
| 15 | Nichicon Corp. | Disputed | DPPs/Flex: Nichicon made sales in the U.S. to Nichicon (America) Corporation, and therefore cannot claim to sell exclusively outside the U.S.<br><br>Defs: See responses to Questions 1.a. and 1.b. |
| 16 | Nichicon (America) Corp. | No | |
| 17 | Nippon Chemi-Con Corp. | No | |
| 18 | United Chemi-Con, Inc. | No | |
| 19 | Okaya Electric Industries Co. Ltd. | Disputed | DPPs/Flex: Okaya made sales in the U.S. to Okaya Electric America Inc., and therefore cannot claim to sell exclusively outside the U.S.<br><br>Defs: See responses to Questions 1.a. and 1.b. |
| 20 | Okaya Electric America Inc. | No | |
| 21 | Panasonic Corp. | No | |
| 22 | Panasonic Corp. North America | No | |
| 23 | SANYO Electric Co. | No | |

| | | | |
|---|---|---|---|
| 24 | SANYO North America Corp. | No | |
| 25 | ROHM Co., Ltd. | Disputed | DPPs/Flex: ROHM Co. Ltd. made sales in the U.S. to ROHM Semiconductor U.S.A. LLC, and therefore cannot claim to sell exclusively outside the U.S.<br><br>Defs: ROHM Co. Ltd. did not sell to third party customers in the U.S. Its only sales in the U.S. were to the Defendant U.S. subsidiary. |
| 26 | ROHM Semiconductor U.S.A., LLC | No | |
| 27 | Rubycon Corp. | No | |
| 28 | Rubycon America Inc. | No | |
| 29 | Shinyei Kaisha | Disputed | DPPs: On February 26, 2016, Shinyei first produced some information regarding ship-to locations for three Shinyei entities to DPPs. Production of this information is underway but not yet complete, as is DPPs' review of the information produced to date.<br><br>Defs: See note concerning SEM in Row 29 under response to 1(a). Shinyei Defendants advised DPPs regarding "bill-to" and "ship-to" information as far back as September 14, 2015. The information produced by Shinyei Defendants referenced by DPPs above is consistent with the information previously provided. |
| 30 | Shinyei Technology Co., Ltd. | Disputed | DPPs: On February 26, 2016, Shinyei first produced some information regarding ship-to locations for three Shinyei entities to DPPs. Production of this information is underway but not yet complete, as is DPPs' review of the information produced to date. Additionally, sales to a U.S. subsidiary, agent or affiliate count as U.S. sales.<br>Defs: See comment above regarding "bill-to" and "ship-to" information. STC internally transferred capacitors to SCA only (as reflected in hard copy data previously produced). STC made no sales to and did not invoice any non-Shinyei entities in the U.S. |

| | | | |
|---|---|---|---|
| 31 | Shinyei Capacitor Co. Ltd. | Disputed | DPPs: On February 26, 2016, Shinyei first produced some information regarding ship-to locations for three Shinyei entities to DPPs. Production of this information is underway but not yet complete, as is DPPs' review of the information produced to date. Additionally, sales to a U.S. subsidiary, agent or affiliate count as U.S. sales.<br>Defs: See comment above regarding "bill-to" and "ship-to" information. Shinyei Defendants' response for SCC is "Yes." |
| 32 | Shinyei Corp. of America | No | |
| 33 | Soshin Electric Co. Ltd. | Disputed | DPPs: Data produced to Plaintiffs does not tie sales to specific customer locations, *i.e.*, bill-to or ship-to addresses. The parties dispute whether Soshin's sales in the U.S. pertain to capacitors or capacitor products.<br><br>Defs.: As stated in its supporting Declarations, Soshin Japan exclusively sold standalone film capacitors outside the U.S. for the period from 2002-2014, and never invoiced or shipped standalone film capacitors to any customer in the U.S. *See* responses to Questions 1(a) and 1(b) above. |
| 34 | Soshin Electronics of America Inc. | Disputed | DPPs: Data produced to Plaintiffs does not tie sales to specific customer locations, *i.e.*, bill-to or ship-to addresses. The parties dispute whether Soshin's sales in the U.S. pertain to capacitors or capacitor products.<br><br>Defs.: As stated in its supporting Declarations, Soshin Japan exclusively sold standalone film capacitors outside the U.S. for the period from 2002-2014, and never invoiced or shipped standalone film capacitors to any customer in the U.S. *See* responses to Questions 1(a) and 1(b) above. |
| 35 | Taitsu Corp. | Disputed | DPPs: The sales below show that Taitsu had sales in the United States, and further review of their data and sales information may |

| | | | | review more such sales. |
| | | | | Defs.: No, with the exception of two sales in 2012 totaling $3500. |
| 36 | Taitsu America Inc. | No | | |

**_Statement of Indirect Purchaser Plaintiffs_**: With respect to the IPP motion, Defendants have not sought summary judgment on the ground the ground that they did not ship any capacitors to the United States. Indeed, as shown in the DPPs' various statements, each Defendant did either ship and/or invoice entities in the United States.[2] The parties agree that here is only one category of commerce at issue in Defendants' Joint Motion for Partial Summary Judgment ("Defendants' Motion") regarding IPPs' claims: Defendants' sales of capacitors outside the United States to foreign distributors, who in turn sell those capacitors to purchasers in the United States. See Def. Mot. at 1, Dkt. 911. Defendants do not contest that such transactions exist for purposes of the pending motion. Id. Instead, Defendants argue that such claims are barred as a matter of law because the FTAIA bars all indirect purchaser claims based on alleged foreign price-fixing conduct where there is an initial foreign-to-foreign sale, even if the product was subsequently sold in United States' commerce to indirect purchasers. None of the Court's questions appear to be directed to, nor material to, the resolution of the IPP motion. To the extent that the Court finds information in this question relevant to the IPPs' motion, IPPs agree with DPPs' statement of the facts. Moreover, to the extent the Court seeks this information to determine whether any Defendant may be dismissed based on purportedly selling capacitors exclusively outside of the United States, the joint and several nature of antitrust damages for price-fixing conspiracies would preclude such a result.

