1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   ROXANE A. POLIDORA (CA Bar No. 135972)
2  roxane.polidora@pillsburylaw.com
   JACOB R. SORENSEN (CA Bar No. 209134)
3  jake.sorensen@pillsburylaw.com
   LAURA C. HURTADO (CA Bar No. 267044)
4  laura.hurtado@pillsburylaw.com
   JHALE ALI (CA Bar No. 291872)
5  jhale.ali@pillsburylaw.com
   Four Embarcadero Center, 22nd Floor
6  San Francisco, CA  94111
   Telephone: (415) 983-1000
7  Facsimile: (415) 983-1200
8

9  Attorneys for Defendants
   KEMET CORPORATION and
10 KEMET ELECTRONICS CORPORATION

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15

16  | IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 3:14-cv-03264-JD |

17

18  This Document Relates To:          **REDACTED VERSION OF**
    DIRECT PURCHASER CLASS ACTION      **DOCUMENT SOUGHT TO BE**
19                                     **SEALED**

20                                     **DEFENDANTS KEMET**
                                       **CORPORATION AND KEMET**
21                                     **ELECTRONICS CORPORATION'S**
                                       **MOTION FOR SUMMARY**
22                                     **JUDGMENT**

23

24                                     Date:  May 11, 2016
                                       Time:  10:00 a.m.
25                                     Place:  Courtroom 11, 19th Floor
                                       Hon. James Donato
26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. ISSUES PRESENTED ................................................................................................... 2

III. STATEMENT OF FACTS ............................................................................................ 2

    A. Procedural History ................................................................................................... 2

        1. The Initial and Consolidated Complaints. ....................................................... 2

        2. The Motions to Dismiss and Plaintiffs' Amended Complaints. ........................ 3

        3. This Motion is Ripe for Adjudication. .............................................................. 4

    B. Discovery to Date. ..................................................................................................... 4

        1. The Amnesty Applicant, Panasonic/SANYO, Admitted that KEMET Did Not Participate in the Conspiracy. ........................................................................... 4

        2. KEMET Has Produced Millions of Pages of Documents and Responded to Voluminous Interrogatories and Other Discovery Requests. ............................. 5

        3. KEMET Requested Evidence Supporting Plaintiffs' Allegations that It Joined the Cartel and Has Received None. ................................................................... 6

        4. ██████████████ and Testimony Confirm That KEMET Was Not a Participant. ........................................................................................................... 7

        5. KEMET Asked Plaintiffs for Evidence Supporting Its Alleged Knowledge of NEC TOKIN's Participation in the Cartel and Has Received None. ................... 8

    C. Investigations by Government Agencies Have Not Implicated KEMET. ............... 10

IV. ARGUMENT .............................................................................................................. 11

    A. To Avoid Summary Judgment, the DPPs Must Present Specific Evidence Excluding the Possibility That KEMET Acted Independently. ................................ 11

    B. There Is No Direct Evidence that KEMET Joined the Conspiracy. ....................... 12

    C. Plaintiffs Do Not Have Circumstantial Evidence That Excludes The Possibility That KEMET Was Acting Independently. ......................................................................... 12

        1. Competitors' Possession of Information Related to KEMET Is Insufficient Circumstantial Evidence. ................................................................................. 14

KEMET'S MOTION FOR SUMMARY JUDGMENT
Master File No. 3:14-cv-03264-JD

1

2. KEC's Business Relationship with NEC TOKIN Does Not Subject KEMET to Antitrust Liability. ........................................................................ 16

3. KEC's Membership in Trade Associations Is Insufficient Circumstantial Evidence. ................................................................................................ 18

D. Flextronics's Claim for Violation of State Antitrust and Unfair Competition Law Fares No Better than the Sherman Act Claims. ........................................................ 18

V. CONCLUSION ............................................................................................................. 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Barnes v. Arden Mayfair, Inc.*,
    759 F.2d 676 (9th Cir. 1985) ................................................................... 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................... 13

*Breakdown Servs., Ltd. v. Now Casting, Inc.*,
    550 F. Supp. 2d 1123 (C.D. Cal. 2007) ................................................. 19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................... 11

*Chavez v. Whirlpool Corp.*,
    93 Cal.App.4th 363 (2001) ................................................................. 19

*City of Moundridge v. Exxon Mobil Corp.*,
    2009 WL 5385975 (D.D.C. Sept. 30, 2009), *aff'd* 409 Fed Appx. 362
    (D.C. Cir. Feb. 25, 2011) ................................................................... 16

*Cty of Tuolumne v. Sonora Cmty. Hosp.*,
    236 F.3d 1148 (9th Cir. 2001) ............................................................ 12, 19

*Filco v. Amana Refrigeration*,
    709 F.2d 1257 (9th Cir. 1983) ............................................................ 19

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999) ................................................... 12, 15, 16, 17

*In re Citric Acid Litig.* (*Citric Acid I*),
    996 F. Supp. 951 (N.D. Cal. 1998) (Smith, J.), *cert. denied,* 529 U.S.
    1037 (2000) ................................................................................. passim

*In re Citric Acid Litig.* (*Citric Acid II*),
    191 F.3d 1090, n.2 (9th Cir. 1999) ................................................... passim

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................ 18

*Kline v. Coldwell, Banker & Co.*,
    508 F.2d 226 (9th Cir. 1974) ............................................................ 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..................................................................... 11, 13

*Mitchael v. Intracorp, Inc.*,
    179 F.3d 847 (10th Cir. 1999) .......................................................... 16

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
    608 F. Supp. 2d 1166 (N.D. Cal. 2009) ........................................ 13, 15, 17

*United States v. Esparza*,
    876 F.2d 1390 (9th Cir. 1989) .......................................................... 17

*United States v. Perry*,
    624 F.2d 29 (5th Cir. 1980) ................................................................. 18

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978) ........................................................................... 12

### Statutes and Codes

Antitrust Criminal Penalty Enhancement Reform Act of 2004
    Pub. L. No. 108–237, tit. II, 118 Stat. 661 (ACPERA) ......................... 4

