Joseph R. Saveri (State Bar No. 130064)
Joshua P. Davis (State Bar No. 193254)
Andrew M. Purdy (State Bar No. 261912)
Matthew S. Weiler (State Bar No. 236052)
James G. Dallal (State Bar No. 277826)
Ryan J. McEwan (State Bar No. 285595)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            jdavis@saverilawfirm.com
            apurdy@saverilawfirm.com
            mweiler@saverilawfirm.com
            jdallal@saverilawfirm.com
            rmcewan@saverilawfirm.com

*Interim Class Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 3:14-cv-03264-JD |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | **DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS FUJITSU LIMITED, NEC TOKIN, NITSUKO, THE OKAYA DEFENDANTS, AND ROHM** |
| | Date:     November 3, 2016<br>Time:     10:00 a.m.<br>Place:     Courtroom 11, 19th Floor<br>Judge:    Hon. James Donato |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 10:00 a.m. on November 3, 2016, at the U.S. District Court for the Northern District of California located 450 Golden Gate Avenue, San Francisco California 94104, or as soon thereafter as the matter may be heard, Direct Purchaser Plaintiffs ("DPPs") will and hereby do move the Court for an order granting preliminary approval of the Direct Purchaser Class' class action settlements with Defendants Fujitsu Limited; NEC TOKIN Corporation and NEC TOKIN America, Inc. ("NEC TOKIN"); Nitsuko Electronics Corporation ("Nitsuko"); Okaya Electric Industries Co., Ltd. and Okaya Electric America, Inc. (the "Okaya Defendants"); and ROHM Co., Ltd.; and ROHM Semiconductor U.S.A., LLC ("ROHM").

DPPs' motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Joseph R. Saveri and the exhibits attached thereto, the Court's files and records in this matter, oral argument of counsel, and such other and further matters as the Court may consider.

Date:  September 27, 2016

Respectfully Submitted,

JOSEPH SAVERI LAW FIRM, INC.

By:  _/s/ Joseph R. Saveri_
        Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Joshua P. Davis (State Bar No. 193254)
Andrew M. Purdy (State Bar No. 261912)
Matthew S. Weiler (State Bar No. 236052)
James G. Dallal (State Bar No. 277826)
Ryan J. McEwan (State Bar No. 285595)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940

*Interim Class Counsel for Direct Purchaser Plaintiffs*

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ......................................................................................................... 1

II.   CASE HISTORY ..........................................................................................................2

    A.    Direct Purchaser Plaintiffs' Factual Allegations and Claims. ............................2

    B.    Procedural History and Negotiations. ................................................................2

III.  SUMMARY OF SETTLEMENT TERMS ....................................................................5

    A.    The Settlement Class. ........................................................................................5

    B.    The Settling Defendants ....................................................................................6

        1.    Fujitsu Limited and Its Subsidiaries ......................................................6

        2.    NEC TOKIN ...........................................................................................6

        3.    Nitsuko ...................................................................................................7

        4.    The Okaya Defendants ............................................................................8

        5.    ROHM ....................................................................................................8

    C.    Settlement Amounts and Additional Consideration. ..........................................8

        1.    Fujitsu Limited Settlement .....................................................................9

        2.    NEC TOKIN Settlement .......................................................................10

        3.    Nitsuko Settlment .................................................................................10

        4.    The Okaya Defendants' Settlement ...................................................... 11

        5.    ROHM Settlement .................................................................................12

    D.    Attorneys' Fees and Expenses. ....................................................................... 13

    E.    Release of All Claims. ..................................................................................... 13

IV.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............... 13

    A.    Preliminary Approval Is Appropriate Because the Settlement Is Fair and
        Adequate. ........................................................................................................ 13

        1.    Standards for Preliminary Approval of a Settlement. ........................... 13

        2.    The Settlement Is Fair, Reasonable and Adequate. .............................. 15

            a.    The Fujitsu Limited Settlement is Fair, Reasonable, and Adequate.......... 16

**TABLE OF CONTENTS (cont.)**

        b.    The NEC TOKIN Settlement is Fair, Reasonable, and Adequate ............ 17

        c.    The Nitsuko Settlement is Fair, Reasonable, and Adequate .................... 17

        d.    The Settlement with Okaya Defendants is Fair, Reasonable, and Adequate ................................................................................................... 18

        e.    The ROHM Settlement is Fair, Reasonable, and Adequate .................... 18

    B.    The Threshold Requirements for Certification of a Settlement Class Are Met ............... 18

        1.    Numerosity, Commonality, Typicality, and Adequacy are Shown Here. .............. 19

        2.    Predominance and Superiority Are Shown Here. ................................................ 20

    C.    The Court Should Appoint the Joseph Saveri Law Firm, Inc. as Class Counsel. ............. 21

V.     THE USE OF SETTLEMENT FUNDS ........................................................................ 22

    A.    Deferring Distribution of Funds ........................................................................... 22

    B.    Payment of Certain Expenses from Settlement Fund .......................................... 22

VI.    THE PROPOSED NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ........................................................................................................... 23

VII.   PROPOSED PLAN OF ALLOCATION ..................................................................... 24

VIII.  THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED ........................ 25

IX.    CONCLUSION .............................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Prods. v. Windsor,* 521 U.S. 591 (1997)....................................................................18, 21, 24

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015)....................................... 15

*Collins v. Thompson,* 679 F.2d 168 (9th Cir. 1982)............................................................... 13

*Cotton v. Hinton,* 559 F.2d 1326 (5th Cir. 1977) ................................................................. 13

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .................................................. 20

*Farley v. Baird, Patrick & Co., Inc.* 1992 WL 321632 (S.D.N.Y. 1992) ......................................... 22

*Four in One Co. v. S.K. Foods, L.P.*, 2014 U.S. Dist. LEXIS 602 (E.D. Cal. Jan. 2, 2014) ...................... 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .....................................................15, 21

*Harrington v. City of Albuquerque*, 222 F.R.D. 505 (D.N.M. 2004) ............................................... 22

*Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) ............................. 20

*In re Air Cargo Shipping Servs. Antitrust Litig.*, 2012 U.S. Dist. LEXIS 108299 (E.D.N.Y. Aug. 2, 2012) ................................................................................................ 9

*In re Brand Name Prescription Drug Litig.*, No. 94 C 897 (N.D. Ill. Feb. 18, 1998) .............................. 23

*In re Cal. Micro Devices Sec. Litig.*, 1327 (N.D. Cal. 1997) ................................................... 23

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606 (N.D. Cal. 2015) ............................. 19, 24

*In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152 (N.D. Cal. 2001) ................................... 24

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006)........................................................................19, 23, 24

*In re High Pressure Laminates Antitrust Litig.*, No. 00-MD-1368 (S.D.N.Y. July 14, 2004) ................... 23

*In re High-Tech Employees Antitrust Litig.*, 2013 U.S. Dist. LEXIS 180530 (N.D. Cal. Oct. 30, 2013)..............................................................................................13, 15

*In re Lithim Ion Battery Antitrust Litig.*, No. 13-md-02420 YRG (N.D. Cal. March 25, 2016) ................................................................................................... 16

*In re Mut. Funds Inv. Litig.*, 2010 U.S. Dist. LEXIS 57623 (D. Md. May 19, 2010).............................. 9

*In re NVIDIA Corp. Derivative Litig.,* No. C-06-06110, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008).................................................................................................. 14

*In re Static Random Access memory (SRAM) Antitrust Litig.*, 2008 U.S. Dist. LEXIS 107523 (N.D. Cal., Sept. 29, 2008)..............................................................................19, 21

**TABLE OF AUTHORITIES (cont.)**

1    *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................. 14

2    *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 291 (N.D. Cal. 2010) ................................ 19, 20

3    *Moore v. City of San Jose,* 615 F.2d 1265 (9th Cir. 1980).......................................................................... 13

4    *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004) ............................... 14

5    *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 296 (3d Cir. 2011) .........................................................18, 19, 20

6    *United States v. NEC TOKIN Corp.,* N.D. Cal. Case No. 3:15-cr-00426-JD ........................................... 7

