Joseph R. Saveri (State Bar No. 130064)
Joshua P. Davis (State Bar No. 193254)
Andrew M. Purdy (State Bar No. 261912)
Matthew S. Weiler (State Bar No. 236052)
James G. Dallal (State Bar No. 277826)
Ryan J. McEwan (State Bar No. 285595)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:         jsaveri@saverilawfirm.com
                   jdavis@saverilawfirm.com
                   apurdy@saverilawfirm.com
                   mweiler@saverilawfirm.com
                   jdallal@saverilawfirm.com
                   rmcewan@saverilawfirm.com

*Interim Lead Class Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 3:14-cv-03264-JD |
| THIS DOCUMENT RELATES TO ALL DIRECT PURCHASER CLASS ACTIONS | **DECLARTION OF JOSEPH R. SAVERI IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS FUJITSU LIMITED, NEC TOKIN, NITSUKO, THE OKAYA DEFENDANTS, AND ROHM** |
| | Date:          November 3, 2016<br>Time:          10:00 a.m.<br>Courtroom:  11, 19th Floor<br>Judge:         Hon. James Donato |

I, Joseph R. Saveri, declare:

1.  I am an attorney licensed in the State of California and admitted to practice in the Northern District of California. I am the founder of the Joseph Saveri Law Firm, Inc. ("JSLF"), Interim Lead Class Counsel for the Direct Purchaser Plaintiffs ("DPPs") in this action. I have handled this action since its inception. Unless otherwise indicated, I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

2.  This declaration is submitted in support of DPPs' motion for preliminary approval of the settlements between DPPs and Defendants Fujitsu Limited; Nitsuko Electronics Corporation ("Nitsuko"); NEC TOKIN Corporation and NEC TOKIN America, Inc. ("NEC TOKIN"); Okaya Electric Industries Co., Ltd. and Okaya Electric America, Inc. (the "Okaya Defendants"); and ROHM Co., Ltd.; and ROHM Semiconductor U.S.A., LLC ("ROHM") (collectively, the "Settling Defendants").

## PROSECUTION OF THIS ANTITRUST LITIGATION BY COUNSEL FOR DPPs

3.  This case involves antitrust claims brought under federal antitrust law by direct purchasers of aluminum, tantalum or film capacitors ("Capacitors"). Plaintiffs purchased Capacitors from the Settling Defendants or one or more of the Non-Settling Defendants. Plaintiffs' claims arise from an alleged illegal cartel and illegal agreements entered into by and among the Defendants to fix, raise, and stabilize prices for Capacitors, causing damages to Plaintiffs and the Class. Plaintiffs' claims arise under Section 1 of the Sherman Act, 15 U.S.C. § 1.

4.  This action was initiated by class representative Chip Tech Ltd. on July 18, 2014. The Joseph Saveri Law Firm was appointed JSLF interim lead class counsel for the putative direct purchaser plaintiff class on October 31, 2014, and on November 14, DPPs filed a Consolidated Amended Complaint.

5.  On December 19, 2014, Fujitsu Limited and Fujitsu Semiconductor America, Inc. ("FSA") filed a motion to dismiss challenging service of process, and on April 2, 2015, after DPPs, Fujitsu Limited, and FSA reached an agreement that Fujitsu Limited and FSA would waive service of summons, the Court ordered that Fujitsu Limited and FSA need not respond to DPPs' consolidated complaint until after the Court ruled on several pending motions to dismiss, including one brought by

Fujitsu Components America, Inc. ("FCA"). Nitsuko, NEC TOKIN, the Okaya Defendants, and ROHM all joined in a "joint" motion to dismiss.

6.      On May 26, 2015, the Court denied the "joint" motion to dismiss filed by Defendants and granted the motion filed by FCA. DPPs filed its First Amended Consolidated Complaint on June 16, 2015. It did not name FSA or FCA as defendants. On July 16, Fujitsu Limited filed a motion to dismiss the First Amended Consolidated Complaint, and this motion was opposed by DPPs. Fujitsu Limited and DPPs reached a settlement agreement before the Court ruled on Fujitsu Limited's Motion to Dismiss.

