Joseph W. Cotchett (36324)
Steven N. Williams (175489)
Adam J. Zapala (245748)
Elizabeth Tran (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
etran@cpmlegal.com

*Interim Lead Counsel for the Putative Indirect Purchaser Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CAPACITORS ANTITRUST LITIGATION** | **MASTER FILE NO. 14-cv-03264-JD** |
| | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA** |
| **THIS DOCUMENT RELATES TO:** | |
| **ALL INDIRECT PURCHASER ACTIONS** | **Date:  November 10, 2016** |
| | **Time: 10:00 a.m.** |
| | **Place: Courtroom 11, 19th Floor** |
| | Judge:  Hon. James Donato |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

    A.  Settlement Efforts with Defendant Nitsuko ............................................ 2

    B.  Settlement Efforts with Defendant Okaya .............................................. 2

    C.  Settlement Efforts with Defendant NEC TOKIN .................................. 3

III.  SUMMARY OF SETTLEMENT TERMS ......................................................... 3

    A.  Settlement Classes for the Three Settlements ......................................... 3

    B.  Settlement Consideration ........................................................................ 4

    C.  Information on Settlement – Northern District of California Guidance ................... 5

        1.  Differences Between Settlement Class and Class Defined in Complaint. ..... 5

        2.  Differences Between Claims Released and Claims in Complaint ................. 6

        3.  Settlement Recovery Versus Potential Trial Recovery ............................... 6

        4.  Fairness of the Allocation of the Settlement Funds ..................................... 7

        5.  Administration Costs Will Be Kept at a Minimum ...................................... 8

        6.  Attorneys' Fees ........................................................................................... 8

        7.  Incentive Awards ......................................................................................... 8

IV.  LEGAL ARGUMENT ........................................................................................ 8

    A.  Legal Standard for Preliminary Approval of Class Action Settlements. .................. 8

    B.  The Settlements with Defendants NEC TOKIN, Nitsuko, and Okaya Meet the Standard for Preliminary Approval of Settlements. .................................................. 9

        1.  The Settlements Are the Result of Serious, Informed, and Non-Collusive Negotiations. ............................................................................... 9

        2.  There Are No Obvious Deficiencies in the Settlements. .............................. 9

i

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

3.   There Is No Preferential Treatment..................................................................10

4.   The Proposed Settlements Fall Within the Range of Possible Approval......10

C.   The Proposed Settlement Classes Satisfy Rule 23 .......................................10

1.   Fed R. Civ. P. 23(a)(1) – Numerosity .........................................................11

2.   Fed R. Civ. P. 23(a)(2) – Common Questions of Law or Fact....................11

3.   Fed R. Civ. P. 23(a)(3) – Typicality............................................................12

4.   Fed R. Civ. P. 23(a)(4) – Fair and Adequate Class Representation.............13

5.   All Requirements of Rule 23(b) Are Met In This Case. ..............................13

D.   This Court Should Appoint Interim Class Counsel as Settlement Class Counsel. ..15

V.   CONCLUSION ..........................................................................................................15

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor*
   521 U.S. 591 (1997) ......................................................................................... 14

*Connolly v. Weight Watchers N. Am, Inc.*
   2014 U.S. Dist. LEXIS 102088 (N.D. Cal. July 21, 2014) ................................. 9

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ...................................................................... 9, 13

*Hodges v. Akeena Solar, Inc.*
   274 F.R.D. 259 (N.D. Cal. 2011) .................................................................... 11

*In re Auction Houses Antitrust Litig.*
   193 F.R.D. 162 (S.D.N.Y. 2000) ..................................................................... 12

*In re Catfish Antitrust Litig.*
   826 F.Supp. 1019 (N.D. Miss. 1993) .............................................................. 12

*In re Citric Acid Antitrust Litig.*
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) ............................................................ 8

*In re Dynamic Random Access Memory Antitrust Litig.*
   2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006) ................................. 11

*In re High-Tech Emple. Antitrust Litig.*
   985 F.Supp.2d 1167 (N.D. Cal. 2013) ............................................................. 14

*In re Optical Disk Drive Antitrust Litig.*
   2016 U.S. Dist. LEXIS 15899 (N.D. Cal. February 8, 2016) .......................... 12

*In re Potash Antitrust Litig.*
   159 F.R.D. 682 (D. Minn. 1995) ..................................................................... 12

*In re Rubber Chemls. Antitrust Litig.*
   232 F.R.D. 346 (N.D. Cal. 2005) .................................................................... 11

*In re Static Random Access Memory Antitrust Litig.*
   264 F.R.D. 603 (N.D. Cal. 2009) .................................................................... 14

*In re Tableware Antitrust Litig.*
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................ 8

