Pages 1 - 21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO, JUDGE

IN RE:  CAPACITORS ANTITRUST    )
LITIGATION.                     )
                                )  **No. C 14-03264 JD**
_____ )

                                   San Francisco, California
                                   Friday, October 14, 2016

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs Direct Purchasers, Chip-Tech, Ltd., and
Dependable Component Supply Corporation:
                         JOSEPH SAVERI LAW FIRM
                         505 Montgomery Street - Suite 625
                         San Francisco, California  94111
                 BY:  **JOSEPH R. SAVERI, ATTORNEY AT LAW**
                      **ANDREW MICHAEL PURDY, ATTORNEY AT LAW**
                      **JAMES DALLAL, ATTORNEY AT LAW**


For Plaintiffs Indirect Purchasers, Toy-Knowlogy, Inc., and CAE
Sound:
                         COTCHETT, PITRE & MCCARTHY LLP
                         San Francisco Airport Office Center
                         840 Malcolm Road
                         Burlingame, California  94010
                 BY:  **STEVEN N. WILLIAMS, ATTORNEY AT LAW**
                      **ADAM J. ZAPALA, ATTORNEY AT LAW**


          **(APPEARANCES CONTINUED ON FOLLOWING PAGES)**

REPORTED BY:  Katherine Powell Sullivan, CSR #5812, RMR, CRR
              Official Reporter

**APPEARANCES**:   (CONTINUED)

For Defendant Rohm Co., Ltd.:

    O'Melveny & Myers LLP
    Two Embarcadero Center, 28th Floor
    San Francisco, California 94111-3305
    BY: **MEGAN LOUISE HAVSTAD, ATTORNEY AT LAW**

For Defendants Okaya Electric America, Inc., and Okaya Electric Industries Company, Ltd.:

    BAKER & MCKENZIE LLP
    452 Fifth Avenue
    New York, New York  10018
    BY: **DARRELL PRESCOTT, ATTORNEY AT LAW**

For Defendant Fujitsu Limited:

    MORRISON & FOERSTER
    2000 Pennsylvania Avenue NW
    Suite 6000
    Washington, DC 20006
    BY: **JEFFREY A. JAECKEL, ATTORNEY AT LAW**

For Defendant Nitsuko Electronics Corporation:

    LATHAM & WATKINS
    505 Montgomery Street, Suite 1900
    San Francisco, California  94111
    BY: **ASHLEY MARIE BAUER, ATTORNEY AT LAW**

For Defendant NEC Tokin Corporation:

    GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street, Suite 3000
    San Francisco, California  94105
    BY: **GEORGE A NICOUD, III, ATTORNEY AT LAW**

```
 1   Friday, October 14, 2016                        10:07 a.m.

 2                       P-R-O-C-E-E-D-I-N-G-S

 3                           ---000---

 4         THE CLERK:  Calling civil 14-3264, In Re Capacitors

 5   Antitrust Litigation.

 6       Counsel.

 7         MR. SAVERI:  Good morning, Your Honor.  Joseph Saveri

 8   on behalf of the direct purchaser plaintiffs.

 9         MR. WILLIAMS:  Good morning, Your Honor.

10   Steve Williams on behalf of the indirect purchaser plaintiffs.

11         MS. BAUER:  Good morning, Your Honor.  Ashley Bauer

12   for defendant Nitsuko Electronics.

13         MR. PRESCOTT:  Good morning.  Darryl Prescott for the

14   Okaya defendants.

15         MS. HAVSTAD:  Megan Havstad on behalf of the Rohm

16   defendants.

17         MR. NICOUD:  Trey Nicoud on behalf of the NEC Tokin

18   defendants.

19         THE COURT:  Okay.

20         MR. JAECKEL:  Good morning, Your Honor.  Jeff Jaeckel

21   on behalf of Fujitsu Limited.

22         THE COURT:  Good morning.

23       All right.  Mr. Williams and Mr. Saveri, I have a couple

24   of questions.

25         MR. SAVERI:  Yep.
```

1     **THE COURT:**  So the scope of the release -- I'm just

2  going to go through them in my order -- seems broad.

3     So remember we had the consumers come in downstream.  The

4  release is not going to compromise their claims in any way; is

5  that right?

6     **MR. SAVERI:**  The consumers?

7     **THE COURT:**  The people who bought goods that had the

8  capacitors incorporated in them.

9     **MR. SAVERI:**  No.  Our -- our -- our clients, our class

10  bought Capacitors.

