1  GIBSON, DUNN & CRUTCHER LLP
   GEORGE A. NICOUD III, SBN 106111
2     tnicoud@gibsondunn.com
   555 Mission Street
3  San Francisco, CA 94105-0921
   Telephone: 415.393.8200
4  Facsimile:  415.393.8306

5  GIBSON, DUNN & CRUTCHER LLP
   MATTHEW PARROTT, SBN 302731
6     mparrott@gibsondunn.com
   3161 Michelson Drive
7  Irvine, CA 92612-4412
   Telephone: 949.451.3800
8  Facsimile:  949.451.4220

9  *Attorneys for Defendants NEC TOKIN Corporation and
   NEC TOKIN America, Inc.*

10
   [Additional Counsel Listed on Signature Page]
11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13
                      SAN FRANCISCO DIVISION
14

15 | IN RE CAPACITORS ANTITRUST LITIGATION | CASE NO. 3:14-cv-03264-JD |
16 | THIS DOCUMENT RELATES TO: | **MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL OF SETTLEMENTS [DKT. NOS. 1298 AND 1305]** |
17 | DIRECT PURCHASER ACTIONS AND INDIRECT PURCHASER ACTIONS | |
18 | | |

19                                      Hearing date:  November 10, 2016
                                        Hearing time:  10:00 a.m.
20                                      Location:       Courtroom 11, 19th Floor

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT ....................................................................................................................... 3

I       Neither Rule 23(b)(3) Nor Due Process Requires Actual Notice. ............................... 3

II      Conditioning Releases on Cashing a Check Would Create an Impermissible
        Opt-In System, a "One-Way Intervention" Problem, and Discourage
        Settlement .......................................................................................................................... 9

        A.      Opt-In Systems Are Not Permitted for Rule 23(b)(3) Classes ........................... 9

        B.      In Practice, an Opt-In System Would Likely Resurrect the "One-Way
                Intervention" Problem the 1966 Amendments to Rule 23 Were
                Intended to Solve. .............................................................................................. 10

        C.      Conditioning Releases on the Cashing of Checks Would Impede
                Settlements of 23(b)(3) Class Actions. ............................................................. 11

III     The Court Must Scrutinize the Proposed Notice Plans, But Plaintiffs' Plans
        Are Robust and Comparable to Notice Plans Approved in Other 23(b)(3)
        Antitrust Class Actions. ................................................................................................. 13

CONCLUSION .................................................................................................................. 14

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackal v. Centennial Beauregard Cellular L.L.C.*,
  700 F.3d 212 (5th Cir. 2012)..................................................................................2, 9

*Am. Pipe & Const. Co. v. Utah*,
  414 U.S. 538 (1974)....................................................................................................10

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)......................................................................................................3

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  3:07-cv-05944-JST (N.D. Cal.)....................................................................................8

*Chao v. Aurora Loan Servs., LLC*,
  No. C 10-3118 SBA, 2014 WL 4421308 (N.D. Cal. Sept. 5, 2014)............................8

*In re Charles Schwab Corp. Securities Litigation*,
  No. C 08-01510 WHA, 2010 WL 4509718 (N.D. Cal. Nov. 1, 2010) .........................12

*Clark v. Universal Builders, Inc.*,
  501 F.2d 324 (7th Cir. 1974), *cert. denied*, 95 S. Ct. 657 (1974) ............................2, 10

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)....................................................................................11

*DeJulius v. New Eng. Health Care Emps. Pension Fund*,
  429 F.3d 935 (10th Cir. 2005)......................................................................................5

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  4:02-md-01486-PJH (N.D. Cal.)...................................................................................8

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)......................................................................................................5

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008)........................................................................................5

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litigation*,
  55 F.3d 768 (3d Cir.), *cert. denied sub nom.*
  *Gen. Motors Corp. v. French*, 116 S. Ct. 88 (1995) ..................................................11

*Juris v. Inamed Corp.*,
  685 F.3d 1294 (11th Cir. 2012)....................................................................................5

*Kakani v. Oracle Corp.*,
  No. C 06-06493 WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007)......................7, 8

Gibson, Dunn &
Crutcher LLP

*Kern v. Siemens Corp.*,
   393 F.3d 120 (2d Cir. 2004), *cert. denied*, 544 U.S. 1034 (2005) .............................................2, 10

*In re Lithium Ion Batteries Antitrust Litig.*,
   4:13-md-02420-YGR (N.D. Cal.) .........................................................................................8

*Moralez v. Whole Foods Mkt., Inc.*,
   897 F. Supp. 2d 987 (N.D. Cal. 2012) ...............................................................................5

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ..........................................................................................................5, 7

*Mullins v. Direct Dig., LLC*,
   795 F.3d 654 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1161 (2016) ..............................5, 8

*Myles: Lounibos v. Keypoint Government Solutions, Inc.*,
   No. 12-cv-00636-JST, 2013 WL 3752965 (N.D. Cal. July 12, 2013) ..............................6

*Myles v. AlliedBarton Sec. Servs., LLC*,
   No. 12-cv-05761-JD, 2014 WL 6065602 (N.D. Cal. Nov. 12, 2014) ..............................4

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   3:10-MD-02143-RS (N.D. Cal.) ........................................................................................8

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   3:10-MD-02143-RS (N.D. Cal.) ........................................................................................8

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ...........................................................................................................6

*Pey v. Wachovia Mortg. Corp.*,
   No. 11-2922 SC, 2011 WL 5573894 (N.D. Cal. Nov. 15, 2011) ....................................11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).............................................................................1, 5, 6, 7, 9

*Rannis v. Recchia*,
   380 Fed. App'x 646 (9th Cir. 2010).............................................................................2, 4, 5

*Schwarzschild v. Tse*,
   69 F.3d 293 (9th Cir. 1995), *cert. denied*, 517 U.S. 1121 (1996)..................................10

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994)...........................................................................1, 4, 5

*Silber v. Mabon*,
   957 F.2d 697 (9th Cir. 1992)...........................................................................................4

