Joseph R. Saveri (State Bar No. 130064)
Joshua Paul Davis (State Bar No. 193254)
Andrew M. Purdy (State Bar No. 261912)
Matthew S. Weiler (State Bar No. 236052)
James G. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            apurdy@saverilawfirm.com
            mweiler@saverilawfirm.com
            jdallal@saverilawfirm.com
            rmcewan@saverilawfirm.com

*Interim Class Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 3:14-cv-03264-JD |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | **DIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS FUJITSU LIMITED, NITSUKO, THE OKAYA DEFENDANTS, NEC TOKIN, AND ROHM** |

## I.   Introduction

At the October 14, 2016 hearing on DPPs[1] and IPPs' respective motions for preliminary approval of certain settlements, the Court asked Plaintiffs to revisit their proposed preliminary approval motions and notice plans and thereafter present to the Court a "practical, easy-to-administer plan that is totally transparent and totally fair to potential class members." Tr. 16:19-20.

The Court identified three issues at the hearing that Plaintiffs should address in their respective supplemental plans: (1) concern that the releases in the parties' settlement agreements should extend only to those class members who affirmatively accept settlement funds—in other words, "there are no free releases" (Tr. 4:1-7:13);[2] (2) provision of additional transparency regarding the timing and amount of counsels' fee requests (*id.* at 7:15-14:3); and (3) payment of settlement funds to class members (*id.* at 12:3-14:3, 17:8-25). After the hearing, the Court added a fourth, related issue: its preference that class members who do not receive notice will not release their claims. *See* Dkt. 1348.

As to the Court's first and fourth points, DPPs set forth below a plan to ensure that the Direct Purchasers' notice plan exceeds the requirements of the Constitution and Rule 23. DPPs' proposed order sets out this plan in detail. *See generally* Declaration of Kendall S. Zylstra of claims administrator Rust Consulting ("Zylstra Decl."). DPPs intend to use the comprehensive data and information they have obtained regarding the Class' absent members, widespread publication through various media, and direct communications—all to achieve a very high rate of actual notice to and recovery by Class members. DPPs will pursue many different strategies to get "money in [the] pockets" (Tr. 6:8) of as many Class members as possible and to ensure Class members know their rights and can exercise them in an informed manner. That said, DPPs respectfully submit that conditioning the Settling Defendants' release upon an affirmative act by a Class member (*i.e.*, cashing a check or confirmation of receipt of actual notice) would be inconsistent with Rule 23 and the releases for which each of the Settling Defendants bargained.

---

[1] Unless stated otherwise, the terms defined in DPPs' Motion for Preliminary Approval (Dkt. 1298) are the same herein.

[2] A true and correct copy of the transcript of the Court's October 14, 2016 preliminary approval hearing is attached as **Exhibit A** to the Declaration of Joseph R. Saveri ("Saveri Decl."). The transcript is cited hereafter as "Tr."

As to the Court's second and third points, DPPs will comply with the Court's direction and will revise the Class notices to indicate that counsel will request attorneys' fees and expenses from this first tranche of settlements. Further, DPPs will distribute settlement funds from these five settlements to Class members as soon as possible on a pro rata basis.

Based on DPPs' modifications regarding their notice plan, their proposed changes to DPPs' form notices, and the other bases set forth in DPPs' Motion for Preliminary Approval (Dkt. 1298), as amended herein, DPPs request that the Court (1) preliminarily approve the Settlement Agreements (Dkts. 1298-2, 3, 8, 9, 10), as written; (2) certify the Settlement Class; (3) approve the proposed plan of notice; (4) set DPPs' requested schedule for dissemination of notice and related deadlines for opting out, commenting on or objecting to the Settlement; and (5) set a final approval hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

## II.    DPPs' Comprehensive Notice and Claims Administration Plan Will Ensure Actual Notice to the Vast Majority of Class Members and a Very High Rate of Participation in the Settlements by the Direct Purchaser Class Members.

To protect absent Class members' due process rights and ensure a high rate of participation in the settlements for those Class members that do not opt out, DPPs will implement a comprehensive individual and publication notice plan and a claims administration plan that will ensure Direct Purchaser Class members share in the settlement funds. These plans, set forth in detail in DPPs' concurrently filed proposed order and the Zylstra Declaration, are summarized below:

- Because DPPs possess data regarding the names and addresses of Class members—as well as significant data reflecting their respective purchases during the Class Period—individual notices with pre-populated purchase data can be sent directly to all, or nearly all, Class members.

