Pages 1 - 13

                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

                BEFORE THE HONORABLE JAMES DONATO

IN RE:  CAPACITORS ANTITRUST        )
LITIGATION,                         )
                                    ) No. C 14-3264 JD
                                    ) San Francisco, California
                                    ) Thursday
_____) November 10, 2016

                    **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Indirect**              COTCHETT PITRE AND McCARTHY, LLP
**Purchaser Plaintiffs:**     840 Malcolm Road
                              Suite 200
                              Burlingame, California 94010
                         BY:  **STEVEN N. WILLIAMS, ESQ.**




**For Direct**                JOSEPH SAVERI LAW FIRM, INC.
**Purchaser Plaintiffs:**     505 Montgomery Street
                              Suite 1210
                              San Francisco, California 94111
                         BY:  **JOSEPH R. SAVERI, ESQ.**




**For Defendant**             GIBSON, DUNN & CRUTCHER
**NEC Tokin:**                555 Mission Street
                              Suite 3000
                              San Francisco, California  94105
                         BY:  **GEORGE NICOUD, ESQ.**



            (APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported By:    Debra L. Pas, CSR 11916, CRR, RMR, RPR
                Official Reporter - US District Court
                Computerized Transcription By Eclipse

```
 1  APPEARANCES:   (CONTINUED)

 2

    For Defendant              BAKER & McKENZIE
 3  Okaya Electric:            Two Embarcadero Center, 24th floor
                               New York, New York 10018
 4                      BY:    DARRELL PRESCOTT, ESQ.

 5


 6  For Defendant              LATHAM & WATKINS, LLP
    Nitsuko Electronics:       505 Montgomery Street
 7                             Suite 2000
                               San Francisco, California 94111
 8                      BY:    BELINDA S. LEE, ESQ.

 9


10  For Defendant              O'MELVENY & MYERS, LLP
    Rohm Semiconductor:        Two Embarcadero Center
11                             28th Floor
                               San Francisco, California 94111
12                      BY:    MICHAEL TUBACH, ESQ.

13


14  For Defendant              MORRISON AND FOERSTER LLP
    Fujitsu, Ltd.              425 Market Street
15                             San Francisco, California 94105
                        BY:    DEREK FORAN, ESQ.
16

17                             _ _ _

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2   NOVEMBER 10, 2016                               10:59 A.M.
 3           THE CLERK:  Calling Civil 14-3264, In Re Capacitors
 4   Antitrust Litigation.
 5       Counsel?
 6           MR. WILLIAMS:  Good morning, your Honor.  Steve
 7   Williams for the Indirect Purchaser Plaintiffs.
 8           MR. SAVERI:  Good morning, your Honor.  Joseph Saveri
 9   on behalf of the Direct Purchaser Plaintiffs.
10           MR. NICOUD:  Good morning, your Honor.  Trey Nicoud
11   for defendant NEC Tokin.
12           MR. PRESCOTT:  And Darrell Prescott for the Okaya
13   defendants.
14           MS. LEE:  Good morning, your Honor.  Belinda Lee on
15   behalf of the defendant Nitsuko Electronics.
16           MR. TUBACH:  Good morning, your Honor.  Michael
17   Tubach on behalf of the Rohm defendants.
18           MR. FORAN:  Good morning, your Honor.  Derrick Foran
19   for Fujitsu, Limited.
20           THE COURT:  Okay.  Come on up.
21       So the idea now is you're going to do each one of these as
22   free-standing packages, right?  Get all the fees done and
23   everything done at the same time?
24           MR. SAVERI:  Yes.  We heard you loud and clear last
25   time.  So our plan is for each -- for each tranche of
```

