Joseph W. Cotchett (36324)
Steven N. Williams (175489)
Adam J. Zapala (245748)
Elizabeth Tran (280502)
Mark F. Ram (294050)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
etran@cpmlegal.com
mram@cpmlegal.com

*Interim Lead Counsel for the
Putative Indirect Purchaser Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL INDIRECT PURCHASER ACTIONS | Master File No. 14-cv-03264-JD<br><br>MDL No. 2574<br><br>**INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING APPLICATION OF STATE COMPETITION LAW IN RESPONSE TO ORDER RE PHASE I OF SUMMARY JUDGMENT ON FOREIGN TRANSACTIONS**<br><br>Hearing date: January 19, 2017<br>Hearing time: 10:00 a.m.<br>Judge: Hon. James Donato<br>Courtroom 11, 19th Floor |

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT OF FACTS AND PROCEDURAL HISTORY | | 2 |
| III. | ARGUMENT | | 3 |
| | A. | The FTAIA Does Not Bar IPPs' Claims | 3 |
| | B. | Defendants Misrepresent this Court's Holding as it Applies to DPPs' Foreign Purchaser Claims to Argue for Dismissal of IPPs' Domestic Claims | 4 |
| | C. | New York's Donnelly Act Applies to IPPs' Claims | 6 |
| | D. | Applying Defendants' Logic to the Donnelly Act Would Create Gaping Holes in the Enforcement of New York's Antitrust Laws | 10 |
| | E. | New York's Consumer Protection Act Applies to IPPs' Claims | 10 |
| | F. | Florida's Deceptive and Unfair Trade Practices Act Applies to IPPs' Claims | 12 |
| | G. | Defendants Have Failed to Meet Their Burden as to Any of the Remaining States Under Which IPPs Sue | 15 |
| IV. | CONCLUSION | | 15 |

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574    i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cianci v. Superior Court*,
  40 Cal.3d 903 (1985) ..................................................................................................... 15

*Execu-Tech Bus. Sys. v. New Oji Paper Co.*,
  752 So.2d 582 (Fla. 2000) ......................................................................................... 12, 13

*Five for Entertainment S.A. v. Rodriguez*,
  877 F.Supp.2d 1321 (S.D. Fla. 2012) ............................................................................. 14

*Global Reinsurance Corp.—U.S. Branch v. Equitas Ltd.*,
  18 N.Y.3d 722 (2012) .................................................................................................. 7, 9

*Goshen v. Mutual Life Ins. Co.*,
  98 N.Y.2d 314 (2002) ..................................................................................................... 11

*In re Auto. Parts Antitrust Litig. (Automotive Bearings)*,
  2014 U.S. Dist. LEXIS 127751 (E.D. Mich. Aug. 26, 2014) ......................................... 15

*In re Auto. Parts Antitrust Litigation (Wire Harness)*,
  2013 U.S. Dist. LEXIS 80338 (E.D. Mich. Jun. 6, 2013) ..................................... 7, 10, 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 5725008 (N.D. Cal. Sept. 30, 2016) ............................................................. 3, 4

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
  2014 U.S. Dist. LEXIS 35391 (N.D. Cal. Mar. 13, 2014) .......................................... 6, 10

*In re Dynamic Random Access Memory Antitrust Litig.*,
  536 F.Supp.2d 1129 (N.D. Cal. 2008) ............................................................................ 11

*In re Lithium Ion Batteries Antitrust Litig.*,
  2014 U.S. Dist. Lexis 141358 (N.D. Cal. Oct. 2, 2014) ............................... 6, 10, 11, 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2014 U.S. Dist. Lexis 132228 (N.D. Cal. Sept. 18, 2014) .............................................. 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  822 F.Supp.2d 953 (N.D. Cal. 2011) ....................................................................... passim

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F.Supp.2d 1109 (N.D. Cal. 2008) ............................................................................ 11

*In re Vitamins Antitrust Litig.*,
  U.S. Dist. LEXIS 7397 (D. D.C. May 9, 2000) .......................................................... 7, 13

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I
MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574                                                                                              ii

*Lotes Co., Ltd. v. Hon Hai Precision Industry Co.*,
   753 F.3d 395 (2d Cir. 2014) ...................................................................................................3

*Millenium Communc'ns & Fullfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.*,
   761 So.2d 1256 (Fla. Ct. App. 2000) ...................................................................................12

*Minn-Chem, Inc. v. Agrium Inc.*,
   683 F.3d 845 (7th Cir. 2012) ............................................................................................3, 5

*Nieman v. DryClean U.S.A. Franchise Co.*,
   178 F.3d 1126 (11th Cir. 1999) ...........................................................................................14

*Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*,
   210 F.3d 1099 (9th Cir. 2000) .............................................................................................15

*People ex rel. Spitzer v. Direct Revenue, LLC*,
   2008 N.Y. Misc. LEXIS 5562 (N.Y. Sup. Ct. Mar. 12, 2008) ............................................12

*United States v. Hui Hsiung*,
   778 F.3d 738 (9th Cir. 2015) .......................................................................................1, 3, 9

**Statutes**

Fla. Stat. § 501.201 ......................................................................................................................12

Fla. Stat. § 501.203 (3)(a) ............................................................................................................14

Minn. Stat. § 325D.66 ..................................................................................................................15

N.Y. Gen. Bus. Law § 340 .............................................................................................................6

N.Y. Gen. Bus. Law § 349 .....................................................................................................10, 11

**Regulations**

16 C.F.R. § 436.1 .........................................................................................................................14

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574
iii

## I. INTRODUCTION

This Court directed the parties to file supplemental briefs addressing the following question: "to what extent, if any does the challenged conduct come within the territorial scope of the state law IPPs sue under?" Order re Phase I of Summary Judgment on Foreign Transactions ("Phase I Order"), ECF No. 1302, at 14. The short answer is: All of it.

