[Counsel for Moving Defendants Listed on Signature Pages]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Case No. 3:14-cv-03264-JD |
| ALL INDIRECT PURCHASER ACTIONS | **REPLY IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF PHASE I BRIEFING OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES** |
| | Date: January 19, 2017<br>Time: 10:00 a.m.<br>Judge: Honorable James Donato<br>Courtroom 11 – 19th Floor |

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

I.  The FTAIA Applies To IPPs' Claims Based On Sales Initially Made To Foreign
    Purchasers ...................................................................................................2

    A.  The Court's Order Established An FTAIA Framework That Applies Equally To
        DPPs' Claims And To IPPs' State Law Claims For The States That Are Not More
        Restrictive Than Federal Law ..............................................................3

II. IPPs Have No Viable Claims Under New York's Antitrust and Consumer Protection
    Statutes ......................................................................................................6

    A.  The Donnelly Act Does Not Apply To IPPs' Claims Where The First Sale Was
        Overseas To A Third-Party Distributor ..................................................6

    B.  New York's Consumer Protection Statute Does Not Apply Because Defendants'
        Conduct Did Not Occur Within New York ..............................................10

III. Florida's Deceptive And Unfair Trade Practices Act Does Not Apply Because
     Defendants' Conduct Did Not Occur Within Florida ......................................12

CONCLUSION ....................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*,
No. 13cv1523-BEN (BLM), 2014 WL 4961437 (S.D. Cal. Oct. 3, 2014) ..............................6

*In re Automotive Parts Antitrust Litigation (Wire Harness)*,
No. 12-md-02311, 2013 U.S. Dist. LEXIS 80338 (E.D. Mich. Jun. 6, 2013) ....................8, 11

*Burns v. Rozen*,
201 So. 2d 629 (Fla. Dist. Ct. App. 1967) ...............................................................12

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
No. C-07-5944-SC, 2014 U.S. Dist. LEXIS 35391 (N.D. Cal. Mar. 13, 2014) ...................7, 8

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*,
536 F. Supp. 2d 1129 (N.D. Cal. 2008) ...................................................................11

*Execu-Tech Bus. Sys. v. New Oji Paper Co.*,
752 So. 2d 582 (Fla. 2000)...............................................................................12, 13

*Five for Entm't S.A. v. Rodriguez*,
877 F. Supp. 2d 1321 (S.D. Fla. 2012) ............................................................12, 13, 14

*Global Reinsurance Corp. – U.S. Branch v. Equitas Ltd.*,
18 N.Y.3d 722 (2012).................................................................................7, 8, 9

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
98 N.Y.2d 314 (2002)..............................................................................10, 11, 12

*Howard v. Kerzner Int'l Ltd.*,
No. 12-22184-CIV, 2014 WL 714787 (S.D. Fla. Feb. 24, 2014) ...........................................12

*In re Lithium Ion Batteries Antitrust Litigation*,
No. 13-MD-2420, 2014 U.S. Dist. LEXIS 141358 (N.D. Cal. Oct. 2, 2014)..........7, 11, 13, 14

*Millenium Commc'ns & Fulfillment, Inc., v. Office of the Att'y Gen.*,
761 So.2d 1256 (Fla. Dist. Ct. App. 2000) .................................................................12

*Minn-Chem, Inc. v. Agrium, Inc.*,
683 F.3d 845 (7th Cir. 2012) ...........................................................................9

*Nieman v. DryClean U.S.A. Franchise Co.*,
178 F.3d 1126 (11th Cir. 1999) .......................................................................13, 14

*OBB Personverkehr AG v. Sachs*,
136 S. Ct. 390 (2015)......................................................................................4

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   84 N.Y.2d 20 (1995) ........................................................................................10

*Se. Fisheries Ass'n, Inc. v. Dep't of Nat. Res.*,
   453 So. 2d 1351 (Fla. 1984).............................................................................12

*People ex rel. Spitzer v. Direct Revenue, LLC*,
   862 N.Y.S.2d 816, 2008 WL 1849855 (N.Y. Sup. Ct. March 12, 2008) ...................10, 11, 12

*Subramani v. Wells Fargo Bank, N.A.*,
   No. 13-cv-01605-SC, 2014 WL 7206888 (N.D. Cal. Dec. 18, 2014) .......................................6

*Temple v. Circuit City Stores, Inc.*,
   No. 06 CV 5303 (JG), 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007 .......................................5

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...........................................................11

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
   822 F. Supp. 2d 953 (N.D. Cal. 2011) .........................................................7, 8

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
   No. 07-md-01827, 2014 U.S. Dist. LEXIS 132228 (N.D. Cal. Sept. 18, 2014)...............13, 14

*United States v. Hsiung*,
   778 F.3d 738 (9th Cir. 2015) ........................................................................5

*In re Vitamins Antitrust Litigation*,
   No. 99-197, 2000 U.S. Dist. LEXIS 7397 (D.D.C. May 9, 2000)..............................8, 13, 14

**Statutes**

Florida Statute § 501.201 et seq.......................................................................12, 13, 14

Foreign Trade Antitrust Improvements Act, 15 U.S.C. §§ 1, 6a ........................................ passim

N.Y. General Business Law § 340 et seq...............................................................7, 8, 9, 10

N.Y. General Business Law § 349 ...................................................................10, 11

# INTRODUCTION

The Court's Phase I Order held that the FTAIA sets the outer boundaries of state antitrust and consumer protection laws. Phase I Order[1] at 13. Therefore, under the FTAIA framework articulated by the Court, IPPs cannot pursue state law claims based on alleged anticompetitive conduct outside the United States, with respect to non-import commerce, unless IPPs can get through the "eye of th[e] needle" and establish proximate cause under the FTAIA. *Id.* at 11. IPPs' Opposition[2] attempts to relitigate the Phase I Order, arguing that the Court's interpretation of the domestic effects exception should not apply to IPPs, and that the only relevant fact is the location of the IPPs' purchases. This is contrary to the Phase I Order and has already been rejected by the Court, because it would mean that an indirect purchaser would have a state law claim no matter how remote and unconnected Defendants' conduct is to the United States—rendering the FTAIA meaningless and allowing state laws to apply extraterritorially in a manner that is far more broad than federal law, in contravention of the Constitution and international comity.

