Pages 1 - 35

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO, JUDGE

IN RE:  CAPACITORS ANTITRUST      )
LITIGATION.                       )
                                  )  No. C 14-03264 JD
_____  )


                                     San Francisco, California
                                     Thursday, January 26, 2017


                    **TRANSCRIPT OF PROCEEDINGS**


**APPEARANCES**:

For Plaintiffs Direct Purchasers, Chip-Tech, Ltd., and
Dependable Component Supply Corporation:
                         JOSEPH SAVERI LAW FIRM
                         505 Montgomery Street - Suite 625
                         San Francisco, California  94111
                  **BY:  JOSEPH R. SAVERI, ATTORNEY AT LAW**

For Plaintiffs Indirect Purchasers, Toy-Knowlogy, Inc., and CAE
Sound:
                         COTCHETT, PITRE & MCCARTHY LLP
                         San Francisco Airport Office Center
                         840 Malcolm Road
                         Burlingame, California  94010
                  **BY:  ADAM J. ZAPALA, ATTORNEY AT LAW**
                      **MARK F. RAM, ATTORNEY AT LAW**


            **(APPEARANCES CONTINUED ON FOLLOWING PAGES)**


Reported by:  Katherine Powell Sullivan, CSR #5812, RMR, CRR
              Official Reporter

**APPEARANCES**:   (CONTINUED)

For Plaintiff Flextronics:
              WILLIAMS MONTGOMERY & JOHN
              233 South Wacker Drive, Suite 6100
              Chicago, Illinois 60606
      BY:  **CHARLES E. TOMPKINS, ATTORNEY AT LAW**

For Defendants Panasonic Corporation, et al., and Sanyo
Electric Group, Ltd., et al.:
              WINSTON & STRAWN LLP
              200 Park Avenue
              New York, New York 10166
      BY:  **JEFFREY L. KESSLER, ATTORNEY AT LAW**

              WINSTON & STRAWN LLP
              101 California Street
              San Francisco, California  94111
      BY:  **IAN L. PAPENDICK, ATTORNEY AT LAW**

For Defendant Taitsu America, Inc.:
              BONA LAW PC
              4275 Executive Square, Suite 200
              La Jolla, California  92037
       BY: **AARON R. GOTT, ATTORNEY AT LAW**

For Defendants Holy Stone Enterprise Co., Ltd., Holy Stone
Holdings Co., Ltd., Holy Stone Polytech Co., Ltd. and Milestone
Global Technology, Inc.:
              JONES DAY
              555 South Flower Street, 50th Floor
              Los Angeles, California  90071
      BY:  **ERIC P. ENSON, ATTORNEY AT LAW**

For Defendant Nitsuko Electronics Corporation:
              LATHAM & WATKINS, LLP
              505 Montgomery Street, Suite 2000
              San Francisco, California  94111-6538
      BY:  **ASHLEY M. BAUER, ATTORNEY AT LAW**

For Defendant Nippon Chemi-con Corporation:
              PAUL, WEISS, RIFKIND, WHARTON &
               GARRISON LLP
              2001 K STREET, NW
              washington, DC 20006-1047
      BY:  **JOSEPH J. BIAL, ATTORNEY AT LAW**

(Appearances continued on next page)

**APPEARANCES (CONTINUED):**

For Defendants ROHM Co., Ltd. and ROHM Semiconductor U.S.A. LLC
ROHM Semiconductor U.S.A. LLC:
                          O'MELVENY & MYERS LLP
                          Two Embarcadero Center, 28th Floor
                          San Francisco, CA 94111-3305
             **BY:   MICHAEL TUBACH, ATTORNEY AT LAW**

For Defendant Matsuo Electric Co., Ltd.:
                          DENTONS US LLP
                          One Market Plaza
                          Spear Tower, 24th Floor
                          San Francisco, CA 94105-2708
             **BY:   BONNIE LAU, ATTORNEY AT LAW**

For Defendants Soshin Electric Co., Ltd. and Soshin Electronics
of America Inc.:
                          BAKER & HOSTETLER LLP
                          11601 Wilshire Boulevard, Suite 1400
                          Los Angeles, California 90025-0509
          **BY:   C. DENNIS LOOMIS, ATTORNEY AT LAW**

```
1   Thursday - January 26, 2017                    12:23 p.m.
2                            --oOo--
3        THE CLERK:  Calling civil 14-3264.   In Re Capacitors
4   antitrust litigation.
5      Counsel.
6        MR. ZAPALA:  Good afternoon, Your Honor.   Adam Zapala,
7   from Cotchett, Pitre & McCarthy, for the indirect purchaser
8   plaintiffs.
9        MR. KESSLER:  Good morning, Your Honor.   Jeffrey
10  Kessler representing the Panasonic and Sanyo defendants.
11       THE COURT:  Anybody else?  That's it?  Okay.
12     Let me just jump to a couple of items while you are all
13  here.
14     I'm going to have the preliminary approvals out soon, like
15  in the next 48 hours, okay.
16       MR. ZAPALA:  Thank you, Your Honor.  Yes.
17     And in that regard, there was one housekeeping item that I
18  did want to bring to your attention.
19       THE COURT:  Yes.  Nothing has changed, right?
20       MR. ZAPALA:  Nothing has changed except we are going
21  to have to change the dates that were in the order for final
22  approval.  Because we didn't have your final approval order, we
23  have not run our notice program yet.
24       THE COURT:  All right.  What are they?
25       MR. SAVERI:  Your Honor, excuse me.  Not to interrupt.
```

1    Joseph Saveri on behalf of the direct purchaser plaintiffs.

2        We issued our notice consistent with the -- when we had

3    our discussion.

