Joseph R. Saveri (State Bar No. 130064)
Andrew M. Purdy (State Bar No. 261912)
Matthew S. Weiler (State Bar No. 236052)
James G. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:     jsaveri@saverilawfirm.com
           apurdy@saverilawfirm.com
           mweiler@saverilawfirm.com
           jdallal@saverilawfirm.com

*Interim Lead Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master Case No. 3:14-cv-03264-JD |
| This document relates to ALL DIRECT PURCHASER ACTIONS | **COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Date:        March 2, 2017<br>Time:        10:00 a.m.<br>Courtroom:  11, 19th Floor |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 10:00 a.m. on March 2, 2017, at the U.S. District Court for the Northern District of California located 450 Golden Gate Avenue, San Francisco California 94104, or as soon thereafter as the matter may be heard, Direct Purchaser Plaintiffs ("Direct Purchaser Plaintiffs" or "DPPs") will and hereby do move, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, to award the Interim Lead Counsel for the Direct Purchaser Plaintiffs Joseph Saveri Law Firm ("Lead Class Counsel") and other counsel working at Lead Class Counsel's direction in this action ("Class Counsel," and with Lead Class Counsel, "Counsel") a percentage of their fees accrued as of September 30, 2016, as well as a portion of the costs Counsel have advanced the Direct Purchaser Class by that same date.

Specifically, DPPs request that the Court:

1. Grant Counsel's request for a payment of $8,150,000 for attorneys' fees from the settlement fund ("Settlement Fund") established in connection with DPPs' class action settlements with Defendants Fujitsu Limited; NEC TOKIN Corporation and NEC TOKIN America, Inc. ("NEC TOKIN"); Nitsuko Electronics Corporation ("Nitsuko"); Okaya Electric Industries Co., Ltd. and Okaya Electric America, Inc. (the "Okaya Defendants"); and ROHM Co., Ltd.; and ROHM Semiconductor U.S.A., LLC ("ROHM" and, collectively, the "Settling Defendants"), now pending before the Court for final approval; and

2. Grant Counsel's request for a payment of $3,000,000 for a reimbursement of costs from the Settlement Fund.

DPPs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Joseph R. Saveri and the exhibits thereto, the Court's files and records in this matter, argument of counsel, and such other and further matters as the Court may consider.

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................1

II.    LEGAL STANDARD ..........................................................................................2

    A.    Attorneys' Fees..........................................................................................2

    B.    Costs Reimbursement................................................................................2

III.    COUNSEL SHOULD BE AWARDED $8,150,000 — 25 PERCENT OF THE FUND— AS PARTIAL PAYMENT OF THEIR FEES ACCRUED AS OF SEPTEMBER 30, 2016 ....................................................................................................................3

    A.    The Percentage-of-the-Fund Method for Calculating Fees Is Appropriate Here ..............3

    B.    The *Vizcaino* Factors Weigh in Favor of Granting Counsel's Fee Request ........................5

        1.    Counsel Obtained an Exceptional Result for the Direct Purchaser Class With These First Five Settlements. ...................5

        2.    Counsel Took Significant Risks Prosecuting This Litigation. .................................7

        3.    Advancing the Litigation to this Point and Obtaining the Settlements Has Required Professional Skill..........................................8

        4.    Awards in Similar Complex Antitrust Cases Demonstrate That Class Counsel Seek a Reasonable Fee Award. ...............................10

        5.    Counsel Undertook a Significant Financial and Resource Burden in Prosecuting the Direct Purchaser Plaintiffs' Claims..........................................10

        6.    A Lodestar Cross-Check Confirms That the Fees Sought by Class Counsel Are Reasonable..........................................12

IV.    COUNSEL SHOULD BE PAYED $3,000,000 AS PARTIAL REIMBURSEMENT FOR THEIR COSTS ADVANCED THROUGH SEPTEMBER 30, 2016................................12

V.    COUNSEL ANTICIPATE SEEKING ADDITIONAL ATTORNEYS' FEES AND COSTS FROM FUTURE JUDGMENTS OR SETTLEMENTS ............................................14

VI.    CONCLUSION ..................................................................................................15

**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (C.D. Cal. 2013) ................................ 10

*Bellinghausen v. Tractor Supply Co.*, 2015 U.S. Dist. LEXIS 35266 (N.D. Cal. Mar. 19, 2015) ...........................................................................................................................3

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).............................................................................2

*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) .........................................................2

*Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997 (9th Cir. 2002).....................3, 14

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2002) ........................................ 14

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ........................................................................ 12

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).....................................3

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 102408 (N.D. Cal. Aug. 3, 2016) ........................................................................... 4, 5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 5383 (N.D. Cal. Jan. 14, 2016) ......................................................................................4

*In re CV Therapeutics, Inc. Secs. Litig.*, No. 03-3709, 2007 U.S. Dist. LEXIS 98244 (N.D. Cal. April 4, 2007) ..............................................................................................4

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486, 2007 U.S. Dist. LEXIS 103027 (N.D. Cal. Aug. 16, 2007)................................................. 4, 10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2013 U.S. Dist. LEXIS 190974 (N.D. Cal. Oct. 30, 2013)........................................... 4, 6

