Joseph R. Saveri (State Bar No. 130064)
Joshua Paul Davis (State Bar No. 193254)
Andrew M. Purdy (State Bar No. 261912)
Matthew S. Weiler (State Bar No. 236052)
James G. Dallal (State Bar No. 277826)
Nicomedes Sy Herrera (State Bar No. 275332)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:     jsaveri@saverilawfirm.com
           apurdy@saverilawfirm.com
           mweiler@saverilawfirm.com
           jdallal@saverilawfirm.com
           rmcewan@saverilawfirm.com

*Interim Class Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | Master File No. 3:14-cv-03264-JD<br><br>**DECLARATION OF KENDALL S. ZYLSTRA IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS** |

I, Kendall S. Zylstra, hereby swear, under penalty of perjury, as follows:

1. I am a Senior Vice President at Rust Consulting, Inc. ("Rust"). I submit this Declaration in support of DPPs' Motion for Final Approval of Proposed Settlements ("Motion for Approval") at the request of Interim Lead Class Counsel ("Lead Class Counsel") for the Direct Purchaser Plaintiffs ("DPPs" or the "Class"). I make this Declaration based upon my own personal knowledge and, if called as a witness in this action, I would be able to competently testify as to the facts set forth herein.

2. As detailed below, Rust has met all of the requirements in the Court's January 27, 2017 Order Granting Preliminary Approval (Dkt. 1455) (the "Preliminary Approval Order") and fulfilled all the steps outlined in my Declaration dated November 4, 2016 (Dkt. 1378-8) (the "November 4

Master File No. 3:14-cv-03264-JD    1

DECLARATION OF KENDALL S. ZYLSTRA IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS

Declaration"). I refer to Exhibits A, B, and C to my earlier Declaration concerning my and Rust's background and experience with claims administration for large class actions. *See* Dkts. 1378-9 to 11.

3. In compliance with the Court's Preliminary Approval Order and my November 4 Declaration, Rust provided notice to all identified Class members *via* First Class Mail, trade publications, online notices, and social media banner ads.

4. On December 14, 2016, Rust mailed 1,884 Long Form Notices materially identical to what the Court approved in its Preliminary Approval Order (Dkt. 1455-1).

5. On December 29, 2016, Rust mailed an additional 395 Long Form Notices based on additional Class members' contact information obtained by DPPs' experts on December 12, 2016 from the transactional data of Shizuki Electric Co., Ltd. Rust was made aware that this data did not identify any specific purchases of capacitors by these Class members.

6. Prior to mailing of the Court-ordered notices and claim forms, Rust updated class member address information using the National Change of Address ("NCOA") system maintained by the United States Postal Service ("USPS"). The file contains new addresses of people and businesses that have moved over the past 48 months and notified USPS of their new addresses. Standardizing and updating addresses prior to mailing using NCOA is industry standard and improves delivery rates. Rust has followed these procedures in mailing the Long Form Notice and claim forms to Class members.

7. On December 14, 2016, Rust also published in the national edition of *The Wall Street Journal* a Summary Notice in a form materially identical to that the Court approved in its Preliminary Approval Order (Dkt. 1455-2). The paper's circulation at that time was 1,321,827. The Summary Notice presented in summary form the key facts and details of the settlement and administration plan to Class Members in a transparent, easily understood format in plain English. The Summary Notice set forth the Court-ordered deadlines and actions required by Class members.

8. A claim form accompanied the mailed Long Form Notice. To facilitate the claims process for the Class members, Rust pre-populated the claim forms mailed to class members with the name, address, and a summary of the transactional purchase data as provided from the defendants' records. This allowed claimants to review and accept the purchase information presented as the total purchases claimed or to dispute the purchase information shown and support an alternative amount.

The purchase amount will be used to calculate each claimant's damages. In our experience, pre-population of claim forms in this manner facilitates the claims process and participation in settlements.

9. With these pre-printed claim forms, we typically offer two options for Class members. Class members who agree with the amounts provided on the claim form can sign and return the claim form or file a claim online through the settlement website, as discussed below. Class members who disagree with the amount provided on the claim form may supplement or correct the amount. Claimants who increase the amount claimed may be asked to provide proof to support the additional amount claimed. These claimants may also file by mail or online.

10. To ensure that the claimant has read and agrees to the release, the claimants were asked on the claim form separately to agree to the release by initialing in the space provided.

