Joseph R. Saveri (State Bar No. 130064)
Joshua Paul Davis (State Bar No. 193254)
Andrew M. Purdy (State Bar No. 261912)
James G. Dallal (State Bar No. 277826)
Nicomedes Sy Herrera (State Bar No. 275332)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            jdavis@saverilawfirm.com
            apurdy@saverilawfirm.com
            jdallal@saverilawfirm.com
            nherrera@saverilawfirm.com

*Interim Class Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 3:14-cv-03264-JD |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | **DIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS WITH DEFENDANTS FUJITSU LIMITED, NEC TOKIN, NITSUKO, THE OKAYA DEFENDANTS, AND ROHM**<br><br>Date: March 2, 2017<br>Time: 10:00 am<br>Courtroom: 11, 19th Floor |

Master File No. 3:14-cv-03264-JD

DIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS WITH DEFENDANTS FUJITSU LIMITED, NEC TOKIN, NITSUKO, THE OKAYA DEFENDANTS, AND ROHM

The Direct Purchaser Plaintiffs ("DPPs") submit this supplemental brief in further support of their Motion for Final Approval of the Proposed Settlements with Defendants Fujitsu Limited, NEC TOKIN, Nitsuko, the Okaya Defendants, and ROHM (Dkt.1461, the "Final Approval Motion").[1]

## I. THE CLASS MEMBERS' RESPONSE TO THE SETTLEMENTS IS OVERWHELMINGLY POSITIVE

Interim Lead Class Counsel ("Lead Class Counsel") for Direct Purchaser Plaintiffs ("DPPs" or the "Class") and Rust Consulting, Inc. ("Rust"), the claims administrator, have provided notice of the proposed Settlements as provided by the Court's Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (the "Order") (Dkt. 1455).

Lead Class Counsel and Rust have provided notice by U.S. mail, by publication (including an advertisement published in *The Wall Street Journal*), by Internet postings capturing 5,587 unique visitors, and through a social media campaign that generated 283,880 gross impressions. *See id*. In addition, Lead Class Counsel and the Claims Administrator have initiated or responded to hundreds of telephone calls and emails. *See* Stinehart Decl. at ¶ 11; Saveri Decl. at ¶ 5. After broadly disseminating notice of and information about the Settlements to Class members, Lead Class Counsel and Rust have fully executed the Court-ordered notice program. *See* Stinehart Decl. at ¶ 12.

Out of the 2,668 potential Class members identified from Defendants' transactional data or from Defendants' submissions, Class members have submitted 607 claim forms. *See* Stinehart Decl. at ¶¶ 10, 13. Not one potential Class member has objected to either the Settlements or counsel's request for an award of attorney's fees and expenses. *See* Stinehart Decl. at ¶¶ 4-5; Saveri Decl. at ¶¶ 6-7.

The Settlements are an excellent result for the Class. The $32,600,000 in Settlements comes from five Defendants responsible for less than 2 percent of the total U.S. commerce at issue during the relevant period. *See* Dkt. 1461, at p. 12. The settlement amounts for each of the Settlement Defendants account for a significant portion of their respective sales to U.S. purchasers during the relevant period, ranging from roughly 26.4% (ROHM) to 11 times the entire relevant U.S. sales (Nitsuko). *See id*. at pp. 5-9. Further, each of the Settling Defendants has agreed to provide substantial cooperation to DPPs to assist with their continued prosecution of their Sherman Act claims against the Non-Settling

---

[1] Defined terms in DPPs' Final Approval Motion are the same herein.

1

DIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS WITH DEFENDANTS FUJITSU LIMITED, NEC TOKIN, NITSUKO, THE OKAYA DEFENDANTS, AND ROHM

Defendants. *See id*.

The Class—members of which include many large, sophisticated businesses that are knowledgeable purchasers of electronic components—has largely accepted the Settlements. Class members representing 46% of the total commerce at issue have submitted claim forms. *See* Saveri Decl. at ¶ 8; Stinehart Decl. at ¶ 14. Indeed, many Class members having a large percentage of U.S. purchases during the relevant period have remained in the Class. The average claim amount[2] for all claim forms submitted by Class members that include pre-populated purchase history based on transactional data provided by Defendants is $63,153.25. *See* Saveri Decl. at ¶ 11.

On the other hand, only twelve (12) corporate families (including parent corporations and their subsidiaries) have requested exclusion, in whole or in part, from the Settlements. *See* Stinehart Decl. at ¶ 15. Of these, one corporate family group has chosen to submit a claim form with respect to four (4) out of the five (5) settling Defendants. Another corporate family has requested exclusion with respect to all settling Defendants, but neither the parent nor any of its subsidiaries appear to have been a direct purchaser, based on the transactional data provided by Defendants. *See id*.

The fact that many of the largest Class members have chosen to remain in the Class and benefit from the Settlements supports counsel's request for fees and expenses. These sophisticated businesses, some of which are among the largest business concerns in the country, are sophisticated consumers of legal services. They should be considered to know well the value of the benefit achieved and the work needed to obtain it against a complex worldwide cartel, such as that involved in this case. Significantly, no Class member has expressed any concerns about counsel's award request. Rather, the opposite is true. Several Class members having among the top 200 U.S. purchases by dollar amount during the relevant period have stated that they understand the complexity of this action and the challenges counsel have faced prosecuting the Class' claims. Those Class members, each of whom chose to participate in the Settlements, expressed their appreciation to counsel for prosecuting this action and obtaining the large monetary settlements for which approval is sought here. *See* Saveri Decl. at ¶ 15.

---

[2] Because the audit process is ongoing, these figures are subject to change. *See* Stinehart Decl. at ¶¶ 12-13. There is no reversion of any of the Settlement funds to the Settling Defendants, so the amount of claims distributed to each participating Class member may be higher. *See* Saveri Decl. at ¶ 12.

The Class' positive response to the Settlements is demonstrated not only by the significant number of claims made, but also by the limited number of opt-outs and by the numerous statements of satisfaction that Class members expressed directly to Lead Class Counsel. *See* Saveri Decl. at ¶ 3.

From December 18, 2016 through February 19, 2017, Rust answered 117 telephone calls from Class members and answered nearly 500 e-mails and additional requests for information, including requests for electronic versions of claim forms that Rust mailed pursuant to the Court's order. *See* Stinehart Decl. at ¶ 11. During the claims period, Lead Class Counsel called, left messages, or attempted to contact approximately 200 of the largest Class members to confirm their receipt of the claim form and notice packets, and to answer any questions they may have had regarding the Settlements.

## II. NOTHING UNDERMINES THE STRONG PRESUMPTION HERE IN FAVOR OF FINAL APPROVAL

The results of the claims process here support final approval of the Settlements. Many large, sophisticated businesses that routinely retain counsel to pursue their interests through litigation have submitted claims. Significantly, these Class members want to participate in the settlement. They do not object to the Settlements or counsel's requests for an award of attorney's fees and expenses. *See* Saveri Decl. at ¶¶ 6, 7, 14, 15. These Class members are some of the largest electronic components purchasers in the United States and are understood to be sophisticated consumers of legal services.[3] *See id*. Their participation in the Settlements—and their lack of objections—demonstrate that the Class approves of the settlement. *See In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. MDL No. 1917, 2015 U.S. Dist. LEXIS 170525, at *197 (N.D. Cal. Dec. 17, 2015) (citing *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004)); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29161, at *15 (E.D. Pa. Sept. 27, 2004) ("The fact that there have been **no objectors** to the Settlement, that the claims filed represent a significant majority of the sales at issue, and that claims

---

[3] Representatives of many of these large Class members expressed to Lead Class Counsel that they would prefer not to have their participation in the Settlements made known to the public and Defendants. *See* Saveri Decl. at ¶ 14. This preference is largely based on the Class members' concerns that such information, if made public, could disrupt or injure their business relationships with the Defendants. *See id*. Lead Counsel will be prepared to discuss this issue further in camera should the Court wish to do so. *See id*.

have been filed by major companies with significant resources . . . supports approval of the settlement."). *See also In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007 U.S. Dist. LEXIS 89998, at *9-10 (N.D. Cal. Nov. 28, 2007) (granting final approval where class members did not object to settlement); *Bynum v. Dist. of Columbia,* 412 F. Supp. 2d 73, 77 (D.D.C. 2006) ("The low number of opt outs and objectors . . . supports the conclusion that the terms of the settlement were viewed favorably by the overwhelming majority of class members."); *Pallas v. Pac. Bell,* No. C-89-2373 DLJ, 1999 U.S. Dist. LEXIS 23880, 1999 WL 1209495, at *8 (N.D. Cal. July 13, 1999) ("The small percentage . . . of persons raising objections is a factor weighing in favor of approval of the settlement.").

The limited number of opt-outs here also weighs in favor of final approval. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 U.S. Dist. LEXIS 170525, at *197 (low opt-out rates relative to number of notices sent favor approval of a settlement). Only twelve (12) corporate families representing approximately 17% of the total volume of U.S. commerce during the relevant period have requested to be excluded from the Settlements. *See* Saveri Decl. at ¶¶ 9-10; Stinehart Decl. at ¶ 14.

The opt-outs from Flextronics, Avnet, and AASI say little about the proposed Settlement because each one of them filed separate actions prior to DPPs' motion for preliminary approval. Indeed, a number of the opt-outs have told Lead Class Counsel that their decision to opt-out resulted from their ongoing business relationships with Settling Defendants and their willingness to settle or address price-fixing claims through their ongoing course of dealing. Their decisions to opt out does not indicate that they believe the Settlements are inadequate or should not be approved. *See* Saveri Decl. at ¶ 13. To the extent that the Settling Defendants have negotiated or may negotiate directly with opt-outs, exclusion requests from those direct purchasers should not weigh against approval of the Settlements.[4]

Finally, the claims rate here weighs heavily in favor of final approval. In most cases, courts approve settlements without any claims data because the claims program occurs after the settlement is final. Here, the claims rate is high: Class members representing 46% of the total commerce have submitted claim forms. *See* Stinehart Decl. at ¶ 14; Saveri Decl. at ¶ 8. This demonstrates that the

---

[4] The Settling Defendants' submission supports the Court's final approval of the Settlements. *See* Dkt. 1487. This document does not, however, identify the Class members with whom the Settling Defendants are negotiating directly outside of the Settlements.

proposed Settlements are fair, reasonable, and adequate. *See, e.g., Moore v. Verizon Commc'n Inc.*, No. C 09-1823, 2013 U.S. Dist. LEXIS 122901, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (approving settlement with a 3% claims rate).

Finally, as stated above, Lead Class Counsel has taken significant steps to encourage participation in the proposed Settlements.[5]

### III.   CONCLUSION

The Court-ordered notice program has been successfully implemented. The Class members' overall reaction to the Settlements has been very positive. No Class member has objected. A small number of Class members have opted out. The support for the proposed Settlements is strong. The Court should therefore finally approve the Settlements.

For the foregoing reasons, as well as the reasons set forth in the Final Approval Motion, DPPs respectfully request that the Court grant final approval of the proposed Settlements with the Settling Defendants, certify the Settlement Class, and approve DPPs' proposed allocation plan.

Dated: February 21, 2017

JOSEPH SAVERI LAW FIRM, INC.

By:   /s/ *Joseph R. Saveri*
          Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Joshua Paul Davis (State Bar No. 193254)
Andrew M. Purdy (State Bar No. 261912)
James G. Dallal (State Bar No. 277826)
Nicomedes Sy Herrera (State Bar No. 275332)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940

*Interim Class Counsel for Direct Purchaser Plaintiffs*

---

[5] These efforts (*see* Stinehart Decl. at ¶¶ 3, 6-12; Saveri Decl. at ¶¶ 2, 3) go above and beyond what is required by Due Process and Rule 23. *See generally* Final Approval Motion at pp. 18-29 (Dkt. 1461).