1
2
3
4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7     IN RE CAPACITORS ANTITRUST                 Master File No. 14-cv-03264-JD
      LITIGATION.
8                                                **ORDER RE NISSEI ELECTRIC CO.,
                                                 LTD.'S MOTION TO DISMISS FOR
9                                                LACK OF PERSONAL JURISDICTION
                                                 AND RELATED MOTION TO STRIKE**
10
                                                 Re: Dkt. Nos. 963, 1213
11

12          After taking under submission the motion to dismiss for lack of personal jurisdiction by

13   defendant Nissei Electric Co., Ltd., the Court announced that it was denied at a recent status

14   conference.  *See* Dkt. No. 1534.  This order details the grounds for the denial.

15                                        **DISCUSSION**

16   **I.     PLAINTIFFS' MOTION TO STRIKE (DKT. NO. 1213)**

17          As an initial matter, the direct purchaser plaintiffs ("DPPs") and indirect purchaser

18   plaintiffs ("IPPs") ask that the Court strike the new arguments raised and evidence submitted by

19   Nissei on reply, which relate to successor liability under Japanese law.  The request is granted.

20          Raising new arguments in a reply brief is a classic form of sandbagging that is barred

21   under Paragraph 15 of the Court's Standing Order for Civil Cases.  Nissei knew that the successor

22   liability issue would be an issue in the Court's resolution of the jurisdictional motion.  Nissei's

23   brief opens with the representation that on September 15, 2010, it "entered into an agreement to

24   purchase certain assets of a company also called Nissei Electric Co., Ltd., which at the time was

25   involved in bankruptcy proceedings . . . ('Dissolved Nissei')."  Dkt. No. 963 at 4.  Nissei says the

26
27
28

United States District Court
Northern District of California

United States District Court
Northern District of California

two companies have different names and are different legal entities.[1]  The Court will refer to the prior, acquired Nissei entity as "Dissolved Nissei."

After stating these facts in the opening brief, Nissei forewent a substantive discussion of successor liability in favor of a cursory footnote saying only that "[t]o the extent that plaintiffs rely on the activities of Dissolved Nissei to support their claims -- either of substance or jurisdiction -- against Nissei, this is improper."  Dkt. No. 963 at 4 n.4.  Nissei cited a decision from the Central District of California for the proposition that the "general rule of successor liability, recognized in all jurisdictions" is that a purchasing corporation does not assume the debts and liabilities of the selling corporation, even when a corporation purchases all or most of the assets of another corporation.  *Id.* (quoting *Me. State. Ret. Sys. v. Countrywide Fin. Corp.*, Case No. 2:10-CV-0302 MRP (MANx), 2011 WL 1765509, at *5 (C.D. Cal. Apr. 20, 2011)).  But Nissei failed to acknowledge that *Maine State Retirement System* expressly states that a choice-of-law analysis is to be conducted on the successor liability question even if the court's jurisdiction is based on federal question (and which in that case led to the choice of Delaware law).  *See id.* at *2-4.  Nor did Nissei say anything at all about a choice-of-law issue or the applicability of Japanese law anywhere else in its opening brief.  That Nissei chose to contend that Japanese law applies and precludes successor liability in the reply brief is all the more surprising and improper because it omitted any mention of those arguments in its discovery dispute letter that was filed after the filing of its opening brief and before plaintiffs had filed their opposition.  *See* Dkt. No. 1074.

Nissei's Japanese law argument was improperly raised for the first time in reply.  Dkt. No. 1202.  While Nissei criticizes plaintiffs for asking to strike the argument rather than asking for permission to further reply to it, Dkt. No. 1214, plaintiffs were within their rights to ask for the former.  Nissei did not follow the Standing Order, and the Court will not permit this kind of sandbagging.  *See Cal. Sportfishing Protection Alliance v. Pacific States Indus., Inc.*, Case No. 15-

---

[1]  Some of Nissei's discussion is literally impossible to follow.  In the reply brief, Nissei refers to the entities by their Japanese names in Japanese characters, and says that "[t]he fact that ニッセイ and 日精 share the same English translation is unremarkable, and actually quite pervasive."  Dkt. No. 1202 at 1 n.1.  This is a meaningless statement to non-speakers of Japanese and of no value to the Court or opposing parties in addressing Nissei's arguments.

cv-01482-JD, 2015 WL 5569073, at *2 (N.D. Cal. Sept. 22, 2015).  The new reply arguments about the applicability and content of Japanese law will not be considered.

## II.     NISSEI'S MOTION TO DISMISS (DKT. NO. 963)

On the merits of Nissei's motion, plaintiffs have done enough to defeat it at this stage. Nissei's motion to dismiss for lack of personal jurisdiction is brought under Federal Rule of Civil Procedure 12(b)(2).  Dkt. No. 963.  The party asserting personal jurisdiction bears the burden of proving its existence.  *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004).  A district court has discretion to decide the mode of resolving this kind of motion, and where the court determines that it will receive only written materials, "these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss."  *Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  All factual conflicts in the parties' affidavits are to be resolved in favor of the party asserting jurisdiction, namely the plaintiffs. *Action Embroidery*, 368 F.3d at 1177.

Nissei does not presently contend that plaintiffs cannot proceed on a successor liability theory because they failed to plead it adequately.  *Compare* Dkt. No. 1074 *with* Dkt. Nos. 963, 1202.  Instead, as crystallized by the parties' briefing on this motion, the pending dispute is whether Nissei bears successor liability for "Dissolved Nissei" such that the Court can exercise specific jurisdiction over Nissei.  *See* Dkt. No. 1202.  Plaintiffs' main contention is that successor liability exists here under the "mere continuation" exception under California law, because "(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; [and] (2) one or more persons were officers, directors, or stockholder of both corporations."  Dkt. No. 1179-5 at 8 (quoting *Ray v. Alad Corp.*, 19 Cal. 3d 22, 29 (1977)).  Under *Ray*, this is a disjunctive test, *see* 19 Cal. 3d at 29 (requiring showing of "one or both"), although Nissei argues that the first, "inadequate consideration" prong is not optional under the case law.  Dkt. No. 1202 at 5-6 (citing cases).

United States District Court
Northern District of California

In any event, plaintiffs have made an adequate prima facie showing on the first prong. *See* Dkt. No. 1179-5 at 8-9. They argue, for example, that Nissei paid "nothing . . . for various factories, offices, and land," and that "[e]qually dubious are the low-ball estimates given to the Hanamaki and Okaya factories and appurtenant properties." *Id.* at 8 (citing Exh. 17 at Nissei0000549_EN). The page they cite, Dkt. No. 1179-23 at ECF page no. 4, does in fact show that a June 25, 2010 Letter of Intent included a number of real estate items such as "warehouse site," "factory," "office," and "storage" with an "asking price (JPY)" of "0." Nissei suggests that plaintiffs' numbers are taken "primarily [from] a non-binding letter of intent," and that a different document, the "Asset Transfer Agreement," in fact "establishes that Nissei paid 145,800,000 JPY -- almost half the consideration paid -- for real property at the Hanamaki, Okaya, and Ichinohe factories." Dkt. No. 1202 at 6 (citing "NISSEI000057-NISSEI000060"). Nissei's point is not easy to follow because it cites those documents only by Bates numbers, without providing any docket numbers that would help the Court find those pages. But even after chasing them down, *see* Dkt. No. 1179-12 at ECF page nos. 18-21, the Court does not see how the items in that chart (*e.g.*, "1-18-4 Mototate, Hanamaki-shi, Iwate-ken," listed as a "residence") match up to the items plaintiffs were pointing to in their brief; where Nissei got the 145,800,000 JPY number; or why any of the numbers Nissei has put forward are not "low-ball estimates" or "inadequate consideration."

This dispute over the value of consideration paid for real estate is typical of the many, intensely factual disagreements the parties are engaged in here, and the nature of those disputes warrants denial of the motion. When the Court resolves a Rule 12(b)(2) motion on the papers, as it has the discretion to do, it is not in a position to "'weigh' the affidavits in order to resolve disputed issues," and without further evidence, there is "no way to select one set of facts as more credible than the other." *Data Disc*, 557 F.2d at 1284-85. Although Nissei, citing that very case, states "the Court must reject even otherwise plausible factual allegations if they are contradicted by affidavit," Dkt. No. 963 at 5 (citing *Data Disc* at 1284), that is simply wrong. What the circuit said is the opposite, and it expressly disapproved any framework under which a defendant could

4

"obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials." *Data Disc*, 557 F.2d at 1285.

The bar for avoiding dismissal in this context is much lower than Nissei believes it to be, and plaintiffs have met it. In response to plaintiffs' attempt to make a prima facie showing of personal jurisdiction, Dkt. No. 1179-5, Nissei has not disputed anything other than the applicability of successor liability here. *See* Dkt. No. 1202. For the reasons stated above, plaintiffs have, on a prima facie basis, satisfied the applicable successor liability test under California law under the "mere continuation" exception, and the Court consequently rules in plaintiffs' favor and denies Nissei's motion to dismiss. This does not necessarily decide the jurisdiction question once and for all. "[A]t any time when the plaintiff avoids a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, he must still prove the jurisdictional facts at trial [or at an evidentiary hearing] by a preponderance of the evidence." *Data Disc*, 557 F.2d at 1285 n.2. The Court reserves until a later time the decision on whether to put plaintiffs to the test at trial or at a "plenary pretrial proceeding." *Id*.

## CONCLUSION

Plaintiffs' motion to strike the Kitamura declaration and new arguments and evidence on reply is granted. Dkt. No. 1213. Defendant Nissei's motion to dismiss for lack of personal jurisdiction is denied, without prejudice to renewal at a later time if warranted by the facts and the law. Dkt. No. 963.

**IT IS SO ORDERED.**

Dated: March 7, 2017

_____

JAMES DONATO
United States District Judge