```
                                              PAGES 1 - 10

             UNITED STATES DISTRICT COURT

           NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

IN RE:  CAPACITORS ANTITRUST   )
LITIGATION,                    )
                               )    NO. C 14-03264 JD
                               )
                               )
```

                         San Francisco, California
                         thursday, April 6, 2017

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES**:

For Plaintiffs:  Direct Purchasers, Chip-Tech, Ltd., and Dependable Component Supply Corp:
                    JOSEPH SAVERI LAW FIRM
                    505 Montgomery Street, Suite 625
                    San Francisco, California  94111
            **BY: JOSEPH SAVERI
                  JAMES G.B. DALLAL
                  ANDREW PURDY
                  NICOMEDES HERRERA
                  ATTORNEYS AT LAW**

For Plaintiffs Indirect Purchasers, Toy-Knowlogy, Inc., and CAE Sound:
                    COTCHETT, PITRE & MCCARTHY LLP
                    San Francisco Airport Office Center
                    840 Malcolm Road
                    Burlingame, California  94010
            **BY: MARK RAM
                  ATTORNEY AT LAW**

Reported By:        Rhonda L. Aquilina, CSR #9956, RMR, CRR
                    Official Court Reporter

**APPEARANCES:** (CONTINUED)

For Defendants NEC Tokin Corp. and NEC Tokin America:

      GIBSON, DUNN & CRUTCHER LLP
      555 Mission Street
      San Francisco, California  94105
   **BY:** **GEORGE A. NICOUD III**
      **ATTORNEY AT LAW**

For Defendant Nitsuko Elec.
      Latham & Watkins
      505 Montgomery Street - Suite 1900
      San Francisco, California  94111
   **By:** **ASHLEY BAUER**
      **ATTORNEY AT LAW**

For Defendant AVX Corp.:

      MINTZ, LEVIN
      44 Montgomery Street, 36th Flr.
      San Francisco, CA 94104
   **BY:** **EVAN NADEL**
      **ATTORNEY AT LAW**

For Defendant Rohm Co., Ltd., and Rohm Semiconductor USA LLC:
      O'MELVENY & MYERS LLP
      Two Embarcadero Center - 28th Floor
      San Francisco, California  94111
   **BY:** **MEGAN HAVSTAD**
      **ATTORNEY AT LAW**

For Defendant Okaya Electric America, Inc, and Okaya Electric Industries Co., Ltd.:

      BAKER & MCKENZIE
      Two Embarcadero Center, 11th Flr
      San Francisco, CA 94111
   **BY:** **DARRELL PRESCOTT**
      **ATTORNEY AT LAW**

For Defendant Fujitsu:

      MORRISON & FOERSTER
      425 Market Street
      San Francisco, California  94105
   **BY:** **JEFFREY A. JAECKEL**
      **ATTORNEY AT LAW**

| | |
|---|---|
| 1 | **Friday - April 15, 2015**                                    **10:00 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:** Calling Civil 14-3264, In Re Capacitors |
| 5 | Antitrust Litigation. |
| 6 | Counsel, please state your appearances for the record. |
| 7 | **MR. SAVERI:** Good morning, Your Honor.  Joseph Saveri |
| 8 | on behalf of the Direct Purchaser Plaintiffs. |
| 9 | **THE COURT:** Okay.  So let me make sure I understand |
| 10 | some basics, and then I'll let you know what we're going to do. |
| 11 | So the number of potential claimants in the Class or |
| 12 | number of Class Members is about 1,900; is that right? |
| 13 | **MR. SAVERI:** Correct, Your Honor. |
| 14 | **THE COURT:** And 719 claim forms were submitted, but in |
| 15 | your view the substantive solved ones are about 282; right? |
| 16 | **MR. SAVERI:** As of right now there is -- some of those |
| 17 | claimants came basically without the pre-populated forms, so |
| 18 | they kind of came through the Internet.  They filled out claim |
| 19 | forms.  So there is an audit process that we have to conduct to |
| 20 | make sure -- to figure out what we're doing. |
| 21 | **THE COURT:** All right. |
| 22 | **MR. SAVERI:** With the ones -- with the claims that |
| 23 | came back on the pre-populated forms, obviously because they |
| 24 | came from the transactional data, we have a pretty high degree |
| 25 | of confidence that they are legitimate claims.  So that seems |

```
 1  like a pretty firm number.  But for everything else that kind
 2  of came in without a pre-populated form, we have to look at
 3  those.  And we think there are some duplicates in there.  We
 4  think there are some people who are perhaps Indirect
 5  Purchasers, or there may be, frankly, fraudulent claims.  We
 6  haven't finished that process yet.
 7          THE COURT:  Okay.  But just taking the 282 claim form
 8  number, that is 66 percent of the relevant sales stream; right?
 9          MR. SAVERI:  Correct, Your Honor.
10          THE COURT:  All right.  And then about 19 percent of
11  that sales stream is -- has been carved out by opt-outs; is
12  that right?
13          MR. SAVERI:  With one exception.  Since the last time
14  I was here, one of the Class Members -- one of the large Class
15  Members has wrote to us and asked to rescind.
16          THE COURT:  Oh, yes, I saw that.
17          MR. SAVERI:  And that's Arrow, and they want to
18  rescind only with respect to one of the settling defendants,
19  NEC Tokin.
20          THE COURT:  Why are they doing that?
21          MR. SAVERI:  I'm not going to presume to speak for
22  them.  I mean, Mr. Nicoud is here who represents NEC --
23          THE COURT:  I'm asking you to speculate.
24          MR. SAVERI:  I'll speculate.
25          THE COURT:  I'll ask counsel, why aren't they joining
```

1   the party?  Why are all these people saying no?
2        **MR. SAVERI:**  Well, you know why I think they rescinded
3   is because we really -- we put together a heck of a deal, and
4   they realized that it's in their economic interest to become
5   part of the class device.  Now, they may have had other
6   considerations or thoughts --
7        **THE COURT:**  No, no, I'm sorry.  Why are people opting
8   out?  I mean, it looks like about 20 percent of the covered
9   sales are in the hands of people who have said we don't want to
10  participate.  And you just said this one company is now saying,
11  *okay, we'll do it, but only for one*.  Why aren't people just
12  taking this deal?
13       **MR. SAVERI:**  I can offer some educated hypotheses.
14       **THE COURT:**  Yes.
15       **MR. SAVERI:**  One, that they have business
16  relationships with the defendants, and for one reason or
17  another they would prefer to address these claims in the
18  context of a business relationship.
19       **THE COURT:**  All right.
20       **MR. SAVERI:**  And you can probably imagine, you know,
21  changes in business terms, favorable treatment.  I think,
22  frankly, we produced that benefit, but nonetheless they would
23  want to do it kind of out of the eye of the Court.
24       **THE COURT:**  I was asking mainly for selfish reasons,
25  because I just don't want to see a flood of opt-outs.

1   **MR. SAVERI:**  Well, and, Your Honor --

2   **THE COURT:**  And I'm wondering if you're getting a
3   sense that that's going to happen.

4   **MR. SAVERI:**  No, I don't, Your Honor, because for two
5   reasons.  One, I think that the -- I think we've done a really
6   good job with these settlements, and there's significant value
7   in these claims.  And so I think that most educated and
8   sophisticated Class Members, because these are big businesses,
9   are looking at that, and making the decision that you said,
10  which is let's -- we should just cash the check.  It's easy,
11  and we've done a really good job reaching out to people with
12  these pre-populated claim forms, so they're kind of voting with
13  their feet.

14     I think there is -- in these cases there is a cottage
15  industry of firms who reach out to potential Class Members and
16  say some version of, *look, whatever you're going to get in the*
17  *Class case, we'll separately negotiate and we'll do better*,
18  okay.  Some class members are impressed by that approach and
19  make that decision.

20  **THE COURT:**  Well, they understand if they miss the
21  date they're out.  They can't come back later and say that
22  didn't work out.

23  **MR. SAVERI:**  They take that risk.
24     And, you know, we -- in this case, we've worked really
25  hard to reach out to people, to Class Members, to get them to

1 participate and, every Class Member that we received an opt-out
2 from, we circled back with them and said some version of "Are
3 you sure?"
4     **THE COURT:** You talked to them?
5     **MR. SAVERI:** We picked up the telephone and called
6 them; and some of them were represented by outside counsel, and
7 we talked to them. All we can do is say *we think this is a*
8 *good deal, we think you should stay in the class*. But
9 ultimately they can make their own decision.
10     **THE COURT:** Okay. Well, that gives me some comfort.
11     Okay. Well, I think things are improved since our last
12 visit, so you can consider Final Approval is granted, including
13 the attorneys' fees and requests. It's going to take me a
14 little bit of time to get the Order out. So treat it as
15 granted, if you can do that. Defendants will treat it as
16 granted, so don't stand on waiting for a written order. It's
17 granted as of today. It's just going to take me a little time
18 to get it out, okay.
19     **MR. SAVERI:** Thank you. One thing you will get,
20 though, is we submitted a Final Judgment that had the opt-outs
21 before we knew Arrow was going to rescind their opt-out. We
22 have a Revised Form of Judgment, which we have gone over
23 with --
24     **THE COURT:** Just file a new one saying Amended Final
25 Judgment --

1      **MR. SAVERI:**  Okay.
2      **THE COURT:**  -- or whatever you want to do with that.
3   Now, do you all want to come back for a status conference?
4      **MR. SAVERI:**  Yes, Your Honor.  We sent a letter to the
5   Court yesterday.  We've met with the Indirect Purchasers,
6   Flextronic, and the non-settling defendants, and we're
7   available the 27th.
8      **THE COURT:**  All right.  That sounds fine.  I don't
9   necessarily need a status conference statement.  If you want to
10  do one, that's fine.  I do want at least an agenda, though,
11  okay, by the 20th, one week ahead of time.  So just say *here*
12  *are the topics for discussion*, so I know what's coming.
13     **MR. SAVERI:**  Yeah.  I think they all think they're
14  going to be out of the case by then.
15     **THE COURT:**  Oh, all right.
16     **MR. SAVERI:**  So that's just --
17     **THE COURT:**  Is that right?
18     **MR. SAVERI:**  Those are the settling defendants, so I
19  think that's why they're here, so they don't have to show up
20  for that.
21     **THE COURT:**  Well, tell your friends.
22                      (Laughter)
23     **MR. NICOUD:**  We will, Your Honor.  Trey Nicoud for the
24  NEC Tokin defendants.
25     We are still in the Indirect Purchaser case, so we'll

1  probably see you later this month, but we are hoping to be out
2  of this.
3           **MR. SAVERI:**  I would anticipate that we'll provide an
4  agenda.  I think we do think that there is --
5           **THE COURT:**  A joint agenda.
6           **MR. SAVERI:**  Yeah, a joint agenda.  And I do think
7  we'll attempt to do a Joint Status Conference.
8           **THE COURT:**  That's fine.  I mean, at this point you
9  can hit the highlights.  We don't have to go through the, you
10 know, 18,000 questions in the standard form, so if you just
11 want to say -- you know what would actually be good is do an
12 agenda, get everything people want to talk about, and then just
13 have the conference statement be a narrative that goes with
14 that:  Here's why this is on the agenda, and this is the issue,
15 okay.
16          **MR. SAVERI:**  Yes.
17          **THE COURT:**  And I want to avoid -- because I
18 customarily say "Is there anything else," I want to avoid five
19 things that come up that the defense lawyers say they haven't
20 heard about yet, and you say you're just trying to be
21 proactive, and then I don't know what's happening.  That's
22 what -- the purpose of the agenda is to get you all on the same
23 page, and that will be all that we discuss, okay?  And when I
24 say "Is there anything else I can help you with," it would be
25 in reference to those agenda items only, not new items coming

1 | up on the fly.  So --
2 |         **MR. SAVERI:**  And, Your Honor --
3 |         **THE COURT:**  -- so it's a week ahead of time, so
4 | nothing will likely happen in that week that will disrupt
5 | things.
6 |         **MR. SAVERI:**  That's fine, Your Honor.
7 |         **THE COURT:**  Anything else for today?
8 |         **MR. SAVERI:**  I think that's everything that's on my
9 | list.
10 |         **THE COURT:**  All right.  So get that filed by
11 | April 20th.
12 |         **ALL COUNSEL:**  Thank you.
13 |         (Proceedings adjourned at 11:03 a.m.)
14 |                ---oOo---

1
2
3                    **CERTIFICATE OF REPORTER**
4        I certify that the foregoing is a correct transcript
5   from the record of proceedings in the above-entitled matter.
6
7   DATE:   Friday, April 7, 2017
8
9
10
11   _____
12        Rhonda L. Aquilina, CSR No. 9956, RMR, CRR
                       Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25