

Pillsbury Winthrop Shaw Pittman LLP
Four Embarcadero Center, 22nd Floor | San Francisco, CA 94111-5998 | tel 415.983.1000 | fax 415.983.1200

Roxane A. Polidora
tel: 415.983.1976
roxane.polidora@pillsburylaw.com

May 11, 2017

Honorable James Donato
United States District Court
450 Golden Gate Avenue
Courtroom 11, 19th Floor
San Francisco, California 94102

      Re:    *In re Capacitors Antitrust Litig.*, **Master File No. 14-cv-3264-JD (N.D. Cal.)**

Dear Judge Donato:

Pursuant to the Court's May 4, 2017 order (Dkt. 1640), the KEMET defendants submit this letter brief in opposition to plaintiffs' discovery letter brief ("Letter") seeking further responses to Interrogatory Nos. 16 and 17, propounded by DPPs in their Third Set of Interrogatories on August 7, 2015 (Dkt. 1632). KEMET is not a defendant in the IPP action or the Flextronics' action and is not and never has been under investigation by the Department of Justice. DPPs' Letter is premature and their arguments lack merit. DPPs' request should be denied.

**DPPs Failed To Complete Meet-and-Confer Process, Violating the Standing Order.** DPPs' Letter purports to "certify that they met and conferred with Shinyei and KEMET," but they failed to meet and confer with KEMET's counsel in person (Standing Order, ¶18) and rushed to file the Letter only four days after the parties had their first meet-and-confer call on the issue. Although KEMET supplemented its responses to Interrogatory Nos. 16 and 17 on February 1, *2016*, DPPs did not seek further responses from KEMET until April 11, 2017. Counsel for the parties met and conferred by telephone on April 24, 2017. Later that same day, counsel for DPPs sent the following: "If we do not hear otherwise from you by **Wednesday, April 26**, we will assume that KEMET does not plan to supplement its responses to these interrogatories and that the issue is ripe for resolution by the Court." Counsel for KEMET responded on April 26 and stated that "the meet and confer process has not run its course and it is inappropriate to raise this issue with the Court at this juncture," noting that the parties first discussed the April 11 letter just two days prior. Without any further communication, DPPs proceeded to file their Letter on April 28.

**The Interrogatories At Issue Appear To Be Focused On Companies That Allegedly Participated In Cartel Meetings, Which KEMET Did Not.** DPPs filed this case nearly three years ago. The operative complaint alleges that KEMET attended cartel meetings, but those allegations are false. KEMET first requested that DPPs identify any such evidence by interrogatories on June 23, 2015. Ironically, DPPs provided a list of Bates numbers (what they now criticize KEMET for doing). However, none of the documents cited in DPPs' responses are

Honorable James Donato
May 11, 2017
Page 2

evidence that KEMET participated in the alleged conspiracy, much less the specific meetings in the complaint.  KEMET has repeatedly requested that DPPs supplement their interrogatory responses and provide actual evidence showing that KEMET attended, or in any way participated in, the alleged price fixing conspiracy.  DPPs have refused to supplement until the close of discovery, essentially conceding they do not yet have any such evidence, and suggesting that they want to be able to surprise KEMET's witnesses at depositions.

Against this backdrop, DPPs' Letter demands that KEMET "provide a list of all of its personnel meeting or communicating with competitors with respect to the Capacitors *subject to the conspiracy*, as well as the date, time, location, name and affiliations of attendees, subject matter and agreements reached and resulting actions taken for each such communication or meeting that they can identify after a reasonably diligent search." (Dkt. 1632 at 1) (emphasis added).  Yet, in fact, DPPs' actual interrogatories are far broader since they are not limited to "Capacitors subject to the conspiracy."  If DPPs limit their interrogatories to "Capacitors subject to the conspiracy," KEMET has no responsive information because it had no part in the conspiracy.[1]

As set forth in KEMET's objections to Interrogatory Nos. 16 and 17, those requests are extremely overbroad and unduly burdensome and go beyond asking KEMET to identify every meeting it attended as part of, or in furtherance of, the conspiracy and any other meetings alleged in the complaint.  Those requests, as applied to KEMET, seek information that is irrelevant and would be incredibly burdensome if not impossible to provide.  KEMET personnel had many lawful and procompetitive contacts with companies that could be considered competitors – for example, as part of vertical customer-supplier relationships, IP disputes and licensing, at trade shows and customer-organized vendor events, and so on.  Even if the information was relevant, the broad scope is not proportional to the needs of this case.  Nonetheless, KEMET searched its documents and made a good-faith attempt to give Interrogatory Nos. 16 and 17 a reasonable scope, identifying documents that show communications with competitors (all of which also reflect legitimate business dealings).

**The Cases Cited By DPPs Are Inapposite As To KEMET.**  In the case law cited by DPPs, the details of the cartel meetings were at issue—not a recounting of every lawful meeting among competitors over a lengthy time period.  In the meet and confer, DPPs pointed only to *Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420, 2015 WL 4999762 (N.D.  Aug. 21, 2015).  There, the Court granted the plaintiffs' motion to compel a defendant, which had pleaded guilty to price fixing and admitted to attending "about 20 or 30" cartel meetings, to supplement its responses to an interrogatory requesting that defendant identify meetings and communications with competitors.  *Id.* at *1.  In its initial response, defendant provided a chart identifying 63 cartel meetings, including each meeting date and its attendees and their affiliations.  *Id.*  Instead

---

[1] KEMET explained this in its initial interrogatory responses, which DPPs here describe as "openly defiant."  This description is misleading.  First, KEMET stands by its denial that it participated in any conspiracy.  Second, KEMET almost immediately began a meet-and-confer process over those interrogatories in 2015, explaining how they do not fit KEMET since it did not participate in the cartel meetings but trying to come up with another solution that would satisfy DPPs.  After lengthy negotiations, KEMET believed it had come up with such an approach and supplemented its responses on February 1, 2016.  KEMET assumed the DPPs were satisfied when it did not hear from them on this for over a year.

of identifying the subject matter discussed at the cartel meetings and any information defendant provided or received at each meeting, as requested, defendant directed plaintiffs to over 1,700 pages of documents it had produced.  *Id.*  The court ruled that the defendant's reference to documents was not sufficient in that instance because it was undisputed that the documents used code names and symbols that were unknown to plaintiffs and alluded to unwritten details.  *Id.* at *2-3.  In other words, (a) there was a limited set of meetings at issue, and (b) the documents themselves omitted key information about them.[2]

In stark contrast here, KEMET did not participate in the alleged price fixing meetings, which KEMET has stated in verified responses and the amnesty applicant has confirmed under oath. As for the documents that KEMET identified in its responses, DPPs have failed to point to a single one that contains code language or symbols that are unknown to DPPs or that alludes to unwritten details.  DPPs cite to allegations in the operative complaint as proof that defendants used coded language to discuss cartel activity but the cited paragraphs do not mention KEMET. In response to KEMET pressing DPPs for a basis to support their vague claim that KEMET's responses to Interrogatory Nos. 16 and 17 are inadequate, DPPs identified two documents produced by AVX that were not referenced in KEMET's discovery responses.  One document refers to a trade statistics organization meeting that took place in Zurich nearly 14 years ago and not a single KEMET person is listed on the e-mail as a recipient or sender.  The other document is an e-mail from ten years ago from a former KEMET employee to a former AVX employee that includes driving directions to a deli in London and confirms a lunch date at the deli.  DPPs have already deposed AVX personnel regarding these AVX documents and they are planning to depose the former KEMET employees who were involved.[3]  KEMET undertook a reasonable effort to provide the requested information; the fact that in discovery another defendant's documents suggest there were meetings more than a decade ago that were not captured by KEMET's search does not mean KEMET's search or its responses are inadequate.

In conclusion, there is no legitimate purpose in requiring KEMET to attempt to identify and locate additional documents and information for the numerous lawful, procompetitive meetings it had with competitors.  Indeed, not only would the effort be extraordinarily burdensome, it would not address the DPPs' concerns given that their examples are from another defendant's documents from years ago with former KEMET employees.[4]

---

[2] Similarly, in *RSI Corp. v. IBM*, another case cited by DPPs, which is not an antitrust case, the court compelled further responses because the documents that the defendant-responding party referred to in its discovery responses did not contain key data fields and/or included acronyms that only the defendant could interpret and defendant conceded that it required a forensic accounting expert to compile a spreadsheet that correlated its own data.  No. 5:08-cv-3414-RMW, 2012 U.S. Dist. LEXIS 105986 (N.D. Cal. July 30, 2012).

[3] DPPs also obliquely refer to the Taiwan Fair Trade Commission (TFTC), but KEMET is not and has never been under investigation by the TFTC to its knowledge.  KEMET has nothing to produce with respect to the TFTC.

[4] DPPs also cite *FDIC v. Halpern*, 271 F.R.D. 191 (D. Nev. 2010), *Nat'l Fire v. Jose Trucking*, 264 F.R.D. 233 (W.D.N.C. 2010), and *In re Auction Houses Antitrust Litig.*, 196 F.R.D. 444 (S.D.N.Y. 2000)—out-of-circuit cases—in their Letter that hold that the responding party has a duty to collect responsive information to the extent that party has greater access or ability to obtain information than the propounding party.  In *National Fire*, for example, the responding party "merely assert[ed] that the answers can be provided by the attorney representing the defendants in [another] action."  *Id.* at 239.  In contrast, here, KEMET made a good-faith effort to give the interrogatories reasonable scope and responded accordingly.

Very truly yours,

*Roxane A. Polidora*

Roxane A. Polidora

*Counsel for Defendants KEMET Corporation
and KEMET Electronics Corporation*

cc: All Counsel (via ECF)