Steven N. Williams (State Bar No. 175489)
Adam Zapala (State Bar No. 245748)
Elizabeth Tran (280502)
Mark F. Ram (State Bar No. 294050)
**COTCHETT PITRE & McCARTHY LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
swilliams@cpmlegal.com
azapala@cpmlegal.com
etran@cpmlegal.com
mram@cpmlegal.com

*Interim Lead Class Counsel for Indirect Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Case No. 3:14-cv-03264-JD<br>Hon. James Donato |
| THIS DOCUMENT RELATES TO:<br><br>ALL INDIRECT PURCHASER PLAINTIFF ACTIONS | **DECLARATION OF STEVEN N. WILLIAMS IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Date:  July 6, 2017<br>Time: 10:00 a.m.<br>Place: Courtroom 11, 19th Floor |

**Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD**

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

I, Steven N. Williams, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and admitted to practice in this Court and the courts of the State of California. I am a partner with Cotchett, Pitre & McCarthy, LLP ("CPM"), and Interim Lead Counsel for the Indirect Purchaser Plaintiffs ("IPPs" or "Lead Counsel for IPPs"). The matters described are based on my personal knowledge, and if called as a witness, I could and would testify competently thereto. I make this declaration pursuant to 28 U.S.C. § 1746.

2. I make this declaration in support of IPPs' motion for attorneys' fees and reimbursement of litigation expenses.

3. I have reviewed and remained particularly cognizant of the Court's October 31, 2014 Order Appointing Interim Lead Class Counsel (Dkt. 319) ("Order"), including in particular the Order's provisions regarding fees, costs and expenses. The Firm has strictly adhered to that Order's requirements.

4. I, or members of my law firm, have been involved in every aspect of this case since its inception. I have personally overseen the vast majority of the work performed in this litigation on behalf of the IPP Class. This Court appointed CPM Interim Lead Class Counsel on October 31, 2014 (Dkt. No. 319).

5. Lead Counsel for IPPs has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting the claims against Defendants. While CPM has devoted its time and resources to this matter, it has foregone other legal work for which it would have been compensated.

6. The purpose of this declaration is to summarize (a) the factual and procedural history of the litigation, (b) the work performed by Lead Counsel for IPPs and Supporting Counsel[1], (c) the time expended in prosecuting this Action, (d) the costs and expenses for which counsel seek

---

[1] "Supporting Counsel" refers to a number of attorneys and law firms that assisted Lead Counsel for IPPs in the prosecution of this litigation. Declarations and exhibits attesting to the amount of time and expenses Supporting Counsel incurred can be found at Exhibits 6-23 to this Declaration.

LAW OFFICES COTCHETT, PITRE & McCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD

1

reimbursement, and (e) the steps Lead Counsel for IPPs employed to ensure the efficient management of this complex litigation.

**INTRODUCTION AND SUMMARY OF WORK PERFORMED**

7.  During the course of this hard-fought litigation, Lead Counsel for IPPs has supervised and directed the work performed by Supporting Counsel in an effort to ensure that the work they have performed has been accomplished effectively and efficiently.

8.  As this Court knows well from the over 1600 docket entries, every aspect of this case has been vigorously contested by some of the most sophisticated defense counsel in the country.

9.  To date, Class Counsel for IPPs performed the following work:

- Conducted an initial investigation of this case to develop the theories of liability and the facts that formed the basis of the allegations against Defendants. This research included a review of publicly available information regarding the Capacitor industry and consultation with industry experts and economists;

- Organized and attended several proffer sessions with the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") applicant to obtain cooperation and learn additional liability, class certification and damages information relevant to the case and Defendants;

- Drafted and extensively researched five comprehensive consolidated amended complaints detailing Defendants' alleged violations of the antitrust laws, which were initially submitted under seal and later filed in the public record (Dkt. 345-3 (400), 741 (1160), 1057, 1112 (1588), and 1466 (1589));

- Conducted exhaustive legal research regarding the Class's claims and the defenses thereto, particularly with respect to Defendants' multiple rounds of motions to dismiss and motions for summary judgment based on the Foreign Trade Antitrust Improvements Act ("FTAIA");

- Defended and, on the whole, prevailed after extensive rounds of hard-fought motions to dismiss, totaling 8 motions by Defendants with arguments covering personal jurisdiction (as well as jurisdictional discovery), the sufficiency of the conspiracy allegations under *Twombly* and *Iqbal*, the sufficiency of the complaint in light of the numerous state laws under which IPPs sued, amongst several other attacks on the pleadings;

- Propounded several sets of discovery that – after extensive meet and confers and negotiations with Defendants, including significant motion practice before this Court – resulted in the identification of hundreds of document custodians and the production of more than ten million documents (26 million pages and 4.55 terabytes) in addition to approximately 500 gigabytes of electronic transactional data;

- Drafted, met and conferred, negotiated and entered into agreements with Defendants over a number of case management documents, such as the Stipulation and Order Concerning the Discovery of Electronically Stored Information ("ESI") (Dkt. 782) the Protective Order (Dkt. 563), the Expert Stipulation and Order (Dkt. 540), the

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD

2

- Discovery Limits Stipulation and Order (Dkt. 685) and several other similar documents that contribute to the effective and efficient administration of this litigation;

- Engaged in multiple, extended discovery meet and confers with Defendants concerning the appropriate document custodians for each corporate family, the appropriate English-language search terms, the appropriate Japanese language search terms and other search mechanisms that would assist Defendants in identifying and producing responsive documents;

- Organized teams of lawyers that reviewed, searched, and extensively coded and analyzed these documents – most of which were in Japanese and required translations;

- Engaged in extensive non-party discovery, including issuing comprehensive subpoenas for documents to non-party distributors of capacitors to obtain their transactional data for both their purchases of capacitors from Defendants and their sales of capacitors to IPPs. After protracted meeting and conferring, IPPs succeeded in obtaining approximately 85% of the commerce sold from distributors to the IPPs;

- Propounded several sets of Interrogatories and Requests for Admission and issued Rule 30(b)(6) deposition notices;

- Answered several sets of discovery propounded by Defendants, including Requests for Production of Documents, Interrogatories and Requests for Admission;

- Contended with near-constant discovery disputes and motions to compel;

- Prepared for and took the **depositions of 62 fact and 30(b)(6) witnesses** from Defendants and 3 non-party witnesses;

- Prepared for and defended the depositions of all of the 11 IPP Class Representatives;

- Engaged and consulted extensively with industry experts, economists and statisticians on issues pertaining to electronic discovery, liability, summary judgment regarding FTAIA, class certification, and damages, throughout the course of the Action;

- Engaged in protracted settlement discussions and mediations with the Settling Defendants, *see, e.g.,* Dkt. 1305-2, 1374-2 (Williams Decls. in Support of Motion for Preliminary Approval);

- Documented the settlements with the Settling Defendants, briefed motions for preliminary approval, and engaged experts noted in the field of class action notice for the purpose of developing a robust notice program to inform the Class regarding the pending settlements.

10. Throughout this arduous litigation, IPPs have faced substantial risks. Plaintiffs have faced:

- The risk of litigating against some of the largest and most sophisticated law firms in the world with seemingly limitless resources;

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

**Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD**   3

- The risk that the consolidated complaints would not withstand the extensive individual and joint motions to dismiss;
- The risk that even if IPPs were able to obtain a favorable settlement or judgment, that the financial condition or bankruptcy of a Defendant would materially change or lessen the amount of the settlement;
- The risk that Defendants would, and in fact have, vehemently contested their participation in the alleged conspiracy;
- The risk that Defendants would prevail on their arguments at summary judgment or any other phase of this litigation;
- The risk that each Defendant would successfully argue that despite the existence of an antitrust conspiracy, IPPs suffered no "antitrust impact" and no damages were caused as a result;
- The risk of not achieving class certification;
- The risk of trying this antitrust case when several courts have commented that such a task is "notoriously complex", *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989); and
- The changing landscape of the law with respect to civil antitrust actions, proving damages and class actions generally.

**CONSOLIDATED COMPLAINTS AND MOTIONS TO DISMISS**

11. Cotchett, Pitre & McCarthy, LLP. ("CPM") filed its first indirect purchaser complaint on October 17, 2014 in the Northern District of California with its client, Toy-Knowlogy, Inc. This complaint was the product of many hours of investigation and research by CPM.

12. CPM filed its second indirect purchaser complaint on October 20, 2014 with its client, CAE Sound.

13. On October 31, 2014, this Court appointed CPM as lead counsel for the indirect purchaser plaintiff class. Dkt. 319.

14. On November 11, 2014, IPPs filed under seal a 128-page, factually-detailed First Consolidated Complaint ("FCC"). Dkt. 345-3. The FCC initially named 15 Defendant families and outlined price-fixing conspiracies with respect to some overlapping Defendants and some independent Defendants regarding electrolytic and film capacitors.

15. This FCC was the result of considerable work. Lead Counsel for IPPs spent significant time researching both legal and factual issues. The initial complaints were supplemented with factual information learned in proffer sessions with the ACPERA applicant.

LAW OFFICES COTCHETT, PITRE & MCCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD

4

Japanese documents had to be reviewed and translated to supplement factual allegations and to ensure that the classes' claims survived any challenges under *Twombly*.

16. On December 19, 2014, Defendants collectively and separately moved to dismiss the FCC. Dkt. 474, 475, 478. On May 26, 2016, this Court largely denied Defendants' motion, finding that IPPs had alleged plausible conspiracy claims. Dkt. 710. The Court also rejected Defendants' arguments regarding statutes of limitations, finding that IPPs had plausibly alleged fraudulent concealment. *Id*. The Court partially granted the motion, finding that IPPs had to further supplement their allegations concerning the involvement of Defendants' U.S. subsidiaries. *Id*.

17. In response to the Court's guidance in the order on Defendants' motions to dismiss, IPPs quickly mobilized a team of Japanese-language document reviewers to review documents and other information that would support additional allegations regarding Defendants' U.S. subsidiaries. IPPs were successful in locating additional documents and information that tied the U.S. subsidiaries to the conspiratorial conduct. Those allegations were incorporated into IPPs' Second Consolidated Complaint ("SCC"). IPPs filed their SCC on June 16, 2015. Dkt. 741.

18. During this process, IPPs were also responding to Defendant Nippon Chemi-Con's ("NCC") motion to dismiss based on a purported lack of personal jurisdiction. Dkt. 478. NCC's motion required jurisdictional discovery, additional factual investigation, and additional briefing. *See* Dkt. 635-4. The Court ultimately denied NCC's motion, finding that the exercise of personal jurisdiction over it was appropriate. Dkt. 738.

19. After IPPs filed the SCC, Defendants again collectively and separately moved to dismiss on July 6, 2015. Dkt. 791, 793. On December 30, 2015, the Court granted the motion as to non-California claims, but denied it in other respects. Dkt. 1003.

20. On January 27, 2016, IPPs filed their Third Consolidated Complaint ("TCC"), in which IPPs added additional class representatives from non-California states. Dkt. 1057. Pursuant to stipulation, on March 22, 2016, IPPs filed a Fourth Consolidated Complaint ("FCC") to clarify a factual allegation and avoid further motion to dismiss practice before the Court. Dkt. 1111-4.

21. Additionally, on November 20, 2015, Defendant Nissei Electric Co., Ltd. ("Nissei") also moved to dismiss, arguing that the successor Nissei entity lacked contacts with the United

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD

5

States sufficient for the exercise of personal jurisdiction.  Dkt. 963.  The parties were forced to engage in intensive meet and confers regarding jurisdictional discovery, which the Court granted.  IPPs conducted extensive factual research concerning Nissei's contacts with the United States, and reviewed voluminous documents concerning jurisdictional discovery.  On April 15, 2016, IPPs opposed Nissei's motion.  Dkt. 1179-5.  On March 7, 2017, this Court denied Nissei's motion and found that the exercise of personal jurisdiction was appropriate.  Dkt. 1546.

22. On December 21, 2016, IPPs filed a motion for leave to file the Fifth Consolidated Complaint ("FCC").  Dkt. 1414.  IPPs sought to add Holy Stone entities as Defendants to IPPs' complaint and to add AVX Corp., Kemet Corp. and Kemet Electronics Corp. as co-conspirators.  Id.  Holy Stone opposed IPPs' motion.  Dkt. 1416.  The Court granted IPPs' motion and thereafter IPPs filed the Fifth Consolidated Complaint, the operative complaint in this action.

## THE DISCOVERY PROCESS

23. This case is unquestionably complex.  It has involved both substantial amounts of discovery, as well as a multitude of disputes with Defendants.  As reflected in the Court's docket, IPPs have been forced to fight for many categories of discovery that they have sought.

**A.    Written Discovery**

24. On January 27, 2015, IPPs and DPPs served a joint First Request for Production of Documents.  This RFP included 32 requests and sought a comprehensive set of financial, organizational, conspiracy-related and transactional documents.

25. On February 25, 2015, IPPs served their First Set of Interrogatories on Defendants, requiring that Defendants identify information relevant to the FTAIA and product attributes.

26. On September 15, 2015, IPPs served a Second Set of Interrogatories on Defendants, also requiring that Defendants identify additional information relevant to FTAIA.

27. IPPs assisted DPPs in drafting their Third Set of Interrogatories on Defendants, requiring them to identify conspiratorial meetings and communications.

28. In addition to the foregoing, and as explained in more detail *infra*, IPPs engaged in substantial non-party discovery in this litigation.  IPPs propounded Rule 45 document subpoenas on over 30 non-party capacitor distributors.  These document subpoenas sought information

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD

6

concerning the third party distributors' purchases of capacitors from Defendants and their sales of capacitors to the IPP class.

**B.     The Meet and Confer Process and Motion Practice Before the Court**

29.     Subsequent to the service of the aforementioned discovery and multiple rounds of objections from Defendants, the parties held extensive meet and confer negotiations over the scope of the requests, document custodians, a search term protocol, an ESI protocol, and a discovery limitations/plan protocol.  In many cases, these negotiations required the intervention of the Court through motions to compel.

30.     IPPs reached agreement with the various Defendants for them to search and collect from hundreds of document custodians' files.  IPPs also negotiated and reached agreement with Defendants after extensive discussions concerning English and Japanese ESI search terms.  The parties also reached agreement concerning an ESI Stipulation and Order.

31.     As this Court knows, there has been extensive motion practice regarding a wide range of issues before the Court concerning discovery.  In most cases, IPPs have tried to coordinate as best as possible with DPPs regarding these disputes.  The disputes ranged from whether Plaintiffs were entitled to jurisdictional discovery, Dkt. 570, 572, 1179-5, to disputes about search terms, Dkt. 850, to disputes concerning depositions locations and the witnesses' invocations of the 5th Amendment, Dkt. 1068, to disputes with NCC concerning document custodians, Dkt. 748, to disputes concerning English translations of documents produced to government investigative authorities, Dkt.1108, to disputes about downstream Plaintiff data, Dkt. 1504, and disputes about absent class member discovery, Dkt. 1641.  The foregoing are only a sampling of the discovery disputes that have taken place before this Court.

32.     IPPs also spent significant time and resources in discovery negotiations concerning Defendants' production of transactional sales data.  As this Court knows, the transactional data produced in this litigation is enormous.  Defendants have produced over 500 gigabytes of sales data, reflecting many millions of transactions.  IPPs and their experts spent significant time attempting to understand the data and make use of it.  This often required close consultation between IPPs and their experts for purposes of clarifying the data and normalizing it for use by the experts in support

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD     7

of class certification. IPPs propounded multiple sets of questions seeking clarification from Defendants regarding their data. In some cases, this required multiple sets of questions to a single Defendant family. Often answers to IPPs' questions required follow up questions as answers begot more questions.

33. In addition to the foregoing, IPPs were forced to file a miscellaneous action in the Northern District of Texas to compel documents from a non-party capacitor distributor. That effort was successful as the non-party ultimately produced the needed information. IPPs efforts with respect to non-party discovery are explained more fully, *infra*.

**C.     ESI, Expert Discovery and Protective Orders**

34. The parties also spent significant time and effort setting forth the ground rules for this complex litigation. The parties negotiated, and the Court entered, a Stipulation and Order Regarding the Production of Electronically-Stored Information ("ESI"), Dkt. 782, a Stipulation and Order Regarding Expert Discovery, Dkt. 687, and a Protective, Order Dkt. 563

35. In addition to the foregoing, the parties also negotiated several case management agreements, such as the Stipulation and Order Concerning Discovery Limits. Dkt. 687.

36. In some instances, IPPs were forced to return to the Court to seek modifications to the foregoing documents due to changed circumstances.

**D.     Defendants' Document Productions and Plaintiffs' Review Efforts**

37. The document productions in this case have been enormous. Defendants have produced to IPPs several hundred separate document productions. All of these productions have required indexing, logging, processing and uploading to IPPs/DPPs' document review platform.

38. Thus far, IPPs have received over 10 million documents spanning over 26 million Bates-numbered pages of documents produced by the Defendants. This is an enormous amount of document discovery. To make matters more complex, the vast majority of these documents were produced in Japanese.

39. To effectively manage and review this colossal amount of material, IPPs and DPPs have coordinated their document review efforts. This process is ongoing and started with production of the ACPERA applicant's documents back in 2014. IPPs, in concert with DPPs, have

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD

8

had to establish teams of reviewing attorneys to attack the document review.  In doing so, IPP counsel drafted, edited and circulated for review a document review manual.  This manual informed the reviewers about the facts of the case, the review platform and the workflow procedure for the review itself.  Given the iterative nature of any document review, these protocols and workflows have had to be altered because of lessons learned or the particular status of the review at any point in time.  The document review teams typically have calls on a weekly basis to coordinate efforts and discuss findings.

40. Because of the large number of depositions in the case, IPPs and DPPs have had to work together to organize teams of reviewers responsible for prepping counsel for depositions on the horizon.  These tasks included identifying custodial files, creating "proof charts" and other work product aimed as summarizing the deposition target's best documents.  Once this process was complete, IPPs and DPPs worked together to identify those documents that were worthy of obtaining a certified translation for purposes of a deposition exhibit.  Those documents were then identified, culled and sent to outside vendors for a certified translation at significant cost.

41. This aforementioned process identified the important evidence in this case.  The process was made all the more complex because, as discussed, many of the documents were provided in foreign languages.  These documents required review by attorneys fluent in those foreign languages, who then had to determine which documents were sufficiently relevant to the litigation to require full English translations and, in certain cases, certified translations for use in depositions.  Though expensive and time consuming, the online database and process developed by IPPs and DPPs permitted Plaintiffs to efficiently prioritize documents and custodians.

42. In order to contain costs and maintain resources for the benefit of the Class, IPPs made the decision that no English language document reviewer could bill at a rate higher than $300 per hour for initial document review.  Foreign language document reviewers were given a cap of $350 per hour.

43. During the initial discovery phase and particularly in the deposition phase, the document review required the daily commitment of staff by CPM.  The process involved significant communications with IT specialists to manage, load and assist in the rolling document productions.

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD

9

Although the ESI protocols were negotiated and agreed to by all parties, IPPs experienced numerous issues related to the loading of data onto the database. While these issues were technical in nature, they required meet and confers with the Defendants.

### E. Plaintiffs' Document Collection and Productions

44. In addition to the offensive discovery outlined above, Plaintiffs were required to respond to discovery and to produce relevant documents to Defendants from the 11 Class Representatives. IPPs made their first production of documents on June 1, 2015 and made subsequent productions on July 16, 2015, August 10, 2015, October 9, 2015, August 22, 2016, September 7, 2016, February 9, 2017, and February 25, 2017. IPPs' counsel spent significant time responding to Defendants' discovery requests aimed at each of the 11 Class Representatives and in assisting Class Representatives in the search and production of relevant document.

45. In addition to responding to Requests for Production of Documents, Defendants also served a total of four sets of interrogatories on the 11 Class Representatives. IPPs spent time and resources with their clients researching and responding to these inquiries. Additionally, IPPs also spent substantial time research and responding to Defendants' contention interrogatories concerning the FTAIA and supplementing the same.

### F. Depositions

46. Lead Counsel for IPPs and Supporting Counsel have also spent significant time preparing for and taking the depositions of Defendants' employees and former employees. Conspiracy cases are document heavy and require a large number of depositions.

47. To date, Plaintiffs have taken 62 depositions of Defendants' employees or former employees in either their Fed. R. Civ. Proc. 30(b)(1) or 30(b)(6) capacity. Of these 62 depositions, the vast majority have required an interpreter, thus substantially prolonging the length of the deposition. Plaintiffs also took one non-party deposition.

48. In many cases, Defendants or their employees refused to appear for deposition in the United States, thus requiring several trips to foreign countries, such as Japan and Hong Kong. Adding to the complexity, deponents in Japan are precluded from appearing voluntarily. IPPs, therefore, were required to file motions with the Court, obtain deposition rooms at the U.S.

Consulate or Embassy, and procure a deposition visa after a diplomatic exchange between the United States and Japan. Additionally, some former employees refused to appear voluntarily, thus requiring Plaintiffs to file successive motions concerning deposition attendance.

49. In connection with Defendants' summary judgment motions regarding the FTAIA, Plaintiffs propounded additional discovery, and took the depositions of the Defendants' fact declarants (or a designated 30(b)(6) deponent). IPPs, in coordination with DPPs, took 17 such depositions for purposes of the FTAIA motion.

50. The above-numbers only apply to the taking of depositions. But IPPs were also required to defend 11 class representative depositions. Defendants deposed all of the Class Representatives. This process required IPPs to prepare their Class Representatives for the deposition, often requiring substantial travel and preparation over a number of days.

G.  **Non-Party Discovery**

51. IPPs have also engaged in extensive, and protracted, non-party discovery. On June 30, 2015, Plaintiffs served an initial tranche of Rule 45 subpoenas seeking documents and transactional data from non-party capacitor distributors. Obtaining this discovery was critical to IPPs' case for purposes of demonstrating pass through of the overcharge. On June 29, 2016, July 1, 2016, July 8, 2017, and July 19, 2016 Plaintiffs served Rule 45 subpoenas to additional non-party capacitor distributors seeking the same information.

52. Though additional documents were sought, IPPs were primarily interested in receiving *both* the distributors' purchasing data *and* their sales data to demonstrate pass through to the IPP classes.

53. Counsel for IPPs spent significant time meeting and conferring with representatives of the non-party distributors. In some cases, IPPs were forced to resort to filing miscellaneous actions in courts across the country to enforce the subpoenas and obtain the needed transactional data.

54. Over the course of 2 years, IPPs were successful in obtaining useable transactional from the vast majority of the subpoena recipients. As reflected in the IPPs' Expert Report of Dr. Russell Lamb in Support of Class Certification, IPPs obtained approximately 85% of the *entire*

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD

11

*market* for distributor data. In Class Counsel's experience, this is a remarkable amount of data obtained from non-party sources for purposes of an indirect purchaser case.

## SUMMARY JUDGMENT PROCEEDINGS REGARDING THE FOREIGN TRADE ANTITRUST IMPROVEMENT ACT ("FTAIA")

55. Early in the litigation, in order to streamline the claims and class certification, the Court stated its desire to address issues involving the FTAIA early. IPPs (and the other parties) devoted substantial time and resources to this effort.

56. IPPs and Defendants met on several occasions to informally discuss their views on what types of commerce were included in IPPs' claims. In addition to this informal discovery, the parties engaged in significant formal discovery, including propounding Interrogatories and taking depositions of witnesses pursuant to Rule 30(b)(1) and Rule 30(b)(6).

57. On October 1, 2015, Defendants moved for summary judgment on one slice of commerce that IPPs contend is not barred by the FTAIA: sales from foreign manufacturers to foreign distributors who resell those capacitors to purchasers in the United States. *See* Dkt. 911. In support of their motion, Defendants submitted fact declarations from 19 declarants.

58. Thereafter, IPPs took 17 depositions of Defendants' declarants or persons most qualified to provide testimony in an extraordinarily compressed timeframe.

59. On November 23, 2015, IPPs filed their Opposition to Defendants' summary judgment motion. In the Opposition, IPPs argued that the FTAIA did not bar claims based on purchases from foreign distributors. Dkt. 965.

60. On January 13, 2016, the Court heard oral argument on Defendants' motions. And on September 30, 2016, the Court issued an Order regarding the summary judgment motions. In it, the Court expressed its desire for additional briefing as to whether any of IPPs' state law claims had a narrower reach than the FTAIA. In doing so, the Court appears to have agreed with IPPs and concluded that the FTAIA does not bar IPPs' claims. Dkt. 1302.

61. On November 4, 2016 Defendants submitted their supplemental briefing on the IPP motion, arguing that the extraterritorial reach of New York and Florida law were narrower than the reach of the Sherman Act. Dkt. 1372. On December 2, 2016, IPPs submitted their Opposition brief,

LAW OFFICES COTCHETT, PITRE & MCCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD

12

providing extensive authority showing that the extraterritorial reach of state law was at least coterminous with that of federal law. Dkt. 1407. That motion remains under submission.

## PREPARATION FOR CLASS CERTIFICATION AND EXPERT REPORTS AND DEPOSITIONS

62. As discussed in more detail *infra*, IPPs have limited the time period reported in support of this motion to fees and costs incurred between November 1, 2014 and September 30, 2016 ("the Relevant Period"). As a result, a significant amount of time spent in preparation for class certification is not included in this report. For example, just recently, IPPs have spent substantial time preparing for their expert's report, analyzing Defendants' experts' reports, and preparing a rebuttal report. IPPs have also spent significant time preparing to depose Defendants' experts and preparing their own expert for his deposition. None of this time is included with this report because it was incurred after September 30, 2016 – a week before the date IPPs' filed their motion for preliminary approval of the three settlements.

63. Nevertheless, even during the Relevant Period for fees and costs associated with IPPs' motion, Lead Counsel for IPPs spent significant time consulting with their economists and industry experts concerning: (a) Defendants' transactional data, (b) Defendants' FTAIA motions, (c) third party discovery, (d) Defendants' pricing, and (e) other class certification and merits-related issues.

## SETTLEMENT PROCESS

64. Although this motion concerns only three settlements, counsel for IPPs have also engaged in settlement discussions with other Defendants.

65. On March 29, 2016, IPPs settled with Nitsuko. This settlement requires Nitsuko to pay $800,000 for the benefit of the IPP class. In addition to the cash component, Nitsuko must provide certain cooperation to IPPs to assist them in further prosecution of the case.

66. On April 15, 2016, IPPs settled with Okaya. This settlement requires Okaya to pay $900,000 for the benefit of the IPP class. In addition to the cash component, Okaya must provide certain cooperation to IPPs to assist them in further prosecution of the case.

LAW OFFICES COTCHETT, PITRE & MCCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD     13

67. On July 15, 2016, IPPs settled with NEC TOKIN. The NEC TOKIN settlement provides $13,250,000 to the IPP class. This settlement was reached after protracted negotiations and an in-person, all-day mediation with former federal district court judge, Hon. Layn Phillips (Ret.). Through efforts made at and after the mediation, the parties were able to fully settle the case against NEC TOKIN. In addition to the cash component, NEC TOKIN must provide certain cooperation to IPPs to assist them in further prosecution of the case.

68. On October 6, 2016, IPPs sought preliminary approval of the foregoing settlements. Dkt. 1305. On November 10, 2016, the Court granted preliminary approval of the settlements.

### NOTICE TO CLASS MEMBERS AND CLASS MEMBER RESPONSES

69. Counsel for IPPs consulted with and engaged recognized experts in the class action notice field, AB Data, for the purpose of providing the class with notice of the proposed settlements.

70. The Notice Program, developed in consultation with AB Data, provided for (1) individual mailed notice to Class Members who could be identified through reasonable efforts (*i.e.*, individual notice); (2) multiple and targeted publications of the class notice in those paid media outlets most likely to inform potential class members about the settlements (*i.e.*, publication notice); (3) press releases (*i.e.*, earned media) that were uniquely targeted to potential Class Members; (4) the placement of the class notice on internet banner advertisements, including through social media outlets; (4) the establishment of a settlement website that provided notice of the settlements; and (5) a toll free telephone support line to service class members' inquiries regarding the notice, which in turn, permitted them to request a copy of the notice delivered via direct mail. *See, e.g.,* Declaration of Linda Young Submitted in Support of IPPs' Class Notice Program, Dkt. 1308.

71. On January 30, 2017, this Court approved IPPs' Notice Program. Dkt. 1456.

72. Thus far, IPPs have received no objections to any of the settlements, the Notice Program, to the request for attorneys' fees or to the request for reimbursement of litigation expenses, which were all outlined in the notices.

LAW OFFICES COTCHETT, PITRE & MCCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD     14

# ATTORNEYS' FEES AND EXPENSES

## A. IPP Counsel's Attorneys' Fees and Expenses

73. Lead Counsel for IPPs have employed many measures to ensure that the lodestar figure presented herein is not improperly inflated. As an initial matter, Lead Counsel for IPPs have strictly complied with this Court's Order Appointing Interim Lead Counsel. *See* Dkt. 319. Section V of that Order set forth guidelines that IPPs were to follow for purposes of attorneys' fees and litigation expenses. Lead Counsel for IPPs not only followed those Rules closely for themselves, but disseminated those rules to any Supporting Counsel and informed them that their time would not be considered by Lead Counsel for IPPs unless Supporting Counsel also strictly followed those Rules. Accordingly, Lead Counsel for IPPs required regular reporting of detailed time records from Supporting Counsel. In doing so, Lead Counsel for IPPs required detailed backup time to ensure that Supporting Counsel were not duplicating efforts or billing for time that was not directed by Lead Counsel for IPPs.

74. In addition to the requirements set forth in this Court's Order (Dkt. 319), Lead Counsel for IPPs also employed other efforts and safeguards to ensure that billings were reasonable and not duplicative. For example, Lead Counsel for IPPs have (1) capped the hourly rate for document review to $300 per hour and $350 per hour for foreign language document review, regardless of years of experience; (2) to avoid duplication of effort and achieve other efficiencies, provided strict guidelines to Supporting Counsel that they were only to work on the case at the direction Lead Counsel for IPPs and that only time authorized would be included in an application to the Court, (3) included only hours worked on this case from November 1, 2014 (10 days prior to the filing of the Consolidated Complaint and after appointment of lead counsel for IPPs) to September 30, 2016 (one week prior to the filing of IPPs' motion for preliminary approval in support of these three settlements) ("the Relevant Period")—the foregoing means that all time for both Lead Counsel for IPPs and Supporting Counsel prior to the appointment of leadership has not been submitted, thereby eliminating any pre-complaint investigation, time spent on service of process and other such time; and (4) required Supporting Counsel to at regular periodic intervals

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD

15

submit contemporaneous time records to ensure compliance with Lead Counsel for IPPs' guidelines.

75. The hourly rates for the attorneys, paralegals and law clerks at my firm included in **Exhibit 1** are the usual and customary hourly rates charged by CPM on a historical rate basis. The total number of hours spent by my firm during the relevant time period of time was 15,079.80 hours, with a corresponding historical lodestar of $5,743,106.00. This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm.

76. Attached hereto as **Exhibit 3** is a summary of the total hours, lodestar and expenses of all IPP counsel—Lead Counsel for IPPs and Supporting Counsel—that participated in the joint prosecution of this litigation. The total number of hours spent by all IPP Plaintiffs' Counsel, including Lead Counsel for IPPs and Supporting Counsel is 32,788.9 hours, with a corresponding lodestar of $13,139,375. All firms were instructed to only submit time and lodestar for work done during the Relevant Period as well as capping certain services (*i.e.* document review) at particular hourly rates and eliminating other time based on the discretion and billing judgment of Lead Counsel for IPPs.

**B.      Supporting Counsel's Attorney Fees and Expenses**

77. Attached hereto as **Exhibits 6 through 23** are detailed declarations with attached exhibits from all Supporting Counsel submitting time in the case, setting forth the time and costs they have incurred in this litigation.

## COSTS

78. Attached hereto as **Exhibit 2** is a chart outlining the itemized costs and expenses incurred by CPM during the Relevant Period. My firm expended $405,635.95 in unreimbursed costs and expenses in connection with the prosecution of this litigation. They were incurred by my firm on behalf of the Class on a contingent basis, and have not been reimbursed. The expenses incurred in this Action are reflected in the books and records of my firm. No outside litigation funders have been used in this case. All costs have been advanced by counsel for IPPs.

79. **Exhibit 4**, attached hereto, contains a compilation of each firm's unreimbursed costs and expenses in the amount of $132,691.41. These costs and expenses are supported by each firm's separate declaration in support of fees and costs.

80. As noted, Class Counsel for IPPs established a Litigation Fund to finance the joint prosecution of this litigation against the Defendants. Counsel, including Lead Counsel for IPPs and Supporting Counsel, contributed to a Litigation Fund. A total of $3,444,370.13 in necessary litigation costs and expenses were incurred to the Litigation Fund. Attached hereto as **Exhibit 5** is an accounting of these costs and expenses. None of these expenditures have been included for reimbursement in any of the individual fee and expense declarations of any Supporting Counsel.

81. Despite the fact a total of $3,444,370.13 has been incurred in litigation expenses, at this time and in accord with IPPs' Class Notice, IPPs are only seeking reimbursement of a total of $2,558,454.00.

82. I reviewed all costs submitted by Supporting Counsel for reimbursement for compliance with the Court's Order Appointing Interim Lead Class Counsel (Dkt. No. 319). I identified to Supporting Counsel any costs that were not in conformity to the Court's order, to which Supporting Counsel removed the costs identified and are not seeking compensation. The cost summaries attached as Exhibit B to Supporting Counsels' declarations are derived from each of the respective firms' accounting records as kept in the ordinary course of business.

I declare that the foregoing is true and correct to the best of my knowledge. Executed on May 17, 2017 in New York, New York.

                                                          */s/ Steven N. Williams*
                                                          Steven N. Williams

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

Declaration of Steve Williams ISO Indirect Purchaser Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses; Case No. 3:14-cv-03264-JD

17