1  Daniel W. Fox (SBN 268757)
**K&L GATES LLP**
2  4 Embarcadero Center, Suite 1200
San Francisco, CA  94111
3  Telephone:  (415) 882-8200
Facsimile:  (415) 882-8220
4  daniel.fox@klgates.com

5  Scott M. Mendel (admitted *pro hac vice*)
Steven M. Kowal (admitted *pro hac vice*)
6  Michael E. Martinez (admitted *pro hac vice*)
Lauren N. Donahue (admitted *pro hac vice*)
7  Brian J. Smith (admitted *pro hac vice*)
**K&L GATES LLP**
8  70 West Madison Street, Suite 3100
Chicago, IL  60602
9  Telephone:  (312) 372-1121
Facsimile:  (312) 827-8000
10  scott.mendel@klgates.com
steven.kowal@klgates.com
11  michael.martinez@klgates.com
lauren.donahue@klgates.com
12  brian.j.smith@klgates.com

13
*Attorneys for Defendants Nichicon Corporation and*
14  *Nichicon (America) Corporation*

15  [Additional Counsel Listed on Signature Page]

16  **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
17  **SAN FRANCISCO DIVISION**

18  **IN RE CAPACITORS ANTITRUST**                      Case No.  3:14-cv-03264-JD
**LITIGATION**
19
**DEFENDANTS' NOTICE OF MOTION**
20  THIS DOCUMENT RELATES TO:                          **AND PHASE II JOINT MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**
21  FLEXTRONICS INTERNATIONAL USA,                     **DISMISSING FLEXTRONICS'S**
INC.'S INDIVIDUAL ACTION                            **SHERMAN ACT AND CALIFORNIA**
**STATE LAW CLAIMS FOR FOREIGN**
22                                                     **TRANSACTIONS**

23                                                     **[Fed. R. Civ. P. 56; L.R. 7-2, 7-4]**

24                                                     Prior Related Court Order:
Order re Phase I of Summary Judgment on
25                                                     Foreign Transactions [Docket No. 1302]

26
**Date:         Sept. 14, 2017**
27  **Time:         10:00 a.m.**
**Courtroom:   11, 19th Floor**
28  **Before:       The Hon. James Donato**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# **<u>TABLE OF CONTENTS</u>**

**<u>Page No.</u>**

NOTICE OF MOTION AND MOTION ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.     STATEMENT OF ISSUES TO BE DECIDED ................................................ 1

II.    INTRODUCTION ............................................................................................. 2

III.   STATEMENT OF FACTS ............................................................................... 3

     A.     The Parties and Foreign Flex Entities .................................................. 3

     B.     The Purchases of Capacitors by Foreign Flex Entities ......................... 4

     C.     Finished Goods Containing Capacitors Sold by Foreign Flex Entities ........ 5

IV.   LEGAL STANDARDS ..................................................................................... 5

V.    ARGUMENT .................................................................................................... 6

     A.     The Direct Purchaser Claims Assigned to Flextronics USA by Foreign Flex Entities Are Barred by the FTAIA .................................................. 8

           1.     The Direct Purchases by the Foreign Flex Entities Are Not "Import Commerce" Under the FTAIA ........................................ 9

           2.     The Direct Purchases by the Foreign Flex Entities Do Not Satisfy Either of the Required Elements of the FTAIA's Domestic Injury Exception ........................................................................... 11

                a.     Defendants' alleged conduct did not have a direct, substantial, and reasonably foreseeable impact on domestic commerce ............. 12

                b.     Any effect the defendants' conduct had on U.S. commerce did not "give rise" to the claims of the Foreign Flex Entities and fails to establish proximate cause ....................................... 14

           3.     The FTAIA Bars Claims on the Export Sales of U.S. Defendants to Foreign Flex Entities .................................................................... 16

     B.     The Indirect Purchaser Claims Assigned to Flextronics USA by Foreign Flex Entities Are Barred by Both the Indirect Purchaser Doctrine and the FTAIA .......... 17

VI.   CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Cedars-Sinai Med. Ctr. v. Mass. Mut. Life Ins. Co.*,
  No. 94-cv-55065, 1995 WL 564757 (9th Cir. Sept. 21, 1995)....................................................8

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,
  710 F.3d 946 (9th Cir. 2013) ..............................................................................................13

*Del. Valley Surgical Supply Inc. v. Johnson & Johnson*,
  523 F.3d 1116 (9th Cir. 2008) ............................................................................................17

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
  542 U.S. 155 (2004).........................................................................................5, 7, 8, 16, 17

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)..........................................................................................................17, 18

*McGlinchy v. Shell Chemical Co.*,
  845 F.2d 802 (9th Cir. 1988) ...................................................................................................7

*Minn-Chem, Inc. v. Agrium, Inc.*,
  683 F.3d 845 (7th Cir. 2012) .............................................................................................10, 11

*Motorola Mobility, Inc. v. AU Optronics Corp.* ("*Motorola IV*"),
  No. 09-cv-6610, 2014 WL 258154 (N.D. Ill. Jan. 23, 2014)...................................................7

*Motorola Mobility LLC v. AU Optronics Corp.* ("*Motorola V*"),
  775 F.3d 816 (7th Cir. 2014) .........................................................7, 8, 9, 11, 12, 15

*In re Dynamic Random Access Memory (DRAM)*,
  546 F.3d 981 (9th Cir. 2008) ............................................................................7, 14, 15, 16

*In re Lithium Ion Batteries Antitrust Litig.*,
  No. 13-md-02420, 2017 WL 2021361 (N.D. Cal. May 5, 2017) ...............................11, 12, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*Motorola I*"),
  No. 07-cv-1827, 2010 WL 2610641 (N.D. Cal. June 28, 2010)...................................7, 11, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*Motorola II*"),
  785 F.Supp.2d 835 (N.D. Cal. 2011) ......................................................................................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*Motorola III*"),
  No. 07-cv-1827, 2012 WL 3276932 (N.D. Cal. Aug. 9, 2012) ................................................7

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
  608 F.Supp.2d 1166 (N.D. Cal. 2009) ...............................................................................8, 16

ii

*Timberlane Lumber Co. v. Bank of America, N.T. and S.A.,*
   549 F.2d 597 (9th Cir. 1976) ....................................................................7

*United States v. Hsiung,*
   778 F.3d 738 (9th Cir. 2014) ..............................................7, 9, 10, 12, 13, 14, 17

## STATUTES AND RULES

15 U.S.C. § 6a ("FTAIA") ................................................................... *passim*

Cal. Bus. & Prof. Code § 17200, *et seq.* ...............................................18

Fed. R. Civ. P. 56(a) ..................................................................1, 3

## OTHER AUTHORITIES

H.R. Rep. 97-686 (1982).............................................................10, 11

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
   Principles and Their Application* ¶ 272i (3d. ed. 2006) .........................................9

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on September 14, 2017, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11 of the above-referenced Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California, the undersigned Defendants will and hereby move pursuant to Rule 56 of the Federal Rules of Civil Procedure for entry of an order of partial summary judgment dismissing the First and Second Claims for Relief in the Consolidated Second Amended Class Action Complaint and Complaint of Flextronics International USA, Inc. ("Flextronics USA"), Dkt. No. 1355 (the "Complaint"), to the extent Flextronics USA seeks recovery for:

(1) <u>direct</u> purchases of capacitors by affiliated foreign Flextronics entities ("Foreign Flex Entities"[1]) in which the capacitors were also shipped to a Foreign Flex Entity;

(2) capacitors exported by Defendant entities in the United States to a Foreign Flex Entity; and

(3) <u>indirect</u> purchases by Foreign Flex Entities of capacitors from foreign distributors.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the previously filed Phase I motions,[2] the concurrently filed Proposed Order, the pleadings on file in this action, the exhibits accompanying the Declaration of Philip Van Der Weele ("Van Der Weele Decl.") filed concurrently with this Motion, and any additional evidence and argument that may be presented before or at the hearing of this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      STATEMENT OF ISSUES TO BE DECIDED**

Whether the FTAIA bars the claims of Foreign Flex Entities based on:

---

[1] As used herein, "Foreign Flex Entity" refers to foreign subsidiaries of Flextronics USA's parent, Flextronics International Limited ("Flextronics"), a Singapore corporation, or one of the foreign facilities used by Flextronics entities to manufacture products containing capacitors.

[2] *See* Defendants' Notice of Motion and Joint Motion for Partial Summary Judgment Dismissing Plaintiffs' Sherman Act Claims for Foreign Transactions or, in the Alternative, to Simplify the Issues Under Fed. R. Civ. P. 16, Dkt. No. 915 (the "Phase I Motion"); Direct Purchaser Plaintiffs' and Flextronics' Opposition to Defendants' Motion for Partial Summary Judgment Dismissing Plaintiffs' Sherman Act Claims for Foreign Transactions, Dkt. No. 967-5 (the "Phase I Response"); and Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment Dismissing Plaintiffs' Sherman Act Claims for Foreign Transactions or, in the Alternative, to Simplify the Issues Under Fed. R. Civ. P. 16, Dkt. No. 985 (the "Phase I Reply").

(i) Capacitors sold and shipped by a foreign Defendant directly to a Foreign Flex Entity and incorporated by a Flex Foreign Entity into finished goods that were sold outside the United States;

(ii) Capacitors sold and shipped by a foreign Defendant directly to a Foreign Flex Entity and incorporated by a Foreign Flex Entity into finished goods that were sold into the United States;

(iii) Capacitors sold by a Defendant entity in the United States directly to a Foreign Flex Entity; and

(iv) Capacitors sold by a foreign Defendant directly to a foreign distributor, who then resold them to an indirect purchasing Foreign Flex Entity.

## II.    INTRODUCTION

Defendants make this second summary judgment motion under the Foreign Trade Antitrust Improvement Act ("FTAIA"), 15 U.S.C. § 6a, pursuant to this Court's instruction to file "Phase II summary judgment motions consistent with the legal holdings in this [Phase I] order."  Dkt No. 1302, at 14:13-14 (September 30, 2016) ("Phase I Order").  In this Phase II Motion, Defendants seek partial summary judgment excluding from this case the four categories of purchases by Foreign Flex Entities identified above.

### A.  Direct Purchaser Claims

Based on the Phase I Order, two categories of direct purchases by Flextronics entities are already in the case and hence not covered by this Motion: (1) purchases made by a United States-based Flextronics entity, such as Flextronics USA; and (2) purchases made by a Foreign Flex Entity where the capacitors were delivered by a Defendant to a Flextronics facility in the United States.  *See* Phase I Order, at 5-8.  The only direct purchases of capacitors that are the subject of this Motion are those that were sold and delivered to a Foreign Flex Entity.

The Court reserved for Phase II consideration those capacitors that were sold and delivered to a purchaser outside the United States, as well as such capacitors that were incorporated into finished products that were then sold in the United States.  *Id.* at 11-12.  As demonstrated below, these direct purchases of capacitors by Foreign Flex Entities are excluded from the reach of the Sherman Act and

California state law under the FTAIA because they are not "import commerce" and otherwise do not meet the "domestic injury exception" of the FTAIA.

### B.  Indirect Purchaser Claims

In its Phase I Order, the Court also deferred resolution of any indirect purchaser claims until the parties filed supplemental briefs addressing the application of the FTAIA to indirect purchaser claims on a state-by-state basis.  *See* Phase I Order, at 14:6-7.  The parties to this Motion agree that Flextronics USA's indirect purchaser claim as an assignee from Foreign Flex Entities that purchased capacitors from foreign distributors is ripe for a summary judgment motion.[3]

Resolution of this indirect purchaser claim is straightforward.  The FTAIA excludes such indirectly purchased capacitors by Foreign Flex Entities for the same reasons that it excludes the direct purchases covered by this Motion.  The Court has already rejected Flextronics USA's argument that California state law, or any state's law, extends its reach beyond the FTAIA.  *Id.* at 13.

### III.   STATEMENT OF FACTS

This Motion may be decided as a matter of law pursuant to Rule 56(a)[4], based upon the following material facts that cannot be genuinely disputed.

### A.      The Parties and Foreign Flex Entities

Defendants[5] are primarily foreign[6] manufacturers of capacitors that, together with certain of

---

[3] The moving parties and Flextronics USA have agreed to defer briefing on the indirect purchaser claims of Flextronics USA in its own capacity, as opposed to as an assignee of the Foreign Flex Entities—that is, claims relating to Flextronics USA's own purchases of capacitors from foreign distributors—pending the Court's further resolution of IPPs' FTAIA issues.  *See* Transcript of Proceedings, *In re Capacitors Antitrust Litigation*, Case No. 3:14-cv-03264 (N.D. Cal. April 27, 2017), at 27:14–28:20 [attached as Ex. 1 to Van Der Weele Decl.].

[4] The applicable summary judgment standard is set forth in Defendants' Phase I Motion, at 8-9.

[5] The defendants named by Flextronics USA are KEMET Corporation; KEMET Electronics Corporation; Nippon Chemi-Con Corporation; United Chemi-Con, Inc.; Hitachi Chemical Co., Ltd.; Hitachi AIC Inc.; Hitachi Chemical Co. America, Ltd.; Fujitsu Ltd.; Nichicon Corporation; Nichicon (America) Corporation; AVX Corporation; Rubycon Corporation; Rubycon America Inc.; ELNA Co., Ltd.; ELNA America Inc.; Matsuo Electric Co., Ltd.; TOSHIN KOGYO Co., Ltd.; Holy Stone Enterprise Co., Ltd.; Milestone Global Technology, Inc. (d/b/a HolyStone International); ROHM Co., Ltd.; ROHM Semiconductor U.S.A., LLC; Okaya Electric Industries Co., Ltd.; Okaya Electric America Inc.; Taitsu Corporation; Taitsu America, Inc.; Shinyei Kaisha; Shinyei Technology Co., Ltd.; Shinyei Capacitor Co., Ltd.; Shinyei Corporation of America, Inc.; Nitsuko Electronics Corporation; Nissei Electric Co., Ltd.; Soshin Electric Co., Ltd.; Soshin Electronics of America, Inc.; Shizuki Electric Co., Ltd.; and American Shizuki Corporation. *See* Compl. ¶ 101.

[6] Four Defendants, AVX , KEMET, American Shizuki Corporation, and United Chemi-Con, Inc., have manufacturing operations in the United States and sell capacitors to customers both outside and inside the United States.  Thus, while references herein to the foreign manufacture of capacitors

their U.S. subsidiaries and affiliates, sell capacitors.  *See* Compl. ¶¶ 32-101.

Plaintiff Flextronics USA is a manufacturer of electronic products based in California. Compl. ¶ 31.  Flextronics USA is a wholly-owned subsidiary of Flextronics International Ltd., headquartered in Singapore.  *See* Declaration of Mark Trutna in Support of [Flextronics USA's] Response to Defendants' Motion for Partial Summary Judgment ("Trutna Decl."), Dkt. No. 966-18, at ¶ 1.  The Flextronics family of companies, under the umbrella of the Singapore parent company ("Flextronics"), "is one of the world's largest providers of global supply chain solutions, with revenues of $26.1 billion in fiscal year 2015.  Flextronics relies on an extensive network of manufacturing facilities in the world's major consumer electronics and industrial markets (Asia, the Americas, and Europe) in order to serve the growing outsourcing needs of both multinational and regional OEMs." *Id.* at ¶ 4.  The Singapore parent company has over 100 subsidiaries located in approximately 30 countries across four continents.  *Id.* ███████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████   *See* Flex Suppl. Interrog. Resp. to Def. First Set of Interrog. (1) and (2), dated Sept. 28, 2015 ("Flextronics USA's Suppl. Interrog. Resp."), at 4, [attached as Ex. 3 to Van Der Weele Decl.].

The capacitors that Flextronics USA itself purchased are not the subject of this Phase II Motion.  However, Flextronics USA is also asserting the claims of its foreign affiliates through assignments executed by its foreign affiliates.[7]  It is these assigned claims of the Foreign Flex Entities that are the subject of this Motion.  *Id.*; Flex Initial and Prelim. Obj. and Resps. To Defs.' First Set of Interrog. Numbered (1) & (2), dated Sept. 3, 2015 ("Flex Initial Interrog. Resp."), at 5 [attached as Ex. 4 to Van Der Weele Decl.].

**B.    The Purchases of Capacitors by Foreign Flex Entities**

The capacitor sales at issue under the assigned claims are those that are sold and shipped to

---

followed by foreign-to-foreign sales do not include such domestic manufacturing operations, all legal arguments nevertheless apply to foreign sales made by these U.S. entities because the FTAIA excludes not only foreign-to-foreign purchases, but also US-to-foreign purchases—*i.e.*, exports, as further explained below.

[7] Flextronics provided a list of Foreign Flex Entities that have assigned their purported claims to Flextronics USA as Exhibit 1 to Flextronics USA's Suppl. Interrog. Resp. [attached as Ex. 3 to Van Der Weele Decl.].

Foreign Flex Entities outside the United States, whether by foreign Defendants or as exports by domestic Defendants. ███████████████████████████████

███████████████████████  Deposition of Mark Trutna, President of Flextronics USA, at 198:8–199:18, 230:6-11, May 2, 2017 [attached as Ex. 2 to Van Der Weele Decl.] ("Trutna Dep."). These capacitors are also shipped to a Foreign Flex Entity.  Purchase order data provided by Flextronics establishes that, during the relevant time period approximately ████ of the capacitors purchased by Flextronics were purchased by and delivered to Foreign Flex Entities.[8]

### C.    Finished Goods Containing Capacitors Sold by Foreign Flex Entities

The Foreign Flex Entities incorporated the capacitors they purchased into finished products, which they then sold to customers around the world.  Trutna Decl., at ¶ 17.  A portion of such sales of finished goods were made by Foreign Flex Entities to their customers located in the United States. *Id.*  The parties have stipulated that, during the period 2001-2015, the aggregate cost of Capacitors to Flextronics as a percentage of the aggregate cost of all materials purchased by Flextronics for finished goods containing capacitors was █████.  *See* Stipulated Fact for Purposes of the Phase 2 FTAIA Summary Judgment Briefing as to Flex. Int'l USA, Inc. Regarding the Cost of Capacitors Purchased by Flextronics Compared to the Cost of Finished Goods Into Which the Capacitors Were Incorporated, dated May 16, 2017 ("Cost Stipulation") [attached as Ex. 5 to Van Der Weele Decl.].

## IV.    LEGAL STANDARDS

The FTAIA was intended to clarify and limit the extent to which U.S. antitrust laws apply to allegedly anticompetitive export and overseas conduct.[9]  The FTAIA amends the Sherman Act by "placing *all* (nonimport) activity involving foreign commerce outside the Sherman Act's reach.  It then brings such conduct back within the Sherman Act's reach *provided that* the conduct *both* (1) sufficiently affects American commerce . . . *and* (2) has an effect of a kind that antitrust law considers harmful . . . ."  *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004)

---

[8]  FL_00000245958-A, 5958-B, 5959, and 5960 are massive Excel spreadsheets containing Flextronics's purchase data for 2001 through 2015. They are far too voluminous to append to this brief.  Defendants will provide a disc containing this data if the Court wishes.

[9]  For a detailed summary and discussion of the statutory language and intent of the FTAIA, which remains applicable to Flextronics USA's claims in this Phase II Motion, *see* Defendants' Phase I Motion, at 11-14.

(emphasis in original).  Thus, as a threshold consideration, in order for the FTAIA to be triggered, the trade or commerce involved must not be imports into the United States.  This threshold consideration is referred to as the "import commerce exclusion" from the FTAIA.

Assuming that import commerce is not involved, the FTAIA then places foreign transactions—such as the ones that are the subject of this Motion—outside of the reach of the Sherman Act, unless an exception, hereafter referred to as the "Domestic Injury Exception," applies.  The Domestic Injury Exception has two elements.  The first element requires that conduct involving foreign commerce have a "direct, substantial, and reasonably foreseeable effect" on domestic commerce.  15 U.S.C. § 6a(1).  This element is referred to herein as the "domestic effect" requirement.  The second element requires that the domestic effect "gives rise to a claim under the provisions of [the Sherman Act]," 15 U.S.C. § 6a(2),  referred to as the "proximate cause" element.  *See* Phase I Order, at 8-11.

## V.   ARGUMENT

By simply purporting to execute a number of assignments from nearly 100 foreign Flextronics subsidiaries located in 30 countries, Flextronics USA is attempting to extend the reach of the Sherman Act and California state law to the entirety of Flextronics's global purchases of capacitors, regardless of where those capacitors, or any finished goods containing them, were bought, delivered, or sold, and despite the lack of proof of any domestic effects of the alleged conspiracy giving rise to the claimed foreign injuries.  According to Flextronics USA—the nominal plaintiff asserting Flextronics's claims—it is immaterial whether those capacitors were sold inside or outside of the United States, whether they were exported from the U.S. or not, whether they were sold by a foreign or domestic affiliate of a Defendant, whether they were billed or shipped to a location in the United States, or whether they were incorporated into a product sold inside or outside the United States.  Flextronics USA claims that *all* of Flextronics's global capacitor purchases from Defendants are subject to the Sherman Act and California state law.  Flextronics USA's extreme position ignores its burden to prove domestic effects of the alleged conspiracy that gave rise to the claimed injuries essentially reduces the FTAIA to an easily avoided nullity[10] and, not surprisingly,

---

[10] ████████████████████████████████████████████████████████

1   finds no support in the statute itself or applicable case law.

2        In analyzing extraterritorial antitrust claims like those asserted by Flextronics USA, courts

3   not only evaluate whether they satisfy the statutory elements of the FTAIA but also assess factors of

4   international comity[11] and the prevention of forum-shopping abuses by opportunistic plaintiffs.  As

5   the Supreme Court noted, the FTAIA was enacted to reduce the "serious risk of interference with a

6   foreign nation's ability independently to regulate its own commercial affairs."  *Empagran*, 542 U.S.

7   at 165.  As the Ninth Circuit has observed, claims like those Flextronics USA is asserting on behalf

8   of its foreign affiliates that made their purchases entirely outside the United States are "not of the

9   type that Congress intended to bring within the Sherman Act's reach when it enacted the FTAIA,"

10  and such plaintiffs have "recourse under [their] own . . . antitrust laws."  *In re Dynamic Random*

11  *Access Memory (DRAM)*, 546 F.3d 981, 989 (9th Cir. 2008).  To permit Flextronics USA to stand in

12  "the place of its foreign companies and sue on their behalf under U.S. antitrust law would be an

13  unjustified interference with the right of foreign nations to regulate their own economies." *Motorola*

14  *Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 824 (7th Cir. 2014) (hereinafter "*Motorola V*")

15  [12]; *see also Empagran*, 542 U.S. at 165-66 (U.S. law is intended "to redress *domestic* antitrust

16

17  ████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████  *See* FL_000001386–1396 [attached as Ex. 6 to Van Der Weele Decl.].  Easily avoided nullity indeed.
    [11] The Ninth Circuit has long recognized the importance of weighing "whether the interests of, and

19  links to, the United States including the magnitude of the effect on American foreign commerce are sufficiently strong, vis-a-vis those of other nations, to justify an assertion of extraterritorial

20  authority" and instructed courts considering the extraterritorial reach of U.S. antitrust laws to take into consideration, *inter alia*, "[a]s a matter of international comity and fairness, should the

21  extraterritorial jurisdiction of the United States be asserted to cover it?" *Timberlane Lumber Co. v. Bank of America, N.T. and S.A.*, 549 F.2d 597, 613-15 (9th Cir. 1976) (superseded by the FTAIA as

22  recognized by *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 813 n.8 (9th Cir. 1988)).
    [12] *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816 (7th Cir. 2015) is referred to as

23  *Motorola V* because it is preceded by three decisions in the Northern District of California adjudicated in coordinated pre-trial proceedings pursuant to the Multidistrict Litigation statute, 28

24  U.S.C. § 1407, and several decisions in the Northern District of Illinois and the Seventh Circuit after the action was remanded to its original forum.  Those decisions are *In re TFT-LCD (Flat Panel)*

25  *Antitrust Litig.*, No. 07-cv-1827, 2010 WL 2610641 (N.D. Cal. June 28, 2010) ("*Motorola I*"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 785 F.Supp.2d 835 (N.D. Cal. 2011) ("*Motorola II*"); *In re*

26  *TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-cv-1827, 2012 WL 3276932 (N.D. Cal. Aug. 9, 2012) ("*Motorola III*"); and *Motorola Mobility, Inc. v. AU Optronics Corp.*, No. 09-cv-6610, 2014 WL

27  258154 (N.D. Ill. Jan. 23, 2014) ("*Motorola IV*").  *Motorola V*, cited with approval by the Ninth Circuit in *United States v. Hui Hsiung*, 778 F.3d 738, 751-753 (9th Cir. 2015), *cert. denied*, 135 S.

28  Ct. 2837 (June 15, 2015), effectively overruled *Motorola III* insofar as pertinent to the issues here.

injury," and when a plaintiff's claims arise from "foreign harm," "the justification for that interference seems insubstantial.") (emphasis in original).

Further, by pursuing its assigned antitrust claims in the United States rather than in the countries in which the Flex Foreign Entities are incorporated, located, and conduct business, Flextronics is effectively forum-shopping, wedging claims into this litigation which Congress determined are more efficiently pursued in other jurisdictions. *Motorola V*, 775 F.3d at 821 ("Should some foreign country in which one of its subsidiaries operates have stronger antitrust remedies than the United States does, Motorola would tell that subsidiary to sue under the antitrust law of that country."). Having "availed itself of the advantages of the parent subsidiary relationship under corporate law," Flextronics "cannot now easily disavow itself of such to suit its [own] purposes." *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F.Supp.2d 1166, 1189 (N.D. Cal. 2009). Flextronics's alleged injuries arise from goods that the Flex Foreign Entities purchased in foreign countries for use at foreign factories; Flextronics must seek redress for these foreign injuries under foreign law.

These policy reasons, which were the impetus behind the enactment of the FTAIA, weigh in favor of excluding the wholly foreign transactions at issue here. The FTAIA's statutory language leads to the same result.

### A.     The Direct Purchaser Claims Assigned to Flextronics USA By Foreign Flex Entities Are Barred By the FTAIA

The FTAIA bars claims based on the direct purchases of the Foreign Flex Entities (and hence Flextronics USA suing in their stead)[13] for two reasons. As a threshold matter, none of these capacitor purchases is an import into the United States, thus the import commerce exclusion from the

---

[13] All of the direct purchaser claims covered by this Phase II Motion are ones that Flextronics USA is asserting as an assignee of Foreign Flex Entities in which Foreign Flex Entities purchased and took delivery of the capacitors. As set forth below, the FTAIA bars all claims based on the direct purchases covered by this Motion. Thus, the Foreign Flex Entities did not have any claims under U.S. and state antitrust laws to assign to Flextronics USA based on their direct purchases of capacitors. To the extent that Flextronics USA's subsidiaries, parent, and/or affiliated entities have assigned to Flextronics USA their legal claims (*see* Flex Initial Interrog. Resp., at 5 [attached as Ex. 4 to Van Der Weele Decl.]), Flextronics USA, as assignee, simply stands in the shoes of the assignors; it has no stronger argument than they would have had—which is none. *See Cedars-Sinai Med. Ctr. v. Mass. Mut. Life Ins. Co.*, No. 94-cv-55065, 1995 WL 564757, at *3 (9th Cir. Sept. 21, 1995).

FTAIA does not apply.  Therefore, the FTAIA bars claims based on those purchases unless the Domestic Injury Exception applies.  The Domestic Injury Exception also does not apply to purchases covered by this Motion, because claims based on those purchases fail to satisfy each of the exception's two requirements— "domestic effects" and "proximate cause".

Claims based on a subset of direct purchases by the Foreign Flex Entities—where a U.S. defendant sells capacitors to a Foreign Flex Entity and ships those capacitors out of the United States to a Foreign Flex Entity—fail for a third, independently sufficient reason.[14]  Those sales by U.S. defendants constitute export commerce, and the FTAIA excludes exports from the reach of the Sherman Act.  *United States v. Hsiung*, 778 F.3d 738, 751 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2837 (June 15, 2015).

### 1. The Direct Purchases by the Foreign Flex Entities Are Not "Import Commerce" Under the FTAIA.

None of the purchases of capacitors by Foreign Flex Entities from foreign Defendants qualify as "import commerce" under the FTAIA.[15]  For purposes of analyzing the import commerce exclusion, two distinct categories are relevant here:  In the first category, a Foreign Flex Entity purchases a capacitor from a Defendant outside of the United States.  The Foreign Flex Entity then incorporates the capacitor into a finished product which is then ultimately sold <u>outside</u> the United States.  These sales and capacitors never touch the United States.  By the plain meaning of the word "import," and as other courts have held, this pathway does not involve import commerce.  *See Motorola V*, 775 F.3d at 818 (products bought by plaintiff's foreign subsidiaries that were incorporated into finished goods and sold abroad "never became a part of domestic U.S. commerce" and thus "can't possibly support a Sherman Act claim."); *see also* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 272i (3d. ed. 2006) (import commerce "involves transactions in which the seller is located abroad while the buyer

---

[14] If a U.S. defendant invoiced or shipped the capacitors to a Flextronics entity or facility in the United States, the capacitors would already be included in the case by virtue of this Court's Phase I Order.

[15] An explanation and analysis of how the import commerce exclusion applies to DPPs' and Flextronics USA's full scope of claims, much of which remains relevant to this Phase II Motion, was provided in Defendants' Phase I Motion and need not be repeated here.  *See* Phase I Motion, at 15-17.

1    is domestic and the goods flow into the United States").

2           The Ninth Circuit relied on the Seventh Circuit's prior reasoning for its definition of what

3    import trade is, and, by necessary implication, what import trade is not:

4           Although our circuit has not defined "import trade" for purposes of the FTAIA, not
            much imagination is required to say that this phrase means precisely what it says. As
5           the Seventh Circuit held in a case involving foreign cartel members, "transactions that
            are directly between the [U.S.] plaintiff purchasers and the defendant cartel members
6           *are* the import commerce of the United States . . . ."

7    *Hsiung*, 778 F.3d at 754-55 (quoting *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 855

8    (7th Cir. 2012) (emphasis in original). *Hsuing*'s analysis of the legislative history of the

9    FTAIA further supports the conclusion that the statute was not intended to cover entirely

10   foreign commerce:

11          House Reports are clear that the FTAIA does not implicate import trade. "A
            transaction between two foreign firms, even if American-owned, should not, merely
12          by virtue of the American ownership, come within the reach of our antitrust laws.
            Such foreign transactions should, for the purposes of this legislation, be treated in the
13          same manner as export transactions—that is, there should be no American antitrust
            jurisdiction absent a direct, substantial and reasonably foreseeable effect on domestic
14          commerce or a domestic competitor . . . . It is thus clear that wholly foreign
            transactions as well as export transactions are covered by the Amendment, but that
15          import transactions are not."

16   *Id*. at 754 (quoting H.R. Rep. 97-686, at 9–10 (1982)).

17          The second category of direct purchase transactions starts out the same as the first: a Foreign

18   Flex Entity purchases a capacitor from a foreign defendant and the Foreign Flex Entity then

19   incorporates the capacitor into a finished product. The Foreign Flex Entity then sells the finished

20   product into the United States. Such transactions also do not constitute "import commerce" under

21   the FTAIA because it is the *Foreign Flex Entity*, not a Defendant, who sells the finished product into

22   the United States. The Ninth Circuit has held that a defendant has to make the sale in order for a sale

23   into the United States to qualify as an import for purposes of the import commerce exclusion. *See*

24   *Hsuing*, 778 F.3d at 754-55 (import trade under FTAIA means "transactions that are *directly*

25   between the *U.S.* plaintiff purchasers and defendant cartel members" and "transactions between

26   foreign defendant producers . . . and purchasers *located in the United States*") (emphases added)

27   (internal citations omitted). Under this requirement, a sale by a Foreign Flex Entity into the United

28   States does not qualify as import commerce.

In a factually similar case in this district, Judge Illston made clear that "the FTAIA's 'import commerce' exclusion applies only where the defendants are directly involved in the importation of goods or services into the United States." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-cv-1827, 2010 WL 2610641, at \*4 (N.D. Cal. June 28, 2010) (hereinafter "*Motorola I*").  Noting that the foreign-purchased products were imported into the United States by plaintiffs and not by defendants, Judge Illston held that "[t]he dispositive inquiry is whether the conduct of the defendants, not plaintiffs, involves 'import trade or commerce.'"  *Id.* at \*5 (internal citation omitted).

Facing the same issue in a later appeal, the Seventh Circuit agreed with Judge Illston, holding that components sold in foreign commerce that are incorporated into finished goods and then sold into the U.S. are not "import commerce" for purposes of the FTAIA, because "[i]t was Motorola [the plaintiff], rather than the defendants, that imported these panels in to the United States."  *Motorola V*, 775 F.3d at 818.  There, as here, the finished good entered the United States in a transaction no involving defendants and *after* the foreign transaction in which the plaintiff's overseas injury allegedly occurred.  Just because a product eventually finds its way into U.S. commerce does not make it an import for purposes of the FTAIA.  Such a broad interpretation of "import commerce" would contradict the stated policy of the FTAIA to limit the reach of the Sherman Act to anticompetitive injury to *domestic* competition and consumers.  *See* H.R. Rep. 97-686, at 9–10.  To be consistent with the explicit purpose of the FTAIA, the "import commerce" exclusion must be given a relatively strict construction, and alleged injuries occurring overseas are more properly evaluated under the domestic injury exception to the FTAIA.  *See, e.g.*, *Minn-Chem, Inc.*, 683 F.3d at 855-59 (applying import exclusion only to conduct directed at "pure import commerce" and applying the domestic injury exception to defendants' conduct that went beyond "simple import transactions" and extended into "foreign commerce").

Accordingly, the Foreign Flex Entities' importation into the United States of finished products containing capacitors does not trigger the import commerce exclusion from the FTAIA.[16]

---

[16]  A recent decision in this district denying defendants' motion to dismiss similar claims by Flextronics USA does not support a contrary conclusion.  *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR, 2017 WL 2021361 (N.D. Cal. May 5, 2017). In that decision, Judge Rogers expressly acknowledged that defendants' arguments in their motion to dismiss are appropriate for resolution at summary judgment. *See id.*, at \*1 ("While Defendants' arguments may

1

### 2.   The Direct Purchases by the Foreign Flex Entities Do Not Satisfy Either of the Required Elements of the FTAIA's Domestic Injury Exception

2

3   Because the purchases of the Foreign Flex Entities are not "import commerce," they are not

4   excluded from the FTAIA.  Therefore, in order for the capacitors purchased by the Foreign Flex

5   Entities to remain in the case, they must satisfy <u>both</u> requirements of the Domestic Injury Exception

6   to the FTAIA: domestic effect and proximate cause.  Flextronics USA's assigned claims based on

7   the direct purchases of capacitors by the Foreign Flex Entities cannot satisfy either requirement and

8   thus fail for two independently sufficient reasons.

9

### a.   Defendants' alleged conduct did not have a direct, substantial, and reasonably foreseeable impact on domestic commerce.

10

11   The domestic effect requirement for the Domestic Injury Exception to the FTAIA requires

12   that the conduct of defendants have each of three effects on domestic commerce: (1) a direct effect;

13   (2) a substantial effect; and (3) a reasonably foreseeable effect. 15 U.S.C. § 6a(1).  Flextronics USA

14   cannot satisfy any of these requirements with respect to capacitors purchased by Foreign Flex

15   Entities.

16   As an initial matter, the claims assigned to Flextronics USA include those based on the Flex

17   Foreign Entities' purchases of capacitors that never entered the United States —neither as stand-

18   alone capacitors nor as part of a finished product. These purchases clearly did not have the requisite

19   direct effect, as they never touched domestic commerce.  *Compare Hsiung*, 778 F.3d at 759

20   (satisfaction of direct effects element based on evidence of "the United States as the destination for

21   the products"), *with Motorola V*, 775 F.3d at 817-18 (products bought by plaintiff's foreign

22   subsidiaries that were incorporated into finished goods and sold abroad "never became a part of

23   domestic U.S. commerce" and thus "[couldn't] possibly support a Sherman Act claim.").

24   Nor did capacitors that were sold and shipped to Flex Foreign Entities abroad and

25   ───────────────────────────────────────

26   ultimately prevail, such issues are suitable for resolution at summary judgment upon an adequate record."). Flextronics USA misstated to Judge Rogers this Court's Phase I ruling, describing it as a denial of summary judgment rather than as deferring ruling to Phase II of the summary judgment briefing. *Compare* Flex. Inter'l USA Inc.'s Opp. To Certain Defs.' Motion to Dismiss Amend. Compl. [Dkt. No. 1671], at p. 17, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR (N.D. Cal.) *with* Order of Judge Gonzalez Rogers at *4  (each summarizing the Phase I Order in a parenthetical using identical language).

27

28

incorporated into finished products that were then sold into the Unites States have the requisite direct effect on domestic commerce.  As stipulated by the parties, the aggregate cost of capacitors to Flextronics as a percentage of the aggregate cost of all materials purchased by Flextronics for finished goods containing capacitors is ███.  *See* Cost Stipulation [attached as Ex. 5 to Van Der Weele Decl.].  In other words, a finished good that contains $100 of components and materials, contains █████████ of capacitors.  Such a tiny portion of the cost of finished goods cannot possibly be "direct" or "substantial" enough to satisfy the domestic effects requirement, even for finished goods that are ultimately sold into the United States.  To hold otherwise would render meaningless the domestic effects prong of the FTAIA.  *See, e.g.*, *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 966 (9th Cir. 2013) ("In interpreting statutes, we observe the cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant.") (internal citations and quotation marks omitted).

In *Hsiung*, the Ninth Circuit's analysis of the direct effect prong focused first and foremost on the extent to which the alleged price-fixed good was a "substantial cost component" of the finished product.  778 F.3d at 759.  In that case, the court explained that the component parts at issue constituted 70-80 percent of the cost of one class of finished goods and 30-40 percent of the cost of another class of finished goods while noting testimony that "if [a] panel price goes up, then it will directly impact the monitor set price."  *Id.* That testimony, based on the significant percentage of the finished product cost represented by the price-fixed component, "underscored the integrated, close and direct connection between the purchase of price-fixed panels . . . and the ultimate inflation of prices in finished products imported to the United States."  *Id.*  While the *Hsiung* court did not quantify the minimum percentage necessary to be sufficiently substantial under the direct effect test, it strains credulity to believe that ██████████ of the cost of the finished product would suffice.  If such a tiny percent of a finished good's cost meets the "direct" or "substantial" threshold, it effectively renders meaningless both this portion of *Hsiung*'s analysis, and those terms as used in the statute.  Indeed, this Court acknowledged as much in its Phase I Order, noting that *Hsiung*'s direct effect analysis does not "fit well here, where the parties agree that capacitors are tiny

1   parts that cost pennies or less to buy, and are unlikely to be a substantial cost component of finished

2   products even when used in volume." *See* Phase I Order, at 11:9-21. On this basis alone,

3   Flextronics's claims based on their sales into the U.S. of finished goods that incorporated

4   Defendants' capacitors fail to satisfy the direct effect prong of the domestic injury exception to

5   FTAIA and should therefore be excluded from the case.

6        Further, even if the ▮▮▮▮ cost component that a capacitor represents in a finished product

7   were deemed sufficiently "direct" or "substantial," any impact of an increase in the cost of a

8   capacitor on the price of the finished product was not "reasonably foreseeable" as required by the

9   statute. Defendants could not possibly have reasonably foreseen any impact on domestic commerce

10  based upon the tiny percentage of the cost of the finished goods represented by the cost of

11  capacitors.

12                  **b.    Any effect the Defendants' alleged conduct had on U.S. commerce
                    did not "give rise" to the claims of the Foreign Flex Entities and
13                  fails to establish proximate cause.**

14       Because the foreign transactions in issue did not have a direct effect on domestic commerce,

15  the Court need not reach the proximate cause issue. However, Flextronics USA has also failed to

16  show that its foreign transactions meet the proximate cause requirement,

17       The Court's discussion of the "gives rise to" requirement in the Phase I Order informs the

18  analysis for Phase II. First, the Court noted that, under Ninth Circuit law, the "gives rise to"

19  requirement imposes a "proximate cause" test. Phase I Order, at 8:12. Second, the Court has stated

20  that it is the *DRAM* case, 546 F.3d 981 (9th Cir. 2008), that provides the "small opening for plaintiffs

21  to establish proximate cause" with respect to the capacitors at issue here—capacitors sold and

22  delivered to Foreign Flex Entities. Phase I Order, at 11:3-4. Third, this Court rejected plaintiffs'

23  global pricing theory "as a matter of law." *Id*. at 10:27-28.

24       This Court rejected the "global pricing" theory of proximate cause proffered by DPPs and

25  Flextronics because "[t]he problem with this theory is that it is analytically indistinguishable from

26  similar theories that have already failed in court, most critically in the Ninth Circuit." *Id*. at 10:14-

27  16. Flextronics USA's claims have not changed since the Court's Phase I ruling. As Defendants

28  presently understand them, Flextronics USA's claims are based on the theory that Defendants'

distortion of the U.S. Capacitor market artificially inflated prices worldwide by merit of Flextronics's allegedly negotiating prices on behalf of all of its affiliates.  This "distortion theory" is simply a global pricing theory by another name, and all courts that have considered global pricing as the basis for proximate cause, including this Court, have rejected the theory.

Under *DRAM* and other cases that have similarly examined the issue, Flextronics's distortion theory fails to "get through the eye of that [proximate cause] needle."  *See id.* at 11:5. The only small opening left by *DRAM*, and presumably the opening into which Flextronics intends to shoehorn its foreign claims, is the theory that "defendants' activities resulted in the U.S. prices setting the worldwide price."  546 F.3d at 990.  This theory was rejected in *DRAM* as being insufficiently plead. *Id.* at 990.  However, even if properly plead, this theory suffers from the same defect that *DRAM* found in plaintiffs' global pricing theory: "that the conspiracy had effects in the United States and abroad does not show that the effect in the United States, rather than the overall price-fixing conspiracy itself, proximately caused the effect abroad."  *Id.* at 988.  In any event, there is no evidence that Defendants' conduct resulted in their U.S. prices to Flextronics setting their worldwide prices.  To the contrary, Flex argued in its Phase I Response that its claims satisfy the direct effects exception to the FTAIA "[b]ecause Flex purchased capacitors pursuant to a global pricing strategy." Phase I Response, at 29; *see also* Trutna Decl., at ¶ 12 (". . . the pricing for Flextronics purchases of capacitors is set for all Flextronics's facilities worldwide based on the negotiated pricing for each supplier of each capacitor. These negotiated prices applied to Flextronics purchases regardless of whether the capacitors were delivered to Flextronics's United States facilities or facilities located in other countries.")

Other courts have also rejected global pricing as a means of establishing proximate cause. *Motorola V* is directly on point.  Like Flextronics, Motorola claimed that its foreign subsidiaries issued purchase orders at the price and quantity determined by Motorola in the United States. *Motorola V*, 775 F.3d at 822.  The Seventh Circuit held that such a claim failed to show that the effect of the anticompetitive conduct on domestic commerce caused Motorola's subsidiaries' injuries, because "the cartel-engendered price increase in the components and in the price of the cellphones that incorporated them occurred entirely in foreign commerce."  *Id.* at 819.

Courts in this district have similarly rejected global pricing theories similar to Flextronics USA's. Relying on *DRAM*, Judge Illston held that Motorola's allegations of a global conspiracy that affected global prices paid by Motorola's foreign affiliates "fall far short of alleging that the domestic effect of defendants' conduct gave rise to Motorola's foreign injuries." *Motorola I*, 2010 WL 2610641, at *7. In another factually similar case, *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, Judge Hamilton rejected a global pricing theory based on a procurement strategy similar to that of Flextronics. 608 F.Supp.2d at 1186. In that case, plaintiff's global procurement team in California established a single worldwide price at which its international subsidiaries were permitted to buy component parts. *See id*. at 1170-72. The court stated: "Both this court and the Ninth Circuit have held that, to the extent plaintiff's proximate causation theory rests on proof of a global procurement strategy, this is not a viable legal theory." *Id*. at 1186.

However Flextronics USA may try to dress up its global pricing theory claims to try to avoid *DRAM* and other cases, the fact remains that the purchases at issue were foreign and there is no evidence that any injury derived from those foreign purchases were proximately caused from any domestic effect of the Defendants' conduct. Flextronics USA's request that this Court adopt a novel causation theory is contrary to applicable precedent. It also contravenes the Supreme Court's admonition that "the FTAIA's language and history suggest that Congress designed the FTAIA to clarify, perhaps to limit, but not *to expand* in any significant way, the Sherman Act's scope as applied to foreign commerce." *Empagran*, 542 U.S. at 169 (emphasis in original). The Court should continue to reject a global pricing theory as a basis for proximate cause, and, in so doing, hold that all of the purchases covered by this Motion do not meet the proximate cause requirement for the Domestic Injury Exception.[17]

---

[17] As set forth in FN 16, *supra*, the recent decision in *In re Lithium Ion Batteries* does not support a contrary result. There, Judge Rogers expressly acknowledges that, while dismissal of claims based on a global pricing theory may be premature at the pleading stage, such claims may be ripe for resolution at summary judgment. 2017 WL 2021361 (N.D. Cal. May 5, 2017), at *5. There too Flextronics USA misstated to Judge Rogers this Court's Phase I ruling, describing it again as a denial of summary judgment rather than as deferring ruling to Phase II of summary judgment briefing. *Compare* Flex. Inter'l USA Inc.'s Opp. To Certain Def.'s Motion to Dismiss Amend. Compl. [Dkt. No. 1671], at p. 18, *In re Lithium Ion Batteries Antitrust Litig*., No. 13-md-02420-YGR (N.D. Cal.) *with* Order of Judge Gonzalez Rogers at *4 (each summarizing the Phase I Order with regard to domestic effects in a parenthetical using identical language).

### 3. The FTAIA Bars Claims Based on the Export Sales of U.S. Defendants to Foreign Flex Entities

Claims based on a subset of direct purchases by the Foreign Flex Entities fail for a third, independently sufficient reason.  In a subset of the transactions covered by this Motion, a U.S. Defendant sold and shipped capacitors to the Foreign Flex Entity. Those sales constitute export commerce, and, as the Ninth Circuit explained in *Hsiung*, the FTAIA excludes exports from the reach of the Sherman Act:  "*Empagran* teaches that the FTAIA removes from the reach of the Sherman Act '(1) export activities and (2) other commercial activities taking place abroad, *unless* those activities adversely affect domestic commerce, imports to the United States, or exporting activities of one engaged in such activities within the United States.'" *Hsiung*, 778 F.3d at 751.

### B. The Indirect Purchaser Claims Assigned to Flextronics USA by Foreign Flex Entities Are Barred by Both the Indirect Purchaser Doctrine and the FTAIA.

The capacitors indirectly purchased by Foreign Flex Entities that are the subject of this Phase II Motion flow through the following pathway: a foreign defendant sells a capacitor to a foreign distributor; the foreign distributor then resells the capacitor to a Foreign Flex Entity.[18]

The Sherman Act claims based on these indirect purchase transactions fail for two independently sufficient reasons.  <u>First</u>, the indirect purchaser doctrine of *Illinois Brick* bars these claims.  *See Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-21 (9th Cir. 2008) (holding that *Illinois Brick* establishes "a bright line rule" that only the first direct purchaser of an allegedly price-fixed product may bring suit for federal antitrust damages); *see also Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  <u>Second</u>, the FTAIA bars any claim based on these transactions.  This conclusion follows *a fortiori* from the FTAIA analysis in Section V.A. above. That analysis establishes that the FTAIA bars a claim based on a direct purchase by a Foreign Flex Entity of a capacitor delivered to a Foreign Flex Entity.  Given that bar, adding an intervening

---

[18] If a Defendant sold the capacitor to a distributor in the United States, the capacitor would be in the case—at least for purposes of the FTAIA—by virtue of this Court's Phase I Order.  An alternative pathway, though not likely a significant one, would be as follows: a Defendant sells a capacitor to a foreign distributor; the foreign distributor then sells the capacitor to Flextronics USA in the United States. The parties have agreed to defer briefing on this pathway until after the Court has issued its ruling on the Phase II FTAIA summary judgment motions regarding indirect purchasers. *See* FN 3, *supra*.

purchase by another foreign entity (*i.e.*, the foreign distributor) with delivery to another foreign destination before the purchase by the Foreign Flex Entity cannot possibly enable the purchase of the Foreign Flex Entity to fall within the import commerce exclusion the FTAIA nor to give rise to a claim that satisfies the domestic injury exception to the FTAIA.

Recognizing that *Illinois Brick* dooms any claim under federal law based on indirect purchases, Flextronics USA, in its capacity as assignee, has also asserted a claim under California state laws. Cal. Bus. & Prof. Code § 17200, *et seq.*; *see* Compl. ¶¶ 444-69.  We will assume, for purposes of this Motion only, that these California state laws avoid the *Illinois Brick* obstacle.  But Flextronics USA's California state law claims do not avoid, and cannot avoid, the FTAIA obstacle. If, for the reasons in section V.A. *supra*, the FTAIA bars a claim arising under federal antitrust law, then a state law cannot trump the FTAIA, thereby reviving a claim that the FTAIA would bar under federal antitrust law. As the Court noted in its Phase I Order, "Plaintiffs have not cited any federal or state decisions that extend the reach of a state law beyond the FTAIA, and the Court declines to do so here." Phase I Order, at 13:15-16.

## VI.    CONCLUSION

For the foregoing reasons, Defendants request that the Court grant their motion for partial summary judgment dismissing Flextronics USA's claims to the extent they are based on (1) direct purchases of capacitors by Foreign Flex Entities in which the capacitors were also shipped to a Foreign Flex Entity; (2) capacitors exported by Defendant entities in the United States to a Foreign Flex Entity; and (3) indirect purchases by Foreign Flex Entities of capacitors from foreign distributors.

Respectfully Submitted,

Dated: May 22, 2017

        /s/ Michael E. Martinez
Scott M. Mendel (admitted *pro hac vice*)
Steven M. Kowal (admitted *pro hac vice*)
Michael E. Martinez (admitted *pro hac vice*)
Lauren N. Donahue (admitted *pro hac vice*)
Brian J. Smith (admitted *pro hac vice*)
**K&L GATES LLP**
70 West Madison Street, Suite 3100
Chicago, IL  60602
Telephone:  (312) 372-1121

Facsimile:  (312) 827-8000
scott.mendel@klgates.com
steven.kowal@klgates.com
michael.martinez@klgates.com
lauren.donahue@klgates.com
brian.j.smith@klgates.com

Daniel W. Fox (SBN 268757)
**K&L GATES LLP**
4 Embarcadero Center, Suite 1200
San Francisco, CA  94111
Telephone:  (415) 882-8200
Facsimile:  (415) 882-8220
daniel.fox@klgates.com

Philip Van Der Weele (admitted *pro hac vice*)
**K&L GATES LLP**
One SW Columbia Street, Suite 1900
Portland, OR 97258
Telephone: (503) 228-3200
Facsimile: (503) 553-6227
phil.vanderweele@klgates.com

*Attorneys for Defendants Nichicon
CorporationNichicon (America) Corporation*

Dated: May 22, 2017          /s/ Bruce D. Sokler
Bruce D. Sokler
**MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO  PC**
701 Pennsylvania Avenue NW Suite 900
Washington, DC 20004
T:  202-434-7303
F:  202-434-7400
bdsokler@mintz.com

*Attorneys for Defendant AVX Corporation*

Dated: May 22, 2017          /s/ Heather S. Tewksbury
Heather S. Tewksbury
**WILMER  CUTLER PICKERING HALE
AND DORR, LLP**
950 Page Mill Road
Palo Alto, CA 94304
T:  650-858-6134
F:  650-858-6100
heather.tewksbury@wilmerhale.com

*Attorney for Defendants Elna Co. Ltd. and Elna
America Inc.*

1    Dated: May 22, 2017                          _____/s/ Bonnie Lau_____
                                                 Bonnie Lau
2                                                **DENTONS US LLP**
                                                 525 Market Street, 26th Floor
3                                                San Francisco, CA 94105
                                                 T:  415-882-5000
4                                                F:  415- 882-0300
                                                 bonnie.lau@dentons.com
5

6                                                *Attorney for Defendant Matsuo Electric Co.,*
                                                 *Ltd.*
7

8    Dated: May 22, 2017                          _____/s/ Eric P. Enson_____
                                                 Jeffrey A. LeVee
9                                                Eric P. Enson
                                                 Rachel H. Zernik
10                                               **JONES DAY**
                                                 555 South Flower Street, Fiftieth Floor
11                                               Los Angeles, CA 90071.2300
                                                 T:  213-489-3939
12                                               F:  213-243-2539
                                                 jlevee@JonesDay.com
13                                               epenson@JonesDay.com
                                                 rzernik@JonesDay.com
14

15                                               *Counsel for Defendants Holy Stone Enterprise*
                                                 *Co., Ltd. Holystone International, and Vishay*
16                                               *Polytech Co., Ltd.*

17

18

19

20

21

22

23

24

25

26

27

28

Dated: May 22, 2017

_____/s/ Chul Pak_____
Chul Pak
Jeffrey C. Bank
Justin A. Cohen
**WILSON SONSINI GOODRICH &**
**ROSATI**
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
T:  212-497-7726
F:  212-999-5899
cpak@wsgr.com
jbank@wsgr.com
jcohen@wsgr.com

Jeff VanHooreweghe
**WILSON SONSINI GOODRICH &**
**ROSATI**
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
T:  415-947-2046
F:  415-947-2099
jvanhooreweghe@wsgr.com

*Attorneys for Defendants Hitachi Chemical Co.,*
*Ltd., Hitachi Chemical Company America, Ltd.,*
*and Hitachi AIC Incorporated*

Dated: May 22, 2017

_____/s/ Michael F. Tubach_____
Michael F. Tubach
Brian Y. Chang
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3305
T:  415-984-8700
F:  415-984-8701
mtubach@omm.com
bchang@omm.com

Kenneth R. O'Rourke
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
T:  2130-430-6000
F:  213-430-6407

21

1                              korourke@omm.com

2                              *Attorneys for Defendants ROHM Co., Ltd. And*
3                              *ROHM Semiconductor U.S.A., LLC*

4  Dated: May 22, 2017                  /s/ Djordje Petkoski

5                              Djordje Petkoski
                                **HUNTON AND WILLIAMS  LLP**
6                              2200 Pennsylania Avenue, NW
                              Washington, DC 20037
7                              T:  202-955-1500
                              dpetkoski@hunton.com
8

9                              *Attorneys for Defendants Rubycon Corporation*
                              *and Rubycon America Inc.*

10  Dated: May 22, 2017                /s/ Daniel J. Howley

11                            Daniel J. Howley
                            Joseph J. Bial
12                            Eric R. Sega
                            **PAUL, WEISS, RIFKIND, WHARTON &**
13                            **GARRISON, LLP**
                            2001 K Street, NW
14                            Washington, DC 20006-1047
                            dhowley@paulweiss.com
15                            jbial@paulweiss.com
                            esega@paulweiss.com
16

17                            *Attorneys for Defendants United Chemi-Con,*
                            *Inc. and Nippon Chemi-Con Corporation*
18

19  Dated: May 22, 2017                /s/ C. Dennis Loomis

20                            C. Dennis Loomis
                            **BAKER & HOSTETLER LLP**
21                          11601 Wilshire Boulevard, Suite 1400
                          Los Angeles, CA 90025-
22                          cdloomis@bakerlaw.com

23                          John R. Fornaciari
                            **BAKER & HOSTETLER LLP**
24                          1050 Connecticut Ave., NW, Suite 1100
                          Washington, D.C. 20026
25                          jfornaciari@bakerlaw.com

26                            *Attorneys for Defendants Soshin Electric Co.,*
27                            *Ltd. and Soshin Electronics of America, Inc.*

28  Dated: May 22, 2017                /s/ Gaspare J. Bono

1
2
3
4
5
6
7
8

Gaspare J. Bono
Stephen M. Chippendale
Claire M. Maddox
Eric Y. Wu
**DENTONS US LLP**
1900 K St., NW
Washington, DC 20006
T:  202-496-7500
F:  202-496-7756
gap.bono@dentons.com
steve.chippendale@dentons.com
claire.maddox@dentons.com
eric.wu@dentons.com

9
10
11
12
13

Andrew S. Azarmi
**DENTONS US LLP**
Spear Tower, One Market Plaza, 24th Fl.
San Francisco, CA 94105
T:  415-267-4000
F:  415-356-3873
andrew.azarmi@dentons.com

14
15
16

*Attorneys for Defendants Shinyei Kaisha,*
*Shinyei Technology Co., Ltd., Shinyei Capacitor*
*Co., Ltd., and Shinyei Corporation of America,*
*Inc.*

17
18
19
20
21
22
23
24
25
26
27
28

Case No. 3:14-cv-03264-JD
DEFENDANTS' JOINT "PHASE II" MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO FLEXTRONICS

1    Dated: May 22, 2017                    _____/s/ Jarod M. Bona_____

2                                           Jarod M. Bona
                                            Aaron R. Gott
3                                           **BONA LAW PC**
                                            4275 Executive Square, #200
4                                           La Jolla, CA 92037
                                            T:  858-964-4589
5                                           F:  858-964-2301
                                            jarod.bona@bonalawpc.com
6                                           aaron.gott@bonalawpc.com

7
                                            *Attorneys for Taitsu Corporation and Taitsu*
8                                           *America, Inc.*

9    Dated: May 22, 2017                    _____/s/ Adam R. Prescott_____

10                                          Mark D. Flanagan (Bar No. 130303)
11                                          **WILMER CUTLER PICKERING**
                                            **HALE AND DORR LLP**
12                                          950 Page Mill Road
                                            Palo Alto, CA  94304
13                                          Telephone:  (650) 858-6047
                                            Facsimile:  (650) 858-6100
14                                          Mark.Flanagan@wilmerhale.com

15
                                            Adam R. Prescott (admitted *pro hac vice*)
16                                          **WILMER CUTLER PICKERING**
                                            **HALE AND DORR LLP**
17                                          1975 Pennsylvania Ave., NW
                                            Washington, DC 20006
18                                          Telephone: (202) 663-6048
                                            Facsimile: (202) 663-6363
19                                          Adam.Prescott@wilmerhale.com

20
                                            Allyson T. Fortier (Bar No. 287291)
21                                          **WILMER CUTLER PICKERING**
                                            **HALE AND DORR LLP**
22                                          350 S. Grand Ave., Suite 2100
                                            Los Angeles, CA  90071
23                                          Telephone:  (213) 443-5300
                                            Facsimile:  (213) 443-5400
24                                          Allyson.Fortier@wilmerhale.com

25
                                            *Counsel for Defendant Nissei Electric Co., Ltd*
26

27

28