**[Counsel for Moving Defendants Listed on Signature Pages]**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CAPACITORS ANTITRUST LITIGATION**<br><br>This Document Relates To:<br><br>ALL DIRECT PURCHASER ACTIONS | Case No. 3:14-cv-03264-JD<br><br>**CERTAIN DEFENDANTS' MOTION TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF DR. J. DOUGLAS ZONA**<br><br>Date:  September 7, 2017<br>Time:  10:00 am<br>Judge:  Honorable James Donato<br>Courtroom 11 – 19th Floor<br><br>**Public Redacted Version** |

1

## NOTICE OF MOTION AND MOTION

2  TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

3         PLEASE TAKE NOTICE that on September 7, 2017, or as soon thereafter as the matter may

4  be heard, in Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, before

5  the Honorable James Donato, the undersigned Defendants[1] will and hereby do move the Court, under

6  Rules 104(a) and 702 of the Federal Rules of Evidence, to exclude the proposed testimony of Dr. J.

7  Douglas Zona, expert for the Direct Purchaser Plaintiffs, because that testimony is unreliable and

8  irrelevant as defined by those rules and the interpretation of them as specified by the Supreme Court

9  in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993).

10        This motion is based upon this Notice of Motion, the accompanying Memorandum of Points

11  and Authorities, the declaration of William O. Cooper, the complete files and records in this action,

12  oral argument of counsel, authorities that may be presented at or before the hearing, and such other

13  and further matters as this Court may consider.

14

15

16

17

18

19

20

21

22

23

24

25

26

---

[1] The Defendants joining this motion are Panasonic Corporation, Panasonic Corporation of North
27  America, SANYO Electric Co., Ltd., and SANYO North America Corporation; ELNA Co., Ltd.
and ELNA America, Inc.; Hitachi Chemical Co., Ltd., Hitachi Chemical Company America, Ltd.,
28  and Hitachi AIC Incorporated; Nichicon Corporation and Nichicon (America) Corporation;
Rubycon Corporation and Rubycon America Inc.; United Chemi-Con, Inc. and Nippon Chemi-
Con Corporation; AVX Corporation; Holy Stone Enterprise Co. and Ltd. Holystone International.

1

# **TABLE OF CONTENTS**

2

**Page**

3

NOTICE OF MOTION AND MOTION ................................................................. i

4

TABLE OF AUTHORITIES .......................................................................... iii

5

ISSUE TO BE DECIDED ............................................................................. v

6

DEFINITIONS ........................................................................................ vi

7

INTRODUCTION ..................................................................................... 1

8

LEGAL STANDARD ................................................................................. 3

9

ARGUMENT .......................................................................................... 4

10

I.      DR. ZONA'S OPINION THAT DEFENDANTS ENGAGED IN THE ALLEGED
11          CONSPIRACY IS INADMISSIBLE BECAUSE HE ADMITTED ████████
12          ████████████████████████████████████████ ....................... 4

13          A.      ████████████████████████████████████████
                    ............................................................................ 4
14
15          B.      Dr. Zona Did Not Analyze When The Alleged Conspiracy Began And
                    Ended ................................................................................. 6

16          C.      Dr. Zona's Failure To Study The Relevant Capacitor Markets Also Renders
17                  His Opinion Concerning The Scope of the Claimed Conspiracy Inadmissible ........ 7

II.     DR. ZONA'S PRICE DISPERSION THEORY IS INADMISSIBLE *IPSE DIXIT* ............ 9
18
19          A.      Dr. Zona Admitted His Analysis Is Inapplicable On A Class-Wide Basis ............... 9

            B.      Dr. Zona Improperly Assumes That ████████████████████
20                  ......................................................................... 12

21          C.      Dr. Zona Improperly Used Non-Representative Data From DPPs' Other
                    Expert ................................................................................. 13
22
III.    DR. ZONA BLINDLY OPINES ON THE PURPORTED RELIABILITY OF DPP
23          EXPERT DR. MCCLAVE'S ANALYSES  WITHOUT PERFORMING ANY
24          INDEPENDENT EXAMINATION OF DR. MCCLAVE'S WORK ................................. 14

CONCLUSION ........................................................................................ 15

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Akaosugi v. Benihana Nat'l Corp.*,
   No. C 11-01272 WHA, 2012 WL 1029546 (N.D. Cal. Mar. 26, 2012) ....................................4

5

6

*Am. Seed Co. v. Monsanto Co.*,
   271 F. App'x 138 (3d Cir. 2008) ........................................................................................13

7

8

*Estate of Barabin v. AstenJohnson, Inc.*,
   740 F.3d 457 (9th Cir. 2014) ..............................................................................................3

9

*California v. Infineon Techs. AG*,
   No. C 06-4333 PJH, 2008 WL 4155665 (N.D. Cal. Sept. 5, 2008)...........................................11

10

11

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) .........................................................................................................4

12

13

*Crescenta Valley Water District v. Exxon Mobile Corp.*,
   CV 07-2630-JST, 2013 WL 12120533 (C.D. Cal. Mar. 14, 2013) ...........................................14

14

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)................................................................................................ *passim*

15

16

*Domingo ex rel. Domingo v. T.K.*,
   289 F.3d 600 (9th Cir. 2002) .............................................................................................12

17

18

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)..............................................................................................................4

19

20

*Heary Bros. Lightning Protection Co., Inc. v. Lightning Protection Institute*,
   287 F. Supp. 2d 1038 (D. Ariz. 2003) ...............................................................................7, 9

21

*Hines v. KFC U.S. Props., Inc.*,
   No. 09-cv-2422 JM(POR), 2010 WL 11451496 (S.D. Cal. Oct. 22, 2010) ...............................5

22

23

*In re Imperial Credit Industries, Inc. Securities Litig.*,
   252 F. Supp. 2d 1005 (C.D. Cal. 2003), *aff'd sub nom. Mortensen v. Snavely*,
   145 F. App'x 218 (9th Cir. 2005) .......................................................................................14

24

25

*Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
   No. CIV.A.05-138(WOB), 2008 WL 113987 (E.D. Ky. Jan. 7, 2008), *aff'd*, 588
   F.3d 908 (6th Cir. 2009) ...................................................................................................7, 9

26

27

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-2420 YGR, 2017 WL 1391491 (N.D. Cal. Apr. 12, 2017)............................ *passim*

28

*Lust By & Through Lust v. Merrill Dow Pharm., Inc.*,
   89 F.3d 594 (9th Cir. 1996) ............................................................................3

*MDG International, Inc. v. Australian Gold, Inc.*,
   1:07-cv-1096-SEB, 2009 WL 1916728 (S.D. Ind. June 29, 2009)............................7

*Newcal Indus., Inc. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ........................................................................8

*Newkirk v. ConAgra Foods, Inc.*,
   727 F. Supp. 2d 1006 (E.D. Wash. 2010), *aff'd*, 438 F. App'x 607 (9th Cir.
   2011) ................................................................................................11

*Oglesby v. Gen. Motors Corp.*,
   190 F.3d 244 (4th Cir. 1999) ........................................................................13

*In re Polypropylene Carpet Antitrust Litig.*,
   93 F. Supp. 2d 1348 (N.D. Ga. 2000) ...............................................................14

*In re REMEC Inc. Secs. Litig.*,
   702 F. Supp. 2d 1202 (S.D. Cal. 2010) .............................................................13

*Senne v. Kansas City Royals Baseball Corp.*,
   315 F.R.D. 523 (N.D. Cal. 2016).................................................................9, 11

*Sorensen By & Through Dunbar v. Shaklee Corp.*,
   31 F.3d 638 (8th Cir. 1994) .........................................................................12

*Taylor v. Lemus*,
   No. CV 11-9614 FMO, 2015 WL 12698306 (C.D. Cal. Jun. 17, 2015)......................5

*Tesla Wall Systems, LLC v. Budd*,
   14-CIV-8564 (LLS), 2017 WL 1498052 (S.D.N.Y. Apr. 26, 2017) .......................6, 7

*In re TMI Litigation Cases Consolidated II*,
   911 F. Supp. 775 (M.D. Penn 1996), *aff'd sub nom. In re TMI Litig.*, 193 F.3d
   613 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) ...............................15

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)................................................................................9

*Wright v. United States*,
   No. CV-06-01788-PHX-NVW, 2008 WL 820557 (D. Ariz. Mar. 25, 2008)...............7

**Other Authorities**

Fed. R. Evid. 702 ...........................................................................1, 3, 6, 14

Fed. R. Evid. 702(d)...........................................................................................6

Fed. R. Evid. 704 Advisory Committee Note, 1972 Proposed Rules ..........................3, 14

## ISSUE TO BE DECIDED

Whether the Court should exclude the expert report and proposed expert testimony of Dr. J Douglas Zona, offered by Direct Purchaser Plaintiffs ("DPPs") in support of their motion for class certification, under Rules 104(a), 403, and 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), because Dr. Zona's opinions rely on inadequate and unrepresentative facts and data and on unreliable methodologies that are categorically incapable of reliably establishing class-wide impact in a manner consistent with the Federal Rules.

1

## DEFINITIONS

| | |
|---|---|
| Tr. | Excerpts from the transcript of the deposition of J. Douglas Zona, Ph.D., May 11, 2017, attached as Exhibit 1 to the concurrently-filed Declaration of William O. Cooper. |
| Rep. | Expert Report of J. Douglas Zona, Ph.D., February 24, 2017, attached as Exhibit 2 to the concurrently-filed Declaration of William O. Cooper. |
| Reply Rep. | Expert Reply Report of J. Douglas Zona, Ph.D., April 28, 2017, attached as Exhibit 3 to the concurrently-filed Declaration of William O. Cooper. |
| McClave *Daubert* Mot. | The concurrently-filed Certain Defendants' Motion to Exclude the Proposed Expert Testimony of Dr. James T. McClave. |
| McClave Draft Rep. | Comparison of a February 2, 2017 draft of the expert report of James T. McClave, Ph.D. to the final February 24, 2017 Expert Report of James T. McClave, Ph.D., attached as Exhibit 4 to the concurrently-filed Declaration of William O. Cooper. |
| Lamb Tr. | Excerpts from the transcript of the deposition of Russell Lamb, Ph.D., May 17, 2017, attached as Exhibit 5 to the concurrently-filed Declaration of William O. Cooper. |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CERTAIN DEFS.' MOT. TO EXCLUDE TESTIMONY OF DR. J. DOUGLAS ZONA          CASE NO. 3:14-CV-03264-JD

**INTRODUCTION**

An expert's opinion must be "based on sufficient facts or data" and be the product of "reliable principles and methods."  Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-593 (1993).  The opinions offered by Dr. Zona in support of DPPs' motion for class certification are based on incomplete and non-representative facts and data, and are the result of fundamentally unreliable methodologies.  The following fatal defects render Dr. Zona's opinions inadmissible.

***First***, Dr. Zona's conclusion that ████████████████████████████████████ ██████████████████████████████████ suffers from several fatal flaws.  Primarily, he cites documents produced by Defendants to support this opinion, but admitted at his deposition that ████████████████████████████████████████████████████:

> A: █ ████████████████████████████████████████
> ████████████████████████████████████ Tr. 155:24-157:6 (emphasis added).

Having not read the documents cited in his report, he has no basis to make any conclusion at all, let alone conclude that they reflect ████████████████ Rep. ¶ 24.  Dr. Zona even admitted this, disclaiming reliance on the bulk of the documents cited in his report, and instead pointed to a handful of ████████████—a mere ***seven documents***, plus plea agreement statements of just six Defendants that relate ***only*** to electrolytic (not film) capacitors.  This handful of documents is not "sufficient facts and data" to allow any expert to reliably opine that ***each*** of the Defendants—including those not referenced in ***any*** document—participated in a twelve-year conspiracy involving three different types of capacitors—especially since most of the Defendants did not even manufacture all three capacitor types, and the seven documents cited do not relate to all three capacitors types for any Defendant.

Equally fatal is Dr. Zona's admission that he never analyzed ████████████████████ ████████████████████████████████████:

> Q: ████████████████████████████████
> A: ████████████ Tr. 29:10-14 (emphasis added).

Experts may not unquestioningly accept conclusions provided by counsel without doing any work to determine if they are reasonably supportable.

---

CERTAIN DEFS.' MOT. TO EXCLUDE TESTIMONY OF DR. J. DOUGLAS ZONA        CASE NO. 3:14-CV-03264-JD

Dr. Zona also fatally failed to perform any economic analysis to support his conclusion that there was a single twelve-year conspiracy involving manufacturers of *all three types* of capacitors. He admitted that for a supplier of one type of product (*e.g.*, a company that produced only film capacitors) to have had an economic motive to conspire with producers of other types of products (*e.g.*, producers of only aluminum or tantalum electrolytic capacitors), those capacitors must be substitutable for each other from the perspective of purchasers.  Yet, he conceded that he did not perform any analysis of substitutability, which renders his testimony unreliable.  Moreover, although he also admitted there was a ███████████████████████—a versatile type of capacitor that is substitutable for both film and electrolytic capacitors—during the class period, he conducted no analysis of the effect that competition from ceramic capacitors (which are not alleged to have been price fixed) had on the ability of producers of film, aluminum, and electrolytic capacitors to raise prices.  Dr. Zona's complete failure to conduct any actual ████████████ ██████████████████████████████ (Rep. ¶ 101) means that he has not reliably applied economic principles to the facts of this case, requiring exclusion of his opinion that there was a single twelve-year conspiracy involving manufacturers of all three types of capacitors.

**Second,** Dr. Zona claims to have conducted a study capable of proving class-wide impact using ██████████████████████████ He admitted, however, that his methodology is incapable of establishing impact for a substantial body of class members:

Q: █████████████████████
A: ████████████████
Q: ███████████████████████████████
Q: ███████████████████████████████
A: ████████████████████████████████

It also cannot establish impact for ████████████████████████████████:

Q: ████████████████████████████████
A: ████████████████████ *Id.* at 246:14-24 (emphasis added).

He further assumed—without testing—that ████████████████████████████ ██████████████████████████:

Q: ████████████████████████████████

A:            *Id.* at 239:13-20 (emphasis added).

And, he assumed that

:

A:
Q:

A:            *Id.* at 254:25-255:9 (emphasis added).

There is no economic or statistical basis for Dr. Zona to **assume** impact in these instances where he admits that his analysis is **incapable** of determining impact.  Because he admitted that his model is unable to establish liability for almost half of the proposed class members, and therefore, cannot reliably establish class-wide impact, his opinions should be excluded.  His analysis also must be excluded for the independent reason that he used an incomplete and non-representative dataset, because he admitted it did not include data for a large number of Defendants.

**Third**, Dr. Zona's opinions concerning the reliability of Dr. McClave's damages model are inadmissible because he testified he never performed any actual analysis to test its reliability and instead just relied on Dr. McClave's representations.  Experts cannot base their opinions on the mere say-so of other experts.  This is the equivalent of a medieval "oath-helper" that is specifically not admissible under Rule 702.  *See* Fed. R. Evid. 704 Advisory Committee Note, 1972 Proposed Rules. Dr. Zona's opinion concerning the reliability of Dr. McClave's damages model must be excluded.

## LEGAL STANDARD

Rule 702 requires an expert's testimony to (a) "help the trier of fact to understand the evidence or to determine a fact in issue;" (b) be "based on sufficient facts or data;" (c) be the "product of reliable principles and methods;" and (d) have "reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The trial court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert,* 509 U.S. at 589; *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463-64 (9th Cir. 2014).  It is the proponent of expert testimony that has the burden of proving its admissibility.  *See Daubert*, 509 U.S. at 592 n.10; *Lust By & Through Lust v. Merrill Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

1  This standard applies to experts proffering opinions in support of class certification.

2  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013); *Akaosugi v. Benihana Nat'l Corp.*, No.

3  C 11-01272 WHA, 2012 WL 1029546, at *2 (N.D. Cal. Mar. 26, 2012).  To be admissible to support

4  class certification in a price-fixing action, an expert's analyses must be based on facts and data that

5  are representative of the entire class.  *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420

6  YGR, 2017 WL 1391491, at *12, 19 (N.D. Cal. Apr. 12, 2017) ("*Batteries*").  Thus, expert opinion

7  must be excluded when, for example, the expert's "analyses rely on too narrow a range of data."  *Id.*

8  (striking in part proposed expert testimony for "lack of representativeness in the data used to conduct

9  the analyses" and denying class certification).

10  **ARGUMENT**

11  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to

12  admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court

13  may conclude that there is simply too great an analytical gap between the data and the opinion

14  proffered."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Dr. Zona offers three opinions in

15  support of DPPs' motion for class certification.  Rep. ¶ 101.  First, he opines that

16  *Id.*

17  Second, he claims that

18  and specifically that his

19  *Id.*

20  And third, he states that

21  *Id.*  Each of these

22  opinions must be excluded because, as made clear at his deposition, each is based on grossly

23  inadequate and unrepresentative facts and data that required him to make expansive unwarranted

24  assumptions, which render his opinions unreliable and unhelpful to the trier of fact.

25  **I.    DR. ZONA'S OPINION THAT DEFENDANTS ENGAGED IN THE ALLEGED**

26  **CONSPIRACY IS INADMISSIBLE BECAUSE HE ADMITTED**

27

28  **A.**

1    Dr. Zona first opines that ███████████████████████████████

2    ██████████████████████████ which he defines as a conspiracy ██████████

3    ████████████████████████████████████████████████████████████████████

4    *Id.* ¶¶ 4, 101.  Such common economic evidence, he explains, ███████████████

5    ████████████████████████████████████████████████████████████████████

6    ██████████████   *Id.* ¶ 101.   His report cites several hundred documents in footnotes to

7    purportedly support his opinion that this alleged conspiracy existed.  *See* Rep. at nn.62, 64-65.

8    It should go without saying that an expert must actually **read** the documentary evidence that

9    purportedly serves as the basis for his opinions.  *Hines v. KFC U.S. Props., Inc.*, No. 09-cv-2422

10   JM(POR), 2010 WL 11451496, at *11 (S.D. Cal. Oct. 22, 2010) (because plaintiffs' expert "did not

11   read KFC's store closing procedures, and did not review the complaint," he did not establish the

12   classes were "subject to common proof"); *Taylor v. Lemus*, No. CV 11-9614 FMO (SSx), 2015 WL

13   12698306, at *7 (C.D. Cal. Jun. 17, 2015).  But Dr. Zona testified ████████████████

14   ████████████████████████████████████████████████:

15   A:  █ ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████

17   ██████████████████████████ Tr. 156:3-157:6 (emphasis added).

18   Thus, his opinion that these documents reflect ████████████████████" (Rep. ¶ 24) is

19   baseless and must be rejected.  Similarly, because ██ ████████████████████ Figure

20   1 in his report, which purports to chart each █████████████████ (*id.* at ¶ 25), cannot

21   properly form the basis for his opinion that ████████████████████████████

22   ████████████████████████ *Id.* at ¶ 101; *Taylor*, 2015 WL 12698306, at *7.

23   Indeed, Dr. Zona ultimately testified that ████████████████████████████

24   ████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████

26   ██████ [2]  But the ████████████ that he considers to be "████████████████

27   ──────────────────
     [2] ██████████████████████████████████████████████████████████████████

28   ████████████████████████████ █ █████████████████████████████████████

1    ██████████████████ and ███████████████████████████████████████ (Rep. ¶¶ 27-

2    31) consist of ***just seven documents*** involving a limited number of Defendants over a small part of

3    the class period, plus the plea agreement statements of just six Defendants that relate ***only*** to

4    electrolytic (not film) capacitors.[3]  Rep. ¶¶ 20, 27-28, 30.  Because Dr. Zona admitted that he did

5    █████████████████████████████████████████████████████, and because the

6    handful of documents that he did testify he relied upon are inadequate to support his conclusion that

7    each of the more than twenty defendant corporate families participated in a conspiracy involving

8    three separate types of capacitors over twelve years, his opinion is not "based on sufficient facts or

9    data" and must be excluded under *Daubert.*  Fed. R. Evid. 702; *see Batteries*, 2017 WL 1391491, at

10   *12.  The insufficiency of the evidence relied upon by Dr. Zona renders his opinion inadmissible.

11       **B.  Dr. Zona Did Not Analyze When The Alleged Conspiracy Began And Ended**

12           An expert may not simply ***accept*** counsel's opinions as the expert's own.   *Tesla Wall*

13   *Systems, LLC v. Budd*, 14-CIV-8564 (LLS), 2017 WL 1498052, at *1 (S.D.N.Y. Apr. 26, 2017)

14   ("Unquestioningly accepting the assumptions furnished to him by plaintiff's counsel, he cannot be

15   said to have 'reliably applied the principles and methods to the facts of the case.' Fed. R. Evid.

16   702(d).").  Therefore, in addition to actually reading the evidence, Dr. Zona was required to conduct

17   his ***own*** analysis of it.  Although he offers an opinion about the existence of an alleged conspiracy

18   giving rise to damages for purchasers of ████████████████████████████████

19   ████████████████████████████ (Rep. ¶ 4), Dr. Zona admitted that ███████

20   ██████████████████████████████████████████ Rather,

21   he simply ███████████████████████████,[4] and admitted that he is offering no

22   opinion regarding ██████████████████. Tr. 29:5-9 (Q: █████████████████

23   _____

24   ████████████████████████████████████ Tr. 166:6-167:7 (emphasis added).

25       With respect to the plea agreements, Dr. Zona admitted that ████████████████████

26   ████████████████████████████████████ Tr. 287:23-

27   288:09 (Q: ██████

28   ██ Tr. 29:10-14 ("Q: █████████████████████ (emphasis added).

1      ████████████████████████████████████████████ (emphasis

2   added); *see also id.* 46:12-19.  His opinion about the time period of the alleged conspiracy is thus

3   based solely on what DPPs' lawyers told him, making it inadmissible.[5]  *MDG International, Inc. v.*

4   *Australian Gold, Inc.*, 1:07-cv-1096-SEB, 2009 WL 1916728, at *4 (S.D. Ind. June 29, 2009) ("An

5   expert must independently verify facts given to him, rather than 'accepting [them] at the word of . .

6   . counsel.'") (citation omitted); *Tesla Wall Systems*, 2017 WL 1498052, at *1.

### C. Dr. Zona's Failure To Study The Relevant Capacitor Markets Also Renders His Opinion Concerning The Scope of the Claimed Conspiracy Inadmissible

8           An expert's opinion must "fit" the facts of the case.  *Daubert*, 509 U.S. at 591-92.  Thus, an

9   expert opining on alleged price-fixing conduct must perform an analysis of the relevant market to

10  render any economic opinions about that market or competition therein.  *Kentucky Speedway, LLC*

11  *v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, No. CIV.A.05-138(WOB), 2008 WL 113987, at *2

12  (E.D. Ky. Jan. 7, 2008), *aff'd*, 588 F.3d 908 (6th Cir. 2009) ("Plaintiff's expert opinions did not pass

13  *Daubert* analysis" because "there was a total failure of proof of any relevant market in this case and,

14  thus, of any 'reliable and reasonable opinion with factual support'"); *Heary Bros. Lightning*

15  *Protection Co., Inc. v. Lightning Protection Institute*, 287 F. Supp. 2d 1038, 1065-1068 (D. Ariz.

16  2003) (excluding expert report where there was "no evidence at all supporting [expert's] assumption

17  that there were no other serious market competitors" and the expert's economic model "[did] not

18  'fit' the reality of the market at issue").  Here, Dr. Zona claims to have performed an ████████

19  ███████████████████████████████████████ Rep. ¶ 101.  Yet he admitted he

20  ████████████████████████████████████ . Tr. 122:16-19 (Q:

21  ███████████████████████████████████████████████

---

22  [5] Dr. Zona's blind acceptance of Plaintiffs counsel's selection of the class period, moreover, is

23  inconsistent with the scant and non-representative evidence that Dr. Zona did review.  For example,
    Dr. Zona relies on plea agreements of certain defendants in support of a class period beginning in

24  2002, but in these very documents, the government alleges a conspiracy starting as early as *1997*.
    Rep. ¶ 20; Tr. 34:24-35:11 (Q: ████████████████████████████████████████

25  ██████████████████.  Dr. Zona conceded he conducted no analysis to attempt to reconcile the

26  contradiction between the class period provided to him by DPPs and the dates in the plea agreements.
    Tr. 37:15-20 (Q: ████████████████████████████████████████████████████

27  ████████.  *Daubert* requires more.  *Wright v. United States*, No. CV-06-01788-PHX-NVW, 2008 WL

28  820557, at *8 (D. Ariz. Mar. 25, 2008) (expert opinion inadmissible when it "fails to address facts
    in the record contrary to [expert's] opinion").

---

1  ██████████████████████████████████████████████████████████████████████████).[6]

2       Indeed, Dr. Zona himself admitted that for a supplier of one type of product (such as a

3  company that produces only film capacitors) to have an economic motive to conspire with producers

4  of other types of products (such as producers aluminum or tantalum electrolytic capacitors), those

5  products must be substitutes for each other.[7]  Thus, part of the market analysis that he was required

6  to perform to offer any opinion about the economic motive of defendants to participate in the alleged

7  single conspiracy involving three major categories of capacitors was, by his own admission, the

8  consideration of substitutability of the three types of capacitor products at issue.  *Newcal Indus., Inc.*

9  *v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008) (relevant market "must encompass the

10  product at issue as well as economic substitutes").

11       But fatally, Dr. Zona expressly testified that he performed no ███████████████

12  ████████████████████████████████████████████████████████████████████████████

13  ████████████████████████████████[8]  Tr. 117:5-12 (Q: ████████████████████████

14  ████████████████████████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████  A: ███████████████

16  ███████████████████); *id.* at 186:16-25 ("████████████████████████████████████

17  ████████████████████████████████████████████████████████████  A: █████████████

18  ████████████);[9]  Tr. 123:2-8 (████████████████████████████████████████████████

19

20  [6] *See also* Tr. 124:24-125:3 ██████████████████████████████████████████████

21  ██ Tr. 108:16-109:17 █████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████. 

24       Dr. Zona's failure to analyze substitutability is particularly egregious in light of the testimony of
IPPs' expert, Dr. Russell Lamb, who testified that █████████████████████████████████

25  █████████████████. Lamb Tr. 101:15-102:2 (████████████████████████████████████████

26  ████████████████████████████████████████████████ (emphasis added) █████████████

27       Although Dr. Zona identified some documents that he claimed ████████████████████████
███████████████████████████████████, he nonetheless failed to perform the analysis he

28  testified ████████████████████████████████████████████████. *See* Tr.
142:6-144:14 (██████ ██████████████████████████████████████████████████████████
█████████████ (emphasis added).



1

2         A:              ).   Moreover, he admitted

3       , indicating that there is not always substitutability between the types.  *See, e.g.*, Tr. 118:12-

4 18 (Q:

5                           A:              ).

6       Just as critically, Dr. Zona admits that there is

7                                        *Id.*

8 at 131:25-132:3 ("Q:

9       -- A:     ).  Dr. Zona, in fact, explains that, during the class period,

10                           *Id.* at 127:4-9 (emphasis added).  But Dr.

11 Zona admitted that he also                  *Id.* at 130:7-

12 19 ("Q:

13                                A:

14                  Q:   A:

15       Dr. Zona's failure to perform even a rudimentary analysis of the relevant market renders his

16 opinion concerning the economic motives of defendants to enter into a single conspiracy affecting

17 film, aluminum, and tantalum capacitors unreliable and inadmissible.  *See Kentucky Speedway,* 2008

18 WL 113987, at \*2; *Heary Bros. Lightning Protection Co.*, 287 F. Supp. 2d at 1065-1068.

19 **II.**     **DR. ZONA'S PRICE DISPERSION THEORY IS INADMISSIBLE *IPSE DIXIT***

20      **A.  Dr. Zona Admitted His Analysis Is Inapplicable On A Class-Wide Basis**

21      To be admissible to support class certification, an expert's opinion must reliably provide a

22 common methodology that can establish injury for all or virtually all class members, as if each class

23 member had brought an individual action on its own behalf.  *See Tyson Foods, Inc. v. Bouaphakeo*,

24 136 S. Ct. 1036, 1048 (2016); *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 583,

25 589-90 (N.D. Cal. 2016) (applying the principles of *Tyson Foods* to conclude that the plaintiffs'

26 expert's results could not be properly applied "to the class as a whole", and excluding the proffered

27 expert opinion and denying class certification); *Batteries*, 2017 WL 1391491, at \*12 ("[the expert]

28 declarations [were] insufficient to show that pass-through and damages can be established by expert

1    analysis on a class-wide basis.").  Dr. Zona purports to ████████████████████

2    ████████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████

4    ███████    Rep. ¶ 101.  However, Dr. Zona offers no reliable or admissible basis for such an opinion.

5    Specifically, Dr. Zona's opinion is based upon an ██████████████    which he

6    claims reliably ████████████████████████████████████████████████████████

7    ████████████████████    *Id.*  However, he admitted at his deposition that ████████████

8    ████████    is infected by fatal gaps that mean that ***over a third of class members*** would be categorically

9    incapable of relying on his opinions had each brought an individual action—meaning that Dr. Zona

10   has no reliable basis to offer any admissible opinion on class-wide impact.

11   Dr. Zona admits that ████████████████████████████████████████████████████

12   ██████████████████████████████████████████████████████████.  Of the

13   approximately ████████████████████████████████████████████████    and are thus

14   incapable of being the subject of Dr. Zona's purported common methodology for showing harm:

15        Q:    ████████████████████████████████
         A:    ████████████████████████████████████████████████████████████

16        Q:    ████████████████████████████████████████████████████████████████

17        A:    ████████████████████████████████████████████████████████    Tr. 244:16-245:3 (emphasis added).

18   Put another way, as Dr. Zona testified, ████████████████████████████████████

19   ██████████████████████████████████████████████████████████████    *Id.* at

20   83:21-84:4 (Q: ████████████████████████████████████████████████████████████

21   ████████████████████).  Because Dr. Zona admitted that ████████████████████████

22   ██████████████████████████████████████████    his analysis and opinions about impact

23   are inapplicable to those sales and customers, and he admits he has no reliable basis for an opinion

24   on impact with respect to almost one third of the putative class.  *See id.* at 191:5-17 (A: ██████████

25   ████████████████████████████████████████████.  Q: . . .

26   ████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████████

28   ██████████████████████████████████    A: ████████████████████████████████

     ██████████████████████████████    (emphasis added).  For

these transactions and class members, his opinions about common impact or methodology cannot be reliably applied at all.  *Id.* at 196:17-23 ("Q: ███████████████████████████████ ████████████████████████████████████████████████████████████ ████████  A: █████████████████████████  (emphasis added).

Moreover, Dr. Zona fatally admits that ████████████████████████████████ ██████████████████, his analysis is incapable of ██████████████████████:

Q: ████████████████████████████████████████████████ ████████████████████████████████████████████████ A: ████████████████████████████████████  *Id.* at 246:14-24

Thus, Dr. Zona admits that his proffered analysis is unable to establish impact for much more than one-third of class members—rendering his proffered opinions on a common methodology to establish class-wide impact utterly unreliable and inadmissible.  *See California v. Infineon Techs. AG*, No. C 06-4333 PJH, 2008 WL 4155665, at *7 (N.D. Cal. Sept. 5, 2008) ("The ultimate burden is on plaintiffs, however, who must come forward with 'seemingly realistic methodologies' for proving class-wide impact."); *Batteries*, 2017 WL 1391491, at *12, 19; *Senne*, 315 F.R.D. at 590.

While the foregoing alone is sufficient to require exclusion of his class-wide impact opinions, Dr. Zona also admitted to a parade of other improper *ipse dixit* conclusions that render his opinions inadmissible.  For example, he admitted he ████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████.  Tr. 239:13-20 (Q: █████ ████████████████████████████████████████████████████████████ A: ██████████████████████████████████████████████████████████████ ██████").  In other words, Dr. Zona extrapolates that ███████████████ ████████████████████████████████████████████████████████████ █████████████████████████████.  This *ipse dixit* is improper and requires his opinion of common impact for all of the alleged conspiracy period to be excluded.  *Newkirk v. ConAgra Foods, Inc.*, 727 F. Supp. 2d 1006, 1022 (E.D. Wash. 2010), *aff'd*, 438 F. App'x 607 (9th Cir. 2011) ("[An expert] fails to apply reliable scientific methods when he extrapolates from extremely small samplings to make sweeping conclusions.").

1   Dr. Zona further improperly manipulates his purported common impact analyses by treating

2   ███████

3   ███████

4   ███████.  *See* Reply Rep. ¶ 7, n.10; Tr. 254:7-255:9 (Q:

5   ███████ Q:

6   ███████

7   ███████

8   ███████ A: ███████ If Dr. Zona were to unwind this unprincipled and manipulative

9   aggregation—*i.e.*, if he actually analyzed each class member—he does not know what the result

10  would be.  Tr. 258:10-15 (Q: ███████

11  ███████ A: ███████

12  ███████).  This cannot provide the basis for an admissible opinion on class-wide impact methodology.

13  Equally egregiously, Dr. Zona separately groups together ███████

14  ███████ Rep. ¶ 99, n.143.  For these

15  ███████

16  ███████:

17  Q: ███████
    A: ███████
18  Q: ███████
19  A: ███████ Tr. 257:11-20

20  No admissible opinion on class-wide impact can rest on such an illogical and unreliable assumption.

21  *See Batteries*, 2017 WL 1391491, at *12, 19; *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 606-

22  07 (9th Cir. 2002) (exclusion required where expert did not explain reasoning between each step of

23  his theory such that his conclusion "did not follow from his analysis"); *Sorensen By & Through*

24  *Dunbar v. Shaklee Corp.*, 31 F.3d 638, 649 (8th Cir. 1994) (excluding expert opinion that turned

25  "scientific analysis on its head" by "reason[ing] from an end result").

26  **B.  Dr. Zona Improperly Assumes That ███████**

27  ███████

28  An expert may not base his or her opinion regarding liability issues on the assumption that a

party's theory of liability is true.  *See Am. Seed Co. v. Monsanto Co.*, 271 F. App'x 138, 141 (3d

1   Cir. 2008) (class certification denied where expert "conceded . . . that his theory was based solely

2   on his assumption that all of the allegations in the complaint were true").  Yet Dr. Zona assumed—

3   without undertaking any analysis to substantiate—the most far-reaching opinion proffered in his

4   report, that ████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████  Tr. 88:21-89:3 (A: ██████ ██████████████████

6   ████████████████████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████  (emphasis added).

9        Fatally, Dr. Zona admitted that he did not undertake the required analysis of any potential

10   alternative causes ███████████████████████████[10]  *See Oglesby v. Gen. Motors Corp.*, 190

11   F.3d 244, 250 (4th Cir. 1999) (affirming exclusion of expert's theory that did not "eliminate other

12   equally plausible causes").  Dr. Zona's assumption of ████████████████████████████████████

13   ████████████████████████████████████████████████████████████████████████████████████

14   ███████, combined with his failure to account for possible alternative explanations ██████████████

15   ███████████████  he claims to have found, render his opinions about class-wide impact inadmissible

16   for this reason as well.  *See In re REMEC Inc. Secs. Litig.*, 702 F. Supp. 2d 1202, 1273 (S.D. Cal.

17   2010) (excluding report because expert "predetermine[d] the results of his analysis" through

18   assumptions without "attempt[ing] to account for other possible causes").

19        **C.  Dr. Zona Improperly Used Non-Representative Data From DPPs' Other Expert**

20        Independent from the other failings that make his opinions inadmissible, Dr. Zona admitted

21   that ████████████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████.[11]  For the reasons explained in the

23   concurrently-filed motion to exclude Dr. McClave's opinion, the dataset compiled by Dr. McClave

24   and used by Dr. Zona is incomplete and nonrepresentative—indeed, Dr. Zona ██████████████, Tr.

25

26   [10] Dr. Zona recognized that ████████████████████████████████████████████████████████████
    ████████████████████ Tr. 89:18-25 (Q: █████████████████████████████████████████████████

27   ███████████████████████████████████████████████ A: █████████████████████). For
    example, Dr. Zona acknowledged that ████████████████████████ and testified that he

28   ████████████████████████████████████████ Tr. 290:6-290:25.
    ███████ Tr. 64:4-20)

1   66:17-67:12 █████████████████████████████████████████████████

2   ████████████████████████ (emphasis added)—which requires exclusion of both experts'

3   opinions.  *See* McClave *Daubert* Mot. at 4-7; *Batteries,* 2017 WL 1391491, at *12, 19.

**III.   DR. ZONA BLINDLY OPINES ON THE PURPORTED RELIABILITY OF DPP EXPERT DR. MCCLAVE'S ANALYSES  WITHOUT PERFORMING ANY INDEPENDENT EXAMINATION OF DR. MCCLAVE'S WORK**

6        Finally, there is no admissible basis for Dr. Zona's proffered opinion that ████████

7   ████████████████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████ Rep. ¶ 101.  In effect, Dr. Zona seeks to

9   offer an expert opinion "vouching" for the reliability of Dr. McClave's damages model.  However,

10  Dr. Zona admitted that ████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████.

12       Dr. Zona's opinion concerning the purported reliability of Dr. McClave's model must be

13  excluded, because an expert may not testify about the reliability of another expert's analysis without

14  conducting an independent evaluation of that analysis.  *In re Polypropylene Carpet Antitrust Litig.*,

15  93 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000) ("An expert . . . may not simply repeat or adopt the

16  findings of another expert without first attempting to assess the validity of the opinions relied

17  upon."); *Crescenta Valley Water District v. Exxon Mobile Corp.*, CV 07-2630-JST, 2013 WL

18  12120533, at *2, n. 4 (C.D. Cal. Mar. 14, 2013); *In re Imperial Credit Industries, Inc. Securities

19  Litig.*, 252 F. Supp. 2d 1005, 1012 (C.D. Cal. 2003), *aff'd sub nom. Mortensen v. Snavely*, 145 F.

20  App'x 218 (9th Cir. 2005).  Such blind "oath helping" is not helpful to the trier of fact and is not

21  admissible under the Federal Rules.  Fed. R. Evid. 704 Advisory Committee Note, 1972 Proposed

22  Rules (Rule 702 "afford[s] ample assurances against the admission of opinions which would merely

23  tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day").

24       As an initial matter, Dr. Zona confirmed that ████████████████████████████████

25  ████████████████████████████████████████████████████████████████.[12]

26  However, Dr. Zona purports to offer an opinion about the reliability of Dr. McClave's methodology

27  ─────────────────────

28  [12] Tr. 51:4-14; 52:12-16 (████████████████████████████████████████████████████

    ████████████████████████████████████████████████████████████████████████████████████████

    ████████████████████████████████████████████████████████████████████████████████ .



1   (*See* Rep. ¶ 101), even though he admitted he ██████████████████████████████

2   ████████████████████████████████████—as *Daubert* requires—and instead ██████████

3   █████████████████████████████████████████████████████████████████████████████

4   Tr. 20:25-21:2.   Dr. Zona expressly admitted that he ███████████████████████████████

5   █████████████████████████████████████████████████████████████████████████████

6   █████████████████████████████████████████████████████████████████████████████

7   ████████████████████████[13]   But Dr. Zona did not even look at the results of Dr. McClave's

8   sensitivity analyses, and instead ██████████████████████████████████████████████████

9   ██████████████[14]███████████████████████████████.[15]   Indeed, Dr. Zona

10  did not even read Dr. McClave's report and instead only reviewed a draft of Dr. McClave's report.

11  Tr. 12:2-14:20.[16]   Because Dr. Zona performed no actual analysis of Dr. McClave's class-wide

12  damages model and methodology, his opinions concerning the reliability of Dr. McClave's work

13  must be excluded.  *See In re TMI Litig. Cases Consol. II*, 911 F. Supp. 775, 825 (M.D. Penn 1996),

14  *aff'd* 193 F.3d 613 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) (excluding testimony where

15  expert "chose to rely blindly upon the conclusions generated by Plaintiffs [sic] other experts").

16                                                  **CONCLUSION**

17          For all the reasons stated above, Defendants respectfully request that the Court grant

18  Defendants' Motion to Exclude the Proposed Expert Testimony of Dr. Zona.

19

20

21

22  _____
    [13] Tr. 18:1-5 ███████

23  ███████████████████████████████████████████████████████

24  ████ Tr. 18:6-17 ████████████████████████████████████████████████████████████

25  █████████████████████████████████████████████████████████████████████████████

26  ████ Tr. 16:18-17:10 (███████████████████████████████████████████████████████████

27  █████████████████.

28  ████ Dr. McClave's draft report includes the assertion that █████████████████████████████
    ███████—an assertion that was ██████████████████
    █████.  *See* McClave Draft Rep. § 3.2.  Dr. Zona also failed to perform any analysis that
    Dr. McClave's benchmark methodology was reliable.

1    Dated:  June 15, 2017

2                                         Respectfully submitted,

3                                         WINSTON & STRAWN LLP

4                                         By: ___*/s/ Jeffrey L. Kessler*_____
                                          Jeffrey L. Kessler (*pro hac vice*)
5                                         A. Paul Victor (*pro hac vice*)
                                          Molly M. Donovan (*pro hac vice*)
6                                         Mollie C. Richardson (*pro hac vice*)
                                          200 Park Avenue
7                                         New York, New York 10166
                                          Telephone: (212) 294-4698
8                                         Facsimile: (212) 294-4700
                                          jkessler@winston.com
9                                         pvictor@winston.com
                                          mmdonovan@winston.com
10                                        mrichardson@winston.com

11                                        Ian L. Papendick (SBN 275648)
                                          101 California Street
12                                        San Francisco, CA 94111
                                          Tel: (415) 591-6905
13                                        Fax: (415) 591-1400
                                          ipapendick@winston.com

14
                                          *Counsel for Defendants Panasonic Corporation;*
15                                        *Panasonic Corporation of North America;*
                                          *SANYO Electric Co., Ltd.; SANYO North America*
16                                        *Corporation*

17
                                          WILMER CUTLER PICKERING HALE AND
18                                        DORR LLP

19                                        */s/ Heather S. Tewksbury*
                                          Heather S. Tewksbury (CA SBN 222202)
20                                        heather.tewksbury@wilmerhale.com
                                          Erik Shallman (CA SBN 301854)
21                                        erik.shallman@wilmerhale.com
                                          WILMER CUTLER PICKERING
22                                        HALE AND DORR LLP
                                          950 Page Mill Road
23                                        Palo Alto, California  94304
                                          Telephone:  (650) 858-6000
24                                        Facsimile:  (650) 858-6100

25                                        Thomas Mueller (admitted *pro hac vice*)
                                          thomas.mueller@wilmerhale.com
26                                        Chris Megaw (admitted *pro hac vice*)
                                          chris.megaw@wilmerhale.com
27                                        WILMER CUTLER PICKERING
                                          HALE AND DORR LLP
28                                        1875 Pennsylvania Avenue, NW
                                          Washington, D.C. 20006

---

CERTAIN DEFS.' MOT. TO EXCLUDE TESTIMONY OF DR. J. DOUGLAS ZONA          CASE NO. 3:14-CV-03264-JD

-16-

Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Counsels for Defendants*
*ELNA Co., Ltd. and ELNA America, Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Chul Pak*

Chul Pak (*admitted pro hac vice*)
Jeffrey C. Bank (*admitted pro hac vice*)
Justin Cohen (*admitted pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:  (212) 497-7758
Facsimile:  (212) 999-5899
jjacobson@wsgr.com
cpak@wsgr.com
jbank@wsgr.com
jcohen@wsgr.com

*Attorneys for Defendants Hitachi Chemical Co.,*
*Ltd., Hitachi Chemical Company America, Ltd.,*
*and Hitachi AIC Incorporated*

K&L GATES LLP

*/s/ Michael E. Martinez*
Scott M. Mendel (*pro hac vice*)
Steven M. Kowal (*pro hac vice*)
Michael E. Martinez (*pro hac vice*)
Lauren N. Donahue (*pro hac vice*)
Brian J. Smith (*pro hac vice*)
K&L GATES LLP
70 West Madison Street, Suite 2800
Chicago, IL 60602

Telephone: (312) 372-1121
Facsimile: (312) 827-8000

*Counsel for Defendants*
*Nichicon Corporation*
*Nichicon (America) Corporation*

HUNTON AND WILLIAMS LLP

*/s/ Djordje Petkoski*
Djordje Petkoski (admitted pro hac vice)
David A. Higbee (admitted pro hac vice)
Wendell L. Taylor (admitted pro hac vice)
Robert A. Caplen (admitted pro hac vice)

---

2200 Pennsylvania Avenue, N.W.
Washington, D.C.  20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
dpetkoski@hunton.com
dhigbee@hunton.com
wtaylor@hunton.com
rcaplen@hunton.com

M. Brett Burns (SBN 256965)
575 Market Street, Suite 3700
San Francisco, California 94105
Telephone: (415) 975-3700
Facsimile: (415) 975-3701
mbrettburns@hunton.com

*Attorneys for Defendants Rubycon Corporation
and Rubycon America Inc.*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP

*/s/ Joseph J. Bial*

Joseph J. Bial (admitted *pro hac vice*)
Eric R. Sega (admitted *pro hac vice*)
2001 K Street, NW
Washington, DC 20001
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7402

jbial@paulweiss.com
esega@paulweiss.com

*Attorneys for Defendants United Chemi-Con, Inc.
and Nippon Chemi-Con Corporation*

JONES DAY

*/s/ Eric P. Enson*
Jeffrey A. LeVee
Eric P. Enson
Rachel H. Zernik
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071.2300
T: 213-489-3939
F: 213-243-2539
jlevee@JonesDay.com
epenson@JonesDay.com
rzernik@JonesDay.com

*Counsel for Defendants Holy Stone Enterprise
Co. and Ltd. Holystone International*

CERTAIN DEFS.' MOT. TO EXCLUDE TESTIMONY OF DR. J. DOUGLAS ZONA          CASE NO. 3:14-CV-03264-JD

1

2          MINTZ LEVIN COHN FERRIS GLOVSKY
           AND POPEO PC
3
           /s/ Bruce D. Sokler
4          Bruce D. Sokler
           MINTZ LEVIN COHN FERRIS
5          GLOVSKY AND POPEO PC
           701 Pennsylvania Avenue NW Suite 900
6          Washington, DC 20004
           T: 202-434-7303
7          F: 202-434-7400
           bdsokler@mintz.com
8
           *Attorneys for Defendant AVX Corporation*
9

10              Pursuant to Local Rule 5-1(i)(3), the filer attests that concurrence
       in the filing of this document has been obtained from each of the above signatories.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28