Joseph W. Cotchett (36324)
Steven N. Williams (175489)
Adam J. Zapala (245748)
Elizabeth Tran (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com
azapala@cpmlegal.com
etran@cpmlegal.com

*Interim Lead Counsel for the Putative Indirect Purchaser Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL INDIRECT PURCHASER ACTIONS | MASTER FILE NO. 14-cv-03264-JD<br><br>**INDIRECT PURCHASERS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENTS WITH DEFENDANTS NEC TOKIN, NITSUKO AND OKAYA AND APPROVAL OF PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES THERETO**<br><br>Date:  July 6, 2017<br>Time:  10:00 A.M.<br>Judge:  Hon. James Donato<br>Courtroom:   11, 19th Floor |

**IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT**, on July 6, 2017, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable James Donato, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Indirect Purchaser Plaintiffs ("IPPs") will and hereby do move, under Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP"), for entry of an Order:

1. Granting final approval of three settlements with Defendants (1) NEC TOKIN Corp. and NEC TOKIN America Inc. (collectively "NEC TOKIN"), (2) Nitsuko Electronics Corporation ("Nitsuko") and (3) Okaya Electric Industries Co, Ltd. ("Okaya");

2. Dismissing, with prejudice, claims against NEC TOKIN, Nitsuko and Okaya from the IPPs' actions; and

3. Finally Approving IPPs' Plan of Allocation.

The grounds for the motion are as follows: (a) the proposed settlements with NEC Tokin, Nitsuko and Okaya (the "Settlements") are fair, reasonable, and adequate and satisfy Federal Rule of Civil Procedure 23(e); (b) the Settlements are the product of arm's-length negotiations; (c) the Court-approved notice program satisfies due process and Rule 23; and (d) the Plan of Allocation is fair, reasonable and adequate.

IPPs' Motion is based upon this Notice; the following Memorandum of Points and Authorities in support; the accompanying Declarations of Steven N. Williams and Eric Schachter and the exhibits attached thereto; the Class Settlements with Defendants NEC TOKIN, Nitsuko, and Okaya; the Court's January 30, 2017 Orders granting Plaintiffs' Motions for Preliminary Approval of Settlements and Approving Class Notice (*see* ECF Nos. 1456 & 1457); any further papers filed in support of this motion as well as arguments of counsel and all records on file in this matter.

/ / /

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD
1

Dated: June 26, 2017

By: /s/ *Steven N. Williams*
Steven N. Williams
Adam J. Zapala
Elizabeth Tran
Mark F. Ram
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Interim Lead Class Counsel for Indirect Purchaser Plaintiffs*

---

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**

2

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | STATEMENT OF ISSUES TO BE DECIDED | 1 |
| II. | INTRODUCTION | 1 |
| III. | FACTUAL AND PROCEDURAL HISTORY | 2 |
|   | A. Factual History | 2 |
|   | B. The Settlement Agreements | 3 |
| IV. | ARGUMENT | 3 |
|   | A. Legal Standard for Final Approval of Class Settlements | 3 |
|   | B. The Class Settlements Are Fair, Reasonable, and Adequate. Final Approval of the Settlements Should be Granted | 4 |
|   |     1. The Class Settlements Provide Considerable Relief For The Class | 5 |
|   |     2. Class Members' Overwhelmingly Positive Reaction Favors Final Approval | 6 |
|   |     3. The Settlements Eliminate Significant Risk to the Classes | 7 |
|   |     4. The Stage of the Proceedings and Extent of Discovery Favors Approval | 7 |
|   |     5. The Settlements Are the Product of Arm's Length Negotiations Between the Parties and Are Based on the Recommendations of Experienced Counsel | 8 |
|   | C. The Court-Approved Notice Program Satisfies Due Process and Adequately Provided Notice to the Class | 9 |
|   |     1. This Court Approved IPPs' Notice Plan | 10 |
|   |     2. IPPs Implemented the Court-Approved Notice Program | 10 |
|   |     3. The Notice Program Was Successful in Reaching Multiple Class Members | 11 |
|   |     4. The Notice Program Satisfies Due Process | 11 |
|   | D. The Proposed Plan of Allocation is Fair, Reasonable and Adequate and Should be Approved | 12 |
| V. | CONCLUSION | 13 |

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**     i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agretti v. ANR Freight Sys., Inc.*,
   982 F.2d 242 (7th Cir. 1992) ................................................................................................. 6

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ............................................................................................. 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2015 U.S. Dist. LEXIS 170525 (N.D. Cal. Dec. 17, 2015) ................................................. 12

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................................. 6

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) ......................................................................... 12, 13

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................................................... 5, 8

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M-02-1486 PJH, Dkt. No. 2093 (Oct. 27, 2010) .......................................................... 12

*Fisher Bros. v. Mueller Brass Co.*,
   630 F. Supp. 493 (E.D. Pa. 1985) .......................................................................................... 6

*In re Fleet/Norstar Sec. Litig.*,
   935 F. Supp. 99 (D.R.I. 1996) ............................................................................................... 6

*Four in One Co. V. S.K. Foods, L.P.*,
   2:08-CV-3017 KJM EFC, 2014 WL 4078232 (E.D. Cal. Aug. 14, 2014) ........................... 12

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .................... 5, 9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................................... 5, 6

*Jaffe v. Morgan Stanley & Co.*,
   No. C 06-3903 TEH, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ......................................... 7

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ..................................................................................... 6

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ................................................................................................. 9

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**    ii

*In re Lloyds' Am. Trust Fund Litig.*,
  No. 96 Civ.1262 RWS, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26,
  2002) .................................................................................................................................. 12

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) .............................................................................................. 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................... 6, 9

*Officers for Justice v. Civil Serv. Com'n of City and Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................................ 9

*In re Omnivision Technologies, Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................................. 12

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ........................................................................................ 1, 4, 5

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997), aff'd 117 F.3d 721 (2d Cir. 1997) ................................. 12

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ......................................................................................................... 9, 11

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ......................................................................................... 7, 8, 9

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) .......................................................................................... 7

*Vasquez v. Coast Valley Roofing*,
  670 F. Supp. 2d 1114 (E.D. Cal. 2009) ................................................................................. 4

*In re Vitamins Antitrust Litig.*,
  No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 31, 2000) ........................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................................................... 7

**Rules**

Federal Rules of Civil Procedure

  Rule 23 ......................................................................................................................... 4, 11, 12
  Rule 23(b)(3) ........................................................................................................................... 9
  Rule 23(c)(2)(B) ................................................................................................................ 4, 10
  Rule 23(e) ..................................................................................................................... 1, 3, 4
  Rule 23(e)(1) ........................................................................................................................... 9
  Rule 45 ................................................................................................................................... 10

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya
and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**                                    iii

**Other Authorites**

Manual for Complex Litigation, Fourth (Fed. Judicial Center 2004)
    § 23.63..................................................................................................................4

William B. Rubenstein, Albert Conte & Herbert Newberg, 4 Newberg on Class
    Actions (5th ed. 2014) §§ 13:39–40 .....................................................................4

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

**IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD**                                                                 iv

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  STATEMENT OF ISSUES TO BE DECIDED**

Whether this Court should finally approve the proposed Class Settlements and the Plan of Allocation, given that they are fair, reasonable, and adequate, satisfy all applicable requirements, and after proper notice to the Classes in accordance with Due Process and Rule 23, no class member has objected.

**II.  INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23(e) and the Court's Orders granting settlement class certification, preliminary approval of the proposed settlements, and the plan for providing class notice to potential Settlement Class Members, the Indirect Purchaser Plaintiffs ("IPPs") submit this memorandum in support of final approval of the Class Settlements with Defendants NEC Tokin, Nitsuko, and Okaya ("Settling Defendants").

The Class Settlements are "fair, reasonable, and adequate," *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 945 (9th Cir. 2015), and represent an excellent recovery for the IPP Classes given the Defendants' individual commerce involved and the overall commerce at issue in the litigation. The settlements provide for a cumulative Settlement Fund of $14,950,000. Each settlement also includes requirements for substantial cooperation that will assist IPPs in the continued prosecution of their claims against the non-settling Defendants. The Class Settlements provide considerable relief for the Settlement Classes, whose members would otherwise face great uncertainty and potentially years of waiting for a successful result in this litigation. Despite the strength of IPPs' claims, the Classes continue to face significant litigation risk in the form of class certification, motions for summary judgment, expert discovery, trial, and potential appeals.

The reaction of the Classes to these settlements has been overwhelmingly and uniformly positive.  Despite the extraordinarily large size of the Classes, and a class notice program that is both constitutionally sufficient and approved by this Court, not a single class member has objected.[1]  Moreover, an extremely small number of opt-outs have been received.  While there

---

[1] One person, Patrick Sweeney, objected to the Settlements.  Mr. Sweeney has since conceded that he is not a class member and withdrawn his objection.  *See* ECF No. 1702 (notice of withdrawal of objection).

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya
and Approval of Plan of Allocation; Case No. 14-cv-03264-JD                                                1

were 627 opt-out requests, 591 of those are subsidiaries of Dell, Inc., and thus are part of the same corporate family. *See* IPPs' Notice of Requests for Exclusion, Ex. A (listing opt-outs), ECF No. 1662, 1662-1. Taken together, the combined purchases of the entities requesting to opt-out represent less than 1.5% of the total sales to IPPs, as reflected in the distributor data. *See id.*

## III.  FACTUAL AND PROCEDURAL HISTORY

### A.  Factual History

For a more thorough and complete Statement of Facts regarding the litigation history of this case, refer to IPPs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, ECF No. 1648 at pgs. 1-9 (detailing IPPs' efforts in this litigation), also submitted in connection with these final approval proceedings. This consolidated case arises from alleged conspiracies by Defendants to fix, raise, maintain, and/or stabilize the price of capacitors sold in the United States. This case has been heavily litigated by counsel for all parties, including motions to dismiss, motions for summary judgment, and many discovery challenges. Despite the complexity and length of the case thus far—evidenced by the hundreds of docket entries in this case—IPPs still have much work to complete in order to hold the non-Settling Defendants accountable for their illegal price-fixing schemes. There is no question, therefore, that the preliminarily-approved Settlements are the result of a fair evaluation of the merits of the case after years of extensive litigation *and* discovery.

Cotchett, Pitre & McCarthy, LLP ("CPM" or "Class Counsel") was appointed interim lead counsel for the IPP class by this Court on October 31, 2014. ECF No. 319. After numerous amended complaints and motions to dismiss, Class Counsel filed the Fifth Consolidated Complaint, the operative complaint in this action, on April 3, 2017. ECF No. 1589.

In order to achieve the settlements subject to this Motion, Class Counsel and counsel for each Settling Defendant engaged in extensive arm's-length negotiations. *See* Declaration of Steven N. Williams ("Williams Decl.") ¶¶ 3-25. On January 30, 2017, this Court preliminarily approved the settlements and IPPs' Class Notice Program with respect to the Settling Defendants. ECF Nos. 1456 & 1457. The Court also certified settlement classes for each Settling Defendant and set deadlines by which Class Members could opt-out or object. *Id.*

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD

2

IPPs have complied with the Court's Orders, including issuance and distribution of notice in various forms. *See* Declaration of Eric Schachter Regarding Dissemination of Notice of Settlements ("Schachter Decl."). Despite the breadth of the notice plan's coverage, only an extremely limited number of settlement Class Members have opted out. *See* ECF No. 1662-1. As set forth above, almost all of the opt-out requests are for Dell and its subsidiaries.

### B. The Settlement Agreements

The terms of the proposed settlements are described in detail in previous filings with the Court and the Court's prior Orders preliminarily approving the Settlements, and are incorporated herein by reference. *See* ECF Nos. 1305 & 1456. In exchange for $13,250,000 from NEC Tokin, $800,000 from Nitsuko, $900,000 from Okaya (collectively $14,950,000), and substantial cooperation from all Settling Defendants in further prosecution against non-settling Defendants,[2] the proposed Class Settlements release claims against the Settling Defendants for their participation in alleged conspiracies to fix, raise, or stabilize prices for capacitors and sold to IPPs through distributors.[3] *See* Williams Decl. ¶¶ 8-23, Exs. A-C.

In preliminarily approving the Settlement Agreements, the Court certified the Settlement Classes for settlement purposes and directed that class notice be issued (collectively, "Settlement Classes"). ECF Nos. 1456, 1457.

## IV. ARGUMENT

### A. Legal Standard for Final Approval of Class Settlements

A class action may not be dismissed, compromised, or settled without approval of the Court. Fed. R. Civ. P. 23(e). The settlement approval procedure includes three steps: (1) certification of a settlement class and preliminary approval of the proposed settlement; (2)

---

[2] Substantial cooperation includes providing an oral proffer of facts regarding the alleged price-fixing conspiracies, producing documents related to communications and meetings utilized by Defendants to conspire, fix, raise, maintain and/or stabilize the price of capacitors, and making current employees available for interviews, depositions, and trial testimony. *See* Williams Decl., Exs. A-C.

[3] IPPs' potential claims of product liability, breach of contract, breach of warranty or personal injury, or any other claim unrelated to the allegations in the Actions of restraint of competition or unfair competition with respect to Capacitors against Settling Defendants, however, are not released. *See* Williams Decl., Exs. A-C.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD       3

dissemination of notice to affected class members; and (3) a formal fairness hearing, also known as a final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may present argument concerning the fairness, adequacy, and reasonableness of the settlements. *Vasquez v. Coast Valley Roofing*, 670 F. Supp. 2d 1114, 1124–25 (E.D. Cal. 2009); *see also* Manual for Complex Litigation, Fourth (Fed. Judicial Center 2004) § 23.63. This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* William B. Rubenstein, Albert Conte & Herbert Newberg, 4 Newberg on Class Actions §§ 13:39–40 (5th ed. 2014).

The Court completed the first two steps when it granted preliminary approval of the Class Settlements, certified the Settlement Classes, and approved IPPs' Class Notice Program. ECF Nos. 1456 & 1457. The Notice Program was extensive, thorough, and supported by class action notice experts. Class Counsel worked with notice experts to provide the "best notice that [was] practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also* Schachter Decl. ¶¶ 16-17. In particular, the Notice Program mailed notice to Class Members using addresses available to IPP counsel, posted notice online, published notice in various publications, emailed notice, created banner ads on websites advertising notice of class settlement, and published notice in various e-newsletters. ECF No. 1457; Schachter Decl. ¶¶ 3-15. The Notice Program succeeded. It reached nearly 500,000 people via direct mail, nearly 100,000 people via e-mail "blast," and notice experts recorded over 27 million views of the online "banner" ads. *Id.* The Notice Program, therefore, fully complied with Rule 23 and due process. Schachter Decl. ¶¶ 16-17.

### B. The Class Settlements Are Fair, Reasonable, and Adequate. Final Approval of the Settlements Should be Granted

FRCP 23(e) requires the district court to determine whether a proposed settlement is fundamentally "fair, reasonable, and adequate." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 944. To assess the fairness of a settlement agreement, the Ninth Circuit requires district courts to consider a number of factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience

Law Offices
Cotchett, Pitre &
McCarthy, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD    4

and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Online DVD-Rental*, 779 F.3d at 944 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

The law favors settlements of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). If the proposed settlement is "the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with the presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010). Nonetheless, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal quotation marks omitted).

### 1. The Class Settlements Provide Considerable Relief For The Class

The Class Settlements are substantial and provide considerable relief to the Settlement Classes. They provide for a cash payment of nearly $15 million that accurately reflects the percentages of total sales of the Settling Defendants in the United States. *See* Williams Decl., Exs. A-C. The settlement with Nitsuko, for example, represents 800% of Nitsuko's total sales in the United States during the Class Period; the settlement with Okaya represents at least 10% of Okaya's total sales in the United States during the Class Period; and the settlement with NEC TOKIN represents 25.92% of NEC TOKIN's total sales in the United States during the Class Period. These percentages are not the alleged overcharge, but rather the percentage of overall sales. Given that these calculations are based on these Defendants' total sales in the United States, and not just the subset of sales to distributors, the percentages are in fact much higher. *See* Williams Decl. ¶ 7; *see also,* Declaration of Steven N. Williams in Support of Preliminary Approval of the Settlements ¶ 10 (ECF No. 1305-2). These percentages, indeed, compare favorably with other antitrust class settlements. The settlement value compares favorably with recent price-fixing cases in the Ninth Circuit. *See, e.g.*, *Online DVD-Rental*, 779 F.3d at 941 (approving $27.25 million settlement); *Fisher Bros. v. Mueller Brass Co.*, 630 F. Supp. 493, 499

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD

5

(E.D. Pa. 1985) (recoveries equal to .1%, .2%, .3%, .65%, .88%, 2%, and 2.4% of defendants' total sales).

Additional value to the Classes comes from the promised substantial cooperation of the Settling Defendants. Because Settling Defendants are the first Defendants to settle with the Classes, the promise of cooperation presents substantial value, as non-settling Defendants continue to vigorously oppose discovery requests, refuse to provide witnesses for depositions, or invoke the Fifth Amendment and refuse to testify completely. "In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (quoting Manual for Complex Litigation Second, § 30.46 (1986)). The Court should recognize cooperation as a valuable benefit to the class. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("The provision of such assistance is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement.").

### 2. Class Members' Overwhelmingly Positive Reaction Favors Final Approval

The Court should consider the reaction of class members to the proposed settlement when determining the settlement's fairness. *Churchill Vill.*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases); *see also In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996). Following notice, through which a substantial portion of the Classes were presented with the material financial terms of the proposed settlement, no legitimate objections were received. These Classes include large, sophisticated companies that purchase standalone capacitors. These entities can (and, often, do) assert objections in this kind of litigation. Their approval of the settlements demonstrates their value to the Classes.

The small number of opt-outs also demonstrates the Classes' overall positive reaction to the proposed settlements. As noted, the opt-outs represent a small part of the Classes as a whole.

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD       6

Of the 627 excluded parties, 591 of them (~96%) are subsidiaries of Dell, Inc. *See* ECF No. 1662-1. Collectively, the excluded parties make up less than 1.5% of total sales by distributors to the Classes. Williams Decl. ¶¶ 28-29. Given the small number of overall opt-outs and the substantial number of Class Members that chose to remain in the Settlement Classes, this Court should recognize the Classes' favorable reaction to the proposed settlements.

### 3. The Settlements Eliminate Significant Risk to the Classes

IPPs believe their case is strong, but Class Settlements eliminate substantial risks if the action were to proceed. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("'Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal'" (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998)); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282–283 (S.D.N.Y. 1999). The Class Settlements are in the best interest of the Settlement Classes. They eliminate risks of continued litigation, while at the same time creating a substantial cash recovery and requiring the Settling Defendants to cooperate with IPPs during the pendency of the ongoing litigation. Thus, the Class Settlements both eliminate the potential for unfavorable verdicts against Settling Defendants and increase the likelihood of favorable verdicts against non-settling Defendants.

### 4. The Stage of the Proceedings and Extent of Discovery Favors Approval

Class settlements are more likely fair if negotiated and agreed to following extensive discovery. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *see also Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008). When parties have "a good grasp on the merits of [the] case before settlement talks beg[i]n," negotiations are more likely to achieve fair results. *Rodriguez*, 563 F.3d at 967.

As recounted in the Motion for Attorneys' Fees (ECF No. 1649), after many amendments to the complaint and several motions to dismiss, IPPs have received and processed over 500 gigabytes worth of discovery from all defendants, which includes over 26 million Bates-numbered pages of documents. IPPs have also taken nearly 100 depositions of Defendants' employees, former employees, and expert witnesses, providing Class Counsel with the

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD    7

information needed to reach a fair and reasonable settlement. *See* IPPs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses at pg. 1-9 (ECF No. 1649); *see also* Declaration of Steve N. Williams in Support of Motion for Attorneys' Fees ¶¶ 7-61 (ECF No. 1649-2.

As the foregoing demonstrates, the status of the proceedings and the substantial discovery that has taken place militate in favor of approving the Settlements. The Settlements were achieved well into discovery, and thus, Class Counsel was well-informed about the liability evidence, the transactional data and commerce at issue and the attendant risks to the Classes should litigation proceed. Class Counsel's well-informed approach and the stage of the litigation lead to reaching fair, adequate, and reasonable agreements with Settling Defendants. *Rodriguez*, 563 F.3d at 967.

### 5. The Settlements Are the Product of Arm's Length Negotiations Between the Parties and Are Based on the Recommendations of Experienced Counsel

When evaluating class action settlements, "the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties. . . ." *City of Seattle*, 955 F.2d 1290 (internal quotation marks omitted).

As noted, this Action has been vigorously litigated. IPPs and Defendants have constantly disputed pleadings, motions, and discovery requests. That same zealous advocacy was applied in reaching the Settlements with the Settling Defendants. Negotiations over the settlements took place over many months, and involved numerous exchanges of confidential information and settlement proposals, meetings with several top executives and corporate counsel, and, in NEC Tokin's case, the assistance of the Hon. Layn R. Phillips (Ret.) as mediator. Williams Decl. ¶¶ 3-23. The long process IPPs and the Settling Defendants endured in reaching these agreements shows that they are the product of arms-length negotiations and not collusion. There is little doubt that the settlements were contested, fair, and conducted in utmost good faith.

Counsel's judgment on the fairness of settlements is entitled to "great weight." *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528. This Court has recognized CPM's extensive experience in

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD    8

handling complex, antitrust class actions by appointing it as interim lead counsel for the IPP Classes. Moreover, this Court has seen the work of CPM throughout this case as Defendants have vigorously fought discovery requests and filed multiple motions to dismiss and for summary judgment. CPM's experience with large, antitrust IPP classes shows that it can fairly evaluate the Classes' claims, the defenses, and the fairness and adequacy of settlements.

While IPPs believe that they have strong and meritorious claims, Settling Defendants all assert that they have strong defenses that would serve to eliminate their liability or damage exposure to Settlement Classes. Entering into Class Settlements, then, eliminates the burden, expense, and risks of further litigation to both IPPs and Settling Defendants.

Because these settlements are the products of arms-length negotiations, and conducted by experienced counsel, who reached terms both sides find beneficial to their respective parties, the Court should find the proposed settlements to be fair, adequate, and reasonable. *See Garner*, 2010 WL 1687832, at *13.

### C.  The Court-Approved Notice Program Satisfies Due Process and Adequately Provided Notice to the Class

Before final approval of a class action settlement, the Court must find that class members were notified in a reasonable manner. Fed. R. Civ. P. 23(e)(1). When a settlement class is certified under Rule 23(b)(3), class members must receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(b)(3); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The notice program cannot "systematically leave any group without notice." *Officers for Justice v. Civil Serv. Com'n of City and Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). Settlement notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). The notice plan must ultimately comport with due process requirements. *Rodriguez*, 563 F.3d at 963.

Here, the court-approved notice plan implemented by IPPs comports with due process and is the best practicable under the circumstances. *See generally,* Schachter Decl. *et seq.*

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD        9

### 1. This Court Approved IPPs' Notice Plan

IPPs offered a robust and multifaceted Notice Program. The Program provided both short and long form notices. IPPs worked with notice experts to send out notice forms by mail, e-mail, print publication, online publication, and online banner advertisements. The notice forms clearly describe who qualifies as members of the Settlement Classes, and provides Class Members with information about opting-out of or objecting to the Class Settlements. IPPs even provided the Classes with a settlement website, www.capacitorsindirectcase.com, at which Class Members could learn more about the settlement terms, important dates, and even register as members of the Settlement Classes. As evidenced by the types of e-newsletters and websites targeted by the notice program, the program was specifically designed to reach the electronics industry. Schachter Decl. ¶¶ 4-15.

The Court's Order approving the Notice Program found that IPPs' plan was the best notice practicable under the circumstances, *see* Fed. R. Civ. P. 23(c)(2)(B), and met all due process requirements. *See* ECF No. 1457.

### 2. IPPs Implemented the Court-Approved Notice Program

Following this Court's order approving the proposed Notice Program, IPPs fully implemented it. *See* Schachter Decl. IPPs obtained substantial transactional date through Rule 45 subpoenas from capacitor distributors. The distributors' sales data included customer information (*e.g.,* those customers purchasing standalone capacitors indirectly through distributors). IPPs provided this data to A.B. Data, IPPs' notice provider, to disseminate direct mail notice. Schachter Decl. at ¶ 5. A.B. Data mailed the Short-Form Notice to these potential Class Members in the form of a postcard. *Id.* at ¶ 6, Ex. A. Potential Class Members were also notified via print publication in *The Wall Street Journal*, *Electronic Design*, and *Nuts and Volts* in April 2017. *Id.* at ¶ 7, Ex. B. Internet "banner" advertisements notifying potential Class Members about the settlements appeared on websites for a month, and other websites through a targeted advertising program, Getintent. *Id.* at ¶ 10, Ex. C. A.B. Data also established and continues to maintain a website, www.capacitorsindirectcase.com, where potential Class Members can view and download the Settlement Agreements, the Motion and Order preliminarily approving the

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD            10

settlements and Notice Program, and Class Counsel's motion for attorneys' fees. *Id.* at ¶ 12. A.B. Data established a toll-free number with an interactive voice response system and live-operators potential Class Members can call with any questions. *Id.* at ¶ 14. Lastly, notice was sent through Business Wire, a nationwide news release, announcing the proposed Settlements. *Id.* at ¶ 15, Ex. D.

### 3. The Notice Program Was Successful in Reaching Multiple Class Members

The Notice Program worked and was implemented in accord with the proposal. The court-approved Notice Program was successful in reaching a substantial portion of the Settlement Class members. According to notice experts, direct mail was sent to nearly 500,000 potential Class Members notifying them of the settlements. *Id.* at ¶ 6. The email "blasts" reached nearly 100,000 potential class members. *Id.* at ¶ 9. The banner ads alone registered more than 27 *million* views. *Id.* at ¶ 11. More potential Class Members were reached through other elements of the Notice Program, including print publication, calls to the telephone hotline, and dissemination of notice in the Business Wire news release. *Id.* at ¶¶ 7, 14, 15. Through the website established by A.B. Data, over 6,500 people have registered for continual updates about the settlements. *Id.* at ¶ 13. The court-approved Notice Program was successful in reaching Class Members.

### 4. The Notice Program Satisfies Due Process

Due process requires the best notice that is practicable under the circumstances. *See Shutts*, 472 U.S. at 812. It does not require actual notice to each and every class member. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member"). Courts recognize that "it might be *impossible* to identify some class members for purposes of actual notice." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) (emphasis in original).

IPPs and their notice experts satisfied due process by providing the best notice practicable under the circumstances. The Notice Program was crafted with the idea of reaching a wide array of Class Members and specifically targeting the electronics industry to increase the Program's reach. Notice in this case was consistent with the requirements of Rule 23, Ninth Circuit

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD    11

precedent, and due process. *See* Schachter Decl. ¶¶ 16-17. Therefore, this Court should grant final approval to the Class Settlements at issue.

### D. The Proposed Plan of Allocation is Fair, Reasonable and Adequate and Should be Approved

"Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement; the distribution plan must be 'fair, reasonable and adequate.'" *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (internal citations omitted). When allocating funds, "[i]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1045-46 (N.D. Cal. 2008) (internal citations omitted) (approving securities class action settlement allocation on a "per-share basis"); *Four in One Co. V. S.K. Foods, L.P.*, 2:08-CV-3017 KJM EFC, 2014 WL 4078232, at * (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable").

Pro rata distribution has frequently been determined by courts to be fair, adequate, and reasonable. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 U.S. Dist. LEXIS 170525, at *198-200 (N.D. Cal. Dec. 17, 2015) (approving pro rata plan of allocation based upon proportional value of price-fixed component in finished product); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, at *2 (Oct. 27, 2010) (Order Approving Pro Rata Distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931, at *32 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable.") (citations omitted); *In re Lloyds' Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 U.S. Dist. LEXIS 22663, at *54 (S.D.N.Y. Nov. 26, 2002) ("Pro rata allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits."); *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 135 (S.D.N.Y. 1997), aff'd 117 F.3d 721 (2d Cir. 1997) ("[A] pro

Law Offices COTCHETT, PITRE & MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD    12

rata distribution of the Settlement on the basis of Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of the merits of the Class Members' claims.")

Here, the Notice Program informed Class Members that the distribution plan contemplated a *pro rata* distribution to each Class Member based upon the number of approved purchases of film or electrolytic capacitor purchases during the respective settlement class periods as against the respective settlement pots for either film or electrolytic capacitors. *See* Long Form Notice, ECF No. 1306-3. This is a reasonable and fair way to compensate the Classes. Thus, the recovery to individual Class Members is tied to the volume of their purchases, the number of other qualified Class Members making claims against the settlement fund, and the size of the overall fund. This Plan of Allocation is thus "fair, adequate, and reasonable" and merits approval by the Court. *See Citric Acid*, 145 F. Supp. at 1154.

## V. CONCLUSION

For the foregoing reasons, the Court should grant final approval of the NEC Tokin, Nitsuko and Okaya Settlements, and enter final judgment dismissing IPPs' claims against NEC Tokin, Nitsuko and Okaya with prejudice, and approve IPPs' plan of allocation.

Dated: June 26, 2017

Respectfully Submitted:

By: /s/ *Steven N. Williams*

Steven N. Williams
Adam J. Zapala
Elizabeth Tran
Mark F. Ram
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs*

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

IPP's Motion for Final Approval of Settlements with Defendants NEC Tokin, Nitsuko and Okaya and Approval of Plan of Allocation; Case No. 14-cv-03264-JD      13