Pages 1 - 40

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

IN RE:  CAPACITORS ANTITRUST    )
LITIGATION.                     )
                                )   **NO. C 14-03264 JD**
_____ )

                         San Francisco, California
                         Tuesday, October 10, 2017

                    **TRANSCRIPT OF PROCEEDINGS**


**APPEARANCES**:

For Plaintiffs Direct Purchasers, Chip-Tech, Ltd., and
Dependable Component Supply Corporation:

                    JOSEPH SAVERI LAW FIRM
                    505 Montgomery Street - Suite 625
                    San Francisco, California  94111
            **BY:  JOSEPH R. SAVERI, ATTORNEY AT LAW
                  JAMES G.B. DALLAL, ATTORNEY AT LAW
                  NICOMEDES SY HERRERA, ATTORNEY AT LAW
                  JOSHUA P. DAVIS, ATTORNEY AT LAW**


For Plaintiffs Indirect Purchasers, Toy-Knowlogy, Inc., and CAE
Sound:

                    COTCHETT, PITRE & MCCARTHY LLP
                    San Francisco Airport Office Center
                    840 Malcolm Road
                    Burlingame, California  94010
                **BY:  ADAM J. ZAPALA, ATTORNEY AT LAW**



            **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**



REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

**APPEARANCES**:   (CONTINUED)

For Plaintiff Flextronics International USA, Inc.:
                        WILLIAMS, MONTGOMERY & JOHN
                        Wills Tower
                        233 S. Wacker Drive - Suite 6100
                        Chicago, Illinois  60606
                    BY:  **CHARLES E. TOMPKINS, ATTORNEY AT LAW**

For Plaintiff The AASI Beneficiaries Trust, by and through
Kenneth A. Welt, Liquidating Trustee:
                        BILZIN, SUMBERG, BAENA, PRICE
                         & AXELROD LLP
                        1450 Brickell Avenue - 23rd Floor
                        Miami, Florida  33131
                    BY:  **ROBERT W. TURKEN, ATTORNEY AT LAW**
                        **SCOTT N. WAGNER, ATTORNEY AT LAW**

For Defendants Panasonic Corporation, et al., and Sanyo
Electric Group, Ltd., et al.:
                        WINSTON & STRAWN LLP
                        101 California Street
                        San Francisco, California  94111
                    BY:  **IAN L. PAPENDICK, ATTORNEY AT LAW**

For Defendants Nichicon Corporation and Nichicon (America)
Corporation:
                        K&L GATES LLP
                        70 West Madison Street - Suite 3100
                        Chicago, Illinois  60602
                    BY:  **MICHAEL E. MARTINEZ, ATTORNEY AT LAW**

For Defendant Matsuo Electric Company, Ltd.:
                        DENTONS US LLP
                        525 Market Street - 26th Floor
                        San Francisco, California  94105
                    BY:  **BONNIE LAU, ATTORNEY AT LAW**

For Defendants Rohm Company, Ltd., and Rohm Semiconductor USA
LLC:
                        O'MELVENY & MYERS LLP
                        Two Embarcadero Center - 28th Floor
                        San Francisco, California  94111
                    BY:  **MEGAN HAVSTAD, ATTORNEY AT LAW**

**APPEARANCES**:   (CONTINUED)

For Defendant Hitachi Chemical Company, Ltd.:
                          WILSON, SONSINI, GOODRICH & ROSATI
                          1301 Avenue of the Americas - 40th Fl.
                          New York, New York 10019
                  BY:   **JEFFREY BANK, ATTORNEY AT LAW**
                        **CHUL PAK, ATTORNEY AT LAW**

For Defendant HolyStone International:
                          JONES DAY
                          555 South Flower Street - 50th Floor
                          Los Angeles, California  90071
                  BY:   **ERIC P. ENSON, ATTORNEY AT LAW**

For Defendants Okaya Electric America, Inc., and Okaya Electric
Industries Company, Ltd.:
                          BAKER & MCKENZIE LLP
                          425 Fifth Avenue
                          New York, New York  10018
                  BY:   **DARRELL PRESCOTT, ATTORNEY AT LAW**

For Defendants Soshin Electric Company, Ltd., and Soshin
Electronics America, Inc.:
                          BAKER & HOSTETLER LLP
                          11601 Wilshire Boulevard - Suite 1400
                          Los Angeles, California  90025
                  BY:   **C. DENNIS LOOMIS, ATTORNEY AT LAW**

For Defendant Shizuki Electric Co., Inc.:
                          DAVIS WRIGHT TREMAINE LLP
                          505 Montgomery Street - Suite 800
                          San Francisco, California  94111
                  BY:   **JOY G. KIM, ATTORNEY AT LAW**

**Tuesday - October 10, 2017**                    **3:04 p.m.**

P R O C E E D I N G S

---oOo---

THE CLERK:  Calling Civil 14-3264, In Re Capacitors

Antitrust Litigation.

  Counsel?

MR. ZAPALA:  Good afternoon, Your Honor.  Adam Zapala

from Cotchett, Pitre & McCarthy for the indirect purchaser

plaintiffs.

MR. SAVERI:  Good afternoon.  Joseph Saveri on behalf

of the direct purchaser plaintiffs.

MR. TOMPKINS:  And Charles Tompkins on behalf of

Flextronics.

MR. TURKEN:  Robert Turken, Your Honor, for AASI

Liquidating Trust.

THE COURT:  Oh, okay.  Now, is that the one from

Florida?

MR. TURKEN:  Yes.

THE COURT:  All right.  Okay.

  Okay.  Anybody else on the plaintiffs' side?

                    (No response.)

THE COURT:  No?  Yes?

MR. DAVIS:  I may be speaking.  Joshua Davis on behalf

of the Saveri law firm for direct purchaser plaintiffs.

THE COURT:  What about the Arizona people?  Are they

1    here?

2            **MR. TURKEN:**  Yes, Your Honor.  We are representing

3    them as well.

4            **THE COURT:**  Oh, okay.  All right.

5        All right.  Defendants?

6            **MR. PAK:**  Good afternoon, Your Honor.  Chul Pak with

7    Wilson Sonsini for defendant Hitachi Chemical, and my colleague

8    Jeffrey Bank.

9            **MR. LOOMIS:**  Good afternoon, Your Honor.  C. Dennis

10   Loomis, Baker Hostetler, for Soshin Electronics.

11           **MR. ENSON:**  Good afternoon, Your Honor.  Eric Enson

12   with Jones Day on behalf of the HolyStone defendants and here

13   to speak on behalf of the defendants, to the extent I can, with

14   respect to the scheduling issues.

15           **THE COURT:**  Oh, all right.

16       Okay.  Let's do the preliminary approval request first.

17           **MR. ZAPALA:**  Good afternoon, Your Honor.  Adam Zapala

18   for the indirect purchasers.

19           **THE COURT:**  Yes.  All right.  Looks good.

20           **MR. ZAPALA:**  Thank you, Your Honor.

21           **THE COURT:**  Is there anything I should know?

22           **MR. ZAPALA:**  Nothing you should know other than, as we

23   said in our papers, we will be submitting to you a plan for

24   providing class notice.

25       We do expect additional settlements to be wrapped into

1    that round.  We heard you on the last round.  We'll make sure

2    that everything is in that notice, you know, the fees that we'd

3    be seeking on that round and all of that stuff, so that class

4    members have proper notice; but in terms of these two

5    settlements, that's all.

6            THE COURT:  And attorneys' fees and everything else is

7    coming later; right?

8            MR. ZAPALA:  Correct.

9            THE COURT:  Okay.  All right.  Well, consider it

10   preliminarily approved.

11           MR. ZAPALA:  Thank you, Your Honor.

12           THE COURT:  When are you going to get the schedule to

13   me?

14           MR. ZAPALA:  The schedule?  The schedule for class

15   notice?

16           THE COURT:  Yes.

17           MR. ZAPALA:  We are in the process -- I don't want to

18   reveal too much, but we are -- as you know, you heard from one

19   of the counsel at the class certification hearing, we have

20   reached additional settlements with defendants.  We're in the

21   process of getting those inked.

22           THE COURT:  Are you going to wrap them all together,

23   is that --

24           MR. ZAPALA:  Yeah.  We'd like to wrap them all

25   together because it's more economic for the class.  We don't

1    want to do multiple rounds of notice if we don't have to, so

2    we're going to try to get those deals finalized, present them

3    to you for preliminary approval at the same time we provide you

4    with our class notice motion, and do all of these settlements

5    as one.

6          **THE COURT:**  Okay.  All right.

7       Okay.  So that's that.

8          **MR. ZAPALA:**  One additional housekeeping item, if you

9    could indulge me -- I know one of the settling defendants is

10   here, Okaya -- to just ask that we could get the final approval

11   orders executed from the previous round of settlements, the

12   ones including Okaya.

13         **THE COURT:**  Oh, yes.  That should be fine.  I just --

14   I think I may have mentioned last time, our business is

15   unusually brisk.

16         **MR. ZAPALA:**  I understand.

17         **THE COURT:**  So I will see if I can advance that.  I

18   won't have them done probably this week, but I will do my best

19   to get them out early.

20         **MR. ZAPALA:**  Thank you, Your Honor.

21         **THE COURT:**  Okay.  Now, let me ask you, now that we

22   have spent every year together since I have taken the bench,

23   what is happening on the plaintiffs' side with respect to

24   scheduling?

25         **MR. ZAPALA:**  As you know, we submitted a joint

```
 1    stipulation with the defendants.  We do think --

 2             THE COURT:  The "we" part is in dispute.

 3             MR. ZAPALA:  Sorry?

 4             THE COURT:  The "we" part is in dispute.

 5             MR. ZAPALA:  I don't think the "we" part is in

 6    dispute.

 7             THE COURT:  I thought the people -- who's going --

 8    come on up.

 9             MR. ZAPALA:  Oh, the direct action plaintiffs?

10             THE COURT:  That's what I'm talking about, yes, but

11    you're part of the schedule as well, so --

12             MR. ZAPALA:  Correct.

13             THE COURT:  -- what is happening?

14             MR. ZAPALA:  As far as I know, the direct -- I'll just

15    call them the direct action plaintiffs -- have not filed any

16    indirect purchaser claims, so it's really not the indirect

17    purchasers issue.  I'm bowing out, Your Honor.

18             THE COURT:  All right.

19             MR. ZAPALA:  And, you know, I think class counsel on

20    the direct side may have something to say about it and the

21    opt-outs, but we're not part of that.

22             THE COURT:  Okay.  All right.  I feel like we had this

23    conversation about two years ago working together on the DPP

24    side --

25             MR. SAVERI:  Your Honor --
```

1          **THE COURT:**  -- and making sure everybody was included.

2     And Mr. -- and the Flextronics lawyer has sent me another

3     notice saying he wasn't invited to participate in something.

4          **MR. SAVERI:**  And, indeed, Your Honor, the Flextronics

5     counsel have been since that time -- and they can speak for

6     themselves -- have been included in the scheduling, have

7     participated in discovery, and it's proceeded apace.

8          **THE COURT:**  Well, what was it -- why don't you come on

9     up?  What was it you didn't get notice of?

10         **MR. TOMPKINS:**  Oh, Your Honor, it was the deposition.

11         **THE COURT:**  Oh, yes.  Okay.

12         **MR. TOMPKINS:**  There are a lot of issues in the case.

13    We're not -- we just want to make sure we're included in the

14    request.

15         **THE COURT:**  No, I understand that, but your letter

16    said that you weren't.

17         **MR. TOMPKINS:**  To my knowledge we were not actually

18    consulted prior to the request being filed.

19         **THE COURT:**  All right.  Have you worked all that out

20    so that won't happen again?

21         **MR. TOMPKINS:**  Well, who knows if it will happen

22    again; but, I mean, we're assuming it was an oversight, and

23    there are a lot of things going on in the case so we weren't

24    going to raise a specific --

25         **THE COURT:**  All right.  So you're not uniformly

```
 1   unhappy?

 2           MR. TOMPKINS:  No, not uniformly.

 3           THE COURT:  All right.  Okay.

 4      Now, Florida is here to stay.

 5           MR. TURKEN:  Florida is here to stay.

 6           THE COURT:  All right.  I don't really understand what

 7   the Arizona plaintiffs are doing, but --

 8           MR. TURKEN:  The Arizona plaintiffs elected to opt out

 9   and pursue their claims and try their cases in Arizona, and we

10   have consented to the defendants' 1407 motion to transfer their

11   cases to this court for pretrial purposes.

12      And, in fact, Your Honor, we are willing to agree to

13   proceed for Avnet and Benchmark as if the 1407 motion has

14   already been transferred.

15      The defendants have agreed to allow us to use the

16   discovery that they have produced in this case in connection

17   with the Arizona cases, which should dramatically avoid any

18   duplication, and we're working well with them in that respect.

19      So --

20           THE COURT:  You are working well with them?

21           MR. TURKEN:  Yes, Your Honor, we are.

22           THE COURT:  Oh.  I thought somebody sent me a letter

23   saying you were not being allowed access to the discovery.

24           MR. TURKEN:  That is not, Your Honor, with respect to

25   the defendants.
```

1          **THE COURT:**  That's what?

2          **MR. TURKEN:**  That is not a problem we're having with

3     the defendants.

4          **THE COURT:**  No, no.  I'm talking about Mr. Saveri.

5     You're having a problem with Mr. Saveri.

6          **MR. TURKEN:**  Your Honor, there appears to be a

7     disagreement as far as what Mr. Saveri believes our role in the

8     case should have been and should be; but, frankly,

9     Your Honor --

10         **THE COURT:**  Let me just -- I'm sorry to interrupt.  I

11    started a trial today and I've got a number of other things, so

12    I'm just a little slower than normal.

13       But so when you say you're having full access to

14    discovery, you mean from the defendants?

15         **MR. TURKEN:**  We, Your Honor, have made arrangements

16    with the defendants to get the discovery -- to allow us to use

17    the discovery for Avnet and Benchmark.

18         **THE COURT:**  Okay.

19         **MR. TURKEN:**  We've also had extensive discussions with

20    Flextronics.  Flextronics has been terrific.  They've given

21    us -- we've made arrangements to obtain from them copies of all

22    the deposition transcripts.  We've started actually reviewing

23    those.  We've obtained most of the written discovery from

24    Flextronics.  The holes that we had, Mr. Saveri has provided

25    us.

1      And, in fact, most importantly, Your Honor, we have worked

2  out an arrangement with Flextronics so that we will have access

3  to Flextronics' independent document database that they were

4  forced to establish.

5      Now, we're going to have to do additional translations and

6  they're going to be significant but we've already made

7  arrangements to start on that front.  So we think that with

8  respect to the documents, with respect to the discovery that

9  has occurred to date, we're okay.

10     The problem that we're having is with depositions.  What

11  we would like, Your Honor, is, first, to be given notice of the

12  depositions and to be given notice of the depositions

13  sufficiently in advance so that we can attend; second, to be

14  consulted with regard to scheduling of the depositions so that

15  it's not just laid out to us.

16     And what we'd also like, Your Honor, is -- we're on the

17  same side as the plaintiffs.  We're all supposed to be

18  approaching this on the same end, and we would like to

19  meaningfully participate, to the extent we can, even if it

20  means just having a little bit of time reserved at the end of

21  the deposition so we can ask questions.

22     And what we'd like at a minimum is for the attorneys who

23  are going to be taking the lead at the depositions to provide

24  us with copies of the exhibits that they're intending to use,

25  the documents, so that we can prepare and we're not duplicating

 1   effort.

 2        This is what we did in LCD and this is what we did in CRT,

 3   and it was the standard practice between opt-outs and the class

 4   lawyers, and we would think that that would be something that

 5   would work very well here as well.

 6        **THE COURT:**  Okay.  What's the problem with that?

 7        **MR. SAVERI:**  So, Your Honor, a couple things.  First

 8   of all, we have provided to Mr. Turken copies of the discovery

 9   that has been taken.  We provided them -- we offered to give

10   them at our cost a copy of all the documents that were produced

11   by the defendants in the case.  They turned us down on that.

12        **THE COURT:**  Turned you down?

13        **MR. SAVERI:**  They turned us down.

14        **THE COURT:**  So what does that mean?

15        **MR. SAVERI:**  So we -- in this case we've received from

16   the defendants about, I don't know, 7, now up to 8 terabytes

17   from the defendants directly.  We've -- it's largely in

18   Japanese but not exclusively so.  We've compiled it.  We can

19   put it on media, and we offered to send it to Mr. Turken and

20   his counsel at our cost.  We said, "Here, here are all the

21   documents that have been produced in the case."  Mr. Turken

22   turned us down.

23        So what we are -- we've also offered since -- and we

24   agreed --

25        **THE COURT:**  Let me just pause on that for a moment.

1        So is that right?

2              **MR. TURKEN:**  No, Your Honor.

3              **THE COURT:**  Well, what happened?

4              **MR. TURKEN:**  Your Honor, we've been asking for access

5    to the document database for two years.

6              **MR. SAVERI:**  Your Honor --

7              **THE COURT:**  Two years?

8              **MR. TURKEN:**  And what we've been willing to do is to

9    pay our fair share of the costs, and they said they were not

10   interested in working with us, and at this point that's fine.

11        What Mr. Saveri, I think, is referring to is that after

12   the hearing that occurred I believe it was on September 21st,

13   he reached out to us and said, "You can have copies of the

14   documents themselves."

15        And, frankly, Your Honor, dealing with that -- and that

16   was after we, again, had asked him for a proposal to allow us

17   access to his document database.

18        And, frankly, the arrangement we have with Flextronics

19   where we're going to at least have access to their document

20   database, we'll have to do the translations, but it will save

21   hundreds of thousands of dollars to reestablish the same

22   documents in the same database, and that's really all we're

23   looking to do.

24              **MR. SAVERI:**  So, Your Honor, again, I'll say it again,

25   we -- all the documents that were produced to us by the

```
1    defendants we're agreeing to provide to them at our cost.  I've

2    said it three times.

3              THE COURT:  Full, complete production set?

4          MR. SAVERI:  Yeah, the way we got it and compiled it,

5    and I've said it --

6              THE COURT:  How about translations and things like

7    that?

8          MR. SAVERI:  So the translations, there are a couple

9    things.  They've already received the translated deposition

10   exhibits because they were marked at the depositions, so they

11   have those already because they have the depositions.

12             THE COURT:  For every deposition?

13         MR. SAVERI:  Every deposition.  So that, in large

14   measure, is the core of the case.

15       We are also -- as we go and preparing for depositions, we

16   do translate documents in order to get them ready.  That's our

17   work product; and what we will say again is we're willing to

18   make those available, but we should talk about an economic --

19   you know, what it -- about our costs and what we've invested in

20   that because that's -- that's a lot of work product,

21   Your Honor.  That's the attorney time.  That's all the review

22   that we've been doing.

23       And we're willing to talk about how to do that.  I've

24   said --

25             THE COURT:  I thought we -- I thought you worked that
```

1    out with Flextronics a couple years ago.

2         **MR. SAVERI:**  Well, we thought that we had made

3    arrangements.  We have worked it out with Flextronics because

4    they have a copy of our database.  Now, Flextronics has been in

5    this case for a while and they've undertaken on their own,

6    because they've got their own case and they're prepared to

7    prosecute their own case, they've translated the documents

8    themselves.  And as we prepare for the depositions, Flextronics

9    has -- to some extent the documents have been translated

10   because they've been marked as exhibits, but Flextronics comes

11   to the depositions with their own translations.

12        So that's been going on for sometime.  We haven't had an

13   issue with that.

14        **THE COURT:**  Let me just make sure I understand.

15        So, Mr. Tompkins, why don't you come up.

16        When the direct purchaser plaintiffs get a document in

17   Japanese, you're both doing independent Japanese translations?

18        **MR. SAVERI:**  Not in all cases.  In some cases because

19   we're preparing the case separately, we have translated the

20   same document.  And part of the case has to do with Flextronics

21   that we have no interest in.

22        **THE COURT:**  No, no, I understand.  But there might be

23   a paragraph that Flextronics does on its own, but why the whole

24   document?

25        **MR. TOMPKINS:**  We've essentially used -- we've

1   essentially had separate translation documents.

2           THE COURT:  Really?  That's not efficient.

3           MR. TOMPKINS:  It was not necessarily our choice to do

4   it that way, but it became the way to get it done.

5           THE COURT:  Why are you all doing it that way?  Why

6   aren't you all sharing a uniform -- my concerns are anything

7   from duplicative, maybe triplicate costs; and that raises

8   issues of should we get to fee shifting that's involuntary at

9   some point in this case, I'm going to have a hard time

10  justifying that.

11          And, secondly, translations, I don't want marginal

12  differences creating problems.  So, you know, Japanese to

13  English is not the easiest of translations.

14          MR. TOMPKINS:  Your Honor, I do think when documents

15  are marked as exhibits, we've agreed on a single translation.

16          THE COURT:  You have?

17          MR. SAVERI:  And that's absolutely the case.

18          THE COURT:  You're not examining the same witness with

19  two different translations?

20          MR. SAVERI:  Absolutely not.

21          MR. TOMPKINS:  I don't think that's happened.

22          MR. SAVERI:  Sometimes Flextronics is the first party

23  to take the deposition and it's marked, and we rely on that;

24  and then I think, which is more often the case, the directs and

25  the indirects, who have been working together, will mark the

 1   exhibits.

 2       **THE COURT:**  That can be chaotic if three people are

 3   examining the witness with three different translations.

 4       **MR. SAVERI:**  And I can't recall a situation -- and

 5   Mr. Tompkins can correct me if we've had many of these

 6   situations, or Mr. Zapala -- where we -- I don't believe there

 7   are really any situations where we've used the same document.

 8       **MR. ZAPALA:**  No.  That hasn't -- that, to my

 9   knowledge, has not happened.

10       **THE COURT:**  Different translations, okay.

11       **MR. TURKEN:**  But, Your Honor, that's -- you're

12   focusing in on one of the problems.

13       So let's assume, for example, a deposition is scheduled

14   and direct action plaintiffs are taking the lead in that

15   deposition and we're also preparing to take the deposition.  So

16   we're going to put forth the effort to review the documents,

17   translate the documents for the deposition, and they're doing

18   the same thing.

19       And all we are asking for is that the attorney that's

20   taking the lead at the deposition give us a set of the

21   documents that they're going to use at the deposition

22   sufficiently in advance so we don't have to duplicate efforts.

23   It makes no sense.

24       **THE COURT:**  Including a translation?

25       **MR. TURKEN:**  Yes, including the translation so, again,

1    we don't have to do the same thing.  We're going to see the

2    documents when they use them at the deposition, so it's really

3    just giving it to us a few days earlier.

4         And we're supposed to be on the same side in the sense of

5    we're all representing plaintiffs' interests.  We don't

6    understand why that should be controversial.  It's not as if we

7    are taking advantage of their work product.

8         We'll do it ourselves.  We have no problem doing that, but

9    the difference is going to be with regard to scheduling.  The

10   more that we have to duplicate, obviously the longer it's going

11   to take us.

12        We went over the schedule that they attached to the

13   stipulation, Your Honor.  We don't believe that that

14   schedule --

15             **THE COURT:**  Before we get to that --

16             **MR. TURKEN:**  I'm sorry.

17             **THE COURT:**  -- let's just work out how we're going to

18   handle this.  What do you want to do?

19             **MR. TOMPKINS:**  We don't have any objection to giving

20   translations to them in advance that we use in the depositions.

21             **THE COURT:**  I think he wants all the exhibits, all the

22   proposed exam exhibits.

23             **MR. TOMPKINS:**  Flextronics doesn't -- when I say "we,"

24   I mean Flextronics.

25             **THE COURT:**  The proposition is before you-all walk

1    into a deposition -- "you" being the direct purchaser

2    plaintiffs -- you will all have communicated in advance about

3    "These are the likely exam topics I'm going to cover, and here

4    are the documents I'm going to use"; right?

5         Yes?

6              MR. SAVERI:  So two things, Your Honor.  First of all,

7    in the LCD case where we were the -- where I was one of the

8    lead counsel for the direct purchaser class, we did it

9    informally.  It worked fine.  We didn't get any demands for

10   outlines or exhibits before.  It worked informally and fine.

11   This controversy is unusual in my experience.

12        Second, right now --

13             THE COURT:  Yeah, but these are opt-outs.

14             MR. SAVERI:  But we had opt-outs.  We had Dell.  We

15   had others.  We never had this problem.  Dell did their own

16   work.  We coordinated and exchanged deposition exhibits before

17   the deposition.

18        One of the practical problems we have right now is the --

19   we have a schedule where we're -- we've got depositions one day

20   after another.  Some days we're double or triple tracking.  I

21   want to make sure -- we're fine with coordinating, but I don't

22   want to build in a lot of process that's going to prevent us

23   from preparing for the depositions getting it done when we've

24   got so much going on.

25             THE COURT:  Look -- and I appreciate that -- on the

```
 1   other hand, I don't want a situation where -- is it AASI?
 2           MR. TURKEN:  AASI.
 3           THE COURT:  -- who's here to stay through verdict and
 4   appeal, if it gets to that point, prepping a deposition as if
 5   it were the sole examining party while you're doing exactly the
 6   same thing.  It just doesn't make any sense.
 7           MR. SAVERI:  And, Your Honor, I'm fine with -- if --
 8   to say before the deposition --
 9           THE COURT:  Flextronics, I mean, both of them are in
10   the same situation.
11           MR. SAVERI:  And part of this is Mr. Zapala too
12   because we've taken -- we have all --
13           THE COURT:  He doesn't want to be involved.
14           MR. SAVERI:  Well, but it's not --
15           THE COURT:  He's standing away from your side of the
16   podium.
17           MR. SAVERI:  Yeah, and I appreciate that, and my arms
18   are kind of long and I'm roping him in.
19       But part -- just so you understand, Your Honor, what
20   happens is that, as these depositions have been going forward,
21   we kind of alternate or allocate the lead of who's going first.
22   The indirects go first sometimes, the directs go first
23   sometimes, and we've done a very good job coordinating with
24   them and exchanging these exhibits and doing exactly what we're
25   talking about here.
```

1          So if we're going to be talking about exchanging exhibits

2    before depositions, it's not only going -- it's going to

3    include a responsibility that Mr. Zapala is going to have to

4    bear, and so I just want to be clear about that.

5          We're fine with 24 hours in advance of the deposition

6    giving them a copy of what we plan to use.  We don't have any

7    problem with that, and I'll say it again.  We're welcome to do

8    that.

9              THE COURT:  How are you dividing your time up at the

10   depos?

11             MR. SAVERI:  Well, the way it's gone so far is that

12   essentially we -- I don't even know exactly how much time

13   you're allocated, but we have not had a problem in one

14   deposition, as far as I know, about allocating time.

15             THE COURT:  Is that right?

16             MR. TOMPKINS:  We've informally agreed to allocate.

17   Flextronics' deposition time varies significantly by defendant

18   depending on who we did business with and things like that.  So

19   so far we have not had -- we came before Your Honor in the

20   context of 30(b)(6) depositions and asked for more time for

21   certain specific defendants, and we've informally taken longer

22   than seven-hour depositions of certain defendants by agreement

23   of the parties.

24             THE COURT:  That's fine.  If you're all in agreement

25   with that, I don't care.

 1              **MR. SAVERI:**  And so we've been -- I mean, again --

 2              **MR. ZAPALA:**  To date it's worked out very well,

 3   Your Honor.

 4         **MR. TURKEN:**  Your Honor, we don't expect that that's

 5   going to be a problem because we're not looking to replicate

 6   what they're doing.  So if we're going to ask additional

 7   questions, we're happy to wait till the end and we're happy to

 8   limit it.  Just as long as a little bit of time is reserved for

 9   us, that's all we're asking.

10         **MR. SAVERI:**  And that's fine.  We feel like we want to

11   have the opportunity to conduct the examination and do the work

12   we need to do as long as that's happening at the end.

13   Candidly, I think the defendants have been pretty good about

14   time limits and not imposing it -- you know, bringing the

15   curtain down at the expiration of the time, so I think that's

16   going to be worked out.

17       I want to comment first also on the deposition scheduling.

18         **THE COURT:**  Well, let's just work this out.

19         **MR. SAVERI:**  Yeah.

20         **THE COURT:**  So I have to be honest with you, I'm

21   having trouble understanding exactly what the issue is.  I

22   mean, I got a letter -- I think from you, Mr. Turken -- saying

23   you've been excluded from any meaningful participation in

24   discovery, and class counsel is refusing this and that; and now

25   I'm hearing today that maybe it's not quite as dire as the

1  letter seemed to suggest, but I'm still not understanding what

2  the problem is.

3          MR. TURKEN:  Well, Your Honor, actually --

4          THE COURT:  What do you want me to do?  If you were

5  the judge, what would you do today?

6          MR. TURKEN:  Okay.  All we are asking with respect to

7  depositions is three things.

8          THE COURT:  Yes.

9          MR. TURKEN:  One, to be given sufficient notice of the

10  deposition.  A couple weeks ago we received notice on a Sunday

11  for a series of depositions Monday and Tuesday in three

12  different cities.  That was different.

13          THE COURT:  All right.  Let's pause on that.

14      What is the arrangement with Flextronics for notice?

15          MR. TOMPKINS:  It's been informal and there's been a

16  few glitches, but generally we've been able to schedule in

17  accordance with the schedules of everyone.

18          MR. SAVERI:  And, Your Honor --

19          THE COURT:  I had the impression that maybe the three

20  of you -- or the four of you I should say -- were sitting down

21  on a weekly basis saying, "Here's the plan."  You're not doing

22  that?

23          MR. TOMPKINS:  That's probably a misimpression,

24  Your Honor, but there has been --

25          THE COURT:  Would you like to do that?

1          **MR. TOMPKINS:**  We're certainly open to that,

2     Your Honor.  We don't object to any of the relief that the

3     other opt-outs are requesting.

4          **MR. SAVERI:**  And, Your Honor, with respect to the

5     scheduling, we have had a lot of depositions that we're trying

6     to get done in a relatively short period of time.  We have a

7     lot of coordination to do.

8          I think it is generally the case -- it's the rule but

9     there are exceptions because there's so many moving parts --

10    that we have included -- we -- I mean, Mr. Zapala's office and

11    mine have spent a lot of time trying to schedule depositions

12    all over the planet.

13         We've included Mr. Tompkins in that process generally.

14    From time to time to be fair we've just -- we've missed

15    communication.  But, candidly, there's a lot going on.

16         We're happy -- and since the new lawyers have come, we

17    provided deposition notices.  A lot of these were scheduled a

18    long time in advance.  I believe they have every deposition --

19    a copy of -- we've informed them of every deposition that is

20    currently scheduled or in negotiation.

21         So I think we're doing what we need to do to coordinate

22    it.  I'm happy if we need to have a more regular dialogue.

23         **THE COURT:**  Can't you just share like a planning

24    plaintiffs' side calendar or something that plans a month in

25    advance?

 1          **MR. SAVERI:**  We do that, and I think Mr. Tompkins can

 2   speak to it.  I think we do it.  It's not a -- it's not a

 3   regular -- it's not formal.  It's informal and that works

 4   because there's so many moving parts, but I think that's

 5   actually what has happened.

 6          **MR. TOMPKINS:**  Your Honor, generally speaking, we have

 7   been able to schedule depositions consistent with all of our

 8   schedules.

 9          **THE COURT:**  Mr. Turken, you just arrived.  Maybe

10   there's just a getting-to-know-you glitch and now we're past

11   it.

12          **MR. TURKEN:**  Right.  And we understand that there are

13   scheduling issues.  We are willing to work with them.  We

14   understand that we're not going to be able to -- and it's not

15   our intention to disrupt anything, but just to be able to

16   include us a little bit in the scheduling process.  That's all

17   we're asking.

18          **THE COURT:**  All right.  Consider it done.

19          **MR. ZAPALA:**  Your Honor, I can assure you we will

20   not -- I think it is an issue --

21          **THE COURT:**  Include them in the scheduling process.

22          **MR. ZAPALA:**  Yeah.  That's not going to be a problem.

23   Yes.

24          **THE COURT:**  And more than, you know, Sunday notice for

25   Monday depositions.

1          **MR. TURKEN:**  And the other issue I think Mr. Saveri

2    has resolved, and that is the issue of give us the exhibits or

3    the anticipated exhibits 24 hours in advance.  That's fine.

4          **MR. SAVERI:**  Okay.

5          **THE COURT:**  Done?

6          **MR. SAVERI:**  Yeah.  I made the offer.  I stand by what

7    I said a few minutes ago.

8          **THE COURT:**  Okay.  Does that resolve everything?

9          **MR. TURKEN:**  That resolves it.

10         **THE COURT:**  Okay.  All right.

11    Anything else I can help you with?

12         **MR. SAVERI:**  Well, Your Honor, I have -- we have --

13         **THE COURT:**  Oh, I'm sorry.  Let me just jump in.

14    There's something about Mr. Okubo's deposition.

15         **MR. SAVERI:**  So Mr. Okubo --

16         **THE COURT:**  Is his lawyer here?

17         **MR. SAVERI:**  I don't know.

18         **MS. LAU:**  Good afternoon, Your Honor.  Bonnie Lau on

19    behalf of defendant Matsuo Electric Company.

20    Okubo is our employee but obviously represented by

21    individual counsel, who's not present today.

22         **THE COURT:**  Oh.  All right.  Well -- so what's the

23    issue?  You're concerned that it be technically a second

24    deposition you want approval for?

25         **MR. SAVERI:**  Your Honor, originally Mr. Okubo took the

1    Fifth.  He's incarcerated at Lompoc now.  We want to take his

2    deposition on the merits and we want to take it while he's in

3    the United States, and so we've followed the procedure which we

4    need to follow in order to schedule the deposition with the

5    Bureau of Prisons at Lompoc.  And that's the nature of the --

6    that's what the request is.

7            **THE COURT:**  You advised everybody the deposition is

8    going forward; right?

9            **MR. SAVERI:**  Yes, but we need your order in order to

10   present it to the prison.

11           **THE COURT:**  All right.  We'll see if -- who's

12   Mr. Okubo's lawyer?

13           **MS. LAU:**  Mr. Okubo's lawyer is Ariel Neuman.  He is

14   aware of the issue.  I also am aware that the Department of

15   Justice may be interested in taking a position on this, so I

16   don't --

17           **THE COURT:**  Wait for a response to the letter and if

18   nobody opposes it, that's fine.

19           **MR. SAVERI:**  And that's fine.  We served notice with

20   everybody to make sure everybody will get an opportunity.

21           **THE COURT:**  Anything else?

22           **MR. SAVERI:**  We have the schedule --

23           **MR. ZAPALA:**  Yes, Your Honor.

24           **MR. SAVERI:**  -- and also, Your Honor, I wanted to

25   advise Your Honor that the direct purchaser plaintiffs have

1    reached additional settlements with Soshin and Hitachi.

2            THE COURT:  Okay.

3        MR. SAVERI:  So I wanted to advise you of that fact.

4            THE COURT:  All right.  So those will be coming, the

5    preliminary approval papers?

6        MR. SAVERI:  We are documenting the scheduling.   I

7    don't want to get over my skis and promise something I can't

8    deliver, but as soon as we do it, we'd like to come in on some

9    version of shortened time to get the preliminary of which we're

10   done.

11           THE COURT:  Yeah, okay.

12       Yes?

13       MR. TURKEN:  Your Honor, with regard to the schedule,

14   the current schedule as proposed in the stipulation is really

15   not feasible for AASI or Benchmark.  We believe we're going to

16   need an additional four months past the March 9th date set

17   forth in the stipulation for discovery to conclude it.

18       It's going to be a lot of work because we have a lot of

19   catch-up to do, plus there are going to be a lot of depositions

20   that we're taking that are not being taken in the class cases

21   because of settlements.  And so we think that we're going to

22   need that additional four months.

23       Now, we have no interest in disrupting or interfering with

24   the class schedule, but Your Honor has observed before that

25   you're not really interested in multiple schedules.  So our

1    concern is --

2          **THE COURT:**  It's not a matter of not being interested.

3    It's just a horribly poor idea for going forward.  I mean, it

4    just invites a tremendous misallocation of money, time, and

5    judicial resources.

6          **MR. TURKEN:**  And, Your Honor --

7          **THE COURT:**  I'm just not going to do that.  It's not a

8    matter of liking or disliking it; it's just bad

9    decision-making.

10         **MR. TURKEN:**  And that is why, Your Honor, we're trying

11   to include Avnet and Benchmark as if they're already before the

12   court on the 1407 motion; but having five months to conclude

13   discovery -- to complete discovery when we're just starting the

14   process is just not feasible for us.

15         **MR. SAVERI:**  Your Honor, I don't -- our view is

16   because his clients are direct purchasers, their allegations

17   are within the four corners of our complaint.  We see -- we

18   have an interest in keeping the schedule advanced in an

19   efficient way and we're not duplicating anything.  So our

20   strong preference is to have a single schedule where we're

21   conducting all the discovery we need to do.

22         Candidly, we think these cases because they're so close

23   would be subject to a consolidation motion under Rule 42(a),

24   and we intend to proceed on that basis.

25         I think if they have individual discovery, that's

1  something -- discovery from the defendants, probably something

2  we don't have an interest in, they should go ahead and pursue

3  it.  We don't have any objection to that.

4      **MR. TURKEN:**  The difficulty, Your Honor, is, again,

5  just as an example, the number of parties that the plaintiffs,

6  class plaintiffs, have settled with -- I think right now

7  there's six different defendants -- very little discovery has

8  been taken from them; and there are, as counsel has just said,

9  numerous depositions being scheduled now just to fit within the

10  current requested additional schedule.

11      So we're going to have to do that, we're going to have to

12  catch up, and then we're going to have to take the additional

13  discovery.

14      I think asking for the additional four months in our

15  circumstances is not unreasonable, and it's going to be

16  virtually impossible, particularly because we are going to have

17  to do additional translations as well, to be able to complete

18  it in the current schedule.

19      **MR. SAVERI:**  Your Honor, Mr. Turken is incorrect to

20  the extent he's suggesting that we do not -- that additional

21  discovery has to be pursued with respect to the settling

22  defendants.

23      With respect to a number of them that we've settled with,

24  we've already completed the discovery.  With respect to some of

25  the ones we settled with early, there will be depositions from

 1    them.

 2        So we don't -- we think there should be one schedule, and

 3    if it has to be delayed somewhat so that we can proceed apace,

 4    that's okay with me, Your Honor; but I don't -- I think part of

 5    what we're trying to do is advance this case on a single

 6    schedule officially.  And, frankly, my opinion is proceeding on

 7    two schedules would be inconsistent with that.

 8        **MR. TOMPKINS:**  Your Honor, Flextronics is not going to

 9    participate in a consolidation motion.  Just that's not our

10    view.  I just want to make sure the pronouns were clear.

11        **THE COURT:**  No, I understand.

12        **MR. TOMPKINS:**  In terms of the schedule, we're

13    comfortable with extending the current schedule out to

14    accommodate the new litigants --

15        **THE COURT:**  Okay.

16        **MR. TOMPKINS:**  -- as appropriate.

17        **THE COURT:**  Yes?

18        **MR. ENSON:**  Your Honor, may I be heard on this?

19        **THE COURT:**  Yes.

20        **MR. ENSON:**  Your Honor, the defendants' view is that

21    there should be one schedule.  That is what we attempted to do

22    with this proposed and stipulated schedule that we submitted to

23    you last week, I believe it was.  We do not think there's a

24    need for eight more months of discovery.  That is just far too

25    long.

1    **THE COURT:**  It sounds exhausting.

2    **MR. ENSON:**  I'm sorry?

3    **THE COURT:**  It sounds exhausting.

4    **MR. ENSON:**  It sounds incredibly exhausting,

5    Your Honor.  It's just far too long.  There's plenty of time

6    for the additional opt-out plaintiffs to catch up.

7    There's been -- the number of depositions --

8    **THE COURT:**  Just tell me what that means.  Why is

9    there plenty of time for the new opt-outs to catch up?

10   **MR. ENSON:**  Many depositions have already been taken.

11   Much discovery has already been done.  The document

12   productions, the written discovery, and a fair amount of the

13   depositions are complete.  There's not that much more to do.

14   **THE COURT:**  But nobody asked about Mr. -- is it

15   Mr. Tucken?

16   **MR. TURKEN:**  Turken.

17   **THE COURT:**  -- Mr. Turken's client.  I mean, nobody

18   ever said anything about Mr. Turken's client at any of these

19   depos.

20   **MR. ENSON:**  That's true, Your Honor, but they are a

21   direct purchaser and much of what was done been by the direct

22   purchaser plaintiffs in these depositions covered their claims.

23   **THE COURT:**  Mr. Saveri could globally settle

24   everything tomorrow and Mr. Turken has a case to go forward on.

25   What's he going to talk about if not a single witness has ever

 1  mentioned his company?

 2       **MR. ENSON:**  He can propound discovery within the

 3  allotted time.  He can take discovery within the allotted time.

 4  There's plenty of time for that, Your Honor.

 5       **MR. TURKEN:**  Your Honor, at the last hearing you

 6  observed that the time just to catch up on the documents and to

 7  redo the translations, it could take six months in and of

 8  itself.  I think our asking for an extra four months to bring

 9  the total to nine months under the circumstances is not

10  unreasonable just to take the time to review the depositions

11  that have already been taken, to review the written discovery,

12  to review the 7 terabytes of documents that may apply to

13  clients that we want -- to defendants we want to focus on.

14       I understand the position of the defendants, I understand

15  the position of the plaintiffs, which is why we said earlier we

16  don't want to disrupt anything.

17       So we're willing to play either way.  We're either willing

18  to, if the Court is of the mind, to delay the discovery just

19  for our group of plaintiffs; or if the Court wants --

20       **THE COURT:**  No, no.  I'm not of that mind.  Let me

21  just ask you this:  What are you planning to do with experts?

22       **MR. TURKEN:**  Your Honor, we have our own experts, and

23  we haven't even had a chance to give them the data yet.  We're

24  in that process as well.

25       **THE COURT:**  You have your own experts?

1              **MR. TURKEN:**  Yes, Your Honor.  That was -- that's

2    been -- and we are -- have had extensive discussions with them

3    also; but, again, we're just compiling the data for them.

4              **MR. ENSON:**  Your Honor --

5              **MR. SAVERI:**  Let me short-circuit one thing about the

6    data so we're not here in a month having this.  We have all the

7    transactional data for all of the purchasers -- billed to, sold

8    to for all the direct purchasers, including his clients.  If he

9    wants that --

10             **THE COURT:**  His clients are on the --

11             **MR. SAVERI:**  And they're in the database.  When we got

12   the data, it included his clients, it included Flextronics.  If

13   he wants that data, he should talk -- he should make that

14   request to me.

15             **MR. ENSON:**  Your Honor, if I might.  I understand the

16   points that Mr. Turken is making, I understand the points and

17   your concerns, but this is, in some sense, a problem of their

18   own making.  These cases have been pending for I think a year,

19   maybe even longer, and at a number of the status conferences

20   Your Honor asked "What's going on with the other opt-outs?"

21   And everyone looked around not knowing.

22        They've been sitting in the states where they filed not

23   active in this litigation at all, and now this is the first

24   time, you know, a month before discovery is set to close, that

25   they're coming and asking for additional eight months of

1   discovery.  It's unfair to the defendants, Your Honor.  It's

2   also unfair to subject us to additional depositions that would

3   not otherwise be taken or duplicative depositions.

4         **MR. TURKEN:**  Your Honor, we have no problem avoiding

5   duplicative depositions.  Your Honor, over a year ago we asked

6   to have our cases transferred to this court for pretrial

7   purposes under 1407.  Everybody objected.

8       After the JPML panel denied our motion, the JPML panel

9   suggested informal cooperation on discovery.  We sent letters

10  saying, "Okay.  The JPML has suggested informal cooperation.

11  Let's cooperate."  Everybody rejected us again.

12        **MR. ENSON:**  That's not correct, Your Honor.  The

13  defendants agreed that they could get access to the documents

14  from Mr. Saveri provided that they signed the protective

15  orders.  That was a year ago, Your Honor.

16        **MR. TURKEN:**  We did.

17        **MR. ENSON:**  And you didn't get the documents.  That's

18  not the defendants' fault.

19        **THE COURT:**  All right.  I can't do this today.

20       Do you-all want to come back next week?  How about next

21  Thursday, a week from Thursday?

22       How does a week from Thursday look?  Am I here?  Oh, I

23  won't be here.

24        **THE CLERK:**  No.

25        **THE COURT:**  Yes.  I won't be here Wednesday, Thursday,

```
 1   Friday.  Trial will be through Wednesday.
 2        And then what's the following Thursday look like, Lisa?
 3             THE CLERK:  Actually, Capacitors case is on calendar.
 4             THE COURT:  What's happening on the 25th?
 5             THE CLERK:  The 26th.
 6             THE COURT:  The 26th.
 7             THE CLERK:  Motion to dismiss.
 8             MR. ZAPALA:  Oh.
 9             THE COURT:  Oh, yes.  Shizuki's motion?
10             MR. SAVERI:  That's them again.  There's a motion to
11   dismiss by Shizuki, I think.
12             THE COURT:  All right.
13             MR. TURKEN:  Shizuki or Soshin?
14             MR. SAVERI:  Shizuki.
15             MR. ZAPALA:  Shizuki.
16             THE COURT:  Okay.  You-all will file by the 18th.
17   You're going to have to sit down and solve this, so have a
18   defense representative if you want, or however many defendants
19   you want, but one person who's going to bind all the defendants
20   on scheduling.  All right?  So you on the defense side work
21   that out.
22        It doesn't have to be you.  It can be anybody you want,
23   but somebody has to bind and be a spokesperson or three
24   spokespeople for the defendants, but they're going to bind all
25   the defendants.
```

1          **MR. ENSON:**  Not a problem.

2          **THE COURT:**  And then you-all are going to sit down --

3    all the DPP's, opt-outs, class, and the IPPs are going to sit

4    down and work out a proposal.  All right?

5          **MR. SAVERI:**  Yes.

6          **MR. TURKEN:**  Thank you, Your Honor.

7          **THE COURT:**  It seems to me a little extra time is

8    probably inevitable -- okay? -- but pushing things out

9    hugely -- I've got to be honest with you, I mean, you opted out

10   and you knew what the risks were going to be.  The cases, as

11   far as I can tell, are 100 percent overlapping thematically,

12   legally, and factually except for the slight wrinkle that you

13   have a named defendant, but all that is incorporated in the

14   larger group.  So if we have to slice and dice, it is not going

15   to be in favor of extending things and starting all over for

16   you.

17         **MR. TURKEN:**  We are not asking for that.  We are just

18   asking for a little more time.

19         **THE COURT:**  That's fine.  A little more time is what

20   you are on a sticking point on.  You're going to work that out

21   and you're going to file a proposed statement with a proposed

22   schedule next week by the 18th, and then I'll have you back on

23   the 25th at --

24         **THE CLERK:**  26th.

25         **THE COURT:**  26th.

1          **THE CLERK:**  10:00 a.m.

2          **THE COURT:**  Okay.  10:00 a.m.

3          **MR. TOMPKINS:**  Your Honor, one issue.  This is

4    Mr. Tompkins for Flextronics.

5          **THE COURT:**  Yes.

6          **MR. TOMPKINS:**  I do want to clarify that the issues

7    overlap in terms of liability but because of Flextronics'

8    different FTAA position, the expert analysis is of a very, very

9    different dataset than Mr. Saveri has analyzed; and that is a

10   significantly different expert project that has to be not

11   commenced but it has to be undertaken substantially after an

12   FTAA ruling has been received.  So I just want to clarify that

13   it's not like we're just sitting on the same pile of data.

14         **THE COURT:**  I understand.

15         **MR. SAVERI:**  And I don't think I suggested that.

16         **THE COURT:**  I get it.  Okay.

17         **MR. SAVERI:**  Your Honor?

18         **THE COURT:**  Yes.

19         **MR. SAVERI:**  We have under the current schedule a

20   discovery cutoff in this case right now of November 6th.

21   That's a -- at this point it feels a little dire, and so we

22   would at least like some relief from that.

23         **THE COURT:**  That's almost certainly going to be

24   extended.  Okay?

25         **MR. SAVERI:**  Okay.

```
 1            THE COURT:  So don't -- that's what you-all are going
 2    to work out and that will be the final amended scheduling
 3    order --
 4            MR. SAVERI:  I appreciate that.  Thank you.
 5            THE COURT:  -- ideally, unless something on my end
 6    requires a change.  Final party-driven amended scheduling
 7    order.
 8            MR. SAVERI:  I appreciate that.  Thank you very much,
 9    Your Honor.
10            MR. TURKEN:  Thank you, Your Honor.
11            MR. ZAPALA:  Thank you, Your Honor.
12            THE COURT:  All right.  Thank you.
13            MR. ENSON:  Your Honor, one final brief issue.
14            THE COURT:  Yes.
15            MR. ENSON:  Has Your Honor decided on whether or not
16    you'd like to hear testimony from the experts in connection
17    with class certification?
18            THE COURT:  I have not, and I have some internal
19    things I need to take a look at, but not yet.  I will do that
20    when I can.
21            MR. ENSON:  All right.  Thank you, Your Honor.
22            THE COURT:  All right.
23            MR. TURKEN:  Thank you, Your Honor.
24            MR. ZAPALA:  Thank you.
25                 (Proceedings adjourned at 3:44 p.m.)
```

**CERTIFICATE OF REPORTER**

        I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled matter.


DATE:   Friday, October 13, 2017


        _____

        Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                  U.S. Court Reporter