Joseph R. Saveri (State Bar No. 130064)
Nicomedes Sy Herrera (State Bar No. 275332)
Demetrius X. Lambrinos (State Bar No. 246027)
James G. Dallal (State Bar No. 277826)
V Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:     jsaveri@saverilawfirm.com
           nherrera@saverilawfirm.com
           dlambrinos@saverilawfirm.com
           jdallal@saverilawfirm.com
           vprentice@saverilawfirm.com

*Interim Class Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | Master File No. 3:14-cv-03264-JD<br><br>**DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS HITACHI CHEMICAL AND SOSHIN**<br><br>Date:        January 25, 2018<br>Time:        10:00 a.m.<br>Courtroom:  11, 19th Floor |

### NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 10:00 a.m. on January 25, 2018, at the United States District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco, CA 94104, or as soon thereafter as the matter may be heard, Direct Purchaser Plaintiffs ("DPPs") will and hereby do move the Court for an order granting preliminary approval of the DPPs' class action settlements with defendants Hitachi Chemical Co., Ltd., Hitachi AIC, Inc., and Hitachi Chemical Co. America, Ltd. (collectively, "Hitachi Chemical"); and Soshin Electric Co., Ltd., and Soshin Electronics of America Inc. (collectively, "Soshin").

DPPs' motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Joseph R. Saveri and the exhibits attached thereto, the Declaration of Kendall S. Zylstra and the exhibits attached thereto, the Court's files and records in this matter, oral argument of counsel, and such other and further matters as the Court may consider.

Dated: December 21, 2017

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.


By:      */s/ Joseph R. Saveri*
            Joseph R. Saveri


Nicomedes Sy Herrera (State Bar No. 275332)
Demetrius X. Lambrinos (State Bar No. 246027)
James G. Dallal (State Bar No. 277826)
V Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940

*Interim Class Counsel for Direct Purchaser Plaintiffs*

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ..................................................................................................... 1

II. CASE HISTORY ..................................................................................................... 2

    A. Direct Purchaser Plaintiffs' Factual Allegations and Claims ............................. 2

    B. Procedural History and Discovery ..................................................................... 3

    C. Prior Settlement History and Class Certification ............................................. 4

III. SUMMARY OF PROPOSED SETTLEMENTS ....................................................... 5

    A. The Settlement Class ......................................................................................... 5

    B. The Settling Defendants ................................................................................... 6

        1. Hitachi Chemical .................................................................................... 6

        2. Soshin ...................................................................................................... 6

    C. Settlement Consideration ................................................................................... 7

        1. Hitachi Chemical Settlement .................................................................. 7

        2. Soshin Settlement .................................................................................... 7

    D. Attorneys' Fees and Expenses .......................................................................... 8

    E. Release of All Claims against Settling Defendants ........................................... 8

IV. THE PROPOSED SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED ................ 8

    A. Standards for Preliminary Approval of a Proposed Settlement ......................... 8

    B. The Proposed Settlements Are Procedurally Sound and Presumptively Fair .................. 10

    C. The Proposed Settlements Are within the Range of Reasonableness ................. 11

V. THE THRESHOLD REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS ARE MET ................ 12

    A. The Proposed Settlement Class Satisfies Rule 23(a)'s Four Prerequisites ..................... 13

        1. Numerosity .............................................................................................. 13

        2. Commonality ........................................................................................... 13

        3. Typicality ................................................................................................ 14

**TABLE OF CONTENTS (cont.)**

4.  Adequacy .................................................................................... 14

B.  DPPs' Claims against the Settling Defendants Satisfy Rule 23(b)'s Predominance and Superiority Requirements ................................................ 15

1.  Predominance ............................................................................ 15

2.  Superiority ................................................................................. 16

C.  The Court Should Appoint the Joseph Saveri Law Firm, Inc., as Settlement Class Counsel ................................................................................... 17

VI.  THE PROPOSED NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ....................................................................................... 18

A.  Summary of Notice Plan ................................................................... 19

1.  Notice and Claims Administrator ............................................... 19

2.  Settlement Website ................................................................... 20

3.  Direct Notice ............................................................................. 20

a.  Long Form and Summary Notice ...................................... 21

b.  Postcard Notice .................................................................. 21

4.  Publication of Notice ................................................................. 22

B.  The Notice Forms and Dissemination Plan Meet All Requirements .............. 23

VII.  DISTRIBUTION AND USE OF SETTLEMENT FUNDS ................................ 23

A.  Distribution of Funds to Class Members ............................................. 23

B.  Payment of Certain Expenses for the Fund ......................................... 24

VIII.  THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED ..................... 25

IX.  CONCLUSION ................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Amchem Prods. v. Windsor,* 521 U.S. 591 (1997)..............................................................12, 16, 17

*Collins v. Thompson,* 679 F.2d 168 (9th Cir. 1982)........................................................................9

*Cummings v. Connell*, 316 F.3d 886 (9th Cir. 2003) .................................................................... 14

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................................................................... 19

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .................................................. 14

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ...................................... 13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)..............................................11, 15, 17

*Harrington v. City of Albuquerque*, 222 F.R.D. 505 (D.N.M. 2004) .......................................... 18

*In re Air Cargo Shipping Servs. Antitrust Litig.*, 2012 U.S. Dist. LEXIS 108299 (E.D.N.Y. Aug. 2, 2012) ..............................................................................................................................7

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606 (N.D. Cal. 2015) .................... 13

*In re Cathode Ray Tube Antitrust Litig.*, MDL No1917, 2016 U.S. Dist. LEXIS 24951, (N.D. Cal. Jan. 28, 2016) ........................................................................................................ 9, 19

*In re Cathode Ray Tube Antitrust Litig.*, MDL No. 1917, 2014 U.S. Dist. LEXIS 117792, (N.D. Cal. Aug. 20, 2014) ........................................................................................................22

*In re Cathode Ray Tube Antitrust Litig.*, MDL No. 1917, 2017 U.S. Dist. LEXIS 89075, (N.D. Cal. June 8, 2017) ..........................................................................................................24

*In re Citric Acid Antitrust Litig.*, 1996 U.S. Dist. LEXIS 16409 (N.D. Cal. Oct. 1, 1996) ....... 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006)............................................................................................ 14, 24

*In Re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH (N.D. Cal. Nov. 1, 2006) .......................................................................................................... 11

*In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ............... 10

*In re High-Tech Employees Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 U.S. Dist. LEXIS 180530 (N.D. Cal. Oct. 30, 2013).................................................................................9, 10, 11

*In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619 (E.D. Pa. 2004)..................................... 11

*In re Mercury Interactive Secs. Litig.*, 618 F.3d 988 (9th Cir. 2009).........................................25

*In re NVIDIA Corp. Derivative Litig.,* No. C-06-06110, 2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec. 22, 2008)........................................................................................................ 10

**TABLE OF AUTHORITIES (cont.)**

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...................................... 12, 24

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ......................................... 25

*In re Plastic Tableware Antitrust Litig.*, No. Civ. A. 94-3564, 1995 U.S. Dist. LEXIS 17014
(E.D. Pa. Nov. 13, 1995) ........................................................................................................ 11

*In re Static Random Access memory (SRAM) Antitrust Litig.*, 2008 U.S. Dist. LEXIS
107523 (N.D. Cal., Sept. 29, 2008) ................................................................................... 14, 17

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................... 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291 (N.D. Cal. 2010) ........................... 14

*In re Urethane Antitrust Litig.,* 251 F.R.D. 629 (D. Kan. 2008) .................................................... 15

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ..........................................................16, 17

*Linney v. Cellular Alaska P'ship*, Nos. 96-3008-DLJ et al., 1997 U.S. Dist. LEXIS 24300
(N.D. Cal. July 18, 1997) ...................................................................................................... 12

*Mullane v. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ....................................................... 19

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................. 9, 10

*Pecover v. Elec. Arts., Inc.*, No. 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632 (N.D. Cal.
Dec. 21, 2010) ...................................................................................................................... 14

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................. 19

*Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010) ...............................................................13, 19

*See Meijer, Inc. v. Abbott Labs.*, 2008 U.S. Dist. LEXIS 78219 (N.D. Cal. Aug. 27, 2008) ...................... 15

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ............................................................................ 19

*Sullivan v. DB Invs., Inc.,* 667 F.3d 273 (3d Cir. 2011) ............................................................ 12, 16

*Tetsuo Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241 (N.D. Cal. 2012) ............................... 13

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159
(C.D. Cal. 2002) .................................................................................................................... 14

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990) ................................................................. 10

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) .................................................. 17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................................. 13

**Statutes**

15 U.S.C. § 1 ...................................................................................................................................2

**Other Authorities**

4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002) ............................ 10

**TABLE OF AUTHORITIES (cont.)**

4 William B. Rubenstein, Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 13:39 *et seq.* (5th ed. 2014) ............................................................................................... 9

6 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 18.28, at 102 (4th ed. 2002) ................. 16

7AA Charles Alan Wright et al., *Federal Practice & Procedure* § 1781, at 228 (3d ed. 2005) ..................... 16

*Manual For Complex Litigation, Fourth*, § 30.41 (West 2008) ................................................... 10

<u>**Rules**</u>

Fed. R. Civ. P. 23(a) ...................................................................................................... 12, 13

Fed. R. Civ. P. 23(b)(3) ................................................................................................... 13, 16

Fed. R. Civ. P. 23(c)(1) ........................................................................................................ 17

Fed. R. Civ. P. 23(c)(2) ........................................................................................................ 19

Fed. R. Civ. P. 23(e)(1) ...................................................................................................... 8, 18

Fed. R. Civ. P. 23(g) ........................................................................................................... 15

# I.    INTRODUCTION

Direct Purchaser Plaintiffs ("DPPs"), individually and as representatives of a purported Settlement Class (the "Settlement Class"), submit this memorandum in support of their motion for preliminary approval of the proposed settlement agreements (the "Settlement Agreements") between DPPs and defendants Hitachi Chemical Co., Ltd., Hitachi AIC, Inc., and Hitachi Chemical Co. America, Ltd. (collectively, "Hitachi Chemical"); and Soshin Electric Co., Ltd., and Soshin Electronics of America Inc. (collectively, "Soshin") (all Hitachi Chemical and Soshin entities together, the "Settling Defendants").

The settlements create an all-cash fund of $66,900,000 (the "Settlement Fund") for the benefit of the Settlement Class. The settlement amounts are as follows:

|  |  |
|---|---|
| Hitachi Chemical | $63,000,000 |
| Soshin | $3,900,000 |

In addition, each of the Settling Defendants also agreed to cooperate with DPPs in their continued prosecution of their price-fixing claims against the non-settling Defendants.[1]

The parties reached these agreements through arm's-length negotiations between experienced and informed counsel after several years of litigation. The settlements represent an excellent recovery by the Settlement Class and are well within the range of possible recoveries warranting preliminary approval.

---

[1] The Defendants who have not settled with DPPs are Panasonic Corporation; Panasonic Corporation of North America; SANYO Electric Co., Ltd.; SANYO North America Corporation; KEMET Corporation; KEMET Electronics Corporation; Nippon Chemi-Con Corporation; United Chemi-Con, Inc.; Nichicon Corporation; Nichicon (America) Corporation; AVX Corporation; Rubycon Corporation; Rubycon America Inc.; ELNA Co., Ltd.; ELNA America Inc.; Matsuo Electric Co., Ltd.; TOSHIN KOGYO Co., Ltd.; Holy Stone Enterprise Co., Ltd.; Milestone Global Technology, Inc. (D/B/A HolyStone International); Vishay Polytech Co., Ltd.; Taitsu Corporation; Taitsu America, Inc.; Shinyei Kaisha; Shinyei Technology Co., Ltd.; Shinyei Capacitor Co., Ltd.; Shinyei Corporation of America, Inc.; Nissei Electric Co., Ltd.; and Shizuki Electric Co., Ltd. (the "Non- Settling Defendants"). The Court has previously approved settlements of DPPs' claims against Defendants Fujitsu Ltd.; NEC Tokin Corporation and NEC Tokin America, Inc.; Nitsuko Electronics Corporation; and Okaya Electric Industries Co., Ltd. and Okaya Electric America, Inc. (the "Previously Settled Defendants"). The Settling Defendants, the Previously Settled Defendants, and the Non-Settling Defendants are referred to collectively as the "Defendants."

As set forth below, DPPs propose following virtually the same procedures for notifying the Settlement Class, and adopting the same allocation formula for distributing the Settlement Funds, as what the Court preliminarily and finally approved for the first round of settlements DPPs reached with the five Previously Settled Defendants defined in n.1, *supra*. *See* Dkts. 1455 & 1713. The only difference in procedure is that DPPs now propose sending a Postcard Notice described in Section VI(A)(3)(b) below to Settlement Class Members who participated in the first round of settlements. The purpose is to streamline the claims process by relying on audited claims data and thereby facilitate participation in this round of settlements by those who participated in prior settlements.

DPPs therefore request that the Court: (1) grant preliminary approval of the Settlement Agreements; (2) certify the Settlement Class; (3) approve the proposed plan of notice to the Settlement Class; (4) set a schedule for disseminating notice to Settlement Class members, as well as deadlines to comment on or object to the Settlement; and (5) schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlements are fair, reasonable, and adequate, and should be finally approved.

## II.    CASE HISTORY

### A.    Direct Purchaser Plaintiffs' Factual Allegations and Claims

The Defendants in this action are 22 different corporate families that manufacture and sell capacitors in the United States and around the world. DPPs allege that at least as early as January 1, 2002, Defendants entered into a price-fixing conspiracy with the purpose and effect of fixing, raising, and stabilizing the prices of their aluminum, tantalum, and film capacitors sold to United States purchasers and purchasers worldwide. *See* Declaration of Joseph R. Saveri dated December __, 2017 ("Saveri Decl.") at ¶ 3. DPPs claim that Defendants agreed to combine and perform the various acts necessary to achieve the anticompetitive purposes of this scheme, and to conceal their activity from public view and regulatory oversight. DPPs claim that Defendants' actions violate of Section 1 of the Sherman Act, 15 U.S.C. § 1. DPPs seek treble damages against all Defendants, who each are jointly and severally liable for any injury caused by their allegedly illicit cartel. *Id.*

### B.   Procedural History and Discovery

DPPs have substantially advanced this case during the three years since Plaintiff Chip-Tech filed the first capacitors price-fixing complaint in July 2014. Dkt. 1; *see also* Saveri Decl. ¶¶ 4-29. After facing three rounds of Defendants' motions to dismiss, DPPs' claims largely emerged intact. *See* Dkts. 710, 1003, 1546. DPPs' Third Amended Complaint, filed on September 6, 2017, is the operative pleading. *See* Dkt. 1831 ("TAC"); Saveri Decl. ¶ 7.

DPPs have twice faced summary judgment motions from Defendants seeking to narrow DPPs' claims based on the Foreign Antitrust Improvement Act, 15 U.S.C. § 6a ("FTAIA"). *See* Saveri Decl. ¶¶ 12-16. The Court's September 30, 2016 Order effectively excluded sales of capacitors outside the United States to purchasers outside of the United States, but preserved DPPs' claims with respect to capacitors billed or shipped to purchasers in the United States. Dkt. 1302. On March 23, 2017, the Court also denied Soshin's motion for summary judgment based on the FTAIA. Dkt. 1424; Saveri Decl. ¶ 16.

DPPs have vigorously pursued discovery against the Defendants, including the Settling Defendants, since January 2015, when the Court partially lifted the Department of Justice's requested discovery stay. *See* Dkt. 514; Saveri Decl. ¶ 17. DPPs have propounded over 75 Requests for Production to all Defendants; more than 185 additional Requests for Production to individual Defendants or groups of Defendant companies; over 45 interrogatories to all Defendants; and 60 Interrogatories on jurisdictional and other issues to individual Defendants or groups of Defendant companies. DPPs also have deposed over 85 individuals, appearing either in their individual capacity or as corporate representatives. *See* Saveri Decl. ¶ 12.

DPPs have also coordinated voluminous discovery of electronically stored information ("ESI") and other documents. DPPs reached agreement with Defendants for them to search over 100 document custodians' files. *Id.* at ¶ 18. Defendants also agreed to search for documents about former employee custodians whose data had been purged upon or after their separation from the company. *Id.* DPPs further negotiated and eventually reached agreement with Defendants regarding an ESI collection protocol: Defendants agreed to batch and produce the results of searches of their centralized files and

the agreed custodians' personal files using several hundred search terms and phrases—each one optimized and translated by DPPs' Counsel to identify relevant files in both English and Japanese. *Id.*

To date, Defendants have delivered documents to Plaintiffs in over 500 separate productions, each of which DPPs have logged, processed, and reviewed. *Id.* at ¶ 19.

In total, DPPs have received from Defendants nearly 16 million files spanning over 39 million unique Bates-numbered pages and amounting to over eight terabytes of ESI. *Id.* The vast majority of the Defendants' productions are in Japanese, though Defendants also produced significant amounts of material in English, Chinese, Korean, and other languages. *Id.* DPPs' translations and strategic analyses of the productions have yielded a large amount of material that supports DPPs' allegations of price fixing. *See id.* at ¶ 22. To date, DPPs and IPPs have amassed several thousand conspiracy-related and other relevant documents for use in making their cases against Defendants. *See id.*

DPPs also devoted substantial work to discovery negotiations with Defendants regarding their production of transaction-level sales data. *Id.* at ¶ 21. Defendants produced more than 500 gigabytes of sales data comprising over seven million transactions, which collectively represent tens of billions of capacitor units sold and billions of dollars of commerce. *Id.* This compilation of transactional data has been crucial to DPPs' analysis of Defendants' alleged price-fixing practices, DPPs' success regarding Defendants' motions for summary judgment on FTAIA-related grounds, and, as most relevant here, their ability to provide direct notice to the Settlement Class.

### C.     Prior Settlement History and Class Certification

By 2016, DPPs had amassed enough evidence through discovery to prompt settlements with five Defendant families. *See generally* Dkts. 1298-2 through 1298-10. The Court granted preliminary approval of those five settlements ("First-Round Settlements") and approved DPPs' notice plan on January 27, 2017. Dkt. 1455; Saveri Decl. ¶¶ 28-29. After holding a fairness hearing, the Court granted final approval of the First-Round Settlements in April. *See* Dkts. 1607, 1647, 1713; Saveri Decl. ¶ 29. In total, the First-Round Settlements established a common fund of $32,600,000 for the benefit of the First-Round Settlement class. *Id.*

DPPs moved for class certification on June 15, 2017. Dkts. 1693 & 1766; Saveri Decl. ¶ 25. The moving papers included supporting declarations by James McClave, an expert econometrician, and

Douglas Zona, an expert economist. Dkts. 1693-2 through 1693-6. DPPs filed reply briefs and additional supporting materials on August 3, 2017. Dkt. 1776-3. The Court held a hearing on September 7, 2017. Dkt. 1834. The Court has not yet ruled on the motion. Saveri Decl. ¶ 27.

## III.  SUMMARY OF PROPOSED SETTLEMENTS

On April 27, 2017, DPPs and Soshin executed an agreement resolving all of the claims of the DPPs and the Settlement Class against the Soshin defendants. *See* Saveri Decl. ¶ 30; *id.*, Ex. A. As described in further detail below, DPPs agree to release all of their claims against the Soshin defendants in exchange for $3,900,000 in cash, plus other valuable consideration.

On November 30, 2017, DPPs and Hitachi Chemical executed an agreement resolving all of the claims of the DPPs and the Settlement Class against the Hitachi Chemical defendants. *See* Saveri Decl. ¶ 31; *id.*, Ex. B. As described in further detail below, DPPs agree to release all of their claims against the Hitachi Chemical defendants in exchange for cash payments totaling $63,000,000 and other valuable consideration. *Id.*

These Settlement Agreements resolve all claims of the DPPs and the Settlement Class against the Settling Defendants. *See* Saveri Decl., Exs. A and B.

### A.  The Settlement Class

DPPs seek to certify a Settlement Class consisting of:

> All persons in the United States that purchased Capacitors (including through controlled subsidiaries, agents, affiliates or joint-ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates or joint ventures from January 1, 2002 through July 22, 2015. Excluded from the Settlement Class are: (i) Defendants (and their subsidiaries, agents and affiliates); (ii) shareholders holding more than 10% equity interest in a Settling Defendant as of the date that the Settlement Agreement with the Settling Defendant is fully executed; (iii) each member of the Settlement Class that timely requests exclusion by 'opting out'; (iv) governmental entities; and (v) the judges and chambers staff in this case, including their immediate families.

*See* Saveri Decl., Ex. A at 8, ¶ bb; *id.*, Ex. B at 7, ¶ z. This is the virtually same class definition set forth in the operative complaint. *See* TAC ¶ 107, Dkt. 1831.[2] It is also nearly identical to the class definition

---

[2]    The class period in the TAC is from "January 1, 2002 through the present . . . ." The class period for the Settlement Class is through July 22, 2015, which is the identical period used in the First-Round Settlement Class.

used for the First-Round Settlement Class, which this Court provisionally certified in January 2017. *See* Dkt. 1455 at ¶ 3.

### B.    The Settling Defendants

#### 1.    Hitachi Chemical

The Hitachi Chemical Defendants manufactured or sold aluminum, tantalum, and film capacitors at various times during the class period for the Settlement Class. *See* TAC ¶¶ 48-51. Hitachi AIC Inc. is a Japanese subsidiary wholly owned by Hitachi Chemical Co., Ltd. *Id.* at ¶ 49. Hitachi Chemical Co. America, Ltd., is a wholly owned U.S. subsidiary of Hitachi Chemical Co., Ltd. *Id.* at ¶ 51.

On April 27, 2016, the DOJ filed a criminal information against Hitachi Chemical Co., Ltd., in the Northern District of California, alleging the company's violation of Section 1 of the Sherman Act, 15 U.S.C. §1. *See* Saveri Decl., Ex. C: Criminal Information, *United States v. Hitachi Chem. Co., Ltd.*, N.D. Cal. Case No. 3:16-cr-00180-JD. The information states that Hitachi Chemical Co., Ltd., "entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere." *Id.* at ¶ 2.

On June 9, 2016, Hitachi Chemical Co., Ltd., pleaded guilty to DOJ's Sherman Act claims and appeared with the DOJ jointly to request the Court's acceptance of a negotiated plea agreement. *See* Saveri Decl., Ex. D: Minute Entry, June 9, 2016; *id.*, Ex. E: Plea Agreement, April 26, 2016. In connection with its criminal guilty plea, Hitachi Chemical Co. Ltd. represented that its sales of certain electrolytic capacitors to and in the United States from 2002 to 2010—whether directly by the Japanese parent or through a subsidiary, including its U.S. subsidiary—totaled $16.5 million. *See* Saveri Decl., Ex. F: Sentencing Memorandum at 14. The Court accepted Hitachi Chemical Co. Ltd.'s guilty plea and the terms of the plea agreement, and sentenced the company to pay a criminal fine of $3.8 million to be paid in a single lump sum within 15 days of entry of judgment. *See* Saveri Decl., Ex. D.

#### 2.    Soshin

Soshin manufactures film capacitors, and does not manufacture electrolytic capacitors. *See* TAC ¶ 95. While DPPs believe that Soshin's U.S. capacitors sales during the relevant time period were

minimal, Saveri Decl. ¶ 38, Soshin claims that its analysis of its transactional data identified no such sales, *see* Dkt. 1423.

### C.   Settlement Consideration

The Settling Defendants will make payments into an escrow account (the "Settlement Fund"), held and administered by an escrow agent selected by Interim Class Counsel with the consent of Settling Defendants and with the approval of the Court. *See* Saveri Decl., Ex. A at ¶ 19; *id.*, Ex. B, ¶ 20. Interim Class Counsel recommend that Citibank, N.A. ("Citibank") be appointed the Escrow Agent. The Settlement Fund will be distributed in accordance with the Court's orders concerning payment of Class members' claims, notice and claims administration costs, and Court-approved litigation expenses.

Under the Settlement Agreements, the Settling Defendants have the option to rescind their agreements for certain specified reasons. The Settling Defendants may rescind if the level of opt-outs exceeds a certain dollar amount of direct purchases. Saveri Decl. ¶ 36. The applicable amount for each Settling Defendant is set forth in confidential supplemental agreements, which can be made available to the Court for *in camera* inspection.[3]

### 1.   Hitachi Chemical Settlement

Hitachi Chemical has agreed to pay a total amount of $63,000,000 into the Settlement Fund. On December 6, 2018, Hitachi deposited the full settlement amount in an escrow account at Citibank. *See* Saveri Decl. ¶ 40; *id.*, Ex. B at ¶ 20. As additional consideration, Hitachi Chemical has agreed to cooperate with DPPs in the further prosecution of their claims against the Non-Settling Defendants. *Id.*

### 2.   Soshin Settlement

Soshin agreed to pay the $3,900,000 into the Settlement Escrow Account within 14 days of the Court's order granting this Motion for Preliminary Approval. *See id.*, Ex. A at ¶ 19. Soshin also has

---

[3] Courts commonly allow the percentage of opt-outs necessary to trigger rescission to be undisclosed. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775-JG-VVP, 2012 U.S. Dist. LEXIS 108299, at *60-61 &n.3 (E.D.N.Y. Aug. 2, 2012). The percentage amount of purchases represented by Opt-Out Plaintiffs that triggers the right of the parties to rescind the agreement is not relevant to Class Members' decisions as to whether to remain in or exclude themselves from the Settlement Class. Rather, as discussed in Section IV, *infra*, the relevant factors—the substantive terms of the settlement, such as the amount being paid, the cooperation terms, and the release terms, and the soundness of arm's-length negotiations leading to the agreements—favor preliminary approval.

agreed to cooperate with DPPs in the further prosecution of their claims against the Non-Settling

Defendants. *See id.* at ¶ 22. Additionally, Soshin agreed to make available one former Soshin employee

for deposition and testimony at trial, and to provide assistance reasonably necessary to establish the

foundation for and admissibility of documents Soshin has produced in this Action or pursuant to the

Settlement Agreement. *See id.*

> ### D.      Attorneys' Fees and Expenses

The Settlement Agreements provide that Interim Class Counsel may seek attorneys' fees and

reimbursement of costs and expenses incurred in the prosecution of this litigation. *See* Saveri Decl.,

Ex. A at ¶ 2; *id.*, Ex. B at ¶ 2. Interim Class Counsel will seek $16,725,000 (25% of the Settlement Fund)

for legal fees and $6,690,000 to reimburse litigation costs and expenses.

> ### E.      Release of All Claims against Settling Defendants

In exchange for the Settling Defendants' monetary and cooperation consideration, DPPs will

release the Settling Defendants of all claims related to any of the alleged conduct giving rise to this

litigation upon entry of a final judgment approving the proposed Settlements. *See id.*, Ex. A at ¶ 12; *id.*,

Ex. B at ¶ 14.

These proposed Settlements represent only a partial settlement of the claims in this litigation.

DPPs continue to prosecute their claims and the claims of the putative Class against the Non-Settling

Defendants, who remain jointly and severally liable for all damages caused by the members of the

conspiracy. Saveri Decl. ¶ 35.

## IV.     THE PROPOSED SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED

DPPs propose following the same procedures and distributing settlement funds using the same

allocation formula that the Court preliminarily and finally approved for the First-Round Settlements. *See*

Dkts. 1455 & 1713. The consideration for the Settlements here are at least as favorable as the First-

Round Settlements. The Court therefore should preliminary approve this round of settlements as well.

> ### A.      Standards for Preliminary Approval of a Proposed Settlement

A class action may be dismissed or settled only with the approval of the Court. *See* Fed. R. Civ.

P. 23(e)(1). The Rule 23(e) settlement approval procedure can be broken into three principal steps: (1)

certification of a settlement class and preliminary approval of the proposed settlement; (2)

dissemination of notice of the settlement to all affected class members; and (3) a final approval determination following a fairness hearing at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present arguments concerning the fairness, adequacy, and reasonableness of the settlement. *See* 4 William B. Rubenstein, Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 13:39 *et seq.* (5th ed. 2014). The protections "afforded by [Rule 23(e)] are primarily procedural in nature." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). The multi-step procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *Id.* at 625; *see also Collins v. Thompson*, 679 F.2d 168, 172 (9th Cir. 1982).

The Court need not determine that the proposed Settlements are "fair, adequate, and reasonable" until the final approval stage—*i.e.*, after notice is disseminated and a fairness hearing is held.[4] At this preliminary approval stage, the Court need only make "an 'initial evaluation' of the fairness of the proposed settlement . . . on the basis of written submissions and informal presentation from the settling parties." *High-Tech Emps.*, 2013 U.S. Dist. LEXIS 180530, at *6 (citation omitted).

Settlement Agreements "reached after meaningful discovery and after arms-length negotiations that were conducted by capable counsel" are "presumptively fair." *In re Cathode Ray Tube Antitrust Litig.*, MDL No1917, 2016 U.S. Dist. LEXIS 24951, at *228 (N.D. Cal. Jan. 28, 2016) (citing *In re*

---

[4]    A preview of the fairness standards for final approval weighs heavily in favor of preliminary approval here. *See In re High-Tech Employees Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 U.S. Dist. LEXIS 180530, at *6 (N.D. Cal. Oct. 30, 2013). To finally approve a proposed settlement as fair, adequate, and reasonable, courts assess several factors, including: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)) (internal quotation marks omitted).

In general, the complexity of class action litigation favors settlement. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 635. This highly complex antitrust class action is no exception. "Unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002))).

*Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. June 10, 2005) and *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)) ("*CRT*"). Such settlements should be preliminarily approved and allowed to proceed to notice and final approval stages, as objectors bear the burden of rebutting the presumption of fairness. *See id.* (citing *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)); *see also In re NVIDIA Corp. Derivative Litig.,* No. C-06-06110, 2008 U.S. Dist. LEXIS 117351, at *8-9 (N.D. Cal. Dec. 22, 2008) (Settlement agreement must "not [be] the product of fraud or overreaching by, or collusion between, the negotiating parties." (quoting *Officers for Justice*, 688 F.2d at 625)); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079-80 (Agreements must "appear[] to be the product of serious, informed, non-collusive negotiations.").

To grant preliminary approval, the Court must additionally determine that the proposed Settlements substantively "fall within 'the range of reasonableness.'" *High-Tech Emps.*, 2013 U.S. Dist. LEXIS 180530, at *6 (quoting 4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002)); *see* Dkt. 1455, at ¶ 5. The terms must appear free from "obvious deficiencies," such as "unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorney[s]." *In re NVIDIA Corp.,* 2008 U.S. Dist. LEXIS 117351, at *8-9 (citations omitted).

**B.      The Proposed Settlements Are Procedurally Sound and Presumptively Fair**

The proposed Settlements here are the product of arm's-length negotiations between attorneys who are highly experienced in complex antitrust cases and well informed about the facts and legal issues of this case. The Settlement Agreements were negotiated extensively by experienced counsel who have worked on this case for more than three years and understand the risks and potential upsides of the litigation. Saveri Decl. ¶¶ 33-34. DPPs' Counsel have performed a thorough investigation of the alleged cartel activity forming the basis of all claims against the Settling Defendants and have considered the merits of individual defenses. *Id.* at ¶¶ 22, 33-34. The parties are well-versed in the evidentiary record, including Hitachi Chemical and Soshin's data concerning sales of capacitors in the United States during the Relevant Period. *See id.* at ¶¶ 22, 33-34, 37-43. DPPs conducted separate settlement discussions with each of the Settling Defendants, and the proposed Settlements take into account unique facts pertinent to each of the Settling Defendant. *Id.* at ¶ 33-36.

DPPs' substantial advancement of the litigation to date and counsel's familiarity with a large portion of the evidence that will be available at trial indicate that the Settlement Agreements are fair and reasonable. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

**C.   The Proposed Settlements Are within the Range of Reasonableness**

The Settlements afford important relief to Settlement Class members, and the consideration offered by each of the Settling Defendants is well within reasonable range. *See* Dkt. 1455, at ¶ 5. Damages in a price-fixing antitrust conspiracy case generally are based on the amount of the overcharge resulting from anticompetitive activity and are usually measured as a percentage of total sales. The percentage recovered from the Settling Defendants far exceeds the percentage recovered in many other antitrust class action settlements. *See, e.g., In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, slip. op. (N.D. Cal. Nov. 1, 2006) (approving settlements of 10.53% to 13.96% of sales); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29163, at *5 (recovery represented approximately 2% of sales); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (recovery represented 1.62% of sales); *In re Plastic Tableware Antitrust Litig.*, No. Civ. A. 94-3564, 1995 U.S. Dist. LEXIS 17014, at *4 (E.D. Pa. Nov. 14, 1995) (recovery represented 3.5% of sales).

Hitachi Chemical agreed to pay $63,000,000 and to provide certain cooperation. Saveri Decl., Ex. B, at ¶¶ 20 & 22. For purposes of its guilty plea, Hitachi Chemical represented that its U.S. sales from 2002 through 2010 were $16.5 million. Saveri Decl. ¶ 37. The settlement with Hitachi Chemical therefore represents a significant recovery for the Settlement Class.

Soshin agreed to pay $3,900,000 into the Settlement Fund and to provide certain cooperation. Saveri Decl. ¶ 37. Soshin had minimal U.S. sales during the Class Period. *Id.* at ¶ 38. The settlement with Soshin therefore represents a significant recovery for the Settlement Class given Soshin's very limited U.S. sales.

Additionally, in entering into the Settlement Agreements, DPPs give up no amount of their class claims against the Non-Settling Defendants. *See* Saveri Decl. ¶ 35; *id.*, Ex. A at ¶ 18; *id.*, Ex. B at ¶ 19. Rather, litigation is continuing against the Non-Settling Defendants. *See High-Tech Emps.*, 2013 U.S. Dist. LEXIS 180530 at *7 ("[T]he Non-Settling Defendants remain jointly and severally liable for all

damages caused by the conspiracy, including damages from the Settling Defendants' conduct.").
Resolving claims against the Settling Defendants will permit Interim Lead Counsel to focus its resources
on the Non-Settling Defendants, and the Settling Defendants' cooperation consideration will assist
DPPs in those efforts. *See* Saveri Decl. ¶ 35.

Also weighing in favor of preliminary approval is Interim Class Counsel's experience and
success in similar class actions. Interim Class Counsel have worked on large, complex cases for decades,
including antitrust and consumer protection class action cases. *See* Saveri Decl. ¶ 47; *id.*, Ex. G (Firm
Resume). The judgment of experienced counsel regarding a settlement reached by arm's-length
negotiations should be given significant weight and a presumption of reasonableness. *See Linney v.
Cellular Alaska P'ship*, Nos. 96-3008-DLJ et al., 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18,
1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D.
Cal. 2007).

## V.   THE THRESHOLD REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS ARE MET

Where, as here, no class has yet been certified, the benefits of a proposed settlement can be
realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591,
620 (1997); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc) (affirming certification
of two nationwide antitrust settlement classes), *cert. denied*, 566 U.S. 923 (April 2, 2012). As such, DPPs
seek certification of a Settlement Class for purposes of effectuating the Settlement Agreements. Such a
certification would be without prejudice to the Non-Setting Defendants.

Class certification under Rule 23(a) requires four showings: "(1) the class is so numerous that
joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3)
the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.
23(a). In addition to the Rule 23(a) prerequisites, "parties seeking class certification must show that the
action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614. Rule 23(b)(3), relevant here, requires
that (1) "questions of law or fact common to class members predominate over any questions affecting
only individual members" and (2) "a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

For the same reasons the Court preliminarily approved the First-Round Settlements, the Court should approve the proposed Settlements here. *See* Dkt. 1455, at ¶ 4.

### A.   The Proposed Settlement Class Satisfies Rule 23(a)'s Four Prerequisites

#### 1.   Numerosity

The hundreds, if not thousands, of geographically dispersed DPPs in the Settlement Class satisfy Rule 23(a)'s numerosity requirement. *See* TAC ¶ 110.[5] "The numerosity requirement of Rule 23(a)(1) is satisfied when 'joinder of all members is impracticable.'" *Tetsuo Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 253 (N.D. Cal. 2012) (quoting Fed. R. Civ. P. 23(a)(1)). The impracticable joinder standard for "is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least forty members." *Id.* at 253-54 (citing *Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010)). Class members here are so numerous that joinder of all members is impracticable. *Cf. Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (holding the district court did not abuse its discretion in concluding that 262 potential class members satisfied numerosity requirement).

#### 2.   Commonality

Class members' claims also satisfy the commonality requirement, which requires that they depend upon a common contention that "is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). There are numerous factual and legal issues common to the Class here, including whether the Defendants coordinated to fix or stabilize the price of capacitors in violation of Section 1 of the Sherman Act and, if so, whether capacitors were sold to U.S. customers at inflated prices due to that collusive conduct. *See* TAC at ¶ 112. Courts routinely certify antitrust class actions brought on behalf of direct purchasers on the basis of these same types of common issues. *See CRT*, 308 F.R.D. 606; *In re TFT-LCD (Flat Panel) Antitrust*

---

[5] Applying the Court's ruling on Defendants' FTAIA motions for summary judgment to the direct purchasers that DPPs have identified through Defendants' records, it appears there were approximately 1,900 Class members who directly purchased capacitors between January 2002 and December 2013. Saveri Decl. ¶ 23.

*Litig.*, 267 F.R.D. 291 (N.D. Cal. 2010); *In re Static Random Access memory (SRAM) Antitrust Litig.*, 2008 U.S. Dist. LEXIS 107523, at *49 (N.D. Cal., Sept. 29, 2008); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006).

### 3.   Typicality

The named DPPs' claims are typical of the proposed Settlement Class. "The typicality requirement is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002) (citation omitted). The claims must be of the same nature, but the specific facts giving rise to the claims need not be. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). The named DPPs, like all DPPs in the proposed Class, each purchased capacitors from one or more Defendant in the United States. TAC ¶¶ 27-30, 114. The absent Class members and the named DPPs all share purported injuries of the same nature and arising from the same general activity: the purchase of capacitors at inflated prices due to Defendants' alleged antitrust violations. *See Pecover v. Elec. Arts., Inc.*, No. 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632, at *32 (N.D. Cal. Dec. 21, 2010) ("[T]ypicality usually will be established by plaintiffs and all class members alleging the same antitrust violations by defendants." (citation omitted)); *In re Citric Acid Antitrust Litig.*, MDL No. 95-1092, 1996 U.S. Dist. LEXIS 16409, at *9 (N.D. Cal. Oct. 1, 1996) ("Because plaintiffs and all class members share these claims and this theory [of antitrust liability], the representatives' claims are typical of all.").

### 4.   Adequacy

Similarly, the named DPPs and Interim Class Counsel have shown that they will adequately protect the interests of the class. The adequacy standard is met if "(1) the class representative and counsel do not have any conflicts of interest with other class members; and (2) the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class." *Hopson v. Hanesbrands Inc.*, No. 08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *10 (N.D. Cal. Apr. 3, 2009). Hypothetical conflicts are insufficient to defeat class certification. *See Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003).

Neither the named DPPs nor Interim Class Counsel have any conflicts of interests with absent Class members. Instead, the named DPPs and the absent Class members all share an overwhelming interest in establishing liability and recovering from the Defendants, including the Settling Defendants. This shared interest in seeking damages for overcharges satisfies the adequacy requirement. *See Meijer, Inc. v. Abbott Labs.*, 2008 U.S. Dist. LEXIS 78219, at **19-20 (N.D. Cal. Aug. 27, 2008).

Moreover, the procedural history in this case demonstrates that the named DPPs have dutifully and vigorously performed their obligations as class representatives to date. Consistent with Fed. R. Civ. P. 23(g), the named DPPs have retained highly skilled counsel with extensive experience in prosecuting antitrust class actions. *See* Dkts. 102-2 & 1458; Saveri Decl. ¶¶ 46-50; *id.*, Ex. G. Counsel undertook an extensive pre-filing investigation, defended the complaint against motions to dismiss, and litigated complex issues under the FTAIA. *See* Saveri Decl. ¶¶ 4-16; Dkt. 319. Counsel have also pursued extensive and efficient discovery, and negotiated and obtained significant settlements for the benefit of the Class. *See* Saveri Decl. ¶¶ 17-22, 28-36. Furthermore, consistent with Counsel's duties to represent their clients and obtain a just and speedy resolution of the claims, the case has been organized to minimize or eliminate duplication of effort. *Id.* at ¶ 5. To that end, DPPs' Counsel have coordinated with other Plaintiffs' counsel, including for the Indirect Purchaser Plaintiffs and for known opt-out Direct Purchaser Plaintiffs, throughout the litigation. *Id.* at ¶ 46. These activities demonstrate Counsel's vigorous preparation for trial and, thus, the reasonableness of the proposed Settlements. *See Hanlon*, 150 F.3d at 1021-22.

Accordingly, DPPs have met the requirements of Rule 23(a).

**B.    DPPs' Claims against the Settling Defendants Satisfy Rule 23(b)'s Predominance and Superiority Requirements**

**1.    Predominance**

Common questions of law and fact predominate here. "Courts have frequently found that whether a price-fixing conspiracy exists is a common question that predominates over other issues because proof of an alleged conspiracy will focus on defendants' conduct and not on the conduct of individual class members." *TFT-LCD Antitrust Litig.*, 267 F.R.D. at 310 (gathering cases); *see also In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 635 (D. Kan. 2008) ("'Predominance is a test readily met in . .

. antitrust [cases]' . . . because proof of the *conspiracy* is a common question that is thought to dominate over the other issues of the case." (emphasis in original) (quoting *Amchem*, 521 U.S. at 625 and citing 7AA Charles Alan Wright et al., *Federal Practice & Procedure* § 1781, at 228 (3d ed. 2005)); 6 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 18.28, at 102 (4th ed. 2002) ("As a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions.").

DPPs allege a price-fixing conspiracy. Saveri Decl. ¶ 3. The common question concerning whether a price-fixing conspiracy exists is enough to satisfy the predominance requirement here. In the settlement context, the "district court need not envision the form that a trial would take, nor consider the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove the disputed element at trial." *Sullivan*, 667 F.3d at 305-06. In any event, DPPs' allegations of anticompetitive conduct, such as Defendants' participation in meetings discussing pricing and production capacity of capacitors, *see* TAC ¶¶ 169-235, are amply supported by common evidence produced to date. *See* Saveri Decl. ¶¶ 21-22.

### 2. Superiority

Prosecuting DPPs' claims as a class action also "is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). In making the superiority determination, courts may consider several factors, including: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*. In particular, the Ninth Circuit has underscored the importance of considering the risks and relatively high costs of litigating claims individually compared to the relatively small sizes of individual recoveries. *See, e.g.*, *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017). These are considerations "at the heart of why the Federal Rules of Civil Procedure allow class actions in cases where Rule 23's requirements are satisfied." *Id*. Thus, when common issues will reduce litigation costs and promote greater efficiency, courts generally conclude that class actions are the superior method for managing litigation. *See id*. at 1123-24. Class actions are always superior when no realistic alternative to class resolution exists, *see Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227,

1234-35 (9th Cir. 1996), and when the costs or risks of individual litigation "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs" in most cases. *Hanlon*, 150 F.3d at 1023; *see also Just Film*, 847 F.3d at 1123-24.

The complexity of DPPs' claims favor class adjudication. In antitrust cases, individual damages "are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress." *TFT-LCD Antitrust Litig.,* 267 F.R.D. at 314 (quoting *SRAM*, 2008 U.S. Dist. LEXIS 107523, at *49) (internal quotation marks omitted). The general rule bears out here, where DPPs' claims involve over a dozen Defendants engaged in a conspiracy spanning many years. Given the complexity of the claims here, individual litigation would involve significant risks, high costs, and a need for extensive expert testimony. The damages alleged by individual members of the class are small when compared to the risks and costs of litigation, or to the aggregate claims of the proposed Class. These factors "make it unlikely that plaintiffs would individually pursue their claims," as there is little incentive for most individual plaintiffs to engage in the costly and time-consuming development of the evidence necessary to prosecute their claims in individual actions. *Just Film*, 847 F.3d at 1123.

Proceeding with Settlement Class certification is further supported by the fact that litigation involving similar claims as those of the proposed Class has already largely been concentrated in this action. *See* Fed. Rule Civ. Proc. 23(b)(3)(B)-(C). Finally, the "court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."*Amchem*, 521 U.S. at 620.

In sum, the interests of class members in individually controlling the prosecution of separate claims are greatly outweighed by the efficiency and other benefits afforded by the Class Settlements.

DPPs therefore have satisfied the requirements of Rule 23(b), and the Court should preliminarily certify the Settlement Class for purposes of preliminary approval.

### C.   The Court Should Appoint the Joseph Saveri Law Firm, Inc., as Settlement Class Counsel

When a court orders class certification, it must also appoint class counsel under Rule 23(g). *See* Fed. R. Civ. P. 23(c)(1)(B). "In appointing class counsel, the court (i) must consider: [1] the work

counsel has done in identifying or investigating potential claims in the action; [2] counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; [3] counsel's knowledge of the applicable law; and [4] the resources counsel will commit to representing the class." *Id.* 23(g)(1)(A).

The Joseph Saveri Law Firm, Inc. ("JSLF") seeks to be appointed as Class Counsel for the Settlement Class. JSLF has led the prosecution of this litigation on behalf of the DPPs as Interim Class Counsel and has also led the negotiation of the Settlement Agreements. Saveri Decl. ¶¶ 5, 45-46. The work completed to date supports the conclusion that JSLF should be appointed as Class Counsel. *See, e.g.*, *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004). The remaining criteria— JSLF's experience handling this type of action, JSLF's knowledge of the applicable law, and JSLF's commitment of resources to representing the Settlement Class—all strongly favor appointment. The Court is well aware of the work performed by JSLF to date, the efficiency with which the case has been prosecuted, and the significant progress JSLF has driven in the litigation. *See* Subpart A.4, *supra*; Saveri Decl. ¶¶ 46-49. The firm continues to be willing and able to vigorously prosecute this action and to devote all necessary resources to obtain the best possible result. Saveri Decl. ¶ 49. The Court should appoint JSLF as Class Counsel for the Settlement Class for the same reasons the Court appointed JSLF for the First-Round Settlements. *See* Dkt. 1455, at ¶ 8; Dkt 1713, at ¶ 3.

## VI.   THE PROPOSED NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Should the Court grant preliminary approval, it must also "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). For classes certified under Rule 23(b)(3), notice must be

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:  (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (same) (citing *Mullane v. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)). These requirements ensure that class notice procedures comply with the demands of due process. *Rannis*, 380 F. App'x at 650 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)).

"[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice*, 688 F.2d at 624 (citations omitted). But the "best notice practicable" standard for individual notice does not require that identifiable class members confirm receipt of notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) ("We do not believe that *Shutts* changes the traditional standard for class notice from 'best practicable' to 'actually received' notice."); *see also Rannis*, 380 F. App'x at 650 ("[D]ue process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice."); *CRT*, 2016 U.S. Dist. LEXIS 24951, at *262 (following *Silber*).

To protect absent Class members' due process rights and ensure a high rate of participation in the Settlements for those Class members that do not opt out, DPPs plan to implement a comprehensive notice and claims administration plan. DPPs summarize the plan below and set out further details in the attached Declaration of Kendall S. Zylstra and the concurrently filed proposed order.

### A.   Summary of Notice Plan

#### 1.   Notice and Claims Administrator

DPPs request that the Court appoint Rust Consulting ("Rust") as Claims Administrator. Rust has 30 years of class action settlement administration experience and has administered more than 6,000 class action settlements, judgments, and similar administrative programs. Zylstra Decl. ¶ 2. Having administered two-thousand such programs in the past five years, Rust is well-versed in the most current technologies and tools of efficient notice and claims administration. *See id.* With a permanent staff of approximately 300 people working in offices nationwide and a specialized subsidiary focused on designing and implementing class notice programs, Rust has the capacity necessary to handle class settlements of this size. *Id.* at ¶¶ 2-4. Rust also has ample experience administering notice and claims programs for settlements of this size. *Id* at ¶ 3. Further, Interim Class Counsel have worked with Rust in the past—including on the First-Round Settlements in this action. *Id.* at ¶ 5. Rust is therefore very

familiar with this case, the transactional database and Class member contact information, and the best methods of deploying notice to Settlement Class members. *See id.* at ¶¶ 5-6. Based on these qualifications and those further described in the Zylstra Declaration and the attachments thereto, DPPs request the Court appoint Rust as Claims Administrator and execute the plan of administration attached as Exhibit C to the Zylstra Declaration.

### 2.    Settlement Website

The Claims Administrator will create a Settlement Website that will provide key settlement information such as case status, settlement documents, and FAQs concerning the Settlements and claims administration. Zylstra Decl. ¶ 17. A public-facing dashboard on the site will prominently display certain updates about the administration process, such as the number and value of claims filed. A secure section of the Website will also allow Class members to file online claims or adjustments. *Id.*

### 3.    Direct Notice

DPPs propose to send direct Settlement Notice to all Settlement Class members that have valid addresses (a) in the transactional databases Settling Defendants provided to DPPs, (b) in records of past contact with Counsel, such as during the First-Round Settlements,[6] or (c) which the Claims Administrator is able to ascertain through reasonably diligent efforts using industry accepted means, such as skip tracing and cross referencing the U.S. Postal Service NCOA database. *See* Zylstra Decl. ¶¶ 8-9. Based on these sources, Counsel are confident they will provide adequate notice to the vast majority of Settlement Class members. *See* Saveri Decl. ¶ 52.[7] The Claims Administrator will provide direct notice of the Settlement to these members of the Settlement Class by causing the Settlement Notice to be mailed to Class members either by first-class U.S. mail, postage prepaid, or by electronic mail.

---

[6]     In addition to participation in the First-Round Settlements, many large Class members have been monitoring this litigation and have asked Counsel to keep them informed about case developments. Saveri Decl. ¶ 53.

[7]     It is unlikely there many Class members who are not identified in Defendants' transactional data. DPPs' counsel pursued discovery about the completeness of transactional data with many Defendants in connection with the FTAIA briefing, and Defendants testified that all transactions in the types of commerce the Court has deemed within the Sherman Act's ambit are recorded in transactional data.

In addition to name and address information, DPPs also possess significant data reflecting Class members' respective purchases of capacitors during the relevant period. *See* Saveri Decl. ¶ 52. With this information, individual notices with pre-populated purchase data can be sent directly to hundreds of members. *Id*. DPPs propose to send one of two forms of direct notice to Class members.

### a.    Long Form and Summary Notice

DPPs plan to send the Long Form Notice, *see* Saveri Decl., Ex. H, to Settlement Class Members that did not submit a claim form for partial settlement of claims in the First-Round Settlements in this action. Zylstra Decl. ¶ 10. A Summary Notice, *see* Saveri Decl., Ex. I, will be mailed along with the full notice. Zylstra Decl. ¶ 11. The Summary Notice will allow Class members to quickly ascertain the key components of the Settlements as well as information concerning actions they may or must take. *See id*.

Both the Long Form Notice and the Summary Notice provide, in plain language, a brief explanation of the case; the terms of the proposed Settlement; the maximum amount Interim Class Counsel may seek for reimbursement of litigation costs and expenses; the date, time, and place of the final approval hearing; the opportunity to opt out of the Settlement Class; the procedures for Settlement Class members to follow in submitting comments on and objections to the Settlement and in arranging to appear at the settlement hearing to state any objections; and a link to the Settlement Website. *See* Saveri Decl., Exs. H and I. The Long Form notice additionally contains the individualized claims information described above. *See* Zylstra Decl. ¶ 13.

### b.    Postcard Notice

In lieu of the Long Form Notice and the accompanying Summary Notice, the Claims Administrator will send Postcard Notice, *see* Saveri Decl., Ex. J, by electronic mail or in a sealed envelope *via* First Class mail to Settlement Class members that previously submitted a Claim Form for a partial settlement of claims in the First-Round Settlements. *See* Zylstra Decl. ¶ 10. The Postcard Notice will provide all information included in the proposed Summary Notice, along with individualized information tailored to the recipient, including the recipient's estimated share of the Settlement Fund. *See* Saveri Decl. ¶ 48; *compare id.*, Ex. I, *with id.*, Ex. J. The Postcard Notice will also provide each recipient with information to log into the Settlement Website and view the Long Form Notice, or to receive the detailed transaction list used to calculate the recipient's estimated share of the Settlement

Fund. Zylstra Decl. ¶ 17. The Postcard Notice thus streamlines the process for Settlement Class members that previously participated in the First-Round Settlements. Through their First-Round Settlement participation, such Class members have already developed greater familiarity with the case and have had an opportunity to submit additional purchases made during the relevant time period covered by these Settlements and the First-Round Settlements. A simplified notice is expected to facilitate their participation in these Settlements, while still providing all Class members with full access to the Long Form Notice as well as another opportunity to review or supplement their purchase data.

Both the Long Form and Postcard Notice forms will make clear that Settlement Class members do not need to submit documentation to receive payment, and may rely instead on the pre-populated value of purchases calculated based on information from the transactional database or the First-Round Settlements. Zylstra Decl. ¶ 13. These individualized Notice forms will also emphasize that the Settlement Class member may choose to submit an adjustment claim with documentation supporting greater purchase amounts.[8] *Id.* at ¶ 14. By providing pre-populated claims forms with the option of supplementation, DPPs will substantially lessen the burden on Settlement Class members and thereby facilitate and encourage maximum Settlement Class member participation in the Settlements.

### 4.  Publication of Notice

To reach the greatest number of unidentified Class members, DPPs also plan to provide broader notice through publication in traditional print media and on industry-specific websites. *See* Zylstra Decl. ¶ 8. The Claims Administrator will publish the Summary Notice, in the national edition of the Wall Street Journal at least one month prior to the Final Approval Hearing. Saveri Decl. ¶ 50; *cf. CRT*, MDL No. 1917, 2014 U.S. Dist. LEXIS 117792, *91 (N.D. Cal. Aug. 20, 2014) (publication of notice in the Wall Street Journal is adequate). The Claims Administrator will additionally cause a copy of the Settlement Notice and Settlement Agreements to be posted on at least two Internet websites directed toward the capacitors and passive electronics industry. Zylstra Decl. ¶ 12. The electronic components industry is a niche business. Saveri Decl. ¶ 50. Thus, targeting industry Internet media (*e.g.*, CapacitorIndustry.com), publishing notice in the *Wall Street Journal*, and creating a Settlement Website

---

[8]  Class members can submit documentation of Class purchases to the Claims Administrator via mail or upload them to the secure Settlement Website. *Id.* at ¶ 14.

run by the Claims Administrator will likely be very effective in reaching any Class members not already identified. *See id.* DPPs believe these targeted publications will thereby increase the Class' rate of participation in the settlement.

### B.    The Notice Forms and Dissemination Plan Meet All Requirements

DPPs' proposed notice plan satisfies the fairness standards set forth in Rule 23. Each form of notice—the Long Form, Summary Notice, and Postcard Notice—clearly presents all required categories of information in plain English. *See Officers for Justice*, 688 F.2d at 624. The notice forms are therefore substantively sufficient.

The proposed dissemination plan, furthermore, satisfies the due process concerns Rule 23 seeks to protect. The plan is tailored to reach all or nearly all Class members and thus provides the best practicable notice to Class members of their rights to opt-out, object, or participate in the Settlements.[9] DPPs therefore request that the Court approve the proposed forms of Settlement Notice and the proposed plan for disseminating the Notice to the Settlement Class.

## VII.    DISTRIBUTION AND USE OF SETTLEMENT FUNDS

### A.    Distribution of Funds to Class Members

Payments to Settlement Class Members will be calculated and distributed after the Court has finally approved the Settlement Agreements and after deductions for costs of notice, settlement administration, attorneys' fees and costs. *See* Zylstra Decl. ¶ 18. Class member payments will be calculated on a *pro rata* basis, which is detailed in the proposed Long Form Notice to Settlement Class Members. *See* Saveri Decl., Ex. H at ¶ 13; Zylstra Decl. ¶ 18.

A plan of allocation of class settlement funds is subject to the "fair, reasonable, and adequate" standard that applies to the approval of class settlements. *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). A plan of allocation that compensates class members based on the type

---

[9]    Neither the language of Rule 23 nor the due process considerations underpinning it "require members of any class affirmatively to opt **into** membership." *Kern v. Siemens Corp.*, 393 F.3d 120, 124 (2d Cir. 2004) (emphasis added) (citing *Shutts*, 472 U.S. at 812); *see also Ackal v. Centennial Beauregard Cellular LLC*, 700 F.3d 212, 216-17 (5th Cir. 2012) (following *Kern* and reversing certification of opt-in class); *Andrews Farms v. Calcot, Ltd.*, 258 F.R.D. 640, 656 (E.D. Cal. 2009) (rejecting Defendants' proposal to certify an opt-in class under Rule 23(b)(3) based on *Kern*'s reasoning); *cf. Hanlon*, 150 F.3d at 1025 (holding that plaintiffs must opt-out on own behalf).

and extent of their injuries is generally considered reasonable. *See id.*; *see also CRT*, 2016 U.S. Dist. LEXIS 24951, at *229, 316. Distribution on a pro rata basis, with no class member being favored over others, has consistently been deemed fair, adequate, and reasonable. *See, e.g.*, *CRT*, MDL No. 1917, 2017 U.S. Dist. LEXIS 89075, at *93 (N.D. Cal. June 8, 2017); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, ECF No. 2093, at 2 (Oct. 27, 2010); *In re Omnivision Techs.*, 559 F. Supp. 2d at 1045.

DPPs propose that settlement funds be allocated based on the Class members' relative share of capacitors purchased during the relevant time period. The relevant time period and method of allocation are identical to what was used in the First-Round Settlements. Saveri Decl. ¶ 54. The injuries here are all of the same type; the only differentiation in Class members' claims is based on the amount of capacitor purchases during the relevant period—*i.e.*, the extent of their injuries. Class members can either accept DPPs' accounting of their capacitors purchases based on the transactional data produced by Defendants and any previously accepted transactions submitted in connection with First-Round Settlement claims, or they can seek an adjustment of DPPs' accounting by submitting information to the Claims Administrator to substantiate their purchases. *Id.* at ¶ 52. These steps will help ensure the accuracy and reasonableness of the *pro rata* distribution of settlement funds.

When making distributions of the Settlement Fund to the Settlement Class members that timely submit valid Claim Forms, DPPs will calculate the dollar value of each Settlement Class member's claim in proportion to the total claims submitted. *Id.* at ¶ 54. DPPs will provide information on the distribution, including the allocation formula, on the Settlement Website. *Id.*

**B.      Payment of Certain Expenses for the Fund**

DPPs request authorization to use up to $250,000 from the Settlement Fund to pay the Notice and Claims Administrator provide notice to Settlement Class members, and to process and audit submitted Claim Forms.

As set forth in the Long Form Notice, Interim Class Counsel will move, in conjunction with moving for Final Approval of the Settlements, that counsel be awarded 25% of the Settlement Fund— $16,725,000—for legal fees. This amount is consistent with the Ninth Circuit's "benchmark" award for fees calculated using the "percentage-of-the-fund" approach. *See In re Online DVD-Rental Antitrust*

*Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). It is also the percentage awarded by the Court in the First-Round Settlements. *See* Dkt. 1714. Interim Class Counsel will also move (when submitting Final Approval papers) to be reimbursed for funds counsel have advanced to pay for costs and expenses for an amount equal to 10% of the settlement funds ($6,690,000).

DPPs' fee and expense application, to be submitted prior to the Final Approval Hearing, will provide more detail as to the fees billed and costs advanced. Counsel reserve the right to apply for reimbursement of additional lodestar and costs incurred. Any such application will be made pursuant to notice and other requirements under Ninth Circuit Law. *See In re Mercury Interactive Secs. Litig.*, 618 F.3d 988, 993-95 (9th Cir. 2009).

## VIII.   THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is a final approval and fairness hearing. This hearing allows the Court to hear all evidence, submissions from Settlement Class members, and arguments necessary to determine whether the Settlements should be finally approved as fair, adequate, and reasonable. Should the Court grant preliminary approval, its order should state the time, date and place of the final approval hearing.

DPPs request that the Court grant preliminary approval and set the schedule set forth in **Exhibit A**, which includes the final approval hearing date, settlement objection deadlines, the briefing schedules for final approval, and further motions regarding distribution and use of the Settlement Funds.

## IX.   CONCLUSION

For the above reasons, DPPs respectfully request that the Court grant preliminary approval of the Settlement Agreements, certify the Settlement Class, approve the proposed Settlement Notice forms and dissemination plan, and set a schedule for the notice period and a date for a final approval hearing.

Dated:  December 21, 2017

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.


By:        */s/ Joseph R. Saveri*
                Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Nicomedes Sy Herrera (State Bar No. 275332)
Demetrius X. Lambrinos (State Bar No. 246027)
James G. Dallal (State Bar No. 277826)
V Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940

*Interim Class Counsel for Direct Purchaser Plaintiffs*

<u>Exhibit A</u>

**Proposed Schedule**

| EVENT | SCHEDULE |
|---|---|
| Notice of Class Action Settlement (Saveri Decl., Exs. H & J) to Be Mailed and Posted on Internet | Within 28 days of Preliminary Approval Order |
| Deadline for Settlement Class Members to Request Exclusion | Postmarked by 45 days after Notice of Class Action Settlement is Mailed by Claims Administrator |
| Summary Notice of Class Action Settlement (Saveri Decl., Ex. I) to Be Published | To be completed 35 days prior to the Final Approval Hearing or as soon as practicable based on the publication |
| Motions for Final Approval and Reimbursement of Litigation Costs and Expenses to Be Filed by DPPs' Counsel, together with Affidavit of Compliance with Notice Requirements | To be filed 35 days prior to the Final Approval Hearing |
| Receipt/Filing Deadline for Comments and Objections | 20 days prior to Final Approval Hearing |
| Opposition(s), if any, to Motions for Final Approval and Reimbursement of Expenses | 20 days prior to Final Approval Hearing |
| Replies in Support of Motions for Final Approval, and Reimbursement of Expenses, to Be Filed by DPPs' Counsel, only if Objections to the Motions are Filed | 10 days prior to Final Approval Hearing |
| Service/Filing of Notices of Appearance at Final Approval Hearing | 10 days prior to Final Approval Hearing |
| Final Approval Hearing | _____, 2018 (to be scheduled by the Court) |