Exhibit B

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into by and among Defendants Hitachi Chemical Co., Ltd., Hitachi AIC, Inc., and Hitachi Chemical Co. America, Ltd. (collectively, "Hitachi Chemical"); and Plaintiffs Chip-Tech, Ltd., Dependable Component Supply Corp., eIQ Energy, Inc., and Walker Component Group, Inc. (collectively, "Direct Purchaser Plaintiffs" or "Plaintiffs" or "Class Representatives"), who have filed suit as representatives of a class of similarly situated direct purchasers of aluminum, tantalum and film capacitors ("Capacitors"), as defined below, in the class action *In re Capacitors Antitrust Litigation*, Master Docket No. 14-cv-3264-JD, currently pending before the Honorable James Donato in the United States District Court for the Northern District of California. Plaintiffs enter into this Settlement Agreement both individually and on behalf of the direct purchaser class they seek to represent. This Settlement Agreement is intended by the Settling Parties (as defined below) to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

**WHEREAS**, Direct Purchaser Plaintiffs are prosecuting the Action (as defined below) on their own behalf and on behalf of the Settlement Class against Hitachi Chemical and other Defendants and alleged co-conspirators;

**WHEREAS**, Direct Purchaser Plaintiffs allege, among other things, that Hitachi Chemical participated in an unlawful conspiracy to fix prices and allocate markets for Capacitors in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 *et seq.* ("Sherman Act");

**WHEREAS**, on June 9, 2016, Hitachi Chemical Co., Ltd. pleaded guilty to criminal charges brought by the United States Department of Justice that alleged Hitachi Chemical Co.,

Ltd. conspired with certain of its competitors to fix prices for certain electrolytic Capacitors sold to customers in the United States in violation of Section 1 of the Sherman Act;

**WHEREAS**, Hitachi Chemical has denied and continues to deny Direct Purchaser Plaintiffs' claims and allegations of wrongdoing; has not conceded or admitted any liability in this Action, or that it violated any duty owed to the Direct Purchaser Plaintiffs; has denied and continues to deny all claims of liability against it arising out of any of the conduct, statements, acts or omissions alleged in the Action; and further denies the allegations that Direct Purchaser Plaintiffs or any member of the Settlement Class were harmed by any conduct by Hitachi Chemical alleged in the Action or otherwise;

**WHEREAS**, Direct Purchaser Plaintiffs and Defendants have engaged in extensive discovery regarding the facts pertaining to Direct Purchaser Plaintiffs' claims and Defendants' defenses;

**WHEREAS,** Direct Purchaser Plaintiffs and Hitachi Chemical agree that neither this Settlement Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission or evidence of any liability or wrongdoing by Hitachi Chemical or of the truth of any of the claims or allegations alleged in the Action;

**WHEREAS**, Direct Purchaser Plaintiffs have thoroughly analyzed the facts and the law regarding the Action and have concluded that a settlement with Hitachi Chemical at this time according to the terms set forth below is fair, adequate and reasonable, and in the best interest of Direct Purchaser Plaintiffs and the Settlement Class;

**WHEREAS**, Hitachi Chemical has concluded, despite its belief that it is not liable for the claims asserted against it in the Action and that it has good defenses thereto, that it will enter into this Settlement Agreement to avoid further expense, inconvenience, and the distraction of

burdensome and protracted litigation, and thereby to put to rest this controversy with respect to the Direct Purchaser Plaintiffs and the Settlement Class and avoid the risks inherent in complex litigation;

**WHEREAS**, arm's-length settlement negotiations have taken place between counsel for Direct Purchaser Plaintiffs and Hitachi Chemical, and through mediation conducted by Antonio Piazza; and

**WHEREAS**, this Settlement Agreement embodies all of the terms and conditions of the settlement between Direct Purchaser Plaintiffs and Hitachi Chemical, both individually and on behalf of the Settlement Class; has been reached as a result of the parties' negotiations (subject to the approval of the Court) as provided herein; and is intended to supersede any prior agreements between the Settling Parties.

**NOW, THEREFORE**, **IT IS HEREBY STIPULATED AND AGREED**, by and among the Settling Parties, by and through their undersigned attorneys of record, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, that the Action be finally and fully settled, compromised, and dismissed on the merits and with prejudice as to Hitachi Chemical only, without costs as to Direct Purchaser Plaintiffs, the Settlement Class, or Hitachi Chemical, upon and subject to the approval of the Court, following notice to the Settlement Class, on the following terms and conditions:

**Definitions**

The following terms, as used in this Settlement Agreement, shall have the following meanings:

a.      "Action" means the direct purchaser action captioned *In re Capacitors Antitrust Litigation*, Master Docket No. 14-cv-3264-JD, pending in the United States District Court for the Northern District of California.

b.      "Affiliates" means entities controlling, controlled by or under common control with another entity.

c.      "Authorized Claimant" means any member of the Settlement Class who, in accordance with the terms of this Settlement Agreement, submits a timely claim that is accepted by the Claims Administrator and approved by the Court in accordance with the applicable distribution plan or order of the Court ordering distribution to the Settlement Class.

d.      "Capacitors" means aluminum, tantalum and film capacitors, as they have been defined in the Consolidated Third Amended Class Action Complaint.

e.      "Claims Administrator" means the entity engaged by Direct Purchaser Plaintiffs to administer the settlement, including but not limited to disseminating notice, receiving claims, and disbursing the Settlement Fund.

f.      "Class Action" means the Action and all cases consolidated therein.

g.      "Class Counsel" refers to the Joseph Saveri Law Firm, Inc.

h.      "Settlement Class Period" means the period from and including January 1, 2002 up to and including July 22, 2015.

i.      "Court" or "District Court" means the United States District Court for the Northern District of California.

j.      "Defendants" means AVX Corporation; ELNA Co., Ltd.; ELNA America Inc.; Fujitsu, Ltd.; Hitachi Chemical Co., Ltd.; Hitachi AIC Inc.; Hitachi Chemical Co. America, Ltd.; Holy Stone Enterprise Co., Ltd.; Milestone Global Technology, Inc. (D/B/A HolyStone International); Vishay Polytech Co., Ltd.; KEMET Corporation; KEMET Electronics Corporation; Matsuo Electric Co., Ltd.; NEC TOKIN Corporation; NEC TOKIN America, Inc.; Nichicon Corporation; Nichicon (America) Corporation; Nippon Chemi-Con Corporation;

4

United Chemi-Con, Inc.; Nissei Electric Co., Ltd.; Nitsuko Electronics Corporation; Okaya Electric Industries Co., Ltd.; Okaya Electric America Inc.; Panasonic Corporation; Panasonic Corporation of North America; SANYO Electric Co., Ltd.; SANYO North America Corporation; ROHM Co., Ltd.; ROHM Semiconductor U.S.A., LLC; Rubycon Corporation; Rubycon America Inc.; Shinyei Kaisha; Shinyei Technology Co., Ltd.; Shinyei Capacitor Co., Ltd.; Shinyei Corporation of America, Inc.; Shizuki Electric Co., Ltd.; American Shizuki Corporation; Soshin Electric Co., Ltd.; Soshin Electronics of America Inc.; Taitsu Corporation; Taitsu America, Inc.; and TOSHIN KOGYO Co., Ltd.

     k.     "Document" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

     l.     "Effective Date" means the first date after which all of the following events and conditions have been met or have occurred:

     1.     All Settling Parties have executed this Settlement Agreement;

     2.     The Court has entered an order (following preliminary approval of the Settlement Agreement, notice to the Settlement Class, and a fairness hearing), approving this Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Action against Hitachi Chemical with prejudice as to all Settlement Class Members (the "Final Judgment"); and

     3.     The Final Judgment has become final, with the occurrence of the following: (a) the expiration of the time for appeal or to seek permission to appeal from the Court's approval of the Settlement Agreement and entry of the Final Judgment or (b) if an appeal from an approval and Final Judgment is taken, the affirmance of such Final Judgment in its entirety, without modification, by the court of last resort to which an appeal of such Final Judgment may be taken, provided, however, a modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund or any plan of allocation or distribution of the Settlement Fund shall not be deemed a modification of all or part of the terms of this Settlement Agreement or the Final Judgment. Neither the provisions of Rule 60 of the Federal Rules of Civil

Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

m.      "Escrow Account" means that escrow account to be established with a bank or trust company pursuant to the terms and conditions of the Escrow Agreement.

n.      "Escrow Agent" means the bank or trust company that agrees to establish and maintain the Escrow Account pursuant to the terms of the Escrow Agreement.

o.      "Escrow Agreement" means an escrow agreement in a form mutually satisfactory to Direct Purchaser Plaintiffs and Hitachi Chemical.

p.      "Final Judgment" means a final order approving the Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Action and all claims therein against Hitachi Chemical with prejudice as to all Settlement Class Members.

q.      "Known Opt-Outs" shall mean all Settlement Class Members that have filed individual actions relating to the claims set forth in this Action as of the time the Settlement Agreement is fully executed, including, without limitation, Flextronics International USA, Inc.; the AASI Beneficiaries Trust; Avnet, Inc.; Benchmark Electronics, Inc.; and all of their affiliated entities.

r.      "Person" means an individual or an entity.

s.      "Preliminary Approval Motion" means a motion requesting entry of an order in form and substance mutually satisfactory to Direct Purchaser Plaintiffs and Hitachi Chemical preliminarily approving the settlement and authorizing dissemination of notice to the Settlement Class and scheduling a hearing for final approval of the settlement and for an award of attorneys' fees, reimbursement of costs and service awards to Settlement Class Members.

t.      "Released Claims" means those claims released pursuant to this Settlement Agreement.

6

u.      "Releasees" refers to Hitachi Chemical and their Affiliates; their respective past and present officers, directors, employees, managers, members, partners, agents, attorneys and legal representatives, assigns, servants, and representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing; but not including any current or former Hitachi Chemical officer, director, employee, agent, Affiliate or joint venture that fails to reasonably cooperate with Direct Purchaser Plaintiffs, pursuant to Paragraph 22 of this Settlement Agreement.

v.      "Releasors" refers to Direct Purchaser Plaintiffs and Settlement Class Members, and their respective past and present parents, members, subsidiaries, Affiliates, officers, directors, employees, agents, attorneys, servants, and representatives and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

w.      "Settlement" means the settlement of the Released Claims set forth herein.

x.      "Settlement Agreement" means this Settlement Agreement.

y.      "Settlement Amount" means the sum of Sixty-Three Million Dollars ($63,000,000) payable in United States Dollars.

z.      "Settlement Class" means all persons in the United States that purchased Capacitors (including through controlled subsidiaries, agents, Affiliates or joint ventures) directly from any of the Defendants, their subsidiaries, agents, Affiliates or joint ventures from January 1, 2002 through July 22, 2015. Excluded from the Settlement Class are: (i) Defendants (and their subsidiaries, agents and Affiliates); (ii) shareholders holding more than 10% equity interest in Hitachi Chemical as of the date this Settlement Agreement is fully executed; (iii) each member of the Settlement Class that timely requests exclusion by "opting out"; and (iv) governmental entities.

7

aa.    "Settlement Class Member" means a person that falls within the definition of the Settlement Class and that does not timely and validly elect to be excluded from the Settlement Class in accordance with the procedure to be established by the Court.

bb.    "Settlement Fund" means the Settlement Amount and any interest earned on that amount.

cc.    "Settling Parties" means, collectively, Direct Purchaser Plaintiffs (on behalf of themselves and the Settlement Class) and Hitachi Chemical.

dd.    "U.S. Purchases" shall mean purchases of Capacitors from all Defendants other than a Defendant adjudicated not to have participated in a conspiracy as alleged in the Action and other than a Defendant voluntarily dismissed from the Action on the basis of insufficient evidence that the dismissed Defendant participated in a conspiracy as alleged in the Action, where the Capacitors were shipped to a location within the United States or the related invoices were sent to a location within the United States.

**Approval of this Settlement Agreement and Dismissal of Claims**

1.    ***Best Efforts to Effectuate this Settlement.*** Direct Purchaser Plaintiffs and Hitachi Chemical shall use their best efforts to effectuate this Settlement Agreement, and shall cooperate in the Direct Purchaser Plaintiffs' efforts to promptly seek and obtain the Court's preliminary and final approval of this Settlement Agreement (including providing appropriate affidavits and cooperating to provide the Settlement Class with notice under Federal Rules of Civil Procedure 23 (c) and (e)) and to secure the prompt, complete, and final dismissal with prejudice of the Action as to Hitachi Chemical only.

2.    ***Motion for Preliminary Approval and Notice to Settlement Class Members.*** At a time to be determined by Class Counsel and counsel for Hitachi Chemical, Direct Purchaser

Plaintiffs shall submit this Settlement Agreement to the Court with a Motion for Preliminary Approval, requesting entry of an order in form and substance mutually satisfactory to Direct Purchaser Plaintiffs and Hitachi Chemical preliminarily approving the settlement, certifying a Settlement Class, authorizing dissemination of notice to the Settlement Class, scheduling a hearing for final approval of the settlement, and seeking an advancement for costs of settlement notice and related administrative costs (the "Preliminary Approval Motion"). Additionally, in the notice to the Settlement Class, Plaintiffs may seek an award of attorneys' fees, reimbursement of costs, and service awards to Settlement Class Members.

3.      The Preliminary Approval Motion shall include the proposed form of, method for, and timetable for dissemination of notice to the Settlement Class and shall recite and ask the Court to find that the proposed form of and method for dissemination of the notice to the Settlement Class constitutes valid, due and sufficient notice to the Settlement Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23.

4.      Class Counsel may, to the extent practicable, seek to combine dissemination of notice of this Settlement Agreement with notice of other settlement agreements reached with other Defendants to reduce the expense of notice. The text of any combined notice shall be agreed upon by Plaintiffs, Hitachi Chemical, and any other settling Defendant before submission of the notice to the Court for approval.

5.      ***Claims Administrator.*** Direct Purchaser Plaintiffs shall retain a Claims Administrator, which shall be responsible for the claims administration process, distribution to Settlement Class Members, withholding and paying applicable taxes, and other duties as provided herein. The fees and expenses of the Claims Administrator shall be paid exclusively out

9

of the Settlement Fund. In no event shall Hitachi Chemical be separately responsible for any fees or expenses of the Claims Administrator other than provided by this Settlement Agreement.

6.      ***Requests for Exclusion (Opt-outs)****:* Any Settlement Class Member that wishes to seek exclusion from the Settlement Class by "opting out" must timely submit a written request for Exclusion to the Claims Administrator (a "Request for Exclusion"). To be effective, such Requests for Exclusion must state: the Settlement Class Member's full legal name, address and telephone number; that the Settlement Class Member purchased Capacitors directly from one or more of the Defendants during the Settlement Class Period; and a statement that the Settlement Class Member (1) wants to be excluded from the *In re Capacitors Antitrust Litigation* class action settlement with Hitachi Chemical, and (2) understands that by so doing, the Settlement Class Member will not be able to receive any money or benefits from the settlement with Hitachi Chemical under the Settlement Agreement. All Requests for Exclusion must be signed and dated by the Settlement Class Member or its officer or legal representative, and be (1) mailed to the Claims Administrator *via* First Class United States Mail (or United States Mail for overnight delivery) and postmarked by a date certain to be specified on the Court-approved notice to the Settlement Class (the "Opt-Out Date"), or (2) received by the Claims Administrator by the Opt-Out Date, provided, however, that if a Settlement Class Member mails a Request for Exclusion pursuant to option (1), it will be effective only if received by the Claims Administrator on or before ten (10) calendar days after the Opt-Out Date. The Claims Administrator shall provide to counsel for Hitachi Chemical all Requests for Exclusion and documents submitted therewith, and the Claims Administrator shall prepare a summary of the opt-outs to be filed with the Court. With the Motion for Final Judgement, Class Counsel will file with the Court a complete list of Requests for Exclusion from the Settlement Class, including only the name, city and state of the

10

person or entity requesting exclusion. Persons who opt-out are not entitled to any monetary award from the Settlement Fund.

7.      Within ten (10) days of the deadline set by the Court for Settlement Class Members to submit a Request for Exclusion from participating in Direct Purchaser Plaintiffs' settlement with Hitachi Chemical, or within ten (10) days after receipt by the Claims Administrator of any Request for Exclusion submitted by a Settlement Class Member pursuant to Paragraph 6, *supra*, whichever is later, Class Counsel shall inform counsel for Hitachi Chemical of (a) the amount (in U.S. dollars) of the U.S. Purchases during the Settlement Class Period of each Settlement Class Member requesting exclusion, not including Known Opt-Outs; and (2) the amount (in U.S. dollars) of U.S. Purchases during the Settlement Class Period by all Settlement Class Members. In calculating those amounts and determining the billing and shipping addresses of U.S. Purchases, Class Counsel shall use the data available to Direct Purchaser Plaintiffs in the Action (as produced by Defendants or from any other source).

**Termination**

8.      ***Optional Termination***. Hitachi Chemical shall have the option to rescind and terminate this Settlement Agreement in its entirety and without liability of any kind if based on available data, the aggregate purchases of Capacitors purchased from Defendants by Settlement Class Members that opt out pursuant to Paragraph 6 of this Settlement Agreement exceeds a threshold agreed to by Direct Purchaser Plaintiffs and Hitachi Chemical in the Confidential Termination Agreement that has been executed separately by Direct Purchaser Plaintiffs and Hitachi Chemical. Direct Purchaser Plaintiffs and Hitachi Chemical may submit the Confidential Termination Agreement to the Court for *in camera* review upon the Court's request. Hitachi Chemical shall exercise this option to rescind and terminate this Settlement Agreement by

providing written notice to Class Counsel within ten (10) business days after the deadline for a

Settlement Class Member to submit a Request for Exclusion. Upon such rescission and

termination, Direct Purchaser Plaintiffs and Hitachi Chemical will notify the Court immediately

and withdraw all pending motions filed to effectuate this Settlement. In the event that Hitachi

Chemical exercises its option to rescind and terminate this Settlement Agreement: (a) this

Settlement Agreement shall be null and void as to Hitachi Chemical, have no force or effect, and

be without prejudice to the rights and contentions of Releasees and Releasors in this or any other

litigation; and (b) the Settlement Fund shall be refunded promptly to Hitachi Chemical, minus

any expenses or costs relating to settlement administration, notice to Settlement Class Members,

and the payment of taxes, as set forth in Paragraphs 39(a)(i)-(iii) & 39(b)(ii)-(iii) of this

Settlement Agreement. In such event, the Escrow Agent shall disburse the Settlement Fund to

Hitachi Chemical in accordance with this paragraph within fifteen (15) business days after

receipt of either (i) written notice signed by counsel for Hitachi Chemical and Class Counsel

stating that this Settlement Agreement has been canceled or terminated, or (ii) any order of the

Court so directing. If the Settlement Agreement is rescinded, canceled, or terminated pursuant to

this paragraph, any obligations pursuant to this Settlement Agreement (other than disbursement

of the Settlement Fund to Hitachi Chemical as set forth above) shall cease immediately.

9.     ***Motion for Final Approval and Entry of Final Judgment***. Not less than thirty-

five (35) days prior to the date set by the Court to consider whether this Settlement should be

finally approved, Plaintiffs shall submit, and Hitachi Chemical shall not object to, a Motion for

Final Approval of the Settlement by the Court, seeking the following:

> a.     Certifying the Settlement Class, pursuant to Federal Rule of Civil
> Procedure 23, solely for purposes of settlement;
>
> b.     Fully and finally approving this Settlement Agreement and its terms as
> being a fair, reasonable, and adequate settlement as to the Settlement Class

Members within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

c.      Finding that the notice given to Settlement Class Members constitutes the best notice practicable under the circumstances and complies in all due respects with the due, adequate and sufficient notice requirements of Federal Rule of Civil Procedure 23, and meets the requirements of due process;

d.      Directing that, as to Hitachi Chemical, the Action be dismissed with prejudice and, except as provided for in this Settlement Agreement, without costs;

e.      Discharging and releasing the Releasees from the Released Claims;

f.      Permanently barring and enjoining the institution and prosecution, by Direct Purchaser Plaintiffs and Settlement Class Members, of any other action against the Releasees based on the Released Claims;

g.      Reserving continuing and exclusive jurisdiction over the Settlement and this Settlement Agreement, including all future proceedings concerning the administration, interpretation, consummation, and enforcement of this settlement, to the District Court; and

h.      Finding under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Hitachi Chemical shall be final and entered forthwith.

In conjunction with or promptly after the Court fully and finally approves this Settlement Agreement and its terms, Plaintiffs shall seek entry of Final Judgment as to Hitachi Chemical.

10.      At least seven (7) business days prior to the filing of any motions or other papers in connection with this Settlement Agreement, including without limitation, the Preliminary Approval Motion and the Motion for Final Approval of the Settlement, Class Counsel will send working drafts of these papers to counsel for Hitachi Chemical. The text of any proposed form of order preliminarily or finally approving the Settlement shall be agreed upon by Plaintiffs and Hitachi Chemical before it is submitted to the Court and shall be consistent with the terms of this Settlement Agreement and the Settlement Class definition set forth herein

11.      ***Stay Order.*** Upon the execution of this Settlement Agreement, the Action shall be stayed as against Hitachi Chemical only. Should the Action be tried against any or all of the

13

remaining Defendants, the parties specifically agree that any findings therein shall not be binding on or admissible in evidence against Hitachi Chemical or prejudice Hitachi Chemical in any way in any future proceeding involving Hitachi Chemical.

12.     Upon the date that the Court enters an order preliminarily approving the Settlement Agreement, Direct Purchaser Plaintiffs and members of the Settlement Class shall be barred and enjoined from commencing, instituting or continuing to prosecute any action or any proceeding in any court of law or equity, arbitration tribunal, administrative forum or other forum of any kind based on the Released Claims.

13.     Nothing in this Settlement Agreement shall prohibit the Direct Purchaser Plaintiffs or Class Counsel from continuing to participate in discovery in the Action against other Defendants or third parties.

**Release and Discharge**

14.     ***Released Claims***. In addition to the effect of the Final Judgment entered in accordance with this Settlement Agreement, upon the occurrence of the Effective Date and in consideration of payment of the Settlement Amount and cooperation, the Releasees shall be completely released, acquitted, and forever discharged from any and all manner of claims, demands, rights, actions, suits, and causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties, injuries, and attorneys' fees that Releasors, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have against the Releasees, whether known or unknown, relating in any way to any conduct by Releasees alleged in the Action and any joint and several liability arising from the conduct of any of the Defendants in the Action prior to the Effective Date arising under or relating to any federal or state antitrust laws, unfair competition, unfair practices or trade practice

14

laws, civil conspiracy, or common law or statutory fraud claims, whether such claims are known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, regardless of legal theory and regardless of the type or amount of relief or damages claimed, or claims that have been, could have been, or in the future might have in law or in equity, on account of arising out of, resulting from, or in any way related to any conduct regardless of where it occurred at any time prior to the Effective Date, concerning the purchase, pricing, selling, discounting, marketing, manufacturing and/or distributing of Capacitors in the United States and its territories or for delivery in the United States and its territories. The Released Claims also include, but are not limited to, all claims asserted or which could have been asserted in the Action relating to or arising out of the facts, occurrences, transactions, statements, or other matters alleged in this Action including, but not limited to, claims arising under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including without limitation the Sherman Act, 15 U.S.C. § 1 *et seq*., but excluding (a) any claim for any product defect, breach of warranty, breach of contract, trade claims, claims under the Uniform Commercial Code or similar claims between Settlement Class Members and Hitachi Chemical relating to Capacitors or any claim for personal or bodily injury, (b) claims based on indirect purchases of Capacitors, and (c) claims based on purchases of Capacitors excluded by the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6a.

15.     ***Covenant Not to Sue***. Releasors shall not, after the Effective Date of this Settlement Agreement, assert any claim or commence, institute, maintain or prosecute any suit, action, complaint, or proceeding seeking to recover against Hitachi Chemical or any of the Releasees based on any of the Released Claims, whether on his, her, or its own behalf or as part

of any putative, purported or certified class of purchasers. Releasors and Class Counsel acknowledge that they and Hitachi Chemical each consider it to be a material term of this Settlement Agreement that all Releasors will be bound by the provisions of this paragraph.

16.     Upon the acceptance by the Claims Administrator and approval by the Court of a claim timely submitted by an Authorized Claimant, Hitachi Chemical waives and relinquishes as against each such Authorized Claimant any rights pursuant to arbitration agreements, forum selection clauses, and/or jury waiver clauses with respect to the Released Claims.

17.     ***Waiver of California Civil Code § 1542 and Similar Laws.*** The Releasors acknowledge that for the consideration received hereunder, it is their intention to release, and they are releasing all Released Claims, whether known or unknown. In furtherance of this intention, the Releasors expressly waive and relinquish, to the fullest extent permitted by law, any rights or benefits conferred by the provisions of California Civil Code Section 1542 ("Section 1542") and similar provisions in other states. The Releasors acknowledge that they have been advised by Class Counsel of the contents and effects of California Civil Code Section 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

18.     The provisions of the release set forth above in Paragraph 14 shall apply according to their terms, regardless of provisions of Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction. The Releasors may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the Released Claims, but the Releasors hereby expressly waive and fully, finally, and forever relinquish any and all rights and benefits existing under (i)

Section 1542 or any equivalent, similar, or comparable present or future law or principle of law

of any jurisdiction and (ii) any law or principle of law of any jurisdiction that would limit or

restrict the effect or scope of the provisions of the release set forth herein.

19.     ***Claims Excluded from Release***. Nothing in this Settlement Agreement is intended

to limit, reduce or affect whatever rights Settlement Class Members or any of them may have to

seek damages or other relief in the Action or elsewhere from any person or entity other than

Hitachi Chemical and/or any Releasee, as that term is defined herein, to the fullest extent

allowed by law. This Settlement Agreement does not settle or compromise any claim by

Settlement Class Members asserted in the Action against any other Defendant. Hitachi

Chemical's sales to the Settlement Class shall not be removed from the Action for purposes of

the Settlement Class asserting joint and several liability or any derivative liability against any

other Defendant.

**Settlement Consideration: Payment and Cooperation**

20.     ***Settlement Payment.*** Subject to the provisions hereof, and in full, complete, and

final settlement of the Action as provided herein, Hitachi Chemical shall, on or before December

1, 2017, pay USD $63,000,000 into the Escrow Account.

21.     ***Notice Fee and Costs.*** Upon the Court's order granting the Preliminary Approval

Motion, the Settlement Fund shall be immediately available for reimbursement of costs, fees, and

expenses related to providing notice to the Settlement Class. For purposes of clarification, such

costs, fees, and expenses related to notice to the Settlement Class Members shall be paid

exclusively from the Settlement Fund.

22.     ***Cooperation as Consideration.*** In addition to the Settlement Amount as

consideration for the Settlement Agreement, but subject to Paragraphs 26 and 28 of this

Agreement, Hitachi Chemical will also provide cooperation to Direct Purchaser Plaintiffs as set forth below, except that Hitachi Chemical shall not be obligated to provide cooperation that would violate any court order or a directive of a governmental enforcement authority.

a.      Hitachi Chemical shall, within thirty (30) days after Preliminary Approval by the Court of this Settlement Agreement or at a time mutually agreed upon by the Parties, provide an initial attorney proffer, during which proffer Hitachi Chemical shall describe the facts developed through its worldwide investigation of its conduct and any areas that Direct Purchaser Plaintiffs request relating to the Action.

b.      Hitachi Chemical will make its best efforts to make up to four (4) current or former employees, executives, or independent contractors available for each of: (1) interview by Direct Purchaser Plaintiffs, (2) deposition, and (3) testimony at hearings or trials. To the extent feasible, the employees will be made available at a location in the United States or some other location as agreed to between the current employees, executives, or independent contractors and Direct Purchaser Plaintiffs. Direct Purchaser Plaintiffs will reimburse Hitachi Chemical for reasonable business class airfare and up to two (2) nights of reasonable hotel expenses per witness (not to exceed $300 per night per witness) for each witness who is made available for deposition in the United States. Hitachi Chemical will make its best efforts to make any requested employee, executive, or independent contractor available within 30 (thirty) days of DPPs' request for an interview, deposition, or other request for information or cooperation; or before such time

that such employee, executive, or independent contractor is expected to leave his or her employment or affiliation, whichever is earlier.

      i.     Hitachi Chemical and Direct Purchaser Plaintiffs shall agree upon an "employee list" of no more than 15 current Hitachi Chemical employees, executives, or independent contractors. For each such identified employee, executive, or independent contractor, Hitachi Chemical shall timely inform Direct Purchaser Plaintiffs if they become aware that such person intends to leave, or does leave, his or her employment, to the extent reasonably possible.

      ii.     Hitachi Chemical will make reasonable efforts to require the continuing cooperation of any employee, executive, or independent contractors who possesses any material facts relating to Direct Purchaser Plaintiffs' claims in the Action after termination of such person's employment or affiliation with Hitachi Chemical.

      iii.     Hitachi Chemical acknowledges and agrees that any interviews conducted by Direct Purchaser Plaintiffs pursuant to Hitachi Chemical's cooperation obligations under this paragraph constitutes the work product of Class Counsel. Hitachi Chemical acknowledges and agrees that the presence of any of its attorneys at such interviews, or the presence of counsel for any parties with whom Hitachi Chemical is providing cooperation, does not constitute a waiver of the work product doctrine. Hitachi Chemical further acknowledges and agrees that Class Counsel may take notes or transcribe such interviews at its sole discretion without

waiving the protections of the work product doctrine. Hitachi Chemical

will make reasonable and diligent efforts to protect the confidentiality of

such interviews.

c.      Hitachi Chemical will make its best efforts to provide up to two (2)

declarations consistent with the declarants' belief as to the relevant facts as

requested by Direct Purchaser Plaintiffs regarding additional topics (*e.g.*, liability,

impact, damages, class certification, admissibility/foundation).

d.      Hitachi Chemical will authenticate, through a custodian or other

authorized person, Hitachi Chemical's own produced documents as business

records under Fed. R. Evid. 902(11), (12) that Direct Purchaser Plaintiffs identify

as reasonably necessary for any submission to the Court or for trial. Direct

Purchaser Plaintiffs shall identify specific documents in writing and by bates

number, and Hitachi Chemical will authenticate these documents as business

records under any applicable rule of evidence, including, without limitation, Fed.

R. Evid. 803(6), within a reasonable amount of time that is no less than fourteen

(14) calendar days after receiving Direct Purchaser Plaintiffs' written

identification of documents. This obligation shall continue until the case is fully

resolved by settlement, summary judgment or trial, and all appeals periods have

run or any appeals have been exhausted. If the certification is not sufficient for

trial, Hitachi Chemical will in good faith work with Direct Purchaser Plaintiffs to

ensure that Hitachi Chemical's documents are adequately certified based on the

requirements of the Court for trial.

     e.     Hitachi Chemical shall continue to assist Direct Purchaser Plaintiffs in understanding and using the transactional data Hitachi Chemical has produced.

     f.     In providing cooperation, Hitachi Chemical shall have the right to designate (and continue to preserve confidentiality of previously designated) materials and information as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS' EYES ONLY under the Protective Order in the Action.

23.     All disputes regarding the extent of Hitachi Chemical's cooperation obligations or its performance of those obligations shall be submitted to the Court for resolution.

24.     No attorney who represents any other current or settled Defendant shall represent Hitachi Chemical in connection with any obligations under this Settlement Agreement.  Hitachi Chemical will use reasonable efforts to encourage its current employees to refrain from engaging an attorney who represents a current or settled Defendant in connection with any obligations under this Settlement Agreement, subject to any limitations imposed by applicable laws, including but not limited to ethical or disciplinary rules or regulations.

25.     Unless this Settlement Agreement is rescinded, disapproved, or otherwise fails to take effect, Hitachi Chemical's obligations to cooperate under this Settlement Agreement shall continue until the date that final judgment has been rendered in the Action with respect to all Defendants, and all appellate rights have been exhausted.

26.     To the extent applicable, Direct Purchaser Plaintiffs shall coordinate with Indirect Purchaser Plaintiffs and any other parties with whom Hitachi Chemical is cooperating so as to minimize Hitachi Chemical's burdens and costs in providing cooperation. Additionally, Direct Purchaser Plaintiffs and Hitachi Chemical will take reasonable efforts to accommodate the other's efforts to minimize duplication in the provision of any cooperation.

27.    ***No Other Discovery***. Upon the execution of this Settlement Agreement, neither Hitachi Chemical nor the Direct Purchaser Plaintiffs shall file motions against the other or initiate or participate in any discovery, motion, or proceeding directly adverse to the other in connection with the Action, except as specifically provided for herein. Hitachi Chemical and the Direct Purchaser Plaintiffs shall not be obligated to respond or supplement prior responses to formal discovery that has been previously propounded by the other in the Action.

28.    ***Meet and Confer.*** The Settling Parties recognize that Hitachi Chemical is a Defendant in other cases brought by different plaintiffs concerning allegations of violations of antitrust laws regarding Capacitors (including but not limited to claims brought by the Known Opt-Outs). If Hitachi Chemical has not resolved all of the related cases by the time any cooperation obligation pursuant to Paragraph 22 comes due, Direct Purchaser Plaintiffs and Hitachi Chemical agree to meet and confer regarding the timing and manner of cooperation to be provided by Hitachi Chemical to Direct Purchaser Plaintiffs and/or Class Counsel under the provision at issue.

**Settlement Fund**

29.    Each Settlement Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all claims released by the Releasors. Except as provided by order of the Court, upon finally approving and giving effect to the Settlement Agreement, no Settlement Class Member shall have any interest in the Settlement Fund or any portion thereof.

30.    Before the Effective Date, disbursements for expenses associated with providing notice of the settlement to the Settlement Class, expenses associated with administering the settlement, and any payments and expenses incurred in connection with taxation matters relating

to the settlement and this Settlement Agreement may be made from the Settlement Fund. In the event the Settlement Agreement is disapproved, rescinded, or the Effective Date does not occur, such amounts shall be refunded to Hitachi Chemical.

31.     The Settlement Fund will be invested in instruments secured by the full faith and credit of the United States and any interest earned (or negative interest) thereon shall become part of (or paid from) the Settlement Fund. Such portions of the Settlement Fund as may reasonably be needed to pay current expenses associated with providing notice to the Settlement Class and administering the Settlement Fund may be paid from the Escrow Account.

32.     ***No Liability for Distribution of Settlement Fund.*** Neither the Releasees nor their counsel shall have any responsibility for, interest in, financial obligation for, or liability whatsoever with respect to the investment, distribution, use, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, or administration, except as otherwise provided in this Settlement Agreement. Hitachi Chemical and its counsel shall likewise have no responsibility for, interest in, financial obligation for, or liability whatsoever with respect to the allocation or distribution of the Settlement Fund and shall not be responsible or otherwise liable for any disputes relating to the amount, allocation, or distribution of any fees, costs, or awards. Further, after paying the Settlement Amount, Hitachi Chemical shall not be liable for any additional payments to the Settlement Class Members or Class Counsel pursuant to this Settlement Agreement.

33.     ***Distribution of Net Settlement Fund.*** After the Effective Date, the Settlement Fund shall be distributed in accordance with a distribution plan that Class Counsel shall submit at the appropriate time for approval by the Court.

34.     ***Attorneys' Fees.*** Class Counsel may, in its sole discretion, seek an award of attorneys' fees, reimbursement of expenses, and service awards to Settlement Class Members at the time of filing the Preliminary Approval Motion or at the time Notice is disseminated to the Settlement Class or in a subsequent notice to the Settlement Class.

35.     The procedure for, and the allowance or disallowance by the Court of, any application by Class Counsel for attorneys' fees and expenses are not part of the settlement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement. Any order or proceeding relating to any application for, or approval of, attorneys' fees and expenses, the pendency of any such application, or any appeal or review of an order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the Judgment.

36.     Class Counsel shall have sole authority to determine the allocation of attorneys' fees awarded by the Court. Hitachi Chemical shall have no responsibility for, and no liability whatsoever with respect to, the division of attorneys' fees and expenses among Plaintiffs' counsel, and any negotiation or dispute among Plaintiffs' counsel in that regard shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the Judgment. Hitachi Chemical shall have no responsibility for, and no liability whatsoever with respect to, any payment(s) to Plaintiffs' counsel or to any other counsel representing any Direct Purchaser Plaintiff or the Settlement Class pursuant to this Settlement Agreement and/or to any other person who may assert some claim thereto or any fee and expense award that the Court may make in this Action, other than as set forth in this Settlement Agreement.

37.     Direct Purchaser Plaintiffs and Class Counsel and any other counsel representing any Direct Purchaser Plaintiff or the Settlement Class shall be reimbursed and paid solely out of the Settlement Fund for all costs, fees and expenses including, but not limited to, attorneys' fees; past, current, or future litigation expenses (including, but not limited to, experts' and consultants' fees and expenses); the costs of giving notice of this settlement to the Settlement Class; and any service awards to the Settlement Class Members, subject to application to and approval of the Court.

38.     At the discretion of Class Counsel, disbursement of such fees, costs, and expenses, as ordered by the Court, need not be delayed by reason of any appeal of the Final Judgment; provided, however, if the Court's award of fees, costs, and expenses is vacated, reversed, or reduced on or as a result of an appeal, Class Counsel shall within ten (10) business days after receiving written notice from the Court of such vacatur, reversal, or reduction, make a refund to the Escrow Account in the amount of such vacatur, reversal, or reduction with interest, except for any expenses or costs relating to settlement administration, notice to Settlement Class Members, and the payment of taxes as set forth in Paragraphs 39(a)(i)-(iii) & 39(b)(ii)-(iii) of this Settlement Agreement.

**Disbursement of the Settlement Fund**

39.     The Settlement Fund shall be disbursed as follows, or as otherwise ordered by the Court.

        a.     Prior to entry of Final Judgment:

            i.     Any fees and expenses incurred in administering the Escrow Account and the Settlement Fund shall be paid from the Settlement Fund. The costs of settlement notice and administration of the Settlement Agreement and Settlement Fund shall be paid by the Escrow Agent to the Claims Administrator with notice of such payments provided to counsel for the Settling Parties.

ii.     Disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due, as a result of income earned by the Settlement Fund, shall be made promptly by the Escrow Agent with notice of such disbursements provided to counsel for the Settling Parties.

iii.    The Settlement Fund shall be made available to Class Counsel for purposes of paying the actual cost of settlement notice and related administrative costs;

b.      After entry of Final Judgment:

i.      The attorneys' fees and litigation expenses approved by the Court may be distributed to Class Counsel from the Settlement Fund within five (5) days of an order approving attorneys' fees and expenses. Class Counsel may withdraw from the Settlement Fund and allocate amongst counsel for the Plaintiffs any fees and expenses so awarded to them by the Court; provided, however, that in the event that the order(s) approving the fee and expense award is reversed or modified on appeal, and in the event that counsel for the Plaintiffs (or any of them) has received payment, such counsel shall, within ten (10) business days of the date which the fee and expense award is modified or reversed, refund to the Settlement Fund the fees and expenses previously received by them in full (less costs of notice) or in any amount consistent with such reversal or modification, plus any actual interest earned thereon through the date of such refund;

ii.     Fees or expenses incurred in connection with the administration of the Escrow Account and the Settlement Fund, including the fees and expenses incurred as part of notice and claims administration, shall be paid from the Settlement Fund by the Escrow Agent with notice of such disbursements provided to Class Counsel;

iii.    Disbursements for the payment of any taxes (including any estimated taxes, interest or penalties) due as a result of income earned by the Settlement Fund shall be made promptly by the Escrow Agent with notice of such disbursements provided to counsel for the Settling Parties;

c.      After the Effective Date:

i.      Any service awards awarded by the Court for services rendered to the Settlement Class by Class Representatives as set forth in the proposed notice forms ordered by the Court may be distributed to Settlement Class Members from the Settlement Fund after the Effective Date of the Settlement; and

ii.   The balance of the Settlement Fund after the payment of attorneys' fees, costs, and expenses, taxes, service awards, costs of notice and administration of the Settlement and Settlement Fund, and pursuant to the procedures set forth in a plan of allocation may be distributed to Authorized Claimants in accordance with the applicable procedures as approved by the Court.

40.    ***Balance Remaining in Settlement Fund.*** In the event monies remain as residue in the Settlement Fund following all distribution efforts approved by the Court (whether by reason of tax refunds, uncashed checks or otherwise), Class Counsel shall move the Court for an order disposing of all such funds, including additional possible distributions to approved Settlement Class claimants and/or *cy pres* distribution as approved by the Court.

41.    ***Use of Agreement as Evidence.*** The Settling Parties agree that this Settlement Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall be governed by Federal Rule of Evidence 408 and shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Hitachi Chemical or of the truth of any of the claims or allegations made in the Action, and evidence thereof shall not be admissible or used directly or indirectly in any way in the Action or in any other action or proceeding, except an action to enforce or interpret the terms of the Settlement Agreement. The parties expressly reserve all of their rights if the settlement does not become final in accordance with the terms of this Settlement Agreement.

**Taxes**

42.    Class Counsel shall be solely responsible for directing the Claims Administrator to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund. Further, Class Counsel shall be solely responsible for directing the Escrow Agent to take out of the Settlement Fund, as and when legally required, any

tax payments, including interest and penalties due on income earned by the Settlement Fund. Hitachi Chemical shall have no responsibility to make any filings relating to the Settlement Fund and shall have no responsibility to pay tax on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the settlement is not consummated and the Settlement Fund is returned to Hitachi Chemical. Other than as specifically set forth herein, Hitachi Chemical shall have no responsibility for the payment of taxes or tax expenses.

43.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B2(1)).

44.     The Settling Parties shall treat, and shall cause the Claims Administrator to treat, the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B1. The parties, their counsel, the Claims Administrator, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in such manner. In addition, the Claims Administrator and, as required, the parties shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468Bl(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Claims Administrator timely and properly to prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All

28

provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B1. Interest earned by the Settlement Fund (less any tax imposed upon such interest) shall be for the benefit of the Settlement Class, less reasonable attorneys' fees and expenses approved by the Court (and any interest awarded thereon), any Court-approved awards to Plaintiffs, and payment of any and all administrative expenses associated with the Action or the settlement.

**Miscellaneous**

45.    Direct Purchaser Plaintiffs expressly warrant that, in entering into this Settlement Agreement, they have relied solely upon their own knowledge and investigation, and not upon any promise, representation, warranty, or other statement by Hitachi Chemical not expressly contained in this Settlement Agreement.

46.    The agreed-upon procedures and requirements regarding Settlement Class Members' rights and options, including filing objections in connection with and/or appearing at the final approval hearing, are intended to ensure the efficient administration of justice and the orderly presentation of any Settlement Class Members' objections to the Settlement Agreement, in accordance with such Settlement Class Member's due process rights. The Settling Parties will request that the order granting the Preliminary Approval Motion further provide that objectors that fail to properly or timely file their objections, along with the required information and documentation set forth above, or to serve them as provided above, shall not be heard during the Final Approval Hearing or have their objections considered by the Court.

47. ***Headings***. The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

48. ***No Party Deemed To Be the Drafter.*** None of the parties hereto shall be deemed to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statue, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

49. ***Entire Agreement.*** This Settlement Agreement and the Confidential Termination Agreement constitute the entire completed agreement among Plaintiffs and Hitachi Chemical pertaining to the settlement of the Action against Hitachi Chemical. This Settlement Agreement and the Confidential Termination Agreement may be modified or amended only by a writing executed by Class Counsel and Hitachi Chemical.

50. If any one or more of the provisions of this Settlement Agreement shall for any reason be held to be illegal, invalid, or unenforceable in any respect, such illegality, invalidity, or unenforceability shall not affect any other provision if Hitachi Chemical's counsel and Class Counsel mutually agree to proceed as if such illegal, invalid, or unenforceable provision had never been included in the Settlement Agreement.

51. ***Choice of Law***. All terms of this Settlement Agreement shall be governed and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

52. ***Consent to Jurisdiction.*** The Court retains exclusive jurisdiction over all matters relating to the implementation and enforcement of the Settlement Agreement or about the terms of the Confidential Termination Agreement. Plaintiffs and Hitachi Chemical hereby irrevocably

submit to the exclusive and continuing jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or related to this Settlement Agreement or the applicability or interpretation of this Settlement Agreement, including the cooperation consideration provided by this Settlement Agreement.

53.     ***Execution in Counterparts***. This Settlement Agreement may be executed in counterparts by Class Counsel and Hitachi Chemical, and a facsimile or PDF signature shall be deemed an original signature for purposes of executing this Settlement Agreement and so executed shall constitute one agreement.

54.     ***Notification of State Officials.*** Hitachi Chemical shall notify federal and state officials of this settlement as specified in 28 U.S.C. §§ 1715(a) & (b).

55.     ***Binding Effect.*** This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Direct Purchaser Plaintiffs and Class Counsel shall be binding upon all Settlement Class Members.

56.     ***Authorization to Enter Settlement Agreement.*** Each of the undersigned attorneys represents that he or she is fully authorized to conduct settlement negotiations and to enter into the terms and conditions of, and to execute, this Settlement Agreement on behalf of his or her respective clients, subject to Court approval.

57.     ***Confidentiality of Settlement Negotiations.*** Class Counsel shall keep strictly confidential and not disclose to any third party, including specifically any counsel representing any other current or former party to the Action, any non-public information regarding the Settling Parties' negotiation of this settlement and/or the Settlement Agreement, except that the Settling Parties may file under seal any documents concerning this Settlement or the negotiation

31

of the Settlement Agreement in connection with a motion or proceeding to enforce or contest the terms of this Settlement Agreement. For the sake of clarity, information contained within this Settlement Agreement shall be considered public, and Hitachi Chemical may issue a press release regarding execution of the Settlement Agreement and the amount paid in connection with the Settlement Agreement.

58.   **_Notices._** Unless otherwise specifically provided for herein, any notice or other communication required or permitted to be delivered to any party under this Settlement Agreement shall be in writing and shall be deemed properly delivered, given and received when delivered to the address set forth beneath the name of such party signing below.

**IN WITNESS WHEREOF**, the parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of November 30, 2017.

By: _____          By: _____

Joseph R. Saveri                        Chul Pak

**JOSEPH SAVERI LAW FIRM, INC.**        **WILSON SONSINI GOODRICH**
555 Montgomery Street                   **AND ROSATI**
Suite 1210                              1301 Avenue of the Americas, 40th Floor
San Francisco, CA  94111                New York, NY 10019

jsaveri@saverilawfirm.com               cpak@wsgr.com

**Interim Class Counsel**               **Counsel for**
**for Direct Purchaser Plaintiffs**     **Hitachi Chemical Co., Ltd., Hitachi AIC,**
                                        **Inc. and Hitachi Chemical Co. America, Ltd.**

of the Settlement Agreement in connection with a motion or proceeding to enforce or contest the terms of this Settlement Agreement. For the sake of clarity, information contained within this Settlement Agreement shall be considered public, and Hitachi Chemical may issue a press release regarding execution of the Settlement Agreement and the amount paid in connection with the Settlement Agreement.

58.  **Notices.** Unless otherwise specifically provided for herein, any notice or other communication required or permitted to be delivered to any party under this Settlement Agreement shall be in writing and shall be deemed properly delivered, given and received when delivered to the address set forth beneath the name of such party signing below.

**IN WITNESS WHEREOF**, the parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of November 30, 2017.

By:_____

Joseph R. Saveri

**JOSEPH SAVERI LAW FIRM, INC.**
555 Montgomery Street
Suite 1210
San Francisco, CA 94111

jsaveri@saverilawfirm.com

**Interim Class Counsel
for Direct Purchaser Plaintiffs**

By: _____

Chul Pak

**WILSON SONSINI GOODRICH
AND ROSATI**
1301 Avenue of the Americas, 40th Floor
New York, NY 10019

cpak@wsgr.com

**Counsel for
Hitachi Chemical Co., Ltd., Hitachi AIC,
Inc. and Hitachi Chemical Co. America, Ltd.**

32