

Pillsbury Winthrop Shaw Pittman LLP
Four Embarcadero Center, 22nd Floor | San Francisco, CA 94111-5998 | tel 415.983.1000 | fax 415.983.1200

MAILING ADDRESS: P.O. Box 2824, San Francisco, CA 94126-2824

Roxane A. Polidora
tel: 415.983.1976
roxane.polidora@pillsburylaw.com

January 2, 2018
The Honorable James Donato
United States District Court for the Northern District of California
Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *In Re Capacitors Antitrust Litigation*, Case No. 3:14-cv-03264-JD
Motion for Protective Order

Dear Judge Donato:

Defendants KEMET Corporation and KEMET Electronics Corporation (together "KEMET") move for a protective order prohibiting the deposition of their CEO Per Olof Loof. Before allowing the deposition of a corporate officer at the "apex" of management, courts require a showing that he or she has unique personal knowledge of relevant facts that are not available from less intrusive discovery. The DPPs, despite having received over a million KEMET documents (including thousands of pages of Mr. Loof's own documents), and despite having deposed seven KEMET witnesses including four senior executives, cannot begin to make this showing. Accordingly, this Court should issue an order prohibiting Mr. Loof's deposition. Counsel have met and conferred in person as required by the Standing Order Regarding Discovery.

### I. PROCEDURAL BACKGROUND

DPPs allege in their complaint that KEMET attended cartel meetings. The amnesty applicant, however, has stated in sworn discovery responses that KEMET did not participate in the cartel and was not told about the cartel. Not a single witness who attended cartel meetings has testified that KEMET attended those meetings or participated in the cartel in any other way.

KEMET has produced more than one million separate documents collected from central files and ten custodians, including some 23,000 documents from Mr. Loof's own files.[1] KEMET has also responded to voluminous written discovery.

KEMET has produced seven witnesses for full-day depositions. These include: a Senior Vice President ("VP") as a Rule 30(b)(6) witness on compliance and KEMET's acquisition of TOKIN Corporation ("TOKIN"); KEMET's VP of Sales and Global Distribution, who testified for more than 13 hours, both individually and as a corporate designee, on pricing, sales, marketing, distribution, and production; another Senior VP who testified for more than nine hours on topics ranging from strategic alliances to marketing; and KEMET's Chief Technology Officer. DPPs will also depose a former KEMET product marketing manager in January 2018.

---

[1] In ordering production of Mr. Loof's documents, the Court made clear that KEMET could seek relief if DPPs sought to take Mr. Loof's deposition. Dkt. 758.

The Honorable James Donato
January 2, 2018
Page 2

## II. DPPs' "EVIDENCE" REGARDING MR. LOOF

During the extended meet and confer process, DPPs identified three documents that supposedly justify deposing Mr. Loof.

**KEM1120776.** This is an exchange of emails between Mr. Loof and Shigenori Oyama, the President of TOKIN, on April 3, 2014—the day after it became public that the Department of Justice ("DOJ") was investigating TOKIN for price fixing. Mr. Loof asked "to schedule a call with [Mr. Oyama] to discuss the DOJ investigation." At the time, KEMET owned a 34% equity interest in TOKIN. Mr. Loof, therefore, had every reason to ask what was going on *at TOKIN*. KEMET itself, however, had not been contacted by DOJ and was never part of the "DOJ investigation" to which Mr. Loof referred. Whatever Mr. Loof may have been told by TOKIN after the DOJ's investigation became public would be cumulative of the vast body of evidence relating to TOKIN, (not to mention TOKIN's guilty plea).

**Spada Deposition Exhibit 659.** This is an internal KEMET email string marked at the deposition of Fernando Spada, KEMET's VP of Sales and Global Distribution. It concerns discussions with a customer, Apple, about KEMET's need to increase prices due to an increase in the cost of raw materials. Mr. Loof received only one email in the chain. Mr. Spada (who received the entire chain) testified that Apple asked to speak with Mr. Loof to make sure he understood that KEMET would lose business over time if it went ahead with the price increase. This has nothing to do with the conspiracy alleged in the complaint.

**Lessner Deposition Exhibits 413 and 414:** This is an internal email exchange about a meeting that two KEMET employees had with Sanyo and TOKIN, with minutes attached. Mr. Loof did not attend the meeting. Philip Lessner, who did attend, has been deposed; he testified that the purpose of the meeting was "to understand the position of tantalum-polymer in the market versus aluminum polymer, with the idea of trying to improve or expand the market position of the tantalum-polymer product." Mr. Lessner sent the minutes to ten other KEMET employees, one of whom forwarded them to Mr. Loof (and three others). Mr. Lessner has testified that he did not speak to Mr. Loof about the meeting.

## III. ARGUMENT

"Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding*, *Inc.,* 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007).[2] Courts have also recognized that the burden and disruption involved in an apex deposition are often unnecessary because such executives are generally "'removed from the daily subjects of the litigation,'" and any relevant knowledge they have can often be obtained from less intrusive sources. *Id.* at *3 (quoting *Baine v. Gen. Motors Corp.*, 141 F.R.D. at 334)

Accordingly, a party seeking an apex deposition must demonstrate "unique personal knowledge by the high corporate official, unavailable from less intrusive discovery, including interrogatories and the depositions of lower-level employees." *Id.* at *4; *Abarca v. Merck & Co., Inc.*, 2009 WL 2390583, at *3 (E.D. Cal. Aug. 3, 2009). "'[W]here a high-level decision maker removed from

---

[2] *See also Doble v. Mega Life and Health Ins*. Co., 2010 WL 1998904 (N.D. Cal. May 18, 2010) (granting protective order against deposition of CEO); *Mehmet v. PayPal, Inc*., 2009 WL 921637 (N.D. Cal. Apr. 3, 2009) (granting protective order against depositions of president and other corporate officers); *Thomas v. IBM*, 48 F.3d 478, 483 (10th Cir. 1995) (affirming order precluding deposition of IBM board chairman); *Baine v. General Motors Corp*., 141 F.R.D. 332 (M.D. Ala. 1991) (noting that "legal authority is fairly unequivocal" in precluding depositions of apex executives without a showing of personal knowledge); *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231-232 (9th Cir. 1979) (affirming district court's decision directing government agency head to answer interrogatories in lieu of deposition).

the daily subjects of the litigation has no unique personal knowledge of the facts at issue, a deposition of the official is improper.'" *In re Yosemite Nat'l Park Hantavirus Litig.*, 2017 WL 2861162, at *2 (N.D. Cal. Jul. 5, 2017) (quoting *Groupion, LLC v. Groupon, Inc.*, No. 11-0870 MEJ, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012)).

In the present case, there can be no dispute that Mr. Loof, as KEMET's CEO, is "at the highest level or 'apex' of corporate management." *See Celerity*, 2007 WL 205067, at *3. And DPPs, after reviewing millions of documents and taking seven KEMET depositions, cannot show that Mr. Loof has any first-hand knowledge of relevant facts or that whatever knowledge he might have is not shared with lower-ranking KEMET employees.

As to the cartel, DPPs have not identified any deposition testimony, from any defendant, suggesting that Mr. Loof has knowledge of relevant facts. *See DR Systems, Inc. v. Eastman Kodak Co.*, 2009 WL 2973008 at *5 (S.D. Cal. Sep. 14, 2009) (prohibiting deposition where party seeking it "has not identified any witness or document indicating that [the CEO] has personal involvement in, or direct knowledge of, facts at issue in this case"). Indeed, DPPs' failure of proof goes well beyond Mr. Loof; they have no evidence that *anyone* from KEMET attended cartel meetings or that the agreements reached at those meetings were communicated to KEMET.

As to KEMET's business generally, DPPs cannot show that the information they seek from Mr. Loof is unavailable from other sources. DPPs have already deposed senior KEMET executives in the areas of sales, marketing, compliance, production, and distribution. A plaintiff "may *only* depose [apex executives] after either interrogatories or the depositions of lower-level employees have failed to provide the discovery it seeks." *Celerity*, 2007 WL 205067, at *5 (emphasis added); *see also Reif v. CAN*, 248 F.R.D. 448, 453-54 (E.D. Pa. 2008) (prohibiting apex deposition where multiple depositions indicated no evidence of personal knowledge). Thus, in *Celerity*, the court rejected arguments that Celerity's board chairman should be deposed because he knew about "the valuation of Celerity's intellectual property," "the decision to sue [defendant]," and "sales of Celerity's products." 2007 WL 205067, at *4. The defendant "fail[ed] to show that this personal knowledge, if [the chairman] has it, is 'unique.' This is an essential component of the standard for an apex deposition. . ." *Id.*

In the three cases the DPPs have cited to KEMET, a CEO was actively involved in and had firsthand knowledge of the specific allegations at issue. In *Apple Inc. v. Samsung Electronics Co. Ltd*, 282 F.R.D. 259 (N.D. Cal. 2012), the court compelled the deposition of Samsung's CEO because documents showed that he "was at the head of a strategic shift in Samsung's design mentality at precisely the time that certain accused products were being developed," and that the specific department of which he was the head developed and approved "a strategy that Apple contends mimics its own." *Id.* at 264-265. *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287 (N.D. Cal. Mar. 6, 2014), the plaintiffs sought to depose the CEO of a defendant airline based on the amnesty applicant's proffer that the CEO attended at least one meeting when the companies began colluding on the introduction of a fuel surcharge. *Id.* at *3. Here, by contrast, the amnesty applicant and other cartel participants have sworn that no one from KEMET—much less Mr. Loof—attended the cartel meetings. And in *Hunt v. Continental Casualty Company*, 2015 WL 1518067 (N.D. Cal. Apr. 3, 2015), an employment discrimination case, the court permitted a three-hour deposition of the defendant's CEO where Plaintiff made "direct allegations regarding actions taken by and statements made by [him]." *Id.* at *2. Here, DPPs do not even make such direct allegations regarding Mr. Loof.

Accordingly, KEMET requests that the Court enter a protective order against the deposition of Mr. Loof.

Respectfully submitted,

*/s/ Roxane A. Polidora*

Roxane A. Polidora