Joseph R. Saveri (State Bar No. 130064)
Jiamin Chen (*pro hac vice*)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            jchen@saverilawfirm.com

*Interim Class Counsel for Direct Purchaser Plaintiffs*

*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 3:14-cv-03264-JD |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | **DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT AND POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    February 8, 2018<br>Time:   10:00 a.m.<br>Place:   Courtroom 11, 19th Floor<br>Judge:  The Honorable James Donato |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 8, 2018, at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable James Donato of the United States District Court, Northern District of California, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Direct Purchaser Plaintiffs ("Plaintiffs") will and hereby do move the Court pursuant to Federal Rules of Civil Procedure 15(a) and 20(a) for an order granting leave to amend the Consolidated Third Amended Class Action Complaint and Complaint of Flextronics International USA, Inc. ("Complaint") and to file the Consolidated Fourth Amended Class Action Complaint and Complaint of Flextronics International USA, Inc. ("CFAC"). This motion is based on the notice of motion and motion, the accompanying memorandum of points and authorities, the attached [Proposed] CFAC and all of the pleadings and papers on file in this action.

Dated: January 4, 2018

Respectfully Submitted,

JOSEPH SAVERI LAW FIRM, INC.

By:  /s/ Joseph R. Saveri
         Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Jiamin Chen (*pro hac vice*)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:  (415) 395-9940
Emails:  jsaveri@saverilawfirm.com
         jchen@saverilawfirm.com

*Interim Class Counsel for Direct Purchaser Plaintiffs*

**POINTS AND AUTHORITIES**

## I. INTRODUCTION

On September 6, 2017, Plaintiffs filed the Consolidated Third Amended Class Action Complaint and Complaint of Flextronics International USA, Inc. (Dkt No. 1831). Plaintiffs seek leave to amend the Complaint by adding as defendants seven individuals (together, "Additional Defendants") as discussed below. In accordance with Federal Rule of Civil Procedure 15(a)(2), Plaintiffs sought but did not obtain Defendants' consent to amend the Complaint. Plaintiffs seek leave of this Court to do so.

## II. PROPOSED AMENDMENT TO COMPLAINT

Briefly, this litigation and the related criminal prosecution by the Department of Justice Antitrust Division involve a conspiracy between and among Defendants to avoid competition, to raise, fix and stabilize prices and to rig bids as to certain capacitors.

A version of the proposed Fourth Amended Complaint showing tracked changes is attached hereto as Exhibit 1, and a clean copy of the proposed Fourth Amended Complaint is attached hereto as Exhibit 2.

Plaintiffs seek leave to add as defendants Hidenori Tonouchi, Shuichi Katsuyama, Akio Yokoyama, Shingo Tanaka, Hidetoshi Aono, Kenzaburo Kurata, and Takumi Shimizu.

Hidenori Tonouchi served as President and Representative Director of Defendant Rubycon Corp. from 1999 through 2003 and as President of Defendant Rubycon America from at least 2000 through 2003. Evidence and information obtained through discovery indicate that Mr. Tonouchi participated in the conspiracy by, among other things, attending various cartel meetings, including presidents' group meetings, on multiple occasions during that time. *Dallal Decl.* ¶ 11. Mr. Tonouchi also exchanged sensitive confidential information about the Rubycon Defendants' production, sales, capacity, and pricing plans with other Defendants pursuant to and in furtherance of the conspiracy. *Id.* On October 12, 2016, Defendant Rubycon Corp. pleaded guilty to and was adjudicated guilty of violation of Section 1 of the Sherman Act for its participation in the conspiracy. *United States v. Rubycon Corporation*, Case No. 4:16-cr-00367-JD-1 (N.D. Cal. filed August 22, 2016). On January 25, 2017, this Court sentenced Defendant Rubycon Corp. to a fine of $12 million, a special assessment of $400, and five years probation. *Id*.

Master File No. 3:14-cv-03264-JD                             1
NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT

Shuichi Katsuyama served as President and Representative Director of Defendant Rubycon Corp. from 2006 through 2014 and as a Director of Defendant Rubycon America from at least 2006 through 2013. Evidence and information obtained through discovery indicate that Mr. Katsuyama participated in the conspiracy by, among other things, attending various cartel meetings, including presidents' group meetings, on multiple occasions during that time. *Dallal Decl.* ¶ 12. Mr. Katsuyama also exchanged sensitive confidential information about Rubycon Defendants' production, sales, capacity, and pricing plans with other Defendants pursuant to and in furtherance of the conspiracy. *Id*. Mr. Katsuyama also authorized his counsel to present a sworn declaration stating that, if he appeared to give testimony under oath in this litigation, he would refuse to answer on the basis of his Fifth Amendment privilege against self-incrimination, indicating that his answers may tend to incriminate himself. *Id*.

Akio Yokoyama served as President and Representative Director of Defendant ELNA Co. from 1998 through 2003. Evidence and information obtained through discovery indicate that Mr. Yokoyama participated in the conspiracy by, among other things, attending various cartel meetings, including presidents' group meetings, on multiple occasions during that time. *Id*. ¶ 13. Mr. Yokoyama also exchanged sensitive confidential information about ELNA Defendants' production, sales, capacity, and pricing plans with other Defendants pursuant to and in furtherance of the conspiracy. *Id*. On October 11, 2017, Defendant ELNA Co. pleaded guilty to and was adjudicated guilty of violation of Section 1 of the Sherman Act for its participation in the conspiracy. *United States v. Elna Co., Ltd*, Case No. 4:16-cr-00365-JD-1 (N.D. Cal. filed August 22, 2016). This Court will pass sentence on Defendant ELNA Co. on January 31, 2018. *Id*.

Shingo Tanaka served as President and Representative Director of Defendant ELNA Co. from 2003 through 2005. Evidence and information obtained through discovery indicate that Mr. Tanaka participated in the conspiracy by, among other things, attending various cartel meetings, including presidents' group meetings, on multiple occasions during that time. *Dallal Decl.* ¶ 14. Mr. Tanaka also exchanged sensitive confidential information about ELNA Defendants' production, sales, capacity, and pricing plans with other Defendants pursuant to and in furtherance of the conspiracy. *Id*.

Hidetoshi Aono served as President and Representative Director of Defendant ELNA Co. from 2006 through 2008. Evidence and information obtained through discovery indicate that Mr. Aono participated in the conspiracy by, among other things, attending various cartel meetings, including presidents' group meetings, on multiple occasions during that time. *Id*. ¶ 15. Mr. Aono also exchanged sensitive confidential information about ELNA Defendants' production, sales, capacity, and pricing plans with other Defendants pursuant to and in furtherance of the conspiracy. *Id*.

Kenzaburo Kurata served as President and Representative Director of Defendant Matsuo Electric Co., Ltd. ("Matsuo") from at least 2001 through 2003. Evidence and information obtained through discovery indicate that Mr. Kurata participated in the conspiracy by, among other things, attending various cartel meetings, including presidents' group meetings, on multiple occasions during that time. *Id*. ¶ 16. Mr. Kurata also exchanged sensitive confidential information about Defendant Matsuo's production, sales, capacity, and pricing plans with other Defendants pursuant to and in furtherance of the conspiracy. *Id*. On October 25, 2017, Defendant Matsuo pleaded guilty to and was adjudicated guilty of violation of Section 1 of the Sherman Act for its participation in the conspiracy. *United States v. Matsuo Electric Company Limited*, Case No. 4:17-cr-00073-JD-1 (N.D. Cal. filed February 8, 2017). This Court will pass sentence on Defendant Matsuo on February 28, 2018. *Id*.

Takumi Shimizu served as Chairman and Executive Officer and as President and Representative Director of Defendant Matsuo from 2004 through 2008. Evidence and information obtained through discovery indicate that Mr. Shimizu participated in the conspiracy by, among other things, attending various cartel meetings, including presidents' group meetings, on multiple occasions during that time. *Dallal Decl*. ¶17. Mr. Shimizu also exchanged sensitive confidential information about Defendant Matsuo's production, sales, capacity, and pricing plans with other Defendants pursuant to and in furtherance of the conspiracy. *Id*. Mr. Shimizu refused to answer any questions regarding cartel activities under oath and invoked his Fifth Amendment protection against self-incrimination because his answers may tend to incriminate himself. *Id*.

### III. LEGAL STANDARD

Rule 15 provides that "[t]he court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2).

Under established Ninth Circuit law, "[R]ule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) citing *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (internal quotation omitted); *see also Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir. 1986) ("We have noted on several occasions that the 'Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), F[ed].R.Civ.P., by freely granting leave to amend when justice so requires.") quoting *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (internal citation omitted). Further, "[t]his liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." *DCD Programs*, 833 F.2d at 186.

Moreover, the policy favoring amendments to pleadings, as the Ninth Circuit has noted, serves Rule 15's underlying purpose: "[W]e have repeatedly stressed that the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotation and citation omitted).

"The four factors commonly used to determine the propriety of a motion for leave to amend are bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152, 155-56 (N.D. Cal. 2005) citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *DCD Programs*, 833 F.2d at 186. Of these factors, prejudice to the party opposing an amendment carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (collecting cases); *see also Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. California*, 648 F.2d 1252, 1254–55 (9th Cir. 1981) ("[T]he delay effected by permitting an amendment to the complaint cannot alone justify the denial of leave to amend.") citing *Howey v. United States*, 481 F.2d at 1190. "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital,* 316 F.3d at 1052 (emphasis in the original).

Finally, "[t]he party opposing amendment bears the burden of showing prejudice." *DCD Programs*, 833 F.2d at 187 (internal citation omitted).

## IV. LEAVE TO AMEND SHOULD BE GRANTED

Because Additional Defendants cannot show prejudice resulting from the amendment sought, and because Additional Defendants cannot make a strong showing as to any of the remaining *Foman* factors, leave to amend the Complaint should be granted. *Id.*

### a. Additional Defendants Cannot Show Prejudice

"Courts routinely allow parties to amend their pleadings after new information comes to light during discovery." *M.H. v. Cty. of Alameda*, 2012 WL 5835732, at *3 (N.D. Cal. Nov. 16, 2012); *see also Walintukan v. SBE Entm't Grp., LLC*, 2017 WL 635278, at *4 (N.D. Cal. Feb. 15, 2017) ("The FAC amends the complaint based on information learned during discovery that the Plaintiff cannot be expected to have learned independently.").

Further, while amending a complaint to add a party may risk prejudice to the entering party, "[t]imely notice, whether formal or informal, is one way of assuring that the party to be added has received ample opportunity to pursue and preserve the facts relevant to various avenues of defense." *Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397, 1400 (9th Cir. 1984).

Here, Additional Defendants cannot show prejudice resulting from the amendment sought because they have received notice and ample opportunity to pursue and preserve the facts relevant to various avenues of defense and because discovery remains open, allowing them to continue to pursue avenues of defense. *Id.* Further, disallowing the amendment sought would unfairly prejudice Plaintiffs as the amendment arises from "information learned during discovery that Plaintiffs cannot be expected to have learned independently." *Walintukan, LLC*, 2017 WL 635278 at *4.

Also, each individual Plaintiffs seek to add to the Complaint served during the Class Period as a manager, director, or presiding corporate officer of a company that is and has been a named Defendant in this litigation since its inception and that has pleaded guilty in the related criminal prosecution. Thus, none of the named Defendants can establish prejudice resulting from the amendment sought.

Moreover, both this litigation and the related criminal prosecutions are and have been centered on the same conspiracy and the same types of collusive and anticompetitive conduct. In fact, the nature of Plaintiffs' theory and claims as to the conspiracy and the collusive and anticompetitive conduct at its center have remained unchanged since Plaintiffs filed the Consolidated Class Action Complaint

("CCAC") on November 14, 2014. (Dkt. No. 401). *Cf. Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("[T]he district court made a specific finding of prejudice to the opposing party, noting that the retaliatory discharge issue was raised at the eleventh hour, after discovery was virtually complete and the Board's motion for summary judgment was pending before the court."); *compare Id.*; *Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981) ("The new claims set forth in the amended complaint would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense.") *with E. Bay Mun. Util. Dist. v. Balfour Beatty Infrastructure, Inc.*, 2014 WL 2611312, at *2 (N.D. Cal. June 11, 2014) ("Given that Qui Tam Plaintiffs previously stated that they intended to add additional defendants once identified, if appropriate, and even identified one of the individual defendants, Crandall Bates, it was not a surprise when the individuals were named. There is no prejudice to defendants in not requiring Qui Tam Plaintiffs to request leave to amend under these circumstances.").

Further, evidence and information obtained through discovery indicate that each Additional Defendant personally participated in the conspiracy and in cartel activities, including in collusive and anticompetitive meetings, communications, discussions, and sharing of competitively sensitive and/or confidential information. *See Dallal Decl*. ¶¶ 11-17. In addition, discovery indicates that each Additional Defendant instructed or ordered subordinates or other personnel at his respective Defendant company to participate in the conspiracy, including by attending cartel meetings. *Id*. Thus, each Additional Defendant is and has been aware of the subject of both this litigation and the related criminal prosecution and has personal familiarity with his conspiratorial conduct Plaintiffs only learned of through discovery. *Id*. Moreover, Plaintiffs could not have learned independently about Additional Defendants' participation in the conspiracy and conduct pursuant to and in furtherance of the conspiracy. *Walintukan, LLC*, 2017 WL 635278 at *4.

Finally, because discovery remains open, Additional Defendants are able to take further discovery to pursue various avenues of defense. *Korn*, 724 F.2d at 1400.

Accordingly, because Additional Defendants have notice and ample opportunity to pursue and to continue pursuing through discovery various avenues of defense, Additional Defendants cannot show prejudice. *See supra*.

### b. Additional Defendants Cannot Show Other *Foman* Factors

Additional Defendants cannot make any meaningful showing, let alone a "strong showing," as to any of the remaining *Foman* Factors. *Eminence Capital,* 316 F.3d at 1052. Accordingly, Defendants cannot meet their burden to prevent the amendment or to overcome the presumption in favor of granting leave to amend. *Id.*; *DCD Programs*, 833 F.2d at 187.

Defendants' discovery productions in this litigation have been voluminous, complex, and protracted. *See Dallal Decl.* ¶¶ 5-7. While this Court ordered Defendants to substantially complete production from the custodial files of agreed custodians on or before October 15, 2015, Defendants continued to made significant and substantive productions well after that deadline. *Id.* ¶ 5. In fact, the most recent production was received on October 17, 2017. *Id.* To date, Plaintiffs have received and reviewed over 15 million documents comprising over 39 million pages and eight terabytes in data. *Id.* Plaintiffs have also taken over 80 depositions. *Id.* ¶ 6. Information and evidence Plaintiffs diligently culled from Defendants' productions indicate Additional Defendants' participation in the conspiracy and the collusive and anticompetitive activities at issue in this litigation. *Id.* ¶¶ 11-17. Further, discovery is still open. Thus, Defendants cannot show undue delay in Plaintiffs seeking to amend the Complaint or resulting therefrom. *See Howey*, 481 F.2d 1187 at 1190 (holding that, even though the motion to amend was filed five years after the operative complaint, the district court abused its discretion in denying the motion to amend where the party opposing amendment failed to show prejudice or bad faith); *see also Hurn*, 648 F.2d at 1254–55 (holding that delay effected by permitting amendment to a complaint alone cannot justify denial of leave to amend). Likewise, because Additional Defendants cannot show undue delay, they also cannot show prejudice resulting from undue delay. *Id.*

Moreover, because Plaintiffs seek to amend the Complaint to conform it to information and evidence obtained through discovery, Additional Defendants cannot show Plaintiffs' bad faith or futility of the sought amendments. *See Dallal Decl.* ¶¶ 2, 10-17.

Accordingly, because Defendants cannot meet their burden to show that the *Foman* factors weigh against the amendment, because disallowing the amendment would unfairly prejudice Plaintiffs, and because established Ninth Circuit law instructs that "[R]ule 15's policy of favoring amendments to pleadings should be applied with extreme liberality" in order "to facilitate decision on the merits, rather

than on the pleadings or technicalities," leave to amend the Complaint should be granted. *DCD Programs*, 833 F.2d at 186; *Lopez*, 203 F.3d at 1127; *Gabrielson*, 785 F.2d at 765.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion for leave to amend the Consolidated Third Amended Class Action Complaint and Complaint of Flextronics International USA, Inc. and to file the Consolidated Fourth Amended Class Action Complaint and Complaint of Flextronics International USA, Inc. should be granted.

Dated: January 4, 2018                              Respectfully Submitted,

                                                    JOSEPH SAVERI LAW FIRM, INC.

                                                    By:     */s/ Joseph R. Saveri*
                                                                Joseph R. Saveri

                                                    Joseph R. Saveri (State Bar No. 130064)
                                                    Jiamin Chen (*pro hac vice*)
                                                    JOSEPH SAVERI LAW FIRM, INC.
                                                    601 California Street, Suite 1000
                                                    San Francisco, California 94108
                                                    Telephone:   (415) 500-6800
                                                    Facsimile:   (415) 395-9940
                                                    Emails:      jsaveri@saverilawfirm.com
                                                                 jchen@saverilawfirm.com

                                                    *Interim Class Counsel for Direct Purchaser Plaintiffs*