Pages 1 - 44

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO, JUDGE

IN RE CAPACITORS                    )
ANTITRUST LITIGATION                )   NO. C 14-03264 JD

                                        San Francisco, California

                                        Thursday, January 25, 2018

                    TRANSCRIPT OF PROCEEDINGS
APPEARANCES:

For Plaintiffs Direct Purchasers:
                    JOSEPH SAVERI LAW FIRM
                    505 Montgomery Street
                    Suite 625
                    San Francisco, California  94111
          BY:   JOSEPH SAVERI, ESQ.
                JIAMIE CHEN, ESQ.
                DEMETRIUS X. LAMBRINOS, ESQ.
                JAMES G.B. DALLAL, ESQ.

For Plaintiffs Indirect Purchasers:
                    COTCHETT, PITRE & MCCARTHY LLP
                    San Francisco Airport Office Center
                    840 Malcolm Road
                    Burlingame, California  94010
          BY:   ADAM J. ZAPALA, ESQ.

For Indirect Purchaser Plaintiffs:
                    LIEFF, CABRASER, HEIMANN & BERNSTEIN
                    Embarcadero Center West
                    275 Battery Street
                    29th Floor
                    San Francisco, California  94111
          BY:   ADAM GITLIN, ESQ.

Reported By:  BELLE BALL, CSR 8785, CRR, RDR
              Official Reporter, U.S. District Court

(Appearances continued, next page)

```
APPEARANCES, CONTINUED:


For Plaintiffs AASI, Avnet and Benchmark:
                         BILZIN SUMBERG BAENA PRICE & AXELROD LLP
                         1450 Brickell Avenue
                         23rd Floor
                         Miami, Florida  33131-3456
                 BY:  ROBERT W. TURKEN, ESQ.
                      SCOTT N. WAGNER, ESQ.


For Digi-Key:
                         STINSON LEONARD STREET
                         1201 Walnut Street
                         Suite 2900
                         Kansas City, Missouri  64106
                 BY:  VICTORIA L. SMITH, ESQ.


For Intervenor United States of America:
                         U.S. DEPARTMENT OF JUSTICE
                         Antitrust Division
                         Room 10-0101, Box 36046
                         450 Golden Gate Avenue
                         San Francisco, California  94102
                 BY:  HOWARD J. PARKER, ESQ.
                      MIKAL J. CONDON, ESQ.


For Defendants United Chemi-Con Corporation and Nippon Chemi-Con
Corporation:
                         PAUL, WEISS, RIFKIND, WHARTON
                           & GARRISON LLP
                         1285 Avenue of the Americas
                         New York, New York 10019
                 BY:  FARRAH R. BERSE, ESQ.
                      and
                      O'MELVENY & MYERS
                      2001 K Street, N.W.
                      Washington, D.C.  20006-1047
                 BY:  CHARLES F. "RICK" RULE, ESQ.
                      JOSEPH J. BIAL, ESQ.


For Rohm Defendants:
                         O'MELVENY & MYERS LLP
                         Two Embarcadero Center
                         28th Floor
                         San Francisco, California  94111
                 BY:  MICHAEL F. TUBACH, ESQ.
```

```
For Defendant AVX Corporation:
                    MINTZ LEVIN COHN FERRIS
                      GLOVSKY AND POPEO, PC
                    44 Montgomery Street
                    36th Floor
                    San Francisco, California  94104-6700
          BY:  EVAN NADEL, ESQ.


For Defendant Nissei Electric:
                    WILMERHALE
                    950 Page Mill Road
                    Palo Alto, California 94304
          BY:  MARK FLANAGAN, ESQ.



For Defendant Hitachi Chemical Co., Ltd.:
                    WILSON SONSINI GOODRICH & ROSATI
                    One Market Plaza
                    Spear Tower, Suite 3300
                    San Francisco, California  94105-1126
          BY:  JEFF VanHOOREWEGHE, ESQ.



For HolyStone Defendants and Vishay Defendants:
                    JONES DAY
                    555 South Flower Street
                    50th Floor
                    Los Angeles, California   90071-2452
          BY:  ERIC P. ENSON, ESQ.



For Nichicon Defendants:
                    K&L GATES
                    70 West Madison Street
                    Suite 3100
                    Chicago, Illinois  60602-4207
          BY:  MICHAEL E. MARTINEZ, ESQ.



For KEMET Defendants and NEC Tokin Defendants:
                    PILLSBURY, WINTHROP, SHAW, PITTMAN LLP
                    Four Embarcadero Center
                    Suite 2200
                    San Francisco, California  94111
          BY:  ROXANE A. POLIDORA, ESQ.
```

For Defendant Matsuo:

                    DENTONS US LLP
                    One Market Plaza
                    Spear Tower, 24th Floor
                    San Francisco, California  94105-1101
            BY:  JESSICA DUGGAN, ESQ.


For RubyCon Defendants:

                    SHEARMAN & STERLING, LLP
                    535 Mission Street
                    25th Floor
                    San Francisco, California  94105-2997
            BY:  JOHN F. COVE, JR., ESQ.


For Panasonic and Sanyo Defendants:
                    WINSTON & STRAWN LLP
                    101 California Street
                    San Francisco, California  94111
            BY:  IAN I. PAPENDICK, ESQ.


For Elna Defendants:

                    WILMER CUTLER PICKERING HALE
                      AND DORR, LLP
                    950 Page Mill Road
                    Palo Alto, California  94304
            BY:  HEATHER S. TEWKSBURY, ESQ.


For Satoshi Okubo:

                    BIRD MARELLA
                    1875 Century Park East
                    23rd Floor
                    Los Angeles, California   90067-2561
            BY:  ANDREW MCTERNAN, ESQ.

| | |
|---|---|
| 1 | **Thursday - January 25, 2018**                                    **11:15 a.m.** |

2                          P R O C E E D I N G S

3      **THE CLERK:**  Calling Civil 14-3264, In Re:  Capacitors

4  Antitrust Litigation.

5      **MR. SAVERI:**  Good morning, Your Honor.  Joseph Saveri on

6  behalf of the direct purchaser plaintiffs

7      **THE COURT:**  Good morning.

8      **MR. SAVERI:**  There are other folks here.

9      **THE COURT:**  Yes.

10      **MR. ZAPALA:**  Good morning, Your Honor.  Adam Zapala from

11  Cotchett Pitre & McCarthy for the indirect purchaser plaintiffs.

12      **MR. LAMBRINOS:**  Good morning, Your Honor.  Demetrius

13  Lambrinos, Joseph Saveri Law Firm.

14      **MS. CHEN:**  Good morning, Your Honor.  Jiamie Chen from the

15  Joseph Saveri Law Firm on behalf of plaintiffs.

16      **MR. TURKEN:**  Good morning, Your Honor.  Robert Turken on

17  behalf of Avnet, Benchmark, and AASI.

18      **MR. RULE:**  Good morning, Your Honor.  Charles Rule on behalf

19  of Nippon Chemi-Con.

20      **THE COURT:**  Let's finish with plaintiffs, yeah.  Or that

21  side of that table, yes.

22      **MR. WAGNER:**  Your Honor, Scott Wagner also on behalf of AASI

23  and Benchmark.

24      **MS. SMITH:**  Victoria Smith on behalf of Digi-Key.  We are

25  the ones who just filed the opt-in.

1      **THE COURT:**  Oh.  Yes.

2      **MS. SMITH:**  We are hoping to be transferred --

3      **THE COURT:**  So you did the MDL thing, and they said thank

4   you.  And have I related you yet?

5      **MS. SMITH:**  A motion 2006 is pending on your docket to do

6   the administrative motion to transfer.

7      **THE COURT:**  Okay.  Consider it granted; I'll just have to do

8   it.

9      **MS. SMITH:**  Thank you.

10     **MS. CONDON:**  Good morning, Your Honor.  Mikal Condon and

11  Howard Parker for Intervenor United States Antitrust Division.

12     **THE COURT:**  Oh yes, all right.

13     Okay, defendants.

14     **MR. RULE:**  Charles Rule, Joseph Bial and Farrah Berse on

15  behalf of Nippon Chemi-Con.

16     **THE COURT:**  Okay.

17     **MR. TUBACH:**  Good morning, Your Honor.  Michael Tubach on

18  behalf of the Rohm defendants.

19     **MR. McTERNAN:**  Good morning, Your Honor.  Andrew McTernan on

20  behalf of non-party Satoshi Okubo.

21     **THE COURT:**  Oh, well, what's your name again?

22     **MR. McTERNAN:**  Andrew McTernan.

23     **THE COURT:**  Okay.  And you are here for Mr. Okubo.

24     **MR. McTERNAN:**  Yes, Your Honor.

25     **THE COURT:**  All right.  Anybody else?  That's it?

1        Okay.  All right.  Let's talk about the criminal discovery

2   issue.  Who would like to handle that?

3        Ms. Condon?

4        **MS. CONDON:**  Yes, Your Honor.

5        **THE COURT:**  Okay.

6        **MS. CHEN:**  Jiamie Chen on behalf of the plaintiffs,

7   Your Honor.  And I guess we are at the same podium.

8        **THE COURT:**  Yes.  But you disagree, is that right?

9        **MS. CONDON:**  I'll stand over here (Indicating).

10       **THE COURT:**  All right.  The proposal to -- now, the

11  government, Ms. Condon, just wants to stay the seven

12  individuals' depositions.  Is that right?

13       **MS. CONDON:**  At this point, Your Honor, it's sort of rolling

14  with the census.  As additional depositions are noticed, if it

15  also infringes upon the potential trial witnesses, we would seek

16  to add names to the list.  But we are not seeking to do a

17  wholesale stay as to all depositions.

18       **THE COURT:**  All right.  And if I did do that, it would

19  probably be either the first day of trial -- not at the end of

20  it, but the first day of trial, or the day that I accept a plea

21  agreement.

22       **MS. CONDON:**  Okay.

23       **THE COURT:**  Not the day it's filed, but the day I accept.

24  Okay, so that would be probably the likely time scope.  Is that

25  all right?

1    **MS. CONDON:**  Okay.  So you would anticipate that it would

2    be -- that the witnesses could be deposed --

3        **THE COURT:**  After.

4        **MS. CONDON:**  After the first day of trial.

5        **THE COURT:**  Yes.  By that point it's too late for you to get

6    anything good.  So, the -- the rules will be served.  All right.

7        So, Ms. Chen?  What does -- you know, I can't see a way

8    around not doing that.

9        **MS. CHEN:**  Well, respectfully, Your Honor, Ninth Circuit law

10   on this issue is both clear and established.  And this is in the

11   very case, the *Keating* case that actually set out the *Keating*

12   standard for assessing whether or not a civil stay should be

13   granted.

14       And the Ninth Circuit has made clear that ordinarily, a

15   civil case in a parallel proceeding, the civil case doesn't have

16   to pause and make way for the criminal case to be resolved.

17       Now, if, in spite of that, the government is still seeking a

18   stay in the civil case, it is the burden of the government to

19   prove that the stay will serve the interests of justice.  And

20   here, respectfully, we don't think they've done that.

21       **THE COURT:**  Why is that?

22       **MS. CHEN:**  Because under Ninth Circuit law, the first factor

23   that the Ninth Circuit both raises and considers outside of

24   Fifth Amendment issues, which everyone agrees is not a factor

25   here, the first factor the Ninth Circuit both raises and

1    considers is the -- is the interest of the plaintiffs in

2    proceeding expeditiously with their case, and any prejudice that

3    will result to the plaintiffs as a result of granting the stay.

4        And here, there would actually be substantial prejudice to

5    the plaintiffs if Your Honor were to grant the stay without the

6    alternative relief that the plaintiff suggested.

7        **THE COURT:**  Well, I just -- it's eight months.  Or seven

8    months.  How is that irremediable prejudice to the plaintiffs?

9        **MS. CHEN:**  It's because of the way it would affect the case

10   schedule.  Because the stay would force the plaintiffs to

11   essentially complete merits discovery, complete expert reports,

12   stake out a position, commit to the position, and stake our case

13   on our position, without having taken the discovery of --

14       **THE COURT:**  No, I'm sorry, maybe -- I thought -- that will

15   not happen.  All those deadlines will be extended.  Okay.

16   You're not -- you're not going to be disadvantaged that way.

17   Okay?

18       So, knowing that, you have no problem with this.  Is that

19   right?

20       **MS. CHEN:**  Well, we still have a significant interest in

21   proceeding expeditiously with our case, and with building our

22   case in the normal course of litigation, but we do appreciate

23   Your Honor taking the steps to mitigate the prejudice that would

24   result.

25       **THE COURT:**  Okay.  All right.  Well, I am going to order the

1    stay.

2        Now, it's just going to be to those seven individuals, all

3    right?  I'll put that in the order, and the government can come

4    back, should you wish to do that.

5        The project for everyone else will be to assume that it will

6    be -- what is it, October 15th, Ms. Condon?  Is that the trial

7    date?

8        **MS. CONDON:**  October 15th is the trial date.

9        **THE COURT:**  Assume October 15th will be the outer boundary,

10   and then work back and do an amended schedule that you all

11   discuss.  Push everything out that needs to be pushed out, okay?

12       Now, I don't know how critical any of these seven witnesses

13   are to the plaintiffs' side.  So if you can go forward without

14   getting hung up, then tell me that as well.

15       **MR. ZAPALA:**  Adam Zapala for the indirect purchaser

16   plaintiffs.

17       I think they are critical.  Certainly, we have done a lot of

18   work in this case, a lot of discovery.  But the people that they

19   want stayed are -- there are reasons why they want them stayed.

20       And the reasons they want them stayed is because they're

21   important witnesses.  And so, they are important to the

22   plaintiffs, and we do want to take those people's depositions.

23       We hear Your Honor.

24       **THE COURT:**  Now, are you sure about that?  I mean, you have

25   got hundreds of witnesses.  These are just seven people.  I

1   mean, are they --

2     **MR. ZAPALA:**  One of the persons is -- the people that

3   they're seeking to stay are intimately involved in what we

4   allege to be the cartel conduct.  And we do feel like we need

5   them, and we do feel like we would be prejudiced if we didn't

6   get them.

7     So, we are fine with the stay, but the key thing, at least

8   from the indirect purchaser point of view, is that the schedule

9   -- we would not be prejudiced by the schedule I heard,

10  Your Honor.  So I don't see any problem working that out with

11  the defendants.

12    **THE COURT:**  Just think it through, and how vital the seven

13  are.

14    **MR. ZAPALA:**  Yeah.

15    **THE COURT:**  And keep everything else moving.

16    **MR. ZAPALA:**  We will.

17    **THE COURT:**  There is no need not to keep it moving.  But

18  work out a new schedule.

19    I have a mountain of letters on Mr. Okubo which I'm going to

20  terminate now in light of the stay.  So if it becomes necessary,

21  we can revisit those.  But, I'm terminating without prejudice

22  Dockets 1885, 1886, 1903, 1947, 1967, 1969, 1970, 1971, 1974 and

23  1975.  I don't know how I have so many letters on one man.  But,

24  they're all terminated without prejudice.

25    And you can revisit them in one letter, if necessary, in

1    October.  Okay?  All right.

2        **MS. CHEN:**  If I may bring up one issue about that,

3    Your Honor?

4        **THE COURT:**  Yes.

5        **MS. CHEN:**  Mr. Okubo was sentenced.  He's set to be released

6    in June.  And he's indicated to the Court his intention to

7    return to Japan immediately.

8        So, in light of the stay, if there's no exception being made

9    for Mr. Okubo's post-conviction deposition, we -- it's not that

10   there's going to be a delayed deposition of Mr. Okubo; there

11   will never be another deposition of Mr. Okubo.

12       **THE COURT:**  Who represents Mr. Okubo?

13       Come on up.

14       **MR. McTERNAN:**  Andrew McTernan for Mr. Okubo.

15       As to the issue of the stay, Your Honor, I mean, we still

16   are of the position that there should be no second deposition of

17   Mr. Okubo for the extensive reasons outlined in the letter

18   briefing Your Honor just mentioned, in light of the stipulation

19   order regarding discovery limits in this case, and all of the

20   burden --

21       **THE COURT:**  I don't want him hopping on a plane and being

22   lost as a witness.  That's not acceptable.

23       Now, how are we going to handle that?  I didn't realize

24   until Ms. Chen pointed out that he's going to, you know, go home

25   the minute he gets out.  I'm not going to have a situation where

1    he is lost forevermore as a witness.  So, how do you want to

2    handle that?

3        **MR. McTERNAN:**  Your Honor --

4        **THE COURT:**  I have seen enough in all of those letters I

5    just outlined and everything else in the case that it is clear

6    to me for one reason or another he is a key player.  So I'm not

7    going to have him leverage this stay and get out of the

8    deposition that he otherwise would be subject to.  That is just

9    not going to happen.

10       So how do you want to do this?

11       **MR. McTERNAN:**  Well, as for Mr. Okubo returning to his home

12   country of Japan, it is my understanding or it is the position

13   that Mr. Okubo would fly back to the United States to cooperate

14   with the criminal trial.

15       But as to the civil action and whether there should be a

16   second deposition, again, the burden expends on Mr. Okubo to

17   come from Japan to the United States for yet another deposition,

18   when plaintiffs already had their shot and took it, and in light

19   of the stipulation order only granting one deposition for an

20   individual like Mr. Okubo.  And furthermore, Your Honor's

21   position on October 26th that there really shouldn't be a second

22   deposition unless he has unique information.  We would say that

23   another deposition in the civil action should not occur.

24       **THE COURT:**  Well, I thought we had agreed that there were

25   some unique areas.

1      **MS. CHEN:**  Yes, Your Honor.

2      **THE COURT:**  Yes.

3      **MS. CHEN:**  Jiamie Chen on behalf of the plaintiffs.

4      **THE COURT:**  Yes.

5      **MS. CHEN:**  And if I may address that, Your Honor.

6      **THE COURT:**  I know I didn't formally, but go ahead, yeah.

7      **MS. CHEN:**  Briefly.  Your Honor is correct.  Our position is

8  Mr. Okubo is both unique and important to this case.  And here's

9  why.

10     It's because we would be taking a post-conviction deposition

11  of Mr. Okubo in a position where Mr. Okubo has already pleaded

12  guilty, and both of his employers have already pleaded guilty,

13  such that the key and uniquely important part of his deposition

14  testimony that's so important to this case is that he can

15  provide and he must provide substantive information about the

16  involvement of the other remaining defendants.  The other

17  defendants who have not pleaded guilty and that are here, still

18  in this case.

19     He is the only person in this case, if not in the entire

20  world, who, if we get him into a deposition and we ask him:

21  Hey, did you meet with representatives from Company X, and

22  collude with them and exchange pricing information on

23  capacitors, he has to provide an answer.  There's no one else in

24  this case or, really, in the world who has this information and

25  who must provide this information.

1       And that's why his deposition is both unique and critical to

2   this case.  Because what's ultimately at issue here really isn't

3   the culpability of Mr. Okubo or of Elna or Matsuo, or the other

4   defendants that have already pleaded guilty.  It is the

5   culpability and the participation in the conspiracy of the

6   remaining defendants.  And that's precisely why we need this

7   deposition.

8       **THE COURT:**  Ms. Condon?  Why don't you come on up.  Let's

9   just talk among friends here.

10      So, how can we carve off a little bit of time with Mr. Okubo

11  in a way that is not going to give the government excessive

12  heartburn?

13      **MS. CONDON:**  Um, Your Honor, I think that first, there, with

14  respect to when his prison term ends and his return, there are

15  some immigration issues that Mr. Parker perhaps can speak to

16  regarding --

17      **THE COURT:**  Immigration issues?

18      **MS. CONDON:**  I believe he has to return.

19      **THE COURT:**  The United States?

20      **MS. CONDON:**  To Japan, immediately.

21      **THE COURT:**  Well, of course.  He's not allowed to stay.  So

22  the issue is he needs to have his deposition done before he

23  leaves the country.  Because I -- not attributing any ill will

24  or bad motives to him, but I'm not going to bank on him

25  volunteering to be available once he leaves the U.S.  He's not

1    going to do that; it's too high-risk.

2        How can we finesse this?

3        **MR. PARKER:**  Well, Your Honor --

4        **THE COURT:**  Can we finesse this?

5        **MR. PARKER:**  Potentially, if he comes back for trial, for a

6    criminal trial, which is, you know, what the government is

7    looking to, and asking for his deposition to be stayed, we --

8        **THE COURT:**  So he's obligated to come back for that?

9        **MR. PARKER:**  If the government requests, he has a

10   cooperation obligation.

11       **THE COURT:**  What if he says no?  What is the consequence?

12   What if he says:  I'm not coming back?  You have no -- you have

13   no enforcement mechanism.

14       **MS. CONDON:**  That may well be true of all of our trial

15   witnesses, Your Honor.

16       **THE COURT:**  Well, it is true, I mean, unless you tell me

17   differently.  He could get off the plane and say:  I'm done, and

18   you cannot do a thing to make him come back.  You just can't.  I

19   can't.  I know I can't.  And you can't either, unless you've got

20   special ties with the Japanese government which I'm not aware

21   of.

22       So here is my concern.  He's lost forever -- we should

23   assume he's lost forever -- and again, I'm not saying he has a

24   motive or is driven by ill will or anything else.  We just have

25   to be pragmatic litigators.  You should assume he's lost forever

the day he gets released from the Bureau of Prisons.  Okay?

He's a vital witness.  And I do think they're entitled to a little bit more time with him.  It will not be duplicative; we will set a lot of ground rules to make sure it's new and fresh. There will be nothing that's not -- that is rehashed.

But I am concerned about this.  I don't want the unintended collateral consequence of this discovery stay to be that a vital witness is lost in the civil case.  That's just not acceptable. So, thoughts.  Proposals.  Ideas.  Creative solutions.

**MS. CHEN:**  If I may, Your Honor?

**THE COURT:**  Yes.

**MS. CHEN:**  From the perspective of the burden on the witness, it appears pretty clear that it would be significantly less burdensome on Mr. Okubo, himself, if we were to depose him while he's physically located in this country, in this state, in Lompoc, California.

**THE COURT:**  Yes, we are past all that.  So I'm trying to figure out, how do we do this in a way that doesn't violate my agreement with the government that there -- should not have their case exposed, and what I consider to be an important need on the plaintiffs' side to get Mr. Okubo's testimony while the possibility is realistic.

**MS. CONDON:**  Your Honor, I mean, perhaps Mr. Okubo's counsel can speak to this.  But it is our understanding that he will return for the criminal trial.  And he will be as available

 1   after the day set for that trial as any of the other trial

 2   witnesses who have been stayed.

 3       If you are ruling that Mr. Okubo's deposition should be

 4   taken for a second time, Mr. Okubo's really in no different

 5   position than any of the other witnesses whose depositions are

 6   being stayed until after October 15th.

 7       **THE COURT:**  Well, none of those witnesses are in the United

 8   States, are they?

 9       **MS. CONDON:**  No.

10       **THE COURT:**  Okay.  That's my point.  Mr. Okubo is.

11       **MS. CONDON:**  But --

12       **THE COURT:**  And subject to my jurisdiction and enforcement

13   power in a way that the other deponents are not.  So, I -- that

14   makes the Okubo deposition even more pressing in my mind,

15   because this may be the only hook plaintiffs will ever have to

16   do a realistic deposition of these seven key individuals.

17       So, I am not going to let that opportunity pass, unless we

18   talk through it.

19       **MR. SAVERI:**  Your Honor if I may?  Joseph Saveri.

20       **THE COURT:**  Yes.

21       **MR. SAVERI:**  Excuse me.  I'm doing this a little bit by the

22   seat of my pants.  But let me offer, at least -- if I understand

23   the problem, it's the -- the concern is that one of the -- if we

24   take the deposition, that there's going to be information that

25   will -- testimony from that deposition that will be used by --

1    by one of the criminal defendants.   NCC.   And the concern of the

2    government is that that -- that testimony will present potential

3    problems in the criminal case.

4         One solution would be we take the deposition while he's

5    here.   Because we are very concerned that once he's gone, he's

6    gone; we'll never get him again.

7         One solution might be we take the deposition in the civil

8    case, and there is no access to that testimony in the criminal

9    case.   Because if the problem is that by taking --

10        **THE COURT:**  Let me just jump in.   So the only way to do that

11   is to say NCC could not participate or see the transcript.

12        **MR. SAVERI:**  That -- that -- that's a suggestion.

13        **MR. RULE:**  Mr. Rule on behalf of the NCC.

14        Your Honor, obviously, we object to that.   We're still the

15   defendant in the DPP case.   We have a right to participate in

16   the deposition.

17        Obviously, if he says something, for example, that's

18   impeachment of whatever he says in the criminal trial, we have a

19   constitutional right to use that.

20        So that doesn't seem to me to be a workable option.

21        **THE COURT:**  Here's my idea.

22        **MR. SAVERI:**  That's the best I could come up with.

23        **THE COURT:**  Ms. Condon and Mr. Parker, why don't you think

24   about this.   Now, it's Mr. Okubo, one witness out of the seven.

25   And I will actually be more involved.

1          I will -- I will ask the plaintiffs to submit their proposed

2     areas of testimony to make sure that, one, it's non-duplicative

3     and two, we all understand what the questions -- not

4     specifically, but what the areas of inquiry will be.

5          Would it be that harmful if one of the seven, for this

6     unique and special reason, got deposed before the start of the

7     criminal trial?

8          **MS. CONDON:**  Your Honor, we would -- I believe we would

9     think that it was that harmful.  And --

10         **THE COURT:**  Why is that?  Just tell me why.

11         **MS. CONDON:**  He's a critical trial witness.  He is also a

12    current employee of a defendant in this case.

13         We're not losing -- Your Honor isn't losing all control over

14    him.  He is still --

15         **THE COURT:**  Still an employee of --

16         **MS. CONDON:**  He's still an employee of Matsui.

17         **THE COURT:**  I don't believe he is.  He's not a current

18    employee.

19         (Off-the-Record discussion between counsel)

20         **MR. ZAPALA:**  And Your Honor has identified the problem.  So

21    he is differently situated from the other seven who are current

22    employees.  There are sanctions -- if those guys don't show up

23    for their depositions in United States, their corporate employer

24    can -- there could be adverse inferences imposed against them.

25    And Your Honor has expressed his intention to do that at trial.

1        I don't know how that would work in a situation where

2    there's a former employee.  So there isn't that kind of hammer.

3        **THE COURT:**  Well, you know, we can move the trial date up.

4    Why don't we do the trial in March?

5        **MS. CONDON:**  I believe the government would be fine with

6    that, but I suspect that Mr. Rule might have an objection to

7    that as well.

8        **MR. RULE:**  Yes, Your Honor.

9        **THE COURT:**  April.

10       **MR. RULE:**  That would be very difficult for us.  We're still

11   trying to get through a lot of discovery.  We've got the

12   translation issues that Mr. Wells mentioned at the status

13   conference.

14       **THE COURT:**  Let me just jump in.  Is it Mr. Rule?

15       **MR. RULE:**  Yes.

16       **THE COURT:**  I've done these cases on your end.  I'm -- you

17   know, the -- hiding behind this translation issue is not

18   meaningful to me.

19       I have cranked through -- not personally, but I have run my

20   teams to crank through Korean-language, Japanese-language and

21   Chinese-language documents in antitrust cases, in short order.

22       So I am just really not at all responsive to Paul, Weiss

23   telling me it's an insuperable boundary to getting a trial date.

24   I'm just not.

25       **MR. RULE:**  Your Honor, just again, maybe Ms. Berse can speak

1    to this.  But the point is not our ability to translate

2    documents.

3        The question is:  We're going to have a translation; they're

4    going to have a translation.  What you would like to do in a

5    criminal case is have an agreement on the translation.

6        The fact is when you're talking about Japanese, there are

7    often terms that are, um, subject to different translations.

8    And so the issue is not our ability to translate the documents,

9    or to understand them.  The point is to tee the issues up with

10   respect to the documents that are going to be used at trial in a

11   way that, you know, moves the process along.

12       **THE COURT:**  I don't know what that means.  You know, there's

13   a jury instruction on disputed foreign-language translations.

14   You can have a dispute, and the jury will decide whose

15   translation is accurate.  You do not have to work out each and

16   every word with the other side before we go forward.

17       I just tried a criminal case in Dari and Pashto.  I think

18   you can handle a case in Japanese in short order.

19       **MR. RULE:**  I think, Your Honor, we can handle it; there's no

20   question about that.  But a case --

21       **THE COURT:**  That case was tried last week.  Okay?  So I'm

22   fresh on this issue.

23       **MR. RULE:**  Correct, but --

24       **THE COURT:**  Now, there's a jury instruction that says if you

25   and the government disagree, you send it to the jury.  It's a

1    fact issue.  Okay?  You don't have to iron out a flawless

2    agreed-upon translation to move forward.

3         **MR. RULE:**  That --

4         **THE COURT:**  So do your translations, and roll.  I mean, what

5    are you waiting on?

6         **MR. RULE:**  Because potentially there are 7 million documents

7    that the government has produced to us.  They've pointed to

8    5,000 that I think have translations that may be the ones that

9    they're going to use.

10        That's 5,000 documents that I think in the course of a

11   trial, you know, you would want the parties to essentially

12   minimize and focus on those parts of those documents where

13   there's a dispute.  If there's not a dispute, then it doesn't

14   have to go to the jury.  If there is a dispute, it does.  You're

15   right.

16        But the point is that this process is designed -- and I

17   think, you know, we haven't really started that process with the

18   government, to whittle down those issues.

19        But I don't think that any process can be done where this

20   case gets teed up in March.  You know, we're still -- we've got

21   7 million documents.  We still haven't filed our motion for bill

22   of particulars which, as Your Honor knows, we have -- we're

23   going to be filing in February.

24        There's a great deal that is unknown about the government's

25   case that we're trying to discover.  So March would be, I think,

1   an impossibility.

2      **THE COURT:**  Would the government be ready to go?

3      **MS. CONDON:**  I'm -- Mr. Parker is in charge of translation

4   issues.

5      **THE COURT:**  No, no, forget translation.  We're done with

6   translation.

7      Would the government by ready to go in March?

8      **MR. PARKER:**  Your Honor --

9      **THE COURT:**  How about April?  End of April?

10      **MR. PARKER:**  I think our position needs to be, Your Honor,

11   that we would be, yes.

12      **THE COURT:**  One of your colleagues said to me yesterday the

13   government is always ready to go.

14      **MR. PARKER:**  Yes, it's a subsidiary point.

15      **MS. BERSE:**  Your Honor, Farrah Berse from Paul, Weiss.

16      **THE COURT:**  Yes.

17      **MS. BERSE:**  I'm not admitted *pro hac vice* in this matter.  I

18   am in the criminal case.

19      In this case, I ask your permission --

20      **THE COURT:**  Consider yourself admitted.

21      **MS. BERSE:**  Thank you.

22      **THE COURT:**  That's fine.  All right.

23      **MS. BERSE:**  I'm not going to address the translation issues.

24   The parties will obviously figure out a way to work the issues

25   out.  And as you say, disputed issues can go to the jury.

1          I want to echo Mr. Rule's point about, though, the other

2    significant things that would need to happen before we are ready

3    to try the criminal case.

4          You know, as Mr. Rule mentioned, we've got a bill of

5    particulars motion which won't be fully briefed until the end of

6    February.  We are optimistic that we will have success on that.

7          **THE COURT:**  Those are my sched- -- if you're hung up on

8    that, then we'll do it next week.  I mean, it's a bill of

9    particulars.  It's not --

10          **MS. BERSE:**  Understood.  The other issue --

11          **THE COURT:**  It's not flying, you know, a neutron through an

12    accelerator.  So we can get it done quickly.

13          **MS. BERSE:**  The other issue I wanted to make sure was on

14    Your Honor's radar, as my colleague Mr. Wells mentioned when we

15    were here for the last conference in the criminal case, is that

16    we do anticipate a real possibility of seeking the Court's

17    permission to take Rule 15 depositions overseas of witnesses who

18    are located in Japan, and are unavailable to come here.  That's

19    obviously an issue we would need to tee up for the Court, get

20    rulings on those motions, and then make logistical arrangements

21    to deal with those.

22          I simply, you know, don't think --

23          **THE COURT:**  Let me ask you.  How do you want to handle

24    Mr. Okubo, then?  Okay?  Let's not get lost in everything else.

25    How do you want to handle Mr. Okubo?

1      **MS. BERSE:**  You know, I don't want to --

2      **THE COURT:**  What's your idea on how to handle Mr. Okubo?

3      **MS. BERSE:**  I think from our perspective, as we I think put

4  in, in a submission to the Court in a civil case, and I'll let

5  Mr. Rule speak further to that, we have no objection, obviously,

6  to that deposition going forward, and have, in fact,

7  cross-noticed it ourselves to seek additional discovery in

8  connection with the civil case.  So, you know, our position is

9  that deposition should go forward.

10     **MS. CONDON:**  Which, Your Honor is directly back to the heart

11 of our stay motion, which is that the civil discovery process --

12     **THE COURT:**  I know, but here's the issue.  We're balancing a

13 unique circumstance for one deponent.  Okay?

14     **MS. CONDON:**  (Nods head)

15     **THE COURT:**  And I am inclined to let that go forward.  You

16 know, this stay is not mandatory.  It's one witness.  And I know

17 he's critical.  That's exactly why it's so pressing in the civil

18 case.

19     Now, I just -- and I'm not clear on why it's going to be

20 harmful to the government.

21     **MS. CONDON:**  Your Honor, I guess I don't understand what

22 plaintiffs specifically have articulated is the information that

23 they need to receive from Mr. Okubo, and Mr. Okubo, alone.

24     **THE COURT:**  We don't know that.  So they're going to outline

25 the topic.

 1          Why don't we do this.  This is what we're going to do.

 2     Plaintiffs, you're going to make a proffer to me, and file it so

 3     everybody sees it, with a degree of specificity about what it is

 4     you want to examine Mr. Okubo about.  Okay?

 5          Now, I know you understand this, but let me be clear.  It

 6     can't just be three topics, the scope of the conspiracy, the

 7     dates of the conspiracy, and who was involved.  No.  I need to

 8     know in much more detailed form what you're going to examine.

 9     Not the exact questions, obviously, but just, what's the script

10     going to be.  What does the playbook look like.

11          All right?

12          **MR. ZAPALA:**  Sure.

13          **THE COURT:**  And then I'm going to have the defendants -- the

14     government react to that.  Okay?

15          Now, I want the government to take a look at how you can

16     live with the topics.  And if there are topics that you just

17     can't live with, you can let me know.  And we'll talk about

18     that.  All right?

19          But I have to work something out here.  As I've said several

20     times, this is not at all calling Mr. Okubo's character into

21     question.  I just, in my experience, do not -- I'm not going to

22     bank on the goodwill of an overseas witness to show up.  I'm

23     just not.  So --

24          **MS. CONDON:**  What about the defendants who have

25     cross-noticed Mr. Okubo's deposition, which include Nippon

 1    Chemi-Con?

 2        **THE COURT:**  Who cross-noticed it?

 3        **MR. RULE:**  We did, Your Honor.  We may have been the only

 4    ones that cross-noticed.

 5        **THE COURT:**  Yeah.  I'm willing to let you take the risk for

 6    your civil case of having to chase down Mr. Okubo.

 7        All right.  Let's just do one step at a time.  I don't want

 8    to get too far down the road.

 9        So, NCC, you will do the same thing.  All right?

10        **MR. RULE:**  (Nods head)

11        **THE COURT:**  With a degree of specificity.

12        Now, alternatively, you could all just get together and do a

13    meet-and-confer.  Okay?  If you just want to do that rather than

14    filing things, that's fine, too.  So, take a week, okay?  Maybe

15    you should all just get together and talk.  Maybe in half an

16    hour.  Okay?

17        I mean, I'm sure -- you probably have a pretty good idea,

18    Mr. Saveri, of what you would like to ask.

19        **MR. SAVERI:**  I think that's --

20        **THE COURT:**  And Mr. Zapala, you guys know roughly what

21    you're going to ask.

22        **MR. ZAPALA:**  Yes.

23        **MR. SAVERI:**  Yes.  And the only thing I would ask is can we

24    -- we can probably talk and meet and confer within a week's

25    time, but I would like to have two weeks before we submit

1   something to you, just because of my --

2        **THE COURT:**  Well, time is flying.

3        **MR. SAVERI:**  I understand that, Your Honor.  I just know

4   what my schedule is, and where I'm going to be.  If that's --

5        **THE COURT:**  All right, okay.

6        **MR. SAVERI:**  I can accommodate faster.

7        **THE COURT:**  No, no, that's fine.  So, the order is going to

8   be you are going to meet and confer on this issue.  All right?

9   Anybody who's noticed Mr. Okubo.  Okay?  But you're going to

10  meet and confer with the government.

11       And you're all going to work out some *modus vivendi* for

12  getting Mr. Okubo done.  And if you can't, I'll just make a

13  decision.  So don't file anything until the end of that process.

14  And then you can tell me:  Here's what we discussed, here's what

15  the sticking points are.  Or:  Here's our agreement for going

16  forward.

17       **MS. CONDON:**  And these are issues that are unique to

18  Mr. Okubo and --

19       **THE COURT:**  Just Mr. Okubo, nobody else.

20       **MS. CONDON:**  -- not covered in the prior deposition --

21       **THE COURT:**  No, no, no, all the other six are on ice --

22  pending.

23       **MR. SAVERI:**  This is only about Okubo's deposition.  It

24  doesn't have anything to do with the other six people we've been

25  talking about or anybody else.

1     **THE COURT:**  No, just Mr. Okubo.  He's the only one in the

2  United States who -- has this unique issue.

3     **MS. CONDON:**  As to the topics --

4     **THE COURT:**  Only for Mr. Okubo topics.

5     **MS. CHEN:**  -- unique to Mr. Okubo that were not covered in

6  his prior deposition?

7     **THE COURT:**  Those are the baselines.

8     **MR. SAVERI:**  We will specify the topics on which we want to

9  take the deposition of Mr. Okubo.  In part, the dialogue I

10  suppose will be some pushback about whether it's unique.

11     We will be specific, though, why we think we need Mr. Okubo.

12  And we'll endeavor not to be duplicative of what we have done

13  before.  I think that's fair.

14     **THE COURT:**  Okay?

15     **MS. CONDON:**  We'll meet and confer.

16     **THE COURT:**  Everyone can do that?  NCC?  Yes.

17  Ms. Chen?

18     **MS. CHEN:**  Yes, Your Honor.

19     **THE COURT:**  And Mister --

20     **MR. McTERNAN:**  McTernan.  Your Honor, one --

21     **THE COURT:**  McTernan, yes.

22     **MR. McTERNAN:**  One thing I would like to bring up.  I

23  understand, Your Honor, the Court is inclined to let the

24  deposition go forward.

25     If that's the case, the burden and expense --

1     **THE COURT:**  No, no, no.  I want more information before --

2     **MR. McTERNAN:**  Understood.

3     **THE COURT:**  No, not yet.  It may be the government trumps

4  all that.  I don't know.  I just want to take the next step.

5  Okay?

6     **MR. McTERNAN:**  Understood, Your Honor, but --

7     **THE COURT:**  The door is open to the possibility.  You're

8  absolutely right about that.  It's possible.

9     **MR. McTERNAN:**  Understood.  If it does possibly go

10  forward --

11     **THE COURT:**  Yes.

12     **MR. McTERNAN:**  -- I would just like to note that the burden

13  and expense on Mr. Okubo is still an issue, regardless.  And if

14  any deposition potentially should occur, we'd request that the

15  burden, the expense not be Mr. Okubo's to bear, but whatever

16  party does ultimately take the potential deposition.

17     **MR. SAVERI:**  We want to do the deposition at Lompoc.

18     **THE COURT:**  What is the burden and expense?  Lawyer time?

19     **MR. McTERNAN:**  Translators, lawyers.  As detailed in the

20  submission, the difficulties of coordinating, preparation for a

21  deposition are extensive.  The window of time that he's allowed

22  to work with translators and attorneys is limited.  And

23  sometimes shifts.  It's very complicated, Your Honor.

24     **THE COURT:**  By the prison?

25     **MR. McTERNAN:**  Yes, Your Honor.

1      **THE COURT:** I can -- I can probably help you a little bit

2   with that.  But I am going to assume that everything but his

3   attorneys' fees, which we will footnote, everything else you all

4   are going to pay for.

5      **MR. ZAPALA:** Correct.

6      **THE COURT:** So he's not going to have to pay for anything

7   but possibly your time, or whoever is going to represent him.

8   Then with respect to that, do you want to do something to

9   accommodate that?

10      **MR. ZAPALA:** The attorney time?

11      **THE COURT:** Yes.

12      **MR. ZAPALA:** He doesn't need to be represented.  I mean, if

13   that's -- that's his choice.

14      **THE COURT:** He is entitled to have a lawyer.

15      **MR. ZAPALA:** Right.

16      **THE COURT:** You don't want to do anything about attorney

17   time.

18      **MR. ZAPALA:** I don't think it is appropriate at this point.

19      Is this company -- does he have some arrangement with the

20   company about this?  Or is it coming out of his own pocket?

21      **MR. McTERNAN:** I would have to look into that, Your Honor.

22      **THE COURT:** Why don't do you that.  I intend to make sure

23   the burden is as minimal as possible on Mr. Okubo.  Okay?

24      **MR. PARKER:** Your Honor, would the Court entertain a

25   deposition on written questions as a way to --

```
 1        THE COURT:  That's a possibility.  I was just thinking that,
 2   Mr. Parker.  I mean, I was thinking that maybe this list will
 3   turn into written-question depositions.  That may be an
 4   effective next step.
 5        MR. SAVERI:  Um, we will consider it.
 6        THE COURT:  So think it through.  You know, it seems to me
 7   you should be able to boil down, you know, maybe 20, 25 critical
 8   questions for Mr. Okubo to -- for your case at this point.  You
 9   know it inside and out.  Maybe not.  I don't know.
10        MR. SAVERI:  But you know, the problem with -- I mean,
11   written questions are perhaps a useful first step.  But part of
12   what we do in a deposition is follow up on the answers, so
13   that's -- it's --
14        THE COURT:  I understand, but we have a number -- this is an
15   odd situation, atypical situation.  We're just looking for
16   balance and fairness for everybody, and no one's going to have a
17   perfect day.  That's just the way it  going to be.  No one's
18   going to have a perfect day in this case.
19        MR. SAVERI:  I understand that.  So we're not saying no.
20   I'm just saying there will be problems, and let's have the
21   meet-and-confer to find out.
22        THE COURT:  I think that's a very good idea from the
23   government, so see what you can do.  Okay?  But file a joint
24   statement in two weeks from today.
25        MR. ZAPALA:  Just a point of clarification, Your Honor, the
```

1    other six have been stayed.

2        **THE COURT:**  By the way, before I forget, let me interrupt,

3    please.  Work with Mister -- is it McTernan?

4        **MR. McTERNAN:**  Yes, Your Honor.

5        **THE COURT:**  On how to address the expense concerns.  Okay?

6    All right.

7        **MR. ZAPALA:**  Yes sir.  The other six have been stayed, so I

8    assume the Court also wants the plaintiffs to meet and confer

9    with the defendants about a new schedule.

10       **THE COURT:**  Oh yes, do a new schedule.

11       **MR. ZAPALA:**  Thank Your Honor.

12       **THE COURT:**  This will be a side track for Mr. Okubo.  It

13   shouldn't derail anything.

14       **MR. ZAPALA:**  Okay.

15       **THE COURT:**  Yes.

16       **MR. RULE:**  Your Honor, we also have a motion --

17       **THE COURT:**  You're going to be part of the meet-and-confer.

18       **MR. RULE:**  Absolutely.  We have a separate motion to stay --

19       **THE COURT:**  Yes, that's granted.  The 30(b)(6)?  That's

20   granted.

21       **MR. RULE:**  Yes, Your Honor.  We believe, *a fortiori* of your

22   ruling, that should be stayed as well.  We are not talking about

23   quashing it.  It can be held according to the new schedule at an

24   appropriate time.

25       **THE COURT:**  Yes.  Absolutely.  It's stayed until November

1    whatever, yeah.

2         **MR. RULE:**  Thank Your Honor.

3         **THE COURT:**  Okay.  All right.  Does that resolve all the

4    criminal things?

5         Ms. Condon?

6       **MS. CHEN:**  Actually, Your Honor, may I respond very quickly

7    to NCC counsel's brief remarks just now?

8         I actually think that the Ninth Circuit has established

9    pretty clearly that in the case of what NCC is objecting to,

10   that it's actually unnecessary and inappropriate for there to be

11   any sort of judicial remedy.  The Ninth Circuit addressed this

12   recently in *In re: Grand Jury Subpoena*, it came out of the

13   Northern District.  It was actually an issue of first

14   impression.

15        And it was -- it came out of the antitrust *LCD* case where

16   there was a parallel proceeding with a civil case and a parallel

17   criminal prosecution.

18        **THE COURT:**  Yes.  I know that case well.

19      **MS. CHEN:**  Right.  So as Your Honor is aware, because of the

20   normal course of litigation in the civil case, certain relevant

21   materials went from being outside the scope of a grand jury

22   subpoena to inside the scope of the grand jury subpoena.  And

23   the government was able to use that information.

24        And of course at that point the civil defendants said:  Hey,

25   this is inappropriate, this shouldn't happen.

1       Judge Illston recognized it as an issue of first impression,

2  she passed it on to the Ninth Circuit, and the Ninth Circuit

3  unequivocally said:  This is fine.  Absent some sort of improper

4  collusion between the government and the civil litigant, this is

5  just the normal course of parallel proceedings.  There's no need

6  to --

7     **THE COURT:**  Let me just jump in.  I appreciate all that, but

8  I'm going to grant the motion.  It's just stayed.  You can do it

9  in November.

10    **MS. CHEN:**  Understood.  Thank you.

11    **THE COURT:**  All right.  There are a couple of other issues I

12  would like to discuss.

13    **MR. TUBACH:**  Your Honor, just so -- Michael Tubach on behalf

14  of the Rohm defendants.

15     In terms of the stay that the Court has entered with respect

16  to the six witnesses and with respect to NCC's 30(b)(6)

17  deposition --

18    **THE COURT:**  Yes.

19    **MR. TUBACH:**  We just want to make sure that the rest of the

20  schedule with respect to discovery at least, that those dates,

21  those deadlines remain in place.

22     There is no reason for the rest of discovery which we then

23  negotiated heavily with the plaintiffs, which we -- was already

24  extended by the Court by 60 days.  There's no reason why the

25  rest of discovery should be put off --

1       **THE COURT:**  What else is there?

2       **MR. TUBACH:**  That's our point.  There shouldn't be anything

3   else other than --

4       **THE COURT:**  The depos.

5       **MR. TUBACH:**  -- what's specifically been brought up, that

6   the Court stayed, which we understand will get put off until

7   November.

8       **MR. SAVERI:**  Your Honor, Joseph Saveri.

9       **THE COURT:**  Yes.

10      **MR. SAVERI:**  With respect to what I would call the merits

11  discovery, the percipient witness discovery, I think that's

12  generally true.

13      Our concern was about -- is about expert discovery and the

14  finalization of the expert opinions.  And so I -- Mr. Tubach was

15  talking about discovery.  I don't know if he was talking about

16  all discovery or just the -- the merits discovery.

17      We generally think, I think, that it shouldn't cause any

18  great harm to the merits discovery schedule.  The prejudice that

19  we're -- we don't want to -- we don't think would be fair to put

20  on us would be the -- have to --

21      **THE COURT:**  Well, what do you want to do?  Do you want to

22  stretch this out until when?

23      **MR. SAVERI:**  I want to -- as soon as we take the depositions

24  of whoever stayed, we want to be in a position -- and this is

25  what we would say -- within, I don't know, some short period of

```
 1    time, to finalize our expert discovery and get on with the rest
 2    of the case.  Expert discovery, dispositive motions, and trial.
 3         THE COURT:  Okay.
 4         MR. ZAPALA:  And I think what Your Honor said is that the
 5    whole schedule moves.  So, so it's not like we're stayed until
 6    November.  We're going to continue.  We have a very heavy
 7    deposition schedule for February.  I expect we'll have one in
 8    March.
 9         But the concern is that we shouldn't be finalizing merits
10    before --
11         THE COURT:  Let me just jump in.  These witnesses are on the
12    fact of the conspiracy.
13         MR. ZAPALA:  Correct.
14         THE COURT:  You're not going to have an expert write a
15    declaration saying:  I find there was a conspiracy.
16         I mean, how are these witnesses relevant to expert work?
17         MR. SAVERI:  Well, we don't -- we, we have a -- one of the
18    issues in the case is going to be causation and damages.  One of
19    the positions that the defendants have taken is there's no
20    impact of the conspiracy on the United States.
21         These witnesses presumably will know about the extent to
22    which their discussions, their agreements impacted the United
23    States.
24         And then we're doing, I think that I -- it is possible that
25    there will be expert testimony that has to do with the -- the
```

1    structure, conduct, performance of the industry, as well as

2    issues that have to do with the economics of collusion and

3    conspiracy.  So those kind of expert opinions are routine in

4    cartel cases.

5        And candidly, Your Honor, we don't think we should have to

6    finalize those without the benefit of the merits testimony of

7    six or seven people, depending on how we count right now, who

8    everybody agrees are key merits witnesses.

9        So, to follow up on Mr. Zapala's point, we've got a lot of

10   other merits discovery to do.  We're going to finish all the

11   other depositions.  We want to do that; we are committing to

12   that, living by the schedule.

13       There are just some other pieces of it that I think it's

14   fair that we shouldn't be prejudiced by.

15       **MR. ZAPALA:**  There was a logic to the original schedule in

16   that that was the sequence.  The fact discovery closed, then we

17   had expert discovery.

18       And I just think that that logic should continue.

19       **THE COURT:**  Mr. Tubach?

20       **MR. TUBACH:**  Yeah, we're primarily concerned that the fact

21   discovery schedule not get pushed out, except for the limited

22   stay that the Court has put in place.

23       **THE COURT:**  Just the fact discovery.

24       **MR. TUBACH:**  Fact discovery.

25       **THE COURT:**  So you agree that it's going to be a long

1   stretch between now and expert reports, if the seven people are

2   going to be involved in that.

3        **MR. TUBACH:**  No, I think we agree the expert reports should

4   be put out --

5        **THE COURT:**  But you understand --

6        **MR. TUBACH:**  (Inaudible)

7        **THE COURT:**  To the extent I'm understanding Mr. Tubach, I

8   agree.  We're not changing the underlying fact discovery cutoff.

9   You get all that done; you'll do the seven people later.

10       Okay?

11       **MR. ZAPALA:**  That's fine.

12       **THE COURT:**  And to the extent there are dates keyed from

13  that, like the expert discovery dates or summary judgment, we

14  will move all that out.

15       **MR. ZAPALA:**  Yeah.

16       **THE COURT:**  All right?  But it's not -- we're not giving a

17  blanket eight-month extension on fact discovery.

18       **MR. SAVERI:**  I want to be clear, we didn't ask for that.

19       **THE COURT:**  Yes, I didn't think that.

20       **MR. SAVERI:**  And hearing that, I don't think that what

21  Mr. Tubach was -- I think we're okay on that.  Maybe not.  We'll

22  see.

23       **THE COURT:**  Let's spend an hour talking about what

24  Mr. Tubach meant.

25       All right.  I think we're good.  Is that it?  Oh wait, no,

1    we're good on that issue.  Okay, we've got a couple more issues.

2        **MR. SAVERI:**  Yes.

3        **THE COURT:**  Okay.  So the other issue is preliminary

4    approval of the Hitachi Chemical.  It's coming, it's on its way.

5    Consider it done.  I just have to get it out.

6        **MR. SAVERI:**  Thank you, Your Honor.

7        It would be very advantageous to our relationship with the

8    class to get these -- to get it -- to get the settlement going

9    in that process.

10       **THE COURT:**  Yes.  We'll have it done soon.

11       **MR. SAVERI:**  I'm just putting my two bits in.

12       **THE COURT:**  I understand.

13       **MR. SAVERI:**  Thank you, Your Honor.

14       **THE COURT:**  Thank you.  All right, done?  Okay.  Good.

15       **MR. LAMBRINOS:**  Sorry, sorry, Your Honor.  I had a couple --

16   one housekeeping item from the last hearing.

17       **THE COURT:**  Oh.  The defendants.

18       **MR. LAMBRINOS:**  Sorry, Demetrius --

19       **THE COURT:**  Oh, Mr. Tubach's here.

20       **MR. LAMBRINOS:**  Demetrius --

21       **THE COURT:**  Wait a minute, I'm serious.  Nobody is here.

22       **MR. SAVERI:**  I looked over, there was no one sitting --

23       **THE COURT:**  Well, I said I thought we were done, and we just

24   had the settlement --

25       **MR. LAMBRINOS:**  I just had a quick piece of housekeeping.

1   At the last hearing, you had asked us to identify six

2   Bates-numbered documents and have them translated and sent to

3   you for in-camera review.  So we sent those Bates numbers to the

4   defendants a little over two weeks ago, and they haven't sent

5   you the translations yet.  So I assume that those are on their

6   way.

7       So that would be -- that was the piece of housekeeping.

8       **THE COURT:**  Are those the clawback documents?

9       **MR. PAPENDICK:**  You have the clawback documents.

10      **THE COURT:**  Is this the sample of withheld documents?

11      **MR. PAPENDICK:**  Yes, Your Honor.

12      **THE COURT:**  All right.

13      (Reporter interruption)

14      **MR. PAPENDICK:**  Ian Papendick, from Winston Strawn for the

15  Panasonic and Sanyo defendants.

16      **THE COURT:**  So what's the status?

17      **MR. PAPENDICK:**  We just got the translations back.  And this

18  is the first time we're seeing them in English.  So we're

19  looking at them to make sure that we don't need to attach any

20  additional family documents for context, or to submit any

21  declarations to -- to -- to verify the facts of the privilege.

22  And we're planning to get those filed, Your Honor, next week, if

23  that's acceptable with you.

24      **THE COURT:**  That's fine with me.

25      Is that all right?

1    **MR. LAMBRINOS:**  Thank Your Honor.

2    **MR. PAPENDICK:**  Sorry, Your Honor.  Submit them to the

3  Court, not filed.

4    **MR. LAMBRINOS:**  And then the last thing, Your Honor, last

5  night we filed a motion --

6    **THE COURT:**  Just a moment.  I mean, am I doing this in

7  camera?

8    **MR. PAPENDICK:**  You're doing that in camera.  We will

9  provide --

10    **THE COURT:**  All right, so you are going to send --

11    **MR. PAPENDICK:**  -- a copy of correspondence that we's are

12  sending to the Court to the plaintiffs, but the actual documents

13  will be --

14    **THE COURT:**  All right, you're sending me chambers copies.

15    **MR. PAPENDICK:**  Yes.

16    **THE COURT:**  Okay.  Good.

17    **MR. LAMBRINOS:**  The only other item, Your Honor, last night

18  we filed a motion for leave to file a reply on the foreign

19  regulator issue.

20    **THE COURT:**  Oh, yes.  That is granted.

21    **MR. LAMBRINOS:**  Okay.  And I gave chambers copies to your

22  clerk.

23    **THE COURT:**  All you have to do now is actually file the

24  reply.  You have to file it as a separate document.

25    **MR. LAMBRINOS:**  We will do that in the MDL docket today.

1     **THE COURT:**  Yes, okay.

2     **MR. LAMBRINOS:**  Thank you, Your Honor.

3     **THE COURT:**  All right.  Good?

4     Okay, thank you.

5     **MR. SAVERI:**  I think we're good, Your Honor.  Thank you.

6     (Proceedings concluded)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

(Proceedings concluded)

## CERTIFICATE OF REPORTER

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Saturday, January 27, 2018