Joseph W. Cotchett (State Bar No. 36324)
Adam J. Zapala (State Bar No. 245748)
Elizabeth T. Castillo (State Bar No. 280502)
Tamarah P. Prevost (State Bar No. 313422)
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
ecastillo@cpmlegal.com
tprevost@cpmlegal.com

*Interim Lead Counsel for Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CAPACITORS ANTITRUST LITIGATION**<br><br>This Document Relates to:<br><br>**All Indirect Purchaser Actions** | **MDL No. 17-md-02801**<br>**Case No. 3:14-cv-03264**<br><br>**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH HOLYSTONE, NCC/UCC, AND RUBYCON AND FOR APPROVAL OF THE PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Date:** TBD<br>**Time:** 10:00 a.m.<br>**Place:** Courtroom 11, 19th Floor |

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT**, on May 10th or 17th, 2018, at 10:00 a.m., or as soon thereafter as the matter may be heard,[1] in the Courtroom of the Honorable James Donato, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Indirect Purchaser Plaintiffs ("IPPs") will and hereby do move for entry of an order granting preliminary approval of proposed settlements with Defendants: (1) Holystone Enterprise Co., Ltd., Holy Stone Holdings Co., Ltd., Holy Stone Polytech Co., Ltd., and Milestone Global Technology, Inc. (together, "Holystone"), (2) Nippon Chemi-con Corp. and United Chemi-con Corp. (together, "NCC/UCC") and (3) Rubycon Corp. and Rubycon America Inc. (together, "Rubycon") (collectively, "Settling Defendants"). This motion is brought pursuant to Federal Rule of Civil Procedure ("Rule") 23 and the Northern District of California's Procedural Guidance for Class Action Settlements. The grounds for this motion are that the settlements with the Holystone, NCC/UCC, and Rubycon Defendants fall within the range of possible approval, contain no obvious deficiencies, and were the result of serious, informed and non-collusive negotiations.

As with the Round 1 settlements, IPPs also seek approval of their plan of allocation. IPPs' proposed plan of allocation is fair, reasonable, and adequate.  The proposed plan of allocation is the same plan of allocation that this Court previously approved in connection with Plaintiffs' Round 1 settlements. *See* ECF No. 1934.

This motion is based upon this Notice; the Memorandum of Points and Authorities in Support; the Declaration of Adam J. Zapala and the attached exhibits, which include the settlement agreements with the Holystone, NCC/UCC, and the Rubycon Defendants; and any further papers filed in support of this motion as well as arguments of counsel and all records on file in this matter.

---

[1] In connection with this Motion, the Indirect Purchaser Plaintiffs are also filing a Motion to Shorten Time in order for the hearing on this matter to be heard on an expedited basis.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Dated: April 24, 2018

Respectfully Submitted,

**COTCHETT, PITRE & McCARTHY, LLP.**

By: /s/ *Adam J. Zapala*

Joseph W. Cotchett
Adam J. Zapala
Elizabeth T. Castillo
Tamarah P. Prevost
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
ecastillo@cpmlegal.com
tprevost@cpmlegal.com

*Interim Lead Class Counsel for the Indirect Purchaser Plaintiffs*

2

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................... **2**

II. FACTUAL AND PROCEDURAL BACKGROUND ..................................... **3**

   A.  SETTLEMENT EFFORTS WITH DEFENDANTS ................................. 3

   B.  SUMMARY OF SETTLEMENT TERMS ............................................ 4

       1.  Settlement Class Definitions ........................................ 4

   C.  SETTLEMENT CONSIDERATION .................................................... 5

       1.  The Holystone Defendants .......................................... 5

       2.  The NCC/UCC Defendants .......................................... 5

       3.  The Rubycon Defendants ............................................ 6

   D.  INFORMATION ON THE SETTLEMENTS – NORTHERN DISTRICT OF CALIFORNIA GUIDANCE .................................................................. 7

       1.  Differences Between Settlement Class and Class Defined in Complaint ............ 7

       2.  Differences Between Claims Released and Claims in Complaint ...................... 8

       3.  Settlement Recovery Versus Potential Trial Recovery ...................... 8

       4.  Fairness of the Allocation of the Settlement Funds ............................... 9

       5.  Attorneys' Fees and Reimbursement of Litigation Expenses ............................ 10

       6.  Incentive Awards ....................................................... 10

III. ARGUMENT ....................................................................................... **10**

   A.  LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS....10

   B.  THE SETTLEMENTS WITH DEFENDANTS HOLYSTONE, NCC/UCC AND RUBYCON MEET THE STANDARDS FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS.......11

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

1. The Settlements Are the Result of Serious, Informed, and Non-Collusive Negotiations...................................................................................11

2. There Are No Obvious Deficiencies in the Settlements......................................12

3. There is No Preferential Treatment .................................................................12

4. The Proposed Settlements Fall Within the Range of Possible Approval ...........13

C. THE PROPOSED SETTLEMENT CLASSES SATISFY RULE 23 .........................................13

1. Fed. R. Civ. P. 23(a)(1) – Numerosity.............................................................13

2. Fed. R. Civ. P. 23(a)(2) – Commonality...........................................................13

3. Fed. R. Civ. P. 23(a)(3) – Typicality ...............................................................14

4. Fed. R. Civ. P. 23(a)(4) – Fair and Adequate Class Representation............................15

5. All Requirements of Rule 23(b) Are Met In This Case ...................................16

D. THIS COURT SHOULD APPOINT INTERIM CLASS COUNSEL AS SETTLEMENT CLASS COUNSEL.............................................................................................17

E. THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED.............................................................................18

IV. CONCLUSION.............................................................................................. 19

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*Anchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................................................ 17

*Bellinghausen v. Tractor Supply Co.*,
   303 F.R.D. 611 (N.D. Cal. 2014)....................................................................... 13, 17

*In re Catfish Antitrust Litig.*,
   826 F. Supp. 1019 (N.D. Miss. 1993).................................................................... 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2015 U.S. Dist. LEXIS 170525 (N.D. Cal. Dec. 17, 2015)..................................... 18

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) ........................................................ 9, 18, 19

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   2006 WL 1530166 (N.D. Cal. June 5, 2006) .......................................................... 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M-02-1486 PJH, Dkt. No. 2093 (Oct. 27, 2010) .............................................. 18

*Four in One Co. V. S.K. Foods, L.P.*,
   2014 WL 4078232 (E.D. Cal. Aug. 14, 2014) ........................................................ 18

*G.F. v. Contra Costa County*,
   2015 WL 4606078 (N.D. Cal. July 30, 2015).................................................... 3, 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................ 11, 15

*In re High-Tech Emp. Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) .................................................................. 17

*In re Lloyds' Am. Trust Fund Litig.*,
   No. 96 Civ.1262 RWS, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002)............. 18

*In re Omnivision Technologies, Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................. 18

*In re Optical Disk Drive Antitrust Litig.*,
   2016 WL 467444 (N.D. Cal. Feb. 8, 2016) ............................................................ 14

iii

*In re PaineWebber Ltd. P'ships Litig.*,
 171 F.R.D. 104 (S.D.N.Y. 1997), aff'd 117 F.3d 721 (2d Cir. 1997) .................................. 18

*In re Rubber Chems. Antitrust Litig.*,
 232 F.R.D. 346 (N.D. Cal. 2005) ........................................................................................ 14

*In re Tableware Antitrust Litig.*,
 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................................. 10

*In re TFT-LCD Antitrust Litig.*,
 267 F.R.D. 291 (N.D. Cal. 2010), *abrogated on other grounds* ........................................... 16

*In re Vitamins Antitrust Litig.*,
 No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 31, 2000) ........................... 18

**Other Authorities**

Fifth Amendment ...................................................................................................................... 9

Fed. R. Civ. P. 23(a) ......................................................................................... 13, 14, 15, 16

Fed. R. Civ. P. 23(a)(2) .......................................................................................................... 13

Fed. R. Civ. P. 23(a)(3) .......................................................................................................... 14

Fed. R. Civ. P. 23(a)(4) .......................................................................................................... 15

Fed. R. Civ. P. 23(g)(1)(A) ..................................................................................................... 17

Rule 23 ................................................................................................................................... 13

Rule 23(a): (1) ....................................................................................................................... 13

Rule 23(b) ......................................................................................................................... 13, 16

Rule 23(b)(1) .......................................................................................................................... 16

Rule 23(b)(3) ..................................................................................................................... 16, 17

Rule 23(g)(1) .......................................................................................................................... 17

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

1

## <u>STATEMENT OF THE ISSUES TO BE PRESENTED</u>

2     1.     Whether this Court should grant preliminary approval of IPPs' settlements with the

3   Holystone, NCC/UCC, and Rubycon Defendants;

4     2.     Whether the Court should preliminarily approve IPPs' plan of allocation for the Round 2

5   settlements.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 23, Indirect Purchaser Class Plaintiffs ("IPPs") move for an order preliminarily approving settlements with Defendants (1) Holystone Enterprise Co., Ltd., Holy Stone Holdings Co., Ltd., Holy Stone Polytech Co., Ltd. And Milestone Global Technology, Inc. (together, "Holystone"), (2) Nippon Chemi-con Corp. and United Chemi-con Corp. (together, "NCC/UCC") and (3) Rubycon Corp. and Rubycon America Inc. (together, "Rubycon") (collectively, "Settling Defendants"). The settlements were reached after hard-fought litigation and significant discovery, are the result of arms-length negotiations, and IPPs believe the settlements are in the best interests of the proposed classes. *See* Declaration of Adam J. Zapala *et seq.* ("Zapala Decl.").

The cumulative settlement fund established by these three settlements is $20,000,000.00 ($20 million), which represents an excellent recovery for the Classes.  Taken together with the previously approved settlements with Soshin and Hitachi, the cumulative settlement fund for the Round 2 settlements is $34,590,000.00.[2]  Specifically, the settlement with Holystone provides a cash payment to IPPs totaling $2,000,000. The settlement with NCC/UCC provides a payment to IPPs totaling $13,500,000.00. The settlement with Rubycon provides for a payment to IPPs totaling $4,500,000.00. Each of the Settling Defendants has also agreed to provide significant cooperation to IPPs in the continued prosecution of their claims against the non-settling Defendants. In exchange for the settlement consideration they are providing, the Settling Defendants will receive releases related to antitrust and consumer protection claims against them regarding an alleged conspiracy to fix, raise, maintain and/or stabilize the price of electrolytic and/or film capacitors purchased by class members from a distributor. The releases are of precisely the same scope as those releases this Court has already preliminarily (ECF Nos. 1456 and 2009) and finally (ECF No. 1934) approved as to other IPP settlements in this action.

---

[2]  Round 1 settlements were reached with NEC Tokin, Okaya, and Nitsuko totaling $14,950,000.00, and were finally approved by this Court.  *See* ECF No. 1934.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

At the preliminary approval stage, the Court is not asked to make a final determination as to whether or not to approve the settlements. *G.F. v. Contra Costa County*, 2015 WL 4606078, at *8–9 (N.D. Cal. July 30, 2015). Instead, the Court is tasked with determining if the settlements fall within the range of possible approval and appear to be the product of serious, informed, and non-collusive negotiations. *Id.* These settlements easily meet the standard for preliminary approval and for that reason should be approved.

Finally, IPPs' seek preliminary approval of their plan of allocation, which is the same plan of allocation that this Court previously approved.  As described more fully *infra*, IPPs propose that allocation of the settlement funds will be on a *pro rata* basis based on the type and extent of injury suffered by each class member.  Such *pro rata* plans of allocation are routinely approved in antitrust litigation.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an alleged conspiracy by the Defendants to fix, raise, maintain and/or stabilize the price of capacitors sold in the United States. Zapala Decl. ¶ 5. This case has been heavily litigated, with multiple rounds of motions to dismiss and motions for summary judgment filed and class certification currently pending with the Court. *Id.* There have been significant discovery challenges faced by IPPs, not only with respect to obtaining documents and information from Defendants but in regards to obtaining documents and information from non-party capacitor distributors in order to successfully prosecute the case. *Id.*  IPPs have successfully navigated many factual and legal challenges in prosecuting this case, but there is still work to be done. There are no guarantees at trial and trying a complex class action such as this one would be particularly lengthy and costly. Indeed, there should be no dispute that the proposed settlements are the result of a fair evaluation of the merits of the case after years of extensive litigation.

### A.    Settlement Efforts with Defendants

IPPs engaged in extensive settlement negotiations with each of the Settling Defendants. Zapala Decl. ¶¶ 6-21. The parties held in-person and telephonic meetings as well as exchanged

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

information and settlement proposals. *Id.* The proposed settlements were arrived at only after both sides had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigation risks, and issues involving ability to pay. *Id.* Additionally, as noted, these settlements were only reached after substantial discovery in this case. *Id.*

### B.    Summary of Settlement Terms

#### 1.    Settlement Class Definitions

The Settlements with Defendants NCC/UCC and Rubycon involve two separate Settlement Classes—an Electrolytic Settlement Class and a Film Settlement Class.  This is the result of the fact that these Settling Defendants manufacturer *both* electrolytic and film capacitors, and were alleged to have participated in a conspiracy as to both categories of capacitors.  The class definition for these settlements are identical to each other, and virtually the same as other settlement classes included in settlements that have been both preliminarily and finally approved by this Court :

> All persons and entities in the United States who, during the period from April 1, 2002 to February 28, 2014, purchased one or more Electrolytic Capacitor(s) from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants, their parent companies, subsidiaries and Affiliates, any co-conspirators, Defendants' attorneys in this case, federal government entities and instrumentalities, states and their subdivisions, all judges assigned to this case, all jurors in this case, and all persons and entities who directly purchased Capacitors from Defendants.

> All persons and entities in the United States who, during the period from January 1, 2002 to February 28, 2014 purchased one or more Film Capacitor(s) from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants, their parent companies, subsidiaries and Affiliates, any co-conspirators, Defendants' attorneys in this case, federal government entities and instrumentalities, states and their subdivisions, all judges assigned to this case, all jurors in this case, and all persons and entities who directly purchased Capacitors from Defendants.

*See* Zapala Decl., Ex. 2 NCC/UCC Settlement Agreement, Zapala Decl., Ex. 2 ¶ 1(f);  Zapala Decl., Ex. 3, Rubycon Settlement Agreement ¶ 1(f).

There is only one proposed settlement class definition for the settlement with Defendant Holystone, as IPPs have alleged that it participated only in the electrolytic capacitor conspiracy:

4

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

All persons and entities in the United States who, during the period from April 1, 2002 to February 28, 2014, purchased one or more Electrolytic Capacitor(s) from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants, their parent companies, subsidiaries and Affiliates, any co-conspirators, Defendants' attorneys in this case, federal government entities and instrumentalities, states and their subdivisions, all judges assigned to this case, all jurors in this case, and all persons and entities who directly purchased Capacitors from Defendants.

*See* Zapala Decl., Ex. 1, Holystone Settlement Agreement ¶ 1(f).

## B. Settlement Consideration

### 1. The Holystone Defendants

In addition to a monetary settlement of $2,000,000, Holystone has agreed to provide cooperation to IPPs in further prosecuting this action against other Defendants. *See* Zapala Decl., Ex. 1. Holystone has agreed to provide an oral proffer of facts regarding the alleged conspiracy in the capacitors industry.  Similar to settlements with other Defendants, Holystone has agreed to provide IPPs with evidence to demonstrate the existence of a conspiracy, including producing documents related to communications and meetings utilized by Defendants to conspire, fix, raise, maintain and/or stabilize the prices of capacitors, as well as making current or former employees available for interviews, depositions, and testimony at trial.  IPPs calculate that this settlement represents 67% of Holystone's overall affected commerce ($2.98 million)—that is, Holystone's sales to *any* direct purchaser, regardless of whether it was a distributor or not.  Moreover, Holystone was only part of the conspiracy for a 3 ½ year period after its acquisition of Hitachi's tantalum business.  Zapala Decl. ¶ 13.

### 2. The NCC/UCC Defendants

NCC/UCC has agreed to pay $13,500,000 to settle claims with IPPs. *See* Zapala Decl., Ex. 2, NCC/UCC Settlement Agreement ¶ 1(ee). From this lump sum, $12,892,500 will be allocated to the Electrolytic Settlement Class and $607,500 will be allocated to the Film Settlement Class. *Id.* This is allocation is based on the proportional size of the film commerce, approximately 4.5%, to the electrolytic commerce. Like Holystone, NCC/UCC has agreed to provide substantial cooperation to the IPPs. This cooperation includes providing IPPs with

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

corporate statements regarding the alleged conspiracy in the capacitors industry, producing business documents related to the alleged conspiracy, and making current employees available for interviews, depositions, and trial testimony. *Id.* at ¶¶ 32–35. NCC/UCC's substantial cooperation will provide IPPs with evidence to demonstrate the existence of a conspiracy in the capacitors industry and will assist IPPs in understanding the nature and details of those conspiracies. It is IPPs' view that this settlement represents 11.4% of NCC/UCC's affected commerce (approximately $118.7 million in affected sales to distributors during the class period). Zapala Decl. ¶ 14.

### 3. The Rubycon Defendants

Rubycon has agreed to pay $4,500,000 to settle claims with IPPs. *See* Zapala Decl., Ex. 3, Rubycon Settlement Agreement ¶ 1(ee). Of this, $4,297,500 will be allocated to the Electrolytic Settlement Class and $202,500 will be allocated to the Film Settlement Class. *Id.* This is allocation is based on the proportional size of the film commerce, approximately 4.5%, to the electrolytic commerce. Rubycon also agreed to provide substantial cooperation to the IPPs. Rubycon will provide an oral proffer of facts regarding the alleged conspiracy in the capacitors industry. *Id.* at ¶¶ 33–38. Similar to settlements with other Defendants, Rubycon has agreed to provide IPPs with evidence to demonstrate the existence of a conspiracy, including producing documents related to communications and meetings utilized by Defendants to conspire, fix, raise, maintain and/or stabilize the prices of capacitors, as well as making current or former employees available for interviews, depositions, and testimony at trial. *Id.* IPPs calculate that this settlement represents 14% of Rubycon's affected commerce (approximately $32.1 million in sales to distributors during the class period). It should be noted that, as this Court previously recognized in Rubycon's criminal sentencing, Rubycon has a limited ability to pay fines and settlements as a result of its extremely poor financial condition. *Rubycon Sentencing Hearing Transcript* ("*Hr'g Tr.*") 23-25, Jan. 25, 2017; *see also* Zapala Decl. ¶ 15.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

**C.**     **Information on the Settlements – Northern District of California Guidance**

**1.**     **Differences Between Settlement Class and Class Defined in Complaint**

There are no differences between the settlement classes and the classes alleged in the complaint.  The NCC/UCC and Rubycon Defendants are alleged to have participated in the electrolytic conspiracy from April 1, 2002 through such time as the anticompetitive effects of defendants' conduct ceased.  Zapala Decl. ¶ 11; *see also* IPPs' Fifth Consolidated Complaint ("Complaint") ¶¶ 2, 392, 394 (ECF No. 1466).  NCC/UCC and Rubycon were alleged to have participated in the film conspiracy from January 1, 2002 through such time as the anticompetitive effects of defendants' conduct ceased.  In addition to these allegations, IPPs' complaint includes claims for injunctive relief under federal antitrust law.  *Id.* at ¶ 392.  In connection with IPPs' motion for class certification, the end date of the conspiracy and its effects on the classes was February 28, 2014.  ECF No. 1681.  The settlements with the NCC/UCC and Rubycon Defendants cover the time period from April 1, 2002 to February 28, 2014 for the Electrolytic Settlement Class and January 1, 2002 to February 28, 2014 for the Film Settlement Class—the same time periods that IPPs moved for in their motion for class certification. *See* Zapala Decl. ¶ 11; *see also* Zapala Decl., Ex. 2, NCC/UCC Settlement Agreement ¶ 1(f); Zapala Decl., Ex. 3. Rubycon Settlement Agreement ¶ 1(f). There is no material difference between the settlement classes and the alleged classes in the Complaint as to Defendants NCC/UCC and Rubycon.

Defendant Holystone was primarily involved in the manufacturing, marketing, and sale of electrolytic capacitors. *See* Complaint ¶¶ 71-75 (ECF No. 1466). The Electrolytic Settlement Class is alleged to have been active from April 1, 2002 through such time as the anticompetitive effects of defendants' conduct ceased. *Id.* ¶¶ 3, 392. The settlement with the Holystone Defendants covers the time period from April 1, 2002 to February 28, 2014 for the Electrolytic Settlement Class—the same time period that IPPs moved for in their motion for class certification. Zapala Decl. ¶ 12. *See* Zapala Decl., Ex. 1, Holystone Settlement Agreement.  Thus, the settlement class with Defendant Holystone is consistent with the class in the complaint.

### 1.      Differences Between Claims Released and Claims in Complaint

There are no material differences between the claims released in the settlements and the claims in IPPs' Complaint. IPPs allege two conspiracies: the electrolytic capacitor conspiracy, and the film capacitor conspiracy. *See* Compl. ¶¶ 2–3 (ECF No. 1466). In light of the fact that the NCC/UCC and Rubycon Defendants are alleged to have participated in both the electrolytic capacitor and film capacitor conspiracies, the parties negotiated a release of claims for both electrolytic and film capacitor purchases. *See* Zapala Decl., Ex. 2, NCC/UCC Settlement Agreement ¶ 1(aa); Zapala Decl., Ex. 3, Rubycon Settlement Agreement ¶ 1(z). The release of claims against Holystone is similar in that it releases all antitrust and consumer protection claims that the classes could have brought against Holystone. Holystone did not sell film capacitors in the United States. IPPs have not released any claims against the Holystone, NCC/UCC, or Rubycon Defendants for product liability, breach of contract, breach of warranty or personal injury, or any other claim unrelated to the allegations in the Actions. *See* Zapala Decl., Ex. 1, Holystone Settlement Agreement; Zapala Decl., Ex. 2, NCC/UCC Settlement Agreement ¶ 14. Zapala Decl., Ex. 3, Rubycon Settlement Agreement ¶ 14. As they were with the already-approved settlements, these releases are fair, reasonable, and adequate to the class.

### 2.      Settlement Recovery Versus Potential Trial Recovery

Class certification is now fully briefed and pending in front of the Court for disposition, with the potential that no classes are certified in this action, or are certified for a shorter period than proposed by IPPs. There is also the very real potential in this case for certain Defendants to become insolvent during the pendency of this litigation. Many Defendants in this action operate on extremely slim margins and the payment of government fines around the world concerning the price fixing conduct at issue in this case may cause them to become insolvent.

The foregoing are just a few of the risks to IPPs' success. Interim Lead Counsel's duties to the IPPs preclude a further or more detailed discussion in this brief as to how Interim Lead Counsel weighs those risks. Even at this point, however, IPPs believe that the settlements reflect a fair and reasonable compromise in light of potential trial recovery. These settlements come

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

after substantial discovery in this action, and come at a time during which some non-settling Defendants still refuse to produce their witnesses for depositions, or the witnesses do show up but invoke the Fifth Amendment and refuse to testify. These factors make the cooperation being provided significantly more valuable than in many other cases, and IPPs believe that the value of this cooperation must be included in the weighing of actual recovery versus potential recovery.

In addition, the settlements reflect a very high percentage of the overall sale of capacitors by the settling Defendants. As noted, based on the data provided to IPPs, the settlement with Holystone represents approximately 67% of their overall (distributor and non distributors alike) affected commerce in the United States during the relevant class period. Zapala Decl. ¶ 13. Based on the data provided to IPPs, the settlement with NCC/UCC represents approximately 11.4% of their affected commerce in the United States during the relevant class period. *Id.* ¶ 14.  Based on the data provided to IPPs, the settlement with Rubycon represents approximately 14% of their affected commerce in the United States during the relevant class period. Zapala Decl. *Id.* These settlements are truly excellent recoveries for the classes. *Id.* ¶ 15.

### 3.	Fairness of the Allocation of the Settlement Funds

IPPs propose that allocation of the settlement funds will be on a *pro rata* basis, based on the type and extent of injury suffered by each class member in those states which permit indirect purchaser antitrust claims. Specifically, the settlement fund paid by Holystone will be allocated to those who submit approved claims for purchases of electrolytic capacitors during the class period on a *pro rata* basis, while the two separate funds paid by NCC/UCC and Rubycon will be allocated to those who submit approved claims for purchases of electrolytic and/or film capacitors during the settlement class periods on a *pro rata basis*. "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  This plan of allocation, already approved in substance by the Court in previous settlements, is fair, reasonable, and adequate.

9

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

### 4.      Attorneys' Fees and Reimbursement of Litigation Expenses

As discussed more fully in a separate Motion for approval of IPPs' class notice program, IPPs are noticing the class that they will not seek more than 30% of the settlement fund for the Round 2 settlements.  IPPs reserve the right to seek less than the 30% amount and will submit their attorneys' fees and litigation expenses motion in advance of the opt-out and objection deadline.  This motion will be posted on the IPP settlement website at least 14 days prior to the objection and opt-out deadline, as is customary in this type of litigation.  Additionally, IPPs will seek reimbursement of reasonable litigation expenses.

### 5.      Incentive Awards

IPPs are not seeking incentive awards at this time.

## III.   ARGUMENT

### A.      Legal Standard for Preliminary Approval of Class Action Settlements

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *G.F. v. Contra Costa County*, 2015 WL 4606078, at *8 (N.D. Cal. July 20, 2015) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Requesting preliminary approval is the first step in the settlement process. Newberg on Class Actions § 13:10 (5th ed.). When asked to grant preliminary approval of a class action settlement, the Court must determine if: (1) the proposed settlements appear to be the product of serious, informed, non-collusive negotiations; (2) have no obvious deficiencies; (3) do not improperly grant preferential treatment to class representatives or segments of the class; and (4) fall within the range of possible approval. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual for Complex Litigation (Fourth)* § 21.632 (2004). Preliminary approval allows the Court and counsel to prepare a plan to notice the class of the settlements, which gives class members a full and fair opportunity to consider the proposed settlements and respond, such as an objection or decision to opt-out of the settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigants, and their strategies, positions and proof.'" *Id.* at 1026 (quoting *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 626 (9th Cir. 1982)).

**B.      The Settlements with Defendants Holystone, NCC/UCC and Rubycon Meet the Standards for Preliminary Approval of Class Action Settlements**

The settlements with Defendants Holystone, NCC/UCC and Rubycon meet the standards for preliminary approval because the settlements were the result of serious, informed, and non-collusive negotiations. There are also no obvious deficiencies in the settlements—the settlements do not grant preferential treatment to the class representatives or any subset of the class, and the settlements fall within the range of possible approval. As such, preliminary approval of the settlements is appropriate and warranted.

**1.      The Settlements Are the Result of Serious, Informed, and Non-Collusive Negotiations**

IPPs and the three Settling Defendants are represented by highly skilled antitrust counsel who are knowledgeable of the law and have extensive experience with complex antitrust lawsuits. IPPs and Defendants have been heavily litigating this case for close to four years. The parties have conducted over 120 depositions during the course of this litigation and prior to reaching these settlement agreements. Moreover, Defendants have produced roughly 11,223,611 documents to IPPs, comprised of approximately 28,331,064 pages. At the time of reaching these settlements, the parties had engaged in expert discovery and fully briefed IPPs' motion for class certification. Indeed, IPPs reached a settlement with NCC/UCC at approximately 1:00 am the night before the hearing on IPPs' motion for class certification. Zapala Decl. ¶ 19. At the time of reaching these settlements, therefore, IPPs and the Settling Defendants were well-informed about the facts, damages, and defenses relevant to this litigation.

Moreover, throughout this litigation, Defendants Holystone, NCC/UCC and Rubycon (and the other non-settling Defendants) have vigorously contested this case, challenging IPPs'

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

legal theories of liability, whether the facts support Defendants' level of involvement in such a conspiracy, and the damages for which each Defendant may be liable. The Rubycon settlement, like many of IPPs' other settlements, was reached with the assistance of a nationally prominent mediator who has mediated many complex antitrust cases, including other settlements in this action.  Zapala Decl. ¶ 18.  The settlements before the Court, therefore, are the result of serious and informed negotiations. Additionally, there has been no collusion between the settling parties. Because of this, the settlements are entitled to a presumption of approval.

### 2.   There Are No Obvious Deficiencies in the Settlements

As set forth above, the settlements were the result of serious analysis and consideration of the significant risks faced by both sides and there are no obvious deficiencies in the settlements. For example, the size of the settlements is commensurate with the respective market share of Defendants Holystone, NCC/UCC, and Rubycon in the capacitors industry affected by the antitrust conspiracy alleged by Plaintiffs. These settlements were entered into after full briefing and expert discovery related to IPPs' motion for class certification.

The settlements were reached with full appreciation of the risks faced by both sides. Rulings favorable to IPPs in these pending motions would significantly impact the value of settlements for Defendants who chose to wait for the rulings on those motions. IPPs appropriately valued the cooperation provided by Defendants Holystone, NCC/UCC, and Rubycon because cooperation will likely result in higher future settlements with other Defendants in this case.

### 3.   There is No Preferential Treatment

There is no preferential treatment of any class representative or any segment of the classes. All indirect purchasers of capacitors with a right to recover will have an ability to submit a claim for a *pro rata* share of the settlement funds based on the type of capacitors they purchased. IPPs are not seeking incentive awards and the settlement agreements do not provide for any preferential treatment to them or to any segment of the classes. This element in favor of preliminary approval is met.

### 4. The Proposed Settlements Fall Within the Range of Possible Approval

For the reasons stated *supra*, IPPs believe that the proposed Settlements fall within the range of possible approval and should be preliminarily approved.

### C. The Proposed Settlement Classes Satisfy Rule 23

In addition to the fairness of the settlement, this action is appropriate for class treatment. Class certification is appropriate when the proposed class and the proposed class representatives meet the four prerequisites of Rule 23(a): (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) fair and adequate class representation. Fed. R. Civ. P. 23(a). Additionally, a class must satisfy one of the criteria in Rule 23(b). Fed. R. Civ. P. 23(b). The Settlement Classes in these settlements meet all Rule 23 requirements.

### 1. Fed. R. Civ. P. 23(a)(1) – Numerosity

The first prerequisite for certifying a class is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In this case, IPPs seek to certify a class of all individuals or entities who purchased one or more capacitors manufactured by a Defendant from a distributor. There are likely hundreds of thousands of class members, such that joinder of all is impracticable. "There is no exact class size that meets the numerosity requirement; rather, where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 616 (N.D. Cal. 2014) (internal quotation marks omitted) (citing *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005)). Therefore, the first prerequisite of Rule 23(a) is met.

### 2. Fed. R. Civ. P. 23(a)(2) – Commonality

The second prerequisite for certifying a class is that "there are questions or law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In horizontal price-fixing antitrust cases, such as this one, common questions of law and fact, and their predominance, are presumed because the core issue in such a case is whether or not there was a conspiracy amongst conspirators to fix, raise, maintain, and/or stabilize prices and whether such price-fixing occurred. Newberg on Class

13

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Actions § 20:23 (5th ed.). "Because the gravamen of a price-fixing claim is that the price in a given market is artificially high, there is a presumption that an illegal price-fixing scheme impacts upon all purchasers of a price-fixed product in a conspiratorially affected market." *Rubber Chems.*, 232 F.R.D. at 352 (internal quotation marks and citation omitted). Courts have consistently found that "[c]ommon issues predominate in proving an antitrust violation 'when the focus is on the defendants' conduct and not on the conduct of the individual class members.'" *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *7 (N.D. Cal. June 5, 2006).

In this case, common questions of fact and law predominate over individual questions. IPPs have alleged that Defendants engaged in a joint conspiracy to fix, raise, maintain and/or stabilize the price of capacitors. The common questions of fact or law facing the Court are whether the Defendants in fact entered into an illegal agreement to fix, raise, maintain and/or stabilize the price of capacitors; whether the antitrust conspiracy did, in fact, result in the artificial inflation of the price of capacitors; and whether those overcharges were passed on to the classes. "[B]ecause price-fixing conspiracies often injure all purchasers that were subject to the alleged overcharge and in a similar fashion, courts generally find that impact can be established on a class-wide basis and thus that common questions of law or fact predominate over individual issues." Newberg on Class Actions § 20:23 (5th ed.). The second prerequisite of Rule 23(a) is met.

### 3.   Fed. R. Civ. P. 23(a)(3) – Typicality

The third prerequisite for certifying a class is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]ypicality results if the representative plaintiffs' claims arise[ ] from the same event, practice or course of conduct that gives rise to the claims of the absent class members and if their claims are based on the same legal or remedial theory.'" *In re Optical Disk Drive Antitrust Litig.*, 2016 WL 467444, at *11 (N.D. Cal. Feb. 8, 2016) (citing *In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 164 (S.D.N.Y. 2000)). Typicality is easily satisfied in cases involving horizontal

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

price-fixing because "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993).

In this case, IPPs' theory is that the Defendants illegally fixed, raised, maintained, and/or stabilized the price of capacitors and that the artificially inflated prices charged by Defendants for their capacitors affected the price paid by indirect purchasers of capacitors. All class representatives purchased one or more capacitors from a distributor that was manufactured by Defendants. As demonstrated in the expert report of Dr. Russell Lamb, all class members, including the Class Representatives, suffered antitrust impact and the same type of harm as other absent class members in the form of paying inflated prices. The class representatives are seeking damages under the same legal theories as absent class members. Because the class representatives' claims are typical of the members of the class, the third prerequisite of Rule 23(a) is met.

### 4.    Fed. R. Civ. P. 23(a)(4) – Fair and Adequate Class Representation

The fourth prerequisite for certifying a class is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. The interests of the class representatives and their counsel are completely aligned with the interests of the absent class members. The class representatives suffered the same injury as the absent class members in that they paid artificially inflated prices for capacitors. IPPs' counsel also has the same interest in proving that Defendants engaged in an illegal antitrust conspiracy which resulted in artificial inflation of the price of capacitors. The vigor with which the class representatives and their counsel have prosecuted this case is well documented in the docket of this case. IPPs have expended considerable time, energy and resources in gathering evidence in support of their

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

case and in contesting Defendants' efforts to dismiss or minimize their case, much of which is documented in the several thousand docket entries in this case. The fourth prerequisite of Rule 23(a) is met.

### 5.    All Requirements of Rule 23(b) Are Met In This Case

Once the prerequisites of Rule 23(a) are met, a prospective class must satisfy only one of four Rule 23(b) requirements to continue as a class. Rule 23(b)(1) allows class actions when prosecuting separate actions by individual members would create a risk of either inconsistent or varying adjudication of claims, or adjudication with respect to individual class members would dispose of the claims of those with the class who are not part of the litigation or would substantially impair or impede their right to protect their interests. Fed. R. Civ. P. 23(b)(1). Rule 23(b)(3) allows class actions when common questions of law or fact predominate such that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The requirements of Rule 23(b) are met. IPPs have alleged a horizontal price-fixing conspiracy of capacitors that is nationwide in scope.  Multiple individual actions relating to the nature and scope of the Defendants' price-fixing conspiracy of capacitors creates a high risk of inconsistent and vary adjudication of claims. Fed. R. Civ. P. 23(b)(1). In addition, IPPs in this case allege that Defendants have engaged in actions that apply generally to the entire class in that Defendants have conspired to illegally fix, raise, maintain, and/or stabilize the price of capacitors such that individuals and entities in the United States are paying an inflated price for such capacitors.

Additionally, common questions of law or fact predominate in this case. "[I]f common questions are found to predominate in an antitrust action . . . courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied." *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 291, 314 (N.D. Cal. 2010), *abrogated on other grounds*. To determine whether or not a class action is the superior method of adjudication, courts look to the four factors from Rule 23(b)(3): "(1) the interest of each class member in individually controlling the prosecution or defense of

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1227 (N.D. Cal. 2013); *accord* Fed. R. Civ. P. 23(b)(3).

The antitrust conspiracy in this case is appropriate for Rule 23(b)(3) resolution. The damages of each individual class member are generally too small to warrant bringing an individual lawsuit but the total damages in aggregate for the class members are significant, which favors resolution by class action. "'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's . . . labor.'" *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). Given the facts of this case, the class action is clearly superior to alternative methods of adjudicating this controversy.

### D.    This Court Should Appoint Interim Class Counsel as Settlement Class Counsel

Under Rule 23(g)(1), when certifying a class, including for settlement purposes, the Court should appoint class counsel. Fed. R. Civ. P. 23(g)(1); *see also Bellinghausen*, 303 F.R.D. at 618. When appointing class counsel, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Cotchett, Pitre & McCarthy, LLP ("CPM") is recognized as one of the top litigation firms in the United States, and its antitrust team is recognized as experts in the field. In this case, however, the skill and ability of CPM is not theoretical. This Court has had the opportunity to personally observe CPM's litigation skill and

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

17

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

knowledge of antitrust law, as well as the resources that CPM has committed to this case. CPM meets and exceeds the requirements for appointment as Settlement Class Counsel for these settlements.

### E. The Proposed Plan of Allocation is Fair, Reasonable and Adequate and Should be Approved

"Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement; the distribution plan must be 'fair, reasonable and adequate.'" *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (internal citations omitted). When allocating funds, "[i]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1045-46 (N.D. Cal. 2008) (internal citations omitted) (approving securities class action settlement allocation on a "per-share basis"); *Four in One Co. V. S.K. Foods, L.P.*, 2:08-CV-3017 KJM EFC, 2014 WL 4078232, at * (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable").

Pro rata distribution has frequently been determined by courts to be fair, adequate, and reasonable. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 U.S. Dist. LEXIS 170525, at *198-200 (N.D. Cal. Dec. 17, 2015) (approving pro rata plan of allocation based upon proportional value of price-fixed component in finished product); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, at *2 (Oct. 27, 2010) (Order Approving Pro Rata Distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931, at *32 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable.") (citations omitted); *In re Lloyds' Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 U.S. Dist. LEXIS 22663, at *54 (S.D.N.Y. Nov. 26, 2002) ("Pro rata allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits."); *In re*

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

18

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

*PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 135 (S.D.N.Y. 1997), aff'd 117 F.3d 721 (2d Cir. 1997) ("[A] pro rata distribution of the Settlement on the basis of Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of the merits of the Class Members' claims.")

Here, as with the Round 1 settlements, allocation of the settlement funds will be on a *pro rata* basis based on the type and extent of injury suffered by each class member in those states which permit indirect purchaser antitrust claims. Specifically, $12,892,500.00 from the NCC/UCC settlement will be allocated to the electrolytic settlement pot, while $607,500 will be allocated to the film pot. With respect to the Rubycon settlement, $4,297,500 will be allocated to the electrolytic settlement point, while $202,500 will be allocated to the film settlement point. This division or allocation of the settlement proceeds is based on the fact that overall film commerce in the case is 4.5% of overall electrolytic commerce in the case as a proportion.

With respect to the *pro rata* distribution, the plan of allocation contemplates a *pro rata* distribution to each class member with damages claims from the indirect purchaser states based upon the number of approved purchases of film or electrolytic capacitor purchases during the respective settlement class periods as against the respective settlement pots for either film or electrolytic capacitors. This is a reasonable and fair way to compensate classes. Thus, the recovery to individual class member is tied to the volume of their purchases, the number of other qualified class members making claims against the settlement fund, and the size of the overall fund. This plan of allocation is thus "fair, adequate, and reasonable" and merits approval by the Court. *See Citric Acid*, 145 F. Supp. at 1154.

## IV.    CONCLUSION

For the foregoing reasons, IPPs respectfully request that this Court enter an order: (1) preliminarily approving the proposed settlements with the Holystone, NCC/UCC, Rubycon Defendants, (2) appointing CPM as Settlement Class Counsel, and (3) approving the proposed plan of allocation.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

Dated: April 24, 2018                  Respectfully Submitted:

                                       /s/ *Adam J. Zapala*
                                       Joseph W. Cotchett
                                       Adam J. Zapala
                                       Elizabeth T. Castillo
                                       Tamarah P. Prevost
                                       **COTCHETT, PITRE & McCARTHY, LLP**
                                       840 Malcolm Road, Suite 200
                                       Burlingame, CA 94010
                                       Telephone: (650) 697-6000
                                       Facsimile: (650) 697-0577
                                       azapala@cpmlegal.com
                                       ecastillo@cpmlegal.com
                                       tprevost@cpmlegal.com

                                       *Interim Lead Counsel for Indirect Purchaser Plaintiffs*

Indirect Purchaser Plaintiffs' Notice of Motion and Motion For Preliminary Approval of Settlements with Holystone, NCC/UCC, and Rubycon; Approval of Plan of Allocation; Memorandum of Points and Authorities Thereto; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD