# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CAPACITORS ANTITRUST LITIGATION** | **Case No. 3:14-cv-03264-JD** |
| | **SETTLEMENT AGREEMENT** |
| This Document Relates to: | |
| Indirect Purchaser Actions | |

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

This Settlement Agreement ("Settlement Agreement") is made and entered into this 12th day of April, 2018 (the "Execution Date"), by and among Defendants Holy Stone Enterprise Co., Ltd., Holy Stone Holdings Co., Ltd., Holy Stone Polytech Co., Ltd., Milestone Global Technology, Inc., doing business as HolyStone International, and Vishay Polytech Co., Ltd. (together referred herein as "Holy Stone.") and the Indirect Purchaser Plaintiffs ("IPPs"), both individually and on behalf of the Class in the above captioned class action. This Settlement Agreement is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions hereof.

## RECITALS

WHEREAS, Indirect Purchaser Plaintiffs are prosecuting the above-captioned action (the "Class Action") on their own behalf and on behalf of the Class against, among others, Holy Stone and other Defendants and alleged co-conspirators;

WHEREAS, Indirect Purchaser Plaintiffs allege, among other things, that Holy Stone violated the antitrust and consumer protection laws by conspiring to fix, raise, maintain, or stabilize the prices of Capacitors and that these acts caused the Class to incur damages;

WHEREAS, Holy Stone has denied and continues to deny each and all of Indirect Purchaser Plaintiffs' claims and allegations of wrongdoing; has not conceded or admitted any liability, or that it violated or breached any law, regulation, or duty owed to the Indirect Purchaser Plaintiffs; has denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged in the Actions; and further denies the allegations that the Indirect Purchaser Plaintiffs or any member of the Class were harmed by any conduct by Holy Stone alleged in the Actions or otherwise;

WHEREAS, Indirect Purchaser Plaintiffs and Defendants have engaged in extensive discovery regarding the facts pertaining to Indirect Purchaser Plaintiffs' claims and Defendants' defenses;

WHEREAS, Indirect Purchaser Plaintiffs and Holy Stone agree that neither this Settlement Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Holy Stone or of the truth of any of the claims or allegations alleged in the Actions;

WHEREAS, Indirect Purchaser Plaintiffs' Class Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Indirect Purchaser Plaintiffs' Fifth Consolidated Complaint filed in Docket No. 3:14-cv-03263-JD, the legal and factual defenses thereto, and the applicable law, that it is in the best interests of the Indirect Purchaser Plaintiffs and the Class to enter into this Settlement Agreement to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Indirect Purchaser Plaintiffs and the Class, and, further, that Indirect Purchaser Plaintiffs' Class Counsel consider the Settlement set forth herein to be fair, reasonable, and adequate and in the best interests of the Indirect Purchaser Plaintiffs and the Class; and

WHEREAS, Holy Stone has concluded, despite its belief that it is not liable for the claims asserted against it in the Actions and that it has good defenses thereto, that it will enter into this Settlement Agreement in order to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and thereby to put to rest this controversy with respect to the Indirect Purchaser Plaintiffs and the Class and avoid the risks inherent in complex litigation; and

WHEREAS, arm's length settlement negotiations have taken place between counsel for Indirect Purchaser Plaintiffs and Holy Stone, and this Settlement Agreement, which embodies all of the terms and conditions of the Settlement between the Settling Parties, both individually and on behalf of the Class, has been reached as a result of the Settling Parties' negotiations (subject to the approval of the Court) as provided herein and is intended to supersede any prior agreements or understandings between the Settling Parties.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**AGREEMENT**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Settling Parties, by and through their undersigned attorneys of record, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, that the Actions and the Released Claims as against Holy Stone shall be finally and fully settled, compromised and dismissed on the merits and with prejudice, without costs as to Indirect Purchaser Plaintiffs, the Class, or Holy Stone, upon and subject to the approval of the Court, following notice to the Class, on the following on the following terms and conditions:

**Definitions**

1. As used in this Settlement Agreement the following terms shall have the meanings specified below:

(a) "Action" or "Actions" means *In re Capacitors Antitrust Litigation* – All Indirect Purchaser Actions, Case No. 3:14-cv-03264-JD, and each of the cases brought on behalf of indirect purchasers previously consolidated and/or included as part of Docket No. 3:14-cv-03264-JD.

(b) "Affiliates" means entities controlling, controlled by, or under common control with a Releasee or Releasor.

(c) "Authorized Claimant" means any Indirect Plaintiff Purchaser who, in accordance with the terms of this Settlement Agreement, is entitled to a distribution consistent with any Distribution Plan or order of the Court ordering distribution to the Class.

(d) "Capacitors" means electronic components that store electric charges between one or more pairs of conductors separated by an insulator. It includes electrolytic, aluminum, tantalum, and/or film capacitors.

(e) "Claims Administrator" means the claims administrator(s) to be selected by Class Counsel.

(f) "Class" is defined as: All persons and entities in the United States who, during the period from April 1, 2002 to February 28, 2014, purchased one or more Electrolytic Capacitor(s) from a

distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants, their parent companies, subsidiaries and Affiliates, any co-conspirators, Defendants' attorneys in this case, federal government entities and instrumentalities, states and their subdivisions, all judges assigned to this case, all jurors in this case, and all persons and entities who directly purchased Capacitors from Defendant.

(g) "Class Counsel" means the law firm of Cotchett, Pitre & McCarthy, LLP.

(h) "Class Member" means a Person who falls within the definition of the Class and who does not timely and validly elect to be excluded from the Class in accordance with the procedure to be established by the Court.

(i) "Court" means the United States District Court for the Northern District of California.

(j) "Defendant" or "Defendants" means Hitachi Chemical Co., Ltd., Hitachi AIC Inc., Hitachi Chemical Co. America, Ltd., Nippon Chemi-Con Corp., United Chemi-Con, Inc., Rubycon Corp., Rubycon America Inc., Panasonic Corp., Panasonic Corp. of North America, SANYO Electric Co., Ltd., SANYO Electronic Device (U.S.A.) Corp., Elna Co., Ltd. and Elna America Inc., Matsuo Electric Co., Ltd., NEC TOKIN Corp., NEC TOKIN America Inc., Nichicon Corp., Nichicon America Corp., Fujitsu Media Devices, Ltd., Nissei Electric Co., Ltd., Nitsuko Electronics Corp., Okaya Electric Industries Co., Ltd., Shinyei Technology Co., Ltd., Shinyei Capacitor Co., Ltd., Soshin Electric Co., Ltd., Taitsu Corp., and Toshin Kogyo Co., Ltd.

(k) "Distribution Plan" means any plan or formula of allocation of the Gross Settlement Fund, to be approved by the Court, whereby the Net Settlement Fund shall in the future be distributed to Authorized Claimants.

(l) "Document" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

(m) "Effective Date" means the first date by which all of the following events and conditions have been met or have occurred:

(1)    All parties have executed this Settlement Agreement;

(2)    The Court has preliminarily approved the Settlement Agreement;

(3)    Notice has been provided to the Classes in a manner approved by the Court;

(4)    The Court has entered a Final Judgment; and

(5)    The Final Judgment (as more fully described in ¶ 6 of the Settlement Agreement) has become final, with the occurrence of the following:  (a) the entry by the Court of a final order approving the Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure together with entry of a final judgment dismissing the Class Action and all claims therein against Holy Stone with prejudice as to all Class Members (the "Final Judgment"), and (b) the expiration of the time for appeal or to seek permission to appeal from the Court's approval of the Settlement Agreement and entry of the Final Judgment or, if an appeal from an approval and Final Judgment is taken, the affirmance of such Final Judgment in its entirety, without modification, by the court of last resort to which an appeal of such Final Judgment may be taken, provided, however, a modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund or any plan of allocation or distribution of the Settlement Fund shall not be deemed a modification of all or part of the terms of this Settlement Agreement or the Final Judgment. It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

(n)    "Electrolytic Capacitor" means a capacitor that uses an electrolyte (an ionic conducting liquid) as one of its plates to achieve a relatively larger capacitance per volume. It includes but is not limited to the following: circular polymer aluminum electrolytic capacitors, rectangular polymer aluminum capacitors, rectangular polymer tantalum capacitors, non-polymer aluminum electrolytic capacitors, and non-polymer electrolytic double-layer capacitors.

(o)    "Film Capacitor" means a capacitor that uses insulating plastic film and one of two conductive materials, propylene or polyester. It includes but is not limited to the following: (1) film

and aluminum foil capacitors, (2) film and other metal capacitors, (3) layered capacitors, and (4) surface-mount capacitors (i.e., capacitors without leaves).

(p) "Escrow Agent" means the agent jointly designated by Class Counsel and Holy Stone, and any successor agent.

(q) "Execution Date" means March 20, 2018, the date by which all parties have executed this settlement agreement.

(r)   "Final" means, with respect to any order of court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. Without limitation, an order becomes "Final" when: (a) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (b) an appeal has been filed and either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this Settlement Agreement, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind. Any appeal or other proceeding pertaining solely to any order adopting or approving a Distribution Plan, and/or to any order issued in respect of an application for attorneys' fees and expenses consistent with this Settlement Agreement, shall not in any way delay or preclude the Judgment from becoming Final.

(s) "Gross Settlement Fund" means the Settlement Amount plus any interest that may accrue.

(t)   "Indirect Purchaser Plaintiffs" means Michael Brooks, CAE Sound, Steve Wong, Toy-Knowlgy Inc., AGS Devices, Co., AGS Devices, Ltd., J&O Electronics, Nebraska Dynamics, Inc., Angstrom, Inc., MakersLED, and In Home Tech Solutions, Inc.,  as well as any other Person added as an Indirect Purchaser Plaintiff in the Actions.

(u) "Judgment" means the order of judgment and dismissal of the Actions with prejudice.

(v) "Net Settlement Fund" means the Gross Settlement Fund, less the payments set forth in ¶ 16.

(w) "Holy Stone" means Holy Stone Enterprise Co., Ltd., Holy Stone Holdings Co., Ltd., Holy Stone Polytech Co., Ltd., Milestone Global Technology, Inc., doing business as HolyStone International, and Vishay Polytech Co., Ltd., and its respective past, present and future direct and indirect parents, members, subsidiaries, and Affiliates, and the past, present, and future respective officers, directors, employees, managers, members, partners, agents, shareholders (in their capacity as shareholders), attorneys and legal representatives, assigns, servants, and representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

(x) "Notice, Administrative, and Claims Administration Costs" means the reasonable sum of money not in excess of $250,000 to be paid out of the Gross Settlement Fund to pay for notice to the Class and related administrative and claims administration costs.

(y) "Person(s)" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and any spouses, heirs, predecessors, successors, representatives, or assignees of any of the foregoing.

(z) "Proof of Claim and Release" means the form to be sent to the Class, upon further order(s) of the Court, by which any member of the Class may make claims against the Gross Settlement Fund.

(aa) "Released Claims" means any and all manner of claims, demands, rights, actions, suits, causes of action, whether class, individual, or otherwise in nature, fees, costs, penalties, injuries, damages whenever incurred, liabilities of any nature whatsoever, known or unknown (including, but not limited to, "Unknown Claims"), foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, in law or in equity, under the laws of any jurisdiction, which Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have or hereafter can, shall, or may have, relating in any way to any conduct prior to

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

February 28, 2014 and arising out of or related in any way in whole or in part to any facts, circumstances, acts, or omissions arising out of or related to (1) the purchase, pricing, selling, discounting, marketing, manufacturing, and/or distributing of Electrolytic Capacitors;  (2) any agreement, combination, or conspiracy to raise, fix, maintain, or stabilize the prices of Electrolytic Capacitors or restrict, reduce, alter, or allocate the supply, quantity, or quality of Electrolytic Capacitors or concerning the development, manufacture, supply, distribution, transfer, marketing, sale, or pricing of Electrolytic Capacitors, or any other restraint of competition alleged in the Action or that could have been or hereafter could be alleged against the Releasees relating to Electrolytic Capacitors, or (3) any other restraint of competition relating to Electrolytic Capacitors that could be asserted as a violation of the Sherman Act or any other antitrust, unjust enrichment, unfair competition, unfair practices, trade practices, price discrimination, unitary pricing, racketeering, civil conspiracy, or consumer protection law, whether under federal, state, local, or foreign law.

(bb) "Releasees" refers jointly and severally, individually and collectively to Holy Stone as defined in ¶ 1(w) above.

(cc) "Releasors" refers jointly and severally, individually and collectively to the Indirect Purchaser Plaintiffs and each and every member of the Class on their own behalf and on behalf of their respective past, present, and/or future direct and indirect parents, members, subsidiaries, and Affiliates, and their past, present, and/or future officers, directors, employees, agents, attorneys and legal representatives, servants, and representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

(dd) "Settlement" means the settlement of the Released Claims set forth herein.

(ee) "Settlement Amount" means Two Million U.S. Dollars ($2,000,000).

(ff) "Settling Parties" means, collectively, the Indirect Purchaser Plaintiffs (on behalf of themselves and the Class) and Holy Stone.

(gg) "Unknown Claims" means any Released Claim that an Indirect Purchaser Plaintiff and/or Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of

8

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

the Releasees that if known by him, her, or it, might have affected his, her, or its settlement with and release of the Releasees, or might have affected his, her, or its decision not to object to this Settlement. Such Unknown Claims include claims that are the subject of California Civil Code § 1542 and equivalent, similar or comparable laws or principles of law. California Civil Code § 1542 provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

**Preliminary Approval Order, Notice Order and Settlement Hearing**

2. ***Reasonable Best Efforts to Effectuate this Settlement.*** The Settling Parties: (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the terms and conditions of this Settlement Agreement.

3. ***Motion for Preliminary Approval.*** At a time to be determined by Class Counsel, Class Counsel shall submit this Settlement Agreement to the Court and shall apply for entry of a Preliminary Approval Order, requesting, inter alia, preliminary approval of the Settlement. The motion shall include (a) the proposed Preliminary Approval Order, and (b) a definition of the proposed settlement Class pursuant to Federal Rule of Civil Procedure 23.

4. ***Proposed Notice.*** At a time to be determined in their sole discretion, Class Counsel shall submit to the Court for approval a proposed form of, method for, and schedule for dissemination of notice to the Class. To the extent practicable and to the extent consistent with this paragraph, Class Counsel may seek to coordinate this notice program with other settlements that may be reached in the Action in order to reduce the expense of notice. This motion shall recite and ask the Court to find that the proposed form of and method for dissemination of the notice to the Class constitutes valid,

due, and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23.

5. ***Claims Administrator.*** Indirect Purchaser Plaintiffs shall retain a Claims Administrator, which shall be responsible for the claims administration process including distribution to Class Members pursuant to a court-approved plan of distribution. The fees and expenses of the Claims Administrator shall be paid exclusively out of the Settlement Fund. In no event shall Holy Stone be separately responsible for any fees or expenses of the Claims Administrator.

6. ***Motion for Final Approval and Entry of Final Judgment.*** Prior to the date set by the Court to consider whether this Settlement should be finally approved, Class Counsel shall submit a motion for final approval of the Settlement by the Court. The Settling Parties shall jointly seek entry of the Final Approval Order and Judgment:

(a) certifying the Class, as defined in this Settlement Agreement, pursuant to Federal Rule of Civil Procedure 23, solely for purposes of this Settlement;

(b) fully and finally approving the Settlement contemplated by this Settlement Agreement and its terms as being fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation pursuant to its terms and conditions;

(c) finding that the notice given to the Class Members constituted the best notice practicable under the circumstances and complies in all respects with the requirements of Federal Rule of Civil Procedure 23 and due process;

(d) directing that the Actions be dismissed with prejudice as to Holy Stone and, except as provided for herein, without costs;

(e) discharging and releasing the Releasees from all Released Claims;

(f) permanently barring and enjoining the institution and prosecution, by Indirect Purchaser Plaintiffs and Class Members, of any other action against the Releasees in any court asserting any claims related in any way to the Released Claims;

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

(g) reserving continuing and exclusive jurisdiction over the Settlement, including all future proceedings concerning the administration, consummation, and enforcement of this Settlement Agreement;

(h) determining pursuant to Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of a final judgment as to Holy Stone; and

(i) containing such other and further provisions consistent with the terms of this Settlement Agreement to which the parties expressly consent in writing.

7.    At least three (3) business days prior to the filing of any motions or other papers in connection with this Settlement, including without limitation, the Preliminary Approval Motion and the Motion for Final Approval of the Settlement, Class Counsel will send working drafts of these papers to counsel for Holy Stone. The text of any proposed form of order preliminarily or finally approving the Settlement shall be agreed upon by Plaintiffs and Holy Stone before it is submitted to the Court and shall be consistent with the terms of this Settlement Agreement and the Class definition set forth herein.

8.    ***Stay Order.*** Upon the Execution Date, the Action shall be stayed as against Holy Stone only.    Should the Action be tried against any Defendants other than Holy Stone, the parties specifically agree that any findings therein shall not be binding on or admissible in evidence against Holy Stone or prejudice Holy Stone in any way in any future proceeding involving Holy Stone.

9.    Upon the date that the Court enters an order preliminarily approving the Settlement, Indirect Purchaser Plaintiffs and members of the Class shall be barred and enjoined from commencing, instituting, or continuing to prosecute any action or any proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind worldwide based on the Released Claims. Nothing in this provision shall prohibit the Indirect Purchaser Plaintiffs or Class Counsel from continuing to participate in discovery in the Actions that is initiated by other plaintiffs or that is subject to and consistent with the cooperation provisions set forth in ¶¶ 32-35.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**Releases**

10. **_Released Claims._** Upon the Effective Date, the Releasors (regardless of whether any such Releasor ever seeks or obtains any recovery by any means, including, without limitation, by submitting a Proof of Claim and Release, any distribution from the Gross Settlement Fund) by virtue of this Settlement Agreement shall be deemed to have, and by operation of the Judgment shall have fully, finally, and forever released, relinquished, and discharged all Released Claims against the Releasees.

11. **_No Future Actions Following Release._** The Releasors shall not, after the Effective Date, seek (directly or indirectly) to commence, institute, maintain, or prosecute any suit, action, or complaint or collect from or proceed against Holy Stone or any other Releasee (including pursuant to the Actions) based on the Released Claims in any forum worldwide, whether on his, her, or its own behalf or as part of any putative, purported, or certified class of purchasers or consumers.

12. **_Covenant Not to Sue._** Releasors hereby covenant not to sue the Releasees with respect to any such Released Claims. Releasors shall be permanently barred and enjoined from instituting, commencing, or prosecuting against the Releasees any claims based in whole or in part on the Released Claims. The Settling Parties contemplate and agree that this Settlement Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted on behalf of Indirect Purchaser Plaintiffs with respect to the Released Claims.

13. **_Waiver of California Civil Code § 1542 and Similar Laws._** The Releasors acknowledge that, by virtue of the execution of this Settlement Agreement, and for the consideration received hereunder, it is their intention to release, and they are releasing, all Released Claims, even Unknown Claims. In furtherance of this intention, the Releasors expressly waive and relinquish, to the fullest extent permitted by law, any rights or benefits conferred by the provisions of California Civil Code § 1542, as set forth in ¶ 1(gg), or equivalent, similar, or comparable laws or principles of law. The Releasors acknowledge that they have been advised by Class Counsel of the contents and effects of

California Civil Code § 1542, and hereby expressly waive and release with respect to the Released Claims any and all provisions, rights, and benefits conferred by California Civil Code § 1542 or by any equivalent, similar, or comparable law or principle of law in any jurisdiction. The Releasors may hereafter discover facts other than or different from those which they know or believe to be true with respect to the subject matter of the Released Claims, but the Releasors hereby expressly waive and fully, finally, and forever settle and release any known or unknown, suspected or unsuspected, foreseen or unforeseen, asserted or unasserted, contingent or non-contingent, and accrued or unaccrued claim, loss, or damage with respect to the Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such additional or different facts. The release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims in this paragraph is not a mere recital.

14. ***Claims Excluded from Release.*** Notwithstanding the foregoing, the releases provided herein shall not release claims against Holy Stone for product liability, breach of contract, breach of warranty or personal injury, or any other claim unrelated to the allegations in the Actions of restraint of competition or unfair competition with respect to Capacitors. Additionally, the releases provided herein shall not release any claims to enforce the terms of this Settlement Agreement.

**Settlement Fund**

15. ***Settlement Payment.*** Holy Stone shall pay by wire transfer fifty (50) percent of the Settlement Amount to the Escrow Agent pursuant to escrow instructions within sixty (60) business days after the Execution Date (the "First Installment"). One (1) year after payment of the First Installment, Holy Stone shall pay by wire transfer the remaining fifty (50) percent of the Settlement Amount to the Escrow Agent pursuant to escrow instructions (the "Second Installment"). The First Installment and Second Installment, collectively, constitute the total amount of payment that Holy Stone is required to make in connection with this Settlement Agreement. This amount shall not be subject to reduction, and upon the occurrence of the Effective Date, no funds shall revert to Holy

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Stone except as provided herein. The Escrow Agent shall only act in accordance with the mutually agreed escrow instructions.

16. ***Disbursements Prior to Effective Date.*** No amount may be disbursed from the Gross Settlement Fund unless and until the Effective Date, except that: (a) Notice, Administrative, and Claims Administration Costs, which may not exceed $250,000, may be paid from the Gross Settlement Fund as they become due; (b) Taxes and Tax Expenses (as defined in ¶ 20 below) may be paid from the Gross Settlement Fund as they become due; and (c) attorneys' fees and reimbursement of litigation costs may be paid as ordered by the Court, which may be disbursed during the pendency of any appeals, which may be taken from the judgment to be entered by the Court finally approving this Settlement.

17. ***Refund by Escrow Agent.*** If the Settlement as described herein is not finally approved by any court, or it is terminated as provided herein, or the Judgment is overturned on appeal or by writ, the Gross Settlement Fund, including the Settlement Amount and all interest earned on the Settlement Amount while held in escrow, excluding only Notice, Administrative and Claims Administration Costs and Taxes and/or Tax Expenses (as defined below), shall be refunded, reimbursed, and repaid by the Escrow Agent to Holy Stone within five (5) business days after receiving notice pursuant to ¶ 43 below.

18. ***Refund by Class Counsel.*** If the Settlement as described herein is not finally approved by any court, or it is terminated as provided herein, or the Judgment as described herein is not approved or entered or is overturned on appeal or by writ, any attorneys' fees and costs previously paid pursuant to this Settlement Agreement (as well as interest on such amounts) shall be refunded, reimbursed, and repaid by Class Counsel to Holy Stone within thirty (30) business days after receiving notice pursuant to ¶ 43 below.

19. ***No Additional Payments by Holy Stone.*** Under no circumstances will Holy Stone be required to pay more or less than the Settlement Amount pursuant to this Settlement Agreement and the Settlement set forth herein. For purposes of clarification, the payment of any Fee and Expense

14

Award (as defined in ¶ 29 below), the Notice, Administrative, and Claims Administrative Costs, and any other costs associated with the implementation of this Settlement Agreement shall be exclusively paid from the Settlement Amount.

20. *Taxes.* The Settling Parties and the Escrow Agent agree to treat the Gross Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. The Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver timely and properly the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a) For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall satisfy the administrative requirements imposed by Treas. Reg. §1.468B-2 by, e.g., (i) obtaining a taxpayer identification number, (ii) satisfying any information reporting or withholding requirements imposed on distributions from the Gross Settlement Fund, and (iii) timely and properly filing applicable federal, state, and local tax returns necessary or advisable with respect to the Gross Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)) and paying any taxes reported thereon. Such returns (as well as the election described in this paragraph) shall be consistent with the provisions of this paragraph and in all events shall reflect that all Taxes as defined in ¶ 20(b) below on the income earned by the Gross Settlement Fund shall be paid out of the Gross Settlement Fund as provided in ¶ 20(b) hereof;

(b) The following shall be paid out of the Gross Settlement Fund: (i) all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Gross Settlement Fund, including, without limitation, any taxes or tax detriments that may be imposed upon Holy Stone or its counsel with respect to any income earned by the Gross Settlement Fund for any

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

period during which the Gross Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (collectively, "Taxes"); and (ii) all expenses and costs incurred in connection with the operation and implementation of this paragraph, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph (collectively, "Tax Expenses"). In all events neither Holy Stone nor its counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. With funds from the Gross Settlement Fund, the Escrow Agent shall indemnify and hold harmless Holy Stone and its counsel for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Gross Settlement Fund and shall timely be paid by the Escrow Agent out of the Gross Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither Holy Stone nor its counsel is responsible therefor, nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, their tax attorneys, and their accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

**Administration and Distribution of Gross Settlement Fund**

21. ***Time to Appeal.*** The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Judgment regardless of whether or not either the Distribution Plan or an application for attorneys' fees and expenses has been submitted to the Court or resolved.

22. ***Distribution of Gross Settlement Fund.*** Upon further orders of the Court, the Notice and Claims Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer the claims submitted by members of the Class and shall oversee distribution of the Gross Settlement Fund to Authorized Claimants

pursuant to the Distribution Plan. Subject to the terms of this Settlement Agreement and any order(s) of the Court, the Gross Settlement Fund shall be applied as follows:

(a) To pay all costs and expenses reasonably and actually incurred in connection providing notice to the Class in connection with administering and distributing the Net Settlement Fund to Authorized Claimants, and in connection with paying escrow fees and costs, if any;

(b) To pay all costs and expenses, if any, reasonably and actually incurred in accepting claims and assisting with the filing and processing of such claims;

(c) To pay the Taxes and Tax Expenses as defined herein;

(d) To pay any Attorney Fee and Expense Award that is allowed by the Court, subject to and in accordance with the Agreement; and

(e) To distribute the balance of the "Net Settlement Fund" to Authorized Claimants as allowed by the Agreement, any Distribution Plan or order of the Court.

23. ***Distribution of Net Settlement Fund.*** The Net Settlement Fund shall be distributed in accordance with the Distribution Plan that is approved by the Court.

24. All Persons who fall within the definition of the Class who do not timely and validly request to be excluded from the Class shall be subject to and bound by the provisions of this Settlement Agreement, the releases contained herein, and the Judgment with respect to all Released Claims, regardless of whether such Persons seek or obtain by any means, including, without limitation, by submitting a Proof of Claim and Release or any similar document, any distribution from the Gross Settlement Fund or the Net Settlement Fund.

25. ***No Liability for Distribution of Settlement Funds.*** Neither the Releasees nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to the distribution of the Gross Settlement Fund; the Distribution Plan; the determination, administration, or calculation of claims; the Settlement Fund's qualification as a "qualified settlement fund"; the payment or withholding of Taxes or Tax Expenses; the distribution of the Net Settlement Fund; or any losses incurred in connection with any such matters. The Releasors hereby fully, finally, and forever release,

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

relinquish, and discharge the Releasees and their counsel from any and all such liability. No Person shall have any claim against Class Counsel or the Notice and Claims Administrator based on the distributions made substantially in accordance with the Agreement and the Settlement contained herein, the Distribution Plan, or further orders of the Court.

26. ***Balance Remaining in Net Settlement Fund.*** If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), Class Counsel may reallocate such balance among Authorized Claimants in an equitable and economic fashion, distribute the remaining funds through *cy pres*, or allow the money to escheat to federal or state governments, subject to Court approval. In no event shall the Net Settlement Fund revert to Holy Stone.

27. ***Distribution Plan Not Part of Settlement.*** It is understood and agreed by the Settling Parties that any Distribution Plan, including any adjustments to any Authorized Claimant's claim, is not a part of this Settlement Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Settlement Agreement, and any order or proceedings relating to the Distribution Plan shall not operate to terminate or cancel this Settlement Agreement or affect the finality of the Judgment, the Final Approval Order, or any other orders entered pursuant to this Settlement Agreement. The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Judgment regardless of whether either the Distribution Plan or an application for attorneys' fees and expenses has been submitted to the Court or approved.

**Attorneys' Fees and Reimbursement of Expenses**

28. ***Fee and Expense Application.*** Class Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Gross Settlement Fund, for: (a) an award of attorneys' fees; plus (b) reimbursement of expenses incurred in connection with prosecuting the Actions; plus (c) any interest on such attorneys' fees and expenses (until paid) at the same rate

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

and for the same periods as earned by the Settlement Fund, as appropriate, and as may be awarded by the Court.

29. ***Payment of Fee and Expense Award.*** Any amounts that are awarded by the Court pursuant to the above paragraph (the "Fee and Expense Award") shall be paid from the Gross Settlement Fund consistent with the provisions of this Settlement Agreement.

30. ***Award of Fees and Expenses Not Part of Settlement.*** The procedure for, and the allowance or disallowance by the Court of, the Fee and Expense Application are not part of the Settlement set forth in this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Settlement Agreement. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any Fee and Expense Award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the Judgment and the Settlement of the Actions as set forth herein. No order of the Court or modification or reversal on appeal of any order of the Court concerning any Fee and Expense Award or Distribution Plan shall constitute grounds for cancellation or termination of this Settlement Agreement.

31. ***No Liability for Fees and Expenses of Class Counsel.*** Holy Stone shall have no responsibility for, and no liability whatsoever with respect to, any payment(s) to Class Counsel pursuant to this Settlement Agreement and/or to any other Person who may assert some claim thereto or any Fee and Expense Award that the Court may make in the Actions, other than as set forth in this Settlement Agreement.

**Cooperation**

32. ***Cooperation as Consideration.*** In return for the Release and Discharge provided herein, Holy Stone agrees to pay the Settlement Amount and agrees to provide cooperation to Indirect Purchaser Plaintiffs as set forth specifically below in ¶¶ 33-35.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

33. ***Attorney Proffer.*** Within thirty (30) business days after Preliminary Approval by the Court of this Settlement Agreement or such time as mutually agreed by the Settling Parties, upon request from Class Counsel, counsel for Holy Stone shall provide Class Counsel with an oral proffer of facts known to them about meetings or communications between competitors in the Capacitors industry and about documents relevant to agreements or understandings regarding the pricing or supply of Capacitors.  Should the attorney proffer required by this paragraph not occur within the 30 business days after Preliminary Approval, Indirect Purchaser Plaintiffs do not waive their right to an attorney proffer.

34. ***Cooperation Subject to and Consistent with Prior Obligations.*** Holy Stone and the Indirect Purchaser Plaintiffs shall not be obligated to provide cooperation that would violate an applicable court order or an express request of the Antitrust Division of the United States Department of Justice ("DOJ").  Additionally, Indirect Purchaser Plaintiffs and Holy Stone will take reasonable efforts to accommodate the other's efforts to minimize duplication in the providing of any cooperation.

35. ***Further Cooperation.***

(a) Holy Stone shall, to the extent it has not done so already, produce ordinary course of business documents that it has provided to the U.S. and foreign law enforcement authorities, including all English translations of any documents, concerning Capacitors, to the extent they exist, within fifteen (15) business days after Preliminary Approval by the Court of this Settlement Agreement.

(b) Holy Stone shall, to the extent it has not done so already, produce documents concerning meetings with competitors attended by Holy Stone or that were provided to Holy Stone by other participants, including meeting minutes and notes from attendees, and emails concerning meetings with competitors within fifteen (15) business days after the Preliminary Approval by the Court of this Settlement Agreement.  Class Counsel seek documents concerning meetings or other meetings where prices of Capacitors were discussed, including but not limited to, so-called ECC, ASEAN SM, Presidents' Meetings, TC, KCC, ATC, CUP, Taiwan SM, AT Statistics, MK Research, JFC, Hong

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

Kong SM, Singapore SM, Shanghai SM, TAOB, and other such similar meetings, as well as bilateral communications with competitors.

(c) If Holy Stone produces any declarations, documents, data, or other responses to discovery to any other plaintiff in the Actions, Holy Stone will produce the same to Indirect Purchaser Plaintiffs.

(d) Holy Stone agrees to provide assistance reasonably necessary to establish the foundation for and admissibility of documents Holy Stone has produced in the Actions or pursuant to this Settlement Agreement, including, as reasonably necessary, producing at trial in person, by deposition or by affidavit, whichever is legally required, one current employee to testify as to the genuineness, status as business records, and/or authenticity any documents produced by Holy Stone in these Actions, including Holy Stone's transactional data, to the extent a current Holy Stone employee has such knowledge, as necessary for use in briefing on class certification, dispositive motion practice, or trial.

(e) Each of the parties shall cooperate in good faith to authenticate, to the extent possible, a reasonable number of documents and/or things produced by Holy Stone in the Actions, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the Actions, without the need for the other party to issue any subpoenas, letters rogatory, letters of request, or formal discovery requests to the other.

(f) Prior to the close of fact discovery in the Actions, and upon the request of Class Counsel, Holy Stone will make reasonable efforts to make up to two current or former employees reasonably available for interviews, as necessary, if they have not been, or are not scheduled to be, deposed in the Actions. Such interviews shall not exceed six hours per employee, and may be conducted telephonically or by videoconference.  If the interviews are conducted with the assistance of an interpreter, the interview time shall be doubled.  At least five (5) business days in advance of such interviews, Class Counsel shall provide a list of topics to be covered in the interview. Any such interview shall occur at the place of the current or former employee's residence, unless otherwise agreed by the Parties.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

(g) Holy Stone agrees Indirect Purchaser Plaintiffs may ask questions at depositions of Holy Stone witnesses noticed by other plaintiffs in the litigation.

(h) Holy Stone shall, to the extent it has not done so already, respond in writing to reasonable requests for clarification of the transactional, production, and cost data that Holy Stone produced in the Actions and also about its methods of pricing Capacitors.  Such requests by Indirect Purchaser Plaintiffs shall be coordinated with Direct Purchaser Plaintiffs' counsel to avoid duplication.

(i)  Indirect Purchaser Plaintiffs agree to withdraw all outstanding discovery served on Holy Stone, and neither Holy Stone nor Indirect Purchaser Plaintiffs shall file motions against the other during the pendency of the Agreement except to enforce the terms of this Settlement Agreement.

(j) Holy Stone will use reasonable efforts to make up to two present or former employees available to Indirect Purchaser Plaintiffs at trial for testimony. Plaintiffs will reimburse Holy Stone for reasonable business class airfare and up to three (3) nights of reasonable hotel expenses (not to exceed $400 per night per witness) for each witness who is made available for trial testimony in the United States.  Indirect Purchaser Plaintiffs shall use best efforts to coordinate with counsel for Direct Purchaser Plaintiffs to ensure that Holy Stone is not required to produce more than two witnesses at trial.

36. ***Other Discovery.*** Upon the Execution Date, neither Holy Stone nor the Indirect Purchaser Plaintiffs shall file motions against the other or initiate or participate in any discovery, motion, or proceeding directly adverse to the other in connection with the Actions, except as specifically provided for herein. Holy Stone and the Indirect Purchaser Plaintiffs shall not be obligated to respond or supplement prior responses to formal discovery that has been previously propounded by the other in the Actions.

37. ***Resolution of Disputes.*** To the extent the Settling Parties disagree about the interpretation or enforcement of any terms of this Settlement Agreement relating to future cooperation by Holy Stone, they agree to submit such disputes for binding resolution by the Honorable James Donato or another mutually agreed neutral.

**Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

38. ***Occurrence of Effective Date.*** Upon the occurrence of all of the events required in order to trigger the Effective Date as defined in ¶ 1(m), any and all remaining interest or right of Holy Stone in or to the Gross Settlement Fund, if any, shall be absolutely and forever extinguished, and the Gross Settlement Fund (less any Notice and Administrative Costs, Taxes or Tax Expenses or any Fee and Expense Award paid) shall be transferred from the Escrow Agent to the Notice and Claims Administrator as successor Escrow Agent within ten (10) days after the Effective Date.

39. ***Failure of Effective Date to Occur.*** If, for whatever reason, the Effective Date does not occur or is not met, then this Settlement Agreement shall be cancelled and terminated, subject to and in accordance with ¶ 43, below, unless the Settling Parties mutually agree in writing to proceed with this Settlement Agreement.

40. ***Exclusions.*** Class Counsel shall cause copies of requests for exclusion from the Class to be provided to Holy Stone's counsel. No later than 14 days after the final date for mailing requests for exclusion, Class Counsel shall provide Holy Stone's counsel with a complete and final list of opt-outs. With the motion for final approval of the Settlement, Class Counsel will file with the Court a complete list of requests for exclusion from the Class, including only the name, city, and state of the person or entity requesting exclusion. Holy Stone shall have the option to terminate this Settlement Agreement if the purchases of Capacitors from distributors made by members of the Class who timely and validly request exclusion from the Class equal or exceeds twenty percent (20%) of the total volume of purchases of capacitors made by the Class. After meeting and conferring with Class Counsel, Holy Stone may elect to terminate this Settlement Agreement by serving written notice on Class Counsel by email and overnight courier and by filing a copy of such notice with the Court no later than thirty (30) days before the date for the final approval hearing of this Settlement Agreement, except that Holy Stone shall have a minimum of ten (10) days in which to decide whether to terminate this Settlement Agreement after receiving the final opt out list. In the event that Holy Stone exercises its option to terminate this Settlement Agreement: (i) this Settlement Agreement shall be null and

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

void as to Holy Stone, and shall have no force or effect and shall be without prejudice to the rights and contentions of Releasees and Releasors in this or any other litigation; and (ii) the Settlement fund paid by Holy Stone, plus interest thereon, shall be refunded promptly to Holy Stone, minus such payment (as set forth in this Settlement Agreement) of Notice and Administrative Costs and Taxes and Tax Expenses, consistent with the provisions of ¶¶ 16 and 20.

41. ***Objections.*** Settlement Class members who wish to object to any aspect of the Settlement must file with the Court a written statement containing their objection by end of the period to object to the Settlement. Any award or payment of attorneys' fees made to counsel to an objector to the Settlement shall only be made by Court order and upon a showing of the benefit conferred to the class. In determining any such award of attorneys' fees to an objectors' counsel, the Court will consider the incremental value to the Class caused by any such objection. Any award of attorneys' fees by the Court will be conditioned on the objector and his or her attorney stating under penalty of perjury that no payments shall be made to the objector based on the objector's participation in the matter - other than as ordered by the Court.

42. ***Failure to Enter Proposed Preliminary Approval Order, Final Approval Order or Judgment.*** If the Court does not enter the Preliminary Approval Order, the Final Approval Order, or the Judgment, or if the Court enters the Final Approval Order and the Judgment and appellate review is sought and, on such review, the Final Approval Order or the Judgment is finally vacated, modified, or reversed, then this Settlement Agreement and the Settlement incorporated therein shall be cancelled and terminated; provided, however, the Settling Parties agree to act in good faith to secure Final Approval of this Settlement and to attempt to address in good faith concerns regarding the Settlement identified by the Court and any court of appeal. No Settling Party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein; provided, however, that no order of the Court concerning any Fee and Expense Application or Distribution Plan, or any modification or reversal on appeal of such order, shall constitute grounds for cancellation or termination of this Settlement Agreement by any Settling Party. Without limiting

the foregoing, Holy Stone shall have, in its sole and absolute discretion, the option to terminate the Settlement in its entirety in the event that the Judgment, upon becoming Final, does not provide for the dismissal with prejudice of all of the Actions against them.

43. ***Termination.*** Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Settlement Agreement should terminate, or be cancelled or otherwise fail to become effective for any reason, including, without limitation, in the event that Holy Stone elects to terminate this Settlement Agreement pursuant to ¶ 43, the Settlement as described herein is not finally approved by the Court, or the Judgment is reversed or vacated following any appeal taken therefrom, then:

(a) within five (5) business days after written notification of such event is sent by counsel for Holy Stone to the Escrow Agent, the Gross Settlement Fund, including the Settlement Amount and all interest earned on the Settlement Fund while held in escrow excluding only Notice, Administrative, and Class Administration Costs that have either been properly disbursed or are due and owing, Taxes and Tax Expenses that have been paid or that have accrued and will be payable at some later date, and attorneys' fees and costs that have been disbursed pursuant to Court order will be refunded, reimbursed, and repaid by the Escrow Agent to Holy Stone; if said amount or any portion thereof is not returned within such five (5) day period, then interest shall accrue thereon at the rate of ten percent (10%) per annum until the date that said amount is returned;

(b) within thirty (30) business days after written notification of such event is sent by Counsel for Holy Stone to Class Counsel, all attorneys' fees and costs which have been disbursed to class counsel pursuant to Court order shall be refunded, reimbursed, and repaid by Class Counsel to Holy Stone;

(c) the Escrow Agent or its designee shall apply for any tax refund owed to the Gross Settlement Fund and pay the proceeds to Holy Stone, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund, pursuant to such written request;

(d) the Settling Parties shall be restored to their respective positions in the Actions as of the Execution Date, with all of their respective claims and defenses, preserved as they existed on that date;

(e) the terms and provisions of this Settlement Agreement, with the exception of ¶¶ 43-46 (which shall continue in full force and effect), shall be null and void and shall have no further force or effect with respect to the Settling Parties, and neither the existence nor the terms of this Settlement Agreement (nor any negotiations preceding this Settlement Agreement nor any acts performed pursuant to, or in furtherance of, this Settlement Agreement) shall be used in the Actions or in any other action or proceeding for any purpose (other than to enforce the terms remaining in effect); and

(f) any judgment or order entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, nunc pro tunc.

**No Admission of Liability**

44. ***Final and Complete Resolution.*** The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the Actions and Released Claims and to compromise claims that are contested, and it shall not be deemed an admission by any Settling Party as to the merits of any claim or defense or any allegation made in the Actions.

45. ***Federal Rule of Evidence 408.*** The Settling Parties agree that this Settlement Agreement, its terms, and the negotiations surrounding this Settlement Agreement shall be governed by Federal Rule of Evidence 408 and shall not be admissible or offered or received into evidence in any suit, action, or other proceeding, except upon the written agreement of the Settling Parties hereto, pursuant to an order of a court of competent jurisdiction, or as shall be necessary to give effect to, declare, or enforce the rights of the Settling Parties with respect to any provision of this Settlement Agreement.

46. ***Use of Agreement as Evidence.*** Neither this Settlement Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

evidence of, the validity of any Released Claims, of any allegation made in the Actions, or of any wrongdoing or liability of Holy Stone; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault, or omission of the Releasees in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Neither this Settlement Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement or the Settlement shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that the Releasees may file this Settlement Agreement and/or the Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim. The limitations described in this paragraph apply whether or not the Court enters the Preliminary Approval Order, the Final Approval Order, or the Judgment, or if the Settlement Agreement is terminated or rescinded.

**Miscellaneous Provisions**

47. ***Voluntary Settlement.*** The Settling Parties agree that the Settlement Amount and the other terms of the Settlement as described herein were negotiated in good faith by the Settling Parties and reflect a settlement that was reached voluntarily and after consultation with competent legal counsel.

48. ***Consent to Jurisdiction.*** Holy Stone and each Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, Holy Stone and the Class Members irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court or that the Court is in any way an improper venue or an inconvenient forum. Nothing herein shall be construed as a submission to jurisdiction for any purpose

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

other than any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement.

49. ***Resolution of Disputes; Retention of Exclusive Jurisdiction.*** Any disputes between or among Holy Stone and any Class Members concerning matters contained in this Settlement Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain exclusive jurisdiction over the implementation and enforcement of this Settlement Agreement.

50. ***Binding Effect.*** This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Indirect Purchaser Plaintiffs and Class Counsel shall be binding upon all Class Members.

51. ***Authorization to Enter Settlement Agreement.*** The undersigned representatives of Holy Stone represent that they are fully authorized to enter into and to execute this Settlement Agreement on behalf of Holy Stone. Class Counsel, on behalf of Indirect Purchaser Plaintiffs and the Class, represent that they are, subject to Court approval, expressly authorized to take all action required or permitted to be taken by or on behalf of the Indirect Purchaser Plaintiffs and the Class pursuant to this Settlement Agreement to effectuate its terms and to enter into and execute this Settlement Agreement and any modifications or amendments to the Settlement Agreement on behalf of the Class that they deem appropriate.

52. ***Notices.*** All notices under this Settlement Agreement shall be in writing. Each such notice shall be given either by (a) e-mail; (b) hand delivery; (c) registered or certified mail, return receipt requested, postage pre-paid; (d) Federal Express or similar overnight courier; or (e) facsimile and first class mail, postage pre-paid and, if directed to any Class Member, shall be addressed to Class Counsel at their addresses set forth below, and if directed to Holy Stone, shall be addressed to their attorneys at the addresses set forth below or such other addresses as Class Counsel or Holy Stone may

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

designate, from time to time, by giving notice to all parties hereto in the manner described in this paragraph.

      If directed to the Indirect Purchaser Plaintiffs, address notice to:

COTCHETT, PITRE & MCCARTHY
Adam J. Zapala (azapala@cpmlegal.com)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-0577

      If directed to Holy Stone, address notice to:

JONES DAY
Eric P. Enson (epenson@jonesday.com)
555 South Flower Street, 50th Floor
Los Angeles, CA 90071.2300
Telephone:(213) 489-3939
Facsimile: (213) 243-2539

      53. ***Confidentiality of Settlement Negotiations.*** Class Counsel shall keep strictly confidential and not disclose to any third party, including specifically any counsel representing any other current or former party to the Action, any non-public information regarding the Settling Parties' negotiation of this Settlement and/or the Settlement Agreement.  For the sake of clarity, information contained within this Settlement Agreement shall be considered public, and Holy Stone may issue a press release regarding execution of the Settlement Agreement and the amount paid in connection with the Settlement Agreement.

      54. ***Headings.*** The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

      55. ***No Party Deemed to Be the Drafter.*** None of the parties hereto shall be deemed to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law

or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

56. **_Choice of Law._** This Settlement Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the parties to this Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to that State's choice of law principles.

57. **_Amendment; Waiver._** This Settlement Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. The waiver by any party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.

58. **_Execution in Counterparts._** This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the parties to this Settlement Agreement shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

59. **_Notification of State Officials._** Holy Stone shall be responsible for providing all notices required by the Class Action Fairness Act to be provided to state attorneys general or to the United States of America.

60. **_Integrated Agreement._** This Settlement Agreement constitutes the entire agreement between the Settling Parties and no representations, warranties, or inducements have been made to any party concerning this Settlement Agreement other than the representations, warranties, and covenants contained and memorialized herein. It is understood by the Settling Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Settlement Agreement is entered into may turn out to be other than or different from the facts now known to each party or believed by such party to be true; each party therefore expressly assumes the risk of the facts

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

or law turning out to be so different, and agrees that this Settlement Agreement shall be in all respects effective and not subject to termination by reason of any such different facts or law. Except as otherwise provided herein, each party shall bear its own costs and attorneys' fees.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Settlement Agreement as of the date first herein above written.

INDIRECT PURCHASER PLAINTIFFS' CLASS COUNSEL, on behalf of Indirect Purchaser Plaintiffs individually and on behalf of the Class

By: _____
Adam J. Zapala
COTCHETT, PITRE & MCCARTHY
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Fax: 650-697-0577
azapala@cpmlegal.com


DEFENDANT HOLYSTONE


By: _____
Eric Enson
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071.2300
Telephone:(213) 489-3939
Facsimile: (213) 243-2539
epenson@jonesday.com

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP