Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Joshua Paul Davis (State Bar No. 193254)
Nicomedes Sy Herrera (State Bar No. 275332)
Demetrius X. Lambrinos (State Bar No. 246027)
James G. Dallal (State Bar No. 277826)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:   jsaveri@saverilawfirm.com
         swilliams@saverilawfirm.com
         jdavis@saverilawfirm.com
         nherrera@saverilawfirm.com
         dlambrinos@saverilawfirm.com
         jdallal@saverilawfirm.com
         vprentice@saverilawfirm.com

*Interim Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL DIRECT PURCHASER ACTIONS | Master File No. 3:17-md-02801-JD<br><br>Case No. 3:14-cv-03264-JD<br><br>**DIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Date:        June 7, 2018<br>Time:       10:00 a.m.<br>Courtroom:  11, 19th Floor |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 10:00 a.m. on June 7, 2018, at the U.S. District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco California 94104, or as soon thereafter as the matter may be heard, Direct Purchaser Plaintiffs ("Direct Purchaser Plaintiffs" or "DPPs") will and hereby do move, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, to grant Interim Lead Counsel for the Direct Purchaser Plaintiffs Joseph Saveri Law Firm ("Lead Class Counsel") and other counsel working at Lead Class Counsel's direction in this action ("Class Counsel," and with Lead Class Counsel, "Counsel") a percentage of their fees accrued as of December 31, 2017, as well as a portion of the costs Counsel have advanced the Direct Purchaser Class by that same date.

Specifically, DPPs request that the Court:

1. Grant Counsel's request for a payment of $16,725,000 for attorneys' fees from the settlement fund ("Settlement Fund") established in connection with DPPs' class action settlements with Defendants Hitachi Chemical Co., Ltd., Hitachi AIC, Inc., and Hitachi Chemical Co. America, Ltd. (collectively, "Hitachi Chemical"); and Soshin Electric Co., Ltd., and Soshin Electronics of America Inc. (collectively, "Soshin") (all Hitachi Chemical and Soshin entities together, the "Settling Defendants"), now pending before the Court for final approval; and

2. Grant Counsel's request for a payment of $6,690,000 for a reimbursement of costs from the Settlement Fund.

DPPs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Joseph R. Saveri and the exhibits thereto, the Court's files and records in this matter, argument of counsel, and such other and further matters as the Court may consider.

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ...................................................................................................................1

II. LEGAL STANDARD ............................................................................................................. 3

    A. Attorneys' Fees........................................................................................................ 3

    B. Costs Reimbursement ............................................................................................ 4

III. THE COURT SHOULD AWARD DPPS' COUNSEL $16,725,000—25 PERCENT OF THE FUND—AS PARTIAL PAYMENT OF THEIR FEES ACCRUED AS OF DECEMBER 31, 2017 ............................................................................................................ 4

    A. The Percentage-of-the-Fund Method for Calculating Fees Is Appropriate Here . 4

    B. The *Vizcaino* Factors Warrant Granting Counsel's Fee Request .......................... 6

        1. Counsel Obtained an Exceptional Result for the Direct Purchaser Class With The Settlements. ................................................................................. 6

        2. Counsel Took Significant Risks Prosecuting This Litigation. ................... 7

        3. Advancing the Litigation to this Point and Obtaining the Settlements Has Required Professional Skill. ........................................................................ 8

        4. Awards in Similar Complex Antitrust Cases Demonstrate That Class Counsel Seek a Reasonable Fee Award. ..................................................... 8

        5. Counsel Undertook a Significant Financial and Resource Burden in Prosecuting the Direct Purchaser Plaintiffs' Claims. ................................. 9

        6. A Lodestar Cross-Check Confirms That the Fees Sought by Class Counsel Are Reasonable.........................................................................................10

        7. The Court Should Grant Attorneys' Fees Based on Work Counsel Has Performed on the Case as a Whole. ......................................................... 11

V. COUNSEL ANTICIPATE SEEKING ADDITIONAL ATTORNEYS' FEES AND COSTS FROM FUTURE JUDGMENTS OR SETTLEMENTS ...............................14

VI. CONCLUSION ....................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) .................................................8

*Bellinghausen v. Tractor Supply Co.*, 2015 U.S. Dist. LEXIS 35266 (N.D. Cal. Mar. 19, 2015) ..................................................................................................................................5

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)..........................................................................3

*Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997 (9th Cir. 2002)................................... 4, 14

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 55 (2d Cir. 2002) ...........................................14

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ........................................................................12

*In re Air Cargo Shipping Servs. Antitrust Litig.*, 2012 U.S. Dist. LEXIS 108299 (E.D.N.Y. Aug. 2, 2012) ..............................................................................................................11

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)...................................4

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 102408 (N.D. Cal. Aug. 3, 2016) ..................................................................................6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 5383 (N.D. Cal. Jan. 14, 2016) ....................................................................................6

*In re CV Therapeutics, Inc. Secs. Litig.*, No. 03-3709, 2007 U.S. Dist. LEXIS 98244 (N.D. Cal. April 4, 2007) ..........................................................................................................5

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486, 2007 U.S. Dist. LEXIS 103027 (N.D. Cal. Aug. 16, 2007).................................................... 5, 9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2013 U.S. Dist. LEXIS 190974 (N.D. Cal. Oct. 30, 2013)................................................... 6, 7

*In re Korean Air Lines Co., Antitrust Litig.*, 2013 U.S. Dist. LEXIS 186262 (C.D. Cal. Dec. 23, 2013) ...........................................................................................................5

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1995) ............................ 4, 12

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 n.2 (9th Cir. 2010) ......................1

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................. 6, 12

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)......................................5

*In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254 (C.D. Cal. 1997) ..............3

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005).....................................................11

*In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886, 2002 U.S. Dist. LEXIS 23468 (N.D. Cal. Nov. 15, 2002) .................................................................................. 5, 9

## TABLE OF AUTHORITIES (cont.)

*In re Southeastern Milk Antitrust Litigation,* 2013 U.S. Dist. LEXIS 70167, at **26-27 ...... 11, 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 6607 (N.D. Cal. January 14, 2013) ...... 5, 9, 12

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ...... 4

*Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142 (9th Cir. 2000) ...... 11, 12, 14

*Meijer v. Abbott Laboratories*, No. 07-05985 (N.D. Cal. Aug. 11, 2011) ...... 5, 9

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ...... 3, 4

*Paul, Johnson, Alston & Hunt v. Granulty*, 886 F.2d 268 (9th Cir. 1989) ...... 5, 9

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ...... 4

*Ross v. U.S. Nat'l Ass'n,* No. 07-02951, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept 29, 2010) ...... 5

*Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ...... 14

*Thornberry v. Delta Air Lines*, 461 U.S. 952 (1983) ...... 12

*Thornberry v. Delta Air Lines*, 676 F.2d 1240 (9th Cir. 1982) ...... 12

*Van Vranken v. ARCO*, 901 F. Supp. 294 (N.D. Cal. 1995) ...... 5, 9, 11

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ...... 12

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...... 5, 6, 9, 11

*Williams v. SuperShuttle Int'l, Inc.*, No. 12-CV-06493-WHO, 2015 U.S. Dist. LEXIS 19341 (N.D. Cal. Feb. 12, 2015) ...... 4

*Wolph v. Acer Am. Corp.*, 2013 U.S. Dist. LEXIS 151180 (N.D. Cal. Oct. 21, 2013) ...... 4

**Statutes**

15 U.S.C. § 6a ...... 6

**Other Authorities**

*Procedural Guidelines for Class Action Settlement* ...... 1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Counsel for the class of Direct Purchaser Plaintiffs ("Settlement Class") submit this motion for attorneys' fees seeking an award in the amounts of $16,725,000 for fees accrued as of December 31, 2017, and $6,690,000 for expenses advanced on behalf of the Class as of December 31, 2017 (the "Motion").

This application for attorney's fees and reimbursement of expenses is made in connection with DPPs' Motion for Final Approval of Settlements with Hitachi Chemical and Soshin.

The settlements with Hitachi Chemical and Soshin (the "Settlements") provide for cash payments totaling $66,900,000 and secure agreements by each of the Settling Defendants to cooperate in the DPPs' continued prosecution of their claims against the non-settling Defendants. Along with the $32,600,000 for the first round of settlements,[1] Counsel have thus far obtained $99,500,000 in monetary compensation for DPPs.

Counsel—all of whom work on a contingency basis—have devoted substantial time without compensation and have advanced costs on behalf of the Settlement Class. The Settlements, if finally approved, provide Counsel the opportunity to be compensated in part for their hard work to date for the benefit of the Class, and to receive reimbursement for costs incurred in the ongoing litigation. Class members have received notice of Counsel's fee and costs requests. *See* Declaration of Joseph R. Saveri dated May 3, 2018 ("Saveri Decl.") ¶¶ 104-122. The Motion is being publicly filed at least fourteen (14) days before the deadline for objecting to the proposed settlements described below (the "Settlements"). *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 n.2 (9th Cir. 2010); *Procedural Guidelines for Class Action Settlement*.[2]

---

[1] In 2016, DPPs negotiated and signed five settlement agreements between DPPs and former defendants Fujitsu Limited; Nitsuko Electronics Corporation; NEC TOKIN Corporation and NEC TOKIN America, Inc.; Okaya Electric Industries Co., Ltd. and Okaya Electric America, Inc.; and ROHM Co., Ltd. and ROHM Semiconductor U.S.A., LLC (collectively, the "Previously Settling Defendants"). After the Court conducted a final approval and fairness hearing on April 6, 2017, the Court granted final approval of these five separately negotiated settlements (the "First Round Settlements"). Dkts. 1607, 1647, 1713.

[2] Available at https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

The $16,725,000 in requested attorneys' fees represents 25% of the Settlement Fund, in line with Ninth Circuit authority.

On June 27, 2017, the Court awarded Counsel $8,150,000 as partial payment of their fees accrued as of September 30, 2016 in connection with a first round of settlements (the "First Round Settlements").[3] (Dkt. No. 1714, at 3) At that time, the awarded fees constituted 18.4% of Class Counsel's lodestar amount. (Dkt. No. 1458, at 1) On a cumulative basis, the requested fees for the current Settlements with the fees awarded by the Court for the First Round Settlements represent 35% of Counsel's cumulative lodestar amount.

The Court also approved $3 million for partial reimbursement of Counsel's costs and expenses. (Dkt. No. 1714, at 9-10) The amount reimbursed was less than submitted costs through September 30, 2016. (Dkt. Nos. 1458-1 through 1458-18) On a cumulative basis, the requested reimbursement of $6,690,000 for these Settlements, with the $3 million that the Court approved for the First Round Settlements, only partially reimburses Counsel for their cumulative expenses and assessments incurred through December 31, 2017, which total $12,440,491.97. (Saveri Decl. ¶¶ 14-15). Counsel would still have a $2,750.491.97 shortfall. (*Id.*)

Counsel's attorneys' fees request is equal to the 25% percentage benchmark for common fund cases. Counsel have taken a significant risk, invested substantial amounts of their time and money on a contingent basis, and forgone other work opportunities to dedicate their professional efforts to this case.

For the Court's consideration, Lead Class Counsel submits declarations from the Class Counsel that have worked at Lead Counsel's direction in the prosecution of this case. *See* Declaration of Joseph R. Saveri in Support of Motion for Attorneys' Fees and Reimbursement of Expenses dated May 3, 2018 ("Saveri Decl."), Exs. 3-17. Attached to each of these declarations from Class Counsel are documents that summarize the time these respective firms have billed from October 1, 2016 to December 31, 2017,

---

[3] The settling defendants for the First Round Settlements were NEC TOKIN Corporation, NEC TOKIN America, Inc., Nitsuko Electronics Corporation, Okaya Electric Industries Co., Ltd. and Okaya Electric America, Inc., ROHM Co., Ltd., and ROHM Semiconductor U.S.A., LLC.

as reported by timekeeper.[4] *See id.*, Exs. A to each declaration. Class Counsel have also attached a summary of the expenses they incurred on this case during the same period. *See id.*, Exs. Ex. B to each declaration. Lead Class Counsel has reviewed each of Class Counsel's daily time records. Duplicative, unnecessary, or unauthorized work has been removed and will not be compensated. *See id.*, ¶ 121. Lead Class Counsel has also reviewed all costs submitted by Class Counsel for reimbursement to ensure their compliance with the instructions set forth in the Court's October 31, 2014 Order Appointing Interim Lead Class Counsel (Dkt. 319 at 4-5). *See id.* Expenses that were unauthorized or in excess of the Court's guidelines will not be compensated. *See id.*

## II.   LEGAL STANDARD

### A.   Attorneys' Fees

Attorneys may recover reasonable attorneys' fees from a common fund settlement they secure on behalf of a class. The Supreme Court has explained that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123 (1885) ("[W]here one or more of many parties having a common interest in a trust fund takes, at his own expense, proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement either out of the fund itself or by a proportional contribution from those who accept the benefit of his efforts"). "The rationale behind awarding a percentage of the fund to counsel in common fund cases is the same that justifies permitting contingency fee arrangements in general. . . . The underlying premise is the existence of **risk**—the contingent risk of non-payment." *In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) (emphasis in original). In addition, attorneys' fees are awarded as a means of ensuring the beneficiaries of a common fund share with those whose labors created the fund. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300

---

[4] Counsel had previously submitted their time from November 1, 2014 through September 30, 2016 in connection with their motion for attorneys' fees in connection with the First Round Settlements. *See* Dkts. 1458-1 through 1458-18.

(9th Cir. 1994) (*"WPPSS"*) ("[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it.").

### B.   Costs Reimbursement

Counsel may also obtain reimbursement for costs from a common fund settlement. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.") (citing, *inter alia*, *Mills,* 396 U.S. at 391-92; *see also Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 U.S. Dist. LEXIS 151180, at *18 (N.D. Cal. Oct. 21, 2013) ("Counsel are entitled to reimbursement of their reasonable out-of-pocket expenses."). "The prevailing view is that expenses are awarded in addition to the fee percentage." *Williams v. SuperShuttle Int'l, Inc.*, No. 12-CV-06493-WHO, 2015 U.S. Dist. LEXIS 19341, at *6 (N.D. Cal. Feb. 12, 2015) (citations omitted).

### III.   THE COURT SHOULD AWARD DPPS' COUNSEL $16,725,000—25 PERCENT OF THE FUND—AS PARTIAL PAYMENT OF THEIR FEES ACCRUED AS OF DECEMBER 31, 2017

### A.   The Percentage-of-the-Fund Method for Calculating Fees Is Appropriate Here

District courts in the Ninth Circuit use either the "percentage-of-the-fund" or the "lodestar" method in calculating fees in common fund settlements. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002) ("In a common fund case, the district court has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award."). Using either method, the ultimate inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

Where there is an easily quantifiable benefit to the class—namely, the cash recovery achieved through the settlement—the percentage of the fund approach is appropriate. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."). Indeed, the percentage-of-the-fund method is *preferred* when counsel's efforts have created a common fund for the benefit of the class. *See In re Korean Air Lines Co. Antitrust Litig.*, No. CV 07-05107 SJO (AGRx), 2013

U.S. Dist. LEXIS 186262, at *3 (C.D. Cal. Dec. 23, 2013) ("The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel."); *see also Bellinghausen v. Tractor Supply Co.*, No. 13-cv-02377-JSC, 2015 U.S. Dist. LEXIS 35266, at *33 (N.D. Cal. Mar. 19, 2015) ("Because this case involves a common settlement fund with an easily quantifiable benefit to the class, the Court will primarily determine attorneys' fees using the benchmark method but will incorporate a lodestar cross-check to ensure the reasonableness of the award.").

Courts supervising antitrust cases in this District regularly apply the percentage of the fund approach. *See*, *e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2013 U.S. Dist. LEXIS 6607, at *43 (N.D. Cal. Jan. 14, 2013); *Meijer v. Abbott Laboratories*, No. 07-05985 (N.D. Cal. Aug. 11, 2011); *Ross v. U.S. Nat'l Ass'n,* No. 07-02951, 2010 U.S. Dist. LEXIS 107857, at *4-5 (N.D. Cal. Sept. 29, 2010); *In re CV Therapeutics, Inc. Secs. Litig.*, No. 03-3709, 2007 U.S. Dist. LEXIS 98244, at *2 (N.D. Cal. April 4, 2007); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486, 2007 U.S. Dist. LEXIS 103027, at *1-2 (N.D. Cal. Aug. 16, 2007); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886, 2002 U.S. Dist. LEXIS 23468, at **9-10 (N.D. Cal. Nov. 15, 2002); *Van Vranken v. ARCO*, 901 F. Supp. 294, 298 (N.D. Cal. 1995). The Court should do so as well here.

Courts in the Ninth Circuit applying the "percentage of the fund" approach use a twenty-five percent benchmark. *See Paul, Johnson, Alston & Hunt v. Granulty*, 886 F.2d 268, 272 (9th Cir. 1989). *See also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%").

Selection of the benchmark or any other rate, however, must be supported by findings that take into account all of the circumstances of the case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). The benchmark is subject to adjustment—upward or downward—based on the Court's analysis of the factors the Ninth Circuit considered in *Vizcaino*: (1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in

comparable cases. *See id.* at 1048-50. *See also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 102408, at *62-69 (N.D. Cal. Aug. 3, 2016) (applying the *Vizcaino* factors on indirect purchaser class counsel's fee motion, awarding a 27.5% fee); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 5383, at *171-74 (N.D. Cal. Jan. 14, 2016) (same, awarding a 30% fee) (direct purchaser class counsel's fee motion); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2013 U.S. Dist. LEXIS 190974, at *116-24 (N.D. Cal. Oct. 30, 2013) ("DRAM") (same, awarding a 25% fee).

### B.  The *Vizcaino* Factors Warrant Granting Counsel's Fee Request

Here, each of the *Vizcaino* factors weighs in favor of awarding the requested $16,725,000, which is twenty-five percent of the total Settlement Fund ($66,900,000), and equal to the Ninth Circuit's benchmark. Counsel's Motion requests the benchmark amount from these Settlements.

#### 1.  Counsel Obtained an Exceptional Result for the Direct Purchaser Class With The Settlements.

The most important factor is the result achieved for the class. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 U.S. Dist. LEXIS 102408, at *63 (citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)). These two Settlements—the second set in the consolidated Direct Purchaser Action—provide the Class with valuable monetary and non-monetary benefits.

The Settling Defendants' all-cash payments for the benefit of the Class together will total $66,900,000. This is a large amount of money relative to the Settling Defendants' comparatively minimal individual and collective capacitor sales to U.S. purchasers between 2002 and 2014.[5] The Settling Defendants' estimated sales to U.S. purchasers during that period represent less than one percent of the total $7 billion in estimated sales made by all Defendants, in aggregate, to U.S. purchasers during that same period. *See* Dkt. Nos. 1989, at 11; 1989-1, at ¶¶ 37-38. The Settlement Fund also represents a significant percentage of each Settling Defendant's total U.S. sales during that period:

---

[5] "U.S. purchasers" are defined as purchasers of capacitors located in the United States or located abroad but requesting delivery in the United States. This is consistent with the Court's ruling on the impact of the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a ("FTAIA") on the commerce at issue in this case. *See generally* Dkt. at 1302. The term "U.S. sales" is defined as sales billed to or shipped to U.S. purchasers.

- The Hitachi Chemical Defendants agreed to pay DPPs $63,000,000. For purposes of its guilty plea and sentencing on federal criminal price fixing charges, the Hitachi Chemical Defendants estimated its U.S. capacitors sales from 2002 to 2010 totaled $16,500,000. The settlement consideration here is 3.8 times the Hitachi Chemical Defendants' estimated relevant U.S. sales. *See* Dkt. 1989, at 11; Saveri Decl. ¶ 93.

- The Soshin Defendants agreed to pay DPPs $3,900,000. The Soshin Defendants' worldwide capacitors sales between 2002 and 2014 were limited, and Soshin did not heavily target of the U.S. market during that period, DPPs are therefore confident that the settlement consideration is several times greater than the Soshin Defendants' entire relevant U.S. sales. *See* Dkt. 1989, at 11; Saveri Decl. ¶ 92.

The Settlements' monetary component—all cash—greatly benefits the Direct Purchaser Class by providing and, in fact, accelerating the Class' chances for monetary recovery in this case through the claims administration process that will soon commence. *See* Saveri Decl. ¶ 9. Here, a substantial amount of money stands to be distributed to a relatively small Direct Purchaser Class. *See id.* ¶ 89. There is a real value to Class members of receiving a cash distribution from the Settlements in the near term. In addition, given the number of Defendants in this action and the risk of treble damages at trial, these Settlements likely will encourage additional favorable settlements. *See id.* ¶ 96.

In addition to the cash component—each of which is a multiple of each Settling Defendants' gross sales during the entire conspiracy—the Settling Defendants has agreed to provide substantial assistance to the class. The Settling Defendants each have agreed to cooperate with DPPs in their continued prosecution of the Class' claims against the Non-Settling Defendants. *See* Saveri Decl. Exs. A & B. They agree to provide assistance such as giving attorney proffers regarding facts developed in their internal investigations, making key witnesses available for deposition or trial, and submitting declarations on key issues such as liability, impact, damages, and class certification. *Id.*

The assistance the Settling Defendants have agreed to provide is a substantial class benefit because it will assist DPPs to prepare for trial and to maximize their monetary recovery against the Non-Settling Defendants. *See* Saveri Decl. ¶ 96. *See DRAM*, 2013 U.S. Dist. LEXIS 190974, at *143 (cooperation "was valuable in maximizing the monetary recovery against the other Defendants.").

### 2.  Counsel Took Significant Risks Prosecuting This Litigation.

Counsel assumed a significant risk in undertaking this litigation. *See* Saveri Decl. ¶¶ 85-88. All understood the risk of contingency litigation and the fact that recovery is never guaranteed. They

committed their time, money and energy to the prosecution of a multi-year, international price-fixing cartel case against 22 sprawling Defendant corporate families based almost entirely in Japan. *See id.* ¶ 85. This cartel case is complex, and complex antitrust cases like this one often take years to resolve through settlement, trial, or appeal. *See id.* As the case has advanced, Counsel have committed their time, money, and energy to this litigation while aware that certain Defendants have claimed poor financial health that could ultimately impede or diminish recovery for the Class. *See id.* ¶¶ 85-86-80. As is set forth in Lead Class Counsel's declaration, Direct Purchaser Plaintiffs' Counsel have expended millions of dollars of their time and incurred millions of dollars in expenses, all on a purely contingent basis. Counsel have stated that they had to turn away case opportunities over the last three years to ensure that they could keep dedicated to this case the resources needed to prosecute the Class' claims. This entails substantial risk. *See id.* ¶ 88.

Counsel also incurred risk associated with having a parallel criminal proceeding, addressing the impact of the FTAIA, and evaluating massive amounts of electronic transactional data necessary to prove their case. Each of these risks weigh in favor of granting Counsel the requested fee award.

### 3. Advancing the Litigation to this Point and Obtaining the Settlements Has Required Professional Skill.

The docket and the procedural history in this this case demonstrate Counsel's expertise and the Direct Purchaser Plaintiffs' successes to date. *See* Dkt. 1458-1. ¶¶ 18-78. Counsel have done much to effectively prosecute the Class' claims, and to do so efficiently. Counsel have not come by their successes in this litigation easily. Defendants—including the Settling Defendants—have hired the best antitrust counsel money can buy to defend them against the Direct Purchaser Plaintiffs' Sherman Act claims. *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) ("The quality of opposing counsel is important in evaluating the quality of Class Counsel's work."). Indeed, despite guilty pleas, the Non-Settling Defendants maintain their innocence and contest liability.

### 4. Awards in Similar Complex Antitrust Cases Demonstrate That Class Counsel Seek a Reasonable Fee Award.

The requested award of $16,725,000 matches and is in keeping with the Ninth Circuit benchmark. *See Paul,* 886 F.2d at 272. Class Counsel's request is modest when compared to percentages

awarded plaintiffs' counsel in other, arguably less complex and challenging antitrust cases in this District. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 6607, at *44 (30%); *Meijer v. Abbott Labs.s*, No. 07-05985 (N.D. Cal. Aug. 11, 2011) (33 1/3%). It is also consistent with the awards in many other comparable cases. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 U.S. Dist. LEXIS 103027, at *1-2 (25%); *In re Sorbates Direct Purchaser Antitrust Litig.*, 2002 U.S. Dist. LEXIS 23468, at *9-10 (25%); *Van Vranken,* 901 F. Supp. at 298 (25%). As these precedents demonstrate, twenty-five percent is easily consistent with recognized "market rates," *i.e.*, rates typically awarded in similar contingency fee cases in this District. *See Vizcaino*, 290 F.3d at 1050 ("market rates" are a question of "lawyers' reasonable expectations [for recovery of contingent fees], which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size.").

### 5. Counsel Undertook a Significant Financial and Resource Burden in Prosecuting the Direct Purchaser Plaintiffs' Claims.

Counsel have invested significant amounts of time, money, and resources in this case for over three years, as shown in their time and expense records. Lead Class Counsel's time submissions—$20,501,282.50 total lodestar billed to date—illustrate the point. *See* Saveri Decl. ¶ 11. This litigation has required a significant devotion of Interim Class Counsel's resources for the last two years. Specifically, and by way of example, Lead Class Counsel performed the following tasks:

- Supervising all work performed.
- Preparing and editing court filings, including documents related to motion practice.
- Briefing and arguing the motion for class certification.
- Interfacing, communicating and negotiating with the United States Department of Justice.
- Interfacing, communicating and coordinating with counsel for the indirect purchaser plaintiffs.
- Interfacing, communicating, coordinating with, and providing assistance to counsel for the opt-out plaintiffs.
- Practicing before the Judicial Panel on Multidistrict Litigation with respect to late-filed cases.
- Managing discovery, including drafting discovery responses.

- Evaluating and analyzing defendants' discovery responses, including document productions.
- Managing document reviews.
- Selecting and preparing DPPs' expert witnesses and reports.
- Supervising all depositions.
- Preparing for and taking key depositions.
- Identifying and interviewing cooperating witnesses.
- Overseeing and coordinating the work of retained experts.
- Communicating with Settlement Class members and responding to inquiries concerning the status of the case and settlement.
- Conducting settlement negotiations.
- Coordinating notice and claims management issues.
- Preparing the case for trial. *See* Saveri Decl. ¶¶ 17-18.

Interim Counsel have relied on Class Counsel to assist the prosecution of this case for the benefit of the class. Several firms have been called to provide assistance for the benefit of the Class. Each of the firms has wide and deep experience in the field and has successfully resolved numerous cases, and the Class has benefitted from that experience here. *See* Saveri Decl. ¶¶ 19-20-17. The Court has seen the quality of legal work on behalf of the Direct Purchaser Plaintiffs. Under the active supervision of Lead Class Counsel, the firms have working closely together as an efficient team. *See id*. ¶¶ 19-22, 108-122. Assignments have been given based on the particular expertise and skill of individual lawyers. *See id*. Duplication of effort has been minimized, and as noted above, duplicative or unnecessary work has been excluded as a basis for the attorney fee award sought here. *See id*. ¶ 107. Class Counsel have set forth for the Court the details regarding their contributions to this litigation in their declarations attached to the Saveri Declaration. *See* Saveri Decl., Exs. 3-17 ¶ 3 in each declaration.

### 6. A Lodestar Cross-Check Confirms That the Fees Sought by Class Counsel Are Reasonable.

A lodestar cross-check may be used to ensure that class counsel has done the work necessary to justify the fee sought. *Vizcaino*, 290 F.3d at 1050; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("[T]he lodestar cross-check calculation need entail neither mathematical

precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.") (citation omitted).

precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.") (citation omitted).

Counsel's cumulative lodestar as of December 31, 2017 is $ 70,764,474.20. *See* Saveri Decl., ¶ 11, and Exs. 1-17. Consistent with the Court's instructions, time was reported on a monthly basis and those historical rates are used as the basis for the fee request here. *See id*. ¶¶ 97.

Using the lodestar cross-check, the fees sought here amount to less than 35 of the lodestar submitted by Counsel. In the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases such as this. *See Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65 held " within the range of multipliers applied in common fund cases"); *see also Van Vraken*, 901 F. Supp. at 298 ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.") (citations omitted). The lodestar cross-check thus confirms that Counsel's $16,725,000 fee request is reasonable and should be awarded as requested.

### 7. The Court Should Grant Attorneys' Fees Based on Work Counsel Has Performed on the Case as a Whole.

Antitrust cases with multiple defendants routinely have several settlements subject to separate approval procedures. Because the total work performed by counsel from inception of the case makes each settlement possible, courts typically base fee awards in subsequent settlements on all work performed in the case. *In re Southeastern Milk Antitrust Litigation,* No. 2:07-CV 208, 2013 U.S. Dist. LEXIS 70167, at \*\*26-27 (E.D. Tenn. 2013); *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142, 1149-50 (9th Cir. 2000). Indeed, when considering fee awards for subsequent settlements, courts typically calculate the lodestar multiplier by dividing (1) all past and requested fee awards by (2) all of counsel's time from inception of the case. *See, e.g.*, *In re Southeastern Milk Antitrust. Litig.*, *supra*, 2013 U.S. Dist. LEXIS 70167, at \*20; *In re Air Cargo Shipping Servs. Antitrust Litig.,* 2012 U.S. Dist. LEXIS 108299 (E.D.N.Y. Aug. 2, 2012), at \*63-65.

Courts routinely award counsel benchmark or greater percentages to calculate attorneys' fees in cases like this one involving large partial payments. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 6607, at \*\*47-48 (awarding counsel for direct purchaser plaintiffs 30% of $76 million partial settlement, 30% of subsequent $405 million settlement, and 30% of subsequent $68 million

settlement); *Lobatz,* 222 F.3d at 1149-150 (affirming that counsel should be awarded fees based on work on entire litigation, not time since the first settlement).

### IV. THE COURT SHOULD PERMIT COUNSEL TO BE REIMBURSED $6,690,000 FOR THEIR COSTS ADVANCED THROUGH DECEMBER 1, 2017

Counsel request reimbursement of expenses in the amount of $6,690,000 to be paid from the Settlement Fund. This amount will reimburse Counsel for all unreimbursed expenses through December 31, 2017.[6]

It is appropriate to reimburse attorneys prosecuting class claims on a contingent basis for "reasonable expenses that would typically be billed to paying clients in non-contingency matters," *i.e.*, costs "incidental and necessary to the effective representation of the Class." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048; *See also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Reasonable reimbursable litigation expenses include: those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs. *See Media Vision*, 913 F. Supp. at 1366 (court fees, experts/consultants, service of process, court reporters, transcripts, deposition costs, computer research, photocopies, postage, telephone/fax); *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982) (travel, meals and lodging), *remanded on other grounds*, 461 U.S. 952(1983). Under the common fund doctrine, plaintiffs' counsel should receive reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977).

Aside from the typical litigation-related costs necessarily incurred in a complex antitrust litigation like this one (*e.g.*, travel and lodging, legal research, court reporters), Counsel have incurred many other expenses that warrant reimbursement.

The majority of costs Counsel have incurred relate to the time-consuming, laborious, and costly work of experts retained to analyze Defendants' voluminous capacitors sales transactional data, as well as to develop expert testimony in preparation for class certification and to prove damages at trial. *See*

---

[6] Counsel intend to seek reimbursement for any unreimbursed costs, in addition to reasonable costs incurred in the future, from subsequent judgments or settlements or recovery after trial. These unreimbursed expenditures remain at risk unless and until Counsel obtain additional recoveries.

Saveri Decl. ¶ 123. Defendants' transactional data in total consists of well over 500 gigabytes that, for most Defendants, cover more than a decade's worth of sales and transaction information. These data were not produced in a uniform format with uniform fields of information recorded. As a result, Counsel's experts spent many hours learning the data and creating as much uniformity among the various sets as possible. In addition, a significant portion of the produced data was incomplete or unreadable due to format and age issues requiring attention on a Defendant-by-Defendant basis. Further, certain Defendants made a number of overlapping and duplicative productions of transactional data that imposed additional costs on Counsel not only in the form of additional attorney time but also through additional expert time as well.

In addition, Counsel have incurred substantial expense over the last three years for hosting, processing, and organizing approximately eight terabytes of electronically stored information ("ESI") and the transactional data produced by Defendants, largely in Japanese. *See* Saveri Decl. ¶ 124. Counsel retained an outside ESI vendor to upload, process, and remotely house Defendants' ESI. Those services over time have been a significant cost, as have been DPPs' efforts to use specific technology assisted review applications supported by the ESI vendor to search in Japanese so as to find relevant and important documents more quickly and with greater accuracy than would otherwise be possible. Counsel came to the reasonable conclusion that investment in technology and expertise to ensure the efficient search and retrieval of foreign language ESI saved the Class thousands of hours of attorney and other professional time that would have been required had Counsel not done so.

Further, Counsel have incurred sizeable costs in engaging individuals with Japanese language skills to assist them with the prosecution of this action. *See* Saveri Decl. ¶ 125. As described above, Defendants are almost all Japanese companies or U.S. subsidiaries of Japanese companies. Accordingly, the vast majority of the discovery DPPs pursued has targeted Japanese-speaking officers and employees of the Defendants, whose ESI and document are written in Japanese. Counsel were denied access to translations prepared by Defendants and provided to the Department of Justice. Key documents were reviewed in Japanese prior to translation to documents admissible in these proceedings in English. *See id*. ¶¶ 55, 123. Almost all Depositions of Defendants' personnel have required Plaintiffs to hire Japanese/English interpreters. Individuals with Japanese language skills are in high demand and come at

a significant expense.

Finally, Counsel have incurred significant expert fees and related expenses in connection with class certification briefings. *See id.* ¶¶ 58-60.

## V. COUNSEL ANTICIPATE SEEKING ADDITIONAL ATTORNEYS' FEES AND COSTS FROM FUTURE JUDGMENTS OR SETTLEMENTS

When considering a partial fee request, it is sound policy for the Court to recognize the risk counsel faced from the outset and evaluate counsel's contributions over the entire course of litigation (*see In re Southeastern Milk Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70167, at *26-27; *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1149-50 (9th Cir. 2000)) and the risks taken at the outset of the case (see, e.g., *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (risk assessed at outset of the case); *Fischel,* 307 F.3d at 1009 (same); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 55 (2d Cir. 2002) (same)).

Therefore, the Court should evaluate risks and achievements throughout the entire course of the litigation into consideration when deciding this fee request, as well as any future requests which may arise. As is reflected in Counsel's submission, their cumulative lodestar and costs greatly exceed the compensation they seek in this Motion. Counsel's lodestar and costs will continue to accrue during their ongoing prosecution of this action. While Counsel believe that the review of the Defendants' documents is largely complete, Counsel intend to devote substantial additional resources to expert discovery and trial. Should DPPs ultimately prevail at trial, or should Counsel obtain litigated judgments against or reach additional settlements with the remaining Defendants for the benefit of the Direct Purchaser Class, it is fair for Counsel to seek from future settlements additional fees and costs based on their work after December 31, 2017. Any such future requests will be sought out of additional settlements, subject to notice to the class and Rule 23 procedures.

## VI. CONCLUSION

For the reasons set forth above, Counsel requests payment of $16,725,000 in attorneys' fees and $6,690,000 in costs.

| | |
|---|---|
| Dated: May 3, 2018 | JOSEPH SAVERI LAW FIRM, INC. |
| | By:     /s/ *Joseph R. Saveri* |

Joseph R. Saveri
Steven N. Williams (State Bar No. 175489)
Nicomedes Sy Herrera (State Bar No. 275332)
Joshua Paul Davis (State Bar No. 193254)
Demetrius X. Lambrinos (State Bar No. 246027)
James G. Dallal (State Bar No. 277826)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940

*Interim Class Counsel for Direct Purchaser Plaintiffs*