**Pages 1 - 14**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

| | | |
|---|---|---|
| IN RE:  CAPACITORS ANTITRUST LITIGATION, | ) ) ) | **NO. C 14-03264 JD** |
| IN RE:  CAPACITORS ANTITRUST LITIGATION (NO. III) | ) ) ) | **NO. MD-17-02801 JD** |

San Francisco, California
Thursday, May 10, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Indirect Purchaser Plaintiffs:
                Cotchett Pitre & McCarthy, LLP
                840 Malcolm Road, Suite 200
                Burlingame, CA  94010
                (650) 697-6000
                (650) 697-0577 (fax)
      **BY:   ADAM J. ZAPALA**
           **ELIZABETH T. CASTILLO**

For Defendant Rubycon Corporation:
                Shearman & Sterling LLP
                401 9th Street, NW
                Suite 800
                Washington, DC  20004-2128
                (202) 508-8083
      **BY:   DJORDJE PETKOSKI**

Reported by Lydia Zinn, CSR #9223, RPR, FCRR, Official Reporter

```
 1  APPEARANCES:

 2  For Defendants Nippon Chemi-Con Corporation; United Chemi-Con:
                      Paul Weiss Rifkind Wharton & Garrison
 3                    2001 K Street NW
                      Washington, DC   2006-1047
 4                    (202) 223-7351
                      (202) 204-7420 (fax)
 5             BY:    ERIC SEGA

 6  For Defendants Nippon Chemi-Con Corporation; United Chemi-Con:
                      Kaufhold Gaskin LLP
 7                    388 Market Street, Suite 1300
                      San Francisco, CA   94111
 8                    (415) 944-9402
                      (415) 874-1071 (fax)
 9             BY:    STEVEN KAUFHOLD

10  For Defendant HolyStone International:
                      Jones Day
11                    555 South Flower Street, 50th Floor
                      Los Angeles, CA   90071-2452
12                    (213) 489-3939
                      (213) 243-2539 (fax)
13             BY:    KELLY OZUROVICH

14

15

16

17

18

19

20

21

22

23

24

25
```

1  **Thursday - May 10, 2018**                                    **10:12 a.m.**

2                           **P R O C E E D I N G S**

3                                   ---o0o---

4           **THE CLERK:**  Calling Civil 14-3264, In Re: Capacitors

5  Antitrust Litigation, and Multidistrict Litigation 17-2801,

6  In Re: Capacitors Antitrust Litigation, Number III.

7  (Whereupon a document was tendered to the Court.)

8           **MR. ZAPALA:**  Good morning, Your Honor.  Adam Zapala,

9  from Cotchett Pitre & McCarthy, for the Indirect Purchaser

10 Plaintiffs.  I'm here with my colleague, Elizabeth Castillo.

11          **THE COURT:**  Mr. Zapala.  So I am wondering what we're

12 doing with the Distribution Plan.

13          **MR. ZAPALA:**  Yes.

14          **THE COURT:**  Now, I know I let one go by earlier, but

15 now I'm -- just remind me why we're doing it this way.

16          **MR. ZAPALA:**  Why we're doing it at the end?

17          **THE COURT:**  Why we're telling people, *We'll let you*

18 *know later.  And we're not sure what it's going to be yet*.

19          **MR. ZAPALA:**  The reason we're doing that is because

20 the pay-out will be *pro rata* --

21          **THE COURT:**  Yes.

22          **MR. ZAPALA:**  -- based on the entire Settlement Fund.

23          **THE COURT:**  The cumulative?

24          **MR. ZAPALA:**  The cumulative Settlement Fund.

25          **THE COURT:**  That's right.  Okay.  Now I remember.

1  **MR. ZAPALA:** And in these kinds of --

2  **THE COURT:** So this is on the fairness point. And
3  I'm not suggesting it's unfair, but I just want to make sure
4  there's no problem from a third party.

5  **MR. ZAPALA:** Sure.

6  **THE COURT:** So the Notice says we anticipate it would
7  be *pro rata*.

8  Why aren't we saying it just will be *pro rata*?

9  **MR. ZAPALA:** It will be *pro rata*.

10  **THE COURT:** Can we just say that? Let's delete the
11  "anticipate."

12  **MR. ZAPALA:** Anticipate.

13  **THE COURT:** I just want to be clear. It's got to be
14  a little bit clearer in my mind. This is slightly unusual. I
15  know I asked for it because the settlements were coming in, and
16  it was too hard to deal with alternatively.

17  **MR. ZAPALA:** Mm-hm.

18  **THE COURT:** And I still think this procedure is the
19  most fair and efficient way of doing it, but the Notice was a
20  little vague. So just say it will be *pro rata*; and you will
21  be, you know, expressly advised what your share is, and how
22  you're going to claim it, when all of the settlements are --
23  Can we just -- let's set it out a little more clearly.

24  **MR. ZAPALA:** Absolutely.

25  **THE COURT:** When all of the settlements are obtained,

```
 1  you know, on a date which we can't set yet, but we anticipate
 2  will be probably within the next year or two.
 3          MR. ZAPALA:  Right.  And one of the reasons we also
 4  can't tell people what their share is, is first we need to know
 5  what the cumulative Settlement Fund is; but we'll also need to
 6  know -- the second thing is:  How many people claims?  Right?
 7          THE COURT:  Okay.
 8          MR. ZAPALA:  And what is -- what the size of their
 9  claim is.  Right?  Some people will purchase thousands of
10  capacitors; others will purchase smaller amounts.
11          THE COURT:  Right.
12          MR. ZAPALA:  That's also one of the reasons why we're
13  delaying distribution to the end of the case, because there are
14  some people who, frankly, didn't purchase a lot, but will be
15  entitled to a *pro rata* share --
16          THE COURT:  Right.
17          MR. ZAPALA:  -- and we want to mail to them once.
18          THE COURT:  Let's revise that Notice.
19          MR. ZAPALA:  Okay.
20          THE COURT:  And submit that to me.
21     And then the only other question I had is:  So HolyStone
22  is 67 percent of the volume of affected of commerce.
23          MR. ZAPALA:  Correct.
24          THE COURT:  That's just U.S. sales.  Right?
25          MR. ZAPALA:  Correct.
```

1       **THE COURT:** NCC and UCC are only 1.4 percent?

2       **MR. ZAPALA:** That's true. That said, that's higher
3  than the percentage that our class-certification Expert Report
4  demonstrates. The regression model that you've seen in our
5  expert's report shows a 7 percent overcharge. So we think this
6  is basically close to one and a half times single damages.

7       **THE COURT:** All right. So that's based on that
8  calculation; not on inability to pay?

9       **MR. ZAPALA:** That's correct. The NCC/UCC Settlement
10 was not based on ability to pay, at all.

11      **THE COURT:** How did you evaluate Rubycon's --

12      **MR. ZAPALA:** Ability to pay?

13      **THE COURT:** Yes.

14      **MR. ZAPALA:** We -- first of all, we employed an
15 expert to review their financials that were provided to us.
16 We've been talking about resolution with Rubycon for roughly
17 two years, three years. Frankly, we spoke with Rubycon's
18 counsel, I think, when the motions to dismiss were pending.

19      **THE COURT:** Now, did the DPPs join you in this
20 inability-to-pay exercise?

21      **MR. ZAPALA:** Not from the standpoint of employing an
22 expert. This was IPP's expert, alone.

23      **THE COURT:** Okay.

24      **MR. ZAPALA:** A consultant, essentially.

25      I don't want to say their ability to pay had no effect on

1  settlement discussions.  I think it did have an effect, but I
2  do think the number, standing alone -- it is fair and adequate.
3  I mean, we're -- I think it's close to --
4           **THE COURT:**  14 percent?
5           **MR. ZAPALA:**  -- 14 percent of their sales to
6  distributors.  So again, you're looking at really double
7  damages for Rubycon.  And I think, under any kind of standard,
8  that's fair and reasonable.
9           **THE COURT:**  Well, let me just -- so what did your
10 expert do on the ability to pay?
11          **MR. ZAPALA:**  They analyzed the financial data that --
12 that Rubycon provided us.  They are a private company, so
13 there's not a lot out there in the public sphere.
14     And there were concerns about their ability to continue to
15 operate, given the number of government fines that they're
16 facing around the world.
17          **THE COURT:**  Did the Antitrust Division do that
18 declaration of the guy who -- Mr. Perski (phonetic), the DOJ
19 person?
20          **MR. ZAPALA:**  Yeah.
21          **THE COURT:**  Did they have a declaration for Rubycon?
22          **MR. ZAPALA:**  I believe they did, but I'm not as up on
23 the criminal side of things.  Mr. Petkoski might be able to
24 address that; but I think they did do that analysis.
25          **MR. PETKOSKI:**  Good morning, Your Honor.

1  Djordje Petkoski, for Rubycon.
2          **THE COURT:**  Can you remind me?
3          **MR. PETKOSKI:**  Mr. Zhules?
4          **THE COURT:**  That's what his name is.  Yes.
5       (Reporter requests clarification.)
6          **THE COURT:**  Zhules.  Just use Z-h-u-l-e-s.  We can
7  fix it later.
8       Did he do a declaration?
9          **MR. PETKOSKI:**  Yes, he did.  He provided a report,
10 Your Honor.
11         **THE COURT:**  And did your expert look at that,
12 Mr. Zapala?
13         **MR. ZAPALA:**  Our expert did not look at that report;
14 I would venture to guess because, again, much of this is Under
15 Seal.  And I believe that report is Under Seal --
16         **MR. PETKOSKI:**  That's correct.
17         **MR. ZAPALA:**  -- if I'm not mistaken.
18         **THE COURT:**  You all didn't ask me for that?
19         **MR. ZAPALA:**  We did not ask you for that.
20      I would venture to guess that he reviewed the same
21 financial data that our consultant did.  I can't say that for
22 sure, because again, he hasn't provided me with his backup
23 data.
24         **THE COURT:**  I'm asking because this is what I was
25 hoping would happen, and I would get a third-party view, so to

1  speak, of the integrity of the representations, and the

2  soundness of the Expert Report produced by DOJ.

3          **MR. ZAPALA:**  Yeah.

4          **THE COURT:**  But you didn't -- your expert didn't look

5  at it?

6          **MR. ZAPALA:**  Did not look at that report.

7     If Your Honor would like for it to come out from Under

8  Seal --

9          **THE COURT:**  It was a missed opportunity.  Well, it's

10 too late now.  He's already done his work.  Right?  Okay.

11         **MR. PETKOSKI:**  And, Your Honor, I can represent that

12 the financial information that Rubycon provided to Mr. Zhules

13 was the same financial information that we provided to the

14 IPPs, with the exception that our conversation with the IPPs

15 continued well after the criminal case was resolved.  So the

16 IPPs received later --

17         **THE COURT:**  More?

18         **MR. PETKOSKI:**  -- more updated financial information.

19         **THE COURT:**  Okay.

20         **MR. ZAPALA:**  And I would go back to this point.  And

21 I want to put the settlement cumulative settlement number with

22 Rubycon in context.

23    You know, our case, because it involves just distributors,

24 is fundamentally smaller than both DOJ's and the Directs.  And

25 the $4.5 million settlement -- again, even putting aside the

```
 1  standing or the ability-to-pay issues, I think it's a fair and
 2  reasonable settlement.  It represents double damages for
 3  Rubycon.
 4       And I think, given we've got class certification in front
 5  of us --
 6           THE COURT:  Well, yes, I appreciate that; but you
 7  know, this has been a complicated question --
 8           MR. ZAPALA:  Sure.
 9           THE COURT:  -- and I have not been given, in my view,
10  adequate signposts to make decisions about --
11           MR. ZAPALA:  Sure.
12           THE COURT:  -- why are they able to pay two X here,
13  but nothing to the victims in the criminal case.  Anyway, I'm
14  not sure about that.
15           MR. ZAPALA:  Yeah.
16           THE COURT:  Let me see the Notice again.
17      Now, looking to the end --
18           MR. ZAPALA:  Sure.
19           THE COURT:  -- at that point, you're going to have a
20  discussion about the Distribution Plan.  Right?  You're
21  going --
22           MR. ZAPALA:  I missed the first part.  We're going to
23  have a --
24           THE COURT:  At that point we're going to have a
25  discussion about the Distribution Plan, so you're going to give
```

```
 1  me a proposed plan --
 2           MR. ZAPALA:  Correct.
 3           THE COURT:  -- and then we're going to decide whether
 4  there's reasonable or not.
 5           MR. ZAPALA:  Correct.
 6           THE COURT:  Okay.  All right.
 7           MR. ZAPALA:  And I want to be clear what I'm
 8  contemplating on final approval.  What we typically do is a
 9  plan of allocation, which essentially is going to say the same
10  thing that we've said in the preliminary --
11           THE COURT:  Well, that is; but there will be a day at
12  the end when we actually discuss the real plan.
13           MR. ZAPALA:  Correct.  We would -- so then we would
14  ask for approval of our plan of distribution, which would set
15  forth tables of --
16           THE COURT:  Yeah.
17           MR. ZAPALA:  -- the claimants who have claimed; what
18  the amounts are going to be paid to them.
19           THE COURT:  All I'm doing is I'm setting the
20  expectation that the Distribution Plan will be something I will
21  approve --
22           MR. ZAPALA:  Correct.
23           THE COURT:  -- at the end of the case.  It won't be
24  just something --
25           MR. ZAPALA:  We do prefer that the --
```

```
 1            THE COURT:  -- the IPPs do.
 2            MR. ZAPALA:  No.  We will submit to you a
 3   Distribution Plan for approval.
 4            THE COURT:  Okay.
 5            MR. ZAPALA:  That will set forth the exact amounts.
 6   You will either approve it or not approve it.  My hope is
 7   obviously that you approve it, and then that money will be paid
 8   out of the funds.
 9            THE COURT:  When will this be?
10            MR. ZAPALA:  Well, part of that is dependent on our
11   colleagues on the other side, but --
12            THE COURT:  How many are left now?
13            MR. ZAPALA:  On the electrolytic side of the case we
14   still have Matsuo and Elna.  I hope I'm not forgetting anyone.
15            THE COURT:  Panasonic?
16            MR. ZAPALA:  We have an agreement with Panasonic in
17   principle.
18            THE COURT:  Oh, you do?
19            MR. ZAPALA:  We have not finalized the deal with them
20   yet.
21            THE COURT:  Do you know if the DPPs do?
22            MR. ZAPALA:  I do not believe they do, but I don't
23   know.  We do negotiate separately.
24            THE COURT:  All right.
25            MR. ZAPALA:  On the film side, we still have Shinyei;
```

```
 1  Taitsu; Nissei, whose counsel just filed a motion for
 2  withdrawal, so we'll have to figure out what's going on there.
 3  And I believe that's it.
 4           THE COURT:  They're not getting paid.  Isn't that
 5  what they said?
 6           MR. ZAPALA:  Actually, that's not what they said.
 7      They said that the company is planning to file for
 8  bankruptcy, and has directed them to stop work on the case.
 9  And so it's not clear to me when they will file for bankruptcy.
10  And it's not, I don't believe, a contemplated U.S. filing.  I
11  think it's an Asian --
12           THE COURT:  Japan?
13           MR. ZAPALA:  Either Japan or China, because my
14  understanding is much of their operations are now in parts of
15  China.
16      So -- but there's a handful left.  We're talking to all of
17  them.  And there may be more to report in the very near future.
18           THE COURT:  Okay.  All right.  So we will reserve
19  decision on preliminary approval until I get this new Notice.
20  Just send it in when you can.
21      I'll just do it on the.
22           MR. ZAPALA:  And that's fine.  We can do it in bulk.
23      I guess what I would say is I was wondering whether the
24  settlements could be approved, because I think the issue that
25  you're addressing is the Notice plan, itself; but if you
```

1   want --
2           THE COURT:  Well, I want to see that before I do the
3   final approval -- preliminary approval.
4           MR. ZAPALA:  And I did just want to alert you.  We
5   will affix dates to the Proposed Order once you enter it, or --
6           THE COURT:  Yes.
7           MR. ZAPALA:  -- I suppose the Court can take that on
8   itself, if it would like, but we set sort of litigation dates
9   based on when the Order approving the Notice for Rubycon comes
10  in.
11          THE COURT:  Okay.  Thank you.
12          MR. ZAPALA:  Thank you, Your Honor.
13      (At 10:23 a.m. the proceedings were adjourned.)
14  I certify that the foregoing is a correct transcript from the
15  record of proceedings in the above-entitled matter.
16
17  *Lydia Zinn*
18  _____        May 10, 2018
    Signature of Court Reporter/Transcriber       Date
19  Lydia Zinn