UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL DIRECT PURCHASER ACTIONS | Master File No. 3:17-md-02801-JD<br><br>Master File No.  3:14-cv-03264-JD<br><br>[PROPOSED] ORDER GRANTING COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES |

This matter is before the Court on Direct Purchaser Class Counsel's application for Attorneys' Fees and Reimbursement of Expenses ("Motion") (Dkt. 173)[1] made in connection with DPPs' Motion for Final Approval of Settlements with Defendants Hitachi Chemical Co., Ltd., Hitachi AIC, Inc., and Hitachi Chemical Co. America, Ltd. (collectively, "Hitachi Chemical"); and Soshin Electric Co., Ltd., and Soshin Electronics of America Inc. (collectively, "Soshin") (all Hitachi Chemical and Soshin entities together, the "Settling Defendants").

---

[1] All citations to the docket are to 3:17-md-02801, except where the document is available only in docket number 3:14-cv-03264.

The Settlements total $66,900,000 in cash and secure agreements by each of the two Settling Defendants to cooperate in DPPs' continued prosecution of their claims against the non-settling Defendants. The Settlements follow earlier round of settlements with five other Defendants. The Court entered an Order Granting Final Approval of those settlements on June 27, 2017. (Dkt. 1713 in 3:14-cv-03264-JD)

Class counsel for the direct purchaser settlement class (the "Settlement Class") submit their Motion for attorneys' fees seeking an award in the amounts of $16,725,000 (or 25% of the settlement amount) for fees accrued as of December 31, 2017. As reflected in class counsel's submission, their cumulative lodestar as of as of December 31, 2017 exceed the fees they seek in this Motion. Class counsel also request reimbursement of $6,690,000 in costs and expenses incurred (totaling 10% of the settlement funds).

Upon consideration of the Motion, the supporting declarations concurrently filed therewith, all other papers in the Court's files, and the argument at the June 7, 2018 hearing, the Court finds the following and grants the Motion.

I.   **LEGAL STANDARD**

   A.   **Attorneys' Fees**

Attorneys may recover reasonable attorneys' fees from a common fund settlement they secure on behalf of a class. The Supreme Court has explained that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123 (1885) ("[W]here one or more of many parties having a common interest in a trust fund takes, at his own expense, proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement either out of the fund itself or by a proportional contribution from those who accept the benefit of his efforts"). "The rationale behind awarding a percentage of the fund to counsel in common fund cases is the same that justifies permitting contingency fee arrangements in

general. . . . The underlying premise is the existence of **risk**—the contingent risk of non-payment." *In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) (emphasis in original). In addition, attorneys' fees are awarded as a means of ensuring the beneficiaries of a common fund share with those whose labors created the fund. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (*"WPPSS"*) ("[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it.").

### B.  Costs Reimbursement

Counsel may also obtain reimbursement for costs from a common fund settlement. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.") (citing, *inter alia*, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *see also Wolph v. Acer Am. Corp.*, 2013 U.S. Dist. LEXIS 151180, at *18 (N.D. Cal. Oct. 21, 2013) ("Counsel are entitled to reimbursement of their reasonable out-of-pocket expenses."). "The prevailing view is that expenses are awarded in addition to the fee percentage." *Williams v. SuperShuttle Int'l, Inc.*, No. 12-CV-06493-WHO, 2015 U.S. Dist. LEXIS 19341, at *6 (N.D. Cal. Feb. 12, 2015) (citations omitted).

## II.  THE COURT AWARDS DPPS' COUNSEL $16,725,000—25 PERCENT OF THE FUND—AS PARTIAL PAYMENT OF THEIR FEES ACCRUED

### A.  The Percentage-of-the-Fund Method for Calculating Fees Is Appropriate Here

District courts in the Ninth Circuit use either the "percentage-of-the-fund" or the "lodestar" method in calculating fees in common fund settlements. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002) ("In a common fund case, the district court has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award."). Using either method, the ultimate inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

Where there is an easily quantifiable benefit to the class—namely, the cash recovery achieved through the settlement—the percentage of the fund approach is appropriate. *See In re Bluetooth*

*Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."). Indeed, the percentage-of-the-fund method is *preferred* when counsel's efforts have created a common fund for the benefit of the class. *See In re Korean Air Lines Co., Antitrust Litig.*, 2013 U.S. Dist. LEXIS 186262, at *3 (C.D. Cal. Dec. 23, 2013) ("The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel."); *see also Bellinghausen v. Tractor Supply Co.*, 2015 U.S. Dist. LEXIS 35266, at *33 (N.D. Cal. Mar. 19, 2015) ("Because this case involves a common settlement fund with an easily quantifiable benefit to the class, the Court will primarily determine attorneys' fees using the benchmark method but will incorporate a lodestar cross-check to ensure the reasonableness of the award.").

Courts supervising antitrust cases in this District regularly apply the percentage of the fund approach. *See*, *e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D. Cal. January 14, 2013); *Meijer v. Abbott Laboratories*, No. 07-05985 (N.D. Cal. Aug. 11, 2011); *Ross v. U.S. Nat'l Ass'n,* No. 07-02951, 2010 U.S. Dist. LEXIS 107857, at *4-5 (N.D. Cal. Sept 29, 2010); *In re CV Therapeutics, Inc. Secs. Litig.*, No. 03-3709, 2007 U.S. Dist. LEXIS 98244, at *2 (N.D. Cal. April 4, 2007); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486, 2007 U.S. Dist. LEXIS 103027, at *1-2 (N.D. Cal. Aug. 16, 2007); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886, 2002 U.S. Dist. LEXIS 23468, at *9-10 (N.D. Cal. Nov. 15, 2002); *Van Vranken v. ARCO*, 901 F. Supp. 294, 298 (N.D. Cal. 1995). The Court will do so as well here.

Courts in the Ninth Circuit applying the "percentage of the fund" approach use a twenty-five percent benchmark. *See Paul, Johnson, Alston & Hunt v. Granulty*, 886 F.2d 268, 272 (9th Cir. 1989). *See also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%").

Selection of the benchmark or any other rate, however, must be supported by findings that take into account all of the circumstances of the case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). The benchmark is subject to adjustment—upward or downward—based on the Court's analysis of the factors the Ninth Circuit considered in *Vizcaino*: (1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in comparable cases. *See id.* at 1048-50. *See also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 102408, at *62-69 (N.D. Cal. Aug. 3, 2016) (applying the *Vizcaino* factors on indirect purchaser class counsel's fee motion); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 5383, at *171-74 (N.D. Cal. Jan. 14, 2016) (same) (direct purchaser class counsel's fee motion); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2013 U.S. Dist. LEXIS 190974, at *116-74 (N.D. Cal. Oct. 30, 2013) ("DRAM") (same).

### B. The *Vizcaino* Factors Warrant Granting Counsel's Fee Request

Here, each of the *Vizcaino* factors weighs in favor of awarding the requested $16,725,000, which is twenty-five percent of the total Settlement Fund ($66,900,000), and equal to the Ninth Circuit's benchmark. Counsel's Motion requests the benchmark amount from these Settlements. The Court finds it is appropriate here to award Direct Purchaser Plaintiffs Counsel's request for an award matching this Circuit's benchmark.

#### 1. Counsel Obtained an Exceptional Result for the Direct Purchaser Class With The Settlements.

The most important factor is the result achieved for the class. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 U.S. Dist. LEXIS 102408, at *63 (citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). These two Settlements—the second round of settlements in the consolidated Direct Purchaser Action—provide the Settlement Class with valuable monetary and non-monetary benefits.

The Settling Defendants' all-cash payments for the benefit of the Class together will total $66,900,000. This is a large amount of money relative to the Settling Defendants' comparatively minimal individual and collective capacitor sales to U.S. purchasers between 2002 and 2014. The Settling Defendants' estimated sales to U.S. purchasers during that period represent less than one percent of the more than $7 billion in estimated sales made by all Defendants, in aggregate, to U.S. purchasers during that same period. *See, e.g.,* Dkt. 173-1 ¶ 91. The Settlement Fund also represents a significant percentage of each Settling Defendant's total U.S. sales during that period:

- The Hitachi Chemical Defendants agreed to pay DPPs $63,000,000. For purposes of its guilty plea and sentencing on federal criminal price fixing charges, the Hitachi Chemical Defendants estimated its U.S. capacitors sales from 2002 to 2010 totaled $16,500,000. The settlement consideration here is 3.8 times the Hitachi Chemical Defendants' estimated relevant U.S. sales. *See* Dkt. 173-1 ¶ 93.

- The Soshin Defendants agreed to pay DPPs $3,900,000. The Soshin Defendants' worldwide capacitors sales between 2002 and 2014 were limited, and Soshin did not heavily target of the U.S. market during that period, DPPs are therefore confident that the settlement consideration is several times greater than the Soshin Defendants' entire relevant U.S. sales. *See* Dkt. 173-1 ¶ 92.

The Settlements' monetary component—all cash—greatly benefits the Direct Purchaser Class by providing and, in fact, accelerating the Settlement Class's chances for monetary recovery in this case through the claims administration process. Here, a substantial amount of money stands to be distributed to a relatively small Direct Purchaser Class. Dkt. 173-1 ¶ 89. There is a real value to Class members of receiving a cash distribution from the Settlements in the near term. In addition, given the number of Defendants in this action and the risk of treble damages at trial, these Settlements likely will encourage additional favorable settlements.

In addition to the monetary component, each of the Settling Defendants has agreed to provide substantial assistance to the class. The Settling Defendants each have agreed to cooperate with DPPs in their continued prosecution of the Class' claims against the Non-Settling Defendants. *See* Dkts. 172-03, at ¶ 22 ; 172-4, at ¶ 22. They agree to provide assistance such as giving attorney proffers regarding facts developed in their internal investigations, making key witnesses available for deposition or trial,

and submitting declarations on key issues such as liability, impact, damages, and class certification. *See* Dkts. 172-03, at ¶ 22 ; 172-4, at ¶ 22.

The assistance the Settling Defendants have agreed to provide is a substantial class benefit because it will assist DPPs to maximize their monetary recovery against the Non-Settling Defendants. *See DRAM*, 2013 U.S. Dist. LEXIS 190974, at *143 (cooperation "was valuable in maximizing the monetary recovery against the other Defendants.").

### 2. Counsel Took Significant Risks Prosecuting This Litigation.

Counsel assumed a significant risk in undertaking this litigation. *See* Dkt. 173-1 ¶¶ 85-86. All understood the risk of contingency litigation and the fact that recovery is never guaranteed. They committed their time, money and energy to the prosecution of a multi-year, international price-fixing cartel case against 22 sprawling Defendant corporate families based almost entirely in Japan. *See id.* ¶ 86. This cartel case is complex, and complex antitrust cases like this one often take years to resolve through settlement, trial, or appeal. *See id.* As the case has advanced, Counsel have committed their time, money, and energy to this litigation while aware that certain Defendants have claimed poor financial health that could ultimately impede or diminish recovery for the Class. *See id.* ¶¶ 85-86. As set forth in Lead Class Counsel's declaration, Direct Purchaser Plaintiffs' Counsel have expended millions of dollars of their time and incurred millions of dollars in expenses, all on a purely contingent basis. Counsel have stated that they had to turn away case opportunities over the last four years to ensure that they could keep dedicated to this case the resources needed to prosecute the Class' claims. This entails substantial risk. *See id.* ¶ 88.

Counsel also incurred risk associated with having a parallel criminal proceeding, addressing the impact of the FTAIA, briefing class certification, and evaluating a large volume of electronic transactional data necessary to prove their case. Each of these risks weigh in favor of granting Counsel the requested fee award.

Master File No. 3:14-cv-0324-JD
17-md-02801-JD

7

[PROPOSED] ORDER GRANTING COUNSEL'S MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

3.  **Advancing the Litigation to this Point and Obtaining the Settlements Has Required Professional Skill.**

The docket and the procedural history in this case demonstrate counsel's expertise and the Direct Purchaser Plaintiffs' successes to date. *See* Dkt. 173-1, ¶¶ 26-70. Counsel have expertly prosecuted the Class's claims. They have done so professionally, efficiently, and as good stewards of the Class's resources.

As this Court has previously noted, Counsel did not secure successes without determined opposition by well-funded, multinational corporations. (Dkt. 1714, at 7) Defendants—including the Settling Defendants—have hired the best antitrust counsel money can buy to defend them against the Direct Purchaser Plaintiffs' Sherman Act claims. *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (C.D. Cal. 2013) ("The quality of opposing counsel is important in evaluating the quality of Class Counsel's work."). Indeed, despite guilty pleas, the Non-Settling Defendants maintain their innocence and contest liability.

4.  **Awards in Similar Complex Antitrust Cases Demonstrate That Class Counsel Seek a Reasonable Fee Award.**

The requested award of $16,725,000 matches and is in keeping with the Ninth Circuit benchmark. *See Paul, Johnson, Alston & Hunt*, 886 F.2d at 272. Class Counsel's request is modest when compared to percentages awarded plaintiffs' counsel in other, arguably less complex and challenging antitrust cases in this District. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 (N.D. Cal. Jan. 14, 2013) (30%); *Meijer v. Abbott Laboratories*, No. 07-05985 (N.D. Cal. Aug. 11, 2011) (33 1/3%). It is also consistent with the awards in many other comparable cases. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486, 2007 U.S. Dist. LEXIS 103027, at *1-2 (N.D. Cal. Aug. 16, 2007) (25%); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886, 2002 U.S. Dist. LEXIS 23468, at *9-10 (N.D. Cal. Nov. 15, 2002) (25%); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (25%). As these precedents demonstrate, twenty-five percent is easily consistent with recognized "market rates," *i.e.*, rates typically awarded in similar contingency fee cases in this District. *See Vizcaino*, 290 F.3d at 1050 ("market rates" are a question of

"lawyers' reasonable expectations [for recovery of contingent fees], which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size.").

### 5. Counsel Undertook a Significant Financial and Resource Burden in Prosecuting the Direct Purchaser Plaintiffs' Claims.

Counsel have invested significant amounts of time, money, and resources in this case for over three years, as shown in their time and expense records. The Court is aware of the quality of legal work done by counsel on behalf of the Direct Purchaser Plaintiffs. Under the active supervision of Lead Class Counsel, the firms have worked closely together as an efficient team. (Dkt. 173-1 ¶¶ 17-22, 26-70) Class Counsel have set forth for the Court the details regarding their contributions to this litigation in their declarations attached to Lead Class Counsel's Declaration. (Dkt. 173-1, Exs. 3-17 ¶ 3 in each declaration).

### 6. A Lodestar Cross-Check Confirms That the Fees Sought by Class Counsel Are Reasonable.

A lodestar cross-check may be used to ensure that class counsel has done the work necessary to justify the fee sought. *Vizcaino*, 290 F.3d at 1050; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("[T]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.") (citation omitted).

Because the total work performed by counsel from inception of the case makes each settlement possible, courts typically base fee awards in subsequent settlements on all work performed in the case. *In re Southeastern Milk Antitrust Litigation,* 2013 U.S. Dist. LEXIS 70167, at *26-27 (E.D. Tenn. 2013); *Lobatz v. U.S. West Cellular of Calif., Inc.*, 222 F.3d 1142, 1149-50 (9th Cir. 2000). Indeed, when considering fee awards for subsequent settlements, courts typically calculate the lodestar multiplier by dividing (1) all past and requested fee awards by (2) all of counsel's time from inception of the case. *See, e.g., In re Southeastern Milk Antitr. Litig.*, *supra*, 2013 U.S. Dist. LEXIS 70167, at *20; *In re Air Cargo Shipping Servs. Antitrust Litig.,* 2012 U.S. Dist. LEXIS 108299 (E.D.N.Y. Aug. 2, 2012), at *63-65.

Counsel's cumulative lodestar as of December 31, 2017 is $70,764,475.20. (Dkt. 173-1, ¶¶ 12, 97-122, 106 & Exs. 1-17) Using the lodestar cross-check, the fees sought here, in addition to the attorneys' fees previously awarded by the Court for prior settlements, amount to 35% of the lodestar submitted by Counsel. (Dkt. 173-1, ¶12) In the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases such as this. *See Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65 held " within the range of multipliers applied in common fund cases"); *see also Atlantic Richfield Co.*, 901 F. Supp. at 298 ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.") (citations omitted). The lodestar cross-check thus confirms that Counsel's $16,725,000 fee request is reasonable and should be awarded as requested.

### III. THE COURT AWARDS COUNSEL'S REQUEST FOR REIMBURSEMENT OF COSTS AND EXPENSES ADVANCED THROUGH DECMEBER 30, 2017

The Court grants Counsel their request for reimbursement of expenses they have incurred and advanced as of December 31, 2017 in the amount of $6,690,000. This amount is to be paid from the Settlement Fund. It is appropriate to reimburse attorneys prosecuting class claims on a contingent basis for "reasonable expenses that would typically be billed to paying clients in non-contingency matters," *i.e.*, costs "incidental and necessary to the effective representation of the Class." *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048. Reasonable reimbursable litigation expenses include: those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (court fees, experts/consultants, service of process, court reporters, transcripts, deposition costs, computer research, photocopies, postage, telephone/fax); *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982) (travel, meals and lodging), *remanded on other grounds*, 461 U.S. 952(1983). Under the common fund doctrine, plaintiffs' counsel should receive reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977). The Court finds that the advanced expenses set forth in the Motion and Lead Counsel's

Declaration were reasonable and necessarily incurred in connection with the Direct Purchaser Plaintiffs' prosecution of this action to date.

IT IS SO ORDERED.

Dated:  September 21, 2018

_____
HON. JAMES DONATO
United States District Judge