1  Adam J. Zapala (State Bar No. 245748)
   Elizabeth T. Castillo (State Bar No. 280502)
2  Mark F. Ram (State Bar No. 294050)
   **COTCHETT, PITRE & MCCARTHY, LLP**
3  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
4  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
5  azapala@cpmlegal.com
   ecastillo@cpmlegal.com
6  mram@cpmlegal.com

7  *Interim Lead Counsel for Indirect Purchaser Plaintiffs*

8

9                 **UNITED STATES DISTRICT COURT**

10               **NORTHERN DISTRICT OF CALIFORNIA**

11                  **SAN FRANCISCO DIVISION**

12

13  **IN RE CAPACITORS ANTITRUST**          **MDL No. 17-md-02801**
    **LITIGATION**                          **Case No. 3:14-cv-03264**

14

15  **This Document Relates to:**           **INDIRECT PURCHASER PLAINTIFFS'**
                                            **NOTICE OF MOTION AND MOTION**
16  **All Indirect Purchaser Actions**      **FOR PRELIMINARY APPROVAL OF**
                                            **SETTLEMENTS WITH NICHICON AND**
                                            **FOR APPROVAL OF THE PLAN OF**
17                                          **ALLOCATION; MEMORANDUM OF**
                                            **POINTS AND AUTHORITIES IN**
18                                          **SUPPORT THEREOF**

19
                                            **Date:** December 6, 2018
20                                          **Time:** 10:00 a.m.
                                            **Place:** Courtroom 11, 19th Floor
21

22

23

24

25

26

27

28

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of
Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT**, on December 6, 2018, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable James Donato, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Indirect Purchaser Plaintiffs ("IPPs") will and hereby do move for entry of an order granting preliminary approval of a proposed settlement with Defendants Nichicon Corporation and Nichicon (America) Corporation (together, "Nichicon").  This motion is brought pursuant to Federal Rule of Civil Procedure ("Rule") 23 and the Northern District of California's Procedural Guidance for Class Action Settlements.  The grounds for this motion are that the settlement with the Nichicon Defendants falls within the range of possible approval, contains no obvious deficiencies, and was the result of serious, informed and non-collusive negotiations.

As with the prior rounds of settlements, IPPs also seek approval of their plan of allocation. IPPs' proposed plan of allocation is fair, reasonable, and adequate.  The proposed plan of allocation is the same plan of allocation that this Court previously approved in connection with Plaintiffs' Round 1 and Round 2 settlements.

This motion is based upon this Notice; the Memorandum of Points and Authorities in Support; the Declaration of Adam J. Zapala and the attached exhibit, which is the settlement agreement with the Nichicon Defendants; and any further papers filed in support of this motion as well as arguments of counsel and all records on file in this matter.

Dated: October 29, 2018                 Respectfully Submitted,

                                         **COTCHETT, PITRE & McCARTHY, LLP.**

                                         By: /s/ *Adam J. Zapala*
                                             Adam J. Zapala
                                             Elizabeth T. Castillo
                                             Mark F. Ram
                                             840 Malcolm Road, Suite 200
                                             Burlingame, CA 94010
                                             Telephone: (650) 697-6000
                                             Facsimile: (650) 697-0577
                                             azapala@cpmlegal.com

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

1

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

ecastillo@cpmlegal.com
tprevost@cpmlegal.com

*Interim Lead Class Counsel for the Indirect
Purchaser Plaintiffs*

2

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ............................................... 2

    A. Settlement Efforts ............................................................................................ 2

    B. Summary of Settlement Terms ........................................................................ 2

        1. Settlement Class Definition ................................................................. 2

    C. Settlement Consideration ................................................................................. 3

    D. Information on the Settlements – Northern District of California Guidance ......... 3

        1. Differences Between Settlement Class and Class Defined in
           Complaint ............................................................................................ 3

        2. Differences Between Claims Released and Claims in Complaint ............ 4

        3. Settlement Recovery Versus Potential Trial Recovery ............................ 4

        4. Fairness of the Allocation of the Settlement Funds ................................ 5

        5. Attorneys' Fees and Reimbursement of Litigation Expenses .................. 5

        6. Incentive Awards ................................................................................. 5

III. ARGUMENT ........................................................................................................... 5

    A. Legal Standard for Preliminary Approval of Class Action Settlements ............... 5

    B. The Settlement with the Nichicon Defendants Meets the Standard for
       Preliminary Approval of Class Action Settlements ........................................ 6

        1. The Settlements Are the Result of Serious, Informed, and
           Non-Collusive Negotiations ................................................................. 6

        2. There Are No Obvious Deficiencies in the Settlement ............................ 7

        3. There is No Preferential Treatment ....................................................... 7

        4. The Proposed Settlements Fall Within the Range of Possible
           Approval ............................................................................................. 8

    C. The Proposed Settlement Classes Satisfy Rule 23 .......................................... 8

        1. Fed. R. Civ. P. 23(a)(1) – Numerosity ................................................. 8

        2. Fed. R. Civ. P. 23(a)(2) – Commonality ............................................... 8

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

i

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of
Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

3.    Fed. R. Civ. P. 23(a)(3) – Typicality ........................................................ 9

4.    Fed. R. Civ. P. 23(a)(4) – Fair and Adequate Class Representation ........ 10

5.    All Requirements of Rule 23(b) Are Met In This Case .......................... 11

D.   This Court Should Appoint Interim Class Counsel as Settlement Class
     Counsel ............................................................................................. 12

E.   The Proposed Plan of Allocation is Fair, Reasonable and Adequate and
     Should be Approved .......................................................................... 13

IV.   CONCLUSION.................................................................................. 14

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of
Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................................... 12

*Bellinghausen v. Tractor Supply Co.*,
   303 F.R.D. 611 (N.D. Cal. 2014)...........................................8, 12

*In re Catfish Antitrust Litig.*,
   826 F. Supp. 1019 (N.D. Miss. 1993)........................................ 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2015 U.S. Dist. LEXIS 170525 (N.D. Cal. Dec. 17, 2015)........ 13

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) .........................5, 13, 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   2006 WL 1530166 (N.D. Cal. June 5, 2006)................................ 9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M-02-1486 PJH, Dkt. No. 2093 (Oct. 27, 2010) ................. 13

*G.F. v. Contra Costa County*,
   2015 WL 4606078 (N.D. Cal. July 30, 2015).........................1, 5

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................... 10

*In re High-Tech Emp. Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) ..................................... 12

*In re Lloyds' Am. Trust Fund Litig.*,
   No. 96 Civ.1262 RWS, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26,
   2002) ........................................................................................... 13

*In re Omnivision Technologies, Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................... 13

*In re Optical Disk Drive Antitrust Litig.*,
   2016 WL 467444 (N.D. Cal. Feb. 8, 2016) .................................. 9

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), aff'd 117 F.3d 721 (2d Cir. 1997) ............... 13

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

iii

*In re Rubber Chems. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005)...........................................................................................9

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............................................................................6

*In re TFT-LCD Antitrust Litig.*,
   267 F.R.D. 291 (N.D. Cal. 2010), *abrogated on other grounds* .............................................11

*In re Vitamins Antitrust Litig.*,
   No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 31, 2000)................................13

**Rules**

Federal Rules of Civil Procedure
   Rule 23 ...................................................................................................................................8
   Rule 23(a)................................................................................................................8, 9, 10, 11
   Rule 23(a)(2).........................................................................................................................8
   Rule 23(a)(3).........................................................................................................................9
   Rule 23(a)(4).......................................................................................................................10
   Rule 23(b) ......................................................................................................................8, 11
   Rule 23(b)(1).......................................................................................................................11
   Rule 23(b)(3)..................................................................................................................11, 12
   Rule 23(g)(1).......................................................................................................................12
   Rule 23(g)(1)(A)..................................................................................................................12

**Other Authorities**

Newberg on Class Actions (5th ed.)
   § 13:10 ...................................................................................................................................6
   § 20:23 ...................................................................................................................................9

*Manual for Complex Litigation (Fourth)* (2004)
   § 21.632................................................................................................................................6

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

## <u>STATEMENT OF THE ISSUES TO BE PRESENTED</u>

1.      Whether this Court should grant preliminary approval of IPPs' settlements with the Nichicon Defendants;

2.      Whether the Court should preliminarily approve IPPs' plan of allocation for the Nichicon settlement.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

v

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 23, Indirect Purchaser Plaintiffs ("IPPs") move for an order preliminarily approving their settlement with Defendants Nichicon Corporation and Nichicon (America) Corporation (together, "Nichicon"). The settlement was reached after hard-fought litigation and significant discovery, is the result of arms-length negotiations, and IPPs believe the settlement is in the best interests of the proposed classes. *See* Declaration of Adam J. Zapala ("Zapala Decl.").

The Nichicon settlement will pay the IPP Classes $21,500,000.00 ($21.5 million), which represents an excellent recovery for the Classes.  Nichicon has also agreed to provide significant cooperation to IPPs in the continued prosecution of their claims against non-settling Defendants. In exchange for the settlement consideration they are providing, the Nichicon Defendants will receive releases related to antitrust and consumer protection claims against them regarding an alleged conspiracy to fix, raise, maintain and/or stabilize the price of electrolytic and/or film capacitors purchased by class members from a distributor.  The releases are of precisely the same scope as those releases this Court has already preliminarily (ECF Nos. 1456 and 2009) and finally (ECF No. 1934) approved as to other IPP settlements in this action.

At the preliminary approval stage, the Court is not asked to make a final determination as to whether or not to approve the settlement.  *G.F. v. Contra Costa County*, 2015 WL 4606078, at *8–9 (N.D. Cal. July 30, 2015).  Instead, the Court is tasked with determining if the settlement falls within the range of possible approval and appears to be the product of serious, informed, and non-collusive negotiations.  *Id.*  This settlement easily meets the standard for preliminary approval and for that reason should be approved.

Finally, IPPs' seek preliminary approval of their plan of allocation, which is the same plan of allocation that this Court previously approved.  As described more fully below, IPPs propose that allocation of the settlement funds be on a *pro rata* basis based on the type and

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

1

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

extent of injury suffered by each class member.  Such *pro rata* plans of allocation are routinely approved in antitrust litigation.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an alleged conspiracy by the Defendants to fix, raise, maintain and/or stabilize the price of capacitors sold in the United States.  Zapala Decl. ¶ 4.  This case has been heavily litigated, with multiple rounds of motions to dismiss and motions for summary judgment filed and class certification currently pending with the Court.  *Id.*  There have been significant discovery challenges faced by IPPs, not only with respect to obtaining documents and information from Defendants but in regards to obtaining documents and information from non-party capacitor distributors in order to successfully prosecute the case.  *Id.*  IPPs have successfully navigated many factual and legal challenges in prosecuting this case, but there is still work to be done.  There are no guarantees at trial and trying a complex class action such as this one would be particularly lengthy and costly.  Indeed, there should be no dispute that the proposed settlement is the result of a fair evaluation of the merits of the case after years of extensive litigation.

### A.    Settlement Efforts

IPPs engaged in extensive settlement negotiations with Nichicon.  Zapala Decl. ¶ 5-6. The parties held in-person and telephonic meetings, as well as exchanged information and settlement proposals.  *Id.*  The proposed settlements were arrived at only after both sides had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigation risks, and issues involving ability to pay.  *Id.*  The settlement with Nichicon was reached after a mediation session with Hon. Daniel Weinstein (Ret.) of JAMS.  Additionally, as noted below, the settlement was only reached after substantial discovery in this case. *Id.*

### B.    Summary of Settlement Terms

#### 1.    Settlement Class Definition

The class definition for the settlement is virtually the same as other settlement classes included in settlements that have been both preliminarily and finally approved by this Court:

All persons and entities in the United States who, during the period from April 1, 2002 to February 28, 2014, purchased one or more Electrolytic Capacitor(s) from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants, their parent companies, subsidiaries and Affiliates, any co-conspirators, Defendants' attorneys in this case, federal government entities and instrumentalities, states and their subdivisions, all judges assigned to this case, all jurors in this case, and all persons and entities who directly purchased Capacitors from Defendants.

*See* Zapala Decl., Ex. 1, Nichicon Settlement Agreement, ¶ 1(f).

### C.      Settlement Consideration

In addition to a monetary settlement of $21,500,000, Nichicon has agreed to provide substantial cooperation to IPPs in further prosecuting this action against other Defendants. *See* Zapala Decl., Ex. 1.   Nichicon has agreed to provide an oral proffer of facts regarding the alleged conspiracy in the capacitors industry.   Similar to settlements with other Defendants, Nichicon has agreed to provide IPPs with evidence regarding the alleged conspiracy, as well as making current employees available for interviews, depositions, and testimony at trial.   IPPs calculate that this settlement represents 10% of Nichicon's potentially affected commerce ($216.1 million)—that is, 10% of Nichicon's sales to distributors.  Zapala Decl. ¶ 12.

### D.      Information on the Settlements – Northern District of California Guidance

#### 1.      Differences Between Settlement Class and Class Defined in Complaint

There are no differences between the settlement class and the classes alleged in the complaint.   The Nichicon Defendants are alleged to have participated in the electrolytic conspiracy from April 1, 2002 through such time as the anticompetitive effects of defendants' conduct ceased.  Zapala Decl. ¶ 10; *see also* IPPs' Fifth Consolidated Complaint ("Complaint") ¶¶ 2, 392, 394 (ECF No. 1466).   In connection with IPPs' motion for class certification, IPPs identified that the end date of the conspiracy and its effects on the classes was February 28, 2014.  Zapala Decl. ¶ 11; ECF No. 1681.   The settlement with the Nichicon Defendants covers the time period from April 1, 2002 to February 28, 2014—the same time period that IPPs moved for in their motion for class certification.   *See* Zapala Decl. ¶ 11; *see also* Zapala Decl., Ex. 1,

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

Nichicon Settlement Agreement ¶ 1(f).  There is no material difference between the settlement classes and the alleged classes in the Complaint as to Nichicon.

### 2.    Differences Between Claims Released and Claims in Complaint

There are no material differences between the claims released in the settlements and the claims in IPPs' Complaint. *See* Zapala Decl., Ex. 1, Nichicon Settlement Agreement ¶ 1(z).  The release of claims releases all antitrust and consumer protection claims that the classes could have brought against Nichicon.  *Id.*  IPPs have not released any claims against the Nichicon Defendants for product liability, breach of contract, breach of warranty or personal injury, or any other claim unrelated to the allegations in the Actions.  *Id.*  As they were with the already-approved settlements, these releases are fair, reasonable, and adequate to the class.

### 3.    Settlement Recovery Versus Potential Trial Recovery

Class certification is now fully briefed and pending before the Court, with the potential that no classes are certified in this action, or are certified for a shorter period than proposed by IPPs.  There is also the very real potential in this case for certain Defendants to become insolvent during the pendency of this litigation.  Many Defendants in this action operate on extremely slim margins and the payment of government fines around the world concerning the price fixing conduct at issue in this case may cause them to become insolvent.

The foregoing are just a few of the risks to IPPs' success.  Interim Lead Counsel's duties to the IPPs preclude a further or more detailed discussion in this brief as to how Interim Lead Counsel weighs those risks.  Even at this point, however, IPPs believe that the settlement reflects a fair and reasonable compromise in light of potential trial recovery.  This settlement comes after substantial discovery in this action.

In addition, the settlements reflect a very high percentage of the overall sale of capacitors by Nichicon. As noted, based on the data provided to IPPs, the settlement with Nichicon represents approximately 10% of their affected commerce in the United States during the relevant class period.  Zapala Decl. ¶ 12.  This settlement is truly an excellent recovery for the class. *Id.* ¶ 13.

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

1      **4.      Fairness of the Allocation of the Settlement Funds**

2      IPPs propose that allocation of the settlement funds will be on a *pro rata* basis, based on

3  the type and extent of injury suffered by each class member in those states which permit indirect

4  purchaser antitrust claims.  Specifically, the settlement fund paid by Nichicon will be allocated

5  to those who submit approved claims for purchases of electrolytic capacitors during the class

6  period on a *pro rata* basis. With respect to the *pro rata* distribution, the plan of allocation

7  contemplates a *pro rata* distribution to each class member with damages claims from the

8  indirect purchaser states based upon the number of approved purchases of electrolytic capacitor

9  purchases during the settlement class period.  "A plan of allocation that reimburses class

10  members based on the type and extent of their injuries is generally reasonable." *In re Citric Acid*

11  *Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  This plan of allocation, already

12  approved in substance by the Court in previous settlements, is fair, reasonable, and adequate.

13      **5.      Attorneys' Fees and Reimbursement of Litigation Expenses**

14      As will be discussed more fully in a separate motion for approval of IPPs' class notice

15  program, IPPs will notice the class that they will not seek more than 30% of the settlement fund

16  in attorneys' fees.  IPPs reserve the right to seek less than the 30% amount and will submit their

17  attorneys' fees and litigation expenses motion in advance of the opt-out and objection deadline.

18  This motion will be posted on the IPP settlement website at least 14 days prior to the objection

19  and opt-out deadline, as is customary in this type of litigation.  Additionally, IPPs will seek

20  reimbursement of reasonable litigation expenses.

21      **6.      Incentive Awards**

22      IPPs are not seeking incentive awards at this time.

23  **III.   ARGUMENT**

24  **A.      Legal Standard for Preliminary Approval of Class Action Settlements**

25      "The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class

26  actions." *G.F. v. Contra Costa County*, 2015 WL 4606078, at *8 (N.D. Cal. July 20, 2015)

27  (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Requesting

28

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

preliminary approval is the first step in the settlement process. Newberg on Class Actions § 13:10 (5th ed.). When asked to grant preliminary approval of a class action settlement, the Court must determine if: (1) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual for Complex Litigation (Fourth)* § 21.632 (2004). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigants, and their strategies, positions and proof.'" *Id.* at 1026 (quoting *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 626 (9th Cir. 1982)).

### B. The Settlement with the Nichicon Defendants Meets the Standard for Preliminary Approval of Class Action Settlements

The settlement with Nichicon meets the standards for preliminary approval because the settlement was the result of serious, informed, and non-collusive negotiations. There are also no obvious deficiencies in the settlement—the settlement does not grant preferential treatment to the class representatives or any subset of the class, and the settlement falls within the range of possible approval. As such, preliminary approval of the settlement is appropriate and warranted.

#### 1. The Settlements Are the Result of Serious, Informed, and Non-Collusive Negotiations

IPPs and Nichicon are represented by highly-skilled antitrust counsel who are knowledgeable of the law and have extensive experience with complex antitrust lawsuits. IPPs and Nichicon have been heavily litigating this case for close to four years. The parties have conducted over 130 depositions during the course of this litigation and prior to reaching this settlement agreement. Moreover, Defendants have produced roughly 11,223,611 documents to

6

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

IPPs, comprised of approximately 28,331,064 pages.  At the time of reaching this settlement, the parties had engaged in expert discovery and fully briefed IPPs' motion for class certification. At the time of reaching this settlement, therefore, IPPs and Nichicon were well-informed about the facts, damages, and defenses relevant to this litigation.

Moreover, throughout this litigation, Nichicon (and the other non-settling Defendants) have vigorously contested this case, challenging IPPs' legal theories of liability, whether the facts support Defendants' level of involvement in such a conspiracy, and the damages for which each Defendant may be liable.  The settlement before the Court, therefore, is the result of serious and informed negotiations.  Additionally, there has been no collusion between the settling parties.  Because of this, the settlement is entitled to a presumption of approval.

**2.      There Are No Obvious Deficiencies in the Settlement**

As set forth above, the settlement was the result of serious analysis and consideration of the significant risks faced by both sides and there are no obvious deficiencies in the settlements. For example, the size of the settlement is commensurate with Nichicon's sales involvement in the capacitors industry affected by the antitrust conspiracy alleged by Plaintiffs. This settlement was entered into after full briefing and expert discovery related to IPPs' motion for class certification.

The settlement was reached with full appreciation of the risks faced by both sides. Rulings favorable to IPPs in these pending motions would significantly impact the value of settlements for Defendants who chose to wait for the rulings on those motions.

**3.      There is No Preferential Treatment**

There is no preferential treatment of any class representative or any segment of the classes.  All indirect purchasers of electrolytic capacitors with a right to recover will have an ability to submit a claim for a *pro rata* share of the settlement funds.  IPPs are not seeking incentive awards and the settlement agreement does not provide for any preferential treatment to them or to any segment of the classes.  This element in favor of preliminary approval is met.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

### 4.     The Proposed Settlements Fall Within the Range of Possible Approval

For the reasons stated *supra*, IPPs believe that the proposed settlement falls within the range of possible approval and should be preliminarily approved.

### C.     The Proposed Settlement Classes Satisfy Rule 23

In addition to the fairness of the settlement, this action is appropriate for class treatment. Class certification is appropriate when the proposed class and the proposed class representatives meet the four prerequisites of Rule 23(a): (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) fair and adequate class representation.   Fed. R. Civ. P. 23(a). Additionally, a class must satisfy one of the criteria in Rule 23(b).  Fed. R. Civ. P. 23(b).  The Settlement Class in this settlement meets all Rule 23 requirements.

### 1.     Fed. R. Civ. P. 23(a)(1) – Numerosity

The first prerequisite for certifying a class is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In this case, IPPs seek to certify a class of all individuals or entities who purchased one or more capacitors manufactured by a Defendant from a distributor.  There are likely hundreds of thousands of class members, such that joinder of all is impracticable. "There is no exact class size that meets the numerosity requirement; rather, where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 616 (N.D. Cal. 2014) (internal quotation marks omitted) (citing *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005)).   Therefore, the first prerequisite of Rule 23(a) is met.

### 2.     Fed. R. Civ. P. 23(a)(2) – Commonality

The second prerequisite for certifying a class is that "there are questions or law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  In horizontal price-fixing antitrust cases, such as this one, common questions of law and fact, and their predominance, are presumed because the core issue in such a case is whether or not there was a conspiracy amongst conspirators to fix, raise, maintain, and/or stabilize prices and whether such price-fixing occurred. Newberg on

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

Class Actions § 20:23 (5th ed.).  "Because the gravamen of a price-fixing claim is that the price in a given market is artificially high, there is a presumption that an illegal price-fixing scheme impacts upon all purchasers of a price-fixed product in a conspiratorially affected market." *Rubber Chems.*, 232 F.R.D. at 352 (internal quotation marks and citation omitted).  Courts have consistently found that "[c]ommon issues predominate in proving an antitrust violation 'when the focus is on the defendants' conduct and not on the conduct of the individual class members.'" *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *7 (N.D. Cal. June 5, 2006).

In this case, common questions of fact and law predominate over individual questions. IPPs have alleged that Defendants engaged in a joint conspiracy to fix, raise, maintain and/or stabilize the price of capacitors. The common questions of fact or law facing the Court are whether the Defendants in fact entered into an illegal agreement to fix, raise, maintain and/or stabilize the price of capacitors; whether the antitrust conspiracy did, in fact, result in the artificial inflation of the price of capacitors; and whether those overcharges were passed on to the classes.  "[B]ecause price-fixing conspiracies often injure all purchasers that were subject to the alleged overcharge and in a similar fashion, courts generally find that impact can be established on a class-wide basis and thus that common questions of law or fact predominate over individual issues."  Newberg on Class Actions § 20:23 (5th ed.).  The second prerequisite of Rule 23(a) is met.

### 3.    Fed. R. Civ. P. 23(a)(3) – Typicality

The third prerequisite for certifying a class is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "[T]ypicality results if the representative plaintiffs' claims arise[ ] from the same event, practice or course of conduct that gives rise to the claims of the absent class members and if their claims are based on the same legal or remedial theory.'"  *In re Optical Disk Drive Antitrust Litig.*, 2016 WL 467444, at *11 (N.D. Cal. Feb. 8, 2016) (citing *In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 164 (S.D.N.Y. 2000)).  Typicality is easily satisfied in cases involving horizontal

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

9

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

price-fixing because "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993).

In this case, IPPs' theory is that the Defendants illegally fixed, raised, maintained, and/or stabilized the price of capacitors and that the artificially inflated prices charged by Defendants for their capacitors affected the price paid by indirect purchasers of capacitors. All class representatives purchased one or more capacitors from a distributor that was manufactured by Defendants. As demonstrated in the expert report of Dr. Russell Lamb, all class members, including the Class Representatives, suffered antitrust impact and the same type of harm as other absent class members in the form of paying inflated prices. The class representatives are seeking damages under the same legal theories as absent class members. Because the class representatives' claims are typical of the members of the class, the third prerequisite of Rule 23(a) is met.

### 4.      Fed. R. Civ. P. 23(a)(4) – Fair and Adequate Class Representation

The fourth prerequisite for certifying a class is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The interests of the class representatives and their counsel are completely aligned with the interests of the absent class members. The class representatives suffered the same injury as the absent class members in that they paid artificially inflated prices for capacitors. IPPs' counsel also has the same interest in proving that Defendants engaged in an illegal antitrust conspiracy, which resulted in artificial inflation of the price of capacitors. The vigor with which the class representatives and their counsel have prosecuted this case is well documented in the docket of this case. IPPs have expended considerable time, energy and

resources in gathering evidence in support of their case and in contesting Defendants' efforts to dismiss or minimize their case, much of which is documented in the several thousand docket entries in this case.  The fourth prerequisite of Rule 23(a) is met.

### 5.    All Requirements of Rule 23(b) Are Met In This Case

Once the prerequisites of Rule 23(a) are met, a prospective class must satisfy only one of four Rule 23(b) requirements to continue as a class.  Rule 23(b)(1) allows class actions when prosecuting separate actions by individual members would create a risk of either inconsistent or varying adjudication of claims, or adjudication with respect to individual class members would dispose of the claims of those with the class who are not part of the litigation or would substantially impair or impede their right to protect their interests.  Fed. R. Civ. P. 23(b)(1).  Rule 23(b)(3) allows class actions when common questions of law or fact predominate such that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The requirements of Rule 23(b) are met. IPPs have alleged a horizontal price-fixing conspiracy of capacitors that is nationwide in scope.  Multiple individual actions relating to the nature and scope of the Defendants' price-fixing conspiracy of capacitors creates a high risk of inconsistent and vary adjudication of claims.  Fed. R. Civ. P. 23(b)(1).  In addition, IPPs in this case allege that Defendants have engaged in actions that apply generally to the entire class in that Defendants have conspired to illegally fix, raise, maintain, and/or stabilize the price of capacitors such that individuals and entities in the United States are paying an inflated price for such capacitors.

Additionally, common questions of law or fact predominate in this case.  "[I]f common questions are found to predominate in an antitrust action . . . courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."  *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 291, 314 (N.D. Cal. 2010), *abrogated on other grounds*.  To determine whether or not a class action is the superior method of adjudication, courts look to the four factors from Rule 23(b)(3): "(1) the interest of each class member in individually controlling the prosecution or

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1227 (N.D. Cal. 2013); *accord* Fed. R. Civ. P. 23(b)(3).

The antitrust conspiracy in this case is appropriate for Rule 23(b)(3) resolution. The damages of each individual class member are generally too small to warrant bringing an individual lawsuit but the total damages in aggregate for the class members are significant, which favors resolution by class action. "'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's . . . labor.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). Given the facts of this case, the class action is clearly superior to alternative methods of adjudicating this controversy.

**D.    This Court Should Appoint Interim Class Counsel as Settlement Class Counsel**

Under Rule 23(g)(1), when certifying a class, including for settlement purposes, the Court should appoint class counsel. Fed. R. Civ. P. 23(g)(1); *see also Bellinghausen*, 303 F.R.D. at 618. When appointing class counsel, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Cotchett, Pitre & McCarthy, LLP ("CPM") is recognized as one of the top litigation firms in the United States, and its antitrust team is recognized as experts in the field. In this case, however, the skill and ability of CPM is not theoretical. This Court has had the opportunity to personally observe CPM's litigation skill

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

1   and knowledge of antitrust law, as well as the resources that CPM has committed to this case.

2   CPM meets and exceeds the requirements for appointment as Settlement Class Counsel for these

3   settlements.

4       **E.**    **The Proposed Plan of Allocation is Fair, Reasonable and Adequate and**

5                 **Should be Approved**

6         "Approval of a plan for the allocation of a class settlement fund is governed by the same

7   legal standards that are applicable to approval of the settlement; the distribution plan must be

8   'fair, reasonable and adequate.'" *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154

9   (N.D. Cal. 2001) (internal citations omitted).  When allocating funds, "[i]t is reasonable to

10  allocate the settlement funds to class members based on the extent of their injuries or the

11  strength of their claims on the merits." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d

12  1036, 1045-46 (N.D. Cal. 2008) (internal citations omitted) (approving securities class action

13  settlement allocation on a "per-share basis").

14        Pro rata distribution has frequently been determined by courts to be fair, adequate, and

15  reasonable. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 U.S. Dist. LEXIS 170525,

16  at *198-200 (N.D. Cal. Dec. 17, 2015) (approving pro rata plan of allocation based upon

17  proportional value of price-fixed component in finished product); *In re Dynamic Random Access*

18  *Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, at *2 (Oct. 27, 2010)

19  (Order Approving Pro Rata Distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000

20  U.S. Dist. LEXIS 8931, at *32 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this

21  one, that apportions funds according to the relative amount of damages suffered by class

22  members have repeatedly been deemed fair and reasonable.") (citations omitted); *In re Lloyds'*

23  *Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 U.S. Dist. LEXIS 22663, at *54 (S.D.N.Y.

24  Nov. 26, 2002) ("Pro rata allocations provided in the Stipulation are not only reasonable and

25  rational, but appear to be the fairest method of allocating the settlement benefits."); *In re*

26  *PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 135 (S.D.N.Y. 1997), aff'd 117 F.3d 721 (2d

27  Cir. 1997) ("[A] pro rata distribution of the Settlement on the basis of Recognized Loss will

28

                                                                                                         13

1  provide a straightforward and equitable nexus for allocation and will avoid a costly, speculative

2  and bootless comparison of the merits of the Class Members' claims.")

3      Here, as with the Round 1 and Round 2 settlements, allocation of the settlement funds

4  will be on a *pro rata* basis based on the type and extent of injury suffered by each class member

5  in those states which permit indirect purchaser antitrust claims.  With respect to the *pro rata*

6  distribution, the plan of allocation contemplates a *pro rata* distribution to each class member

7  with damages claims from the indirect purchaser states based upon the number of approved

8  purchases of electrolytic capacitor purchases during the settlement class period.  This is a

9  reasonable and fair way to compensate classes.  Thus, the recovery to individual class member is

10 tied to the volume of their purchases, the number of other qualified class members making

11 claims against the settlement fund, and the size of the overall fund.  This plan of allocation is

12 thus "fair, adequate, and reasonable" and merits approval by the Court.  *See Citric Acid*, 145 F.

13 Supp. at 1154.

14 **IV.    CONCLUSION**

15     For the foregoing reasons, IPPs respectfully request that this Court enter an order: (1)

16 preliminarily approving the proposed settlement with the Nichicon Defendants, (2) appointing

17 CPM as Settlement Class Counsel, and (3) approving the proposed plan of allocation.

18

19 Dated: October 29, 2018          Respectfully Submitted:

20                                  /s/ *Adam J. Zapala*
21                                  Adam J. Zapala
                                    Elizabeth T. Castillo
22                                  Mark F. Ram
                                    **COTCHETT, PITRE & McCARTHY, LLP**
23                                  840 Malcolm Road, Suite 200
                                    Burlingame, CA 94010
24                                  Telephone: (650) 697-6000
                                    Facsimile: (650) 697-0577
25                                  azapala@cpmlegal.com
                                    ecastillo@cpmlegal.com
26                                  tprevost@cpmlegal.com

27                                  *Interim Lead Counsel for Indirect Purchaser Plaintiffs*

28

Law Offices COTCHETT, PITRE & McCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Nichicon; Approval of Plan of Allocation; MPA In Support Thereof; MDL No. 17-md-02801-JD; Case No. 14-cv-03264-JD

14