ADAM J. ZAPALA (State Bar No. 245748)
ELIZABETH T. CASTILLO (State Bar No. 280502)
MARK F. RAM (State Bar No. 294050)
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
mram@cpmlegal.com

*Interim Lead Counsel for Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CAPACITORS ANTITRUST LITIGATION** | **MDL No. 17-md-02801**<br>**Case No. 3:14-cv-03264-JD** |
| **This Document Relates to:**<br><br>**All Indirect Purchaser Actions** | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH PANASONIC DEFENDANTS AND FOR APPROVAL OF THE PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:** December 6, 2018<br>**Time:** 10:00 a.m.<br>**Place:** Courtroom 11, 19th Floor |

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on December 6, 2018, at 10:00 a.m.,[1] or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable James Donato, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Indirect Purchaser Plaintiffs ("IPPs") will and hereby do move for entry of an order granting preliminary approval of a proposed settlement with Defendants Panasonic Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd., and SANYO North America Corporation (collectively, the "Panasonic Defendants").  This motion is brought pursuant to Federal Rule of Civil Procedure ("Rule") 23.  The grounds for this motion are that the settlement with the Panasonic Defendants falls within the range of possible approval, contains no obvious deficiencies, and was the result of serious, informed and non-collusive negotiations.

As with the prior rounds of settlements, IPPs also seek approval of their plan of allocation. IPPs' proposed plan of allocation is fair, reasonable, and adequate.  The proposed plan of allocation is the same plan of allocation that this Court previously approved in connection with Plaintiffs' Round 1 and Round 2 settlements.

This motion is based upon this Notice; the Memorandum of Points and Authorities in Support; the Declaration of Adam J. Zapala and the attached exhibit, which is the settlement agreement with the Panasonic Defendants; and any further papers filed in support of this motion as well as arguments of counsel and all records on file in this matter.

Dated: November 9, 2018                    Respectfully Submitted,

**COTCHETT, PITRE & McCARTHY, LLP.**

By: /s/ *Adam J. Zapala*
      Adam J. Zapala
      Elizabeth T. Castillo
      Mark F. Ram

---

[1] In conjunction with this Motion, the Indirect Purchaser Plaintiffs have filed a Motion to Shorten Time, to have this Motion heard on December 6, 2018, the same day that this Court will consider preliminary approval of the Nichicon Settlement.  *See* ECF No. 2224. IPPs respectfully request that the Court hear this Motion on shortened time given that it is unlikely there will be any opposition to the Motion.

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD          1

840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
mram@cpmlegal.com

*Interim Lead Class Counsel for the Indirect
Purchaser Plaintiffs*

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval
of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD                          2

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ...........................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND.......................................2

   A.  Settlement Efforts ...........................................................................2

   B.  Summary of Settlement Terms .......................................................3

      1.  Settlement Class Definition ................................................3

   C.  Settlement Consideration ................................................................3

   D.  Information on the Settlements – Northern District of California Guidance..........4

      1.  Differences Between Settlement Class and Class Defined in Complaint..........4

      2.  Differences Between Claims Released and Claims in Complaint .............5

      3.  Settlement Recovery Versus Potential Trial Recovery.............................5

         a.  The Panasonic Defendants Are Differently-Situated Given their ACPERA Status..........5

         b.  The Panasonic Defendants Have Unique Defenses that Could Pose Challenges to the IPPs' Case........6

         c.  The Settlement Amount Compared to the Affected Revenue is Appropriate........6

      4.  Fairness of the Allocation of the Settlement Funds .........................7

      5.  Attorneys' Fees and Reimbursement of Litigation Expenses.................7

      6.  Incentive Awards ..............................................................8

III.  ARGUMENT ...............................................................................................8

   A.  Legal Standard for Preliminary Approval of Class Action Settlements.................8

   B.  The Settlement with the Panasonic Defendants Meets the Standard for Preliminary Approval of Class Action Settlements..................8

      1.  The Settlement is the Result of Serious, Informed, and Non-Collusive Negotiations ..........9

      2.  There are No Obvious Deficiencies in the Settlement...............9

      3.  There is No Preferential Treatment........................................10

      4.  The Proposed Settlements Fall Within the Range of Possible Approval ..........10

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD

i

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

C.  The Proposed Settlement Classes Satisfy Rule 23 ................................................ 10

    1.  Fed. R. Civ. P. 23(a)(1) – Numerosity ..................................................... 10

    2.  Fed. R. Civ. P. 23(a)(2) – Commonality ................................................... 11

    3.  Fed. R. Civ. P. 23(a)(3) – Typicality ....................................................... 11

    4.  Fed. R. Civ. P. 23(a)(4) – Fair and Adequate Class Representation .......... 12

    5.  All Requirements of Rule 23(b) are Met In This Case ............................. 13

D.  This Court Should Appoint Interim Class Counsel as Settlement Class
    Counsel ............................................................................................................... 14

E.  The Proposed Plan of Allocation is Fair, Reasonable and Adequate and
    Should be Approved ............................................................................................ 15

IV.  CONCLUSION ............................................................................................................ 16

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval
of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD                                              ii

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Amchem Prods., Inc. v. Windsor*,
5       521 U.S. 591 (1997)........................................................................... 14

6   *Bellinghausen v. Tractor Supply Co.*,
        303 F.R.D. 611 (N.D. Cal. 2014)................................................. 10, 14
7

8   *In re Catfish Antitrust Litig.*,
        826 F. Supp. 1019 (N.D. Miss. 1993)............................................. 12

9   *In re Cathode Ray Tube (CRT) Antitrust Litig.*,
10      2015 U.S. Dist. LEXIS 170525 (N.D. Cal. Dec. 17, 2015).................. 15

11  *In re Citric Acid Antitrust Litig.*,
        145 F. Supp. 2d 1152 (N.D. Cal. 2001) ...............................7, 15, 16
12

13  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
        2006 WL 1530166 (N.D. Cal. June 5, 2006) ............................... 11

14  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
15      No. M-02-1486 PJH, Dkt. No. 2093 (Oct. 27, 2010) ...................... 15

16  *G.F. v. Contra Costa County*,
        2015 WL 4606078 (N.D. Cal. July 30, 2015)............................. 2, 8
17

18  *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998) ....................................................... 12

19  *In re High-Tech Emp. Antitrust Litig.*,
20      985 F. Supp. 2d 1167 (N.D. Cal. 2013) ........................................ 14

21  *In re Lloyds' Am. Trust Fund Litig.*,
        No. 96 Civ.1262 RWS, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26,
22      2002) ............................................................................................. 15

23  *In re Omnivision Technologies, Inc.*,
        559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................ 15
24

25  *In re Optical Disk Drive Antitrust Litig.*,
        2016 WL 467444 (N.D. Cal. Feb. 8, 2016) ................................... 12
26

27  *In re PaineWebber Ltd. P'ships Litig.*,
        171 F.R.D. 104 (S.D.N.Y. 1997), aff'd 117 F.3d 721 (2d Cir. 1997) ....... 15

28

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

*In re Rubber Chems. Antitrust Litig.*,
    232 F.R.D. 346 (N.D. Cal. 2005) ......................................................................................... 11

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................................. 8

*In re TFT-LCD Antitrust Litig.*,
    267 F.R.D. 291 (N.D. Cal. 2010) ......................................................................................... 14

*In re Vitamins Antitrust Litig.*,
    No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 31, 2000) ............................... 15

**Rules**

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................................................ 10
    Rule 23(a) ............................................................................................................ 10, 11, 12, 13
    Rule 23(a)(2) ....................................................................................................................... 11
    Rule 23(a)(3) ................................................................................................................... 11, 12
    Rule 23(a)(4) ....................................................................................................................... 12
    Rule 23(b) ........................................................................................................................ 10, 13
    Rule 23(b)(1) ....................................................................................................................... 13
    Rule 23(b)(3) ................................................................................................................... 13, 14
    Rule 23(g)(1) ....................................................................................................................... 14
    Rule 23(g)(1)(A) .................................................................................................................. 14

**Other Authorities**

Newberg on Class Actions (5th ed.)
    § 13:10 ................................................................................................................................. 8
    § 20:23 ............................................................................................................................... 11

*Manual for Complex Litigation (Fourth)* (2004)
    § 21.632 ............................................................................................................................... 8

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval
of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD
    iv

**STATEMENT OF THE ISSUES TO BE PRESENTED**

1.      Whether this Court should grant preliminary approval of IPPs' settlement with the Panasonic Defendants;

2.      Whether the Court should preliminarily approve IPPs' plan of allocation for the Panasonic settlement.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure ("Rule") 23, Indirect Purchaser Plaintiffs ("IPPs") move for an order preliminarily approving their settlement with Defendants Panasonic Corporation ("Panasonic"), Panasonic Corporation of North America, SANYO Electric Co., Ltd., and SANYO North America Corporation (collectively, the "Panasonic Defendants").[2] The settlement was reached after hard-fought litigation and significant discovery, is the result of arms-length negotiations, and IPPs believe the settlement is in the best interests of the proposed classes. *See* Declaration of Adam J. Zapala ("Zapala Decl.") ¶ 3.

The Panasonic Settlement will pay the IPP Classes $4,700,000.00 ($4.7 million) to resolve all claims.  The Panasonic Defendants have also agreed to provide significant cooperation to IPPs in the continued prosecution of their claims against non-settling Defendants.  In exchange for the settlement consideration they are providing, the Panasonic Defendants will receive releases related to antitrust and consumer protection claims against them regarding an alleged conspiracy to fix, raise, maintain and/or stabilize the price of electrolytic and/or film capacitors purchased by class members from a distributor.  The releases are of precisely the same scope as those releases this Court has already preliminarily (ECF Nos. 1456 and 2009) and finally (ECF No. 1934) approved as to other IPP settlements in this action.

---

[2] Each of the Panasonic Defendants are parties to this litigation and Releasees under the terms of the settlement agreement.  *See* Zapala Decl., Ex. 1, Settlement Agreement, ¶1(bb).  For business reasons, the Settlement Agreement is entered into by Panasonic Corporation only. *See id.* at Preamble.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

At the preliminary approval stage, the Court is not asked to make a final determination as to whether or not to approve the settlement.  *G.F. v. Contra Costa County*, 2015 WL 4606078, at *8–9 (N.D. Cal. July 30, 2015).  Instead, the Court is tasked with determining if the settlement falls within the range of possible approval and appears to be the product of serious, informed, and non-collusive negotiations.  *Id.*  This settlement easily meets the standard for preliminary approval and for that reason should be approved.

Finally, IPPs' seek preliminary approval of their plan of allocation, which is the same plan of allocation that this Court previously approved.  As described more fully below, IPPs propose that allocation of the settlement funds be on a *pro rata* basis based on the type and extent of injury suffered by each class member.  Such *pro rata* plans of allocation are routinely approved in antitrust litigation.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an alleged conspiracy by the Defendants to fix, raise, maintain and/or stabilize the price of capacitors sold in the United States.  Zapala Decl. ¶ 4.  This case has been heavily litigated, with multiple rounds of motions to dismiss and motions for summary judgment filed and class certification currently pending with the Court.  *Id.*  There have been significant discovery challenges faced by IPPs, not only with respect to obtaining documents and information from Defendants but in regards to obtaining documents and information from non-party capacitor distributors in order to successfully prosecute the case.  *Id.*  IPPs have successfully navigated many factual and legal challenges in prosecuting this case, but there is still work to be done.  There are no guarantees at trial and trying a complex class action such as this one would be particularly lengthy and costly.  Indeed, there should be no dispute that the proposed settlement is the result of a fair evaluation of the merits of the case after years of extensive litigation.

### A.      Settlement Efforts

IPPs engaged in extensive settlement negotiations with Panasonic.  Zapala Decl. ¶ 5-6.  The parties held in-person and telephonic meetings, as well as exchanged information and settlement proposals.  *Id.*  The proposed settlement was arrived at only after both sides had the opportunity to be fully informed of the relative strengths and weaknesses of their positions,

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD          2

litigation risks, and issues involving ability to pay. *Id.* Additionally, as noted below, the settlement was only reached after substantial discovery in this case. *Id.*

**B.    Summary of Settlement Terms**

**1.    Settlement Class Definition**

The class definitions for the settlement are virtually the same as other settlement classes included in settlements that have been both preliminarily and finally approved by this Court.

Electrolytic Settlement Class Definition:

> All persons and entities in the United States who, during the period from April 1, 2002 to February 28, 2014, purchased one or more Electrolytic Capacitor(s) from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants, their parent companies, subsidiaries and Affiliates, any co-conspirators, Defendants' attorneys in this case, federal government entities and instrumentalities, states and their subdivisions, all judges assigned to this case, all jurors in this case, and all persons and entities who directly purchased Capacitors from Defendants.

Zapala Decl., Ex. 1, Panasonic Settlement Agreement, ¶ 1(f).

Film Settlement Class Definition:

> All persons and entities in the United States who, during the period from January 1, 2002 to February 28, 2014, purchased one or more Film Capacitor(s) from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants, their parent companies, subsidiaries and Affiliates, any co-conspirators, Defendants' attorneys in this case, federal government entities and instrumentalities, states and their subdivisions, all judges assigned to this case, all jurors in this case, and all persons and entities who directly purchased Capacitors from Defendants.

Zapala Decl., Ex. 1, Panasonic Settlement Agreement, ¶ 1(f).

**C.    Settlement Consideration**

Panasonic has agreed to pay the total sum of $4,700,000 to the members of the classes to settle the claims against it. *See* Panasonic Settlement Agreement ¶ 1(ee). From this lump sum, $4,488,500 will be allocated to the Electrolytic Class, and $211,500 will be allocated to the Film Class. *Id.*

In addition to the monetary value, the Settlement considers the significant additional

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD                                    3

benefits provided to IPPs by Panasonic in fulfilling its cooperation obligations as the ACPERA applicant.  Zapala Decl. ¶ 12.  Panasonic has provided, and will continue to provide, substantial and valuable cooperation to IPPs in prosecuting this action.  *Id.*    Thus far, Panasonic's cooperation gave IPPs the details needed to support the allegations pled in their amended complaint, filed in December 2014, and guided their discovery efforts.  Zapala Decl. ¶ 12.  The timeliness of Panasonic's extensive cooperation was noticed by the Court, who remarked that "this case presents a rather unusual factual circumstance in that the ACPERA application (and corresponding assistance to the private plaintiffs) came early in the timeline."  ECF No. 710.  The Court also acknowledged that Panasonic had "proffered facts about its scope of conduct and documents to both groups of plaintiffs."  *Id.*  In addition to this early cooperation, Panasonic has given multiple follow-up proffers and promptly responded to information requests from IPPs. Zapala Decl. ¶ 12.  Furthermore, Panasonic has made its employees available for interviews and depositions throughout the action, and, with respect to retired employees over whom Panasonic had no control, Panasonic informed IPPs that it made great efforts to facilitate depositions of such retired employees by repeatedly contacting them and requesting that they appear for depositions. *Id.*

### D.     Information on the Settlements – Northern District of California Guidance

#### 1.     Differences Between Settlement Class and Class Defined in Complaint

There are no differences between the settlement class and the classes alleged in the complaint.  The Panasonic Defendants are alleged to have been involved in both the electrolytic and film capacitor conspiracies from January 1, 2002 through such time as the anticompetitive effects of defendants' conduct ceased.  Zapala Decl. ¶ 10; *see also* IPPs' Fifth Consolidated Complaint ("Complaint") ¶¶ 2, 392, 394 (ECF No. 1466).

In connection with IPPs' motion for class certification, IPPs identified that the end date of the conspiracy and its effects on the classes was February 28, 2014.  Zapala Decl. ¶ 11; ECF No. 1681.  The settlement with the Panasonic Defendants covers the time period from April 1, 2002 to February 28, 2014 for the Electrolytic Class and the time period January 1, 2002 to February 28, 2014 for the Film Class—the same time periods that IPPs moved to certify in their motion for

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD                    4

class certification.  *See* Zapala Decl. ¶ 11; Zapala Decl., Ex. 1, Panasonic Settlement Agreement ¶ 1(f).  There is no material difference between the settlement classes and the alleged classes in the Complaint as to the Panasonic Defendants.

### 2.    Differences Between Claims Released and Claims in Complaint

There are no material differences between the claims released in the settlements and the claims in IPPs' Complaint.  *See* Zapala Decl., Ex. 1, Panasonic Settlement Agreement ¶ 1(aa). The release of claims releases all antitrust and consumer protection claims that the classes could have brought against the Panasonic Defendants.  *Id.*  IPPs have not released any claims against the Panasonic Defendants for product liability, breach of contract, breach of warranty or personal injury, or any other claim unrelated to the allegations in the Actions.  *Id.* ¶ 12.  As they were with the already-approved settlements, these releases are fair, reasonable, and adequate to the class.

### 3.    Settlement Recovery Versus Potential Trial Recovery

Class certification is now fully briefed and pending before the Court, with the potential that no classes are certified in this action, or are certified for a shorter period than proposed by IPPs.  There is also the very real potential in this case for certain Defendants to become insolvent during the pendency of this litigation.  Many Defendants in this action operate on extremely slim margins and the payment of government fines around the world concerning the price-fixing conduct at issue in this case may cause them to become insolvent.

### a.    The Panasonic Defendants Are Differently-Situated Given their ACPERA Status

In addition to the foregoing, the Panasonic Defendants are differently situated from other defendants in that they are not exposed to treble damages *or* joint and several liability.  Zapala Decl. ¶ 13.  This greatly changes the dynamic by which Panasonic may be held liable.  Based on its leniency application, Panasonic will only be liable for its own affected sales, which IPPs calculate below.

ACPERA relieves a successful leniency applicant from exposure to treble damages and joint-and-several liability in any related civil action.  ACPERA § 213(a).  Because in IPPs' view Panasonic has provided the cooperation required by ACPERA throughout this action, and fulfilled

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD          5

each of ACPERA's requirements to date, it is appropriate to limit the relevant commerce for purposes of evaluating the adequacy of the class settlement to U.S. sales by Panasonic and Sanyo to distributors during certain periods when Panasonic and/or Sanyo personnel attended the relevant group meetings.

The foregoing are just a few of the risks to IPPs' success. Interim Lead Counsel's duties to the IPPs preclude a further or more detailed discussion in this brief as to how Interim Lead Counsel weighs those risks. Even at this point, however, Interim Lead Counsel believes in its reasoned judgment that the settlement reflects a fair and reasonable compromise in light of potential trial recovery.

### b. The Panasonic Defendants Have Unique Defenses that Could Pose Challenges to the IPPs' Case

In addition to their ACPERA status limiting liability, the Panasonic Defendants have other unique defenses that may limit their liability in other ways that would negatively impact IPPs' case. In particular, if IPPs litigate through trial with Panasonic, it will likely assert a withdrawal defense for *both* the electrolytic conspiracy *and* the film conspiracy. While IPPs believe they have evidence to counteract such a defense, that possibility was appropriately considered in the context of settlement negotiations with Panasonic. Panasonic raised other arguments regarding class certification which, if accepted, would entirely preclude IPPs' recovery.

Class Counsel's obligations to the IPPs' classes prohibit them from discussing in further detail any other challenges posed by Panasonic in a public filing but should the Court desire it, IPPs are happy to provide further information for *in camera* review by the Court.

### c. The Settlement Amount Compared to the Affected Revenue is Appropriate

IPPs calculated Panasonic and Sanyo's affected revenue to distributors to be $107,233,527. These affected revenue numbers provided the foundation for the parties' settlement negotiations. The settlement amount of $4.7 million represents approximately 4.4% of the potentially affected commerce to distributors in the United States during these periods. IPPs respectfully believe that it light of the foregoing, the settlement amount is an appropriate recovery

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD                    6

for the class given their ACPERA status and because Panasonic has provided extensive cooperation throughout the action, and has committed to continue to do so as part of the consideration for the settlement.  Zapala Decl. ¶ 14.  Moreover, IPPs believe that the settlement reflects a fair and reasonable compromise in light of the significant litigation risks, and the limitations on a trial recovery from an ACPERA applicant.  *Id.*

### 4.      Fairness of the Allocation of the Settlement Funds

IPPs propose that allocation of the settlement funds will be on a *pro rata* basis, based on the type and extent of injury suffered by each class member in those states which permit indirect purchaser antitrust claims.  Specifically, the settlement fund paid will be allocated to those who submit approved claims for purchases of both electrolytic and film capacitors during the class period on a *pro rata* basis. With respect to the *pro rata* distribution, the plan of allocation contemplates a *pro rata* distribution to each class member with damages claims from the indirect purchaser states based upon the number of approved purchases of electrolytic and film capacitor purchases during the settlement class period.  "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  This plan of allocation, already approved in substance by the Court in previous settlements, is fair, reasonable, and adequate.

### 5.      Attorneys' Fees and Reimbursement of Litigation Expenses

As will be discussed more fully in a separate motion for approval of IPPs' class notice program, IPPs will notice the class that they will not seek more than 30% of the settlement fund in attorneys' fees.[3]  IPPs reserve the right to seek less than the 30% amount and will submit their attorneys' fees and litigation expenses motion in advance of the opt-out and objection deadline. This motion will be posted on the IPP settlement website at least 35 days prior to the objection

---

[3]   When additional settlements are completed, IPPs will submit a motion for approval of a class notice program that will set forth precisely the amount of attorneys' fees and litigation expenses that IPPs will seeks from the overall third round settlement fund.  Thus, when IPPs issue their third round of class notice, it will include all settlements reached in the third round of settlements (including this settlement with the Panasonic Defendants), as well as any proceeds from additional settlements reached in the interim, and the fees and costs sought from that third round. The classes will therefore have all the required information necessary to evaluate the settlements.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD                    7

and opt-out deadline.   Additionally, IPPs will seek reimbursement of reasonable litigation expenses.

### 6.   Incentive Awards

IPPs are not seeking incentive awards at this time.

## III.   ARGUMENT

### A.   Legal Standard for Preliminary Approval of Class Action Settlements

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *G.F. v. Contra Costa County*, 2015 WL 4606078, at *8 (N.D. Cal. July 20, 2015) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Requesting preliminary approval is the first step in the settlement process. Newberg on Class Actions § 13:10 (5th ed.).  When asked to grant preliminary approval of a class action settlement, the Court must determine if: (1) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual for Complex Litigation (Fourth)* § 21.632 (2004).   "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigants, and their strategies, positions and proof.'" *Id.* at 1026 (quoting *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 626 (9th Cir. 1982)).

### B.   The Settlement with the Panasonic Defendants Meets the Standard for Preliminary Approval of Class Action Settlements

The settlement with the Panasonic Defendants meets the standards for preliminary approval because the settlement was the result of serious, informed, and non-collusive negotiations.  There are also no obvious deficiencies in the settlement—the settlement does not grant preferential treatment to the class representatives or any subset of the class, and the

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD                                                                8

settlement falls within the range of possible approval.  As such, preliminary approval of the settlement is appropriate and warranted.

### 1.      The Settlement is the Result of Serious, Informed, and Non-Collusive Negotiations

IPPs and the Panasonic Defendants are represented by highly-skilled antitrust counsel who are knowledgeable of the law and have extensive experience with complex antitrust lawsuits. IPPs and the Panasonic Defendants have been heavily litigating this case for close to four years. The parties have conducted over 130 depositions during the course of this litigation.  Zapala Decl. ¶ 7.  Moreover, Defendants have produced roughly 11,223,611 documents to IPPs, comprised of approximately 28,331,064 pages.  *Id.*  At the time of reaching this settlement, the parties had engaged in expert discovery and fully briefed IPPs' motion for class certification. *Id.* ¶ 8.  At the time of reaching this settlement, therefore, IPPs and the Panasonic Defendants were well-informed about the facts, damages, and defenses relevant to this litigation.

Moreover, throughout this litigation, the Panasonic Defendants (and the other non-settling Defendants) have vigorously contested this case, challenging IPPs' legal theories of liability, whether the facts support Defendants' level of involvement in such a conspiracy, and the damages for which each Defendant may be liable.  Zapala Decl. ¶ 9.  The settlement before the Court, therefore, is the result of serious and informed negotiations.  Additionally, there has been no collusion between the settling parties.  Because of this, the settlement is entitled to a presumption of approval.

### 2.      There are No Obvious Deficiencies in the Settlement

As set forth above, the settlement was the result of serious analysis and consideration of the significant risks faced by both sides and there are no obvious deficiencies in the settlements. For example, the size of the settlement is commensurate with the Panasonic Defendants' sales involvement in the capacitors industry affected by the antitrust conspiracy alleged by Plaintiffs. This settlement was entered into after full briefing and expert discovery related to IPPs' motion for class certification.

The settlement was reached with full appreciation of the risks faced by both sides.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD                                    9

Rulings favorable to IPPs in these pending motions would significantly impact the value of settlements for Defendants who chose to wait for the rulings on those motions.

### 3.      There is No Preferential Treatment

There is no preferential treatment of any class representative or any segment of the classes.  All indirect purchasers of electrolytic capacitors with a right to recover will have an ability to submit a claim for a *pro rata* share of the settlement funds.  IPPs are not seeking incentive awards and the settlement agreement does not provide for any preferential treatment to them or to any segment of the classes.  This element in favor of preliminary approval is met.

### 4.      The Proposed Settlements Fall Within the Range of Possible Approval

For the reasons stated *supra*, IPPs believe that the proposed settlement falls within the range of possible approval and should be preliminarily approved.

### C.      The Proposed Settlement Classes Satisfy Rule 23

In addition to the fairness of the settlement, this action is appropriate for class treatment. Class certification is appropriate when the proposed class and the proposed class representatives meet the four prerequisites of Rule 23(a): (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) fair and adequate class representation.  Fed. R. Civ. P. 23(a).  Additionally, a class must satisfy one of the criteria in Rule 23(b).  Fed. R. Civ. P. 23(b).  The Settlement Classes in this settlement meet all Rule 23 requirements.

### 1.      Fed. R. Civ. P. 23(a)(1) – Numerosity

The first prerequisite for certifying a class is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In this case, IPPs seek to certify a class of all individuals or entities who purchased one or more capacitors manufactured by a Defendant from a distributor.  There are likely hundreds of thousands of class members, such that joinder of all is impracticable. "There is no exact class size that meets the numerosity requirement; rather, where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 616 (N.D. Cal. 2014) (internal quotation marks omitted) (citing *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005)).  Therefore, the first prerequisite of

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD          10

1    Rule 23(a) is met.

2               **2.      Fed. R. Civ. P. 23(a)(2) – Commonality**

3          The second prerequisite for certifying a class is that "there are questions or law or fact

4    common to the class." Fed. R. Civ. P. 23(a)(2).  In horizontal price-fixing antitrust cases, such as

5    this one, common questions of law and fact, and their predominance, are presumed because the

6    core issue in such a case is whether or not there was a conspiracy amongst conspirators to fix,

7    raise, maintain, and/or stabilize prices and whether such price-fixing occurred. Newberg on Class

8    Actions § 20:23 (5th ed.).  "Because the gravamen of a price-fixing claim is that the price in a

9    given market is artificially high, there is a presumption that an illegal price-fixing scheme impacts

10   upon all purchasers of a price-fixed product in a conspiratorially affected market." *Rubber*

11   *Chems.*, 232 F.R.D. at 352 (internal quotation marks and citation omitted).  Courts have

12   consistently found that "[c]ommon issues predominate in proving an antitrust violation 'when the

13   focus is on the defendants' conduct and not on the conduct of the individual class members.'" *In*

14   *re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *7 (N.D.

15   Cal. June 5, 2006).

16         In this case, common questions of fact and law predominate over individual questions.

17   IPPs have alleged that Defendants engaged in a joint conspiracy to fix, raise, maintain and/or

18   stabilize the price of capacitors. The common questions of fact or law facing the Court are

19   whether the Defendants in fact entered into an illegal agreement to fix, raise, maintain and/or

20   stabilize the price of capacitors; whether the antitrust conspiracy did, in fact, result in the artificial

21   inflation of the price of capacitors; and whether those overcharges were passed on to the classes.

22   "[B]ecause price-fixing conspiracies often injure all purchasers that were subject to the alleged

23   overcharge and in a similar fashion, courts generally find that impact can be established on a

24   class-wide basis and thus that common questions of law or fact predominate over individual

25   issues."  Newberg on Class Actions § 20:23 (5th ed.).  The second prerequisite of Rule 23(a) is

26   met.

27             **3.      Fed. R. Civ. P. 23(a)(3) – Typicality**

28         The third prerequisite for certifying a class is that "the claims or defenses of the

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval
of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD                                              **11**

representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]ypicality results if the representative plaintiffs' claims arise[ ] from the same event, practice or course of conduct that gives rise to the claims of the absent class members and if their claims are based on the same legal or remedial theory.'" *In re Optical Disk Drive Antitrust Litig.*, 2016 WL 467444, at *11 (N.D. Cal. Feb. 8, 2016) (citing *In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 164 (S.D.N.Y. 2000)).   Typicality is easily satisfied in cases involving horizontal price-fixing because "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993).

In this case, IPPs' theory is that the Defendants illegally fixed, raised, maintained, and/or stabilized the price of capacitors and that the artificially inflated prices charged by Defendants for their capacitors affected the price paid by indirect purchasers of capacitors.   All class representatives purchased one or more capacitors from a distributor that was manufactured by Defendants.   As demonstrated in the expert report of Dr. Russell Lamb, all class members, including the Class Representatives, suffered antitrust impact and the same type of harm as other absent class members in the form of paying inflated prices.   The class representatives are seeking damages under the same legal theories as absent class members.   Because the class representatives' claims are typical of the members of the class, the third prerequisite of Rule 23(a) is met.

### 4.      Fed. R. Civ. P. 23(a)(4) – Fair and Adequate Class Representation

The fourth prerequisite for certifying a class is that "the representative parties will fairly and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a)(4).   "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).   The interests of the class representatives and their counsel are completely aligned with the interests of the absent class members.   The class representatives

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD                12

suffered the same injury as the absent class members in that they paid artificially inflated prices for capacitors.  IPPs' counsel also has the same interest in proving that Defendants engaged in an illegal antitrust conspiracy, which resulted in artificial inflation of the price of capacitors.  The vigor with which the class representatives and their counsel have prosecuted this case is well documented in the docket of this case.  IPPs have expended considerable time, energy and resources in gathering evidence in support of their case and in contesting Defendants' efforts to dismiss or minimize their case, much of which is documented in the several thousand docket entries in this case.  The fourth prerequisite of Rule 23(a) is met.

### 5.    All Requirements of Rule 23(b) are Met In This Case

Once the prerequisites of Rule 23(a) are met, a prospective class must satisfy only one of four Rule 23(b) requirements to continue as a class.  Rule 23(b)(1) allows class actions when prosecuting separate actions by individual members would create a risk of either inconsistent or varying adjudication of claims, or adjudication with respect to individual class members would dispose of the claims of those with the class who are not part of the litigation or would substantially impair or impede their right to protect their interests.  Fed. R. Civ. P. 23(b)(1).  Rule 23(b)(3) allows class actions when common questions of law or fact predominate such that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The requirements of Rule 23(b) are met. IPPs have alleged a horizontal price-fixing conspiracy of capacitors that is nationwide in scope.  Multiple individual actions relating to the nature and scope of the Defendants' price-fixing conspiracy of capacitors creates a high risk of inconsistent and vary adjudication of claims.  Fed. R. Civ. P. 23(b)(1).  In addition, IPPs in this case allege that Defendants have engaged in actions that apply generally to the entire class in that Defendants have conspired to illegally fix, raise, maintain, and/or stabilize the price of capacitors such that individuals and entities in the United States are paying an inflated price for such capacitors.

Additionally, common questions of law or fact predominate in this case.  "[I]f common questions are found to predominate in an antitrust action . . . courts generally have ruled that the

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD                    13

1  superiority prerequisite of Rule 23(b)(3) is satisfied." *In re TFT-LCD Antitrust Litig.*, 267 F.R.D.

2  291, 314 (N.D. Cal. 2010), *abrogated on other grounds*.   To determine whether or not a class

3  action is the superior method of adjudication, courts look to the four factors from Rule 23(b)(3):

4  "(1) the interest of each class member in individually controlling the prosecution or defense of

5  separate actions; (2) the extent and nature of any litigation concerning the controversy already

6  commenced by or against the class; (3) the desirability of concentrating the litigation of the claims

7  in the particular forum; and (4) the difficulties likely to be encountered in the management of a

8  class action." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1227 (N.D. Cal.

9  2013); *accord* Fed. R. Civ. P. 23(b)(3).

10       The antitrust conspiracy in this case is appropriate for Rule 23(b)(3) resolution.   The

11  damages of each individual class member are generally too small to warrant bringing an

12  individual lawsuit but the total damages in aggregate for the class members are significant, which

13  favors resolution by class action. "'The policy at the very core of the class action mechanism is to

14  overcome the problem that small recoveries do not provide the incentive for any individual to

15  bring a solo action prosecuting his or her rights.   A class action solves this problem by

16  aggregating the relatively paltry potential recoveries into something worth someone's . . . labor.'"

17  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit*

18  *Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).   Given the facts of this case, the class action is clearly

19  superior to alternative methods of adjudicating this controversy.

20       **D.     This Court Should Appoint Interim Class Counsel as Settlement Class
21              Counsel**

22       Under Rule 23(g)(1), when certifying a class, including for settlement purposes, the Court

23  should appoint class counsel. Fed. R. Civ. P. 23(g)(1); *see also Bellinghausen*, 303 F.R.D. at 618.

24  When appointing class counsel, the Court must consider: "(i) the work counsel has done in

25  identifying or investigating potential claims in the action; (ii) counsel's experience in handling

26  class actions, other complex litigation, and the types of claims asserted in the action; (iii)

27  counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to

28  representing the class." Fed. R. Civ. P. 23(g)(1)(A). Cotchett, Pitre & McCarthy, LLP ("CPM") is

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval
of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD                                    14

1    recognized as one of the top litigation firms in the United States, and its antitrust team is

2    recognized as experts in the field.  In this case, however, the skill and ability of CPM is not

3    theoretical.  This Court has had the opportunity to personally observe CPM's litigation skill and

4    knowledge of antitrust law, as well as the resources that CPM has committed to this case.  CPM

5    meets and exceeds the requirements for appointment as Settlement Class Counsel for these

6    settlements.

7          **E.**      **The Proposed Plan of Allocation is Fair, Reasonable and Adequate and**

8                **Should be Approved**

9          "Approval of a plan for the allocation of a class settlement fund is governed by the same

10    legal standards that are applicable to approval of the settlement; the distribution plan must be

11    'fair, reasonable and adequate.'"  *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154

12    (N.D. Cal. 2001) (internal citations omitted).  When allocating funds, "[i]t is reasonable to

13    allocate the settlement funds to class members based on the extent of their injuries or the strength

14    of their claims on the merits."  *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1045-

15    46 (N.D. Cal. 2008) (internal citations omitted) (approving securities class action settlement

16    allocation on a "per-share basis").

17          Pro rata distribution has frequently been determined by courts to be fair, adequate, and

18    reasonable.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 U.S. Dist. LEXIS 170525,

19    at *198-200 (N.D. Cal. Dec. 17, 2015) (approving pro rata plan of allocation based upon

20    proportional value of price-fixed component in finished product); *In re Dynamic Random Access*

21    *Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, at *2 (Oct. 27, 2010)

22    (Order Approving Pro Rata Distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000

23    U.S. Dist. LEXIS 8931, at *32 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this

24    one, that apportions funds according to the relative amount of damages suffered by class members

25    have repeatedly been deemed fair and reasonable.") (citations omitted); *In re Lloyds' Am. Trust*

26    *Fund Litig.*, No. 96 Civ.1262 RWS, 2002 U.S. Dist. LEXIS 22663, at *54 (S.D.N.Y. Nov. 26,

27    2002) ("Pro rata allocations provided in the Stipulation are not only reasonable and rational, but

28    appear to be the fairest method of allocating the settlement benefits."); *In re PaineWebber Ltd.*

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval
of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD       15

1  *P'ships Litig.,* 171 F.R.D. 104, 135 (S.D.N.Y. 1997), aff'd 117 F.3d 721 (2d Cir. 1997) ("[A] pro

2  rata distribution of the Settlement on the basis of Recognized Loss will provide a straightforward

3  and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of

4  the merits of the Class Members' claims.")

5        Here, as with the Round 1 and Round 2 settlements, allocation of the settlement funds will

6  be on a *pro rata* basis based on the type and extent of injury suffered by each class member in

7  those states which permit indirect purchaser antitrust claims.   With respect to the *pro rata*

8  distribution, the plan of allocation contemplates a *pro rata* distribution to each class member with

9  damages claims from the indirect purchaser states based upon the number of approved purchases

10 of electrolytic and film capacitor purchases during the settlement class period.   This is a

11 reasonable and fair way to compensate classes.   Thus, the recovery to individual class member is

12 tied to the volume and type of their purchases, the number of other qualified class members

13 making claims against the settlement fund, and the size of the overall fund.   This plan of

14 allocation is thus "fair, adequate, and reasonable" and merits approval by the Court.   *See Citric*

15 *Acid*, 145 F. Supp. at 1154.

16 **IV.    CONCLUSION**

17       For the foregoing reasons, IPPs respectfully request that this Court enter an order: (1)

18 preliminarily approving the proposed settlement with the Panasonic Defendants, (2) appointing

19 CPM as Settlement Class Counsel, and (3) approving the proposed plan of allocation.

20 Dated: November 9, 2018        Respectfully Submitted:

21                                    /s/ *Adam J. Zapala*

22                                    Adam J. Zapala

23                                    Elizabeth T. Castillo

                                   Mark F. Ram

24                                    **COTCHETT, PITRE & McCARTHY, LLP**

                                   840 Malcolm Road, Suite 200

25                                    Burlingame, CA 94010

26                                    Telephone: (650) 697-6000

                                   Facsimile: (650) 697-0577

27                                    azapala@cpmlegal.com

                                   ecastillo@cpmlegal.com

28                                    mram@cpmlegal.com

                                   *Interim Lead Counsel for Indirect Purchaser Plaintiffs*

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

IPPs' Notice of Motion & Motion For Preliminary Approval of Settlements with Panasonic Defendants and Approval of Plan of Allocation; MPA In Support Thereof; Case No. 14-cv-03264-JD      16