Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Joshua P. Davis (State Bar No. 193254)
Nicomedes S. Herrera (State Bar No. 275332)
Demetrius X. Lambrinos (State Bar No. 246027)
James G. Dallal (State Bar No. 277826)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:    jsaveri@saverilawfirm.com
          swilliams@saverilawfirm.com
          nherrera@saverilawfirm.com
          dlambrinos@saverilawfirm.com
          jdallal@saverilawfirm.com
          vprentice@saverilawfirm.com

*Class Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | Master File No.  3:17-md-02801-JD<br>Civil Action No. 3:14-cv-03264-JD<br><br>**DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS NICHICON AND RUBYCON**<br><br>Date:          January 24, 2019<br>Time:          3:00 p.m.<br>Courtroom:   11, 19th Floor |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 3:00 p.m. on  January 24, 2019, at the United States District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco, CA 94104, or as soon thereafter as the matter may be heard, Direct Purchaser Plaintiffs ("DPPs") will and hereby do move the Court for an order granting preliminary approval of DPPs' class action settlements with defendants Nichicon Corporation and Nichicon (America) Corporation (together, "Nichicon"); and Rubycon Corporation and Rubycon America Inc. (together, "Rubycon") (Nichicon and Rubycon collectively, the "Settling Defendants") in partial settlement of this class action lawsuit.

DPPs' motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Joseph R. Saveri and the exhibits attached thereto, the Declaration of Kendall S. Zylstra and the exhibits attached thereto, the Court's files and records in this matter, oral argument of counsel, and such other and further matters as the Court may consider.

Dated:  December 18, 2018

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.


By:  _____*/s/ Joseph R. Saveri*_____
Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Joshua P. Davis (State Bar No. 193254)
Nicomedes S. Herrera (State Bar No. 275332)
Demetrius X. Lambrinos (State Bar No. 246027)
James G. Dallal (State Bar No. 277826)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940

*Class Counsel for Direct Purchaser Plaintiffs*

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION .................................................................................................. 1

II.  CASE HISTORY AND SETTLING DEFENDANTS .......................................... 2

    A.   Direct Purchaser Plaintiffs' Factual Allegations and Claims ................... 2

    B.   Procedural History and Discovery ........................................................... 2

    C.   Prior Settlement History ........................................................................... 3

    D.   The Settling Defendants ........................................................................... 3

        1.   Nichicon ......................................................................................... 3

        2.   Rubycon ......................................................................................... 4

III. SUMMARY OF PROPOSED SETTLEMENTS ................................................. 5

    A.   Settlement Consideration—$108 million cash, plus up to an additional $12 million in contingent payments based on Rubycon's financial results through FY 2019. ......................................................................................................... 5

        1.   Nichicon's Settlement Consideration ............................................ 5

        2.   Rubycon's Settlement Consideration ............................................ 5

    B.   The Settlement Class ................................................................................ 6

    C.   Release of Claims against Settling Defendants ....................................... 7

    D.   Attorneys' Fees and Expenses ................................................................. 7

IV.  THE PROPOSED SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED...8

    A.   Standards for Preliminary Approval of a Proposed Settlement ............... 8

    B.   The Proposed Settlements Are Procedurally Sound and Presumptively Fair........ 9

    C.   The Proposed Settlements Are within the Range of Reasonableness ................... 9

V.   THE THRESHOLD REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS ARE MET .................................................................... 11

VI.  THE PROPOSED NOTICE TO THE SETTLEMENT CLASS—IDENTICAL TO THE NOTICE PLANS FOR THE PRIOR SETTLEMENTS—SHOULD BE APPROVED ......................................................................................................... 12

    A.   Summary of Notice Plan ........................................................................ 13

1.      Notice and Claims Administrator ............................................. 13

2.      Settlement Website ................................................................. 13

3.      Direct Notice—Long Form Notice........................................... 13

4.      Publication of Notice.............................................................. 14

B.      The Notice Forms and Dissemination Plan Meet All Requirements.................. 14

VII.    DISTRIBUTION AND USE OF SETTLEMENT FUNDS ......................................... 15

A.      Distribution of Funds to Settlement Class Members............................. 15

B.      Payment of Claims Administration Expenses ...................................... 16

VIII.   THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED ........................... 16

IX.     CONCLUSION ................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...................................................9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................9

*In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775, 2012 U.S. Dist. LEXIS
    108299 (E.D.N.Y. Aug. 2, 2012) ....................................................................................6

*In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2016 U.S. Dist. LEXIS 98446 (E.D.
    Mich. June 20, 2016) ......................................................................................................8

*In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS
    29163 (E.D. Pa. May 10, 2004) ....................................................................................10

*In re Cathode Ray Tube Antitrust Litig.*, MDL No. 1917, 2017 U.S. Dist. LEXIS 89075
    (N.D. Cal. June 8, 2017).................................................................................................15

*In re Cathode Ray Tube Antitrust Litig.*, No. 3:07-cv-5944, 2016 U.S. Dist. LEXIS 24951
    (N.D. Cal. Jan. 28, 2016) ..............................................................................................15

*In re Cipro Cases I and II*, J.C.C.P. Nos. 4154, 4220 (San Diego County Sup. Ct.)................13

*In re Citric Acid Antitrust Litig.*, 145 F.Supp. 2d 1152 (N.D. Cal. 2001)...............................15

*In Re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH,
    slip. op. (N.D. Cal. Nov. 1, 2006) ................................................................................10

*In re Heritage Bond Litig.,* No. 02-ml-1475, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal.
    2005) ..............................................................................................................................9

*In re High-Tech Employees Antitrust Litig.*, No. 11-cv-2509, 2013 U.S. Dist. LEXIS 180530
    (N.D. Cal. Oct. 30, 2013) ..............................................................................................9

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) .................................7

*In re Packaged Ice Antitrust Litig.*, No. 11-md-01952, 2011 U.S. Dist. LEXIS 17255 (E.D.
    Mich. Feb. 22, 2011) .....................................................................................................8

*In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697 (M.D. Pa. 2008) .........8

*Linney v. Cellular Alaska P'ship*, Nos. 96-3008-DLJ, 97-0203-DLJ, 97-0425-DLJ, & 97-
    0457-DLJ, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997) .................................11

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004) ................................................................8

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)..........................................9, 12, 14

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................. 12

*United States v. Nichicon Corp.*, 4:17-cr-00368-JD-1 (N.D. Cal.)..........................................4

*United States v. Rubycon Corp.,* No. 4:16-cr-00367-JD-1 (N.D. Cal.) ........................................4

**Statutes**

Sherman Act § 1, 15 U.S.C. § 1 ................................................................................4

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 2, 14

Fed. R. Civ. P. 23(a) ........................................................................................11, 12

Fed. R. Civ. P. 23(b)(1) ...................................................................................... 12

Fed. R. Civ. P. 23(b)(2) ...................................................................................... 12

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 12

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................. 12, 14

Fed. R. Civ. P. 23(e) ....................................................................................2, 8, 9

Fed. R. Civ. P. 23(e)(1) ................................................................................. 8, 12

Fed. R. Civ. P. 23(e)(3) ....................................................................................5

## I.    INTRODUCTION

Direct Purchaser Plaintiffs ("DPPs") submit this memorandum in support of their motion for preliminary approval of the proposed settlement agreements (the "Settlement Agreements") between DPPs and defendants Nichicon Corporation and Nichicon (America) Corporation (together, "Nichicon"); and Rubycon Corporation and Rubycon America Inc. (together, "Rubycon") (Nichicon and Rubycon collectively, the "Settling Defendants").

DPPs propose using the same notice procedures and the same allocation plan that the Court approved in connection with the first two rounds of DPP settlements. Separate notices of the Settlement Agreements will be provided concurrently with notice to the class that was certified by Court order dated November 14, 2018. The notices will be clearly delineated to inform Class members that they must take, or not take, separate actions to preserve their rights with regard to the Settlement Agreements and the certified class.

The Settlement Agreements create a non-contingent, all-cash fund of $108,000,000, plus an additional $12,000,000 in contingent payments based on Rubycon's financial performance (the "Settlement Fund"). The settlement amounts are as follows: (1) Nichicon has agreed to pay by January 31, 2019 a total of $90 million; (2) Rubycon has agreed to pay in two installments by January 23, 2019 a total of $18 million, plus up to $12 million in contingent payments based on Rubycon's net profits through its fiscal year ending September 30, 2019. Rubycon has agreed to cooperate with DPPs in their continued prosecution of their price-fixing claims against the non-settling Defendants.[1]

---

[1] The defendants who have not settled with DPPs are Panasonic Corporation; Panasonic Corporation of North America; SANYO Electric Co., Ltd.; SANYO North America Corporation; KEMET Corporation; KEMET Electronics Corporation; Nippon Chemi-Con Corporation; United Chemi-Con, Inc.; AVX Corporation; ELNA Co., Ltd.; ELNA America Inc.; Matsuo Electric Co., Ltd.; TOSHIN KOGYO Co., Ltd.; Holy Stone Enterprise Co., Ltd.; Milestone Global Technology, Inc. (D/B/A HolyStone International); Vishay Polytech Co., Ltd.; Taitsu Corporation; Taitsu America, Inc.; Shinyei Kaisha; Shinyei Technology Co., Ltd.; Shinyei Capacitor Co., Ltd.; Shinyei Corporation of America, Inc.; Nissei Electric Co., Ltd.; and Shizuki Electric Co., Ltd.

The Court has previously approved two rounds of DPP settlements with defendants Fujitsu Ltd., Hitachi Chemical Co., Ltd., Hitachi AIC, Inc., Hitachi Chemical Co. America, Ltd., NEC Tokin Corporation, NEC Tokin America, Inc., Nitsuko Electronics Corporation, Okaya Electric Industries Co., Ltd., Okaya Electric America, Inc., ROHM Co., Ltd., ROHM Semiconductor U.S.A., LLC, Soshin Electric Co., Ltd., and Soshin Electronics of America Inc.

The parties reached these agreements through extensive arm's-length negotiations between experienced and informed counsel after years of litigation and discovery. Both settlements were reached with the assistance of neutral mediators. The settlements represent an excellent recovery for the Settlement Class and are well within the range of possible recoveries warranting preliminary approval.

DPPs request, pursuant to Rule 23 and the Procedural Guidance for Class Action Settlements for the Northern District of California, that the Court: (1) grant preliminary approval of the Settlement Agreements; (2) certify the Settlement Class (as defined below); (3) approve the proposed plan of notice to the Settlement Class; (4) set a schedule for disseminating notice to Settlement Class members as well as deadlines to comment on or object to the Settlement Agreements; and (5) schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlement Agreements are fair, reasonable, and adequate, and should be finally approved. The proposed schedule is summarized in **Attachment A**.

## II.      CASE HISTORY AND SETTLING DEFENDANTS

### A.      Direct Purchaser Plaintiffs' Factual Allegations and Claims

The Defendants in this action are 22 different corporate families that manufacture and sell capacitors in the United States and around the world. DPPs allege that at least as early as January 1, 2002, Defendants entered into a price-fixing conspiracy with the purpose and effect of fixing, raising, and stabilizing the prices of their aluminum, tantalum, and film capacitors sold to United States purchasers. *See* Declaration of Joseph R. Saveri dated December 17, 2018 ("Saveri Decl.") ¶ 3.

### B.      Procedural History and Discovery

DPPs have substantially advanced this case during the four and a half years since Plaintiff Chip-Tech filed the first capacitors price-fixing complaint in July 2014. (Dkt. 1; *see also* Saveri Decl. ¶¶ 4-10) DPPs overcame three rounds of Defendants' motions to dismiss. (Dkts. 710, 1003, 1546 of No. 14-cv-3264) DPPs' Third Amended Complaint, filed on September 6, 2017 ("3AC"), is the operative pleading. (Dkt. 1831; Saveri Decl. ¶ 4)

In the two prior rounds of DPP settlements (Dkt. 1713 of 14:-cv-3264; Dkt. 249 of 17-md-2801), counsel for DPPs ("Class Counsel") informed the Court of its and class representatives' efforts

1   prosecuting this action. (Dkt. 172, at 3-5) Such efforts included analyzing 39 million Bates-numbered

2   pages (mostly in Japanese) from over 100 document custodians, and deposing over 85 individuals. (*Id.*)

3   Since the time DPPs filed in May 2018 their approval papers for a prior round of settlements (Dkt. 172),

4   DPPs have submitted four opening merits expert reports, conducted 18 additional depositions,

5   negotiated with several third-parties concerning document subpoenas, engaged in mediations with

6   defendants, and continued preparing the case for trial. (Saveri Decl. ¶ 10)

7        On November 14, 2018, the Court certified the direct purchaser class. (Dkt. 385)

8   **C.    Prior Settlement History**

9        On June 27, 2017, the Court granted final approval of DPPs' first round of settlements with the

10  NEC Tokin, Fujitsu, Nitsuko, Okaya, and ROHM defendants totaling $32.6 million. (Dkt. 1713; *see* n.1,

11  *supra*) On June 28, 2018, the Court granted final approval of DPPs' second round of settlements with

12  the Hitachi Chemical and Soshin defendants totaling $66.9 million. (Dkt. 249) These settlements

13  demonstrate Class Counsel and the named class representatives have diligently and successfully

14  represented the Class. A summary of the distributions for those settlements—including information

15  concerning the total settlement funds, class members, notices directly mailed, claim forms submitted,

16  average recovery, attorneys' fees, and expenses—is set forth in **Attachment B**.

17       Class Counsel estimates that the number and percentage of class members expected to

18  participate in this third round of settlements are likely to be similar to those in the prior settlements.

19  **D.    The Settling Defendants**

20  **1.    Nichicon**

21       Nichicon manufactured or sold aluminum, tantalum, and film capacitors at various times during

22  the class period. (3AC, Dkt. 1831 ¶¶ 55, 56, & 58) Nichicon (America) Corporation ("Nichicon

23  America"), an Illinois corporation, is a wholly owned subsidiary of Nichicon Corp., a Japanese

24  corporation with its principal place of business located in Kyoto, Japan. (*Id.*) During all relevant times,

25  Nichicon manufactured, sold, and distributed aluminum and film capacitors, either directly or through

26  its business units, subsidiaries, or agents, to United States purchasers. (*Id.* ¶ 55)

27

28

On July 11, 2017, the DOJ filed a criminal information against Nichicon Corporation in the Northern District of California alleging violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. *United States v. Nichicon Corp.*, 4:17-cr-00368-JD-1 (N.D. Cal.) (Dkt. 1). The information states that Nichicon Corporation "entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere." (*Id.* ¶ 2) On April 24, 2018, the Court entered judgment against Nichicon Corporation and sentenced it to a $54.6 million criminal fine in addition to certain probation terms. (*Id.* Dkt. 41)

### 2.    Rubycon

Rubycon manufactured, sold, and distributed aluminum and film capacitors either directly or through its business units, subsidiaries, agents or affiliates to United States purchasers. (3AC, Dkt. 1831 ¶¶ 62-64) Rubycon Corporation is a Japanese corporation with its principal place of business located in Nagano Prefecture, Japan. Rubycon America Inc. is an Illinois corporation located in Gurnee, Illinois, and is a wholly-owned subsidiary of Rubycon Corporation. (*Id.*) On August 22, 2016, the DOJ filed a criminal information against Rubycon Corporation in the Northern District of California alleging violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. *United States v. Rubycon Corp.,* No. 4:16-cr-00367-JD-1 (N.D. Cal.) (Dkt. 1). The information states that Rubycon Corporation "entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere." (*Id.* ¶ 2)

On March 3, 2017, the Court entered judgment and sentenced Rubycon Corporation to a $12 million fine, plus certain probation terms. (*Id.* Dkt. 40) The DOJ retained a forensic accounting expert who initially concluded that Rubycon could pay a maximum criminal fine of $15 million in a series of installments over five years, without interest. (*Id.*, at 14) Thus, the DOJ agreed with Rubycon that Rubycon did not have an ability to pay a fine within the guidelines. (*Id.*)

### III.    SUMMARY OF PROPOSED SETTLEMENTS

#### A.    Settlement Consideration—$108 million cash, plus up to an additional $12 million in contingent payments based on Rubycon's financial results through FY 2019.

Pursuant to their Settlement Agreements,[2] Nichicon and Rubycon will make, or have already made, payments into an escrow account (the "Settlement Fund"). *See* Saveri Decl., Ex. B ¶ 19; *id.*, Ex. A ¶ 21. Class Counsel recommends the appointment of Citibank, N.A. as the escrow agent.

#### 1.    Nichicon's Settlement Consideration

DPPs and Nichicon executed an agreement effective November 7, 2018 resolving the claims of the DPPs and the Settlement Class against the Nichicon defendants. (Saveri Decl. ¶ 11; *id.*, Ex. B) DPPs agreed to release their claims against Nichicon in exchange for $90,000,000 payable no later than January 31, 2019. (Saveri Decl., Ex. B ¶ 19) In light of the settlement amount and the extensive discovery from Nichicon, Nichicon has no cooperation obligations under its settlement agreement, and Nichicon does not have the right to terminate the agreement based on the amount of Settlement Class members that request exclusion or opt-out.

#### 2.    Rubycon's Settlement Consideration

On September 14, 2018, DPPs and Rubycon executed their Settlement Agreement. (Saveri Decl. ¶ 12; *id.*, Ex. A) DPPs agreed to release their claims against Rubycon in exchange for cash payments totaling $18,000,000 payable in two installments by January 23, 2019. In addition, Rubycon agreed to pay contingent payments up to $12,000,000 based on Rubycon's net profits through fiscal year 2019. (*Id.*, Ex. A ¶ 21) As described in more detail in the settlement agreement, Rubycon will pay 50% of its total annual net profits up to $6 million for each of its 2018 and 2019 fiscal years. (*Id.*) In this regard, DPPs negotiated with Rubycon to permit Class Counsel to obtain documents that Rubycon provides to its lenders (including tax forms, financial statements, and auditor reports) to ensure appropriate transparency and appropriate review of Rubycon's financial results to determine the amounts due under the settlement. (*Id.* ¶ 22) Rubycon also agreed to cooperate with DPPs in the further prosecution of

---

[2] Other than the Settlement Agreements attached to the Saveri Declaration, there are no other agreements relating to the settlements that are required to be identified under Fed. R. Civ. P. 23(e)(3).

DPPs' claims against Non-Settling Defendants, including by providing up to six witnesses for interviews, depositions, and testimony at trial.

Rubycon has the option to rescind its settlement agreement if the total qualifying purchases of opt-outs exceed 20% of qualifying purchases by all Settlement Class members, excluding the purchases by known opt-outs that requested exclusion in past settlements. (Saveri Decl., Ex. A ¶ 8)[3]

### B.    The Settlement Class

DPPs seek to certify a Settlement Class consisting of:

> All persons in the United States that purchased Capacitors (including through controlled subsidiaries, agents, affiliates or joint-ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates or joint ventures from January 1, 2002 through July 22, 2015. Excluded from the Settlement Class are: (i) Defendants (and their subsidiaries, agents and affiliates); (ii) shareholders holding more than 10% equity interest in a Settling Defendant as of the date that the Settlement Agreement with the Settling Defendant is fully executed; (iii) each member of the Settlement Class that timely requests exclusion by 'opting out'; (iv) governmental entities; and (v) the judges and chambers staff in this case, including their immediate families.

This is essentially the same settlement class definition set forth in the Settlement Agreements. (Saveri Decl., Ex. B at 8, ¶ y (Nichicon settlement); *id.*, Ex. A at 7, ¶ bb (Rubycon settlement)).[4] This is virtually the same class definition in the operative complaint. (3AC, Dkt. 1831 ¶ 107)[5] It is also nearly identical to the class definition used in the prior settlements. (Dkt. 1713 ¶ 4; Dkt. 249 ¶ 4)[6]

---

[3] Courts commonly allow the percentage of opt-outs to trigger rescission. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775, 2012 U.S. Dist. LEXIS 108299, at *60-61 n.3 (E.D.N.Y. Aug. 2, 2012).

[4] The Rubycon settlement agreement does not contain the exclusion of judges and chambers staff that is found in the Nichicon settlement agreement and in the proposed Settlement Class definition. (Saveri Decl. Ex. A ¶ bb. There are no other substantial differences.

[5] The class period in the 3AC is from "January 1, 2002 through the present . . . ." The class period for the Settlement Class is through July 22, 2015, which is the identical period used in the previous two rounds of settlements. In addition, the 3AC does not set forth the specific exclusions.

[6] The settlement class definition used in the prior round of settlements and in the Rubycon Settlement Agreement do not specifically exclude the judges and chambers staff or shareholders holding more than 10% equity in a Settling Defendant, but they do include co-conspirators. (Dkt. 1713 ¶ 4; Dkt. 249 ¶ 4) There are no other substantive differences.

The Settlement Class definition varies slightly from the Class certified by the Court, which defines the Class Period from January 1, 2002 to December 31, 2013. Class Counsel does not believe the variance in class period end dates (*i.e.,* December 31, 2013 *versus* July 22, 2015) is a material difference that should call into question the adequacy of the Settlement Agreements, which were both negotiated and the material terms agreed to by the parties before the Court's class certification order. (Saveri Decl. ¶ 13) The Settlement Class definition is consistent with the definition used in the first two rounds of settlements, and any difference is likely to result only in minor but calculable variations in the *pro rata* share of each settlement class member's settlement fund allocation. (*Id.*)

### C.   Release of Claims against Settling Defendants

In exchange for the Settling Defendants' monetary and cooperation consideration, DPPs will release the Settling Defendants of all claims related to any of the alleged conduct giving rise to this litigation concerning the direct purchase of Capacitors in the United States or for delivery in the United States. (Saveri Decl., Ex. B ¶ 13 (Nichicon settlement); *id.*, Ex. A ¶ 15 (Rubycon settlement)). The releases in the Settlement Agreements match the scope of the claims included in the Settlement Class definition.[7] (*Id.* ¶ 14) DPPs continue to prosecute their claims against the Non-Settling Defendants, who remain jointly and severally liable. Saveri Decl. ¶ 15.

### D.   Attorneys' Fees and Expenses

The Settlement Agreements provide that Interim Class Counsel may seek attorneys' fees and reimbursement of costs and expenses incurred. (Saveri Decl., Ex. B ¶ 2; *id.*, Ex. A ¶ 2) Class Counsel intends to file a motion seeking $27,000,000 (25% of the non-contingent portion of the Settlement Fund) for legal fees, payable upon the Court's approval. Class Counsel will also seek 25% of any contingent payments that Rubycon pays into the Settlement Fund. These amounts are consistent with the Ninth Circuit's "benchmark" award for fees calculated using the "percentage-of-the-fund" approach. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).

---

[7] The Settlement Class definition refers to all "persons in the United States" without specifically mentioning purchases in the United States or shipped to the United States. Nevertheless, to be clear, no foreign purchases (*i.e.*, purchases that are not shipped to or invoiced to the United States) are released under the Settlement Agreements, so the releases match the scope of, or are arguably narrower than, the claims included in the Settlement Class definition.

Class Counsel intends to submit in its motion for attorneys' fees all counsel's lodestar through December 31, 2018. Class Counsel believes the total amount of fee awards in all three rounds of settlements will not exceed the total lodestar of all plaintiffs' counsel in this case. (Saveri Decl. ¶ 29)

Class Counsel also intends to request $3,000,000 (2.8% of the non-contingent portion of the Settlement Fund) to reimburse incurred litigation costs and expenses and to create a reserve for anticipated expenses, including the expenses for trial.[8]

## IV.   THE PROPOSED SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED

DPPs propose following the same procedures for distributing settlement funds using the same allocation formula that the Court preliminarily and finally approved for the prior two rounds of settlements. (Dkts. 1713 of 3:14-cv-03264 & 249) The consideration for the Settlements Agreements are at least as favorable as the prior two rounds of settlements. The factors to be considered under the Procedural Guidance for Class Action Settlements for the Northern District of California also support approval. The Court therefore should preliminarily approve this third round of settlements.

### A.   Standards for Preliminary Approval of a Proposed Settlement

A class action may be dismissed or settled only with the approval of the Court. *See* Fed. R. Civ. P. 23(e)(1). The Rule 23(e) settlement approval procedure can be broken into three principal steps: (1) certification of a settlement class and preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected class members; and (3) a final approval determination following a fairness hearing at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present arguments concerning the fairness, adequacy, and reasonableness of the settlement. *See* 4 William B. Rubenstein, Albert Conte &

---

[8] Allowing a portion of partial settlement funds to be used for future litigation expenses is well-accepted. *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2016 U.S. Dist. LEXIS 98446, at *560-61 (E.D. Mich. June 20, 2016) (approving 5% of the settlement proceeds or $11.25 million to be set aside for future litigation expenses); *In re Packaged Ice Antitrust Litig.*, No. 11-md-01952, 2011 U.S. Dist. LEXIS 17255, at *63-64 (E.D. Mich. Feb. 22, 2011); *Newby v. Enron Corp.*, 394 F.3d 296, 302-03 (5th Cir. 2004) (affirming establishment of a $15 million litigation expense fund from the proceeds of a partial settlement); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008).

Herbert Newberg, *Newberg on Class Actions* §§ 13:39 *et seq.* (5th ed. 2014). The protections "afforded by [Rule 23(e)] are primarily procedural in nature." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).

The Court will determine whether the proposed Settlements are "fair, adequate, and reasonable" at the final approval stage—*i.e.*, after notice is disseminated and a fairness hearing is held.[9] At this preliminary approval stage, the Court need only make "an 'initial evaluation' of the fairness of the proposed settlement . . . ." *High-Tech Emps.*, 2013 U.S. Dist. LEXIS 180530, at *6 (citation omitted). To grant preliminary approval, the Court should determine whether the proposed Settlement Agreements substantively "fall within 'the range of reasonableness.'" *Id.*, at *6 (*quoting* 4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002); *see also* Dkt. 1455 ¶ 5.

**B.      The Proposed Settlements Are Procedurally Sound and Presumptively Fair**

The proposed Settlement Agreements here are the product of arm's-length, mediated negotiations between attorneys who are highly experienced in complex antitrust class actions and well informed about the facts and legal issues of this case. (Saveri Decl. at ¶ 10) As here, settlement agreements reached after meaningful discovery and after arms-length negotiations that were conducted by capable counsel are presumptively fair. *In re Heritage Bond Litig.,* No. 02-ml-1475, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. 2005) (internal citations omitted). Class Counsel's substantial advancement of the litigation to date and familiarity with the evidence also indicate that the Settlement Agreements are fair and reasonable. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

**C.      The Proposed Settlements Are within the Range of Reasonableness**

The Settlement Agreements, which provide for significant cash payments, afford important relief to Settlement Class members, and the consideration offered by each of the Settling Defendants is well within reasonable range. Damages in a price-fixing antitrust conspiracy case generally are based on the amount of the overcharge resulting from anticompetitive activity and are usually measured as a

---

[9] A preview of the fairness standards for final approval weighs heavily in favor of preliminary approval here. *See In re High-Tech Employees Antitrust Litig.*, No. 11-cv-2509, 2013 U.S. Dist. LEXIS 180530, at *6 (N.D. Cal. Oct. 30, 2013). Moreover, the complexity of class action litigation favors settlement. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). This antitrust class action is no exception.

percentage of total sales. The percentage recovered from the Settling Defendants far exceeds the percentage recovered in many other antitrust class action settlements. *See, e.g.*, *In Re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, slip. op. (N.D. Cal. Nov. 1, 2006) (approving settlements of 10.53% to 13.96% of sales); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29163, at *5 (E.D. Pa. May 10, 2004) (recovery represented approximately 2% of sales).

Nichicon agreed to pay $90,000,000 in cash payable by January 31, 2019. (Saveri Decl., Ex. B) This amount is 1.65 times the amount of its criminal fine and over 16% of the total amount of overcharges estimated by DPPs' expert by all Defendants. It is the largest settlement to date and represents a significant recovery for the Settlement Class.

Rubycon agreed to pay $18,000,000 into the Settlement Fund in two installments by January 23, 2019, pay up to $12 million in additional contingent payments, and provide certain cooperation. (Saveri Decl., Ex. A) The non-contingent amount is 1.5 times Rubycon's $12 million criminal fine. If Rubycon's financial condition improves, Rubycon agrees to pay an additional $12 million based on Rubycon's net profits through its 2019 fiscal year. Rubycon also agreed to provide cooperation, including making available up to six witnesses for interview, deposition, and trial testimony.

An important benefit to the Settlement Class is that the settlements provide members with significant cash compensation payable in less than two months, avoiding the uncertainty and delay of trial and likely appeals on a successful verdict. These settlements were reached before the Court certified the Class. The amount of non-contingent cash payments represents an excellent result given the uncertainty of litigation. Although Class Counsel is confident that DPPs would have prevailed at trial against Nichicon and Rubycon, the Settling Defendants intended to assert numerous defenses. Rubycon also faces substantial financial constraints as the DOJ and the Court have recognized, and

there remains uncertainty about Rubycon's future financial viability.[10] DPPs' settlement with Rubycon is appropriately crafted to address Rubycon's uncertain financial future by allowing the Settlement Class to recover additional funds should Rubycon's financial performance improve. (Saveri Decl. ¶ 12)

Moreover, DPPs give up no amount of their class claims against the Non-Settling Defendants, who remain jointly and severally liable. (Saveri Decl. ¶ 15; *id.*, Ex. B ¶ 18; *id.*, Ex. A ¶ 20) Resolving claims against the Settling Defendants will permit Class Counsel to focus its resources on the Non-Settling Defendants. Rubycon's cooperation will assist DPPs in those efforts. (Saveri Decl. ¶ 15)

Also weighing in favor of preliminary approval is Class Counsel's experience and success in similar class actions. Class Counsel have worked on large, complex cases for decades, including antitrust and consumer protection class action cases. (Saveri Decl. ¶ 10; *id.*, Ex. G (Firm Resume)) The judgment of experienced counsel regarding a settlement reached by arm's-length negotiations with the assistance of neutral mediators should be given significant weight and a presumption of reasonableness. *See Linney v. Cellular Alaska P'ship*, Nos. 96-3008-DLJ, 97-0203-DLJ, 97-0425-DLJ, & 97-0457-DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997).

Finally, the $108 million in non-contingent payments alone is nearly 20% of the single damages estimate calculated by DPPs' expert. Thus, the nine settling defendants to date including Nichicon and Rubycon (out of 22 corporate defendant families) will have provided nearly 40% of the damages estimated by DPPs' experts—with some of the most culpable parties not having yet settled.

## V.   THE THRESHOLD REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS ARE MET

Class certification under Rule 23(a) requires that plaintiffs show: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class;

---

[10] DPPs retained their own forensic accountant who analyzed Rubycon's financial statements and auditor reports to validate the financial statements and projections of Rubycon's future financial viability. Based on this analysis, DPPs concluded that the settlement represented a significant recovery based on Rubycon's current financial condition and that delaying settlement posed a significant risk that Rubycon's ability to pay would be diminished in the future. DPPs also negotiated in the settlement agreement that Rubycon would provide Class Counsel with documents the company provides to its lenders, to ensure transparency and allow for appropriate review of Rubycon's reported results in connection with the contingent future payments reflected in the settlement. (Saveri Decl., Ex. A ¶ 22)

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to the Rule 23(a) prerequisites, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614. Rule 23(b)(3), relevant here, requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

For the same reasons the Court certified the Class and based on the foregoing factors, the Court should certify the Settlement Class here. (Dkt. 385, at 6-17) In addition, the Settlement Class here is materially similar to the Settlement Class definitions approved by the Court for the first two DPP settlements, and the Court should follow its prior orders in preliminarily approving the Nichicon and Rubycon settlements here. (Dkt. 1713; Dkt. 249)

## VI.    THE PROPOSED NOTICE TO THE SETTLEMENT CLASS—IDENTICAL TO THE NOTICE PLANS FOR THE PRIOR SETTLEMENTS—SHOULD BE APPROVED

Should the Court grant preliminary approval, it must also "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice should be the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (same). Moreover, "the class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice*, 688 F.2d at 624 (citations omitted). DPPs plan to implement the same comprehensive notice and claims administration plan used in the prior settlements. DPPs intend to send notice of the pending Settlement Agreements with a separate notice of the Court's class certification decision. (Dkt. 385) Notice will be transmitted through a multiplicity of methods, the effectiveness of which have been demonstrated with respect to prior settlement notices to the class. The notices will clearly inform class members they must take separate actions with respect to each of them. The notice plan provides the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B).

1

2

3
  **A.**  **Summary of Notice Plan**

4
    **1.**  **Notice and Claims Administrator**

5
   DPPs request that the Court appoint Rust Consulting ("Rust") as Claims Administrator. Rust has 30 years of class action settlement administration experience and has administered more than 6,500 class action settlements, judgments, and similar administrative programs. (Zylstra Decl. ¶ 2)

6
   Further, Class Counsel have worked with Rust in the past—including on the prior two rounds of DPP settlements in this action. *Id.* ¶ 5. Rust is therefore familiar with this case, the transactional database and Class member contact information. *See id.* ¶¶ 5-7. Class Counsel also is familiar with Rust's work based on Rust's claim administration work for Class Counsel in another class action, *In re Cipro Cases I and II*, J.C.C.P. Nos. 4154, 4220 (San Diego County Sup. Ct.).

11
   Class Counsel believes that it would be inefficient to switch to a different administrator now that Rust has gained familiarity administering the first two rounds of settlements. Nevertheless, Class Counsel requested bids from other class action claims administrators. Rust's bid was competitive with the response received, and Class Counsel negotiated additional discounts from Rust based on expected efficiencies resulting from their work on prior settlements in this action. (Saveri Decl. ¶ 18)

16
    **2.**  **Settlement Website**

17
   The Claims Administrator will update a Settlement Website[11] that provides key settlement information such as case status, settlement documents, and FAQs concerning the Settlement Agreements and claims administration. (Zylstra Decl. ¶ 17) A public-facing dashboard on the site displays updates about the administration process, such as the number and value of claims filed. A secure section of the Website allows Settlement Class members to file online claims or adjustments. *Id.*

22
    **3.**  **Direct Notice—Long Form Notice**

23
   DPPs propose to mail direct notice to individual Settlement Class members with valid addresses (a) in the transactional databases Defendants provided to DPPs, and (b) in records of past contact with Class Counsel. (Zylstra Decl. ¶¶ 8-9; Saveri Decl. ¶¶ 23-24) DPPs possess significant data reflecting

26

27

28

---

[11] The Settlement Website can be accessed at: www.CapacitorsAntitrustSettlement.com.

Settlement Class members' purchases of capacitors during the relevant period. (Saveri Decl. ¶ 22) Individual notices with pre-populated purchase data can therefore be sent directly to class members.[12]

DPPs propose to mail the Long Form Notice (Saveri Decl. Ex. C) to Settlement Class members. (Zylstra Decl. ¶ 10) The Long Form Notice provides, in plain language, an explanation of the case; the terms of the Settlement Agreements; the maximum amount Class Counsel may seek for reimbursement of costs and expenses; the date, time, and place of the final approval hearing; the opportunity to opt out of the Settlement Class; the procedures for submitting comments on and objections to the Settlement Agreements; and a link to the Settlement Website. (Saveri Decl. Ex. C) The Long Form notice will also include a claim form with pre-populated purchase data. (Zylstra Decl. ¶ 13)

### 4. Publication of Notice

To reach the greatest number of unidentified Settlement Class members, DPPs also plan to provide broader notice through publication in traditional print media and on industry-specific websites. (Zylstra Decl. ¶ 8) The Claims Administrator will publish the Summary Notice in the national edition of the *Wall Street Journal*. (Saveri Decl. ¶ 21) The Claims Administrator will also post the Settlement Notice and Settlement Agreements on at least two internet websites directed toward the capacitors and passive electronics industry. (Zylstra Decl. ¶ 12) The electronic components industry is a niche business. (Saveri Decl. ¶ 21) Targeting industry media will further supplement and increase the reach of the notice to Class members and increase the effectiveness of the notice provided.

### B. The Notice Forms and Dissemination Plan Meet All Requirements

DPPs' proposed notice plan satisfies the fairness standards set forth in Rule 23. Each form of notice—the Long Form and Summary Notice—clearly presents all required categories of information in plain English. *See Officers for Justice*, 688 F.2d at 624; Fed. R. Civ. P. 23(c)(2)(B). The notices are therefore substantively sufficient. The proposed dissemination plan also satisfies due process and provides the best practicable notice.

---

[12] It is unlikely there are many Settlement Class members who are not identified in Defendants' transactional data. DPPs' counsel pursued discovery about the completeness of transactional data with many Defendants in connection with the FTAIA briefing, and Defendants testified that all transactions in the types of commerce the Court has deemed within the Sherman Act's ambit are recorded in transactional data. (Saveri Decl. ¶ 22)

## VII.   DISTRIBUTION AND USE OF SETTLEMENT FUNDS

### A.   Distribution of Funds to Settlement Class Members

Class Counsel recommends following the same procedures effectively used in the prior settlements. Payments to Settlement Class Members will be calculated and distributed after the Court has finally approved the Settlement Agreements and after deductions for costs of notice, settlement administration, attorneys' fees and costs. (Zylstra Decl. ¶ 18) Settlement Class member payments will be calculated on a *pro rata* basis. (Saveri Decl., Ex. C ¶ 13; Zylstra Decl. ¶ 18)

A plan of allocation must be "fair, reasonable, and adequate." *In re Citric Acid Antitrust Litig.*, 145 F.Supp. 2d 1152, 1154 (N.D. Cal. 2001). Allocation plans that compensate class members based on the type and extent of their injuries are considered reasonable. *See id.*; *see also In re Cathode Ray Tube Antitrust Litig.*, No. 3:07-cv-5944, 2016 U.S. Dist. LEXIS 24951, at *229 (N.D. Cal. Jan. 28, 2016). Distribution on a *pro rata* basis, with no class member being favored over others, are fair, adequate, and reasonable. *See, e.g.*, *In re Cathode Ray Tube Antitrust Litig.*, MDL No. 1917, 2017 U.S. Dist. LEXIS 89075, at *93 (N.D. Cal. June 8, 2017).

DPPs propose that settlement funds be allocated based on the Settlement Class members' relative share of capacitors purchased during the relevant time period identical to what was used in the prior settlements. (Saveri Decl. ¶ 13) Settlement Class members can either accept the pre-populated purchases in their claim forms, or they can submit documentation of additional purchases. (*Id.* ¶ 23)

When making distributions of the Settlement Fund to the Settlement Class members that timely submit valid Claim Forms, DPPs will calculate the dollar value of each Settlement Class member's claim in proportion to the total claims submitted. (*Id.* ¶ 25)

No Settlement Funds will be subject to reversions to Defendants. Based on the amount of uncashed checks for the first round of settlements—currently less than $500—Class Counsel does not anticipate the need for *cy pres* awardees; instead, Class Counsel recommends any uncashed settlement checks should be redistributed to Settlement Class members.[13] (Saveri Decl. ¶ 26)

---

[13] The low amount of uncashed settlement checks for previous settlements demonstrates the effectiveness of the proposed method of distributing claims.

**B.** **Payment of Claims Administration Expenses**

DPPs request authorization to use up to $125,000 from the Settlement Fund to pay the Notice and Claims Administrator to provide notice, and to process and audit submitted claim forms.

## VIII. THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED

DPPs request that the Court grant preliminary approval and set the schedule set forth in **Exhibit A,** which includes a proposed final approval hearing date on or after May 9, 2019.

## IX. CONCLUSION

For the above reasons, DPPs respectfully request that the Court grant preliminary approval of the Settlement Agreements, certify the Settlement Class, approve the proposed Settlement Notice and dissemination plan, and set a schedule for the notice period and a date for a final approval hearing.

Dated: December 18, 2018

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.

By:      */s/ Joseph R. Saveri*
          Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Joshua P. Davis (State Bar No. 193254)
Nicomedes S. Herrera (State Bar No. 275332)
Demetrius X. Lambrinos (State Bar No. 246027)
James G. Dallal (State Bar No. 277826)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940

*Class Counsel for Direct Purchaser Plaintiffs*

**ATTACHMENT A:  Proposed Schedule**

| EVENT | SCHEDULE |
|---|---|
| Notice of Class Action Settlement (Saveri Decl. Exs. C & D) to Be Mailed and Posted on Internet | Within 28 days of Preliminary Approval Order |
| Deadline for Settlement Class Members to Request Exclusion | Postmarked by 60 days after Notice of Class Action Settlement is Mailed by Claims Administrator |
| Summary Notice of Class Action Settlement to Be Published | To be completed 35 days prior to the Fairness Hearing or as soon as practicable based on the publication |
| Motions for Final Approval and Reimbursement of Litigation Costs and Expenses to Be Filed by DPPs' Counsel, together with Affidavit of Compliance with Notice Requirements | To be filed 35 days prior to the Final Approval Hearing |
| Receipt/Filing Deadline for Comments and Objections | 20 days prior to Final Approval Hearing |
| Opposition(s), if any, to Motions for Final Approval and Reimbursement of Expenses | 20 days prior to Final Approval Hearing |
| Replies in Support of Motions for Final Approval, and Reimbursement of Expenses, to Be Filed by DPPs' Counsel, only if Objections to the Motions are Filed<br><br>Notice of Intent to Appear by Objectors Must be Filed | 10 days prior to Final Approval Hearing |
| Service/Filing of Notices of Appearance at Final Approval Hearing | 10 days prior to Final Approval Hearing |
| Final Approval Hearing | _____, 2019 (to be scheduled by the Court on or after May 9, 2019) |

# ATTACHMENT B: Prior Settlement History

*In re Capacitors Antitrust Litig.*,
Case No. 3:17-md-02801-JD
**ROUND 1: Approved June 27, 2017**
*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $32,600,000 | 100.0% |
| **Distribution to Class** | $21,287,673* | 65.3% |
| **Claims** | | |
| Participation rate | 66.2% of commerce | |
| Class members | 2,279 (known) | |
| Notices mailed | 2,279 | |
| Claims submitted | 719 | |
| Approved claims | 282 | |
| Average distribution | $47,582* | |
| **Cy Pres** | $0 | 0.0% |
| **Residual (uncashed)** | $447 | |
| **Attorney fees awarded** | $8,150,000 | 25.0% |
| Lodestar | $44,444,689 | |
| Hours | 105,345.8 | |
| Multiplier | 0.18 | |
| **Costs and Expenses** | $3,260,000 | 10.0% |
| **Claims Administration** | $185,308 | 0.6% |
| **Publication Costs** | $75,872 | 0.2% |

*Projected number as not all payments and distributions have been made

*In re Capacitors Antitrust Litig.*,
Case No. 3:17-md-02801-JD
**ROUND 2: Approved June 28, 2018**
*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $66,900,000 | 100% |
| **Distribution to Class** | $43,652,604 | 65.3% |
| **Claims** | | |
| Participation rate | 78.5% of commerce | |
| Class members | 3,041 (known) | |
| Notices mailed | 3,041 | |
| Claims submitted | 681 | |
| Approved claims | 425 | |
| Average distribution | $102,712* | |
| **Cy Pres** | $0 | 0.0% |
| **Attorney fees awarded** | $16,725,000 | 25.0% |
| Lodestar | $70,764,474** | |
| Hours | 165,390.4** | |
| Multiplier | 0.35** | |
| **Costs and Expenses** | $6,690,000 | 10.0% |
| **Claims Administration** | $158,415 | 0.2% |
| **Publication Costs** | $71,472 | 0.1% |

* Projected number as distributions have not yet been made.

** Cumulative amounts inclusive of round 1

*In re High-Tech Employee Antitrust Litig.,*
Case No. 11-cv-2509 (N.D. Cal.)
**Final Approval granted September 2, 2015**

*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $435,000,000* | 100.0% |
| **Distribution to Class** | $384,300,156 | 88.3% |
| **Claims** | | |
| Participation rate | 99.9% of commerce | |
| Class members | 64,466 | |
| Notices mailed | 64,466 | |
| Claims submitted | 64,410 | |
| Approved claims | 64,410 | |
| Average distribution | $5,966 | |
| **Cy Pres** | $0 | 0.0% |
| **Attorney fees awarded** | $45,822,312 | 10.5% |
| Lodestar | $18,720,707 | |
| Hours | 37,131 | |
| Multiplier | 2.45 | |
| **Costs and Expenses** | $4,539,844 | 1.0% |
| **Claims Administration** | $360,000 | less than 0.1% |

\* Resolution of the case proceeded in two rounds. The first round distributed $20 million to class members who filed claims. The second round distributed $415 million to the full list of class members, without a claims process.

*In Re Titanium Dioxide Antitrust Litigation*
Case No. 1:10-cv-00318-RDB (D. Md.)
**Final Approval granted December 13, 2013**

*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $163,500,000 | 100% |
| **Distribution to Class** | $104,014,824 | 63.6% |
| **Claims** | | |
| Participation rate | 53.1% of class members* | |
| Class members | 650 (known)* | |
| Notices mailed | 5,877** | |
| Claims submitted | 643 | |
| Approved claims | 345*** | |
| Average distribution | $301,497 | |
| **Cy Pres** | $0 | 0.0% |
| **Attorney fees awarded** | $54,500,000 | 33.3% |
| Lodestar | $22,812,576 | |
| Hours | 45,585.33 | |
| Multiplier | 2.39 | |
| **Costs and Expenses** | $4,555,205 | 4.4% |
| **Claims Administration** | $112,010 | less than 0.1% |
| **Publication Costs** | $75,872 | less than 0.1% |

\* Estimate created by Plaintiffs' expert based on Defendants' transactional data.
\*\* Containing all unique addresses obtained from Defendants.
\*\*\* Claimants were required to provide proofs of claim, which were verified by the claims administrator.

***In re Cipro Cases I & II,*** JCCP Case Nos.
**4154 & 4220 (San Diego Sup. Ct.)**
**IPP Settlement with Bayer approved**
**November 18, 2013**
*All figures are best estimates*

|  |  | % Total Settlement |
|---|---|---|
| **Settlement** | $74,000,000 | 100.0% |
| **Distribution to Class** | $45,902,769 | 62.0% |
| **Class Representative Incentive Awards** | $40,000 | |
| **Claims** | | |
| Participation rate | 20.2% of commerce | |
| Class members | unknown | |
| Notices mailed | N/A*/44,929**[1] | |
| Claims submitted | 7,907*/463** | |
| Approved claims | 2,951*/295** | |
| Average distribution | $14,150[2] | |
|  | $124* | |
|  | $154,651** | |
| **Cy Pres** | $0 | 0.0% |
| **Residual** | $262,155[3] | |
| **Attorney fees awarded** | $24,642,000 | 33.3% |
| Lodestar | $9,856,800 (curr. rates) | |
|  | $8,214,000 (hist. rates) | |
| Hours | 20,344 | |
| Multiplier | 2.5 (curr. rates) | |
|  | 3.0 (hist. rates) | |
| **Costs and Expenses** | $2,501,241 | 3.4% |
| **Claims Administration** | $383,118 | 0.5% |
| **Publication Costs** | $459,136 | 0.6% |

\* Consumer
\*\* Third-party Payor
[1] The claims administrator sent notices to 44,929 potential class member third-party payors.
[2] Average distribution amount, including consumer and third-party payors.
[3] Residual funds from uncashed checks. Court ordered to be transferred to litigation fund.