**REDACTED**
**PUBLIC VERSION**

Bruce D. Sokler *(admitted pro hac vice)*
Robert G. Kidwell *(admitted pro hac vice)*
bdsokler@mintz.com
rgkidwell@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
701 Pennsylvania Avenue NW, Suite 900
Washington, DC 20004
Telephone: (202) 434-7300
Facsimile: (202) 434-7400

Evan S. Nadel (SBN 213230)
enadel@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
44 Montgomery Street, 36th Floor
San Francisco, California 94104
Telephone: 415-432-6000
Facsimile: 415-432-6001

Attorneys for Defendant
AVX CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Lead Case No. 3:17-md-02801-JD |
| | *Including Consolidated Cases:*<br>Case No. 14-cv-03264-JD<br>Case No. 17-cv-03472-JD<br>Case No. 17-cv-07047-JD |
| This Document Relates to:<br><br>DIRECT PURCHASER CLASS AND FLEXTRONICS INTERNATIONAL USA, INC'S COMBINED ACTION, *Case No. 14-cv-03264-JD*<br><br>AASI BENEFICIARIES' TRUST, BY AND THROUGH KENNETH A. WELT, LIQUIDATING TRUSTEE V. AVX CORP. ET AL., *Case no. 17-cv-03472-JD*<br><br>BENCHMARK ELECTRONICS, INC. ET AL. V. AVX CORP. ET AL., *Case No. 17-cv-7047-JD* | **DEFENDANT AVX CORPORATION'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AGAINST ALL PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  August 29, 2019<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato<br>Location: Courtroom 11 |

# TABLE OF CONTENTS

**Page**

ISSUE TO BE DECIDED ................................................................................................ iv

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AGAINST
ALL PLAINTIFFS.........................................................................................................v

MEMORANDUM OF POINTS AND AUTHORITIES .................................................1

I.   THE EVIDENCE—BOTH DIRECT AND INDIRECT—REQUIRES THAT
     SUMMARY JUDGEMENT BE ENTERED FOR AVX. ...................................3

     1.   Plaintiffs do not allege that AVX participated in the cartel meetings, and
          direct record evidence verifies that AVX did not participate in the cartel. ............3

     2.   The pleading cartel members and the ACPERA applicant have all sworn
          that AVX was not part of the cartel, while disclosing the involvement of
          others as part of their pleas and cooperating discovery responses.........................5

     3.   AVX has behaved as an independent business would. ..........................................6

     4.   The "bilateral communications" that Plaintiffs offer as circumstantial
          evidence do not relate to the alleged Asian cartel and did not result in price
          increases. ...............................................................................................................7

          i.   Plaintiffs' "bilateral communications" documents do not show that
               AVX agreed to join the Asian cartel alleged in this case. ..........................8

               a.   ████████████████████████████. ...........................................9

               b.   █████████████████████████. .................11

               c.   ██████████████████..............................................13

          ii.  AVX's economist Dr. Snail did a ███████████████
               █████████████████.....................................................................14

II.  THIS CASE IS LIKE CITRIC ACID AND UNLIKE TFT-LCD OR SRAM. .................15

     1.   The four facts in Section I above mirror Citric Acid. ...........................................16

     2.   AVX's direct evidence analysis does not suffer from the problems
          identified in TFT-LCD..........................................................................................17

     3.   AVX has shifted the burden to Plaintiffs to show that the only explanation
          for AVX's behavior across the alleged cartel period was its active,
          knowing involvement in the alleged Asian cartel..................................................18

     4.   The circumstantial evidence concerning AVX is not like that in SRAM..............19

III. CONCLUSION........................................................................................................21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
5
    69 F.3d 337 (9th Cir. 1995) ......................................................................16

6

*Barnes v. Arden Mayfair, Inc.*,
7
    759 F.2d 676 (9th Cir. 1985) ....................................................................17

8

*Barnes v. Hersey Co.*,
    2016 U.S. Dist. LEXIS 5485 (N.D. Cal. Jan. 15, 2016) ............................11

9

*Columbia Pictures Indus. v. Fung*,
10
    CV 06-5578................................................................................................11

11

*In re Baby Food Antitrust Litg.*,
    166 F.3d 112 (3d Cir. 1998)............................................................ *passim*
12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
13
    2017 U.S. Dist. LEXIS 217359 (N.D. Cal. Feb. 7, 2017) ...............7, 17, 20

14

*In re Citric Acid Litig.* (*Citric Acid I*),
15
    996 F. Supp. 951, 953 (N.D. Cal. 1998) ............................8, 16, 17, 21

16

*In re Citric Acid Litig.* (*Citric Acid II*),
    191 F. 3d 1090 (9th Cir. 1999) ....................................................... *passim*
17

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
18
    2010 U.S. Dist. LEXIS 132172 (N.D. Cal. Dec. 10, 2010)...............15, 19

19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
20
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) .................................15, 17, 18

21

*In re TFT-LCD Flat Panel Antitrust Litig.*,
    2012 U.S. Dis. LEXIS 145936 (N.D. Cal. Oct. 9, 2012)...........................18
22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
23
    475 U.S. 574 (1986)....................................................................................8

24

*Summers v. Teichert & Son, Inc.*,
    127 F.3d 1150 (9th Cir. 1997) ...................................................................15
25

*Sun Microsystems Inc. v. Hynix Semiconductor Inc. (Sun III)*,
26
    608 F. Supp. 2d 1166 (N.D. Cal. 2009) ......................................................8

27

*United States v. ELNA Co. Ltd.*,
28
    No. 3:16-cr-00365-EMC, Dkt. No. 40 (N.D. Cal. 2017)............................5

**<u>TABLE OF AUTHORITIES</u>**
**(continued)**

**Page(s)**

**Cases**

*United States v. Hitachi Chemical Co., Ltd.*,
    No. 4:16-cr-00180-JD, Dkt. 22 (N.D. Cal. 2016) ............................................................5, 6, 8

*United States v. Matsuo Electric Co. Ltd.*,
    No. 4:17-cr-00073-JD, Dkt. No. 35 (N.D. Cal. 2017) ...........................................................5, 8

*United States v. NEC TOKIN Corporation*,
    No. 3:15-cr-00426-JD, Dkt. No. 9-1 (N.D. Cal. 2016) ............................................................5

*United States v. Nichicon Corp.*,
    No. 4:17-cr-00368-JD-1, Dkt. No. 19 (N.D. Cal. 2017) .........................................................5, 8

*United States v. Nippon Chemi-Con Corporation*,
    No. 4:17-cr-00540-JD, Dkt. No. 54 (N.D. Cal. 2018) ............................................................5

*United States v. Rubycon Corp.*,
    No. 4:16-cr-00367-JD, Dkt. No. 17 (N.D. Cal. 2017) ............................................................5

*Unites States v. Holy Stone Holdings Co., Ltd.*,
    No. 4:16-cr-00366-JD, Dkt. No. 34 (N.D. Cal. 2017) ...........................................................5, 8

1

## ISSUE TO BE DECIDED

2

      Whether Plaintiffs have come forward with admissible evidence capable of proving that

3

AVX made an agreement and a conscious decision to join the Asian cartel that is alleged by

4

Plaintiffs, and that AVX's behavior with regard to the capacitor sales at issue is inconsistent with

5

the lawful conduct of business.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AGAINST ALL PLAINTIFFS

PLEASE TAKE NOTICE that on August 29, 2019, at 10:00 a.m. in Courtroom 11, 450 Golden Gate Ave., 19th floor, San Francisco, CA, before the Honorable James Donato, Defendant AVX Corporation ("AVX") will move, and hereby does move, pursuant to Fed. R. Civ. P. 56, for an order of summary judgment as to all claims against it by all Plaintiffs in these consolidated cases.  The Plaintiffs against whom AVX moves are: Direct Purchaser Plaintiffs; Flextronics International USA, Inc.; AASI Beneficiaries' Trust; and the Benchmark Electronics Plaintiffs.  AVX has not been named as a defendant by any of the other Plaintiffs in these consolidated cases.

AVX seeks an order of summary judgment in its favor on all claims because no Plaintiff can show that AVX made an agreement and a conscious decision to join the cartel that is alleged by Plaintiffs, or that its behavior with regard to the capacitor sales at issue could not plausibly be consistent with the lawful conduct of business.  AVX's prayer for relief is based upon this Motion and Memorandum of Points and Authorities; the attached declarations and exhibits; the argument of counsel; the discovery responses, documents, and testimony in the record as may be cited by Plaintiffs or Defendants in this case; and such other matters as the Court may consider.

Dated:  June 14, 2019

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

By: */s/ Evan S. Nadel*
Evan S. Nadel
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone: (415) 432-6000
Facsimile: (415) 432-6001
enadel@mintz.com

Bruce D. Sokler *(admitted pro hac vice)*
Robert G. Kidwell *(admitted pro hac vice)*
701 Pennsylvania Avenue NW, Suite 900
Washington, DC 2004
Telephone: (202) 434-7300
Facsimile: (202) 434-7400
Bdsokler@mintz.com
*Attorneys for Defendant AVX Corporation*

### MEMORANDUM OF POINTS AND AUTHORITIES

The complaints[1] in this case relate to an Asian capacitors cartel unearthed by governmental authorities involving certain Japanese and Taiwanese capacitor manufacturers attending a series of meetings with codenames like "ATC," "MK," "JFC," and "President's Meetings." The government investigations, the midnight raids, the cartel meeting minutes, the guilty pleas, and the fines all involve these Asian companies. None have involved AVX, which is a South Carolina-based manufacturer[2] of primarily tantalum capacitors that had no operations in Japan during the alleged cartel period.[3] It is therefore not surprising that AVX is the only Defendant for whom this Court dismissed the original complaint.[4]

AVX will show in this motion the four facts that, under *In re Citric Acid Litig.* (*Citric Acid II*), 191 F. 3d 1090 (9th Cir. 1999), *cert. denied*, 529 U.S. 1037 (2000), entitle it to summary judgment:

(1) Plaintiffs do not even allege that AVX attended the cartel meetings, their experts agree that AVX did not attend the cartel meetings, contemporaneous meeting minutes expressly state that AVX was not part of the cartel, and there is no documentary or testimonial evidence

---

[1] There are four plaintiffs (DPPs, Flextronics, AASI, and Benchmark) and three complaints (the DPP/Flextronics consolidated complaint and one each for AASI and Benchmark) at issue in this motion, but the various filings do not all appear under a single case number. Therefore, this motion will indicate *both* the case number *and* the docket number when referring to docket items.

[2] AVX is a Delaware public company listed on the New York Stock Exchange (ticker symbol: AVX). Approximately 75% of its outstanding common shares are held by Kyocera Corp.

[3] In 2013—shortly before this case was filed—AVX purchased the assets of a tantalum capacitor factory in Adogawa, Japan from Nichicon. AVX did not acquire Nichicon's business, and Nichicon's liability for any of its alleged actions in this case stayed with Nichicon—which DPPs and Flextronics anticipate in the Consolidated Third Amended Class Action Complaint ("DPP and Flex Third Amended Complaint"), Dkt. No. 1831 in Case No. 14-cv-03264, at ¶ 57, and which this Court has also anticipated. *See* Order On Motions to Dismiss, Dkt. No. 710 in Case No. 3:14-cv-03264, at 13:8. AVX had no operations in Japan prior to this asset purchase.

[4] *See* Order On Motions to Dismiss, Dkt. No. 710 in Case No. 3:14-cv-03264, at 13:11-14 ("The only substantive allegation against AVX is that it 'worked to coordinate pricing strategy' with other defendants, but these allegations fall short of alleging 'an agreement and a conscious decision' by AVX to join it.") (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008)). The Court subsequently declined to dismiss AVX from the Amended Complaints. Order on Motions to Dismiss Amended Complaints, Dkt. 1003 in Case No. 3:14-cv-03264, at 14:4-19 (noting the Plaintiffs' allegations in the Amended Complaints were "significantly more than what was previously alleged, and *at this stage of the proceedings*, the Court finds DPPs have alleged enough to let the complaint go forward as to AVX") (emphasis added).

1  that AVX otherwise joined the cartel;

2      (2) All of the defendants whom have pleaded guilty to participating in the cartel, as well

3  as the ACPERA applicant Panasonic/Sanyo, have provided sworn discovery responses stating

4  that AVX did not participate in the cartel for which they pleaded guilty or sought leniency;

5      (3) AVX has conducted its business as an independent, rational competitor would do

6  throughout the alleged cartel period.  While the Complaints allege a stagnant industry of low-

7  priced commodity products for which collusion is an enticing path to profit, AVX has focused on

8  inventing new technologies for high-reliability applications such as implantable medical devices

9  and deep-earth oil exploration, and for advanced military and aerospace applications—including

10  aboard the NASA Mars Rover Curiosity; and

11      (4) None of the various "bilateral meetings" that Plaintiffs offer as circumstantial

12  evidence of AVX's involvement in the Asian cartel provide evidence that AVX joined the

13  cartel—and it is an unrebutted economic fact in this case that none of these "bilateral meetings"

14  had any effect on AVX's pricing.

15      Lacking any direct evidence that AVX made a conscious agreement to join the cartel,

16  Plaintiffs will likely respond to this Motion with a litany of documents that show one or more

17  AVX employees saying or doing something stupid on a variety of topics having nothing to do

18  with the alleged Asian cartel.  Run 13 years' worth of any company's internal documents

19  through modern E-Discovery analytics software and you will find instances where employees

20  said or did stupid things.  But none of the stupid things that Plaintiffs will point to are evidence

21  that AVX consciously agreed to join the Asian cartel alleged in this case.

22      Plaintiffs will also likely offer their economists' reports for two purposes: first, to attempt

23  to "expertify" documents that do not otherwise show an agreement to join the Asian cartel, and

24  second, to show that AVX's pricing is "consistent with" the Asian cartel's pricing once you

25  average AVX's prices together with the prices of the cartel members—which is a simple

26  tautology.  Mother Theresa was a billionaire if you average her income with that of the world's

27  billionaires.

28

But the Court can safely avoid a battle of the experts here, because Plaintiffs' experts have stated very clearly that ***they do not offer any opinion*** on the affirmative facts that entitle AVX to summary judgment.  Plaintiffs' economists confirmed in their deposition testimony what was already obvious in their reports: none of them is offering an opinion that AVX did, in fact, join the conspiracy, and none of them rebut the analysis of AVX's economist that the miscellaneous "bilateral communications" offered as circumstantial evidence by Plaintiffs had ***no*** effect on prices.

Additionally and independently, Plaintiff AASI, ███████████████████████ ████████████████████████████████████ AVX is entitled to summary judgment as to AASI for this separate and independent reason.

In deference to the Court's admonition that dispositive motions be concise, this Motion assumes the Court's general familiarity with the overall facts of this case and the basic summary judgment standards.

## I.   THE EVIDENCE—BOTH DIRECT AND INDIRECT—REQUIRES THAT SUMMARY JUDGEMENT BE ENTERED FOR AVX.

### 1.   Plaintiffs do not allege that AVX participated in the cartel meetings, and direct record evidence verifies that AVX did not participate in the cartel.

AVX did not attend the cartel meetings, and Plaintiffs do not allege that it attended the cartel meetings.[6]  Plaintiffs' own experts agree that ██████████████████████████  In

---

[5] *See* Expert Report of Leslie M. Marx, Ph.D, on Behalf of Plaintiffs, dated Nov. 30, 2018 ("Marx Report") at ██ ████████████████████████ Declaration of Shawn N. Skolky In Support of Defendant AVX Corporation's Motion for Summary Judgment Against All Plaintiffs ("Skolky Decl."), Ex. 1.

[6] *See* DPP and Flex Third Amended Complaint, Dkt. No. 1831 in Case No. 14-cv-03264; The AASI Beneficiaries' Trust, by and Through Kenneth A. Welt, Liquidating Trustee Complaint ("AASI Complaint"), Dkt. No. 1 in Case No. 17-cv-03472; Benchmark Electronics et al. Complaint ("Benchmark Complaint"), Dkt. No. 1 in Case No. 17-07047. DPPs and Flextronics name the cartel meeting attendees in the Third Amended Complaint, all of which are Asian, and make no allegation that AVX attended any of the cartel meetings.  ¶ 196.  AASI's Complaint insinuates that AVX was, at a minimum, "discussed" at cartel meetings.  ¶ 166.  The Benchmark Complaint cuts-and-pastes this insinuation that AVX was "discussed" at cartel meetings.  ¶ 175.  But being discussed at a meeting *by others* is not evidence of joining a cartel.  And as described below, that "discussion" included bemoaning that the U.S. manufacturers—AVX and KEMET—were not part of the conspiracy, and therefore beyond the influence of the cartel.

[7] *See* Skolky Decl., Ex. 1, ¶¶ 54, 56, 61, 64 ██████████████████████████████ ████████████████████████████;  Expert Report of Hal J. Singer, Ph.D, on Behalf of Plaintiffs, dated Nov. 30, 2018 ("Singer Report") at 102-06 (same), Skolky Decl., Ex. 2; Deposition of Leslie M. Marx, Ph.D ("Marx Dep.") at

---

other words, nothing has changed on this score since the Court dismissed AVX—and only

AVX—from the original complaint:

> AVX Corporation is not alleged to have participated in or even been informed of the "cartel's regular meetings," Dkt. No. 401 ¶ 198, nor is it alleged to have participated in any cartel "sub-groups" or in any specific cartel meetings. The only substantive allegation against AVX is that it "worked to coordinate pricing strategy" with other defendants, *id.* ¶¶ 215-16, but these allegations fall short of alleging "an agreement and a conscious decision" by AVX to join it. *TFT-LCD*, 586 F. Supp. 2d at 1117.[8]

To the contrary, after five years of discovery the evidence shows affirmatively that AVX

did not join the cartel. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

174:2 – 176:1 (██████████████████████████████████) , Skolky Decl., Ex. 3; Deposition of Hal J. Singer, Ph.D ("Singer Dep.") at 281:12 – 282:19 (same) , Skolky Decl., Ex. 4.

[8] Order On Motions to Dismiss, Dkt. No. 710 in Case No. 3:14-cv-03264, at 13:9-14.

[9] *See* ████████████████████████████████████████████████████████, Skolky Decl., Ex. 5, at 3; *id.* ████████████████████████ ); *id.* at 2 (████████████████████████████). *See also* ████████ ██████), Skolky Decl., Ex. 6, at 287:8-14 (████████████████████████████ ████████████████████████); *id.* at 288:19-25 (██████████████████████████████████████).

[10] Skolky Decl., Ex. 5, at 4; *see also* Skolky Decl., Ex. 6, at 289:7-11.

[11] Skolky Decl., Ex. 6, at 282:1-25.

[12] *Id.* at 289:3 – 290:3 (████████████████████████████████████████████ ████████████████████████████████████████████)

---

**2.      The pleading cartel members and the ACPERA applicant have all sworn that AVX was not part of the cartel, while disclosing the involvement of others as part of their pleas and cooperating discovery responses.**

Plaintiffs' claims are founded on the DOJ's criminal investigation and information provided by the cooperating ACPERA applicant Panasonic/Sanyo.[13] ████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████even as they have admitted their own involvement and named their co-conspirators pursuant to the plea agreements with the DOJ.[16]

The ACPERA applicant Panasonic/Sanyo, has produced voluminous documents, made factual proffers, and otherwise cooperated with DOJ and the Plaintiffs in this case to disclose the cartel and its participants. ████████████████████████████████████

████████████

---

[13] *See* DPP and Flex Third Amended Complaint ¶¶ 9 (citing Panasonic's ACPERA application), 17 (citing the public statements of "law enforcement and competition authorities" in the spring of 2014 as the DPPS' and Flextronics' first notice of the alleged conspiracy); *see also* AASI Complaint ¶¶ 12 (citing the public statements of "law enforcement and competition authorities" in the spring of 2014 as AASI's first notice of the alleged conspiracy), 13 (citing Panasonic's ACPERA application); Benchmark Complaint ¶¶ 12 (citing the public statements of "law enforcement and competition authorities" in the spring of 2014 as Benchmark's first notice of the alleged conspiracy), 13 (citing Panasonic's ACPERA application).

[14] ████████████████████████████████████████████████████████████ For ease of reference, AVX has grouped this category of documents into Skolky Decl., Ex. 7.

[15] ████████████████████████████████████████████████████ *See* Skolky Decl., Ex. 8.   AVX does not produce aluminum capacitors, and therefore did not seek a response from NCC/UCC, which manufactures only aluminum capacitors.

[16] *See United States v. ELNA Co. Ltd.*, No. 4:16-cr-00365-JD,  Dkt. No. 40 (N.D. Cal. Oct. 12, 2017) (ELNA plea agreement); *Unites States v. Holy Stone Holdings Co., Ltd.*, No. 4:16-cr-00366-JD, Dkt. No. 34 (N.D. Cal. Oct. 12, 2017) (Holy Stone plea agreement); *United States v. Matsuo Electric Co. Ltd.*, No. 4:17-cr-00073-JD, Dkt. No. 35 (N.D. Cal. Oct. 26, 2017) (Matsuo plea agreement); *United States v. Nichicon Corp.*, No. 4:17-cr-00368-JD-1, Dkt. No. 19 (N.D. Cal. Nov. 9, 2017) (Nichicon plea agreement); *United States v. Rubycon Corp.*, No. 4:16-cr-00367-JD, Dkt. No. 5-2 (N.D. Cal. Sept. 7, 2017) (minute entry of hearing wherein Rubycon pleaded guilty); *United States v. NEC TOKIN Corporation*, No. 3:15-cr-00426-JD, Dkt. No. 9-1 (N.D. Cal. Jan. 1, 2016) (NEC TOKIN plea agreement); *United States v. Nippon Chemi-Con Corporation*, No. 4:17-cr-00540-JD, Dkt. No. 54 (N.D. Cal. May 11, 2018) (Nippon Chemi-Con plea agreement); *United States v. Hitachi Chemical Co., Ltd*., No. 4:16-cr-00180-JD, Dkt. 22 (N.D. Cal. Jun. 10, 2016).  For each of reference, AVX has grouped this category of documents into Skolky Decl., Ex. 9.

[17] *See* ████████████████████████████████████████████████ Skolky Decl., Ex. 10.

Multiple governments (including the United States) have investigated the alleged cartel, and no government has so much as glanced sideways at AVX—because there is no evidence that AVX had anything to do with the alleged cartel.

### 3.  AVX has behaved as an independent business would.

Thirteen years' worth of business records produced in this case show that AVX has behaved consistently as a company doing business the way one would expect it to—competing to win business and grow the market.  Far from sitting back to wait for its share of cartel rents split among commodity manufacturers as the complaints allege,[18] AVX has been a uniquely aggressive inventor of new capacitor technologies for advanced applications.  For example:

- AVX has consistently invented new technologies and improved upon existing technologies in order to serve advanced applications.  During the alleged cartel period,

  ████████████████████████████████████████████████

  ████████████████████ ██████████████████████████

  ███████████████████████████████████ ██ ██████████

  ████████████████████████████████████████████

  ████████████████████████████████

- AVX has also been an independent driver of technological responses to existing customers' concerns.  For example, ██████████████████████████

  ████████████████████████████████████████████████

  ███████████████████████████████████████████████ █

  ████████████████████████████████████████████████

---

[18] *See* DPP and Flex Third Amended Complaint, Dkt. No. 1831 in Case No. 3:14-cv-03264, ¶¶ 339, 342, 349-50.

[19] *See* ██████████ at 88 (████████████████████████████), attached as Skolky Decl., Ex. 11.

[20] *Id*. at 80.

[21] *Id*. at 76.

[22] *See id.* at 5, 31; ████████████████████████████), Skolky Decl., Ex. 12, at 187:3-14. *See also* ████████████████████████████, Skolky Decl., Ex. 13.

- At the same time, AVX has consistently behaved as an independent competitor would in competing for sales of existing products. ████████████████████████████

The record in this case, of which these are only a few examples, shows AVX consistently behaving as a rational, independent competitor. Furthermore, AVX's distinctive focus on inventing unique products for space, medical, and other highly specialized applications is inconsistent with the alleged Asian conspiracy, which Plaintiffs allege is a homogenous commodity market where the only difference between one capacitor and another is price.

### 4. The "bilateral communications" that Plaintiffs offer as circumstantial evidence do not relate to the alleged Asian cartel and did not result in price increases.

None of the various "bilateral communications" that Plaintiffs will likely rely on as circumstantial evidence or "plus factors" show any involvement by AVX in the alleged Asian cartel, and they certainly do not show any agreement by AVX to join the cartel. And it is unrebutted that none of these "bilateral meetings" had any effect on AVX's pricing.

To avoid summary judgment, Plaintiffs need to do more than dig up some piece of evidence that might, viewed in isolation, suggest that one or more AVX employees interacted with one or more employees of the Asian conspirators.[25] Rather, they must show specific

---

[23] Skolky Decl., Ex. 12, at 118:4-20.

[24] See ████████████████████ Skolky Decl, Ex. 14, at 2.

[25] See In re Cathode Ray Tube (CRT) Antitrust Litig., No. MDL No. 1917, 2017 U.S. Dist. LEXIS 217359, at *66 (N.D. Cal. Feb. 7, 2017) (noting "one potentially anticompetitive act must be weighed against the evidence that many members of the cartel denied [defendant's] participation in the conspiracy, and the fact that Plaintiffs do not even claim that [defendant's] representatives attended glass or bilateral meetings.").

evidence that, when "considered as a whole"[26] with the other record evidence—including from the admitted conspirators themselves (both in contemporaneous business documents and in discovery responses)—shows that AVX, as a company, made a <u>conscious</u> decision to join the Asian cartel.[27]

### i. Plaintiffs' "bilateral communications" documents do not show that AVX agreed to join the Asian cartel alleged in this case.

Having had access to both 13 years' worth of AVX's and other Defendants' business documents, Plaintiffs appear to have located every crude, intemperate, inadvisable, cringeworthy, or just plain stupid thing that any AVX employee has said or done through the years. And, as the footnotes of their experts' reports foreshadow, Plaintiffs will no doubt cite these documents by the pound in their opposition and characterize them as cumulative evidence that there must be a pony under there somewhere. But the Court will recognize that quantity does not substitute for quality of probative evidence,[28] and the Court should not allow plaintiffs to avoid summary judgment simply by depositing a pile of these documents at its doorstep.

For any document that Plaintiffs offer—even if it otherwise shows an AVX employee doing or saying something inadvisable—the relevant question must be asked: *is this probative evidence*[29] *that AVX entered into a conscious agreement to join the Asian cartel to which ELNA,*

---

[26] *Citric Acid II*, 191 F.3d at 1097 ("the crucial question is whether all the evidence considered as a whole can reasonably support the inference that [defendant] conspired with the admitted conspirators to fix prices.").

[27] *See Citric Acid I*, 996 F. Supp. 51 at 954 ("[T]he plaintiff must come forward with other evidence that is sufficiently unambiguous and tends to exclude the possibility that that the defendant acted lawfully") (quoting *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 906 F.2d 432, 440 (9th Cir. 1990)); *Sun Microsystems Inc. v. Hynix Semiconductor Inc. (Sun III)*, 608 F. Supp. 2d 1166, 1193 (N.D. Cal. 2009) (where "the evidence tends to support an inference of non-conspiratorial conduct, plaintiff must now, in order to defeat summary judgment, come forward with evidence that shows that [defendant] was not engaging in permissible competitive behavior").

[28] *See Citric Acid I*, 996 F. Supp. 51 at 956 ("Apparently hoping that quantity will substitute for quality, plaintiffs have submitted voluminous but weak circumstantial evidence that they argue indicates that [the defendant] was a member of the conspiracy.").

[29] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("To survive a motion for summary judgment . . . a plaintiff . . . must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently.") (quoting *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984)); *Sun Microsystems Inc. v. Hynix Semiconductor Inc. (Sun III)*, 608 F. Supp. 2d 1166, 1193 (N.D. Cal. 2009) (stating where "the evidence tends to support an inference of non-conspiratorial conduct, plaintiffs must now, in order to defeat summary judgment, come forward with evidence that shows that [defendant] was *not* engaging in permissible

*Hitachi, Holy Stone, Matsuo, NCC, NEC Tokin, Nichicon, and Rubycon have pleaded guilty, and*

*for which Panasonic/Sanyo has sought ACPERA leniency?*

Documents that show AVX employees saying or doing something stupid other than

consciously joining the Asian cartel are not evidence that AVX consciously joined the Asian

cartel.  This is particularly true in cases where the employee involved was not a senior executive

with the ability to set prices, and where there is no evidence that the information exchange

affected prices.[30]  The following documents are likely exemplars that Plaintiffs will present,[31]

starting with the document that Plaintiffs added to their amended complaint to defeat AVX's

second motion to dismiss.[32]

a. ████████████████████████
████████████████████

████████████████████████

██ ██████████████████████████

████████████████████████ █ ████

██████████████████████████████

████████████████████████

_____

competitive behavior.").

[30] *In re Baby Food Antitrust Litg.*, 166 F.3d 112, 125-26 and n.8 (3d Cir. 1998) (holding that the sporadic exchange of pricing information by lower level employees is not sufficient to defeat summary judgment, and that evidence of information exchanges cannot defeat summary judgment without evidence that those exchanges had an effect on pricing).

[31] This section describes the documents that Plaintiffs are most likely to offer to the Court for purposes of this Motion. AVX will object to the admissibility of many of these documents if Plaintiffs attempt to rely on them in opposition to this Motion or at trial, and AVX does not concede admissibility or waive its objections.  These descriptions are provided to preview what is likely to come and to assist the Court in making its ultimate admissibility determinations.

[32] Order on Motions to Dismiss Amended Complaints, Dkt. 1003 in Case No. 3:14-cv-03264, at 14:4-19.

[33] *See* Direct Purchaser Plaintiffs' and Flextronics' Second Amended Consolidated Class Action Complaint, Dkt. No. 799 in Case No. 3:14-cv-03264, ¶ 220.f; DPP and Flex Third Amended Complaint, Dkt. No. 1831 in Case No. 3:14-cv-03264, ¶ 220.f; Benchmark Electronics Complaint, Dkt. No. 1 in Case No. 3:17-cv-07047, ¶ 228; AASI Beneficiaries Trust Complaint, Dkt. No. 1 in Case No. 3:17-cv-03472, ¶ 219.

[34] *See* ████████████████████████████████████████, Skolky Decl., Ex. 15; Skolky Decl., Ex. 2, ¶ 41.



1 ████████ ████████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████████████████

3 ██████████████████████████████████ ████████████████████████████████

4 ███████████████████████████████████████████████████████████████████

5 ███████████████████████████████████████████████████████

6    This statement, translated from Japanese ████████████████████████████

7 ██████████████████ and quoted repeatedly by Plaintiffs, ████████████████████

8 ██████████████████████████████████████ AVX and KEMET

9 are U.S. manufacturers whose pricing the cartel members bemoaned could not be controlled by

10 the cartel.  And even if this case had alleged a U.S.-only cartel among AVX and KEMET, the

11 statement that ████████████████████████████████████ however it is

12 interpreted, does not exclude the conclusion that market forces, rather than a conscious

13 agreement to fix prices, resulted in any price increase had one actually occurred.

14    But arguing over how to interpret these words is unnecessary, because the parties

15 produced their actual sales data in this case—so we can look to see if AVX and KEMET had, in

16 fact, ██████████████████████████████████████.  And they did not.

17    As described in the analysis of AVX's expert economist Dr. Timothy Snail,[38] ██

18

19 _____

20 [35] *See* Skolky Decl., Ex. 15 ███████████████████████████████████████████████

21 ████████████████████████████████████████); Skolky Decl., Ex. 12, at 14:16 – 15:10 (███████████████████████████████████████)

22 [36] *See* ███████████████████████████████████████████████████████████

23 ███████████████████████████████████████████████████████████████████

24 ███████████████████████████████████████████████████████████████████

25 ███████████████████████████████████████████████████████████████████

26 ████████████  For ease of reference, AVX has grouped this category of documents into Skolky Decl., Ex. 16.

27 [37] Skolky Decl., Ex. 15.

28 [38] Dr. Snail is a Vice President at Charles River Associates in Boston, MA.



1    ████████████████████████████████████ No

2    convoluted econometrics are required to test such a simple statement—███████████

3    █████████████ Importantly for the Court's consideration here at summary judgment,

4    ████████████████████████████████████████

5    ███████████████████████ ███████████████████

6    ████████████████████████████████████████

7    ████████████████████████████████████

8    ████████████████████████████████████████████

9    ███████████████████████████ This document is not evidence that

10   Plaintiffs can use to rebut the affirmative evidence that AVX was not part of the conspiracy.

11        **b.**    ████████████████████████

12        Plaintiffs will likely highlight that, in the course of discovery in this case, AVX became

13   aware that ████████████████████████████████████

14   ████████████████████████████████████

15   ██████████████████████ ██████████████████

16   ████████████████████████████████████████████

17   ████████████████████████████████

18   ████████████████████████████████████

19

20   ─────────────────────

     [39] *See* Expert Report of Timothy S. Snail, Ph.D, on Behalf of AVX, dated Feb. 22, 2019 ("Snail Report") ¶ 88, ███

21   ██████████████████████████████████████████████████████████████).   The relevant portions of Dr. Snail's report and his accompanying declaration

22   can be found at Ex. 17 to the Skolky Decl.

     [40] *See* Skolky Decl., Ex. 3, at 205:13-17 (████████████████████████████████████

23   ████████████████████████████████████████████████████); Skolky

24   Decl., Ex. 4, at 259:10-21 (████████████████████████████████████

     ████████████████████████████████████)

25   [41] *See, e.g., Columbia Pictures Indus. v. Fung,* CV 06-5578 SV (JCx), 2009 U.S. Dist. LEXIS 122661, at *5 n.2 (C.D.

26   Cal. Dec. 21, 2009) ("[T]he experts' declarations set forth admissible facts. Where unrebutted, these facts allow
     summary judgment in favor of the party proffering the expert testimony on that particular issue."); *see also Barnes v.*

27   *Hersey Co.,* No. 3:12-cv-01334, 2016 U.S. Dist. LEXIS 5485, at *28 (N.D. Cal. Jan. 15, 2016) (finding defendant
     expert's opinion to be unrebutted when plaintiff's expert "omit[ed] any response" to the relevant fact).

28   [42] *See* ████████████, Skolky Decl., Ex. 18, at 1.

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████ It

3 would be remarkably unjust if AVX's doing the right thing—above board, in the full light of

4 day—could be used as evidence that AVX consciously agreed to join the Asian conspiracy.

5 ████████████████████████ █ ██████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 █████████████████████████ █ ██████████████████████████

9 █████████████████████████████████ █ ████████████████

10 ██████████████████████████████████████████████

11 ████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████

13 █████████████████████████████████████████████ █

14      Nothing in this exchange is evidence that AVX consciously agreed to join the Asian

15 cartel at issue in this case.  None of the cartel members whom have pleaded guilty in this case,

16 nor the ACPERA applicant, has ever suggested that the cartel was perpetuated by meetings

17 between AVX and KEMET salespeople in Europe.  And with regard to AVX and KEMET alone,

18 the mere exchange of information between competitors does not create an inference of an

19 agreement to fix prices.[47]

20 _____

21 [43] ████████████████████████████████████████████████

22 ████████████████████████████████████████████████████

23 ██████████████████████ *See* Deposition of ████████████ Skolky Decl., Ex. 19, at

   4.

24 [44] ████████████████████████████████████████████████

25 *See id.*, at 1-2. ████████████████████████████████████

26 ████████████████ *Id.*

27 [45] *See* Deposition of ████████████████, Skolky Decl., Ex. 20 ████████████████

28 [46] *Id.*

[47] *See Citric Acid II*, 191 F.3d at 1103 ("Although the possession of competitor price lists is consistent with conspiracy,

1    To infer agreement, there must be evidence that the exchange impacted the companies'

2    pricing decisions.[48]  And the unrebutted evidence in this case is that these communications had

3    no effect on AVX's or KEMET's prices.  Dr. Snail ████████████████████████████████████

4    ████████████████████████████████████ █ ████████████████████████████████████████

5    ████████████████████████████—it is an undisputed fact.

6        **c.**  ████████████████████████████

7    Similar to the ████████████, Plaintiffs will likely point to ██████████████████████

8    ████████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████ █ ████

10   ████████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████████ █

16      ████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████ █ ████

18   ████████████████████████████████████████████████████████████████

19

20   _____

21   it does not, at least in itself, tend to exclude legitimate competitive behavior."); *Baby Food*, 166 F.3d at 125-26
     ("Evidence of sporadic exchanges of shop talk among field representatives who lack pricing authority is insufficient
22   to survive summary judgment.").

23   [48] *See Baby Food*, 166 F.3d at 125-26 ("Furthermore, to survive summary judgment, there must be evidence that
     exchanges of information had an impact on pricing decisions.").

24   [49] Skolky Decl., Ex. 17, Ex. C18 (████████████████████████████████████████████████████████
     ████████████████████████████████████████████████████████████████████████████)

25   [50] ████████████████████████████████████████, Skolky Decl., Ex. 21.

26   [51] *Id.* at 1 (████████████████████████████████████████████████████████████
     ████████████████████████████████████)

27   [52] *Id.* at 2 (████████████████████████████████████████████████████████████
     ████████████████████████).

28

-13-
AVX'S MOTION FOR SUMMARY JUDGMENT – CASE NO. 3:17-MD-02801-JD

1 ███████████████████████████████████████████████████████████ ■

2     Mr. ████ himself testified that he ████████████████████ ████████████

3 ███████████ ■ ██████████████████████████████████

4 ████████████████████ ████████████████████ ■ ████████

5 █████████████████████████████ ■ ████████████████

6 ██████████████████████████████████

7 ███████████████████ ■

8     Most important for this motion, ████████████████████████

9 ██████████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████████

11 ████████████ ■ ███████████████████████████████

12 ████████████████████████████ AVX's economist Dr. Snail

13 confirmed in the actual sales data that ████████████████████████

14 ██████████████ ■ And as before, Plaintiffs' experts did not offer any rebuttal

15 to Dr. Snail's conclusion or otherwise identify any price increase resulting from this

16 communication—because there was none.

17         **ii.    AVX's economist Dr. Snail did a** ████████████████

18 ████████████ ██████████████████████████

19     In addition to the three examples discussed above, AVX's expert economist Dr. Snail

20 _____

21 [53] *Id.*

22 [54] Deposition of ████████, Skolky Decl., Ex. 22, at 151:6-7.

23 [55] *Id.* at 150:15-24.

24 [56] *Id.* at 226:1-22.

25 [57] *Id.* at 150:18-24.

[58] *Id.* at 72:4-14.

26 [59] *Id.* at 162:11-13.

[60] *See* Skolky Decl., Ex. 5, at 3 (████████████████████

27 ████████████████).

[61] Skolky Decl., Ex. 17, Ex. C4.

28



1   performed a ████████████████████████████████████████████

2   ████████████████████████████████████████████████████████

3   ██ ████████████████████████████████████████████████████

4   ████████████████████████ ██ ██████████████████████████

5   ████████████████████████████████████████████

6        AVX is entitled to summary judgment absent evidence that the information exchanges

7   cited by Plaintiffs had an effect on prices paid by DPPs or the DAPs.[64]  And Plaintiffs have none.

8   As discussed above, neither DPPs' economist Dr. Hal Singer nor Flextronics/AASI/Benchmark's

9   economist Dr. Leslie Marx disputed the results of Dr. Snail's ████████████████████

10  ████████████████████████████████████████████████████████

11  ██████████████████████████████████████████ ██ ████████

12  ████████████████ ██ AVX's analyses of these documents are therefore unrebutted for

13  purposes of this Motion.

14  **II.   THIS CASE IS LIKE *CITRIC ACID* AND UNLIKE *TFT-LCD* OR *SRAM*.**

15       To avoid summary judgment, Plaintiffs must now come forward with evidence capable of

16  raising a genuine issue of material fact establishing that AVX ***actually joined*** the alleged Asian

17  cartel.  Plaintiffs can meet this burden by producing either (1) direct evidence that AVX,

18  considered individually, agreed to join and did join the conspiracy, or (2) circumstantial evidence

19  tending to exclude the possibility that AVX acted independently of the alleged conspiracy.  *See*

20  *Citric Acid II*, 191 F.3d at 1093.

21       Documents with which a plaintiff may be able to prejudice a jury, and thereby obtain a

22  verdict based on unwarranted speculation rather than on the facts, are not "evidence" sufficient

23  _____

24  [62] *Id.* at Appendix C.

25  [63] Deposition of Dr. Timothy S. Snail, Skolky Decl., Ex. 23, at 70:25 – 71:6.

26  [64] *Baby Food*, 166 F.3d at 125-26.

27  [65] *See* Skolky Decl., Ex. 4, at 259:10-21 (████████████████████████████████████
    ████████████████████████████).

28  [66] *See* Skolky Decl., Ex. 3, at 205:13-17 (████████████████████████████████████

1   to defeat summary judgment.  *See Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th

2   Cir. 1997) ("A mere scintilla of evidence will not be sufficient to defeat a properly supported

3   motion for summary judgment; rather, the non-moving party must introduce some significant

4   probative evidence tending to support the complaint") (citation omitted);  *Anheuser-Busch, Inc.*

5   *v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995) ("[C]onclusory or speculative

6   testimony is insufficient to raise a genuine issue of fact to defeat summary judgment.").

7       **1.**    **The four facts in Section I above mirror *Citric Acid*.**

8       AVX has established with Fact 1 and Fact 2 in Section I above that (1) Plaintiffs do not

9   even allege that AVX attended the cartel meetings, their experts confirm that AVX did not attend

10   the cartel meetings, contemporaneous documents state affirmatively that AVX was not part of

11   the cartel, and there is no direct documentary or testimonial evidence that AVX otherwise joined

12   the cartel; and (2) the defendants whom have already pleaded guilty to participating in the cartel,

13   as well as the ACPERA applicant Panasonic/Sanyo, ████████████████████████████████

14   ████████████████████████████████████████████████████████████████████████

15   This lack of any direct evidence implicating AVX in the Asian conspiracy—along with the direct

16   evidence from contemporaneous cartel minutes and cartel members' statements, pleas, and

17   discovery responses—are on all fours with *Citric Acid*.

18       In *Citric Acid I*, four major producers of citric acid "admittedly conspired to

19   divide the market among them and to raise the price of citric acid by limiting sales." *In re Citric*

20   *Acid Litig.*, 996 F. Supp. 951, 953 (N.D. Cal. 1998).  The admitted conspirators pleaded guilty to

21   criminal charges and settled their civil actions. *Id.*  However, the fifth defendant, Cargill, was not

22   indicted and, in the civil case, sought summary judgment. *Id.* at 953-54.

23       The court started its analysis of Cargill's motion by highlighting the testimony of one of

24   the admitted members of the conspiracy, who "stated that no one from Cargill attended any of

25   the meetings at which the conspirators allocated market share, and that he never received sales

26   figures from Cargill." *Id.* at 955.  The court then found that

27         [i]t is also significant that there is no direct evidence that Cargill was involved in the

28         conspiracy. Under normal circumstances no inference can be drawn from the lack of

direct evidence . . . This case is different. There was abundant direct evidence of a conspiracy among four companies . . . In fact, all four companies pled guilty to criminal charges and have been sentenced.  None now have any reason to shield Cargill.  The utter lack of any direct evidence that Cargill was involved in that conspiracy is therefore quite probative.

*Id.* at 956.  The court ultimately granted summary judgment, which the Ninth Circuit, in *Citric Acid II*, upheld on appeal. 191 F.3d 1090.

On appeal, the Ninth Circuit also noted "that all four major critic acid manufacturers admitted to conspiring to fix prices but none identified Cargill as a co-conspirator."  *Id.*  With that fact, the "scintilla of evidence" provided by the plaintiffs to connect Cargill to the conspiracy was insufficient to "exclude the possibility that Cargill acted independently."  *Id.* at 1106; *see also CRT*, No. C-07-5944 JST, 2017 U.S. Dist. LEXIS 217359, at *66 (granting summary judgment and noting "one potentially anticompetitive act must be weighed against the evidence that many members of the cartel denied Hitachi's participation in the conspiracy, and the fact that Plaintiffs do not even claim that HDP representatives attended glass or bilateral meetings with HDP's competitors"); *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 684 (9th Cir. 1985) (affirming summary judgment where "the dairies have admitted their participation in a conspiracy, while simultaneously exonerating [the moving defendant] with nothing to gain for their exculpatory statements").

2.     **AVX's direct evidence analysis does not suffer from the problems identified in** *TFT-LCD*.

This case is unlike *TFT-LCD*, in which various defendants argued that there was a lack of direct evidence but the court nonetheless denied summary judgment.  There, unlike here, there was direct evidence that the moving defendants had actually conspired with the known cartel members.  Defendant Toshiba, for example, was denied summary judgment because no admitted conspirator unequivocally stated that Toshiba was not part of the conspiracy, and to the contrary, the amnesty applicant's employees testified that they did in fact agree to fix prices with Toshiba. *See* Order Denying Toshiba Entities' Motion For Summary Judgment, No. 3:07-md-01827-SI (N.D. Cal. Nov. 11, 2011), Dkt. No. 4107, at 2.  This same analysis was applied to deny Sanyo's

1  motion for summary judgment in that case, as no conspirator had unequivocally denied Sanyo's

2  participation in the conspiracy, there was ample evidence that Sanyo had been exchanging

3  pricing information with the alleged cartel members, and there was evidence that LCD prices had

4  in fact been impacted by Sanyo's conduct. *In re TFT-LCD Flat Panel Antitrust Litig.*, MDL No.

5  1827, 2012 U.S. Dist. LEXIS 145936, at *48-49 (N.D. Cal. Oct. 9, 2012).

6       Here, to the contrary, ***every*** pleading cartel member has ████████████

7  ██████████████████████████████████████████████████████████

8  ██████████   And as established in Fact 4 in Section I above, the "bilateral communication"

9  documents that Plaintiffs rely on do not implicate AVX in the Asian cartel that this case is about.

10  Dr. Snail has furthermore shown that those bilateral communications in fact did not affect

11  prices—and Plaintiffs' experts did not rebut that analysis.  This case is like *Citric Acid*, not like

12  *TFT-LCD*.

13      **3.**     **AVX has shifted the burden to Plaintiffs to show that the only explanation for AVX's behavior across the alleged cartel period was its active, knowing**

14            **involvement in the alleged Asian cartel.**

15       When, as here, a plaintiff will rely solely on circumstantial evidence to tie a defendant to

16  a conspiracy, the Ninth Circuit has adopted a two-part test for summary judgment:

17      First, the defendant can "rebut an allegation of conspiracy by showing a plausible and justifiable reason for its conduct that is consist with proper business practice." The

18      burden then shifts back to plaintiff to provide specific evidence tending to show that the defendant was not engaging in permissible competitive behavior.

19

20  *Citric Acid II*, 191 F.3d at 1094 (citations omitted).

21       As established in Fact 3 above, AVX's business records produced in this case depict a

22  company racing to develop the most advanced capacitor products in the world, and succeeding in

23  doing so.  AVX's capacitors can be found circling the Earth in satellites, inside the body in

24  pacemakers and defibrillators, deep under the Earth's crust in drilling equipment, and roving the

25  surface of Mars.  At the same time as it was inventing new ways to build capacitors, it was

26  competing as a rational business would to attract and maintain business involving more mundane

27  products.  Not only are AVX's actions during the alleged cartel period *consistent* with

28

independent competitive behavior, they are *inconsistent* with the commoditized marginal rent-seeker behavior that Plaintiffs allege.  This evidence fully rebuts the Plaintiffs' allegation of conspiracy as to AVX.  *See Citric Acid II*, 191 F.3d at 1094.

In response, the "bilateral communications" to which their experts cite and discussed in Fact 4 above are insufficient to place AVX in the alleged Asian cartel.  But as explained in Fact 4 above, none of these documents shows AVX acting in a way that could only be explained by AVX's conscious decision to join the Asian cartel.  And none of the alleged "bilateral communications" had any effect on prices.

### 4. The circumstantial evidence concerning AVX is not like that in *SRAM*.

In *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819-CW, 2010 U.S. Dist. LEXIS 132172 (N.D. Cal. Dec. 10, 2010), the plaintiffs alleged that certain manufacturers engaged in a price-fixing conspiracy related to SRAM.  *Id.* at *31.  Regular cartel meetings were held between some defendant manufacturers, called "White Board" meetings, where information about SRAM production volume, pricing, and major customers was exchanged.  *Id.* at *32-33.  Cypress, one of the defendant manufacturers, moved for summary judgment on the basis that it did not attend these meetings.  *Id.* at *33.  The court denied summary judgment because Cypress had more or less participated in the cartel through the back door:

> Cypress, principally through Scotch, communicated extensively with Samsung, the conspiracy's apparent leader.  Cypress and Samsung agreed to exchange forecast information, including details about SRAM revenue and volume.  They exchanged pricing information as well.  In addition, Cypress exchanged such information with other competitors. . . . Cypress has not shown that the information it exchanged with competitors was materially different from the information exchanged at the White Board meetings.

*Id.* at *51-52.

Here, unlike in *SRAM*, there can be no serious allegation that AVX was participating in the cartel through the back door.  It is unremarkable that AVX employees interacted from time to time with employees from other capacitor manufacturers from around the world.  But a

document showing someone from AVX interacting with an Asian cartel member is not an automatic "gotcha" for Plaintiffs; the question is whether "all the evidence considered as a whole" supports the weighty inference that the communication was in furtherance of the conspiracy alleged in this case. *Citric Acid II*, 191 F.3d at 1097; *CRT*, 2017 U.S. Dist. LEXIS 217359 at *66 (weighing "one potentially anticompetitive act" against the evidence "as a whole," including the fact that many admitted cartel members denied the defendant's participation in the conspiracy).

Plaintiffs will no doubt submit documents to show that one or more AVX employees interacted in some way with one or more Asian cartel members. Some of those occasions may even have involved the exchange of market information, gathering competitive intelligence, or gossip about what others were doing. But none of them concerns AVX joining the Asian cartel.

For example, Plaintiffs' expert Dr. Marx[67] offers ██████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████

---

[67] Skolky Decl., Ex. 1, at ¶¶89-90, n. 193; ███████████████, Skolky Decl., Ex. 24 (██████████████████.
[68] Skolky Decl., Ex. 24.
[69] *Id*. at 6 (███████████████████████████████████████████████████
██████████████████████████████████████████. Note that Mr. ███ is a native Mandarin speaker, hence the unusual syntax.
[70] *Id*. at 5 (████████████████).
[71] *Id*.
[72] *Id*. at 6 (████████████████████████████████████████████████████

1    This E-mail reflects normal-course intelligence gathering, and is not evidence that AVX

2    agreed to join the alleged Asian cartel.  As explained in *Citric Acid I*, "attempting to glean from

3    customers [here, Asustek] market information about competitors is proper competitive

4    behavior."  *Citric Acid I*, 996 F. Supp. at 960.  And discussing pricing of a past bid—or in this

5    case, NEC's unwillingness in the now-closed negotiation to lower prices due to its commitments

6    elsewhere—is not evidence that the AVX colluded with anyone, much less the alleged Asian

7    cartel, to set the price of that past bid to Asustek.  *See id*. at 959.

8    Talking with an Asian cartel member about something other than participating in the

9    Asian cartel is not evidence that AVX consciously joined the Asian cartel.  Communications

10   between competitors—even if one of the competitors is later revealed to be a member of a

11   cartel—"do not permit an inference of an agreement to fix prices unless 'those communications

12   rise to the level of an agreement, tacit or otherwise.'"  *Baby Food*, 166 F.3d at 126 (citation

13   omitted); *see also Citric Acid II*, 191 F.3d at 1105 (evidence of some price exchanges "is neither

14   sufficient to survive summary judgment under *Baby Food* nor probative of the industry-wide

15   conspiracy alleged . . .").

16   **III.     CONCLUSION.**

17   The direct evidence shows that AVX was not a cartel member, and that its actions have

18   been consistent with normal, rational business conduct.  The circumstantial evidence that

19   Plaintiffs will rely upon does not show AVX behaving in a way that can only be explained by its

20   participation in the Asian cartel.  AVX is entitled to summary judgment.

21   Additionally and independently, Plaintiff AASI, by its own admission bought no products

22   from AVX and is requesting no damages from AVX.[73]  AVX is entitled to summary judgment as

23   to AASI for this separate and independent reason.

---

[73] *See* Skolky Decl., Ex. 1, at 67-68.

1    Dated:  June 14, 2019                    MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
                                              AND POPEO, P.C.
2

3                                             By: */s/ Evan S. Nadel*
                                              Evan S. Nadel
4                                             44 Montgomery Street, 36th Floor
                                              San Francisco, CA 94104
5                                             Telephone: (415) 432-6000
                                              Facsimile: (415) 432-6001
6                                             enadel@mintz.com

7                                             Bruce D. Sokler *(admitted pro hac vice)*
                                              Robert G. Kidwell *(admitted pro hac vice)*
8                                             701 Pennsylvania Avenue NW, Suite 900
                                              Washington, DC 2004
9                                             Telephone: (202) 434-7300
                                              Facsimile: (202) 434-7400
10                                            Bdsokler@mintz.com
11
                                              *Attorneys for Defendant AVX Corporation*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

88258666v.9     AVX'S MOTION FOR SUMMARY JUDGMENT – CASE NO. 3:17-MD-02801-JD