ADAM J. ZAPALA (State Bar No. 245748)
ELIZABETH T. CASTILLO (State Bar No. 280502)
MARK F. RAM (State Bar No. 294050)
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
mram@cpmlegal.com

*Interim Lead Counsel for Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CAPACITORS ANTITRUST LITIGATION**<br><br>This Document Relates to:<br><br>**All Indirect Purchaser Actions** | **MDL No. 17-md-02801**<br>**Case No. 3:14-cv-03264-JD**<br><br>**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH PANASONIC, NICHICON, ELNA, AND MATSUO DEFENDANTS AND FOR APPROVAL OF THE PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:** July 25, 2019<br>**Time:** 10:00 a.m.<br>**Place:** Courtroom 11, 19th Floor |

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of Plan of Allocation; Case No. 14-cv-03264-JD

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on July 25, 2019, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable James Donato, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Indirect Purchaser Plaintiffs ("IPPs") will and hereby do move for entry of an order granting preliminary approval of proposed settlements with: (1) Defendants Panasonic Corporation, Panasonic Corporation of North America, SANYO Electric Co., Ltd., and SANYO North America Corporation (collectively, "Panasonic")[1]; (2) Defendants Nichicon Corporation and Nichicon (America) Corporation (together, "Nichicon"); (3) Defendants ELNA Co., Ltd. and ELNA America, Inc. (together, "Elna"); and (4) Defendant Matsuo Electric Co., Ltd ("Matsuo"). (Panasonic, Nichicon, Elna, and Matsuo, are referred to collectively as the "Settling Defendants".) This motion is brought pursuant to Federal Rule of Civil Procedure ("Rule") 23.  The grounds for this motion are that the settlements with the Settling Defendants fall within the range of possible final approval, contain no obvious deficiencies, and were the result of serious, informed and non-collusive negotiations.

IPPs also seek approval of their plan of allocation.   IPPs' proposed plan of allocation is fair, reasonable, and adequate.  IPPs propose that allocation of the settlement funds be on a *pro rata* basis based on the type and extent of injury suffered by each class member based on damage claims from the Indirect Purchaser States.  The proposed plan of allocation is the same plan of allocation that this Court previously approved in connection with Plaintiffs' Round 1 and Round 2 settlements.

This motion is based upon this Notice; the Memorandum of Points and Authorities in Support; the Declaration of Adam J. Zapala and the attached exhibits, which are the settlement agreements with the Settling Defendants; and any further papers filed in support of this motion as well as arguments of counsel and all records on file in this matter.

---

[1]    Each of the Panasonic Defendants are parties to this litigation and Releasees under the terms of the settlement agreement.  *See* Zapala Decl., Ex. 1, Settlement Agreement, ¶1(bb).  For business reasons, the Settlement Agreement is entered into by Panasonic Corporation only.  *See id.* at Preamble.

Dated: June 20, 2019

Respectfully Submitted,

**COTCHETT, PITRE & McCARTHY, LLP.**

By: /s/ *Adam J. Zapala*

Adam J. Zapala
Elizabeth T. Castillo
Mark F. Ram
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
mram@cpmlegal.com

*Interim Lead Class Counsel for the Indirect Purchaser Plaintiffs*

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of
Plan of Allocation; Case No. 14-cv-03264-JD                                                            2

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND.............................................2

    A.  Settlement Efforts .....................................................................................2

    B.  Settlement Class Definitions.....................................................................2

    C.  Settlement Consideration ..........................................................................3

        1.  Nichicon ........................................................................................3

        2.  Panasonic ......................................................................................3

        3.  Elna ...............................................................................................4

        4.  Matsuo..........................................................................................4

    D.  Information on the Settlements – Northern District of California Guidance..........4

        1.  Differences Between Settlement Class and Class Defined in Complaint..........4

        2.  Differences Between Claims Released and Claims in Complaint .............5

        3.  Settlement Recovery Versus Potential Trial Recovery...............................5

        4.  Incentive Awards ..........................................................................7

        5.  Reversions.....................................................................................7

        6.  Class Action Fairness Act ............................................................7

        7.  Comparable Class Settlements......................................................8

III. The court should grant preliminary approval to the settlements.............................8

    A.  Legal Standard for Preliminary Approval of Class Action Settlements ................8

    B.  The Settlements Meet the Standard for Preliminary Approval of Class Action Settlements .....................................................8

        1.  The Settlements are the Result of Serious, Informed, and Non-Collusive Negotiations...................................................9

        2.  There are No Obvious Deficiencies in the Settlement................................9

        3.  There is No Preferential Treatment.............................................10

        4.  The Proposed Settlements Fall Within the Range of Possible Approval ...........................................................10

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of Plan of Allocation; Case No. 14-cv-03264-JD

i

C.     The Proposed Settlement Classes Satisfy Rule 23 ................................................10

    1.     Fed. R. Civ. P. 23(a)(1) – Numerosity ......................................................10

    2.     Fed. R. Civ. P. 23(a)(2) – Commonality ...................................................10

    3.     Fed. R. Civ. P. 23(a)(3) – Typicality ........................................................11

    4.     Fed. R. Civ. P. 23(a)(4) – Fair and Adequate Class Representation..........11

    5.     All Requirements of Rule 23(b) are Met In This Case .............................12

    6.     This Court Should Appoint Interim Class Counsel as Settlement Class Counsel ..............................................................................................13

D.     The Proposed Plan of Allocation is Fair, Reasonable and Adequate and Should be Approved ............................................................................................13

E.     The Court Should Establish a Schedule for Final Approval of the Settlements ..............................................................................................................14

IV.     CONCLUSION..............................................................................................................15

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

1

## TABLE OF AUTHORITIES

2

**Page(s)**

**Cases**

3

*Bellinghausen v. Tractor Supply Co.*,
4
   303 F.R.D. 611 (N.D. Cal. 2014) .................................................................. 10, 13
5
*In re Catfish Antitrust Litig.*,
6
   826 F. Supp. 1019 (N.D. Miss. 1993) ................................................................ 11
7
*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2015 U.S. Dist. LEXIS 170525 (N.D. Cal. Dec. 17, 2015) ................................ 13
8
*In re Cathode Ray Tubes (CRT) Antitrust Litig.,g*,
9
   2016 WL 3648479 (N.D. Cal. July 7, 2016) ........................................................ 6
10
*In re Citric Acid Antitrust Litig.*,
11
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) ........................................................ 13, 14
12
*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   2006 WL 1530166 (N.D. Cal. June 5, 2006) ...................................................... 11
13
*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
14
   No. M-02-1486 PJH, Dkt. No. 2093 (Oct. 27, 2010) ......................................... 14
15
*G.F. v. Contra Costa County*,
16
   2015 WL 4606078 (N.D. Cal. July 30, 2015) ............................................. 1, 2, 8
17
*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................ 12
18
*In re High-Tech Emp. Antitrust Litig.*,
19
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) .............................................................. 12
20
*In re Omnivision Technologies, Inc.*,
21
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................. 13
22
*In re Resistors Antitrust Litigation*,
   No. 15-cv-03820-JD ......................................................................................... 6, 7
23
*Staton v. Boeing Co.*,
24
   327 F.3d 938 (9th Cir. 2003) ............................................................................... 7
25
*In re Tableware Antitrust Litig.*,
26
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................ 8
27
*In re TFT-LCD Antitrust Litig.*,
   267 F.R.D. 291 (N.D. Cal. 2010) .................................................................... 6, 12
28

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of
Plan of Allocation; Case No. 14-cv-03264-JD                                                        iii

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
   2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) .................................................................. 6

*In re Vitamins Antitrust Litig.*,
   No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 31, 2000) ................................. 14

**Statutes**

28 United States Code
   § 1712 ........................................................................................................... 8
   § 1713 ........................................................................................................... 8
   § 1714 ........................................................................................................... 8
   § 1715 ........................................................................................................... 7

**Rules**

Federal Rules of Civil Procedure
   Rule 23 .......................................................................................................... 10
   Rule 23(a) ......................................................................................... 10, 11, 12
   Rule 23(a)(2) ................................................................................................ 10
   Rule 23(a)(3) ................................................................................................ 11
   Rule 23(a)(4) ................................................................................................ 11
   Rule 23(b) ......................................................................................... 10, 12
   Rule 23(b)(3) ....................................................................................... 12, 13
   Rule 23(g)(1) ................................................................................................ 13
   Rule 23(g)(1)(A) ........................................................................................... 13

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

1

**STATEMENT OF THE ISSUES TO BE PRESENTED**

2       1.      Whether this Court should grant preliminary approval of IPPs' settlements with the

3 Settling Defendants; and

4       2.      Whether the Court should preliminarily approve IPPs' plan of allocation for the

5 settlements with the Settling Defendants.

6

**MEMORANDUM OF POINTS AND AUTHORITIES**

7 **I.      INTRODUCTION**

8       Indirect Purchaser Plaintiffs ("IPPs") move for an order preliminarily approving their

9 settlements with the Settling Defendants.  The settlements were reached after more than four

10 years of hard-fought litigation, significant discovery, class certification briefing, are the result of

11 arms-length negotiations, and IPPs believe the settlements are in the best interests of the proposed

12 classes.  *See* Declaration of Adam J. Zapala ("Zapala Decl.") ¶ 3.

13       The cumulative settlement fund established by these four settlements is $30,950,000.00

14 ($30.95 million).  IPPs' settlements in this action – those from prior rounds plus this round – total

15 $80,850,000.  *See* IPPs' Statement Regarding Status of Settlements, Dkt. 2261, MDL Dkt. 444.

16 This current round of settlements represents an excellent recovery for the classes in light of the

17 facts of the case and IPPs' expected damages, as more fully described below.  The settlement with

18 the Nichicon defendants provides a cash payment of $21,500,000.00; Panasonic provides a cash

19 payment to IPPs totaling $4,700,000.00; the settlement with Elna provides for payments totaling

20 $2,250,000.00; and the Matsuo settlement is for $2,500,000.00.

21       In exchange for the settlement consideration they will provide, Settling Defendants will

22 receive releases related to antitrust and consumer protection claims against them regarding an

23 alleged conspiracy to fix, raise, maintain and/or stabilize the price of electrolytic and/or film

24 capacitors purchased by class members from a distributor.  The releases are of precisely the same

25 scope as those releases this Court has already preliminarily (*e.g.*, ECF Nos. 1456 and 2009) and

26 finally (ECF No. 1934) approved as to other IPP settlements in this action.

27       At the preliminary approval stage, the Court is not asked to make a final determination as

28 to whether or not to approve a settlement.  *G.F. v. Contra Costa County*, 2015 WL 4606078, at

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of
Plan of Allocation; Case No. 14-cv-03264-JD                                                    1

*8–9 (N.D. Cal. July 30, 2015).  Instead, the Court is tasked with determining if a settlement falls within the range of possible approval and appears to be the product of serious, informed, and non-collusive negotiations.  *Id.*  These settlements easily meet the standard for preliminary approval and for that reason should be approved.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises from alleged conspiracies by the Defendants to fix, raise, maintain and/or stabilize the price of capacitors sold in the United States.  Zapala Decl. ¶ 4.  This case has been heavily litigated, with multiple rounds of motions to dismiss and motions for summary judgment regarding the FTAIA, and class certification fully briefed and currently under submission with the Court.  *Id.*  IPPs have faced significant discovery challenges, not only with respect to obtaining documents and information from Defendants but also in regards to obtaining documents and information from non-party capacitor distributors in order to prosecute the case.  *Id.*  IPPs successfully navigated many factual and legal challenges in prosecuting this case, but there is much work to be completed.

### A.    Settlement Efforts

IPPs engaged in extensive settlement negotiations with each of the Settling Defendants. Zapala Decl. ¶¶ 5-9. The parties held in-person and telephonic meetings, as well as exchanged information and settlement proposals.  *Id.*  The proposed settlements were reached only after both sides had the opportunity to be fully informed of the relative strengths and weaknesses of their positions, litigation risks, and issues involving ability to pay.  *Id.*

### B.    Settlement Class Definitions

The class definitions for the settlements are virtually the same as other settlement classes included in settlements that have been both preliminarily and finally approved by this Court.

Electrolytic Settlement Class Definition:

> All persons and entities in the United States who, during the period from April 1, 2002 to February 28, 2014, purchased one or more Electrolytic Capacitor(s) from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants, their parent companies, subsidiaries and Affiliates, any co-conspirators, Defendants' attorneys in this case, federal government entities and

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of
Plan of Allocation; Case No. 14-cv-03264-JD                                                    2

> instrumentalities, states and their subdivisions, all judges assigned to this case, all jurors in this case, and all persons and entities who directly purchased Capacitors from Defendants.

Zapala Decl., Ex. 1, Panasonic Settlement Agreement, ¶ 1(f); Ex. 2, Nichicon Settlement Agreement, ¶ 1(f); Ex. 3, Elna Settlement Agreement, ¶ 1(f); Ex. 4, Matsuo Settlement Agreement, ¶ 1(f).

<u>Film Settlement Class Definition:</u>

> All persons and entities in the United States who, during the period from January 1, 2002 to February 28, 2014, purchased one or more Film Capacitor(s) from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants, their parent companies, subsidiaries and Affiliates, any co-conspirators, Defendants' attorneys in this case, federal government entities and instrumentalities, states and their subdivisions, all judges assigned to this case, all jurors in this case, and all persons and entities who directly purchased Capacitors from Defendants.

Zapala Decl., Ex. 1, Panasonic Settlement Agreement, ¶ 1(f).[2]

## C. Settlement Consideration

### 1. Nichicon

In addition to a monetary settlement of $21,500,000—which, by itself, is substantial—Nichicon has agreed to provide substantial cooperation to IPPs in further prosecuting this action against other Defendants. *See* Zapala Decl., Ex. 2 ¶¶ 32-34.  Similar to settlements with other Defendants, Nichicon has agreed to provide IPPs with evidence regarding the alleged conspiracy, as well as making current employees available for interviews, depositions, and testimony at trial. The settlement negotiations were presided over by the Honorable Daniel Weinstein (Ret.)—a nationally renowned mediator.

### 2. Panasonic

Panasonic has agreed to pay the total sum of $4,700,000 to the members of the classes to settle the claims against it.  *See* Panasonic Settlement Agreement ¶ 1(ee).  From this lump sum, $3,572,000 will go to the Electrolytic Class, and $1,128,000 will go to the Film Class.  *Id.* at First

---

[2] Panasonic is the only Settling Defendant alleged to have participated in the film capacitor conspiracy.

Law Offices
COTCHETT, PITRE & MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of Plan of Allocation; Case No. 14-cv-03264-JD

3

Amendment to Settlement Agreement.  This allocation in the settlement amount is based on the proportion of Panasonic's sales to distributors of electrolytic capacitors versus sales to distributors of its film capacitors. In addition to the monetary value, the Settlement considers the significant additional benefits provided to IPPs by Panasonic in fulfilling its cooperation obligations as the ACPERA applicant.  Zapala Decl. ¶ 15.  Panasonic has provided, and will continue to provide, substantial and valuable cooperation to IPPs in prosecuting this action.  *Id.*  Thus far, Panasonic's cooperation gave IPPs the details needed to support the allegations pled in their amended complaint, filed in December 2014, and guided their discovery efforts.  *Id.*  In addition to this cooperation, Panasonic has given multiple follow-up proffers and responded to information requests from IPPs.  *Id.*

### 3.    Elna

Elna will pay the Electrolytic Class $2,250,000.00.  Zapala Decl., Ex. 3 ¶1(ee).  Elna will also provide cooperation to the IPPs in prosecuting their claims against the other Electrolytic defendants.  *Id.* ¶¶ 32-36.

### 4.    Matsuo

Matsuo will pay the Electrolytic Class 2,500,000.00.  Zapala Decl., Ex. 4 ¶ 1(dd). Additionally, Matsuo will assist the IPPs in prosecuting their claims.  *Id.* ¶¶ 32-35.

## D.    Information on the Settlements – Northern District of California Guidance[3]

### 1.    Differences Between Settlement Class and Class Defined in Complaint

There are no differences between the settlement classes and the classes alleged in the complaint.  The Settling Defendants are alleged to have been involved in the electrolytic and/or film capacitor conspiracies from January 1, 2002 through such time as the anticompetitive effects of defendants' conduct ceased.  Zapala Decl. ¶ 10; *see also* IPPs' Fifth Consolidated Complaint ("Complaint") ¶¶ 2, 392, 394 (ECF No. 1466).  In connection with IPPs' motion for class certification, IPPs identified that the end date of the conspiracy and its effects on the classes was

---

[3]    To the extent information considered by the Northern District Guidelines is not included in this memorandum, it is included in the concurrently filed memorandum in support of IPPs' Motion for Approval of Class Notice Program.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

February 28, 2014.  Zapala Decl. ¶ 11; ECF No. 1681.  The settlement with each of the Settling Defendants covers the time period from April 1, 2002 to February 28, 2014 for the Electrolytic Class and the time period January 1, 2002 to February 28, 2014 for the Film Class with Panasonic—the same time periods that IPPs moved to certify in their motion for class certification.  *See* Zapala Decl. ¶ 11.

### 2.    Differences Between Claims Released and Claims in Complaint

There are no material differences between the claims released in the settlements and the claims in IPPs' Complaint.  *See* Zapala Decl., Ex. 1, Panasonic Settlement Agreement ¶ 1(aa); Ex. 2, Nichicon Settlement Agreement, ¶ 1(z); Ex. 3, Elna Settlement Agreement, ¶ 1(z); Ex. 4, Matsuo Settlement Agreement, ¶ 1(z).  The releases of claims release all antitrust and consumer protection claims that the classes could have brought against the Settling Defendants.  *Id.*  IPPs have not released any claims against the Settling Defendants for product liability, breach of contract, breach of warranty or personal injury, or any other claim unrelated to the allegations in the Actions.  Zapala Decl., Ex. 1, Panasonic Settlement Agreement ¶ 12; Ex. 2, Nichicon Settlement Agreement, ¶ 14; Ex. 3, Elna Settlement Agreement, ¶ 14; Ex. 4, Matsuo Settlement Agreement, ¶ 14.  As they were with the already-approved settlements, these releases are fair, reasonable, and adequate to the class.

### 3.    Settlement Recovery Versus Potential Trial Recovery

The table below summarizes the settlements and compares the settlement values to estimated damages based on IPPs' expert's Dr. Russell Lamb's overcharge and pass-through calculations.  Damages are calculated by multiplying the affected commerce times the overcharge times the passthrough rate.[4]

---

[4]    Dr. Lamb explained that to calculate damages, defendants' sales to distributors should be multiplied by the overcharge rate and then by the passthrough rate.  ECF No. 1682-46 (Lamb February 24, 2017 Expert Declaration) at pp. 111, 146, 172-173.  Dr. Lamb calculated an 8.36% overcharge (*id.* at 103) and 111.8% passthrough rate for aluminum electrolytic capacitors (*id.* at 111), a 7.7% overcharge (*id.* at 119) and 114.3% passthrough rate for tantalum electrolytic capacitors (*id.* at 145), and a 7.9% overcharge (*id.* at 152) and 117% passthrough rate for film capacitors (*id.* at 172).

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of
Plan of Allocation; Case No. 14-cv-03264-JD                                                                    5

| Defendant | Estimated Affected Commerce[5] | Estimated Damages | Settlement Amount | Settlement Percentage of Estimated Damages |
|---|---|---|---|---|
| Nichicon | $216,099,900.00 | $20,146,239.90 | $21,500,000.00 | 106.72% |
| Elna | $3,250,600.00 | $306,266.29 | $2,250,000.00 | 734.65% |
| Matsuo | $5,008,647.00 | $440,816.03 | $2,500,000.00 | 567.13% |
| Panasonic | $107,233,527.00 | $9,971,196.61 | $4,700,000.00 | 47.13% |

The table demonstrates the excellent results that the settlements represent. The Nichicon settlement reflects more than 100 percent of estimated damages, the Elna settlement more than 700 percent, and the Matsuo settlement more than 500 percent. The Panasonic settlement represents nearly fifty percent of potential damages, but this amount is well within the range of possible final approval. For example, in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Judge Susan Illston referred to plaintiffs' settlement of "approximately 50% of the potential recovery" as "exceptional." No. M 07-1827 SI, 2013 WL 1365900, at *7 (N.D. Cal. Apr. 3, 2013). In *CRTs*, the court stated that a settlement representing 20% of potential single damages "is without question a good recovery and firmly in line with the recovery in other cases." *In re Cathode Ray Tubes (CRT) Antitrust Litig.*, No. C-07-5944-JST, 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016) (citing a law review article finding that "median average settlement recovery among a survey of 71 settled cartel cases was 37% of single damages recovery, the weighted mean . . . 19% of single damages recovery."). Moreover, just recently, this Court preliminarily approved

---

[5] In the IPP case, the relevant "commerce" is a Defendants' relevant sales of electrolytic and/or film capacitors, as the case may be, to distributors who themselves sold the capacitors to IPPs. This is a smaller commerce figure than Defendants' overall sales to direct purchasers, since Defendants sell to many different types of direct purchasers that are not within the distribution channel relevant to the IPP case, such as OEMs, EMSs, and other such direct purchasers that are not distributors.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of Plan of Allocation; Case No. 14-cv-03264-JD                    6

settlements in the direct purchaser case in *In re Resistors Antitrust Litigation*, No. 15-cv-03820-JD ("*Resistors*"), wherein the recovery percentages ranged from 33% to 57% of single damages. *See Resistors*, ECF Nos. 534 at 1 (DPP Motion), 542 (order preliminarily approving DPP settlements).

Moreover, the Panasonic Defendants are differently situated from other defendants in that they likely will not be exposed to treble damages *or* joint and several liability.  Zapala Decl. ¶ 16. Based on its leniency application, Panasonic will likely only be liable for its own affected sales. ACPERA relieves a successful leniency applicant from exposure to joint-and-several liability in any related civil action.   ACPERA § 213(a).   In addition to their ACPERA status limiting liability, the Panasonic Defendants have other defenses that could limit their liability in ways that would negatively impact IPPs' case.

### 4. Incentive Awards

The named Settlement Class Representatives will seek incentive awards in the amount of $5,000.  These incentive awards are to compensate the class representatives for the substantial time and effort they spent on behalf of the class participating in the litigation, preparing for and sitting for deposition, searching for and collecting documents, and responding to interrogatories. IPPs believe this amount is reasonable in light of the excellent results achieved for the settlement classes.  *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  Thus far, IPPs have not sought incentive awards and contemplate this will be the only incentive awards for the Class Representatives in this litigation.

### 5. Reversions

The settlements are non-reversionary; there is no circumstance under which money originally designated for class recovery will revert to any defendant once the Court finally approves the Settlements.

### 6. Class Action Fairness Act

Pursuant to the terms of the Settlement Agreements and the requirements of the Class Action Fairness Act, 28 U.S.C § 1715, all notices required will be, or already have been, provided by the Settling Defendants.  See Panasonic Settlement Agreement, ¶ 59; Nichicon Settlement

---

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of
Plan of Allocation; Case No. 14-cv-03264-JD                                                      7

Agreement, ¶ 57; Elna Settlement Agreement, ¶ 60; Matsuo Settlement Agreement, ¶ 57.

The Settlements substantively comply with the Class Action Fairness Act. The Settlements do not include coupons. *See* 28 U.S.C. § 1712. No class member will be "obligated to pay sums to class counsel that would result in a net loss to the class member[.]" *See* 28 U.S.C. § 1713. The Settlements do not "provide for the payment of greater sums to some class members than to other solely on the basis that the class members to whom the greater sums are to be paid are located in closer geographic proximity to the court." *See* 28 U.S.C § 1714.

### 7.   Comparable Class Settlements

Tables showing information regarding comparable settlements are included in **Appendix A** to this motion.

## III.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE SETTLEMENTS

### A.   Legal Standard for Preliminary Approval of Class Action Settlements

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *G.F. v. Contra Costa County*, 2015 WL 4606078, at *8 (N.D. Cal. July 20, 2015). When asked to grant preliminary approval of a class action settlement, the Court must determine whether proposed settlements: (1) appear to be the product of serious, informed, non-collusive negotiations; (2) have no obvious deficiencies; (3) do not improperly grant preferential treatment to class representatives or segments of the class; and (4) fall within the range of possible approval. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

### B.   The Settlements Meet the Standard for Preliminary Approval of Class Action Settlements

The settlements with the Settling Defendants comfortably meet the standards for preliminary approval because they were the result of serious, informed, and non-collusive negotiations. There are also no obvious deficiencies in the settlements—the settlements do not grant preferential treatment to the class representatives or any subset of the class, and the settlements fall within the range of possible approval. As such, preliminary approval of the settlement is appropriate and warranted.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of Plan of Allocation; Case No. 14-cv-03264-JD                                    8

1.     **The Settlements are the Result of Serious, Informed, and Non-Collusive Negotiations**

IPPs and the Settling Defendants are represented by highly-skilled antitrust counsel who are knowledgeable of the law and have extensive experience with complex antitrust lawsuits. IPPs and the Settling Defendants have been heavily litigating this case for four years.  The parties have conducted over 130 depositions during the course of this litigation.  Zapala Decl. ¶ 10. Moreover, Defendants have produced roughly 11,223,611 documents to IPPs, comprised of approximately 28,331,064 pages.  *Id.*  At the time of reaching these settlements, the parties had engaged in expert discovery and fully briefed IPPs' motion for class certification. *Id.* ¶ 11.  At the time of reaching these settlements, therefore, IPPs and the Settling Defendants were well-informed about the facts, damages, and defenses relevant to this litigation.

Moreover, throughout this litigation, the Settling Defendants (and the other non-settling Defendants) have vigorously contested this case, challenging IPPs' legal theories of liability, whether the facts support Defendants' level of involvement in such a conspiracy, and the damages for which each Defendant may be liable.  Zapala Decl. ¶ 12.  The settlements before the Court, therefore, are the result of serious and informed negotiations.  Additionally, there has been no collusion between the settling parties.  Because of this, the settlement is entitled to a presumption of approval.

2.     **There are No Obvious Deficiencies in the Settlement**

As set forth above, the settlement were the result of serious analysis and consideration of the significant risks faced by both sides and there are no obvious deficiencies in the settlements. For example, the size of the settlements are commensurate with the Settling Defendants' involvement in the capacitors industry affected by the antitrust conspiracy alleged by Plaintiffs, and as the settlement percentages reveal, commensurate with their sales in the relevant industry.

The settlements were reached with full appreciation of the risks faced by both sides. Rulings favorable to IPPs in these pending motions would significantly impact the value of settlements for Defendants who chose to wait for the rulings on those motions.

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of Plan of Allocation; Case No. 14-cv-03264-JD                                                                    9

### 3.      There is No Preferential Treatment

There is no preferential treatment of any class representative or any segment of the classes.  All indirect purchasers of electrolytic and film capacitors with a right to recover will have an ability to submit a claim for a *pro rata* share of the settlement funds.  This element in favor of preliminary approval is met.

### 4.      The Proposed Settlements Fall Within the Range of Possible Approval

For the reasons stated *supra*, IPPs believe that the proposed settlements fall within the range of possible approval and should be preliminarily approved.

### C.      The Proposed Settlement Classes Satisfy Rule 23

In addition to the fairness of the settlement, this action is appropriate for class treatment. Class certification is appropriate when the proposed class and the proposed class representatives meet the four prerequisites of Rule 23(a): (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) fair and adequate class representation.  Fed. R. Civ. P. 23(a).  Additionally, a class must satisfy one of the criteria in Rule 23(b).  Fed. R. Civ. P. 23(b).  The Settlement Classes in this settlement meet all Rule 23 requirements.

### 1.      Fed. R. Civ. P. 23(a)(1) – Numerosity

The first prerequisite for certifying a class is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In this case, IPPs seek to certify a class of all individuals or entities who purchased one or more capacitors manufactured by a Defendant from a distributor.  There are hundreds of thousands of class members, such that joinder of all is impracticable. "There is no exact class size that meets the numerosity requirement; rather, where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."  *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 616 (N.D. Cal. 2014) (internal quotation marks omitted). Therefore, the first prerequisite of Rule 23(a) is met.

### 2.      Fed. R. Civ. P. 23(a)(2) – Commonality

The second prerequisite for certifying a class is that "there are questions or law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Courts have consistently found that "[c]ommon

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of
Plan of Allocation; Case No. 14-cv-03264-JD                                    10

issues predominate in proving an antitrust violation 'when the focus is on the defendants' conduct and not on the conduct of the individual class members.'" *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *7 (N.D. Cal. June 5, 2006).

In this case, common questions of fact and law predominate over individual questions. IPPs have alleged that Defendants engaged in a conspiracy to fix, raise, maintain and/or stabilize the price of capacitors. The common questions of fact or law include whether the Defendants in fact entered into an illegal agreement to fix, raise, maintain and/or stabilize the price of capacitors; whether the antitrust conspiracy did result in the artificial inflation of the price of capacitors; and whether those overcharges were passed on to the classes. The second prerequisite of Rule 23(a) is met.

### 3.    Fed. R. Civ. P. 23(a)(3) – Typicality

The third prerequisite for certifying a class is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is easily satisfied in cases involving horizontal price-fixing because "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993).

IPPs' theory is that the Defendants illegally fixed, raised, maintained, and/or stabilized the prices for capacitors and that the artificially inflated prices charged by Defendants affected the prices paid by indirect purchasers of capacitors. All class representatives purchased one or more capacitors from a distributor that was manufactured by Defendants. Because the class representatives' claims are typical of the members of the class, the third prerequisite of Rule 23(a) is met.

### 4.    Fed. R. Civ. P. 23(a)(4) – Fair and Adequate Class Representation

The fourth prerequisite for certifying a class is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of
Plan of Allocation; Case No. 14-cv-03264-JD                                                                11

conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  The interests of the class representatives and their counsel are completely aligned with the interests of the absent class members.  The class representatives suffered the same injury as the absent class members in that they paid artificially inflated prices for capacitors.  IPPs' counsel also has the same interest in proving that Defendants engaged in an illegal antitrust conspiracy.  The vigor with which the class representatives and their counsel have prosecuted this case is well documented in the docket of this case.  IPPs have expended considerable time, energy and resources in gathering evidence in support of their case and in contesting Defendants' efforts to dismiss or minimize their case, much of which is documented in the several thousand docket entries in this case.  The fourth prerequisite of Rule 23(a) is met.

### 5.    All Requirements of Rule 23(b) are Met In This Case

Once the prerequisites of Rule 23(a) are met, a prospective class must satisfy only one of four Rule 23(b) requirements to continue as a class.  Rule 23(b)(3) allows class actions when common questions of law or fact predominate such that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

Common questions of law or fact predominate in this case.  "[I]f common questions are found to predominate in an antitrust action . . . courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied." *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 291, 314 (N.D. Cal. 2010), *abrogated on other grounds*.  To determine whether or not a class action is the superior method of adjudication, courts look to the four factors from Rule 23(b)(3): "(1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1227 (N.D. Cal. 2013); *accord* Fed. R. Civ. P. 23(b)(3).

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of Plan of Allocation; Case No. 14-cv-03264-JD                    12

1    The antitrust conspiracy in this case is appropriate for Rule 23(b)(3) resolution.   The

2 damages of each individual class member are generally too small to warrant bringing an

3 individual lawsuit but the total damages in aggregate for the class members are significant, which

4 favors resolution by class action.   Given the facts of this case, the class action is clearly superior

5 to alternative methods of adjudicating this controversy.

6        **6.      This Court Should Appoint Interim Class Counsel as Settlement Class
7               Counsel**

8        Under Rule 23(g)(1), when certifying a class, including for settlement purposes, the Court

9 should appoint class counsel.   Fed. R. Civ. P. 23(g)(1); *see also Bellinghausen*, 303 F.R.D. at 618.

10 When appointing class counsel, the Court must consider: "(i) the work counsel has done in

11 identifying or investigating potential claims in the action; (ii) counsel's experience in handling

12 class actions, other complex litigation, and the types of claims asserted in the action; (iii)

13 counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to

14 representing the class." Fed. R. Civ. P. 23(g)(1)(A). Cotchett, Pitre & McCarthy, LLP ("CPM") is

15 recognized as one of the top litigation firms in the United States, and its antitrust team is

16 recognized as experts in the field.

17        **D.      The Proposed Plan of Allocation is Fair, Reasonable and Adequate and
18               Should be Approved**

19        "Approval of a plan for the allocation of a class settlement fund is governed by the same

20 legal standards that are applicable to approval of the settlement; the distribution plan must be

21 'fair, reasonable and adequate.'"   *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154

22 (N.D. Cal. 2001) (internal citations omitted).   When allocating funds, "[i]t is reasonable to

23 allocate the settlement funds to class members based on the extent of their injuries or the strength

24 of their claims on the merits."   *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1045-

25 46 (N.D. Cal. 2008) (internal citations omitted) (approving securities class action settlement

26 allocation on a "per-share basis").

27        Pro rata distribution has frequently been determined by courts to be fair, adequate, and

28 reasonable.   *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 U.S. Dist. LEXIS 170525,

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of
Plan of Allocation; Case No. 14-cv-03264-JD                                                      13

at *198-200 (N.D. Cal. Dec. 17, 2015) (approving pro rata plan of allocation based upon proportional value of price-fixed component in finished product); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, at *2 (Oct. 27, 2010) (Order Approving Pro Rata Distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 U.S. Dist. LEXIS 8931, at *32 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable.") (citations omitted).

As with the Round 1 and Round 2 settlements, allocation of the settlement funds will be on a *pro rata* basis. The *pro rata* distribution to each class member with damages claims from the indirect purchaser states will be based upon the number of approved purchases of electrolytic and film capacitor purchases during the settlement class period. Thus, the recovery to individual class member is tied to the volume and type of their purchases, the number of other qualified class members making claims against the settlement fund, and the size of the overall fund. This is a reasonable and fair way to compensate classes. This plan of allocation is thus "fair, adequate, and reasonable" and merits approval by the Court. *See Citric Acid*, 145 F. Supp. at 1154.

**E.    The Court Should Establish a Schedule for Final Approval of the Settlements**

If the Court grants preliminary approval of the settlements and grants IPPs' concurrently-filed motion to approve a class notice program, a schedule should be established for the completion of the notice program, objections and requests for exclusion, and the briefing for attorneys' fees, reimbursement of reasonable litigation expenses, and for final approval. IPPs propose the following schedule:

| Event | Time |
|---|---|
| Mail Notice | 60 days after Preliminary Approval Order ("Order") |
| Publication Begins | 60 days after Order |
| IPPs' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses | 115 days after Order and 45 days before Exclusion and Objection Deadline |
| Exclusion and Objection Deadline | 150 days after Order |

Law Offices
COTCHETT, PITRE &
MCCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of
Plan of Allocation; Case No. 14-cv-03264-JD                                    14

| Event | Time |
|-------|------|
| Motion for Final Approval and Response to Objections (if any) | 165 days after Order and 15 days before Hearing |
| Final Approval Hearing | 180 days after Order |
| Deadline to Submit Claims | 240 Days After Order |

## IV.   **CONCLUSION**

For the foregoing reasons, IPPs respectfully request that this Court enter an order: (1) preliminarily approving the proposed settlement with the Settling Defendants, (2) appointing CPM as Settlement Class Counsel, and (3) preliminarily approving the proposed plan of allocation.

Dated: June 20, 2019                    Respectfully Submitted:

/s/ *Adam J. Zapala*
Adam J. Zapala
Elizabeth T. Castillo
Mark F. Ram
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
mram@cpmlegal.com
*Interim Lead Counsel for Indirect Purchaser Plaintiffs*

Law Offices
COTCHETT, PITRE &
McCARTHY, LLP

Indirect Purchaser Plaintiffs' Motion For Preliminary Approval of Settlements and Approval of Plan of Allocation; Case No. 14-cv-03264-JD                    15

## Appendix A

In this Appendix, IPPs provide the summary charts described in paragraph 11 of the Northern District of California's Procedural Guidance for Class Action Settlements. Paragraph 11 instructs that lead class counsel should provide certain information "for at least one of their past comparable settlements." The first chart below is for *In re Static Random Access Memory (SRAM) Antitrust Litigation*, No. 4:07-md-01819-CW (N.D. Cal.), in which Cotchett, Pitre & McCarthy, LLP ("CPM") was lead counsel for the direct purchaser class plaintiffs. The second chart below is for *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, No. M 02-cv-01486-PJH (N.D. Cal.), in which CPM was chair of the discovery committee for the direct purchaser class plaintiffs.

## Postclaim Filing Audit
### In re SRAM DPP Antitrust Case
*All figures are estimates based on public filings*

|  | % Total Settlement |
|---|---|
| Settlement $76.9 million | 100% |
| Claims paid $50,362,242.73 | 66% |
| Class members sent notice 3,892* |  |
| Actual claims 64 (2%) |  |
| Opt-outs 46 (1%) |  |
| Average Recovery Per Claimant $812,294.24 |  |
| Residual n/a | n/a |
| Cy pres distribution n/a |  |
| Reversion n/a |  |
| Attorney fees awarded $25.6 million | 33.3% |
| Ratio to distributed fund 0.51 |  |
| Attorney Costs $3.6 million | 5% |
| Ratio to distributed fund 0.07 |  |
| Administrative costs $775,000** | 1% |

*This is the number of notices sent to directly to class members by first class mail that were not returned as undeliverable; indirect notice campaigns through publication also occurred.

**Estimated based on $735,000 initially authorized by the court and additional reserve of $40,000 authorized for incurred and future claims administration costs.

## Postclaim Filing Audit
### In re DRAM DPP Antitrust Case
*All figures are estimates based on public filings*

|  | % Total Settlement |
|---|---|
| Settlement $363.2 million | 100% |
| Claims paid $272,777,508.81 | 75% |
| Class members sent notice 1,017,868* |  |
| Actual claims 19,835 (2%) |  |
| Opt-outs 200 (0.02%)** |  |
| Average Recovery Per Claimant $13,752.33 |  |
| Residual $1.5 million | 0.4% |
| Cy pres distribution $1,510,133.96 |  |
| Reversion n/a |  |
| Attorney fees awarded $90.8 million | 25% |
| Ratio to distributed fund 0.33 |  |
| Attorney Costs $4.3 million | 1% |
| Ratio to distributed fund 0.02 |  |
| Administrative costs $746,893.93 | 0.2% |

*This is the number of notices sent to directly to class members by first class mail that were not returned as undeliverable; indirect notice campaigns through publication also occurred.

**Based on the opt-out information provided in connection with the last settlements in the litigation.