# EXHIBIT 3

1
2
3
4
5
6
7
8
9
10
11
12

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CAPACITORS ANTITRUST LITIGATION** | **Case No. 3:14-cv-03264-JD** |
| | **SETTLEMENT AGREEMENT** |
| This Document Relates to: | |
| Indirect Purchaser Actions | |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Settlement Agreement; Case No. 3:14-cv-03264-JD**

1      This Settlement Agreement ("Settlement Agreement") is made and entered into this 30th day

2  of October, 2018 (the "Execution Date"), by and among Defendants ELNA Co., Ltd. and ELNA

3  America, Inc. (collectively, "ELNA"), and the Indirect Purchaser Plaintiffs ("IPPs"), both

4  individually and on behalf of the Class in the above-captioned action. This Settlement Agreement is

5  intended by the Settling Parties to fully, finally, and forever resolve, discharge and settle the Released

6  Claims, upon and subject to the terms and conditions hereof.

7  **RECITALS**

8      WHEREAS, IPPs are prosecuting the above-captioned action ("Action") on their own behalf

9  and on behalf of the Class against ELNA, other Defendants, and alleged co-conspirators;

10      WHEREAS, IPPs allege ELNA violated antitrust and consumer protection laws by conspiring

11  to fix, raise, maintain, or stabilize the prices of Electrolytic Capacitors and these acts caused the Class

12  to incur damages, among other allegations;

13      WHEREAS, ELNA has denied and continues to deny each and all of IPPs' claims and

14  allegations of wrongdoing; has not conceded or admitted any liability, or that it violated or breached

15  any law, regulation, or duty owed to the IPPs; has denied and continues to deny all charges of

16  wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions

17  alleged in the Action; and further denies the allegations that the IPPs or any member of the Class

18  were harmed by any conduct by ELNA alleged in the Action or otherwise;

19      WHEREAS, IPPs and Defendants have engaged in extensive discovery regarding the facts

20  pertaining to IPPs' claims and Defendants' defenses;

21      WHEREAS, IPPs and ELNA agree that neither this Settlement Agreement nor any statement

22  made in the negotiation thereof shall be deemed or construed to be an admission or evidence of any

23  violation of any statute or law or of any liability or wrongdoing by ELNA or of the truth of any of the

24  claims or allegations alleged in the Action;

25      WHEREAS, Class Counsel have concluded, after due investigation and after carefully

26  considering the relevant circumstances, including, without limitation, the claims asserted in the IPPs'

27  Fifth Consolidated Complaint filed in Docket No. 14-cv-03264-JD, the legal and factual defenses

28

1 | thereto and the applicable law, that it is in the best interests of the IPPs and the Class to enter into this

2 | Settlement Agreement to avoid the uncertainties of litigation and to assure that the benefits reflected

3 | herein are obtained for the IPPs and the Class, and, further, that Class Counsel consider the Settlement

4 | set forth herein to be fair, reasonable, adequate, and in the best interests of the IPPs and the Class;

5 | and

6 | WHEREAS, ELNA has concluded, despite its belief that it is not liable for the claims asserted

7 | against it in the Action and that it has good defenses thereto, that it will enter into this Settlement

8 | Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted

9 | litigation, and thereby to put to rest this controversy with respect to the IPPs and the Class and avoid

10 | the risks inherent in complex litigation; and

11 | WHEREAS, arm's length settlement negotiations and mediation have taken place between

12 | Class Counsel and ELNA, and this Settlement Agreement, which embodies all of the terms and

13 | conditions of the Settlement between the Settling Parties, both individually and on behalf of the Class,

14 | has been reached as a result of the Settling Parties' negotiations and mediation (subject to the approval

15 | of the Court) as provided herein and is intended to supersede any prior agreements or understandings

16 | between the Settling Parties.

17 | **AGREEMENT**

18 | NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the

19 | Settling Parties, by and through their undersigned attorneys of record, in consideration of the

20 | covenants, agreements, and releases set forth herein and for other good and valuable consideration,

21 | that the Action and the Released Claims as against ELNA shall be finally and fully settled,

22 | compromised and dismissed on the merits and with prejudice, without costs as to IPPs, the Class, or

23 | ELNA, upon and subject to the approval of the Court, following notice to the Class, on the following

24 | on the following terms and conditions:

25 | **Definitions**

26 | 1.        As used in this Settlement Agreement the following terms shall have the meanings

27 | specified below:

28 |

1          (a)    "Action" means *In re Capacitors Antitrust Litigation* – All Indirect Purchaser

2    Actions, Case No. 3:14-cv-03264-JD, and each of the cases brought on behalf of indirect purchasers

3    previously consolidated and/or included as part of Docket No. 3:14-cv-03264-JD.

4          (b)    "Affiliates" means entities controlling, controlled by or under common control

5    with a Releasee or Releasor.

6          (c)    "Authorized Claimant" means any IPP who, in accordance with the terms of

7    this Settlement Agreement, is entitled to a distribution consistent with any Distribution Plan or order

8    of the Court ordering distribution to the Class.

9          (d)    "Capacitors" means electronic components that store electric charges between

10   one or more pairs of conductors separated by an insulator. It includes electrolytic, aluminum, tantalum

11   and/or film capacitors.

12         (e)    "Claims Administrator" means the claims administrator(s) to be selected by

13   Class Counsel.

14         (f)    "Class" is defined as: All persons and entities in the United States who, during

15   the period from April 1, 2002 to February 28, 2014, purchased one or more Electrolytic Capacitor(s)

16   from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-

17   conspirator manufactured. Excluded from the Class are Defendants, their parent companies,

18   subsidiaries and Affiliates, any co-conspirators, Defendants' attorneys in this case, federal

19   government entities and instrumentalities, states and their subdivisions, all judges assigned to this

20   case, all jurors in this case, and all persons and entities who directly purchased Capacitors from

21   Defendants.

22         (g)    "Class Counsel" means the law firm of Cotchett, Pitre & McCarthy, LLP.

23         (h)    "Class Member" means a Person who falls within the definition of the Class

24   and who does not timely and validly elect to be excluded from the Class in accordance with the

25   procedure to be established by the Court.

26         (i)    "Court" means the United States District Court for the Northern District of

27   California.

28

1           (j)     "Defendant" or "Defendants" means ELNA Co., Ltd. and ELNA America,

2  Inc., Nichicon Corporation and Nichicon (America) Corporation, Nippon Chemi-Con Corp., United

3  Chemi-Con, Inc., Hitachi Chemical Co., Ltd., Hitachi AIC Inc., Hitachi Chemical Co. America, Ltd.,

4  Inc., Rubycon Corp., Rubycon America Inc., Panasonic Corp., Panasonic Corp. of North America,

5  SANYO Electric Co., Ltd., SANYO Electronic Device (U.S.A.) Corp., Matsuo Electric Co., Ltd.,

6  NEC TOKIN Corp., NEC TOKIN America Inc., Fujitsu Media Devices, Ltd., Nissei Electric Co.,

7  Ltd., Nitsuko Electronics Corp., Okaya Electric Industries Co., Ltd., Shinyei Technology Co., Ltd.,

8  Shinyei Capacitor Co., Ltd., Soshin Electric Co., Ltd., Taitsu Corp., Toshin Kogyo Co., Ltd., Holy

9  Stone Enterprise Co., Ltd., Holy Stone Holdings Co., Ltd., Holy Stone Polytech Co., Ltd., and

10  Milestone Global Technology, Inc.

11           (k)     "Distribution Plan" means any plan or formula of allocation of the Gross

12  Settlement Fund, to be approved by the Court, whereby the Net Settlement Fund shall in the future

13  be distributed to Authorized Claimants.

14           (l)     "Document" is synonymous in meaning and equal in scope to the usage of this

15  term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data

16  compilations. A draft of non-identical copy is a separate document within the meaning of this term.

17           (m)    "Effective Date" means the first date by which all of the following events and

18  conditions have been met or have occurred:

19               1.     All parties have executed this Settlement Agreement;

20               2.     The Court has preliminarily approved the Settlement Agreement and

21  the motion after providing notice to the Class as defined herein;

22               3.     The Court has entered a Final Judgment; and

23               4.     The Final Judgment (as more fully described in ¶ 6) has become final,

24  with the occurrence of the following: (A) the entry by the Court of a final order approving the

25  Settlement Agreement under Federal Rules of Civil Procedure ("Rule") 23(e) together with entry of

26  a final judgment dismissing the Action and all claims therein against ELNA with prejudice as to all

27  Class Members ("Final Judgment"), and (B) the expiration of the time for appeal or to seek permission

28

to appeal from the Court's approval of the Settlement Agreement and entry of the Final Judgment or, if an appeal from an approval and Final Judgment is taken, the affirmance of such Final Judgment in its entirety, without modification, by the court of last resort to which an appeal of such Final Judgment may be taken, provided, however, a modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund or any plan of allocation or distribution of the Settlement Fund shall not be deemed a modification of all or part of the terms of this Settlement Agreement or the Final Judgment. It is agreed that neither the provisions of Rule 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

(n)     "Electrolytic Capacitor" means a capacitor that uses an electrolyte (an ionic conducting liquid) as one of its plates to achieve a relatively larger capacitance per volume. It includes but is not limited to the following: circular polymer aluminum electrolytic capacitors, rectangular polymer aluminum capacitors, rectangular polymer tantalum capacitors and other tantalum capacitors, and non-polymer aluminum electrolytic capacitors.

(o)     "ELNA" means collectively ELNA Co., Ltd. and ELNA America, Inc.

(p)     "Escrow Agent" means the agent jointly designated by Class Counsel and ELNA, and any successor agent.

(q)     "Execution Date" means the date of the last signature set forth on the signature pages below.

(r)     "Final" means, with respect to any order of court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. Without limitation, an order becomes "Final" when: (a) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (b) an appeal has been filed and either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this Settlement Agreement, an "appeal" includes appeals as of right, discretionary

1   appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other

2   proceedings of like kind. Any appeal or other proceeding pertaining solely to any order adopting or

3   approving a Distribution Plan, and/or to any order issued in respect of an application for attorneys'

4   fees and expenses consistent with this Settlement Agreement, shall not in any way delay or preclude

5   the Judgment from becoming Final.

6           (s)     "Gross Settlement Fund" means the Settlement Amount plus any interest that

7   may accrue.

8           (t)     "IPPs" means Michael Brooks, CAE Sound, Steve Wong, Toy-Knowlogy Inc.,

9   AGS Devices, Co., AGS Devices, Ltd., J&O Electronics, Nebraska Dynamics, Inc., Angstrom, Inc.,

10   MakersLED, and In Home Tech Solutions, Inc., as well as any other Person added as an IPP in the

11   Action.

12           (u)     "Judgment" means the order of judgment and dismissal of the Action with

13   prejudice.

14           (v)     "Net Settlement Fund" means the Gross Settlement Fund, less the payments

15   set forth in ¶ 16.

16           (w)    "Notice, Administrative and Claims Administration Costs" means a reasonable

17   sum of money not to exceed $250,000.00 to be paid out of the Gross Settlement Fund to pay for

18   notice to the Class and related administrative and claims administration costs.

19           (x)     "Person(s)" means an individual, corporation, limited liability corporation,

20   professional corporation, limited liability partnership, partnership, limited partnership, association,

21   joint stock company, estate, legal representative, trust, unincorporated association, government or

22   any political subdivision or agency thereof, and any business or legal entity and any spouses, heirs,

23   predecessors, successors, representatives or assignees of any of the foregoing.

24           (y)     "Proof of Claim and Release" means the form to be sent to the Class, upon

25   further order(s) of the Court, by which any member of the Class may make claims against the Gross

26   Settlement Fund.

27

28

1         (z)    "Released Claims" means any and all manner of claims, demands, rights,

2 actions, suits, causes of action, whether class, individual or otherwise in nature, fees, costs, penalties,

3 injuries, damages whenever incurred, liabilities of any nature whatsoever, known or unknown

4 (including, but not limited to, "Unknown Claims"), foreseen or unforeseen, suspected or unsuspected,

5 asserted or unasserted, contingent or non-contingent, in law or in equity, under the laws of any

6 jurisdiction, which Releasors or any of them, whether directly, representatively, derivatively, or in

7 any other capacity, ever had, now have or hereafter can, shall or may have, relating in any way to any

8 conduct prior to February 28, 2014 and arising out of or related in any way in whole or in part to any

9 facts, circumstances, acts, or omissions arising out of or related to (1) the purchase, pricing, selling,

10 discounting, marketing, manufacturing and/or distributing of Capacitors; (2) any agreement,

11 combination or conspiracy to raise, fix, maintain or stabilize the prices of Capacitors or restrict,

12 reduce, alter or allocate the supply, quantity or quality of Capacitors or concerning the development,

13 manufacture, supply, distribution, transfer, marketing, sale or pricing of Capacitors, or any other

14 restraint of competition alleged in the Action or that could have been or hereafter could be alleged

15 against the Releasees relating to Capacitors, or (3) any other restraint of competition relating to

16 Capacitors that could be asserted as a violation of the Sherman Act or any other antitrust, unjust

17 enrichment, unfair competition, unfair practices, trade practices, price discrimination, unitary pricing,

18 racketeering, civil conspiracy or consumer protection law, whether under federal, state, local or

19 foreign law.

20         (aa)   "Releasees" refers jointly and severally, individually and collectively to

21 ELNA Co., Ltd., ELNA America, Inc., and their respective past, present and future direct and indirect

22 parents, members, subsidiaries, and Affiliates, and the past, present, and future respective officers,

23 directors, employees, managers, members, partners, agents, shareholders (in their capacity as

24 shareholders), attorneys and legal representatives, assigns, servants, and representatives, and the

25 predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing..

26         (bb)   "Releasors" refers jointly and severally, individually and collectively to the

27 IPPs and each and every member of the Class on their own behalf and on behalf of their respective

past, present, and/or future direct and indirect parents, members, subsidiaries and Affiliates, and their past, present and/or future officers, directors, employees, agents, attorneys and legal representatives, servants, and representatives, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing.

(cc)   "Settlement" means the settlement of the Released Claims set forth herein.

(dd)   "Settlement Amount" means exactly two million and two hundred fifty thousand dollars ($2,250,000.00).

(ee)   "Settling Parties" means, collectively, the IPPs (on behalf of themselves and the Class) and ELNA.

(ff)   "Unknown Claims" means any Released Claim that an Indirect Purchaser Plaintiff and/or Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Releasees that if known by him, her or it, might have affected his, her or its settlement with and release of the Releasees, or might have affected his, her or its decision not to object to this Settlement. Such Unknown Claims include claims that are the subject of California Civil Code § 1542 and equivalent, similar or comparable laws or principles of law. California Civil Code § 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

**Preliminary Approval Order, Notice Order and Settlement Hearing**

2.   ***Reasonable Best Efforts to Effectuate this Settlement.*** The Settling Parties: (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the terms and conditions of this Settlement Agreement.

3. *Motion for Preliminary Approval.* At a time to be determined by Class Counsel, Class Counsel shall submit this Settlement Agreement to the Court and shall apply for entry of a Preliminary Approval Order, requesting, *inter alia*, preliminary approval of the Settlement. The motion shall include (a) the proposed Preliminary Approval Order, and (b) a definition of the proposed settlement Class pursuant to Rule 23.

4. *Proposed Notice.* At a time to be determined in their sole discretion, Class Counsel shall submit to the Court for approval a proposed form of, method for, and schedule for dissemination of notice to the Class. To the extent practicable and to the extent consistent with this paragraph, Class Counsel may seek to coordinate this notice program with other settlements that may be reached in the Action to reduce the expense of notice. This motion shall recite and ask the Court to find that the proposed form of and method for dissemination of the notice to the Class constitutes valid, due and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Rule 23.

5. *Claims Administrator.* IPPs shall retain a Claims Administrator, which shall be responsible for the claims administration process including distribution to Class Members pursuant to a court-approved plan of distribution. The fees and expenses of the Claims Administrator shall be paid exclusively out of the Settlement Fund. In no event shall ELNA be separately responsible for any fees or expenses of the Claims Administrator.

6. *Motion for Final Approval and Entry of Final Judgment.* Prior to the date set by the Court to consider whether this Settlement should be finally approved, Class Counsel shall submit a motion for final approval of the Settlement by the Court. The Settling Parties shall jointly seek entry of the Final Approval Order and Judgment:

(a) certifying the Class, as defined in this Settlement Agreement, pursuant to Rule 23, solely for purposes of this Settlement;

(b) fully and finally approving the Settlement contemplated by this Settlement Agreement and its terms as being fair, reasonable and adequate within the meaning of Rule 23 and directing its consummation pursuant to its terms and conditions;

1           (c)       finding that the notice given to the Class Members constituted the best notice

2 practicable under the circumstances and complies in all respects with the requirements of Rule 23

3 and due process;

4           (d)      directing that the Action be dismissed with prejudice as to ELNA and, except

5 as provided for herein, without costs;

6           (e)     discharging and releasing the Releasees from all Released Claims;

7           (f)      permanently barring and enjoining the institution and prosecution, by IPPs and

8 Class Members, of any other action against the Releasees in any court asserting any claims related in

9 any way to the Released Claims;

10           (g)     reserving continuing and exclusive jurisdiction over the Settlement, including

11 all future proceedings concerning the administration, consummation and enforcement of this

12 Settlement Agreement;

13           (h)      determining pursuant to Rule 54(b) that there is no just reason for delay and

14 directing entry of a final judgment as to ELNA; and

15           (i)      containing such other and further provisions consistent with the terms of this

16 Settlement Agreement to which the parties expressly consent in writing.

17       7.     At least seven (7) business days prior to the filing of any motions or other papers in

18 connection with this Settlement, including without limitation, the Preliminary Approval Motion and

19 the Motion for Final Approval of the Settlement, Class Counsel will send working drafts of these

20 papers to counsel for ELNA. The text of any proposed form of order preliminarily or finally approving

21 the Settlement shall be agreed upon by IPPs and ELNA before it is submitted to the Court and shall

22 be consistent with the terms of this Settlement Agreement and the Class definitions set forth herein.

23       8.    ***Stay Order.*** Upon the Execution Date, the Action shall be stayed as against ELNA

24 only. Should the Action be tried against any Defendants other than ELNA, the parties specifically

25 agree that any findings therein shall not be binding on or admissible in evidence against ELNA or

26 prejudice ELNA in any way in any future proceeding involving ELNA.

27

28

1    9.      Upon the date that the Court enters an order preliminarily approving the Settlement,

2    IPPs and members of the Class shall be barred and enjoined from commencing, instituting or

3    continuing to prosecute any action or any proceeding in any court of law or equity, arbitration

4    tribunal, administrative forum or other forum of any kind worldwide based on the Released Claims.

5    Nothing in this provision shall prohibit the IPPs or Class Counsel from continuing to participate in

6    discovery in the Action that is initiated by other plaintiffs or that is subject to and consistent with the

7    cooperation provisions set forth in ¶¶ 32-35.

8    **Releases**

9    10.      *Released Claims.* Upon the Effective Date, the Releasors (regardless of whether any

10   such Releasor ever seeks or obtains any recovery by any means, including, without limitation, by

11   submitting a Proof of Claim and Release, any distribution from the Gross Settlement Fund), by virtue

12   of this Settlement Agreement, shall be deemed to have, and by operation of the Judgment shall have

13   fully, finally and forever released, relinquished and discharged all Released Claims against the

14   Releasees.

15   11.      *No Future Action Following Release.* The Releasors shall not, after the Effective

16   Date, seek (directly or indirectly) to commence, institute, maintain or prosecute any suit, action or

17   complaint or collect from or proceed against ELNA or any other Releasee (including pursuant to the

18   Action) based on the Released Claims in any forum worldwide, whether on his, her, or its own behalf

19   or as part of any putative, purported or certified class of purchasers or consumers.

20   12.      *Covenant Not to Sue.* Releasors hereby covenant not to sue the Releasees with respect

21   to any such Released Claims. Releasors shall be permanently barred and enjoined from instituting,

22   commencing or prosecuting against the Releasees any claims based in whole or in part on the

23   Released Claims. The Settling Parties contemplate and agree that this Settlement Agreement may be

24   pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being

25   initiated or maintained in any case sought to be prosecuted on behalf of IPPs with respect to the

26   Released Claims.

27

28

13. **_Waiver of California Civil Code § 1542 and Similar Laws._** The Releasors acknowledge that, by virtue of the execution of this Settlement Agreement, and for the consideration received hereunder, it is their intention to release, and they are releasing, all Released Claims, even Unknown Claims. In furtherance of this intention, the Releasors expressly waive and relinquish, to the fullest extent permitted by law, any rights or benefits conferred by the provisions of California Civil Code § 1542, as set forth in ¶ 1(ff), or equivalent, similar or comparable laws or principles of law. The Releasors acknowledge that they have been advised by Class Counsel of the contents and effects of California Civil Code § 1542, and hereby expressly waive and release with respect to the Released Claims any and all provisions, rights and benefits conferred by California Civil Code § 1542 or by any equivalent, similar or comparable law or principle of law in any jurisdiction. The Releasors may hereafter discover facts other than or different from those which they know or believe to be true with respect to the subject matter of the Released Claims, but the Releasors hereby expressly waive and fully, finally and forever settle and release any known or unknown, suspected or unsuspected, foreseen or unforeseen, asserted or unasserted, contingent or non-contingent, and accrued or unaccrued claim, loss or damage with respect to the Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such additional or different facts. The release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims in this paragraph is not a mere recital.

14. **_Claims Excluded from Release._** Notwithstanding the foregoing, the releases provided herein shall not release claims against ELNA for product liability, breach of contract, breach of warranty or personal injury, or any other claim unrelated to the allegations in the Action of restraint of competition or unfair competition with respect to Capacitors. Additionally, the releases provided herein shall not release any claims to enforce the terms of this Settlement Agreement.

**Settlement Fund**

15. **_Settlement Payment._** ELNA shall pay by wire transfer the Settlement Amount to the Escrow Agent pursuant to escrow instructions in two installments. The first installment shall be paid within thirty (30) business days after the Court has preliminarily approved the Settlement Agreement,

1   in the amount of $750,000. The second installment shall be paid one year after the Court has

2   preliminarily approved the Settlement Agreement, in the amount of $1.5 million ($1,500,000). The

3   Settlement Amount constitutes the total amount of payment that ELNA is required to make in

4   connection with this Settlement Agreement. This amount shall not be subject to reduction, and upon

5   the occurrence of the Effective Date, no funds shall revert to ELNA except as provided herein. The

6   Escrow Agent shall only act in accordance with the mutually agreed escrow instructions.

7        16.    ***Disbursements Prior to Effective Date.*** No amount may be disbursed from the Gross

8   Settlement Fund unless and until the Effective Date, except that: (a) Notice, Administrative and

9   Claims Administration Costs may be paid from the Gross Settlement Fund, which may not exceed

10  $250,000.00, as they become due; (b) Taxes and Tax Expenses (as defined in ¶ 20 below) may be

11  paid from the Gross Settlement Fund as they become due, and (c) attorneys' fees and reimbursement

12  of litigation costs may be paid as ordered by the Court, which may be disbursed during the pendency

13  of any appeals, which may be taken from the judgment to be entered by the Court finally approving

14  this Settlement.

15       17.    ***Refund by Escrow Agent.*** If the Settlement as described herein is not finally approved

16  by any court, or it is terminated as provided herein, or the Judgment is overturned on appeal or by

17  writ, the Gross Settlement Fund, including the Settlement Amount and all interest earned on the

18  Settlement Amount while held in escrow, excluding only Notice, Administrative and Claims

19  Administration Costs and Taxes and/or Tax Expenses (as defined in below), shall be refunded,

20  reimbursed and repaid by the Escrow Agent to ELNA within five (5) business days after receiving

21  notice pursuant to ¶ 41 below.

22       18.    ***Refund by Class Counsel.*** If the Settlement as described herein is not finally approved

23  by any court, or it is terminated as provided herein, or the Judgment as described herein is not

24  approved or entered or is overturned on appeal or by writ, any attorneys' fees and costs previously

25  paid pursuant to this Settlement Agreement (as well as interest on such amounts) shall be refunded,

26  reimbursed and repaid by Class Counsel to ELNA within thirty (30) business days after receiving

27  notice pursuant to ¶ 41 below.

28

19.     *No Additional Payments by ELNA.* Under no circumstances will ELNA be required to pay more or less than the Settlement Amount pursuant to this Settlement Agreement and the Settlement set forth herein. For purposes of clarification, the payment of any Fee and Expense Award (as defined in ¶ 29 below), the Notice, Administrative and Claims Administrative Costs, and any other costs associated with the implementation of this Settlement Agreement shall be exclusively paid from the Settlement Amount.

20.     *Taxes.* The Settling Parties and the Escrow Agent agree to treat the Gross Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. The Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver timely and properly the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a)     For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall satisfy the administrative requirements imposed by Treas. Reg. §1.468B-2 by, *e.g.*, (i) obtaining a taxpayer identification number, (ii) satisfying any information reporting or withholding requirements imposed on distributions from the Gross Settlement Fund, and (iii) timely and properly filing applicable federal, state and local tax returns necessary or advisable with respect to the Gross Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)) and paying any taxes reported thereon. Such returns (as well as the election described in this paragraph) shall be consistent with the provisions of this paragraph and in all events shall reflect that all Taxes as defined in ¶ 20(b) below on the income earned by the Gross Settlement Fund shall be paid out of the Gross Settlement Fund as provided in ¶ 20(b) hereof;

(b)     The following shall be paid out of the Gross Settlement Fund: (i) all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the

Gross Settlement Fund, including, without limitation, any taxes or tax detriments that may be imposed upon ELNA or its counsel with respect to any income earned by the Gross Settlement Fund for any period during which the Gross Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (collectively, "Taxes"); and (ii) all expenses and costs incurred in connection with the operation and implementation of this paragraph, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph (collectively, "Tax Expenses"). In all events neither ELNA nor its counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. With funds from the Gross Settlement Fund, the Escrow Agent shall indemnify and hold harmless ELNA and its counsel for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Gross Settlement Fund and shall timely be paid by the Escrow Agent out of the Gross Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither ELNA nor its counsel is responsible therefor, nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, their tax attorneys and their accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

**Administration and Distribution of Gross Settlement Fund**

21.   ***Time to Appeal.*** The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Judgment regardless of whether or not either the Distribution Plan or an application for attorneys' fees and expenses has been submitted to the Court or resolved.

22.   ***Distribution of Gross Settlement Fund.*** Upon further orders of the Court, the Notice and Claims Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer the claims submitted

by members of the Class and shall oversee distribution of the Gross Settlement Fund to Authorized Claimants pursuant to the Distribution Plan. Subject to the terms of this Settlement Agreement and any order(s) of the Court, the Gross Settlement Fund shall be applied as follows:

(a)      To pay all costs and expenses reasonably and actually incurred in connection providing notice to the Class in connection with administering and distributing the Net Settlement Fund to Authorized Claimants, and in connection with paying escrow fees and costs, if any;

(b)      To pay all costs and expenses, if any, reasonably and actually incurred in accepting claims and assisting with the filing and processing of such claims;

(c)      To pay the Taxes and Tax Expenses as defined herein;

(d)   ·   To pay any Attorney Fee and Expense Award that is allowed by the Court, subject to and in accordance with the Agreement; and.

(e)      To distribute the balance of the "Net Settlement Fund" to Authorized Claimants as allowed by the Agreement, any Distribution Plan or order of the Court.

23.      ***Distribution of Net Settlement Fund.*** The Net Settlement Fund shall be distributed in accordance with the Distribution Plan that is approved by the Court.

24.      All Persons who fall within the definition of the Class who do not timely and validly request to be excluded from the Class shall be subject to and bound by the provisions of this Settlement Agreement, the releases contained herein, and the Judgment with respect to all Released Claims, regardless of whether such Persons seek or obtain by any means, including, without limitation, by submitting a Proof of Claim and Release or any similar document, any distribution from the Gross Settlement Fund or the Net Settlement Fund.

25.      ***No Liability for Distribution of Settlement Funds.*** Neither the Releasees nor their counsel shall have any responsibility for, interest in or liability whatsoever with respect to the distribution of the Gross Settlement Fund; the Distribution Plan; the determination, administration, or calculation of claims; the Settlement Fund's qualification as a "qualified settlement fund"; the payment or withholding of Taxes or Tax Expenses; the distribution of the Net Settlement Fund; or any losses incurred in connection with any such matters. The Releasors hereby fully, finally and

1   forever release, relinquish and discharge the Releasees and their counsel from any and all such

2   liability. No Person shall have any claim against Class Counsel or the Notice and Claims

3   Administrator based on the distributions made substantially in accordance with the Agreement and

4   the Settlement contained herein, the Distribution Plan or further orders of the Court.

5        26.   *Balance Remaining in Net Settlement Fund.* If there is any balance remaining in the

6   Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Class Counsel

7   may reallocate such balance among Authorized Claimants in an equitable and economic fashion,

8   distribute the remaining funds through *cy pres*, or allow the money to escheat to federal or state

9   governments, subject to Court approval. In no event shall the Net Settlement Fund revert to ELNA.

10       27.   *Distribution Plan Not Part of Settlement.* It is understood and agreed by the Settling

11  Parties that any Distribution Plan, including any adjustments to any Authorized Claimant's claim, is

12  not a part of this Settlement Agreement and is to be considered by the Court separately from the

13  Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this

14  Settlement Agreement, and any order or proceedings relating to the Distribution Plan shall not operate

15  to terminate or cancel this Settlement Agreement or affect the finality of the Judgment, the Final

16  Approval Order, or any other orders entered pursuant to this Settlement Agreement. The time to

17  appeal from an approval of the Settlement shall commence upon the Court's entry of the Judgment

18  regardless of whether either the Distribution Plan or an application for attorneys' fees and expenses

19  has been submitted to the Court or approved.

20  **Attorneys' Fees and Reimbursement of Expenses**

21       28.   *Fee and Expense Application.* Class Counsel may submit an application or

22  applications ("Fee and Expense Application") for distributions from the Gross Settlement Fund, for:

23  (a) an award of attorneys' fees; plus (b) reimbursement of expenses incurred in connection with

24  prosecuting the Action; plus (c) any interest on such attorneys' fees and expenses (until paid) at the

25  same rate and for the same periods as earned by the Settlement Fund, as appropriate, and as may be

26  awarded by the Court.

27

28

---

1      29.    **_Payment of Fee and Expense Award._** Any amounts that are awarded by the Court

2   pursuant to the above paragraph ("Fee and Expense Award") shall be paid from the Gross Settlement

3   Fund consistent with the provisions of this Settlement Agreement.

4      30.    **_Award of Fees and Expenses Not Part of Settlement._** The procedure for, and the

5   allowance or disallowance by the Court of, the Fee and Expense Application are not part of the

6   Settlement set forth in this Settlement Agreement and are to be considered by the Court separately

7   from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set

8   forth in this Settlement Agreement. Any order or proceeding relating to the Fee and Expense

9   Application, or any appeal from any Fee and Expense Award or any other order relating thereto or

10   reversal or modification thereof, shall not operate to terminate or cancel this Settlement Agreement,

11   or affect or delay the finality of the Judgment and the Settlement of the Action as set forth herein. No

12   order of the Court or modification or reversal on appeal of any order of the Court concerning any Fee

13   and Expense Award or Distribution Plan shall constitute grounds for cancellation or termination of

14   this Settlement Agreement.

15      31.    **_No Liability for Fees and Expenses of Class Counsel._** ELNA shall have no

16   responsibility for, and no liability whatsoever with respect to, any payment(s) to Class Counsel

17   pursuant to this Settlement Agreement and/or to any other Person who may assert some claim thereto

18   or any Fee and Expense Award that the Court may make in the Action, other than as set forth in this

19   Settlement Agreement.

20   **Cooperation**

21      32.    **_Cooperation as Consideration._** In return for the Release and Discharge provided

22   herein, ELNA agrees to pay the Settlement Amount and agrees to provide cooperation to IPPs as set

23   forth below.

24      33.    **_Termination of Cooperation Obligations._** IPPs' right to the cooperation described

25   below in paragraphs 34 through 36, inclusive, is extinguished upon Court approval of settlements

26   with the remaining electrolytic capacitor defendants.

27

28

34. ***Attorney Proffer.*** Within thirty (30) business days after Preliminary Approval by the Court of this Settlement Agreement or such time as mutually agreed by the Settling Parties, counsel for ELNA shall provide Class Counsel with an oral proffer of facts known to them about meetings or communications between competitors in the Capacitors industry. Should the attorney proffer required by this paragraph not occur within the thirty (30) business days after Preliminary Approval, IPPs do not waive their right to an attorney proffer.

35. ***Cooperation Subject to and Consistent with Prior Obligations.*** ELNA and IPPs shall not be obligated to provide cooperation that would violate an applicable court order or ELNA's commitments to the United States Department of Justice or any other domestic or foreign governmental entity. Additionally, IPPs and ELNA will take reasonable efforts to accommodate the other's efforts to minimize duplication in the providing of any cooperation.

36. ***Further Cooperation.*** The Settling Parties agree to the following, except that all cooperation obligations by ELNA shall cease if IPPs cease to be a party in the Action against all other Defendants.

(a)     To the extent ELNA has not already done so, ELNA will produce documents that it has provided to the U.S. law enforcement authorities, including all English translations of any documents, concerning Capacitors, to the extent they exist, within seven (7) business days after Preliminary Approval by the Court of this Settlement Agreement.

(b)     To the extent ELNA has not already done so, ELNA shall identify and produce documents concerning meetings with competitors attended by ELNA or that were provided to ELNA by other participants, including meeting minutes and notes from attendees, and emails concerning meetings with competitors within seven (7) business days after the Preliminary Approval by the Court of this Settlement Agreement. Class Counsel seek documents concerning meetings or other meetings where prices of Capacitors were discussed, including but not limited to, so-called ECC, ASEAN SM, Presidents' Meetings, TC, KCC, ATC, CUP, Taiwan SM, AT Statistics, MK Research, JFC, Hong Kong SM, Singapore SM, Shanghai SM, TAOB, and other such similar meetings, as well as bilateral communications with competitors.

(c)     If ELNA produces any declarations, documents, data, or other responses to discovery to any other plaintiff in the Action, ELNA will produce the same to IPPs.

(d)     Each of the parties shall cooperate in good faith to authenticate, to the extent possible, a reasonable number of documents and/or things produced by ELNA in the Action, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the Action, without the need for the other party to issue any subpoenas, letters rogatory, letters of request, or formal discovery requests to the other.

(e)     ELNA will make its best efforts to make up to three (3) current or former employee reasonably available for interviews, as necessary. The interviews shall be held either at mutually agreed locations in the United States or, if mutually agreed, via videoconference or teleconference. Such interviews shall not exceed seven (7) hours per employee. Such depositions shall not exceed seven (7) hours in length unless an interpreter is used, in which event the examination time shall not exceed fourteen (14) hours.

(f)     ELNA agrees IPPs may ask questions at depositions of ELNA witnesses noticed by other plaintiffs in the litigation.

(g)     To the extent ELNA has not already done so, ELNA shall produce its transactional data regarding its sales of Capacitors to its customers. ELNA agrees that it will respond in writing to reasonable requests for clarification of the transactional, production, and cost data that ELNA produced in the Action and also about its methods of pricing Capacitors.

(h)     Subject to paragraph 34, ELNA will use its best efforts to make up to three (3) present or former employees available to IPPs at trial for testimony.

37.   *Other Discovery.* Upon the Execution Date, neither ELNA nor IPPs shall file motions against the other or initiate or participate in any discovery, motion or proceeding directly adverse to the other in connection with the Action, except as specifically provided for herein. ELNA and IPPs shall not be obligated to respond or supplement prior responses to formal discovery that has been previously propounded by the other in the Action.

38.     *Resolution of Disputes.* To the extent the Settling Parties disagree about the interpretation or enforcement of any terms of this Settlement Agreement relating to future cooperation by ELNA, or about the triggering of the threshold specified in the Confidential Termination Agreement referenced in ¶ 38(b), they agree to submit such disputes for binding resolution by the Honorable James Donato or another mutually agreed neutral.

**Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

39.     *Occurrence of Effective Date.* Upon the occurrence of all of the events required in order to trigger the Effective Date as defined in ¶ 1(m), any and all remaining interest or right of ELNA in or to the Gross Settlement Fund, if any, shall be absolutely and forever extinguished, and the Gross Settlement Fund (less any Notice and Administrative Costs, Taxes or Tax Expenses or any Fee and Expense Award paid) shall be transferred from the Escrow Agent to the Notice and Claims Administrator as successor Escrow Agent within ten (10) days after the Effective Date.

40.     *Failure of Effective Date to Occur.* If, for whatever reason, the Effective Date does not occur or is not met, then this Settlement Agreement shall be cancelled and terminated, subject to and in accordance with ¶ 41, below, unless the Settling Parties mutually agree in writing to proceed with this Settlement Agreement.

41.     **Exclusions.**

(a)     Any Class Member that wishes to seek exclusion from the Settlement Class by "opting out" must timely submit a written request for exclusion to the Claims Administrator. Class Counsel shall cause copies of requests for exclusion from the Class to be provided to ELNA's counsel. No later than fourteen (14) days after the final date for mailing requests for exclusion, Class Counsel shall provide ELNA's counsel with a complete and final list of opt-outs. With the motion for final approval of the Settlement, Class Counsel will file with the Court a complete list of requests for exclusion from the Class, including only the name, city and state of the person or entity requesting exclusion.

(b)     ELNA shall have the option to rescind and terminate this Settlement Agreement in its entirety and without liability of any kind if based on available data, the aggregate

1  purchases of Electrolytic Capacitors purchased from distributors by Class Members that opt out

2  pursuant to ¶ 38(a) of this Settlement Agreement exceeds a threshold agreed to by IPPs and ELNA

3  in the Confidential Termination Agreement that has been executed separately by IPPs and ELNA.

4  ELNA shall exercise this option to rescind and terminate this Settlement Agreement by providing ten

5  (10) business days written notice to Class Counsel. Upon such rescission and termination, IPPs and

6  ELNA will notify the Court immediately and withdraw all pending motions filed to effectuate this

7  Settlement. IPPs and ELNA will also, as may be required by the Court, submit the Confidential

8  Termination Agreement to the Court for in-camera review. In the event that ELNA exercises its

9  option to rescind and terminate this Settlement Agreement: (i) this Settlement Agreement shall be

10  null and void as to ELNA, and shall have no force or effect and shall be without prejudice to the

11  rights and contentions of Releasees and Releasors in this or any other litigation; (ii) the Gross

12  Settlement fund shall be refunded promptly to ELNA, minus such payment (as set forth in this

13  Settlement Agreement) of Notice and Administrative Costs and Taxes and Tax Expenses, consistent

14  with the provisions of ¶¶16 and 20.

15      42.    *Objections.* Settlement Class Members who wish to object to any aspect of the

16  Settlement must file with the Court a written statement containing their objection by end of the period

17  to object to the Settlement. Any award or payment of attorneys' fees made to counsel to an objector

18  to the Settlement shall only be made by Court order and upon a showing of the benefit conferred to

19  the Class. In determining any such award of attorneys' fees to an objectors' counsel, the Court will

20  consider the incremental value to the Class caused by any such objection. Any award of attorneys'

21  fees by the Court will be conditioned on the objector and his or her attorney stating under penalty of

22  perjury that no payments shall be made to the objector based on the objector's participation in the

23  matter - other than as ordered by the Court.

24      43.    *Failure to Enter Proposed Preliminary Approval Order, Final Approval Order or*

25  *Judgment.* If the Court does not enter the Preliminary Approval Order, the Final Approval Order or

26  the Judgment, or if the Court enters the Final Approval Order and the Judgment and appellate review

27  is sought and, on such review, the Final Approval Order or the Judgment is finally vacated, modified,

28

or reversed, then this Settlement Agreement and the Settlement incorporated therein shall be cancelled and terminated; provided, however, the Settling Parties agree to act in good faith to secure Final Approval of this Settlement and to attempt to address in good faith concerns regarding the Settlement identified by the Court and any court of appeal. No Settling Party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein; provided, however, that no order of the Court concerning any Fee and Expense Application or Distribution Plan, or any modification or reversal on appeal of such order, shall constitute grounds for cancellation or termination of this Settlement Agreement by any Settling Party. Without limiting the foregoing, ELNA shall have, in its sole and absolute discretion, the option to terminate the Settlement in its entirety in the event that the Judgment, upon becoming Final, does not provide for the dismissal with prejudice of all the Action against them.

44. **Termination.** Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Settlement Agreement should terminate, or be cancelled or otherwise fail to become effective for any reason, the Settlement as described herein is not finally approved by the Court, or the Judgment is reversed or vacated following any appeal taken therefrom, then:

(a)   within five (5) business days after written notification of such event is sent by counsel for ELNA to the Escrow Agent, the Gross Settlement Fund, including the Settlement Amount and all interest earned on the Settlement Fund while held in escrow excluding only Notice Administrative and Class Administration Costs that have either been properly disbursed or are due and owing, Taxes and Tax Expenses that have been paid or that have accrued and will be payable at some later date, and attorneys' fees and costs that have been disbursed pursuant to Court order will be refunded, reimbursed and repaid by the Escrow Agent to ELNA; if said amount or any portion thereof is not returned within such five (5) day period, then interest shall accrue thereon at the rate of ten percent (10%) per annum until the date that said amount is returned;

(b)   within thirty (30) business days after written notification of such event is sent by Counsel for ELNA to Class Counsel, all attorneys' fees and costs which have been disbursed to

Settlement Agreement; Case No. 3:14-cv-03264-JD                    23

Class Counsel pursuant to Court order shall be refunded, reimbursed and repaid by Class Counsel to ELNA;

(c)     the Escrow Agent or its designee shall apply for any tax refund owed to the Gross Settlement Fund and pay the proceeds to ELNA, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund, pursuant to such written request;

(d)     the Settling Parties shall be restored to their respective positions in the Action as of the Execution Date, with all of their respective claims and defenses, preserved as they existed on that date;

(e)     the terms and provisions of this Settlement Agreement, with the exception of ¶¶ 42-44 (which shall continue in full force and effect), shall be null and void and shall have no further force or effect with respect to the Settling Parties, and neither the existence nor the terms of this Settlement Agreement (nor any negotiations preceding this Settlement Agreement nor any acts performed pursuant to, or in furtherance of, this Settlement Agreement) shall be used in the Action or in any other action or proceeding for any purpose (other than to enforce the terms remaining in effect); and

(f)     any judgment or order entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

**No Admission of Liability**

45.     *Final and Complete Resolution.* The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the Action and Released Claims and to compromise claims that are contested, and it shall not be deemed an admission by any Settling Party as to the merits of any claim or defense or any allegation made in the Action.

46.     *Federal Rule of Evidence 408.* The Settling Parties agree that this Settlement Agreement, its terms and the negotiations surrounding this Settlement Agreement shall be governed by Federal Rule of Evidence 408 and shall not be admissible or offered or received into evidence in

1  any suit, action or other proceeding, except upon the written agreement of the Settling Parties hereto,

2  pursuant to an order of a court of competent jurisdiction, or as shall be necessary to give effect to,

3  declare or enforce the rights of the Settling Parties with respect to any provision of this Settlement

4  Agreement.

5        47.    *Use of Agreement as Evidence.* Neither this Settlement Agreement nor the Settlement,

6  nor any act performed or document executed pursuant to or in furtherance of this Settlement

7  Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or

8  evidence of, the validity of any Released Claims, of any allegation made in the Action, or of any

9  wrongdoing or liability of ELNA; or (b) is or may be deemed to be or may be used as an admission

10  of, or evidence of, any liability, fault or omission of the Releasees in any civil, criminal or

11  administrative proceeding in any court, administrative agency or other tribunal. Neither this

12  Settlement Agreement nor the Settlement, nor any act performed or document executed pursuant to

13  or in furtherance of this Settlement Agreement or the Settlement shall be admissible in any proceeding

14  for any purpose, except to enforce the terms of the Settlement, and except that the Releasees may file

15  this Settlement Agreement and/or the Judgment in any action for any purpose, including, but not

16  limited to, in order to support a defense or counterclaim based on principles of res judicata, collateral

17  estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim

18  preclusion or issue preclusion or similar defense or counterclaim. The limitations described in this

19  paragraph apply whether or not the Court enters the Preliminary Approval Order, the Final Approval

20  Order, or the Judgment, or if the Settlement Agreement is terminated or rescinded.

21  **Miscellaneous Provisions**

22        48.   ' *Voluntary Settlement.* The Settling Parties agree that the Settlement Amount and the

23  other terms of the Settlement as described herein were negotiated in good faith by the Settling Parties,

24  and reflect a settlement that was reached voluntarily and after consultation with competent legal

25  counsel.

26        49.    *Consent to Jurisdiction.* ELNA and each Class Member hereby irrevocably submit to

27  the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding or

28

dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, ELNA and the Class Members irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court or that the Court is in any way an improper venue or an inconvenient forum. Nothing herein shall be construed as a submission to jurisdiction for any purpose other than any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement.

50.     ***Resolution of Disputes; Retention of Exclusive Jurisdiction.*** Any disputes between or among ELNA and any Class Members concerning matters contained in this Settlement Agreement and the Confidential Termination Agreement referenced in ¶ 38(b) shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain exclusive jurisdiction over the implementation and enforcement of this Settlement Agreement.

51.     ***Binding Effect.*** This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by IPPs and Class Counsel shall be binding upon all Class Members.

52.     ***Authorization to Enter Settlement Agreement.*** The undersigned representatives of ELNA represent that they are fully authorized to enter into and to execute this Settlement Agreement on behalf of ELNA. Class Counsel, on behalf of IPPs and the Class, represent that they are, subject to Court approval, expressly authorized to take all action required or permitted to be taken by or on behalf of the IPPs and the Class pursuant to this Settlement Agreement to effectuate its terms and to enter into and execute this Settlement Agreement and any modifications or amendments to the Settlement Agreement on behalf of the Class that they deem appropriate.

53.     ***Notices.*** All notices under this Settlement Agreement shall be in writing. Each such notice shall be given either by (a) e-mail; (b) hand delivery; (c) registered or certified mail, return receipt requested, postage pre-paid; (d) Federal Express or similar overnight courier; or (e) facsimile

1   and first class mail, postage pre-paid and, if directed to any Class Member, shall be addressed to Class

2   Counsel at their addresses set forth below, and if directed to ELNA, shall be addressed to their

3   attorneys at the addresses set forth below or such other addresses as Class Counsel or ELNA may

4   designate, from time to time, by giving notice to all parties hereto in the manner described in this

5   paragraph.

6          If directed to the IPPs, address notice to:

7          COTCHETT, PITRE & MCCARTHY
8          Adam J. Zapala (azapala@cpmlegal.com)
           840 Malcolm Road, Suite 200
9          Burlingame, CA 94010
           Telephone: (650) 697-6000
10         Facsimile: (650) 697-0577

11         If directed to ELNA, address notice to:

12         WILMER CUTLER PICKERING HALE AND DORR LLP
           Thomas Mueller (thomas.mueller@wilmerhale.com)
13         1875 Pennsylvania Avenue, NW
           Washington, D.C. 20006
14         Telephone: (202) 663-6000
           Facsimile: (202) 663-6363
15

16         54.    ***Confidentiality of Settlement Negotiations.*** Class Counsel shall keep strictly

17  confidential and not disclose to any third party, including specifically any counsel representing any

18  other current or former party to the Action, any non-public information regarding the Settling Parties'

19  negotiation of this settlement and/or the Settlement Agreement. For the sake of clarity, information

20  contained within this Settlement Agreement shall be considered public, and ELNA may issue a press

21  release regarding execution of the Settlement Agreement and the amount paid in connection with the

22  Settlement Agreement.

23         55.    ***Headings.*** The headings used in this Settlement Agreement are intended for the

24  convenience of the reader only and shall not affect the meaning or interpretation of this Settlement

25  Agreement.

26         56.    ***No Party Deemed to Be the Drafter.*** None of the parties hereto shall be deemed to be

27  the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case

28

---

Settlement Agreement; Case No. 3:14-cv-03264-JD                                              27

1 law or rule of interpretation or construction that would or might cause any provision to be construed
2 against the drafter hereof.

3      57.    ***Choice of Law.*** This Settlement Agreement shall be considered to have been
4 negotiated, executed and delivered, and to be wholly performed, in the State of California, and the
5 rights and obligations of the parties to this Settlement Agreement shall be construed and enforced in
6 accordance with, and governed by, the internal, substantive laws of the State of California without
7 giving effect to that State's choice of law principles.

8      58.    ***Amendment; Waiver.*** This Settlement Agreement shall not be modified in any respect
9 except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder
10 shall be effective only if made by written instrument of the waiving party. The waiver by any party
11 of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other
12 breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.

13     59.    ***Execution in Counterparts.*** This Settlement Agreement may be executed in one or
14 more counterparts. All executed counterparts and each of them shall be deemed to be one and the
15 same instrument. Counsel for the parties to this Settlement Agreement shall exchange among
16 themselves original signed counterparts and a complete set of executed counterparts shall be filed
17 with the Court.

18     60.    ***Notification of State Officials.*** ELNA shall be responsible for providing all notices
19 required by the Class Action Fairness Act to be provided to state attorneys general or to the United
20 States of America.

21     61.    ***Integrated Agreement.*** This Settlement Agreement constitutes the entire agreement
22 between the Settling Parties and no representations, warranties or inducements have been made to
23 any party concerning this Settlement Agreement other than the representations, warranties and
24 covenants contained and memorialized herein. It is understood by the Settling Parties that, except for
25 the matters expressly represented herein, the facts or law with respect to which this Settlement
26 Agreement is entered into may turn out to be other than or different from the facts now known to each
27 party or believed by such party to be true; each party therefore expressly assumes the risk of the facts

28

1   or law turning out to be so different, and agrees that this Settlement Agreement shall be in all respects

2   effective and not subject to termination by reason of any such different facts or law. Except as

3   otherwise provided herein, each party shall bear its own costs and attorneys' fees.

4          IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives,

5   have executed this Settlement Agreement as of the date first herein above written.

6          CLASS COUNSEL, on behalf of IPPs individually and on behalf of the Class.

8   By: _____

9   Adam J. Zapala
    Elizabeth T. Castillo

10  **COTCHETT, PITRE & MCCARTHY**
    San Francisco Airport Office Center

11  840 Malcolm Road, Suite 200
    Burlingame, CA 94010

12  Telephone: (650) 697-6000
    Facsimile: (650) 697-0577

13  azapala@cpmlegal.com

14  ecastillo@cpmlegal.com

16  Attorneys for Defendants ELNA Co., Ltd. and ELNA America, Inc.

18  By: _Thomas Mueller_

    Thomas Mueller

19  **WILMER CUTLER PICKERING HALE AND DORR LLP**
    1875 Pennsylvania Avenue, NW

20  Washington, D.C. 20006

21  Telephone: (202) 663-6000
    Facsimile: (202) 663-6363

22  thomas.mueller@wilmerhale.com

23  Heather S. Tewksbury
    **WILMER CUTLER PICKERING HALE AND DORR LLP**

24  950 Page Mill Road
    Palo Alto, CA 94304

25  Telephone: (650) 858-6000

26  Facsimile: (650) 858-6100
    heather.tewksbury@wilmerhale.com

---

Settlement Agreement; Case No. 3:14-cv-03264-JD                    29