Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
James G. Dallal (State Bar No. 277826)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            swilliams@saverilawfirm.com
            jdallal@saverilawfirm.com
            areddy@saverilawfirm.com
            cyoung@saverilawfirm.com

*Lead Counsel for the Direct Purchaser Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: THE DIRECT PURCHASER CLASS ACTION | Master File No.  3:17-md-02801-JD<br>Civil Action No. 3:14-cv-03264-JD<br><br>**DIRECT PURCHASER CLASS'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS KEMET AND SHIZUKI**<br><br>Date:         January 23, 2020<br>Time:        1:30 p.m.<br>Courtroom:   11, 19th Floor |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 1:30 p.m. on January 23, 2020, at the United States District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as soon thereafter as the matter may be head, the Direct Purchaser Class (the "Class") will and hereby do move the Court for an order granting preliminary approval of the Class's class action settlements with defendants KEMET Corporation and KEMET Electronics Corporation (collectively, "KEMET"); and Shizuki Electric Co., Inc. ("Shizuki"; KEMET and Shizuki collectively, the "Settling Defendants") in partial settlement of this class action lawsuit.

The Class's motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Joseph R. Saveri and the exhibits attached thereto, the Declaration of Kendall S. Zylstra and the exhibits attached thereto, the Court's files and records in this matter, oral argument of counsel, and such other and further matters as the Court may consider.

Dated:  January 6, 2020

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.

By: _____*/s/ Joseph R. Saveri*_____
Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
James G. Dallal (State Bar No. 277826)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email:  jsaveri@saverilawfirm.com
           swilliams@saverilawfirm.com
           jdallal@saverilawfirm.com
           areddy@saverilawfirm.com
           cyoung@saverilawfirm.com

*Lead Counsel for the Direct Purchaser Class*

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ..................................................................................................... 1

II.   CASE HISTORY AND SETTLING DEFENDANTS ............................................ 2

      A.    The Class's Factual Allegations and Claims ............................................ 2

      B.    Procedural History and Discovery ............................................................ 2

      C.    Prior Settlement History .............................................................................3

      D.    The Settling Defendants ............................................................................ 4

            1.    KEMET .............................................................................................. 4

            2.    Shizuki ............................................................................................. 4

III.  SUMMARY OF PROPOSED SETTLEMENTS .................................................. 4

      A.    Settlement Consideration—$63 million cash. ......................................... 4

            1.    KEMET's Settlement Consideration ..........................................5

            2.    Shizuki's Settlement Consideration ...........................................5

      B.    The Class ......................................................................................................5

      C.    Release of Claims against Settling Defendants ...................................... 6

      D.    Attorneys' Fees and Expenses .................................................................. 6

IV.   THE PROPOSED SETTLEMENTS SHOULD BE PRELIMINARILY
      APPROVED ...............................................................................................................7

      A.    Standards for Preliminary Approval of a Proposed Settlement ...................................7

      B.    The Proposed Settlements Are Procedurally Sound and Presumptively Fair.............. 8

      C.    The Proposed Settlements Are Within the Range of Reasonableness .......................... 9

V.    THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED .......................10

      A.    Summary of Notice Plan ........................................................................ 11

            1.    Notice and Claims Administrator ............................................. 11

            2.    Settlement Website ...................................................................... 11

            3.    Direct Notice—Long Form Notice............................................ 11

Master File No. 3:17-md-02801-JD
Case No. 3:14-cv-03264-JD                                   ii

**DIRECT PURCHASER CLASS'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANTS KEMET AND SHIZUKI**

a.   Opportunity to opt out of the Class is not necessary ...........................12

4.   Publication of Notice.........................................................................13

B.   The Notice Forms and Dissemination Plan Meet All Requirements...........................13

VI.   DISTRIBUTION AND USE OF SETTLEMENT FUNDS ...................................................13

A.   Distribution of Funds to Class Members .......................................................13

B.   Payment of Claims Administration Expenses ...................................................14

VII.   THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED ...................................15

VIII.   CONCLUSION ...................................................................................................15

# TABLE OF CONTENTS

**Page(s)**

**Cases**

*In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004)......................................................................................................... 9

*In re Citric Acid Antitrust Litig.*, 145 F.Supp.2d 1152 (N.D. Cal. 2001) .........................................14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ..................................................... 8

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, slip. op. (N.D. Cal. Nov. 1, 2006) ................................................................................................ 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................................. 8

*In re Heritage Bond Litig.,* No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .......... 8

*In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509, 2015 WL 12991307 (N.D. Cal. Mar. 3, 2015) ....................................................................................................................... 8

*In re High-Tech Employees Antitrust Litig.*, No. 11-cv-02509, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ...................................................................................................................... 8

*In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619 (E.D. Pa. 2004) .......................................... 9

*Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ & C-97-0457 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ..............................................10

*Low v. Trump Univ.*, 881 F.3d 1111 (9th Cir. 2018) .......................................................................12

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 Fed. App'x 651 (9th Cir. 2019) .............................................................................................7

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)..........................8, 10, 12, 13

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ..................................................................10

*In re Plastic Tableware Antitrust Litig.*, No. Civ. A. 94-3564, 1995 WL 678663 (E.D. Pa. Nov. 13, 1995)....................................................................................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018) .............................................................................................................. 8

*Wal-Mart Stores Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ................................................................... 8

## Rules

Fed. R. Civ. P. 23 ............................................................................................ 1, 13

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................... 10, 11

Fed. R Civ. P. 23(e) .............................................................................. 2, 7, 8, 13

Fed. R. Civ. P. 23(e)(1) ....................................................................................7

Fed. R. Civ. P. 23(e)(1)(B) ..............................................................................10

Fed. R. Civ. P. 23(e)(3) .................................................................................. 4

Fed. R. Civ. P. 23(e)(4) ..................................................................................12

Fed. R. Civ. P. 23(f) ..................................................................................... 6

Fed. R. Civ. P. 53.............................................................................................7

## Other Authorities

4 William B. Rubenstein, Albert Conte & Herbert Newberg, *Newberg on Class Actions* §
    9.52 (5th ed. 2014) ...........................................................................12

4 William B. Rubenstein, Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§
    13:39 (5th ed. 2014) ..........................................................................7

www.CapacitorsAntitrustSettlement.com............................................... 11

## I.   INTRODUCTION

The Direct Purchaser Class (the "Class") submits this memorandum in support of their motion for preliminary approval of the proposed settlement agreements (the "Settlement Agreements") between the Class and defendants KEMET Corporation and KEMET Electronics Corporation (collectively, "KEMET"); and Shizuki Electric Co., Inc. ("Shizuki"; KEMET and Shizuki collectively, the "Settling Defendants").

The Class proposes using the same notice procedures and the same allocation plan that the Court approved in connection with the first three rounds of settlements.

The Settlement Agreements create a non-contingent, all-cash fund of $63 million (the "Settlement Fund"). The settlement amounts are as follows: (1) KEMET, $62,000,000; (2) Shizuki, $1,000,000. The Class continues in its prosecution of its price-fixing claims against the non-settling Defendants.[1]

The parties reached these agreements through arm's-length negotiations between experienced and informed counsel after years of litigation and substantial discovery. The settlements represent an excellent recovery for the Class and are well within the range of possible recoveries warranting preliminary approval.

The Class therefore requests, pursuant to Rule 23 and the Procedural Guidance for Class Action Settlements for the Northern District of California, that the Court: (1) grant preliminary approval of the

---

[1] The defendants who have not settled with the Class are Panasonic Corporation; Panasonic Corporation of North America; SANYO Electric Co., Ltd.; SANYO North America Corporation; Nippon Chemi-Con Corporation; United Chemi-Con, Inc.; AVX Corporation; ELNA Co., Ltd.; ELNA America Inc.; Matsuo Electric Co., Ltd.; TOSHIN KOGYO Co., Ltd.; Holy Stone Enterprise Co., Ltd.; Milestone Global Technology, Inc. (D/B/A HolyStone International); Vishay Polytech Co., Ltd.; Taitsu Corporation; Taitsu America, Inc.; Shinyei Kaisha; Shinyei Technology Co., Ltd.; Shinyei Capacitor Co., Ltd.; Shinyei Corporation of America, Inc.; and Nissei Electric Co., Ltd.

The Court has previously approved three rounds of settlements with defendants Fujitsu Ltd.; Hitachi Chemical Co., Ltd.; Hitachi AIC, Inc.; Hitachi Chemical Co. America, Ltd.; NEC Tokin Corporation; NEC Tokin America, Inc.; Nichicon Corporation; Nichicon (America) Corporation; Nitsuko Electronics Corporation; Okaya Electric Industries Co., Ltd.; Okaya Electric America, Inc.; ROHM Co., Ltd.; ROHM Semiconductor U.S.A., LLC; Rubycon Corporation; Rubycon America Inc.; Soshin Electric Co., Ltd.; and Soshin Electronics of America Inc.

Settlement Agreements; (2) approve the proposed plan of notice to the Class; (3) set a schedule for disseminating notice to Class Members, as well as deadlines to comment on or object to the Settlement Agreements; and (4) schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlement Agreements are fair, reasonable, and adequate; and should be finally approved. The proposed schedule is summarized in **Attachment A**.

## II.    CASE HISTORY AND SETTLING DEFENDANTS

### A.    The Class's Factual Allegations and Claims

The Defendants in this action are 22 different corporate families that manufacture and sell capacitors in the United States and around the world. The Class alleges that at least as early as January 1, 2002, Defendants entered into a price-fixing conspiracy with the purpose and effect of fixing, raising, and stabilizing the prices of their aluminum, tantalum, and film capacitors sold to United States purchasers. *See* Declaration of Joseph R. Saveri ("Saveri Decl.") at ¶ 3.

### B.    Procedural History and Discovery

The Class has substantially advanced this case during the five and a half years since Plaintiff Chip-Tech, Ltd. filed the first capacitors price-fixing complaint in July 2014. Dkt.[2] 1; *see also* Saveri Decl., ¶¶ 4-15. After facing three rounds of Defendants' motions to dismiss, the Class's claims largely emerged intact. Dkts. 710, 1003, 1546. The Class's Third Amended Complaint, filed on September 6, 2017 ("3AC"), is the operative pleading. Dkt. 1831; Saveri Decl., ¶ 4.

In the three prior rounds of settlements that the Court has approved, *e.g.*, Dkt. 1713; MDL Dkt.[3] 249, counsel for the Class ("Lead Class Counsel") set forth its and class representatives' efforts prosecuting this action. MDL Dkt. 172, at 3-5. The substantial work has included extensive discovery, analyzing 39 million Bates-numbered pages (mostly in Japanese) from over 100 document custodians, and deposing over 90 individuals. *Id.* Since the time the Class filed its approval papers for a prior round of settlements in March 2019, Dkt. 2284, the Class has submitted three rebuttal merits expert reports; taken four additional merits depositions; engaged in complex scheduling negotiations to calendar

---

[2] "Dkt. ___" citations to entries in Case No. 3:14-cv-03264.

[3] "MDL Dkt. ___" citations to entries in Case No. 3:17-md-02801.

depositions of the 16 experts in this case; took and defended 12 expert depositions; litigated five *Daubert* motions; litigated eight motions for summary judgment; attended and advocated at multiple hearings including a September 17, 2019, concurrent expert evidence hearing; negotiated and drafted in concert with Defendants seven summary judgment charts summarizing the disputes in the seven summary judgment motions premised on purported non-participation; negotiated with several third parties concerning document subpoenas; engaged in mediations with defendants; and continued preparing the case for trial. Saveri Decl., ¶ 13.

On November 14, 2018, the Court certified the Direct Purchaser Class. Dkt. 2231.

### C.    Prior Settlement History

On June 27, 2017, the Court granted final approval of the Class's first round of settlements with the NEC Tokin, Fujitsu, Nitsuko, Okaya, and ROHM defendants totaling $32.6 million. Dkt. 1713. On June 28, 2018, the Court granted final approval of the Class's second round of settlements with the Hitachi Chemical and Soshin defendants totaling $66.9 million. Dkt. 2166. On February 28, 2019, the Court granted preliminary approval of the Class's third round of settlements with the Nichicon and Rubycon defendants totaling $108 million plus up to an additional $12 million in contingent payments based on Rubycon's financial results through fiscal year 2019. Dkt. 2282. These settlements demonstrate that the Lead Class Counsel and the named class representatives have diligently and successfully represented the Class. A summary of the distributions made for the first two rounds of settlements—including information concerning the total settlement funds, the total number of Class Members, the total number of notices directly mailed, the number and percentage of claim forms submitted, the average recovery per Class Member, the administrative costs, and the attorneys' fees and costs—is set forth in **Attachment B**.

Lead Class Counsel estimates that the number and percentage of Class Members expected to participate in this fourth round of settlements are likely to be similar to those in the prior settlements as detailed in Attachment B.

**D.    The Settling Defendants**

      **1.    KEMET**

The KEMET defendants manufactured, sold and distributed sold aluminum, tantalum, and film capacitors at various times during the class period. 3AC, Dkt. 1831, at ¶¶ 40-42. Defendant KEMET Electronics Corporation ("KEC"), a Delaware corporation, is a wholly owned subsidiary of KEMET Corporation with its principal place of business located at One East Broward Boulevard, Fort Lauderdale, Florida 33301. *Id.* KEMET Corporation is a Delaware Corporation with its principal place of business located at One East Broward Boulevard, Fort Lauderdale, Florida 33301. *Id.* KEMET Corporation is the holding company of KEC and has no business of its own. During all relevant times, the Defendants manufactured, sold and distributed aluminum, tantalum, and film capacitors, either directly or through its business units, subsidiaries, agents or affiliates, to United States purchasers. *Id.* at ¶ 40.

      **2.    Shizuki**

Shizuki manufactured, sold, and distributed film capacitors either directly or through its business units, subsidiaries, agents or affiliates to United States purchasers during the class period. 3AC, Dkt. 1831 at ¶ 98. Shizuki is a Japanese corporation with its principal place of business located at 10-45 Taisha-cho, Nishinomiya, Hyogo 662-0867, Japan. *Id.*

## III.    SUMMARY OF PROPOSED SETTLEMENTS

**A.    Settlement Consideration—$63 million cash.**

Pursuant to their Settlement Agreements[4] described below, KEMET and Shizuki will make, or have already made, payments into an escrow account (the "Settlement Fund"), held and administered by an escrow agent. Saveri Decl., Ex. A at ¶ 17; *id.*, Ex. B at ¶ 17. Lead Class Counsel recommends the appointment of Citibank, N.A. as the escrow agent.

---

[4] Other than the Settlement Agreements attached to the Saveri Declaration, there are no other agreements relating to the settlements that are required to be identified under Fed. R. Civ. P. 23(e)(3).

### 1.   KEMET's Settlement Consideration

The Class and KEMET executed an agreement effective November 8, 2019, resolving the claims of the Class against the KEMET defendants. Saveri Decl., ¶ 14; *id.*, Ex. A. The Class agreed to release its claims against the KEMET defendants in exchange for $10,000,000 in cash payable by December 8, 2019, and $52,000,000 in cash payable no later than November 8, 2020 for a total of $62,000,000. Saveri Decl., Ex. A ¶ 17. In light of the settlement amount and the extensive discovery from KEMET which has been completed, KEMET has no cooperation obligations under its settlement agreement.

### 2.   Shizuki's Settlement Consideration

On November 19, 2019, the Class and Shizuki executed an agreement resolving the claims of the Class against Shizuki. Saveri Decl., ¶ 15; *id.*, Ex. B. The Class agreed to release its claims against Shizuki in exchange for cash payments totaling $1,000,000. In light of the settlement amount, the extensive discovery from Shizuki, the degree of Shizuki's involvement in the conduct alleged, and the parties' assessment of the strengths and weaknesses of Shizuki's available defenses, Shizuki has no cooperation obligations under its settlement agreement.

## B.   The Class

On February 28, 2019, the Court entered an Order Granting the Class's Motion for Approval of Plan for Notice of Pendency of Class Action.[5] Dkt. 2282. The Order certified and defined the Class as follows:

> All persons (including individuals, companies, or other entities) that purchased Capacitors (including through controlled subsidiaries, agents, affiliates, or joint ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates, or joint ventures from January 1, 2002 to December 31, 2013 (the "Class Period"), and such persons are: (a) inside

---

[5] On November 14, 2018, the Court had previously certified a class consisting of "all persons that purchased capacitors directly from any of the remaining defendants from January 1, 2002 to December 31, 2013 (the 'Class Period'), where such persons are: (a) inside the United States and were billed or invoiced for capacitors by one or more Defendant Entities during the Class Period (*i.e.*, where capacitors were 'billed to' persons within the United States); or (b) outside the United States and were billed or invoiced for capacitors by one or more Defendant Entities during the Class Period, where such capacitors were imported into the United States by one or more Defendant Entities (*i.e.*, where the capacitors were 'billed to' persons outside the United States but 'shipped to' persons within the United States)." Dkt. 2231.

the United States and were billed or invoiced for capacitors by one or more Defendants during the Class Period (*i.e.*, where capacitors were "billed to" persons within the United States); or (b) outside the United States and were billed or invoiced for capacitors by one or more Defendants during the Class Period, where such capacitors were imported into the United States by one or more Defendants (*i.e.*, where the capacitors were "billed to" persons outside the United States but "shipped to" persons within the United States).

Excluded from the Class are: (1) Defendants (and their subsidiaries, agents, and affiliates); (2) shareholders holding more than 10% equity interest in Defendants; (3) each member of the Class that timely requests exclusion by "opting out"; (4) governmental entities; and (5) the judges and chambers staff in this case, including their immediate families.

*Id.* Defendants filed a petition for review with the Ninth Circuit pursuant to Rule 23(f). The Petition was denied. This is the same class definition as set forth in the Settlement Agreements. Saveri Decl., Ex. A at 4, ¶ f (KEMET settlement); *id.*, Ex. B at 4, ¶ f (Shizuki settlement).

### C.    Release of Claims against Settling Defendants

In exchange for the Settling Defendants' monetary consideration, the Class will release the Settling Defendants of all claims related to any of the alleged conduct giving rise to this litigation concerning the direct purchase of Capacitors in the United States or for delivery in the United States. Saveri Decl., Ex. A, ¶ 11 (KEMET settlement); *id.*, Ex. B, ¶ 11 (Shizuki settlement). The releases in the Settlement Agreements match the scope of the claims included in the Class definition. *Id.* The Class continues to prosecute their claims and the claims against the Non-Settling Defendants, who remain jointly and severally liable for all damages. Saveri Decl., ¶ 17.

### D.    Attorneys' Fees and Expenses

The Settlement Agreements provide that Lead Class Counsel may seek attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this litigation. Saveri Decl., Ex. A at ¶ 2; *id.*, Ex. B at ¶ 2. Lead Class Counsel intends to file a motion seeking $18,900,000 (30% of the Settlement Fund) for legal fees, payable upon the Court's approval. These amounts are consistent with the Ninth Circuit's permitted awards for fees calculated using the "percentage-of-the-fund" approach.

*See In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 Fed. App'x 651, 653 (9th Cir. 2019).

Lead Class Counsel intends to submit in its motion for attorneys' fees all counsel's lodestar through December 31, 2019. While the precise amount of lodestar is not yet available, Lead Class Counsel believes that the total amount of fee awards in all four rounds of settlements will not exceed the total lodestar of all plaintiffs' counsel in this case. Saveri Decl., ¶ 31.

Lead Class Counsel also intends to request $6,300,000 (10% of the of the Settlement Fund) to reimburse incurred litigation costs and expenses.[6]

## IV.   THE PROPOSED SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED

The Class proposes following the same procedures for distributing settlement funds using the same allocation formula that the Court preliminarily and finally approved for the prior three rounds of settlements. Dkts. 2244, 1713; MDL Dkt. 249. The consideration for the Settlements Agreements are at least as favorable as the prior three rounds of settlements. The factors to be considered under the Procedural Guidelines for Class Action Settlements for the Northern District of California also support approval. The Court therefore should preliminarily approve this fourth round of settlements.

### A.   Standards for Preliminary Approval of a Proposed Settlement

A class action may be dismissed or settled only with the approval of the Court. *See* Fed. R. Civ. P. 23(e)(1). The Rule 23(e) settlement approval procedure where a class has been certified can be broken into three principal steps: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected Class Members; and (3) a final approval determination following a fairness hearing at which Class Members may be heard regarding the settlement, and at which counsel may introduce evidence and present arguments concerning the fairness, adequacy, and reasonableness of the settlement. *See* 4 William B. Rubenstein, Albert Conte & Herbert Newberg, *Newberg on Class*

---

[6] In connection with prior applications for fees and costs, the Court has appointed Monica Ip as a Special Master, pursuant to Rule 53 to review Plaintiffs' billing and cost records. Lead Class Counsel suggests that an appointment of Ms. Ip to perform similar duties with respect to the instant proposed settlements may be efficient and helpful.

1   *Actions* §§ 13:39 *et seq.* (5th ed. 2014). The protections "afforded by [Rule 23(e)] are primarily procedural

2   in nature." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).

3       The Court will determine whether the proposed Settlements are "fair, adequate, and

4   reasonable" at the final approval stage—*i.e.*, after notice is disseminated and a fairness hearing is held.[7]

5   At this preliminary approval stage, the Court need only make "an 'initial evaluation' of the fairness of

6   the proposed settlement . . . ." *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509, 2015 WL

7   12991307, at *1 (N.D. Cal. Mar. 3, 2015). To grant preliminary approval, the Court should determine

8   whether the proposed Settlement Agreements substantively fall "within 'the range of reasonableness.'"

9   *Id.* (*quoting* 4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002)); *see also*

10  Dkt. 1455, at ¶ 5.

11      **B.    The Proposed Settlements Are Procedurally Sound and Presumptively Fair**

12      The proposed Settlement Agreements here are the product of arm's-length negotiations

13  between attorneys who are highly experienced in complex antitrust cases and well informed about the

14  facts and legal issues of this case. Saveri Decl., ¶ 13. As here, settlement agreements reached after

15  meaningful discovery and after arms-length negotiations that were conducted by capable counsel are

16  presumptively fair. *In re Heritage Bond Litig.,* No. 02-ML-1475, 2005 WL 1594403, at *9 (C.D. Cal. June

17  10, 2005). Lead Class Counsel's substantial advancement of the litigation to date and familiarity with

18  the evidence also indicate that the Settlement Agreements are fair and reasonable. *See Hanlon v.

19  Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores Inc. v.

20  Dukes*, 131 S.Ct. 2541 (2011); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products

21  Liab. Litig.*, 895 F.3d 597, 610 & n.18 (9th Cir. 2018) (listing non-exhaustive list of factors when

22  weighing a proposed settlement).

---

26  [7] A preview of the fairness standards for final approval weighs heavily in favor of preliminary approval

27  here. *See In re High-Tech Employees Antitrust Litig.*, No. 11-cv-02509, 2013 WL 6328811, at *6 (N.D. Cal.
    Oct. 30, 2013). Moreover, the complexity of class action litigation favors settlement. *See Class Plaintiffs

28  v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). This antitrust class action is no exception.

**C.     The Proposed Settlements Are Within the Range of Reasonableness**

The Settlement Agreements, which provide for significant cash payments, afford important relief to Class Members, and the consideration offered by each of the Settling Defendants is well within reasonable range. Damages in a price-fixing antitrust conspiracy case generally are based on the amount of the overcharge resulting from anticompetitive activity and are usually measured as a percentage of total sales. The percentage recovered from the Settling Defendants far exceeds the percentage recovered in many other antitrust class action settlements. *See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, slip. op. (N.D. Cal. Nov. 1, 2006) (approving settlements of 10.53% to 13.96% of sales); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (recovery represented approximately 2% of sales); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (recovery represented 1.62% of sales); *In re Plastic Tableware Antitrust Litig.*, No. Civ. A. 94-3564, 1995 WL 678663, at *1 (E.D. Pa. Nov. 13, 1995) (recovery represented 3.5% of sales).

KEMET agreed to pay a total of $62,000,000 in cash payable by November 8, 2020. Saveri Decl., ¶ 14. This amount is over 12% of the total amount of overcharges estimated by the Class's expert by all Defendants.

Shizuki agreed to pay a total of $1,000,000 in cash payable by the later of December 19, 2019, or 10 business days after the execution of the Escrow Agreement. Saveri Decl., ¶ 15. This amounts to less than 1% of the total amount of overcharges estimated by the Class's expert by all Defendants. This amount is significant given the evidence of Shizuki's participation in the price-fixing conspiracy and Shizuki's relative share of total commerce during the Class Period.

An important benefit to the Class is that the settlements provide members with significant cash compensation payable in less than two months, avoiding the uncertainty and delay of trial and likely appeals on a successful verdict. These settlements were reached after the Court certified the Class with trial close approaching. Moreover, the amount of cash payments represents an excellent result, given the uncertainty of litigation. Even though Lead Class Counsel is confident that the Class would have

1  prevailed at trial against the Settling Defendants, the Settling Defendants maintained and intended to

2  assert numerous defenses.

3  Additionally, the Class gives up no amount of their class claims against the Non-Settling

4  Defendants, who remain jointly and severally liable. Saveri Decl., ¶ 17; *id.*, Ex. A at ¶ 16; *id.*, Ex. B at ¶

5  16. Resolving claims against the Settling Defendants will permit Lead Class Counsel to focus its

6  resources on the Non-Settling Defendants. Saveri Decl., ¶ 17.

7  Also weighing in favor of preliminary approval is Lead Class Counsel's experience and success

8  in similar class actions. Lead Class Counsel have worked on large, complex cases for decades, including

9  antitrust and consumer protection class action cases. Saveri Decl., ¶ 5; *id.*, Ex. E (Firm Resume). The

10  judgment of experienced counsel regarding a settlement reached by arm's-length negotiations with the

11  assistance of neutral mediators should be given significant weight and a presumption of reasonableness.

12  *See Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ & C-97-0457

13  DLJ, 1997 WL 450064, at *5-6 (N.D. Cal. July 18, 1997).

14  Finally, the $63 million in cash payments alone from this round of settlements is over 12% of the

15  single damages estimate calculated by the Class's expert. The eleven settling defendants to date,

16  including KEMET and Shizuki (out of 22 corporate defendant families), will have provided over 52% of

17  the damages estimated by the Class's experts—with some of the most culpable parties not having yet

18  settled.

19  **V.      THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED**

20  Should the Court grant preliminary approval, it must also "direct notice in a reasonable manner

21  to all class members who would be bound by the proposal. . . ." Fed. R. Civ. P. 23(e)(1)(B). Notice

22  should be the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B); *see also*

23  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (same). Moreover, "the class must be notified

24  of a proposed settlement in a manner that does not systematically leave any group without notice."

25  *Officers for Justice*, 688 F.2d at 624 (citations omitted). The Class plans to implement the same

26  comprehensive notice and claims administration plan used in the prior settlements. Notice will be

27  transmitted through multiple methods, the effectiveness of which have been demonstrated with respect

28

to prior settlement notices to the class. The notice plan provides the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B).

      **A.**      **Summary of Notice Plan**

             **1.**      **Notice and Claims Administrator**

The Class requests that the Court appoint Rust Consulting ("Rust") as Claims Administrator. Rust has 30 years of class action settlement administration experience and has administered more than 6,500 class action settlements, judgments, and similar administrative programs. Declaration of Kendall S. Zylstra ("Zylstra Decl.") at ¶ 2.

Further, Lead Class Counsel has worked with Rust in the past—including on the prior three rounds of settlements in this action. Zylstra Decl., ¶ 5. Rust is therefore familiar with this case, the transactional database and Class Member contact information. *See id.*, ¶¶ 5-7. Lead Class Counsel is also familiar with Rust's work based on Rust's claim administration work for Lead Class Counsel in another class action, *In re Cipro Cases I and II*, J.C.C.P. Nos. 4154, 4220 (San Diego County Sup. Ct.). Lead Class Counsel believes that it would be inefficient and unnecessarily costly to switch to a different administrator now that Rust has gained familiarity administering the first three rounds of settlements. Saveri Decl., ¶ 20.

             **2.**      **Settlement Website**

The Claims Administrator will update the existing Settlement Website[8] that provides key settlement information such as case status, settlement documents, and FAQs concerning the Settlement Agreements and claims administration. Zylstra Decl., ¶ 17. A public-facing dashboard on the site displays updates about the administration process, such as the number and value of claims filed. A secure section of the Website allows Class Members to file online claims or adjustments. *Id.*

             **3.**      **Direct Notice—Long Form Notice**

The Class proposes to mail direct notice to individual Class Members with valid addresses (a) in the transactional databases Defendants provided to the Class, and (b) in records of past contact with

---

[8] The Settlement Website can be accessed at www.CapacitorsAntitrustSettlement.com.

Lead Class Counsel. Zylstra Decl., ¶¶ 7-10; Saveri Decl., ¶¶ 25-26. The Class also possesses significant data reflecting Class Members' respective purchases of capacitors during the relevant period. Saveri Decl., ¶ 24. Individual notices with pre-populated purchase data can therefore be sent directly to Class Members.[9]

The Class proposes to send the Long Form Notice, Saveri Decl., Ex. C, to Class Members. Zylstra Decl., ¶ 10. The Long Form Notice provides, in plain language, a brief explanation of the case; the terms of the proposed Settlement Agreements; the maximum amount Lead Class Counsel may seek for reimbursement of costs and expenses; the date, time, and place of the final approval hearing; the procedures for submitting comments on and objections to the Settlement Agreements; and a link to the Settlement Website. Saveri Decl., Ex. C. The Long Form notice will also include a claim form with pre-populated purchase data. Zylstra Decl., ¶ 13.

### a.    Opportunity to opt out of the Class is not necessary

All members of the Class were afforded an opportunity to timely opt out of the Class in connection with the notice of class certification. A further opportunity to opt out at the settlement stage is unusual, impedes settlement finality and is therefore not required. *See* Fed. R. Civ. P. 23(e)(4) (court "may" require further opportunity to opt out before finalizing settlement); *Low v. Trump Univ.*, 881 F.3d 1111, 1121 (9th Cir. 2018) (due process does not require a second opportunity to opt out and such opportunities to opt out are "'unusual'"); *Officers for Justice*, 688 F.2d at 635; *see also* 4 William B. Rubenstein, Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 9.52 (5th ed. 2014).

No further opt out opportunity is warranted here. Several direct purchasers exercised their opt out rights at the class certification stage. MDL Dkt. 577. The recoveries of the proposed Settlements are substantial and represent an excellent outcome for Class Members. Class Members were also given a recent opportunity when noticed about the Class's certification to opt out and the deadline for

---

[9] It is unlikely there are many Class Members who are not identified in Defendants' transactional data. As mentioned in the moving papers for the third round of settlements, Lead Class Counsel pursued discovery about the completeness of transactional data with many Defendants in connection with the FTAIA briefing, and Defendants testified that all transactions in the types of commerce the Court has deemed within the Sherman Act's ambit are recorded in transactional data. Saveri Decl., ¶ 24.

exercising that opportunity has passed. The information available to Class Members has not materially changed since the first opportunity for exclusion from the Class nor have the nature of the claims changed. *See* Fed. R. Civ. P. 23(e), advisory committee's note to 1998 amendment. Further, the claims released in the Settlements are no broader than the claims certified and there is no reason to require an opportunity to opt out now. *See*, *e.g.*, *In re Lidoderm Antitrust Litig.*, 3:14-md-02521-WHO (N.D. Cal.), ECF Nos. 1005 (motion), 1014 (notice forms), 1016 & 1018 (orders approving notice forms with no additional opt out opportunity).

### 4.     Publication of Notice

To reach the greatest number of unidentified Class Members, the Class also plans to provide broader notice through publication in traditional print media and on industry-specific websites. Zylstra Decl., ¶ 8. The Claims Administrator will publish the Summary Notice, Saveri Decl., Ex. D, in the national edition of the *Wall Street Journal*. Saveri Decl., ¶ 23. The Claims Administrator will additionally post a copy of the Settlement Notice and Settlement Agreements on at least two Internet websites directed toward the capacitors and passive electronics industry. Zylstra Decl., ¶ 12. The electronic components industry is a niche business. Saveri Decl., ¶ 23. Targeting industry media will further supplement and increase the reach of the notice to Class Members and increase the effectiveness of the notice provided. *Id.*

### B.     The Notice Forms and Dissemination Plan Meet All Requirements

The Class's proposed notice plan satisfies the fairness standards set forth in Rule 23. Each form of notice—the Long Form and Summary Notice—clearly presents all required categories of information in plain English. *See Officers for Justice*, 688 F.2d at 624. The notices are therefore substantively sufficient. The proposed dissemination plan, furthermore, satisfies due process and thus provides the best practicable notice to Class Members.

## VI.     DISTRIBUTION AND USE OF SETTLEMENT FUNDS

### A.     Distribution of Funds to Class Members

Lead Class Counsel recommends following the same procedures effectively used in the prior settlements. Payments to Class Members will be calculated and distributed after the Court has finally

approved the Settlement Agreements and after deductions for costs of notice, settlement administration, attorneys' fees and costs. Zylstra Decl., ¶ 18. Class Member payments will be calculated on a *pro rata* basis. Saveri Decl., Ex. C ¶ 13; Zylstra Decl., ¶ 18.

A plan of allocation must be "fair, reasonable, and adequate." *In re Citric Acid Antitrust Litig.*, 145 F.Supp.2d 1152, 1154 (N.D. Cal. 2001). Allocation plans that compensate class members based on the type and extent of their injuries are considered reasonable. *See id.*; *see also In re Cathode Ray (CRT) Tube Antitrust Litig.*, No. 4:07-cv-05944-JST (N.D. Cal. Jan. 28, 2016) ECF No. 4351 at *29. Distribution on a *pro rata* basis, with no class member being favored over others, are fair, adequate, and reasonable. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 4:07-cv-05944-JST (N.D. Cal. June 8, 2017) ECF No. 5168 at *9.

The Class proposes that settlement funds be allocated based on the Class Members' relative share of capacitors purchased during the relevant time period identical to the certified class period. Saveri Decl., ¶ 27. Class Members can either accept the pre-populated purchases in their claim forms, or they can seek an adjustment by submitting documentation of additional purchases. Saveri Decl., ¶ 25.

When making distributions of the Settlement Fund to the Class Members that timely submit valid Claim Forms, the Class will calculate the dollar value of each Class Member's claim in proportion to the total claims submitted. Saveri Decl., ¶ 27. No Settlement Funds will be subject to reversions to Defendants. Based on the amount of uncashed checks for the first round of settlements—currently less than $500—Lead Class Counsel does not anticipate the need for *cy pres* awardees; instead, Lead Class Counsel recommends any uncashed settlement checks should be redistributed to Class Members in subsequent settlements.[10] Saveri Decl., ¶ 28.

**B.      Payment of Claims Administration Expenses**

The Class requests authorization to use up to $125,000 from the Settlement Fund to pay the Notice and Claims Administrator to provide notice to Class Members, and to process and audit submitted claim forms.

---

[10] The low amount of uncashed settlement checks for previous settlements demonstrates the effectiveness of the proposed method of distributing claims.

1

**VII.   THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED**

2

The Class requests that the Court grant preliminary approval and set the schedule set forth in

3

**Attachment A**, which includes a proposed final approval hearing date on or after April 16, 2020.

4

**VIII.   CONCLUSION**

5

For the above reasons, the Class respectfully requests that the Court grant preliminary approval

6

of the Settlement Agreements, approve the proposed Settlement Notice and dissemination plan, and set

7

a schedule for the notice period and a date for a final approval hearing.

8

9

Dated:  January 6, 2020

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.

10

11

By:    */s/ Joseph R. Saveri*
              Joseph R. Saveri

12

Joseph R. Saveri (State Bar No. 130064)

13

Steven N. Williams (State Bar No. 175489)
James G. Dallal (State Bar No. 277826)

14

Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)

15

JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000

16

San Francisco, California 94108
Telephone:  (415) 500-6800

17

Facsimile:   (415) 395-9940
Email:       jsaveri@saverilawfirm.com

18

             swilliams@saverilawfirm.com

19

             jdallal@saverilawfirm.com
             areddy@saverilawfirm.com

20

             cyoung@saverilawfirm.com

21

*Lead Class Counsel for the Direct Purchaser Class*

22

23

24

25

26

27

28

**ATTACHMENT A:  Proposed Schedule**

| EVENT | SCHEDULE |
|---|---|
| Notice of Class Action Settlement (Saveri Decl., Exs. C & D) to Be Mailed and Posted on Internet | Within 28 days of Preliminary Approval Order (February 20, 2020) |
| Summary Notice of Class Action Settlement to Be Published | Within 28 days of Preliminary Approval Order (February 20, 2020) |
| Motions for Final Approval and Reimbursement of Litigation Costs and Expenses to Be Filed by Lead Class Counsel, together with Affidavit of Compliance with Notice Requirements | February 24, 2020 |
| Receipt/Filing Deadline for Comments and Objections | 21 days prior to Final Approval Hearing (March 26, 2020) |
| Opposition(s), if any, to Motions for Final Approval and Reimbursement of Expenses | 21 days prior to Final Approval Hearing (March 26, 2020) |
| Replies in Support of Motions for Final Approval, and Reimbursement of Expenses, to Be Filed by Lead Class Counsel, only if Objections to the Motions are Filed<br><br>Notice of Intent to Appear by Objectors Must be Filed | 10 days prior to Final Approval Hearing (April 6, 2020) |
| Service/Filing of Notices of Appearance at Final Approval Hearing | 10 days prior to Final Approval Hearing (April 6, 2020) |
| Final Approval Hearing | April 16, 2020 |

# ATTACHMENT B: Prior Settlement History

## In re Capacitors Antitrust Litig., Case No. 3:17-md-02801-JD ROUND 2: Approved June 28, 2018
*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $66,900,000 | 100% |
| **Distribution to Class** | $43,652,604 | 65.3% |
| **Claims** | | |
|     Participation rate | 78.5% of commerce | |
|     Class members | 3,041 (known) | |
|     Notices mailed | 3,041 | |
|     Claims submitted | 681 | |
|     Approved claims | 425 | |
|     Average distribution | $102,712* | |
| **Cy Pres** | $0 | 0.0% |
| **Attorney fees awarded** | $16,725,000 | 25.0% |
|     Lodestar | $70,764,474 | |
|     Hours | xx,xxx | |
|     Multiplier | 0.24 | |
| **Costs and Expenses** | $6,690,000 | 10.0% |
| **Claims Administration** | $158,415 | 0.2% |
| **Publication Costs** | $71,472 | 0.1% |

*Projected number as distributions have not yet been made.

## In re Capacitors Antitrust Litig., Case No. 3:17-md-02801-JD ROUND 1: Approved June 27, 2017
*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $32,600,000 | 100.0% |
| **Distribution to Class** | $21,287,673* | 65.3% |
| **Claims** | | |
|     Participation rate | 66.2% of commerce | |
|     Class members | 2,279 (known) | |
|     Notices mailed | 2,279 | |
|     Claims submitted | 719 | |
|     Approved claims | 282 | |
|     Average distribution | $47,582* | |
| **Cy Pres** | $0 | 0.0% |
| **Residual (uncashed)** | $447 | |
| **Attorney fees awarded** | $8,150,000 | 25.0% |
|     Lodestar | $44,444,689 | |
|     Hours | 105,345.8 | |
|     Multiplier | 0.18 | |
| **Costs and Expenses** | $3,260,000 | 10.0% |
| **Claims Administration** | $185,308 | 0.6% |
| **Publication Costs** | $75,872 | 0.2% |

*Projected number as not all payments and distributions have been made

## In re High-Tech Employee Antitrust Litig., Case No. 11-cv-2509 (N.D. Cal.) Final Approval granted September 2, 2015

*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $435,000,000* | 100.0% |
| **Distribution to Class** | $384,300,156 | 88.3% |
| **Claims** | | |
|     Participation rate | 99.9% of commerce | |
|     Class members | 64,466 | |
|     Notices mailed | 64,466 | |
|     Claims submitted | 64,410 | |
|     Approved claims | 64,410 | |
|     Average distribution | $5,966 | |
| **Cy Pres** | $0 | 0.0% |
| **Attorney fees awarded** | $45,822,312 | 10.5% |
|     Lodestar | $18,720,707 | |
|     Hours | 37,131 | |
|     Multiplier | 2.45 | |
| **Costs and Expenses** | $4,539,844 | 1.0% |
| **Claims Administration** | $360,000 | less than 0.1% |

* Resolution of the case proceeded in two rounds. The first round distributed $20 million to class members who filed claims. The second round distributed $415 million to the full list of class members, without a claims process.

**In Re Titanium Dioxide Antitrust Litigation**
Case No. 1:10-cv-00318-RDB (D. Md.)
**Final Approval granted December 13, 2013**
*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $163,500,000 | 100% |
| **Distribution to Class** | $104,014,824 | 63.6% |
| **Claims** | | |
| Participation rate | 53.1% of class members* | |
| Class members | 650 (known)* | |
| Notices mailed | 5,877** | |
| Claims submitted | 643 | |
| Approved claims | 345*** | |
| Average distribution | $301,497 | |
| **Cy Pres** | $0 | 0.0% |
| **Attorney fees awarded** | $54,500,000 | 33.3% |
| Lodestar | $22,812,576 | |
| Hours | 45,585.33 | |
| Multiplier | 2.39 | |
| **Costs and Expenses** | $4,555,205 | 4.4% |
| **Claims Administration** | $112,010 | less than 0.1% |
| **Publication Costs** | $75,872 | less than 0.1% |

* Estimate created by Plaintiffs' expert based on Defendants' transactional data.
** Containing all unique addresses obtained from Defendants.
*** Claimants were required to provide proofs of claim, which were verified by the claims administrator.

**In re Cipro Cases I & II,** JCCP Case Nos. 4154 & 4220 (San Diego Sup. Ct.)
**IPP Settlement with Bayer approved November 18, 2013**
*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $74,000,000 | 100.0% |
| **Distribution to Class** | $45,902,769 | 62.0% |
| **Class Representative Incentive Awards** | $40,000 | |
| **Claims** | | |
| Participation rate | 20.2% of commerce | |
| Class members | unknown | |
| Notices mailed | N/A*/44,929**[1] | |
| Claims submitted | 7,907*/463** | |
| Approved claims | 2,951*/295** | |
| Average distribution | $14,150[2] | |
| | $124* | |
| | $154,651** | |
| **Cy Pres** | $0 | 0.0% |
| **Residual** | $262,155[3] | |
| **Attorney fees awarded** | $24,642,000 | 33.3% |
| Lodestar | $9,856,800 (curr. rates) | |
| | $8,214,000 (hist. rates) | |
| Hours | 20,344 | |
| Multiplier | 2.5 (curr. rates) | |
| | 3.0 (hist. rates) | |
| **Costs and Expenses** | $2,501,241 | 3.4% |
| **Claims Administration** | $383,118 | 0.5% |
| **Publication Costs** | $459,136 | 0.6% |

* Consumer
** Third-party Payor
[1] The claims administrator sent notices to 44,929 potential class member third-party payors.
[2] Average distribution amount, including consumer and third-party payors.
[3] Residual funds from uncashed checks. Court ordered to be transferred to litigation fund.