UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | MDL Case No. 17-md-02801-JD<br><br>Case No. 14-cv-03264-JD<br><br>**PRETRIAL ORDER NO. 2 FOR DIRECT PURCHASER PLAINTIFFS' TRIAL** |

As discussed at the pretrial conference on February 13, 2020, the Court orders as follows for the jury trial of the direct purchaser plaintiffs' case.

**I. FINAL PRETRIAL CONFERENCE, VOIR DIRE AND JURY INSTRUCTIONS**

1. A final pretrial conference is set for **February 27, 2020**, at 11 a.m.
2. The Court will post its proposed voir dire and jury instructions soon, and the parties will have an opportunity to object or raise any concerns at the final pretrial conference.

**II. TRIAL CONDUCT**

1. During witness testimony, all individuals at the tables for counsel will remain seated and silent except for the attorneys handling the examination. There will be no entry into or departure from the counsel area by any personnel.
2. No individual at the tables for counsel may react visibly or audibly to witness testimony. An individual who fails to comply with this requirement will be dismissed from the courtroom for the day, or may be dismissed for the remainder of the trial.
3. No motions may be filed during trial without the Court's express pre-approval on the record. A request must be made in court and not in an after-hours filing.

## III. PLEA AGREEMENTS AND GUILTY PLEAS

1. The parties will meet and confer on a stipulation of facts to be admitted from the relevant guilty pleas and plea agreements of certain defendants.
2. The Holy Stone defendants and DPPs will file a stipulation to address the fact that the entity that pled guilty, Holy Stone Holdings Co., Ltd., is not a named defendant in this trial.
3. The amount of a criminal fine, or the length of sentence of imprisonment, are excluded from evidence. The fact that a fine or sentence was imposed is admissible.
4. All documents from the criminal cases other than plea agreements and judgments are excluded, subject to exceptions for impeachment purposes, if warranted.

## IV. CO-CONSPIRATOR STATEMENTS AND FIFTH AMENDMENT INVOCATIONS

1. For co-conspirator statements, DPPs must file a proffer by 4:00 p.m. two trial days before they intend to present them. For example, statements for Wednesday must be filed by 4:00 p.m. on Monday. Statements for Monday must be filed by 4:00 p.m. on Thursday. The proffer must specify: (1) who made the statement; (2) the substance of the statement; (3) the facts showing that the declarant was a co-conspirator; and (4) the facts showing that the statement was made during and in furtherance of the conspiracy. F.R.E. 801(d)(2)(E); *Bourjaily v. United States*, 483 U.S. 171 (1987). The Court will either file an order, or rule from the bench, before the start of testimony.
2. For Fifth Amendment adverse inferences, DPPs must file a proffer under the same timeline that specifies: (1) the question and answer from the deposition; (2) the foundation for attributing the witness's statements to a defendant; (3) the supporting independent evidence; and (4) the substantial need for an adverse inference. *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000).

3. For both the co-conspirator and Fifth Amendment proffers, defendants may not file a response unless requested by the Court.

## V. DPPS' MOTIONS IN LIMINE

1. **MIL No. 1: GRANTED** to exclude any evidence or argument re: representation agreements or arrangements between named plaintiffs and class counsel.

2. **MIL No. 2: GRANTED** to exclude any evidence or argument (1) that plaintiffs were not injured or suffered reduced damages because they could pass on any overcharges to their customers; and (2) that defendants are facing exposure to multiple damages for the same overcharges.

3. **MIL No. 3: GRANTED** to exclude any evidence or reference to amounts and terms of prior settlements, **EXCEPT** that defendants may offer settlement cooperation provisions to show a witness's bias or prejudice. In that event, the Court will consider a limiting instruction to make sure the jury considers the evidence only to evaluate witness bias.

4. **MIL No. 4: GRANTED** to exclude references to or evidence of the class's right to recover treble damages, attorneys' fees, and costs.

5. **MIL No. 5: GRANTED**, but the Court may revisit this if the evidence shows that (1) the DPPs knew there was a conspiracy, and (2) there were suppliers and substitutes outside the conspiracy from whom DPPs could have purchased capacitors.

6. **MIL No. 6: GRANTED** to exclude any expert testimony on whether there was a conspiracy, but experts may testify about whether conduct and conditions were consistent with a conspiracy, as opposed to a competitive market.

7. **MIL No. 7: GRANTED** to exclude any evidence or argument that price fixing has pro-competitive or pro-consumer benefits.

8. **MIL No. 8: DENIED** for any witness who is more than 100 miles from the trial or is outside the United States. FRCP 32(a)(4)(B). For those witnesses, exclusion of deposition testimony is denied, and no "missing witness" instruction will be given.

9. **MIL No. 9: GRANTED** to exclude any evidence or argument inconsistent with the terms of plea agreements or admissions of fact in those agreements.

10. **MIL No. 10: GRANTED** to exclude any evidence or argument of foreign regulatory actions, including raids or investigations.

11. **MIL No. 11: GRANTED** to exclude any evidence or argument that (1) the US DOJ closed its film capacitor investigation without bringing any charges, and (2) certain defendants did not face criminal charges in the DOJ's electrolytic capacitor investigation, **EXCEPT** that defendants may be permitted to introduce such evidence in rebuttal if the DPPs mischaracterize the reach of guilty pleas and plea agreements.

12. **MIL No. 12: DENIED**. The limitations imposed by the FTAIA go to the merits of a Sherman Act claim and are properly a part of the jury's determination of whether plaintiffs have proved their case. *See United States v. Hsiung*, 778 F.3d 738 (9th Cir. 2015). The Court's FTAIA I order in this case established guideline interpretations as a matter of law but did not make any findings of fact. 2016 WL 5724960 (Sept. 30, 2016). DPPs will have to establish at trial, as a matter of fact and by a preponderance of the evidence, that defendants' conduct violated the Sherman Act (and was not excluded from the Act's scope by the FTAIA). The Court's prior legal rulings on the scope of import trade or import commerce, as well as the FTAIA's domestic effects exception, will apply and control. As the Court previously noted, if the DPPs can establish that a category of trade comes in as import commerce, they need not also establish that it would have come in under the domestic effects exception. As our circuit has held, "'import trade or import commerce' with foreign nations falls squarely within the scope of the Sherman Act and is excluded from the FTAIA altogether." *Hsiung*, 778 F.3d at 751.

## VI. DEFENDANTS' MOTIONS IN LIMINE

1. **MIL No. 1: GRANTED** re sentencing memos, transcripts, and other documents from the criminal cases other than plea agreements and judgments.

4

2. **MIL No. 2: DENIED** re rebuttal evidence for guilty pleas, but DPPs will be limited to the specifics of the plea agreements.
3. **MIL No. 3: DEFERRED** pending proffers.
4. **MIL No. 4: DENIED**, but DPPs may not use pejorative terms such as "thieves," "criminals" or "felons." Terms such as "cartel," "cartelists," "conspirators" and "price fixers" may be used. DPPs need not refer to defendants by their full, individual corporate entity names throughout the trial, but will need to make sure the jury is not confused by names within corporate families.
5. **MIL No. 5: DEFERRED** pending proof at trial re nature and scope of "subsequent remedial measures."
6. **MIL No. 6: GRANTED IN PART** re evidence relating to AVX's European conduct. The DPPs represent that if evidence relates only to Europe, they will not seek to admit the evidence against AVX to show a propensity to conspire. Only evidence that implicates the alleged conspiracy in the United States will be admitted. The Court will decide the issue on a case-by-case basis. The parties may file a single document with their respective positions if there are 10 or more documents presenting this issue for trial the next day. For a smaller subset, the Court will take the issue up at 8:30 a.m. on the trial day, outside the presence of the jury, or rule on the documents as they come up.
7. **MIL No. 7: DEFERRED** pending proffers.
8. **MIL No. 8: TAKEN UNDER SUBMISSION** re KEMET Corporation's sales evidence.
9. **MIL No. 9: DENIED** re the AVX and Chemi-Con potential joint venture.
10. **MIL No. 10 re Taitsu and NCC communications: WITHDRAWN** by defendants.
11. **MIL No. 11: GRANTED** for evidence of foreign investigations, for the same reasons as for DPPs' MIL No. 10.

**VII.** *DAUBERT* **MOTION RE ATTORNEY JOSEPH P. RUSSONIELLO**

1. The *Daubert* motion is **GRANTED**, and attorney Russoniello's testimony is excluded. The proposed testimony goes to legal issues that are properly addressed through a jury instruction if necessary. The Court may revisit this ruling for rebuttal purposes, if warranted.

**VIII.** **OTHER ISSUES**

1. Witnesses will be put on the witness stand only once. For example, if the DPPs call a witness whom defendants also intend to call, defendants' direct examination of the witness will follow the DPPs' examination of the witness. Defendants may not put the witness on again for the presentation of their case to the jury.

2. DPPs will identify by **February 17, 2020**, the defendant-affiliated witnesses DPPs intend to call, along with a good-faith commitment to the date and expected duration of testimony.

3. DPPs may not make any statements to the jury about the fact that defendants NCC and UCC are represented by the same counsel.

4. The parties will meet and confer on the 30(b)(6) deposition testimony issue.

5. The parties will file by **February 24, 2020**, a comprehensive stipulation that contains all of their agreements on: (1) the party names by which the different defendant entities will be referred; (2) presentation of 30(b)(6) testimony; (3) date and time estimates for defendant-affiliated witnesses to be called by DPPs; and (4) all other issues on which they have agreed.

6. The parties will meet and confer on the exhibit list issues.

**IT IS SO ORDERED.**

Dated: February 14, 2020

JAMES DONATO
United States District Judge