UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE CAPACITORS ANTITRUST LITIGATION

MDL Case No. 17-md-02801-JD

Case No. 14-cv-03264-JD

**OMNIBUS ORDER RE *DAUBERT* MOTIONS AND MOTION FOR DECERTIFICATION**

Re: Dkt. Nos. 647, 661, 669, 672, 992

I. **DIRECT PURCHASER CLASS'S MOTION TO PARTIALLY EXCLUDE PROPOSED EXPERT TESTIMONY OF JANUSZ A. ORDOVER (MDL #669)**

**GRANTED**. The DPPs move to exclude Ordover's opinion that "[t]he episodes of price fixing to which NCC has pled guilty are unlikely to have had broad impacts given features of the marketplace." Dkt. No. 667-4 at 1. DPPs object to this opinion because of its premise as stated by Ordover: "Although NCC pled guilty to fixing prices of 'certain electrolytic capacitors' in its plea agreement with the U.S. Department of Justice, [] counsel for NCC has informed me that the episodes of price fixing to which NCC pled guilty all involve prices for a narrow set of products or customers." *Id*.

What "counsel for NCC" might have told Ordover is not consistent with NCC's plea agreement in *United States of America v. Nippon Chemi-Con Corporation*, Case No. 4:17-CR-00540-JD, Dkt. No. 54. NCC admitted to participating in a conspiracy among manufacturers of electrolytic capacitors from "at least as early as November 2001 until in or about January 2014," the primary purpose of which was to "fix prices and rig bids of certain electrolytic capacitors manufactured outside of the United States and sold in the United States and elsewhere." Nothing

in the plea agreement supports the characterization that NCC pled guilty only to "episodes of price fixing . . . all involv[ing] prices for a narrow set of products or customers."

Consequently, Ordover's opinion is neither reliable nor relevant, and it is excluded. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993); FRE 702. Ordover is not, however, barred from testifying about the underlying "features of the marketplace," subject to additional challenges to any such testimony DPPs may raise at trial.

## II. DIRECT PURCHASER CLASS AND INDIRECT PURCHASER PLAINTIFFS' MOTION TO EXCLUDE, IN PART, THE PROPOSED EXPERT TESTIMONY OF SPENCER L. SIMONS (MDL #672)

**GRANTED IN PART**. Simons is an engineer and businessperson who has worked in the capacitors industry for decades. Defendants agree that he is not an "expert on collusion, antitrust issues generally, or on the specific topic of establishing antitrust impact." Dkt. No. 791-4 at 19. As such, his conclusions given in his report such as that "it is highly unlikely that the defendant capacitor manufacturers successfully colluded . . . during the Relevant Period" are not admissible under Federal Rules of Evidence 702, 402 and 403. Testimony and opinions by Simons about collusion, violations of antitrust law, or antitrust impact -- topics for which he possesses no specialized knowledge, and which likely amount to inadmissible legal opinions -- are not reliable and not admissible under Rule 702, and would confuse and mislead the jury. FRE 403. They are excluded from trial.

Testimony by Simons on the technical and commercial aspects of the capacitors industry, as observed by him during his time in the industry, are admissible. This includes Simons' opinions about capacitor substitutability and his "market and product analysis." Testimony along these lines seems to be based on his own experience and observations, and the opinions are likely to be relevant to the facts of this case as well. DPPs themselves acknowledge that Simons "might be qualified to provide observations about what he has seen in the capacitors market." Dkt. No. 672 at 10. Testimony in this topic area is admissible, subject to a foundation at trial that he is qualified to offer those opinions.

### III. DEFENDANTS' MOTION TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF DR. JAMES T. MCCLAVE (MDL #661)

**DENIED**. The bulk of defendants' challenges -- that McClave failed to account for individual pricing circumstances and ignored "undisputed marketplace facts" in constructing his regression analysis -- were considered in detail and denied at the class certification stage of this case. Those determinations need not, and will not, be reconsidered. As the Court held, challenges to the variables in his model "do not go to the admissibility of his opinions, but rather to matters of weight and probative value for a jury to evaluate." *In re Capacitors Antitrust Litigation*, No. 17-md-2801-JD, 2018 WL 5980139, at *6 (N.D. Cal. Nov. 14, 2018). What McClave "did or didn't take into account" in constructing his analysis "may be grist for a good cross-examination at trial, but they do not play a material role in deciding whether Dr. McClave's work should be admitted under Rule 702." *Id*. Defendants' argument that the *Daubert* standard should be applied more rigorously at successive stages of the case is without support in *Daubert* itself or subsequent binding authority, and certainly is not stated in the case defendants cite. *See Sali v. Corona Regional Medical Center*, 909 F.3d 996, 1006 (9th Cir. 2018) ("Indeed, in evaluating challenged expert testimony in support of class certification, a district court should evaluate admissibility under the standard set forth in *Daubert*."). There is no *Daubert* "lite" served in the afternoon of litigation, to be followed by full-proof *Daubert* at the main course of trial.

If anything, the soundness of the Court's prior *Daubert* determinations was underscored by the "hot tub" proceeding between the competing experts. The candid and unmediated exchanges between the experts confirmed that McClave "practiced a generally accepted method for determining antitrust impact," and that "his work is sound and reliable, and consistent with established econometric methods." *Capacitors*, 2018 WL 5980139, at *6. The proceeding as a whole demonstrated that McClave's analysis and proposed testimony are sufficiently reliable and relevant to satisfy the *Daubert* standard. While he had plenty of (at times passionate) disagreements with defendants' expert, Dr. Laila Haider, they reflected legitimate differences of opinion and points of view in the field, all of which were within the mainstream of economic thought and far from junk science. Learned professionals can have strong disagreements about

3

their analyses of facts, and the strength of their disagreement does not mean that one or the other must be dismissed as a quack.

Moreover, there were several areas of agreement that emerged from the experts' discussion, including that "the quadratic variable approach is a standard econometric tool," "a use of benchmarks to determine overcharges is a standard econometric tool," McClave's "aggregate overcharge in this case is not an assumption" and it is "a blended database number," and "if all the variables are properly accounted for, a regression analysis is an accepted tool for identifying antitrust causation." Dkt. No. 960 at 106:18-110:6. To the extent defendants dispute that McClave's regression analysis accounted for all of the proper variables, they are free to chase that down on cross-examination, and in their own witness presentations.

Defendants' objection that McClave accepted the conspiracy period from class counsel without "independently verifying" it is also a topic for possible cross-examination and argument at trial, but not exclusion from the record. It is rather odd to say that McClave did not "independently verif[y]" the conspiracy period. If he had opined on what the conspiracy period properly should have been based on his own investigation and analysis, defendants undoubtedly would have moved to strike such an opinion as legal in nature and improper. In any event, McClave's acceptance of the class period from counsel does not make his proposed testimony so unreliable or irrelevant as to merit the exclusion of his testimony under *Daubert*.

## IV. CERTAIN DEFENDANTS' JOINT MOTION TO EXCLUDE TESTIMONY OF DR. HAL J. SINGER (MDL #647)

**GRANTED IN PART**. Singer performed a qualitative and quantitative analysis, and his qualitative analysis was broken out into two parts: he analyzed the qualitative evidence as based on "criteria recognized by antitrust agencies," as well as on "criteria regarding cartel investigation recognized by economists." The former analysis -- based on antitrust agencies' criteria for evaluating when information exchanges are likely to be anticompetitive -- does not meet the standard of relevance and reliability under FRE 702 or *Daubert*, and it is excluded. Singer cites two sources from which he derived the "qualitative criteria recognized by antitrust agencies": a document on the Federal Trade Commission's website ("Information Exchange: Be Reasonable"),

4

and the Department of Justice and Federal Trade Commission's "Statements of Antitrust Policy in Health Care." Singer Report ¶¶ 21-22. As a trained economist, Singer does not have "scientific, technical, or other specialized knowledge" such that his application of these agency statements to the documentary evidence in this case is likely to "help the trier of fact to understand the evidence or to determine a fact in issue." FRE 702(a). His opinions that are based on "criteria recognized by antitrust agencies as indicative of anticompetitive conduct" are not admissible.

His analysis of the qualitative evidence based on "qualitative criteria regarding cartel investigation recognized by economists" is not specifically challenged by defendants. That testimony is sufficiently reliable and relevant under *Daubert*, and is admissible pending adequate proof at trial and undoubtedly subject to vigorous cross-examination by defendants if admitted.

For Singer's quantitative analysis, both sides treat that as rising and falling with McClave's econometric analysis. The Court sees no reason to disagree, and the *Daubert* challenge to Singer's quantitative analysis is consequently denied for the same reasons the *Daubert* motion against McClave was denied.

## V. CERTAIN DEFENDANTS' MOTION FOR DECERTIFICATION OF DIRECT PURCHASER PLAINTIFF CLASS (MDL #992)

**DENIED**. Defendants moved to decertify the DPP class based on McClave's "new and fatal admission" at the concurrent expert proceeding "that he cannot identify antitrust injury for 40% of the DPP Class." Dkt. No. 992 at 4. That is not a fair characterization of McClave's statements. He said, among other things, that 40% of class members purchased during the alleged conspiracy period but not during the benchmark period; those class members collectively "account[ed] for one percent of the class revenue"; and defendants' own expert, Dr. Johnson, opined that "the smallest customers were the ones that were most likely to be impacted by a conspiracy." Dkt. No. 960 at 29:8-9, 30:6-10.

Consequently, decertification is denied. This denial is, of course, without prejudice to revisiting the scope and certification of the class for other reasons. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019) ("if future decisions or circumstances" warrant, the "district court can decertify the class") (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

633 (9th Cir.1982), for proposition that a "district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative."); *see also* FRCP 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

**IT IS SO ORDERED.**

Dated: February 21, 2020

JAMES DONATO
United States District Judge