UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | MDL Case No. 17-md-02801-JD <br><br> Case No. 14-cv-03264-JD <br><br> **ORDER RE SPECIAL MASTER'S REPORTS AND RECOMMENDATIONS** <br><br> Re: Dkt. Nos. 821, 995 |

In this multi-district antitrust litigation in which defendants are alleged to have participated in a sprawling, international conspiracy to fix the prices of capacitors, the Direct Purchaser Plaintiff class ("DPPs") has reached settlements with most of the defendants in their case. The settlements include the "Second Round Settlement" with defendants Hitachi Chemical and Soshin, to which the Court has given final approval. MDL Dkt. No. 249. When class counsel requested authorization to distribute the funds in that settlement, MDL Dkt. No. 381, class members Cisco Systems, Inc. ("Cisco") and Aptiv Services US, LLC fka Delphi Automotive LLP ("Aptiv") raised an issue about the allocation of the funds, and said they were due substantially larger amounts than class counsel had contemplated. MDL Dkt. No. 391.

The Court referred the disagreement over the Second Round Settlement distribution to Special Master Jeffrey L. Bleich, Esq., pursuant to Federal Rule of Civil Procedure 53(a)(1)(C). MDL Dkt. No. 521. Special Master Bleich called for written submissions from the parties, held a hearing, and issued a Report and Recommendation ("R&R"). MDL Dkt. No. 821. Following Cisco and Aptiv's objection to a section of the R&R, the Special Master issued a Supplemental Report and Recommendation at the Court's request. MDL Dkt. Nos. 902, 981, 995.

1    The Court has reviewed the R&R and Supplemental R&R, and the parties' responses to
2    them. MDL Dkt. Nos. 902, 930, 1014, 1018, 1024, 1029, 1031. The parties were given notice
3    and an opportunity to be heard at a hearing, as provided for in Rule 53(f)(1). MDL Dkt. Nos.
4    1327, 1338. After conducting a *de novo* review of the Special Master's factual findings and legal
5    conclusions as required by Rule 53(f)(3) and (4), the Court adopts the Special Master's Reports
6    and Recommendations as set out below.

**DISCUSSION**

The settlement distribution dispute concerns "incorporated capacitors," which are capacitors that were manufactured, sold and shipped entirely outside of the United States, and incorporated abroad into finished products sold or delivered into the United States. The Special Master concluded that the DPP class had released claims against Hitachi Chemical and Soshin for incorporated capacitors in the settlement agreements with those defendants. MDL Dkt. No. 821 at 8-13. This conclusion was based on the plain language of the releases in the settlement agreements, and the parties' course of dealings. *Id*. No one has objected to this finding, and the Court adopts it as well reasoned.

The Special Master also concluded that claims for incorporated capacitors could be stated under the Court's prior orders. MDL Dkt. No. 821 at 13-15. No party challenges this conclusion either, and it is supported by the Court's second order on the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a ("FTAIA"). MDL Dkt. No. 329 ("FTAIA II Order"). In that order, the Court addressed the incorporated capacitor claims of opt-out plaintiff Flextronics International USA, Inc. ("Flextronics"), which is not a party to this settlement distribution dispute. For capacitors that were sold and shipped by a foreign defendant to an overseas Flextronics affiliate, and then incorporated abroad by the foreign Flextronics entity into finished goods that were sold into the United States, the Court concluded that the "state of the record leaves open the possibility that all transactions in this category may be subject to the Sherman Act as 'import trade or commerce.'" *Id*. at 7-9. The Court determined that this category of transactions "might also come within the FTAIA's domestic effects exception." *Id*. The Special Master was perfectly right to find that these principles could be applied to Cisco and Aptiv's incorporated capacitor claims.

2

1    The Court adopts the Special Master's recommendation that Cisco and Aptiv pursue their
2    incorporated capacitor claims through the settlement allocation process. MDL Dkt. No. 821 at 15-
3    16. Cisco and Aptiv did not object to the Second Round Settlement, or elect to opt out and bring a
4    lawsuit on their own. There is no question that they are bound by the settlement agreements, and
5    they would be a day late and dollar short trying to challenge that fact now. Consequently, they are
6    subject in the first instance to class counsel's determination of how the settlement funds should be
7    distributed to the class. That includes an evaluation by class counsel of the appropriate amount of
8    settlement funds to be allocated to Cisco and Aptiv's incorporated capacitor claims.

9    Cisco and Aptiv's main concern goes to the showing they need to make on the
10   incorporated capacitor claims. *See* MDL Dkt. No. 902. The Special Master recommended that
11   they establish defendants' knowledge or awareness of the ultimate destination of the incorporated
12   capacitors. MDL Dkt. No. 821 at 17-20. The Special Master addressed this concern in the
13   Supplemental R&R, MDL Dkt. No. 995, and the Court discussed it with Cisco and Aptiv at the
14   hearing. MDL Dkt. No. 1338.

15   Cisco and Aptiv believe that the Special Master created a "mens rea" element that goes
16   beyond the Court's construction of the FTAIA, and governing case law. But the record
17   demonstrates that this is much more a matter of diction than substance. Cisco and Aptiv treat their
18   incorporated capacitor claims as matters of import trade or commerce under the Sherman Act and
19   the FTAIA. They acknowledge that import trade "includes trade done by importers and
20   defendants whose conduct is *directed at* a U.S. import market, even if the defendants did not
21   engage in importation of products into the United States." MDL Dkt. No. 902 at 3 (citing *United
22   States v. Hsiung*, 778 F.3d 738, 755 n.8 (9th Cir. 2015)) (emphasis added). This is entirely
23   consistent with the Court's FTAIA II Order, which expressly noted *Hsiung's* approval of the Third
24   Circuit's holding on this issue in *Animal Science Products, Inc. v. China Minmetals Corp.*, 654
25   F.3d 462, 471, 471 n.11 (3d Cir. 2011). *See* MDL Dkt. No. 329 at 8. The phrase "directed at a
26   U.S. import market" connotes a degree of awareness of one's actions. "To direct" in the everyday
27   usage of this common verb means to cause something to move, point to, or project in a specified
28   manner or course. *See* https://www.merriam-webster.com/dictionary/direct. Cisco and Aptiv

3

capture that very usage in their briefs.  *See*, *e.g.*, MDL Dkt. No. 902 at 4 ("It seems implausible that suppliers *would not know a substantial portion of their product would end up in the U.S.* in light of these extensive interactions with U.S. locations.") (emphasis added).

      Consequently, as the Court stated at the hearing, the Special Master did not interpolate a new element of "mens rea" into the FTAIA, as Cisco and Aptiv suggest.  A plain reading of the reports shows that the Special Master properly interpreted "directed at" in harmony with the Court's FTAIA orders.  This fact, in conjunction with the parties' agreement that the knowledge of all defendants, and not just the settling defendants, is relevant, MDL Dkt. No. 1018 at 1 nn.2-3, means that Cisco and Aptiv are appropriately required to support their incorporated capacitor claims with evidence showing that defendants directed those products at a U.S. import market.  That is all the Special Master recommended, and the law demands no less or more.

      On the question of who should determine the amount of settlement proceeds to be allocated for Cisco and Aptiv's incorporated capacitor claims, the Court agrees with the Special Master's recommendation that DPP class counsel should decide in the first instance, for all of the reasons outlined by the Special Master.  MDL Dkt. No. 995 at 4-5.  Cisco and Aptiv have not presented a good reason to conclude otherwise, and have proposed "[i]n the alternative" that "the Court require that the Special Master approve any final claims calculation."  MDL Dkt. No. 902 at 12.  DPPs' class counsel do not object "to the proposal that any dispute Objecting Members wish to raise about the reasonableness of the final figure determined by Class Counsel be submitted to the Special Master and subject to his review."  MDL Dkt. No. 930 at 4.

      The Special Master has indicated that he is available to see this through to completion and make a final recommendation to the Court.  MDL Dkt. No. 995 at 5-6.  The parties confirmed their commitment to this process at the hearing, and the Court has already ordered a schedule for class counsel's review of Cisco and Aptiv's evidence.  MDL Dkt. No. 1338.  In the event there are any further disputes about the amounts Cisco and Aptiv are to be allocated from the Second Round Settlement, the parties may return to Special Master Bleich for assistance.  The Special Master is requested to prepare a further report and recommendation on any such disputes.

4

**CONCLUSION**

The Special Master's Report and Recommendation, MDL Dkt. No. 821, and Supplemental Report and Recommendation, MDL Dkt. No. 995, are adopted as stated in this order. The parties will go to Special Master Bleich with any further disputes about the allocation amount to Cisco and Aptiv from the Second Round Settlement, as contemplated in the order appointing the Special Master and under the same terms. MDL Dkt. No. 521.

**IT IS SO ORDERED.**

Dated: July 15, 2020

JAMES DONATO
United States District Judge