Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:	jsaveri@saverilawfirm.com
	swilliams@saverilawfirm.com
	areddy@saverilawfirm.com
	cyoung@saverilawfirm.com

*Lead Counsel for the Direct Purchaser Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: THE DIRECT PURCHASER CLASS ACTION | Master File No.  3:17-md-02801-JD<br>Civil Action No. 3:14-cv-03264-JD<br><br>**DIRECT PURCHASER CLASS'S REPLY IN FURTHER SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS AVX, ELNA, HOLY STONE, KEMET, PANASONIC, SHINYEI, SHIZUKI AND TAITSU**<br><br>Date:         September 17, 2020<br>Time:         10:00 a.m.<br>Courtroom:  11, 19th Floor |

I. INTRODUCTION

On July 24, 2020, the Direct Purchaser Class (the "Class") filed its Motion for Final Approval of Proposed Settlements with Defendants AVX, ELNA, Holy Stone, KEMET, Panasonic, Shinyei, Shizuki and Taitsu (AVX, ELNA, Holy Stone, KEMET, Panasonic, Shinyei, Shizuki and Taitsu

collectively, "the Settling Defendants"). MDL ECF No.[1] 1360. This is the fourth round[2] of settlements for the Class (the "Settlements"). They provide an excellent result for the Class; and create a significant common fund for the benefit of the Class. The Settlements create an all-cash fund of $232,050,000.[3] *Id.* The Court preliminarily approved the fourth round Settlements on July 10, 2020. MDL ECF No. 1340.

Final approval under Fed. R. Civ. P. 23(e) is warranted. Lead Counsel has completed the Court mandated notice program and has taken additional steps well beyond the minimum requirements of due process and Fed. R. Civ. P. 23(c)(2)(B). Declaration of Kendall S. Zylstra ("Zylstra Decl."), ¶¶ 2, 6-8 Declaration of Joseph R. Saveri ("Saveri Decl."), ¶ 3. Settling Defendants have fulfilled their reporting obligations under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"). Saveri Decl., ¶ 2. The notice program is now complete. As the record shows, the Settlements are fair, reasonable and adequate. Indeed, class members have already indicated their intent to participate in the Settlements, to file claims and to receive the benefits of the Settlements. *Id.*, ¶ 4.

Thousands of Class Members stand to benefit from the Settlements, and none have objected to final approval of the Settlements themselves. Two Class Members, Cisco Systems, Inc. ("Cisco") and Aptiv Services US, LLC fka Delphi Automotive LLP ("Aptiv"), have filed a document styled as an objection. MDL ECF No. 1386. By this filing, they only challenge the allocation of settlement proceeds due to them from the Settlements. Cisco and Aptiv do not contend that the Settlements are not fair, reasonable and adequate. They take no issue with the substantial settlement consideration, the scope of the release or any material term of the Settlements themselves. Instead, raising many of the issues they have raised before with respect to prior settlements, they bring arguments regarding the "allocation

---

[1] "MDL ECF No. ___" citations are to Case No. 3:17-md-02801.

[2] The Court has previously approved three rounds of settlements, with defendants Fujitsu Ltd.; Hitachi Chemical Co., Ltd.; Hitachi AIC, Inc.; Hitachi Chemical Co. America, Ltd.; NEC Tokin Corporation; NEC Tokin America, Inc.; Nichicon Corporation; Nichicon (America) Corporation; Nitsuko Electronics Corporation; Okaya Electric Industries Co., Ltd.; Okaya Electric America, Inc.; ROHM Co., Ltd.; ROHM Semiconductor U.S.A., LLC; Rubycon Corporation; Rubycon America Inc.; Soshin Electric Co., Ltd.; and Soshin Electronics of America Inc.

[3] To date, Counsel have recovered a total of $439,550,000 in monetary compensation for the Class.

formula" for the distribution of round four settlement funds as it applies to them. *Id.* at 3, 6-7; *see* 2 MCLAUGHLIN ON CLASS ACTIONS (16th ed.) § 6:23 ("court approval of a settlement as fair, reasonable and adequate is conceptually distinct from the approval of a proposed plan of allocation . . . ."). Indeed, these claims go not to the fairness of the settlement but instead to allocation issues to be addressed once the settlement is final. *See* MANUAL COMPLEX LIT. (4th ed.) § 21.312 ("Often . . . the details of allocation and distribution are not established until after the settlement is approved.").

As there are no objections to the Settlements themselves, the Settlements should be finally approved so that Settling Defendants can have the bargained-for benefit of finality. *See Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *4 (C.D. Cal. May 6, 2014) ("The objection is only to the plan of allocation, not to the settlement itself, . . . [t]he fact that the settlement has received no opposition from the class is valuable evidence of fairness" and weighs in favor of approving the Settlements) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). To the extent Cisco and Aptiv dispute the plan of allocation as it applies to them, this is an issue of allocation which should be resolved upon finality of the Settlements. In fact, as the Court is aware, Special Master Bleich has previously adjudicated the same issues. As Class Counsel have indicated—at the request of Cisco and Aptiv—these disputes with regard to the Fourth Round of Settlements can be resolved in similar fashion. Saveri Decl., ¶ 6.

For the reasons set forth below, the Court should grant final approval of the Settlements.

## II.   ARGUMENT

On July 24, 2020, the Class filed its Motion for Final Approval of Proposed Settlements with Defendants AVX, ELNA, Holy Stone, KEMET, Panasonic, Shinyei, Shizuki and Taitsu. MDL ECF No. 1360. The Settlements create an all-cash fund of $232,050,000. *See id.* at 1. AVX's $65,000,000 settlement represents approximately 74% of overcharges attributable to AVX during the class period and 15% of the total overcharges of $427,530,613 for all Defendants calculated by the Class's experts; ELNA's $25,000,000 settlement represents approximately 239% of overcharges attributable to ELNA and nearly 6% of total overcharges during the class period; Holy Stone's $28,000,000 settlement represents a tremendous recovery in light of Holy Stone's overcharges ($396,809) during the class

Master File No. 3:17-md-02801-JD
Case No. 3:14-cv-03264-JD                                   3
THE CLASS'S REPLY IN FURTHER SUPPORT OF MOTION FOR FINAL APPROVAL OF
PROPOSED SETTLEMENTS

period and over 6% of the total overcharges estimated by the Class's expert; KEMET's $62,000,000 settlement represents approximately 84% of KEMET's overcharges during the class period and over 14% of the total overcharges as calculated by the Class's expert; Panasonic's $45,000,000 settlement represents approximately 75% of Panasonic's overcharges during the class period and approximately 10% of the total overcharges as calculated by the Class's expert; Shinyei's $2,950,000 settlement represents a significant recovery in light of Shinyei's overcharges ($63,241) during the class period based on the Class's calculations; Shizuki's $1,000,000 settlement represents a significant recovery given the evidence of Shizuki's participation in the price-fixing conspiracy and Shizuki's relative share of total commerce during the class period; and Taitsu's $3,100,000 settlement represents a significant recovery in light of Taitsu's overcharges ($959,409) during the class period as calculated by the Class's expert. MDL ECF No. 1362 at 8. Taken together with the cash payments for the first, second and third round settlements, Counsel have thus far obtained $439,550,000 in monetary compensation for the Class, which is nearly 103% of the single total overcharges as calculated by the Class's expert. *Id.* at 1.

In addition to the cash component, Panasonic has agreed to continue to cooperate with the Class consistent with the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, P.L. 108-237. MDL ECF No. 1360 at 9-10 ("ACPERA"). This assistance is a substantial Class benefit because it will assist the Class at trial and will maximize their monetary recovery against the Non-Settling Defendants; and given ACPERA, Panasonic would only be liable for single, rather than treble, damages and claims could not be maintained for joint and several liability. *Id.* ¶ 13; *see* ACPERA § 213(a); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2013 WL 12387371, at *16 (N.D. Cal. Nov. 5, 2013) (cooperation "was valuable in maximizing the monetary recovery against the other Defendants.").

Lead Counsel has completed the Court-approved notice program. Lead Counsel directed notice to the Class which satisfied the requirements of *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 n.2 (9th Cir. 2010); the Northern District of California's *Procedural Guidelines for Class Action Settlement*; and the notice program the Court approved in its July 10, 2020 Preliminary Approval Order.

MDL ECF Nos. 1340, 1340-1, 1340-2. Indeed, the notice comports with due process and satisfies all applicable requirements under Fed. R. Civ. P. 23(e)(1). MDL ECF No. 1340, ¶ 10.

Lead Counsel disseminated notice through direct mailings, publication notice, and online advertising. Mindful of the Court's interest in ensuring that as many Class members as possible receive direct notice of the Settlements and their potential claims, Lead Counsel has taken additional steps well beyond the minimum requirements of due process and Fed. R. Civ. P. 23(c)(2)(B). To facilitate the settlement process, Lead Counsel directed the mailing of claim forms to Class members pre-populated with each Class member's annual capacitor purchases derived from Defendants' sales transaction data. *See* MDL ECF No. 1360 at 14. Lead Counsel has also responded to many inquiries from Class members regarding the claims process and participation in the Settlements. MDL ECF No. 1360-1, ¶ 43. In addition, the notice required under CAFA has been given. MDL ECF No. 1360-1, ¶ 47; Saveri Decl., ¶ 2.

The Court preliminarily approved the Settlements on July 10, 2020. MDL ECF No. 1340. Final approval under Fed. R. Civ. P. 23(e) is now warranted because the Settlements are fair, reasonable and adequate. During the last six years of hard-fought litigation, the Class has made substantial progress in prosecuting the litigation and developing the factual record to prove their claims and has brought the case to trial. A jury was empaneled and two weeks of trial had been completed at the time the trial was adjourned because of the COVID-19 pandemic. *See* MDL ECF No. 1251-1. The Court subsequently declared a mistrial. *See* MDL ECF No. 1309. The substantial cash payments to be paid as part of the present round of Settlements provide significant redress to Class members at this juncture, with some of the most culpable defendants still yet to settle. The parties have reached these Settlements after difficult, arm's-length negotiations between experienced counsel and during the course of trial.

Class Counsel's efforts satisfy or exceed the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process. Mindful of the Court's statements during the preliminary approval hearing for the previous rounds of settlements, Class Counsel has made diligent efforts beyond what is normally undertaken in cases of this type to ensure that as many Class Members receive actual notice of the Settlements. MDL ECF Nos. 1360; 1360-1, ¶ 43; 1360-3, ¶¶ 2-12; Saveri Decl., ¶ 2; Zylstra Decl., ¶¶ 4, 6-7.

These efforts include the claims administrator identifying alternative addresses for notices and Claim Forms returned as undeliverable through methods such as skip-tracing. Zylstra Decl., ¶ 6. As of August 31, 2020, the date the claims administrator last traced undeliverable notices, 405 notices and Claim Forms had been returned to the claims administrator as undeliverable with no forwarding address received. *Id.* The claims administrator attempted to locate a better address for all of them. *Id.* Of the 405 returned undeliverable claim forms traced by the claims administrator, the claims administrator determined better addresses for seven Settlement Class members. *Id.*, ¶ 7. The claims administrator then mailed Claim Forms to those addresses. *Id.* One of the seven mailed Claim Forms was subsequently submitted by a Settlement Class member. *Id.* Of the seven, no Claim Forms were returned as undeliverable. *Id.*

As of September 8, 2020, the claims administrator has received and processed 516 Claim Forms from Class members representing 80.1% of the Class's total commerce. Zylstra Decl., ¶ 5.

During the claims period, the claims administrator has received and processed requests for exclusion from the Round 4 Settlements in their entirety.[4] Zylstra Decl., ¶ 4. Also, the claims administrator has received and processed requests for partial exclusion submitted by three corporate families. *Id.*

The Court should approve the proposed Settlements because they satisfy all requirements of Fed. R. Civ. P. 23 for settlement approval and provide a substantial benefit to the Class. *See, e.g., Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982); *Rannis v. Recchia*, 380 Fed. App'x 646, 650 (9th Cir. 2010) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

---

[4] HP, Inc., had previously opted out of the litigation class as to the Panasonic defendants only and so did not participate in the Settlement with Panasonic. Blackberry Ltd. opted out as to the Settlements with ELNA, Holy Stone and Panasonic. Hon Hai/Foxconn opted out as to the Settlement with Panasonic. Plexus Corp./Electronic Assembly Corp. opted out as to the Settlements with ELNA and Panasonic. Zylstra Decl., Ex. A. Concurrently herewith, Class Counsel is submitted revised forms of judgments identifying the entities opting out of the settlements.

### A. Objecting Class Members Cisco and Aptiv's Objections to the Allocation Formula Do Not Warrant Delaying Final Approval

Only two Class Members oppose final approval of the Settlements, Cisco and Aptiv. MDL ECF No. 1386. Cisco and Aptiv do not object to the Settlements themselves, but only to the allocation plan distributing settlement funds. *Id.* at 6-7. Cisco and Aptiv's claim to a greater allocation of the settlement funds should not delay final approval of the Settlements. *See Nguyen*, 2014 WL 1802293, at *4 (C.D. Cal. May 6, 2014) ("The objection is only to the plan of allocation, not to the settlement itself, . . . [t]he fact that the settlement has received no opposition from the class is valuable evidence of fairness") (citing *Hanlon*, 150 F.3d at 1027); *see also* MCLAUGHLIN ON CLASS ACTIONS (16th ed.) § 6:23 ("court approval of a settlement as fair, reasonable and adequate is conceptually distinct from the approval of a proposed plan of allocation . . . courts frequently approve them separately"); MANUAL COMPLEX LIT. (4th ed.) § 21.312 ("Often . . . the details of allocation and distribution are not established until after the settlement is approved."). Cisco and Aptiv's objection to their allocation of the settlement funds should not delay the final approval of the Settlements themselves. Settling Defendants have an interest in finality, a benefit that they have bargained for. *Cf. Smith v. Mulvaney*, No. 85-0688, 1985 WL 29953, at *7 (S.D. Cal. June 5, 1985) ("Both the courts and parties in multidefendant cases have very real interests in not unnecessarily undermining the finality of reasonable settlements.").

Indeed, the issues underlying the objection to the allocation plan are not new and have been extensively litigated. As before, Cisco and Aptiv again assert that the settlement agreements release claims for capacitors purchased abroad and incorporated into finished products sold into the United States ("incorporated capacitors"), and that they are entitled to additional compensation from the settlement funds based on these claims. This very issue as related to the Round 2 settlements was the subject of the original referral to Special Master Bleich. ECF No. 2297. The Special Master conducted hearings and issued a Report and Recommendations (MDL ECF No. 821) and a Supplemental Report and Recommendations (MDL ECF No. 995). On July 15, 2020, the Court, following written submissions and a hearing, adopted the Reports and Recommendations. MDL ECF No. 1343. Letter

briefs have been submitted to Special Master Bleich on the remaining issue of the valuation of Cisco and Aptiv's claims and are pending. Saveri Decl., ¶ 6.

Cisco and Aptiv asked that the matter be referred to Special Master Bleich. Saveri Decl., ¶ 7. On September 3, 2020, Class Counsel offered to submit any dispute as to the distribution of the present settlement funds to Special Master Bleich pursuant to Federal Rule of Civil Procedure 53.[5] *Id.,* Ex. A. The underlying issues have been extensively litigated, and both the Court and the Special Master have issued guidance to the parties. Consequently, Lead Counsel anticipates that referral of the dispute over the plan of allocation to Special Master Bleich will resolve the issues expeditiously, permitting settlement proceeds to be distributed to all Class Members—including Cisco and Aptiv—without delay. *See Jenson v. First Tr. Corp.*, No. CV 05-3124 ABC (CTx), 2008 WL 11338161, at *10 (C.D. Cal. June 9, 2008) ("A single objection should not impede a Plan of Allocation that has been determined and recommended by a well-respected . . . judicial officer, and adopted by experienced and competent counsel, as being in the best interests of the Class") (citing *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002); *In re Exxon Valdez*, No. A89-0095-CV (HRH), 1996 WL 384623, at *5 (D. Alaska June 11, 1996)).

As Lead Counsel has agreed that the only dispute regarding the settlement may be appropriately referred to Special Master Bleich, Cisco and Aptiv's opposition is now moot, and final approval of the Settlements should be granted.

### III.  CONCLUSION

For the reasons set forth above, the Class respectfully requests that the Court: (1) grant final approval to the Settlements; (2) find the Class's dissemination of notice to have satisfied the Court-approved notice program, Fed. R. Civ. P. 23, and due process; and (3) refer the dispute regarding the allocation plan to a Special Master pursuant to Rule 53.

---

[5] While Cisco and Aptiv previously sought a stipulation to refer anticipated future objections to the Round Four Settlements to Special Master Bleich, at that time they had made no objection and there was no dispute to adjudicate. Now that they have made their objection, Lead Counsel agrees the dispute is now ripe for referral to a Special Master.

| | |
|---|---|
| Dated: September 8, 2020 | JOSEPH SAVERI LAW FIRM, INC. |
| | By:   /s/ *Joseph R. Saveri*<br>        Joseph R. Saveri |

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Anupama K. Reddy (State Bar No. 324873)
Christopher K.L. Young (State Bar No. 318371)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            swilliams@saverilawfirm.com
            areddy@saverilawfirm.com
            cyoung@saverilawfirm.com

*Lead Counsel for the Direct Purchaser Class*