UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION (NO. III) | Case No. 17-md-02801-JD<br><br>**ORDER RE INDIRECT PURCHASER PLAINTIFFS' CLASS CERTIFICATION MOTION**<br><br>Re: Dkt. No. 1681 (Case No. 14-cv-3264-JD) |

In this multi-district antitrust litigation, several groups of plaintiffs have alleged that the defendant corporations engaged in a long-running, global price-fixing conspiracy in the capacitor industry. The indirect purchaser plaintiffs (IPPs) are one of the plaintiff groups.

After a substantial amount of motion practice and other proceedings, the IPPs have settled on a class basis with all of the defendants they sued except Shinyei Technology Co., Ltd. and Shinyei Capacitor Co., Ltd. (together, Shinyei) and Taitsu Corporation (Taitsu). This order resolves the IPPs' request to certify a litigation class under Rule 23 of the Federal Rules of Civil Procedure in anticipation of a trial of their claims against Shinyei and Taitsu. Dkt. Nos. 1681, 2444.[1] Certification is denied.

## BACKGROUND

The Court has detailed the factual background of this case in other orders, *see*, *e.g.*, Dkt. No. 1003, and the parties' familiarity with the record is assumed. The IPPs' case is adjacent to the direct purchaser plaintiffs' (DPPs') class action, which is bound for a new trial in January 2021 after the pandemic derailed a prior trial during the presentation of evidence.

---

[1] Unless otherwise noted, all docket number references are to the ECF docket for *In re Capacitors Antitrust Litigation*, Case No. 3:14-cv-03264-JD.

The DPP and IPP cases are different in two important respects. First, the DPPs alleged one overarching conspiracy among all the manufacturer defendants to fix the prices of electrolytic and film capacitors. The IPPs have alleged two separate price-fixing conspiracies for electrolytic and film capacitors. The two remaining IPP defendants, Shinyei and Taitsu, make film capacitors, and are in the alleged film capacitor conspiracy only. Second, the direct purchaser plaintiffs bought capacitors directly from a manufacturer defendant; the indirect purchaser plaintiffs bought capacitors from direct purchasers, such as a distributor. As a result, the IPP case necessarily requires proof that the direct purchasers paid prices for capacitors that had been artificially inflated by a price-fixing conspiracy.

The Fifth Consolidated Complaint is the IPPs' operative complaint. *See* Dkt. No. 1589 (Indirect Purchaser Plaintiffs' Fifth Consolidated Complaint, or "Compl."). Seven of the eleven named plaintiffs say they bought film capacitors: CAE Sound and Toy-Knowlgy Inc., which are California companies; AGS Devices Co., a Florida company; AGS Devices Ltd., a New York company; Nebraska Dynamics, Inc., a Nebraska company; Angstrom, Inc., a Michigan company; and In Home Tech Solutions, Inc., a Minnesota company. *Id*. ¶¶ 30, 32-34, 36-37, 39. The complaint asserts three legal claims: (1) violations of the Sherman Act, 15. U.S.C. § 1, for which the indirect purchaser plaintiffs seek only "the issuance of an injunction" and no monetary damages; (2) violations of the antitrust and restraint of trade laws of California, Iowa, Michigan, Minnesota, Nebraska, and New York; and (3) violations of the consumer protection and unfair competition laws of California, Florida, Nebraska, and New York. *Id*. ¶¶ 404-42. Each state law claim is asserted on behalf of a putative class of residents of that respective state who purchased from a distributor, capacitors that were manufactured by a defendant or co-conspirator during the class period. So, for example, the California Damages Class alleges that defendants have violated California Business and Professions Code §§ 16700 *et seq.*, the Florida Damages Class alleges that defendants have violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, and so on. *Id*. ¶¶ 424, 440.

The IPPs' class certification motion was filed before they settled with most of the remaining defendants in their case, so the motion raises issues and arguments that are no longer

relevant, such as those relating to the proposed certification of electrolytic capacitor classes. Relevant to the two remaining defendants, Shinyei and Taitsu, are IPPs' requests to certify: (1) a nationwide Film Injunctive Class under the Sherman Act and Rule 23(b)(2); (2) a Film Damages Class under California law and Rule 23(b)(3) that "include[s] purchasers from the thirty-one states that permit recovery by indirect purchaser plaintiffs in price-fixing cases"; and (3) if the Court declines to certify a multi-state class under California law, an alternative certification of six separate state classes, namely a California Film Class, Florida Film Class, Michigan Film Class, Minnesota Film Class, Nebraska Film Class, and New York Film Class.  Dkt. No. 1681, Notice of Motion and Motion at 1-3.

While the IPPs' motion was pending, a number of developments happened in the MDL action as a whole. These included the certification of a class of direct purchaser plaintiffs under Rule 23(b)(3) for a single claim of price fixing in violation of Section 1 of the Sherman Act. The class consisted of direct purchasers who were inside the United States and were billed or invoiced for capacitors by one or more defendants, or outside the United States and were billed or invoiced for capacitors by defendants, where such capacitors were imported in the United States by a defendant. Dkt. No. 2231. Defendants filed petitions to appeal the class certification order, which the circuit court declined. Dkt. No. 2280.

To bring the IPPs' certification motion up to date following these and other events, the Court invited the IPPs, Shinyei, and Taitsu to file supplemental briefs. *See* Dkt. No. 2444, MDL Dkt. No. 983.[2] After these briefs were filed, the Court turned its resources to the massive pre-trial and trial proceedings for the DPPs' jury trial, which was tried in March 2020 before ending in a mistrial caused by the COVID-19 pandemic. At no time during the significant period devoted to the DPP proceedings did IPPs ask to revise or amend their certification requests.

## DISCUSSION

**I.    LEGAL STANDARDS**

The class action is "an exception to the usual rule that litigation is conducted by and on

---

[2] "MDL Dkt. No." references are to the ECF docket for Case No. 3:17-md-02801-JD.

3

behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotations omitted). To proceed under this special exception, the party seeking class certification must satisfy through evidentiary proof, and not just through pleading, that all of the requirements of Federal Rule of Civil Procedure 23 have been met. *Id*. That includes each of the four requirements of Rule 23(a) -- "sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation" -- and at least one of the provisions of Rule 23(b). *Id*.

For the proposed Film Injunctive Class, the IPPs' notice of motion and motion cited Rule 23(b)(2), which provides for certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." But the IPPs' arguments in their motion papers focused exclusively on proposed damages classes under Rule 23(b)(3). Why this change in focus happened was not explained. In any event, Rule 23(b)(3) allows for certification if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." One of the "matters pertinent to these findings" is manageability, meaning "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D).

For both the Rule 23(a) and Rule 23(b) requirements, the Court's analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011); *Comcast*, 569 U.S. at 33-34. This is because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id*. (quotations omitted). But the rigorous analysis must not be confused with a "license to engage in free-ranging merits inquiries at the certification stage"; merits questions should "be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466.

The purpose of Rule 23 is "to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Alcantar v. Hobart Service*, 800 F.3d 1047, 1053 (9th Cir. 2015) (quoting *Amgen*, 568 U.S. at 460, alteration in original). Consequently, class certification is not summary judgment by another name. The plaintiffs' burden is to present enough evidence to warrant adjudication of their claims on a class basis, not to win their case.

For the commonality inquiry under Rule 23(a)(2), what matters "is not the raising of common 'questions' . . . but rather, the capacity of a class-wide proceeding to generate common *answers*." *Wal-Mart*, 564 U.S. at 350 (quotations omitted, emphasis in original). Plaintiffs must show that their claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. For Rule 23(b)(3), plaintiffs must also show that the proposed class is "'sufficiently cohesive to warrant adjudication by representation'" in that common issues predominate over questions affecting only individual class members. *Amgen*, 568 U.S. at 469 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Plaintiffs need not prove that each element of their claim is susceptible to classwide proof. *Id*. The "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). As these principles indicate, the Court's predominance inquiry is guided by the elements of the underlying causes of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

## II.   THE PROPOSED MULTI-STATE CLASS UNDER CALIFORNIA LAW

The IPPs' original certification motion, Dkt. No. 1681, and the supplemental brief, Dkt. No. 2444, made clear that their main request is for the Court to "certify the 31 'indirect purchaser states' under California law." Dkt. No. 2444 at 10. This request is less straightforward than it might seem.

In the initial complaints in this case, the IPPs proposed a nationwide class under California law -- the Cartwright Act and Unfair Competition Law (UCL). Dkt. No. 400 ¶¶ 368-70, 379.

Defendants moved to strike these nationwide class allegations, which the Court found appropriate to consider at the pleadings stage. Dkt. No. 710 at 23-24. Applying *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), and other opinions, the Court determined that "the potential conflict with the laws of other states (which surely would have an interest in this case if the Court were to certify a nationwide class) 'looms large,'" and that "the IPPs' complaint alleges hardly any contacts at all with the state of California." *Id*. Instead, the complaint said that "[m]ost of the defendants are headquartered abroad, and the meetings and conduct at issue are also mostly alleged to have taken place outside of the United States." *Id*. at 24. Consequently, the Court struck "all references to a nationwide class in indirect purchasers' claims under California's Cartwright Act and Unfair Competition Law." *Id*.

In response to this order, the IPPs dropped their nationwide class allegations in favor of sub-classes under the antitrust and consumer protection laws of California and 31 other states, even though the named plaintiffs hailed only from California and Virginia. Dkt. No. 1003 at 4; Dkt. No. 741 ¶¶ 387-445. This too was untenable. In a second round of pleadings motions, the Court determined that "Article III standing must be measured claim by claim" with "a named plaintiff who must possess the requisite standing" for each claim. Dkt. No. 1003 at 6 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). After a detailed analysis, the Court concluded that "in-state injury in the form of an in-state purchase of a capacitor at a supra-competitive price is required here to satisfy Article III standing for each of the state law claims asserted," and so "[f]or each of IPPs' state law claims, they need a plaintiff who has been injured in-state in that way." *Id*. at 9-10. The IPPs acknowledged that they did not "have such plaintiffs for any of the thirty-one states whose laws [we]re asserted other than California," and so the Court dismissed "the non-California state law claims for lack of Article III standing." *Id*. at 11. The IPPs were given "one last opportunity to renew claims under those laws if they are able to locate a named plaintiff who can assert an Article III injury-in-fact consistent with this order." *Id*.

These events led to the operative Fifth Consolidated Complaint. In response to the Court's second dismissal order, the IPPs added named plaintiffs in Florida, Nebraska, New York, Michigan, and Minnesota, who purchased film capacitors. Dkt. No. 1589 ¶¶ 33-34, 36-37, 39.

6

The Fifth Consolidated Complaint included claims under the antitrust laws of California, Nebraska, New York, Michigan and Minnesota, *id*. ¶¶ 415-29, and claims under the consumer protection and unfair competition laws of California, Florida, Nebraska and New York. *Id*. ¶¶ 430-42. Significantly, the complaint defined the "State Damages Classes" as residents of a specified state who indirectly purchased a relevant capacitor, *id*. ¶ 394, and each state law claim was asserted on behalf of the corresponding state damages class only. So, for example, the "California Damages Class" was limited to "residents of California" only, and the claim under the Cartwright Act as well as under the Unfair Competition Law were asserted only "on behalf of the California Damages Class." *Id*. ¶¶ 394, 424, 439. The same approach was used for all of the state law claims in the Fifth Consolidated Complaint, and no state law was invoked on behalf of anyone who is not a resident of that state.

Despite all this, the issue of a nationwide class under California law turned out to be dead in name only. The IPPs jolted it back to life in their certification motion, which seeks certification of a single Rule 23(b)(3) class under California law for indirect purchasers in 31 states: Alabama, Arizona, Arkansas, California, District of Columbus, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. Dkt. No. 1681, Notice of Motion and Motion at 1 n.1. The IPPs say that these are "the thirty-one states that permit recovery by indirect purchaser plaintiffs in price-fixing cases." *Id*. at 1. The IPPs' supplemental brief reaffirmed that they are continuing to seek certification of "the 31 'indirect purchaser states' under California law." Dkt. No. 2444 at 10.

This request raises a number of concerns. To start, it sounds awfully like an end-run around the Court's ruling striking the IPPs' allegations on behalf of a nationwide class under California law. The IPPs say it is not, because instead of seeking to have California law applied nationwide, they are seeking to have California law applied to "only those purchasers from states that permit indirect purchaser lawsuits." Dkt. No. 1778 at 3. That is more a matter of degree than substance, but even so, why was there no reference whatsoever to a putative 31-state class under

7

California law in the Fifth Consolidated Complaint? The complaint clearly stated that it sought to apply California law only to claims on behalf of a California class. Dkt. No. 1589 ¶¶ 424, 439. Indirect purchasers in Alabama, Arizona, Arkansas, District of Columbus, Hawaii, Illinois, Kansas, Maine, Massachusetts, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Utah, Vermont, West Virginia and Wisconsin were never identified in the complaint, and were not even ostensible plaintiffs in this case. The first time this vast pool of nominal plaintiffs was identified was in the IPPs' class certification motion. The IPPs made no effort to amend the complaint to allege a foundation for this request, and have not offered any explanation for this sharp departure from the Fifth Consolidated Complaint.

Other problems abound. The proposal to apply California law to a 31-state class raises serious questions concerning: (1) the Due Process Clause of the United States Constitution; (2) California's choice-of-law rules; and (3) the territorial reach of the California Cartwright Act and Unfair Competition Law, which are the two California laws IPPs are seeking to apply to their proposed 31-state class. These are substantial and distinct issues that are easily confused. As our circuit has said, "[i]n this complex and murky area, it is indeed easy to lose one's bearings and to slip from a focus on the constitutional limitations on choice of law to the choice of law rules themselves." *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1113 n.12 (9th Cir. 2013) (citation omitted).

The IPPs did not tackle this analysis with aplomb. For the constitutional question, "[t]o the extent a defendant's conspiratorial conduct is sufficiently connected to California, and is not 'slight and casual,' the application of California law to that conduct is 'neither arbitrary nor fundamentally unfair,' and the application of California law does not violate that defendant's rights under the Due Process Clause." *Id*. at 1107 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)). The "requirements of the Due Process Clause must be satisfied individually with respect to each defendant in a case." *Id*. at 1113 n.15. Under California's choice-of-law rules, which both sides agree are applicable, the class action proponent bears the initial burden to

1   show that application of California law is constitutional. *Mazza v. Am. Honda Motor Co., Inc.*,
2   666 F.3d 581, 589-90 (9th Cir. 2012).

3   It is not at all clear that IPPs have met this burden for Shinyei and Taitsu. As the Court has
4   determined, "the IPPs' complaint alleges hardly any contacts at all with the state of California,"
5   Dkt. No. 710 at 24, and all three of the Shinyei and Taitsu entities named by the complaint are
6   Japanese corporations with their principal places of business in Japan. Dkt. No. 1589 ¶¶ 83-84
7   (Shinyei Technology Co., Ltd. and Shinyei Capacitor Co., Ltd.), ¶ 89 (Taitsu Corp.). In addition,
8   the IPPs' due process arguments are made in connection with the electrolytic capacitor conspiracy,
9   and not the separate film capacitor conspiracy involving Shinyei and Taitsu. For example, the
10  criminal guilty pleas the IPPs rely on, and the other evidence they cite, are for electrolytic
11  capacitors. *See* Dkt. No. 1681 at 31-33 (purpose of one meeting was reported as "regarding prices
12  of electrolytic capacitors"; defendant's employee responded to a customer request "for electrolytic
13  capacitor pricing" from "his California office"). While the IPPs say that Taitsu and Shinyei had
14  U.S. subsidiaries, Taitsu America, Inc. and Shinyei Electronics Corporation of America, which
15  were both California corporations registered to do business, and doing business, in California, *id*.
16  at 34, these subsidiaries are not named as defendants.

17  The Court is mindful that "the Cartwright Act can be lawfully applied without violating a
18  defendant's due process rights when more than a *de minimis* amount of that defendant's alleged
19  conspiratorial activity leading to the sale of price-fixed goods to plaintiffs took place in
20  California." *AT&T Mobility*, 707 F.3d at 1113. The same goes for claims under the California
21  Unfair Competition Law. *Id*. at 1108 n.1. The *de minimis* bar may be cleared even though
22  "[n]one of plaintiffs' purchases at issue . . . was made in California," where defendants are alleged
23  to have "engaged in and implemented their conspiracy in the U.S. through the offices they
24  maintained in California," "entered into agreements to fix the prices of [relevant products] in
25  California," and "specific employees of particular Defendants, operating from offices in
26  California, participated in illegally obtaining and sharing their co-conspirators' pricing
27  information." *Id*. at 1108-09.

28

None of this helps the IPPs. There is much less factual support here than in *AT&T Mobility*, especially for the film capacitor conspiracy. But even if the Court were to assume purely for discussion that the IPPs have cleared the *de minimis* bar, the California choice-of-law rules pose another barrier to certification. Once the proponent of California law has established that it can be applied constitutionally, "the burden shifts to the other side to demonstrate 'that foreign law, rather than California law, should apply to class claims.'" *Mazza*, 666 F.3d at 590 (quotation omitted); *see also Freedline v. O Organics*, No. 19-cv-01945-JD, 2020 WL 6290352 (N.D. Cal. Oct. 27, 2020). "California law may only be used on a classwide basis if 'the interests of other states are not found to outweigh California's interest in having its law applied.' To determine whether the interests of other states outweigh California's interest, the court looks to a three-step governmental interest test." *Mazza*, 666 F.3d at 590. First, the Court determines whether the relevant laws are the same or different; if there is a difference, the Court examines each jurisdiction's interest in the application of its own law "under the circumstances of the particular case to determine whether a true conflict exists"; and if there is a true conflict, then the Court compares the nature and strength of each jurisdiction's interest and "applies the law of the state whose interest would be more impaired if its law were not applied." *Id*.

The question here is not whether California law may be used on a "classwide" basis -- most of the 31 states were not alleged to be a part of any class to begin with -- but whether the California Damages Class can now be expanded from California-residents-only to a 31-state class. Defendants have established that this is not appropriate. *Mazza* determined that the class members' claims had constitutionally sufficient contacts with California, even though the issue had not been directly disputed by the defendant, "because Honda's corporate headquarters, the advertising agency that produced the allegedly fraudulent misrepresentations, and one fifth of the proposed class members are located in California." *Mazza*, 666 F.3d at 590. But the court found differences among the relevant state laws on the first step of the governmental interest test. It found that "at least some differences that Honda identifies are material," for example, the California consumer protection laws at issue had "no scienter requirement," where many other states did, and California required named class plaintiffs to demonstrate reliance, while some other

state statutes did not. *Id*. at 591. There were also material differences in the remedies provided by different states. *Id*.

So too, here. The IPPs do not materially dispute defendants' showing that the prudential standing factors in *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519 (1983), do not apply to Cartwright Act claims, but do apply under the antitrust laws of Nebraska, New Mexico and Washington, D.C. *See* Dkt. No. 1749 at 15-16. The IPPs also do not dispute that the statutes of limitations are different among the potentially applicable laws, and that some states require indirect purchaser plaintiffs to prove that a portion of the alleged overcharge was "passed on" to them from the direct purchasers, while others do not. *Id*. at 16-17. "[T]hese are not trivial or wholly immaterial differences." *Mazza*, 666 F.3d at 591. Each of these differences could "spell the difference between the success and failure of" a plaintiff's claim. *Id*.

*Mazza* also weighs in defendants' favor on the second and third steps of the governmental interest test. As principles of comity and federalism counsel, "each state has an interest in setting the appropriate level of liability for companies conducting business within its territory," and striking its own desired "balance and boundaries between maintaining consumer protection, on the one hand, and encouraging an attractive business climate, on the other hand." *Mazza*, 666 F.3d at 592. On the issue of which state interest is most impaired, the *Mazza* court observed that "each foreign state has an interest in applying its law to transactions within its borders and that, if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce." *Id*. at 593. Further, "California recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest," and California "considers the 'place of the wrong' to be the state where the last event necessary to make the actor liable occurred." *Id*. As in *Mazza*, the last event necessary for liability here was the indirect purchaser plaintiffs' purchase of the price-fixed capacitors and the payment of the overcharges. Consequently, each proposed class member's claim "should be governed by the consumer protection [and antitrust] laws of the jurisdiction in which the transaction took place." *Id*. at 594.

11

These conclusions are also wholly consistent with *AT&T Mobility*. As noted, there is a degree of equivalency between the Cartwright Act and the UCL, *AT&T Mobility*, 707 F.3d at 1107 n.1, and the due process analysis is not the same as the choice-of-law analysis, *id*. at 1113 ("Because the Due Process Clause does nothing but circumscribe the universe of state laws that can be constitutionally applied to a given case, we 'need not . . . balance the competing interests of California and [other states].' Objections based on the interests of other states are more properly raised under a choice of law analysis") (internal citations omitted). To be sure, in *Mazza*, which the *AT&T Mobility* court embraced, the circuit conducted an aggregation of contacts analysis for the due process question, but ultimately focused on place of purchase and rejected the application of California law to foreign class members under the choice-of-law analysis. This approach yields the same result here.

The limits on the extraterritorial application of the California Cartwright Act and UCL are another reason to doubt the propriety of a multi-state class. The IPPs refer to *AT&T Mobility* for the proposition that "[t]he Cartwright Act does not limit its reach to 'residents' of California, or even only to those entities or persons that purchased products within its borders." Dkt. No. 1778 at 3. But that decision is crystal clear in stating that the "question of whether the Cartwright Act provides a cause of action based exclusively on out-of-state purchases is distinct from the inquiry of whether such application would violate the Due Process Clause, and is not at issue in this case." *AT&T Mobility*, 707 F.3d at 1110 n.8. The IPPs did not present a substantive reason that might justify the application of the Cartwright Act outside of California, and did not address at all the same issue for the UCL.

Overall, the IPPs have not established that California law can or should be applied to their proposed 31-state class. Even if the Court were to permit residents of states not identified in the complaint to join the case, the proposed 31-state class could not be certified as one class under Rule 23(b)(3) because variations in state law would defeat predominance. Certification of a multi-state class under California law is denied.

### III. THE PROPOSED CERTIFICATION OF SIX STATE CLASSES UNDER RULE 23(B)(3)

As an alternative to a multi-state class under California law, the IPPs propose the certification of six separate state classes, namely a California Film Class, Florida Film Class, Michigan Film Class; Minnesota Film Class; Nebraska Film Class, and New York Film Class. Dkt. No. 1681, Notice of Motion and Motion at 1-3. This request is also denied. The IPPs offered virtually no argument in support of this alternative. For example, despite the fact that the predominance inquiry is to be guided by the elements of the underlying cause of action, *see Erica P. John Fund, Inc.*, 563 U.S. at 809, the IPPs set out the elements for the Sherman Act Section 1 claim only. Dkt. No. 1681 at 13. The IPPs presented no substantive discussion at all of the state laws they rely upon for the state classes. This scant record does not permit the Court to evaluate whether these classes are certifiable and may proceed to a trial.

### IV. RULE 23(A)

The discussion so far has focused on the Rule 23(b)(3) requirements. Since a class cannot be certified under this provision, a detailed review of the Rule 23(a) factors is not warranted. Even so, the Court notes for the sake of completeness that the IPPs come up short here, too. For example, defendants pointed out that the IPPs had made no factual showing on the numerosity of the six proposed state law classes. Dkt. No. 1749 at 40. IPPs responded only with a statement by counsel in the reply brief about the supposed numbers of purchasers in each class. Dkt. No. 1778 at 30. Commonality is also questionable for the same reasons that a Rule 23(b)(3) class is not certifiable. *See In re Capacitors Antitrust Litigation (No. III)*, No. 17-md-02801-JD, 2018 WL 5980139, at *3 (N.D. Cal. Nov. 14, 2018).

### V. THE PROPOSED INJUNCTIVE CLASS UNDER RULE 23(B)(2)

The IPPs have offered little in the way of support for a Rule 23(b)(2) injunctive relief class. The putative injunction class is mentioned in the IPPs' notice of motion and motion, but is effectively abandoned in their briefs and arguments. The question of how or why an injunctive relief class might be warranted when the primary relief IPPs seek is monetary damages, *see Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1195-96 (9th Cir. 2001), is left unanswered. Certification of a Rule 23(b)(2) class is denied.

**CONCLUSION**

Class certification is denied in all respects. The Court need not reach defendants' *Daubert* motion to exclude the IPPs' expert, Dr. Russell L. Lamb, which is terminated as moot. A status conference is set for December 10, 2020, at 10:00 a.m. The IPPs, Shinyei and Taitsu are directed to file by December 3, 2020, a status update, including a jointly proposed schedule for pre-trial filings and trial.

**IT IS SO ORDERED.**

Dated: November 3, 2020

JAMES DONATO
United States District Judge