# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 3:17-md-02801-JD |
| | Case No. 3:14-cv-03264-JD |
| THIS DOCUMENT RELATES TO:<br>THE DIRECT PURCHASER CLASS ACTION | JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS |
| | Date:        November 29, 2021<br>Time:        9:00 a.m.<br>Judge         Honorable James Donato<br>Courtroom:   11, 19th Floor |

# TABLE OF CONTENTS

PAGE

STIPULATED PRELIMINARY INSTRUCTION NO. 1 ............................................................. 1

DISPUTED PRELIMINARY INSTRUCTION NO. 2 OFFERED BY DPPS ............................ 2

DISPUTED PROPOSED PRELIMINARY INSTRUCTION NO. 2 OFFERED BY
DEFENDANTS CLASS ACTION ................................................................................................. 3

DPP'S ARGUMENT RE DISPUTED PRELIMINARY INSTRUCTION NO. 2   CLASS
ACTION ........................................................................................................................................... 4

DEFENDANTS' ARGUMENT RE DISPUTED PROPOSED PRELIMINARY
INSTRUCTION NO. 2   CLASS ACTION ................................................................................. 5

STIPULATED PRELIMINARY INSTRUCTION NO. 3 ............................................................. 7

STIPULATED PRELIMINARY INSTRUCTION NO. 4 ............................................................. 8

STIPULATED PRELIMINARY INSTRUCTION NO. 5 ............................................................. 9

STIPULATED PRELIMINARY INSTRUCTION NO. 6 ........................................................... 10

STIPULATED PRELIMINARY INSTRUCTION NO. 7 ............................................................11

STIPULATED PRELIMINARY INSTRUCTION NO. 8 ........................................................... 12

STIPULATED PRELIMINARY INSTRUCTION NO. 9 ........................................................... 13

STIPULATED PRELIMINARY INSTRUCTION NO. 10 ......................................................... 23

STIPULATED PRELIMINARY INSTRUCTION NO. 11 ......................................................... 24

DISPUTED PRELIMINARY INSTRUCTION NO. 12 OFFERED BY DPPS ......................... 26

DISPUTED PROPOSED PRELIMINARY INSTRUCTION NO. 12 OFFERED BY
DEFENDANTS ............................................................................................................................. 27

DPP'S ARGUMENT RE DISPUTED PRELIMINARY INSTRUCTION NO. 12
DEPOSITION IN LIEU OF LIVE TESTIMONY ..................................................................... 28

DEFENDANTS' ARGUMENT RE DISPUTED PROPOSED PRELIMINARY
INSTRUCTION NO. 12   PREVIOUS TESTIMONY ............................................................. 29

DISPUTED PROPOSED PRELIMINARY INSTRUCTION NO. 12A OFFERED BY DPPS .. 31

DISPUTED PROPOSED PRELIMINARY INSTRUCTION NO. 12A ..................................... 32

DPP'S ARGUMENT RE DISPUTED PRELIMINARY INSTRUCTION NO. 12A PREVIOUS
TRIAL TESTIMONY ................................................................................................................... 33

DEFENDANTS' ARGUMENT RE DISPUTED PROPOSED PRELIMINARY INSTRUCTION NO. 12A  PREVIOUS TRIAL TESTIMONY .................................................. 34

STIPULATED PRELIMINARY INSTRUCTION NO. 13 ....................................................... 36

STIPULATED PRELIMINARY INSTRUCTION NO. 14 ....................................................... 37

STIPULATED PRELIMINARY INSTRUCTION NO. 15 ....................................................... 38

STIPULATED PRELIMINARY INSTRUCTION NO. 16 ....................................................... 39

STIPULATED PRELIMINARY INSTRUCTION NO. 17 ....................................................... 40

STIPULATED PRELIMINARY INSTRUCTION NO. 18 ....................................................... 41

STIPULATED PRELIMINARY INSTRUCTION NO. 19 ....................................................... 42

STIPULATED PRELIMINARY INSTRUCTION NO. 20 ....................................................... 43

STIPULATED PRELIMINARY INSTRUCTION NO. 21 ....................................................... 44

STIPULATED PRELIMINARY INSTRUCTION NO. 22 ....................................................... 45

STIPULATED PRELIMINARY INSTRUCTION NO. 23 ....................................................... 47

STIPULATED PRELIMINARY INSTRUCTION NO. 1

DUTY OF JURY

You are now the jury in this case, and I want to take a few minutes to tell you about your duties as jurors and to give you some preliminary instructions before the testimony starts. At the end of trial I will give you the detailed written instructions that will control your deliberations. These are the introductory instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. You should also not be influenced by any person's race, color, religion, national ancestry, or gender.

All of this means that you must decide the case solely on the evidence before you. Please keep in mind that you took an oath to do so.

Do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be. That is for you to decide.


*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.2 (2017).

DISPUTED PRELIMINARY INSTRUCTION NO. 2 OFFERED BY DPPs

CLASS ACTION

This lawsuit has been brought as a class action. A class action is a lawsuit that has been brought by one or more persons or businesses called class representatives on behalf of a larger group of people or businesses who have similar legal claims. All of these people or businesses together are called a class. A class action lawsuit allows the claims of many persons or businesses to be resolved at the same time, rather than requiring each person or business to sue separately. Not everyone in the class will testify, but you may assume that the evidence admitted during trial applies to all class members, unless I tell you otherwise. The fact that this case is proceeding as a class action does not mean any decision has been made about the merits of the case, and you must not infer anything about the merits of this case based on the fact that it is a class action.

In this case, the class is called the Direct Purchaser Plaintiffs or "DPPs," and consists of the following members: all persons or businesses in the United States who purchased capacitors directly from any of the defendants from January 1, 2002 to December 31, 2013.

There are four named direct purchaser plaintiffs representing the class: Chip-Tech, Ltd., Dependable Component Supply Corp., eIQ Energy, Inc., and Walker Component Group, Inc.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given).

## DISPUTED PROPOSED PRELIMINARY INSTRUCTION NO. 2 OFFERED BY DEFENDANTS

### CLASS ACTION

This lawsuit has been brought as a class action. A class action is a lawsuit that has been brought by one or more persons or businesses called class representatives on behalf of a large group of people or businesses who have similar legal claims. All of these people or businesses together are called a class. A class action lawsuit allows the claims of many persons or businesses to be resolved at the same time, rather than requiring each person or business to sue separately. The fact that this case is proceeding as a class action does not mean any decision has been made about the merits of the case, and you must not infer anything about the merits of this case based on the fact that it is a class action.

In this case, the class is called the Direct Purchaser Plaintiffs or "DPPs," and is consists of the following members: all persons or businesses in the United States who purchased capacitors directly from any of the defendants from January 1, 2002 to December 31, 2013. The direct purchaser plaintiffs representing the class in this trial are Chip-Tech, Ltd. and eIQ Energy, Inc.

*Authority*: Adapted from March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216).

## DPP's ARGUMENT RE DISPUTED PRELIMINARY INSTRUCTION NO. 2

## CLASS ACTION

This instruction was given to the jury without objection during the March 2020 trial, Defendants now ask the Court to delete a portion of this instruction that that was given at the March 2020 trial. (MDL ECF No. 1216). This instruction is drawn from CACI 115, and is an instruction routinely given by other courts in the Northern District of California. *See*, *e.g.*, Pretrial Order No. 4*, Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR (N.D. Cal. May 4, 2019), ECF No. 336; Judicial Council of Cal., Civil Jury Instructions No. 115 ("Class Action' Defined (Plaintiff Class)") (2021).

Additionally, CACI 115 is a correct construction of the law. The language Defendants are attempting to delete is consistent with the Court's predominance inquiry in its class certification decision, and inconsistent with the law. *In re Capacitors Antitrust Litig. (No. III)*, No. 14-CV-03264-JD, 2018 WL 5980139, at *4 (N.D. Cal. Nov. 14, 2018). The Court held, *inter alia*, that "Defendants have not identified any matters that would require a degree of individualized proof sufficient to defeat the DPPs' showing" of predominance. *Id*. By deleting the selected language, Defendants are attempting to relitigate an issue that the Court conclusively determined for the certified class while nonetheless allowing that the Court may "tell you otherwise" for exceptions. Defendants show no basis for departing from the preliminary instructions that were given at the March 2020 trial.

## DEFENDANTS' ARGUMENT RE DISPUTED PROPOSED PRELIMINARY INSTRUCTION NO. 2

### CLASS ACTION

There is only one substantive difference between the version of this instruction proposed by the DPPs and the version proposed by Defendants:  The inclusion (as DPPs suggest) or omission (as Defendants suggest) of language telling the jury that "Not everyone in the class will testify, but you may assume that the evidence admitted during trial applies to all class members, unless I tell you otherwise."  This sentence misstates the law and should be omitted for several reasons.

First, DPPs bear the burden of proving the scope of the conspiracy they allege and that includes the burden of establishing which, if any, capacitor sales were subject to price fixing.  If the jury is instructed that any evidence presented applies to every plaintiff, a juror could easily mistakenly conclude that if evidence were presented that a single direct purchaser was injured, every capacitor customer in the class was similarly injured.  This is not the law and would eviscerate DPPs' burden of proof on a key issue in the case.

Second, this sentence is highly confusing.  The sentence immediately following this one instructs the jury that it may "not infer anything about the merits of this case based on the fact that it is a class action."  This contradicts the sentence at issue; if a jury is to assume that any and all the evidence applies to all Plaintiffs, the jury must necessarily take the fact that this is a class action trial into account when considering the merits of the case.  This language also risks of confusion and prejudice to defendants when the jury is faced with the task of determining damages at the end of the trial (assuming they find any Defendants liable).  The DPPs have the burden to demonstrate harm to "all (or nearly all)" class members and that cannot be done by assuming evidence introduced as to one class member must necessarily apply to all.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 311 (N.D. Cal. 2010) (plaintiffs were required to establish that "all (or nearly all) members of the class suffered damage as a result of Defendants' alleged anti-competitive conduct") (quoting "all (or nearly all)" class-wide injury test from *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07-01819-CW, 2008 WL 4447592, at *5 (N.D. Cal. Sept. 29, 2008)), abrogated on other grounds by *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012); *In re Pre-Filled Propane Tanks*, No. 14-md-

02567, ECF No. 607 at 8 (W.D. Mo. Nov. 9. 2021) ("Predominance is lacking in circumstances where a plaintiff's common proof of impact fails to show that all or nearly all class members were in fact injured.").

Finally, omitting this language is not without precedent.  In *In re Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115-WHO (N.D. Cal. Nov. 13, 2018) (Doc. 791), the Court's instruction on class actions did not include the language that Defendants propose to omit from this instruction.

## STIPULATED PRELIMINARY INSTRUCTION NO. 3

## CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

The plaintiffs are the Direct Purchaser Plaintiffs who I just told you about. The defendants are Nippon Chemi-Con Corporation and United Chemi-Con Inc., referred to as "NCC" and "UCC"; and Matsuo Electric Co. Ltd., referred to as "Matsuo. Defendants manufactured and sold one or more types of aluminum, tantalum, and/or film capacitors.

The DPPs allege that defendants and others conspired directly and indirectly with each other in an overarching scheme to control and set the prices of their aluminum, tantalum and film capacitors sold to United States purchasers and purchasers worldwide from January 1, 2002, until December 31, 2013. The DPPs have the burden of proving this alleged conspiracy.

The defendants deny the DPPs' claims.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.5 (2017).

## STIPULATED PRELIMINARY INSTRUCTION NO. 4

### BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.6 (2017).

## STIPULATED PRELIMINARY INSTRUCTION NO. 5

### CORPORATIONS -- FAIR TREATMENT

The parties in this case are corporations. All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers, performed within the scope of authority. An act is within the scope of a person's authority if it is within the range of reasonable and foreseeable activities that an employee, agent, director, or officer engages in while carrying out that person's business.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 4.1 (2017).

## STIPULATED PRELIMINARY INSTRUCTION NO. 6

### WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I may instruct you to accept as proved.


*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit

Manual of Model Civil Jury Instructions, Instr. 1.9 (2017).

## STIPULATED PRELIMINARY INSTRUCTION NO. 7

### WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.10 (2017).

## STIPULATED PRELIMINARY INSTRUCTION NO. 8

### DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.12 (2017).

STIPULATED PRELIMINARY INSTRUCTION NO. 9

STIPULATIONS OF FACT

The parties have agreed to certain facts that I will now read to you. They have stipulated that certain electrolytic capacitor manufacturers -- but not others -- were convicted of violating the United States antitrust laws. You must treat these facts as having been proved:

**Matsuo Electric Co., Ltd.**

1.    Defendant **Matsuo Electric Co., Ltd.** pled guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

    a.    For purposes of Matsuo's guilty plea, the "relevant period" is the period beginning at least as early as November 2001 until in or about January 2014. During the relevant period, Matsuo was a corporation organized and existing under the laws of Japan. Matsuo had its principal place of business in Osaka, Japan. During the relevant period, Matsuo manufactured tantalum electrolytic capacitors and was engaged in the sale of such electrolytic capacitors in the United States and elsewhere. Electrolytic capacitors are a major subcategory of capacitors, fundamental components of electrical circuits used primarily to store and regulate electrical current. Tantalum capacitors are a type of electrolytic capacitor.

    b.    During the relevant period, Matsuo, through its officers and employees, including high-level personnel of Matsuo, participated in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the United States and elsewhere. In furtherance of the conspiracy, Matsuo, through its officers and employees, at times engaged in discussions and attended meetings with representatives of other manufacturers of electrolytic capacitors. During certain of these discussions and meetings, the conspirators agreed to fix the price and/or rig bids of certain electrolytic capacitors to be sold in the United States and elsewhere.

    c.    During the relevant period, Matsuo and its coconspirators manufactured certain electrolytic capacitors outside the United States and sold them in the United States or for delivery to the

United States. During the relevant period, certain electrolytic capacitors sold by one or more of the conspirator firms traveled in interstate commerce.

    d.  Acts in furtherance of this conspiracy were carried out within the Northern District of California. Certain electrolytic capacitors that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District.

    e.  Matsuo employee Satoshi Okubo also pled guilty.

**Nippon Chemi-Con Corporation**

  2.  Defendant **Nippon Chemi-Con Corporation** pled guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of electrolytic capacitors sold in the United States and elsewhere in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

    a.  For purposes of NCC's guilty plea, the "relevant period" is that period beginning at least as early as November 2001 until in or about January 2014. During the relevant period, NCC was a corporation organized and existing under the laws of Japan. NCC had its principal place of business in Tokyo, Japan. During the relevant period, NCC manufactured electrolytic capacitors and was engaged in the sale of such electrolytic capacitors in the United States and elsewhere. Electrolytic capacitors are a major subcategory of capacitors, fundamental components of electrical circuits used primarily to store and regulate electrical current.

    b.  During the relevant period, NCC, through its officers and employees, including high-level personnel of NCC, participated in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors manufactured outside of the United States and sold in the United States and elsewhere. In furtherance of the conspiracy, NCC, through its officers and employees, at times engaged in discussions and attended meetings with representatives of other manufacturers of electrolytic capacitors. During these discussions and meetings, the conspirators agreed to fix the price and/or rig bids of certain electrolytic capacitors manufactured outside of the United States to be sold in the United States and elsewhere.

c. During the relevant period, NCC and its coconspirators manufactured electrolytic capacitors outside the United States and sold them in the United States or for delivery to the United States. During the relevant period, electrolytic capacitors sold by one or more of the conspirator firms traveled in, and substantially affected, interstate commerce.

d. Acts in furtherance of this conspiracy were carried out within the Northern District of California. Electrolytic capacitors that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District.

e. United Chemi-Con did not plead guilty.

3. Six other manufacturers of electrolytic capacitors who are not parties to this lawsuit also pled guilty.

**ELNA Co., Ltd.**

4. ELNA Co., Ltd., which is not a defendant, pled guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

a. For purposes of ELNA's guilty plea, the "relevant period" is the period beginning at least as early as August 2002 until in or about January 2014. During the relevant period, ELNA was a corporation organized and existing under the laws of Japan. ELNA had its principal place of business in Yokohama, Japan. During the relevant period, ELNA manufactured electrolytic capacitors and was engaged in the sale of such electrolytic capacitors in the United States and elsewhere. Electrolytic capacitors are a major subcategory of capacitors, fundamental components of electrical circuits used primarily to store and regulate electrical current.

b. During the relevant period, ELNA, through its officers and employees, including high-level personnel of ELNA, participated in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the United States and elsewhere. In furtherance of the conspiracy, ELNA, through its officers and employees, at times engaged in discussions and attended meetings with representatives of other manufacturers of electrolytic capacitors. During certain of these discussions and meetings, the

conspirators agreed to fix the price and/or rig bids of certain electrolytic capacitors to be sold in the United States and elsewhere.

c.      During the relevant period, ELNA and its coconspirators manufactured certain electrolytic capacitors outside the United States and sold them in the United States or for delivery to the United States. During the relevant period, certain electrolytic capacitors sold by one or more of the conspirator firms traveled in interstate commerce.

d.      Acts in furtherance of this conspiracy were carried out within the Northern District of California. Certain electrolytic capacitors that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District.

e.      ELNA America, Inc. did not plead guilty.

f.      ELNA employee Tokuo Tatai and former employee Satoshi Okubo also pled guilty.

**Hitachi Chemical Co., Ltd.**

5.      **Hitachi Chemical Co., Ltd.**, which is not a defendant, pled guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

a.      For purposes of Hitachi's guilty plea, the "relevant period" is the period beginning at least as early as August 2002 until at least as late as March 2010. During the relevant period, Hitachi was a corporation organized and existing under the laws of Japan. Hitachi had its principal place of business in Tokyo, Japan. During the relevant period, Hitachi manufactured aluminum and tantalum electrolytic capacitors and was engaged in the sale of aluminum and tantalum electrolytic capacitors in the United States and elsewhere through certain current and former subsidiaries, including entities known during the relevant time period as Hitachi AIC, Inc. (a corporation organized and existing under the laws of Japan, with its principal place of business in Tochigi Prefecture, Japan) and Hitachi Chemical Electronics Co. Ltd. (a corporation organized and existing under the laws of Japan, with its principal place of business in Ibaraki Prefecture, Japan). At a

certain point after the relevant period, Hitachi assumed responsibility for the sale of electrolytic capacitors from subsidiary Hitachi AIC, Inc. Electrolytic capacitors are a major sub-category of capacitors, fundamental components of electrical circuits used primarily to store and regulate electrical current. Aluminum and tantalum capacitors are types of electrolytic capacitors.

b.     During the relevant period, Hitachi, through its officers and employees, including high-level personnel of Hitachi, participated in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the United States and elsewhere. In furtherance of the conspiracy, Hitachi, through its officers and employees of certain current and former subsidiaries, at times engaged in discussions and attended meetings with representatives of other manufacturers of electrolytic capacitors. During certain of these discussions and meetings, the conspirators agreed to fix the price and/or rig bids of certain electrolytic capacitors to be sold in the United States and elsewhere.

c.     During the relevant period, Hitachi and its coconspirators manufactured certain electrolytic capacitors outside the United States and sold them in the United States or for delivery to the United States. During the relevant period, certain electrolytic capacitors sold by one or more of the conspirator firms traveled in interstate commerce.

d.     Acts in furtherance of this conspiracy were carried out within the Northern District of California. Certain electrolytic capacitors that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District.

**Holy Stone Holdings Co., Ltd.**

6.     **Holy Stone Holdings Co., Ltd.**, which is not a defendant, pled guilty on behalf of its former subsidiary, Holy Stone Polytech Co., Ltd. ("HPC"), to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

a.     For purposes of Holy Stone Holdings' guilty plea, the "relevant period" is the period from in or about April 2010 until in or about January 2014. During the relevant period, Holy Stone Holdings was a corporation organized and existing under the laws of Samoa, with its principal

place of business in Apia, Samoa. During the relevant period, Holy Stone Holdings' wholly owned subsidiary, Holy Stone Polytech Co., Ltd. ("HPC"), was a manufacturer of tantalum electrolytic capacitors headquartered in Miharu, Fukushima, Japan, and was engaged in the sale of such capacitors in the United States and elsewhere. Electrolytic capacitors are a major subcategory of capacitors, fundamental components of electrical circuits used primarily to store and regulate electrical current. Tantalum capacitors are a type of electrolytic capacitor.

b.      During the relevant period, HPC, through its officers and employees, including high-level personnel of HPC, participated in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the United States and elsewhere. In furtherance of the conspiracy, HPC, through its officers and employees, at times engaged in discussions and attended meetings with representatives of other manufacturers of electrolytic capacitors. During certain of these discussions and meetings, the conspirators agreed to fix the price and/or rig bids of certain electrolytic capacitors to be sold in the United States and elsewhere.

c.      During the relevant period, HPC and its coconspirators manufactured certain electrolytic capacitors outside the United States and sold them in the United States or for delivery to the United States. During the relevant period, certain electrolytic capacitors sold by one or more of the conspirator firms traveled in interstate commerce.

d.      Acts in furtherance of this conspiracy were carried out within the Northern District of California. Certain electrolytic capacitors that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District.

e.      Holy Stone Enterprise Co., Ltd., Milestone Global Technology, Inc., doing business as Holy Stone International, and Vishay Polytech Co., Ltd. did not plead guilty.

**NEC TOKIN Corporation**

7.      **NEC TOKIN Corporation**, which is not a defendant, pled guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain

electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

    a.    For purposes of NEC TOKIN's guilty plea, the "relevant period" is the period beginning at least as early as April 2002 until in or about December 2013. During the relevant period, NEC TOKIN was a corporation organized and existing under the laws of Japan. NEC TOKIN had its principal place of business in Tokyo, Japan. During the relevant period, NEC TOKIN was a manufacturer of tantalum electrolytic capacitors and was engaged in the sale of tantalum electrolytic capacitors in the United States and elsewhere. Electrolytic capacitors are a major sub-category of capacitors, fundamental components of electrical circuits used primarily to store and regulate electrical current. Tantalum capacitors are a type of electrolytic capacitor.

    b.    During the relevant period, NEC TOKIN, through its officers and employees, including high-level personnel of NEC TOKIN, participated in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the United States and elsewhere. In furtherance of the conspiracy, NEC TOKIN, through its officers and employees, at times engaged in discussions and attended meetings with representatives of other manufacturers of electrolytic capacitors. During certain of these discussions and meetings, the conspirators agreed to fix the price and/or rig bids of certain electrolytic capacitors to be sold in the United States and elsewhere.

    c.    During the relevant period, NEC TOKIN and its coconspirators manufactured certain electrolytic capacitors outside the United States and sold them in the United States or for delivery to the United States. During the relevant period, certain electrolytic capacitors sold by one or more of the conspirator firms traveled in interstate commerce.

    d.    Acts in furtherance of this conspiracy were carried out within the Northern District of California. Certain electrolytic capacitors that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District.

**Nichicon Corporation**

8.      **Nichicon Corporation**, which is not a defendant, pled guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

a.      For purposes of Nichicon's guilty plea, the "relevant period" is the period beginning at least as early as November 2001 until in or about December 2011. During the relevant period, Nichicon was a corporation organized and existing under the laws of Japan. Nichicon had its principal place of business in Kyoto, Japan. During the relevant period, Nichicon manufactured aluminum and tantalum electrolytic capacitors and was engaged in the sale of such electrolytic capacitors in the United States and elsewhere. Electrolytic capacitors are a major subcategory of capacitors, fundamental components of electrical circuits used primarily to store and regulate electrical current. Aluminum and tantalum capacitors are both types of electrolytic capacitors.

b.      During the relevant period, Nichicon, through its officers and employees, including high-level personnel of Nichicon, participated in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the United States and elsewhere. In furtherance of the conspiracy, Nichicon, through its officers and employees, at times engaged in discussions and attended meetings with representatives of other manufacturers of electrolytic capacitors. During certain of these discussions and meetings, the conspirators agreed to fix the price and/or rig bids of certain electrolytic capacitors to be sold in the United States and elsewhere.

c.      During the relevant period, Nichicon and its coconspirators manufactured certain electrolytic capacitors outside the United States and sold them in the United States or for delivery to the United States. During the relevant period, certain electrolytic capacitors sold by one or more of the conspirator firms traveled in interstate commerce.

d.      Acts in furtherance of this conspiracy were carried out within the Northern District of California. Certain electrolytic capacitors that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District.

**Rubycon Corporation**

9.      **Rubycon Corporation**, which is not a defendant, pled guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

a.      For purposes of Rubycon's guilty plea, the "relevant period" is the period beginning at least as early as August 2002 until in or about January 2014. During the relevant period, Rubycon was a corporation organized and existing under the laws of Japan. Rubycon had its principal place of business in Ina, Japan. During the relevant period, Rubycon manufactured aluminum electrolytic capacitors and was engaged in the sale of such electrolytic capacitors in the United States and elsewhere. Electrolytic capacitors are a major subcategory of capacitors, fundamental components of electrical circuits used primarily to store and regulate electrical current. Aluminum capacitors are a type of electrolytic capacitor.

b.      During the relevant period, Rubycon, through its officers and employees, including high-level personnel of Rubycon, participated in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the United States and elsewhere. In furtherance of the conspiracy, Rubycon, through its officers and employees, at times engaged in discussions and attended meetings with representatives of other manufacturers of electrolytic capacitors. During certain of these discussions and meetings, the conspirators agreed to fix the price and/or rig bids of certain electrolytic capacitors to be sold in the United States and elsewhere.

c.      During the relevant period, Rubycon and its coconspirators manufactured certain electrolytic capacitors outside the United States and sold them in the United States or for delivery to the

United States. During the relevant period, certain electrolytic capacitors sold by one or more of the conspirator firms traveled in interstate commerce.

        d.     Acts in furtherance of this conspiracy were carried out within the Northern District of California. Certain electrolytic capacitors that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District.

**Panasonic and Sanyo**

    10.    Neither **Panasonic/SANYO** nor any of its employees was indicted or convicted of violating the U.S. antitrust laws. In 2015, Panasonic applied for and was granted amnesty for itself and its employees under the DOJ's Corporate Leniency Program. In doing so, Panasonic admitted to violating the U.S. antitrust laws and agreed to cooperation obligations with the DOJ's investigation of the capacitors industry similar to those agreed to by the entities and persons who pled guilty.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given).

STIPULATED PRELIMINARY INSTRUCTION NO. 10

RULING ON OBJECTIONS

There are rules that control what can be received in evidence. When a lawyer asks a question or offers an exhibit in evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, or the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer would have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.13 (2017);.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATED PRELIMINARY INSTRUCTION NO. 11

CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.     the opportunity and ability of the witness to see or hear or know the things testified to;

2.     the witness's memory;

3.     the witness's manner while testifying;

4.     the witness's interest in the outcome of the case, if any;

5.     the witness's bias or prejudice, if any;

6.     whether other evidence contradicted the witness's testimony;

7.     the reasonableness of the witness's testimony in light of all the evidence; and

8.     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.14 (2017).

<u>DISPUTED PRELIMINARY INSTRUCTION NO. 12 OFFERED BY DPPs</u>

DEPOSITION IN LIEU OF LIVE TESTIMONY

At times during the trial, you may hear testimony by a witness in the form of previously recorded deposition rather than live here in court. A deposition is the sworn testimony of a witness taken before trial. The witness was placed under oath to tell the truth, and lawyers for each side asked questions. The questions and answers were recorded.

Insofar as possible, you should consider deposition testimony presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions; Instr. 2.4 (2017) (2021 Update).

DISPUTED PROPOSED PRELIMINARY INSTRUCTION NO. 12 OFFERED BY DEFENDANTS

PREVIOUS TESTIMONY

You heard prior testimony from certain witnesses read to you or shown by video.  This testimony was the sworn testimony of a witness taken before this trial.  The witness was placed under oath to tell the truth and lawyers for each party were able to ask questions.  The questions and answers were transcribed and, in some cases, recorded.  Insofar as possible, you should consider this prior testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

*Authority*:  Adapted from Ninth Circuit Manual of Model Civil Jury Instructions; Instr. 2.4 (2017).

## DPP's ARGUMENT RE DISPUTED PRELIMINARY INSTRUCTION NO. 12

### DEPOSITION IN LIEU OF LIVE TESTIMONY

DPPs' suggested instruction is identical to the instruction given by the Court in relation to the March 2020 trial. MDL ECF No. 1216. Further, DPPs' proposed instruction is identical to Ninth Circuit Model Civil Jury Instruction 2.4. The instruction properly instructs the jury regarding the use of deposition testimony in lieu of live testimony.

1

2

<u>DEFENDANTS' ARGUMENT RE DISPUTED PROPOSED PRELIMINARY INSTRUCTION NO. 12</u>

3

PREVIOUS TESTIMONY

4

Defendants object to both the use of video testimony from the March 2020 trial and to the

5

giving of an additional instruction relating only to that testimony.  Even the notes to the model *criminal*

6

instruction that the DPPs cite in purported support of their proposed instruction makes clear that it is

7

best to "avoid all reference to prior trials," and that a curative instruction about prior trials should only

8

be given  when "specifically requested by the defense."  Ninth Circuit Manual of Model Criminal Jury

9

Instructions, Instr. 2.16 Comments (2021).

10

Defendants do not agree that "the Court has already determined that video from the prior trial

11

may be presented for a witness that previously testified in March 2020."  Nov. 11, 2021 Tr. 21:19–

12

22:20 ("MR. FINZI:  Your Honor, I want to -- it wasn't raised. I didn't understand the playing of

13

videotape from a prior trial was something in play and an option. I would like the opportunity to think

14

about that and consult with my colleagues. . . . THE COURT:  . . .  You all just work something out. Let

15

me see if I can get the tape first. . . .").  We expect that this issue will be separately briefed at an

16

appropriate time.  If the Court does allow video testimony from the March 2020 trial to be presented to

17

the jury, the Court should not give a separate instruction regarding its weight.  Both sides agree that the

18

jury should be instructed that they should treat both deposition testimony and testimony from the

19

March 2020 trial the same way—"as if the witness had been present to testify."  There is, and should

20

be, no difference between how the jury considers testimony from those two sources.

21

Consistent with this, Defendants have proposed one instruction to the jury regarding their

22

consideration of *all* sworn testimony taken in advance of this trial.  To separately instruct the jury on

23

deposition as opposed to trial testimony—as DPPs propose to do—runs the significant risk that the jury

24

mistakenly believes there is a substantive difference between how the two should be considered, and, in

25

particular, that prior trial testimony be given more weight than deposition testimony.  This would be

26

contrary to the Federal Rules of Evidence, which do not distinguish among the sources of prior sworn

27

testimony.  *See* Fed. R. Evid. 804(b)(1).

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Finally, DPPs' proposed instruction includes references to the trial being cut short due to the pandemic, which is wholly irrelevant to the task before the jury.  Moreover, given the profound impact the pandemic no doubt had on the jurors' lives, referring to it —particularly when it is not even relevant—runs the real risk that the jury gets distracted from the task at hand by focusing on the pandemic and the impact it may or may not have had on the first trial and the parties to the case.

DPPs' proposed instruction is likely to cause unfair prejudice, while Defendant's proposed instructions closely tracks the Ninth Circuit Manual of Model Instructions.  The Court should adopt Defendants' proposed instruction.

DISPUTED PROPOSED PRELIMINARY INSTRUCTION NO. 12A OFFERED BY DPPs

PREVIOUS TRIAL TESTIMONY

You may hear reference to a previous trial of this case. A previous trial did occur but was interrupted by the COVID-19 pandemic. Certain sworn testimony of witnesses was taken at the previous trial. The witness was placed under oath in court to tell the truth and lawyers were permitted to ask questions. The court could also examine the witness. A court reporter was present and recorded the testimony. The questions and answers were recorded. This testimony may be presented to you through videorecording.

Insofar as possible, you should consider previously recorded trial testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.4 (2021); Ninth Circuit Manual of Model Criminal Jury Instructions, Instr. 2.16 (2021); Pattern Crim. Jury Instr. 1st Cir. 1.03 (1998); Fifth Circuit Pattern Jury Instructions (Civil Cases) 2.13 (2020); Fed. R. Evid. 614.

DISPUTED PROPOSED PRELIMINARY INSTRUCTION NO. 12A

[Defendants object to this instruction in its entirety.]

DPP's ARGUMENT RE DISPUTED PRELIMINARY INSTRUCTION NO. 12A

PREVIOUS TRIAL TESTIMONY

Due to circumstances beyond the parties' control, i.e., circumstances related to the COVID-19 pandemic, some witnesses who previously testified before the jury during the March 2020 trial are no longer available to testify. During this trial, recordings of witness testimony from the prior trial will be played. The jury will need an explanation of what they are seeing, as they will see a witness sitting in the same witness box that they see before them in court, and they will hear the Court asking questions of the witness during the prior testimony. The jury should be given an appropriate explanation of how this testimony came to be. DPPs' proposed Preliminary Instruction 12A provides instructions functionally identical to the existing instruction for deposition testimony offered in lieu of live testimony.

Defendants may argue that the prior trial recordings cannot be shown, but they are mistaken. *First*, the Court has already determined that video from the prior trial may be presented for a witness that previously testified in March 2020. Tr. of Nov. 11 Proceedings, 19:12-20:4. *Second*, there can be no dispute that prior trial testimony is admissible—they were the statements of opposing parties or their agents and employees and the Court has already determined that NEC Tokin, NCC and UCC were coconspirators. Fed. R. Evid. 801(d)(2)(a), (c), (d) & (e).

Model jury instructions support giving DPPs' proposed instruction. While there is no instruction directly on point, DPPs' instruction is largely taken from model Ninth Circuit instructions, namely Ninth Circuit Model Civil Jury Instruction 2.4 and Ninth Circuit Model Criminal Jury Instruction 2.16, which deal specifically in the context of a criminal trial when the jury hears evidence of a prior mistrial. Outside the Ninth Circuit, other Circuits provide similar instructions for recorded testimony in lieu of live testimony at trial and for prior trials. *See*, *e.g*., Pattern Crim. Jury Instr. 1st Cir. 1.03 (1998); Fifth Circuit Pattern Jury Instructions (Civil Cases) 2.13 (2020). DPPs' proposed instruction therefore is crafted from neutral and balanced instructions, including those intended for use in criminal trials where mistrials are relatively more frequent.

1

2

## DEFENDANTS' ARGUMENT RE DISPUTED PROPOSED PRELIMINARY INSTRUCTION NO. 12A

3

### PREVIOUS TRIAL TESTIMONY

4

5

6

7

8

As noted in Defendants' argument re preliminary instruction 12, Defendants object to both the use of video testimony from the March 2020 trial and to the giving of an additional instruction relating only to that testimony.  Even the notes to the model *criminal* instruction that the DPPs cite in purported support of their proposed instruction makes clear that it is best to "avoid all reference to prior trials," and that a curative instruction about prior trials should only be given  when "specifically requested by the defense."  Ninth Circuit Manual of Model Criminal Jury Instructions, Instr. 2.16 Comments (2021).

9

10

11

12

13

14

15

16

17

18

19

Defendants do not agree that "the Court has already determined that video from the prior trial may be presented for a witness that previously testified in March 2020."  Nov. 11, 2021 Tr. 21:19–22:20 ("MR. FINZI:  Your Honor, I want to -- it wasn't raised. I didn't understand the playing of videotape from a prior trial was something in play and an option. I would like the opportunity to think about that and consult with my colleagues. . . . THE COURT:  . . .  You all just work something out. Let me see if I can get the tape first. . . .").  We expect that this issue will be separately briefed at an appropriate time.  If the Court does allow video testimony from the March 2020 trial to be presented to the jury, the Court should not give a separate instruction regarding its weight. Both sides agree that the jury should be instructed that they should treat both deposition testimony and testimony from the March 2020 trial the same way—"as if the witness had been present to testify." There is, and should be, no difference between how the jury considers testimony from those two sources.

20

21

22

23

24

25

26

27

Consistent with this, Defendants have proposed one instruction to the jury regarding their consideration of *all* sworn testimony taken in advance of this trial.  To separately instruct the jury on deposition as opposed to trial testimony—as DPPs propose to do—runs the significant risk that the jury mistakenly believes there is a substantive difference between how the two should be considered, and, in particular, that prior trial testimony be given more weight than deposition testimony.  This would be contrary to the Federal Rules of Evidence, which do not distinguish among the sources of prior sworn testimony.  *See* Fed. R. Evid. 804(b)(1).

28

Finally, DPPs' proposed instruction includes references to the trial being cut short due to the pandemic, which is wholly irrelevant to the task before the jury.  Moreover, given the profound impact the pandemic no doubt had on the jurors' lives, referring to it —particularly when it is not even relevant—runs the real risk that the jury gets distracted from the task at hand by focusing on the pandemic and the impact it may or may not have had on the first trial and the parties to the case.

DPPs' proposed instruction is likely to cause unfair prejudice, while Defendant's proposed instructions closely tracks the Ninth Circuit Manual of Model Instructions.  The Court should adopt Defendants' proposed instruction.

## STIPULATED PRELIMINARY INSTRUCTION NO. 13

### EXPERT OPINION

You will hear testimony from expert witnesses who testify to opinions and the reasons for their opinions. This opinion testimony is allowed because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it, reject it, or give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.13 (2017).

STIPULATED PRELIMINARY INSTRUCTION NO. 14

IMPEACHMENT EVIDENCE -- WITNESS

The evidence that a witness lied under oath or gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.9 (2017).

## STIPULATED PRELIMINARY INSTRUCTION NO. 15

### CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not admitted into evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.14 (2017).

## STIPULATED PRELIMINARY INSTRUCTION NO. 16

CHARTS AND SUMMARIES RECEIVED IN EVIDENCE

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.15 (2017).

## STIPULATED PRELIMINARY INSTRUCTION NO. 17

### FOREIGN LANGUAGE TESTIMONY

You will hear witnesses testifying in Japanese. Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter. Although you might know Japanese, and be tempted to rely on your own understanding of those languages, you cannot do that because it is important that all jurors consider the same evidence. You must accept the interpreter's translation of the witness's testimony, and disregard any different meaning or interpretation from any other source, including your own understanding of the language.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.8 (2017).

STIPULATED PRELIMINARY INSTRUCTION NO. 18

TRANSLATED DOCUMENTS

You will see English translations of documents that were written originally in Japanese, Chinese, or other foreign languages. Some documents will be presented with a single translation into English. You must accept the translation of the document, and disregard any different meaning or interpretation from any other source, including your own understanding of the foreign language that you might have. The translation is the evidence, not the foreign language in the original document. This is important to ensure that all jurors consider only the same evidence.

Some documents might be presented with two different translations into English because the parties could not agree on a single translation. In that case, you must decide whether a translation is accurate, in whole or in part. In considering whether a translation accurately states the words in a document, you should consider the testimony presented to you about how, and by whom, the translation was made. You may consider the knowledge, training, and experience of the translator, and the reasonableness of the translation in light of all the evidence in the case. You must not rely in any way on any knowledge you may have of the language in the original document.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.6 & 2.7 (2017).

## STIPULATED PRELIMINARY INSTRUCTION NO. 19

### NO TRIAL TRANSCRIPT

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.17 (2017).

## STIPULATED PRELIMINARY INSTRUCTION NO. 20

### TAKING NOTES

If you would like, you may take notes during trial to help you remember the evidence. Your binder has notepaper in it. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the jury room. No one will read your notes. Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.18 (2017).

STIPULATED PRELIMINARY INSTRUCTION NO. 21

QUESTIONS TO WITNESSES BY JURORS DURING TRIAL

When the attorneys have finished examining a witness, you may propose a question to the witness to help clarify the testimony. A question may not be used to express any opinion about the testimony or argue with a witness. If you propose a question, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question using the form that has been put into your binders. Do not sign the question.

There are some proposed questions that I will not permit, or will rephrase from the wording submitted. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.19 (2017).

STIPULATED PRELIMINARY INSTRUCTION NO. 22

CONDUCT OF THE JURY

Let's talk about your conduct as jurors. It is vitally important that you keep an open mind throughout the trial. The testimony and evidence will unfold over several weeks, and you should not reach any conclusions before you have heard everything that will be presented. In addition, do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

When it comes time for you to decide the verdict, your decision must be based on the evidence received in the case and on my instructions on the law that applies. You must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.

For these reasons, do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This covers every possible form of communication: in person, in writing, by phone, tablet, or computer, or any electronic means, via email, text messaging, chat room, blog website or any social media applications including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other form of communication. The prohibition on communication applies to everyone, including your family members, your employer, the media or press, and the people involved in the trial. It also applies to communicating with your fellow jurors until I give you the case for deliberation. You are free to tell your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But you cannot share with them or anyone else any other information about your jury service or about the case. If anyone asks you about your jury service or the case, you must say that you have been ordered not to discuss the matter. You must also promptly report the contact to me through Ms. Clark.

In addition, you must not, for any reason, do research or investigation on your own. You will get all the evidence and legal instruction you may properly consider for the verdict right here in the courtroom. Do not look up anything on the Internet, or in a book, or do any sleuthing or investigating of any sort. Do not visit or view any place or location that might be described during the case. Do not

do any research about the law or the people involved in this case -- including the parties, the witnesses, the lawyers, or me. Also, while I have no information that there will be media coverage of this case, please make sure you do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it. If you happen to read or hear anything touching on this case in the media, turn away and let me know what happened by telling Ms. Clark.

That is a long list of "don'ts" but it is vitally important for you to follow these rules. They protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is crucial that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.15 (2017) (revised December 2020); March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) .

## STIPULATED PRELIMINARY INSTRUCTION NO. 23

### OUTLINE OF TRIAL

We are just about ready to start the trial. Each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement, and if a party chooses not to do one, you should not hold it against that party for any reason.

The DPPs will then present evidence and counsel for the defendants may cross-examine. Then, the defendants may present evidence, and counsel for the DPPs may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case, and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

*Authority:* March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216) (as given); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.21 (2017).