UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 3:17-md-02801-JD<br>Case No. 3:14-cv-03264-JD |
| THIS DOCUMENT RELATES TO:<br>THE DIRECT PURCHASER CLASS ACTION | |
| | JOINT SET OF UPDATED PROPOSED<br>FINAL JURY INSTRUCTIONS AND<br>OBJECTIONS |
| | Trial Date:  November 29, 2021<br>Time:        9:00 a.m.<br>Judge        Honorable James Donato<br>Courtroom:   11, 19th Floor |

# TABLE OF CONTENTS

**Page(s)**

INSTRUCTION NO. 1 DUTIES OF JURY TO FIND FACTS AND FOLLOW LAW ...................... 1

INSTRUCTION NO. 2: BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE ......... 2

INSTRUCTION NO. 3 RE CLASS ACTION ................................................................................ 3

INSTRUCTION NO. 4 RE CLAIMS AND DEFENSES ............................................................. 4

INSTRUCTION NO. 5 RE CORPORATIONS—FAIR TREATMENT ........................................ 5

INSTRUCTION NO. 6 RE WHAT IS EVIDENCE ...................................................................... 6

INSTRUCTION NO. 7 RE DIRECT AND CIRCUMSTANTIAL EVIDENCE ............................ 7

INSTRUCTION NO. 8 RE WHAT IS NOT EVIDENCE ............................................................ 8

INSTRUCTION NO. 9 RE RULING ON OBJECTIONS ............................................................ 9

INSTRUCTION NO. 10 RE DEPOSITION TESTIMONY ........................................................ 10

INSTRUCTION NO. 11 RE USE OF INTERROGATORIES ..................................................... 11

INSTRUCTION NO. 12 RE CREDIBILITY OF WITNESSES ................................................. 12

INSTRUCTION NO. 13 RE IMPEACHMENT EVIDENCE—WITNESS OFFERED ................. 13

INSTRUCTION NO. 14 RE FOREIGN LANGUAGE TESTIMONY ......................................... 14

INSTRUCTION NO. 15 RE TRANSLATED DOCUMENTS ..................................................... 15

INSTRUCTION NO. 16 RE EXPERT OPINION ...................................................................... 16

INSTRUCTION NO. 17 RE CHARTS AND SUMMARIES ...................................................... 17

DISPUTED INSTRUCTION NO. 18 RE STIPULATIONS OF FACT (DPPS) ............................. 18

DISPUTED INSTRUCTION NO. 18 RE GUILTY PLEAS AND CONVICTIONS
      (DEFENDANTS) .............................................................................................................. 25

DPPS BRIEF ON DISPUTED INSTRUCTION NO. 18 RE STIPULATED FACTS ..................... 27

DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION 18 RE GUILTY PLEAS AND
      CONVICTIONS ............................................................................................................... 29

INSTRUCTION NO. 19 RE JUDICIAL NOTICE ..................................................................... 30

INSTRUCTION NO. 20 RE OVERVIEW OF ANTITRUST CLAIMS ......................................... 31

INSTRUCTION NO. 21 RE KNOWINGLY—DEFINED ......................................................... 32

INSTRUCTION NO. 22 RE CONSPIRACY, CONTRACT, OR COMBINATION ........................33

INSTRUCTION NO. 23 RE PARTICIPATION AND INTENT ..........................................................35

INSTRUCTION NO. 24 RE CORPORATIONS OR AGENCY .........................................................36

INSTRUCTION NO. 25 RE EVIDENCE OF INFORMATION EXCHANGE .............................37

INSTRUCTION NO. 26 RE EVIDENCE OF PRICES CHARGED ................................................38

INSTRUCTION NO. 27 RE EVIDENCE OF COMPETITION........................................................39

INSTRUCTION NO. 28 RE INVOCATION OF THE FIFTH AMENDMENT—BY A
          NONPARTY WITNESS ....................................................................................................40

INSTRUCTION NO. 29 RE CAUSATION AND INJURY ...............................................................41

INSTRUCTION NO. 30 RE TRADE ASSOCIATIONS....................................................................42

INSTRUCTION NO. 31 RE STATUTE OF LIMITATIONS ...........................................................44

INSTRUCTION NO. 32 RE STATUTE OF LIMITATIONS—FRAUDULENT
          CONCEALMENT ..............................................................................................................45

INSTRUCTION NO. 33 RE DAMAGES—INTRODUCTION AND PURPOSE ..........................47

INSTRUCTION NO. 34 RE CALCULATION OF DAMAGES ......................................................48

INSTRUCTION NO. 35 RE NOMINAL DAMAGES........................................................................49

DISPUTED INSTRUCTION NO. 36 RE DAMAGES FOR PURCHASERS – CLASS
          (DPPS) ................................................................................................................................50

DISPUTED INSTRUCTION NO. 36 RE CALCULATION OF DAMAGES
          (DEFENDANTS)................................................................................................................51

DPPS BRIEF RE INSTRUCTION NO. 36 RE CALCULATION OF DAMAGES ........................52

DEFENDANTS BRIEF IN SUPPORT OF DISPUTED INSTRUCTION NO. 36..........................53

INSTRUCTION NO. 37 RE JOINT AND SEVERAL LIABILITY .................................................54

DISPUTED INSTRUCTION NO. 38 RE SETTLEMENT AGREEMENTS OF
          DEFENDANT NEC TOKIN (DEFENDANTS)........................................................55

DPPS OBJECT TO THE INCLUSION OF INSTRUCTION 38 RE SETTLEMENT
          AGREEMENTS OF DEFENDANT NEC TOKIN IN ITS ENTIRETY.............................56

DPPS BRIEF ON INSTRUCTION NO. 38 RE SETTLEMENT AGREEMENTS OF
          DEFENDANT NEC TOKIN ...........................................................................................57

DEFENDANTS' BRIEF ON DISPUTED INSTRUCTION 38 RE SETTLEMENT
          AGREEMENTS OF NEC TOKIN ...................................................................................58

INSTRUCTION NO. 40 RE CONSIDERATION OF THE EVIDENCE—CONDUCT OF
     THE JURY ...........................................................................................................60

INSTRUCTION NO. 41 RE USE OF NOTES.................................................................61

INSTRUCTION NO. 42 RE COMMUNICATION WITH COURT .................................62

INSTRUCTION NO. 43 RE RETURN OF VERDICT....................................................63

**Instruction No. 1 Duties of Jury to Find Facts and Follow Law**

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case. A copy of these instructions will be available in the jury room for you to consult.

It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts. It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not. You must decide the case solely on the evidence and the law. Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, gender, sexual orientation, profession, occupation, economic circumstances, or position in life or in the community. You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others; they are all important. Please do not read into these instructions or into anything I may have said or done any suggestion as to what verdict you should return -- that is a matter entirely up to you.

*Authority*: *United States v.* Reynolds, Case No. 18-cr-158-JD (N.D. Cal. May 19, 2021) ECF No. 207.

**Instruction No. 2: Burden of Proof: Preponderance of the Evidence**

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all the evidence, regardless of which party presented it.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.6 (2017).

**Instruction No. 3 Re Class Action**

This lawsuit has been brought as a class action. A class action is a lawsuit that has been brought by one or more persons or businesses called class representatives on behalf of a larger group of people or businesses who have similar legal claims. All of these people or businesses together are called a class. A class action lawsuit allows the claims of many persons or businesses to be resolved at the same time, rather than requiring each person or business to sue separately. Not everyone in the class will testify, but you may assume that the evidence admitted during trial applies to all class members, unless I tell you otherwise. The fact that this case is proceeding as a class action does not mean any decision has been made about the merits of the case, and you must not infer anything about the merits of this case based on the fact that it is a class action.

In this case, the class is called the Direct Purchaser Plaintiffs or "DPPs," and consists of the following members: all persons or businesses in the United States who purchased capacitors directly from any of the defendants from January 1, 2002 to December 31, 2013.

The direct purchaser plaintiffs representing the class in this trial are Chip-Tech, Ltd. and eIQ Energy, Inc.

*Authority*: MDL ECF No. 1597 (Preliminary Jury Instructions – Final Set).

**Instruction No. 4 Re Claims and Defenses**

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

The plaintiffs are the Direct Purchaser Plaintiffs who I just told you about. The defendants are Nippon Chemi-Con Corporation and United Chemi-Con Inc., referred to as "NCC" and "UCC." Defendants manufactured and sold one or more types of aluminum, tantalum, and/or film capacitors.

The DPPs allege that defendants and others conspired directly and indirectly with each other in an overarching scheme to control and set the prices of their aluminum, tantalum and film capacitors sold to United States purchasers and purchasers worldwide from January 1, 2002, until December 31, 2013. The DPPs have the burden of proving this alleged conspiracy.

The defendants deny the DPPs' claims.

*Authority*: MDL ECF No. 1597 (Preliminary Jury Instructions – Final Set).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 5 Re Corporations—Fair Treatment**

The parties in this case are corporations. All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers, performed within the scope of authority. An act is within the scope of a person's authority if it is within the range of reasonable and foreseeable activities that an employee, agent, director, or officer engages in while carrying out that person's business.

*Authority*: MDL ECF No. 1597 (Preliminary Jury Instructions – Final Set).

1

**Instruction No. 6 Re What is Evidence**

2         The evidence you are to consider in deciding what the facts are consists of:

3   (1)    the sworn testimony of any witness;

4   (2)    the exhibits that are admitted into evidence;

5   (3)    any facts to which the lawyers have agreed; and

6   (4)     any facts that I may instruct you to accept as proved.

7

8   *Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.9 (2017).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### Instruction No. 7 Re Direct and Circumstantial Evidence

2        Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as

3    testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence

4    is proof of one or more facts from which you could find another fact. You should consider both kinds

5    of evidence. The law makes no distinction between the weight to be given to either direct or

6    circumstantial evidence. It is for you to decide how much weight to give to any evidence.

7

8    *Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.12 (2017).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 8 Re What Is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)  Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)  Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

(3)  Testimony that was excluded or stricken, or that you were instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)  Anything you may have seen or heard when court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.10 (2017).

1

**Instruction No. 9 Re Ruling on Objections**

2

There are rules of evidence that control what was received into evidence. When a lawyer asked

3 a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not

4 permitted by the rules of evidence, that lawyer objected. If I overruled the objection, the question was

5 answered or the exhibit was received. If I sustained the objection, the question was not answered, or the

6 exhibit was not received. Whenever I sustained an objection to a question, you must ignore the question

7 and must not guess what the answer might have been.

8

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore

9 that evidence. That means when you are deciding the case, you must not consider the evidence that I

10 told you to disregard.

11

12 *Authority*: Preliminary Instruction No. 10.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 10 Re Deposition Testimony**

At times during the trial, you may hear testimony by a witness in the form of previously recorded deposition rather than live here in court. A deposition is the sworn testimony of a witness taken before trial. The witness was placed under oath to tell the truth, and lawyers for each side asked questions. The questions and answers were recorded.

Insofar as possible, you should consider deposition testimony presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

*Authority*: MDL ECF No. 1597 (Instruction 12)..

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 11 Re Use of Interrogatories**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures.

You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.11 (2017).

**Instruction No. 12 Re Credibility of Witnesses**

In deciding the facts in this case, you have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness said, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may have said something that is not consistent with something else he or she said. Sometimes different witnesses gave different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.14 (2017).

1

**Instruction No. 13 Re Impeachment Evidence—Witness Offered**

2

The evidence that a witness lied under oath or gave different testimony on a prior occasion may

3

be considered, along with all other evidence, in deciding whether or not to believe the witness and how

4

much weight to give to the testimony of the witness and for no other purpose.

5

6

*Authority*: March 3, 2020 Preliminary Jury Instructions (MDL ECF No. 1216); Ninth Circuit Manual of

7

Model Civil Jury Instructions, Instr. 2.9 (2017).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 14 Re Foreign Language Testimony**

You will hear witnesses testifying in Japanese. Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter. Although you might know Japanese, and be tempted to rely on your own understanding of the language, you cannot do that because it is important that all jurors consider the same evidence. You must accept the interpreter's translation of the witness's testimony, and disregard any different meaning or interpretation from any other source, including your own understanding of the language.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

*Authority*: MDL ECF No. 1597 (Instruction No. 17).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 15 Re Translated Documents**

You have seen English translations of documents that were written originally in Japanese, or other foreign languages. Some documents were presented with a single translation into English. You must accept the translation of the document, and disregard any different meaning or interpretation from any other source, including your own understanding of the foreign language that you might have. The translation is the evidence, not the foreign language in the original document. This is important to ensure that all jurors consider only the same evidence.

*Authority*: MDL ECF No. 1597 (Instruction No. 18).

**Instruction No. 16 Re Expert Opinion**

You have heard testimony from expert witnesses who testified to opinions and the reasons for their opinions. This opinion testimony is allowed because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it, reject it, or give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.13 (2017).

1

**Instruction No. 17 Re Charts and Summaries**

2

During trial, certain charts and summaries have been shown to you in order to help explain the

3

contents of books, records, documents, or other evidence in the case. Some of those charts or

4

summaries came into evidence, while others did not. Charts and summaries are only as good as the

5

underlying evidence that supports them. You should, therefore, give them only such weight as you

6

think the underlying evidence deserves.

7

8

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.14 and Instr. 2.15 (2017).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Disputed Instruction No. 18 Re Stipulations of Fact (DPPs)

The parties have agreed to certain facts that I will now read to you.

1. Capacitors are essential components of electronic products.

2. All capacitors subject to this litigation purchased by the Class were billed to or shipped to the United States.

3. Witness Anthony Olita had responsibility for the sales, marketing and distribution of capacitors for defendant United Chemi-Con ("UCC") during the relevant time period in the United States.

4. ELNA America, Inc. was during the Class Period and is a wholly-owned subsidiary of ELNA Co., Ltd.

5. Vishay PolyTech Co. f/k/a Holy Stone Polytech Co. was during the Class Period a wholly-owned subsidiary of Holy Stone Enterprise Co., Ltd.

6. Milestone Global Technology, Inc. was during the Class Period and is a wholly-owned subsidiary of Holy Stone Enterprise Co., Ltd.

7. United Chemi-Con Inc. was during the Class Period and is a wholly-owned subsidiary of Nippon Chemi-Con Corp.

8. Shinyei Technology Co., Ltd. and Shinyei Capacitor Co., Ltd. were during the Class Period and are corporate affiliates of Shinyei Kaisha.

9. Shinyei Corporation of America, Inc. was during the Class Period and is a wholly-owned subsidiary of Shinyei Kaisha.

10. Taitsu America, Inc. was during the Class Period and is a wholly-woned subsidiary of Taitsu Corporation.

11. During the relevant period, NCC, through its wholly owned United States subsidiary, UCC, sold capacitors that NCC manufactured outside the United States to customers located in the United States.

12. The alleged contract, combination or conspiracy occurred in or affected interstate or import commerce.

13.     Certain electrolytic capacitor manufacturers—but not others—were convicted of violating the United States antitrust laws. You must treat these facts as having been proved:

**Nippon Chemi-Con Corporation**

14.     Defendant **Nippon Chemi-Con Corporation** pled guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of electrolytic capacitors sold in the United States and elsewhere in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

a.     For purposes of NCC's guilty plea, the "relevant period" is that period beginning at least as early as November 2001 until in or about January 2014. During the relevant period, NCC was a corporation organized and existing under the laws of Japan. NCC had its principal place of business in Tokyo, Japan. During the relevant period, NCC manufactured electrolytic capacitors and was engaged in the sale of such electrolytic capacitors in the United States and elsewhere.

b.     During the relevant period, NCC, through its officers and employees, including high-level personnel of NCC, participated in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors manufactured outside of the United States and sold in the United States and elsewhere. In furtherance of the conspiracy, NCC, through its officers and employees, at times engaged in discussions and attended meetings with representatives of other manufacturers of electrolytic capacitors. During these discussions and meetings, the conspirators agreed to fix the price and/or rig bids of certain electrolytic capacitors manufactured outside of the United States to be sold in the United States and elsewhere.

c.     During the relevant period, NCC and its coconspirators manufactured electrolytic capacitors outside the United States and sold them in the United States or for delivery to the United States. During the relevant period, electrolytic capacitors sold by one or more of the conspirator firms traveled in, and substantially affected, interstate commerce.

d.     Acts in furtherance of this conspiracy were carried out within the Northern District of California. Electrolytic capacitors that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District.

1    e.    United Chemi-Con did not plead guilty.

2    15.    Seven other manufacturers of electrolytic capacitors who are not parties to this lawsuit

3    also pled guilty.

4    a.    During the relevant period, each nonparty manufacturer of electrolytic capacitors

5    who pled guilty, participated in a conspiracy among manufacturers of electrolytic capacitors, the

6    primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the

7    United States and elsewhere. In furtherance of the conspiracy, each nonparty manufacturer of

8    electrolytic capacitors who pled guilty, through its officers and employees, at times engaged in

9    discussions and attended meetings with representatives of other manufacturers of electrolytic

10   capacitors. During certain of these discussions and meetings, the conspirators agreed to fix the price

11   and/or rig bids of certain electrolytic capacitors to be sold in the United States and elsewhere.

12   b.    During the relevant period, each nonparty manufacturer of electrolytic capacitors

13   who pled guilty and their coconspirators manufactured certain electrolytic capacitors outside the United

14   States and sold them in the United States or for delivery to the United States. During the relevant

15   period, certain electrolytic capacitors sold by one or more of the conspirator firms traveled in interstate

16   commerce.

17   c.    Acts in furtherance of this conspiracy were carried out within the Northern

18   District of California. Certain electrolytic capacitors that were the subject of this conspiracy were sold

19   by one or more of the conspirators to customers in this District.

20   **ELNA Co., Ltd.**

21   16.    ELNA Co., Ltd., which is not a defendant, pled guilty to participating in "a conspiracy

22   to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors

23   in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

24   a.    For purposes of ELNA's guilty plea, the "relevant period" is the period

25   beginning at least as early as August 2002 until in or about January 2014. During the relevant period,

26   ELNA was a corporation organized and existing under the laws of Japan. ELNA had its principal place

27   of business in Yokohama, Japan. During the relevant period, ELNA manufactured electrolytic

28

capacitors and was engaged in the sale of such electrolytic capacitors in the United States and elsewhere.

f.      ELNA employee Tokuo Tatai and former employee Satoshi Okubo also pled guilty.

**Hitachi Chemical Co., Ltd.**

17.      **Hitachi Chemical Co., Ltd.**, which is not a defendant, pled guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

a.      For purposes of Hitachi's guilty plea, the "relevant period" is the period beginning at least as early as August 2002 until at least as late as March 2010. During the relevant period, Hitachi was a corporation organized and existing under the laws of Japan. Hitachi had its principal place of business in Tokyo, Japan. During the relevant period, Hitachi manufactured aluminum and tantalum electrolytic capacitors and was engaged in the sale of aluminum and tantalum electrolytic capacitors in the United States and elsewhere through certain current and former subsidiaries, including entities known during the relevant time period as Hitachi AIC, Inc. (a corporation organized and existing under the laws of Japan, with its principal place of business in Tochigi Prefecture, Japan) and Hitachi Chemical Electronics Co. Ltd. (a corporation organized and existing under the laws of Japan, with its principal place of business in Ibaraki Prefecture, Japan). At a certain point after the relevant period, Hitachi assumed responsibility for the sale of electrolytic capacitors from subsidiary Hitachi AIC, Inc.

**Holy Stone Holdings Co., Ltd.**

18.      **Holy Stone Holdings Co., Ltd.**, which is not a defendant, pled guilty on behalf of its former subsidiary, Holy Stone Polytech Co., Ltd. ("HPC"), to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

a.	For purposes of Holy Stone Holdings' guilty plea, the "relevant period" is the period from in or about April 2010 until in or about January 2014. During the relevant period, Holy Stone Holdings was a corporation organized and existing under the laws of Samoa, with its principal place of business in Apia, Samoa. During the relevant period, Holy Stone Holdings' wholly owned subsidiary, Holy Stone Polytech Co., Ltd. ("HPC"), was a manufacturer of tantalum electrolytic capacitors headquartered in Miharu, Fukushima, Japan, and was engaged in the sale of such capacitors in the United States and elsewhere.

**NEC TOKIN Corporation**

19.	**NEC TOKIN Corporation**, which is not a defendant, pled guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

a.	For purposes of NEC TOKIN's guilty plea, the "relevant period" is the period beginning at least as early as April 2002 until in or about December 2013. During the relevant period, NEC TOKIN was a corporation organized and existing under the laws of Japan. NEC TOKIN had its principal place of business in Tokyo, Japan. During the relevant period, NEC TOKIN was a manufacturer of tantalum electrolytic capacitors and was engaged in the sale of tantalum electrolytic capacitors in the United States and elsewhere.

b.	During the relevant period, NEC TOKIN, through its officers and employees, including high-level personnel of NEC TOKIN, participated in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the United States and elsewhere. In furtherance of the conspiracy, NEC TOKIN, through its officers and employees, at times engaged in discussions and attended meetings with representatives of other manufacturers of electrolytic capacitors. During certain of these discussions and meetings, the conspirators agreed to fix the price and/or rig bids of certain electrolytic capacitors to be sold in the United States and elsewhere.

**Matsuo Electric Co., Ltd.**

20.     Defendant **Matsuo Electric Co., Ltd.** pled guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

a.     For purposes of Matsuo's guilty plea, the "relevant period" is the period beginning at least as early as November 2001 until in or about January 2014. During the relevant period, Matsuo was a corporation organized and existing under the laws of Japan. Matsuo had its principal place of business in Osaka, Japan. During the relevant period, Matsuo manufactured tantalum electrolytic capacitors and was engaged in the sale of such electrolytic capacitors in the United States and elsewhere.

b.     Matsuo employee Satoshi Okubo also pled guilty.

**Nichicon Corporation**

21.     **Nichicon Corporation**, which is not a defendant, pled guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

a.     For purposes of Nichicon's guilty plea, the "relevant period" is the period beginning at least as early as November 2001 until in or about December 2011. During the relevant period, Nichicon was a corporation organized and existing under the laws of Japan. Nichicon had its principal place of business in Kyoto, Japan. During the relevant period, Nichicon manufactured aluminum and tantalum electrolytic capacitors and was engaged in the sale of such electrolytic capacitors in the United States and elsewhere.

**Rubycon Corporation**

22.     **Rubycon Corporation**, which is not a defendant, pled guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of certain electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

a.     For purposes of Rubycon's guilty plea, the "relevant period" is the period beginning at least as early as August 2002 until in or about January 2014. During the relevant period, Rubycon was a corporation organized and existing under the laws of Japan. Rubycon had its principal place of business in Ina, Japan. During the relevant period, Rubycon manufactured aluminum electrolytic capacitors and was engaged in the sale of such electrolytic capacitors in the United States and elsewhere.

**Panasonic and Sanyo**

23.     Neither **Panasonic/SANYO** nor any of its employees was indicted or convicted of violating the U.S. antitrust laws. In 2015, Panasonic applied for and was granted amnesty for itself and its employees under the DOJ's Corporate Leniency Program. In doing so, Panasonic admitted to violating the U.S. antitrust laws and agreed to cooperation obligations with the DOJ's investigation of the capacitors industry similar to those agreed to by the entities and persons who pled guilty.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.2 (2017); *see also* Trial Transcript Volume 2, 451:25-453:3 (UCC Stipulations); MDL ECF No. 1091 at 9 (Joint Pretrial Statement—Undisputed Facts).

**Disputed Instruction No. 18 Re Guilty Pleas and Convictions (Defendants)**

The parties have agreed to certain facts that I read to you as part of my preliminary instructions. You must treat these facts as having been proved.  I will not read the facts again, but they are in your binders.

In summary, the parties have agreed that ELNA Co., Ltd., Hitachi Chemical Co., Ltd., Holy Stone Holdings Co., Ltd., Matsuo Electric Co., Ltd., NEC TOKIN Corporation, Nichicon Corporation, Nippon Chemi-Con Corporation, and Rubycon Corporation pled guilty to participating in a conspiracy the primary purpose of which was to fix the prices of certain electrolytic capacitors in the United States and elsewhere in violation of the US antitrust laws.

Defendant United Chemi-Con did not plead guilty.

Neither Panasonic/SANYO nor any of its employees was indicted or convicted of violating the U.S. antitrust laws. In 2015, Panasonic applied for and was granted amnesty for itself and its employees under the DOJ's Corporate Leniency Program. In doing so, Panasonic admitted to violating the U.S. antitrust laws and agreed to cooperation obligations with the DOJ's investigation of the capacitors industry similar to those agreed to by the entities and persons who pled guilty.

In addition, the parties have agreed that the following facts are true.  You must treat them as such:

1. Capacitors are essential components of electronic products.

2. Witness Anthony Olita had responsibility for the sales, marketing and distribution of capacitors for defendant United Chemi-Con ("UCC") during the relevant time period in the United States.

3. ELNA America, Inc. was during the Class Period and is a wholly-owned subsidiary of ELNA Co., Ltd.

4. Vishay PolyTech Co. f/k/a Holy Stone Polytech Co. was during the Class Period a wholly-owned subsidiary of Holy Stone Enterprise Co., Ltd.

5. Milestone Global Technology, Inc. was during the Class Period and is a wholly-owned subsidiary of Holy Stone Enterprise Co., Ltd.

6.   United Chemi-Con Inc. was during the Class Period and is a wholly-owned subsidiary of Nippon Chemi-Con Corp.

7.   Shinyei Technology Co., Ltd. and Shinyei Capacitor Co., Ltd. were during the Class Period and are corporate affiliates of Shinyei Kaisha.

8.   Shinyei Corporation of America, Inc. was during the Class Period and is a wholly-owned subsidiary of Shinyei Kaisha.

9.   Taitsu America, Inc. was during the Class Period and is a wholly-owned subsidiary of Taitsu Corporation.

10.  During the relevant period, NCC, through its wholly owned United States subsidiary, UCC, sold capacitors that NCC manufactured outside the United States to customers located in the United States.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DPPs Brief on Disputed Instruction No. 18 Re Stipulated Facts**

*Stipulated Language re  Guilty Pleas.* Consistent with the Court's instruction, DPPs' proposed instruction instructs the jury without undue repetition what the admissions of guilt say, how the admitted conspiracy was effectuated, and when the conduct was admitted. DPPs' instruction sets forth the stipulated language from NCC's guilty plea once. It follows with a shortened form stipulated language from the admissions of guilt with respect to other participants in the conspiracy, without repetition. This is what the Court ordered, and this is what DPPs' instruction does. *See* Trial Transcript Vol. 8, 1277:12-20; *see also id.*, 1278:4-7 ("I will do it once, and I'll tell the jury this applies to each one").

Defendants' instruction would omit critical portions of the guilty pleas, in particular, what each party and nonparty pleaded guilty to, when the admitted conduct occurred, and how the admitted conspiracy was effectuated. The jury should be so informed.

"*All capacitors subject to this litigation purchased by the Class were billed to or shipped to the United States.*" and *"The alleged contract, combination, or conspiracy occurred in or affected interstate commerce."* These facts are not in dispute. There is substantial and uncontroverted record that the sales of capacitors to Class members were in and through interstate commence. Further, DPPs' expert, Dr. James T. McClave, testified that the only capacitors subject to this litigation are billed to and shipped to the United States. There is also no contrary evidence on this point either. This is consistent with the Court's finding that this satisfies the FTAIA as a matter of law. *See* ECF No. 1302. Defendants have not—and will not—proffer any evidence that the capacitors subject to this issue did not affect interstate or import commerce. To require the jury to determine a factual issue that is not in dispute is confusing and would risk burdening the jury with making an unnecessary factual finding that no one contests. The Court should therefore order the stipulation of fact be made. *See Berger v. Brannan*, 172 F.2 241, 243 (10th Cir. 1949) ("The spirit of a pre-trial procedure is not only to call the parties together and ask them to stipulate as to all matters concerning which there can be no dispute, but to *compel* them to stipulate") (italics added); *United States v. Am. Tel. & Tel Co.*, 83 F.R.D. 323, 332 & n.18 (D.D.C.

1    1979) ("Rule 16 contemplates that the Court may compel parties to stipulate as to all matters

2    concerning which there can be no real issue").

3         The Parties stipulate that ¶¶ 1, 3-11 in DPPs  proposed Instruction are undisputed facts and are

4    stipulated. The jury should be so instructed.

**Defendants' Brief on Disputed Instruction 18 Re Guilty Pleas and Convictions**

At the charge conference, the Court made clear that it does not intend to re-read multiple pages of facts from the guilty plea stipulation to the jury.  Tr. at 1261:12.  In response to that request, Defendants propose that the court read a very short summary and give the jury a full copy of the stipulation (as read to them during the preliminary instructions), so that they have a copy along with all of the other factual stipulations that the jury will have in the final instructions that they are given in hard copy.

DPPs' proposed instruction would still have the Court read the jury 5 pages of nearly identical text about 8 different guilty pleas. Given that the instructions are already "massively long," as the Court has recognized (at Tr. at 1261:12) Defendants do not believe that it is necessary to re-read all of these facts.  The jury is well aware that the Defendants in this case pled guilty.  In addition to having heard an 11-page preliminary instruction, the guilty pleas were discussed at length during opening statements and have been discussed multiple times each day since.

The court should follow the example of *TFT-LCD*, where the Court simply referred to the stipulated facts rather than reciting them for the jury during the final instructions.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543).

DPPs first confirmed that they would not remove two statements from their "stipulated facts" to which Defendants did not stipulate approximately thirty minutes after the Court's noon deadline for the submission of these jury instructions.  Defendants reserve their right to submit a supplement in response to DPPs' argument on this particular instruction.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 19 Re Judicial Notice**

The court has accepted as proved the following facts: [state fact]. You must accept these facts as true.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.3 (2017).

**Instruction No. 20 Re Overview of Antitrust Claims**

The DPPs allege that Defendants violated the antitrust laws by agreeing, conspiring, contracting, or combining to fix prices, rig bids, or otherwise suppress competition in the markets for aluminum, film and tantalum capacitors and that this conspiracy caused an increase in the prices of aluminum, film and tantalum capacitors that were billed to or shipped to the United States. DPPs assert that this increase in prices caused them injury.

To establish a violation of the antitrust laws, the DPPs must prove the following by a preponderance of the evidence:

(1)  the existence of a contract, combination, or conspiracy between or among at least two entities to set, fix, raise, maintain, or stabilize prices, rig bids, or otherwise suppress competition in the markets for aluminum, film and tantalum capacitors;

(2)  that each defendant knowingly became part of that conspiracy, contract, or combination;

(3)  that the alleged conspiracy, contract, or combination occurred in or affected interstate or import commerce; and

(4)  the anticompetitive conduct caused DPPs to pay more for aluminum, film and tantalum capacitors billed to or shipped to the United States than they otherwise would have.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular Defendant, then you must find for that Defendant and against DPPs on DPPs' price-fixing claim. If you find that the evidence is sufficient to prove all four elements as to a particular Defendant, then you must find for DPPs and against that Defendant on DPPs' price-fixing claim.

*Authority*: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 1 Instr. 2 and Ch. 2 Instr. 1 (2016); 3 Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 150:20 (6th ed. 2012).

**Instruction No. 21 Re Knowingly—Defined**

An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident. You may consider evidence of the defendant's words, acts, or omissions, among with all the other evidence, in deciding whether the defendant acted knowingly.

*Authority*: Ninth Circuit Manual of Model Criminal Jury Instructions, Instr. 5.7.

**Instruction No. 22 Re Conspiracy, Contract, or Combination**

DPPs allege that Defendants participated in a conspiracy to restrain trade by fixing, raising, maintaining, and stabilizing the price of aluminum, film and tantalum capacitors. A conspiracy is an agreement or understanding between two or more persons to restrain trade by fixing, raising, maintaining, and stabilizing the price of aluminum, film and tantalum capacitors. DPPs must prove both of the following elements by a preponderance of the evidence:

(1)  that the alleged conspiracy existed; and

(2)  that one or more Defendants knowingly participated in that conspiracy. To act knowingly means to participate voluntarily or intentionally, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy is an agreement or understanding between two or more persons. An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement or understanding itself may have been entirely unspoken.

A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members need not have agreed on the details of the conspiracy, so long as they agreed on or mutually understood the essential nature of the plan. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement the same time. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement or understanding. It is also not necessary that all of the means or methods claimed by DPPs were agreed upon to carry out the alleged conspiracy, nor

that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members. It is the agreement to set, fix, raise, maintain or stabilize the price of aluminum, film and tantalum capacitors that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

DPPs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence. You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did, and the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy.

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

*Authority*: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2 Instr. 1, pp.13-14 (2016); 3 Kevin O'Malley, et al., Fed. Jury Prac. & Instr. § 150:43 (6th ed. 2012),

**Instruction No. 23 Re Participation and Intent**

Before you can find that a defendant was a member of the conspiracy alleged by Plaintiffs, the evidence must show that the Defendant knowingly joined in the unlawful plan at its inception, or at some later time, with the intent to further some object or purpose of the conspiracy.

To act knowingly means to participate deliberately and not because of mistake, accident, or other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. Knowledge of the essential nature of the plan is enough. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator. A company that knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if it had been one of those who formed or began the conspiracy and participated in every part of it.

In determining whether a Defendant was a member of the alleged conspiracy, you should consider only the evidence about that particular Defendant's statements and conduct, including any evidence of that Defendant's knowledge and participation in the events involved and any other evidence of that particular Defendant's participation in the conspiracy alleged. You may not find that a Defendant was a member of a conspiracy based only on its association with or knowledge of wrongdoing, but it is a factor you may consider to determine whether a Defendant was a member of the alleged conspiracy.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

Once you have found that a Defendant is a member of a conspiracy, it is presumed to remain a member and is responsible for all actions taken by all coconspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned.

*Authority*: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(A), Instr. 4.

## Instruction No. 24 Re Corporations or Agency

Under the law, a corporation is a person, but it acts only through its agents. A corporation's agents include its directors, officers, employees, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries. Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner.

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law.

*Authority*: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(A) Instr. 3

**Instruction No. 25 Re Evidence of Information Exchange**

Evidence has been introduced concerning the exchange of proprietary, confidential information among Defendants about their prices for aluminum, tantalum, and film capacitors. DPPs have alleged that such exchanges were part of and made in furtherance of a conspiracy to fix prices.

The fact that Defendants exchanged price information by itself is not illegal and does not necessarily establish an agreement to fix prices. There may be other, legitimate reasons that would lead competitors to exchange price information, and the law recognizes that exchanges of pricing and other proprietary information may enhance competition and benefit consumers. On the other hand, if you find that confidential information was exchanged, and that Defendants offer no reasonable explanation as to why they were exchanging that information, you may consider whether it was being exchanged as part of an agreement to fix prices, along with all of the other evidence bearing on whether there was an agreement to fix prices.

*Authority*: ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 8. & Notes.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 26 Re Evidence of Prices Charged**

Evidence of the prices actually charged by Defendants for aluminum, tantalum, and film capacitors has been admitted to assist you in deciding whether Defendants agreed to fix prices, as claimed by DPPs. Such evidence may lead you to conclude that Defendants never entered into the alleged price-fixing conspiracy.  Or it may lead you to conclude that Defendants made an agreement but undercut one another, offered prices different from those agreed upon to certain customers, or at certain times failed to live up to the agreement.  If you find that Defendants agreed or conspired to fix prices, the fact that they did not stick to their agreement on every occasion or for every customer is not a defense.

*Authority*: ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 6.

1

**Instruction No. 27 Re Evidence of Competition**

2           Evidence that Defendants actually engaged in price competition with each other in some

3   manner has been admitted to assist you in deciding whether they entered into the alleged conspiracy to

4   set, fix, raise, maintain, or stabilize prices. If you find that such a conspiracy existed, it is no defense

5   that Defendants actually competed with each other in some respects, or failed to eliminate all

6   competition between themselves. Similarly, a price-fixing conspiracy between competitors is unlawful

7   even if it did not extend to all products sold by Defendants or did not affect all of their customers or

8   transactions.

9

10  *Authority*: ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(B) Instr. 5 at p.31 (2016).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 28 Re Invocation of the Fifth Amendment—by a Nonparty Witness**

Under the Constitution, a person has the right to refuse to answer questions that may tend to incriminate him or her in criminal activity.

During this case, Anthony Olita and Ikuo Uchiyama refused to testify by exercising their privilege against self-incrimination. With respect to the witness' refusal to testify, you may, but are not required to, infer that this testimony would have been unfavorable to UCC and NCC if and only if you find that the witness is sufficiently associated with UCC and NCC so as to justify the adverse inference. Whether the witness is sufficiently associated with a party to justify an adverse inference depends upon the total circumstances of the case. For example, a witness who is a past or present employee, officer or agent of a party may be, but is not necessarily, sufficiently associated with that party to justify an adverse inference. Likewise, a coconspirator may be sufficiently associated with a party to permit the drawing of an inference adverse to the party if the coconspirator refuses to testify.

If, however, you find that the witness is not sufficiently associated with UCC or NCC, you are instructed that you are not to attach any significance to the witness' refusal to testify. In other words, you should not make any assumption or speculate why the witness chose to exercise his constitutional privilege. In addition, if the witness is not sufficiently associated with the parties, you are not to infer anything adverse or unfavorable to the party in the case because the witness refused to testify.

*Authority*: ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 7(B) Instr. 2 at p. 350 (2016).

**Instruction No. 29 Re Causation and Injury**

If you find that Defendants have violated the Section 1 of the Sherman Act, then you must decide if DPPs are entitled to recover damages from Defendants.

DPPs are entitled to recover damages for an injury to its business or property if they can establish three elements of injury and causation:

(1)    DPPs were in fact injured as a result of Defendants' alleged violations of the antitrust laws; and

(2)    Defendants' alleged illegal conduct was a material cause of DPPs' injury;

The first element is sometimes referred to as "injury in fact" or "fact of damage." For DPPs to establish that they are entitled to recover damages, they must prove that they were injured as a result of Defendants' alleged violations of the antitrust laws. Proving the fact of damages does not require DPPs to prove the dollar value of their injury. It requires only that DPPs prove that they were in fact injured by Defendants' alleged antitrust violations. If you find that DPPs have established that they were in fact injured, you may then consider the amount of DPPs' damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that DPPs have established that they were in fact injured.

DPPs must also offer evidence that establishes by a preponderance of the evidence that Defendants' alleged illegal conduct was a material cause of DPPs' injury. This means that DPPs must have proved that some damage occurred to them as a result of Defendants' alleged antitrust violations, and not some other cause. DPPs are not required to prove that Defendants' alleged antitrust violations were the sole cause of their injury; nor need DPPs eliminate all other possible causes of injury. It is enough if DPPs have proved that the alleged antitrust violation was a material cause of their injury.

In summary, if DPPs can establish that they were in fact injured by Defendants' conduct and that Defendants' conduct was a material cause of their injury then DPPs are entitled to recover damages for the injury to their business or property.

*Authority*: ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(A) Instr. 1, at 300-1 (2016).

**Instruction No. 30 Re Trade Associations**

In this case, DPPs claim that capacitor manufacturers participated in industry meetings and used those meetings to conspire to fix prices, specifically to control and set the prices of their aluminum, tantalum and film capacitors sold to United States purchasers and purchasers worldwide.

Businesses that are actual or potential competitors, such as some of the Defendants here, may lawfully form into trade, industry, or professional associations or similar organizations ("trade associations") to advance common interests, and may communicate or meet with one another in furtherance of lawful trade association activities. The law does not prohibit persons who are otherwise competitors from joining together to carry out lawful and legitimate activities. For example, trade associations may lawfully keep members informed and hold meetings among their members for topics such as new or changed services, technology, standard practices, or legislation and regulations in the industry. But members of such organizations who compete with each other are not permitted to use membership in their organizations to restrain competition.

Mere membership in a trade association does not establish liability, even if that association is being used for an illegal purpose. No inference that the charged conspiracy was formed or existed may be drawn from the mere fact that there is a trade association, that a Defendant was a member of a trade association, or that certain of Defendants' officers/employees attended meetings of the trade association.

Nevertheless, you may consider trade association membership, meetings, and discussions along with all the other evidence, in determining whether a defendant entered into the alleged conspiracy.

The issue you must decide is whether DPPs proved that Defendants used the industry meetings and its challenged practices to conspire to fix prices.

In deciding whether this was an antitrust violation, you are to follow the instructions I have given concerning whether the alleged conduct constituted an illegal conspiracy.

1          *Authority*: ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2(C) Instr. 10 (2016);

2    ABA Model Jury Instructions in Criminal Antitrust Cases (2009) at 103 (Specific Issue Instructions,

3    Instruction 4, Trade Associations); Third Amended Class Action Complaint, at ¶ 13.

**Instruction No. 31 Re Statute of Limitations**

The statute of limitations for the antitrust laws does not permit recovery of damages for any injuries sustained by DPPs prior to [July 18, 2010].

If you find that DPPs suffered injuries spanning both before and after [July 18, 2010], then you must apportion the damages between the two periods and you may award damages only for the portion of the injuries suffered after [July 18, 2010]. When apportioning the damages between the two periods, you should be guided by the same principles I explained to you earlier. That is, you are permitted to make just and reasonable estimates in apportioning DPPs' damages. You are not required to apportion damages with absolute mathematical certainty or precision. However, the apportionment of damages must have a reasonable basis in the evidence. If you find that you cannot apportion damages between the two periods without relying on guesswork or speculation, then you may not award damages at all.

*Authority*: ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 7 Instr. 1;

**Instruction No. 32 Re Statute of Limitations—Fraudulent Concealment**

The statute of limitations bars any recovery by DPPs for injuries that occurred before July 18, 2010, which is four years prior to the date DPPs filed this lawsuit. However, there is an exception to this rule called fraudulent concealment. If DPPs proves that the price fixing conspiracy was fraudulently concealed, DPPs may recover for injuries that occurred before July 18, 2010.

To establish fraudulent concealment, DPPs must prove each of the following three elements by a preponderance of the evidence:

(1) Defendants or any member of the conspiracy actively concealed the price fixing that caused DPPs' injuries;

(2) DPPs did not discover the alleged conduct before July 18, 2010; and

(3) DPPs exercised reasonable diligence in the circumstances and still did not discover the alleged conduct.

To establish the first element of fraudulent concealment—active concealment—DPPs must show affirmative acts of concealment. Mere silence does not constitute fraudulent concealment. Rather, DPPs must prove that Defendants took affirmative steps to prevent DPPs from learning about the price-fixing conspiracy. DPPs allege that Defendants and their coconspirators committed the following types of affirmative acts to conceal the alleged conspiracy: held secret meetings at hotels; destroyed documents, notes and emails; instructed others to destroy emails after reading; announced price increases as a pretext rather than disclosing the conspiracy itself; informed others to not share contents of communications, and used codes to hide company identities, among other things.

Defendants are responsible for their own acts of concealment as well as any acts of concealment committed by coconspirators as long as the act of concealment occurred during the course and in furtherance of the conspiracy. DPPs need not establish concealment on a victim-by-victim basis; affirmative acts of concealment generally are considered to have an industry-wide effect.

In considering the third element of fraudulent concealment, if facts were reasonably available to DPPs that should have aroused suspicion that the price-fixing conspiracy had occurred, DPPs must have made a reasonable investigation to discover the price-fixing conspiracy. Parallel conduct or

1   parallel pricing by itself does not give rise to the duty to investigate. If you conclude that a reasonable
2   investigation would not have uncovered the price-fixing conspiracy, then you must find that the third
3   element has been established. If, under all the circumstances of the case, no suspicious facts were
4   reasonable available to DPPs, no investigation was required, and you must find that the third element
5   has been established.

6           If you find that DPPs have proved all three elements of fraudulent concealment, then DPPs are
7   entitled to recover for injuries that occurred before July 18, 2010. If you find that DPPs have failed to
8   prove any one of the three elements, then DPPs may not recover for injuries that occurred before July
9   18, 2010.

10

11  *Authority*: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2016) at 333-32; *see In*
12  *re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2016 WL 8669891, at *9 (N.D. Cal.
13  Aug. 22, 2016) ("[A]ttend[ing] secret meetings in hotels, record[ing] information on a blackboard
14  instead of committing it to paper, instruct[ing] recipients of emails to destroy them after reading them,
15  and us[ing] codes in correspondence" affirmative acts for fraudulent concealment purposes); *see also*
16  *Carrier Corp.  v. Outokompu Oyj*, 673 F.3d 430, 447, n.8 (6th Cir. 2012) ("'[F]raudulent
17  concealment . . . may be established through the acts of co-conspirators'"); *New York v. Hendrikson*
18  *Bros., Inc.*, 840 F.2d 1065, 1085-84 ("[T]he trial court properly instructed the jury that if it found that
19  the bid-rigging conspiracy continued in existence at the time of the . . . defendants' coverup activities, it
20  could find that those activities were also attributable to the other members of the conspiracy."); *Hobson*
21  *v. Wilson*, 737 F.2d 1, 34-35 (D.C. Cir. 1984) ("The deception may be as simple as a single lie . . . so
22  long as the defendants conceal 'not only their involvement, but the very conduct itself'"), overruled on
23  other grounds by *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S.
24  163 (1993).

25
26
27
28

**Instruction No. 33 Re Damages—Introduction and Purpose**

If you find that Defendants violated the antitrust laws and that this violation caused injury to the DPPs, then you must determine the amount of damages, if any, DPPs are entitled to recover. The fact that I am giving you instructions concerning the issue of DPPs' damages does not mean that I believe DPPs should, or should not, prevail in this case. If you reach a verdict for Defendants on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that DPPs should be fairly compensated for all damages that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred. The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter particular conduct in the future. Furthermore, you are not permitted to award to DPPs an amount for attorneys' fees or the costs of maintaining this lawsuit.

*Authority*: ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 1.

**Instruction No. 34 Re Calculation of Damages**

You are permitted to make just and reasonable estimates in calculating DPPs' damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation. DPPs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that DPPs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that DPPs have failed to carry their burden of providing a reasonable basis for determining damages, then you may not award damages or you may award nominal damages, not to exceed one dollar.

*Authority*:  ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 3.

**Instruction No. 35 Re Nominal Damages**

The law that applies to this case authorizes an award of nominal damages. If you find for DPPs but you find that DPPs have failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

*Authority*: *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543); Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 5.6 (2017); *see also U.S. Football League v. NFL*, 842 F.2d 1335, 1376-77 (2d Cir. 1988).

**Disputed Instruction No. 36 Re Damages for Purchasers – Class (DPPs)**

If you have determined that there was an unlawful conspiracy among competitors to fix prices that caused some injury to DPPs, you must now determine the amount of damages to award DPPs. The proper way to calculate DPPs' damages is to determine the difference between the prices DPPs actually paid for aluminum, tantalum, and/or film capacitors and the prices DPPs would have paid had there been no conspiracy to fix prices.  This is referred to as the overcharge.

DPPs are seeking to recover damages on behalf of a class of purchasers that includes all persons or businesses in the United States who purchased capacitors directly from any of the defendants from January 1, 2002 to December 31, 2013. To award damages for the class, you do not need to determine the overcharge paid by each class member with absolute mathematical certainty or precision.  It is sufficient for you to determine the average of the overcharge paid by class members, or estimate the overcharge paid by class members, as long as the average or estimate is based on evidence and reasonable inferences.  You may not base your damages award on guesswork or speculation. If determining the amount of damages requires you to guess or speculate, or make speculative assumptions or inferences, you may not award damages.

*Authority*: ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 5 and 7; *see also* MDL ECF No. 1597 (Instruction No. 2 Class Action).

**Disputed Instruction No. 36 Re Calculation of Damages (Defendants)**

If you have determined that the unlawful conspiracy alleged in this case existed and caused some injury to DPPs, you must now determine the amount of damages to award to DPPs. The proper way to calculate DPPs' damages is to determine the difference between the prices plaintiffs actually paid for aluminum, film and tantalum capacitors and the prices plaintiffs would have paid had there been no agreement to fix, raise, maintain, or stabilize prices. This is referred to as the overcharge.

DPPs are seeking to recover damages on behalf of a class of purchasers that includes all persons or businesses in the United States who purchased capacitors directly from any of the Defendants from January 1, 2002 to December 31, 2013. To award damages for the class, you do not need to determine the overcharge paid by each class member with absolute mathematical certainty or precision. It is sufficient for you to determine the average overcharge paid by class members or estimate the overcharge paid by class members, as long as the estimate is based on evidence and reasonable inferences. You may not base your damages award on guesswork or speculation. If determining the amount of damages requires you to guess or speculate, or make speculative assumptions or inferences, you may not award damages.

*Authority*: Adapted from ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 5 and 7 at pp. 312, 314 (2016).

1

**DPPs Brief Re Instruction No. 36 Re Calculation of Damages**

2      Consistent with the Court's instruction, the Parties have agreed to a more clear and concise

3  accurate class definition to instruct the jury. Defendants, however, have now added new language to

4  change the first paragraph of the instruction. This was not previously raised and was not the subject of

5  prior iterations of the instruction. DPPs' language comes directly from the ABA model instructions and

6  was not previously in dispute. It was language not previously proposed prior to the charging

7  conference. Defendants' late attempt to rewrite the first paragraph should be rejected.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendants Brief in Support of Disputed Instruction No. 36**

Per the Court's instruction, the parties have met and conferred and reached agreement on the language of the Class Period.

Given the way the evidence developed at trial and the arguments made by the parties, Defendants propose that additional minor modifications also be made to the first paragraph of the instruction to make clear that the jury has to find that the unlawful conspiracy alleged in *this* case has been proven before they can calculate damages in this case. It is not enough for the jury to find that *any* unlawful agreement existed, particularly given that Nippon Chemi-Con has plead guilty to a conspiracy which the parties have argued is not the same conspiracy that the DPPs have alleged in this case.

**Instruction No. 37 Re Joint and Several Liability**

Each participant in a conspiracy that violates the antitrust laws is jointly and severally liable for all of the damages resulting from the conspiracy. This means that each conspirator is fully liable for all of the damages caused by the conspiracy and not solely for damages caused by an individual conspirator. One who knowingly joins an ongoing conspiracy is liable for the previous acts of the other conspirators in furtherance of the conspiracy.

If you find that plaintiff has proven the existence of the alleged conspiracy, that defendant participated in the conspiracy, and that plaintiff is entitled to recover damages based on the other instructions in this case, then defendant would be liable for all damages caused by the conspiracy including any overcharges on purchases of the product.

Thus, in that event, Defendants would be liable for overcharges on all purchases of aluminum, tantalum, and/or film capacitors by DPPs from all members of the conspiracy, and not merely on purchases from a Defendant. If, however, you find that any of the other alleged conspirators were not a member of the conspiracy, then defendant would not be liable for damages based on plaintiff's purchases from those alleged conspirators.

*Authority*: ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6(B) Instr. 17.

**Disputed Instruction No. 38 Re Settlement Agreements of Defendant NEC Tokin (Defendants)**

You have heard evidence that NEC Tokin reached a settlement with DPPs prior to trial and that the settlement agreement had certain cooperation obligations for NEC Tokin.  Mr. Sato, an NEC Tokin employee, testified that he understood that the testimony he gave was pursuant to that agreement.  The existence of this settlement agreement should not influence your consideration of this case, but you may consider the cooperation obligations in evaluating Mr. Sato's testimony.

*Authority*: Adapted from *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Jury Instructions, No. 3:07-md-01827-SI (N.D. Cal. Aug. 28, 2013) (Doc. 8543).

1

**[**DPPs object to the inclusion of Instruction 38 Re Settlement Agreements of Defendant NEC Tokin in its entirety**]**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DPPs Brief on Instruction No. 38 Re Settlement Agreements of Defendant NEC Tokin**

DPPs agree with the Court that an instruction regarding NEC Tokin's cooperation obligation is unnecessary. There is virtually no testimony in the record as to settlement agreements. The jurors will already be informed how to assess the credibility of witnesses in Stipulated Instruction No. 12 (Credibility of Witnesses). That instruction instructs the jury to consider "the witness's bias." And the catchall provision of that instruction adequately warns the jury to consider any other factors that may bear on a witnesses' credibility. *See id.* ("any other factors that bear on believability").

*" Mr. Sato, an NEC Tokin employee, testified that he understood that the testimony he gave was pursuant to that agreement."* Defendants' proposed language is argumentative and misleading. The language is also inaccurate. The witness did not testify that the testimony was in exchange for an agreement of any type. Mr. Sato was the only witness who provided testimony which even mentioned settlement agreements. He did not testify as to the contents of the agreement. That same witness provided testimony that he was testifying truthfully and that he understood the oath he took to tell the truth. Should the Court deem an instruction regarding settlement agreements be necessary, this sentence should be stricken. Likewise, the reference to Mr. Sato in the last sentence should be replaced with a generic reference to "the witness."

**Defendants' Brief on Disputed Instruction 38 Re Settlement Agreements of NEC Tokin**

The parties initially proposed a general instruction about the settlement agreements reached by other parties.  After discussion at the charge conference, the Court told that parties that it would consider a revised version of the instruction that related solely to Mr. Sato, who was the only witness questioned (at Tr. 383:21-384: 5) about a settlement agreement with cooperation provisions.  Pursuant to the Court's instruction, Defendants therefore propose this revised instruction.

The Federal Rules of Evidence make clear that settlement agreements are not admissible "to prove or disprove the validity or amount of a disputed claim," but may be admitted to show a witness's bias.  Fed. R. Evid. 408.  Because the Court properly admitted evidence of NEC Tokin's settlement agreement for a limited purpose (showing Mr. Sato's potential bias), the Court must restrict the evidence to its proper scope and instruct the jury accordingly."  Fed. R. Evid. 105.  For these reasons, Defendants respectfully request that the Court give Defendants' proposed instruction.

**Instruction No. 39 Re Duty to Deliberate**

When you begin your deliberations, elect one member of the jury as your foreperson who will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict, whether liable or not liable, must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Perform these duties fairly and impartially. Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, gender, sexual orientation, profession, occupation, economic circumstances, or position in life or in the community.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so. During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong.

*Authority*: *United States v. Reynolds*, Case No. 18-cv-00158-JD (N.D. Cal. May 19, 2021), ECF No. 207.

### Instruction No. 40 Re Consideration of the Evidence—Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet social media site, blog, website or other feature. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the Court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

*Authority*: *United States v. Reynolds*, Case No. 18-cv-00158-JD (N.D. Cal. May 19, 2021), ECF No. 207.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 41 Re Use of Notes**

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by your notes or those of fellow jurors.

*Authority*: *United States v. Reynolds*, Case No. 18-cv-00158-JD (N.D. Cal. May 19, 2021), ECF No. 207.

1

**Instruction No. 42 Re Communication with Court**

2

If it becomes necessary during your deliberations to communicate with me, you may send a

3

note through Ms. Clark, signed by any one or more of you. No member of the jury should ever attempt

4

to communicate with me except by a signed writing, and I will respond to the jury concerning the case

5

only in writing or here in open court. If you send out a question, I will consult with the lawyers before

6

answering it, which may take some time. You may continue your deliberations while waiting for the

7

answer to any question. Remember that you are not to tell anyone—including me or Ms. Clark—how

8

the jury stands, numerically or otherwise, on any question submitted to you, including the question of

9

the guilt of the defendants, until after you have reached a unanimous verdict or have been discharged.

10

11

*Authority*: *United States v. Reynolds*, Case No. 18-cv-00158-JD (N.D. Cal. May 19, 2021), ECF No.

12

207.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 43 Re Return of Verdict**

A verdict form has been prepared for you. [Explain verdict form as needed.] After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise Ms. Clark that you are ready to return to the courtroom.

*Authority*: *United States v. Reynolds*, Case No. 18-cv-00158-JD (N.D. Cal. May 19, 2021), ECF No. 207.