Charles F. Rule (admitted *pro hac vice*)
Joseph J. Bial (admitted *pro hac vice*)
Leah Hibbler (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
rrule@paulweiss.com
jbial@paulweiss.com
lhibbler@paulweiss.com

Roberto Finzi (admitted *pro hac vice*)
Farrah R. Berse (admitted *pro hac vice*)
Johan E. Tatoy (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3830
Facsimile: (212) 757-3990
rfinzi@paulweiss.com
fberse@paulweiss.com
jtatoy@paulweiss.com

Steven Kaufhold (SBN 157195)
KAUFHOLD GASKIN GALAGHER LLP
485 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 881-3189
Facsimile: (415) 874-1071
skaufhold@kaufholdgaskin.com

*Counsel for Defendants Nippon Chemi-Con Corp. and United Chemi-Con, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE CAPACITORS ANTITRUST LITIGATION**<br><br>Case No. 3:14-cv-03264-JD | **DEFENDANTS NIPPON CHEMI-CON'S AND UNITED CHEMI-CON'S RESPONSE TO DPPS' MOTION TO STRIKE TESTIMONY OF DR. LAILA HAIDER**<br><br>Master Docket No.: 3:17-md-2801-JD<br><br>Hon. James Donato<br><br>Case No.: 3:14-cv-3264-JD |

Direct Purchaser Plaintiffs' ("DPPs") motion to strike testimony given by Dr. Laila Haider rests entirely on the mistaken premise that Dr. Haider presented the jury with an "alternative" damages figure. *See* DPP Motion to Strike Testimony of Dr. Laila Haider ("DPP Mot.") at 1. But that is not what Dr. Haider did, either literally or by implication. Rather, both the testimony in question and where it appeared in Dr. Haider's examination clearly show that the testimony was offered as another example of the nonsensical results produced by Dr. McClave's methodology, not as an endorsement of his model or any part of his methodology. To the contrary, the entire purpose of Dr. Haider's testimony was to show that Dr. McClave's model is biased and unreliable, not to adopt it or endorse it, even in part.

Nothing in either the specific question and answer cited by the DPPs or Dr. Haider's testimony as a whole mentions an "alternative damages calculation," and nowhere in her testimony does she provide an opinion that the $66 million is a better or more reasonable measure of damages than the one offered by Dr. McClave. The whole idea that Dr. Haider was providing an "alternative damages" number is nonsensical, in that it is clear from the context—and would be clear to the jury—that Dr. Haider was using the $66 million to *criticize* Dr. McClave's model, not to *adopt* it. Nowhere does she suggest that the $66 million represents a better application of his model, or that the $66 million can or should be used an alternative.

The context in which the identified testimony was provided proves the point: The Q&A that DPPs propose to strike came as part of a series of questions designed to highlight the absurd results produced by Dr. McClave's model.[1] Right before and right after the quoted

---

[1] While the DPPs now argue that the question clearly called for an opinion beyond the scope of Dr. Haider's report, they failed to object to the exchange until after the answer was given. "It is a fundamental rule of evidence that an objection not timely made is waived." *United States* v. *Jamerson*, 549 F.2d 1263, 1266–67 (9th Cir. 1977) (citing Fed. R. Evid. 103(a)(1)(A)). DPPs' failure to object "after the question is propounded and before it is answered" thus waived the objection. *See, e.g.*, Mueller & Kirkpatrick, Federal Evidence § 1:7 ("Absent unusual

DEFENDANTS' RESPONSE TO DPPS' MOTION TO STRIKE TESTIMONY OF
DR. LAILA HAIDER
Case Nos. 3:14-CV-3264-JD; 3:17-MD-2801-JD

testimony, Dr. Haider testified about other ways Dr. McClave's model produced nonsensical results. *See* Trial Tr. 1374:2–1375:7 (immediately prior to the questioned passage, describing Dr. Haider's brick-by-brick analysis showing that Dr. McClave's model would still show negative overcharges and describing this as "a big red flag"); 1385:3–12 (immediately following the questioned passage, describing test results showing that if one reduced the actual prices for the middle four years of the alleged conspiracy, Dr. McClave's model would actually show higher overcharges, and that "this [test] result makes no sense").  And in the very same section of her testimony, Dr. Haider testified that the results of her annual indicator test similarly proved that Dr. McClave's model was "poorly constructed" and "poorly built."  *Id.* at 1383:16–18.[2]

When laying the foundation for the annual indicator test results at issue here, Dr. Haider explained quite clearly that she had performed an "F-test" to evaluate Dr. McClave's model.  *Id.* at 1380:12.  She did not say or imply that her calculation provided an alternative damages model.  Indeed, the very next question confirmed that the $66 million was the result of a test of Dr. McClave's model, not an alternative to it.  *Id.* at 1384:9 ([Mr. Finzi:] "Finally, did you – so you've talked about *a couple tests* . . . .") (emphasis added).  Showing that the smallest adjustment to Dr. McClave's model—removing a single variable— reduced damages by nearly 85% percent was an entirely appropriate criticism of his model.

---

circumstances, an objection to testimony should be made after the question is propounded and before it is answered.").

[2]  While DPPs now claim the Court did not overrule their objection to this Q&A, *see* DPP Mot. at 2–3, counsel previously acknowledged the opposite.  *See* Trial Tr. 1392:19–1393:2 ([Mr. Saveri:] ". . . For example, there was testimony about an alternative damage model, which is nowhere in Dr. Haider's report. I understand that you overruled it, but there -- there was no questions and answers there.").

DEFENDANTS' RESPONSE TO DPPS' MOTION TO STRIKE TESTIMONY OF
DR. LAILA HAIDER
Case Nos. 3:14-CV-3264-JD; 3:17-MD-2801-JD

- 2 -

Finally, and contrary to what is stated in DPPs' brief, Dr. Haider's criticism of Dr. McClave's model and the results of the "F-Test" came directly from her report, and the precise $66 million figure was a simple arithmetic calculation of test results that Dr. Haider previously disclosed. Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure "does not limit an expert's testimony simply to reading [her] report[.] The rule contemplates that the expert will supplement, elaborate upon, and explain [her] report in [her] oral testimony." *Muldrow ex rel. Estate of Muldrow* v. *Re–Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007). Under the Federal Rules, "the purpose of these expert reports is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary."[3] *Gallegos* v. *Seeley*, 2021 WL 4295290, at *5 (S.D. Cal. Sept. 21, 2021) (cleaned up).

Dr. Haider's Report critiques the results generated by Dr. McClave's model when "the estimated overcharge is allowed to vary over time for each dielectric (*i.e.*, the overcharge is made flexible over time)." Expert Report of Dr. Laila Haider ("Haider Report") ¶ 78.[4] Her report also disclosed the statistical method employed to reach that result—"an F-test of the

---

[3] DPPs claim that they were "deprived . . . of an opportunity to address this critique during Dr. McClave's testimony." DPP Mot. at 3. But in fact DPPs addressed this precise point during both their direct and their re-direct of Dr. McClave, even calling Dr. Haider out by name. Trial Tr. 530:10–13 ("[Dr. McClave:] What some of the defense experts did was instead of that, they took that conspiracy test variable that I added at the bottom, and they said: We're going to chop that into 12 pieces, each one for an annual."); *id.* at 780:1–7 ("[Mr. Cramer:] Did Dr. Haider make that mistake in your opinion?"). Both Mr. Cramer and Dr. McClave made clear that they were preemptively addressing the very results that Dr. Haider later computed for the jury. *Id.* at 781:1–3 ("[Dr. McClave:] So is that a reliable way to estimate annual damages? It's not because . . ."); *id.* at 781:18–782:3 ("[Mr. Cramer:] And so Dr. Haider's model in this case . . . shows no damages? [Dr. McClave:] Well it's more nonsensical than that. It shows a discount. . . . Well, I might be able to understand zero damages if there were no conspiracy.").

[4] Excerpts from the Haider Report are attached as Exhibit 1 to the Declaration of Roberto Finzi, dated December 11, 2021.

DEFENDANTS' RESPONSE TO DPPS' MOTION TO STRIKE TESTIMONY OF
DR. LAILA HAIDER
Case Nos. 3:14-CV-3264-JD; 3:17-MD-2801-JD
- 3 -

hypothesis that the coefficients on yearly indicators for each year during the class period are equal"—and that that results were significant. *Id.* at ¶ 79, n.169. It disclosed the data underlying that methodology (Dr. McClave's own data). *Id.* at 60–63 exs. 14, 15 & 16. And both Dr. Haider's Report and the demonstrative vetted with DPPs before the testimony was offered included graphs showing the overcharge amounts by capacitor type and the years that those overcharge amounts would be applied to:



Haider Report at 61 ex. 14 (for aluminum).

In sum, Dr. Haider's trial testimony was based on a clearly-disclosed critique of Dr. McClave's model. The results of that testing showed that Dr. McClave's conclusions

DEFENDANTS' RESPONSE TO DPPS' MOTION TO STRIKE TESTIMONY OF
DR. LAILA HAIDER
Case Nos. 3:14-CV-3264-JD; 3:17-MD-2801-JD
- 4 -

...

produced nonsensical results, and provided the jury with another example of how simple (and minor) changes to Dr. McClave's model result in wild swings to his estimate of damages. *See Speedtrack, Inc.* v. *Wal-Mart Stores, Inc.*, No. C 06-7336 PJH, 2012 WL 581338, at *10–11 (N.D. Cal. Feb. 22, 2012), *aff'd sub nom. Speedtrack, Inc.* v. *Endeca Techs., Inc.*, 524 F. App'x 651 (Fed. Cir. 2013) (denying motion to strike a "new" opinion which merely added more detail to the expert's prior expressed opinions).

## CONCLUSION

For all of these reasons, DPPs' motion should be denied.

Dated:  December 11, 2021

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Roberto Finzi*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Roberto Finzi (admitted *pro hac vice*)
Farrah R. Berse (admitted *pro hac vice*)
Johan E. Tatoy (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
rfinzi@paulweiss.com
fberse@paulweiss.com
jtatoy@paulweiss.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Charles F. Rule (admitted *pro hac vice*)
Joseph J. Bial (admitted *pro hac vice*)
Leah Hibbler (admitted *pro hac vice*)
2001 K Street, NW
Washington, DC 20006
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
rrule@paulweiss.com

DEFENDANTS' RESPONSE TO DPPS' MOTION TO STRIKE TESTIMONY OF DR. LAILA HAIDER
Case Nos. 3:14-CV-3264-JD; 3:17-MD-2801-JD

- 5 -

jbial@paulweiss.com
lhibbler@paulweiss.com


KAUFHOLD GASKIN  GALAGHER LLP
Steven Kaufhold (SBN 157195)
485 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 881-3189
Facsimile: (415) 874-1071
skaufhold@kaufholdgaskin.com

*Counsel for Defendants Nippon Chemi-Con Corp. and United Chemi-Con, Inc.*

DEFENDANTS' RESPONSE TO DPPS' MOTION TO STRIKE TESTIMONY OF
DR. LAILA HAIDER
Case Nos. 3:14-CV-3264-JD; 3:17-MD-2801-JD