# EXHIBIT 1

CONFIDENTIAL – ATTORNEYS' EYES ONLY

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CAPACITORS ANTITRUST LITIGATION | **CASE NO. 3:17-MD-02801-JD** |
| This Document Relates to:<br><br>All Direct Purchaser Actions | |

# EXPERT REPORT OF DR. LAILA HAIDER

# FEBRUARY 22, 2019

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

73. Second, Dr. McClave's and Dr. Singer's approach does not permit the fact finder to determine whether the effects of the alleged conduct were limited to some DPP class members or extended to all direct purchasers of a given dielectric in the DPP class. This is because an underlying assumption of their regression approach is that the alleged conduct resulted in the *same* overcharge to all direct purchasers of a given dielectric (or sub-type) in the DPP class. Statistical testing strongly rejects the assumption that a single overcharge applies to all direct purchasers of a given dielectric. I demonstrate that when I allow Dr. McClave's estimated overcharge to vary for each of the top 100 direct purchasers of a given dielectric in the DPP class, a substantial number of those top direct purchasers did not sustain positive and statistically significant overcharges (numerous direct purchasers show *negative* and statistically significant overcharges).

74. Third, Dr. McClave's and Dr. Singer's estimated overcharges are derived from only a subset of direct purchasers in the DPP class and a subset of relevant products sold during the class period. Accordingly, Dr. McClave and Dr. Singer do not establish overcharges for a substantial proportion of customers and products in the DPP class.

75. Finally, Dr. McClave makes a misleading and incorrect claim that his "customer-specific analysis" shows that "all or nearly all customers were impacted by the alleged Conspiracy"[164] when, in fact, it is incapable of showing impact for any single customer. This claim is based on circular reasoning. His does not study whether any particular direct purchaser sustained an overcharge. His so-called "customer-specific" analysis is predicated on the assumption that all purchasers of a given dielectric paid the same average overcharge.

    **A. Dr. McClave's and Dr. Singer's Approach Fails to Establish a Causal Link Between the Alleged Conduct and Their Estimated Overcharges**

        **1. Dr. McClave's and Dr. Singer's Approach is Unable to Disentangle the Effects of the Alleged Conduct from Effects of Other Economic Factors**

76. Dr. McClave's regression estimates a single average overcharge for each dielectric over a period that spans 12 years of alleged conduct. In doing so, his approach assumes that the effects of the alleged conduct (*i.e.*, his estimated overcharges) are the same in each year during the class

---

[164] McClave Report, p. 9.

period for a given dielectric.[165] In contrast, Dr. Marx acknowledges the potential time-varying effects of the alleged conduct and "allow[s] for the possibility that the efficacy of collusive conduct varied through time."[166] In fact, statistical testing shows that when I use Dr. McClave's own overcharge regression and allow overcharges to vary over time (*i.e.*, when his estimated overcharge is made flexible over time), most years in the class period show *negative* and statistically significant overcharges. This demonstrates two issues with Dr. McClave's approach. First, statistical testing rejects his restrictive assumption that the alleged conduct had the same or uniform effect over time. Accordingly, his finding of overcharges that he applies to all 12 years of the class period rests on an untested assumption that he incorrectly imposes on the pricing data. Second, his approach is incapable of disentangling conspiratorial and non-conspiratorial price effects during the class period. This means that the estimated overcharges he derives are not causally linked to the alleged conduct. I also note that Dr. Singer's approach suffers from the same flaws. Thus, Dr. McClave's and Dr. Singer's methodology is unreliable and incapable of showing economic injury to direct purchasers resulting from the alleged conduct.

77.     Dr. McClave's regression contains two sets of variables accounting for the passage of time: (i) his time trend variables, and (ii) his indicator variable that captures a single price shift between 2002 and 2013 relative to other years. Dr. McClave claims that the former solely captures the effect of unnamed non-conspiratorial supply and demand factors, and the latter (which he calls an overcharge) solely captures the effect of conspiratorial factors. Dr. McClave's regression assumes that prices followed a particular trend over the relevant period and were disrupted by a single event—an alleged conduct period that spans 12 years. By construction, his regression allows for only a single level shift in prices paid for each dielectric resulting from the alleged conduct. Accordingly, with respect to his overcharge variables, he makes the restrictive assumption that there were no differences in effects of the alleged conduct (for a given dielectric)

---

[165] To the extent Dr. McClave attempts to sidestep the issue by stating that his "classwide impact" analysis shows varying overcharges across direct purchasers, I explain below that the superficial appearance of variation in Dr. McClave's estimated overcharge is a result of the prediction errors in his model. His approach simply does not allow for the effects of the alleged conduct to vary over time. McClave Report, p. 9.

[166] Marx Report, ¶107.

during the 12 years.[167] For his other set of variables capturing the passage of time (*i.e.*, the time trend), however, he claims the need for "flexibility" and imposes a quadratic form.[168]

78.     The assumption that the alleged conduct had the same or uniform effect on direct purchasers over time is testable. I demonstrate using two statistical tests that when Dr. McClave's estimated overcharge is allowed to vary over time for each dielectric (*i.e.*, the overcharge is made flexible over time), most years in the class period show *negative* and statistically significant overcharges. In each case, statistical testing rejects Dr. McClave's restrictive assumption that the effect of the alleged conduct was the same or uniform over the 12 years.

79.     First, I show that statistical testing strongly rejects Dr. McClave's assumption that the estimated overcharges for each dielectric are uniform in each year of the class period.[169] Accordingly, Dr. McClave's approach of pooling sales transactions over time to estimate a single average overcharge across all years for each dielectric is rejected by the data on actual prices paid. In fact, the results demonstrate that, by assuming a uniform overcharge over time, Dr. McClave incorrectly attributes time-varying price effects unrelated to the alleged conduct to the overcharges he estimates.[170] The exhibits below show estimated overcharges by year for each dielectric when overcharges are allowed to vary by year, but his model is otherwise left unchanged. Each bar represents the estimated overcharge for a year during the class period. The

---

[167] The underlying assumption of his approach (and Dr. Singer's) is that for each dielectric (sub-type), the alleged conduct had the same or uniform effect on all direct purchasers in each year during the class period.

[168] McClave Report, p.7.

[169] The statistical test used is an F-test of the hypothesis that the coefficients on yearly indicators for each year during the class period are equal (*see*, Wooldridge, Jeffery M., Introductory Econometrics: A Modern Approach. 4th ed. 2009., 4th ed., pp. 143-148). The F-statistic is highly statistically significant for each dielectric.

[170] I obtain similar results when the overcharge is allowed to vary for two-year and three-year periods. Further, Dr. McClave is wrong when he claims that the sub-periods cannot be made any shorter than 6 years. He has no basis for this claim. Dr. McClave's justification for not permitting the overcharge to vary by time is that doing so creates issues related to multicollinearity. I explain below that his concern is misplaced. I also note that Dr. McClave conducts a sensitivity analysis, which allows for a different overcharge in the first half and second half of the class period, but he ignores the implications of his own results. His estimates show that there are differences over time. Notably, Dr. McClave argues that non-conspiratorial price effects should be flexible and "vary over time," but that conspiratorial price effects (*i.e.*, his estimated overcharge) should not be permitted to vary over time. *See* McClave Report, p. 7.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

blue bars indicate positive and statistically significant overcharges and the black bars indicate *negative* and statistically significant overcharges.

80.	As shown in **Exhibit 14**, allowing for the possibility of a different overcharge by year for aluminum capacitors, there are *negative* and statistically significant overcharges in the first ten years of the class period. Dr. McClave's model shows positive and statistically significant overcharges only in 2012 and 2013. I observe similar results for Dr. Singer.[171]

---

[171] When I conduct the same test on Dr. Singer's regression, there are no positive and statistically significant overcharges for the majority of the class period for different sub-types of aluminum capacitors. The test shows positive and statistically significant overcharges only in 2012 and 2013 for aluminum 04 type, aluminum screw, and aluminum snap in can capacitors, and only in 2002, 2012, and 2013 for aluminum chip capacitors. Further, the test shows no positive and statistically significant overcharges for aluminum polymer capacitors. In fact, the estimated overcharges are *negative* and statistically significant in the majority of the class period for all aluminum sub-types of aluminum capacitors.

60

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



**EXHIBIT 14
ESTIMATED OVERCHARGES FOR ALUMINUM CAPACITORS
USING DR. MCCLAVE'S REGRESSION
ALLOWING THE OVERCHARGE TO VARY BY YEAR
2002 – 2013**

Source: Dr. McClave's turnover.

81. Similarly, as shown in **Exhibit 15,** allowing for the possibility of a different overcharge by year for tantalum capacitors, there are *negative* and statistically significant overcharges in the last ten years of the class period. Dr. McClave's model shows positive and statistically significant overcharges only in 2002 and 2003. I observe similar results for Dr. Singer.[172]

---

[172] When I conduct the same test on Dr. Singer's regression, there are no positive and statistically significant overcharges for the majority of the class period for different sub-types of tantalum capacitors. The test shows positive and statistically significant overcharges only before 2007 for tantalum polymer capacitors, only in 2002 and 2003 for tantalum standard capacitors, and no positive and statistically significant overcharges for tantalum wet capacitors. In fact, the estimated overcharges are *negative* and statistically significant in the majority of the class period for all tantalum sub-types.

**EXHIBIT 15**
**ESTIMATED OVERCHARGES FOR TANTALUM CAPACITORS**
**USING DR. MCCLAVE'S REGRESSION**
**ALLOWING THE OVERCHARGE TO VARY BY YEAR**
**2002 – 2013**



Source: Dr. McClave's turnover.

82. Finally, as shown in **Exhibit 16**, allowing for the possibility of a different overcharge by year for film capacitors, there are *negative* and statistically significant overcharges in the first ten years of the class period. Dr. McClave's model shows positive and statistically significant overcharges only in 2012 and 2013. I observe similar results for Dr. Singer.[173]

---

[173] When I conduct the same test on Dr. Singer's regression, there are no positive and statistically significant overcharges for the majority of the class period for film capacitors. The test shows positive and statistically significant overcharges only in 2012 and 2013. The estimated overcharges are *negative* and statistically significant for the other ten years.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



EXHIBIT 16
ESTIMATED OVERCHARGES FOR FILM CAPACITORS
USING DR. MCCLAVE'S REGRESSION
ALLOWING THE OVERCHARGE TO VARY BY YEAR
2002 – 2013

Source: Dr. McClave's turnover.

83. Next, I conduct an additional test to illustrate that when Dr. McClave's overcharge variable is allowed "flexibility" in the same manner that he chooses for his time trend, the results are consistent with those described above.[174] Crucially, this approach does not rule out the possibility that there is only a single level shift in prices paid resulting from the alleged conduct as Dr. McClave assumes. Put differently, if Dr. McClave's restrictive assumption on the uniform effects of the alleged conduct over time were correct, this test would have yielded the same result

---

[174] McClave Report, p. 7. Specifically, I do so by including interaction terms between his class period indicators and his two time variables.

63

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

as his.[175] Here too, statistical testing strongly rejects Dr. McClave's assumption that the estimated overcharges for each dielectric are uniform over time during the class period.[176] The exhibits below show estimated overcharges by month for each dielectric. Each bar represents the estimated overcharge for a month during the class period. The blue bars indicate positive and statistically significant overcharges, the black bars indicate *negative* and statistically significant overcharges, and the red bars indicate not statistically significant overcharges.

84.     As shown in **Exhibit 17**, when I allow for the possibility that the effects of the alleged conduct varied over time for aluminum capacitors in the same manner that Dr. McClave allows his time trend to be flexible (leaving his model otherwise unchanged), the majority of the class period shows *negative* and statistically significant overcharges. Dr. McClave's model shows positive and statistically significant overcharges only in some months in 2012 and 2013. I observe similar results for Dr. Singer.[177]

---

[175] If it were the case that the alleged conduct resulted in a single price shift that lasted throughout the 12-year conduct period, the coefficients of the two newly included variables would not have been statistically different from zero. Instead, the variables are highly statistically significant. In fact, the p-value of every coefficient, including those of the two additional variables, is less than 0.001. As I explain below, this shows that the "potential problem" that Dr. McClave asserts about multicollinearity is misplaced (*see*, McClave Report, footnote 31).

[176] The statistical test used is an F-test of the hypothesis that the coefficients of the interaction terms of his class period indicators and his time variables are not statistically distinguishable from zero (*see*, Wooldridge, 4th ed., pp. 143-148). The F-statistic is highly statistically significant for each dielectric.

[177] When I conduct the same test on Dr. Singer's regression, there are no positive and statistically significant overcharges for the majority of the class period for different sub-types of aluminum capacitors. The test shows positive and statistically significant overcharges only in some months in 2013 for aluminum 04 type, only in some months in 2012 and 2013 for aluminum screw and aluminum snap in can capacitors, and only in some months in 2002 and 2013 for aluminum chip capacitors. Further, it shows no positive and statistically significant overcharges for aluminum polymer capacitors. In fact, the estimated overcharges are negative and statistically significant in the majority of the class period for all aluminum sub-types.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**EXHIBIT 17**
**ESTIMATED OVERCHARGES FOR ALUMINUM CAPACITORS**
**USING DR. MCCLAVE'S REGRESSION**
**ALLOWING HIS OVERCHARGE TO BE "FLEXIBLE" OVER TIME**
**JANUARY 2002 – DECEMBER 2013**



Source: Dr. McClave's turnover.

85. Similarly, as shown in **Exhibit 18**, when I allow for the possibility that the effects of the alleged conduct varied over time for tantalum capacitors in the same manner that Dr. McClave allows his time trend to be flexible (leaving his model otherwise unchanged), the majority of the class period shows *negative* and statistically significant overcharges. Dr. McClave's model shows positive and statistically significant overcharges only in some months in 2002. I observe similar results for Dr. Singer.[178]

---

[178] When I conduct the same test on Dr. Singer's regression, there are no positive and statistically significant overcharges for the majority of the class period for different sub-types of tantalum capacitors. The test shows positive and statistically significant overcharges only in some months in 2002 and 2003 for tantalum polymer capacitors, and only in some months in 2002 for tantalum standard capacitors. Further, the test shows no positive

65

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**EXHIBIT 18**
**ESTIMATED OVERCHARGES FOR TANTALUM CAPACITORS**
**USING DR. MCCLAVE'S REGRESSION**
**ALLOWING HIS OVERCHARGE TO BE "FLEXIBLE" OVER TIME**
**JANUARY 2002 – DECEMBER 2013**



Source: Dr. McClave's turnover.

86. Finally, as shown in **Exhibit 19**, when I allow for the possibility that the effects of the alleged conduct varied over time for film capacitors in the same manner that Dr. McClave allows his time trend to be flexible (leaving his model otherwise unchanged), the majority of the class period shows *negative* and statistically significant overcharges. Dr. McClave's model shows

---

and statistically significant overcharges for tantalum wet capacitors. In fact, the estimated overcharges are negative and statistically significant in the majority of the class period for all tantalum sub-types.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

positive and statistically significant overcharges only in some months in 2013. I observe similar results for Dr. Singer.[179]



**EXHIBIT 19**
**ESTIMATED OVERCHARGES FOR FILM CAPACITORS**
**USING DR. MCCLAVE'S REGRESSION**
**ALLOWING HIS OVERCHARGE TO BE "FLEXIBLE" OVER TIME**
**JANUARY 2002 – DECEMBER 2013**

Source: Dr. McClave's turnover.

87. Thus, the results of my testing reject Dr. McClave's and Dr. Singer's restrictive assumption that the alleged conduct had the same or uniform effect over time for a given dielectric (or sub-type). The testing shows that when their estimated overcharges are allowed to

---

[179] When I conduct the same test on Dr. Singer's regression, there are no positive and statistically significant overcharges for the majority of the class period for film capacitors. The test shows positive and statistically significant overcharges only in some months in 2013. The estimated overcharges are negative and statistically significant for the first ten years.

67

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

be "flexible" over time, their models yield *negative* and statistically significant overcharges for most of the class period. This demonstrates that their approach is incapable of disentangling conspiratorial and non-conspiratorial price effects during the class period. Accordingly, their estimated overcharges are not causally linked to the alleged conduct, but a byproduct of the restrictive assumption they imposed on the pricing data.

88.     To the extent Dr. McClave and Dr. Singer attempt to dismiss this critical issue by claiming that the testing is problematic, they are incorrect. Once the requisite statistical testing has rejected pooling of sales over time to estimate a single average overcharge for a given dielectric (or sub-type), there is no valid basis to do so. Moreover, Dr. McClave's stated concern about multicollinearity is misplaced.[180] As stated in the Reference Manual on Scientific Evidence, multicollinearity arises when the correlation of two or more explanatory variables leads to difficulty in "distinguish[ing] among competing explanations for the movement in the outcome variable."[181] The Reference Manual, however, also explains that "[f]ortunately, the reported regression statistics take into account any multicollinearity that might be present."[182] In fact, according to the ABA publication on the application of econometrics to antitrust issues, "[t]he practical implication of substantial multicollinearity is that standard errors tend to be large relative to the parameter estimates. As a result, a variable may be statistically insignificant in the sense that the researcher cannot reject a hypothesis that a coefficient on that variable is equal to zero."[183] This, however, is not the case here. The coefficients are precisely estimated and highly

---

[180] McClave Report, p. 13. Dr. McClave states that "while division of the Class Period into sub-periods can introduce a statistical problem, using only two relatively long time periods is less likely to cause the problem than including three or more shorter sub-periods." He further claims that "the potential problem is multicollinearity, where the sub-periods become correlated with other variables in the model, particularly the time variables, and can result in unreliable estimates of the sub-period overcharges." In Dr. McClave's and Dr. Singer's own regressions, however, their time variables are highly correlated. The correlation coefficient of their linear time variable and quadratic time variable is 0.97 (where a correlation coefficient of 1 indicates a perfect positive correlation).

[181] Federal Judicial Center, *Reference Manual on Scientific Evidence* 432 (3d ed. 2011) ("Reference Manual on Scientific Evidence"), p. 324.

[182] Reference Manual on Scientific Evidence, p. 324.

[183] ABA Section of Antitrust Law, Econometrics, Second Edition, 2014, p. 105. "If multicollinearity is less than perfect…the regression coefficients, although determinate, possess large standard errors (in relation to the coefficients themselves), which means that the coefficients cannot be estimated with great precision or accuracy." *See* Damodar N. Gujarati, Basic Econometrics, Fourth Edition, 2003 ("Gujarati 4th Edition"), p. 344. In fact, a leading econometrics textbook states: "In one situation, however, multicollinearity may not pose a serious

statistically significant. Accordingly, Dr. McClave has no reliable basis to claim that multicollinearity is a concern.[184] In fact, in doing so, he makes one of the "several technical mistakes frequently made by practitioners that can be easily avoided [*i.e.*,] believing that multicollinearity creates bias, or invalidates inference. No bias is created by multicollinearity."[185]

89. These findings are crucial for a number of reasons. Even taking his regression models at face value, it is not possible to reconcile Dr. McClave's overall conclusions related to the effects of the alleged conduct with the finding that his own regression (altered only to allow for the possibility of different overcharges over time) shows *negative* statistically significant overcharges for each dielectric for most of the class period. The results show that his approach is incapable of disentangling conspiratorial and non-conspiratorial price effects during the class period. Thus, his methodology is unreliable and incapable of showing economic injury to direct purchasers resulting from the alleged conduct.

### 2. Dr. McClave's and Dr. Singer's Inappropriate Choices with Respect to Their Treatment of Supply and Demand Factors Result in Their Finding of Overcharges

90. I analyze Dr. McClave's methodology by examining the influence of his supply and demand variables on the estimated overcharges that his regression estimates and find that his estimated overcharges for aluminum and film capacitors are driven solely by his quadratic time

---

problem. This is the case when $R^2$ is high and the regression coefficients are individually significant as revealed by the high t values." *See* Gujarati, 4th edition, p. 370.

[184] In Dr. McClave's reply report during the class certification phase, he conflates the precision of an estimator (measured by the standard error) with the bias of an estimator (measured as the difference between the coefficient and its true value) and makes the incorrect claim that the "inclusion of both the time variables and … yearly indicators results in unreliable estimates of the coefficients of [the] yearly indicators." Multicollinearity does not cause biased coefficients. In other words, multicollinearity itself does not lead to incorrect coefficients. The potential consequence of multicollinearity is large standard errors which could result in a lack of statistical significance of an estimate. When coefficients are statistically significant, Dr. McClave has no reliable basis to claim that "because of multicollinearity, [the] interpretation of the yearly indicator coefficients as a measure of annual overcharges is unreliable and misleading." *See* Rebuttal Expert Report of James T. McClave, Ph.D., April 28, 2017, p. 15.

[185] Kennedy, P. A Guide to Econometrics. 5th ed. 2003, p. 402. "Beginning students of methodology occasionally worry that their independent variables are correlated – the so-called multicollinearity problem. But multicollinearity violates no regression assumptions. Unbiased, consistent estimates will occur, and their standard errors will be correctly estimated. The only effect of multicollinearity is to make it hard to get coefficient estimates with small standard error." *See* Gujarati 4th Edition, citing Christopher Achen, p. 348.