Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Christopher K.L. Young (State Bar No. 318371)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            swilliams@saverilawfirm.com
            cyoung@saverilawfirm.com

*Lead Counsel for the Direct Purchaser Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: THE DIRECT PURCHASER CLASS ACTION | Master File No.  3:17-md-02801-JD<br>Civil Action No. 3:14-cv-03264-JD<br><br>**DIRECT PURCHASER CLASS'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS MATSUO ELECTRIC CO., LTD., NIPPON CHEMI-CON CORP. AND UNITED CHEMI-CON, INC.**<br><br>Date:        May 5, 2022<br>Time:        10:00 a.m.<br>Courtroom:   11, 19th Floor |

Master File No. 3:17-md-02801-JD
Case No. 3:14-cv-03264-JD

DIRECT PURCHASER CLASS'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANTS MATSUO ELECTRIC CO., LTD., NIPPON CHEMI-CON CORP., AND UNITED CHEMI-CON, INC.

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that at 10:00 a.m. on May 5, 2022, at the United States District Court

4

for the Northern District of California located at 450 Golden Gate Avenue, San Francisco, CA 94102, or

5

as soon thereafter as the matter may be heard, the Direct Purchaser Class (the "Class") will and hereby

6

does move the Court for an order granting preliminary approval of the Class's class action settlements

7

with Defendants Matsuo Electric Co., Ltd., Nippon Chemi-Con Corp. and United Chemi-Con, Inc. in

8

partial settlement of this class action lawsuit.

9

The Class's motion is based on this Notice of Motion, the accompanying Memorandum of

10

Points and Authorities, the Declaration of Joseph R. Saveri and the exhibits attached thereto, the

11

Declaration of Kendall S. Zylstra and the exhibits attached thereto, the Declaration of Eugene

12

Krzywinski, the Declaration of Barry Reed Lubman, the Declaration of Shawn Ryan, the Declaration of

13

John Walker, the Court's files and records in this matter, oral argument of counsel, and such other and

14

further matters as the Court may consider.

15

16

Dated: March 31, 2022

Respectfully Submitted,

17

JOSEPH SAVERI LAW FIRM, LLP

18

By:    _/s/ Joseph R. Saveri_

19

Joseph R. Saveri

20

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)

21

Christopher K.L. Young (State Bar No. 318371)
JOSEPH SAVERI LAW FIRM, LLP

22

601 California Street, Suite 1000
San Francisco, California 94108

23

Telephone: (415) 500-6800
Facsimile: (415) 395-9940

24

Email:  jsaveri@saverilawfirm.com

25

swilliams@saverilawfirm.com
cyoung@saverilawfirm.com

26

27

*Lead Counsel for the Direct Purchaser Class*

28

# TABLE OF CONTENTS

Pages

I.  INTRODUCTION ................................................................................................. 1

II.  CASE HISTORY ................................................................................................ 2

    A.  The Class's Factual Allegations and Claims ................................................. 2

    B.  Procedural History and Discovery ................................................................ 2

    C.  Prior Settlement History .............................................................................. 3

III.  SUMMARY OF PROPOSED SETTLEMENT ................................................. 4

    A.  Settlement Consideration—$165 Million .................................................... 4

        1.  The Settlements Are in the Best Interests of the Class ...................... 4

        2.  Matsuo's Settlement Consideration .................................................. 4

        3.  Chemi-Con's Settlement Consideration ............................................ 5

    B.  The Class ...................................................................................................... 5

    C.  Release of Claims ........................................................................................ 6

    D.  Attorneys' Fees and Expenses ..................................................................... 6

    E.  Class Representative Service Awards ........................................................... 8

IV.  THE PROPOSED SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED ............. 9

    A.  Standards for Preliminary Approval of a Proposed Settlement ........................................ 9

    B.  The Proposed Settlements Are Procedurally Sound and Presumptively Fair ................. 10

    C.  The Proposed Settlements Are Within the Range of Reasonableness ........................... 10

V.  THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED ........................... 12

    A.  Summary of Notice Plan ............................................................................. 12

        1.  Notice and Claims Administrator ..................................................... 12

        2.  Settlement Website .......................................................................... 13

        3.  Direct Mail Notice—Long Form Notice .......................................... 13

        4.  Publication of Notice ....................................................................... 14

    B.  The Notice Forms and Dissemination Plan Meet All Requirements ............................ 14

DIRECT PURCHASER CLASS'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANTS MATSUO ELECTRIC CO., LTD., NIPPON CHEMI-CON CORP., AND UNITED CHEMI-CON, INC.

VI.     DISTRIBUTION AND USE OF SETTLEMENT FUNDS ...................................................14

        A.      Distribution of Funds to Class Members ............................................................14

        B.      Payment of Claims Administration Expenses.....................................................15

VII.    THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED ......................................15

VIII.   CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ................................................................................................................. 10

*Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998 (E.D. Cal. 2019) ......................................... 7, 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 4:07-cv-05944-JST (N.D. Cal. June 8, 2017), ECF No. 5168 .............................................................................................................. 15

*In re Cipro Cases I and II*, J.C.C.P. Nos. 4154, 4220 (San Diego County Super. Ct.) ................... 13

*In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152 (N.D. Cal. 2001) ...................................... 14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................................ 10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, slip. op. (N.D. Cal. Nov. 1, 2006) .............................................................................................. 10

*In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617 (N.D. Cal. 2021) ........................... 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................ 10

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................................................................................................... 7, 10

*In re High-Tech Emps. Antitrust Litig.*, No. 11-cv-02509, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ............................................................................................................... 10

*In re High-Tech Emps. Antitrust Litig.*, No. 11-cv-02509, 2015 WL 12991307 (N.D. Cal. Mar. 3, 2015) ................................................................................................................ 10

*In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sep. 20, 2018) .................................................................................................................. 7

*Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ & C-97-0457 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ......................................... 12

*Low v. Trump Univ., LLC*, No. 10-cv-00940-GPC-WVG, 2016 WL 7387292 (S.D. Cal. Dec. 20, 2016) ................................................................................................................ 12

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .................................................. 11

**DIRECT PURCHASER CLASS'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS MATSUO ELECTRIC CO., LTD., NIPPON CHEMI-CON CORP., AND UNITED CHEMI-CON, INC.**

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651 (9th Cir. 2019) ...................................................................................... 7

*Norcia v. Samsung Telecomms. Am., LLC*, No. 14-cv-00582-JD, 2021 WL 3053018 (N.D. Cal. July 20, 2021) ................................................................................................... 8

*Officers for Justice v. Civ. Serv. Comm'n of City & Cty. Of San Francisco*, 688 F.2d 615 ...........12, 14

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ...................................... 8, 9

*In re Packaged Seafood Prods. Antitrust Litig.*, Case No. 3:15-md-002670-DMS-MDD, 2022 WL 228823 (S.D. Cal. Jan. 26, 2022) .............................................................11

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................................................... 7, 8

*In re Transpac. Passenger Air Transp. Antitrust Litig.*, No. 3:07-cv-05634-CRB, 2019 WL 6327363 (N.D. Cal. Nov. 26, 2019) ...................................................................... 7

*In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156 (D. Kan. July 29, 2016) ............................................................................................................... 7

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ....................................................... 7

**Court Rules**

Federal Rules of Civil Procedure Rule 23(c) .............................................................12, 14

Federal Rules of Civil Procedure Rule 23(e) ......................................................... 1, 4, 9, 12

**Other Authorities**

M. Waxman, *Enforcing American Private Antitrust Decisions in Japan: Is Comity Real?* 44 DEPAUL L. REV. 1119 (1995) .................................................................................. 4

4 William B. Rubenstein, Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 13:39 (5th ed. 2014) ............................................................................................. 9

Master File No. 3:17-md-02801-JD
Case No. 3:14-cv-03264-JD                              v

**DIRECT PURCHASER CLASS'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS MATSUO ELECTRIC CO., LTD., NIPPON CHEMI-CON CORP., AND UNITED CHEMI-CON, INC.**

## I.   INTRODUCTION

The Direct Purchaser Class (the "Class") submits this memorandum in support of their motion for preliminary approval of the proposed settlement agreements (the "Settlement Agreements") between the Class and Defendants Matsuo Electric Co., Ltd. ("Matsuo"), Nippon Chemi-Con Corp. ("NCC"), and United Chemi-Con, Inc. ("UCC"; NCC and UCC together "Chemi-Con"; Matsuo and Chemi-Con collectively, the "Settling Defendants"). The Class proposes using the same notice procedures and allocation plan that the Court approved in connection with the first four rounds of settlements, including the right to opt out from some or all of the proposed settlements.

The Settlement Agreements create a non-contingent, all-cash fund of $165 million USD ($165,000,000), and any interest earned on that amount (the "Settlement Fund"). The settlement amounts are as follows: (1) Matsuo, $5,000,000; (2) Chemi-Con, $160,000,000.[1] The parties reached these agreements through arm's-length negotiations between experienced and informed counsel after almost eight years of litigation in the midst of trial. An enormous amount of discovery had been completed, and the parties were near the completion of the second jury trial of this matter. The settlements represent an excellent recovery for the Class and are well within the range of possible recoveries warranting preliminary approval. Cumulatively, settlements in this case total $604,550,000, a recovery of 141.4% of the Class's single damages as calculated by the Class's expert.

The Class respectfully requests, pursuant to Rule 23 and the Procedural Guidance for Class Action Settlements for the Northern District of California, that the Court: (1) grant preliminary approval of the Settlement Agreements; (2) approve the proposed plan of notice to the Class; (3) set a schedule for disseminating notice to Class Members, as well as deadlines to comment on, opt-out, or object to the Settlement Agreements; and (4) schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlement Agreements are fair,

---

[1] In accordance with the Court's December 15, 2021 Order, MDL ECF No. 1651, NCC and UCC's sales in U.S. dollars to the Class during the class period are attached hereto the Declaration of Joseph R. Saveri ("Saveri Decl.") as Exhibit C; NCC and UCC's annual profits during the class period are attached hereto as Exhibit D; and the settlement amounts paid by all settling defendants to date from highest to lowest amounts are set forth as Exhibit E.

reasonable, and adequate, and should be finally approved. The proposed schedule is summarized in Attachment A.

## II.    CASE HISTORY

### A.    The Class's Factual Allegations and Claims

The Defendants in this action are 22 different corporate families that manufactured and sold capacitors in the United States and around the world. The Class alleges that at least as early as January 1, 2002, Defendants entered into a price-fixing conspiracy with the purpose and effect of fixing, raising, and stabilizing the prices of their aluminum, tantalum, and film capacitors sold to United States purchasers. *See* Saveri Decl., ¶ 3.

### B.    Procedural History and Discovery

With these Settlements, the Class will have brought this case to a successful resolution against all Defendants that have responded to the complaint.[2] The case began when Plaintiff Chip-Tech, Ltd. filed the capacitors price-fixing complaint in July 2014. ECF No.[3] 1; *see also* Saveri Decl., ¶ 4. The Class's Third Amended Complaint, filed on September 6, 2017, is the operative pleading. ECF No. 1831; Saveri Decl., ¶ 4. On November 14, 2018, the Court certified the Direct Purchaser Class. ECF No. 2231.

The case has been tried[4] and the Court is substantially familiar with the merits of the case. In the four prior rounds of settlements that the Court has approved, *e.g.*, ECF No. 1713; MDL ECF No. 249, MDL ECF No. 1422, counsel for the Class ("Lead Class Counsel") set forth its and the class

---

[2] Defendants Toshin Kogyo, LTD, and Nissei Electric Ltd. were properly served but failed to appear to defend themselves. The Court has entered default judgment against Toshin Kogyo, MDL ECF No. 116, and Lead Class Counsel intends to request the Court enter default judgment against Nissei forthwith.

[3] "ECF No. ___" citations to entries in Case No. 3:14-cv-03264.

[4] Indeed, the case has been tried twice. The first trial occurred in March 2020 before it was interrupted by the COVID-19 pandemic and mistrial was declared. Saveri Decl., ¶ 4. The case was tried a second time beginning in November 2021.

representatives' efforts in prosecuting this action.[5] MDL ECF No. 172, at 3-5. After three weeks of trial., the Class has settled with the remaining defendants with total settlement amounts significantly exceeding single damages as calculated by the Class's experts. Saveri Decl., ¶¶ 4, 22.

## C.    Prior Settlement History

On June 27, 2017, the Court granted final approval of the Class's first round of settlements with the NEC Tokin, Fujitsu, Nitsuko, Okaya, and ROHM defendants totaling $32.6 million. ECF No. 1713. On June 28, 2018, the Court granted final approval of the Class's second round of settlements with the Hitachi Chemical and Soshin defendants totaling $66.9 million. ECF No. 2166. On May 16, 2019, the Court granted final approval of the Class's third round of settlements with the Nichicon and Rubycon defendants totaling $108 million plus up to an additional $12 million in contingent payments based on Rubycon's financial results through fiscal year 2019. MDL ECF No. 587 at 11. On November 6, 2020, the Court granted final approval of the Class's fourth round of settlements with the AVX, ELNA, Holy Stone, KEMET, Panasonic, Shinyei, Shizuki and Taitsu defendants totaling $232.05 million. MDL ECF No. 1422. These settlements demonstrate that Lead Class Counsel and the named class representatives have diligently and successfully represented the Class.

A summary of the distributions made for the first two rounds of settlements—including information concerning the total settlement funds, the total number of Class Members, the total number of notices directly mailed, the number and percentage of claim forms submitted, the average recovery per Class Member, the administrative costs, and the attorneys' fees and costs—is set forth in Attachment B. Lead Class Counsel estimates that the number and percentage of Class Members that will participate in this round of settlements are likely to be similar to those in the prior settlements.

---

[5] These substantial efforts have included extensive discovery, analyzing 39 million Bates-numbered pages (mostly in Japanese) from over 100 document custodians, deposing over 90 individuals, and trying the case in March 2020 before trial was interrupted by the COVID-19 pandemic. *Id*. Since the time the Court granted final approval as to the fourth round of settlements, MDL ECF No. 1068, the Class has diligently prepared the case for trial, engaged in mediation with the Matsuo and Chemi-Con defendants, and engaged in three weeks of trial advocacy at the second trial. *See* Saveri Decl., ¶¶ 16-17.

## III.    SUMMARY OF PROPOSED SETTLEMENT

### A.    Settlement Consideration—$165 Million

Pursuant to their Settlement Agreements[6] described below, the Settling Defendants will make, or have already made, payments into an escrow account (the "Settlement Fund"), held and administered by an escrow agent. Saveri Decl., Ex. A at ¶ 17; *id.*, Ex. B at ¶ 17. Lead Class Counsel recommends the appointment of Citibank, N.A. as the escrow agent.

#### 1.    The Settlements Are in the Best Interests of the Class

The settlements between the Class and Matsuo and the Class and Chemi-Con benefit the Class and function in tandem. Based on Matsuo's financial condition, Lead Class Counsel determined the best course of action would be to first settle with Matsuo in order to bring Chemi-Con to the negotiating table to attempt to get the most favorable settlement possible for the class.[7] Saveri Decl., ¶ 20. This included analysis of the financial condition of Matsuo and Chemi-Con respectively, including the retention of forensic accountants and pursuing targeted inquiries through the mediator and as part of the settlement process. *See id.*, ¶ 16. The Class made a number of differing proposals to structure the schedule of payments consistent with Matsuo's financial condition. *See id.*, ¶¶ 16-19. This course of action worked. *Id.*, ¶ 20. The settlement with Matsuo paved the way for the settlement with Chemi-Con because Chemi-Con was the only remaining Defendant, thus ensuring the best recovery for the Class. *Id.* Now both parties have settled in part due to the Lead Class Counsels' decision to settle first with Matsuo.

#### 2.    Matsuo's Settlement Consideration

The Class and Matsuo executed an agreement effective March 16, 2022. Saveri Decl., ¶ 23; *id.*, Ex. A. The Class agreed to release its claims against Matsuo in exchange for a sum total of $5,000,000

---

[6] Other than the Settlement Agreements attached to the Saveri Declaration, there are no other agreements relating to the settlement that are required to be identified under Fed. R. Civ. P. 23(e)(3).

[7] Additionally, Lead Class Counsel determined settlement with Matsuo would benefit the Class due to Matsuo's lack of U.S. assets and in light of the uncertainty of enforcing a treble-damages award in Japan under Japanese law. Saveri Decl., ¶ 20; *see generally* M. Waxman, *Enforcing American Private Antitrust Decisions in Japan: Is Comity Real?* 44 DEPAUL L. REV. 1119 (1995) (discussing comity concerns and other impediments to enforcement of treble damage judgments rendered in United States courts).

USD in five equal payments: $1,000,000 payable within 30 days of the execution of the Settlement Agreement; $1,000,000 payable within twelve (12) months of the execution of the Settlement Agreement; $1,000,000 payable within twenty-four (24) months of the execution of the Settlement Agreement; $1,000,000 payable within thirty-six (36) months of the execution of the Settlement Agreement; and $1,000,000 payable within forty-eight (48) months of the execution of the Settlement Agreement. Saveri Decl., Ex. A, ¶ 17. In light of the trial, Matsuo has no further cooperation obligations under its settlement agreement.[8]

### 3.    Chemi-Con's Settlement Consideration

The Class and Chemi-Con executed an agreement effective March 16, 2022. Saveri Decl., ¶ 24; *id.*, Ex. B. The Class agreed to release its claims against the Chemi-Con defendants in exchange for a sum total of $160,000,000 USD in two payments: $100,000,000 in cash payable by June 15, 2022, and $60,000,000 payable by December 14, 2022. Saveri Decl., Ex. B, ¶ 17. In light of the settlement amount, the extensive discovery from Chemi-Con, and the stage of the case, Chemi-Con has no cooperation obligations under its settlement agreement.

Accounting for mandatory trebling and offsets with the prior settlements, the $165,000,000 settlement with the Settling Defendants represents the equivalent of a jury verdict in the amount of $201,516,666.67. Saveri Decl., ¶ 22. This does not account for the delay and uncertainty of likely appeals after a successful verdict if the Class recovered through a jury verdict as opposed to settlement. *See id.* The Settling Defendants were represented by some of the best defense attorneys in the nation, and the settlement reached with the Settling Defendants provides more than adequate recovery for the Class while ensuring recovery is not delayed or diluted through further proceedings. *Id.*

### B.    The Class

On February 28, 2019, the Court entered an Order Granting the Class's Motion for Approval of Plan for Notice of Pendency of Class Action, ECF No. 2282, certifying and defining the Class as follows:

---

[8] As additional settlement consideration, Matsuo made Satoshi Okubo available to testify at trial on December 2, 2021. Saveri Decl., Ex. A, ¶ 21.

> All persons (including individuals, companies, or other entities) that purchased Capacitors (including through controlled subsidiaries, agents, affiliates, or joint ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates, or joint ventures from January 1, 2002 to December 31, 2013 (the "Class Period"), and such persons are: (a) inside the United States and were billed or invoiced for capacitors by one or more Defendants during the Class Period (*i.e.*, where capacitors were "billed to" persons within the United States); or (b) outside the United States and were billed or invoiced for capacitors by one or more Defendants during the Class Period, where such capacitors were imported into the United States by one or more Defendants (*i.e.*, where the capacitors were "billed to" persons outside the United States but "shipped to" persons within the United States).
>
> Excluded from the Class are: (1) Defendants (and their subsidiaries, agents, and affiliates); (2) shareholders holding more than 10% equity interest in Defendants; (3) each member of the Class that timely requests exclusion by "opting out"; (4) governmental entities; and (5) the judges and chambers staff in this case, including their immediate families.

*Id.* The Settlement Agreements use the same class definition. Saveri Decl., Ex. A at 3-4, ¶ f; *id.*, Ex. B at 4, ¶ f.

### C.   Release of Claims

In exchange for the valuable consideration being provided by the Settling Defendants, the Class will release the Settling Defendants from all claims related to any of the alleged conduct giving rise to this litigation concerning the direct purchase of Capacitors in the United States or for delivery in the United States. Saveri Decl., Ex. A, ¶ 11; *id.*, Ex. B, ¶ 11. The releases in the Settlement Agreements match the scope of the claims included in the Class definition. *Id.* In sum total, the Class's settlements with defendants significantly exceed single damages as calculated by the Class's experts. Saveri Decl., ¶ 22; MDL ECF No. 1068-1, ¶ 17.

### D.   Attorneys' Fees and Expenses

The Settlement Agreements provide that Lead Class Counsel may seek attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this litigation. Saveri Decl., Ex. A, ¶ 27; *id.*, Ex. B, ¶ 26. Lead Class Counsel intends to file a motion seeking $66,000,000 (40% of the Settlement Fund) for legal fees consistent with the Ninth Circuit's permitted awards for fees calculated

using the "percentage-of-the-fund" approach. *See In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019). On a cumulative basis, the total amount of attorneys' fees—the requested $66,000,000 added to the fee awards for the First, Second, Third and Fourth Round Settlements—is $187,490,000. *See* Saveri Decl., ¶ 35. This represents attorneys' fees of approximately 31.01% of the common fund which Class Counsel has recovered for the benefit of the Class in this case. *See, e.g., In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695, at *1-2 (N.D. Cal. Sep. 20, 2018) (approving 33% fee award in end-payor class action settlement recovering 46% of single damages estimate); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1020 (E.D. Cal. 2019) (33% fee award approved where settlement recovered 48% of experts' estimate damages); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (36% recovery justified one-third fee award and collecting cases); *see also, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964-965 (9th Cir. 2009) (antitrust settlement for 30% of estimated damages "fair and reasonable no matter how you slice it"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *In re Transpac. Passenger Air Transp. Antitrust Litig.*, No. 3:07-cv-05634-CRB, 2019 WL 6327363, at *6 (N.D. Cal. Nov. 26, 2019); *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156, at *4 (D. Kan. July 29, 2016) ("This enormous success in a highly contingent case favors an award of a substantial percentage of the . . . settlement fund to the counsel who achieved that success for the class members"). In addition to financial consideration, the Class has also benefitted from the cooperation that Lead Class Counsel secured from previously settling defendants.

Lead Class Counsel intends to submit in its motion for attorneys' fees all counsels' lodestar to date. Saveri Decl., ¶ 36. Lead Class Counsel also intends to request an amount not to exceed $4,000,000 (approximately 2.42% of the of the Settlement Fund) to reimburse incurred litigation costs and expenses.[9] *Id.*, ¶ 37.

---

[9] Lead Class Counsel proposes referring their fee and cost application connected with this Fifth Round of Settlements to Special Master Ip in the first instance, a procedure endorsed by the Court when the Court previously heard the Class's motion for preliminary approval of prior rounds of Settlements. *E.g.*, MDL ECF No. 1101.

Master File No. 3:17-md-02801-JD
Case No. 3:14-cv-03264-JD                                          7

DIRECT PURCHASER CLASS'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANTS MATSUO ELECTRIC CO., LTD., NIPPON CHEMI-CON CORP., AND UNITED CHEMI-CON, INC.

### E.      Class Representative Service Awards

Consistent with the Northern District of California's Procedural Guidance for Class Action Settlements, Lead Class Counsel intends to submit in its motion for attorneys' fees a request for service awards for the named class representatives in this case. Saveri Decl., ¶ 38. In particular, Class Counsel intends to seek service awards for the four named class representatives: $100,000 for Plaintiff Chip-Tech Ltd. ("Chip-Tech"); $100,000 for Plaintiff eIQ Energy, Inc. ("eIQ"); $75,000 for Plaintiff Dependable Component Supply Corp.; and $50,000 for Plaintiff Walker Component Group, Inc. Service awards are "fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958. Service awards are particularly appropriate when the litigation is "complicated" and "took up quite a bit of the class representatives' time." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015); *accord In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633-34 (N.D. Cal. 2021).

Each of the named Plaintiffs produced thousands of documents during the course of this litigation, were subject to multiple depositions, and devoted dozens to hundreds of hours in assisting Class Counsel in this case. *See* Krzywinski Decl., ¶¶ 3-10; Lubman Decl., ¶¶ 2, 5-15; Ryan Decl., ¶¶ 3-8; Walker Decl., ¶¶ 4-7. Plaintiffs Chip-Tech and eIQ in particular devoted significant time and effort on behalf of the Class as Barry Lubman of Chip-Tech and Gene Krzywinski of eIQ, in addition to providing significant discovery in this case, twice presented testimony before a jury, including testimony during the prior trial that was interrupted by the onset of the COVID-19 pandemic. Krzywinski Decl., ¶ 8; Lubman Decl., ¶¶ 11-14. "[T]he Court knows firsthand from seeing plaintiff[s] [Lubman and Krzywinski] on the witness stand during the . . . trial[s] that [they] ha[ve] put time and effort into this case, likely more than is asked of the usual named class action representative." *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-cv-00582-JD, 2021 WL 3053018, at *5 (N.D. Cal. July 20, 2021).

The requested total service awards are well within the fair and reasonable awards approved by courts in this circuit. Saveri Decl., ¶ 39. The average recovery unnamed class members received for the first four rounds of settlement is $630,521.82—significantly above the requested aggregate total of service awards Class Counsel intends to seek. That is before accounting for the distribution of the pending settlements with Matsuo and Chemi-Con. *See Online DVD-Rental*, 779 F.3d at 947. Further, the

requested service awards cumulatively make up a mere 0.06% of the total settlement fund of $604,550,000, which is fair and reasonable in light of the significant benefit to the Class resulting from Plaintiffs' efforts. *See*, *e.g.*, *id.* at 948 (approving service awards of $45,000 totaling 0.17% of the total settlement fund of $27,250,000); *see also* Saveri Decl., ¶ 39.

Consistent with the Northern District of California's Procedural Guidelines for Class Action Settlement, Lead Class Counsel intends to submit evidence of the named class representatives' involvement in the case and other justifications for the requested service awards. *See*, *e.g.*, Krzywinski Decl., ¶¶ 3-10; Lubman Decl., ¶¶ 2, 5-15; Ryan Decl., ¶¶ 3-8; Walker Decl., ¶¶ 4-7.

## IV.     THE PROPOSED SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED

The Class proposes following the same procedures for distributing settlement funds using the same allocation formula that the Court preliminarily and finally approved for past rounds of settlements. ECF Nos. 2244, 1713; MDL ECF Nos. 249, 1422. The consideration for the Settlement Agreements is at least as favorable as with the prior rounds. The factors to be considered under the Procedural Guidelines for Class Action Settlements for the Northern District of California also support approval. The Court therefore should preliminarily approve the settlements with the Settling Defendants.

### A.     Standards for Preliminary Approval of a Proposed Settlement

A class action may be dismissed or settled only with the approval of the Court. *See* Fed. R. Civ. P. 23(e)(1). The Rule 23(e) settlement approval procedure where a class has been certified can be broken into three principal steps: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected Class Members; and (3) a final approval determination following a fairness hearing at which Class Members may be heard regarding the settlement, and at which counsel may introduce evidence and present arguments concerning the fairness, adequacy, and reasonableness of the settlement. *See* 4 William B. Rubenstein, Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 13:39 *et seq.* (5th ed. 2014).

The Court will determine whether the proposed settlement is "fair, adequate, and reasonable" at the final approval stage—i.e., after notice is disseminated and a fairness hearing is held.[10] At this preliminary approval stage, the Court need only make "an 'initial evaluation' of the fairness of the proposed settlement . . . ." *In re High-Tech Emps. Antitrust Litig.*, No. 11-cv-02509, 2015 WL 12991307, at *1 (N.D. Cal. Mar. 3, 2015). To grant preliminary approval, the Court should determine if the proposed settlement substantively falls "within 'the range of reasonableness.'" *Id.*

### B.   The Proposed Settlements Are Procedurally Sound and Presumptively Fair

The proposed Settlement Agreements are the product of arm's-length negotiations between attorneys who are highly experienced in complex antitrust cases and well informed about the facts and legal issues of this case. *See* Saveri Decl., ¶¶ 16-22. As here, post-certification settlement agreements reached during trial after meaningful discovery and through arms-length negotiations conducted by capable counsel are presumptively fair. *See In re Heritage Bond Litig.,* No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005). Lead Class Counsel's substantial advancement of the litigation to date and familiarity with the evidence further indicate that the Settlement Agreements are fair and reasonable. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### C.   The Proposed Settlements Are Within the Range of Reasonableness

The Settlement Agreements, which provide for significant cash payments, afford important relief to Class Members and the consideration offered by the Settling Defendants is within the range of reasonableness. Damages in a price-fixing antitrust conspiracy case generally are based on the amount of the overcharge resulting from anticompetitive activity, and are usually measured as a percentage of total sales. The percentage recovered from the Settling Defendants is an extraordinary result. It far exceeds the percentage recovered in many other antitrust class action settlements. *See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, slip. op. (N.D. Cal. Nov. 1, 2006); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11,

---

[10] A preview of the fairness standards for final approval weighs heavily in favor of preliminary approval here. *See In re High-Tech Emps. Antitrust Litig.*, No. 11-cv-02509, 2013 WL 6328811, at *6 (N.D. Cal. Oct. 30, 2013). Further, the complexity of class action litigation favors settlement. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). This antitrust class action is no exception.

2004); *see also In re Packaged Seafood Prods. Antitrust Litig.*, Case No. 3:15-md-002670-DMS-MDD, 2022 WL 228823, at *23 (S.D. Cal. Jan. 26, 2022) (finding settlement totaling $20 million "compares favorably to other antitrust and class action settlements") (citing, *inter alia*, *Carlin*, 380 F., Supp. 3d at 1911 ("Courts regularly approve class settlements where class members recover less than one quarter of the maximum potential recovery amount."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding settlement that provided plaintiffs one-sixth of their potential recovery to be fair and adequate)). This is before considering that the total settlement fund recovers approximately 141.4% of single damages as calculated by the Class's expert.

Matsuo agreed to pay a total of $5,000,000 to settle Plaintiffs' claims. Saveri Decl., ¶ 18; *id.*, Ex. A, ¶ 17. This amount is significant given the evidence of Matsuo's participation in the price-fixing conspiracy, Matsuo's low share of total commerce during the Class Period, Matsuo's poor financial condition, and Lead Class Counsel's use of the settlement with Matsuo to assist in obtaining for the class a settlement from Chemi-Con. This strategy assisted in having Chemi-Con agree to pay a total of $160,000,000, the largest settlement among all prior settlements achieved by the Class. Saveri Decl., ¶¶ 20-21; *id.*, Ex. B, ¶ 17.

The settlements with the Settling Defendants provide Class Members with significant cash compensation, avoiding the risk that the jury would side with Defendants, or not award the full damages sought by Plaintiffs, and the delay of an appeal even with a successful trial verdict.[11] The settlements were reached in the midst of trial and on the eve of closing arguments. Given the uncertainty of litigation and that the sum total of all the settlements to date significantly exceed the single damages as calculated by the Class's experts (141.4% of single damages), the cash consideration represents an excellent result.[12]

---

[11] Accounting for mandatory trebling and offsets with the prior settlements, the $165,000,000 settlement represents the equivalent of a jury verdict in the amount of $201,516,666.67. Saveri Decl., ¶ 22. This does not account for the delay and uncertainty of likely appeals after a successful verdict, nor does it account for any efforts to enforce a judgment in Japan.

[12] The settlements are significant for another reason—the question of whether a treble damage award would be enforceable in Japan is unsettled. See *supra* note 7. The settlements avoid the uncertainty and delay of enforcing a treble-damage award in Japan had the Class prevailed at trial.

Also weighing in favor of preliminary approval is Lead Class Counsel's experience and success in similar class actions. Lead Class Counsel have worked on large, complex cases for decades, including antitrust and consumer protection class action cases. Saveri Decl., ¶ 5; *see also id.*, Ex. H. The judgment of experienced counsel regarding a settlement reached after arm's-length negotiations should be given significant weight and a presumption of reasonableness. *See Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ & C-97-0457 DLJ, 1997 WL 450064, at *5-6 (N.D. Cal. July 18, 1997). In addition, the proposed settlements were reached during trial, which further weighs in favor of approval. *See Low v. Trump Univ.*, LLC, No. 10-cv-00940-GPC-WVG, 2016 WL 7387292, at *4 (S.D. Cal. Dec. 20, 2016).

## V.     THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED

Should the Court grant preliminary approval, it must also "direct notice in a reasonable manner to all class members who would be bound by the proposal. . . ." Fed. R. Civ. P. 23(e)(1)(B). Notice should be the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B). Moreover, "the class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civ. Serv. Comm'n of City & Cty. Of San Francisco*, 688 F.2d 615, 624 (citations omitted). The Class plans to implement the same notice and claims administration plan used in the prior rounds of settlements. The notice plan provides the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B).

### A.     Summary of Notice Plan

#### 1.     Notice and Claims Administrator

The Class requests that the Court appoint Rust Consulting ("Rust") as Claims Administrator. Rust has 30 years of class action settlement administration experience and has administered more than 6,500 class action settlements, judgments, and similar administrative programs. Declaration of Kendall S. Zylstra ("Zylstra Decl.") at ¶ 2. Lead Class Counsel has worked with Rust in the past—including on

**DIRECT PURCHASER CLASS'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS MATSUO ELECTRIC CO., LTD., NIPPON CHEMI-CON CORP., AND UNITED CHEMI-CON, INC.**

the prior four rounds of settlements in this action.[13] *Id.*, ¶ 5. Rust is familiar with this case, the transactional database and Class Member contact information.[14] *See id.*, ¶¶ 5-6.

### 2.    Settlement Website

Rust will update the existing Settlement Website,[15] which provides key settlement information such as case status, settlement documents, and FAQs concerning the Settlement Agreements and claims administration. Zylstra Decl., ¶ 17. Rust will also create a public-facing dashboard on the site that displays updates about the administration process, such as the number and value of claims filed. *Id.* A secure section of the Website allows Class Members to file online claims or adjustments. *See id.*

### 3.    Direct Mail Notice—Long Form Notice

The Class proposes sending notices by direct mail to Class Members with valid addresses (a) in the transactional databases Defendants provided to the Class, and (b) in records of past contact with Lead Class Counsel. Zylstra Decl., ¶¶ 7-10; Saveri Decl., ¶¶ 27-32. The Class possesses significant reliable data reflecting Class Members' respective purchases of capacitors during the relevant period. Saveri Decl., ¶ 30. Individual notices with pre-populated purchase data will be mailed directly to Class Members.[16]

The Class proposes mailing the Long Form Notice, Saveri Decl., Ex. F, along with a claim form that contains pre-populated purchase data to Class Members. *See* Zylstra Decl., ¶¶ 8-10, 13-16. The Long Form Notice provides, in plain language, a brief explanation of the case; the terms of the

---

[13] Lead Class Counsel is also familiar with Rust's work based on Rust's work for Lead Class Counsel in another class action, *In re Cipro Cases I and II*, J.C.C.P. Nos. 4154, 4220 (San Diego County Super. Ct.).

[14] Lead Class Counsel believes that it would be inefficient and expensive to switch to a different administrator now that Rust has gained familiarity administering several rounds of settlements in this complex litigation. Saveri Decl., ¶ 26.

[15] The Settlement Website can be accessed at www.CapacitorsAntitrustSettlement.com.

[16] It is unlikely that there are many Class Members who are not identified in Defendants' transactional data. As mentioned in the moving papers for the prior rounds of settlements, Lead Class Counsel pursued discovery about the completeness of transactional data with many Defendants in connection with the FTAIA briefing, and Defendants testified that all transactions in the types of commerce the Court has deemed within the Sherman Act's ambit are recorded in transactional data. *See* Saveri Decl., ¶¶ 30-32.

Settlement Agreements; the maximum amount Lead Class Counsel may seek for reimbursement of costs and expenses; the date, time, and place of the final approval hearing; the opportunity to opt out of the Settlement Class; the procedures for submitting comments on and objections to the Settlement Agreements; and a link to the Settlement Website. Saveri Decl., Ex. F.

### 4. Publication of Notice

To reach the greatest number of unidentified Class Members, Rust will publish the Summary Notice (Saveri Decl., Ex. G) in the national edition of the *Wall Street Journal*. Saveri Decl., ¶ 29. Rust will also post a copy of the Settlement Notice and Settlement Agreements on at least two Internet websites directed towards the capacitors and passive electronics industry.[17] Zylstra Decl., ¶ 12. The Long-Form Notice will also be available on the Settlement Website. *Id.,* ¶ 17.

### B. The Notice Forms and Dissemination Plan Meet All Requirements

The Class's proposed notice plan satisfies the fairness standards set forth in Rule 23. Each form of notice presents all required categories of information clearly and in plain English. *See Officers for Justice*, 688 F.2d at 624. The notices are therefore substantively sufficient. The proposed dissemination plan satisfies due process and thus provides the best practicable notice. *See* Fed. R. Civ. P. 23(c)(2)(B).

## VI.   DISTRIBUTION AND USE OF SETTLEMENT FUNDS

### A. Distribution of Funds to Class Members

Lead Class Counsel recommends following the same procedures effectively used in the prior rounds of settlements. Payments to Class Members will be calculated and distributed after the Court has finally approved the Settlement Agreements and after deductions for costs of notice, settlement administration, attorneys' fees and costs. Zylstra Decl., ¶ 18. Class Member payments will be calculated on a *pro rata* basis. Saveri Decl., ¶ 33; Zylstra Decl., ¶ 18. A plan of allocation must be "fair, reasonable, and adequate." *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). Distribution on a *pro rata* basis, with no class member being favored over others, is fair, adequate, and

---

[17] The electronic components industry is a niche business. Saveri Decl., ¶ 29. Targeting industry media will increase the effectiveness of the notice provided. *Id.*

reasonable. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 4:07-cv-05944-JST (N.D. Cal. June 8, 2017), ECF No. 5168 at *9.

The Class proposes that settlement funds be allocated based on the Class Members' relative share of capacitors purchased during the Class Period. Saveri Decl., ¶ 33. When making distributions of the Settlement Fund to the Class Members that timely submit valid Claim Forms, the Class will calculate the dollar value of each Class Member's claim in proportion to the total claims submitted.[18] *Id*. No settlement funds will be subject to reversions to the Settling Defendants.[19]

## B.   Payment of Claims Administration Expenses

The Class requests authorization to use up to $250,000 from the Settlement Fund to pay Rust to provide notice to Class Members, and to process and audit submitted claim forms. This amount is reasonable and consistent with the administration expenses incurred with respect to prior settlement and administration services.

## VII.   THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The Class requests that the Court grant preliminary approval and set the schedule set forth in Attachment A, which includes a proposed final approval hearing date on or after July 28, 2022.

## VIII.   CONCLUSION

For the above reasons, the Class respectfully requests that the Court grant preliminary approval of the Settlement Agreements, approve the proposed Settlement Notice and dissemination plan, and set a schedule for the notice period and a date for a final approval hearing.

---

[18] Class Members can either accept the pre-populated purchases in their claim forms, or they can seek an adjustment by submitting documentation of additional purchases. Zylstra Decl., ¶ 14.

[19] Based on the amount of uncashed checks for the first round of settlements—currently less than $500—Lead Class Counsel does not anticipate the need for *cy pres* awardees; instead, Lead Class Counsel recommends that any uncashed settlement checks be redistributed to Class Members in subsequent payments. Saveri Decl., ¶ 34.

Dated:  March 31, 2022                    Respectfully Submitted,

                                          JOSEPH SAVERI LAW FIRM, LLP

                                          By:    /s/  Joseph R. Saveri
                                                      Joseph R. Saveri

                                          Joseph R. Saveri (State Bar No. 130064)
                                          Steven N. Williams (State Bar No. 175489)
                                          Christopher K.L. Young (State Bar No. 318371)
                                          JOSEPH SAVERI LAW FIRM, LLP
                                          601 California Street, Suite 1000
                                          San Francisco, California 94108
                                          Telephone: (415) 500-6800
                                          Facsimile:  (415) 395-9940
                                          Email:     jsaveri@saverilawfirm.com
                                                     swilliams@saverilawfirm.com
                                                     cyoung@saverilawfirm.com

                                          *Lead Counsel for the Direct Purchaser Class*

DIRECT PURCHASER CLASS'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANTS MATSUO ELECTRIC CO., LTD., NIPPON CHEMI-CON CORP., AND UNITED CHEMI-CON, INC.

## ATTACHMENT A: Proposed Schedule

| EVENT | SCHEDULE |
|---|---|
| Notice of Class Action Settlement (Saveri Decl., Exs. F & G) to Be Mailed and Posted on Internet | Within 18 days of Preliminary Approval Order (May 23, 2022) |
| Summary Notice of Class Action Settlement to Be Published | Within 18 days of Preliminary Approval Order (May 23, 2022) |
| Motions for Final Approval and Reimbursement of Litigation Costs and Expenses to Be Filed by Lead Class Counsel, together with Affidavit of Compliance with Notice Requirements | 56 days prior to Final Approval Hearing ( June 2, 2022) |
| Deadline for Settlement Class Members to Submit Claims or Request Exclusion | Submitted or postmarked by July 8, 2022 (36 days after Motions for Final Approval and Reimbursement of Litigation Costs and Expenses) |
| Receipt/Filing Deadline for Comments and Objections | 36 days after Motions for Final Approval and Reimbursement of Litigation Costs and Expenses ( July 8, 2022) |
| Opposition(s), if any, to Motions for Final Approval and Reimbursement of Expenses | 36 days after Motions for Final Approval and Reimbursement of Litigation Costs and Expenses ( July 8, 2022) |
| Replies in Support of Motions for Final Approval, and Reimbursement of Expenses, to Be Filed by Lead Class Counsel, only if Objections to the Motions are Filed<br><br>Notice of Intent to Appear by Objectors Must be Filed | 10 days prior to Final Approval Hearing ( July 18, 2022) |
| Service/Filing of Notices of Appearance at Final Approval Hearing | 10 days prior to Final Approval Hearing ( July 18, 2022) |
| Final Approval Hearing | July 28, 2022 |

# ATTACHMENT B: Prior Settlement History

**In re Capacitors Antitrust Litig.,**
Case No. 3:17-md-02801-JD
ROUND 2: Approved June 28, 2018
*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $66,900,000 | 100% |
| **Distribution to Class** | $43,652,604 | 65.3% |
| **Claims** | | |
| Participation rate | 78.5% of commerce | |
| Class members | 3,041 (known) | |
| Notices mailed | 3,041 | |
| Claims submitted | 681 | |
| Approved claims | 425 | |
| Average distribution | $102,712* | |
| **Cy Pres** | $0 | 0.0% |
| **Attorney fees awarded** | $16,725,000 | 25.0% |
| Lodestar | $70,764,474 | |
| Hours | XX,XXX | |
| Multiplier | 0.24 | |
| **Costs and Expenses** | $6,690,000 | 10.0% |
| **Claims Administration** | $158,415 | 0.2% |
| **Publication Costs** | $71,472 | 0.1% |

*Projected number as distributions have not yet been made.

**In re Capacitors Antitrust Litig.,**
Case No. 3:17-md-02801-JD
ROUND 1: Approved June 27, 2017
*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $32,600,000 | 100.0% |
| **Distribution to Class** | $21,287,673* | 65.3% |
| **Claims** | | |
| Participation rate | 66.2% of commerce | |
| Class members | 2,279 (known) | |
| Notices mailed | 2,279 | |
| Claims submitted | 719 | |
| Approved claims | 282 | |
| Average distribution | $47,582* | |
| **Cy Pres** | $0 | 0.0% |
| **Residual (uncashed)** | $447 | |
| **Attorney fees awarded** | $8,150,000 | 25.0% |
| Lodestar | $44,444,689 | |
| Hours | 105,345.8 | |
| Multiplier | 0.18 | |
| **Costs and Expenses** | $3,260,000 | 10.0% |
| **Claims Administration** | $185,308 | 0.6% |
| **Publication Costs** | $75,872 | 0.2% |

*Projected number as not all payments and distributions have been made

**In re High-Tech Employee Antitrust Litig.,**
Case No. 11-cv-2509 (N.D. Cal.)
Final Approval granted September 2, 2015
*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $435,000,000* | 100.0% |
| **Distribution to Class** | $384,300,156 | 88.3% |
| **Claims** | | |
| Participation rate | 99.9% of commerce | |
| Class members | 64,466 | |
| Notices mailed | 64,466 | |
| Claims submitted | 64,410 | |
| Approved claims | 64,410 | |
| Average distribution | $5,966 | |
| **Cy Pres** | $0 | 0.0% |
| **Attorney fees awarded** | $45,822,312 | 10.5% |
| Lodestar | $18,720,707 | |
| Hours | 37,131 | |
| Multiplier | 2.45 | |
| **Costs and Expenses** | $4,539,844 | 1.0% |
| **Claims Administration** | $360,000 | less than 0.1% |

* Resolution of the case proceeded in two rounds. The first round distributed $20 million to class members who filed claims. The second round distributed $415 million to the full list of class members, without a claims process.

**In Re Titanium Dioxide Antitrust Litigation**
Case No. 1:10-cv-00318-RDB (D. Md.)
Final Approval granted December 13, 2013

*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $163,500,000 | 100% |
| **Distribution to Class** | $104,014,824 | 63.6% |
| **Claims** | | |
| Participation rate | 53.1% of class members* | |
| Class members | 650 (known)* | |
| Notices mailed | 5,877** | |
| Claims submitted | 643 | |
| Approved claims | 345*** | |
| Average distribution | $301,497 | |
| **Cy Pres** | $0 | 0.0% |
| **Attorney fees awarded** | $54,500,000 | 33.3% |
| Lodestar | $22,812,576 | |
| Hours | 45,585.33 | |
| Multiplier | 2.39 | |
| **Costs and Expenses** | $4,555,205 | 4.4% |
| **Claims Administration** | $112,010 | less than 0.1% |
| **Publication Costs** | $75,872 | less than 0.1% |

\* Estimate created by Plaintiffs' expert based on Defendants'
transactional data.
\*\* Containing all unique addresses obtained from
Defendants.
\*\*\* Claimants were required to provide proofs of claim,
which were verified by the claims administrator.

**In re Cipro Cases I & II**, JCCP Case Nos.
4154 & 4220 (San Diego Sup. Ct.)
**IPP Settlement with Bayer approved**
November 18, 2013

*All figures are best estimates*

| | | % Total Settlement |
|---|---|---|
| **Settlement** | $74,000,000 | 100.0% |
| **Distribution to Class** | $45,902,769 | 62.0% |
| **Class Representative Incentive Awards** | $40,000 | |
| **Claims** | | |
| Participation rate | 20.2% of commerce | |
| Class members | unknown | |
| Notices mailed | N/A*/44,929**[1] | |
| Claims submitted | 7,907*/463** | |
| Approved claims | 2,951*/295** | |
| Average distribution | $14,150[2] | |
| | $124* | |
| | $154,651** | |
| **Cy Pres** | $0 | 0.0% |
| **Residual** | $262,155[3] | |
| **Attorney fees awarded** | $24,642,000 | 33.3% |
| Lodestar | $9,856,800 (curr. rates) | |
| | $8,214,000 (hist. rates) | |
| Hours | 20,344 | |
| Multiplier | 2.5 (curr. rates) | |
| | 3.0 (hist. rates) | |
| **Costs and Expenses** | $2,501,241 | 3.4% |
| **Claims Administration** | $383,118 | 0.5% |
| **Publication Costs** | $459,136 | 0.6% |

\* Consumer
\*\* Third-party Payor
[1] The claims administrator sent notices to 44,929 potential
class member third-party payors.
[2] Average distribution amount, including consumer and third-
party payors.
[3] Residual funds from uncashed checks. Court ordered to be
transferred to litigation fund.