**_Statement of Defendants_**: Each of the above named Defendants have provided transaction data, sworn declarations, deposition testimony and interrogatory responses demonstrating that they have made no sales to any putative plaintiffs in the United States. DPPs have not identified any evidence to the contrary. To the extent that DPPs' assertions are based on these Defendants' intracompany transfers or sales of capacitors to United States subsidiaries, such internal transfers are not actionable as they are outside of DPPs' class definition and did not have any impact on any putative plaintiffs. See DPP Compl. [Dkt. No. 799-4], ¶ 107 (excluding named Defendants and their subsidiaries from the "Direct Purchaser Class"). Defendants concede that any sales of those capacitors by the U.S. subsidiaries to customers in the United States are actionable as domestic commerce. However, sales by the U.S. subsidiaries to customers located outside the United States are exports and are therefore excluded by the FTAIA. See Hartford Fire Ins. Co. v. Cal., 509 U.S. 764, n.23 ("The FTAIA was intended to exempt from the Sherman Act export transactions that did not injure the United States economy") (citing H. R. REP. NO. 97-686, pp. 2-3, 9-10 (1982)). See also, eMag Solutions LLC v. Toda Kogyo Corp., 2005 U.S. Dist. LEXIS 44512, No. C 02-1611 (N.D. Cal. July 20, 2005) (relying on the FTAIA to dismiss claims of companies based in Mexico that purchased products imported to the United States from Japan by a defendant that then sold the products to plaintiffs for ultimate delivery in Mexico, and holding that "the flow of commerce is not interrupted simply by an intermediate drop in the United States before shipping continues to a foreign destination."). In addition, the foreign purchaser is not a member of the DPPs' class, which is limited to U.S. purchasers. See, DPP Compl. [Dkt. No. 799-4], ¶¶ 107 (DPP's class definition includes "**[a]ll persons in the United States** that purchased Capacitors (including through controlled subsidiaries, agents, affiliates, or joint ventures) **directly** from any of the Defendants . . . .") (emphasis added)

---

[2] Some Defendants attempt to make a distinction between capacitors shipped to or sold to customers versus capacitors shipped to or sold to their subsidiaries based in the United States. IPPs do not believe this Court made any such distinction in the form of its questions, nor does the FTAIA make such distinction.

**3. Which defendants sold outside of the U.S. but expected or targeted final delivery of finished goods to the U.S.?**

    **3.a. Was it understood that substantial numbers of finished products (incorporating capacitors) were destined for the United States and that "the practical upshot of the conspiracy would be and was increased prices to customers in the United States," *U.S. v. Hsiung*, 778 F.3d 738, 759 (9th Cir. 2014)?**

    ***Statement of Direct Purchaser Plaintiffs:*** Yes; it was understood or reasonably foreseeable that substantial numbers of capacitors—whether standalone or incorporated into finished products— were destined for the U.S. and that the practical upshot of Defendants' conspiracy would be and was increased prices to customers in the U.S. *Hsiung* (and other courts) have found this and other "targeting" evidence relevant to the FTAIA analysis, including whether the conduct had "direct effects" in the United States. DPPs have also offered ample evidence of direct evidence of the conspiracy as a whole and Defendants have not shown (or argued) that DPPs lack such evidence. DPPs have therefore satisfied the first prong of the domestic effects exception. Further, none of DPPs' arguments depend on analyzing whether any particular Defendant individually targeted the U.S. market. It is sufficient that the Defendants' conspiracy did, as a whole, target that market.

    ***Statement of Flextronics:*** Yes. Defendants were well aware that substantial numbers of the capacitors they sold would be incorporated into products destined for the United States. That is why the record is replete with documents reflecting, for example, conspiratorial discussions of the condition of the U.S. auto market, predictions regarding the U.S. market for computers and other electronic devices, and analyses of the U.S. economy in general and certain U.S. companies in particular. This evidence of targeting is relevant to the analysis of both the import commerce exclusion and the "direct effects" exception, *Hsiung*, 778 at 754-757 (import commerce exclusion) & (757-761) ("direct effects" test).

    ***Statement of Indirect Purchaser Plaintiffs:*** The IPPs' claims do not include claims for overcharges on finished products as a result of the price-fixed capacitor component. The IPP class includes individuals and businesses that purchased standalone capacitors from distributors. This question, therefore, appears to be related to Defendants' motion regarding DPPs' claims. To the extent that this Court believes this question is relevant to the resolution of Defendants' motion, IPPs respectfully restate and incorporate herein IPPs' answer to this Court's question 1(d). *See supra* ("IPPs respectfully believe that the answer to this question can only be provided at the close of fact discovery, when all documents have been reviewed, all discovery answered and all fact depositions taken. At that time, the Plaintiffs will be in a position to understand the entire scope of the conspiracy, all capacitor products involved and each Defendants' involvement in the conspiracy."). IPPs also note that in opposition to Defendants' motion, DPPs submitted evidence of Defendants' discussions of the United States market. *See* DPPs' Opp. To Motion, Appendix E, Dkt. 967-13.

    ***Statement of Defendants:*** Defendants' position is that, as a matter of law, targeting is not a relevant factor in determining whether the U.S. antitrust laws apply to capacitors that were sold by a foreign defendant to a foreign purchaser. *See United States v. Hui Hsiung*, 778 F.3d 738, 756 (9th Cir. 2015) ("[t]argeting is not a legal element for import trade under the Sherman Act…"). Claims based on indirect sales of finished products would also be barred by the "indirect purchaser doctrine" of *Illinois Brick. See Motorola V*, 775 F.2d at 822-23 (7th Cir, 2014) (holding that "'target' theory of antitrust liability would nullify the doctrine of *Illinois Brick");Motorola IV,* No. 9-cv-6610, 2014 U.S.

Dist. LEXIS 8492 at *36 (N.D. Ill., Jan. 23, 2014) (holding that targeting in the United States is "also irrelevant to the proximate cause analysis" under the FTAIA," *citing Empagran II, 4*17 F.3d at 1271).

In addition, Plaintiffs allege that capacitors, which "typically cost as little as a fraction of a cent", comprise a miniscule fraction of the cost of a finished product. *See, e.g.*, DPP Compl. [Dkt. No. 799-4], ¶¶ 5-6. In contrast, the Court in *Hsiung*, specifically noted that the allegedly price fixed TCT-LCDs were 70% to 80% of monitors and 30% to 40% of notebook computers. *U.S. v. Hsiung*, 778 F.3d at 759. Therefore, here, it would not be the case that, with respect to foreign capacitors sales, "the practical upshot of the conspiracy would be and was increased prices to customers [of finished products] in the United States." Plaintiffs' assertion above that the existence of any U.S. domestic sales automatically means that all otherwise barred foreign sales can meet the FTAIA exceptions has been squarely rejected. *See Motorola V*, 775 F.2d at 819-821 (holding that while 1% of panels sold to Motorola and its subsidiaries were bought by, and delivered to, Motorola in the US were actionable, the foreign-to-foreign transactions (the other 99% of sales) were barred by the "give rise to" prong of the FTAIA).

**4. For plaintiffs' foreign purchase of capacitors that remained capacitors:**
**4.a. Which plaintiffs bought capacitors abroad through a foreign related company who then shipped the capacitors to the U.S. company for resale in the U.S.?**

***Statement of Direct Purchaser Plaintiffs***: None of the named Direct Purchaser Plaintiffs bought capacitors in this manner. There may be absent class members who did. If so, the entity who purchased directly from a Defendant would be the class member. DPPs' arguments do not depend on downstream sales of class members.

***Statement of Flextronics***: Flextronics does not typically purchase capacitors for external resale. If such purchases were made they were rare. Flextronics foreign-related entities did sometimes purchase capacitors abroad and sell them to domestic Flextronics entities.

***Statement of Indirect Purchaser Plaintiffs***: IPPs' claims do not include claims of plaintiffs that "bought capacitors abroad through a foreign related company." IPPs claims include persons and entities in the United States that purchased capacitors from distributors who themselves purchased capacitors from the Defendants. This question, therefore, does not appear to be directed at IPPs or relevant to resolution of Defendants' motion directed at IPPs' claims.

***Statement of Defendants***: A plaintiff who bought capacitors abroad through a foreign related company who then shipped the capacitors to the U.S. company for resale in the U.S. does not meet the "gives rise" to requirement of the FTAIA. *See Motorola V*, 775 F.3d at 822 ("Having chosen to conduct its LCD purchases through legally distinct entities organized under foreign law, [Motorola] cannot now impute to itself the harm suffered by them"). Such sales are also not import commerce under the FTAIA. *Id.* at 817-18 (holding that 42 percent of sales to Motorola purchased overseas by foreign related company, who then shipped the products to Motorola in the U.S. were not import commerce.) Further, the foreign entity direct purchaser would not be a member of DPPs' proposed class, (DPP Compl. [Dkt. No. 799-4], ¶¶ 107 (DPP's class definition includes "**[a]ll persons in the United States** that purchased Capacitors (including through controlled subsidiaries, agents, affiliates, or joint ventures) **directly** from any of the Defendants . . . .") (emphasis added)), and even if it were a class member, it would also not meet the "gives rise to" requirement of the FTAIA based on its foreign purchase. The anticompetitive impact – the alleged payment of supra-competitive prices for

capacitors abroad by a "foreign related company" – occurs directly when the price is paid abroad, not when the capacitors are subsequently shipped to the United States. Plaintiffs cannot show that any supra-competitive price paid by a foreign purchaser was proximately caused by an alleged conspiracy to fix the prices of capacitors in the United States. To the contrary, any supra-competitive price paid by a foreign capacitor purchaser was caused by the alleged conspiracy to fix the foreign prices of capacitors.

Finally, *Illinois Brick* would also bar any claims by the U.S. company based upon its purchase from its foreign related company. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 735 (1977); *Motorola V*, 775 F.3d at 821-22.

### 4.b. Which plaintiffs bought capacitors abroad through a foreign related company who then resold those capacitors abroad?

***Statement of Direct Purchaser Plaintiffs*:** None of the named Direct Purchaser Plaintiffs bought capacitors in this manner. There may be absent class members who did. If so, the entity who purchased directly from a Defendant would be the class member. DPPs' arguments do not depend on downstream sales of class members.

***Statement of Flextronics*:** Flextronics does not typically purchase capacitors for external resale. If such purchases were made they were rare. Flextronics foreign-related entities did sometimes purchase capacitors abroad and sell them to other foreign-related Flextronics entities.

***Statement of Indirect Purchaser Plaintiffs*:** IPPs' claims do not include claims of plaintiffs that "bought capacitors abroad through a foreign related company who then resold those capacitors abroad." IPPs claims include persons and entities in the United States that purchased capacitors from distributors who themselves purchased capacitors from the Defendants. This question, therefore, does not appear to be directed at IPPs or relevant to resolution of Defendants' motion directed at IPPs' claims.

***Statement of Defendants*:** *See* Defendants' Statement in response to Question 4.a. above. Any entity who bought capacitors abroad through a foreign related company who then resold those capacitors abroad is a foreign purchaser. Such a transaction never touched the United States and does not satisfy the FTAIA. *See e.g., See Motorola V*, 775 F.3d at 817-18 (holding that 57 percent of panels brought by foreign subsidiaries and sold abroad never became a part of domestic U.S. commerce and "cannot possibly support a Sherman Act claim.")

### 5. For plaintiffs' foreign purchase of capacitors that were incorporated into finished goods:
### 5.a. Which plaintiffs bought capacitors abroad through a foreign related company who then shipped finished goods (incorporating those capacitors) to the U.S. company for resale in the U.S.?

***Statement of Direct Purchaser Plaintiffs*:** None of the named Direct Purchaser Plaintiffs bought capacitors in this manner. There may be absent class members who did. If so, the entity who purchased directly from a Defendant would be the class member. DPPs' arguments do not depend on downstream sales of class members.

***Statement of Flextronics*:** Flextronics foreign-related entities purchased capacitors and then shipped goods incorporating those capacitors to the United States. The purchase price of such transactions was set by reference to an approval process in the United States. A

reasonable jury could find that Defendants intentionally distorted Flextronics's U.S. price-setting processes and thus proximately harmed Flex foreign-related entities.

**_Statement of Indirect Purchaser Plaintiffs_**: IPPs' claims do not include claims of plaintiffs that "bought capacitors abroad through a foreign related company who then shipped finished goods (incorporating those capacitors) to the U.S. company for resale in the U.S." IPPs claims include persons and entities in the United States that purchased capacitors from distributors who themselves purchased capacitors from the Defendants. This question, therefore, does not appear to be directed at IPPs or relevant to resolution of Defendants' motion directed at IPPs' claims.

**_Statement of Defendants_**: A plaintiff who bought capacitors abroad through a foreign related company who then incorporated the capacitors in finished goods that were shipped to the U.S. company for resale in the U.S. does not meet the "gives rise" to requirement of the FTAIA. *See Motorola V,* 775 F.3d at 822 ("Having chosen to conduct its LCD purchases through legally distinct entities organized under foreign law, [Motorola] cannot now impute to itself the harm suffered by them"). Such sales are also not import commerce under the FTAIA. *Id.* at 817-18 (holding that 42 percent of sales to Motorola purchased overseas by foreign related company, who then shipped the products to Motorola in the U.S. were not import commerce.) Further, the foreign entity direct purchaser would not be a member of DPPs' proposed class, (DPP Compl. [Dkt. No. 799-4], ¶¶ 107 (DPP's class definition includes "**[a]ll persons in the United States** that purchased Capacitors (including through controlled subsidiaries, agents, affiliates, or joint ventures) **directly** from any of the Defendants . . . .") (emphasis added)), and even if it were a class member, it would also not meet the "give rise to" requirement of the FTAIA based on its foreign purchase. The anticompetitive impact – the alleged payment of supra-competitive prices for capacitors abroad by a "foreign related company" – occurs directly when the price is paid for the capacitor abroad, not when the finished goods are subsequently shipped to the United States. Plaintiffs cannot show that any supra-competitive price paid by a foreign purchaser was proximately caused by an alleged conspiracy to fix the prices of capacitors in the United States. To the contrary, any supra-competitive price paid by a foreign capacitor purchaser was caused by the alleged conspiracy to fix the foreign prices of capacitors.

Finally, a plaintiff who brought capacitors abroad though a foreign related company who then incorporated the capacitors in finished goods that were shipped to the U.S. company for resale in the U.S. is an indirect purchaser whose claims are barred by *Illinois Brick. See Motorola V,* 775 F.3d at 821-22.

### 5.b. Which plaintiffs bought capacitors abroad through a foreign related company who then sold finished goods (incorporating those capacitors) abroad?

**_Statement of Direct Purchaser Plaintiffs_**: None of the named Direct Purchaser Plaintiffs bought capacitors in this manner. There may be absent class members who did. If so, the entity who purchased directly from a Defendant would be the class member. DPPs' arguments do not depend on downstream sales of class members.

**_Statement of Flextronics_**: Flextronics foreign-related entities purchased capacitors and then sold them to foreign entities that shipped finished goods incorporating the capacitors into the United States. The purchase price of such transactions was set by reference to an approval process in the United States. A reasonable jury could find that Defendants intentionally distorted Flextronics's U.S. price-setting processes and thus proximately harmed Flex foreign-related entities.

***Statement of Indirect Purchaser Plaintiffs***: IPPs' claims do not include claims of plaintiffs that "bought capacitors abroad through a foreign related company who then shipped finished goods (incorporating those capacitors) abroad." IPPs claims include persons and entities in the United States that purchased capacitors from distributors who themselves purchased capacitors from the Defendants. This question, therefore, does not appear to be directed at IPPs or relevant to resolution of Defendants' motion directed at IPPs' claims.

***Statement of Defendants***: *See* Defendants' Statement in response to Question 5.a., above. Any entity who bought capacitors abroad through a foreign related company who then resold finished goods incorporating those capacitors abroad is a foreign purchaser. Such a transaction never touched the United States and does not satisfy the FTAIA. *See e.g., See Motorola V*, 775 F.3d at 817-18 (holding that 57 percent of panels brought by foreign subsidiaries and sold abroad never became a part of domestic U.S. commerce and "cannot possibly support a Sherman Act claim.")

**6. Which plaintiffs purchased capacitors through foreign divisions rather than subsidiaries?**

***Statement of Direct Purchaser Plaintiffs***: None of the named Direct Purchaser Plaintiffs bought capacitors in this manner. There may be absent class members who did. If a U.S. entity purchases through a foreign division (which, DPPs assume, is not a separate corporate entity), the U.S. entity is a direct purchaser and the FTAIA does not apply. If a subsidiary of a U.S. entity (which, DPPs assume is a separate corporate entity) purchases capacitors, then the subsidiary would be the direct purchaser plaintiff if the purchase satisfies the FTAIA.

***Statement of Flextronics***: Although Flextronics may have purchased capacitors in this manner, such purchases would be rare.

***Statement of Indirect Purchaser Plaintiffs***: For the same reasons generally stated in the answers to the Court's questions 3 through 5, this question does not appear related to the IPP case.

***Statement of Defendants***: Defendants are not aware of any plaintiffs who purchased capacitors through foreign divisions rather than subsidiaries.

**7. Which defendants sold capacitors or finished goods from the U.S. to foreign customers?**

| | Defendant | Yes/No/ Disputed | Comment |
|---|---|---|---|
| 1 | AVX Corp. | Yes | |
| 2 | ELNA Co. Ltd. | No | |
| 3 | ELNA America Inc. | Yes | |
| 4 | Hitachi Chemical Co. | No | |
| 5 | Hitachi AIC Inc. | No | |
| 6 | Hitachi Chemical Co. America Ltd. | Yes | |
| 7 | Holy Stone Enterprise Co. Ltd. | Disputed | DPPs: DPPs have not been able to distinguish sales from Holy Stone's U.S. subsidiary from other Holy Stone sales.<br><br>Defs.: As Holy Stone Enterprise Co., Ltd has previously informed DPPs and discovery has established, Milestone, a wholly-owned subsidiary of Holy Stone Enterprise Co., Ltd., a Taiwanese corporation ("Holy Stone Taiwan"), serves as a sales agent for Holy Stone Taiwan in the United States, but Milestone makes no sales, and does not invoice customers, in the United States or elsewhere. Thus, there are no Milestone sales to distinguish from Holy Stone Taiwan sales. |
| 8 | Vishay Polytech Co., Ltd. | No | |
| 9 | Milestone Global Technology, Inc. | Disputed | DPPs/Flex: Milestone says it does not invoice customers, but DPPs have not yet been able to verify Milestone's role in Holy Stone's U.S. sales but will work with Holy Stone through data questsions and discovery to do so,<br><br>Milestone: As Milestone has previously informed DPPs and discovery has established, Milestone is a wholly-owned subsidiary of Holy Stone Enterprise Co., Ltd., a Taiwanese corporation (Holy Stone Taiwan") and serves as a sales agent for Holy Stone Taiwan. in the United States, but Milestone makes no sales, and does not invoice customers, in the United States or elsewhere. |
| 10 | KEMET Corp. | No | |
| 11 | KEMET Electronics Corp. | Yes | |
| 12 | Matsuo Electric Co., Ltd. | Disputed | Purported Matsuo Electric America transactional sales produced on February 15, 2016 is, in fact, only sales summaries that do not provide sufficient detail regarding the bill-to and ship-to locations of MEA's customers. |

| | | | |
|---|---|---|---|
| 13 | NEC TOKIN Corp. | No | |
| 14 | NEC TOKIN America Inc. | Yes | |
| 15 | Nichicon Corp. | No | |
| 16 | Nichicon (America) Corp. | Yes | |
| 17 | Nippon Chemi-Con Corp. | No | |
| 18 | United Chemi-Con. Inc. | Yes | |
| 19 | Okaya Electric Industries Co. Ltd. | No | |
| 20 | Okaya Electric America Inc. | Yes | |
| 21 | Panasonic Corp. | No | |
| 22 | Panasonic Corp. North America | Yes | |
| 23 | SANYO Electric Co. | No | |
| 24 | SANYO North America Corp. | Yes | |
| 25 | ROHM Co., Ltd. | No | |
| 26 | ROHM Semiconductor U.S.A., LLC | Yes | |
| 27 | Rubycon Corp. | No | |
| 28 | Rubycon America Inc. | Yes | |
| 29 | Shinyei Kaisha | No | |
| 30 | Shinyei Technology Co., Ltd. | No | |
| 31 | Shinyei Capacitor Co. Ltd. | No | |
| 32 | Shinyei Corp. of America | No | |
| 33 | Soshin Electric Co. Ltd. | No | |
| 34 | Soshin Electronics of America Inc. | Disputed | DPPs: Data produced to Plaintiffs does not tie sales to specific customer locations, *i.e.*, bill-to or ship-to addresses. The parties dispute whether Soshin's sales in the U.S. pertain to capacitors or capacitor products.<br><br>Defs.: As stated in its supporting Declarations, apart from de minimis sales of intermediate products/modules that incorporate film capacitors, Soshin America did not sell standalone film capacitors or finished goods from the United States to foreign customers during the Relevant |

| 35 | Taitsu Corp. | No | Period. |
|----|--------------|-----|---------|
| 36 | Taitsu America Inc. | Yes | |

**_Statement of Indirect Purchaser Plaintiffs:_** For the same reasons generally stated in the answers to the Court's questions 3 through 6, this question does not appear related to the IPP case.

Date: March 10, 2016

JOSEPH SAVERI LAW FIRM, INC.

_/s/ Joseph R. Saveri_
Joseph R. Saveri (State Bar No. 130064)
Andrew M. Purdy (State Bar No. 261912)
Matthew S. Weiler (State Bar No. 236052)
James G. Dallal (State Bar No. 277826)
Ryan J. McEwan (State Bar No. 285595)
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
E-mails:     jsaveri@saverilawfirm.com
     apurdy@saverilawfirm.com
     mweiler@saverilawfirm.com
     jdallal@saverilawfirm.com
     rmcewan@saverilawfirm.com

_Interim Lead Counsel for Direct Purchaser Plaintiffs_

Date: March 10, 2016

COTCHETT, PITRE & McCARTHY, LLP

_/s/ Steven N. Williams_
Joseph W. Cotchett (State Bar No. 36324)
Steven N. Williams (State Bar No. 175489)
Adam J. Zapala (State Bar No. 245748)
Elizabeth Tran (State Bar No. 280502)
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
E-mails:     jcotchett@cpmlegal.com
     swilliams@cpmlegal.com
     azapala@cpmlegal.com
     etran@cpmlegal.com

_Interim Lead Counsel for Indirect Purchaser Plaintiffs_

| | |
|---|---|
| Date: March 10, 2016 | MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC |
| | */s/ Bruce D. Sokler* |
| | Bruce D. Sokler (*admitted pro hac vice*) |
| | 701 Pennsylvania Avenue NW |
| | Suite 900 |
| | Washington, DC 20004 |
| | 202-434-7303 |
| | Fax: 202-434-7400 |
| | Email: bdsokler@mintz.com |
| | *Attorneys for Defendant AVX Corporation* |
| Date: March 10, 2016 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | */s/ Heather S. Tewksbury* |
| | Heather S. Tewksbury |
| | 950 Page Mill Road |
| | Palo Alto, CA 94304 |
| | (650) 858-6134 |
| | Fax: (650) 858-6100 |
| | Email: heather.tewksbury@wilmerhale.com |
| | *Attorney for Defendants Elna Co. Ltd. and Elna America Inc.* |
| Date: March 10, 2016 | WILSON SONSINI GOODRICH & ROSATI Professional Corporation |
| | */s/ Jonathan M. Jacobson* |
| | Jonathan M. Jacobson |
| | Chul Pak (*admitted pro hac vice*) |
| | Jeffrey C. Bank (*admitted pro hac vice*) |
| | Justin A. Cohen (*admitted pro hac vice*) |
| | 1301 Avenue of the Americas, 40th Floor |
| | New York, New York 10019 |
| | Telephone: (212) 497-7758 |
| | Facsimile: (212) 999-5899 |
| | jjacobson@wsgr.com |
| | cpak@wsgr.com |
| | jbank@wsgr.com |
| | jcohen@wsgr.com |
| | Jeff VanHooreweghe (*admitted pro hac vice*) |
| | 1700 K Street, N.W., Fifth Floor |
| | Washington, DC 20006 |

Telephone: (202) 973-8825
Facsimile: (202) 973-8899
jvanhooreweghe@wsgr.com

*Attorneys for Defendants Hitachi Chemical Co., Ltd.,*
*Hitachi Chemical Company America, Ltd., and*
*Hitachi AIC Incorporated*

Date: March 10, 2016                    PILLSBURY WINTHROP SHAW PITTMAN LLP

                                        */s/ Roxane A. Polidora*
                                        Roxane A. Polidora
                                        Roxane A. Polidora (CA Bar No. 135972)
                                        Jacob R. Sorensen (CA Bar No. 209134)
                                        Four Embarcadero Center, 22nd Floor
                                        San Francisco, CA 94111
                                        Telephone: (415) 983-1000
                                        Email: roxane.polidora@pillsburylaw.com
                                        jake.sorensen@pillsburylaw.com

                                        *Attorneys for Defendants KEMET Corporation and*
                                        *KEMET Electronics Corporation*

Date: March 10, 2016                    DENTONS US LLP

                                        */s/ Bonnie Lau*
                                        Bonnie Lau
                                        525 Market Street, 26th Floor
                                        San Francisco, CA 94105
                                        415-882-5000
                                        Fax: 415- 882-0300
                                        Email: bonnie.lau@dentons.com

                                        *Attorneys for Defendant Matsuo Electric Co., Ltd.*

Date: March 10, 2016                    GIBSON, DUNN & CRUTCHER LLP

                                        */s/ George A. Nicoud III*

                                        GEORGE A. NICOUD III, SBN 106111
                                        AUSTIN V. SCHWING, SBN 211696
                                        ELI M. LAZARUS, SBN 284082
                                        aschwing@gibsondunn.com
                                        tnicoud@gibsondunn.com
                                        elazarus@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:     415.393.8200
Facsimile:     415.393.8306

MATTHEW PARROTT, SBN 302731
mparrott@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone:     949.451.3800
Facsimile:     949.451.4220

*Attorneys for Defendants NEC TOKIN Corporation and
NEC TOKIN America, Inc.*

Date: March 10, 2016          K&L GATES LLP

                              */s/ Michael E. Martinez*

                              Scott M. Mendel (*pro hac vice*)
                              Steven M. Kowal (*pro hac vice*)
                              Michael E. Martinez (*pro hac vice*)
                              Lauren N. Norris (*pro hac vice*)
                              Lauren B. Salins (*pro hac vice*)
                              K&L GATES LLP
                              70 West Madison Street, Suite 3100
                              Chicago, IL 60602
                              Telephone: (312) 372-1121
                              Facsimile: (312) 827-8000

                              *Counsel for Defendants*
                              *Nichicon Corporation*
                              *Nichicon (America) Corporation*

Date: March 10, 2016          WINSTON & STRAWN LLP

                              */s/ Jeffrey L. Kessler*
                              Jeffrey L. Kessler
                              Jeffrey L. Kessler (*pro hac vice*)
                              A. Paul Victor (*pro hac vice*)
                              Molly M. Donovan (*pro hac vice*)
                              Mollie C. Richardson (*pro hac vice*)
                              200 Park Avenue
                              New York, New York 10166
                              Telephone: (212) 294-4698
                              Facsimile: (212) 294-4700
                              jkessler@winston.com

AMENDED JOINT STATEMENT REGARDING RESPONSES TO THE COURT'S FTAIA
QUESTIONS (DKT NO. 1013) – MASTER FILE NO.: 3:14-CV-03264-JD

pvictor@winston.com
mmdonovan@winston.com
mrichardson@winston.com

Ian L. Papendick (State Bar No. 275648)
101 California Street
San Francisco, CA 94111
Tel: (415) 591-6905
Fax: (415) 591-1400
ipapendick@winston.com

*Counsel for Defendants Panasonic Corporation,
Panasonic Corporation of North America, SANYO
Electric Co., Ltd.,* and *SANYO North America
Corporation*

Date: March 10, 2016                O'MELVENY & MYERS LLP

                                    */s/ Michael F. Tubach*

                                    Michael F. Tubach (SBN 145955)
                                    Two Embarcadero Center, 28th Floor
                                    San Francisco, CA 94111-3305
                                    Telephone:  (415) 984-8700
                                    Facsimile:  (415) 984-8701
                                    Email: mtubach@omm.com

                                    Kenneth R. O'Rourke (SBN 120144 )
                                    400 South Hope Street, 18th Floor
                                    Los Angeles, CA 90071
                                    Telephone: (213) 430-6000
                                    Facsimile: (213) 430-6407
                                    Email:  korourke@omm.com

                                    *Attorneys for Defendants ROHM Co., Ltd. and ROHM
                                    Semiconductor U.S.A., LLC*

Date: March 10, 2016                HUNTON AND WILLIAMS LLP

                                    */s/ Djordje Petkoski*
                                    Djordje Petkoski (admitted *pro hac vice*)
                                    David A. Higbee (admitted *pro hac vice*)
                                    Wendell L. Taylor (admitted *pro hac vice*)
                                    Robert A. Caplen (admitted *pro hac vice*)
                                    2200 Pennsylvania Avenue, N.W.
                                    Washington, D.C.  20037
                                    Telephone: (202) 955-1500

AMENDED JOINT STATEMENT REGARDING RESPONSES TO THE COURT'S FTAIA
QUESTIONS (Dkt No. 1013) – Master File No.: 3:14-cv-03264-JD

Facsimile: (202) 778-2201
dpetkoski@hunton.com
dhigbee@hunton.com
wtaylor@hunton.com
rcaplen@hunton.com

M. Brett Burns (SBN 256965)
575 Market Street, Suite 3700
San Francisco, California 94105
Telephone: (415) 975-3700
Facsimile: (415) 975-3701
mbrettburns@hunton.com

*Attorneys for Defendants Rubycon Corporation and Rubycon America Inc.*

Date: March 10, 2016                    CADWALADER, WICKERSHAM & TAFT LLP

*/s/ Charles F. Rule*

Charles F. Rule (admitted *pro hac vice*)
Joseph J. Bial (admitted *pro hac vice*)
Daniel J. Howley (admitted *pro hac vice*)
700 6th St, NW
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400
rick.rule@cwt.com
joseph.bial@cwt.com
daniel.howley@cwt.com

*Attorneys for Defendants United Chemi-Con, Inc. and Nippon Chemi-Con Corporation*

Date: March 10, 2016                    BONA LAW PC

*/s/ Jarod M. Bona*
Jarod M. Bona (SBN 234327)
Aaron R. Gott (admitted *pro hac vice*)
BONA LAW PC
4275 Executive Square, #200
La Jolla, CA 92037
Telephone: (858) 964-4589
Facsimile: (858) 964-2301
Email: jarod.bona@bonalawpc.com
Email: aaron.gott@bonalawpc.com

*Attorneys for Taitsu Corporation and Taitsu America, Inc.*

Date: March 10, 2016                    JONES DAY

*/s/ Eric P. Enson*

Jeffrey A. LeVee (State Bar No. 125863)
jlevee@JonesDay.com
Eric P. Enson (State Bar No. 204447)
epenson@JonesDay.com
Rachel H. Zernik (State Bar No. 281222)
rzernik@jonesday.com
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071.2300
Telephone:   +1.213.489.3939
Facsimile:   +1.213.243.2539

*Counsel for Defendants
Holy Stone Enterprise Co., Ltd.
Holystone International, and Vishay Polytech Co., Ltd.*

Date: March 10, 2016                    BAKER & MCKENZIE LLP

*/s/ Darrell Prescott*

Darrell Prescott (admitted *pro hac vice*)
Catherine Stillman (admitted *pro hac vice*}
452 Fifth Avenue
New York, NY 10018
(212) 626-4355
Fax: (212) 310-1655
Email: Darrell.Prescott@bakermckenzie.com
Email:Catherine.Stillman@bakermckenzie.com

Meghan E. Hausler (*admitted pro hac vice*)
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75206
Telephone: (214) 965-7219
Facsimile: (214) 965-5937
Email:  Meghan.Hausler@bakermckenzie.com

Colin H. Murray (SBN 159142)
Two Embarcadero Center, 11th Floor

San Francisco, CA 94111
(415) 591-3244
Fax: (415) 576-3099
Email: Colin.Murray@bakermckenzie.com

*Attorneys for Defendants Okaya Electric Industries Co.,
Ltd. and Okaya Electric America, Inc.*

Date: March 10, 2016          HUGHES HUBBARD & REED LLP

*/s/ Ethan E. Litwin_____*

Ethan E. Litwin (admitted *pro hac vice*)
Morgan J. Feder (admitted *pro hac vice*)
Sigrid Jernudd (admitted *pro hac vice*)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel: (212) 837-6000
Fax: (212) 422-4726
Email: Ethan.Litwin@hugheshubbard.com
Email: Morgan.Feder@hugheshubbard.com
Email: Sigrid.Jernudd@hugheshubbard.com

David H. Stern (CA Bar No. 196408)
Carolin Sahimi (CA Bar No. 260312)
Hughes Hubbard & Reed LLP
350 South Grand Avenue
Los Angeles, CA 90071-3442
Tel: (213) 613-2800
Fax: (213) 613-2950
Email: David.Stern@hugheshubbard.com
Email: Carolin.Sahimi@hugheshubbard.com

*Attorneys for Defendants Soshin Electric Co., Ltd. and
Soshin Electronics of America Inc.*

Date: March 10, 2016          DENTONS US LLP

By: ___*/s/ Gaspare J. Bono*__
      Gaspare J. Bono

Gaspare J. Bono (admitted *pro hac vice*)
Stephen M. Chippendale (admitted *pro hac vice*)
Claire M. Maddox (admitted *pro hac vice*)
1900 K Street, NW
Washington, DC 20006
Telephone:  (202) 496-7500

-35-

Facsimile: (202) 496-7756
gap.bono@ dentons.com
steve.chippendale@ dentons.com
claire.maddox@ dentons.com

Andrew S. Azarmi (SBN 241407)
Spear Tower, One Market Plaza, 24th Floor
San Francisco, CA 94150
Telephone: (415) 267-4000
Facsimile: (415) 267-4198
andrew.azarmi@dentons.com

*Attorneys for Defendants Shinyei Kaisha, Shinyei
Technology Co., Ltd., Shinyei Capacitor Co., Ltd., and
Shinyei Corporation of America, Inc.*

Date: March 10, 2016

WILLIAMS MONTGOMERY & JOHN LTD.


By: _____ */s/ Charles E. Tompkins* _____
                Charles E. Tompkins

Charles E. Tompkins, admitted *pro hac vice*
Paul J. Ripp, admitted *pro hac vice*
Eric R. Lifvendahl, admitted *pro hac vice*
Anthony J. O'Neill, admitted *pro hac vice*
**WILLIAMS MONTGOMERY & JOHN LTD.**
233 S. Wacker Drive, Suite 6100
Chicago, IL  60606
Telephone: (312) 443-3200
Facsimile: (312) 630-8500
Email: cet@willmont.com
           pjr@willmont.com
           erl@willmont.com
           ajo@willmont.com

Lesley E. Weaver (State Bar Number 191305)
**BLOCK & LEVITON LLP**
520 Third Street, Suite 108
Oakland, CA  94607
Telephone: (415) 968-8999
Facsimile: (617) 507-6020
Email: lweaver@blockesq.com

*Attorneys for Flextronics International USA, Inc.*

Pursuant to Civil Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: March 10, 2016                    /s/ Charles E. Tompkins