California Business and Professions Code,
    Section 16700 *et seq.* ..................................................................... 2, 19
    Sections 17200 et seq. ................................................................ 2, 18, 19

United States Code,
    Title 15, section 1 ......................................................................... 2, 19

### Rules and Regulations

Federal Rules of Civil Procedure
    Rule 56........................................................................................... v
    Rule 56(e) ...................................................................................... 11

Sherman Act
    Section 1 ....................................................................................... 11

1                          **NOTICE OF MOTION AND MOTION**

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3          PLEASE TAKE NOTICE that on May 11, 2016, at 10:00 a.m., or as soon thereafter

4    as the matter may be heard, in Courtroom 11, 19th floor, 450 Golden Gate Avenue, San

5    Francisco, California, before the Honorable James Donato, Defendants KEMET

6    Corporation ("KC") and KEMET Electronics Corporation ("KEC") (collectively

7    "KEMET") will and hereby do move, pursuant to Rule 56 of the Federal Rules of Civil

8    Procedure, for an order granting summary judgment to KEMET on the ground that KEMET

9    did not participate in a conspiracy to fix capacitor prices.  This motion is based upon this

10   Notice of Motion; the following Memorandum of Points and Authorities; the accompanying

11   Declaration of Jacob R. Sorensen ("Sorensen Decl."); the complete files in these actions;

12   the argument of counsel; and such other matters as the Court may consider.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                             **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.**      **INTRODUCTION**

3         KEMET did not participate in or know about any conspiracy to fix capacitor prices.

4 The Direct Purchaser Plaintiffs ("DPPs") and Flextronics International USA, Inc.

5 ("Flextronics") (collectively "Plaintiffs") can point to no evidence that justifies keeping

6 KEMET in this case.  Plaintiffs have had the full cooperation of the amnesty applicant,

7 which provided the information that launched the criminal investigations that in turn led to

8 this follow-on civil litigation.  The amnesty applicant has sworn under oath that KEMET

9 had nothing to do with the conspiracy.  In addition, Plaintiffs have received millions of

10 documents from KEMET and the other Defendants named in this litigation.  Yet Plaintiffs

11 cannot identify anyone from KEMET who participated in the conspiracy or a single witness

12 from any other company who says KEMET did so.  KEMET is not under investigation by

13 the U.S. Department of Justice ("DOJ") or any other antitrust regulator regarding any

14 capacitor conspiracy.  In short, Plaintiffs do not have the evidence that is required to avoid

15 summary judgment in KEMET's favor.

16         In denying KEMET's motion to dismiss as to KC, the Court relied on the DPPs'

17 allegation in paragraph 208(c) of their Consolidated Class Action Complaint (Dkt. No. 401)

18 that unidentified representatives of KEMET attended cartel meetings in the third Quarter of

19 2008.  Order on Mots. to Dismiss, Dkt. No. 710 at 16:14-21 ("Order on Mots. to Dismiss").

20 Discovery has shown those allegations to be false.  No one from KEMET attended a cartel

21 meeting.  Plaintiffs have not identified any KEMET employee who even knew about the

22 alleged cartel, much less enlisted KEMET in it.  No defendant, including the amnesty

23 applicant, has suggested that KEMET participated in, or knew about, the cartel in any way.

24         Unable to tie KEMET itself to any conspiratorial conduct, Plaintiffs point to KEC's

25 purchase of stock in NEC TOKIN Corporation ("NEC TOKIN") on February 1, 2013 –

26 near the end of the conspiracy – and business agreements between the two companies.  But

27 the fact that KEMET invested in NEC TOKIN and had lawful contracts with NEC TOKIN

28

1   is not evidence that KEMET participated in the conspiracy.  Nor are these facts sufficient to

2   saddle KEMET with secondary liability for NEC TOKIN's admitted wrongdoing.

3         Plaintiffs alternatively suggest that NEC TOKIN may have told KEMET about the

4   cartel and that both companies had "opportunities" to communicate with each other about

5   cartel activities and to coordinate their actions.  But this is unfounded speculation, and

6   Plaintiffs have no evidence of unlawful communications or coordination.

7         KEMET was dragged into this litigation because of its market share and U.S. sales,

8   not because it participated in the cartel.  It is time to bring this expensive and burdensome

9   diversion from the real case to an end.

10  **II.**     **ISSUES PRESENTED**

11  1.     Are KC and KEC entitled to summary judgment in their favor on Plaintiffs' First

12  Claim of Relief under Section 1 of the Sherman Act, 15 U.S.C. § 1?

13  2.     Are KC and KEC entitled to summary judgment in their favor on Flextronics's

14  Second Claim of Relief under California's Cartwright Act and Unfair Competition Law,

15  Business and Professions Code, §§16700 *et seq.* and §§ 17200 *et seq.*?

16  **III.**    **STATEMENT OF FACTS**

17       **A.**    **Procedural History**

18            **1.**    **The Initial and Consolidated Complaints.**

19         These cases arise out of government investigations around the world that began in

20  or around April 2014.  Consol. Second Am. Class Action Compl. and Compl. of Flextronics

21  International USA, Inc. ("Complaint" or "CSAC"), Dkt. No. 799, ¶ 372.  The DPPs and the

22  Indirect Purchaser Plaintiffs ("IPPs") filed consolidated complaints on November 14, 2014.

23  Dkt. Nos. 345 and 347 (unredacted versions filed on December 4, 2014, Dkt. Nos. 400 and

24  401).  The amnesty applicant provided lead counsel for both sets of plaintiffs with a proffer

25  on the conspiracies at issue.  *See* Order on Mots. to Dismiss, Dkt. No. 710 at 10:26-28.

26         The IPPs alleged two separate conspiracies based in Japan:  the "***electrolytic***

27  ***capacitor cartel***" and the "***film capacitor cartel***."  *See* Indirect Purchaser Pls.' Third

28  Consol. Compl. ("IPP Complaint"), Dkt. No. 1057, ¶ 125 (emphasis in original).

1     •     The electrolytic capacitor cartel allegedly took place between April 2002 and

2            December 2013 and included group meetings – known as "ECC," "TC,"

3            "KCC/Hananoki," "ATC," and "MK" meetings – where members fixed the

4            prices of tantalum and aluminum electrolytic capacitors.  *Id.* ¶¶ 126-33.

5     •     Participants in the film capacitor cartel allegedly fixed the prices of film

6            capacitors between 1999 and 2009, including at in-person gatherings

7            referred to as "JFC," "KL," and "FF" meetings.  *Id.* ¶¶ 152-53.

8 The IPPs did not name KEMET as a defendant or allege that KEMET participated in either

9 the "electrolytic capacitor cartel" or the "film capacitor cartel."

10        The DPPs painted with a much broader brush; they alleged a single Asia-based

11 conspiracy to fix the prices of film, tantalum, and aluminum electrolytic capacitors

12 beginning on January 1, 2002 and continuing to present day.  The DPPs named nearly all

13 capacitor manufacturers as Defendants – including KEMET, an American capacitor

14 manufacturer with significant market share.  *See* CSAC ¶¶ 32-101, 192-94.  Most other

15 Defendants that Plaintiffs allege participated in the cartel are companies based in Japan.

16 *See id.* ¶¶ 32-101.

17           **2.**       **The Motions to Dismiss and Plaintiffs' Amended Complaints.**

18        KEMET moved to dismiss the DPPs' consolidated complaint.  On May 26, 2015,

19 the Court denied this motion as to KC but granted it as to KEC.  Order on Mots. to Dismiss,

20 Dkt. No. 710 at 16:14-28.  The Court reasoned that KC was "named in paragraph 198 of the

21 consolidated complaint and in at least one of the subparagraphs of 208."  *Id.* at 16:14-16.

22 Paragraph 198 included a long list of companies whose employees, according to "[m]eeting

23 rosters," supposedly "participated in or were informed of the cartel's regular meetings"

24 between 2003 and 2008.  Consol. Class Action Compl., Dkt. No. 347, ¶ 198.  Paragraph

25 208(c) alleged that KC "attended cartel meetings held during the 3rd Quarter of 2008."  *Id.*

26 ¶ 208(c).

27        As to KEC, the Court concluded that the DPPs alleged "only that KEC acquired a

28 controlling majority voting interest in NEC TOKIN," and that those allegations "do nothing

1    to establish that KEC itself joined the conspiracy."  *See* Order on Mots. to Dismiss, Dkt.

2    No. 710 at 16:22-28.  On this basis, the Court dismissed KEC with leave to amend.  *See id.*

3    On July 22, 2015, the DPPs and Flextronics filed the operative complaint in which they

4    simply included KEC in the same allegations the Court had found sufficient as to KC.

5    CSAC ¶¶ 44, 196, 212(u).  KEMET answered the Complaint on August 6, 2015.  Dkt. Nos.

6    844 (KC) and 845 (KEC).

**3.      This Motion is Ripe for Adjudication.**

8        On July 7, 2015, the Court granted the DPPs' request to add KEMET's President

9    and Chief Executive Officer, Per-Olof Loof, as a document custodian.  In so doing, the

10   Court stated that KEMET "makes merits arguments that are better suited for a summary

11   judgment motion.  If KEMET believes it can prevail on such a motion, the Court

12   encourages it to bring one at the earliest practicable time."  Disc. Order, Dkt. No. 758.

13   KEMET does so now.

14   **B.      Discovery to Date.**

15        **1.      The Amnesty Applicant, Panasonic/SANYO, Admitted that**
            **KEMET Did Not Participate in the Conspiracy.**

16

17       Under the Corporate Leniency Policy of the Antitrust Division of the DOJ, an

18   applicant for amnesty must report "wrongdoing with candor and completeness and

19   provide[] full, continuing and complete cooperation to the Division throughout the

20   investigation."  Sorensen Decl., Ex. 1.  The Antitrust Criminal Penalty Enhancement

21   Reform Act of 2004, Pub. L. No. 108–237, tit. II, 118 Stat. 661 ("ACPERA") also limits a

22   cooperating defendant's civil liability if that defendant provides "a full account to the

23   claimant of all facts known to the applicant or cooperating individual, as the case may be,

24   that are potentially relevant to the civil action."  ACPERA, Pub. L. No. 108–237,

25   § 213(b)(1).  Thus, the amnesty applicant has a powerful incentive to cooperate with the

26   civil plaintiffs and to provide a full account of the facts, and no reason to lie to shield an

27   unrelated defendant such as KEMET.

28

1    Panasonic/SANYO is the amnesty applicant in this matter and, as such, an admitted

2    participant in a conspiracy to fix capacitor prices.[1]  Dkt. No. 710 at 2:21-24; CSAC ¶ 374.

3    Panasonic/SANYO admitted under oath that KEMET did not participate in the conspiracy

4    alleged in the Complaint.  Specifically, Panasonic/SANYO admitted that:

5         • KEMET did not participate in any of the cartel meetings in which

6            Panasonic/SANYO participated;

7         • KEMET did not enter into any agreement with Panasonic/SANYO to violate

8            federal or state antitrust laws or to fix the prices of capacitors or limit output

9            of capacitors;

10         • Panasonic/SANYO did not inform KEMET of any illegal agreements

11            regarding capacitors; and

12         • Panasonic/SANYO did not inform the DPPs that KEMET participated in the

13            conspiracy alleged in the Complaint.

14    Sorensen Decl., Exs. 2 and 3.

15         **2.    KEMET Has Produced Millions of Pages of Documents and
16               Responded to Voluminous Interrogatories and Other Discovery
               Requests.**

17    KEMET began producing documents on March 30, 2015, and substantially

18    completed its document production on December 9, 2015.  Sorensen Decl. ¶ 6.  KEMET

19    has produced over 1,023,000 separate documents, including transaction data, documents

20    collected from centralized files, and custodial documents.  *Id.* ¶ 8.  This production likely

21    exceeds 5,100,000 pages.  *Id.*[2]  The other Defendants have likewise produced millions of

22    _____

23    [1] Panasonic/SANYO refers collectively to defendants Panasonic Corporation and Panasonic
       Corporation of North America (together "Panasonic") and defendants SANYO Electric
24     Co., Ltd., and SANYO North American Corporation (together "SANYO").  CSAC ¶ 36.
       Panasonic has been a major player in the capacitors industry since at least 2003.  *See id*.
25     ¶ 9.  It acquired SANYO in 2009.  *Id.* ¶ 34.

26    [2] At the DPPs' request, *see* Order Re: Disc. Of Electronically Stored Info., Dkt. No. 782 at
       4:2-5, KEMET has mainly produced its documents in native form.  Sorensen Decl. ¶ 8.
27     As a result, there is not a separate Bates number for each page of the production.
       *Id.* ¶ 8.

28

1   pages of documents.  KEMET understands that most if not all Defendants have

2   substantially or entirely completed their document productions.[3]  Sorensen Decl. ¶ 7.  In

3   addition to requesting documents, the DPPs have served interrogatories and posed informal

4   questions about transaction data, to which KEMET has responded.  *Id.* ¶ 14.

5           **3.      KEMET Requested Evidence Supporting Plaintiffs' Allegations**
                    **that It Joined the Cartel and Has Received None.**

6

7           On June 23, 2015, KEMET served requests for admissions and interrogatories

8   asking the DPPs to identify any evidence supporting their allegations that KEMET

9   participated in the conspiracy.  Sorensen Decl., Exs. 8, 9.  In addition, Defendants

10  collectively served three sets of interrogatories on Flextronics seeking, among other items,

11  each fact and document that supports Flextronics's allegations related to the conspiracy.

12  *Id.,* Exs. 21-23.

13  ██████████████████████████████████████████████  *Id.*, Ex. 10.  In

14  response to interrogatories asking them to identify all evidence supporting ████████ and

15  to identify knowledgeable witnesses, ████████████████████████  *Id.*, Ex.

16  11.  Instead, ████████████████████████████████████████

17  ███████  *Id.*, Ex. 11.  These documents fall into the following categories:

18         ●  ██████████████████████████████████

19            ██████████████████████;[4]

20         ●  ██████████████████████████████████████

21            ████████████████████████████████████

22            ██████████████████████;[5] and

23

24  ────────────────────

25  [3]  At the time of this filing, Plaintiffs have taken 19 depositions of Defendants, and several
    more have been scheduled.  Sorensen Decl. ¶ 39.

26  [4]  For ease of reference, KEMET has grouped this category of documents into Sorensen
    Declaration Exhibit 12.

27  [5]  Sorensen Decl., Ex. 13

28

1    • ███████████████████████████████████████████

2    ███████████████████████████████████████████

3    ████████████████████████████████████████████████

4    ██████████████████████[6]

5    None of these documents shows any agreement between KEMET and any of the

6    other Defendants to fix prices or output or otherwise violate state or federal antitrust laws.

7    Furthermore, while Flextronics's interrogatory responses ████████████████,

8    they do not refer to KEMET at all.  For example, Flextronics's interrogatory responses

9    ███████████████████████████████████████████████. *Id.*,

10   Ex. 25 at 4-5.  KEMET is not mentioned.

11   **4.   ████████████████ and Testimony Confirm That KEMET
         Was Not a Participant.**

12

13   In response to KEMET's interrogatories, Plaintiffs ███████████████████

14   █████████████████████████████████████████████████

15   █████████████████████████████████████████████████

16   ████████████████ Sorensen Decl., Exs. 12, 27.[7]  None of these ██████ supports

17   Plaintiffs' allegations that KEMET attended cartel meetings in the third quarter of 2008 or

18   ever.  To the contrary, the ████████████████████████████████

19   █████████████████████████████████████████████████

20   ██████, *see id.*, Ex. 27A, or ████████████████████████

21

22

23

24   ───────────────────────

25   [6] *Id.*, Ex. 14.

     [7] Sorensen Decl. Exhibit 27 contains ██████████████████ identified by Flextronics in
26   their interrogatories responses that refer to KEMET, *see* Sorensen Decl., Ex. 25 at 4-5,
     that were not otherwise identified by the DPPs.  As with the ██████████████████
27   identified by the DPPs, none of the ██████████████ identified by Flextronics lists
     ██████████████████

28

1   *See id.*, Exs. 12B, 12C, 27B, 27C, 27D.  Nowhere in the ███████████████████

2   █████.[8]

3           The ████████████████████████████████████████████████

4   ████████████████████████████  For example, ███████████████

5   ████████████████████████████████████████████████

6   ████████████████████████████████████████████████

7   █████████████  *Id.*, Ex. 27C at 6.  KEMET is a significant manufacturer of tantalum

8   capacitors.  ████████████████████████████████████████████

9   ████████████████████████████████████████████████

10  ████████████

11          Thus far, one participant in one group of the alleged cartel meetings—the JFC or

12  Japan Film Capacitors meetings—has been deposed.[9]  Mr. Ikazaki of Okaya ███████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████  Sorensen Decl.

16  Ex. 28, at 27:11-22; 338:18-340:19.

17          **5.     KEMET Asked Plaintiffs for Evidence Supporting Its Alleged
18                   Knowledge of NEC TOKIN's Participation in the Cartel and Has
                     Received None.**

19          Plaintiffs claim that KEMET had knowledge and control of NEC TOKIN's cartel

20  activities from 2012 onwards as a result of KEC's purchase of stock in NEC TOKIN on

21  February 1, 2013 and related agreements between KEC, NEC TOKIN, and NEC TOKIN's

22  parent company, NEC Corporation ("NEC Corp.").  CSAC ¶¶ 223, 231-233.  Specifically,

23  they allege that NEC TOKIN participated in the cartel "while under KEMET's control" and

_____

24  [8] ████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ████████████████  *See* Sorensen Decl., Exs. 27C, 27D.  ███████████████
    ██████████████████.

27  [9] The government notified the Court on March 2, 2016 that it has closed its investigation
    into film capacitors.  Dkt. No. 1097.

28

1   that KEMET had knowledge of such participation due to KEMET's "oversight of NEC

2   TOKIN." *Id.* ¶ 231.  Plaintiffs go on to claim that neither KEMET's directors nor its

3   officers "instructed or directed NEC TOKIN to withdraw from" the conspiracy. *Id.* ¶ 231.

4          KEMET asked the DPPs to admit that they are not aware of any documents or

5   witnesses showing that KEMET "had knowledge of NEC TOKIN's participation in the

6   cartel," as alleged in paragraph 231 of the Complaint.  Sorensen Decl., Ex. 8 at 3. ████

7   ████████████████████████  *Id.*, Ex. 10 at 4.  In response to an interrogatory

8   asking them to state the facts ███████████████ and to identify knowledgeable

9   witnesses, ████████████████████████████████████

10  ███████████████  *Id.*, Ex. 11 at 3-8.  ████████████████████████████.

11  The only evidence identified by the DPPs that is not duplicative of documents previously

12  addressed, *see supra* at 6-7, is the following:

13          •   ██████████████████████████████████

14              ██████████████████████████████████

15              ██████████████████████████████████

16              ████████████████████████████████████

17              ██████████████████████████████████

18              ██████████████████████████████████

19              ████[10]

20          •   Documents regarding ████████████████████████

21              ████████████████████████████████

22              ████████████████████████[,11]

23

24  ────────────────

25  [10] The DPPs identified the documents referenced in this bullet point and the four bullet
        points immediately below, *see supra* at 9-10, in their responses to KEMET's First Set of

26      Interrogatories.  Sorensen Decl., Ex. 11 at 5-8.  The ████████████████ are
        appended to the Sorensen Declaration as Exhibits 4-7.

27  [11] Sorensen Decl., Exs. 13I, 13J, 13K, 13E.

28

KEMET'S MOTION FOR SUMMARY JUDGMENT
Master File No. 3:14-cv-03264-JD

1  •  ███████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ██████████████,[12]

4  •  ██████████████████████████████████████████

5  █████████████;[13] and

6  •  ██████████████████████████████████████████

7  ████████████████████████████████████████████

8  ████████████████████.[14]

9      None of these documents suggests that KEMET had any knowledge or control of

10  NEC TOKIN's cartel activities.  To the contrary, the ████████████ cited by the

11  DPPs provides that ████████████████████████████████████

12  ██████████████████████████████████████████████████

13  ████████████████  Sorensen Decl., Ex. 6, § 8.1(c).  That ██████████ also provides that

14  █████████████████████████████████████████████████

15  ██████████████████████████████████████████

16  ████████████████████████████████████████  *Id.*, Ex. 6,

17  § 11.10.  ████████████████████████████████████

18  ██████████████  *Id.*, Ex. 6, § 11.10.

19      **C.**    **Investigations by Government Agencies Have Not Implicated KEMET.**

20      Antitrust authorities around the world are investigating capacitor price fixing, but

21  none of those investigations has extended to KEMET.

22      The DOJ intervened in this case on October 29, 2014, and sought a stay based on its

23  investigation.  *See* U.S. Notice of Mot. and Mot. to Intervene, Dkt. No. 240; Civil Min.,

24  Dkt. No. 309.  The stay expired for all relevant purposes and discovery was fully opened on

25  ─────────────────────

26  [12] Sorensen Decl., Exs. 17-20.

27  [13] Sorensen Decl., Ex. 16.

    [14] Sorensen Decl., Exs. 13A, 13B.

28

1    April 15, 2015.  *See* Civil Min., Dkt. No. 309.  On January 21, 2016, Defendant NEC

2    TOKIN pleaded guilty to conspiring with competitors to fix the prices of electrolytic

3    capacitors sold to consumers in the United States and abroad and agreed to pay a $13.8

4    million criminal fine.  Sorensen Decl., Exs. 29, 30.  Meanwhile, KEMET has not even

5    received a subpoena from the DOJ.  Sorensen Decl. ¶ 42.

6        In November 2015, the European Commission sent a "Statement of Objections"—

7    a formal notice of suspected activity in violation of the European Union's antitrust laws—to

8    ten manufacturers for allegedly participating in a cartel to fix the prices of electrolytic

9    capacitors.  Sorensen Decl., Ex. 31.  KEMET was notified telephonically by the European

10   Commission in May 2015 that it would not be issuing any such Statement of Objections to

11   KEMET.  Sorensen Decl. ¶ 44.

12       As a result of its own investigation, the Taiwanese Federal Trade Commission also

13   imposed fines on ten capacitor manufacturers in December 2015.  Sorensen Decl., Ex. 32.

14   Again, KEMET was not one of those manufacturers.  Sorensen Decl. ¶¶ 45-46.

15   **IV.    ARGUMENT**

16       **A.    To Avoid Summary Judgment, the DPPs Must Present Specific
                 Evidence Excluding the Possibility That KEMET Acted Independently.**

17

18       "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . .

19   against a party who fails to make a showing sufficient to establish the existence of an

20   element essential to that party's case, and on which that party will bear the burden of

21   proof…."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To survive summary

22   judgment, Plaintiffs must "come forward with 'specific facts showing that there is a

23   *genuine issue for trial.*'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

24   587 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis in original).  Merely raising "some

25   metaphysical doubt as to the material facts" will not suffice.  *Id.* at 587.

26       In an action under Section 1 of the Sherman Act, the plaintiffs bear the burden of

27   proving an agreement to fix prices.  *In re Citric Acid Litig.* (*Citric Acid II*), 191 F.3d 1090,

28   1093, 1094 n.2 (9th Cir. 1999), *aff'g In re Citric Acid Litig.* (*Citric Acid I*), 996 F. Supp.

1    951 (N.D. Cal. 1998) (Smith, J.), *cert. denied,* 529 U.S. 1037 (2000).  Participation in a

2    price-fixing agreement "c[an] only be predicated on the knowing involvement of each

3    defendant, considered individually, in the conspiracy charged."  *United States v. U.S.*

4    *Gypsum Co.,* 438 U.S. 422, 463 (1978).  Thus, Plaintiffs have the burden of proving that

5    *KEMET* actually joined the conspiracy.

6         Plaintiffs, therefore, have the burden to establish a genuine issue of material fact,

7    either through [1] direct evidence that KEMET, considered individually, joined the

8    conspiracy, or [2] circumstantial evidence tending to exclude the possibility that KEMET

9    acted independently of the conspiracy.  *Citric Acid II*, 191 F.3d at 1093.

10        **B.     There Is No Direct Evidence that KEMET Joined the Conspiracy.**

11        Direct evidence, in the context of this motion, would be evidence "establish[ing],

12   without requiring any inferences, that [KEMET] participated in the . . . conspiracy."  *Citric*

13   *Acid II*, 191 F.3d at 1093–94; *see Cty of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148,

14   1155 (9th Cir. 2001) ("[D]irect evidence in a Section 1 conspiracy must be evidence that is

15   explicit and requires no inferences to establish the proposition or conclusion being

16   asserted.") (citation omitted); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir.

17   1999) ("*Baby Food*") (same).

18        Plaintiffs have no direct evidence that KEMET conspired to fix prices.  As

19   discussed above, Plaintiffs have identified no testimony or documents showing that

20   KEMET agreed with competitors to fix prices or limit output, or otherwise join the

21   conspiracy.  Sorensen Decl., Exs. 10-11, 24-26.

22        **C.     Plaintiffs Do Not Have Circumstantial Evidence That Excludes The**
             **Possibility That KEMET Was Acting Independently.**
23

24        The ███████████████████████████████████ Plaintiffs listed in discovery

25   responses likewise fall far short of implicating KEMET in any price-fixing activity.  Where,

26   as here, the plaintiff relies solely on circumstantial evidence, the Ninth Circuit applies the

27   following test:

28

1     First, the defendant can "rebut an allegation of conspiracy by showing a
plausible and justifiable reason for its conduct that is consistent with proper
2     business practice."  The burden then shifts back to the plaintiff to provide
specific evidence tending to show that the defendant was not engaging in
3     permissible competitive behavior.

4     *Citric Acid II*, 191 F.3d at 1094 (citations omitted).  In other words, once KEMET rebuts

5     Plaintiffs' attempted inference of conspiracy, Plaintiffs must offer admissible evidence that

6     "tend[s] to exclude the possibility" that KEMET "acted independently."  *Matsushita*, 475

7     U.S. at 588; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (same); *see Sun*

8     *Microsystems Inc. v. Hynix Semiconductor Inc.* (Sun III), 608 F. Supp. 2d 1166, 1193 (N.D.

9     Cal. 2009) (Hamilton, J.) (stating where "the evidence tends to support an inference of non-

10    conspiratorial conduct, plaintiff must now, in order to defeat summary judgment, come

11    forward with evidence that shows that [defendant] was *not* engaging in permissible

12    competitive behavior").

13        KEMET submits the following evidence:

14         • The amnesty applicant has provided sworn discovery responses that KEMET

15           did not participate in any of the alleged cartel meetings, was not informed of

16           the cartel, and did not enter into any agreements with the amnesty applicant

17           that violated state or federal antitrust laws.  Sorensen Decl., Ex. 3.

18         • No antitrust regulator investigating the alleged cartel, including DOJ, has

19           pursued KEMET.  Sorensen Decl. ¶¶ 40, 42, 44, 46.

20         • Although NEC TOKIN pleaded guilty to conspiring to fix the prices of

21           electrolytic capacitors, its plea did not implicate KEMET.  Sorensen Decl.,

22           Ex. 29, at Exhibit A (Plea Agreement) at 2-3.

23         • ███████████████████████████████████████████

24           ███████████████████████████████████████

25           ████████████████████. *Id.* at Exs. 12, 27.

26        In similar circumstances, courts in this Circuit have granted motions for summary

27    judgment.  In *Citric Acid I*, four of the five major producers of citric acid "admittedly

28    conspired to divide the market among them and to raise the price of citric acid by limiting

1   sales." 996 F. Supp. at 953. All four pleaded guilty to criminal charges and settled civil

2   damages actions. *Id.* The fifth producer, defendant Cargill, sought summary judgment

3   "that it was never a member of the conspiracy." *Id.* The district court granted Cargill's

4   motion, and the Ninth Circuit affirmed in *Citric Acid II*. 191 F.3d at 1108. "Most

5   persuasive," in the view of Judge Smith, was the testimony of the president of one of the

6   four admitted conspirators that "no one from Cargill attended any of the meetings at which

7   the conspirators allocated market share . . . ." *Citric Acid I*, 966 F. Supp. at 955. Normally

8   the absence of direct evidence of a conspiracy is not dispositive, but

9
10
11
> [t]his case is different. There was abundant direct evidence of a conspiracy
> among four companies …. In fact, all four companies pled guilty to criminal
> charges and have been sentenced. None now have any reason to shield
> Cargill. The utter lack of any direct evidence that Cargill was involved in
> that conspiracy is therefore quite probative.

12   *Id.* at 956. On appeal, in *Citric Acid II*, the Ninth Circuit noted that although the summary

13   judgment record "clearly shows that several citric acid producers conspired to fix prices and

14   to allocate market shares, [it] does not . . . support a reasonable inference that [the moving

15   defendant] was involved in [that] conspiracy." 191 F.3d at 1106; *see also Citric Acid II*,

16   191 F.3d at 1106 ("We note that all four major citric acid manufacturers admitted to

17   conspiring to fix prices but none identified Cargill as a co-conspirator"); *Barnes v. Arden*

18   *Mayfair, Inc.*, 759 F.2d 676, 684 (9th Cir. 1985) (affirming summary judgment where "the

19   dairies have admitted their participation in a conspiracy, while simultaneously exonerating

20   [the moving defendant] with nothing to gain for their exculpatory statements").

21   **1.     Competitors' Possession of Information Related to KEMET Is
         Insufficient Circumstantial Evidence.**

22

23        As discussed above, Plaintiffs have pointed to documents produced by

24   ████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████ as circumstantial

26   evidence that KEMET participated in the conspiracy. Sorensen Decl., Exs. 10-11, 24-26.

27   None of this evidence, however, tends to exclude the possibility that KEMET was acting

28   independently.

1       While some of the ████████████████ documents include

2  occasional references to KEMET's pricing or production figures, there is no evidence that

3  KEMET supplied that information or, if it did, that it did so knowing about or intending to

4  assist the conspiracy.  The mere possession of a competitor's pricing information does not

5  "tend to exclude legitimate competitive behavior," because "[t]here are many legal ways in

6  which [the defendant] could have obtained pricing information on competitors."  *Citric*

7  *Acid II*, 191 F.3d at 1103; *Sun III*, 608 F. Supp. 2d at 1193 (shifting burden to plaintiffs

8  where e-mails "allegedly includ[ing] Mitsubishi pricing information … never actually

9  state[d] whether Mitsubishi was the source" of that information and "pricing

10  communications . . . on their face suggeste[d]" that customers provided the relevant pricing

11  information); *Baby Food*, 166 F.3d at 126 ("We do not believe that the mere possession of

12  competitive memoranda is evidence of concerted action to fix prices.").  The Ninth Circuit

13  has determined that even the possession of competitor price lists is not sufficient, in itself,

14  to exclude the possibility of legitimate behavior.  *See Citric Acid II*, 191 F.3d at 1103; *see*

15  *also In re Baby Food*, 166 F.3d at 126, 137 ("Gathering competitors' price information can

16  be consistent with independent competitor behavior.").

17       Here, the limited information about KEMET's pricing and production in the

18  ████████████████ documents could have come from many legitimate

19  sources, including customers and market research firms.  Plaintiffs have not produced

20  evidence tending to exclude the possibility that KEMET's competitors received pricing

21  information from such sources.  Moreover, the fact that these two companies were in

22  possession of certain historical data relating to KEMET's sales[15] does not give rise to an

23  inference of conspiracy, because such information has little or no collusive potential and is

24  likely to be publicly available.  *See Citric Acid I*, 996 F. Supp. at 959 ("[T]he exchange of

25  publicly available information does not support an inference of conspiracy.").

26  —————————————

27  [15]    *See, e.g.,* Sorensen Decl., Ex. 14C (████████████████████

    ████████████████████████████████).

28

1    In their discovery responses, Plaintiffs also point to documents that purportedly

2    permit an inference that KEMET ████████████████████████████████████

3    ██████████████████████████    *See* Sorensen Ex. 11 at 4-5.  But even if there was evidence

4    of ██████████████████████████████████████, it would not satisfy

5    Plaintiffs' burden.  "[C]ommunications between competitors do not permit an inference of

6    an agreement to fix prices unless 'those communications rise to the level of an agreement,

7    tacit or otherwise.'"  *Baby Food*, 166 F.3d at 126 (citation omitted); *see also Mitchael v.*

8    *Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999) ("Mere exchanges of information, even

9    regarding price, are not necessarily illegal, in the absence of additional evidence that an

10    agreement to engage in unlawful conduct resulted from, or was a part of, the information

11    exchange"); *City of Moundridge v. Exxon Mobil Corp.*, No. 2009 WL 5385975, at *9

12    (D.D.C. Sept. 30, 2009) ("Evidence that competitors had contact with each other or

13    exchanged information does not establish a conspiracy"), *aff'd* 409 F. App'x 362 (D.C. Cir.

14    Feb. 25, 2011); *Gypsum*, 438 U.S. at 441 n.16 ("The exchange of price data and other

15    information among competitors does not invariably have anticompetitive effects; indeed

16    such practices can in certain circumstances increase economic efficiency and render

17    markets more, rather than less, competitive.").

18    In sum, Plaintiffs have not substantiated their allegations that KEMET exchanged

19    competitively sensitive information with competitors or that any such communications rose

20    to the level of a price-fixing agreement.

21    **2.    KEC's Business Relationship with NEC TOKIN Does Not
          Subject KEMET to Antitrust Liability.**

22

23    Plaintiffs allege that KEC's business relationship with NEC TOKIN created

24    "opportunities" for KEMET and NEC TOKIN to exchange competitively sensitive

25    information.  CSAC ¶ 223.  KEC's legitimate business activities (*see supra* at 8-10),

26    however, do not raise any inference helpful to Plaintiffs.  *Citric Acid I*, 996 F. Supp. at 959

27    ("Where cooperation is necessary for a legitimate business purpose, the mere opportunity to

28    conspire at business meetings is insufficient to support an inference of conspiracy"); *City of*

1    *Moundridge*, 2009 WL 5385975, at *11 ("defendants' involvement in joint production or

2    ownership agreements with other companies is not alone evidence of a conspiracy,"

3    because "[t]he opportunity for the defendants to conspire does not create an inference of

4    conspiracy").

5           Moreover, discussions about general market trends or publicly available

6    information—which may occur during legitimate activities among competitors—are not

7    unlawful and do not support an inference of price fixing. *See Sun III*, 608 F. Supp. 2d at

8    1193 (finding evidence tended to support an inference of non-conspiratorial conduct where

9    many communications were about "generic market conditions" or "general 'shop talk'

10   about the industry"); *Baby Food*, 166 F.3d at 125 (finding "sporadic exchanges of shop

11   talk" among lower level employees with no pricing authority was "insufficient to survive

12   summary judgment").  Plaintiffs cannot escape the burden of proving that KEMET actually

13   joined the conspiracy by simply asserting that KEMET had the "opportunity" to collude

14   with NEC TOKIN.

15          As discussed, Plaintiffs also allege that KEMET's business relationship with NEC

16   TOKIN gave KEMET knowledge of, and control over, NEC TOKIN's participation in the

17   cartel. *See supra* at 8-10.  No evidence supports this conceptual leap.  In particular, none of

18   the documents that Plaintiffs cite show that KEMET was aware of NEC TOKIN's price-

19   fixing activities, let alone controlled them.  In fact, the Stockholders' Agreement provides

20   that KEC has no authority over decisions relating to the marketing, sale or pricing of NEC

21   TOKIN's capacitors. *See supra* at 10.  The agreement also creates information firewalls

22   between the two companies to prevent running afoul of the antitrust laws. *See supra* at 10.

23          Even if KEMET became aware of NEC TOKIN's unlawful conduct—which it did

24   not—knowledge of cartel activities is not enough to prove participation in a conspiracy.

25   *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 232 (9th Cir. 1974) ("[I]n order for a

26   member of a trade association to become . . . liable . . . he must have "knowingly,

27   intentionally and actively participated in an individual capacity in the scheme." (quotation

28   omitted)); *United States v. Esparza*, 876 F.2d 1390, 1392 (9th Cir. 1989) (stating "you must

1   find that this defendant joined the conspiracy and did so knowing of the unlawful plan and

2   intending to carry it out"); *United States v. Perry*, 624 F.2d 29, 31 (5th Cir. 1980) ("It is a

3   cardinal rule of conspiracy law that one does not become a conspirator simply by virtue of

4   knowledge of a conspiracy and association with conspirators." (citation omitted)).

5           **3.    KEC's Membership in Trade Associations Is Insufficient
               Circumstantial Evidence.**
6

7           Plaintiffs also allege that KEMET's membership in various industry associations

8   (separate and apart from the various formal cartel meetings alleged in the complaint, which

9   KEMET did not attend)[16] provided KEMET with "many opportunities both before and

10  during the Class Period . . . to collude . . . ."  CSAC ¶¶ 362, 365.  KEC's participation in

11  trade associations, however, does not tend to exclude the possibility that KEMET acted

12  independently.  *Citric Acid II*, 191 F.3d at 1097 (refusing to infer that trade association

13  meetings were related to conspiracy meetings, even though they took place in the same city

14  within days of each other); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp.

15  2d 1011, 1023 (N.D. Cal. 2007) ("[E]ven where some competitors have admitted to

16  meeting to fix prices at or near trade shows and conferences, it is not reasonable to infer

17  that another competitor in attendance at the same meeting had done likewise.").  Moreover,

18  the types of general market discussions that frequently occur among competitors at trade

19  association events are not unlawful.  *See supra* at 16-17.

20          **D.    Flextronics's Claim for Violation of State Antitrust and Unfair
               Competition Law Fares No Better than the Sherman Act Claims.**
21

22          Flextronics alone brings the Second Claim of Relief under California's Cartwright

23  Act and Unfair Competition Law ("UCL").  CSAC ¶¶ 444-469.  This claim, like Plaintiffs'

24  _____

25  [16] Plaintiffs incorrectly suggest that both KC and KEC are members of the Electronic
     Components Industry Association and the Power Sources Manufacturers Association

26  (CSAC ¶¶ 364-365); KEC, not KC, is a member of those industry associations.  Sorensen
     Decl. ¶ 47.  Notably, neither KEC nor KC are a part of the Japan Electronics and

27  Information Technology Association whose roster—according to Plaintiffs—"during
     much of the Class Period paralleled the cartel's roster."  CSAC ¶ 366.

28

1   Sherman Act claim, is based on an alleged conspiracy among Defendants to fix the prices

2   of capacitors.  There are no new or different allegations regarding KEMET.

3        Flextronics's Cartwright Act claim cannot survive summary judgment for the same

4   reasons that the Sherman Act claim cannot survive – there is no evidence, and no basis for

5   any inference, that KEMET participated in or was aware of the conspiracy.  As the Ninth

6   Circuit has explained, "[t]he analysis under California's antitrust law mirrors the analysis

7   under federal law because the Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.*, was

8   modeled after the Sherman Act."  *Cty of Tuolumne*, 236 F.3d at 1160 (9th Cir. 2001)

9   ("Given the analyses and conclusions regarding the federal claims, the district court

10  properly granted summary judgment on the state antitrust claims, as well."); *Filco v. Amana*

11  *Refrigeration*, 709 F.2d 1257, 1267–68 (9th Cir. 1983) (affirming entry of summary

12  judgment as to both Section 1 and Cartwright Act claims because the claims "raise basically

13  the same issues").

14       The UCL claim is based on the same allegedly unlawful conduct that gave rise to

15  the Sherman Act claim.  As such, the UCL claim also fails.  *Breakdown Servs., Ltd. v. Now*

16  *Casting, Inc.*, 550 F. Supp. 2d 1123, 1142 (C.D. Cal. 2007) ("[I]n a case where plaintiff's

17  § 17200 claim is predicated on antitrust violations that fail to withstand summary judgment,

18  the § 17200 claim must also fail.  Here, NCI's § 17200 claim is based on the same

19  allegations the Court found insufficient to establish antitrust liability.  Therefore, summary

20  judgment is also appropriate here."); *see Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363,

21  375 (2001) (stating that when the same conduct is alleged to support an antitrust and UCL

22  claim "[t]o permit a separate inquiry into essentially the same question under the unfair

23  competition law would only invite conflict and uncertainty and could lead to the enjoining

24  of procompetitive conduct").

25

26

27

28

1   **V.      CONCLUSION**

2            For the foregoing reasons, KEMET's motion for summary judgment should be

3   granted.

4            Dated:  March 29, 2016.

5                                        PILLSBURY WINTHROP SHAW PITTMAN LLP
                                         ROXANE A. POLIDORA
6                                        JACOB R. SORENSEN
                                         LAURA C. HURTADO
7                                        JHALE ALI
                                         Four Embarcadero Center, 22nd Floor
8                                        San Francisco, CA 94111

9
                                         By:  _____/s/ Roxane A. Polidora_____
10                                                    Roxane A. Polidora

11                                       Attorneys for Defendants
                                         KEMET CORPORATION and
12                                       KEMET ELECTRONICS CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28