7    *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227 (9th Cir. 1996) ............................................................. 21

8    *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943 (9th Cir. 1976) ............................................................... 14

9    *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) .............................................................................. 19

## Statutes

15 U.S.C. § 1 ................................................................................................................................................. 2

## Other Authorities

*Manual For Complex Litigation, Fourth*, § 30.41 (West 2008) ........................................................... 14, 22

*Manual For Complex Litigation, Third*, § 30.41 (1995) ......................................................................... 14

*Newberg on Class Actions*, § 8.32 (4th ed. 2002)................................................................................... 24

## Rules

Fed. R. Civ. P. 23(b)(3) ....................................................................................................................... 19, 20

Fed. R. Civ. P. 23(b)(3)(A)-(D) ............................................................................................................. 21

Fed. R. Civ. P. 23(e)(1)....................................................................................................................... 13, 23

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Plaintiffs Chip-Tech, Ltd, Dependable Component Supply Corp., eIQ Energy, Inc., and Walker Component Group, Inc.—each a direct purchaser of aluminum, tantalum or film capacitors (collectively, "Direct Purchaser Plaintiffs," "Representative Plaintiffs," or "DPPs"), individually and as representatives of a purported Settlement Class (the "Settlement Class") submit this memorandum in support of their motion for preliminary approval of the proposed settlement agreements (the "Settlement Agreements") between Direct Purchaser Plaintiffs and Defendants Fujitsu Limited; NEC TOKIN Corporation and NEC TOKIN America, Inc. ("NEC TOKIN"); Nitsuko Electronics Corporation ("Nitsuko"); Okaya Electric Industries Co., Ltd. and Okaya Electric America, Inc. (the "Okaya Defendants"); and ROHM Co., Ltd.; and ROHM Semiconductor U.S.A., LLC ("ROHM") (collectively, the "Settling Defendants").

The settlements create an all-cash fund of $32,600,000 (the "Settlement Fund") for the benefit of the Settlement Class. The settlement amounts are as follows:

| | | |
|---|---|---|
| 1) | Fujitsu Limited | $2,000,000 |
| 2) | NEC TOKIN | $24,000,000 |
| 3) | Nitsuko | $1,100,000 |
| 4) | The Okaya Defendants | $3,650,000 |
| 5) | ROHM | $1,850,000 |

The parties reached these agreements through arm's length negotiations between experienced and informed counsel after over two years of litigation. The settlements represent an excellent recovery by the Settlement Class and are well within range of possible recoveries to warrant preliminary approval and send notice of the settlement to Settlement Class Members and to schedule a Final Fairness Hearing.

At this juncture, in considering whether to grant preliminary approval of a proposed settlement, the Court need determine only whether the settlement is within the range of possible approval. A final determination of whether the settlement is sufficiently fair, reasonable, and adequate will be made at or

after the Fairness Hearing, after notice of the settlement has been mailed and published and Class

Members have been given the opportunity to object to it or opt out of the class.

DPPs request that the Court: (1) grant preliminary approval of the Settlement Agreements; (2)

certify the Settlement Class; (3) approve the proposed plan of notice to the Settlement Class; (4) set a

schedule for disseminating notice to Settlement Class members, as well as deadlines to comment on or

object to the Settlement; and (5) schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil

Procedure to determine whether the proposed Settlement is fair, reasonable and adequate and should be

finally approved.

## II.    CASE HISTORY

### A.    Direct Purchaser Plaintiffs' Factual Allegations and Claims.

This case involves antitrust claims brought under federal antitrust law by purchasers of

aluminum, tantalum or film capacitors ("Capacitors") who purchased directly from the Settling

Defendants or one or more of the Non-Settling Defendants[1]. *See* 15 U.S.C. § 1. Plaintiffs' claims arise

from an alleged illegal cartel and illegal agreements entered into by and among the Defendants to fix,

raise, and stabilize prices for Capacitors, causing damages to Plaintiffs and the Class. Declaration of

Joseph R. Saveri ("Saveri Decl."), ¶ 3.

### B.    Procedural History and Negotiations.

This action was initiated by class representative Chip Tech Ltd. on July 18, 2014, alleging a

conspiracy to fix the price of Capacitors in the United States in violation of Section 1 of the Sherman

Act, 15 U.S.C. § 1. Saveri Decl., ¶ 3.  On November 14, 2014, DPPs filed a Consolidated Amended

Complaint. *Id*.

---

[1] Non-Settling Defendants are Panasonic Corporation; Panasonic Corporation of North America;
SANYO Electric Co., Ltd.; SANYO North America Corporation; KEMET Corporation; KEMET
Electronics Corporation; Nippon Chemi-Con Corporation; United Chemi-Con, Inc.; Hitachi Chemical
Co., Ltd.; Hitachi AIC Inc.; Hitachi Chemical Co. America, Ltd.; Nichicon Corporation; Nichicon
(America) Corporation; AVX Corporation; Rubycon Corporation; Rubycon America Inc.; ELNA Co.,
Ltd.; ELNA America Inc.; Matsuo Electric Co., Ltd.; TOSHIN KOGYO Co., Ltd.; Holy Stone
Enterprise Co., Ltd.; Milestone Global Technology, Inc. (D/B/A HolyStone International); Vishay
Polytech Co., Ltd.; Taitsu Corporation; Taitsu America, Inc.; Shinyei Kaisha; Shinyei Technology Co.,
Ltd.; Shinyei Capacitor Co., Ltd.; Shinyei Corporation of America, Inc.; Nissei Electric Co., Ltd.;
Soshin Electric Co., Ltd.; Soshin Electronics of America, Inc.; and Shizuki Electric Co., Ltd.

On December 19, 2014, Fujitsu Limited and Fujitsu Semiconductor America, Inc. ("FSA") filed a motion to dismiss challenging service of process, and on April 2, 2015, after DPPs, Fujitsu Limited, and FSA reached an agreement that Fujitsu Limited and FSA would waive service of summons, the Court ordered that Fujitsu Limited and FSA need not respond to DPPs' consolidated complaint until after the Court ruled on several pending motions to dismiss, including one brought by Fujitsu Components America, Inc. ("FCA"). Saveri Decl., ¶ 5. NEC TOKIN, Nitsuko, the Okaya Defendants, and ROHM all joined in a "joint" motion to dismiss. *Id.*

On May 26, 2015, the Court denied the "joint" motion to dismiss filed by Defendants and granted the motion filed by FCA. DPPs filed its First Amended Consolidated Complaint on June 16, 2015. Saveri Decl., ¶ 6. It did not name FSA or FCA as defendants. *Id.* Fujitsu Limited filed a motion to dismiss the First Amended Consolidated Complaint, and this motion was opposed by DPPs. *Id.* Fujitsu Limited and DPPs reached a settlement agreement before the Court ruled on Fujitsu Limited's Motion to Dismiss. *Id.*

On July 22, 2015 DPPs filed the operative Second Amended Consolidated Complaint. Saveri Decl., ¶ 7.

DPPs and Settling Defendants have engaged in extensive discovery since April 2015. Saveri Decl., ¶ 8.

Fujitsu Limited produced to DPPs information sufficient to show Fujitsu Limited's sales subject to United States antitrust law during the Class Period. Saveri Decl., ¶ 20. Fujitsu Limited has also provided information regarding the nature of the transaction in which Fujitsu Media Devices Ltd. ("FMD") transferred and sold its capacitor business and 100% of its equity interest in Fujitsu Media Devices (Suzhou) Limited ("FMD Suzhou") to Defendant Nichicon Corporation ("Nichicon") in 2009.[2] *Id.* These discussions also included analysis of relevant Japanese and U.S. law regarding successor liability and other principles of corporate law applicable to this transaction, and choice of law. Saveri Decl., ¶ 21. Among other things, in connection with this sale, Fujitsu transferred its assets

---

[2] As alleged in the Complaint, around April 2009 Nichicon Corp. acquired FMD's conductive polymer aluminum solid electrolytic capacitor business division (*i.e.*, FMD Suzhou), which was renamed FPCAP Electronics (Suzhou) Co., Ltd. ("FPCAP"). *Id.*, ¶ 56. DPPs' case against Nichicon continues.

connected to its capacitor business, including its business records. Saveri Decl., ¶ 19. Plaintiffs have reviewed documents produced by Nichicon and other Defendants with respect to Fujitsu's participation in the antitrust violations Plaintiffs allege. Saveri Decl., ¶¶ 10, 11.

NEC TOKIN, Nitsuko, the Okaya Defendants, and ROHM have produced transactional data sufficient to show all of their sales subject to United States antitrust law during the Class Period. Saveri Decl., ¶¶ 20, 27-28, 30, 33, 38-39. NEC TOKIN, Nitsuko, the Okaya Defendants, and ROHM have also produced documents concerning their participation in all meetings that Plaintiffs contend were used to exchange competitively-sensitive information, and that are the basis of Plaintiffs' allegations that these Defendants. *Id*. NEC TOKIN, Nistuko, the Okaya Defendants, and ROHM have also produced to Plaintiffs all ordinary course documents that they produced to the U.S. Department of Justice, and any other governmental antitrust authority. *Id*.  Plaintiffs have reviewed the documents produced by all Defendants with respect to the participation of the Settling Defendants in the antitrust violations Plaintiffs allege.

On January 8, 2016, the Plaintiffs and Fujitsu Limited executed an agreement resolving all of the claims of Plaintiffs and the Settlement Class against Fujitsu Limited. Saveri Decl., ¶ 18. As described in further detail in Section III, *infra*, Plaintiffs agree to release all of their claims against Fujitsu Limited and its affiliates (as defined in the settlement agreement) in exchange for $2,000,000 in cash and other valuable consideration. *Id*.

On March 18, 2016, the Plaintiffs and Nitsuko executed an agreement resolving all of the claims of Plaintiffs and the Settlement Class against Nitsuko. Saveri Decl., ¶ 31. As described in further detail in Section III, *infra*, Plaintiffs agree to release all of their claims against Nitsuko in exchange for cash payments totaling $1,100,000 and other valuable consideration. *Id*.

On April 14, 2016 the Plaintiffs and the Okaya Defendants executed an agreement resolving all of the claims of Plaintiffs and the Settlement Class against the Okaya Defendants. Saveri Decl., ¶ 34. As described in further detail in Section III, *infra*, Plaintiffs agree to release all of their claims against the Okaya Defendants in exchange for cash payments totaling $3,650,000 and other valuable consideration. *Id*.

On July 15, 2016 the Plaintiffs and NEC TOKIN executed an agreement resolving all of the claims of Plaintiffs and the Settlement Class against NEC TOKIN. Saveri Decl., ¶ 26. As described in further detail in Section III, *infra*, Plaintiffs agree to release all of their claims against NEC TOKIN in exchange for cash payments totaling $24,000,000 and other valuable consideration. *Id.*

On August, 2016 the Plaintiffs and ROHM executed an agreement resolving all of the claims of Plaintiffs and the Settlement Class against ROHM. Saveri Decl., ¶ 37. As described in further detail in Section III, *infra*, Plaintiffs agree to release all of their claims against ROHM in exchange for cash payments totaling $1,850,000 and other valuable consideration. *Id.*

The settlements represent only a partial settlement of the claims in the litigation. Plaintiffs continue to prosecute their claims against the Non-Settling Defendants, who remain jointly and severally liable for all damages caused by the members of the conspiracy. This includes Nichicon, which acquired FMD's aluminum solid electrolytic capacitor business and subsequently renamed FMD Suzhou as FPCAP Electronics (Suzhou) Co. Ltd in Suzhou, China, and continued to operate this business during the Class Period. Saveri Decl., ¶ 23.

## III.   SUMMARY OF SETTLEMENT TERMS

The Settlement Agreements resolve all claims of Plaintiffs and the Settlement Class against the Settling Defendants. The details of the Settlement are contained in the Settlement Agreements attached as Exhibits A-D to the Declaration of Joseph R. Saveri in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. A summary is provided below.

### A.   The Settlement Class.

DPPs seek to certify a Settlement Class consisting of "[a]ll persons in the United States that purchased Capacitors (including through controlled subsidiaries, agents, affiliates or joint-ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates or joint ventures from January, 1, 2002 through July 22, 2015." Excluded from the Settlement Class are (i) Defendants (and their subsidiaries, agents and affiliates) and their co-conspirators and (ii) each member of the Class Action who has timely requested exclusion by 'opting out . . . .'" *See*, *e.g.*, Fujitsu Limited Settlement Agreement at 8, Saveri Decl., Ex. A; NEC TOKIN Agreement at 8, Saveri Decl. Ex. B; Nitsuko Agreement at 8, Saveri Decl. Ex. G; Okaya Agreement at 8-9, Saveri Decl. Ex. H; ROHM Agreement at

8, Saveri Decl. Ex. I. This is the same class definition set forth in the operative complaint. *See* SAC ¶ 107.[3]

### B.   The Settling Defendants

#### 1.   Fujitsu Limited and Its Subsidiaries

Fujitsu Limited was the ultimate parent of FMD and FMD's former subsidiary, FMD Suzhou, which manufactured electrolytic capacitors and allegedly attended meetings. *See* SAC ¶¶ 53-54, 196, 198, 208. Fujitsu Limited never manufactured, sold or distributed capacitors. Plaintiffs' claim against Fujitsu Limited arises from successor liability theories. *See id*. ¶ 54.

In April 2009, Nichicon Corp. acquired FMD's capacitor business, including all of FMD's equity interest in FMD Suzhou, and renamed FMD Suzhou as FPCAP Electronics (Suzhou) Co., Ltd ("FPCAP"). Plaintiffs continue to pursue claims against Nichicon Corp. Prior to April 2009, a small amount (less than 10%) of FMD Suzhou's global capacitor sales were indirectly sold to FMD's American subsidiary, Fujitsu Media Devices of America, Inc. ("FDMA")(US)(now dissolved) for sale to U.S. customers. Saveri Decl., ¶ 23. Prior to April 2009, about 90% of FMD Suzhou's capacitors were shipped to Fujitsu Media Devices Hong Kong Ltd. (now dissolved) for sale to Chinese and Taiwanese customers through third party distributors. *Id*.

The remainder of FMD Suzhou's capacitors were shipped to FMD (now dissolved and liquidated) for sale to Japanese customers through third party distributors and to Fujitsu Microelectronics for sale to European customers. Saveri Decl., ¶ 24. It is estimated that the dollar volume of FMD family direct sales to U.S. customers prior to April 2009 during the Class Period did not exceed $200,000. *Id*.

#### 2.   NEC TOKIN

NEC TOKIN manufactures tantalum capacitors, and it does not manufacture aluminum or film capacitors. Yasunori Ando Decl., ¶ 3; Dkt. 915-7. NEC TOKIN represented to the Court that "[o]n average, during calendar years 2007 to 2014, approximately 2 percent of NEC TOKIN's sales of capacitors were made to customers in the U.S." *Id*., ¶ 11. NEC TOKIN has represented that its "sales of

---

[3] The Complaint excludes "[a]ll governmental entities" as well as the Court and its employees, which by incorporation are also excluded from the Settlement Class. *See* SAC ¶ 109(e), (f).

tantalum electrolytic capacitors in the United States from April 2002 to December 2013" were $51.1 million. Saveri Decl., Ex. E at 4-5.

On September 2, 2015, the DOJ filed a criminal information against NEC TOKIN in the Northern District of California, alleging the company's violation of Section 1 of the Sherman Act, 15 U.S.C. §1.[4] The information states that NEC TOKIN "entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere."[5]

On January 21, 2016, NEC TOKIN pled guilty to DOJ's Sherman Act claims, and appeared with the DOJ to jointly request with the United States the Court's acceptance of a negotiated plea agreement.[6] It appears that the DOJ has carved out a number of individuals from the plea agreement, leaving such individuals subject to criminal prosecution.[7] The Court accepted NEC TOKIN's guilty plea and the terms of the plea agreement, and thereafter sentenced the company to pay a criminal fine of $13.8 million—paid in six installments of $2.3 million each over five years.[8] At the hearing on NEC TOKIN's plea agreement, NEC TOKIN represented that it was experiencing financial difficulties, and would have difficulty making payments beyond what it had agreed to pay the United States. *See* Saveri Decl., Ex. D at 12:5-14.

### 3.    Nitsuko

Nitsuko manufactures film capacitors and does not manufacture aluminum or tantalum capacitors. SAC ¶ 93. Nitsuko never has had a U.S. subsidiary, and its sales of capacitors to U.S. customers over the Class Period is less than $100,000.00. Saveri Decl., ¶ 24.

---

[4]    Saveri Decl., Ex. C (Criminal Information, *United States v. NEC TOKIN Corp.*, N.D. Cal. Case No. 3:15-cr-00426-JD).

[5]    *Id.* at ¶ 2.

[6]    Saveri Decl., Ex. D (Transcript of Proceedings, January 21, 2016); Ex. F (Declaration of Jacklin Chou Lem in Support of Joint Sentencing Memorandum, Crim. Dkt. 9-1) at 7.

[7]    Ex. F at ¶ 16(a).

[8]    Ex. D at 46:8-47:5.

1

2          **4.      The Okaya Defendants**

3          The Okaya Defendants manufacture film capacitors and do not manufacture aluminum or

tantalum capacitors. The Okaya Defendants represented to the Court that all sales by the Okaya

Defendants to U.S. customers were made by Okaya Electric America, Inc. ("OEA") and characterized

the volume of these sales as follows:

> All OEI **[the parent company in Japan]** sales to the United States are to
> Okaya America, which sells capacitors to customers in the United States,
> as well as other locations, including Mexico and Canada. The total
> amount of capacitor sales by OEI to Okaya America from 2002 to 2014 is
> less than $9 million. The percentage of OEI's capacitors that were
> purchased by Okaya America is less than 2.5% in 2002, less than 2% in
> 2003, less than 1.5% in 2004 through 2010, less than 2.5% in 2011, less
> than 2% in 2012, less than 2.5% in 2013, and less than 3% in 2014.

Declaration of Tsutomu Homma, ¶ 6.[9] The Department of Justice ("DOJ") notified counsel for the

Okaya Defendants on January 8, 2016 that the investigation into anti-competitive conduct in the film

capacitor industry was ended with no action being taken. The DOJ also so informed the Court on March

2, 2016.

          **5.      ROHM**

          ROHM manufactures tantalum capacitors, and does not manufacture aluminum or film

capacitors. ROHM represented to the Court that from "the years 2004 through the first quarter of 2015,

less than 2% of ROHM′s total worldwide sales of tantalum capacitors were made to customers in the

United States, *i.e.*, billed or shipped to customers with addresses in the United States." Declaration of

Mutsumi Mikami, ¶ 6 (Dkt. 915-9). Plaintiffs estimate that ROHM had $6.9 million in U.S. sales during

the relevant time period. Saveri Decl., ¶ 39.

          **C.      Settlement Amounts and Additional Consideration.**

          The Settling Defendants will make payments into an escrow account (the "Settlement Fund"),

held and administered by an escrow agent selected by Interim Class Counsel with the consent of

Settling Defendants and with the approval of the Court. Interim Class Counsel recommend Citibank,

N.A. ("Citibank") be appointed the Escrow Agent. The Settlement Fund will be distributed in

---

[9] As explained in their opposition to Defendants' FTAIA motion, Plaintiffs disagree with how
Defendants have characterized and calculated recoverable sales. *See* Dkt. 967-4 at 14-17.

accordance with applicable orders of the Court for potential payments to Class Members, as well as for notice and claims administration costs, and Court-approved litigation expenses.

Under the Settlement Agreements, the Settling Defendants have the option to rescind their agreements for certain specified reasons. The Settling Defendants may rescind if the level of opt-outs exceeds of certain dollar amount of direct purchases set forth in the confidential supplemental agreements which can be made available to the Court for *in camera* inspection. *See In re Mut. Funds Inv. Litig.*, 2010 U.S. Dist. LEXIS 57623, *40-*42 (D. Md. May 19, 2010) (D. Md. May 19, 2010) (side letter reflecting terms of opt-out rescission agreement). The percentage amount of purchases represented by Opt-Out Plaintiffs that triggers the right of the parties to rescind the agreement is not relevant to Class members' decisions as to whether to remain in or exclude themselves from the Settlement Class. Rather, what is relevant are the substantive terms of the settlement, such as the amount being paid, the cooperation terms, and the release terms. Courts commonly allow the percentage of opt-outs necessary to trigger rescission to be undisclosed. *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2012 U.S. Dist. LEXIS 108299, *60-61 at n.3 (E.D.N.Y. Aug. 2, 2012).

### 1.    Fujitsu Limited Settlement

Fujitsu Limited has agreed to pay $2,000,000 to resolve the claims of the Direct Purchaser Plaintiff class into the Settlement Fund within twenty business days after the Court's order granting the Preliminary Approval Motion. Saveri Decl., Ex. A, Fujitsu Limited Settlement Agreement, ¶ 12.

As additional consideration, Fujitsu Limited has agreed to cooperate with Plaintiffs in the further prosecution of their claims against the Non-Settling Defendants. *Id.* at ¶¶ 13, 14. Fujitsu Limited has agreed, if required, to make available employees and/or representatives to establish, if possible, the foundational requirements for admitting relevant business records at trial, and to provide up to a total of two (2) current employees as witnesses to provide information regarding sales, pricing, production, capacity and cost of its capacitor products, to the extent any current Fujitsu Limited employee has direct personal knowledge regarding such topics. *Id.* at ¶ 13. This obligation may entail affidavits, depositions, or appearances at trial, as reasonably required by Plaintiffs. *Id.*

### 2.     NEC TOKIN Settlement

NEC TOKIN has agreed to pay a total settlement amount of $24,000,000. Saveri Decl., Ex. B, NEC TOKIN Settlement Agreement, ¶ 19. NEC TOKIN agreed that it would pay $4,000,000 into the Settlement Fund on or before July 29, 2016, $200,000 of which amount shall be available immediately thereafter for reimbursement of such costs, fees, and expenses related to the provision of notice to the Settlement Class Members. *Id.* at ¶¶ 19-20. NEC TOKIN has agreed to make additional payments into the Settlement Fund as follows: (a) $5 million on or before May 15, 2017; (b) $ 5 million on or before May 15, 2018; (c) $5 million on or before May 15, 2019; (d) $ 5 million on or before December 31, 2019. *Id.* at ¶ 19.

As additional consideration, NEC TOKIN has agreed to cooperate with Plaintiffs in the further prosecution of their claims against the Non-Settling Defendants. *Id.* at ¶ 22. NEC TOKIN has agreed it will provide an initial attorney proffer within ten days of the date of execution of the Settlement Agreement, during which NEC TOKIN will describe the facts developed through its worldwide investigation of its conduct. *Id.* Additionally, NEC TOKIN will make up to six (6) current employees available for interview by Plaintiffs for deposition, and testimony at hearings or trials, and will encourage up to six (6) former employees to make themselves available for interview by Plaintiffs for deposition, and testimony at hearings or trials. *Id.* Finally, NEC TOKIN will provide declarations consistent with the declarants' belief as to the relevant facts as requested by Direct Purchaser Plaintiffs regarding additional topics (*e.g.*, liability, impact, damages, class certification, admissibility/foundation). *Id.*

### 3.     Nitsuko Settlement

Nitsuko has agreed to pay a total amount of $1,100,000. Saveri Decl., Ex. G, Nitsuko Settlement Agreement, ¶¶ 19-20. Nitsuko agreed to pay $100,000 into the Settlement Fund within thirty calendar days after the Court's order granting the Preliminary Approval Motion, which amount shall be available immediately thereafter for reimbursement of such costs, fees, and expenses related to the provision of notice to the Settlement Class Members. *Id.* at ¶ 19. Nitsuko has agreed to additional payments into the Settlement Fund as follows: within thirty calendar days after the day its settlement becomes effective (the "Effective Date"), Nitsuko shall pay $450,000; within three hundred sixty five (365) calendar days

after the Effective Date, Nitsuko shall pay $350,000; within four hundred twenty seven (427) calendar days after the Effective Date, Nitsuko shall pay $200,000. *Id.* at ¶ 20.

As additional consideration, Nitsuko has agreed to cooperate with Plaintiffs in the further prosecution of their claims against the Non-Settling Defendants. *Id.* at ¶ 21. Nitsuko has agreed to produce to Plaintiffs documents concerning (a) JFC meetings attended by Nitsuko, including meeting minutes and notes from attendees, and emails concerning JFC meetings; (b) documents that it has provided to U.S. and foreign law enforcement authorities; and (c) English language translations of foreign language documents that it provided to the U.S. Department of Justice within fifteen (15) business days after the Preliminary Approval by the Court of this Agreement. *Id.* Additionally, Nitsuko agreed to make available two certain agreed-upon Nitsuko employee for depositions, and agreed to provide assistance reasonably necessary to establish the foundation for and admissibility of documents Nitsuko has produced in this Action or pursuant to this Settlement Agreement, including, as reasonably necessary, producing at trial in person, by deposition or by affidavit, whichever is legally required, one current or former employee to testify as to the genuineness, status as business records, and/or authenticity any documents produced by Nitsuko in this Action, including Nitsuko's transactional data, as necessary for use in briefing on class certification, dispositive motion practice or trial. *Id.*

### 4.   The Okaya Defendants' Settlement

The Okaya Defendants have agreed to pay a total of $3,650,000. Saveri Decl., Ex. H, Okaya Settlement Agreement, Definition bb. The Okaya Defendants have agreed to pay $100,000 into the Settlement Fund within thirty (30) calendar days after the Court's order granting the Preliminary Approval Motion, which amount shall be available immediately thereafter for reimbursement of such costs, fees, and expenses related to the provision of notice to the Settlement Class Members. *Id.* at ¶ 19. The Okaya Defendants have agreed to pay $3,550,000 into the Settlement Fund in one lump sum payment within thirty (30) calendar days after the Effective Date as defined in the Settlement Agreement at Definition n on pages 5-6. *Id.* at ¶ 20.

As additional consideration, the Okaya Defendants have agreed to cooperate with Plaintiffs in the further prosecution of their claims against the Non-Settling Defendants. *Id.* at ¶¶ 22-29. The Okaya Defendants have agreed to produce (a) certain documents concerning JFC or JEITA meetings; (b)

documents that it has provided to U.S. and foreign law enforcement authorities; and (c) English language translations of foreign language documents that it provided to the U.S. Department of Justice within fifteen (15) business days after the Court's order granting the Preliminary Approval Motion. *Id.* at ¶¶ 23-24. These items (a), (b) and (c) have already been performed. In addition, the Okaya Defendants have agreed to provide an oral proffer of testimony, and have agreed to provide a declaration or affidavit in lieu of testifying at a Rule 30(b)(6) deposition for purposes of the Plaintiffs' motion for class certification. *Id.* at ¶ 25. The Okaya Defendants have also agreed to make two employees available for deposition, and to produce to testify at trial one witness in their employ regarding the Okaya Defendants' participation in JFC and JEITA meetings, and to provide authentication and foundation for documents to be used in connection with the prosecution of the case against the Non-Settling Defendants. *Id.* at ¶¶ 26-27.

### 5.    ROHM Settlement

ROHM agreed to pay $1,850,000 into the Settlement Fund within thirty days following the execution of the settlement agreement with ROHM. Saveri Decl., Ex. I, ROHM Settlement Agreement, ¶ 19.

As additional consideration, ROHM has agreed to cooperate with Plaintiffs in the further prosecution of their claims against the Non-Settling Defendants. *Id.* at ¶ 22. ROHM has agreed to provide an initial attorney proffer lasting two business days, during which NEC TOKIN shall describe the facts developed through its worldwide investigation of its conduct. *Id.* ROHM has agreed to make up to two current employees available for interview by Direct Purchaser Plaintiffs, deposition, and testimony at hearings or trials. *Id.* ROHM has agreed, if required, to make available employees and/or representatives to establish the foundational requirements for admitting relevant ROHM business records at trial, and to provide up to a total of two current employees as witnesses at trial. *Id.* This obligation may entail affidavits, depositions, or appearances at trial, as reasonably required by Plaintiffs. *Id.* ROHM has also agreed to provide declarations consistent with the declarants' belief as to the relevant facts as requested by Plaintiffs regarding additional topics (*e.g.*, liability, impact, damages, class certification, admissibility/foundation). *Id.*

1          **D.     Attorneys' Fees and Expenses.**

2          The Settlement Agreements provide that Interim Class Counsel may seek attorneys' fees and

3   reimbursement of costs and expenses incurred in the prosecution of this litigation. Interim Class

4   Counsel seeks no attorneys' fees at this time. Saveri Decl., ¶ 48.

5          As provided in the Class notice, Interim Class Counsel will seek $7,500,000 from the

6   Settlement Fund to pay incurred litigation expenses, including expert witness fees and to pay future

7   such expenses. Interim Class Counsel will not seek attorneys' fees from this Settlement Fund by this

8   Motion. *Id.* at ¶ 46. The Settlement Agreements also allow for $200,000 of the Settlement Fund to be

9   used for notice and notice administration costs. *Id.*

10          **E.     Release of All Claims.**

11          In exchange for the Settling Defendants' monetary and cooperation consideration, upon entry of

12   a final judgment approving the proposed Settlement, Plaintiffs will release the Settling Defendants of all

13   claims related to any of the alleged conduct giving rise to this litigation.

14   **IV.     THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

15          **A.     Preliminary Approval Is Appropriate Because the Settlement Is Fair and Adequate.**

16                  **1.     Standards for Preliminary Approval of a Settlement.**

17          Rule 23(e) provides that a class action shall not be dismissed or settled without the approval of

18   the court, and that notice of the proposed settlement shall be provided in a reasonable manner to all

19   class members who would be bound. Fed. R. Civ. P. 23(e)(1). The primary concern of this subsection is

20   ensure that the rights of the class members have been given due regard by the negotiating parties.

21   *Collins v. Thompson,* 679 F.2d 168, 172 (9th Cir. 1982). The preliminary approval stage is "an ′initial

22   evaluation′ of the fairness of the proposed settlement made by the court on the basis of written

23   submissions and informal presentation from the settling parties." *In re High-Tech Employees Antitrust*

24   *Litig.*, 2013 U.S. Dist. LEXIS 180530, at *1 (N.D. Cal. Oct. 30, 2013) (citation omitted).

25          By its very nature, settlement results from compromise, ″a yielding of absolutes and an

26   abandoning of highest hopes.″ *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977) (quotation omitted);

27   *Moore v. City of San Jose,* 615 F.2d 1265, 1271 (9th Cir. 1980). Courts have recognized that settlement is

28   favored in class action cases, which are particularly complex to litigate and therefore quite expensive.

"[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits." *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("Unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation" with uncertain results.") (citations omitted).

The settlement approval process set forth in Rule 23(e) involves three steps: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the proposed settlement to all class members; and (3) a formal fairness hearing, during which class members may be heard regarding the proposed settlement, and at which time counsel may introduce evidence and present argument concerning the settlement's fairness, adequacy, and reasonableness. *See, e.g., Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 525 (citing *Manual For Complex Litigation, Third,*§ 30.41, at 236- 37 (1995)). This procedure safeguards class members' due process rights and enables the Court to fulfill its role as guardian of class interests.

The purpose of the Court's preliminary evaluation of the proposed settlement is to determine whether it falls within "the range of reasonableness," and warrants providing notice to the Class of the terms and conditions of the settlement and to schedule a formal fairness hearing. Preliminary approval should be granted '"[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies . . . and falls within the range of possible approval .... "*In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second§ 30.44 (1985)). Obvious deficiencies may include "'unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorney[s] . . . .'" *In re NVIDIA Corp. Derivative Litig.,* No. C-06-06110, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008) (quoting *Manual For Complex Litigation, Fourth,* § 30.41 at 237 (West 2008)).

To determine whether a settlement is within the range of reasonableness,[10] a "[c]ourt must evaluate whether the Settlement is "fair, reasonable, and adequate" and ensure that the agreement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* (citation omitted).

---

[10] (Or "range of possible approval") *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1 079-80.

### 2.   The Settlement Is Fair, Reasonable and Adequate.

The purpose of the "fairness" inquiry is to protect against collusion among the parties and ensure that the settlement was reached through arm's length negotiating. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 259 (N.D. Cal. 2015) ("fairness factors" consider whether "the settlement is fair, adequate and reasonable" and "not the result of collusion").

A court considering the fairness of a settlement thus considers the following factors: the posture of the case at the time settlement is proposed; the extent of discovery that has been conducted; the circumstances surrounding the negotiations; and the experience of counsel. *Id*. The settlements here are the product of arm's-length negotiations between attorneys who are highly experienced in complex antitrust cases, and who are well informed about the facts and legal issues of this case.

Direct Purchaser Plaintiffs conducted separate independent settlement discussions with each of the settlement Defendants. Saveri Decl., ¶ 14. Discovery is substantially advanced.  Plaintiffs have taken over 40 depositions, including several of the Settling Defendants. *Id*. at ¶ 10. The parties are well-versed in the evidentiary record upon which these claims are based. In addition to the formal discovery, this includes the production and review of all of Fujitsu Limited, NEC TOKIN, the Okaya Defendants, and ROHM's data concerning sales of Capacitors in the United States during the Relevant Period. *Id*. at ¶¶ 20, 27-28, 30, 33, 38-39.[11] It also includes further factual investigation of the Settling Defendants' U.S. operations and sales of Capacitors. *Id*. Plaintiffs' counsel has performed a thorough investigation of the cartel activity that is the basis of all claims against the Settling Defendants, and has considered the merits of individual defenses. *Id*. at ¶¶ 11-13.

This Settlement has been entered into by the Settling Defendants. Litigation is continuing against the Non-Settling Defendants. "[T]he Non-Settling Defendants remain jointly and severally liable for all damages caused by the conspiracy, including damages from the Settling Defendants' conduct." *In re High-Tech Employee Antitrust Litig.*, 2013 U.S. Dist. LEXIS 180530 at *7. In entering into

---

[11] Nitsuko has represented to Plaintiffs that it sales of capacitors in the U.S. were very small relative to all other Defendants. Indeed, Nitsuko has represented that its total U.S. sales during the Class Period was less than $100,000. Saveri Decl., ¶ 28.

the Settlement Agreements, Plaintiffs give up no amount of their Class-wide claim for damages against the Non-Settling Defendants. *See* Saveri Decl., Ex. A, Fujitsu Limited Settlement Agreement, ¶ 25; Saveri Decl., Ex. B, NEC TOKIN Agreement, ¶ 18; Saveri Decl., Ex. G, Nitsuko Agreement, ¶ 18; Saveri Decl., Ex. H, Okaya Agreement, ¶ 18; Saveri Decl., Ex. I, ROHM Agreement, ¶ 18.

Resolving claims against the Settling Defendants will permit Interim Lead Counsel to focus its resources on Non-Settling Defendants and other co-conspirators.

Also weighing in favor of preliminary approval is Interim Class Counsel's experience and success in similar class actions. Interim Class Counsel have worked on large, complex cases for decades, including antitrust and consumer protection class action cases. Saveri Decl., Ex. J, Resume of Joseph Saveri Law Firm, Inc.

The settlements were negotiated extensively by experienced counsel who have worked on this case for more than three years and understand the risks and potential upsides of the litigation. Saveri Decl., ¶ 16. The settlements also take into account unique facts pertinent to each of the Settling Defendants.

As demonstrated in further detail, *infra*, each of the settlements are fair, reasonable, and adequate because each recovery well exceeds the amounts in other antitrust cases, where courts have approved settlements of 1% or less of a company's U.S. commerce. *See Four in One Co. v. S.K. Foods*, *L.P.*, 2014 U.S. Dist. LEXIS 602, *28 (E.D. Cal. Jan. 2, 2014) (settlement amounting to 1% of defendants' U.S. sales of tomatoes "compares favorably with antitrust class action settlements ultimately approved by other courts"); *see also In re Lithium Ion Battery Antitrust Litig.*, No. 13-md-02420 YRG, Dkt. 1182 (N.D. Cal. March 25, 2016) (granting preliminary approval of settlement amount that represented approximately 10% of the overcharge on Sony's U.S. sales of lithium ion batteries).

### a.     The Fujitsu Limited Settlement is Fair, Reasonable, and Adequate

Fujitsu Limited has represented that it "has not been directly involved in the manufacture, distribution or sale of capacitors, and that a Fujitsu subsidiary sold and transferred its capacitor business (including the relevant corporate entity, capacitor assets, and related employees) in 2009." Saveri Decl., Ex. A, Fujitsu Limited Settlement Agreement, ¶ 13(b). Interim Class Counsel has conducted its own

1  independent investigation and has verified the factual basis for the representation. Saveri Decl., ¶ 20. In

2  particular, Interim Class Counsel has reviewed data produced by Fujitsu Limited, as well as documents

3  related to the sale of its capacitors business, and has analyzed the law which applies to successor liability

4  in these circumstances. *Id.*

5       Under the proposed Settlement, Fujitsu Limited will pay $2,000,000 into a Settlement Fund

6  plus provide certain cooperation. *Id.* at ¶ 18. Given the very small amount of direct capacitor sales to

7  U.S. customers, including their subsidiaries, the settlement amount represents as much as 10 times its

8  sales volume. *Id.* at ¶ 25.[12] This is an excellent recovery.

9       Additionally, Fujitsu Limited's subsidiary, FMD, sold its business unit responsible for capacitors

10  in 2009 to another Defendant, Nichicon, which presents additional defenses and would require

11  Plaintiffs to prove liability under fact-intensive successor liability theories, including that Fujitsu

12  Limited can be liable for assuming the liabilities of FMD. *Id.* at ¶ 21. Further discovery and trial would

13  focus on complex evidence concerning FMD's sale of FMD Suzhou and FMD's subsequent

14  dissolution, as well as application of Japanese corporate law and successor liability law, including U.S.

15  analogues as to each, and choice of law principles to determine which law to apply. *Id.*

16       **b.    The NEC TOKIN Settlement is Fair, Reasonable, and Adequate**

17       NEC TOKIN has agreed to pay $24,000,000 into the Settlement Fund, and to provide certain

18  cooperation. Saveri Decl., Ex. B, NEC TOKIN Settlement Agreement, ¶¶ 19, 22. NEC TOKIN has

19  represented to the DOJ that its U.S. sales for the April 2002 through December 2013 time period were

20  $51.1 million. Saveri Decl., ¶ 29. The settlement provides class members with a settlement amounting

21  to 46.9% of NEC TOKIN's reported U.S. sales from April 2002 through December 2013. *Id.* The

22  agreement with NEC TOKIN was also aided by the assistance of an experienced mediator, the Hon.

23  Layn R. Phillips (ret.). *Id.* at ¶ 26.

24       **c.    The Nitsuko Settlement is Fair, Reasonable, and Adequate**

25       Nitsuko agreed to pay $1,100,000 into the Settlement, and to provide certain cooperation, and

26  this result is reasonable given Nitsuko's relatively small amount of U.S. sales. Saveri Decl., Ex. G,

27

28  ---

[12] Fujitsu Limited did not have records of U.S. sales, consistent with its representation that it did not
manufacture or sell capacitors.

Nitsuko Settlement Agreement, ¶¶ 19, 21. Nitsuko had less than $100,000 in U.S. sales during the Class Period. Saveri Decl., ¶ 33. Nitsuko never had a U.S. subsidiary, or an office in the U.S. The settlement with Nitsuko represents a significant recovery for the Settlement Class given Nitsuko's very small amount of U.S. sales.

> **d.      The Settlement with Okaya Defendants is Fair, Reasonable, and Adequate**

The Okaya Defendants have agreed to pay $3,650,000 into the Settlement Fund, and to provide certain cooperation, and this result is reasonable given the Okaya Defendants' relatively small amount of U.S. sales. Saveri Decl., Ex. H, Okaya Settlement Agreement, Definition bb. The Okaya Defendants have represented that their U.S. sales in the Relevant Time Period was less than $11.5 million.[13]

> **e.      The ROHM Settlement is Fair, Reasonable, and Adequate**

ROHM has agreed to pay $1,850,000 into the Settlement Fund, and to provide certain cooperation, and this result is reasonable given ROHM's relatively small amount of U.S. sales. Saveri Decl., Ex. I, ROHM Settlement Agreement, ¶¶ 19, 22-29. From 2004 through 2014, ROHM had less than $7 million in U.S. sales. Saveri Dec., ¶ 39. The settlement provides Class Members with around 25% of ROHM's U.S. sales during the relevant time period.

> **B.      The Threshold Requirements for Certification of a Settlement Class Are Met.**

Where, as here, no class has yet been certified, the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor,* 521 U.S. 591, 620 (1997); *Sullivan v. DB Invs., Inc.,* 667 F.3d 273 (3d Cir. 2011) (en banc), cert. denied, 2012 U.S. LEXIS 2656 (April 2, 2012) (affirming certification of two nationwide antitrust settlement classes) (quotation and internal edit omitted). As such, DPPs seek certification of a Settlement Class for purposes of effectuating the Settlement Agreements. Such a certification would be without prejudice to the Non-Setting Defendants.

The four requirements of Fed. R. Civ. P. 23(a) are numerosity, commonality, typicality and adequacy. *Id.* ("(1) the class is so numerous that joinder of all members is impracticable; (2) there are

---

[13] The transactional documents produced by Okaya indicate recoverable sales, including the U.S. sales figure quoted by the Okaya Defendants, amounting to $14.6 million. Saveri Decl., ¶ 36.

questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."). In addition, certification of a class action for damages requires predominance and superiority, which are showings that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

There is a "strong presumption in favor of voluntary settlement agreements," that is "especially strong in class actions and other complex cases because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan*, 667 F.3d at 311.

### 1.     Numerosity, Commonality, Typicality, and Adequacy are Shown Here.

The Numerosity requirement is met here because the Settlement Class—which numbers hundreds of geographically dispersed DPPs—is so numerous that joinder of all members is impracticable. *See* SAC ¶ 110. There are thousands of members of the class.

The Commonality requirement is met here because there are questions of law and fact common to the Class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (to satisfy commonality, class members' claims must depend upon a common contention that "is capable of class-wide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke"). There are numerous factual and legal issues common to the Class, including whether the Defendants coordinated to fix or stabilize the price of Capacitors in violation of Section 1 of the Sherman Act, and if so whether DPPs purchased at prices that were inflated due to this conduct. *See* SAC ¶ 112. Because of such issues, courts routinely certify antitrust class actions brought on behalf of direct purchasers. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606 (N.D. Cal. 2015);  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291 (N.D. Cal. 2010); *In re Static Random Access memory (SRAM) Antitrust Litig.*, 2008 U.S. Dist. LEXIS 107523, at *49 (N.D. Cal., Sept. 29, 2008); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006).

The requirements of both typicality and adequacy are established because Representative Plaintiffs' claims are typical of DPPs—Representative Plaintiffs purchased Capacitors from one or more Defendant in the United States. SAC ¶¶ 27-30, 114. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) ("Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.") (citations and internal quotation marks omitted). Representative Plaintiffs share with the Class Members the same alleged injuries arising from the same alleged conduct: the purchase of Capacitors at inflated prices. Similarly, Representative Plaintiffs and Interim Class Counsel have shown that they will adequately protect the interests of the class. Neither Representative Plaintiffs nor Interim Class Counsel have any conflicts of interests with class members and Representative Plaintiffs have dutifully and vigorously performed their obligations as class representatives to date. *See Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900, at *10 (N.D. Cal. Apr. 3, 2009) ( The adequacy standard is met if "(1) the class representative and counsel do not have any conflicts of interest with other class members; and (2) the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class"). Accordingly, DPPs have met the requirements of Rule 23(a).

### 2.    Predominance and Superiority Are Shown Here.

Common questions of law and fact predominate. Plaintiffs allege a price-fixing conspiracy. *See In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 291, 310 (N.D. Cal. 2010) ("Courts have frequently found that whether a price-fixing conspiracy exists is a common question that predominates over other issues because proof of an alleged conspiracy will focus on defendants' conduct and not on the conduct of individual class members.") (gathering cases). DPPs allege anticompetitive conduct—including participation in meetings discussing pricing and production capacity of Capacitors—that is amply supported by common evidence to date. SAC ¶¶ 169-235. That is all that is needed at this stage. In the settlement context the "district court need not envision the form that a trial would take, nor consider the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove the disputed element at trial." *Sullivan*, 667 F.3d at 305-306.

The requirement of superiority is established as well. This class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

Non-exclusive factors include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D). A class action is the superior method for managing litigation where common issues will reduce litigation costs and promote greater efficiency, and where no realistic alternative to class resolution exists. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Given the complexity of the case—concerning over a dozen defendants and a conspiracy spanning many years—the first and third factors favor class adjudication. There is little incentive to generate the costly and time-consuming expert evidence needed to assert the claims at issue here in an individual action. The second factor favors class adjudication because the litigation regarding the nationwide Class claims have already been concentrated in this Action. The fourth factor 23(b)(3)(D) is not at issue because if the settlements are finally approved there will be no trial. *Amchem*, 521 U.S. at 620; *Hanlon*, 150 F.3d at 1019-22. In any case, Class adjudication of this matter is clearly more efficient and manageable than the alternative consisting of thousands of individual lawsuits. The damages alleged by individual members of the class are relatively small, and the expense and burden of individual litigation would make it impracticable for them to seek redress individually. *SRAM*, 2008 U.S. Dist. LEXIS 107523 at *49. Moreover, the interests of class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. Finally, separate adjudication of claims creates a risk of inconsistent rulings, which further favors class treatment. Therefore, a class action is the superior method of adjudicating the claims raised in this case. Consequently, Plaintiffs have met the requirements of Rule 23(b).

### C.  The Court Should Appoint the Joseph Saveri Law Firm, Inc. as Class Counsel.

Fed. R. Civ. P. 23(c)(1)(B) states that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Rule 23(g)(1)(A) states that "[i]n appointing class counsel, the court (i) must consider: [1] the work counsel has done in identifying or investigating potential claims in the action; [2] counsel's experience in handling class actions, other complex litigation, and the types of

claims asserted in the action; [3] counsel's knowledge of the applicable law; and [4] the resources counsel will commit to representing the class."

The Joseph Saveri Law Firm ("JSLF") seeks to be appointed as Class Counsel. JSLF has led the prosecution of this litigation on behalf of the DPPs, and has coordinated efforts with respect to the Settlement Agreements. Saveri Decl., ¶ 42. The work done to date supports the conclusion that they should be appointed as Class Counsel. *See, e.g., Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004).

The firm meets the criteria of Rule 23(g)(1)(C)(i). *Cf. Farley v. Baird, Patrick & Co., Inc.* 1992 WL 321632, at *5 (S.D.N.Y. 1992) ("Class counsel's competency is presumed absent specific proof to the contrary by defendants."). Indeed, the Court is well aware of the work performed by JSLF to date, the efficiency with which the case has been prosecuted, and the significant progress of the litigation. The firm continues to be willing and able to vigorously prosecute this action and to devote all necessary resources to obtain the best possible result. Saveri Decl., ¶ 45.

## V.    THE USE OF SETTLEMENT FUNDS

### A.    Deferring Distribution of Funds

Plaintiffs propose that distribution of the Settlement Fund, after reimbursing DPP counsel and earmarking a portion for future costs, to Class Members be deferred. Deferring distribution of settlement proceeds to class members in the case of a partial settlement is common practice. *Manual for Complex Litigation, Fourth* § 21.651 (Fed. Judicial Ctr. 2004). Piecemeal distributions are expensive, time-consuming, and have the potential to confuse class members. This is particularly true here considering that Plaintiffs are pursuing claims against over ten Non-Settlement Defendants. In the meantime, the Settlement Fund will earn interest for the benefit of the Settlement Class. Plaintiffs have included a claim form with the notice, and distribution from the Settlement Fund will be made to the Settlement Class at a later time.

### B.    Payment of Certain Expenses from Settlement Fund

As described in the Long Form notice, Class Counsel will seek $200,000 to be used to provide notice to Class members. Saveri Decl., ¶ 46. Class Counsel will also request $7,500,000 for incurred

litigation expenses, and future litigation expenses, principally expert expenses and the costs of translators. *Id.*

Class Counsel's request for reimbursement of incurred and anticipated litigation expenses and costs is consistent with requests made at analogous junctures in many other large, complex class actions involving multiple defendants. *See, e.g., In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-md-01486, Dkt. No. 1315 (N.D. Cal. Feb. 14, 2007) (authorizing disbursement of $2 million from two settlement funds for advancement of litigation expenses), Saveri Decl., Ex. K; *In re High Pressure Laminates Antitrust Litig.*, No. 00-MD-1368, Dkt. No. 215 (S.D.N.Y. July 14, 2004) (granting $4 million distribution from settlement fund to reimburse class counsel for expenses incurred and to be incurred on behalf of the Class), Saveri Decl., Ex. L; *In re Cal. Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1337 (N.D. Cal. 1997) (approving class counsel's request for $1.5 million litigation fund "[b]ecause the remainder of the case appears to have potential value for the class"); *In re Brand Name Prescription Drug Litig.*, No. 94 C 897, MDL No. 997 (N.D. Ill. Feb. 18, 1998) (granting $6 million disbursement "for advancement of trial preparation expenses of Class Counsel").

No attorneys' fees will be sought from this Settlement Fund at this time. Should the Court approve both the Settlement and Interim Class Counsel's expense request, the residual amount in the Settlement Fund will bear interest and remain for the benefit of the Settlement Class, and may be distributed to the Settlement Class in the future, depending on the course of the litigation. No portion of the Settlement Fund will be distributed from the Settlement Fund absent an order of this Court. Saveri Decl., ¶ 48.

## VI.    THE PROPOSED NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Plaintiffs request that the Court approve the forms of notice of the Settlement to the Class as well as the proposal for dissemination of the Notice. Should the Court grant preliminary approval, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement must inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that

1    complete information is available from the court files; and (4) that any class member may appear and be

2    heard at the fairness hearing. *See* 4 *Newberg on Class Actions*, § 8.32 (4th ed. 2002) ("*Newberg*").

3            The form of notice is "adequate if it may be understood by the average class member." *Newberg*,

4    § 11.53. Notice to the class must be "the best notice practicable under the circumstances including

5    individual notice to all members who can be identified through reasonable effort." *Amchem Prods. Inc.*,

6    521 U.S. at 617. In plain language, the long form Notice—which will be mailed—provides a brief

7    explanation of the case; the terms of the proposed Settlement; the maximum amount Interim Class

8    Counsel may seek for reimbursement of litigation costs and expenses; the date, time, and place of the

9    final approval hearing; the opportunity to opt out of the Settlement Class; and the procedures for

10   Settlement Class members to follow in submitting comments on and objections to the Settlement and in

11   arranging to appear at the settlement hearing to state any objections. *See* Saveri Decl., Ex. M. Plaintiffs

12   also propose a short form Notice, to be published once in the Wall Street Journal. *See* Saveri Decl., Ex.

13   N; *see also CRT*, 2014 U.S. Dist. LEXIS 117792, *91 (N.D. Cal. Aug. 20, 2014) (publication of notice in

14   the Wall Street Journal is adequate).

15   **VII.   PROPOSED PLAN OF ALLOCATION**

16           Although a distribution will be deferred, Plaintiffs propose that settlement proceeds be

17   distributed on a pro rata basis at the time an allocation is made based on the dollar amount of Capacitors

18   purchased.

19           A plan of allocation of class settlement funds is subject to the "fair, reasonable and adequate"

20   standard that applies to approval of class settlements. A plan of allocation that compensates class

21   members based on the type and extent of their injuries is generally considered reasonable. Distribution

22   on a pro rata basis, with no class member being favored over others, has consistently been deemed fair,

23   adequate, and reasonable. *CRT II*, 2015 WL 9266493, at *8; *see also In re Dynamic Random Access Memory

24   (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, ECF No. 2093, at 2 (Oct. 27, 2010) (Order Approving

25   Pro Rata Distribution); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008); *In re

26   Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

27           Plaintiffs propose that settlement funds be allocated based on the relative share of Capacitors

28   purchased during the relevant time period. Saveri Decl., ¶ 50.  In order to accomplish this distribution,

Plaintiffs will calculate the dollar value of each class member's purchase(s) of Capacitors in proportion to the total claims filed. Plaintiffs will provide updated information on the distribution, including the formulae used to make allocation, on the settlement website. *Id.*

## VIII.   THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is a final approval hearing. Should the Court grant preliminary approval, its order should state the time, date and place of the final approval hearing. This hearing allows the Court to hear all evidence and the arguments necessary to determine whether the settlement should be finally approved as fair, adequate, and reasonable.

Plaintiffs request that the Court grant preliminary approval and set the following schedule, which includes the final approval hearing date, settlement objection deadlines, as well as the briefing schedules for final approval and any motions regarding distribution and use of the Settlement Funds:

| EVENT | SCHEDULE |
| --- | --- |
| Settling Defendants to provide an electronic list of potential settlement class members along with their mail and e-mail addresses | Within 14 days of Preliminary Approval Order |
| Notice of Class Action Settlement (Saveri Decl., Ex. M) to Be Mailed and Posted on Internet | Within 28 days of Preliminary Approval Order |
| Summary Notice of Class Action Settlement (Saveri Decl., Ex. N) to Be Published | To be completed 32 days prior to the Final Approval Hearing or as soon as practicable based on the publication |
| Receipt/Filing Deadline for Comments and Objections | 20 days prior to Final Approval Hearing |
| Motions for Final Approval, and Reimbursement of Litigation Costs and Expenses, to Be Filed by Plaintiffs' Counsel, together with Affidavit of Compliance with Notice Requirements | To be filed 30 days prior to the Final Approval Hearing |
| Opposition(s), if any, to Motions for Final Approval and Reimbursement of Expenses | 20 days prior to Final Approval Hearing |

| Replies in Support of Motions for Final Approval, and Reimbursement of Expenses, to Be Filed by Plaintiffs' Counsel, only in the event Objections to the Motions are Filed | 10 days prior to Final Approval Hearing |
|---|---|
| Service/Filing of Notices of Appearance at Final Approval Hearing | 10 days prior to Final Approval Hearing |
| Final Approval Hearing | _____, 2016 (to be scheduled by the Court) |

## IX.   CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement Agreements, certifying the Settlement Class, approve the proposed forms of Notice of the Settlement, and set a hearing for final approval of the settlements.


Date:  September 27, 2016

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.


By:        */s/ Joseph R. Saveri*
              Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Andrew M. Purdy (State Bar No. 261912)
Joshua P. Davis (State Bar No. 193254)
Matthew S. Weiler (State Bar No. 236052)
James G. Dallal (State Bar No. 277826)
Ryan J. McEwan (State Bar No. 285595)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940

*Interim Class Counsel for Direct Purchaser Plaintiffs*