7.      On July 22, 2015, DPPs filed the operative Second Amended Consolidated Complaint.

8.      DPPs and Settling Defendants have engaged in extensive discovery since April 2015. Plaintiffs have deposed over 40 witnesses from Defendants, and Defendants have made dozens of document productions totaling millions of pages of documents.

9.      There have been three guilty pleas related to the price-fixing allegations in this matter in criminal proceedings brought by the U.S. Department of Justice. As explained in further detail *infra*, NEC TOKIN entered into a plea agreement that was filed with the U.S. District Court on January 5, 2016. Defendant Hitachi Chemical Co., Ltd. ("Hitachi") entered into a plea agreement with the U.S. Department of Justice that was filed with the U.S. District Court on May 13, 2016. Both of the plea agreements acknowledge that NEC TOKIN and Hitachi participated in a conspiracy to fix prices and rig bids of electrolytic capacitors sold in the U.S.

10.      Counsel for DPPs has conducted an extensive review of the transactional data and documents produced by Defendants in this litigation. This has included the review of over a million pages of documents, and conducting over three dozen depositions.

11.      From the discovery to date, DPPs have reached certain conclusions about the participation of the Settling Defendants in a conspiracy to fix or stabilize prices of aluminum, tantalum, or film capacitors. Documents produced by Defendants document the participation of Fujitsu Limited, NEC TOKIN, Nitsuko, the Okaya Defendants, and ROHM in the wrongful acts alleged by DPPs.

12.      From the documents produced to date, DPPs have conducted a factual investigation of the Settling Defendants' U.S. operations and sales of Capacitors. Counsel for DPPs has performed a

thorough investigation of the cartel activity that is the basis of all claims against the Settling Defendants, and has considered the merits of individual defenses.

13.     Counsel for DPPs has considered the inherent risks of litigation in determining settlement with the Settling Defendants was appropriate, as well as the Settling Defendants' participation in the conspiracy to fix or stabilize prices of capacitors, and the merits of the individual defenses that each Settling Defendant has raised.

14.     Each of the settlement discussions and negotiations for Fujitsu Limited, NEC TOKIN, Nitsuko, the Okaya Defendants, and ROHM were conducted individually and independent from one another.

15.     These are the first settlements in this action.

16.     These settlements were the product of good faith, arm's-length negotiations among experienced and well-informed counsel. Plaintiffs' negotiations with each of the Settling Defendants occurred over a span of several months and involved face-to-face meetings. The parties were informed by extensive documentary and other discovery, as well as expert analysis.

17.     None of the settlements reduces Direct Purchaser Plaintiffs' potential total recovery because it preserves their ability to recover for damages from the remaining Defendants based on joint and several liability.

## THE FUJITSU LIMITED SETTLEMENT

18.     Plaintiffs executed a settlement with Fujitsu Limited dated January 8, 2016, following months of negotiations. The settlement, attached hereto as **Exhibit A**, provides the Settlement Class with $2,000,000 in cash and other valuable consideration, including cooperation. The settlement agreement was negotiated over a period of nearly five months, and included in person meetings between counsel.

19.     Fujitsu Limited has represented that it "has not been directly involved in the manufacture, distribution or sale of capacitors, and that a Fujitsu subsidiary sold and transferred its capacitor business (including the relevant corporate entity, capacitor assets, and related employees) in 2009." **Exhibit A** (Fujitsu Limited Settlement Agreement at ¶ 13(b)).

20. Fujitsu Limited produced to DPPs data sufficient to show Fujitsu Limited's sales in the United States during the Class Period. Fujitsu Limited has also provided information regarding the nature of the transaction in which Fujitsu Media Devices Ltd. ("FMD") transferred and sold its capacitor business and 100% of its equity interest in Fujitsu Media Devices (Suzhou) Limited ("FMD Suzhou") to Defendant Nichicon Corporation ("Nichicon") in 2009.

21. Fujitsu Limited's subsidiary, FMD, sold its business unit responsible for capacitors in 2009 to Nichicon, which presents additional defenses and would require Plaintiffs to prove liability under fact-intensive successor liability theories, including that Fujitsu Limited can be liable for assuming the liabilities of FMD. Further discovery and trial would focus on complex evidence concerning FMD's sale of FMD Suzhou and FMD's subsequent dissolution, as well as application of Japanese corporate law and successor liability law, including U.S. analogues as to each, and choice of law principles to determine which law to apply.

22. Fujitsu Limited was the ultimate parent of FMD and FMD's former subsidiary, FMD Suzhou, which manufactured electrolytic capacitors and allegedly attended meetings. *See* SAC ¶¶ 53-54, 196, 198, 208. Fujitsu Limited never manufactured, sold or distributed capacitors. Plaintiffs' claim against Fujitsu Limited arises from successor liability theories. *See id*. ¶ 54.

23. In April 2009, Nichicon Corp. acquired FMD's capacitor business, including all of FMD's equity interest in FMD Suzhou, and renamed FMD Suzhou as FPCAP Electronics (Suzhou) Co., Ltd. Plaintiffs continue to pursue claims against Nichicon Corp. Prior to April 2009, a small amount (less than 10%) of FMD Suzhou's global capacitor sales were indirectly sold to FMD's American subsidiary, Fujitsu Media Devices of America, Inc. (US)(now dissolved) for sale to U.S. customers. Prior to April 2009, about 90% of FMD Suzhou's capacitors were shipped to Fujitsu Media Devices Hong Kong Ltd. (now dissolved) for sale to Chinese and Taiwanese customers through third party distributors.

24. The remainder of FMD Suzhou's capacitors were shipped to FMD (now dissolved and liquidated) for sale to Japanese customers through third party distributors and to Fujitsu Microelectronics for sale to European customers.

25. It is estimated that the dollar volume of FMD family direct sales to customers in the United States prior to April 2009 during the Class Period did not exceed $200,000.

### THE NEC TOKIN SETTLEMENT

26. DPPs executed a settlement with NEC TOKIN on July 15, 2016, following months of negotiations, including mediation before the Hon. Layn R. Phillips (ret.). The settlement, attached hereto as **Exhibit B**, provides the Settlement Class $24,000,000 and other valuable consideration, including cooperation. The settlement agreement was negotiated over a period of several months, and included a mediation with the Hon. Layn R. Phillips (ret.).

27. NEC TOKIN produced to DPPs data sufficient to show their U.S. and global sales during the Class Period. NEC TOKIN also produced documents concerning its participation in all meetings that DPPs contend were used to exchange competitively-sensitive information, as well as all ordinary course documents that NEC TOKIN produced to the U.S. Department of Justice, and any other governmental antitrust authority. Additionally, DPPs deposed Yasunori Ando of NEC TOKIN in connection with its motion raising issues under the FTAIA.

28. The settlement with NEC TOKIN is reasonable in light of the financial condition of the Company. The U.S. Department of Justice filed an Information charging NEC TOKIN with one count of violating the Sherman Antitrust Act, 15 U.S.C. § 1, on September 2, 2015. A true and correct copy of this information is attached hereto as **Exhibit C**. NEC TOKIN has represented to counsel for DPPs, and to the U.S. Department of Justice in connection with its guilty plea proceedings, that it is experiencing substantial financial difficulties. Attached hereto as **Exhibit D** is a true and correct copy of a transcript of proceedings conducted on January 21, 2016 in that matter.

29. Counsel for DPPs has also taken into consideration that NEC TOKIN has represented to DPPs and the U.S. Department of Justice that is U.S. sales were $51.1 million from April 2002 through December 2013, and that the settlement provides DPPs with nearly 47% of what NEC TOKIN represented to the U.S. Department of Justice were its U.S. sales from April 2002 to December 2013. Attached hereto as **Exhibit E** is a true and correct copy of Joint Sentencing Memorandum and Motion for Departure filed in that matter on January 5, 2016, and attached hereto as **Exhibit F** is a true and correct copy of a declaration attaching the Plea Agreement entered into by NEC TOKIN.

30.     Counsel for DPPs believes that the settlement reached with NEC TOKIN is reasonable in light of NEC TOKIN's agreement to provide substantial assistance in the ongoing litigation as described in the settlement agreement. Counsel for DPPs believes that NEC TOKIN is knowledgeable concerning the wrongdoing alleged by DPPs concerning the conspiracy to fix or stabilize prices for aluminum and tantalum capacitors, and believe this cooperation will be valuable to DPPs.

## THE NITSUKO SETTLEMENT

31.     DPPs executed a settlement with Nitsuko dated March 18, 2016, following months of negotiations. The settlement, attached hereto as **Exhibit G**, provides the Settlement Class with $1,100,000 in cash and other valuable consideration, including cooperation. The settlement agreement was negotiated over a period of several months.

32.     Nitsuko produced to DPPs data sufficient to show Nitsuko's sales in the United States during the Class Period. Nitsuko also produced documents concerning its participation in the wrongful acts DPPs allege, including cartel meetings and other occasions in which Nitsuko and others exchanged competitively-sensitive information, as well as all ordinary course documents that Nitsuko produced to the U.S. Department of Justice, and any other governmental antitrust authority.

33.     The settlement reached with Nitsuko is reasonable in light of Nitsuko's U.S. sales and global sales. Nitsuko has produced data to counsel for DPPs that shows its U.S. sales were less than $100,000 during the relevant time period.

## THE OKAYA DEFENDANTS SETTLEMENT

34.     DPPs executed a settlement with the Okaya Defendants on April 14, 2016, following months of negotiations. The settlement, attached hereto as **Exhibit H**, provides the Settlement Class with $3,650,000 and other valuable consideration, including cooperation. DPPs executed a settlement with Nitsuko dated March 18, 2016, following months of negotiations.

35.     The Okaya Defendants produced to DPPs data sufficient to show their U.S. and global sales during the Class Period. The Okaya Defendants also produced documents concerning their participation in all meetings that DPPs contend were used to exchange competitively-sensitive information, as well as all ordinary course documents that the Okaya Defendants produced to the U.S. Department of Justice, and any other governmental antitrust authority. Additionally, DPPs deposed

Tsutomu Homma of the Okaya Defendants on October 27, 2015 concerning their U.S. sales, connections to the U.S., and other matters raised by the Okaya Defendants in connection with their motion raising issues under the Foreign Trade Antitrust Improvements Act ("FTAIA"). DPPs deposed Akihiko Ikazaki of the Okaya Defendants on March 9 and 10, 2016 concerning the allegations in their complaint.

36.     The settlement reached with the Okaya Defendants is reasonable in light of their U.S. sales and global sales. The Okaya Defendants have represented to counsel for DPPs that its U.S. sales were less than $11.5 million during the relevant time period. The transactional documents produced by Okaya indicate recoverable sales, including the U.S. sales figure quoted by the Okaya Defendants, amounting to $14.6 million.

**THE ROHM SETTLEMENT**

37.     DPPs executed a settlement with ROHM dated August 19, 2016, following months of negotiations. The settlement, attached hereto as **Exhibit I**, provides the Settlement Class with $1,850,000 in cash and other valuable consideration, including cooperation. The settlement agreement was negotiated over a period of several months.

38.     ROHM produced to DPPs data sufficient to show ROHM's sales in the United States during the Class Period. ROHM also produced documents concerning its participation in the wrongful acts DPPs allege, including cartel meetings and other occasions in which ROHM  and others exchanged competitively-sensitive information, as well as all ordinary course documents that ROHM produced to the U.S. Department of Justice, and any other governmental antitrust authority.

39.     The settlement reached with ROHM is reasonable in light of ROHM's U.S. sales and global sales. ROHM has produced data to counsel for DPPs that shows its U.S. sales were less than $6,900,000 during the relevant time period.

**APPOINTMENT OF JSLF AS SETTLEMENT CLASS COUNSEL**

40.     The Joseph Saveri Law Firm ("JSLF") seeks to be appointed as Settlement Class Counsel.

41.     On October 31, 2014 the Court appointed JSLF interim lead class counsel for the putative direct purchaser plaintiff class. *See* Dkt. 319.

42.     JSLF has led the prosecution of this litigation on behalf of the DPPs, and has coordinated efforts with respect to the Settlement Agreements. JSLF has coordinated or conducted all of the work performed to date on behalf of the DPPs.

43.     JSLF is a leading plaintiffs' antitrust law firm, and has substantial experience serving in a leadership capacity of major antitrust class action litigation. Attached hereto as **Exhibit J** is a true and correct copy of the most recent version of the JSLF firm resume.

44.     JSLF has committed substantial resources to the litigation of this action to date, including advancing the costs of litigation, travel expenses, and fees for expert witnesses.

45.     JSLF continues to be willing and able to vigorously prosecute this action and to devote all necessary resources to obtain the best possible result.

**REIMBURSEMENT OF INCURRED LITIGATION EXPENSES AND COSTS**

46.     JSLF, together with the other counsel for the DPPs, seeks $200,000 related to the costs of providing notice to Class members. JSLF will also request $7,500,000 for incurred litigation expenses and future litigation expenses, principally expert expenses and the costs of translators.

47.     The reimbursement sought by DPPs is consistent with requests made to courts in many other large, complex class actions involving multiple defendants. Attached hereto as **Exhibit K** is an order reflecting reimbursements made in *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-md-01486, Dkt. No. 1315 (N.D. Cal. Feb. 14, 2007). Attached hereto as **Exhibit L** is a docket entry printed out from PACER reflecting a reimbursement order in *In re High Pressure Laminates Antitrust Litig.*, No. 00-MD-1368, Dkt. No. 215 (S.D.N.Y. July 14, 2004).

48.     No attorneys' fees will be sought from this Settlement Fund at this time. Should the Court approve both the Settlement and Interim Class Counsel's expense request, the residual amount in the Settlement Fund will bear interest and remain for the benefit of the Settlement Class, and will be distributed to the Settlement Class in the future, subject to Court Order. Settlement Class Counsel may seek an award of attorneys' fees, depending on the course of the litigation. No portion of the Settlement Fund will be distributed from the Settlement Fund absent an order of this Court.

**NOTICE TO SETTLEMENT CLASS MEMBERS AND ALLOCATION**

49.     Counsel for DPPs has prepared a long form notice of settlement, which will be mailed to settlement class members. A true and correct copy of the long form notice is attached hereto as **Exhibit M**. Plaintiffs also propose a short form Notice, attached hereto as **Exhibit N**, to be published once in the Wall Street Journal. Settling Defendants have approved these notices.

50.     Plaintiffs propose that settlement funds be allocated based on the relative share of Capacitors purchased during the relevant time period. In order to accomplish this distribution, Plaintiffs will calculate the dollar value of each class member's purchase(s) of capacitors in proportion to the total claims filed. Plaintiffs will provide updated information on the distribution, including the formulae used to make allocation, on the settlement website.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and to the best of my knowledge and that this declaration was executed in San Francisco, California on September 27, 2016.



By:     *Joseph R. Saveri*
                    Joseph R. Saveri