*In re TFT-LCD Antitrust Litig.*
   267 F.R.D. 291 (N.D. Cal. 2010) .................................................................... 14

*Officers for Justice v. Civil Serv. Com.*
   688 F.2d 615 (9th Cir. 1982) ............................................................................. 9

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

**Rules**

Fed. R. Civ. Proc. 23 ............................................................................................... 1

Fed R. Civ. P. 23(a) .............................................................................................. 11

Fed R. Civ. P. 23(a)(1) ......................................................................................... 11

Fed R. Civ. P. 23(b)(1) .................................................................................... 13, 14

Fed. R. Civ. P. 23(a)(2) ........................................................................................ 11

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 12

Fed. R. Civ. P. 23(a)(4) ........................................................................................ 13

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 13

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION
    (FOURTH) § 21.632 (2004) .......................................................................... 8

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 10, 2016 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable James Donato, the Indirect Purchaser Plaintiffs ("**IPPs**") will and hereby do move for an order granting preliminary approval of proposed settlements with Defendants (1) NEC TOKIN Corp./NEC TOKIN America Inc. (collectively "**NEC TOKIN**"), (2) Nitsuko Electronics Corporation ("**Nitsuko**"), and (3) Okaya Electric Industries Co, Ltd. ("**Okaya**"). These are the first three settlements obtained by the IPPs in this action. At this time, Plaintiffs are not seeking an award of attorneys' fees or costs or to establish a claims process.

This motion is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Northern District of California's Procedural Guidance for Class Action Settlements. The grounds for this motion are that the settlements with Defendants NEC TOKIN, Nitsuko, and Okaya fall within the range of possible approval, contain no obvious deficiencies and were the result of serious, informed and non-collusive negotiations. As such, preliminary approval should be granted.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Declaration of Steven N. Williams, the argument of counsel and the pleadings and records on file herein.


Dated:  October 5, 2016                           Respectfully submitted,

**COTCHETT, PITRE & McCARTHY LLP**


By:  _____/s/ Steven N. Williams_____
                   Steven N. Williams

*Interim Lead Counsel for the Putative Indirect Purchaser Class*

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**QUESTION TO BE DECIDED**

Whether the proposed settlements that Indirect Purchaser Plaintiffs have entered into with Defendants NEC TOKIN, Nitsuko, and Okaya should be preliminarily approved.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Pursuant to Fed. R. Civ. Proc. 23, Indirect Purchaser Class Plaintiffs ("**IPPs**") move for an order preliminarily approving three class settlements with Defendants NEC TOKIN Corp./NEC TOKIN America Inc. (collectively, "**NEC TOKIN**"), Nitsuko Electronics Corporation ("**Nitsuko**"), and Okaya Electric Industries Co, Ltd. ("**Okaya**") (collectively, the "Settlements" and the "Settling Defendants"). The Settlements were reached after hard-fought litigation, are the result of arms-length negotiations, and Interim Class Counsel believes that the settlements are in the best interests of the Class.  *See* Declaration of Steven N. Williams ("Williams Decl."), ¶ 6.

The Settlement with NEC TOKIN provides for payment to the indirect purchaser class of $13,250,000. The Settlement with Nitsuko provides for payment to the indirect purchaser class of $800,000. The Settlement with Okaya provides for payment to the indirect purchaser class of $900,000. Each of the Settling Defendants has also agreed to provide cooperation to IPPs in the prosecution of their claims against the non-settling defendants. In exchange for the settlement consideration that they are providing, the Settling Defendants will receive releases of all class members' antitrust and consumer protection claims against them relating to an alleged conspiracy to fix, raise, maintain and/or stabilize the price of electrolytic capacitors.

At the preliminary approval stage, the Court is not being asked to make a final determination on whether or not to approve the Settlements, but instead is tasked with determining if the Settlements fall within the range of possible approval and appear to be the product of serious, informed, and non-collusive negotiations. IPPs believe that the Settlements meet these criteria and, for that reason, that the Court should grant preliminary approval of the Settlements.

IPPs are not now requesting approval of a claims administrator or the commencement of a claims process, as IPPs believe it would be more efficient and economical to defer that process

1

1   until such time as they are further recoveries in the case, by settlement or by judgment. IPPs are

2   also not now seeking attorneys' fees. IPPs are seeking reimbursement of certain costs incurred to

3   date in the prosecution of this action.

4   ## II.   FACTUAL AND PROCEDURAL BACKGROUND

5           This case arises from an alleged conspiracy by the Defendants to fix, raise, maintain and/or

6   stabilize the price of capacitors sold in the United States. This case has been heavily litigated, with

7   multiple rounds of motions to dismiss and motions for summary judgment already having been

8   filed. There have been significant discovery challenges faced by IPPs, not only in regards to

9   obtaining documents and information from Defendants but also in obtaining documents and

10  information from non-party capacitor distributors in order to successfully prosecute this action.

11  Williams Decl., ¶ 3.    IPPs have successfully navigated many factual and legal challenges in

12  prosecuting this case, but there is still a long way to go. There are no guarantees at trial, and trying

13  a complex class action such as this one would be particularly lengthy and costly – for example,

14  there are already over 1200 docket entries in this case. Indeed, there should be no dispute that the

15  proposed Settlements are the result of a fair evaluation of the merits of the case after years of

16  extensive litigation.

17  ### A.    Settlement Efforts with Defendant Nitsuko

18          IPPs engaged in settlement negotiations with Defendant Nitsuko over the course of many

19  months. These negotiations included in person meetings, the exchange of confidential information

20  reflecting the parties' respective views of liability and damages, and information concerning

21  Nitsuko's financial conditions and prospects. The proposed settlement was only arrived after the

22  exchange of this information, continued dialogue between the parties, and negotiation concerning

23  appropriate financial consideration to be paid in exchange for a release.  *See* Williams Decl, ¶ 7.

24  ### B.    Settlement Efforts with Defendant Okaya

25          Negotiations with Okaya followed a similar process as negotiations with Nitsuko, but took

26  even longer to reach the proposed settlement. The parties held in in-person meetings, telephonic

27  meetings, exchanged information, and exchanged settlement proposals. The proposed settlement

28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF**
**SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

was arrived at only after both sides had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigation risks, and issues involving ability to pay. *See* Williams Decl, ¶ 8.

**C.**     **Settlement Efforts with Defendant NEC TOKIN**

Settlement negotiations with Defendant NEC TOKIN likewise continued for many months and involved high-level executives at Defendant NEC TOKIN as well as their lawyers, who are highly experienced and skilled antitrust lawyers. Additionally, several mediation sessions with Defendant NEC TOKIN were conducted with the Honorable Layn R. Phillips (Ret.), a well-regarded mediator who has successfully mediated many complex cases including antitrust class actions.  *See* Williams Decl, ¶ 9.

**III.   SUMMARY OF SETTLEMENT TERMS**

**A.**     **Settlement Classes for the Three Settlements**

Settlement Class Definition for Defendant NEC TOKIN:

[A]ll persons and entities in the United States who, during, the period from April 1, 2002 to [July 15, 2016], purchased directly from a distributor one or more Capacitor(s) from a distributor that a Defendant manufactured.  Excluded from the Class[ ] are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, Defendants' attorneys in this case, federal government entities and instrumentalities, states and their subdivisions, all judges assigned to this case, all jurors in this case.

*See* NEC TOKIN Settlement Agreement, Williams Decl., Exh. 1, ¶ 1(f).

Settlement Class Definition for Defendant Nitsuko:

[A]ll persons and entities in the United States who, during, the period from January 1, 2003 to [March 29, 2016], purchased one or more Capacitor(s) from a distributor that a Defendant manufactured.  Excluded from the Class[ ] are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, Defendants' attorneys in this case, federal government entities and instrumentalities, states and their subdivisions, all judges assigned to this case, all jurors in this case, and all persons and entities who directly purchased capacitors from Defendants.

*See* Nitsuko Settlement Agreement, Williams Decl., Exh. 2, ¶ 1(f).

Settlement Class Definition for Defendant Okaya:

[A]ll persons and entities in the United States who, during, the period from January 1, 2002 to [April 14, 2016], purchased one or more Capacitor(s) from a distributor

3

1
2
3
4

(or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, Defendants' attorneys in this case, federal government entities and instrumentalities, states and their subdivisions, all judges assigned to this case, all jurors in this case, and all persons and entities who directly purchased capacitors from Defendants.

5

*See* Okaya Settlement Agreement, Williams Decl., Exh. 3, ¶ 1(f).

6

**B.     Settlement Consideration**

7

Defendant NEC TOKIN

8
9
10
11
12
13
14
15
16

Defendant NEC TOKIN has agreed to pay the total sum of $13,250,000 to the members of the class to settle the claims against it. *See* NEC TOKIN Settlement Agreement, ¶ 1(dd). The settlement amount will be paid out in four annual installments. *Id.* at ¶ 13. Defendant NEC TOKIN also agreed to provide substantial cooperation to IPPs. This cooperation includes providing IPPs with an oral proffer of facts regarding the alleged conspiracy in the capacitors industry, producing business documents related to the alleged conspiracy, and making current employees available for interviews, depositions, and testimony. *Id.* at ¶¶ 30-33. The cooperation agreed to by Defendant NEC TOKIN will provide IPPs with evidence to demonstrate the existence of a conspiracy in the capacitors industry and will assist IPPs in understanding the nature and details of that conspiracy.

17

Defendant Nitsuko

18
19
20
21
22
23
24
25
26

Defendant Nitsuko has agreed to pay the class $800,000 as well as provide cooperation to IPPs in further prosecuting this action against other Defendants as part of its settlement with IPPs. *See* Nitsuko Settlement Agreement, ¶ 1(ee). Defendant Nitsuko, despite being a smaller manufacturer, has also agreed to provide IPPs with substantial cooperation. As part of cooperation, Defendant Nitsuko has agreed to provide an oral proffer of facts regarding the alleged conspiracy in the capacitors industry. *Id.* at ¶ 30. Defendant Nitsuko has also agreed to additional cooperation with IPPs, including producing documents related to communications and meetings utilized by Defendants to conspire to fix, raise, maintain and/or stabilize the price of capacitors, as well as making current and former employees available for interviews. *Id.* at ¶ 33.

27
28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

1        Defendant Okaya

2        Defendant Okaya has agreed to a settlement with the class for $900,000. *See* Okaya

3    Settlement Agreement, ¶ 1(ee). Defendant Okaya, which is also a smaller capacitor manufacturer,

4    has also agreed to provide IPPs with cooperation. Like Defendants NEC TOKIN and Nitsuko,

5    Defendant Okaya has agreed to an oral proffer of facts regarding the alleged conspiracy in the

6    capacitors industry. *Id.* at ¶ 33. Defendant Okaya has agreed to provide similar cooperation as

7    Defendant Nitsuko, such as producing documents to IPPs and making current and former

8    employees available for interviews, depositions, and trial testimony. *Id.* at ¶ 35.

9        In exchange for the above settlement consideration, Plaintiffs agree to release all claims,

10   demands, rights, actions, suits, and causes of action against the Settling Defendants arising out of

11   or related to the purchase, pricing, selling, discounting, marketing, manufacturing and/or

12   distributing of capacitors in the United States. *See* Nitsuko Settlement Agreement, ¶ 1(aa); Okaya

13   Settlement Agreement, ¶ 1(aa); and NEC TOKIN Settlement Agreement, § 1(aa).

14       **C.    Information on Settlement – Northern District of California Guidance**

15           1.    Differences Between Settlement Class and Class Defined in Complaint.

16       Defendant NEC TOKIN is alleged to have been involved in the electrolytic capacitor

17   conspiracy from April 1, 2002 to the present. *See* Fourth Consolidated Complaint, ¶¶ 2, 369, 371.

18   Specifically, Defendant NEC TOKIN was involved in the manufacturing, marketing and sale of

19   electrolytic capacitors; it neither manufactured nor sold film capacitors during the relevant time

20   period. Plaintiffs' claims for injunctive relief under federal antitrust laws covers all purchasers of

21   electrolytic capacitors and film capacitors in the United States. *Id.* at ¶ 369. Plaintiffs' claims for

22   monetary damages based on state law, as indirect purchasers, are limited to those states that have

23   repealed *Illinois Brick*. *Id.* at ¶ 371. The proposed Settlement Class for Defendant NEC TOKIN

24   covers the time period from April 1, 2002 to July 15, 2016. *See* NEC TOKIN Settlement

25   Agreement, ¶ 1(f). There is no material difference between the Settlement Class and the alleged

26   Class in the complaint as to Defendant NEC TOKIN.

27

28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

1    Defendants Nitsuko and Okaya were primarily involved in the manufacturing, marketing

2    and sale of film capacitors. *See* Williams Decl., ¶ 5.  In the Fourth Consolidated Complaint, filed

3    March 22, 2016, the film capacitor conspiracy is alleged to have been active from January 1, 2002

4    to the present. *See* Fourth Consolidated Complaint, ¶¶ 3, 369. The Third Consolidated Complaint

5    alleged that the film capacitor conspiracy was active from January 1, 2007 through the present. *See*

6    Third Consolidated Complaint, ¶¶ 3, 369. The Settlement Class with Defendant Nitsuko is from

7    January 1, 2003 to the present.  This time period is consistent with the Class Period alleged in the

8    Second Consolidated Complaint, which was pending at the time that the Nitsuko settlement was

9    entered into.  Defendant Okaya settled the case with IPPs on April 14, 2016. At the time of the

10   settlement, Plaintiffs alleged that the film capacitor conspiracy was in existence from January 1,

11   2002 to the present. *See* Fourth Consolidated Complaint, ¶¶ 3, 369. Therefore, the Settlement Class

12   is consistent with the Class in the complaint as to Defendant Okaya.

13              2.      Differences Between Claims Released and Claims in Complaint

14   The IPPs allege two conspiracies, one involving electrolytic capacitors and one involving

15   film capacitors. The IPPs' complaints allude to the fact that discovery and investigation may reveal

16   that the two conspiracies were a single conspiracy, as alleged by the DPPs, and that IPPs' reserved

17   the right to seek leave to amend their complaint to allege a single conspiracy. In light of the fact

18   that potential exposure exists for the single conspiracy claim and that some Defendants are alleged

19   to be participants in both conspiracies, the parties negotiated a release for all capacitor purchases.

20   IPPs believe that this a fair and reasonable resolution for the class and for the Defendants.

21              3.      Settlement Recovery Versus Potential Trial Recovery

22   IPPs are at a relatively early point in determining the total amount of class damages, and

23   there are many contingencies that could affect that determination, including the risk of whether or

24   not a class or classes are certified; whether or not pass through of any overcharge can be

25   demonstrated; whether or not the class or classes will be certified – and if they are certified

26   whether they will be for a shorter period than proposed by IPPs; whether or not certain defendants

27   will prevail on liability; and whether or not certain defendants will become insolvent. These are

28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

just a few of the risks, and Interim Lead Counsel's duties to the IPPs preclude a further or more detailed discussion in this brief as to how Interim Lead Counsel weighs those risks. Even at this point, however, IPPs believe that the settlements reflect a fair and reasonable compromise in light of potential trial recovery. First, these are the first settlements in the case, come early in the case, and come at a time when the non-settling defendants, for the most part, either refuse to produce their witnesses entirely for depositions or their witnesses have invoked the Fifth Amendment and refused to testify. These considerations make the cooperation being provided significantly more valuable than in many other cases, and IPPs believe that the value of this cooperation must be included in the weighing of actual recovery versus potential recovery.

In addition, the Settlements reflect a fairly high percentage of the overall sales of capacitors by the settling defendants. The settlement with Nitsuko, for example, represents 800% of Nitsuko's total sales in the United States during the Class Period; the settlement with Okaya represents at least 10% of Okaya's total sales in the United States during the Class Period; and the settlement with NEC TOKIN represents 25.92% of NEC TOKIN's total sales in the United States during the Class Period. These percentages are not the alleged overcharge, but rather the percentage of overall sales. Given that these calculations are based on these Defendants' total sales in the United States, and not just the subset of sales to distributors in states which permit claims by indirect purchasers, the percentages are in fact much higher. Williams Decl., ¶ 7. These percentages, indeed, compare favorably with other antitrust class settlements.

### 4.   Fairness of the Allocation of the Settlement Funds

IPPs propose that allocation of the settlement funds will be on a *pro rata* basis based on the type and extent of injury suffered by each class member in those states which permit indirect purchaser antitrust claims. Specifically, the settlement funds paid by Nitsuko and Okaya will be allocated to those who submit approved claims for purchases of film capacitors during the class period on a *pro rata* basis, while the settlement funds paid by NEC TOKIN will be allocated to those who submit approved claims for purchases of electrolytic capacitors during the class period on a *pro rata* basis. "A plan of allocation that reimburses class members based on the type and

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

1    extent of their injuries is generally reasonable." *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d

2    1152, 1154 (N.D. Cal. 2001).

3                      5.    Administration Costs Will Be Kept at a Minimum

4         Since Plaintiffs are not proposing to begin the claims process at this time, IPPs have not

5    selected a Settlement Administrator. When IPPs present a proposed claims administrator for Court

6    approval, they will submit briefing to this Court which will include information about the costs of

7    the proposed Settlement Administrator. IPPs will endeavor to keep these costs at a minimum.

8                      6.    Attorneys' Fees

9         IPPs are not seeking an award of attorneys' fees or the reimbursement of litigation costs at

10   this time. IPPs may seek reimbursement of certain costs incurred in the prosecution of this action

11   on behalf of the Classes.  If any such motion is made, it will be filed at least fourteen days before

12   the deadline for objecting to the settlements pursuant to the Northern District's Procedural

13   Guidelines for Class Action Settlements.

14                     7.    Incentive Awards

15        IPPs are not seeking incentive awards.

16                          **IV.  LEGAL ARGUMENT**

17   **A.    Legal Standard for Preliminary Approval of Class Action Settlements.**

18        In order to grant preliminary approval, this Court is tasked to determine if: (1) the proposed

19   Settlements appear to be the product of serious, informed, non-collusive negotiations; (2) have no

20   obvious deficiencies; (3) do not improperly grant preferential treatment to class representatives or

21   segments of the class; and (4) fall within the range of possible approval.  *In re Tableware Antitrust*

22   *Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "The judge must make a preliminary

23   determination on the fairness, reasonableness, and adequacy of the settlement terms and must

24   direct the preparation of notice of the certification, proposed settlement, and date of the final

25   fairness hearing."  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004).  The purpose of

26   notice is to allow class members a full and fair opportunity to consider the proposed Settlements

27   and develop a response, such as whether to remain a member of the class or opt-out. *See Connolly*

28

1    *v. Weight Watchers N. Am, Inc.*, 2014 U.S. Dist. LEXIS 102088, *14 (N.D. Cal. July 21, 2014);

2    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) ("*Hanlon*"). "[T]he decision to

3    approve or reject a settlement is committed to the sound discretion of the trial judge because he is

4    'exposed to the litigants, and their strategies, positions and proof.'" *Hanlon*, 150 F.3d at 1026,

5    *citing Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 626 (9th Cir. 1982).

6          **B.**      **The Settlements with Defendants NEC TOKIN, Nitsuko, and Okaya Meet the**

7               **Standard for Preliminary Approval of Settlements.**

8          The Settlements with Defendants NEC TOKIN, Nitsuko, and Okaya meet the standard for

9    preliminary approval because the Settlements were the result of serious, informed, and non-

10   collusive negotiations. There are also no obvious deficiencies in the Settlements – the Settlements

11   do not grant preferential treatment to the class representatives or any subset of the class, and the

12   Settlements fall within the range of possible approval. As such, preliminary approval of the

13   Settlements is appropriate and warranted.

14              1.     The Settlements Are the Result of Serious, Informed, and Non-Collusive

15                     Negotiations.

16         IPPs and the three Settling Defendants are represented by highly experienced and skilled

17   antitrust counsel who are highly knowledgeable of the law and have extensive experience with

18   complex antitrust lawsuits. IPPs and Defendants have been heavily litigating this case for nearly

19   two full years. Throughout this litigation, Defendants NEC TOKIN, Nitsuko, and Okaya (and the

20   non-settling defendants) have vigorously contested this case, challenging IPPs' legal theories of

21   liability, whether the facts support Defendants' involvement in an antitrust conspiracy regarding

22   capacitors, the scope of the conspiracy and Defendants' level of involvement in such a conspiracy,

23   and the damages for which each Defendant may be liable. The Settlements before the Court,

24   therefore, are the result of serious and informed negotiations. Additionally, there has been no

25   collusion between the settling parties.

26              2.     There Are No Obvious Deficiencies in the Settlements.

27         As set forth above, the Settlements were the result of serious analysis and consideration of

28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF**
**SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

1  the significant risks faced by both sides and there are no obvious deficiencies in the Settlements.

2  For example, the size of the Settlements is commensurate with the market share of Defendants

3  NEC TOKIN, Nitsuko, and Okaya in the capacitors industry affected by the antitrust conspiracy

4  alleged by Plaintiffs. Additionally, the Settling Defendants' financial condition and ability to pay

5  were taken into consideration. These settlements were entered into while a class certification

6  deadline was looming before the parties, as well as during the pendency of Defendants' motions

7  for partial summary judgment relating to the Foreign Trade Antitrust Improvements Act.

8       Indeed, the Settlements were reached by both sides with full appreciation of the risks faced

9  by both sides. Rulings favorable to IPPs in these pending motions would significantly impact the

10  value of settlements for Defendants who chose to wait for the rulings on those motions.  IPPs

11  appropriately valued the cooperation provided by Defendants NEC TOKIN, Nitsuko, and Okaya,

12  because cooperation to be provided by these Defendants will likely result in higher future

13  settlements with other defendants in this case.

14           3.    <u>There Is No Preferential Treatment</u>.

15       There is no preferential treatment of any class representative or any segment of the Class.

16  All indirect purchasers of capacitors with a right to recover will have an ability to submit a claim

17  for a *pro rata* share of the settlement funds based on the type of capacitors they purchased. IPPs

18  are not seeking incentive awards and the Settlement Agreements do not provide for any

19  preferential treatment to them or to any segment of the Class. This element in favor of preliminary

20  approval is met.

21           4.    <u>The Proposed Settlements Fall Within the Range of Possible Approval</u>.

22       For the reasons set forth in Section III(C)(3), *supra*, IPPs believe that the proposed

23  Settlements fall within the range of possible approval of settlements.

24  **C.    The Proposed Settlement Classes Satisfy Rule 23**

25       Certification of a settlement class is appropriate when the proposed class and the proposed

26  class representatives meet the four prerequisites of Rule 23(a): (1) numerosity; (2) common

27  questions of law or fact; (3) typicality; and (4) fair and adequate representation of the class. *See*

28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

1  Fed R. Civ. P. 23(a).

2             1.      <u>Fed R. Civ. P. 23(a)(1) – Numerosity</u>

3        The first prerequisite for certifying a class is that "the class is no numerous that joinder of

4  all members is impracticable." Fed R. Civ. P. 23(a)(1). In this case, IPPs seek to certify a class of

5  all individuals or entities who purchased one or more capacitors manufactured by a Defendant

6  from a distributor in the United States. There are likely hundreds of thousands of class members,

7  such that joinder of all is impracticable. "Impracticable does not mean impossible, only that it

8  would be difficult or inconvenient to join all members of the class." *Hodges v. Akeena Solar, Inc.*,

9  274 F.R.D. 259, 266 (N.D. Cal. 2011). Therefore, the first prerequisite of Rule 23(a) is met.

10             2.      <u>Fed R. Civ. P. 23(a)(2) – Common Questions of Law or Fact</u>

11        The second prerequisite for certifying a class is that "there are questions of law or fact

12  common to the class."  Fed. R. Civ. P. 23(a)(2). In a horizontal price-fixing antitrust case such as

13  this, common questions of law and fact predominate since the core issue in such a case is whether

14  or not there was a conspiracy amongst conspirators to fix, raise, maintain and/or stabilize prices

15  and whether such price-fixing occurred. "[T]he great weight of authority suggests that the

16  dominant issues in cases like this are whether the charged conspiracy existed and whether price-

17  fixing occurred."  *In re Rubber Chemls. Antitrust Litig.*, 232 F.R.D. 346, 352 (N.D. Cal. 2005).

18  Courts have consistently held that  "[c]ommon issues predominate in proving an antitrust violation

19  'when the focus is on the defendants' conduct and not on the conduct of the individual class

20  members.'" *In re Dynamic Random Access Memory Antitrust Litig.,* 2006 U.S. Dist. LEXIS 39841,

21  *39 (N.D. Cal. June 5, 2006).

22         In this case, common questions of fact and law predominate over individual questions.

23  IPPs have alleged that Defendants engaged in a joint conspiracy to fix, raise, maintain and/or

24  stabilize the price of capacitors. The common questions of fact or law facing the Court are whether

25  the Defendants in fact entered into an illegal agreement to fix, raise, maintain and/or stabilize the

26  price of capacitors; whether that antitrust conspiracy did, in fact, result in the artificial inflation of

27  the price of capacitors; and whether those overcharges were passed on to the class.  "[B]ecause the

28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

gravamen of a price-fixing claim is that the price in a given market is artificially high, there is a presumption that an illegal price-fixing scheme impacts upon all purchasers of a price-fixed product in a conspiratorially affected market." *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 695 (D. Minn. 1995). The second prerequisite of Rule 23(a) is met.

### 3.    Fed R. Civ. P. 23(a)(3) – Typicality

The third prerequisite for certifying a class is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]ypicality results if the representative plaintiffs' claims 'arise[ ] from the same event, practice or course of conduct that gives rise to the claims of the absent class members and if their claims are based on the same legal or remedial theory.'" *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143-RS, 2016 U.S. Dist. LEXIS 15899, * 73-74 (N.D. Cal. February 8, 2016), *citing In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 164 (S.D.N.Y. 2000). Typicality is easily satisfied in cases involving horizontal price-fixing because "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish Antitrust Litig.*, 826 F.Supp. 1019, 1035 (N.D. Miss. 1993).

In this case, IPPs have brought a lawsuit on a classwide basis for all individuals and entities in the United States who purchased one or more capacitors from a distributor that was manufactured by Defendants, including a class for purchasers of electrolytic capacitors and a class for purchasers of film capacitors. The theory of IPPs' case is that the Defendants illegally fixed, raised, maintained and/or stabilized the price of capacitors and that the artificially inflated prices charged by Defendants for their capacitors affected the price paid by indirect purchasers of capacitors in the United States. All class representatives purchased one or more capacitors from a distributor that was manufactured by Defendants. They allegedly suffered the same harm as other absent class members in the form of paying inflated prices. The class representatives are seeking damages under the same legal theories as absent class members. Since the class representatives' claims are typical of the members of the class, the third prerequisite of Rule 23(a) is met.

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

4.   <u>Fed R. Civ. P. 23(a)(4) – Fair and Adequate Class Representation</u>

The fourth prerequisite for certifying a class is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. In this case, the interests of the class representatives and their counsel are completely aligned with the interests of the absent class members. The class representatives suffered the same injury as the absent class members in that they paid artificially inflated prices for capacitors in the United States. IPPs' counsel also has the same interest in proving that Defendants engaged in an illegal antitrust conspiracy which resulted in the artificial inflation of the price of capacitors. The vigor with which the class representatives and their counsel have prosecuted this case is well documented in the docket of this case. IPPs have expended considerable time, energy and resources in gathering evidence in support of their case and in contesting Defendants' efforts to dismiss or minimize their case, much of which is documented in the over 1200 docket entries in this case. The fourth prerequisite of Rule 23(a) is met.

5.   <u>All Requirements of Rule 23(b) Are Met In This Case.</u>

Once the prerequisites of Rule 23(a) are met, a class action may be maintained if one or more of the factors set forth in Rule 23(b) is met as well. A class action may be maintained if prosecuting separate actions by individual members would create a risk of: (1) inconsistent or varying adjudication of claims, or (2) adjudication with respect to individual class members would dispose of the claims of those within the class who are not part of the litigation or would substantial impair or impede their right to protect their interests. Fed R. Civ. P. 23(b)(1). A class action is also warranted if common questions of law or fact predominate such that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The requirements of Rule 23(b) are met. IPPs have alleged a horizontal price-fixing

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

conspiracy of capacitors that is nationwide in scope. *See* Fourth Consolidated Complaint, ¶¶ 2, 369. Multiple individual actions relating to the nature and scope of the Defendants' price-fixing conspiracy of capacitors creates a high risk of inconsistent and varying adjudication of claims. Fed. R. Civ. P. 23(b)(1). In addition, IPPs in this case allege that Defendants have engaged in actions that apply generally to the entire class in that Defendants have conspired to illegally fix, raise, maintain and/or stabilize the price of capacitors such that individuals and entities in the United States are paying an inflated price for such capacitors. *Id.* at ¶ 369.

Finally, as set forth above, common questions of law or fact predominate in this case. "[I]f common questions are found to predominate in an antitrust action, . . . courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied." *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 291, 314 (N.D. Cal. 2010). In determining whether a class action is the superior method for adjudicating a controversy, courts look to: "(1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *In re High-Tech Emple. Antitrust Litig.*, 985 F.Supp.2d 1167, 1227 (N.D. Cal. 2013).

In this case, IPPs have alleged an antitrust conspiracy that affects individuals and entities throughout the United States. *See* Fourth Consolidated Complaint, ¶¶ 2, 369. The damages of each individual class member are generally too small to warrant bringing an individual lawsuit but the total damages in aggregate for the class members is significant. "'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.' In antitrust cases such as this, the damages of individual indirect purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress." *In re Static Random Access Memory Antitrust Litig.*, 264 F.R.D. 603, 615 (N.D. Cal. 2009) *quoting Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Given these facts, a

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**

1    class action is clearly superior to alternative methods of adjudicating this controversy.

2        **D.      This Court Should Appoint Interim Class Counsel as Settlement Class**

3        **Counsel.**

4            Under Rule 23(g)(1), when certifying a class, including for settlement purposes, the Court

5    should appoint class counsel. In deciding who to appoint as class counsel, this Court is required to

6    evaluate: (1) the work counsel has done in identifying or investigating claims in the action; (2)

7    counsel's experience in handling class actions, other complex litigation, and the types of claims

8    asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that

9    counsel will commit to representing the class. CPM is recognized as one of the top litigation firms

10   in the United States, and its antitrust team is recognized as experts in the field. In this case,

11   however, the skill and ability of CPM is not theoretical. This Court has had the opportunity to

12   personally observe CPM's litigation skill and knowledge of antitrust law, as well as the resources

13   that CPM has committed to this case. CPM meets and exceeds the requirements for appointment as

14   Class Counsel for these Settlements.

15                                    **V.   CONCLUSION**

16           Plaintiffs respectfully request that this Court enter an order: (1) preliminarily approving the

17   proposed Settlements and (2) appointing Cotchett, Pitre & McCarthy LLP as Settlement Class

18   Counsel. With the Settlements, Plaintiffs have ensured a base recovery to the class members of

19   US$14.95 million, with the potential for even larger recoveries against the other defendants. The

20   cooperation from the three Settling Defendants will assist Plaintiffs in obtaining further settlements

21   for class members. The Settlements are fair, reasonable and adequate and were reached after hard-

22   fought, arms-length negotiations. Since the Settlements fall within the range of possible approval,

23   preliminary approval of the Settlements should be granted.

24   Dated:  October 6, 2016                      Respectfully submitted,

25                                                **COTCHETT, PITRE & McCARTHY LLP**

26                                          By:    _/s/ Steven N. Williams_
                                                  Steven N. Williams

27                                          *Interim Lead Counsel for the Putative Indirect*
28                                          *Purchaser Class*

15

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO, AND OKAYA**