11     **THE COURT:**  No, no, I know.

12     The scope of the release is not releasing any consumer

13  claims, any downstream purchaser claims; right?

14     **MR. SAVERI:**  No.

15     **THE COURT:**  It starts off saying any and all consumer

16  claims and anything else is released.  And then it has a

17  sentence in there that seems to take it back.

18     **MR. SAVERI:**  Yes.

19     **THE COURT:**  And I want you to confirm for me that

20  those people who bought an Apple phone that contains a

21  capacitor are not having their claims released; right?

22     **MR. SAVERI:**  I can confirm that.

23     **THE COURT:**  Mr. Williams?

24     **MR. WILLIAMS:**  Confirm that as well, Your Honor.

25     **THE COURT:**  That's the same for all -- I only looked

 1     at one or two of them.  It's the same for all of them; right?

 2          **MR. SAVERI:**  Yes, Your Honor.

 3          **THE COURT:**  Okay.  Now, the other thing that I'm not

 4     clear about is if a class member does not get a check and

 5     cashes it, are they considered to be releasing their claims?

 6     Are they bound by the release?

 7          **MR. SAVERI:**  Your Honor, yes, unless they've opted

 8     out.

 9          **THE COURT:**  All right.  I disfavor that.

10          **MR. SAVERI:**  Okay.

11          **THE COURT:**  If you didn't get paid, you don't give a

12     release.  There are no free releases.  So you're going to have

13     to rework that; all right?

14          **MR. SAVERI:**  Your Honor, let me make sure I understood

15     your question.

16        A class -- there's a member of the class.  They don't opt

17     out.  They do not file a claim form, so they don't participate

18     in the distribution of settlement proceeds.

19        My reading of the way it's drafted right now is that the

20     claims of those individuals -- I mean, for the direct

21     purchasers who would have received notice, elected not to

22     participate in the claims program, would be released by -- by

23     the release.

24          **THE COURT:**  Well, you're packing a lot of assumptions

25     in there.  They chose -- they got notice.  They chose not to

1  exercise their claims.

2       **MR. SAVERI:**  Yes.

3       **THE COURT:**  I'm not going to live with those

4  assumptions.  I have a simpler rule, and that is if there is a

5  class member and for some reason they don't get notice, or if

6  they did get notice they didn't respond, whatever, no release,

7  and they don't cash a check, all right, they've got to have

8  money in their pocket before I'm going to say they released

9  their claims.  All right?

10      **MR. SAVERI:**  I understand that.

11      **THE COURT:**  That's what I'm saying.  So if it's not in

12  there, you need to have it in there, because that's what I

13  want.

14      **MR. SAVERI:**  Okay.  Your Honor, I hear you.  I just

15  wanted to make sure that we were on the same page.

16      **THE COURT:**  Yes.

17      **MR. SAVERI:**  So, for example, a class member -- this

18  hypothetical -- submits a claim form pursuant to the settlement

19  procedure, received -- is sent a check, is transmitted a check

20  but it never gets cashed, would --

21      **THE COURT:**  It gets lost, somebody spills coffee on

22  it, somebody embezzles it, yes, they're not going to give up

23  their -- they're not going to be included in the release if

24  they don't get some money, okay.

25      **MR. SAVERI:**  Yeah.

1    **THE COURT:**  There are no free -- let's make it simple.

2    There are no free releases.  You opt out, fine.

3    **MR. SAVERI:**  Yes.

4    **THE COURT:**  If they send you a letter saying, we hate

5    class actions -- and this happens every so often -- we don't

6    like you, we don't want to be part of this thing, deem it an

7    opt-out, whatever, that's fine.  Okay.  But if there's any

8    mystery, maybe the notice got there, maybe it didn't; maybe

9    they got a check, maybe they didn't, the bottom line is if you

10   can't show me that they got money, I'm not going to have them

11   be released, okay.  I want you to build that in there.

12      Let me ease into this.  You need to do some work for me to

13   consider the next step of approval.  That's Project A.

14   **MR. SAVERI:**  I understand, Your Honor.

15   **THE COURT:**  Project B is this:  Now, I am mystified

16   about how you're handling fees.  Now, both of you say you're

17   not asking for fees at this time.  One of you, I think

18   Mr. Saveri, you want some costs and expenses paid.

19   **MR. SAVERI:**  Correct.

20   **THE COURT:**  A hefty chunk, about 23 percent of the

21   settlement amount.

22   **MR. SAVERI:**  Yes, Your Honor.

23   **THE COURT:**  Mr. Williams, you're okay.  You don't need

24   that?

25   **MR. WILLIAMS:**  Your Honor, we've indicated we may,

1  before final approval, request 10 percent for costs incurred to

2  date.  And if we do, we will file those motions.

3        **THE COURT:**  That's 10 percent on top of what the DPPs

4  want?

5        **MR. WILLIAMS:**  Well, it's a separate fund.  Their fund

6  is separate and distinct from ours.

7        **THE COURT:**  That's right.  Okay.

8     Now, what are you going to do about fees?  I mean, I

9  can't -- you-all want me to approve these finally in May;

10  right?  You want final approval in May.

11    I can't finally approve something when the class doesn't

12  even know how much the lawyer is going to be taking it out for

13  fees.

14    What are they going to object to?  What if you come in and

15  say, after approval, now we want 80 percent of the fund for

16  fees?  I mean, putative class members or the certified class

17  members should know that before the final approval happens.

18        **MR. WILLIAMS:**  Your Honor, we are not seeking fees

19  now.  We don't intend to seek fees before final approval of the

20  settlements.  And at the time we do seek fees, we intend to

21  give notice to all class members so that they have an

22  opportunity to be heard and to object at that time.

23    And nothing comes out of any of the settlement funds for

24  attorneys' fees until that notice/opportunity to be heard and

25  Your Honor considers it.

1          **THE COURT:**  You're going to wait until the end of the

2     case, basically, and do a single fee motion; is that right?

3          **MR. WILLIAMS:**  At this time, that is our intention.

4          **THE COURT:**  And then you're going to have these little

5     pots.  Let's say you have six separate settlement pots.  You're

6     just going to dip into those and say our fees are a hundred

7     million.  I'm just guessing.  Just a simple figure, all right.

8     Fees are a hundred million, and we're going to allocate them in

9     the following fashion to each of these settlement pots.

10          **MR. WILLIAMS:**  That's how we would do it, Your Honor.

11          **MR. SAVERI:**  I have a slightly different answer to

12     that question, Your Honor.

13          **THE COURT:**  Come a little closer, please.  I can't

14     hear you.

15          **MR. SAVERI:**  Your Honor, I have a slightly

16     different -- I have a different answer to that question.

17          We think it's reasonably likely that there will be

18     additional settlements.  So there will be sequential series of

19     settlements.  Depending on when those settlements are reached,

20     and the amounts of those settlements, we would anticipate that

21     we would make an application for fees at the time of a

22     subsequent settlement.

23          We would not ask -- consistent with what Mr. Williams

24     said, we would not ask for any fees without notice to the class

25     and an opportunity to object to the fees that are requested.

1       So we anticipate that there may be interim sequential

2   settlements and that we, in connection with those, would be

3   making an application for fees.

4       The notice that would be given at that time --

5         **THE COURT:**  I just -- let me just jump in.

6       I don't understand.  I mean, how can I give final approval

7   to this settlement but say, at the same time, there's a big

8   black box about fees?  I don't know when they're going to be

9   asked for.  I don't know who's going to ask for them.  And I

10  don't know how much, but I'm finally approving this.

11      I'm not comfortable with that.

12      **MR. SAVERI:**  And consistent with what has been done in

13  other cases, the notice of these settlements would go to the

14  class, if you approve it.

15      We have stated that our intent is to ask for reimbursement

16  of costs up to $7 1/2 million.  The class members would know

17  that.  That would be all that would be coming out of this

18  settlement, pursuant to this notice.

19      And the release has been negotiated.  The settlement can

20  be finalized, and judgment can be entered with respect to

21  this --

22        **THE COURT:**  If you're telling me you're not asking for

23  any fees with respect to this settlement tranche, then we're

24  fine.  Is that what you're saying?

25      **MR. SAVERI:**  Well, Your Honor, I think that that is

1 correct with respect to this tranche.

2   **THE COURT:**  All right.  That's fine.  If you're

3 foregoing fees for this tranche, that's fine.  That makes life

4 easy.  That resolves my concern.

5  Mr. Williams, I think, is not willing --

6   **MR. WILLIAMS:**  That is not consistent with what we

7 intend to do.  We do intend to seek, at a later point, probably

8 at the end of the case, an award of attorneys' fees from these

9 settlements.  But, again, not until notice is given to the

10 class.

11   **THE COURT:**  Well, I appreciate what you're saying,

12 okay.  But here's my problem:  Once I give final approval, I

13 have certified the class.  The class has had the opt-out period

14 come and gone.

15  It is conceivable, as you know, that someone could look at

16 this and say, "This looks great," and say, "Count me in."  And

17 then they get a bill from Mr. Williams for 25 percent of the

18 settlement and they say, "This is outrageous.  Count me out."

19 They can't be counted out at that point.  They're already

20 bound.

21   **MR. WILLIAMS:**  Your Honor, I understand your concern.

22 And I think that the only way, then, to feasibly address it

23 would be for us to seek fees now so that the entirety of these

24 settlements and all issues concerning them are told to the

25 class, and they can speak --

1          **THE COURT:**  That would be my preference.

2          **MR. WILLIAMS:**  That is --

3          **THE COURT:**  Now, before we do that, is there some

4      reason why that doesn't work for you?

5          **MR. WILLIAMS:**  There's no reason why it doesn't work,

6      Your Honor.

7          Customarily, we actually carry that risk until later in

8      the case.  And I think one of the rationales is so that, given

9      that it is a joint and several case, and the money goes into a

10     collective pot, that we tend to think that until the class

11     knows the total recovery, it is more challenging to put out a

12     percentage and say that's a fair and reasonable award for

13     attorneys' fees.

14         **THE COURT:**  Well, but this 32.5 million is going to be

15     distributed while the case is pending.  There's no -- right?  I

16     mean, the claims are going to be made --

17         **MR. SAVERI:**  Excuse me, Your Honor.  It's my

18     32.5 million.  It's the direct purchasers.

19         **THE COURT:**  It's going to be claimed while the case is

20     going on.

21         **MR. SAVERI:**  We have not -- there are two ways of

22     doing this.  We could wait until the very end of the case,

23     after all the settlements are in and make one -- one single

24     settlement distribution.  And that's certainly done in probably

25     the great majority of cases.

1        But in a number of antitrust cases in situations like

2    this, there are interim distributions done at the time when

3    it's economically feasible, when there's enough money sitting

4    in a pot and the settlement -- you know, the administrative

5    expenses aren't -- are -- the economies of scale are there so

6    that it makes sense to do it.

7        So we would anticipate, depending on what happens, that

8    we -- if we want to make an interim distribution, because we do

9    think it's important to get money to the class members as soon

10   as economically feasible, that we would come back in here and

11   say we've -- our pot is big enough, it makes economic sense to

12   distribute it, and we should have an interim distribution.

13       If you're not comfortable with that, Your Honor, we can

14   wait until the end.

15           **THE COURT:**  Well, look.  I am fine.  But I want it to

16   be consistent.

17       So if we're going to treat these tranches as little

18   mini -- total mini settlements or subgroup settlements, then

19   let's get it all done at the same time.  Get the fees done.  I

20   want it all upfront for the class members.

21           **MR. SAVERI:**  Your Honor --

22           **THE COURT:**  You have a 32.5 million pot.  You may have

23   more later.  We're just dealing with this pot.  Here are the

24   requests for the fees.  Here is the request for the expenses.

25   Here's the opt-out time.  What do you want to do?

1      **MR. SAVERI:**  And, Your Honor, I'm completely

2   comfortable proceeding with that.

3      **THE COURT:**  I would prefer to do that.

4      Now, if you're telling me you're going to have three or

5   four or five of these deals, and you don't want to have to send

6   out three or four or five rounds of notice because it adds

7   $300,000 to expense that comes out of the class pockets, then

8   we can talk about that.

9      **MR. SAVERI:**  Your Honor, excuse me.  I don't mean to

10   interrupt you.

11      Those are issues, frankly, that we need to consider.

12   Frankly, I know in the direct purchaser case, because our class

13   is smaller and we can proceed with notice, the cost to us of

14   notice of incremental settlements is different than for --

15      **THE COURT:**  Somebody said it's 200 grand for this

16   first round of notices.

17      **MR. SAVERI:**  I think we're going to come in a lot

18   lower than that.

19      **THE COURT:**  That's not insignificant.

20      **MR. SAVERI:**  And that's true.  We wanted to give

21   ourselves enough room to do it correctly.  But we anticipate

22   less, frankly, Your Honor.

23      **THE COURT:**  You do?

24      **MR. SAVERI:**  We do.

25      **THE COURT:**  Mr. Williams has a different --

1        **MR. WILLIAMS:**  Your Honor, in our case, while we have

2   direct mail information for some class members, because the

3   class members don't deal directly with the defendants, we can't

4   be certain that we have all of that.

5        And we think for that reason, in this type of case, we

6   need to do some forms of publication and internet notice.  And

7   that's why our notice costs more than the direct.  And that's

8   typically how, in these cases, it works, because these

9   defendants have that information for the direct purchasers.

10       **THE COURT:**  Well, that makes sense.  So you are going

11  to arrange that today.  I want you to -- and talk with your

12  defense people, the colleagues on the defense side, to the

13  extent you need to.  You may not need to.  This is mainly for

14  you.  I want a master plan, okay?

15       **MR. SAVERI:**  Okay.

16       **THE COURT:**  Just tell me how you want to do this.  I

17  am fully supportive of settlements along the way.  There is no

18  problem with that.  I just want these details to be thought

19  through so we're all on the same page.  You have a roadmap.

20       Sounds to me like you two are not, you know, at each

21  other's throats, but you're not in full agreement about the

22  pacing of distributions and how to handle fee requests and so

23  on.  I'm sure they are easily solvable problems.

24       But I would prefer a detailed roadmap on how we're going

25  to do this, starting now, going forward.  So that's the macro

1    project.

2         **MR. SAVERI:**  May I?

3         **THE COURT:**  Yes.

4         **MR. SAVERI:**  May I ask two questions?

5         **THE COURT:**  Of course.

6         **MR. SAVERI:**  First, I think that makes a lot of sense.

7    We're certainly comfortable with making interim fee

8    applications based on the settlements as they come forward.  It

9    is certainly the case, because of the different economics or

10   the structure of the classes, that Mr. Williams and I may have

11   different views about when it's appropriate economically for

12   the benefit of the people we represent separately to give

13   notice to do a settlement distribution.

14       So I want to be clear that I anticipate that there's

15   not -- there won't be exact congruence between the two of us.

16   We have different economic realities.

17       **THE COURT:**  I understand.  And that's perfectly fine.

18   And we will reason together.

19       All I want is a practical easy-to-administer plan that is

20   totally transparent and totally fair to potential class

21   members, okay.

22       I don't want any downstream surprises.  I don't want any

23   asterisks saying, this is the amount you're going to receive,

24   subject to some mysterious fees proceedings at some date in the

25   future.  I want it to be all above board so they get it, okay.

1    And also, so you know and everybody else knows, next time

2    you come in, it's a 10-minute proceeding maybe, if everything

3    else looks good, and we don't have to say, How are we going to

4    do this one?

5        **MR. SAVERI:**  Yes.

6        **THE COURT:**  Just a good organizing plan.

7        **MR. SAVERI:**  Yes.

8        **THE COURT:**  Now, I want that other point addressed.

9    The other question I have is, nothing is ever going back

10   to the defendants in terms of reversion; right?

11       **MR. SAVERI:**  That's absolutely true, Your Honor.

12       **THE COURT:**  In a case like this, I can't imagine there

13   would be much left over for anything; right?

14       **MR. SAVERI:**  My experience, at least in the direct

15   purchaser cases, is class members like receiving the checks,

16   and they cash them.

17       **THE COURT:**  Yeah.  And if they have any left over, you

18   give them another round; right?

19       **MR. SAVERI:**  And we just keep doing it until it's

20   basically done.  And we usually get to zero.

21       **THE COURT:**  Okay.  I think cy près under the current

22   Ninth Circuit laws would be hard to do in this case.

23   Is there a fund for lonely capacitors or --

24       **MR. SAVERI:**  We are not going to contribute to the

25   benevolence society of capacitor users or manufacturers.

1          THE COURT:  Okay.

2      All right.  So those were my main issues.  Anything else
3  you want to talk about?

4          MR. SAVERI:  No, Your Honor.

5          THE COURT:  Mr. Williams?

6          MR. WILLIAMS:  No, Your Honor.  I think we will get
7  together with the defendants and have --

8          THE COURT:  I can have you back in, in a week or two
9  if you want.  So don't, you know -- you just get it done when
10  you get it done, and we can come back in on another Friday.

11      Are Fridays okay?

12          MR. SAVERI:  Can I suggest we come back in a week?

13          THE COURT:  Next week I'm actually out.  I could do
14  the 28th.

15          MR. SAVERI:  I'm hesitating because I have, basically,
16  the first phase of a trial in San Diego starting.  I think
17  we're dark.

18      Your Honor, I'm almost positive that the judge is going to
19  be dark on that Friday, so I think it works.

20          THE COURT:  You're in trial then?

21          MR. SAVERI:  Yes.

22          THE COURT:  You shouldn't -- when does that trial
23  start?

24          MR. SAVERI:  The first phase starts Monday the 24th.
25  And the first phase is three weeks.  And then we come back in

1  January for the second.  But --

2          **THE COURT:**  Is this the Southern District?

3          **MR. SAVERI:**  No.  It's, frankly, my last pre-CAFA case

4  in San Diego Superior Court.

5          **THE COURT:**  Who do you have?  Who's your judge?

6          **MR. SAVERI:**  Judge Styn.

7      Given CAFA, frankly, Your Honor, it's a little bit unusual

8  to be back in state court.  And no offense, but in some ways I

9  miss it.

10          **THE COURT:**  I don't.

11      (Laughter)

12          **THE COURT:**  We can reasonably differ on that.

13          **MR. SAVERI:**  I can understand a different point of

14  view on that, Your Honor.

15          **THE COURT:**  One of my last cases before I took the

16  bench was in San Diego Superior.

17      Okay.

18          **MR. SAVERI:**  I have some interest in trying to move

19  this along.  That's why I'm willing to --

20          **THE COURT:**  No, I know.

21      I'm trying to get some date advice.  I know I can't do

22  next Thursday and Friday.  We have court business that takes up

23  both days.

24      There's no way you're going to get it done by Wednesday, I

25  don't think.

```
 1           MR. SAVERI:  If not then, Your Honor, then I'll
 2   probably -- if my schedule is driving, it's going to be the
 3   middle of November.  Maybe that's -- maybe that's okay.  Maybe
 4   that's okay.
 5           MR. WILLIAMS:  And I would note, we did notice ours
 6   originally for November 10.
 7           THE COURT:  I can do 11/4.  You're still going to be
 8   in trial.
 9           MR. SAVERI:  I'll take it, Your Honor.  I'm going to
10   make it work.
11           THE COURT:  Do you want to fly up that morning?
12           MR. SAVERI:  I actually think we'll be done by then.
13   That will work.
14           THE COURT:  You'll be done by then?
15           MR. SAVERI:  Yeah.
16           THE COURT:  Okay.  Just to be safe, why don't we do
17   11:00 a.m. on November 4th?
18           MR. SAVERI:  Thank you, Your Honor.
19           THE COURT:  Now, get that to me at least a week ahead
20   of time.
21           MR. SAVERI:  Yes.
22           THE COURT:  All right.  That will be great.
23           MR. WILLIAMS:  I'm sorry, Your Honor, I --
24           THE COURT:  Can't do that?
25           MR. WILLIAMS:  I apologize.  I just realized I'm in
```

1  the Eastern District of New York for a final approval hearing

2  on 11/4.

3          **THE COURT:**  Can somebody else maybe --

4          **MR. WILLIAMS:**  It's myself and Mr. Zapala, and we're

5  both at that hearing.

6          **MR. SAVERI:**  I'm happy to try to accommodate

7  Mr. Williams' schedule.

8          **THE COURT:**  Then it's 11/10, as regularly noticed.

9          **MR. SAVERI:**  That's when it was noticed.  We just came

10  back to it, so that's fine, Your Honor.

11          **THE COURT:**  Well, this is still productive.  We had

12  the discussion now rather than 11/10, taking you in December.

13          **MR. SAVERI:**  I think this made a lot of sense to at

14  least have this preliminary kind of discussion.

15          **THE COURT:**  Defendants, anything?

16          **MS. BAUER:**  Is that 11/10, Your Honor, at 11:00 a.m.?

17          **THE COURT:**  No.  That is the regular Thursday

18  calendar.

19      Okay.  Anything else I can help you with?

20          **MR. SAVERI:**  Not today, Your Honor.

21          **THE COURT:**  Defendants?  No.  Okay.  Thank you.

22          **MR. WILLIAMS:**  Thank you.

23          **MR. SAVERI:**  Thank you, Your Honor.

24      (At 10:28 a.m. the proceedings were adjourned.)

25                 -  -  -  -

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:   Friday, October 14, 2016



_____

Katherine Powell Sullivan, CSR #5812, RMR, CRR
U.S. Court Reporter