*In re Static Random Access Memory Antitrust Litig.*,
   4:07-md-01819-CW (N.D. Cal.) .......................................................................................8

Gibson, Dunn &
Crutcher LLP

ii

MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL
OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-cv-03264-JD

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    4:07-md-01819-CW (N.D. Cal. Apr. 15, 2010) ...................................................................13

*Stokes v. Interline Brands, Inc.*,
    No. 12-cv-05527-JD, 2014 WL 5826335 (N.D. Cal. Nov. 10, 2014) .........................................3, 4

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273, 339 (3d Cir. 2011)
    *cert. denied sub nom. Murray v. Sullivan*, 132 S. Ct. 1876 (2012).................................................12

*In re TFT-LCD Antitrust Litig.*,
    3:07-md-01827-SI (N.D. Cal.)........................................................................................................8

*Tijero v. Aaron Brothers*,
    No. C 10 01089 SBA, 2013 WL 60464 (N.D. Cal. Jan. 2, 2013).................................................6

*Villa v. S.F. Forty-Niners, Ltd.*,
    104 F. Supp. 3d 1017 (N.D. Cal. 2015) .......................................................................................10

**Rules**

Fed. R. Civ. P. 23(c)(2)(B)..........................................................................................1, 2, 3, 9, 10, 13, 14

Fed. R. Civ. P. 23(c)(2)(B)(v)-(vii)........................................................................................................1

Fed. R. Civ. P. 23(e)(1) .......................................................................................................................13

**Other Authorities**

Benjamin Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the
    Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 394–96 (1967)...................................9

U.S. Dist. Ct. for the N. Dist. of Calif., Procedural Guidance for Class Action
    Settlements, *available at*
    http://www.cand.uscourts.gov/ClassActionSettlementGuidance ...................................................13

Gibson, Dunn &
Crutcher LLP

iii

MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL
OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-cv-03264-JD

## INTRODUCTION

Defendants Fujitsu Limited, NEC TOKIN Corporation, NEC TOKIN America, Inc., Nitsuko Electronics Corporation, Okaya Electric Industries Co., Ltd., Okaya Electric America, Inc., ROHM Co., Ltd., and ROHM Semiconductor U.S.A., LLC (collectively, "Settling Defendants") respectfully submit this memorandum to respond to the Court's concerns with Direct Purchaser Plaintiffs' ("DPPs") Motion for Preliminary Approval of Class Action Settlement with Defendants Fujitsu Limited, NEC TOKIN, Nitsuko, the Okaya Defendants, and ROHM [Dkt. No. 1298] and Indirect Purchaser Plaintiffs' ("IPPs") Motions for Preliminary Approval of Settlements and Notice Program with Defendants NEC TOKIN, Nitsuko, and Okaya [Dkt. Nos. 1305, 1306].  During the October 14, 2016 preliminary approval hearing [Dkt. No. 1350] and in a minute order entered on October 17, 2016 [Dkt. No. 1348], the Court questioned (1) whether the proposed notices would be adequate if class counsel do not clearly describe the attorneys' fees they will be seeking from the settlement funds, and (2) whether the releases in the parties' settlement agreements should be effective if class members do not receive actual notice of the class settlements or do not cash the checks sent to them when the settlement proceeds are distributed.

As to the first issue, Settling Defendants agree that class members should have clear notice of the extent to which the settlement funds may be diminished by the payment of attorneys' fees or other costs.

As to the second issue, Settling Defendants respectfully submit that the Court should not condition approval of settlements with 23(b)(3) classes on a revision of the settlement agreements to provide that only those class members who receive actual notice and compensation will release their claims.  Rule 23 establishes a regime under which members of a 23(b)(3) class must receive "the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and then must timely exclude themselves from the class if they do not wish to be bound, Fed. R. Civ. P. 23(c)(2)(B)(v)-(vii).  The Ninth Circuit has expressly held that actual notice is not required before members of a 23(b)(3) class are bound.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) ("We do not believe that [*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)] changes the traditional standard for class notice from 'best practicable' to 'actually received' notice.  No Rule 23(b)(3) case has so

Gibson, Dunn & Crutcher LLP

1

MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-CV-03264-JD

construed *Shutts*."); *see also Rannis v. Recchia*, 380 Fed. App'x 646, 650 (9th Cir. 2010) (class members whose notice was returned as undeliverable and never re-mailed received "the best notice practicable under the circumstances" because the administrator sent notice by first-class mail to their last known addresses and performed skip trace searches on notices returned as undeliverable). Requiring that members of a 23(b)(3) settlement class must cash their checks before being bound would impermissibly convert the "opt-out" process established by Rule 23(c)(2)(B) into an "opt-in" process. *See Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 219 (5th Cir. 2012) (holding that it was an abuse of discretion to certify an opt-in class); *Kern v. Siemens Corp.*, 393 F.3d 120, 125 (2d Cir. 2004), *cert. denied*, 544 U.S. 1034 (2005); *see also Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir. 1974), *cert. denied*, 95 S. Ct. 657 (1974) (noting that "the requirement of an affirmative request for inclusion in the class is contrary to the express language of Rule 23(c)(2)(B)").

The Court may—indeed, must—scrutinize the proposed notice plans to determine whether they meet the requirement of being "the best notice that is practicable under the circumstances." But requiring the parties to modify their settlements to provide that class members' claims are not released unless they receive actual notice and cash a check would impermissibly convert Rule 23's "opt-out" process for 23(b)(3) class actions into an "opt-in" process, potentially lead to the "one-way intervention" problem the 1966 amendments to Rule 23 sought to eliminate, and discourage the settlement of 23(b)(3) class actions by making it much harder for the parties to predict how large the settlement class might be and therefore to agree on a settlement amount. Indeed, settling a 23(b)(3) class action on such an opt-in basis would require a settling defendant to accept the risk that it would pay substantial sums to a class, have only a small number of class members cash their checks, and then face a new class action brought by someone who did not cash his or her check on behalf of everyone else who did not cash their checks. Unless unclaimed funds reverted to the defendant (something that many courts understandably disfavor), the defendant could have paid out what it thought was a reasonable settlement amount, but still face basically the same exposure.

Gibson, Dunn &
Crutcher LLP

2

MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL
OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-cv-03264-JD

**STATEMENT OF FACTS**

On September 27, 2016, DPPs filed their motion for preliminary approval of settlements with the Fujitsu, NEC TOKIN, Nitsuko, Okaya, and ROHM defendants.  [Dkt. No. 1298.]  On October 6, 2016, IPPs filed their motions for preliminary approval of settlements with the NEC TOKIN, Nitsuko, and Okaya defendants and approval of notice program.  [Dkt. Nos. 1305, 1306.]  On October 14, 2016, the Court held a hearing on these motions.  At the hearing, the Court stated that "If you didn't get paid, you don't give a release," Transcript of Proceedings held on 10/14/16 at 5:11–12 [Dkt. No. 1350], and that "the bottom line is if you can't show me that they got money, I'm not going to have them be released, okay." *Id.* at 7:9-11.

On October 17, 2016, the Court entered a minute order, which states in part, "[t]he release as currently worded seems too broad.  The Court would prefer a release that makes clear that those class members who have not received notice of the settlement will not be deemed to have released any claims." [Dkt. No. 1348.]  The Court set a second hearing on the motions for November 10, 2016, and ordered that papers relevant to the hearing be filed one week prior to the hearing.  [Dkt. No. 1350 at 20:19–21:8.]  On November 4, 2016, the Court granted a one-day extension of the filing deadline. [Dkt. No. 1370.]

**ARGUMENT**

**I       Neither Rule 23(b)(3) Nor Due Process Requires Actual Notice.**

The Court's concerns about the potential for lack of actual notice and receipt of funds are understandable.  But the Supreme Court and the Advisory Committee on Rules considered these issues when crafting Rule 23.  It would have been easy enough to write Rule 23 to expressly require actual notice or to expressly require receipt of compensation before class members were bound. Rule 23 does neither.  Instead, it specifies that notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  This language strikes a balance that preserves litigants' due process rights while encouraging the pursuit of claims that, in the absence of Rule 23(b)(3) class actions, would not be pursued given the size of individual recovery. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

Gibson, Dunn &
Crutcher LLP

3
MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL
OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-CV-03264-JD

Settling Defendants recognize that this Court has twice denied motions for preliminary approval in part because the releases would have extinguished claims for individuals who did not receive actual notice of the settlement or any payment.  *See Stokes v. Interline Brands, Inc.*, No. 12-cv-05527-JD, 2014 WL 5826335, at *4 (N.D. Cal. Nov. 10, 2014) ("[T]he Court is very concerned about the intent to bind class members to the overbroad release even if they do not receive notice or a payment."); *Myles v. AlliedBarton Sec. Servs., LLC*, No. 12-cv-05761-JD, 2014 WL 6065602, at *3 (N.D. Cal. Nov. 12, 2014) (criticizing a "settlement [that] appears to extinguish the rights of all the putative class members, including those who do not get paid anything and may not even have received notice").  In both of those cases, however, the proposed releases sought to release Fair Labor Standards Act ("FLSA") claims, which as this Court recognized, "require an affirmative opt-in by written consent on the part of claimants, whereas Rule 23 . . . operates on an opt-out basis."  *Stokes*, 2014 WL 5826335, at *4; *see also Myles*, 2014 WL 6065602, at *3.  Further, the settlement in *Stokes* provided for the reversion of unclaimed settlement funds, 2014 WL 5826335, at *5, which exacerbates the impact of class members not receiving notice, not submitting claim forms, or not cashing checks.[1]  The special requirements for releasing FLSA claims likely explain why this Court's decisions in *Stokes* and *Myles* did not cite or reference the Ninth Circuit's decisions in *Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994), and *Rannis v. Recchia*, 380 Fed. App'x 646 (9th Cir. 2010).

*Silber* arose from a 23(b)(3) securities class action and a class member who did not receive notice until after the deadline for opting out had passed.  18 F.3d at 1450.  After learning about the class action, and before the settlement was approved and final judgment entered, the class member filed a motion with the district court requesting permission to opt out after the deadline.  *Id.* at 1452.  The district court denied the motion, approved the settlement, and entered final judgment.  *Id.*  The class member appealed, arguing that the notice procedures approved by the district court violated his due process rights and, in the alternative, that the district court abused its discretion in denying his motion to opt out late.  *Id.* at 1451.

---

[1]   The settlements proposed here do not provide for reversion of unclaimed settlement funds and the releases proposed here do not extend to FLSA claims.

Gibson, Dunn & Crutcher LLP

The Ninth Circuit remanded the case for the district court to assess whether the notice procedure was the "best practicable" under the circumstances.  *Silber v. Mabon*, 957 F.2d 697, 701–02 (9th Cir. 1992).  After the district court found that the notice was the "best practicable," the Ninth Circuit reached the question of whether due process requires actual notice.  *Silber*, 18 F.3d at 1451.  Reviewing the question *de novo*, the court considered whether the Supreme Court's decision in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), "requires that notice actually be received in order to afford an absent class member the opportunity to opt out."  *Id.* at 1453.  Explaining that the Supreme Court defined the notice obligation in *Shutts* by reference to its earlier decisions in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), and *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174–75 (1974), neither of which imposed a requirement of actual notice to satisfy due process, the Ninth Circuit held: "We do not believe that *Shutts* changes the traditional standard for class notice from 'best practicable' to 'actually received' notice.  No Rule 23(b)(3) case has so construed *Shutts*."  *Id.* at 1454.  The court remanded the case for the district court to determine whether the class member should have been allowed to opt out late.  *Id.* at 1455 (explaining that the court could not "conclude as a matter of law that there was no abuse of discretion" because the district court had failed to provide sufficient reasoning and to consider the appropriate factors).

In *Rannis*, an attorney who ran a credit repair company appealed the final approval of a settlement and the denial of his motion to decertify a 23(b)(3) class of twenty members on lack of numerosity grounds.  Thirteen class members received notice and did not opt out.  380 Fed. App'x at 650.  The notices sent by first-class mail to the last known addresses of seven other class members were returned as undeliverable and never re-mailed, but the class administrator did perform skip trace searches for those members.  *Id.*  Relying on *Silber*, and reviewing the due process issue *de novo*, the Ninth Circuit held that the seven members were properly included in the class.  *Id.* ("[D]ue process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice.").[2]

---

[2]   Other circuits agree that actual receipt of notice is not required by either due process or Rule 23.  *See, e.g.*, *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 665 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1161 (2016) (explaining that Rule 23 "recognizes it might be *impossible* to identify some class members for purposes of actual notice");  *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir.

Gibson, Dunn & Crutcher LLP

5

MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-CV-03264-JD

1   The facts in *Silber* and *Rannis* do not give rise to the same issues confronted by this Court in

2   *Stokes* and *Myles*, or in two earlier Northern District of California cases cited in *Stokes* and *Myles*:

3   *Lounibos v. Keypoint Government Solutions, Inc.*, No. 12-cv-00636-JST, 2013 WL 3752965, at *6

4   (N.D. Cal. July 12, 2013), and *Tijero v. Aaron Brothers*, No. C 10 01089 SBA, 2013 WL 60464, at

5   *7–11 (N.D. Cal. Jan. 2, 2013).  All of these cases concerned problematic settlements where

6   deficiencies in the settlement (including the proposed release of FLSA claims) were amplified by the

7   risk that class members might not receive notice.  Like *Tijero* and *Lounibos*, *Stokes* and *Myles* cited

8   *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999), for the proposition that absent class members

9   must receive notice and an opportunity to opt out before being bound.  *Ortiz* did not hold, however,

10  that actual notice is required for 23(b)(3) classes.  *See* 527 U.S. at 884.

11      *Ortiz* reversed the certification of a 23(b)(1) class, not a 23(b)(3) class.  527 U.S. at 830–31.

12  Further, nowhere did the *Ortiz* Court say that actual notice is required, even for a 23(b)(1) class.  The

13  portion of the opinion cited by *Tijero*, *Lounibos*, *Stokes*, and *Myles* merely recounted and quoted the

14  Court's earlier decision in *Shutts* for the propositions that before an absent class member's right of

15  action can be extinguished, due process requires that the class member "'receive notice plus an

16  opportunity to be heard and participate in the litigation,' and [ ] that 'at a minimum . . . an absent

17  plaintiff [must] be provided with an opportunity to remove himself from the class.'"  *Ortiz*, 527 U.S.

18  at 848 (quoting *Shutts*, 472 U.S. at 812).  The *Ortiz* Court did not analyze, much less render a

19  decision on whether due process for Rule 23(b)(3) class members necessitates actually receiving

20  notice.

21      As for *Shutts*, the Court's discussion of notice arose in the context of its assessment of

22  whether a state court could assert jurisdiction over and bind out-of-state absent class members who

23  failed to opt out of a settlement.  The Court held that the personal jurisdiction rules applicable to

---

24  2012) ("Courts have consistently recognized that, even in Rule 23(b)(3) class actions, due process
25  does not require that class members actually receive notice."); *Fidel v. Farley*, 534 F.3d 508, 514 (6th
    Cir. 2008) ("Due process does not . . . require *actual* notice to each party intended to be bound by the
26  adjudication of a representative action."); *DeJulius v. New Eng. Health Care Emps. Pension Fund*,
    429 F.3d 935, 944 (10th Cir. 2005) ("[D]ue process . . . does not require *actual* notice to each party
27  intended to be bound by the adjudication of a representative action.").  Other decisions in this District
    also recognize the rule.  *See Moralez v. Whole Foods Mkt., Inc.*, 897 F. Supp. 2d 987, 1000 (N.D.
28  Cal. 2012) (Breyer, J.) ("Due process does not require that a class member actually receive notice, so
    long as the notice afforded was 'the best notice practicable under the circumstances.'" (quoting
    *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992))).

Gibson, Dunn &
Crutcher LLP

1    defendants did not apply to absent class members, 472 U.S. at 808–12, and explicitly rejected the

2    argument that class actions should be "opt in" because "[r]equiring a plaintiff to affirmatively request

3    inclusion would probably impede the prosecution of those class actions involving an aggregation of

4    small individual claims, where a large number of claims are required to make it economical to bring

5    suit." *Id.* at 812–13.  Most significant here, in between the two portions of the *Shutts* opinion quoted

6    in *Ortiz*, the *Shutts* Court described the kind of notice that must be given to satisfy due process.  It did

7    not say that actual notice was required.  Rather, it said: "The notice must be the best practicable,

8    'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of

9    the action and afford them an opportunity to present their objections.'"  472 U.S. at 812 (quoting

10   *Mullane*, 339 U.S. at 314-15).  Further, the Court held that "where a fully descriptive notice is sent

11   first-class mail to each class member, with an explanation of the right to 'opt out,'" due process was

12   satisfied, 472 U.S. at 812, but it did not reach the question of what might be required if the notice

13   were not received because prospective class members whose notices were returned were excluded

14   from the class, *id*. at 801, 812.  Because *Shutts* did not hold that actual notice is required, *Ortiz*, which

15   merely refers to *Shutts*, simply cannot be read for that proposition.

16          *Stokes* and *Myles* also rely on *Kakani v. Oracle Corp*., No. C 06-06493 WHA, 2007 WL

17   1793774 (N.D. Cal. June 19, 2007), for the proposition that actual notice is required.  But like *Ortiz*,

18   *Kakani* did not hold that actual notice is required for 23(b)(3) class actions.  In *Kakani*, the court held

19   that notice by mail alone was not the "best practicable" for purposes of providing notice to class

20   members still employed by the defendant and must be supplemented by "workplace notice, either by

21   hard copy or e-mail."  2007 WL 1793774, at *10.  The court also criticized the reliance, without

22   more, on first-class mail to the last known address of former employees.  *Id.*  But the court stopped

23   short of imposing a requirement of actual notice, saying instead that mail to the last known address

24   "has not *yet* been shown to be good enough," and commenting that alternative forms of notice, such

25   as publication or use of the internet, might need to be considered as supplemental notice.  *Id*.

26   (emphasis added).  The court expressly acknowledged that "[s]ome caselaw allows mailed notice to

27   be deemed adequate even when it is not delivered correctly but there must be a showing that the

28   proposed address list is reasonably accurate.  Otherwise, notice by publication may be necessary."

Gibson, Dunn &
Crutcher LLP

7

MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL
OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-CV-03264-JD

*Id.* at *10 n.5.[3]

Indeed, in cases where notice cannot be reasonably accomplished through direct contact, "courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 665 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1161 (2016); *see Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA, 2014 WL 4421308, at *3 (N.D. Cal. Sept. 5, 2014) (granting preliminary approval of a class action settlement with a notice provision specifying that "[i]f, after the database searches and remailings described above, there are more than [a particular number of] members whose addresses and whereabouts remain unknown to the Claims Administrator, the Claims Administrator shall propose a publication notice procedure designed to reach as many such undeliverable class members as possible").

The releases in the proposed settlements here are comparable to those in settlements approved by judges in this district in similar nationwide antitrust class actions,[4] and Settling Defendants

---

[3]   In its denial of the motion for preliminary approval of settlement, the court in *Kakani* did suggest that many of the problems with the settlement could be solved by making the release effective against only those actually submitting claims. *Id.* at *11. This suggestion appears to have been predicated upon the fact that under the terms of the settlement, the defendant would have to pay only to the extent that class members actually filed claims and the fact that the release purported to extend to FLSA claims. *Id.* Thus, because of the way the settlement was structured, except for attorneys' fees and costs that defendant had already agreed to pay, the defendant's liability was dependent entirely upon whether class members filed claims at all. *Id.* at *1. If no claims were filed, the defendant could in theory be liable for $0 above costs and fees. The settlements in the present case do not touch upon FLSA and the amounts to be paid by the Settling Defendants do not change based on the magnitude of claims filed. There is no reversion in this case nor any incentive for Settling Defendants to reduce the number of claims made.

[4]   *See, e.g.*, IPP Sony Settlement Agreement, *In re Lithium Ion Batteries Antitrust Litig.*, 4:13-md-02420-YGR (N.D. Cal.) [Dkt. No. 1209-1]; DPP Sony Settlement Agreement, *In re Lithium Ion Batteries Antitrust Litig.*, 4:13-md-02420-YGR (N.D. Cal.) [Dkt. No. 1090-1]; IPP Settlement Agreements, *In re Optical Disk Drive Prods. Antitrust Litig.*, 3:10-MD-02143-RS (N.D. Cal.) [Dkt. No. 1898-2]; DPP Settlement Agreements, *In re Optical Disk Drive Prods. Antitrust Litig.*, 3:10-MD-02143-RS (N.D. Cal.) [Dkt. No. 1758]; IPP Settlements, *In re Static Random Access Memory Antitrust Litig.*, 4:07-md-01819-CW (N.D. Cal.) [Dkt. Nos. 986-1, 986-2, 986-3, 986-4, 986-5, 986-6]; DPP Settlement Agreements, *In re Static Random Access Memory Antitrust Litig.*, 4:07-md-01819-CW (N.D. Cal.) [Dkt. No. 945-1]; IPP Settlement Agreements, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 4:02-md-01486-PJH (N.D. Cal.) [Dkt. Nos. 2135, 2136, 2136-1, 2136-4, 2137, 2137-1, 2137-2]; DPP Settlement Agreements, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 4:02-md-01486-PJH (N.D. Cal.) [Dkt. No. 2032]; IPP Settlement Agreements, *In re TFT-LCD Antitrust Litig.*, 3:07-md-01827-SI (N.D. Cal.) [Dkt. Nos. 6141-2, 6141-3, 6141-4]; DPP Settlement Agreements, *In re TFT-LCD Antitrust Litig.*, 3:07-md-01827-SI (N.D. Cal.) [Dkt. Nos. 3407-2, 3407-3, 3407-4, 3407-5, 3407-6, 3407-7, 3407-8, 3407-9]; DPP Settlement

Gibson, Dunn & Crutcher LLP

8

MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-cv-03264-JD

1   respectfully suggest that the Court should not condition preliminary (or final) approval on the parties

2   renegotiating their settlement agreements to make the releases conditional on class members

3   receiving *actual* notice.  Rather, the Court should scrutinize the proposed notice plans and the revised

4   notices to be submitted by the plaintiffs to ensure that they afford absent class members "the best

5   notice that is practicable under the circumstances, including individual notice to all members who can

6   be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

7
8   **II       Conditioning Releases on Cashing a Check Would Create an Impermissible Opt-In System, a "One-Way Intervention" Problem, and Discourage Settlement.**

9          During the October 14 hearing, the Court stated that class members should not be deemed to

10   have released their claims unless they actually cash their settlement checks.  [Dkt. No. 1350 at 5:3–

11   7:14.]  Requiring that class members cash their checks before their claims are released would

12   (1) create an impermissible opt-in system, (2) potentially cause one-way intervention problems, and

13   (3) impede the settlement of 23(b)(3) class actions.

14         **A.       Opt-In Systems Are Not Permitted for Rule 23(b)(3) Classes.**

15          Requiring the parties to rewrite their settlement agreements so that only those class members

16   that receive and cash a check release their claims would effectively create an opt-in system.  Class

17   members would have to take an affirmative step (*i.e.*, cashing a check) to have their claims

18   extinguished, even if they failed to opt out.[5]  As explained above, in *Shutts*, the Supreme Court

19   considered and rejected an opt-in approach.  472 U.S. at 812–13.  Similarly, the drafters of Rule 23

20   considered whether Rule 23(b)(3) should involve an opt-out or opt-in procedure; they chose the

21   former.  *See* Benjamin Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the

22   Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 394–96 (1967) (explaining that the opt-

23
24   _____

25   Agreement, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 3:07-cv-05944-JST (N.D. Cal.) [Dkt. No. 2246-1].

26   5    This would also create problems in entering final judgment.  The final judgment could not be
27   binding only on those class members who cashed their checks because that would render the entire opt-out process superfluous.  And if the final judgment were to extinguish the claims of class
28   members who did not cash their checks by operation of *res judicata*, the notices would need to accomplish the difficult task of conveying to class members the difference between affirmatively granting a release and losing the ability to pursue future claims by operation of *res judicata*.

Gibson, Dunn &
Crutcher LLP

9

1   out approach comports with due process and discussing the policy reasons for favoring the opt-out

2   approach over an opt-in system).

3           Creating an opt-in system here would contravene Rule 23.  Indeed, the Second and Fifth

4   Circuits have held that a district court abuses its discretion by certifying a Rule 23(b)(3) opt-in class.

5   *Ackal*, 700 F.3d at 219 ("[N]o authority exists under Rule 23 for certifying a class of this nature.");

6   *Kern*, 393 F.3d at 125; *see also Clark*, 501 F.2d at 340 (noting that "the requirement of an affirmative

7   request for inclusion in the class is contrary to the express language of Rule 23(c)(2)(B)").  As the

8   Second Circuit explained, "substantial legal authority supports the view that by adding the 'opt out'

9   requirement to Rule 23 in the 1966 amendments, Congress *prohibited* 'opt in' provisions by

10  implication."  *Kern*, 393 F.3d at 124.

11

12  **B.      In Practice, an Opt-In System Would Likely Resurrect the "One-Way
             Intervention" Problem the 1966 Amendments to Rule 23 Were Intended to Solve.**

13          If checks to class members are sent *after* final approval, class members who had not opted out

14  could effectively do so simply by not cashing their checks.  This raises the "one-way intervention"

15  problem that the 1966 Amendments to Rule 23 were designed to solve.  Former Rule 23 was

16  exploited by class members so that they "could in some situations await developments in the trial or

17  even final judgment on the merits in order to determine whether participation would be favorable to

18  their interests."  *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974).  For example, "[i]f the

19  evidence at the trial made their prospective position as actual class members appear weak, or if a

20  judgment precluded the possibility of a favorable determination, such putative members of the class

21  who chose not to intervene or join as parties would not be bound by the judgment."  *Id.*  This practice

22  of one-way intervention "aroused considerable criticism upon the ground that it was unfair to allow

23  members of a class to benefit from a favorable judgment without subjecting themselves to the binding

24  effect of an unfavorable one."  *Id.*  "The 1966 amendments [to Rule 23] were designed, in part,

25  specifically to mend this perceived defect in the former Rule and to assure that members of the class

26  would be identified before trial on the merits and would be bound by all subsequent orders and

27  judgments."  *Id.*; *see also Schwarzschild v. Tse*, 69 F.3d 293, 296 (9th Cir. 1995), *cert. denied*, 517

28  U.S. 1121 (1996) (noting that "the history, purpose, and language of Rule 23(c)(2) indicate that it

Gibson, Dunn &
Crutcher LLP

10

MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL
OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-CV-03264-JD

only contemplates notification of the class before a final judgment has been rendered on the merits," but holding that under the facts of the case, defendant had waived the right to have class notice sent by moving for and obtaining summary judgment before class was certified and notified); *Villa v. S.F. Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1020–21 (N.D. Cal. 2015) (holding that plaintiffs' motion for partial summary judgment filed prior to class certification was procedurally improper on the basis that it violated the "one-way intervention" rule).

Conditioning a release on a putative class member actually depositing funds would also render superfluous the entire process of asking class members whether they wished to opt out of the settlement classes because it would effectively give them a second chance to do so. No such second bite at the apple is needed to protect settlement class members, particularly because "the use of the settlement class in some sense enhances plaintiffs' right to opt out." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litigation*, 55 F.3d 768, 792 (3d Cir.), *cert. denied sub nom. Gen. Motors Corp. v. French*, 116 S. Ct. 88 (1995). "Since the plaintiff is offered the opportunity to opt out of the class simultaneously with the opportunity to accept or reject the settlement offer, which is supposed to be accompanied by all information on settlement, the plaintiff knows exactly what result he or she sacrifices when opting out." *Id*. Thus, as long as the best notice practicable is provided, absent class members will be afforded the procedural protections required by Rule 23 and due process.

### C.     Conditioning Releases on the Cashing of Checks Would Impede Settlements of 23(b)(3) Class Actions.

There is a strong judicial policy in favor of settlement of class actions. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). That policy would be undermined by "allowing absent class members to easily escape the preclusive effect of settlement by claiming that they did not receive actual notice," *Pey v. Wachovia Mortg. Corp.*, No. 11-2922 SC, 2011 WL 5573894, at *7 (N.D. Cal. Nov. 15, 2011), or by not depositing their settlement proceeds. Were those arguments to be allowed, Settling Defendants would be discouraged from settling, or would offer less in settlement, because of the greater uncertainty in the size of the classes that would ultimately be bound by the settlements. Moreover, a requirement that class members cash their checks would

Gibson, Dunn &
Crutcher LLP

11

MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL
OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-cv-03264-JD

fundamentally change the economics of the settlements.  As often occurs in class action settlements, defendants may be concerned about paying large sums to a class, only to discover that unexpectedly large numbers of class members opt out, thereby making the settlement economically unattractive. Indeed, unless a court were to approve a provision providing that any settlement funds remaining after the validity of the settlement checks expired were to revert to the defendant, if the majority of the class were to fail to cash their checks, a settling defendant could be exposed to the bulk of plaintiffs' claims despite having paid significant sums.  This creates a significant disincentive for defendants to settle.

Courts have recognized that defendants have a strong interest in limiting late opt-outs.  For example, in *In re Charles Schwab Corp. Securities Litigation*, No. C 08-01510 WHA, 2010 WL 4509718, at *1 (N.D. Cal. Nov. 1, 2010), the court considered a class member's argument that he had demonstrated "excusable neglect" sufficient to allow him to opt out after the deadline on the sole basis that he had not actually received notice.  The court rejected this argument, recognizing that "if such excuses were deemed sufficient to warrant exclusion . . . defendants would be prejudiced, given their commitment to a settlement amount that was negotiated with a stable class membership in mind." *Id.*

Further, the value of any settlement could quickly be dwindled away by the high administrative expense of having to ensure that every potential class member received actual notice *and* opted in, in order to achieve the highest likelihood of finality.  *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 339 (3d Cir. 2011) (en banc) (Scirica, J., concurring), *cert. denied sub nom. Murray v. Sullivan*, 132 S. Ct. 1876 (2012) ("Collateral attack of settlements and parallel proceedings in multiple fora are common realities in modern class actions—features that can imperil the feasibility of settlements if defendants lack an effective way to protect bargained-for rights.").  "A responsible and fair settlement serves the interests of both plaintiffs and defendants and furthers the aims of the class action device.  Plaintiffs receive redress of their claimed injuries without the burden of litigating individually.  Defendants receive finality." *Id.*  But an actual-notice, opt-in system would give plaintiffs the sword of a collective action while denying defendants the shield of finality, distorting the current, well-established class action mechanism.

Gibson, Dunn & Crutcher LLP

12

MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-cv-03264-JD

### III    The Court Must Scrutinize the Proposed Notice Plans, But Plaintiffs' Plans Are Robust and Comparable to Notice Plans Approved in Other 23(b)(3) Antitrust Class Actions.

Federal Rule of Civil Procedure 23(c)(2)(B) requires that the *content* of the proposed notice clearly communicate key information about the case and class members' rights and that the *process* of delivering notice provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The court must also "direct notice in a reasonable manner to all class members who would be bound by [a settlement]." Fed. R. Civ. P. 23(e)(1). With regard to the content of the notices proposed here, except for the issue of requests for attorneys' fees (which the DPPs and IPPs are working to correct), the long-form and short-form DPP and IPP notices adhere to the Court's Procedural Guidance for Class Action Settlements[6] and "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, class members' right to exclude themselves from the class, the time and manner for requesting exclusion, and the binding effect of a class judgment on members of the class as required by Rule 23(c)(2)(B). *See* DPP Saveri Decl. Ex. M at 1–2, 5–11 [Dkt. No. 1298-14]; DPP Saveri Decl. Ex. N. at 2 [Dkt. No. 1298-15]; IPP Mot. for Prelim. Appr. Ex. A at 1 [Dkt. No. 1306-2]; IPP Mot. for Prelim. Appr. Ex. B. at 1, 4–6 [Dkt. No. 1306-3].

With regard to the *process* of disseminating the notices, the notice procedures that class counsel intend to use are as, or even more, robust than the procedures used for other class settlements that were approved in this district. For example, the proposed media notice program for the IPP settlement includes advertising in national trade and consumer publications, "banner" ads on national trade publication websites, "banner" ads targeting consumers who are electronic hobbyists and enthusiasts, "banner" ads in a national e-newsletter targeted to the specific audience concerned, a custom email "blast" to opt-in subscribers of targeted publications, direct mail, and a news release disseminated via earned media. Young Decl. ¶¶ 10–16 [Dkt. No. 1308]. The scope of this proposed campaign is largely similar to the one approved for the indirect purchaser class in *In re Static Random Access Memory (SRAM) Antitrust Litigation. See* Gilardi Decl. ¶ 13, *In re Static Random*

---

[6] *See* U.S. Dist. Ct. for the N. Dist. of Calif., Procedural Guidance for Class Action Settlements, *available at* http://www.cand.uscourts.gov/ClassActionSettlementGuidance.

Gibson, Dunn & Crutcher LLP

*Access Memory (SRAM) Antitrust Litig.*, 4:07-md-01819-CW (N.D. Cal. Apr. 15, 2010) [Dkt. No. 987]. And whereas notice in that case was directly mailed to only approximately 12,000 addresses, *id.* ¶ 13.c.i, the IPP notice procedure here entails mailing notices to approximately 150,000 potential class members, Young Decl. ¶ 15 [Dkt. No. 1308].

## CONCLUSION

For the foregoing reasons, the Court should not require the parties to try to renegotiate their settlement agreements. It should instead scrutinize the proposed notices and plans for disseminating notice to ensure that they are "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Settling Defendants respectfully request that the Court grant the pending motions for preliminary approval after Plaintiffs submit their revised notices.

Dated: November 4, 2016

By:  /s/ *George A. Nicoud III*
George A. Nicoud III

George A. Nicoud III
**Gibson, Dunn & Crutcher LLP**
555 Mission Street
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 374-8473
Email: TNicoud@gibsondunn.com

Matthew Parrott
**Gibson, Dunn & Crutcher LLP**
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: (949) 451-3800
Facsimile: (949) 451-4220
mparrott@gibsondunn.com
*Attorneys for Defendants NEC TOKIN Corporation
and NEC TOKIN America, Inc.*

Gibson, Dunn &
Crutcher LLP

14
MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL
OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-cv-03264-JD

1

By:     */s/ Belinda S Lee*
　　　　Belinda S Lee

2

3
Belinda S Lee
Ashley M. Bauer

4
**Latham & Watkins LLP**
505 Montgomery Street, Suite 2000

5
San Francisco, CA 94111
Telephone: (415) 391-0600

6
Email: belinda.lee@lw.com
*Attorneys for Defendant Nitsuko Electronics*
*Corporation*

7

8

9
By:     */s/ Darrell Prescott*
Darrell Prescott

10
Darrell Prescott
Catherine Stillman

11
**Baker & McKenzie**
452 Fifth Avenue

12
New York, NY 10018
Telephone: (212) 626-4476

13
Facsimile: (212) 310-1637
Email: Darrell.Prescott@bakermckenzie.com

14
Email: Catherine.Stillman@bakermckenzie.com

15
Meghan E. Hausler
**Baker & McKenzie**

16
2300 Trammell Crow Center
2001 Ross Avenue

17
Dallas, TX 75201
Telephone: (214) 965-7219

18
Facsimile: (214) 978-3099
Email: Meghan.Hausler@bakermckenzie.com

19
Colin H. Murray

20
**Baker & McKenzie**
Two Embarcadero Center, 11th Floor

21
San Francisco, CA 94111
Telephone: (415) 591-3244

22
Facsimile: (415) 576-3099
Email: Colin.Murray@bakermckenzie.com

23
*Attorneys for Defendants Okaya Electric Industries Co.,*
*Ltd. and Okaya Electric America, Inc.*

24

25

26

27

28

Gibson, Dunn & Crutcher LLP

15
MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL
OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-cv-03264-JD

1

By:      /s/ Michael F. Tubach

2

Michael F. Tubach
Brian Y. Chang

3

**O'Melveny & Myers LLP**
Two Embarcadero Center, 28th Floor

4

San Francisco, CA 94111-3305
Telephone: (415) 984-8700

5

Facsimile: (415) 984-8701
Email: mtubach@omm.com

6

Email: bchang@omm.com

7

Kenneth R. O'Rourke

8

**O'Melveny & Myers LLP**
400 South Hope Street, 18th Floor
Los Angeles, CA 90071

9

Telephone: (213) 430-6000
Facsimile: (213) 430-6407

10

Email: korourke@omm.com
*Attorneys for Defendants ROHM Co., Ltd.,*

11

*and ROHM Semiconductor U.S.A., LLC*

12

13

By:      /s/ Paul T. Friedman

14

Paul T. Friedman

15

**Morrison & Foerster LLP**
415 Market Street
San Francisco, CA 94105

16

Telephone: (415) 268-7444
Email: pfriedman@mofo.com

17

*Attorney for Defendant Fujitsu Limited*

18

19

        Pursuant to Civil Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose

20

behalf this filing is submitted, concur in the filing's content and have authorized the filing.

21

22

Dated: November 4, 2016              /s/ George A. Nicoud III

23

24

25

26

27

28

16

MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL
OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-CV-03264-JD

1

## **CERTIFICATE OF SERVICE**

2        I am employed in the San Francisco, State of California.  I am over the age of eighteen years

3   and not a party to this action.  My business address is 555 Mission Street, San Francisco, California.

4   On November 4, 2016, I served a copy of the below-listed document(s) described as:

5        MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS
           FOR PRELIMINARY APPROVAL OF SETTLEMENTS [DKT. NOS. 1298 AND

6        1305]

7

8   on the parties stated below, by the following means of service:

9

| **VIA U.S. MAIL** | |
| --- | --- |
| Elizabeth E. Collins<br>Collins & Scanlon LLP<br>50 Public Sq.<br>Suite 3300<br>Cleveland, OH 44113<br>Ph: (216) 696-0022 | Steven A. Reiss<br>Weil Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Ph: (212) 310-8000 |
| Kenji Kasahara<br>Representative Director of Toshin Kogyo Co.,<br>LTD<br>Tsukas Bldg. 2-15-4, Uchikanda<br>Chiyoda-Ku<br>Tokyo, Japan<br>Ph:  (81) +3 3256-3781 | Benjamin J. Eichel<br>Pepper Hamilton, LLP<br>3000 Two Logan Square<br>18th and Arch Streets<br>Philadelphia, PA 19103<br>Ph:  (215) 981-4629 |

☑  **BY UNITED STATES MAIL**: I placed a true copy in a sealed envelope or package addressed to the persons as indicated above, on the above-mentioned date, and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited with the U.S. Postal Service in the ordinary course of business in a sealed envelope with postage fully prepaid. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing set forth in this declaration.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

Gibson, Dunn &<br>Crutcher LLP

1

Joseph Saveri Law Firm, Inc.
Joseph R. Saveri
jsaveri@saverilawfirm.com
Andrew M. Purdy
apurdy@saverilawfirm.com
505 Montgomery Street
San Francisco, CA 94111
Tel. (415) 500-6800
Fax (415) 395-9940

*Counsel for Direct Purchaser Plaintiffs*

Cotchett Pitre & McCarthy LLP
Steven N. Williams
swilliams@cpmlegal.com
Elizabeth Tran
ETran@cpmlegal.com
Adam J. Zapala
AZapala@cpmlegal.com
San Francisco Airport Office Ctr.
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel. (650) 697-6000
Fax (650) 697-0577

*Counsel for Indirect Purchaser Plaintiffs*

Williams Montgomery & John Ltd.
Charles E. Tompkins
Eric R. Lifvendahl
Paul J. Ripp
233 S. Wacker Drive, Suite 6100
Chicago, IL 60606
Tel. (312) 443-3200
Fax (312) 630-8500

*Counsel for Plaintiff Flextronics International
USA, Inc.*

☑     **BY E-MAIL:**  I caused the document(s) to be served electronically on the persons at the electronic
notification addresses listed above.

*Also served via email on counsel for all Defendants.*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 4, 2016, at San Francisco, California.


                                                    /s/ Kevin Yeh
                                                    Kevin Yeh

Gibson, Dunn &
Crutcher LLP

MEMORANDUM OF SETTLING DEFENDANTS IN SUPPORT OF MOTIONS FOR PRELIMINARY APPROVAL
OF SETTLEMENTS [DKT. NOS. 1298 AND 1305] – CASE NO. 3:14-cv-03264-JD