- A concise, one-page summary will be mailed along with the full notice, allowing Class members to quickly ascertain the key components of the settlements and required action on their part. In addition to this direct mailed notice, a publication and Internet notice campaign will be targeted to Class members.

- The individualized notice will emphasize that Class members do not need to submit documentation in order to receive payment, but rather they can rely on the pre-populated value of purchases that will be used to determine each Class member's share of the settlement fund

without further action by the Class member, unless the Class member chooses to submit an adjustment claim with documentation supporting greater purchase amounts. By doing so, DPPs will substantially lessen the burden on Class members, thus encouraging maximum Class member participation in the settlement,

- For Class members for whom DPPs do not have purchase data, Class members can make such submissions through documents mailed to the claims administrator or submitted through a secure website.

### A.      DPPs' Notice Plan is Designed to  Reach Identified Class Members and is consistent with Due Process and Rule 23.

DPPs' notice to the Class must be "the best . . . practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (same) (citing *Mullane v. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)). These requirements ensure that class notice procedures comply with the demands of due process. *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). While individual notice is required for all identifiable class members (*see Eisen*, 417 U.S. at 176), even identifiable class members need not actually *receive* such notice to be bound. *See Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994) ("We do not believe that *Shutts* changes the traditional standard for class notice from "'best practicable'" to "'actually received'" notice."). *See also Rannis*, 380 F. App'x at 650 ("[D]ue process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944 JST, 2016 U.S. Dist. LEXIS 24951, at *262  (N.D. Cal. Jan. 28, 2016) (following *Silber*).

Because DPPs have obtained Defendants' transactional data obtained in discovery, as well as the contacts that DPPs' counsel have made with many Class members, counsel believe they have up to date

and accurate contact information for all or nearly all of the Class members.[3] Saveri Decl. ¶ 2. Applying the Court's ruling on Defendants' FTAIA motions for summary judgment to the direct purchasers that DPPs have identified through Defendants' records, it appears there are approximately 1,900 Class members who directly purchased Capacitors between January 2002 and December 2013. *Id.* at ¶ 3. Out of the nearly 1,900 identified Class members, over 470 of them had purchases in 2014, and over 380 of them had purchase in 2015. *Id.*. While this is a modest percentage of the overall Class (somewhere between 20-25%), many of these Class members are Defendants' largest customers by volume. *See id.* Accordingly, the dollar amount of purchases associated with these current customers is likely to be quite large and can reasonably be estimated to represent a large share of sales eligible for reimbursement in settlement.

Targeted emailing and mailing of notices will reach most, if not all, of the Class. To the extent that any Class members may not receive direct notice, DPPs' plan to provide notice through publication in traditional publications and on the Internet is likely to reach them. The electronic components industry is a niche business. Thus, targeting industry Internet media (*e.g.*, CapacitorIndustry.com), publishing notice in the Wall Street Journal, and creating a settlement website run by the claims administrator likely will be very effective. DPPs believe this will, as a result, increase the Class' rate of participation in the settlement.

In addition, many Class members already have expressed significant interest in this action, so DPPs expect a large percentage of Class members to make claims. Many large Class members have been monitoring this litigation and have asked DPPs' counsel to keep them informed about case developments. Saveri Decl. ¶ 4.

This proposed plan exceeds DPPs' notice obligations under the Constitution and Rule 23. DPPs concurrently file with this submission the declaration of Kendall S. Zylstra of claims administrator Rust

---

[3] It is unlikely that there will be any sizeable percentage of Class members who are not identified in Defendants' transactional data. DPPs' counsel pursued discovery about the completeness of transactional data with many Defendants in connection with the FTAIA briefing (including Settling Defendants NEC TOKIN, Okaya, and Rohm), and Defendants testified that all transactions in the types of commerce the Court has deemed within the Sherman Act's ambit are recorded in transactional data. *See* Saveri Decl. at ¶ 2.

Consulting ("Rust"), which sets forth the plan of notice and administration, provisions for distribution of settlement funds, and Rust's qualifications and credentials in administering settlements of this type. To confirm the plan's effectiveness, DPPs are prepared to provide the Court with information regarding notice returns based on incorrect addresses and response rates following the notice period's close.

**B.        Under DPPs Plan, DPPs Will Pay  Claims to Class Members Without Delay.**

As previously indicated, DPPs propose to distribute settlement funds to Class members, after payment of attorneys' fees and costs on a pro rata basis based on Class members purchases from all Defendants. *See* Zylstra Decl. ¶ 15. DPPs will base this calculation on transactional sales information obtained from Defendants subject to review and adjustment based on information from Class members. DPPs propose to make payment by check, consistent with the ordinary and regular methods of Class members make and receive payments in the regular course of their business. *See id.* at ¶ 16. Class members will also be able to receive payments electronically by wire or other electronic payment methods upon provision of suitable account and other information to ensure payment and prevent fraud. *See id*.

DPPs will act to ensure that Class members can convert their settlement payments with ease and as quickly as possible. Relying on Defendants' transactional data, DPPs will send to each identified Class member a claim form containing pre-populated information about the member's Capacitors purchases to be used to calculate their pro rata distribution from the settlements. Class members can either accept DPPs' accounting of their Capacitors purchases, or they can seek an adjustment of DPPs' accounting by submitting information to the claims administrator to substantiate their purchases. Class members will be able to submit their claims either by mail or electronically through a secure claims administration website. These steps will help ensure the accuracy and reasonableness of the pro rata distribution of settlement funds.

Importantly, once Class members' Capacitors purchases during the Class Period are determined, they will not have to go through the claims process again in order to benefit from any future settlements. This should also encourage participation and the settlement as well as to ensure efficient and timely distribution of proceeds from any future settlements in this case.

For Class members who submit claims, DPPs intend to send checks to them as soon as

practicable and will send reminder mailings or will contact them by other means (including email) to ensure those checks are cashed. As counsel noted at the October 14 conference, settlement funds will not revert to Defendants. Tr. 17:8-11. DPPs will continue to administer additional rounds of notice and make payments until all settlement funds are paid out or were the Court authorizes cy pres relief, upon duly noticed motion.

### III.   The Scope of DPPs' Releases of the Settling Defendants Is Consistent with the Parties' Agreements and the Application of Rule 23 in Other Similar Cases.

DPPs share the Court's interest in protecting the rights of absent Class members with regard to the scope of the release in the Settlement Agreements. DPPs believe they can do so without altering the parties' negotiated release language.

We understand the Court's concern to be centered on the release's impact on the claims of Class members who do not receive notice or cash a settlement check, Tr. 5:3-7:14, rather than the breadth of the release.[4] Requiring Class members to act affirmatively—*e.g.*, confirm receipt of notice or cash a settlement check—for an individualized release to be effective would effectively convert the Class from opt out to opt in. That would be inconsistent with the Federal Rules of Civil Procedure.

Rule 23 does not contemplate opt-in classes. *Kern v. Siemens Corp.*, 393 F.3d 120 (2d Cir. 2004),, is the leading case on point. In *Kern*, the district court certified a class pursuant to Rule 23(b)(3) that included only those members who affirmatively consented to inclusion in the class. *See id.* at 122-23. The Second Circuit reversed, reasoning that neither "the language of Rule 23" nor "due process

---

[4] The parties' bargained for release language is permitted and appropriate in Rule 23(b)(3) class actions. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action" where the released claim is "based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotations omitted). The scope of the parties' release is consistent with other factually similar federal antitrust settlements in this District. *Compare* Dkts. 1298-2 at 11-14, 3 at 14-17, 8 at 13-16, 9 at 13-17, and 10 at 13-17 *with In re Cathode Ray Tube (CRT) Antitrust Litigation,* Case 3:07-cv-05944-JST, Dkt. 1572-1, Ex. 1 at 6-8; *In re: TFT-LCD (Flat Panel) Antitrust Litigation,* Master File No. M07-1827 SI, Dkt. 1441 at 6-8; *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,* Master File No. M-02-1586-PJH, Dkt. 773-2 at 5-7; *In re Optical Disk Drive Products Antitrust Litigation,* Case No. 3:10-MD-2143-RS, Dkt. 1010-1 at 6-9; *In re Lithium Ion Batteries Antitrust Litigation,* Case No. 13-MD-2420-YGR, Dkt. 1090-1 at 13-16.

---

considerations" "require members of any class affirmatively to opt into membership." *See id.* at 124 (citing *Shutts*, 472 U.S. at 812). Further, the Second Circuit reasoned that the Rule 23(c) express opt-out provision and the Federal Rules Advisory Committee's 1966 decision to reject defining Rule 23(b)(3) classes by those affirmatively including themselves in an action implicitly prohibit opt-in classes. *See id.* at 124-25. [5] Other courts have followed *Kern. See, e.g., Ackal v. Centennial Beauregard Cellular LLC*, 700 F.3d 212, 215-17 (5th Cir. 2012) (following *Kern* and reversing certification of opt-in class); *Andrews Farms v. Calcot, Ltd.*, 258 F.R.D. 640, 656 (E.D. Cal. 2009) (rejecting Defendants' proposal to certify an opt-in class under Rule 23(b)(3) based on *Kern*'s reasoning); *Hypertouch, Inc. v. Superior Court*, 128 Cal. App. 4th 1527, 1543-53 (2005) (following *Kern* and holding that trial court's imposition of opt-in requirement conflicts with California Rules of Court on managing class actions).

DPPs have not found any examples of a Court certifying an opt-in class under Rule 23(b)(3)— other than the ones above that were reversed on appeal—much less one in which plaintiffs asserted a Sherman Act Section 1 claim. Cases similar to this one only provide absent class members the opportunity to opt out. *See generally In re Cathode Ray Tube (CRT) Antitrust Litigation*, Case 3:07-cv-05944-JST, Dkt. 1603; *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, Master File No. M07-1827 SI, Dkt. 1686; *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, Master File No. M-02-1586-PJH, Dkt. 982; *In re Optical Disk Drive Products Antitrust Litigation*, Case No. 3:10-MD-2143-RS, Dkt. 1052; *In re Lithium Ion Batteries Antitrust Litigation*, Case No. 13-MD-2420-YGR, Dkt. 1182. Although collective actions brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), require plaintiffs to opt in, those cases are based on specific statutory language, not an interpretation of Rule 23. To be a party to an FLSA action, a plaintiff must "consent in writing to become such a party," and that consent is filed with the court. *See id.* Rule 23 contains no such language. As the Second Circuit reasoned, "if anything, the language of the FLSA suggests that, should Congress seek to authorize certification of 'opt in' classes, it can do so with unambiguous language." *See Kern*, 393 F.3d at 128.

---

[5] The Northern District's class action settlement guidelines are consistent with this approach. *See Procedural Guidelines for Class Action Settlements*, United States District Court Northern District of California (October 30, 2016), *http://www.cand.uscourts.gov/ClassActionSettlementGuidance.*

Moreover, if Class members were to release their claims only on taking an affirmative step—such as cashing a check—that would create two thresholds for inclusion in the Settlement Class, *i.e.*, first choosing not to opt out, then affirmatively acting to opt in and thereby making the release effective. To DPPs' knowledge, no class certified under Rule 23(b)(3) has ever been defined in this way.[6] Doing so would create less certainty for the Settling Defendants as to the scope of the release they obtained through settlement and would require Class members to do more to perfect their claims than has been required in other similar Rule 23(b)(3) cases.

Even if the Settling Defendants were willing to alter the bargained for releases (Saveri Decl. ¶ 6), making Class member releases conditional on receipt of actual notice or acceptance of settlement funds could frustrate future settlement discussions. Defendants generally seek a release of all class members' claims in exchange for the payment of settlement funds. A release of anything less than all Class members' claims is less attractive to Defendants and could cause them to reduce the amount of money they are willing to pay to settle DPPs' claims, if they are willing to settle at all. The Non-Settling Defendants are much larger companies and are responsible for much larger sales than the Settling Defendants. *See id.* ¶ 7. Indeed, according to DPPs' analysis to date, the Non-Settling Defendants account for 98% of the commerce at issue in this case. *See id.* If the Non-Settling Defendants demand a discount to account for the risk that some Class members will not be bound because they fail to cash a check or claim they did not receive notice could reduce the overall recovery to all members of the DPP Class. Meanwhile, Class members who do not affirmatively opt out are extraordinarily unlikely to bring individual claims. So requiring class members to opt in for their claims to be released is likely to harm the class—by reducing its total recovery—without providing any benefits that the Class members actually value.

DPPs share the Court's concern that settlements provide benefits to as many members of the Direct Purchaser Class as possible. Through implementation of the notice and claims administration process outlined above, DPPs can ensure that as high a percentage of the Class as possible receives

---

[6] While opt-in obligations and opt-out rights for the same class in the same case may be allowed, the situation occurs when class members are statutorily required to opt in. *See, e.g.*, *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743 (9th Cir. 2010) (claims asserted under California state law and FLSA).

notice of the settlements and recovers from the settlement funds. That the scope of the Settling Defendants' respective releases is not limited to Class members who cash their checks and do not challenge notice has been routinely accepted in antitrust and securities cases which are settled on all-cash non-reversionary terms. But DPPs will take every reasonable action to ensure that Class members receive actual notice and participate in the settlements.

## IV.  DPPs Amend Their Proposed Class Notices to Reflect Counsel's Fee Request and the Payment of Settlement Funds.

At the preliminary approval hearing, the Court expressed its preference that Plaintiffs (1) pay out interim settlements to class members as soon as practicable; (2) request fees from partial settlements rather than wait until the conclusion of the case; and (3) provide class members notice regarding fee requests from these current settlements. *See* Tr. 7:15-14:3.

Consistent with the Court's direction, DPPs will now apply for attorneys' fees from these settlements and distribute settlement funds from them on an interim basis. Accordingly, DPPs will revise their proposed long and short form notices (Dkts. 1298-14, 1298-15) to indicate the following:

- Payments to Settlement Class Members will be distributed after the Settlement Agreements are finally approved by the Court and after any appeals of the final approval order as to these Settlement Agreements are resolved, and those payments will be made on a pro rata basis as explained at Section 13 of the long form notice; and

- At this time, DPPs' counsel will seek 25% of the settlement funds—$8,162,500—to cover counsel's fees, as is consistent with the benchmark award under the "percentage of the fund" approach accepted by the Ninth Circuit. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Paul, Johnson, Alston &Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).[7] Lodestar for DPPs' counsel's fees to date substantially exceeds that amount and can be expected to increase in connection with class certification motion practice, the completion of discovery, preparation for trial and trial.].  DPPs will also seek 10% of the settlement funds--$3,000,000—to reimburse the costs counsel have

---

[7] Counsel will also request $200,000 to pay expenses related to the provision of notice to the Settlement Class Members. DPPs' previously proposed long and short form notices disclose these requests.

advanced to date. Counsel's total costs at this time substantially exceed that amount and can be expected to increase as well. Counsel reserve the right to apply for reimbursement of additional lodestar and costs incurred. DPPs' fee and expense application, to be submitted prior to the Final Approval Hearing, will provide more detail as to counsel's fees billed and costs advanced to date. Any such application will be made pursuant to notice and other requirements under Ninth Circuit Law. *See In re Mercury Interactive Secs. Litig.*, 618 F.3d 988, 993-95 (9th Cir. 2009). These revisions will in no way impact the adequacy of the proposed notice. *See* Dkt. 1298 at 24 (addressing standards for adequacy of form of notice).

Redlined versions of DPPs' proposed long and short form notices indicating the above changes are **Exhibits B and C** to the Saveri Declaration. **Exhibits D and E** are copies of the revised notices in their final form with above changes incorporated.

## V.    DPPs' Will Request Costs and Fees As and When Additional Settlements Are Reached.

If DPPs achieve settlements with any other Defendants prior to trial, DPPs will promptly file for preliminary approval of those settlements, and if practicable will group settlements together for each filing as was done here. Consistent with applicable class action fee jurisprudence. Prior to trial,  DPPs will make applications seeking up to 25% of any settlement fund for attorneys' fees, and an amount not to exceed 10% of the settlement fund for reimbursement of costs as set forth above.

## VI.    Conclusion

DPPs respectfully request that the Court preliminarily approve the Settlement Agreements with the Settling Defendants pursuant to the procedures and schedule set forth in DPPs' Preliminary Approval Motion, as the Motion and proposed notices are amended herein.

November 4, 2016

JOSEPH SAVERI LAW FIRM, INC.

By:    _/s/ Joseph R. Saveri_
Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Joshua Paul Davis (State Bar No. 193254)
Andrew M. Purdy (State Bar No. 261912)
Matthew S. Weiler (State Bar No. 236052)
James G. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:    (415) 395-9940

_Interim Class Counsel for Direct Purchaser Plaintiffs_