1  settlements, to have them kind of self-contained units.
2       So that means a notice program, which will include an
3  application for attorney's fees, will be a specific application
4  for costs and we will continue to do that until we're done.
5           **THE COURT:**  And the only thing that -- that all
6  sounds fine to me, but I think Mr. Williams said:  Well, maybe
7  we can save money by doing one round of notice, but --
8           **MR. WILLIAMS:**  Your Honor --
9           **THE COURT:**  Is that your idea?
10          **MR. WILLIAMS:**  No.  I think it was --
11          **THE COURT:**  One round of claims?
12          **MR. WILLIAMS:**  Yes.  And the rationale for that --
13          **THE COURT:**  Ah, okay.
14          **MR. WILLIAMS:**  -- that cost is going to be the same
15 whether we do it for this round or whether we do it later when
16 there are more recoveries.
17          **THE COURT:**  So you want to just warehouse the money?
18          **MR. WILLIAMS:**  We think it would be more -- it would
19 save money essentially because we would be spending less to get
20 the money to the class members rather than doing it multiple
21 times.
22          **THE COURT:**  We do notice.  We let opt-outs happen.
23 We have a final approval hearing.  We would have a separate fee
24 motion.  And then people just would not get their checks until
25 the whole case is resolved, is that --

```
 1              MR. WILLIAMS:  Not necessarily the whole case.  So
 2   if, for example, there were more settlements that become final
 3   next year, then it might be the appropriate time to process
 4   those.
 5              THE COURT:  I see.
 6              MR. WILLIAMS:  It doesn't have to wait til the end,
 7   but we just think if the estimate is $200,000 to process that,
 8   it makes more sense to spend that $200,000 once than --
 9              THE COURT:  I agree.  I like that.
10         What do you think?
11              MR. SAVERI:  So, your Honor, to me, it's really a
12   trade-off or a judgment call between the value of getting
13   dollars in the hands of claimants sooner, which there is a
14   value to that.
15              THE COURT:  Well, let me just jump in.  I assume this
16   will be -- typically this money is invested and there are --
17   you know, you make some attempt to get a reasonable rate of
18   return, that kind of thing.  It's not going to be an interest
19   free --
20              MR. SAVERI:  No.  We're not going to bury it in the
21   backyard and then dig it up when we're ready.
22         But the --
23              THE COURT:  There may be other reasons to do that,
24   but...
25              MR. SAVERI:  Well, I didn't think we were going to
```

```
 1  talk about Tuesday today.
 2            THE COURT:  No, no, no.  I didn't say a word about
 3  that.  I want to be very clear, I said nothing about that.
 4            MR. SAVERI:  The great thing about --  I don't know
 5  if we have enough -- at least from my perspective, have enough
 6  time.
 7       But I think we do have an interest in getting dollars in
 8  hands of claimants.  We want to do it in an efficient way.  We
 9  share Mr. Williams' concern that we don't want to blow all the
10  money, frankly, on administration when we could do it more
11  efficiently.
12            THE COURT:  So are you disagreeing?
13            MR. SAVERI:  No.  I think we may have a slightly
14  different view based on the differences in the direct and
15  indirect purchaser class.  We have a smaller group of people.
16  Our administrative -- or entities really.  We have a smaller
17  administrative burden in processing those claims.
18       And so all I'm really saying is we -- we may end up in
19  different places based on our calculation about what's the best
20  way to spend the money.
21            THE COURT:  Well, what do you estimate your costs to
22  be, claim administration costs?
23            MR. SAVERI:  Well, we think that our current
24  estimate for a distribution to something is -- approximates
25  what Mr. Williams said, a couple hundred thousand dollars.
```

1  We have --
2       **THE COURT:** If that's true then, I mean, so
3  Mr. Williams thinks you will save money on that. Why will we
4  not achieve the same savings?
5       **MR. SAVERI:** The only -- well, because we -- of the
6  way we have set up the claims program, we will basically
7  finalize the amount of the claims that we can use for pro rata
8  distribution early in the process. We're going to be spending
9  resources up front to get that right. Once we have that kind
10 of done, it will make it easier to do it repeatedly.
11      But, again, Judge, I really think it's a judgment call
12 about whether -- the value of getting money back into the hands
13 of injured people.
14      **THE COURT:** Well, you're class counsel. What do you
15 want to do? Do you want to do it that way?
16      **MR. SAVERI:** I would like to have the ability to do
17 it soon.
18      **THE COURT:** That's fine.
19      **MR. SAVERI:** But I think the way it would work, your
20 Honor, is I think it's appropriate to have the flexibility to
21 do that. We would not come back and do the distribution
22 until --
23      **THE COURT:** I get that. Just to jump in. My only
24 concern is class members -- I don't want there to be tranches
25 where the rules change. I mean, I just want just adopt one

```
 1  thing.  Make it easy on the class members, okay?
 2       So if you're going to do it that way, then do it the whole
 3  way through.  Okay?  I don't want to do:  Okay, this time we're
 4  going to wait.  Next time we're not.  Next time we're not.  The
 5  fourth time we're going to wait.
 6       Just pick one.  I am fine either way.  Okay?  I mean, you
 7  know, you're the shepherd of class counsel, making sure the
 8  money is not wasted.  So if you decide that, you know, this is
 9  not going to be a big waste, then that's fine.  Let's just
10  stick with it the whole way through.
11           MR. SAVERI:  That's fine, your Honor.  I would just
12  say that, you know, I think it's important for people who do
13  Rule 23 cases to be able to make sure that the people who
14  participate in them feel like they are getting real benefits in
15  a timely way and so one of those ways is to actually get a
16  check.  So it's important to me to be able to do that sooner
17  rather than later.
18           THE COURT:  I agree with that.  It's just I don't
19  want that to be at the expense of tripling the admin fees
20  though.  That's all.
21           MR. SAVERI:  I hear you, your Honor.  We have no
22  interest in multiplying that unnecessarily.
23           THE COURT:  All right.  So I'll let you two -- just
24  pick one.  If it's different, that's fine.  Because you're
25  different classes, that's fine.
```

1          **MR. SAVERI:**  Right.

2          **THE COURT:**  But let's do that.

3      And then everything else has been fixed, right?

4          **MR. SAVERI:**  Yes.

5          **THE COURT:**  You're going to take your fees out.
6  You're going to take your costs out.  We're going to go through
7  the whole thing on a set-by-set basis.

8          **MR. WILLIAMS:**  Yes, your Honor.  And what we have
9  done is we put in the absolute most it could ever be.  We hope
10 it would be less, but at least we're giving the members notice
11 of the highest amount that could come out.

12         **MR. SAVERI:**  There was a typo in my notice about the
13 total amount of fee, though, that I wanted to bring to the
14 Court's attention.

15         **THE COURT:**  Oh, a typo.  Docket number is 1378.

16         **MR. SAVERI:**  Yes.  Paragraph 19 of the notice.

17         **THE COURT:**  Oh, okay.

18         **MR. SAVERI:**  So we are asking for 25 -- we will ask
19 for 25 percent of the settlement pursuant to the Court's
20 benchmark.  We did the math.  Instead of it being 8,162,500, if
21 you do the math correctly, it's 8,150,000.  So we made an error
22 and we apologize for the confusion, but we need to correct
23 that.

24         **THE COURT:**  That's fine.  We'll just fix that.  Okay.
25 I'm not going to do that.  You're going to have to do that.

```
 1  That's fine.  I appreciate that.
 2         All right.  Anything else on settlement?
 3              MR. SAVERI:  No.
 4              MR. WILLIAMS:  No, your Honor.
 5              THE COURT:  Defendants?
 6              MR. NICOUD:  Your Honor, no, your Honor.  I think the
 7  -- there was another concern addressed in the first hearing.
 8  We've submitted some papers on that, but if that's been taken
 9  care of to the Court's satisfaction, that's fine.
10              THE COURT:  I think that's fine.
11         All right.  Anything else?
12              MR. WILLIAMS:  The only --
13              MR. SAVERI:  I'm sorry, your Honor.  We did not set a
14  date for final approval in our papers.
15              THE COURT:  Oh, yes.  So how many days are we giving?
16              MR. SAVERI:  We contemplated 45 after the notice is
17  given.
18              THE COURT:  That's a little brisk.  I typically do
19  minimum of 60.
20              MR. SAVERI:  Let's do -- 60 is fine, your Honor.
21  And, frankly --
22              THE COURT:  It's the holiday season, too.
23              MR. SAVERI:  That makes a lot of sense.  Frankly, I
24  don't recall the date Mr. Williams had, but I know that I have
25  a trial starting at the end of January, so it would make
```

```
 1  sense -- it would help me if I could schedule it for a Friday.
 2  I know that's when -- that's when this Court is dark.  If you
 3  can't do that, someone else will have to handle it.
 4              MR. WILLIAMS:  If I could --
 5              THE COURT:  So what is 60 days from today, Lisa?
 6              THE CLERK:  It would be January 24th.
 7              MR. SAVERI:  We think it's probably going to take
 8  until -- excuse me, your Honor.  To get the notice out, we
 9  would assume something like December 1 is when we'll mail.
10              THE COURT:  Oh, okay.  Why don't we set it for --
11              MR. WILLIAMS:  If I may, your Honor?
12              THE COURT:  Yes.
13              MR. WILLIAMS:  It's not necessary that we be on the
14  same schedule for the Indirects.  Because we do publication,
15  our program takes longer.
16       We had submitted an entire schedule.  Our mail and
17  publication doesn't begin until January.  And we then give 60
18  days for objections, exclusions.  So what we had calculated
19  when you build in then responses to objections, final approval
20  papers, was a final approval date of May 18th of 2017.
21              THE COURT:  That's fine.  But you want to go faster,
22  right?
23              MR. SAVERI:  I do, your Honor.
24              THE COURT:  How about -- what's the second Thursday
25  in February?
```

```
 1              THE CLERK:   That would be February 9.
 2              THE COURT:   How about February 9?  When does your
 3   trial start?
 4              MR. SAVERI:   We go Monday to Thursday.
 5              THE COURT:   How about the last Thursday in February,
 6   February 26th?
 7              THE CLERK:   23rd.
 8              THE COURT:   23rd.
 9              MR. SAVERI:   I think that will be fine.
10              THE COURT:   You want it earlier than that?
11              MR. SAVERI:   Well, I'm just struggling because --
12              THE COURT:   You can't do it between now and your
13   trial date.
14              MR. SAVERI:   That's right.  That's right.
15              THE COURT:   You want to do it later?
16              MR. SAVERI:   Can we do it the first week in March?
17              THE COURT:   That's fine.  March...
18              THE CLERK:   2nd.
19              MR. SAVERI:   That's a Thursday?
20              THE COURT:   March 9th?
21              MR. SAVERI:   I would like to do March 2nd.
22              THE COURT:   All right.  3/2/17 it is.
23              MR. WILLIAMS:   Your Honor, if I may make a correction
24   in my schedule.  I just realized I had put my date on my son's
25   college graduation.  So if I can move that date either up a
```

```
 1  week or probably more like back a week to May 25?
 2              THE COURT:  That's fine.  May 25.  When is -- May 25
 3  is the date you want?
 4              MR. WILLIAMS:  May 25 would be the date we ask for,
 5  your Honor.
 6              THE COURT:  Oh, there you go.  May 25 it is.
 7         All right.  Anything else I can help you with?
 8              MR. SAVERI:  No.  Thank you, your Honor.
 9              MR. WILLIAMS:  No.  Thank you, your Honor.
10              THE COURT:  Okay.  Okay.  Thank you.
11         Oh, also the Chambers copies are dropping off, okay?  Just
12  one copy of everything, but we've not been getting them
13  recently.  So make sure you send me a Chambers copy.
14              MR. WILLIAMS:  We will make sure, your Honor.
15              MR. SAVERI:  Thank you, your Honor.
16              THE COURT:  All right.  Thanks.
17              THE CLERK:  All rise.  Court is in recess.
18         (Proceedings adjourned.)
19
20
21
22
23
24
25
```

*Debra L. Pas, CSR, CRR, RMR, RPR*
*Official Reporter - U.S. District Court - San Francisco, California*
*(415) 431-1477*

**CERTIFICATE OF OFFICIAL REPORTER**

   I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Tuesday, November 22, 2016