Defendants' motion concerned only one category of commerce at issue in the Indirect Purchaser Plaintiffs' ("IPPs") case: sales of capacitors from foreign Defendants to foreign distributors who resell those capacitors to purchasers in the United States and pass-along the supra-competitive prices in domestic commerce. In their new brief, Defendants again argue that the FTAIA bars such claims although no court has ever so held and controlling Ninth Circuit authority directly contradicts their assertion. *See* Defendants' Supplemental Brief ("Def. Supp. Br."), ECF No. 1372, at 2-3; *see also United States v. Hui Hsiung*, 778 F.3d 738, 750-751 (9th Cir. 2015) (*"Hsiung II"*). Defendants also erroneously seek to convince this Court that the logic of its initial ruling requires dismissal of IPPs' claims. Def. Supp. Br. at 1-3. This argument is disingenuous: this Court's reference to getting "through the eye of that needle" referred to DPPs' claims on behalf of foreign plaintiffs attempting to utilize a "global pricing theory"; not IPPs who purchased capacitors in domestic commerce. Phase I Order at 8-11. Had the Court already concluded that the FTAIA barred IPPs' claims, there would be no reason to engage in the present task of determining whether state law is *more* restrictive than the FTAIA.

IPPs sue under the antitrust and restraint of trade laws of California, Iowa, Michigan, Minnesota, Nebraska, and New York (IPPs' Fourth Consolidated Complaint ("IPP Compl."), ECF No. 1112, ¶¶ 392-40), as well as the consumer protection and unfair competition laws of California, Florida, Nebraska, and New York (*id.* at ¶¶ 407-419). Defendants do not address IPPs' claims under California, Iowa, Michigan, Minnesota and Nebraska law and Defendants' motion should be denied as to these states for that reason alone. Moreover, none of these states, including New York and Florida (states that Defendants do address) have limited the scope of their competition laws to conduct occurring wholly or mainly within its borders, or by some other boundary that is less than coterminous with federal law under the facts of this case. Contrary to

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I
MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574                                                                    1

Defendants' argument, each of these states applies its competition law to conduct which causes an antitrust effect within the states' borders, without consideration for where the injury-causing conduct or initial sale took place.

For example, when New York applies its antitrust law to a *per se* violation of the antitrust laws, such as a price-fixing conspiracy, that causes injury to competition in the state, New York law does not care whether the conspiratorial conduct took place in Poughkeepsie, Pennsylvania, or Panama. And the same is true under the laws of California, Florida, Iowa, Michigan, Minnesota, and Nebraska. The laws of New York and Florida clearly apply to Defendants' sales of capacitors to foreign distributors who resell those capacitors in the United States, and specifically to purchasers in New York and Florida.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

IPPs purchased standalone capacitors in the United States from distributors at supra-competitive prices. IPP Compl., ¶¶ 1-3, 318, 336. The distributors purchased their capacitors directly from Defendants and passed along the supra-competitive prices to the IPP Class. *Id.*, ¶¶ 12, 317. Collectively, Defendants directly imported into the United States hundreds of millions of dollars of capacitors for direct sale to U.S. customers or to supply their U.S. subsidiaries. *See* Declarations of Defendants, ECF Nos. 915-1 through 29; 916-1 through 11. Defendants also sold standalone capacitors to foreign distributors, who in turn pass along the supra-competitive prices paid to purchasers in the United States. IPP Compl. ¶¶ 2-3, 278-279; *see also* Donovan Decl., Ex. 1, IPPs' Resps. & Objs. To Defs.' Second Set of Interrogatories, ECF No. 911-2 ("IPPs' Rog Responses"). As alleged in IPPs' Fourth Consolidated Complaint, given the size and importance of the market, the United States was a focus of Defendants' price-fixing conspiracy. IPP Compl, ¶¶ 347-368.

Defendants' underlying summary judgment motion argued that IPPs' claims are barred by the FTAIA as a matter of law whenever there is an initial foreign-to-foreign sale. *See* Defs.' Joint Mot. Summ. J. at 2 ("Defs.' MSJ"), ECF No. 911; *see also* IPPs' Opp. Defs'. MSJ at n. 1, ECF No. 965. Specifically, with respect to the "domestic effects" exception, Defendants argued (a) that the domestic effects of the conspiracy did not "give rise" to IPPs' claims; and (b) that IPPs'

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I
MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574　　　　2

are not sufficiently "direct."  Defs.' MSJ at 12-13.

## III. ARGUMENT

### A. The FTAIA Does Not Bar IPPs' Claims

Ignoring this Court's direction to address only the limited question of whether the state laws that IPPs invoke are more restrictive than the reach of federal law, Defendants' brief seeks to reargue whether the FTAIA bars such claims.  Def. Supp. Br. at 2 ("As Defendants established in their summary judgment papers, the FTAIA bars IPPs' state law claims based on the challenged sales[.]").  The FTAIA does not, as the Ninth Circuit clearly held in *Hsiung II*, 778 F.3d at 750-751(holding that initial foreign-to-foreign sales that are resold in the United States, *i.e.*, indirect purchases, are not barred by the FTAIA), and as other district courts and circuit courts have held. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 822 F.Supp.2d 953, 968 (N.D. Cal. 2011) ("*LCDs*") (upholding claims based on initial foreign-to-foreign sales that were resold to indirect purchasers in the United States); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944, 2016 WL 5725008, \*\*3-5 (N.D. Cal. Sept. 30, 2016) ("*CRTs*") (finding that claims based on initial foreign-to-foreign sales where goods are resold to purchasers in the United States qualify under *both* the import exception *and* the domestic effects exception); *Lotes Co., Ltd. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 413 (2d Cir. 2014) ("There is nothing . . . that necessarily prevents the transmission of anticompetitive harms or renders any and all domestic effects impermissibly remote and indirect.  Indeed, given the important role that American firms and consumers play in the global economy, we expect that some perpetrators will design foreign anticompetitive schemes for the very purpose of causing harmful downstream effects in the United States."); *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845 (7th Cir. 2012) ("*Minn-Chem*").

In *Hsiung II*, despite adopting a more narrow proximate cause test than other circuit courts, the Ninth Circuit nevertheless found that an initial foreign-to-foreign sale of the price-fixed LCDs incorporated into a larger, complex television and indirectly sold into the United States did not bar application of the U.S. antitrust laws.  778 F.3d at 750-51.  It is simply impossible to reconcile the Ninth Circuit's decision in *Hsiung II* with Defendants' purely legal argument in this case – perhaps the reason that Defendants barely mentioned the case in their

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574      3

underlying brief and never mention it in their present brief. This is precisely what Judge Tigar recently held in the *CRTs* litigation in rejecting the same argument that Defendants advance in this case. *CRTs*, 2016 WL 5725008 at **3-5 (claims based on initial foreign-to-foreign sales where goods are resold to purchasers in the United States qualify under *both* the import exception *and* the domestic effects exception).

What is worse, Defendants attempt to convince this Court that the logic of its initial Phase I Order already applies to bar IPPs' claims without even having to consider the reach of the state law claims. *See* Def. Supp. Br. at § I. But that misunderstands the Court's holding, *see infra*, and also turns the analysis on its head. Had this Court actually concluded that the FTAIA bars IPPs' claims, no purpose would be served by determining whether the reach of IPPs' state law claims are *more* restrictive than the FTAIA because the FTAIA would have already barred them. Surely this Court did not direct the parties to spend their time and money briefing an issue that had already been rendered moot by the Court's previous order.

### B. Defendants Misrepresent this Court's Holding as it Applies to DPPs' Foreign Purchaser Claims to Argue for Dismissal of IPPs' Domestic Claims

Defendants argue that state competition law "can only apply to claims stemming from alleged anticompetitive conduct outside the United States relating to foreign commerce in very limited circumstances, referred to by this Court as the 'eye of th[e] needle'." Def. Supp. Br. at 1. Defendants further argue—despite moving for summary judgment on a pure issue of law—that:

> the Court's discussion of the FTAIA in the context of DPPs' claims suggests that additional factual submissions may be required to resolve the issue of whether 'the U.S. effects of the [Defendants'] conduct—i.e., increased prices in the United States—proximately caused the foreign' injuries to the third-party distributors that IPPs claim purchased capacitors overseas for resale in the United States.

*Id.* at 3. Yet that is not at all what the Court held in its Phase I Order as to IPPs, nor is it an accurate statement of the law or even of IPPs' claims in this case. IPPs do not have to show *the domestic effects* of Defendants' conspiracy caused harm *to the foreign distributors*, who are further up the distribution chain. That makes no sense whatsoever and no court has ever so held.

*First*, Defendants' citation to language in the Court's Phase I Order refers to a section pertaining *only* to the DPPs' and Flextronics' arguments as to whether *foreign plaintiffs'* claims

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574    4

are barred by the FTAIA. Defendants made a bright line argument pertaining to these claims, which the Court summarily rejected, while DPPs and Flextronics made the argument that the domestic effects of the conspiracy may give rise to the foreign plaintiffs' claims where there is a "global pricing theory." *See* Phase I Order at 8-11. It is in this factual scenario—not present in the IPP case—that the Court stated "*claims of foreign purchasers* who were invoiced and received their capacitors abroad are not barred as a matter of law, but . . . [that] leaves only a small opening for plaintiffs to establish proximate cause in this category[.]" *Id.* at 11 (emphasis added). But, as has been clear throughout these proceedings, IPPs are not bringing claims on behalf of foreign purchasers. Consequently, IPPs do not have to show that the domestic effects of the conspiracy gave rise to the foreign distributors' claims (claims that do not exist in the IPPs' case, in any event). IPPs are U.S. companies and residents that purchased capacitors at supra-competitive prices *in domestic commerce*. *See Minn-Chem*, 683 F.3d at 854 (distinguishing *Empagran* and holding "plaintiffs [in *Empagram*] were foreign purchasers of allegedly price-fixed products that were sold in foreign markets . . . . In our case, by contrast, the plaintiffs are all U.S. purchasers, and so the particular problem addressed in *Empagran* does not arise here."). Here, Defendants' price-fixing conduct caused supra-competitive prices to be passed along to domestic commerce

*Second*, despite moving for summary judgment as a matter of law and stating that their motion did not depend on factual issues specific to this case, Defendants now appear to argue that IPPs must provide more facts and supplement their interrogatory responses for purposes of this motion. Def. Supp. Br. at 3. Yet again, this position is at odds with both this Court's previous rulings and with how summary judgment in a typical case operates. *See* Oct. 6, 2016 Tr. at 43-46, Ex. A to the Declaration of Steven N. Williams ("Williams Decl."), filed concurrently herewith.[1] Defendants' brief essentially asks for reconsideration of this Court's holding.

---

[1] "Counsel for Defendants: [W]e think the most sensible way would be for the plaintiffs . . . to proffer their proof and their theories as to why that proof satisfies the—the exceptions to the FTAIA.
The Court: Well, you-all are invoking the FTAIA. So it's your burden.
Counsel for Defendants: But we think that the most effective way to move forward would be for plaintiffs to actually put in the proof that they have, which might thread the needle that -- in connection with Your Honor's legal rulings . . . .

Law Offices
COTCHETT, PITRE & McCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574      5

### C. New York's Donnelly Act Applies to IPPs' Claims

New York's Donnelly Act (N.Y. Gen. Bus. Law § 340 *et seq.*) reaches foreign conduct that causes antitrust injury to New York purchasers. Here, the Donnelly Act applies to Defendants' sales of capacitors to foreign distributors who resold those capacitors in domestic commerce to the IPP class because Defendants' price-fixing conduct caused antitrust injury in New York and caused harm to competition in New York. *See* IPP Compl., ¶ 406.

As several courts within this Circuit have held, the Donnelly Act is routinely applied to claims of indirect purchasers who are victims of international price-fixing conspiracies where an initial foreign-to-foreign sale took place and the price-fixed product was ultimately sold to an indirect purchaser in the United States. *See*, *e.g.*, *LCDs*, 822 F.Supp.2d at 968, Williams Decl., Ex. B (Defs.' Mot. Re. Indirect Purchaser Claims Based on Foreign Sales, No. 07-md-01827, ECF No. 2913 (N. D. Cal. June 13, 2011)), and Williams Decl., Ex. C (IPPs' Third Consol. Am. Compl., ECF No. 2694, (Apr. 29, 2011)) (upholding Donnelly Act claims where there was an initial foreign-to-foreign sale that was resold in United States to indirect purchasers); *CRTs*, 2014 U.S. Dist. LEXIS 35391, **63, 66, 101, 106 (N.D. Cal. Mar. 13, 2014) (denying French defendant's motion to dismiss Donnelly Act claim where defendant's "alleged conduct resulted in a New York company being harmed, [giving] New York an interest in applying its own law to the controversy); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420, 2014 U.S. Dist. Lexis 141358 **49, 60-61, nn. 6-7, 74, n.11, 83-102, 194-195 (N.D. Cal. Oct. 2, 2014) ("*Batteries*") (denying motion to dismiss indirect purchasers' Donnelly Act claims arising from allegations of

---

The Court: Well, the plaintiffs bear the burden of proof under the Sherman Act at trial. And that means they have to, if they want to reach outside of the U.S., also show that they can do that. But that's at trial. You-all asked for summary judgment. You're the moving party . . . . But if you don't want to do that, then I would just consider that you're dropping the motion . . . . It's not up to them to say, show me that's wrong. You-all are the moving party . . . . you have to show that there's no genuine dispute of material fact and you're entitled to judgment as a matter of law. I mean, that's your burden . . . . So if you don't want to take it the next 50 yards, that's fine. We'll just deem you're not doing summary judgment. But I'm not going to make it plaintiffs – it's just not right.
That's not procedurally correct."
Defense Counsel: Understood, Your Honor.
The Court: Do you want to abandon them?
Defense Counsel: No, Your Honor."

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I
MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574                                                                                    6

"multi-year conspiracy among Japanese and Korean corporations").

This is not only the law within the Ninth Circuit; it is also the holding of every district court that has considered the issue. For example, in the sprawling MDL, *In re Auto. Parts Antitrust Litigation (Wire Harness)*, Judge Battani of the Eastern District of Michigan rejected precisely the same argument that Defendants advance in this case. No. 12-md-02311, 2:12-cv-00103, 2013 U.S. Dist. LEXIS 80338, **75-81 (E.D. Mich. Jun. 6, 2013) ("*Wire Harnesses*"). The *Auto Parts* litigation involves a price-fixing conspiracy originating in Japan, whereby suppliers of parts for automobiles conspired to fix prices, sold the price-fixed parts to Japanese automobile makers who incorporated those price-fixed parts into cars that were ultimately sold in the United States. The defendants in *Auto Parts* argued that this factual scenario created an insufficient intrastate nexus with New York under the Donnelly Act. In rejecting that argument, Judge Battani found that in a price-fixing case, the "New York connection" required was satisfied by allegations that purchasers in New York paid supra-competitive prices. This was all that was required under the Donnelly Act to satisfy any concerns over its extraterritorial application. *Wire Harnesses*, 2013 U.S. Dist. LEXIS 80338 at **75-81. "IPPs purchased price-fixed products that entered the state and therefore became subject to the antitrust laws of that particular state[.]" *Id.* at *78. Specifically, the court found that New York "local interests" were affected by allegations that indirect purchasers in the state paid supra-competitive prices. *Id.* at **79-80. *See also In re Vitamins Antitrust Litig.*, No. 99-197, 2000 U.S. Dist. LEXIS 7397, **18, 66-69 (D. D.C. May 9, 2000) ("*Vitamins*") (Donnelly Act applies to allegations of "massive, long-running international conspiracy" to fix prices and manipulate international vitamins and vitamin products market).

Defendants' reliance on *Global Reinsurance Corp.—U.S. Branch v. Equitas Ltd.*, 18 N.Y.3d 722 (2012), is misplaced. In *Global Reinsurance*, plaintiff was the New York branch of a German reinsurance corporation. 18 N.Y.3d at 726. Defendants were London-based entities in the business of providing retrocessionary reinsurance, covering a variety of risks, including so-called "non-life" coverage for environmental, catastrophic, and asbestos-related exposures. *Id.* By the early 1990s, it became clear that many reinsurers' exposure would outstrip reserves. *Id.* A group of reinsurers from London created a new entity, Equitas, to assume obligations under

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I
MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574                                                                    7

existing retrocessional reinsurance policies. *Id.* at 727. This consolidation was "reviewed and found unobjectionable by" foreign antitrust regulators. *Id.*

The purpose in creating Equitas was to take a "hard-nosed" approach aimed at limiting insurance exposure, and plaintiff alleged Equitas' new claim resolution procedures caused denials on claims that would have been approved by individual Lloyd's members. *Id.* at 727-28. According to plaintiff, because Equitas' procedures were only possible due to the elimination of competition among other retrocessional reinsurers in the Lloyd's marketplace, Global Reinsurance's New York branch filed a Donnelly Act claim, alleging that establishment of Equitas suppressed competition in the retrocessional reinsurance market. *Id.* at 728-29.

The New York Court of Appeals held that plaintiff failed to state a claim because market power was not adequately alleged. *Id.* at 733. The Court went on to conclude that even if plaintiff could allege market power, the Donnelly Act did not apply to the specific circumstances alleged. Key for the Court was the fact that the plaintiff did not allege any harm to competition in New York. Telling is the Court's summary of the case:

> The complaint alleges, essentially, that a German reinsurer through its New York branch purchased retrocessional coverage *in a London marketplace* and consequently sustained economic injury *when retrocessional claims management services were by agreement within that London marketplace* consolidated so as to eliminate competition over their delivery. Injury so afflicted, attributable primarily to foreign, government approved transactions having *no particular New York orientation* . . .

*Id.* (emphasis added).

The Court did not express a prohibition on applying the Donnelly Act to conspiracies that have their genesis outside the borders of New York (or even the United States), or, where there is an initial foreign-to-foreign sale of a price-fixed product that is sold to indirect purchasers in the state. The Court's analysis did not turn on the fact that the conspiracy had an international flavor to it; rather, the Court focused on the fact that there was no harm to competition in the State of New York.

Ultimately, the Court concluded that for "a Donnelly Act claim to reach a purely extraterritorial conspiracy, there would . . . have to be" a nexus between the conspiracy and the harm in New York. *Id.* at 736. Yet as several courts since *Global Reinsurance* have held, IPPs in

this action satisfy the nexus requirements. Here, IPPs allege injury to competition in the New York market for capacitors. There is a direct nexus between Defendants' conspiratorial conduct to fix the prices of capacitors and the injury to competition in New York, i.e., price competition for capacitors being restrained, suppressed, and eliminated throughout New York and the prices for electrolytic and film capacitors being raised, fixed, maintained and stabilized at artificially high levels throughout New York. *See* IPP Compl., ¶406.

There are additional grounds upon which the *Global Reinsurance* case presents a poor doctrinal framework for analyzing the domestic effects of a price-fixing conspiracy upon purchasers in New York. *Global Reinsurance*, 18 N.Y.3d at 736 (characterizing the decision as one that "should not be understood as placing some new limitation on the reach of the Donnelly Act" and noting that the factual circumstances of the case were "rare"). For starters, the case was not a *per se*, price-fixing case. Instead, as the court expressly held, the action was a "rule of reason" case and involved allegations of conduct akin to a Sherman Act Section 2 claim. *Id.* at 732. Second, the case did not involve import commerce at all, since the allegations concerned not the shipment of a product into United States' commerce but a service provided (*i.e.*, insurance) and purchased in the London marketplace. Third, also unlike this case, the Court in *Global Reinsurance* assumed that the FTAIA would in fact bar such claims. The Court, therefore, was reluctant to extend the Donnelly Act beyond what it assumed to be the reach of federal antitrust law. *Id.* at 734-736. Such is not the case here, where the Ninth Circuit has expressly held that the FTAIA does not bar claims where there has been an initial foreign-to-foreign transaction. *Hsiung II*, 778 F.3d at 750-751. And finally, the comity concerns that were present in *Global Reinsurance* are not present in this case. There, the Court was concerned with the fact that the consolidation of Equitas was approved by foreign regulators, who found the transaction "unobjectionable." *Global Reinsurance*, 18 N.Y.3d at 734 (characterizing the consolidation as a "*foreign, government approved transaction[]* having no particular New York orientation") (italics added). The same cannot be said in this case, where multiple foreign regulators are pursuing the very Defendants in this action for their unlawful price-fixing conduct and obtaining sizable fines. For all of these reasons, *Global Reinsurance* presents no barrier to the IPPs pursuing their claims

based on sales to foreign distributors who resell price-fixed capacitors to purchasers in the United States.

### D. Applying Defendants' Logic to the Donnelly Act Would Create Gaping Holes in the Enforcement of New York's Antitrust Laws

Defendants' position that New York's Donnelly Act requires more than purchasing a price-fixed product in New York—taken to its logical end-point—creates untenable holes in the enforcement of New York's antitrust laws. Consider the following factual scenario: a price-fixing conspiracy is hatched and carried out in Connecticut (directly adjacent to New York), whereby the conspirators sold the price-fixed product to another entity in Connecticut who in turn resold the price-fixed product to an indirect purchaser in New York. Under Defendants' formulation of the Donnelly Act, the New York indirect purchaser does not have a claim: all of the conduct took place outside of New York and the initial sale of the price-fixed product was also made outside the state. The indirect purchaser's claim, under Defendants' theory, does not have a "particular New York orientation." *See* Def. Supp. Br. at 5. Yet, this has never been the manner in which New York has applied its indirect purchaser law and would result in absurdity. Countless cases have permitted indirect purchasers in New York to sue for conduct *and* initial sales that occurred outside the state, where the price-fixed product was resold to indirect purchasers within the state. *See, e.g., LCDs*, 822 F.Supp.2d at 968; *CRTs*, 2014 U.S. Dist. LEXIS 35391 at **63, 66, 101, 106; *Batteries*, 2014 U.S. Dist. Lexis 141358 at **49, 60-61, nn. 6-7, 74, n.11, 83-102, 194-195; *Wire Harnesses*, 2013 U.S. Dist. LEXIS 80338 at **75-81.

### E. New York's Consumer Protection Act Applies to IPPs' Claims

New York's Consumer Protection Act prohibits "deceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law § 349 ("Section 349"). Contrary to Defendants' argument, there is no requirement that the deceptive act itself occur within the State of New York. Rather, New York law merely requires that purchasers are deceived within the state in order for the statute to reach the deceptive conduct. Stated differently, Section 349 may be applied to deceptive transactions that have their inception outside the state but where the effects of such conduct are suffered within New York.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I
MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574                                                    10

Courts regularly apply Section 349 to claims where New York purchasers have been harmed, and trade has been restrained in New York, by an international price-fixing conspiracy. *See*, *e.g.*, *LCDs*, 586 F.Supp.2d 1109, 1127-28 (N.D. Cal. 2008) (denying motion to dismiss Section 349 claim in an indirect purchaser case and rejecting argument that defendants must make misrepresentations directly to plaintiffs); *Batteries*, 2014 U.S. Dist. Lexis 141358 at \*\*49, 60-61, nn. 6-7, 74, n.11, 83-102, 194-195 (indirect purchasers' Section 349 claim cognizable where it arises from allegations of "multi-year conspiracy among Japanese and Korean corporations and their U.S. subsidiaries to fix the prices of lithium ion battery cells"); *In re Dynamic Random Access Memory Antitrust Litig.*, 536 F.Supp.2d 1129, 1133, 1143-44 (N.D. Cal. 2008) ("*DRAM*") (rejecting defendants' argument that plaintiffs could not bring a claim under Section 349 because "plaintiffs nowhere allege that defendants made any unlawful statements to the indirect purchaser plaintiffs specifically"). The foregoing in-Circuit district court cases cannot be squared with Defendants' arguments. Moreover, even district court holdings from outside this Circuit, are in accord with *LCDs*, *Batteries* and *DRAM*. *See Wire Harnesses*, 2013 U.S. Dist. LEXIS 80338 at \*\*98-100 (rejecting the same argument Defendants advance here and holding that a Section 349 claim exists where there are allegations "that New York consumers paid inflated prices [and] that Defendants took efforts to conceal their agreement from New York plaintiffs and the indirect class.").

*Goshen v. Mutual Life Ins. Co.*, 98 N.Y.2d 314 (2002), relied on by Defendants, does not support the proposition that a defendants' deceptive conduct must occur in New York in order for Section 349 to apply. In fact, *Goshen* holds the opposite; *Goshen* holds that when a defendant acts deceptively in New York, that is not sufficient for a *foreign plaintiff* to invoke Section 349. There, the Court held that a consumer injured in Florida by a deceptive scheme originating in New York may not recover under Section 349. 98 N.Y.2d at 321. The Court held that in order for Section 349 to apply, "the transaction in which the consumer is deceived must occur in New York[.]" *Id.* at 324. Stated differently, "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." *Id.* at 325. The Court did not hold that the deception of a purchaser must originate in New York, or that the deceptive action must occur in

New York, or that in an antitrust action proceeding under Section 349 that the conspiratorial conduct, which included deceptive conduct such as fraudulent concealment, must take place within New York's borders. In *Goshen*, the deception took place in Florida—plaintiff "received the [New York company's] information in Florida. He purchased his policy and paid his premiums in Florida, through a Florida agent." *Id.* at 326. Thus, under the logic of *Goshen*, and common sense, the New York Plaintiff and the New York Damages Class in this action were deceived in New York, *i.e.*, where they purchased the capacitors at issue at supra-competitive prices.

The other New York case cited by Defendants is equally unavailing. In *People ex rel. Spitzer v. Direct Revenue, LLC*, 862 N.Y.S.2d 816, 2008 N.Y. Misc. LEXIS 5562 (N.Y. Sup. Ct. Mar. 12, 2008), a New York trial court held that the Attorney General could not pursue a claim for allegedly deceptive and illegal practices relating to the installation of pop-up advertising software on consumers' computers. There, the Attorney General was pursuing an action against a Delaware corporation with its principal place of business in New York, but failed to identify any New York residents who were affected by the corporation's allegedly wrongful conduct. 2008 N.Y. Misc. LEXIS 5562 at \*\*16-19. The trial court found these allegations jurisdictionally defective. *Id.*

### F. Florida's Deceptive and Unfair Trade Practices Act Applies to IPPs' Claims

The Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et seq.*) (the "Act") reaches Defendants' price-fixing conduct in this action. As stated by a Florida District Court of Appeal, "there are no geographical or residential restrictions contained in the express language of [the Act]." *Millenium Communc'ns & Fullfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.*, 761 So.2d 1256, 1262 (Fla. Ct. App. 2000). In an indirect purchaser price-fixing action brought under the Act, the Florida Supreme Court held, unequivocally, that the Act applies regardless of where the conspiratorial conduct occurs, so long as there is an effect on the Florida market. *Execu-Tech Bus. Sys. v. New Oji Paper Co.*, 752 So.2d 582, 584-85 (Fla. 2000).

In *Execu-Tech*, an indirect purchaser brought a class action against leading manufacturers and trading houses of thermal fax paper, alleging an international conspiracy to fix wholesale prices of the product across the United States. The Florida Supreme Court held that the Act could be applied against defendant New Oji despite the facts that: (1) New Oji sold thermal fax paper only in Japan, not in the United States; (2) there was no evidence that any New Oji paper was sold in Florida during the class period; (3) New Oji maintained no office in Florida; and (4) New Oji is a Japanese corporation. 752 So.2d at 584. The Court reasoned that the indirect purchaser plaintiff "alleged that New Oji . . . deliberately conspired to fix the wholesale price of their product throughout the United States, including Florida. This conduct constitutes a violation of the [Act] . . . . Thus, according to [plaintiff's] complaint, New Oji and the other conspirators committed a tortious act (i.e., a violation of the Act) on Florida soil and subjected themselves to the jurisdiction of the Florida courts." *Id.* at 585.

Courts routinely apply the Act to foreign conduct in international price-fixing conspiracies such as this action. *See*, *e.g.*, *LCDs*, No. 07-md-01827, 2014 U.S. Dist. Lexis 132228, ** 59-64 (N.D. Cal. Sept. 18, 2014), Williams Decl., Ex. D (Defs.' Mot. Summ. J. on Indirect Claims Based on Foreign Sales, ECF No. 9057 (June 2, 2014)) (denying summary judgment on FTAIA grounds in indirect purchaser case to the extent claim under the Act was based on initial foreign sale); *Vitamins*, 2000 U.S. Dist. LEXIS 7397 at **69-74 (indirect purchasers may pursue claim under the Act in case alleging international conspiracy to control and fix global market for vitamins and vitamin pre-mixes); *Batteries*, 2014 U.S. Dist. Lexis 141358 at **49, 60-61, n.7, 83-102, 194-195 (denying motion to dismiss indirect purchasers' claims under the Act arising from allegations of "multi-year conspiracy among Japanese and Korean corporations and their U.S. subsidiaries to fix the prices of lithium ion battery cells").

None of the cases cited by Defendants stand for the proposition that a Florida resident who suffers an antitrust injury in Florida caused by a conspiracy which harms competition in Florida may not sue under the Act when the illegal and conspiratorial conduct takes place outside of Florida's geographical confines, or even where an initial sale of the capacitor was made outside

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574    13

the state and then resold in the state causing the payment of supra-competitive prices within Florida.

Defendants rely on *Five for Entertainment S.A. v. Rodriguez*, 877 F.Supp.2d 1321 (S.D. Fla. 2012), for the erroneous proposition that Defendants' conspiratorial conduct in this action must have occurred within Florida's geographic borders in order for the IPPs to invoke the Act's protections. Def. Supp. Br. at 7. *Rodriguez* did not involve any harm to Florida consumers or competition in the state. *Rodriguez* was not an antitrust action, but rather arose out of a one-off business dispute involving a series of failed concerts in Argentina. 877 F.Supp.2d at 1323. The court held that plaintiffs adequately stated the elements of a claim under the Act based on allegations that defendants essentially extorted and defamed plaintiffs, but failed to allege that any of the defamatory or extortionary conduct occurred in Florida, or that the harm was suffered in Florida. 877 F.Supp.2d at 1330-31.

Defendants' parenthetical following their citation to *Nieman v. DryClean U.S.A. Franchise Co.*, 178 F.3d 1126 (11th Cir. 1999), Def. Supp. Br. at 8:13-14, is misleading. *Nieman*, like *Rodriguez*, involved no injury in Florida and involved no harm to competition in Florida. *Nieman* arose out of negotiations between an Argentine resident and a Florida corporation concerning the potential opening of dry-cleaning franchises in Argentina. *Id.* at 1128. The deal fell through and the Florida defendant kept the Argentine plaintiff's non-refundable deposit. Plaintiff sued under a specific provision of the Act (Fla. Stat. § 501.203(3)(a)) seeking to enforce the Federal Trade Commission's Franchise Rule (16 C.F.R. § 436.1) which requires that certain disclosures be made to franchisees. The Eleventh Circuit held that the Franchise Rule did not apply extraterritorially to a foreign franchisee with respect to a foreign franchise deal. *Id.* at 1131. The court rejected the plaintiffs' argument that the Act should apply merely because the defendant was a corporation doing business in Florida and "most if not all of the pertinent conduct subject to regulation occurred in Florida." *Id.* at 1129, n. 4. Thus, the court held that the Act did not apply in a specific instance where injuries were sustained extraterritorially to Florida; it did not hold that the Act does not apply when Florida plaintiffs are harmed in Florida by extraterritorial conduct.

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574
14

### G. Defendants Have Failed to Meet Their Burden as to Any of the Remaining States Under Which IPPs Sue

As the moving party seeking summary judgment, Defendants have the ultimate burden of persuasion on a motion for summary judgment. *See Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). For the reasons stated *supra*, their arguments fail with respect to IPPs' claims arising under New York and Florida law. Moreover, Defendants have utterly failed to meet that burden with respect to IPPs' state-law claims arising out of California, Iowa, Michigan, Minnesota, and Nebraska. Their supplemental brief includes no citations to any authorities in California, Iowa, Michigan, Minnesota or Nebraska holding that the extraterritorial reach of those state laws is more circumscribed than the Sherman Act. They have therefore waived any argument those state laws do not reach the conduct at issue in this motion.[2]

## IV. CONCLUSION

Defendants failed to meet their burden to establish that the state competition laws under which the IPPs sue do not reach the single category of commerce at issue in Defendants' summary judgment motion. IPPs respectfully submit that this Court should now deny Defendants' motion for summary judgment on the IPPs' claims.

Dated: December 2, 2016                    Respectfully submitted,

*/s/ Steven N. Williams*
Joseph W. Cotchett (36324)
Steven N. Williams (175489)

---

[2] There is good reason for Defendants' silence on this issue. There is ample authority demonstrating that the limited claims subject to Defendants' motion are not barred either by the FTAIA or on independent state law grounds. *See, e.g., LCDs*, 822 F.Supp.2d at 968 (rejecting the same argument that Defendants advance here and finding that the domestic effects exception permitted indirect purchaser claims where there was an initial foreign-to-foreign sale); *Cianci v. Superior Court*, 40 Cal.3d 903, 918 (1985) ("the [Cartwright] Act reaches beyond the Sherman Act to threats to competition in their incipiency[.]"); *In re Auto. Parts Antitrust Litig. (Automotive Bearings)*, 2014 U.S. Dist. LEXIS 127751, \*\*142-46 (E.D. Mich. Aug. 26, 2014) (rejecting FTAIA argument that included claims of end-payors who purchased cars in the United States that included price-fixed component parts first sold in foreign commerce); Minn. Stat. § 325D.66 ("No action under [the Minnesota Antitrust Law] shall be barred on the ground that the activity or conduct complained of in any way affects or involves interstate or foreign commerce.").

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574                     15

Adam J. Zapala (245748)
Elizabeth Tran (280502)
Mark F. Ram (294050)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Interim Lead Counsel for the Putative Indirect Purchaser Class*

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF RE STATE LAW IN RESPONSE TO PHASE I MSJ ORDER; CASE NO. 3:14-CV-03264-JD; MDL 2574       16