Moreover, and regardless of IPPs' arguments seeking to relitigate the Phase I Order, Defendants' opening brief[3] established that the New York and Florida laws at issue in the IPP action have an even more limited geographical reach than federal antitrust law under the FTAIA. New York's Donnelly Act and consumer protection statute, and Florida's Deceptive and Unfair Trade Practices Act, do not permit claims based on indirect purchases of capacitors first sold overseas by a Defendant to a third-party distributor because Defendants' conduct with respect to those sales did not occur in New York or Florida (as required for IPPs' claims under the consumer protection statutes) and did not have a "particular New York orientation" sufficient to give rise to a "very close nexus" to competition in New York (as required for IPPs' Donnelly Act claim).

IPPs' Opposition does not cite a single case that disturbs this conclusion. Indeed, IPPs cite

---

[1] Order re Phase I of Summary Judgment on Foreign Transactions, ECF No. 1302.

[2] Indirect Purchaser Plaintiffs' ("IPPs") Supplemental Brief Regarding Application of State Competition Law in Response to Order Re Phase I of Summary Judgment on Foreign Transactions, ECF No. 1407 ("Opp'n").

[3] Defendants' Supplemental Brief in Support of Phase I Briefing of Defendants' Motion for Partial Summary Judgment Dismissing Plaintiffs' Indirect Purchaser Claims Based on Foreign Sales, ECF No. 1372 ("Br.").

no state court authority concerning the scope of the state laws that is contrary to the cases discussed by Defendants, and the federal cases relied on by IPPs and attached to their brief do not address whether the territorial scope of New York and Florida laws encompasses the claims at issue.

The Court should grant summary judgment dismissing IPPs' New York and Florida claims based on purchases of capacitors from third-party distributors that first purchased the capacitors from Defendants outside the United States, because any alleged anticompetitive conduct with respect to such overseas sales cannot satisfy the FTAIA, let alone the more restrictive territorial reach of New York and Florida law.

## I. THE FTAIA APPLIES TO IPPS' CLAIMS BASED ON SALES INITIALLY MADE TO FOREIGN PURCHASERS

Defendants' opening brief succinctly described the status of Defendants' summary judgment motion[4] following the Court's Phase I Order and request for supplemental briefing. *See* Br. at 2-3. In their Opposition, IPPs mischaracterize Defendants' brief, making the contradictory arguments that Defendants contend on the one hand that the "Phase I Order already applies to bar IPPs' claims," and on the other that "Defendants' brief essentially asks for reconsideration of this Court's holding." Opp'n at 4, 5. Neither of IPPs' inconsistent arguments is correct. Rather, Defendants' brief acknowledged that the Court "has not yet ruled on any of Defendants' arguments as to how the FTAIA applies to the undisputed facts of the IPP case." Br. at 2. Like the Court ordered with respect to the DPP action, Defendants understand that the Court will resolve whether IPPs' claims are barred by the FTAIA following Phase II briefing. *Id*. at 3.

Although the Phase I Order did not constitute a final decision on Defendants' Motion, it did resolve certain legal disputes about the application of the FTAIA to the IPPs' state law claims. *See* Phase I Order at 1 (indicating that it resolved legal disputes that impact both ECF Nos. 911 (Defs' IPP summary judgment motion) *and* 915 (Defs' DPP summary judgment motion)). *First*, the Court found that the FTAIA applies as the outer limit of the reach of state antitrust and consumer protection laws. Phase I Order at 13. *Second*, the Court articulated an FTAIA framework that

---

[4] Defendants' Joint Motion for Partial Summary Judgment Dismissing Plaintiffs' Indirect Purchaser Claims Based on Foreign Sales or, in the Alternative, to Simplify the Issues Under Fed. R. Civ. P. 16, ECF No. 911 (the "Motion" or "Mot."), and Defendants' Reply Memorandum in Support of the Motion, ECF No. 987 (the "Reply").

applies to all actions moving forward. *See* July 20, 2016 Status Conf. Tr. 12:6-13 ("[Phase II motions] will be just fact motions. The law will be set [in the Phase I Order]. *There will be no more briefing on the applicable standards or what the FTAIA means or doesn't mean.* The second phase will be the application of the rules that [the Court] releas[ed] [in its Phase I Order] to [Plaintiffs'] facts.") (emphasis added). IPPs ignore this.

In addition to establishing the "rules" going forward, the Court asked Defendants and IPPs to submit supplemental briefing focused on a single question—whether any of the state laws that IPPs invoke are more restrictive in reach than federal law. Phase I Order at 14. The Court indicated that to the extent any of the state laws at issue were more restrictive, those state law claims could potentially be resolved without the need to proceed to Phase II. *Id.* at 13-14; Br. at 3. Defendants addressed this discrete issue in their opening brief, where Defendants established that IPPs' New York and Florida claims based on capacitors first sold by Defendants to distributors outside the United States could be dismissed as a matter of law without the need for further factual submissions.[5] IPPs' nonetheless seek to relitigate the legal framework that was decided in the Phase I Order, *see* Opp'n at 3-5, and therefore Defendants will briefly respond before addressing the New York and Florida issues.

### A. The Court's Order Established An FTAIA Framework That Applies Equally To DPPs' Claims And To IPPs' State Law Claims For The States That Are Not More Restrictive Than Federal Law

Having determined that state laws do not extend beyond the FTAIA, it follows that the FTAIA framework discussed in the Order applies equally to both DPPs' claims and IPPs' claims for the states that are not more restrictive than federal law. IPPs take issue with that conclusion, arguing that the Court's determination of how the domestic effects exception applies to capacitors that were sold by Defendants to purchasers outside the United States should not apply to IPPs. Specifically, IPPs argue that "this Court's reference to getting 'through the eye of that needle' referred to DPPs' claims on behalf of foreign plaintiffs attempting to utilize a 'global pricing

---

[5] IPPs are incorrect to contend that Defendants waived their arguments with respect to IPPs' claims arising under California, Iowa, Michigan, Minnesota, and Nebraska laws. *See* Opp'n at 15. Because the FTAIA applies as the limit of the reach of those states' laws, the FTAIA analysis for those claims will be briefed in Phase II.

theory'; not IPPs who purchased capacitors in domestic commerce." Opp'n at 1. IPPs create a false distinction without any basis in the law.

Defendants' Motion was "directed solely at Plaintiffs' indirect purchaser claims based on purchases of standalone capacitors first sold outside the United States to distributors that are not Defendants or alleged co-conspirators." Mot. at 1. As explained in the Motion, it is this initial sale to the direct purchaser—like the foreign sale at issue in DPPs' claims based on capacitors sold overseas pursuant to a "global pricing" policy—that forms the basis of the IPPs' antitrust claims, because in the absence of an antitrust violation causing the direct purchaser to pay a supra-competitive price, there could be no derivative injury suffered by an indirect purchaser. *See* Reply at 11 (citing *OBB Personverkehr AG v. Sachs*, 136 S. Ct. 390, 396-97 (2015)).

IPPs urge the Court to disregard this foreign sale—the *only* transaction involving Defendants—and focus instead on the IPPs' purchase in domestic commerce. Such an approach, however, would render the FTAIA meaningless because it would mean domestic purchasers could make claims under state antitrust law for conduct by Defendants that is wholly unrelated to domestic commerce and outside the reach of federal law under the FTAIA simply by virtue of a later purchase in the United States. If the original sale to the direct purchaser distributor is ignored—as IPPs urge the Court to do—then an indirect purchaser in the United States would have a claim no matter how remote and unconnected Defendants' conduct was to the United States. Ignoring the original sale would also mean that (1) the FTAIA would have no effect on state laws and (2) state laws could apply far more broadly extraterritorially than federal law—which would be contrary to the Supremacy Clause, Commerce Clause, international comity, and harmonization concerns the Court cited in finding that the reach of state laws does not extend beyond the FTAIA. *See* Phase I Order at 12-13; Mot. at 5-11.

IPPs contend that it makes no sense for them to "have to show [that] *the domestic effects* of Defendants' conspiracy caused harm *to the foreign distributors*, who are further up the distribution chain." Opp'n at 4 (emphasis in original). To the contrary, that is the only way to apply the FTAIA to the sales at issue in a manner that is consistent with the Court's Order and the FTAIA jurisprudence discussed therein. As indirect purchasers, IPPs' claims are derivative of any antitrust

claims by third-party distributors that purchased capacitors outside the United States, which the distributors pass on to indirect purchasers in the United States. *See, e.g.*, *Temple v. Circuit City Stores, Inc.*, No. 06 CV 5303 (JG), 2007 WL 2790154, at *4 (E.D.N.Y. Sept. 25, 2007) (explaining that a direct purchaser suffers "a direct antitrust injury, but the consumer who transacts with that dealer does not, because the consumer's damages flow from the [direct purchaser's] pass-on"). If the foreign direct purchasers lack antitrust injury and an antitrust claim based on Defendants' alleged conduct, there could be no antitrust injury or claim to pass on. Thus, it is necessary for the foreign distributors to have a claim against Defendants under the FTAIA with respect to the sales at issue in order for the indirect purchasers to have a derivative passed-on claim based on purchases from those distributors. *See* 15 U.S.C. § 6a(2).

IPPs suggest that this would prevent them from ever asserting a claim based on an initial foreign-to-foreign sale. Opp'n at 3-4. That is incorrect. IPPs still could assert an indirect claim based on an initial foreign-to-foreign sale whenever the evidence would show that the initial sale would be actionable under the FTAIA, pursuant to the FTAIA framework established in the Phase I Order. Put differently, in order for the IPPs to allege a cognizable antitrust injury here, they must first show that the alleged domestic effects of the purported conspiracy proximately caused actionable injury to the foreign purchasers, just as the Court has held is required of the DPPs. *See* Phase I Order at 8-12.

Although IPPs cite *United States v. Hsiung*, 778 F.3d 738, 750-51 (9th Cir. 2015) as purported support for their argument that they can forego this initial step of determining whether the initial foreign-to-foreign sale is actionable before pursuing their indirect purchaser claims, *Hsiung* says no such thing. *See* Opp'n at 3. As the Court already explained, in *Hsiung* "the government was not seeking civil monetary damages" and therefore "*Hsiung* had no need to address the second prong of the domestic effects exception. That is quite different from this civil damages case, which makes it difficult to apply the broader statements in *Hsiung*." Phase I Order at 11. Thus, *Hsuing* does not foreclose Defendants' motion. Although IPPs' criticize Defendants for "never mention[ing] [*Hsiung*] in their present brief," there was no need for Defendants to do so, because Defendants' opening brief was directed at New York and Florida law, and the issue of

whether the facts of this case satisfy the domestic effects exception will be the subject of Defendants' Phase II summary judgment brief against the IPPs.

In preparation for the Phase II briefing, Defendants asked that IPPs supplement their interrogatory responses to provide the facts that purportedly support their contention that the sales at issue meet the requirements of the FTAIA—specifically, evidence that "the U.S. effects of the [Defendants'] conduct—*i.e.*, increased prices in the United States—proximately caused the foreign" injuries to the third-party distributors that IPPs claim purchased capacitors overseas for resale in the United States. *See* Phase I Order at 10 (citation omitted). IPPs argue that by requesting that they supplement their discovery, Defendants seek "reconsideration of this Court's holding." Opp'n at 5. IPPs are incorrect. As explained *supra*, the legal rulings in the Phase I Order govern the IPP case as well as the DPP case insofar as both involve overseas sales by Defendants. Defendants therefore have a right to supplemental responses to their contention interrogatories from IPPs concerning those sales. *See, e.g.*, *Subramani v. Wells Fargo Bank, N.A.*, No. 13-cv-01605-SC, 2014 WL 7206888, at *2 (N.D. Cal. Dec. 18, 2014) ("As a general matter, interrogatories directing a plaintiff to state facts supporting contentions in his complaint are 'entirely appropriate.'"); *Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*, No. 13cv1523-BEN (BLM), 2014 WL 4961437, at *4 (S.D. Cal. Oct. 3, 2014) (finding that a supplemental response to a contention interrogatory "is not premature" where "[t]he case has been pending for over two and a half years" and "the parties already have exchanged written discovery and conducted at least one deposition").

## II.   IPPS HAVE NO VIABLE CLAIMS UNDER NEW YORK'S ANTITRUST AND CONSUMER PROTECTION STATUTES

### A.   The Donnelly Act Does Not Apply To IPPs' Claims Where The First Sale Was Overseas To A Third-Party Distributor

Defendants' opening brief explained how the *Global Reinsurance Corp.* decision from New York's highest appellate court, as applied to the facts of this case, bars IPPs' Donnelly Act claims based on the capacitors first sold by Defendants to distributors overseas, because Defendants' conduct lacked a "very close nexus" to the state of New York. Br. at 4-5 (discussing *Global Reinsurance Corp. – U.S. Branch v. Equitas Ltd.*, 18 N.Y.3d 722 (2012)). IPPs cite no contrary New York authority. It is therefore undisputed that *Global Reinsurance Corp.*—in which New York

Court of Appeals applied the Donnelly Act in a manner more restrictive than the FTAIA—governs this case. *See* Opp'n at 6-10; Br. at 4-5.

As Defendants explained, the purchase at issue in *Global Reinsurance Corp.* was of an insurance product in an overseas marketplace by a plaintiff located in New York, which suffered injury in New York. Br. at 4-5 (citing *Global Reinsurance Corp.*, 18 N.Y.3d at 734). Despite the connections to the state, the New York Court of Appeals held that the claim was "not redressable under New York State's antitrust statute" because the transaction "ha[d] no particular New York orientation" and lacked a "very close nexus" to New York. *Global Reinsurance Corp.*, 18 N.Y.3d at 734, 736. IPPs' claims based on purchases by New York IPPs from distributors overseas are barred for the same reason. Moreover, the fact that the purchaser in *Global Reinsurance Corp.* was a New York *direct purchaser*—whose claims would likely be considered import commerce and thus not barred if the Donnelly Act reached as far as the FTAIA—underscores how there is even less of a "very close nexus" here between New York and the sales at issue. Br. at 4-5.

IPPs' arguments in their Opposition do not disturb this conclusion. Notably, IPPs do not cite a single contrary New York authority. *See* Opp'n at 6-10. IPPs instead rely exclusively on federal cases—but none of those cases even attempt to address whether the Donnelly Act reaches claims based on indirect purchases in New York of products that were first sold to direct purchasers overseas. For example, to support their contention that "New York's Donnelly Act Applies to IPPs' Claims," Opp'n at 6, IPPs cite *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 822 F. Supp. 2d 953, 968 (N.D. Cal. 2011) ("*LCD*") and *In re Lithium Ion Batteries Antitrust Litigation*, No. 13-MD-2420, 2014 U.S. Dist. LEXIS 141358, at *49, *60-61, nn.6-7, *74, n.11, *83-102, *194-195 (N.D. Cal. Oct. 2, 2014) ("*Batteries*"). But these decisions contain no analysis of the Donnelly Act. That there may have been Donnelly Act claims alleged in those cases does not have any bearing on the analysis of the issue presently before the Court, *i.e.*, the reach of that statute to the facts here.

Likewise, IPPs' reliance on *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. C-07-5944-SC, 2014 U.S. Dist. LEXIS 35391 (N.D. Cal. Mar. 13, 2014) ("*CRT*"), is misplaced because that decision did not address the territorial reach of the Donnelly Act. *See* Opp'n at 6. The question before the court was quite different: "whether New York's Donnelly Act, which includes a tolling

provision . . . toll[s] Plaintiff's Donnelly Act claim." *Id.* at *95. IPPs' reliance on *In re Automotive Parts Antitrust Litigation (Wire Harness)*, No. 12-md-02311, 2013 U.S. Dist. LEXIS 80338, at *75-81 (E.D. Mich. Jun. 6, 2013) ("*Wire Harness*") is also misplaced. Opp'n at 7. There, the court rejected defendants' arguments that plaintiffs had not adequately alleged intrastate conduct within New York generally, or a general effect on New York's local interests. *Wire Harness*, 2013 U.S. Dist. LEXIS 80338, at *75-80. The *Wire Harness* defendants did not raise—and the Eastern District of Michigan did not decide—the issue of whether a specific, discrete set of claims based on an initial sale to a third party abroad, like those at issue here, is cognizable under the Donnelly Act. Finally, *In re Vitamins Antitrust Litigation*, No. 99-197, 2000 U.S. Dist. LEXIS 7397, at *18, *66-69 (D.D.C. May 9, 2000) ("*Vitamins*"), which IPPs cite, does not have any bearing on the question at issue here. Instead, the *Vitamins* decision—which predates *Global Reinsurance Corp.* by a dozen years—addressed whether fraudulent concealment tolled the Donnelly Act's statute of limitations and, separately, whether the Donnelly Act applied retroactively to claims arising before its enactment. *Id.* at *41-42, *67-69.

Instead of citing authority contradicting Defendants' application of *Global Reinsurance Corp.*, IPPs attempt to distinguish *Global Reinsurance Corp.* from the facts of this case. *See* Opp'n at 7-10. All of IPPs' efforts are meritless. First, IPPs argue that *Global Reinsurance Corp.* "involved allegations of conduct akin to a Sherman Act Section 2 claim" and thus it is not applicable here. *Id.* at 9. But nowhere in *Global Reinsurance Corp.* does the court make this distinction. To the contrary, the New York Court of Appeals explained that the Donnelly Act was modeled on "its essentially similar federal progenitor, *section 1* of the Sherman Act." 18 N.Y.3d at 731 (emphasis added). Indeed, the antitrust claims in *Global Reinsurance Corp.* were based on an agreement between the independent participants in the reinsurance marketplace in London to no longer separately offer the insurance product at issue—*i.e.*, the type of agreement among competitors that could be actionable under Section 1. *Id.* at 726-28.

Second, IPPs, without citing any authority, argue that *Global Reinsurance Corp.* "did not involve import commerce at all, since the allegations concerned not the shipment of a product into United States' commerce but a service provided (*i.e.*, insurance) and purchased in the London

marketplace." Opp'n at 9. This distinction—between the shipment of a physical product into the United States and the sale of an insurance product from an overseas seller to a New York purchaser—is irrelevant. *See, e.g.*, *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 854 (7th Cir. 2012) ("Foreigners who want to earn money from the sale of goods *or services* in American markets should expect to have to comply with U.S. law.") (emphasis added).

Third, IPPs argue that "the Court in *Global Reinsurance* assumed that the FTAIA would in fact bar such claims. The Court, therefore, was reluctant to extend the Donnelly Act beyond what it assumed to be the reach of federal antitrust law." Opp'n at 9. IPPs are incorrect. While *Global Reinsurance Corp.* did discuss the FTAIA and the reach of federal law, the New York Court of Appeals explicitly stated that the limitations on the reach of the Donnelly Act were independent of the FTAIA. 18 N.Y.3d at 736 ("Even if the Sherman Act could reach the purported conspiracy, it would not follow that the Donnelly Act should be viewed as coextensive.").

Fourth, IPPs assert that there exist "comity concerns" here that were not present in *Global Reinsurance Corp.* because "multiple foreign regulators are pursuing the very Defendants in this action . . . ." Opp'n at 9. IPPs get it backwards. As the Court recognized in its Phase I Order, comity toward foreign enforcement activities that IPPs cite is a key policy rationale behind the FTAIA, which *limits* the reach of United States antitrust law. *See* Phase I Order at 6 n.1, 12-13.

Finally, IPPs put forward a hypothetical fact pattern—far removed from the actual facts here—in which a conspiracy and an initial sale of a product occur in Connecticut and then an indirect purchase of that product is made in New York. Opp'n at 10. To support this hypothetical, IPPs cite their previously-cited federal cases—none of which address either the relevant facts or the territorial scope of the Donnelly Act. *Id.* This extreme hypothetical is irrelevant to the question before the Court, which solely pertains to sales made by Defendants to third parties outside the United States.

In sum, the only case cited by IPPs that actually addresses the question at issue is *Global Reinsurance Corp.*, which controls the analysis here and requires dismissal of IPPs' claims. IPPs' ineffective attempts to distinguish *Global Reinsurance Corp.* and reliance on inapplicable federal court cases only highlight the fatal weaknesses in their claims. The Court should enter summary

judgment against IPPs' Donnelly Act claims to the extent they are based on purchases of capacitors first sold by Defendants to third parties outside the United States.

### B. New York's Consumer Protection Statute Does Not Apply Because Defendants' Conduct Did Not Occur Within New York

The general presumption against the extraterritorial application of New York law also applies to New York's consumer protection statute, which the New York Court of Appeals has determined should not be given an "unwarranted expansive reading . . . potentially leading to the nationwide, if not global application of General Business Law § 349 . . . ." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (2002) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 84 N.Y.2d 20, 26 (1995)). To maintain a claim under the consumer protection statute, a plaintiff must establish that defendants made an "actual misrepresentation or omission to a consumer" and that defendants' "deception of a consumer *must occur in New York*." *Id.* (emphasis added); *People ex rel. Spitzer v. Direct Revenue, LLC*, 862 N.Y.S.2d 816, 2008 WL 1849855, at *7 (N.Y. Sup. Ct. March 12, 2008) (rejecting § 349 claim where "[p]etitioner nowhere alleges that respondent completed, in whole or in part, any wrongful act . . . within the state"). As established in Defendants' opening brief, by the very nature of the overseas transactions at issue, there can be no genuine issue of material fact as to whether any defendant engaged in any deceptive conduct directed at a consumer in New York, which entitles Defendants to judgment as a matter of law. *See* Br. at 6-7.

In their Opposition, IPPs argue that there is no territorial limitation on the reach of the New York consumer protection statute as long as the plaintiff made its purchase within the state. *See* Opp'n at 10-12. However, IPPs cite no New York authority that supports this proposition. *Id.* Indeed, IPPs' argument that New York law should reach alleged conduct by Defendants concerning the prices of capacitors sold to third-party distributors outside the United States, bearing no connection with indirect purchasers in New York, *id.*, would in fact be contrary to the New York Court of Appeal's caution against the "global application of" the consumer protection statute being an "unwarranted expansive reading" of that law. *Goshen*, 98 N.Y.2d at 325.

Nor does IPPs' citation to the inapposite federal court authority discussed above suggest a

more expansive reading of the statute is appropriate with respect to the specific category of sales at issue here. For example, IPPs again cite *Batteries*, but there is no analysis in that order addressing the New York consumer protection statute. *See* Opp'n at 11; *Batteries*, 2014 U.S. Dist. LEXIS 141358, at *49, *60-61, nn.6-7, *74, n.11, *83-102, *194-195. IPPs' citation to *LCD* is similarly inapposite because the discussion of New York claims concerned whether there were allegations of concealment of their allegedly anticompetitive agreements sufficient to survive a motion to dismiss—and no discussion as to whether the New York consumer protection statute could reach conduct relating to sales by Defendants outside the United States. *See* Opp'n. at 11; *LCD*, 586 F. Supp. 2d 1109, 1127-28 (N.D. Cal. 2008). *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 536 F. Supp. 2d 1129, 1133, 1143-44 (N.D. Cal. 2008) and *Wire Harness*, 2013 U.S. Dist. LEXIS 80338, at *98-100, are also inapposite, as neither decision addressed a targeted motion for summary judgment directed at this discrete type of sales. Those decisions, which upheld claims under New York's consumer protection statute on different grounds, do not support the proposition that the statute recognizes claims where the relevant conduct by Defendants related to sales made entirely outside the United States.

Finally, IPPs' attempts to distinguish the New York authority cited by Defendants are unavailing. Opp'n at 11. IPPs note that the *Goshen* defendant's alleged deceptive scheme originated in New York, but the court rejected the plaintiff's claim under the consumer protection statute because the plaintiff was actually deceived by the defendant in Florida. *Id.*; *Goshen*, 98 N.Y.2d at 326. This is a distinction without a difference because *Goshen* nonetheless confirms that Defendants' alleged unlawful conduct must be "'directed to consumers' in order to maintain a claim under section 349"—and it is undisputed that there could not have been any deceptive conduct by Defendants directed to IPPs in New York with respect to the sales at issue. *Goshen*, 98 N.Y.2d at 326. IPPs' attempt to distinguish *Spitzer* on the grounds that no "New York residents . . . were affected by the corporation's allegedly wrongful conduct" is unavailing because the court did not dismiss the case simply because no New York residents were impacted. Opp'n at 12. Rather, the fact that the plaintiff did not allege that defendant "completed, in whole or in part, any wrongful act . . . within the state" was an independent basis for the dismissal. *Spitzer*, 862 N.Y.S.2d 816 at *7.

III.  **FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT DOES NOT APPLY BECAUSE DEFENDANTS' CONDUCT DID NOT OCCUR WITHIN FLORIDA**

As Defendants established, Florida also has a strong presumption against the extraterritorial application of its law.  Br. at 7-8; *Howard v. Kerzner Int'l Ltd.*, No. 12-22184-CIV, 2014 WL 714787, at *5 (S.D. Fla. Feb. 24, 2014).  Indeed, a Florida law "cannot be applied extraterritorially unless the statute contains an 'express intention that its provisions are to be given extraterritorial effect.'"  *Id.* (quoting *Burns v. Rozen*, 201 So. 2d 629, 630 (Fla. Dist. Ct. App. 1967)); *see also Se. Fisheries Ass'n, Inc. v. Dep't of Nat. Res.*, 453 So. 2d 1351, 1355 (Fla. 1984).  Under this backdrop, Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), requires that the defendants' conduct giving rise to a claim have occurred within Florida.  "FDUTPA applies only to actions that occurred *within the state of Florida*."  *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330-31 (S.D. Fla. 2012) (citing *Millenium Commc'ns & Fulfillment, Inc.*, *v. Office of the Att'y Gen.*, 761 So.2d 1256, 1262 (Fla. Dist. Ct. App. 2000)) (emphasis added).  For IPPs to have a claim under FDUTPA, Defendants' conduct must have "occurred within the territorial boundaries of Florida."  *See id.* at 1331.

IPPs' claims under FDUTPA for the sales at issue, which are based upon Defendants' wholly foreign conduct, cannot satisfy this requirement.  By the very nature of the sales, there can be no genuine issue of material fact as to whether any defendant engaged in any deceptive or unfair trade practices within the territorial boundaries of Florida, which entitles Defendants to judgment as a matter of law.  *See* Br. at 7-8.

Although IPPs do cite a Florida state court decision in their Opposition, that case, *Execu-Tech Bus. Sys. v. New Oji Paper Co.*, 752 So. 2d 582, 584-85 (Fla. 2000), is inapposite.  IPPs assert that in *Execu-Tech*, "the Florida Supreme Court held, unequivocally, that the Act applies regardless of where the conspiratorial conduct occurs, so long as there is an effect on the Florida market."  Opp'n at 12.  This is not correct.  First, the issue in *Execu-Tech* was whether the court had personal jurisdiction over the defendant as an alleged co-conspirator in a conspiracy directed at Florida consumers.  *Execu-Tech*, 752 So. 2d at 584 (the issue to be decided was whether "the trial court properly dismissed the complaint for lack of personal jurisdiction.").  The question of whether a

claim under FDUTPA was cognizable with respect to sales by Defendants that took place entirely overseas was not before the court. Second, in *Execu-Tech*, the court was clear that the defendants' conduct simply having "an effect on the Florida market" is not enough and that FDUTPA requires that a defendant seek to use the benefits afforded by Florida's legal system and actually make the relevant sales in the Florida market: "As long as [defendant] and the other conspirators sought to use the benefits afforded by Florida law to participate in (and profit from) the thermal fax paper market in this state, then they should have been prepared to follow Florida law governing their price-setting activities." *Id.* at 586. With respect to the sales at issue in the Defendants' Motion, Defendants by definition did not seek to use the benefits afforded by Florida law to participate in the capacitors market in Florida—instead, Defendants' Motion is limited to claims based on capacitors first sold by Defendants overseas to third-party distributors.

Aside from this single Florida case, IPPs again rely on the same inapposite federal cases. *See* Opp'n at 13-14. Nothing in the *LCD* decision cited by IPPs suggests that the claims at issue in this motion are cognizable under FDUTPA, or that alleged conduct that is wholly foreign can give rise to a FDUTPA claim, because that decision does not discuss whether the territorial reach of FDUTPA is more limited than the FTAIA. *See LCD*, No. 07-md-01827, 2014 U.S. Dist. LEXIS 132228, *59-64 (N.D. Cal. Sept. 18, 2014). Likewise, *Batteries* does not analyze FDUTPA. *Batteries*, 2014 U.S. Dist. LEXIS 141358 at *49, *60-61 and n.7, *83-102, *194-195. The *Vitamins* court also did not address the territorial scope of FDUTPA. *Vitamins*, 2000 U.S. Dist. LEXIS 7397 at *69-74. Rather, the court simply noted the general rule that Florida courts allow direct and indirect purchaser claims under FDUTPA—a proposition not at issue in Defendants' Motion. *Id.* at *69-70.

Finally, IPPs' attempt to distinguish a subset of cases relied on by Defendants is also unavailing. *See* Opp'n at 14. IPPs' observation about *Five for Entertainment S.A.* actually supports Defendants' argument, as IPPs acknowledged that the court rejected the FDUTPA claims because plaintiff "failed to allege that any of the defamatory or extraordinary conduct"—*i.e.*, defendants underlying activities that gave rise to the lawsuit—"occurred in Florida." Opp'n at 14 (citing *Five for Entm't S.A.*, 877 F. Supp. 2d at 1330-31). IPPs then criticize Defendants' parenthetical regarding *Nieman v. DryClean U.S.A. Franchise Co.*, 178 F.3d 1126 (11th Cir. 1999), as "misleading." Opp'n

at 14.  Defendants' parenthetical explained that the *Nieman* court found that "FDUTPA does not apply extraterritorially and reject[ed a] claim based on conduct of defendant outside the United States."  Br. at 8.  This is exactly what happened in *Nieman*—where the Florida defendant entered into an agreement with a citizen of Argentina and the court held "that the DUTPA and the Franchise Rule do not apply extraterritorially . . . ." *Nieman*, 178 F.3d at 1128 and n.3.

IPPs' Opposition includes no authority contradicting the conclusion, established in Defendant's opening brief, that summary judgment is appropriate for IPPs' claims based on sales made by Defendants outside the United States.  Accordingly, the Court should grant summary judgment as to these claims.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' summary judgment motion and dismiss IPPs' claims under New York and Florida law to the extent such claims are based on capacitors first sold by Defendants overseas to third parties.  The Court should thereafter proceed to the Phase II briefing, in which Defendants will be prepared to demonstrate that summary judgment should also be granted against all IPP claims arising from the sale of capacitors first sold by defendants to distributors overseas under state laws other than New York and Florida, all of which, as this Court has already held, are subject to the limitations of the FTAIA.

DATED:  December 16, 2016            Respectfully submitted,

WINSTON & STRAWN LLP

By:  ___*/s/ Jeffrey L. Kessler*___
Jeffrey L. Kessler (*pro hac vice*)
A. Paul Victor (*pro hac vice*)
Molly M. Donovan (*pro hac vice*)
Mollie C. Richardson (*pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
pvictor@winston.com
mmdonovan@winston.com
mrichardson@winston.com

Ian L. Papendick (SBN 275648)

101 California Street
San Francisco, CA 94111
Tel: (415) 591-6905
Fax: (415) 591-1400
ipapendick@winston.com

*Counsel for Defendants*
*Panasonic Corporation*
*Panasonic Corporation of North America*
*SANYO Electric Co., Ltd.*
*SANYO North America Corporation*

WILMER CUTLER PICKERING HALE AND DORR
LLP

*/s/ Heather S. Tewksbury*
Heather S. Tewksbury (CA SBN 222202)
heather.tewksbury@wilmerhale.com
Erik Shallman (CA SBN 301854)
erik.shallman@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

Thomas Mueller (admitted *Pro Hac Vice*)
thomas.mueller@wilmerhale.com
Chris Megaw (admitted *Pro Hac Vice*)
chris.megaw@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Margaret O'Grady (admitted *Pro Hac Vice*)
margaret.o'grady@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6018
Facsimile: (617) 526-5000

*Counsels for Defendants*
*ELNA Co., Ltd. and ELNA America, Inc*.

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

1
    */s/ Chul Pak*

2
    Chul Pak (*admitted pro hac vice*)
    Jeffrey C. Bank (*admitted pro hac vice*)
3
    Justin Cohen (*admitted pro hac vice*)
    1301 Avenue of the Americas, 40th Floor
4
    New York, New York 10019
    Telephone:  (212) 497-7758
5
    Facsimile:  (212) 999-5899
    jjacobson@wsgr.com
6
    cpak@wsgr.com
    jbank@wsgr.com
7
    jcohen@wsgr.com

8
    *Attorneys for Defendants Hitachi Chemical Co., Ltd.,*
    *Hitachi Chemical Company America, Ltd., and*
9
    *Hitachi AIC Incorporated*

10

11
    DENTONS US LLP

    */s/ Bonnie Lau*
12
    Bonnie Lau
    525 Market Street, 26th Floor
13
    San Francisco, CA 94105
    415-882-5000
14
    Fax: 415-882-0300
    Email: bonnie.lau@dentons.com
15

16
    Felix T. Woo
    601 S. Figueroa Street, Suite 2500
    Los Angeles, California  90017
17
    213-623-9300
    Fax: 213-623-9924
18
    Email: felix.woo@dentons.com

19
    *Attorneys for Defendant Matsuo Electric Co., Ltd.*

20

21
    K&L GATES LLP

    */s/ Michael E. Martinez*
22
    Scott M. Mendel (*pro hac vice*)
    Steven M. Kowal (*pro hac vice*)
23
    Michael E. Martinez (*pro hac vice*)
    Lauren N. Norris (*pro hac vice*)
24
    K&L GATES LLP
    70 West Madison Street, Suite 3100
25
    Chicago, IL  60602
    Telephone: (312) 372-1121
26
    Facsimile: (312) 827-8000

27

28
    *Counsel for Defendants*
    *Nichicon Corporation*

*Nichicon (America) Corporation*

HUNTON AND WILLIAMS LLP

*/s/ Djordje Petkoski*
Djordje Petkoski (admitted pro hac vice)
David A. Higbee (admitted pro hac vice)
Wendell L. Taylor (admitted pro hac vice)
Robert A. Caplen (admitted pro hac vice)
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
dpetkoski@hunton.com
dhigbee@hunton.com
wtaylor@hunton.com
rcaplen@hunton.com

M. Brett Burns (SBN 256965)
575 Market Street, Suite 3700
San Francisco, California 94105
Telephone: (415) 975-3700
Facsimile: (415) 975-3701
mbrettburns@hunton.com

*Attorneys for Defendants Rubycon Corporation and
Rubycon America Inc.*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP

*/s/ Joseph J. Bial*

Joseph J. Bial (admitted *pro hac vice*)
Eric R. Sega (admitted *pro hac vice*)
700 6th St, NW
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400

jbial@paulweiss.com
esega@paulweiss.com

*Attorneys for Defendants United Chemi-Con, Inc. and
Nippon Chemi-Con Corporation*

BONA LAW PC

*/s/ Jarod M. Bona*
Jarod M. Bona

Aaron R. Gott (Admitted *Pro Hac Vice*)
BONA LAW PC
4275 Executive Square, #200
La Jolla, CA 92037
Telephone: (858) 964-4589
Facsimile: (858) 964-2301
Email: jarod.bona@bonalawpc.com
Email: aaron.gott@bonalawpc.com

*Attorneys for Taitsu Corporation and Taitsu America, Inc.*


BAKER & MCKENZIE LLP

*/s/ Darrell Prescott*
Darrell Prescott (admitted *pro hac vice*)
Catherine Y. (Koh) Stillman (admitted *pro hac vice*)
452 Fifth Avenue
New York, NY 10018
(212) 626-4476
Fax: (212) 310-1637
Email: Darrell.Prescott@bakermckenzie.com
Email: Catherine.Stillman@bakermckenzie.com

Meghan E. Hausler (*admitted pro hac vice*)
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75206
Telephone: (214) 965-7219
Facsimile: (214) 965-5937
Email: Meghan.Hausler@bakermckenzie.com

Colin H. Murray (SBN 159142)
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111
(415) 591-3244
Fax: (415) 576-3099
Email: Colin.Murray@bakermckenzie.com

*Attorneys for Defendants Okaya Electric Industries Co., Ltd.*


BAKER & HOSTETLER LLP

*/s/ John R. Fornaciari*
John R. Fornaciari (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
Tel: (202) 861-1612

Fax: (202) 861-1783
jfornaciari@bakerlaw.com

C. Dennis Loomis, Bar No. 82359
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Tel: (310) 820-8800
Fax: (310) 820-8859
cdloomis@bakerlaw.com

*Attorneys for Defendants Soshin Electric Co., Ltd. and
Soshin Electronics of America, Inc.*


DENTONS US LLP

*/s/ Gaspare J. Bono*
Gaspare J. Bono (admitted *pro hac vice*)
Stephen M. Chippendale (admitted pro *hac vice*)
Claire M. Maddox (admitted *pro hac vice*)
Eric Y. Wu (admitted *pro hac vice*)
Dentons US LLP
1900 K St., NW
Washington, DC 20006
Tele.: (202) 496-7500
Fax:  (202) 496-7756
gap.bono@dentons.com
steve.chippendale@dentons.com
claire.maddox@dentons.com
eric.wu@dentons.com


Andrew S. Azarmi (SBN 241407)
Dentons US LLP
Spear Tower, One Market Plaza, 24th Fl.
San Francisco, CA 94105
Tele.: (415) 267-4000
Fax:  (415) 356-3873
andrew.azarmi@dentons.com

*Attorneys for Defendants
Shinyei Kaisha,
Shinyei Technology Co., Ltd.,
Shinyei Capacitor Co., Ltd., and
Shinyei Corporation of America, Inc.*

Pursuant to Local Rule 5-1(i)(3), the filer attests that concurrence
in the filing of this document has been obtained from each of the above signatories.