4        **THE COURT:**  Yes.  I preliminarily approved you from

5    the bench.

6        **MR. SAVERI:**  And so we are -- notice was given, and

7    we're on track for hearing in front of you on March 2nd.

8        **THE COURT:**  March 2nd, okay.

9        **MR. SAVERI:**  And so we just wanted to confirm we were

10   on track.

11       **THE COURT:**  Yes, that's fine with me.

12       What dates do you need to change then?

13       **MR. ZAPALA:**  We will have to change it.  Our notice

14   program is quite -- it is more extensive, frankly, than the

15   direct purchasers.  And we didn't want to run the notice

16   program and then be ordered to essentially do it again.

17       **THE COURT:**  Can you send me the revised dates.  And

18   I'll put them in.

19       **MR. ZAPALA:**  I have them.  We'll submit them it today.

20       **THE COURT:**  How many are there?

21       **MR. ZAPALA:**  I think we're looking at a final approval

22   hearing --

23       **THE COURT:**  How many items are there?  Like, two or

24   three?  How many dates are changing?

25       **MR. ZAPALA:**  Actually, just the exclusion objection

1   and final approval date.  So I think it would be three days.

2          **THE COURT:**  Why don't you give them to me so --

3   exclusion date is now what?

4          **MR. ZAPALA:**  Exclusion date would be May 31st, 2017.

5   The same deadline for objections.  Same deadline for notice to

6   appear if an objector is going to appear.

7          **THE COURT:**  All right.  Next one?

8          **MR. ZAPALA:**  And then the final approval hearing would

9   be June 25th, 2017.  And we can put that in our proposed order

10  for you.

11         **THE COURT:**  I'll do it.

12         **MR. ZAPALA:**  Okay.  Thank you, Your Honor.

13         **THE COURT:**  6/25.  All right.  5/31 and 6/25.  No

14  other dates are changing?

15         **MR. ZAPALA:**  I believe that's correct, yes.

16         **THE COURT:**  Okay.  All right.  Nissei motion I will

17  have out very shortly.

18      Oh, okay.  Let's do the IPP motion to amend.

19      Mr. Kessler, are you going to argue that?

20         **MR. KESSLER:**  No, not on the amend, Your Honor.

21         **THE COURT:**  All right.

22         **MR. ENSON:**  Good afternoon, Your Honor.  Eric Enson,

23  from Jones Day, on behalf of the Holy Stone defendants.

24         **THE COURT:**  Okay.  So I didn't set a last day to

25  amend.  So we're in the land of Rule 15.  Land the Ninth

1    Circuit has described as liberal, generous, largely without

2    boundaries.

3         (Laughter)

4         **THE COURT:**  So why am I not -- why am I not granting

5    this?

6         **MR. ENSON:**  That's correct, Your Honor, if we are

7    proceeding under Rule 15.

8         The point that we are making in our opposition, however,

9    is that even under Rule 15 undue delay is a factor the Court

10   considers in determining whether or not to grant the motion to

11   amend.  And that's in Ninth Circuit cases as well as in

12   Northern District cases here.

13        **THE COURT:**  Well, I'm just wondering, why is it undue?

14   I mean, there's some back and forth.  It wasn't clear to me

15   that this is undue.

16        **MR. ENSON:**  Well, there's -- the indirect purchasers

17   have known about Holy Stone defendants and have known about the

18   allegation against the Holy Stone defendants for at least two

19   years, when we were originally named as defendants in the

20   direct purchaser case.

21        They certainly knew or should have known of the

22   allegations when the Court denied our motion to dismiss in May

23   of 2015.

24        Throughout 2015, they received volumes of discovery from

25   not only Holy Stone defendants but other defendants that may

1  have mentioned Holy Stone as well.

2      So our view is they have known about it for quite some

3  time.  They clearly performed some analysis at the beginning of

4  the case and determined who to name as a defendant and who not

5  to.  For whatever reason they chose not to do -- name the Holy

6  Stone defendants as defendants to their action.

7          **THE COURT:**  Okay.

8      Mr. Zapala?

9          **MR. ZAPALA:**  Your Honor, you're absolutely right.

10  Rule 15 is what governs here.  It's granted with extreme

11  liberality, as you alluded to.

12      The touchtone of the analysis for amendment under Rule 15

13  is whether there has been any prejudice.  And, of course, Holy

14  Stone cannot point to any real prejudice in this litigation.

15  They have been involved in it since the DPPs named them.

16          **THE COURT:**  Why did it take so long to add them to

17  your complaint?

18          **MR. ZAPALA:**  The document productions -- there was a

19  date for substantial completion of document productions, which

20  was really only in October of 2015.  So those documents are in

21  Japanese.  We have to get them.  We have to analyze them.

22          **THE COURT:**  Let me just jump in.

23      I mean, the issue is your colleagues across the

24  plaintiffs' table had them on from day one.

25          **MR. ZAPALA:**  Right.

```
 1          THE COURT:  You-all have had largely a cooperative
 2   relationship and overlapping allegations to some extent.
 3          MR. ZAPALA:  Right.
 4          THE COURT:  I mean, why didn't you just add them?
 5          MR. ZAPALA:  It, frankly, did not appear clear to us
 6   that Holy Stone had been involved in the conspiracy.  Now,
 7   Mr. Saveri named them.  It's his right to do that.  We don't
 8   take any umbrage with that.
 9          But again, as to prejudice, Holy Stone can't point to any.
10          As to delay, we've named them soon after they pled guilty
11   or have agreed to plead guilty to DOJ criminal charges.
12          The case schedule in terms of prejudice, there's no
13   prejudice to them.  The class certification is well off.  Trial
14   is well off.  The close of fact discovery is well off.  The
15   vast majority of Holy Stone's witnesses haven't been deposed
16   yet.  And no class representative on the IPP side has been
17   deposed yet, so Holy Stone can't claim, We didn't have an
18   opportunity to depose one of your --
19          THE COURT:  You're doing due diligence, thinking about
20   whether they are appropriate or not.
21          MR. ZAPALA:  Correct.  Correct.
22          THE COURT:  Okay.
23          MR. ZAPALA:  I mean, and that's one of the points we
24   make, you know, in our papers, which is there's no requirement
25   that we name every party that the DPPs name.  And I think any
```

1  kind of ruling that would require that, you know, would have

2  some implications beyond this case.  Folks would be

3  incentivized to name every party that any other party in a

4  coordinated proceeding named.

5      So we tried to proceed in a very orderly fashion.

6  Obviously, the issue came to a head when they agreed to plead

7  guilty.  And we felt at that time it was appropriate to name

8  them.

9      **THE COURT:**  Okay.

10     Mr. Enson.

11     **MR. ENSON:**  Yes, Your Honor.

12     First of all, in terms of the agreement to plead guilty,

13  Counsel is correct that one of the entities that they plan on

14  naming as a defendant has reached a plea agreement with the

15  DOJ.

16     But we're not challenging or opposing their motion to

17  amend on futility or anything like that.  So from our view,

18  that plea is irrelevant to whether or not they moved quickly

19  enough to name us as defendants.

20     **THE COURT:**  Well, it's not just speed.  There is a

21  prejudice component.

22     **MR. ENSON:**  Sure.

23     **THE COURT:**  So you have been in on day one on the

24  direct purchaser side.

25     **MR. ENSON:**  Sure.

1   **THE COURT:**  The IPP case is partly derivative of

2   the -- there's no direct conspiracy.  There's no indirect.

3   **MR. ENSON:**  Right.

4   **THE COURT:**  So the documents are about the same.

5   You've done all your production.  Mr. Zapala will probably be

6   happy just to get whatever you produced to the direct purchaser

7   plaintiffs.

8   The motions have all been briefed to death by everybody.

9   I doubt that there is anything novel.  Not that you're not a

10   tremendously creative lawyer, but I doubt there is anything

11   novel that would come up.

12   So I will allow the amendment under Rule 15.  I think

13   that's appropriate.  Okay.  There will be no further written

14   order.  It's the disposition for that motion.

15   Couple other things.

16   Oh, you know, I have to rule on that depo issue.  So is

17   everybody here for that?  It wasn't expressly scheduled.  Is

18   everybody here for that on the defense side?  No.

19   **MR. KESSLER:**  I don't know, Your Honor.

20   **THE COURT:**  All right.

21   **MR. KESSLER:**  Someone is coming from the galley.

22   **THE COURT:**  Come up.  Yeah.

23   **MR. SAVERI:**  Your Honor, it wasn't on the calendar

24   so --

25   **THE COURT:**  No, I know.  Look, we've had a hearing on

1    it.  And apparently my solution didn't work out.  And now we're

2    getting to the next stage.  But I'm just -- why don't you make

3    your appearance.

4         **MS. LAU:**  Good afternoon, Your Honor.  Bonnie Lau from

5    Matsuo Electric Company.

6         **MR. BIAL:**  Good afternoon, Your Honor.  Joseph Bial

7    for Nippon Chemi-con.

8         **MS. LAU:**  And I do want to represent, Your Honor, that

9    there are defendants at issue on this issue that are not

10   present today.

11        **THE COURT:**  All right.  I just wanted to see if

12   you-all could work it out.  You can't do it?

13        **MR. ZAPALA:**  Your Honor, we have tried.

14     We have an order from you saying depositions are to occur

15   in the United States.  We had a motion to compel, where one of

16   the defendants claimed that the threat of criminal prosecution

17   was the reason they weren't coming.  You overruled that and

18   said that's not a reason.

19        **THE COURT:**  I was told there wasn't going to be a

20   threat.  And then somebody, I guess, in the government end

21   changed his mind and said there was going to be a threat.

22        **MR. ZAPALA:**  Well, I want to be clear.

23        **THE COURT:**  I'm not arguing.  Let's be clear.  We're

24   not arguing.  I just thought it we could broker a deal, but

25   that's not possible.  You tried, and you can't do it?

| | |
|---|---|
| 1 | **MR. ZAPALA:**  We tried. |
| 2 | **THE COURT:**  How about Midway?  Have you considered |
| 3 | Midway? |
| 4 | **MR. ZAPALA:**  Midway.  I haven't considered Midway. |
| 5 | **MR. SAVERI:**  You mean actually Midway Island? |
| 6 | **MR. ZAPALA:**  Not Midway Airport. |
| 7 | **THE COURT:**  Scene of the great 1942, yeah.  How about |
| 8 | that? |
| 9 | **MR. SAVERI:**  I'm just like -- |
| 10 | **THE COURT:**  Wildlife refuge. |
| 11 | **MR. SAVERI:**  Well, it's warmer than in Vancouver. |
| 12 | **THE COURT:**  I think that's an offer.  You guys want to |
| 13 | go to Midway? |
| 14 | **MR. ZAPALA:**  Look, I think -- |
| 15 | **THE COURT:**  Can you pick -- |
| 16 | **MR. ZAPALA:**  -- from the plaintiffs' perspective, we'd |
| 17 | be happy to do whatever the Court wants us to do. |
| 18 | **THE COURT:**  The Court would really rather not have to |
| 19 | keep thinking about it. |
| 20 | Can you just work something out?  They're going to get |
| 21 | deposed, okay. |
| 22 | Are you-all taking the position that they just need to be |
| 23 | deposed in their home country?  Is that the issue? |
| 24 | **MR. BIAL:**  Your Honor, for -- on behalf of my client, |
| 25 | we would be amenable to a place -- they are all independently |

1    represented, these individuals.  So we wouldn't make the

2    ultimate decision.

3              **THE COURT:**  Oh, you represent the corporations.

4              **MS. LAU:**  Right.

5              **THE COURT:**  You're not representing the witnesses?

6              **MR. BIAL:**  Right.

7         But what we've tried to do, unsuccessfully apparently, is

8    find a place where they would be willing to travel, which

9    appears to be largely in Asia.

10        These individuals could also appear --

11             **THE COURT:**  What are the safe zones?  What are

12   typically considered safe zones?

13             **MR. BIAL:**  Again, I think anyplace in Asia.  I believe

14   they've looked at those areas.

15        In this part of the hemisphere most of the jurisdictions

16   have, I think, the same issue that they would face in

17   Vancouver.  So they're willing to -- obviously, these people

18   are going to take the Fifth Amendment.  So in terms of their

19   actual testimony, it's going to be -- whether they get it on a

20   videotape or they do it in person, it's going to be invocations

21   of the Fifth --

22             **THE COURT:**  It's going to be a 20-minute depo.

23             **MR. ZAPALA:**  We think it would be a Fifth Amendment

24   depo, but --

25             **THE COURT:**  How about doing it by phone, by video?

1       **MR. ZAPALA:**  Frankly, at least speaking for the IPPs,

2  we're reluctant to do that.

3       **THE COURT:**  Why?

4       **MR. ZAPALA:**  I think there are lots of problems with

5  videoconferencing.  It's not even clear to me, frankly, that

6  they -- you can do that in Japan.  Japan has very strict rules.

7  I'm not sure that people are allowed to be deposed.  But even

8  if that were the case --

9       **THE COURT:**  Individuals can waive those rules, can't

10  they?

11       **MR. ZAPALA:**  No, you cannot.

12       **MR. SAVERI:**  The problem is that -- in Japan, that all

13  the depositions have to occur within the premises of the U.S.

14  embassies or consulates.  And there's no -- they foreclose/stop

15  any telecommunications in and out of those rooms.  So it's

16  walled off.  So you have to be in the room.

17     Frankly, we prefer to be in the room with the witnesses.

18  We --

19       **THE COURT:**  Why?  They are just going to assert the

20  Fifth after they give their names.  You know that.

21       **MR. ZAPALA:**  Well, I will say -- I mean, we do intend

22  to introduce documents and exhibits.  It's very cumbersome to

23  do that by videoconference.

24     Our understanding of the defendants' objection is they

25  don't want their people going anywhere where there's an

1    extradition treaty.  And I'm not an expert on where extradition

2    treaties exist and where they don't.  I don't know if Midway

3    has one or doesn't.  If it does, I expect the position of the

4    deponents to be the same.  That was --

5            **THE COURT:**  Midway was in the jurisdiction of the

6    United States.

7            **MR. ZAPALA:**  So I think they'd be very reluctant to go

8    to Midway.

9            **MR. SAVERI:**  From our perspective, Your Honor, we --

10   we believe we have a right to have them here.  We tried to come

11   up with a second-best solution somewhere in this hemisphere.

12   If it doesn't work, I guess we're going to have to try

13   someplace else.

14           **THE COURT:**  How about depositions on written

15   questions?  How about that?  What's wrong with that?

16           **MR. ZAPALA:**  I would say -- I mean, what's wrong with

17   that is we view the deposition process as the most critical

18   discovery process in these cases.

19       And that's really like an interrogatory, frankly, that can

20   be --

21           **THE COURT:**  You're looking for an adverse inference.

22   I get it.

23           **MR. ZAPALA:**  We are.

24           **THE COURT:**  It's just as available in response to a

25   written deposition question as it is on tape.

1      **MR. ZAPALA:**  Well, that's true.  But, I mean, in order

2  to get the adverse inference, we have to go through all the

3  steps.  Unfortunately, that's sort of what the law says in the

4  Ninth Circuit.

5      **THE COURT:**  I know.  Just write them down.  These are

6  your deposition questions.  Just print them out.

7      **MR. ZAPALA:**  Yeah.  I know from IPP's perspective our

8  preference is --

9      **THE COURT:**  Have you done, Mr. Zapala, deposition by

10  written questions before?

11      **MR. ZAPALA:**  I've done one in another case with

12  Singaporean witness.  And I can tell you it didn't work out

13  very well.  It was a very cumbersome process.  It was also sort

14  of regulated by the Singaporean court, so that may have played

15  a role.  But we did do it in *In Re Transpacific Antitrust*

16  *Litigation*, and my experience was not favorable.

17      **MR. SAVERI:**  If the Court's order is that we have to

18  try Asia as an alternative, I'm willing to engage with the

19  defendants again to talk about finding another Asian location.

20      **THE COURT:**  Can you do that?  That's a good

21  resolution.  Why don't you try that, okay.

22      And it's -- look.  This issue is important to the

23  individuals.  I'm not gainsaying that.  However, in the scope

24  of this case, it's really not worth everybody's time and money.

25  You should be able to work something out.

1      And I understand people are feeling a little bent out of

2   shape about "why I have to pay for this" and "why can't I

3   do ..."  You might have to put a little of that aside and just

4   come to an agreement to get this done.  It's like three people,

5   isn't it?

6          **MR. ZAPALA:**  No, Your Honor.  It's a number -- it's --

7   three were subject to the initial motion.

8          **THE COURT:**  I thought it was just three people.

9          **MR. ZAPALA:**  They were the subject -- no, I think it's

10  four that were subject to the initial motion.  There's a whole

11  nother wave of people, now, who we've asked to get depositions

12  for --

13         **THE COURT:**  How realistic is their threat of

14  prosecution?

15         **MR. ZAPALA:**  You'll have to ask them.

16      But, I mean, here's the reality:  Anyone who hasn't

17  settled with DOJ on the electrolytic side is not going to agree

18  to be deposed.

19      I mean, that is pretty much the history of this litigation

20  thus far.  Matsuo has produced someone here who is subject to

21  the electrolytic conspiracy.  He took the Fifth.  But I

22  think --

23         **MR. BIAL:**  Chemi-con did as well --

24         **MR. ZAPALA:**  Correct.

25         **MR. BIAL:**  -- with Mr. Suzuki.  And he did travel to

1    San Francisco.  And he invoked the Fifth Amendment only on

2    electrolytic capacitors.  He did answer the plaintiffs'

3    questions --

4            **THE COURT:**  He came voluntarily?

5            **MR. BIAL:**  He came voluntarily, yes.

6            **MR. ZAPALA:**  But -- so I would say I don't disagree

7    with any of that.  But the vast majority of these folks --

8            **THE COURT:**  Nothing happened?

9            **MS. LAU:**  And to clarify --

10           **MR. BIAL:**  He was not detained.

11           **THE COURT:**  Sorry.

12           **MS. LAU:**  These individual witnesses have reached an

13   accommodation with DOJ that permitted --

14           **THE COURT:**  So they had a deal ahead of time?

15           **MS. LAU:**  It was a very different circumstance than

16   the other witnesses that are present --

17           **THE COURT:**  Anybody from DOJ here?

18           **MR. ZAPALA:**  I don't think Mr. Parker is here.

19           **THE COURT:**  Why can't they do that with everybody?

20   Are they trying?

21           **MR. BIAL:**  I don't believe they're trying, Your Honor.

22   In fact, I think they've indicated that anybody who travels,

23   they do intend to detain them.

24           **MR. SAVERI:**  And I think that's actually what happened

25   the last time, is that the DOJ was here.  Based on some of the

1    dialogue we had, we thought Vancouver might be a workable --

2             THE COURT:  Right.

3        MR. SAVERI:  -- alternative.  But they changed their

4    mind or had other thoughts, and that's --

5        MR. ZAPALA:  Well, I just want to be clear about what

6    DOJ said in their letter.  They did not say they were going to

7    move to extradite these folks if they came to Vancouver.  They

8    simply said, We're not taking any options off the table.

9        They weren't given an assurance that they weren't going to

10   be --

11            THE COURT:  Mr. Parker stood up here and said it's not

12   going to be an issue and then apparently changed his mind.  So

13   I get it.

14       MR. BIAL:  Your Honor, they could take depositions by

15   written question without prejudice to come back to Your Honor

16   to ask for an in-person deposition.

17            THE COURT:  I'm just trying to cut the expense down.

18   I don't want to add to it by piecemealing these things.

19       Okay.  Look, why don't you just -- please be reasonable

20   people.  Work this out.  If I have to rule, I will.

21       It's a rather technical issue and it's going to require

22   more than just a casual passthrough by the Court.  So I'm not

23   saying -- I'm happy to do it.  It's just going to take time.

24       All right.  So if you want to get it done, cut a deal.

25   And maybe if you need to think about sharing a few costs, just

```
 1    be flexible, all right.

 2         I mean, you know, the defendants are getting a little bit

 3    of indulgence from the plaintiffs, possibly.  And plaintiffs

 4    are getting to depose the defendants.  Just see if you can work

 5    it out.  Okay?

 6              MR. SAVERI:  Yes, sir.  We'll try again.

 7              THE COURT:  How much time do you want to try that

 8    before I ramp up our drafting process?  A week?

 9              MR. ZAPALA:  A think two weeks probably would be --

10              THE COURT:  Two weeks.  All right.

11              MR. SAVERI:  We've got some briefs and things due, so

12    I prefer to have a couple of weeks.

13              THE COURT:  All right.  Why don't you advise me in two

14    weeks -- three weeks.  You want three weeks?

15              MR. ZAPALA:  Sure, Your Honor.

16              MR. BIAL:  That's fine, Your Honor.

17              THE COURT:  Advise me in three weeks.  And I'll put

18    this in the minute order for everybody to see.  Just advise me

19    in three weeks if you-all can reach some kind of accommodation

20    that everybody is happy with.  Okay.

21              MR. SAVERI:  Thank you.

22              THE COURT:  That will be great.  If not, I will decide

23    if.  I thought it would be worth one last try.

24         Thank you for that.

25              MS. LAU:  Thank you.
```

1      **THE COURT:**  And then what else do we have?

2      **MR. ZAPALA:**  Supplemental briefing, I believe, on the

3  FTAIA, Your Honor, as to the IPPs.

4      **THE COURT:**  I think I'm good on the briefing.  I don't

5  want to take -- I mean, I'm not going to need any more

6  argument.  Okay.

7    If there's anything you want to add that's not in the

8  brief, I'm happy to hear it.

9      **MR. KESSLER:**  We're happy to submit on the brief, Your

10  Honor.

11      **THE COURT:**  All right.

12      **MR. KESSLER:**  There is only one question I would pose

13  to the Court.

14      **THE COURT:**  Yes.

15      **MR. KESSLER:**  So after you rule on this supplemental

16  briefing issue, we're going to be to Phase II --

17      **THE COURT:**  Yes.

18      **MR. KESSLER:**  -- under Your Honor's order?

19      **THE COURT:**  Yeah.  Phase II of FTAIA.

20      **MR. KESSLER:**  Of FTAIA.  Just for the IPPs?

21      **THE COURT:**  Right.

22      **MR. KESSLER:**  Because the DPPs have entered a

23  stipulation that have made Phase II unnecessary.

24      **THE COURT:**  Yeah.

25      **MR. KESSLER:**  And the issue is as follows:  We thought

it would be helpful if the Court would set a schedule for

Phase II, because our supplemental briefing could only resolve

it for two states; New York and Florida.

        **THE COURT:**  Right.

        **MR. KESSLER:**  So whether or not Your Honor grants our

position, we're going to need a Phase II briefing schedule with

respect to the other states.

     And in that connection, Your Honor, it's our belief that

plaintiff should be required, in the briefing process, to

supplement their prior answers to our contention

interrogatories to specify what is the evidence they contend

satisfies Your Honor's ruling in Phase I, because that's --

        **THE COURT:**  That's fine.  You're entitled to ask for

supplementation.  And they have a duty to do it.

        **MR. KESSLER:**  They said they don't believe

supplementation is required under the Court's schedule --

        **THE COURT:**  It's not the Court's schedule.  It's the

federal rules.  You supplement your answers as you get more

data.

        **MR. ZAPALA:**  Absolutely.  But the issue is, Your

Honor, they have moved as a matter of law.  There are no facts

that are at issue in this motion.  They have moved as a matter

of law.

        **THE COURT:**  That doesn't matter.  That's one motion.

They still have a whole case pending.  And they are entitled to

1   know what the facts are.  It's a separate tract.

2         **MR. KESSLER:**  And, in fact, Your Honor, Phase II is

3   when you're going to apply your legal rulings to the facts.  So

4   all we want to do is have them identify what those facts are,

5   which we don't believe --

6         **THE COURT:**  Perfectly reasonable.

7      What's wrong with that, Mr. Zapala?

8         **MR. ZAPALA:**  There is nothing wrong with it.  What

9   we've already said in the interrogatories are -- when they've

10  asked us what our contention is, we've said we contend that

11  sales made from Japanese manufacturers --

12        **THE COURT:**  Let me just jump in.

13     I imagine an interrogatory is something along the lines of

14  state all facts showing that X.  Okay.

15     And Mr. Kessler is saying you've had another eight months

16  now -- whatever; six months -- and there's been a ton of

17  discovery.  And presumably at this point you have at least an

18  enhanced, possibly significantly enhanced, view of why they're

19  liable, and you ought to share that.  So just go ahead and do

20  that.

21        **MR. SAVERI:**  And, Your Honor --

22        **THE COURT:**  I'm not accelerating anything.  It's the

23  usual time still.  So if you served them, you have to answer.

24        **MR. ZAPALA:**  And we're happy to supplement.  We

25  understand our obligations under Rule 26.  What I guess I'm

1  struggling to understand is, their motion doesn't raise any

2  factual issues.

3          **THE COURT:**  Doesn't matter.

4          **MR. ZAPALA:**  Okay.

5          **THE COURT:**  This case is not about one motion.  They

6  have an entire care.

7          **MR. ZAPALA:**  Right.

8          **THE COURT:**  Then they bring summary judgment.  They

9  may have wanted to depose your experts.  It may be relevant to

10  class cert.  They're entitled to get it.  And they don't have

11  to tell you why.

12          **MR. ZAPALA:**  That's fine.

13          **THE COURT:**  You are seasonably required to supplement.

14  They don't have to send you a long explanation saying here,

15  Mr. Zapala, is our ten reasons why you need to do this.

16      You have to do it under the rules.  So just get it done.

17          **MR. ZAPALA:**  Understood.

18          **THE COURT:**  Serve it.  Answer it.  And we'll move on.

19          **MR. KESSLER:**  And then, Your Honor, once that's done

20  we can take a schedule for when Your Honor would like the

21  briefing on Phase II.

22          **THE COURT:**  One of your ideas -- well, first of all,

23  when is that discovery going to be?  Have you served it?

24          **MR. KESSLER:**  It's been served for some time.  We

25  asked them in October to supplement.  And their position --

```
1          THE COURT:  October?

2          MR. KESSLER:  Yes.  And they -- their position was

3    they didn't have to because they said, It's a legal issue; we

4    don't have to supplement.  So it's been pending for quite some

5    time, and that's why --

6          THE COURT:  And how much time do you need to finish

7    it?

8          MR. ZAPALA:  I think -- I'd have to go back and take a

9    look at the interrogatories, Your Honor.  I think they asked

10   for legal contentions.

11        So, you know, honestly, sitting here today, I think what

12   we said is what we will say.  That said, I'd like an

13   opportunity to go back and take a look.  I don't think it would

14   take as long.

15        I do have one question about FTAIA.

16        THE COURT:  You have 30 days from today to respond to

17   the interrogatories.  All right?

18        MR. ZAPALA:  Sure.

19        THE COURT:  Okay.

20        MR. KESSLER:  And then, Your Honor, we'd be happy --

21   after we get their response, we can file our next -- our next

22   round of briefing.  Three weeks after we get their response,

23   that would be fine.

24        THE COURT:  That would be great.  Let's do that.  And

25   then if you-all need to work out a schedule for oppositions and
```

1    everything, that's fine.

2        Now, what about class cert though?

3        Mr. Saveri, you're going to get ready for class cert.

4        **MR. SAVERI:**  Yes, Your Honor.  I mean, we have a

5    schedule and a stipulation with a set of dates, and we're on

6    track to meet those.

7        **THE COURT:**  All right.  Let me just be clear.  On the

8    DPP side, there's no further FTAIA work, which means you've

9    basically populated the class; right?  I mean -- right?  What's

10   left?

11       **MR. SAVERI:**  So we -- we believe that we have

12   established, consistent with your guidance on the FTAIA,

13   certain issues that have to do with the scope of the antitrust

14   law, the application of the antitrust law.  And we're going to

15   proceed with our class certification motion consistent with

16   that.

17       **THE COURT:**  Are you having -- you may not know yet,

18   but are you likely to have disagreements about how those rules

19   apply?

20       **MR. SAVERI:**  No, no.  I think --

21       **MR. KESSLER:**  I think we've worked out in stipulation

22   what the scope of their class is going to be in terms of sales.

23   We have to see, now, what expert testimony and things they put

24   in.

25       We don't know what they're going to do on duration or time

```
 1   period.  But with respect to geographic scope, it's been
 2   stipulated.  And they're basically following Your Honor's order
 3   on that.
 4        THE COURT:  What I'm struggling to get at is whether
 5   you can at least agree on a class.  You can maybe even
 6   stipulate to what the definition of the class is.
 7        I mean, whether it's certified or not is a different
 8   issue.  Okay.  But it's these people.  Win or lose, these
 9   people are in the class.  In other words, we're not going to
10   have the typical fight of, oh, we shouldn't be in because of
11   this and all that.
12        MR. SAVERI:  It's my class, so let me address that.
13        I think that the issues are going to be how we define the
14   geographic scope, which is largely the FTAIA issues.  There's
15   an issue that has to do with time period and --
16        THE COURT:  Okay.  That's fair.
17        MR. SAVERI:  -- and the products purchased.  So that's
18   going to be in the class certification motion.
19        THE COURT:  The products purchased?  What's the
20   dispute --
21        MR. ZAPALA:  I think what he means is the products
22   subject to the conspiracy.
23        THE COURT:  Okay.  All right.
24        MR. SAVERI:  So that's going to be in our class
25   motion.  It's going to be in our expert reports.  So we're on
```

```
 1   schedule for that.  I don't think there's anything else to do.
 2             THE COURT:  Can you tell me who the experts are?  Is
 3   that secret?
 4             MR. SAVERI:  It is a secret.
 5             THE COURT:  All right.
 6       (Laughter)
 7             THE COURT:  That's fine.  That's okay.  That's fine.
 8             MR. ZAPALA:  They'll know on February 24th.
 9             MR. KESSLER:  Remember, Your Honor, you set a schedule
10   where the expert work was --
11             THE COURT:  Yes, I have it right here.
12             MR. KESSLER:  -- was going to be done first.
13             THE COURT:  Right.
14             MR. KESSLER:  So we'll get their expert report.  And
15   then, actually, after we see their report we'll know whether we
16   have -- what issues we have and don't have because that's the
17   first time we'll see the class --
18             THE COURT:  Look.
19             MR. SAVERI:  Maybe --
20             THE COURT:  Let me jump in.
21        Remember, this was a little bit of an experiment on the
22   FTAIA side.  And you-all have been very game about playing
23   along.  But the whole goal was to make the class cert process
24   easier so that you didn't have class cert with, as you
25   typically do or often do, this bolus of FTAIA issues on top of
```

1    it.  Okay.

2        **MR. KESSLER:**  I think, Your Honor, you will have

3    accomplished that.

4        **THE COURT:**  All right.

5        **MR. KESSLER:**  For example, they agreed --

6        **THE COURT:**  Stop right there.

7        (Laughter)

8        **THE COURT:**  We've accomplished that.

9        **MR. KESSLER:**  We've accomplished that.

10        **MR. SAVERI:**  Your Honor, we do have a schedule.  And

11    we agree to the schedule.  And we think we're making progress

12    consistent of the schedule.  So we want to work within the

13    confines of the schedule.

14        **THE COURT:**  All right.  Well, I have the expert

15    reports due on the 24th of February.

16        **MR. ZAPALA:**  Right.

17        **THE COURT:**  Okay.

18        **MR. ZAPALA:**  If I may, Your Honor.

19        **THE COURT:**  Yes.

20        **MR. ZAPALA:**  And I don't want to walk backwards from

21    the statement that we're making progress.  I think we are.  But

22    I am a little bit mystified by what the IPPs will be doing in

23    Phase II of the FTAIA.  Because if you'll recall, I think this

24    Court's -- the process that this Court set up was that Phase I

25    would lay out the law, and then Phase II we would apply the law

1    to the facts as they were.

2        Now, there were a great deal of disputed facts as to the

3    DPP motion underneath.  And so I think that process made sense

4    because, again, there were disputed facts as to the DPP motion.

5    They've obviously since resolved that, and it's no longer an

6    issue.

7        But the motion as to us, again -- and we'll supplement we;

8    understand all that -- but was moved on as a matter of law,

9    that foreign-to-foreign sales as a matter of law are barred.

10   There are no facts at issue in their motion.

11       And so I think once you've set -- once you've set the law

12   and rule on the supplemental briefing, there are no facts.

13   They have not moved on any facts.

14       So I'm a little mystified as to what --

15       **THE COURT:**  I split it up that way.  I split it up to

16   the legal issue first.

17       **MR. ZAPALA:**  Correct.

18       **THE COURT:**  And then you can apply that rule to the

19   defendants.  And the defendant may say, I don't fit under that

20   rule so I should get out of because of that.  Or, My subsidiary

21   fits but my parent company doesn't.  Whatever the variation is.

22       **MR. KESSLER:**  To be very clear, Your Honor, if they do

23   not identify any facts -- which they have not done so far --

24   which would satisfy the legal standard you set forth, we will

25   file a motion in Phase II that points out the complete absence

1    of facts necessary to create a genuine issue to satisfy the

2    legal standard you set forth.

3         The reason we need the contention supplemented is we want

4    to make sure that if there is some additional facts they're

5    going to identify, we address them in our moving motion.

6    That's all.

7              **THE COURT:**  Makes perfect sense to me, Mr. Zapala.

8              **MR. ZAPALA:**  All I'm saying is that the summary

9    judgment proceedings are framed by the moving papers.  The

10   moving papers moved as a matter of law that foreign-to-foreign

11   sales are outside the scope of the FTAIA.  It doesn't depend on

12   any facts.

13             **THE COURT:**  Look, let me just -- and then we're going

14   to be done what this.

15        I split it up.  I did law first and then application of

16   the law to the facts.  That's Phase II.  And now, as

17   Mr. Kessler said, you need to step up and say, Here are my

18   facts saying this set of defendants meets the rules the Court

19   has laid down.  You have to do that.

20        If you have zero facts, you should either voluntarily

21   dismiss or go through summary judgment.  But you have to show

22   now -- now you have the fact burden of showing how the people

23   you sued fit in under my FTAIA rulings.

24        We don't just stop at the FTAIA legal side.  That was just

25   to help you to get to -- because I didn't want to do it in one

1    giant out-of-control procedure.  I wanted to do it like this so

2    that you would have just fact issues now.

3        So Defendant X does this.  That is consistent with the

4    rule.  And if it turns out -- there are a lot of defendants in

5    the case.  If it turns out one or two of them don't, then you

6    should be reasonable about that.

7            **MR. ZAPALA:**  Right.

8            **THE COURT:**  I leave that up to you.  I trust your

9    judgment.  But that's the point of the next exercise.

10           **MR. ZAPALA:**  Understood.  Thank you, Your Honor.

11           **THE COURT:**  And you're out of it.

12           **MR. SAVERI:**  And I'm on schedule.

13           **THE COURT:**  All right.  Is there anything else I can

14   help you with?

15           **MR. KESSLER:**  I think that's it for Capacitors, Your

16   Honor.

17           **MR. ZAPALA:**  I think That's right, Your Honor.

18           **MR. LOOMIS:**  Your Honor, if I may.

19           **THE COURT:**  Yes.

20           **MR. LOOMIS:**  Dennis Loomis representing Soshin Japan

21   and Soshin America.

22       Just as a precaution, you made a statement, which is

23   generally correct, that the DPP, the parties (unintelligible)

24   in Phase II.  My clients have not.  We have a pending motion

25   for summary judgment under -- as part of the Phase I

```
 1   proceeding, which is scheduled for hearing, I believe, on
 2   March 24th.  We just wanted to make sure that there is no
 3   ambiguity; that we do intend to move forward with that motion
 4   on Phase I DPP for Soshin parties.
 5            THE COURT:  Yes.  I do have it up for 3/24.  I haven't
 6   looked at it yet.  But just remind me why you are out of the --
 7            MR. LOOMIS:  Our factual presentation, Your Honor, is
 8   that there were absolutely no sales whatsoever to any direct
 9   purchasers.
10            MR. SAVERI:  Your Honor, we are going to oppose the
11   motion.  And we've worked out, I think, a slight modification
12   to the briefing schedule.
13            MR. LOOMIS:  Yes.
14            MR. SAVERI:  And so we'll be submitting a stipulation
15   on that.  We're on schedule to brief that.
16            MR. LOOMIS:  Right.
17            THE COURT:  You're basically just doing your own Phase
18   II motion; right?
19            MR. LOOMIS:  I guess you could characterize --
20            THE COURT:  I'm not revisiting my FTAIA legal ruling.
21   I'm not revisiting those.  So don't come back and say --
22            MR. LOOMIS:  No.  Oh, no.
23            THE COURT:  You can apply those to your facts.  That's
24   fine.
25            MR. LOOMIS:  Yes.
```

1          THE COURT:  That's perfectly fine.  So that's what

2     you're going to do.

3          MR. LOOMIS:  That's correct.

4          THE COURT:  All right.  Got that.

5          MR. LOOMIS:  Thank you.

6          THE COURT:  Anything else I can help you with on

7     Capacitors?  No.

8          MR. ZAPALA:  I think that's it, Your Honor.  Thank

9     you.

10         THE COURT:  Great.  Thank you.

11         MR. KESSLER:  Thank you, Your Honor.

12         (At 12:56 p.m. the proceedings were adjourned.)

13                        -   -   -   -

14

15                  **CERTIFICATE OF REPORTER**

16         I certify that the foregoing is a correct transcript

17    from the record of proceedings in the above-entitled matter.

18

19    DATE:   Friday, January 27, 2017

20

21

22                    *Katherine Sullivan*

23    _____

24         Katherine Powell Sullivan, CSR #5812, RMR, CRR
                       U.S. Court Reporter

25