*In re Korean Air Lines Co., Antitrust Litig.*, 2013 U.S. Dist. LEXIS 186262 (C.D. Cal. Dec. 23, 2013) ....................................................................................................................3

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1995) .......................... 2, 13

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................. 5, 12

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ......................................4

*In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254 (C.D. Cal. 1997) ...............2

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005)..................................................... 12

*In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886, 2002 U.S. Dist. LEXIS 23468 (N.D. Cal. Nov. 15, 2002) ..................................................................................... 4, 10

*In re Southeastern Milk Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70167 (E.D. Tenn. 2013)....................... 14

**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**TABLE OF AUTHORITIES (cont.)**

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D. Cal. January 14, 2013) ..................... 4, 10

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994).........................................2

*Lobatz v. U.S. West Cellular of Calif., Inc.*, 222 F.3d 1142 (9th Cir. 2000) ................................................. 14

*Meijer v. Abbott Laboratories*, No. 07-05985 (N.D. Cal. Aug. 11, 2011) ................................................. 4, 10

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ...........................................................................................2

*Paul, Johnson, Alston & Hunt v. Granulty*, 886 F.2d 268 (9th Cir. 1989)............................................... 4, 10

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000)............................................................................................3

*Ross v. U.S. Nat'l Ass'n,* No. 07-02951, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept 29, 2010) .............................................................................................................................................4

*Silverman v. Motorola Solutions*, Inc., 739 F.3d 956 (7th Cir. 2013) ....................................................... 14

*Thornberry v. Delta Air Lines*, 676 F.2d 1240 (9th Cir. 1982) ..................................................................... 13

*Van Vranken v. ARCO*, 901 F. Supp. 294 (N.D. Cal. 1995) ..............................................................4, 10, 12

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)......................................................... 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).........................................................4, 10, 11, 12

*Williams v. SuperShuttle Int'l, Inc.*, No. 12-CV-06493-WHO, 2015 U.S. Dist. LEXIS 19341 (N.D. Cal. Feb. 12, 2015) ...................................................................................................3

*Wolph v. Acer Am. Corp.*, 2013 U.S. Dist. LEXIS 151180 (N.D. Cal. Oct. 21, 2013) ............................3

## I.   INTRODUCTION

Counsel for the Direct Purchaser Class submit this motion for attorneys' fees seeking an award in the amounts of $8,150,000 for fees accrued as of September 30, 2016, and $3,000,000 for costs advanced on behalf of the Class during the same period.

This application for attorney's fees and reimbursement of expenses is made in connection with DPPs' Motion for Final Approval of Settlements with Fujitsu Limited, NEC TOKIN, Nitsuko, the Okaya Defendants, and ROHM (the "Settlements"). These Settlements—totaling $32,600,000 in cash and securing agreements by each of the five Settling Defendants to cooperate in the DPPs' continued prosecution of their claims against the non-settling Defendants—are the first in this litigation since its inception over two and a half years ago. Counsel—all of whom work on a contingency basis—have devoted substantial time without compensation and have advanced costs on behalf of the Class. The Settlements, if finally approved, provide Counsel the opportunity to be compensated in part for their hard work to date for the benefit of the Class, and to receive reimbursement for costs incurred in the ongoing litigation. Class members have received notice of Counsel's fee and costs requests. *See* Declaration of Joseph R. Saveri ("Saveri Decl.") at ¶¶ 73-78.

The $8,150,000 in requested attorneys' fees represents 25% of the Settlement Fund, in line with Ninth Circuit authority. Counsel's fee request covers only approximately 18.4% of the total fees Counsel submit and is equal to the 25% percentage benchmark for common fund cases. Counsel have taken a significant risk, invested substantial amounts of their time and money on a contingent basis, and forgone other work opportunities to dedicate their professional efforts to this case.[1] The litigation costs were

---

[1] For the Court's consideration, Lead Class Counsel submits declarations from the Class Counsel that have worked at Lead Counsel's direction in the prosecution of this case. *See* Saveri Decl., Exs. 3-17. Attached to each of these declarations are documents that set forth the time these respective firms have billed in this case from November 1, 2014 to September 30, 2016, as reported by timekeeper. *See id.,* Exs. A to each declaration. Class Counsel have also attached a summary of the expenses they incurred on this case during the same period. *See id.*, Exs. Ex. B to each declaration. Lead Class Counsel has reviewed each of Class Counsel's daily time records. Duplicative, unnecessary, or unauthorized work has been removed and will not be compensated. *See id.*, at ¶ 121. Lead Class Counsel has also reviewed all costs submitted by Class Counsel for reimbursement to ensure their compliance with the instructions set forth in the Court's October 31, 2014 Order Appointing Interim Lead Class Counsel (Dkt. 319 at 4-5). *See id.* Costs which are unauthorized or in excess of the Court's guidelines will not be compensated. *See id.*

**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

1   reasonably advanced by Counsel and incurred in furtherance of the prosecution of the DPP claims. The

2   costs largely consist of fees paid to expert economists whose analysis was necessary to develop and

3   effectively prosecute these complex antitrust claims. In sum, Counsel have obtained an excellent

4   settlement result for the Class, and respectfully request that the Court approve the requested award of

5   fees and costs as contemplated under Rule 23(h).

6   **II.      LEGAL STANDARD**

7          **A.      Attorneys' Fees**

8          Attorneys may recover reasonable attorneys' fees from a common fund settlement they secure

9   on behalf of a class. The Supreme Court has explained that "a lawyer who recovers a common fund for

10   the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the

11   fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*,

12   396 U.S. 375, 393 (1970); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123 (1885) ("where one or

13   more of many parties having a common interest in a trust fund takes, at his own expense, proper

14   proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to

15   reimbursement either out of the fund itself or by a proportional contribution from those who accept the

16   benefit of his efforts"). "The rationale behind awarding a percentage of the fund to counsel in common

17   fund cases is the same that justifies permitting contingency fee arrangements in general. . . . The

18   underlying premise is the existence of **risk**—the contingent risk of non-payment." *In re Quantum Health*

19   *Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) (emphasis in original). In addition,

20   attorneys' fees are awarded as a means of ensuring the beneficiaries of a common fund share with those

21   whose labors created the fund. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300

22   (9th Cir. 1994) (*"WPPSS"*) ("those who benefit from the creation of the fund should share the wealth

23   with the lawyers whose skill and effort helped create it.").

24          **B.      Costs Reimbursement**

25          Counsel may also obtain reimbursement for costs from a common fund settlement. *In re Media*

26   *Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) ("Reasonable costs and expenses

27   incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by

28   those class members who benefit by the settlement.") (citing, *inter alia*, *Mills v. Electric Auto-Lite Co.*,

396 U.S. 375, 391-92 (1970)); *see also Wolph v. Acer Am. Corp.*, 2013 U.S. Dist. LEXIS 151180, at *18 (N.D. Cal. Oct. 21, 2013) ("Counsel are entitled to reimbursement of their reasonable out-of-pocket expenses."). "The prevailing view is that expenses are awarded in addition to the fee percentage." *Williams v. SuperShuttle Int'l, Inc.*, No. 12-CV-06493-WHO, 2015 U.S. Dist. LEXIS 19341, at *6 (N.D. Cal. Feb. 12, 2015) (citations omitted).

### III.   COUNSEL SHOULD BE AWARDED $8,150,000 — 25 PERCENT OF THE FUND — AS PARTIAL PAYMENT OF THEIR FEES ACCRUED AS OF SEPTEMBER 30, 2016

#### A.   The Percentage-of-the-Fund Method for Calculating Fees Is Appropriate Here

District courts in the Ninth Circuit use either the "percentage-of-the-fund" or the "lodestar" method in calculating fees in common fund settlements. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002) ("In a common fund case, the district court has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award."). Using either method, the ultimate inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

The percentage-of-the-fund method is preferred when counsel's efforts have created a common fund for the benefit of the class. "The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean Air Lines Co., Antitrust Litig.*, 2013 U.S. Dist. LEXIS 186262, at *3 (C.D. Cal. Dec. 23, 2013); *see also Bellinghausen v. Tractor Supply Co.*, 2015 U.S. Dist. LEXIS 35266, at *33 (N.D. Cal. Mar. 19, 2015) ("Because this case involves a *common settlement fund with an easily quantifiable benefit to the class*, the Court will primarily determine attorneys' fees using the benchmark method but will incorporate a lodestar cross-check to ensure the reasonableness of the award.") (emphasis added).

Where, as here, there is an easily quantifiable benefit to the class—namely, the cash recovery achieved through the settlement—the percentage of the fund approach is appropriate. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.").

**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

1    Courts supervising antitrust cases in this District regularly apply the percentage of the fund

2    approach. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D. Cal. January 14,

3    2013); *Meijer v. Abbott Laboratories*, No. 07-05985 (N.D. Cal. Aug. 11, 2011); *Ross v. U.S. Nat'l Ass'n,*

4    No. 07-02951, 2010 U.S. Dist. LEXIS 107857, at *4-5 (N.D. Cal. Sept 29, 2010); *In re CV Therapeutics,*

5    *Inc. Secs. Litig.*, No. 03-3709, 2007 U.S. Dist. LEXIS 98244, at *2 (N.D. Cal. April 4, 2007); *In re*

6    *Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486, 2007 U.S. Dist. LEXIS

7    103027, at *1-2 (N.D. Cal. Aug. 16, 2007); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886,

8    2002 U.S. Dist. LEXIS 23468, at *9-10 (N.D. Cal. Nov. 15, 2002); *Van Vranken v. ARCO*, 901 F. Supp.

9    294, 298 (N.D. Cal. 1995). The Court should do so as well here.

10    Courts in the Ninth Circuit applying the "percentage of the fund" approach use a twenty-five

11    percent benchmark. *See Paul, Johnson, Alston & Hunt v. Granulty*, 886 F.2d 268, 272 (9th Cir. 1989). *See*

12    *also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("Under the percentage-

13    of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this

14    circuit, the benchmark percentage is 25%").

15    Selection of the benchmark or any other rate, however, must be supported by findings that take

16    into account all of the circumstances of the case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th

17    Cir. 2002). The benchmark is subject to adjustment—upward or downward—based on the Court's

18    analysis of the factors the Ninth Circuit considered in *Vizcaino*: (1) the results achieved for the class; (2)

19    the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience,

20    and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in

21    comparable cases. *See id.* at 1048-50. *See also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL

22    No. 1917, 2016 U.S. Dist. LEXIS 102408, at *62-69 (N.D. Cal. Aug. 3, 2016) (applying the *Vizcaino*

23    factors on indirect purchaser class counsel's fee motion); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*,

24    No. MDL No. 1917, 2016 U.S. Dist. LEXIS 5383, at *171-74 (N.D. Cal. Jan. 14, 2016) (same) (direct

25    purchaser class counsel's fee motion); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,

26    No. M-02-1486-PJH, 2013 U.S. Dist. LEXIS 190974, at *116-74 (N.D. Cal. Oct. 30, 2013) ("DRAM")

27    (same).

28

**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**B.      The *Vizcaino* Factors Weigh in Favor of Granting Counsel's Fee Request**

Here, each of the *Vizcaino* factors weighs in favor of awarding the requested $8,150,000, which is twenty-five percent of the total Settlement Fund ($32,600,000) and thus equal to the Ninth Circuit's benchmark. As set forth below, these factors would support **an enhancement**—and **not a reduction**—of the benchmark here. Counsel, however, request the benchmark amount from these Settlements.

**1.      Counsel Obtained an Exceptional Result for the Direct Purchaser Class With These First Five Settlements.**

The most important factor is the result achieved for the class. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 U.S. Dist. LEXIS 102408, at *63 (citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). These five Settlements—the first ones in the consolidated Direct Purchaser Action—provide the Class with valuable monetary and non-monetary benefits.

The Settling Defendants' all-cash payments for the benefit of the Class together will total $32,600,000. This is a large amount of money relative to the Settling Defendants' comparatively minimal individual and collective capacitor sales to U.S. purchasers[2] between 2002 and 2014. DPPs estimate that all Defendants together sold more than $7 billion in capacitors to U.S. purchasers during that same period. *See* Saveri Decl. at ¶ 85. The Settling Defendants are responsible for roughly $70 million—less than one percent—of the cartel's United States sales. The Settlement Fund here represents a significant percentage of each Settling Defendant's total U.S. sales during that period:

- Fujitsu Limited agreed to pay DPPs $2,000,000. The parties estimate that the company's dissolved former subsidiary, Fujitsu Media Device ("FMD"), sold less than $200,000 of capacitors to U.S. purchasers between 2002 and its 2009 dissolution. The settlement consideration here is more than ten times FMD's entire relevant U.S. sales. Saveri Decl. at ¶ 86.

- NEC TOKIN agreed to pay DPPs $24,000,000. For purposes of its guilty plea and sentencing on federal criminal price fixing charges, NEC TOKIN estimated its U.S. capacitors sales from 2002 to 2014 totaled $51,100,000. The settlement consideration here is 46.9% of NEC TOKIN's estimated relevant U.S. sales. Saveri Decl. at ¶ 87.

---

[2] "U.S. purchasers" are defined as purchasers of capacitors located in the United States or located abroad but requesting delivery in the United States. This is consistent with the Court's ruling on the impact of the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a ("FTAIA") on the commerce at issue in this case. *See generally* Dkt. at 1302. The term "U.S. sales" is defined as sales billed to or shipped to U.S. purchasers.

COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

- Nitsuko agreed to pay DPPs $1,100,000. The parties have estimated that the company sold less than $100,000 of capacitors to U.S. purchasers between 2002 and 2014. The settlement consideration here is roughly 11 times Nitsuko's entire relevant U.S. sales. Saveri Decl. at ¶ 88.

- The Okaya Defendants agreed to pay DPPs $3,650,000. Okaya has represented that its sales to U.S. purchasers between 2002 to 2014 totaled close to $11,000,000. The settlement consideration here is approximately 33% of Okaya's relevant U.S. sales. Saveri Decl. at ¶ 89.

- ROHM agreed to pay DPPs $1,850,000. DPPs estimate that ROHM had approximately $7,000,000 in sales to U.S. purchasers between 2004 and 2014. The settlement consideration here is 26.4% of ROHM's relevant U.S. sales. Saveri Decl. at ¶ 90.

The Settlements' monetary component—all cash—greatly benefits the Direct Purchaser Class by providing and, in fact, accelerating the Class' chances for monetary recovery in this case through the claims administration process which will commence soon. *See* Saveri Decl. at ¶ 91. Here, a substantial amount of money stands to be distributed to a relatively small Direct Purchaser Class. *See id*. at ¶ 83. There is a real value to Class members of receiving a cash distribution from the Settlements in the near term. In addition, given the number of Defendants in this action and the risk of treble damages at trial, these Settlements likely will encourage additional favorable settlements. *See id*. at ¶ 92. Resolution of the Class' Sherman Act claims through future settlements will not come cheap. The Settlements have set a high bar for the cash component of future negotiated recoveries in this case.

In addition to the monetary component, each of the Settling Defendants has agreed to provide substantial assistance to the class. The Settling Defendants each have agreed to cooperate with DPPs in their continued prosecution of the Class' claims against the Non-Settling Defendants. *See* Saveri Decl. at ¶¶ 59-68. They agree to provide assistance such as giving attorney proffers regarding facts developed in their internal investigations, making key witnesses available for deposition or trial, and submitting declarations on key issues such as liability, impact, damages, and class certification. *See* Dkts. 1298-2 to 3, 1298-8 to 10.

The assistance the Settling Defendants have agreed to provide is a substantial class benefit because it will assist DPPs to maximize their monetary recovery against the Non-Settling Defendants.

**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

*See* Saveri Decl. at ¶ 93. *See DRAM*, 2013 U.S. Dist. LEXIS 190974, at \*143 (cooperation "was valuable in maximizing the monetary recovery against the other Defendants."). As noted above, the Non-Settling Defendants face exposure arising from significant joint and several liability in this case. The Settling Defendants, while responsible for only a sliver of the cartel's overall U.S. sales during the relevant period, were equal participants in Defendants' conspiracy and possess knowledge of the Non-Settling Defendants' unlawful actions in furtherance of the cartel's aims. Having this access to the Settling Defendants' inside knowledge of the conspiracy is likely to prove invaluable to Counsel's future work on behalf of the Direct Purchaser Class.

### 2.    Counsel Took Significant Risks Prosecuting This Litigation.

Counsel assumed a significant risk in undertaking this litigation. *See* Saveri Decl. at ¶¶ 79-82. All understood the risk of contingency litigation and the fact that recovery is never guaranteed. They committed their time, money and energy to the prosecution of a multi-year, international price-fixing cartel case against 22 massive Defendant corporate families based almost entirely in Japan. *See id.* at ¶ 80. This cartel case is complex, involving a multi-year conspiracy dozens of participants, consisting of scores of meetings (formally organized and ad hoc), and where key evidence—mostly emails and unrecorded communications—are in Japanese and come from individuals located largely in Japan. Unsurprisingly, cartel participants took efforts to conceal their conspiratorial activity. Complex antitrust cases like this one often take years to resolve through settlement, trial, or appeal. *See id.* As the case has advanced, counsel have committed their time, money, and energy to this litigation, while aware that certain Defendants have claimed poor financial health that could ultimately impede or diminish recovery for the Class. *See id.* at ¶¶ 79-80. Counsel have expended millions of dollars of their time and incurred millions of dollars in expenses, all on a purely contingent basis. Counsel's serious commitment of time, money, and resources to this case led many of them to turn away compelling case opportunities over the last two years. This entails substantial risk. *See id.* at ¶ 82.

While there has been a parallel criminal proceeding brought by the Department of Justice, this case still confronts significant obstacles. The Department of Justice did not disclose its investigation and the initial complaints were filed before any guilty pleas and before the DPPs had access to any of the materials turned over to the Department of Justice in connection with its criminal investigation. In

**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

1   addition, the Department of Justice has focused on establishing criminal liability under the Sherman

2   Act, without regard to the elements of proving a civil case under the Sherman and Clayton Acts. In

3   particular, DPPs have been required to gather evidence to establish causation and quantify damages, and

4   to do so on a class-wide basis.

5   Further, by bringing a case implicating the FTAIA, Counsel were aware they faced the serious

6   risk that the scope of their claims could be narrowed significantly, greatly reducing the Class' recovery.

7   Counsel were aware that the complex issues raised by the FTAIA are not settled in the law and that

8   issues regarding its applicability would consume significant time, energy, and expense. *See* Saveri Decl.

9   at ¶¶ 28-37, 80. Counsel took on this risk and, as the Court is aware, a large category of global

10  commerce has been determined not to be subject to the Sherman Act. *See* Dkt. 1302.

11  In addition, analyzing the effects of the conspiracy has required DPPs to contend with a massive

12  amount of poorly organized data. *See* Saveri Decl. at ¶ 118. Various Defendants have claimed at times

13  they themselves were unable to determine the entities to which they sold capacitors or the nature of the

14  products that they sold. Organizing, synthesizing and analyzing this data have proven Herculean tasks,

15  ones that DPPs have substantially completed. This challenge has been essential to the success of the

16  litigation, including Counsel's ability to obtain the settlements to date. The possibility that Counsel

17  would not succeed in this task presents a significant risk that Counsel have overcome.

18              **3.      Advancing the Litigation to this Point and Obtaining the Settlements Has
                          Required Professional Skill.**

19

20  After more than two years of aggressive advocacy, these Settlements will provide a substantial

21  benefit to the Direct Purchaser Class. Much work has been done by Counsel to get to this point. Their

22  collective efforts likely would not have resulted in these first settlements were it not for Counsel's ability

23  to draw on Counsel's decades of collective experience with prosecuting antitrust class actions and other

24  complex litigation.

25  The docket and the procedural history in this this case demonstrate Counsel's expertise. *See*

26  Saveri Decl. ¶¶ 18-78. Based on their extensive investigation, Counsel drafted a detailed complaint

27  setting forth DPPs' claims against Defendants for violations of the federal antitrust laws. *See* Dkt. 1.

28  This complaint, and the amendments to it (Dkts. 347, 742), survived despite Defendants' motions to

**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

dismiss. *See* Dkts. 710, 1003. DPPs pursued and prevailed on numerous discovery disputes concerning Defendants' attempts to frustrate discovery and deny the Class key productions and responses. *See* Saveri Decl. ¶¶ 18-78. Many Defendants have been recalcitrant and dilatory, requiring almost constant efforts to meet and confer and to secure compliance with discovery obligations. DPPs also pursued sanctions and evidentiary inferences against Defendants where they denied the Class discovery. *See id*. As indicated above, moreover, DPPs devoted substantial time and energy to litigating the FTAIA's applicability and creating a record on those issues. *See* Dkts. 967-70, 1032, 1076, 1098. The issues raised by the FTAIA are complex and do not benefit from settled procedure or legal authority regarding the statute's applicability in cases such as this one.

Counsel's pursuit of discovery from Defendants and swift development and mastery of the facts of this complicated case further demonstrates their skill and efficacy. Specifically, within 18 months, Counsel (1) negotiated with Defendants for them to run 20-plus pages of search terms in both English and Japanese across Defendants' ESI; (2) processed approximately seven terabytes worth of Defendants ESI; (3) strategically employed innovative approaches and tools, including by hiring and working in conjunction with foreign language speaking attorneys, to review and analyze Defendants' ESI in both English and Japanese; (4) identified key documents and materials that allowed Counsel to construct a comprehensive chronology of Defendants' collusion and to determine how the cartel's decisions resulted in anticompetitive pricing of capacitors; (5) conducted 55 depositions of key officers, employees, and cartel participants; and (6) oversaw the analysis of a massive amount of data—extraordinary even for a case like this one—to determine the effects of the conduct at issue. For cases of this scope and scale, this achievement is remarkable. *See* Saveri Decl. at ¶¶ 12-16, 38-52. Throughout, DPPS have coordinated with other counsel in the litigation, including counsel for the Indirect Purchaser Plaintiffs. *See id*. Prosecution of the case has been efficiently organized so as to minimize or eliminate duplication of effort, consistent with the duties of counsel respectively to represent their clients and to obtain a just and speedy resolution of the claims. This substantial undertaking has, in relatively short order given the language issues, enabled DPPs' to substantiate their allegations and obtain substantial settlements from five of the Defendants.

**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

1   Counsel have not come by their successes in this litigation easily. Defendants—including the

2   Settling Defendants—have hired the best antitrust counsel money can buy to defend them against the

3   Direct Purchaser Plaintiffs' Sherman Act claims. These firms all have significant resources at their

4   disposal that they have dedicated to defending their clients against DPPs' claims. *See Barbosa v. Cargill*

5   *Meat Solutions Corp.*, 297 F.R.D. 431, 449 (C.D. Cal. 2013) ("The quality of opposing counsel is

6   important in evaluating the quality of Class Counsel's work."). Indeed, despite guilty pleas, the Non-

7   Settling Defendants maintain their innocence and contest liability.

8       **4.**    **Awards in Similar Complex Antitrust Cases Demonstrate That Class
   Counsel Seek a Reasonable Fee Award.**

9

10   The requested award of $8,150,000 matches and is in keeping with the Ninth Circuit

11   benchmark. *See Paul, Johnson, Alston & Hunt*, 886 F.2d at 272. Class Counsel's request is modest when

12   compared to percentages awarded plaintiffs' counsel in other, arguably less complex and challenging

13   antitrust cases in this District. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D.

14   Cal. Jan. 14, 2013) (30%); *Meijer v. Abbott Laboratories*, No. 07-05985 (N.D. Cal. Aug. 11, 2011) (33

15   1/3%). It is also consistent with the awards in many other comparable cases. *See In re Dynamic Random*

16   *Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486, 2007 U.S. Dist. LEXIS 103027, at *1-2 (N.D.

17   Cal. Aug. 16, 2007) (25%); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886, 2002 U.S. Dist.

18   LEXIS 23468, at *9-10 (N.D. Cal. Nov. 15, 2002) (25%); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp.

19   294, 298 (N.D. Cal. 1995) (25%). As these precedents demonstrate, twenty-five percent is easily

20   consistent with recognized "market rates," *i.e.*, rates typically awarded in similar contingency fee cases

21   in this District. *See Vizcaino*, 290 F.3d at 1050 ( "market rates" are a question of "lawyers' reasonable

22   expectations [for recovery of contingent fees], which are based on the circumstances of the case and the

23   range of fee awards out of common funds of comparable size.").

24       **5.**    **Counsel Undertook a Significant Financial and Resource Burden in
   Prosecuting the Direct Purchaser Plaintiffs' Claims.**

25   Counsel have invested significant amounts of time, money, and resources in this case for well

26   over two years, as shown in their time and expense records.  Lead Class Counsel's time submissions—

27   25,263 total hours billed—illustrate the point. *See* Saveri Decl. ¶ 94. This litigation has required a

28   significant devotion of Interim Class Counsel's resources for the last two years. Specifically and by way

**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

of example, Lead Class Counsel performed the following tasks:

- Case management and supervision of all work performed.

- Preparing, editing, and otherwise addressing pleadings issues, including extensive motion practice.

- Coordinating and communicating with the Indirect Purchaser Plaintiffs.

- Coordinating, communicating and negotiating with the Department of Justice.

- Managing discovery, including drafting discovery responses; evaluating and analyzing Defendants' discovery responses, including document productions; managing document reviews; selecting and preparing Plaintiffs' expert witnesses and reports.

- Supervising all deposition discovery; preparing for and taking depositions.

- Overseeing and coordinating the work of retained experts.

- Communicating with class members and responding to inquiries concerning the status of the case and settlement.

- Leadership of settlement negotiations.

- Coordinating notice and claims administration issues.

*See* Saveri Decl. at ¶¶ 12-13.

Interim Counsel have relied on Class Counsel to assist the prosecution of this case for the benefit of the class. Several firms have been called to provide assistance for the benefit of the Class. Each of the firms has wide and deep experience in the field and have successfully resolved numerous cases, and the Class has benefitted from that experience here. *See* Saveri Decl. at ¶¶ 12-17. The Court is well aware of the quality of legal work on behalf of the Direct Purchaser Plaintiffs. Under the active supervision of Lead Class Counsel, the firms have working closely together as an efficient team. *See id.* at 12-16, 38-52. Assignments have been given based on the particular expertise and skill of individual lawyers. *See id.* Duplication of effort has been minimized, and as noted above, duplicative or unnecessary work is not submitted as a basis for the attorney fee award sought here. *See id.* at ¶ 102. Class Counsel have set forth for the Court the details regarding their contributions to this litigation in their declarations attached to the Saveri Declaration. *See* Saveri Decl., Exs. 3-17 at ¶ 3 in each declaration.

**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

### 6.   A Lodestar Cross-Check Confirms That the Fees Sought by Class Counsel Are Reasonable.

A lodestar cross-check may be used to ensure that class counsel has done the work necessary to justify the fee sought. *Vizcaino*, 290 F.3d at 1050; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("[T]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.") (citation omitted).

Counsel's cumulative lodestar as of September 30, 2016 is $44,444,689.40. *See* Saveri Decl., ¶¶ 8, 94-119 and Exs. 1-17. Consistent with the Court's instructions, time was reported on a monthly basis and those historical rates are used as the basis for the fee request here. *See id.* at ¶¶ 94, 102.

Using the lodestar cross-check, the fees sought here amount to less than one-fifth (approximately 18.4%) the lodestar submitted by Counsel. In the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases such as this. *See Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65 held " within the range of multipliers applied in common fund cases"); *see also Atlantic Richfield Co.*, 901 F. Supp. at 298 ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.") (citations omitted). The fee amount Counsel request in this Motion is **significantly less** that the cumulative lodestar in this case as one would expect in the event of the initial settlements. The lodestar cross-check thus confirms that Counsel's $8,150,000 fee request is reasonable and should be awarded as requested.

## IV.   COUNSEL SHOULD BE PAYED $3,000,000 AS PARTIAL REIMBURSEMENT FOR THEIR COSTS ADVANCED THROUGH SEPTEMBER 30, 2016

Counsel request reimbursement of expenses they have incurred as of September 30, 2016, in the amount of $3,000,000 to be paid from the Settlement Fund. This amount is a fraction of the amounts incurred to date.[3]

It is appropriate to reimburse attorneys prosecuting class claims on a contingent basis for "reasonable expenses that would typically be billed to paying clients in non-contingency matters," *i.e.*,

---

[3] Counsel intend to seek reimbursement for any unreimbursed costs, in addition to reasonable costs incurred in the future, from subsequent judgments or settlements or recovery after trial. These unreimbursed expenditures remain at risk unless and until Counsel obtain additional recoveries.

1  costs "incidental and necessary to the effective representation of the Class." *See Harris v. Marhoefer*, 24

2  F.3d 16, 19 (9th Cir. 1994); *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048. Reasonable reimbursable

3  litigation expenses include: those for document production, experts and consultants, depositions,

4  translation services, travel, mail and postage costs. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp.

5  1362, 1366 (N.D. Cal. 1995) (court fees, experts/consultants, service of process, court reporters,

6  transcripts, deposition costs, computer research, photocopies, postage, telephone/fax); *Thornberry v.*

7  *Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982) (travel, meals and lodging), remanded on other

8  grounds, 461 U.S. 952(1983). Under the common fund doctrine, plaintiffs' counsel should receive

9  reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in

10  obtaining a settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977).

11  Aside from the typical litigation-related costs necessarily incurred in a complex antitrust

12  litigation like this one (*e.g.*, travel and lodging, legal research, court reporters), Counsel have incurred

13  many other expenses that warrant reimbursement.

14  The majority of costs Counsel have incurred as of September 30, 2016 relate to the time-

15  consuming and laborious work of experts retained to analyze Defendants' voluminous capacitors sales

16  transactional data, as well as to develop expert testimony in preparation for class certification and to

17  prove damages at trial. *See* Saveri Decl. at ¶ 118. Defendants' transactional data in total consists of well

18  over 500 gigabytes that, for most Defendants, cover more than a decade's worth of sales and transaction

19  information. These data were not produced in a uniform format with uniform fields of information

20  recorded. As a result, Counsel's experts spent many hours learning the data and creating as much

21  uniformity among the various sets as possible. In addition, a significant portion of the produced data was

22  incomplete or unreadable due to format and age issues requiring attention on a Defendant-by-Defendant

23  basis. Further, certain Defendants made a number of overlapping and duplicative productions of

24  transactional data that imposed additional costs on Counsel not only in the form of additional attorney

25  time but also through additional expert time as well.

26  In addition, Counsel have incurred substantial expense over the last two years for hosting,

27  processing, and organizing approximately seven terabytes of electronically stored information ("ESI")

28  and the transactional data produced by Defendants, largely in Japanese. *See* Saveri Decl. at ¶ 119.

**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

Counsel retained an outside ESI vendor to upload, process, and remotely house Defendants' ESI. Those services over time have been a significant cost, as have been DPPs' efforts to use specific technology assisted review applications supported by the ESI vendor to search in Japanese so as to find relevant and important documents more quickly and with greater accuracy than would otherwise be possible. Counsel came to the reasonable conclusion that investment in technology and expertise to ensure the efficient search and retrieval of foreign language ESI saved the Class thousands of hours of attorney and other professional time that would have been required had Counsel not done so.

Further, Counsel have incurred sizeable costs in engaging individuals with Japanese language skills to assist them with the prosecution of this action. *See* Saveri Decl. at ¶ 120. As described above, Defendants are almost all Japanese companies or U.S. subsidiaries of Japanese companies. Accordingly, the vast majority of the discovery DPPs pursued has targeted Japanese-speaking officers and employees of the Defendants, whose ESI and document are written in Japanese. Counsel were denied access to translations prepared by Defendants and provided to the Department of Justice. Key documents therefore had to be translated to English. *See id*. ¶¶ 50, 118.Depositions of Defendants' personnel have nearly all required Plaintiffs to hire Japanese/English interpreters. Individuals with Japanese language skills are in high demand and come at a significant expense.

## V.   COUNSEL ANTICIPATE SEEKING ADDITIONAL ATTORNEYS' FEES AND COSTS FROM FUTURE JUDGMENTS OR SETTLEMENTS

When considering a partial fee request, it is sound policy for the Court to recognize the risk counsel faced from the outset and evaluate counsel's contributions over the entire course of litigation (*see In re Southeastern Milk Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70167, at *26-27 (E.D. Tenn. 2013); *Lobatz v. U.S. West Cellular of Calif., Inc.*, 222 F.3d 1142, 1149-50 (9th Cir. 2000)) and the risks taken at the outset of the case (*see, e.g.*, *Silverman v. Motorola Solutions*, Inc., 739 F.3d 956, 958 (7th Cir. 2013) (risk assessed at outset of the case); *Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1009 (9th Cir. 2002) (same); *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 55 (2d Cir. 2002) (same)).

Therefore, the Court should evaluate risks and achievements throughout the entire course of the litigation into consideration when deciding this fee request, as well as any future requests which may arise. As is reflected in Counsel's submission, their cumulative lodestar and costs greatly exceed the

14

compensation they seek in this Motion. Counsel's lodestar and costs will continue to accrue during their ongoing prosecution of this action. While Counsel believe that the review of the Defendants' documents is largely complete, Counsel intend to devote substantial additional resources to expert discovery, class certification and trial. Should the Counsel ultimately prevail at trial, or should Counsel obtain litigated judgments against or reach additional settlements with the remaining Defendants for the benefit of the Direct Purchaser Class,, it is fair for Counsel to seek from future settlements additional fees and costs based on their work through September 30, 2016, as well as for their time and expenses dedicated thereafter. Any such future requests will be sought out of additional settlements, subject to notice to the class and Rule 23 procedures.

## VI.   CONCLUSION

For the reasons set forth above, Counsel requests payment of $8,150,000 in attorneys' fees and $3,000,000 in costs.

Dated:  January 30, 2017                JOSEPH SAVERI LAW FIRM, INC.


By:      /s/ *Joseph R. Saveri*
              Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Andrew M. Purdy (State Bar No. 261912)
Matthew S. Weiler (State Bar No. 236052)
James G. Dallal (State Bar No. 277826)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940

*Interim Lead Counsel for Direct Purchaser Plaintiffs*

**COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**