11. Throughout the validation process, Rust created reports to identify eligible, deficient, and ineligible claims. As stated above, claimants have been requested to provide documentation of their purchases that are not supported by the data provided to Rust. In these instances, to facilitate the process for the claimant, Rust accepts spreadsheets or other electronically produced reports from the claimants' systems, which were used to track data entered contemporaneously at the time of purchase/receipt of goods, along with a signed affidavit of an officer of the company attesting to the validity of the data.

12. For returned and undeliverable mail, Rust has conducted additional research, including skip tracing of class members. Of 486 returned mail, Rust was able to research and identify updated mailing addresses for all but 96 of them. Rust re-mailed claim forms and the Long Form Notice to the updated addresses on January 26, 2017.

13. Lead Class Counsel also directed Rust to run banner advertisements on 13 different electronics industry-focused web sites (www.Passivecomponentmagazine.com; www.Electronicproducts.com; www.TechOnline.com; www.ECNmag.com; www.EDN.com; www.Eetimes.com; www.How2Power.com; www.Powerelectronics.com; www.NetComponents.com; www.Motherboard.vice.com; www.Tomshardware.com; www.Capacitorindustry.com; and www.CapacitorsNews.com) that linked to the Claims Website (defined and addressed). The banner

Master File No. 3:14-cv-03264-JD                         3

DECLARATION OF KENDALL S. ZYLSTRA IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS

advertisements ran for a three-week period (December 19, 2016 to January 8, 2017) during which the websites on which the banners ran had a total of 4,262,977 gross impressions.

14. Gross impressions are the total number of times a media vehicle (here, the banner advertisements) is seen. This figure does not represent the total number of unique viewers who saw the banners, but the figure informs how frequently the banners appeared on these industry-specific websites.

15. Lead Class Counsel further directed Rust to post on Class Action Information's Twitter feed (@ClassNotice) an advertisement linking to the Claims Website. The Twitter post ran on December 31, 2016, and was targeted at users that follow electronics industry handles or tweeted industry specific keywords, *e.g.*, @CapacitorNews; @ElectronicProd; @TechOnline; "capacitors;" "motherboard;" "electronic components;" "electronic hardware;" "film capacitor;" "electrolytic capacitor;" "tantalum capacitor;" and "aluminum capacitor." The Twitter post had 72,438 gross impressions.

16. At Lead Class Counsel's direction, Rust created and currently maintains a website (www.capacitorsantitrustsettlement.com) containing information such as case status, settlement documents, and FAQs for the Class members' easy access to the settlement information ("Claims Website"). The Claims Website also includes the Long Form Notice. To add value and transparency for the Class, we also created a dashboard on the site that displays prominently and clearly certain key information about the process of administration, such as the number of and value of claims filed, fees accumulated. The Claims Website supports online claims filing capability. Class members have the ability to access a secure section of the Claims Website using unique identifier information printed on their mailed claim forms. This secure section of the Claims Website allows Class members to file their claim online in the same manner as they would complete the hardcopy, pre-populated claim form, and allow Class members to confirm sales volumes electronically or to upload additional documentation supporting higher amounts. Rust has regularly monitored activity on the Claims Website and updated its reports accordingly.

17. Once the notice period has elapsed and the Court has granted final approval of the settlement agreements, Rust will calculate the payout amounts due to Class members on a *pro rata*

basis based on the transactional sales information obtained from the Defendants, subject to the review and validation process described above, as explained in the Long Form Notice. Rust has experience performing such calculations and accurately and efficiently making distributions in this manner in antitrust cases.

18. Generally, Rust pays settlement funds to class members in direct purchaser antitrust settlements by check, as businesses most commonly use checks to pay their invoices. Among other things, using physical checks as a method of payment ensures that payments are made and processed in a timely, efficient and secure manner, and to avoid fraud and mismanagement. Large payments can be made by wire transfer to pay those claims. Class members who prefer an ACH transfer will have the option to select that during the claims process. In order to process payments electronically, class members will be required to provide account information, bank information, routing information and other information to ensure payments are transmitted to the correct payee. For checks not cashed within 60 days, Rust will call claimants and send follow-up mailings to encourage them to cash their checks or help to resolve any issues. In Rust's experience, this is an efficient method to ensure class members obtain benefits of settlement in an efficient and timely manner.

I hereby affirm under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: January 31, 2017                    By: _____
                                                Kendall S. Zylstra

Master File No. 3:14-cv-03264-JD                5
DECLARATION OF KENDALL S. ZYLSTRA IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS